|2|

# MEMORANDUM

UNITED STATES DEPARTMENT OF EDUCATION
WASHINGTON, D.C. 20202

TO    :  Regional Civil Rights Directors
         Regions I - X

DATE:  FEB 19 1985

FROM    Harry M. Singleton
        Assistant Secretary
        for Civil Rights

SUBJECT:  Policy Guidance for Resolving Religious Exemption Requests

## INTRODUCTION

Headquarters is in the process of clearing a backlog of requests for
religious exemption from Title IX of the Education Amendments of 1972.  I
am referring these requests to the regional offices for initial staff work
in obtaining further information, where necessary, and in preparing draft
responses to the institutions.[1]  You should draft letters to the institu-
tions for my signature which either grant or deny the exemption, and, as
letters are completed, forward them and the accompanying case files to
Frederick T. Cioffi, Acting Director, Policy and Enforcement Service (PES).
You should attempt to resolve these requests and forward your recommendations
within 180 days of the date of this memorandum.  PES will conduct a final
review before these letters are submitted for my signature.  For further
instructions, see the section on "Procedure" below.

In addition to the guidance provided below, there are several attachments
that will provide further assistance.  At Tab A is a list of cases being
returned to your particular region that are divided into three categories
based on a preliminary review completed in headquarters.  These categories
indicate whether headquarters staff believe more information is needed for
a determination, whether sufficient information is already provided or
whether the institution need not have applied for an exemption.  At Tab B
is a copy of an attachment that accompanied the assurance of compliance
forms routinely forwarded to all institutions in the 1970's.  This attach-
ment includes a statement of what constitutes "control" by a religious
organization.  The statement is included primarily for guidance and you
should not assume a strict interpretation (see the subsection on "Control"
below).  At Tab C are three form letters that will assist in responding
to these requests and ensure consistency among the regional offices.  At
Tab D are the case files for your particular region.

## BACKGROUND

Section 106.12 of the Title IX regulation states that the regulation does
not apply to institutions controlled by a religious organization where
such application is not consistent with the religious tenets of the

---

[1] Institution refers to the institution itself or to representatives
    of the institution.

organization. Institutions wishing an exemption are directed to submit a written request to the Assistant Secretary identifying the provisions of the Title IX regulation which are inconsistent with a specific tenet.

These instructions were also outlined on the HEW Form 639 Assurance of Compliance with Title IX that institutions were required to file for consideration for Federal financial assistance from the Department of Health, Education and Welfare. The assurance forms used by the Department of Education no longer contain a provision for claiming a religious exemption.

Headquarters received over 200 requests for religious exemption between 1975 and 1979. These requests specify several sections of the Title IX regulation from which institutions controlled by a religious organization have requested exemption. The sections most frequently specified are: § 106.21 regarding admissions (institutions want to remain single-sex); § 106.21(c), § 106.40, § 106.57 and § 106.60 regarding marital and parental status of students and employees; § 106.34 regarding access to course offerings (institutions offer courses training individuals for the priesthood, ministry or rabbinate only to men); and § 106.31(b)(5) regarding rules of appearance (this section was rescinded and deleted from the regulation in 1982).

Headquarters is forwarding 215 case files to the regional offices, of which: 126 have insufficient information to make a determination, 68 contain sufficient information, and 21 need not have been submitted. These figures are based on a preliminary review. The following discussion provides guidance in handling these requests.

POLICY

In submitting a request, an institution must name the religious organization that controls the institution and specify the tenets of that organization and the sections of the Title IX regulation that conflict. More than half of the original requests contained insufficient information. However, you should not conduct any investigative activity to determine whether the information already supplied by the institution is correct. Instead, any information provided by the institution should be accepted as fact. The form letters at Tab C contain qualifying language which protects OCR authority in the event that an institution has supplied erroneous information. Contacting the controlling organization to confirm either control over the institution or the tenets followed by the organization would be obtrusive. The following provides guidance for each element required for a complete request.

Control

The institution should indicate that it is controlled by a religious organization. This "control" was defined for institutions in a March 1977 version of the old HEW Form 639A (see Tab B). Approximately three institutions failed to provide any indication of which religion or church influences the institution. Some institutions indicated that they are

Page 3 - Regional Civil Rights Directors

independently controlled and do not require faculty or students to be members
of the particular religious organization affiliated with the institution.
You will need to request more information from those institutions providing
no information at all. However, you should accept as fact that an institution
is controlled by a religious organization where the specific organization is
named even when no information is provided on how that organization controls
the institution. To reserve OCR authority, you should include the language
contained in form letter two (see Tab C, form letter two, next to last para-
graph). This paragraph indicates that in the event that OCR receives a
complaint against the institution, and subsequent contact with the religious
organization reveals that that organization does not control the institution,
then OCR will rescind any exemption granted.

<u>Tenets</u>

OCR cannot question what institution representatives claim as their beliefs.
Only where one tenet clearly contradicts another could OCR question the
institution policies based on those contradictory tenets. (A preliminary
review of the case files revealed no cases where tenets were contradictory.)
Several institutions claim adherence to written references such as the Bible
and quote sections as religious tenets or as support for religious tenets.
I suggest that staff check these cited passages, if feasible and necessary,
to determine that the written reference is cited or quoted correctly. Under
no circumstances should OCR appear to be interpreting the Bible.

Unfortunately, many institutions have not been so clear regarding the
tenets of the religious organization as to quote sections of the Bible.
For example, many institutions have requested exemption from the marital
and parental status sections of the regulation (§ 106.21(c), § 106.40,
§ 106.57, and § 106.60). Several of these institutions state only that
these sections prevent them from screening students and employees whose
behavior is not in accordance with the "Christian" or "biblical morals"
followed by the institution. You should accept these very general tenets
for those sections of the regulation regarding marital and parental status
of students and employees (sections noted above) since the prohibitions
in these sections are so specific. For all other sections of the regula-
tion, which are more complex, you should require that institutions be
more specific than to simply claim Christian or biblical morals as tenets.

In granting an exemption, OCR may reserve its authority by stating that
the exemption is limited to the extent that compliance with the Title IX
regulation conflicts with the religious tenets followed by the institution
(see Tab C, form letter two, paragraph two). This permits a potential
complainant an opportunity to dispute those tenets, at which time, OCR
may contact the appropriate religious organization for an explanation of
the practical application of tenets.

<u>Regulations</u>

The remaining information that institutions should specify in requests is
the sections of the Title IX regulation from which they seek exemption.
The vast majority of those institutions specifying sections requested

Page 4 - Regional Civil Rights Directors

exemption from § 106.21(c), § 106.40, § 106.57, and § 106.60 regarding
marital and parental status of students and employees. Many institutions
also indicated that only men could be trained as religious leaders and
requested exemption from § 106.34 regarding access to courses and certain
employment sections since only men were allowed to teach these courses.
In applying for these requests, some institutions realized that exemption
would be needed from several sections of the regulation for one of its
policies. However, most institutions did not. For example, if only men
are permitted to teach a particular course that trains future religious
leaders, institutions tended to request exemption from § 106.51, which
generally prohibits sex discrimination in employment, but did not request
exemption from § 106.53 (recruitment), § 106.55 (job classification and
structure), or § 106.59 (advertising). Despite the fact that some of
these requests call for exemption to sections that are not specified in
the request letter, you should recommend an exemption only for those
sections specified by the institution, with the following exceptions.
If an institution has clearly erred in specifying the section of the
Title IX regulation from which exemption was requested, or an exemption
to general regulatory provisions will not suffice in addressing the
policies or practices that the institution has clearly described, then
you should determine which sections are the most appropriate and draft a
letter for my signature including your recommendation.

Other Considerations

Many institutions were not specific in their request to the point of
specifying a particular education program. For example, institutions
providing courses that train only men as religious leaders have tended to
ask for exemption to § 106.34 regarding access to courses. Institutions
have not asked for exemption for only those courses training men, and often,
the institution does not indicate what the courses are or how many related
courses there may be. You may recommend an exemption for the entire section
of the regulation and limit the exemption by stating that it is limited to
the extent that complying with the regulation conflicts with the religious
tenets of the organization (see Tab C, form letter two, paragraph two).
Again, this language will reserve OCR authority and provide a potential
complainant with the opportunity to dispute any claim that a discriminatory
practice is in accordance with religious tenets.

Some of these institutions may not receive Federal funds. Over half of
the requests are from institutions with less than 500 students, and
approximately 17% have fewer than 100 students. Although most institutions
probably have students in attendance who receive Department of Education
student financial assistance, it is quite likely that some institutions
receive absolutely no Federal money. For now, you should simply respond
to the requests of the institutions. Attempting to determine funding
for these mostly small schools, especially with Grove City[2] considerations,
is not feasible administratively. Inasmuch as the institution initiated
the correspondence, if an institution now refuses to correspond with OCR

[2]Grove City College v. Bell, ___ U.S. ___, 104 S. Ct. 1211 (1984).

Page 5 - Regional Civil Rights Directors

while you are attempting to decide on an exemption recommendation, you should draft a letter for my signature informing the institution that OCR is closing the exemption request file. The only reason to correspond with the institution in the future is if OCR actually receives a complaint against the institution. OCR may determine jurisdiction at that time.

## PROCEDURE

Below are specific procedures for handling requests with varying amounts of information.

### Sufficient Information

Approximately one-third of the exemption requests contain sufficient information for a determination. You should review each file carefully and determine: 1) whether the institution has specified a controlling religious organization; 2) whether the religious tenets and institution practices described as based on those tenets would violate Title IX; and, 3) whether the sections of the regulation have been properly identified. You should then draft a letter to the institution for my signature which grants or denies an exemption. You should forward this draft recommendation to PES for final review. Also, you should include copies of the original request letter and the Title IX regulation in the package forwarded for my signature. You may use form letter two at Tab C as a guide.

### Insufficient Information

Just over half of the exemption requests do not contain sufficient information for a determination. You should correspond with the institution and request whatever information is necessary. (You may use form letter one at Tab C as a guide.) In sending this request for more information, you should include copies of the original request and the Title IX regulation. Since these requests were submitted prior to 1980, institutions may not be aware that the regulation was recodified. You should not impose any time limits for returning this information. Upon receiving complete information, you should draft a letter to the institution, for my signature, granting or denying an exemption and forward it to PES for final review. If the institution refuses to provide the necessary information, you should document this position and draft a letter to the institution, for my signature, indicating that OCR is closing the exemption request file due to this refusal to supply sufficient information. You should submit this draft letter to PES for final review.

### Request Unnecessary

Some institutions submitted a religious exemption request asking that they be allowed to limit admission to students of one sex. In some cases, these institutions are private undergraduate institutions which already have an exemption for admissions under § 106.15(e) of the Title IX regulation. If you determine this to be the case, you should draft a letter for my signature indicating that the institution need not have applied for an exemption. (You may use form letter three at Tab C as a guide. You should note that form

Page 6 - Regional Civil Rights Directors

letter three is the only letter that includes a time limit.  If institutions
do not indicate within 60 days that they need an exemption to sections of the
regulation other than undergraduate admissions, then OCR should close the
exemption request file.)  Again, you should include copies of the request
letter and the Title IX regulation in the package forwarded to headquarters.

You should be careful in reviewing these files.  Many of the requests from
single-sex institutions are from professional schools which are not presently
exempted and must submit a religious exemption request.  Moreover, some pri-
vate undergraduate institutions have asked for exemption from other sections
of the regulation in addition to the admissions section.  You should draft
appropriate letters to these institutions and submit them to PES. · If the
request letter does not clearly indicate that the school is a private under-
graduate institution, it will be necessary to check an education directory
or contact the institution.

Approximately eight files contain form letters that were sent to institutions
in 1980 informing the institution that an exemption request was unnecessary.
Copies of these letters have been placed in the appropriate files.  You
should carefully review the file and determine if the form letter sent in
1980 was appropriate.  If so, and there are no other materials in the file
dated after the 1980 form letter, you may consider the file closed.  However,
if a careful review of the file indicates that the 1980 letter may not have
disposed of all the issues, you should contact the institution to request
the information you deem necessary, and then draft an appropriate letter.

FINAL RECOMMENDATIONS

I recommend that you exercise leniency in handling these requests and in
making final recommendations for exemptions.  These institutions make no
secret of the religious tenets that influence the institution and potential
faculty and students are aware of this influence upon joining the institution
community.  OCR authority will be reserved by using the properly worded con-
ditions noted in the form letters (see Tab C).  The vast majority of these
exemption requests are between five and nine years old.  You should avoid
the appearance of demanding detailed, lengthy explanations of religious
tenets, religious organization control and institution practices in order
that OCR may decide on an exemption.  You should also avoid imposing time
limits for receipt of information.  Only those institutions that need not
have applied for a request have a time limit on contacting OCR.  As indi-
cated in Tab C, form letter three, final paragraph, if OCR does not receive
notification that an institution needs exemption other than that indicated
in the original letter, OCR will assume after 60 days that the institution
has no need for an exemption and close the request file.

I have asked you to submit these letters to PES for final review so that
headquarters may ensure accuracy and consistency in our responses to insti-
tutions.  The form letters at Tab C will help ensure that letters drafted
by the regional offices are consistent.  You should be aware that many
requests are form letters from institutions controlled by the same religious
organization, but that the institutions controlled by the same organization
are in several different OCR regions.  It will be necessary for headquarters
to ensure that our responses to these institutions are consistent.

Page 7 - Regional Civil Rights Directors

It will be apparent when you review the requests for your region that responding to these institutions will involve applying common sense in addition to standard policy. You should attempt to draft an appropriate response even where requests have unfamiliar policy implications. However, if a substantial policy issue arises, you may choose to refer the issue to headquarters before attempting to draft a response. If you have questions regarding policy, you should submit them in writing to Frederick T. Cioffi, Acting Director, Policy and Enforcement Service. If you wish clarification regarding portions of this memorandum, you may contact Jeanette Lim, Chief, Postsecondary Education Branch, at FTS 732-1677.

Attachments

List of Religious Exemption Request Files for Region I - Boston

Files with Insufficient Information for a Determination - Further
Information Must Be Requested (Tab C, Form Letter One)

None


Files with Sufficient Information for a Determination - Analyze and Draft
Letter to Institution to be Signed by Assistant Secretary (Tab C, Form
Letter Two)

1.  Pope John XXIII National Seminary, MA
2.  St. John's Seminary, MA


Files for Institutions that Need not Have Submitted Request - Analyze and
Confirm; Draft Letter to Institution (If Necessary) to be Signed by
Assistant Secretary (Tab C, Form Letter Three)

3.  St. Thomas Seminary, CT
4.  St. Hyacinth College and Seminary, MA
5.  Saint Basil's College, CT
6.  St. Alphonsus College, CT
7.  College of Our Lady Of The Elms, MA

List of Religious Exemption Request Files for Region II - New York

Files with Insufficient Information for a Determination - Further
Information Must Be Requested (Tab C, Form Letter One)

1.  Saint Bernard's Seminary, NY
2.  Seton Hall University, NJ
3.  Wadhams Hall, NY
4.  Concordia College, NY
5.  Rabbinical Seminary of Munkacs, NY
6.  Rabbinical Seminary of New Square, NY
7.  Rabbinical Seminary Yeshivas Ch'san Sofer, NY
8.  Rika Breuer Teachers Seminary for Girls, NY
9.  Sara Schenirer Teachers Seminary, NY
10. Sh'or Yoshuv Rabbinical College, NY
11. Talmudical Academy of New Jersey, NJ
12. United Talmudical Academy, NY
13. Yeshivah Chofetz Chaim of Radun, NY
14. Yeshiva Kibbutz Tashbar, NY
15. Yeshivah Nachlas Haleviyim, NY
16. Yeshiva of Nitra Rabbinical College, NY
17. Yeshivath Zichron Moshe Rabbinical Seminary, NY
18. Hebrew Union College-Jewish Institute of Religion, NY branch
19. Derech Ayson Rabbinical Seminary/Yeshiva of Far Rockaway, NY
20. Kehilath Yakov Rabbinical Seminary, NY
21. Long Island Seminary of Jewish Studies for Women, NY
22. Mesivta of Eastern Parkway Rabbinical Seminary, NY
23. Mesivtha Tifereth Jerusalem of America, NY
24. Mesivta Torah Vodaath Rabbinical Seminary, NY
25. Mesivta Yeshiva Rabbi Chaim Berlin, NY
26. Mirrer Yeshiva Central Institute, NY
27. Ohr Kameir Theological College, NY
28. Yeshiva and Mesivta Ohr Yisroel, NY
29. P'nimia Teachers College, NY
30. Rabbinical College Beth Shraga, NY
31. Rabbinical College Kamenitz Yeshivah of America, NY
32. Rabbinical College of Long Island, NY
33. Mesivta Nachlas Yakov of K'hal Adas Yereim, NY
34. Rabbinical College of Sanz, NY
35. Rabbinical College of Queens, NY
36. Rabbinical Seminary of America, NY
37. Rabbinical Seminary M'kor Chaim, NY
38. Ayelet Hashachar Teacher's Seminary, NY
39. Bais Yaakov Seminary of Brooklyn, NY
40. Be'er Shmuel Talmudical Academy, NY
41. Belzer Yeshiva Machzikei Torah Seminary, NY
42. Beth Hatalmud Rabbinical College, NY
43. Beth Hamedrash Shaarei Yosher, NY

Page Two - Region II List of Cases

44.  Beth Jacob Hebrew Teachers College, NY
45.  Central Yeshiva Beth Joseph Rabbinical Seminary, NY
46.  Yeshiva Emek Halacha, NY
47.  Beth Medrash Govoha, NY
48.  Beth Rivkah Schools, NY
49.  B'nai Torah Institute, NY
50.  Rabbinical College Bobover Yeshiva, NY
51.  Central Yeshiva Tomchei Tmimim Lubavitz, NY


Files with Sufficient Information for a Determination - Analyze and Draft
Letter to Institution to be Signed by Assistant Secretary (Tab C, Form
Letter Two)

52.  The Jewish Theological Seminary of America, NY
53.  Roberts Wesleyan College, NY
54.  Antillian College, PR
55.  St. Michael's Passionist Monastery, NJ
56.  Christ the King Seminary, NY


Files for Institutions that Need not Have Submitted Request - Analyze and
Confirm; Draft Letter to Institution (If Necessary) to be Signed by
Assistant Secretary (Tab C, Form Letter Three)

57.  Cathedral College of the Immaculate Conception, NY
58.  Don Bosco College, NJ

List of Religious Exemption Request Files for Region III - Philadelphia

Files with Insufficient Information for a Determination - Further
Information Must be Requested (Tab C, Form Letter One)

1.  Northeastern Christian Junior College, PA
2.  De Sales Hall School of Theology, MD
3.  Immaculata College, PA
4.  Westminster Theological Seminary, PA
5.  The Reformed Presbyterian Theological Seminary, PA
6.  Ner Israel Rabbinical College, MD
7.  Talmudical Yeshiva of Philadelphia, PA                           ''

Files with Sufficient Information for a Determination - Analyze and Draft
Letter to Institution to be Signed by Assistant Secretary (Tab C, Form
Letter Two)

8.  Appalachian Bible College, WV
9.  United Wesleyan College, PA
10. Columbia Union College, MD
11. Ohio Valley College, WV
12. The Catholic University of America, DC
13. St. Charles Borromeo Seminary, PA
14. Baptist Bible College and School of Theology, PA

                                                                     ''

Files for Institutions that Need not Have Submitted Request - Analyze and
Confirm; Draft Letter to Institution (If Necessary) to be Signed by
Assistant Secretary (Tab C, Form Letter Three)

None

List of Religious Exemption Request Files for Region IV - Atlanta

Files with Insufficient Information for a Determination - Further
Information Must Be Requested (Tab C, Form Letter One)

1. Campbell College, NC
2. Friendship Junior College, SC
3. David Lipscomb College, TN
4. Blue Mountain College, MS
5. LaGrange College, GA
6. Miami Christian College, FL
7. Mid-South Bible College, TN
8. Southeastern Bible College, AL
9. Alabama Christian College, AL
10. Bethune-Cookman College, FL
11. Carson-Newman College, TN
12. Gardner-Webb College, NC
13. Samford University, AL
14. Tennessee Temple College, TN
15. Belmont College, TN
16. Brescia College, KY
17. Alabama Lutheran Junior College, AL

Files with Sufficient Information for a Determination - Analyze and Draft
Letter to Institution to be Signed by Assistant Secretary (Tab C, Form
Letter Two)

18. Campbellsville College, KY
19. Johnson Bible College, TN
20. Lees Junior College, KY
21. Berea College, KY
22. Asbury College, KY
23. Asbury Theological Seminary, KY
24. Central Wesleyan College, SC
25. Oakwood College, AL
26. Freed-Hardeman College, TN
27. Harding Academy, TN
28. Southeastern Christian College, KY
29. Cumberland College, KY
30. Chowan College, NC
31. Union University, TN

Files for Institutions that Need not Have Submitted Request - Analyze and
Confirm; Draft Letter to Institution (If Necessary) to be Signed by
Assistant Secretary (Tab C, Form Letter Three)

32. St. John Vianney Minor Seminary, FL
33. Seminary of St. Pius X, KY

List of Religious Exemption Request Files for Region V - Chicago

Files with Insufficient Information for a Determination - Further
Information Must Be Requested (Tab C, Form Letter One)

1.  Calvin Theological Seminary, MI
2.  Trinity Christian College, IL
3.  Grace Bible College, MI
4.  Grand Rapids School of the Bible and Music, MI
5.  Saint Mary's College, MN
6.  Saint Mary's College, IN
7.  The Saint Paul Seminary, MN
8.  Sacred Heart Seminary College, MI
9.  Lourdes College, OH
10. Circleville Bible College, OH
11. Michigan Christian College, MI
12. Concordia College, MI
13. Concordia Senior College, IN
14. Northwestern Lutheran Theological Seminary, MN
15. Brisk Rabbinical College, IL
16. Hebrew Union College-Jewish Institute of Religion, OH
17. Telshe Yeshiva, Rabbinical College of Telshe, OH

Files with Sufficient Information for a Determination - Analyze and Draft
Letter to Institution to be Signed by Assistant Secretary (Tab C, Form
Letter Two)

18. Bethel College, IN
19. Trinity Evangelical Divinity School, IL
20. Wheaton College, IL
21. Dr. Martin Luther College, MN
22. Wisconsin Evangelical Lutheran Synod, WI (controls Dr. Martin
    Luther College in Minnesota)
23. Detroit Bible College, MI
24. Grace College and Grace Theological Seminary, IN
25. Bethany Lutheran College, MN
26. Marion College, IN
27. Andrews University, MI
28. Kettering College of Medical Arts, OH
29. The Cincinnati Bible Seminary, OH
30. Athenaeum of Ohio, OH
31. College of Saint Benedict, MN
32. Saint John's University, MN
33. Saint Mary of the Lake Seminary, IL
34. Grand Rapids Baptist College, MI
35. Cedarville College, OH

Page Two - Region V - st of Cases

Files for Institutions that Need not Have Submitted Request - Analyze and
Confirm; Draft Letter to Institution (If Necessary) to be Signed by
Assistant Secretary (Tab C, Form Letter Three)

36. The Hebrew Theological College, IL
37. McCormick Theological Seminary, IL
38. Felician College, IL
39. Duns Scotus College, MI
40. Crosier Seminary, MN
41. Concordia College, MN
42. College of Mount St. Joseph on the Ohio, OH
43. Saint Francis de Sales College, WI

List of Religious Exemption Request Files for Region VI - Dallas

Files with Insufficient Information for a Determination - Further
Information Must Be Requested (Tab C, Form Letter One)

1. Gulf Coast Bible College, TX
2. Southwestern Assemblies of God College, TX
3. Lubbock Christian College, TX
4. Dallas Theological Seminary, TX
5. University of Dallas, TX
6. Oklahoma Christian College, OK
7. Concordia Lutheran College, TX

Files with Sufficient Information for a Determination - Analyze and Draft
Letter to Institution to be Signed by Assistant Secretary (Tab C, Form
Letter Two)

8. Oral Roberts University, OK
9. Bartlesville Wesleyan College, OK
10. Southwestern Adventist College, TX
11. Harding College, Main Campus, AR
12. Crowley's Ridge College, AR
13. Notre Dame Seminary, LA
14. Louisiana College, LA
15. Southern Baptist College, AR
16. Baylor University, TX

Files for Institutions that Need not Have Submitted Request - Analyze and
Confirm; Draft Letter to Institution (If Necessary) to be Signed by
Assistant Secretary (Tab C, Form Letter Three)

17. St. Mary's Dominican College, LA

List of Religious Exemption Request Files for Region VII - Kansas City

Files with Insufficient Information for a Determination - Further
Information Must Be Requested (Tab C, Form Letter One)

1. Mount Mercy College, IA
2. Divine Word College, IA
3. Grace College of the Bible, NE
4. Northwestern College, IA
5. Faith Baptist Bible College, IA
6. Union College, NE
7. Concordia Seminary, MO
8. Concordia Teacher's College, NE
9. St. John's College, KS
10. St. Paul's College, MO
11. St. Louis Rabbinical College, MO

Files with Sufficient Information for a Determination - Analyze and Draft
Letter to Institution to be Signed by Assistant Secretary (Tab C, Form
Letter Two)

12. York College, NE
13. Kenrick Seminary, MO

Files for Institutions that Need not Have Submitted Request - Analyze and
Confirm: Draft Letter to Institution (If Necessary) to be Signed by
Assistant Secretary (Tab C, Form Letter Three)

14. Cardinal Glennon College, MO

List of Religious Exemption Request Files for Region IX - San Francisco

Files with Insufficient Information for a Determination - Further
Information Must Be Requested (Tab C, Form Letter One)

1.  Biola College, CA
2.  Chaminade College, HA
3.  Dominican School of Philosophy and Theology, CA
4.  Grand Canyon College, AZ
5.  Loyola Marymount University, CA
6.  Saint Patrick's Seminary, CA
7.  Pacific Union College, CA

Files with Sufficient Information for a Determination - Analyze and Draft
Letter to Institution to be Signed by Assistant Secretary (Tab C, Form
Letter Two)

8.  West Coast Bible College, CA
9.  Ambassador College, CA
10. Pepperdine University, CA
11. St. John's Seminary, CA
12. Los Angeles Baptist College, CA

Files for Institutions that Need not Have Submitted Request - Analyze and
Confirm; Draft Letter to Institution (If Necessary) to be Signed by
Assistant Secretary (Tab C, Form Letter Three)

13. California Lutheran College, CA
14. Holy Family College, CA

List of Religious Exemption Request Files for Region X - Seattle

Files with Insufficient Information for a Determination - Further Information Must Be Requested (Tab C, Form Letter One)

1.  Mt. Angel Seminary, OR
2.  Ricks College, ID
3.  St. Thomas Seminary, WA
4.  Northwest Baptist Seminary, WA
5.  Concordia College, OR
6.  Lutheran Bible Institute, WA

Files with Sufficient Information for a Determination - Analyze and Draft Letter to Institution to be Signed by Assistant Secretary (Tab C, Form Letter Two)

7.  George Fox College, OR
8.  Walla Walla College, WA
9.  Western Baptist Bible College, OR

Files for Institutions that Need not Have Submitted Request - Analyze and Confirm; Draft Letter to Institution (If Necessary) to be Signed by Assistant Secretary (Tab C, Form Letter Three)

None

TAB
B

Explanation Of

HEW FORM 639 A (3/77), ENTITLED "ASSURANCE OF COMPLIANCE WITH TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 AND THE REGULATION OF THE DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE IN IMPLEMENTATION THEREOF"

Section 901 of Title IX of the Education Amendments of 1972 provides that no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. Section 902 of Title IX authorizes and directs the Department of Health, Education, and Welfare (hereinafter the "Department") to effectuate the nondiscrimination requirements of section 901 by issuing rules, regulations, and orders of general applicability. Pursuant to section 902, the Department has issued 45 C.F.R. Part 86 (hereinafter "Part 86") which became effective on July 21, 1975.

Section 86.4 of Part 86 requires that every application for Federal financial assistance for any education program or activity shall, as a condition of its approval, contain or be accompanied by an assurance from the applicant satisfactory to the Director of the Office for Civil Rights (hereinafter the "Director") that each education program or activity operated by the applicant and to which Title IX of the Education Amendments of 1972 and Part 86 apply will be operated in compliance with Part 86.

Section 86.4 also provides that the Director will specify the form of the assurance required and the extent to which such assurance will be required of the applicant's subgrantees, contractors, subcontractors, transferees, or successors in interest. Under this authority, HEW Form 639 A, (3/77) has been specified as the form of assurance which shall apply to all recipients of and applicants for Federal financial assistance subject to the provisions of Title IX and awarded by the Department.

HEW Form 639 A, (3/77) constitutes a legally enforceable agreement to comply with Title IX and all of the requirements of Part 86. Applicants are urged to read Part 86 and the accompanying preamble. The obligation imposed by Title IX and Part 86 are independent of, and do not alter, the obligation not to discriminate on the basis of sex imposed by Title VII of the Civil Rights Act of 1964 (20 U.S.C. 2000e et seq.); Executive Order 11246, as amended; sections 799A and 855 of the Public Health Service Act (42 U.S.C. 295h-9 and 298b-2); and the Equal Pay Act (29 U.S.C. 206 and 206 (d))

2

## PERIOD OF ASSURANCE

HEW Form 639 A, (3/77) is binding on a recipient for a period during which Federal financial assistance is extended to it by the Department. With respect to Federal financial assistance used to aid in the purchase or improvement of real or personal property, such period shall include the time during which the real or personal property is used for the purpose of providing an education program or activity. A recipient may transfer or otherwise convey title to real and personal property purchased or improved with Federal financial assistance so long as such transfer or conveyance is consistent with the laws and iregulations under which the recipient obtained the property and it has obtained a properly executed HEW Form 639 A, (3/77) from the party to wh it wishes to transfer or convey the title unless the property in question is no longer to be used for an education program or activity or the Federal share of the fair market value of such property has been refunded or otherwise properly accounted for to the Federal government.

An applicant or recipient which has submitted an HEW Form 639 A, (3/77) to the Director need not submit a separate form with each grant application but may, if the information contained therein remains accurate, simply incorporate by reference, HEW Form 639 A, (3/77), giving the date it was submitted. On the other hand, a revised HEW Form 639 A, (3/77) must be submitted within 30 days after information contained in the submitted form becomes inaccurate, even if no additional financial assistance is being sought.

## OBLIGATION OF RECIPIENT TO OBTAIN ASSURANCES FROM OTHERS

As indicated in Article III, paragraph 2, of the Assurance, if a recipient subgrants to, or contracts, subcontracts, or otherwise arranges with an individual, organization, or group to assist in the conduct of an education program or activity receiving Federal financial assistance from the Department or to provide services in connection with such a program or activity, the recipient continues to have an obligation to ensure that the education program or activity is being administered in a nondiscriminatory manner. (See 45 C.F.R. 86.31.) Accordingly, the recipient must take reasonable steps to ensure that the individual, organization, or group in question is complying with Title IX and Part 86. These steps may include, but do not necessarily require, obtaining assurances of compliance from such subgrantees, contractors, and subcontractors in the form of, or modeled on, the HEW Form 639A, (3/77). These steps to require, however, such activities as may be reasonably necessary to monitor the compliance of these subgrantees, contractors, or subcontractors, regardless of whether they have submitted assurances to the recipient. If a recipient is unable to assure itself that any contractor, subcontractor, subgrantee, or other individual or group with whom it arranges to provide services or benefits to its students and employees does not discriminate on the basis of sex as described in Part 86, the recipient may not initiate or continue contracts, subcontracts, or other arrangements with that individual or group or make subgrants to it.

3

## ADMINISTRATIVELY SEPARATE UNITS

If an educational institution is composed of more than one
administratively separate unit, a separate HEW Form 639 A, (3/77) may be
submitted for each unit or one may be submitted for the entire institution.
If separate forms are submitted, the administratively separate unit for
which the form is submitted should be clearly identified in the first line
of HEW Form 639 A, (3/77). An "administratively separate unit" is defined
as a school, department or college of an educational institution (other
than a local educational agency) admission to which is independent of
admission to any other component of such institution. See 45 C.F.R. 86.2(o).

## STATE EDUCATION AGENCIES

State education agencies are generally not responsible for running
pre-school, kindergarten,, elementary or secondary programs. Such
responsibility is generally left to local education agencies although some
supervisory authority may be vested with the state education agency.
Consequently, most state agencies should not check the boxes for "Pre-school,"
"Kindergarten," or "Elementary or Secondary" in Article I of HEW Form
639 A, (3/77). If the state agency runs special programs for the handicapped,
including those on the pre-school, kindergarten, elementary, or secondary
level, the box marked "Other" should be checked and the appropriate description
inserted in the space provided.

Under Article III, paragraph 5, of HEW Form 639A, (3/77) a state
education agency may be called upon from time to time to submit reports
necessary to determine Title IX compliance by local education agencies
within its jurisdiction. The form and content of such reports will be
specified by the Director at the time the request is made.

## RELIGIOUS EXEMPTION

Applicants or recipients which are educational institutions controlled
by a religious organization are not covered by Part 86 to the extent that
application of Part 86 would be inconsistent with the religious tenets of
the controlling religions organization.

Section 86.12 of Part 86 requires an institution seeking an exemption
to submit a written statement to the Director identifying the provisions
of Part 86 which conflict with a specific tenet of the controlling religious
organization. Such a statement must be signed by the highest ranking
official of the educational institution claiming the exemption. An applicant
or recipient claiming an exemption is not relieved of its obligations to
comply with that portion of Part 86 not specified in its statement to the
Director as being inconsistent with the tenets of the controlling religious
organization.

4

Although 86.12 imposes no time restrictions when a recipient
or applicant may claim an exemption, applicants or recipients are urged
to make such claims when they initially submit HEW Form 639 A, (3/77) by
checking the appropriate box in Article I of HEW Form 639 A, (3/77)
and attaching thereto the statement required by 86.12(b). Such an approach
will avoid misunderstandings on the part of both the Department and the
applicant or recipient as to what, if any, action is required under Part 86.

An applicant or recipient will normally be considered to be controlled
by a religious organization if one or more of the following conditions prevail:

(1) It is a school or department of divinity; or

(2) It requires its faculty, students or employees to be members of,
or otherwise espouse a personal belief in, the religion of the organization
by which it claims to be controlled; or

(3) Its charter and catalog, or other official publication, contains
explicit statement that it is controlled by a religious organization or an
organ thereof or is committed to the doctrines of a particular religion,
and the members of its governing body are appointed by the controlling
religious organization or an organ thereof, and it receives a significant
amount of financial support from the controlling religious organization
or an organ thereof.

The term "school or department of divinity" means an institution or
a department or branch of an institution whose program is specifically for
the education of students to prepare them to become ministers of religion
or to enter upon some other religious vocation, or to prepare them to teach
theological subjects. (This definition is adopted from section 1201(1) of
the Higher Education Act of 1965, P.L. 89-329.)

TAB
C

FORM LETTER ONE

Dear President _____:

The Office for Civil Rights of the Department of Education (OCR/ED) is in the process of clearing a backlog of requests for religious exemption from Title IX of the Education Amendments of 1972. Our records indicate that [institution name] filed such a request (copy enclosed) but there is no record that OCR adequately acknowledged your request. We have recently reviewed your request and have determined that we need further information to make a decision to grant an exemption. In order for this office to make a determination, an institution should provide the following information:

1. The name of the religious organization that controls the institution and a brief description of how the organization controls the institution.

2. A brief description of the religious tenets of the controlling organization that are followed by the institution.

3. The section number (and paragraph if applicable) of the Title IX regulation (copy enclosed) from which exemption is requested. The institution should indicate which tenet conflicts with which section of the regulation.

Please understand that OCR cannot presume to know the tenets followed by an institution because the name of the religion practiced by the controlling organization has been identified. Similarly, OCR cannot presume to determine from which section of the Title IX regulation an exemption is sought because the institution has clearly stated the tenets.

Your original request letter included sufficient information regarding [control, tenets, regs] but did not specify [control, tenets, regs]. If you wish this office to make a determination regarding a religious exemption, please indicate the [control, tenets, regs] and return the information to this office. If you no longer desire a religious exemption, please simply note your desire to withdraw the request so that we may close your request file.

Thank you for your cooperation. I regret the inordinate delay in responding to your original request. If you have any questions, please feel free to contact [names and numbers] of my staff.

Sincerely,

[Regional Director's Name]
Regional Civil Rights Director
[Region Number]
Office for Civil Rights

Enclosures

FORM LETTER TWO

Dear President _____ :

The Office for Civil Rights of the Department of Education (OCR/ED) is in the process of clearing a backlog of requests for religious exemption from Title IX of the Education Amendments of 1972. Our records indicate that [institution name] filed such a request but there is no record that OCR adequately acknowledged this request.

We have recently reviewed your request (copy enclosed) in which you describe several policies practiced at [institution name] as consistent with the tenets of the religious organization that controls the institution. These policies would violate certain sections of the regulation implementing Title IX (copy enclosed) absent a religious exemption. You have supplied information in your request letter that establishes that the institution is controlled by a religious organization and that tenets followed by this organization conflict with specific sections of the Title IX regulation. Therefore, I am granting [institution name] an exemption to those sections of the Title IX regulation specified in your request letter [or appropriate sections]. The exemption is limited to the extent that compliance with the Title IX regulation conflicts with the religious tenets followed by the institution. [Institution name] is hereby exempted from the requirements of the following sections of the Title IX regulation: [list sections]. The basis for our decision to grant this exemption is discussed in further detail below.

Your letter indicates that [institution name] is controlled by [name of controlling organization]. The [organization] and the [institution name] practice the tenets of [summarize practice in one or two statements]. [Summarize institution's description of control by organization.] This relationship between the [controlling organization] and [institution] adequately establishes that [institution] is controlled by a religious organization as is required for consideration for exemption under § 106.12 of the Title IX regulation.

In your letter you indicate that [summarize any practices that faculty and students must be aware of and follow]. Thus, the institution practices the following:

1. [Briefly describe practice as its based on religious tenet.]

Based on the above principle, [institution name] has requested and is granted by this letter, exemption to:

> [list sections of regulation pertinent to above principle and indicate what section of regulation covers - e.g. § 106.21(a), (b) and (c)(2) and (3) admission of students; inquiry regarding parental and marital status of potential students].

2. [Briefly describe practice as its based on religious tenet.]

Page 2 - FORM LETTER TWO

Based on the above principle, [institution name] has requested and is granted by this letter, exemption to:

    [list sections of regulation pertinent to above principle and indicate what section of regulation covers].

3.  Continue listing practices and tenets as necessary.

This letter should not be construed to grant exemption from any section of the Title IX regulation not specifically mentioned. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. I regret the inordinate delay in responding to your original request. If you have any questions, please do not hesitate to contact me.

                Sincerely,

                Harry M. Singleton
                Assistant Secretary
                  for Civil Rights
                Office for Civil Rights

Enclosures

FORM LETTER THREE

Dear President _____ :

The Office for Civil Rights of the Department of Education (OCR/ED) is in
the process of clearing a backlog of requests for religious exemption from
Title IX of the Education Amendments of 1972. Our records indicate that
[institution name] filed such a request (copy enclosed) but we have no
record that OCR adequately acknowledged this request. We have recently
reviewed your request and have determined that your institution need not
have applied for a religious exemption. The reasons for our determination
are discussed below.

Subpart C of the Title IX regulation (copy enclosed) prohibits discrimination
in the admission and recruitment of students. Section 106.15(e) of the
Title IX regulation specifically exempts private undergraduate institutions
from compliance with Subpart C. Based on the information provided in your
letter (copy enclosed), you sought a religious exemption because your under-
graduate education programs are limited to one sex. Under § 106.15(e), the
exemption for limiting admissions is already provided.

The statutory exemption from the admission and recruitment provisions of
Subpart C does not relieve the institution of its obligation to comply with
the regulation as it relates to graduate or other programs. Should there be
conflicts in this regard, it would be necessary to request exemption from
specific provisions of the regulation which are deemed to be inconsistent
with certain tenets of your religion.

If we do not hear from you within 60 days, we will assume that your insti-
tution has no need for a religious exemption and close your original request
file. If you have any questions, please do not hesitate to contact me.

Sincerely,

Harry M. Singleton
Assistant Secretary
  for Civil Rights
Office for Civil Rights

Enclosures

122

# MEMORANDUM

**UNITED STATES DEPARTMENT OF EDUCATION**
WASHINGTON, D.C. 20202

TO   : Regional Civil Rights Directors         DATE: AUG 2 1985
          Regions I - X

FROM  Harry M. Singleton
       Assistant Secretary
       for Civil Rights

SUBJECT: Title IX Religious Exemptions

During the past several weeks, the Office for Civil Rights (OCR) has had
formal and informal contacts with representatives of rabbinic institutions
regarding OCR's requests for information involving religious tenets. The
result of these contacts is a clarification of policy that may affect the
religious exemption requests of institutions in your region.

Representatives of rabbinic institutions that filed for Title IX religious
exemptions have indicated their belief that a request for religious tenets
is a violation of the First Amendment. To avoid possible constitutional
entanglements and expedite OCR's processing of these requests, OCR has
clarified its policy to allow institutions to submit a statement of insti-
tution practices, as based on religious tenets, as sufficient for processing
a request where information regarding the controlling organization and
sections of the regulation is also provided.

Based on conversations with rabbinic institution representatives, it is
not clear whether all institutions that may be affected by this policy
clarification are controlled by the organizations that have been informed
of this policy. Therefore, I am instructing you to send the attached
letter to those institutions that are controlled by Jewish organizations
and other institutions that refuse to provide religious tenets, and that
have not provided sufficient information for processing their requests.
You should attach to this letter a copy of the letter sent on July 19 to
Rabbi Morris Sherer of Agudath Israel of America (copy attached). You
should expedite the mailing of letters in order to meet the August 19
deadline for submitting religious exemption cases to headquarters. If
you require an extension of this deadline, submit an extension request
to Frederick T. Cioffi, Acting Director, Policy and Enforcement Service.

Attachments

Dear President _____:

The Office for Civil Rights (OCR) of the Department of Education recently
forwarded a request for information to [institution name] and several
rabbinic and other institutions. This request is part of OCR's effort to
resolve a number of pending requests for religious exemption from Title IX
of the Education Amendments of 1972.

In response to these requests, OCR received a letter dated April 16 from
Agudath Israel of America (AIA) indicating its position that a request for
religious tenets is constitutionally impermissible under the First Amendment
of the United States Constitution. OCR recently responded to AIA outlining
our responsibilities in granting religious exemptions under Title IX. Since
OCR's position may affect your request for exemption, a copy of this letter
is enclosed for your reference.

OCR recognizes the constitutional concerns in providing OCR with a description
of religious tenets. If your institution is still interested in receiving a
religious exemption, then we recommend that you submit a statement regarding
religious tenets or institution practices that are based on religious tenets
which you believe conflict with the regulation. This will enable OCR to act
on your request by confirming that the correct sections of the Title IX regula-
tion have been cited in your request letter. For example, a statement such
as – based on our religious tenets, the institution admits only men – enables
OCR to confirm that an exemption to 34 C.F.R. §§ 106.21, 106.22 and 106.23
regarding admissions and recruitment is necessary. Also, a statement indicating,
for example, that based on religious tenets, only men are permitted to teach
certain courses, enables OCR to take action on those sections of the Title IX
regulation regarding employment that may be specified in your request letter.
Without information regarding institution practices to confirm that the sections
of the regulation cited in your request letter are accurate, any exemption
granted by OCR would have little practical impact. OCR would be required to
investigate any complaint filed against your institution, to the extent that
your institution receives Federal financial assistance, if we cannot determine
the accuracy of the exemption requested or subsequently granted.

I hope this letter and the enclosed copy of the letter to AIA clarify OCR's
intent in issuing the information request and OCR's responsibilities in
granting religious exemptions. If you have any questions, please feel free
to contact me at [phone number].

                                        Sincerely,


                                        [Regional Director's Name]
                                        Regional Civil Rights Director
                                        Office for Civil Rights
                                        Region [Number]

Enclosure



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS

JUL 19 1985

Rabbi Morris Sherer
President
Agudath Israel of America
Five Beekman Street
New York, New York  10038

Dear Rabbi Sherer:

Thank you for your letters of April 16 and July 3 informing the Office for
Civil Rights (OCR) of your position regarding OCR's recent requests for
information that were sent to several rabbinic institutions.  These requests
for information are part of OCR's effort to resolve a backlog of requests
for religious exemption from Title IX of the Education Amendments of 1972.

Your understanding of OCR's position, as stated in your July 3 letter, is
correct.  OCR will accept a statement of institution practices, as based
on religious tenets, and as believed by the institution to conflict with
specified sections of the Title IX regulation, as sufficient information for
OCR to process a religious exemption request where information identifying
the religious organization is also included.  OCR is accepting an institu-
tion's statement of tenets or practices and information regarding the
controlling religious organization as fact.  The following should further
clarify OCR's position.

OCR has received over 200 requests for religious exemption from Title IX.
Over half of those requests did not supply sufficient information for OCR
to make a determination regarding an exemption.  A model letter was drafted
to address these many religious exemption requests containing insufficient
information and this letter was sent to several rabbinic and other institu-
tions to expedite the processing of these backlogged requests.

OCR's responsibilities in granting religious exemptions include clarifying
whether an institution has cited the correct sections of the Title IX
regulation in its request letter.  OCR has no intention of reviewing the
legitimacy of tenets of any religious organization or determining how such
tenets are best practiced in an institution's education program.  You are
correct in your understanding that OCR will not probe into the nature and
doctrinal source of the underlying religious tenets.

In your letter of April 16, you indicated that the rabbinic schools "limit
admission to male students."  This brief statement is more information than
was provided in the original form letter requests for religious exemption
forwarded by the rabbinic schools.  However, this short statement provides
important information to OCR in acting on an exemption request.  For example,

Page 2 - Rabbi Morris Sherer

limiting admissions to men only based on religious tenets clarifies for OCR that an exemption is needed to 34 C.F.R. §§ 106.21, 106.22, and 106.23 regarding admissions and recruitment. Granting an exemption to §§ 106.21, 106.22 and 106.23 precludes the necessity for an exemption to § 106.31 (education programs and activities), § 106.32 (housing), or § 106.34 (access to courses). These three sections, in addition to the admissions and recruitment provisions, were specified in the form letter requests for exemption from the rabbinic schools.

I appreciate your concerns regarding constitutional entanglements in providing OCR with a description of religious tenets. Since your letters indicate that the rabbinic schools are still interested in receiving religious exemptions, I recommend that these schools submit a statement regarding institution practices that are based on religious tenets and that they believe conflict with the regulation. This would uphold the institutions' desire to ensure their rights under the First Amendment, enable OCR to meet its responsibilities in confirming that the correct sections of the regulation have been identified in the religious exemption request letters, and expedite OCR's processing of these requests. The language that you have suggested in your letter of July 3, that:

> Our religious tenets require us to admit only male students to our education programs and to hire only male teachers for our educational programs. Accordingly, we seek exemption from the following regulations: . . .

is sufficient. This language enables OCR to confirm that an exemption to 34 C.F.R. §§ 106.21, 106.22 and 106.23 regarding admissions and recruitment is necessary and, additionally, that an exemption to the several employment sections of the Title IX regulation cited in the religious exemption request letters from the rabbinic schools also is necessary. If OCR does not receive information regarding institution practices to confirm that the 13 sections of the regulation cited in the form letter requests for exemption are accurate, any exemption granted by OCR would have little practical impact. OCR would be required to investigate any complaint filed against an institution if OCR cannot determine the accuracy of the exemption requested or subsequently granted.

It is difficult to determine, based on your letters, why the rabbinic schools originally requested exemption from §§ 106.31, 106.32 or 106.34. However, I wish to clarify that if an institution presently admits or contemplates in the future admitting women on a limited basis to some programs or use institution housing on a limited basis (Title IX permits separate housing on the basis of sex), then the institution may wish to request exemption to these sections of the regulation. Otherwise, as noted above, if admissions to all programs are limited to men, then an exemption to the admissions and recruitment provisions precludes the need for exemption to §§ 106.31, 106.32 and 106.34.

Page 3 - Rabbi Morris Sherer

I hope this clarifies our intent in issuing these information requests and OCR's responsibilities in granting religious exemptions. If you have any questions, please feel free to contact Frederick Cioffi of my staff at 202-732-1635.

Sincerely,

Harry M. Singleton
Assistant Secretary
for Civil Rights

cc: Stanley Seidenfeld, Acting Regional Civil Rights Director, Region II
Dewey E. Dodds, Regional Civil Rights Director, Region III
Linda A. McGovern, Acting Regional Civil Rights Director, Region V
Jesse L. High, Regional Civil Rights Director, Region VII
Gilbert D. Roman, Regional Civil Rights Director, Region VIII

All communications regarding this Committee should be addressed to Carl T. DeMarco, Acting Executive Secretary, Pharmaceutical Reimbursement Advisory Committee, Office of Quality Standards, Room 16A09, Parklawn Building, 5600 Fishers Lane, Rockville, Maryland 20857.

Dated: March 15, 1977.

CARL T. DEMARCO,
*Acting Executive Secretary, Pharmaceutical Reimbursement Advisory Committee.*

[FR Doc.77-8189 Filed 3-17-77;8:45 am]

---

## Office of the Secretary

## ASSURANCE OF COMPLIANCE WITH TITLE IX OF EDUCATION AMENDMENTS OF 1972

The following document (HEW Form 639-A (3/77)) has been designated by the Director, Office for Civil Rights, Department of Health, Education, and Welfare, as the Assurance of Compliance which must be submitted by all applicants for, and recipients of, Federal financial assistance awarded by the Department and subject to the provisions of Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) The requirement that such applicants and recipients submit this Assurance is set forth in the Department's regulation implementing Title IX, at 45 CFR 86.4. The form is similar in content and purpose to that used in implementing Title VI of the Civil Rights Act of 1964. (See 45 CFR 80.4.)

This form (HEW Form 639-A (3/77) is a revision of a previous Assurance form (HEW Form 639 (7/76)) which was mailed to State school officers, superintendents of local education agencies, and presidents of colleges and universities in July 1976 for completion and return by September 30, 1976. Recipients who submitted an acceptable Assurance (HEW) 639, 7/76) are not required to resubmit this revised version.

HEW Form 639-A (3/77) is essentially the same as the previous version, except that Article III, paragraph 2, of the Title IX Assurance revised in order to clarify the scope of the recipient's obligation to obtain assurances from subgrantees, contractors, or subcontractors. The effect of the revision is to delete the requirement that recipients obtain written assurances from subgrantees, contractors, or subcontractors. Instead, recipients must take reasonable steps to assure themselves that the other entities do not discriminate on the basis of sex.

Additional copies of the Assurance and Explanation may be obtained by writing the Office of Public Affairs, Office for Civil Rights, Department of Health, Education, and Welfare, 330 Independence Avenue SW., Washington, D.C. 20201.

ALBERT T. HAMLIN,
*Acting Director, Office for Civil Rights.*

MARCH 14, 1977.

(Please read explanation of HEW Form 639 A (3/77)[1] before completing this document.)

Pursuant to 45 CFR 86.4:

----------------------------------------
(Name of applicant or recipient)

----------------------------------------
(Address)

----------------------------------------
(City, State, ZIP Code)

----------------------------------------
(Identifying code—FICE, OE, or IRS)

(hereinafter the "Applicant") gives this assurance in consideration of and for purpose of obtaining Federal education grants, loans, contracts (except contracts of insurance or guaranty), property, discounts, or other Federal financial assistance to education programs or activities from the Department of Health, Education, and Welfare (hereinafter the "Department"), including payments or other assistance hereafter received pursuant to applications approved prior to the date of this assurance.

### ARTICLE I—TYPE OF INSTITUTION SUBMITTING ASSURANCE

A. The Applicant is (check the following boxes where applicable):

1. ( ) A State education agency.
2. ( ) A local education agency.
3. ( ) A publicly controlled educational institution or organization.
4. ( ) A privately controlled educational institution or organization.
5. ( ) A person, organization, group or other entity not primarily engaged in education. If this box is checked, insert primary purpose or activity of Applicant in the space provided below:

B. ( ) Claiming a religious exemption under 45 CFR 86.12(b). (If religious exemption is claimed, attach statement by highest ranking official of Applicant identifying the specific provisions of 45 CFR Part 86 which conflict with a specific religious tenet of the controlling religious organization.)

C. The Applicant offers one or more of the following programs or activities (check where applicable):

1. ( ) Pre-school.
2. ( ) Kindergarten.
3. ( ) Elementary or secondary.
4. ( ) Graduate.
5. ( ) Other (such as special programs for the handicapped even if provided on the pre-school, elementary or secondary level). If this box is checked, give brief description below:
6. ( ) Undergraduate (including junior and community colleges).
7. Vocational or technical.
8. Professional.

### ARTICLE II—PERIOD OF ASSURANCE

This assurance shall obligate the Applicant for the period during which Federal financial assistance is extended to it by the Department.

### ARTICLE III—TERMS AND CONDITIONS

The Applicant hereby agrees that it will:

1. Comply, to the extent applicable to it, with Title IX of the Education Amendments of 1972 (Pub. L. 92-318), as amended, 20 U.S.C. 1681, 1682, 1683, and 1685 (hereinafter, "Title IX"), and all applicable requirements imposed by or pursuant to the Department's regulation issued pursuant to Title IX, 45 CFR Part 86 (hereinafter, "Part 86"), to the end that, in accordance with Title IX and Part 86, no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any education program or activity for which the Applicant receives or benefits from Federal financial assistance from the Department. (This assurance does not apply to sections 904 (prescribing denial of admission to course of study on the basis of blindness) and 906 (amending other laws) of Title IX, 20, U.S.C. 1684 and 1686.)

2. Assure itself that all contractors, subcontractors, subgrantees or others with whom it arranges to provide services or benefits to its students or employees in connection with its education program or activity are not discriminating on the basis of sex against these students or employees.

3. Make no transfer or other conveyance of title to any real or personal property which was purchased or improved with the aid of Federal financial assistance covered by this assurance, and which is to continue to be used for an education program or activity and where the Federal share of the fair market value of such property has not been refunded or otherwise properly accounted for to the Federal government, without securing from the transferee an assurance of compliance with Title IX and Part 86 satisfactory to the Director and submitting such assurance to the Department.

4. Submit a revised assurance within 30 days after any information contained in this assurance becomes inaccurate.

5. If the Applicant is a state education agency, submit reports in a manner prescribed by the Director under 45 CFR 80.6(b) as to the compliance with Title IX and Part 86 of local education agencies or other education programs or activities within its jurisdiction.

### ARTICLE IV—DESIGNATION OF RESPONSIBLE EMPLOYEE AND ADOPTION OF GRIEVANCE PROCEDURES (CHECK THE APPROPRIATE BOX)

A. 1. ( ) Pursuant to 45 CFR 86.8, the Applicant has adopted grievance procedures and designated the following employee to coordinate its efforts to comply with Part 86 and has notified all of its students and employees of these grievance procedures and the following name, address and telephone number of the designated employee:

2. ----------------------------------------
(Name of employee)

3 ----------------------------------------
(Office address)

4. ----------------------------------------
(Telephone number).

B. 1. ( ) The Applicant is not presently receiving Federal financial assistance subject to Part 86 and, consequently, has not designated a responsible employee or adopted grievance procedures pursuant to 45 CFR 86.8 but will do so immediately upon award of such assistance and will immediately notify the Director, its students and employees of the name, office address, and telephone number of the employee so designated.

### ARTICLE V—SELF-EVALUATION (CHECK THE APPROPRIATE BOX)

A. (☐) The Applicant has completed a self-evaluation as required by 45 CFR 86.3(c) and has not found it necessary to modify any of

---

[1] HEW Form 639 A (3/77). This form supersedes HEW Form 639 (7/76). HEW Form 639 (7/76) submitted prior to this revision are valid and recipients need not submit a new assurance.

its policies and practices or to take any remedial steps to come into compliance with Part 86.

B. (☐) The Applicant has completed a self-evaluation as required by 45 CFR 86.3(c) and has ceased to carry out any policies and practices which do not or may not meet the requirements of Part 86 and is taking any necessary remedial steps to eliminate the effects of any discrimination which resulted or may have resulted from adherence to such policies and practices.

C. (☐) The Applicant has not completed the self-evaluation required by 45 CFR 86.3 (c) but expects to have it completed by

------------------------------------------
(Insert date)

D. (☐) The Applicant is not required to conduct a self-evaluation under 45 CFR 86.3 since it did not receive any Federal financial assistance to which Part 86 applies prior to July 21, 1976.

Date: ------------------

------------------------------------------
(Insert name of applicant)

By ------------------------------------------
                           ;

------------------------------------------
(This document must be signed
by an official legally authorized
to contractually bind the applicant)

------------------------------------------
(Insert title of authorized official)

EXPLANATION OF HEW FORM 639 A (3/77), ENTITLED "ASSURANCE OF COMPLIANCE WITH TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 AND THE REGULATION OF THE DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE IN IMPLEMENTATION THEREOF"

Section 901 of Title IX of the Education Amendments of 1972 provides that no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. Section 902 of Title IX authorizes and directs the Department of Health, Education, and Welfare (hereinafter the "Department") to effectuate the nondiscrimination requirements of section 901 by issuing rules, regulations, and orders of general applicability. Pursuant to section 902, the Department has issued 45 CFR Part 86 (hereinafter "Part 86") which became effective on July 21, 1975.

Section 86.4 of Part 86 requires that every application for Federal financial assistance for any education program or activity shall, as a condition of its approval, contain or be accompanied by an assurance from the applicant satisfactory to the Director of the Office for Civil Rights (hereinafter the "Director") that each education program or activity operated by the applicant and to which Title IX of the Education Amendments of 1972 and Part 86 apply will be operated in compliance with Part 86.

Section 86.4 also provides that the Director will specify the form of the assurance required and the extent to which such assurance will be required of the applicant's subgrantees, contractors, subcontractors, transferees, or successors in interest. Under this authority, HEW Form 639 A (3/77) has been specified as the form of assurance which shall apply to all recipients of and applicants for Federal financial assistance subject to the provisions of Title IX and awarded by the Department.

HEW Form 639 A, (3/77) constitutes a legally enforceable agreement to comply with Title IX and all of the requirements of Part 86. Applicants are urged to read Part 86 and the accompanying preamble. The obligation imposed by Title IX and Part 86 are independent of, and do not alter, the obligation not to discriminate on the basis of sex imposed by Title VII of the Civil Rights Act of 1964 (29 U.S.C. 2000e et seq); Executive Order 11246, as amended; sections 799A and 855 of the Public Health Service Act (42 U.S.C. 295h-9 and 298b-2); and the Equal Pay Act (29 U.S.C. 206 and 206 (d)).

PERIOD OF ASSURANCE

HEW Form 639 A, (3/77) is binding on a recipient for a period during which Federal financial assistance is extended to it by the Department. With respect to Federal financial assistance used to aid in the purchase or improvement of real or personal property, such period shall include the time during which the real or personal property is used for the purpose of providing an education program or activity. A recipient may transfer or otherwise convey title to real and personal property purchased or improved with Federal financial assistance so long as such transfer or conveyance is consistent with the laws and regulations under which the recipient obtained the property and it has obtained a properly executed HEW Form 639 A, (3/77) from the party to whom it wishes to transfer or convey the title unless the property in question is no longer to be used for an education program or activity or the Federal share of the fair market value of such property has been refunded or otherwise properly accounted for the Federal government.

An applicant or recipient which has submitted an HEW Form 639 A, (3/77) to the Director need not submit a separate form with each grant application but may, if the information contained therein remains accurate, simply incorporate by reference, HEW Form 639 A, (3/77), giving the date it was submitted. On the other hand, a revised HEW Form 639 A, (3/77) must be submitted within 30 days after information contained in the submitted form becomes inaccurate, even if no additional financial assistance is being sought.

OBLIGATION OF RECIPIENT TO OBTAIN ASSURANCES FROM OTHERS

As indicated in Article III, paragraph 2, of the Assurance, if a recipient subgrants to, or contracts, subcontracts, or otherwise arranges with an individual, organization, or group to assist in the conduct of an education program or activity receiving Federal financial assistance from the Department or to provide services in connection with such a program or activity, the recipient continues to have an obligation to ensure that the education program or activity is being administered in a nondiscriminatory manner. (See 45 CFR 86.31.) Accordingly, the recipient must take reasonable steps to ensure that the individual, organization, or group in question is complying with Title IX and Part 86. These steps may include, but do not necessarily require, obtaining assurances of compliance from such subgrantees, contractors, and subcontractors in the form of, or modeled on, the HEW Form 639A, (3/77). These steps do require, however, such activities as may be reasonably necessary to monitor the compliance of these subgrantees, contractors, or subcontractors, regardless of whether they have submitted assurances to the recipient. If a recipient is unable to assure itself that any contractor, subcontractor, subgrantee, or other individual or group with whom it arranges to provide services or benefits to its students and em-

ployees does not discriminate on the basis of sex as described in Part 86, the recipient may not initiate or continue contracts, subcontracts, or other arrangements with that individual or group or make subgrants to it.

ADMINISTRATIVELY SEPARATE UNITS

If an educational institution is composed of more than one administratively separate unit, a separate HEW Form 639 A, (3/77) may be submitted for each unit or one may be submitted for the entire institution. If separate forms are submitted, the administratively separate unit for which the form is submitted should be clearly identified in the first line of HEW Form 639 A, (3/77). An "administratively separate unit" is defined as a school, department or college of an educational institution (other than a local educational agency) admission to which is independent of admission to any other component of such institution. See 45 CFR 86.2(o).

STATE EDUCATION AGENCIES

State education agencies are generally not responsible for running pre-school, kindergarten, elementary or secondary programs. Such responsibility is generally left to local education agencies although some supervisory authority may be vested with the state education agency. Consequently, most state agencies should not check the boxes for "Pre-school," "Kindergarten," or "Elementary or Secondary" in Article I of HEW Form 639 A, (3/77). If the state agency runs special programs for the handicapped, including those on the pre-school, kindergarten, elementary, or secondary level, the box marked "Other" should be checked and the appropriate description inserted in the space provided.

Under Article III, paragraph 5, of HEW Form 639A, (3/77) a state education agency may be called upon from time to time to submit reports necessary to determine Title IX compliance by local education agencies within its jurisdiction. The form and content of such reports will be specified by the Director at the time the request is made.

RELIGIOUS EXEMPTION

Applicants or recipients which are educational institutions controlled by a religious organization are not covered by Part 86 to the extent that application of Part 86 would be inconsistent with the religious tenets of the controlling religious organization.

Section 86.12 of Part 86 requires an institution seeking an exemption to submit a written statement to the Director identifying the provisions of Part 86 which conflict with a specific tenet of the controlling religious organization. Such a statement must be signed by the highest ranking official of the educational institution claiming the exemption. An applicant or recipient claiming an exemption is not relieved of its obligations to comply with that portion of Part 86 not specified in its statement to the Director as being inconsistent with the tenets of the controlling religious organization.

Although 86.12 imposes no time restrictions when a recipient or applicant may claim an exemption, applicants or recipients are urged to make such claims when they initially submit HEW Form 639 A, (3/77) by checking the appropriate box in Article I of HEW Form 639 A, (3/77) and attaching thereto the statement required by 86.12(b). Such an approach will avoid misunderstandings on the part of both the Department and the applicant or recipient as to what, if any, action is required under Part 86.

An applicant or recipient will normally be considered to be controlled by a religious organization if one or more of the following conditions prevail:

(1) It is a school or department of divinity; or

NOTICES

(2) It requires its faculty, students or employees to be members of, or otherwise espouse a personal belief in, the religion of the organization by which it claims to be controlled; or

(3) Its charter and catalog, or other official publication, contains explicit statement that it is controlled by a religious organization or an organ thereof or is committed to the doctrines of a particular religion, and the members of its governing body are appointed by the controlling religious organization or an organ thereof, and it receives a significant amount of financial support from the controlling religious organization or an organ thereof.

The term "school or department of divinity" means an institution or a department or branch' of an institution whose program is specifically for the education of students to prepare them to become ministers of religion or to enter upon some other religious vocation, or to prepare them to teach theological subjects. (This definition is adopted from section 1201(1) of the Higher Education Act of 1965, P.L. 89–329.)

[FR Doc.77–8207 Filed 3–17–77;8:45 am]

Office of Education

BILINGUAL EDUCATION PROGRAM

Extension of Closing Date for Receipt of Applications for Fiscal Year 1977

A. *Extended closing date.* Notice is hereby given that the February 15, 1977 deadline for filing applications for awards for State educational agency technical assistance programs under the Bilingual Education Program as authorized by section 721(b) (3) of the Bilingual Education Act (20 U.S.C. 880b–7(b) (3)), and as published in the FEDERAL REGISTER at 41 FR 54818 on December 15, 1976, is extended to 4:00 p.m., Washington, D.C. time, April 6, 1977. Applicants who have already filed such applications will be permitted (but are not required) to review, revise, and refile their applications by the extended deadline.

Applications must be received by the U.S. Office of Education Application Control Center on or before April 6, 1977.

B. *Application sent by mail.* An application sent by mail should be addressed as follows: U.S. Office of Education, Grant and Procurement Management Division, Application Control Center, 400 Maryland Avenue, S.W., Washington, D.C.20202; Attention 13.403H, State Educational Agency Technical Assistance Programs. An application sent by mail will be considered to be received on time by the Application Control Center if:

(1) The application was sent by registered or certified mail not later than April 1, 1977, as evidenced by the U.S. Postal Service postmark on the wrapper or envelope, or on the original receipt from the U.S. Postal Service; or

(2) The application is received on or before the closing date by either the Department of Health, Education, and Welfare, or the U.S. Office of Education mail rooms in Washington, D.C. In establishing the date of receipt the Commissioner will reply on the time-date stamp of such mail rooms or other documentary evidence of receipt maintained by the Department of Health, Education, and Welfare, or the U.S. Office of Education.

c. *Hand delivered applications.* An application to be hand delivered must be taken to the U.S. Office of Education Application Control Center, Room 5673, Regional Office Building Three, 7th and D Streets, S.W., Washington, D.C. Hand delivered applications will be accepted daily between the hours of 8:00 a.m. and 4:00 p.m., Washington, D.C. time, except Saturdays, Sundays, or Federal holidays. Applications will not be accepted after 4:00 p.m. on the closing date.

D. *Other information.* Other information published in the December 15, 1976 Notice is unchanged. (41 FR 54818.)

(20 U.S.C. 880b–7(b) (3).)

(Catalog of Federal Domestic Assistance Number 13.403, Bilingual Education Program.)

Dated: March 14, 1977.

WILLIAM F. PIERCE,
*Acting U.S. Commissioner
of Education.*

[FR Doc.77–8282 Filed 3–17–77;8:45 am]

ENVIRONMENTAL EDUCATION PROGRAM

Closing Date for Receipt of Amendments—Fiscal Year 1977

On December 1, 1976, a notice of closing date for the receipt of grant applications for the Environmental Education Program (20 U.S.C. 1531–1536; 45 CFR Part 183) was published in the FEDERAL REGISTER (41 FR 52721). The notice established a closing date of February 23, 1977.

1. Applications under the Environmental Education Program are subject to the clearinghouse procedures required by OMB Circular A–95. A number of applications which were received by the February 23, 1977 closing date have failed to provide clearinghouse comments with their applications as required by Circular A–95. The Circular requires that applications must be returned to the applicants to fulfill the requirements (41 FR 2051, January 13, 1976, Part 1, Paragraph 6.b.).

2. The regulations for the Environmental Education Program (45 CFR Part 183.31(c)) in accordance with the statute, also (a) require each local educational agency (LEA) applicant to provide a copy of its application to the State educational agency (SEA) of the State within which the applicant was located concurrently with its submission of the application to the U.S. Office of Education; (b) require the LEA to indicate in writing that the application has been submitted to the SEA; and (c) provide that the SEA have opportunity to review and comment on the proposal. A number of applications received by the February 23, 1977 closing date do not indicate any submission to the SEA.

3. The purpose of this notice is to provide each applicant under the Environmental Education Program which did not meet the clearinghouse requirements of OMB Circular A–95 an opportunity to do so, and to provide LEAs, which have not done so, an opportunity to indicate

submission of their applications to appropriate SEAs.

4.(a) With respect to complying with clearinghouse requirements an applicant must provide the Office of Education with: (i) its identifier number, if one has been assigned; (ii) if no number has been assigned, a statement to the effect that the proposal has been submitted to the clearinghouse, where it has been submitted, and the current status of review; (iii) in lieu of either, a copy of the transmittal letter to the clearinghouse, or (iv) the clearinghouse comments, if available.

(b) With respect to applications submitted by LEAs to SEAs for review and comment, a LEA must submit to the Office of Education a copy of the dated cover letter used to forward a copy of the LEA's application to the SEA (or comparable indication of such submission to the SEA). If the LEA has not already submitted a copy of its application to the appropriate SEA, it shall do so no later than the day on which it submits it application amendment to the U.S. Office of Education.

(c) Verifying documentation of compliance with the above requirement must be received by the U.S. Office of Education, Application Control Center, 400 Maryland Avenue SW., Washington, D.C. 20202 on or before March 25, 1977. The copy of the cover letter or other verification is referred to hereinafter as the "amendment" to the application.

A. *Amendments sent by mail.* An amendment sent by mail should be addressed as follows: U.S. Office of Education, Application Control Center, 400 Maryland Avenue SW, Washington, D.C. 20202, Attention: 13.552. An amendment sent by mail will be considered to be received on time by the Application Control Center if:

(1) The amendment was sent by registered or certified mail not later than March 21, 1977, as evidenced by the U.S. Postal Service postmark on the wrapper or envelope, or on the original receipt from the U.S. Postal Service; or

(2) The amendment is received on or before the closing date by either the Department of Health, Education, and Welfare or the U.S. Office of Education mailrooms in Washington, D.C. In establishing the date of receipt, the Commissioner will rely on the time-date stamp of such mail rooms or other documentary evidence of receipt maintained by the Department of Health, Education and Welfare, or the U.S. Office of Education.

B. *Hand delivered amendments.* An amendment to be hand delivered must be taken to the U.S. Office of Education, Application Control Center, Room 5673, Regional Office Building Three, 7th and D Streets SW., Washington, D.C. Hand delivered amendments will be accepted daily between the hours of 8:00 a.m. and 4:00 p.m., Washington, D.C. time except Saturdays, Sundays, or Federal holidays. Amendments will not be accepted after 4:00 p.m. on the closing date.

C. *Cut-off date for receipt of clearinghouse and SEA comments.* The cut-off date for receipt of advice and comments

All communications regarding this Committee should be addressed to Carl T. DeMarco, Acting Executive Secretary, Pharmaceutical Reimbursement Advisory Committee, Office of Quality Standards, Room 16A09, Parklawn Building, 5600 Fishers Lane, Rockville, Maryland 20857.

Dated: March 15, 1977.

CARL T. DEMARCO,
*Acting Executive Secretary,
Pharmaceutical Reimbursement Advisory Committee.*

[FR Doc.77-8189 Filed 3-17-77;8:45 am]

## Office of the Secretary

### ASSURANCE OF COMPLIANCE WITH TITLE IX OF EDUCATION AMENDMENTS OF 1972

The following document (HEW Form 639-A (3/77)) has been designated by the Director, Office for Civil Rights, Department of Health, Education, and Welfare, as the Assurance of Compliance which must be submitted by all applicants for, and recipients of, Federal financial assistance awarded by the Department and subject to the provisions of Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) The requirement that such applicants and recipients submit this Assurance is set forth in the Department's regulation implementing Title IX, at 45 CFR 86.4. The form is similar in content and purpose to that used in implementing Title VI of the Civil Rights Act of 1964. (See 45 CFR 80.4.)

This form (HEW Form 639-A (3/77) is a revision of a previous Assurance form (HEW Form 639 (7/76)) which was mailed to State school officers, superintendents of local education agencies, and presidents of colleges and universities in July 1976 for completion and return by September 30, 1976. Recipients who submitted an acceptable Assurance (HEW) 639, 7/76) are not required to resubmit this revised version.

HEW Form 639-A (3/77) is essentially the same as the previous version, except that Article III,, paragraph 2, of the Title IX Assurance revised in order to clarify the scope of the recipient's obligation to obtain assurances from subgrantees, contractors, or subcontractors. The effect of the revision is to delete the requirement that recipients obtain written assurances from subgrantees, contractors, or subcontractors. Instead, recipients must take reasonable steps to assure themselves that the other entities do not discriminate on the basis of sex.

Additional copies of the Assurance and Explanation may be obtained by writing the Office of Public Affairs, Office for Civil Rights, Department of Health, Education, and Welfare, 330 Independence Avenue SW., Washington, D.C. 20201.

ALBERT T. HAMLIN,
*Acting Director,
Office for Civil Rights.*

MARCH 14, 1977.

(Please read explanation of HEW Form 639 A (3/77)[1] before completing this document.)

Pursuant to 45 CFR 86.4:

----------------------------------------
(Name of applicant or recipient)
----------------------------------------
(Address)
----------------------------------------
(City, State, ZIP Code)
----------------------------------------
(Identifying code—FICE, OE, or IRS)

(hereinafter the "Applicant") gives this assurance in consideration of and for purpose of obtaining Federal education grants, loans, contracts (except contracts of insurance or guaranty), property, discounts, or other Federal financial assistance to education programs or activities from the Department of Health, Education, and Welfare (hereinafter the "Department"), including payments or other assistance hereafter received pursuant to applications approved prior to the date of this assurance.

ARTICLE I—TYPE OF INSTITUTION SUBMITTING ASSURANCE

A. The Applicant is (check the following boxes where applicable):
1. (  ) A State education agency.
2. (  ) A local education agency.
3. (  ) A publicly controlled educational institution or organization.
4. (  ) A privately controlled educational institution or organization.
5. (  ) A person, organization, group or other entity not primarily engaged in education. If this box is checked, insert primary purpose or activity of Applicant in the space provided below:

B. (  ) Claiming a religious exemption under 45 CFR 86.12(b). (If religious exemption is claimed, attach statement by highest ranking official of Applicant identifying the specific provisions of 45 CFR Part 86 which conflict with a specific religious tenet of the controlling religious organization.)

C. The Applicant offers one or more of the following programs or activities (check where applicable):
1. (  ) Pre-school.
2. (  ) Kindergarten.
3. (  ) Elementary or secondary.
4. (  ) Graduate.
5. (  ) Other (such as special programs for the handicapped even if provided on the pre-school, elementary or secondary level). If this box is checked, give brief description below:
6. (  ) Undergraduate (including junior and community colleges).
7. Vocational or technical.
8. Professional.

ARTICLE II—PERIOD OF ASSURANCE

This assurance shall obligate the Applicant for the period during which Federal financial assistance is extended to it by the Department.

ARTICLE III—TERMS AND CONDITIONS

The Applicant hereby agrees that it will:
1. Comply, to the extent applicable to it, with Title IX of the Education Amendments of 1972 (Pub. L. 92-318), as amended, 20

[1] HEW Form 639 A (3/77). This form supersedes HEW Form 639 (7/76). HEW Form 639 (7/76) submitted prior to this revision are valid and recipients need not submit a new assurance.

U.S.C. 1631, 1632, 1683, and 1685 (hereinafter, "Title IX"), and all applicable requirements imposed by or pursuant to the Department's regulation issued pursuant to Title IX, 45 CFR Part 86 (hereinafter, "Part 86"), to the end that, in accordance with Title IX and Part 86, no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any education program or activity for which the Applicant receives or benefits from Federal financial assistance from the Department. (This assurance does not apply to sections 904 (prescribing denial of admission to courses of study on the basis of blindness) and 906 (amending other laws) of Title IX, 20, U.S.C. 1684 and 1686.)

2. Assure itself that all contractors, subcontractors, subgrantees or others with whom it arranges to provide services or benefits to its students or employees in connection with its education program or activity are not discriminating on the basis of sex against these students or employees.

3. Make no transfer or other conveyance of title to any real or personal property which was purchased or improved with the aid of Federal financial assistance covered by this assurance, and which is to continue to be used for an education program or activity and where the fair market value of such property has not been refunded or otherwise properly accounted for to the Federal government, without securing from the transferee an assurance of compliance with Title IX and Part 86 satisfactory to the Director and submitting such assurance to the Department.

4. Submit a revised assurance within 30 days after any information contained in this assurance becomes inaccurate.

5. If the Applicant is a state education agency, submit reports in a manner prescribed by the Director under 45 CFR 80.6(b) as to the compliance with Title IX and Part 86 of local education agencies or other education programs or activities within its jurisdiction.

ARTICLE IV—DESIGNATION OF RESPONSIBLE EMPLOYEE AND ADOPTION OF GRIEVANCE PROCEDURES (CHECK THE APPROPRIATE BOX)

A. 1. (  ) Pursuant to 45 CFR 86.8, the Applicant has adopted grievance procedures and designated the following employee to coordinate its efforts to comply with Part 86 and has notified all of its students and employees of these grievance procedures and the following name, address and telephone number of the designated employee:

2. ----------------------------------------
(Name of employee)

3. ----------------------------------------
(Office address)

4. ----------------------------------------
(Telephone number).

B. 1. (  ) The Applicant is not presently receiving Federal financial assistance subject to Part 86 and, consequently, has not designated a responsible employee or adopted grievance procedures pursuant to 45 CFR 86.8 but will do so immediately upon award of such assistance and will immediately notify the Director, its students and employees of the name, office address, and telephone number of the employee so designated.

ARTICLE V—SELF-EVALUATION (CHECK THE APPROPRIATE BOX)

A. (☐) The Applicant has completed a self-evaluation as required by 45 CFR 86.3(c) and has not found it necessary to modify any of

its policies and practices or to take any remedial steps to come into compliance with Part 86.

B. (☐) The Applicant has completed a self-evaluation as required by 45 CFR 86.3(c) and has ceased to carry out any policies and practices which do not or may not meet the requirements of Part 86 and is taking any necessary remedial steps to eliminate the effects of any discrimination which resulted or may have resulted from adherence to such policies and practices.

C. (☐) The Applicant has not completed the self-evaluation required by 45 CFR 86.3 (c) but expects to have it completed by

------------------------------
(Insert date)

D. (☐) The Applicant is not required to conduct a self-evaluation under 45 CFR 86.3 since it did not receive any Federal financial assistance to which Part 86 applies prior to July 21, 1976.

Date: ------------

------------------------------
(Insert name of applicant)

By ------------------------------

------------------------------
(This document must be signed by an official legally authorized to contractually bind the applicant)

------------------------------
(Insert title of authorized official)

EXPLANATION OF HEW FORM 639 A (3/77), ENTITLED "ASSURANCE OF COMPLIANCE WITH TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 AND THE REGULATION OF THE DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE IN IMPLEMENTATION THEREOF"

Section 901 of Title IX of the Education Amendments of 1972 provides that no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. Section 902 of Title IX authorizes and directs the Department of Health, Education, and Welfare (hereinafter the "Department") to effectuate the nondiscrimination requirements of section 901 by issuing rules, regulations, and orders of general applicability. Pursuant to section 902, the Department has issued 45 CFR Part 86 (hereinafter "Part 86") which became effective on July 21, 1975.

Section 86.4 of Part 86 requires that every application for Federal financial assistance for any education program or activity shall, as a condition of its approval, contain or be accompanied by an assurance from the applicant satisfactory to the Director of the Office for Civil Rights (hereinafter the "Director") that each education program or activity operated by the applicant and to which Title IX of the Education Amendments of 1972 and Part 86 apply will be operated in compliance with Part 86.

Section 86.4 also provides that the Director will specify the form of the assurance required and the extent to which such assurance will be required of the applicant's subgrantees, contractors, subcontractors, transferees, or successors in interest. Under this authority, HEW Form 639 A (3/77) has been specified as the form of assurance which shall apply to all recipients of and applicants for Federal financial assistance subject to the provisions of Title IX and awarded by the Department.

HEW Form 639 A, (3/77) constitutes a legally enforceable agreement to comply with Title IX and all of the requirements of Part 86. Applicants are urged to read Part 86 and the accompanying preamble. The obligation imposed by Title IX and Part 86 are independent of, and do not alter, the obligation not to discriminate on the basis of sex imposed by Title VII of the Civil Rights Act of 1964 (20 U.S.C. 2000e et seq.); Executive Order 11246, as amended; sections 799A and 855 of the Public Health Service Act (42 U.S.C. 295h-9 and 298b-2); and the Equal Pay Act (29 U.S.C. 206 and 206 (d)).

PERIOD OF ASSURANCE

HEW Form 639 A, (3/77) is binding on a recipient for a period during which Federal financial assistance is extended to it by the Department. With respect to Federal financial assistance used to aid in the purchase or improvement of real or personal property, such period shall include the time during which the real or personal property is used for the purpose of providing an education program or activity. A recipient may transfer or otherwise convey title to real and personal property purchased or improved with Federal financial assistance so long as such transfer or conveyance is consistent with the laws and regulations under which the recipient obtained the property and it has obtained a properly executed HEW Form 639 A, (3/77) from the party to whom it wishes to transfer or convey the title unless the property in question is no longer to be used for an education program or activity or the Federal share of the fair market value of such property has been refunded or otherwise properly accounted for the Federal government.

An applicant or recipient which has submitted an HEW Form 639 A, (3/77) to the Director need not submit a separate form with each grant application but may, if the information contained therein remains accurate, simply incorporate by reference, HEW Form 639 A, (3/77), giving the date it was submitted. On the other hand, a revised HEW Form 639 A, (3/77) must be submitted within 30 days after information contained in the submitted form becomes inaccurate, even if no additional financial assistance is being sought.

OBLIGATION OF RECIPIENT TO OBTAIN ASSURANCES FROM OTHERS

As indicated in Article III, paragraph 2, of the Assurance, if a recipient subgrants to, or contracts, subcontracts, or otherwise arranges with an individual, organization, or group to assist in the conduct of an education program or activity receiving Federal financial assistance from the Department or to provide services in connection with such a program or activity, the recipient continues to have an obligation to ensure that the education program or activity is being administered in a nondiscriminatory manner. (See 45 CFR 86.31.) Accordingly, the recipient must take reasonable steps to ensure that the individual, organization, or group in question is complying with Title IX and Part 86. These steps may include, but do not necessarily require, obtaining assurances of compliance from such subgrantees, contractors, and subcontractors in the form of, or modeled on, the HEW Form 639A, (3/77). These steps do require, however, such activities as may be reasonably necessary to monitor the compliance of these subgrantees, contractors, or subcontractors, regardless of whether they have submitted assurances to the recipient. If a recipient is unable to assure itself that any contractor, subcontractor, subgrantee, or other individual or group with whom it arranges to provide services or benefits to its students and em-

ployees does not discriminate on the basis of sex as described in Part 86, the recipient may not initiate or continue contracts, subcontracts, or other arrangements with that individual or group or make subgrants to it.

ADMINISTRATIVELY SEPARATE UNITS

If an educational institution is composed of more than one administratively separate unit, a separate HEW Form 639 A, (3/77) may be submitted for each unit or one may be submitted for the entire institution. If separate forms are submitted, the administratively separate unit for which the form is submitted should be clearly identified in the first line of HEW Form 639 A, (3/77). An "administratively separate unit" is defined as a school, department or college of an educational institution (other than a local educational agency) admission to which is independent of admission to any other component of such institution. See 45 CFR 86.2(o).

STATE EDUCATION AGENCIES

State education agencies are generally not responsible for running pre-school, kindergarten, elementary or secondary programs. Such responsibility is generally left to local education agencies although some supervisory authority may be vested with the state education agency. Consequently, most state agencies should not check the boxes for "Preschool," "Kindergarten," or "Elementary or Secondary" in Article I of HEW Form 639 A, (3/77). If the state agency runs special programs for the handicapped, including those on the pre-school, kindergarten, elementary, or secondary level, the box marked "Other" should be checked and the appropriate description inserted in the space provided.

Under Article III, paragraph 5, of HEW Form 639A, (3/77) a state education agency may be called upon from time to time to submit reports necessary to determine Title IX compliance by local education agencies within its jurisdiction. The form and content of such reports will be specified by the Director at the time the request is made.

RELIGIOUS EXEMPTION

Applicants or recipients which are educational institutions controlled by a religious organization are not covered by Part 86 to the extent that application of Part 86 would be inconsistent with the religious tenets of the controlling religious organization.

Section 86.12 of Part 86 requires an institution seeking an exemption to submit a written statement to the Director identifying the provisions of Part 86 which conflict with a specific tenet of the controlling religious organization. Such a statement must be signed by the highest ranking official of the educational institution claiming the exemption. An applicant or recipient claiming an exemption is not relieved of its obligations to comply with that portion of Part 86 not specified in its statement to the Director as being inconsistent with the tenets of the controlling religious organization.

Although 86.12 imposes no time restrictions when a recipient or applicant may claim an exemption, applicants or recipients are urged to make such claims when they initially submit HEW Form 639 A, (3/77) by checking the appropriate box in Article I of HEW Form 639 A, (3/77) and attaching thereto the statement required by 86.12(b). Such an approach will avoid misunderstandings on the part of both the Department and the applicant or recipient as to what, if any, action is required under Part 86.

An applicant or recipient will normally be considered to be controlled by a religious organization if one or more of the following conditions prevail:

(1) It is a school or department of divinity; or

(2) It requires its faculty, students or employees to be members of, or otherwise espouse a personal belief in, the religion of the organization by which it claims to be controlled; or

(3) Its charter and catalog, or other official publication, contains explicit statement that it is controlled by a religious organization or an organ thereof or is committed to the doctrines of a particular religion, and the members of its governing body are appointed by the controlling religious organization or an organ thereof, and it receives a significant amount of financial support from the controlling religious organization or an organ thereof.

The term "school or department of divinity" means an institution or a department or branch of an institution whose program is specifically for the education of students to prepare them to become ministers of religion or to enter upon some other religious vocation, or to prepare them to teach theological subjects. (This definition is adopted from section 1201(1) of the Higher Education Act of 1965, P.L. 89-329.)

[FR Doc.77-8207 Filed 3-17-77;8:45 am]

Office of Education

BILINGUAL EDUCATION PROGRAM

Extension of Closing Date for Receipt of Applications for Fiscal Year 1977

A. *Extended closing date.* Notice is hereby given that the February 15, 1977 deadline for filing applications for awards for State educational agency technical assistance programs under the Bilingual Education Program as authorized by section 721(b) (3) of the Bilingual Education Act (20 U.S.C. 880b–7(b) (3)), and as published in the FEDERAL REGISTER at 41 FR 54818 on December 15, 1976, is extended to 4:00 p.m., Washington, D.C. time, April 6, 1977. Applicants who have already filed such applications will be permitted (but are not required) to review, revise, and refile their applications by the extended deadline.

Applications must be received by the U.S. Office of Education Application Control Center on or before April 6, 1977.

B. *Application sent by mail.* An application sent by mail should be addressed as follows: U.S. Office of Education, Grant and Procurement Management Division, Application Control Center, 400 Maryland Avenue, S.W., Washington, D.C. 20202; Attention 13.403H, State Educational Agency Technical Assistance Programs. An application sent by mail will be considered to be received on time by the Application Control Center if:

(1) The application was sent by registered or certified mail not later than April 1, 1977, as evidenced by the U.S. Postal Service postmark on the wrapper or envelope, or on the original receipt from the U.S. Postal Service; or

(2) The application is received on or before the closing date by either the Department of Health, Education, and Welfare, or the U.S. Office of Education mail rooms in Washington, D.C. In establishing the date of receipt the Commissioner will reply on the time-date stamp of such mail rooms or other documentary evidence of receipt maintained by the Department of Health, Education, and Welfare, or the U.S. Office of Education.

c. *Hand delivered applications.* An application to be hand delivered must be taken to the U.S. Office of Education Application Control Center, Room 5673, Regional Office Building Three, 7th and D Streets, S.W., Washington, D.C. Hand delivered applications will be accepted daily between the hours of 8:00 a.m. and 4:00 p.m., Washington, D.C. time, except Saturdays, Sundays, or Federal holidays. Applications will not be accepted after 4:00 p.m. on the closing date.

D. *Other information.* Other information published in the December 15, 1976 Notice is unchanged. (41 FR 54818.)

(20 U.S.C. 880b–7(b) (3).)

(Catalog of Federal Domestic Assistance Number 13.403, Bilingual Education Program.)

Dated: March 14, 1977.

WILLIAM F. PIERCE,
*Acting U.S. Commissioner*
*of Education.*

[FR Doc.77-8282 Filed 3-17-77;8:45 am]

ENVIRONMENTAL EDUCATION PROGRAM

Closing Date for Receipt of Amendments— Fiscal Year 1977

On December 1, 1976, a notice of closing date for the receipt of grant applications for the Environmental Education Program (20 U.S.C. 1531–1536; 45 CFR Part 183) was published in the FEDERAL REGISTER (41 FR 52721). The notice established a closing date of February 23, 1977.

1. Applications under the Environmental Education Program are subject to the clearinghouse procedures required by OMB Circular A–95. A number of applications which were received by the February 23, 1977 closing date have failed to provide clearinghouse comments with their applications as required by Circular A–95. The Circular requires that applications must be returned to the applicants to fulfill the requirements (41 FR 2051, January 13, 1976, Part 1, Paragraph 6.b.).

2. The regulations for the Environmental Education Program (45 CFR Part 183.31(c)) in accordance with the statute, also (a) require each local educational agency (LEA) applicant to provide a copy of its application to the State educational agency (SEA) of the State within which the applicant was located concurrently with its submission of the application to the U.S. Office of Education; (b) require the LEA to indicate in writing that the application has been submitted to the SEA; and (c) provide that the SEA have opportunity to review and comment on the proposal. A number of applications received by the February 23, 1977 closing date do not indicate any submission to the SEA.

3. The purpose of this notice is to provide each applicant under the Environmental Education Program which did not meet the clearinghouse requirements of OMB Circular A–95 an opportunity to do so, and to provide LEAs, which have not done so, an opportunity to indicate

submission of their applications to appropriate SEAs.

4.(a) With respect to complying with clearinghouse requirements an applicant must provide the Office of Education with: (i) its identifier number, if one has been assigned; (ii) if no number has been assigned, a statement to the effect that the proposal has been submitted to the clearinghouse, where it has been submitted, and the current status of review; (iii) in lieu of either, a copy of the transmittal letter to the clearinghouse, or (iv) the clearinghouse comments, if available.

(b) With respect to applications submitted by LEAs to SEAs for review and comment, a LEA must submit to the Office of Education a copy of the dated cover letter used to forward a copy of the LEA's application to the SEA (or comparable indication of such submission to the SEA). If the LEA has not already submitted a copy of its application to the appropriate SEA, it shall do so no later than the day on which it submits it application amendment to the U.S. Office of Education.

(c) Verifying documentation of compliance with the above requirement must be received by the U.S. Office of Education, Application Control Center, 400 Maryland Avenue SW., Washington, D.C. 20202 on or before March 25, 1977. The copy of the cover letter or other verification is referred to hereinafter as the "amendment" to the application.

A. *Amendments sent by mail.* An amendment sent by mail should be addressed as follows: U.S. Office of Education, Application Control Center, 400 Maryland Avenue SW, Washington, D.C. 20202, Attention: 13.552. An amendment sent by mail will be considered to be received on time by the Application Control Center if:

(1) The amendment was sent by registered or certified mail not later than March 21, 1977, as evidenced by the U.S. Postal Service postmark on the wrapper or envelope, or on the original receipt from the U.S. Postal Service; or

(2) The amendment is received on or before the closing date by either the Department of Health, Education, and Welfare or the U.S. Office of Education mailrooms in Washington, D.C. In establishing the date of receipt, the Commissioner will rely on the time-date stamp of such mail rooms or other documentary evidence of receipt maintained by the Department of Health, Education and Welfare, or the U.S. Office of Education.

B. *Hand delivered amendments.* An amendment to be hand delivered must be taken to the U.S. Office of Education, Application Control Center, Room 5673, Regional Office Building Three, 7th and D Streets SW., Washington, D.C. Hand delivered amendments will be accepted daily between the hours of 8:00 a.m. and 4:00 p.m., Washington, D.C. time except Saturdays, Sundays, or Federal holidays. Amendments will not be accepted after 4:00 p.m. on the closing date.

C. *Cut-off date for receipt of clearinghouse and SEA comments.* The cut-off date for receipt of advice and comments