# EXHIBIT A

Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

* *Pro hac vice* application forthcoming
*Counsel for Proposed Defendant-Intervenor*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., | |
|     Plaintiffs, | |
|     v. | No. 6:21-CV-00474-AA |
| U.S. DEPARTMENT OF EDUCATION, et al., | |
|     Defendants, | Declaration of Shirley Hoogstra |
|     v. | |
| COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, | |
|   Proposed Defendant-Intervenor. | |

1.      My name is Shirley Hoogstra, and I am the President of the Council for Christian Colleges & Universities, the largest association of protestant Christian institutions of higher learning. Founded in 1976, CCCU's 189 member colleges span the globe, and over 140 of them are located in the United States. Each of CCCU' members is accredited and provides comprehensive educational opportunities to their students, leavened by faith-based instruction and perspectives.

2.      CCCU's stated mission is to "advance the cause of Christ-centered higher education" and help its members "transform lives by faithfully relating scholarship and service to biblical truth." Although CCCU's member colleges represent more than 30 different Christian denominations, they are united by CCCU's mission. Each of CCCU's member institutions strives to further the Christian faith by teaching its students, and serving as models of, genuine Christian living.

3.      Many of CCCU's schools have sincere religious beliefs that squarely conflict with contemporary understandings about sex and gender. Those beliefs are grounded in biblical teachings, including the ideas (1) that a person's biological sex is innate and unchangeable; (2) that marriage, properly understood, is between one man and one woman; (3) that sexual contact is only proper within the confines of such a marriage; and (4) that men and women are equal, yet different, and function best when separated in certain situations and facilities, like college dorms, changing rooms, and restrooms.

4.      Faculty at these member schools are expected to uphold and teach these principles to their students. Guided by the further belief that these biblical teachings should direct Christians living in a community such as a Christian college or university, many of CCCU's member schools

have enacted related codes of conduct for their students, staff, and faculty. Those codes typically require that students live according to the biblical principles described above, including forbidding sexual intimacy outside of marriage or between members of the same sex, forbid or discourage gender transitioning, and forbidding same-sex marriages.

5. If, as Plaintiffs allege (Plaintiffs' Compl. ¶ 3), Title IX's definition of "sex" does include "sexual orientation" and "gender identity," then many of CCCU's member schools have core religious tenets on gender and sexuality that could be subject to challenge or enforcement proceedings under Title IX's substantive requirements. Although CCCU does not agree with Plaintiffs' interpretation, it recognizes the risk that a court or the Department of Education might agree with Plaintiffs on that point.

6. Moreover, the vast majority of CCCU schools have students that receive federal funding. Several of CCCU's member colleges—though certainly not all—have reached out to the Department of Education expressly to guarantee that Title IX's religious exemption applies to them. If not for the Title IX religious exemption, their students might be unable to receive funding in light of the codes of conduct and what religious college professors teach their students about biblical concepts of sex and gender.

7. CCCU's member colleges, eighteen of which are mentioned by name in the Complaint, are religious colleges that have sincere religious beliefs—enshrined in campus policies—about sexuality and gender. CCCU's member schools—whether expressly named or not— are currently protected by a statutory categorical exemption from Title IX's reach, if its application would violate their religious tenets. 20 U.S.C. §1681(a)(3). Specifically, because of the exemption, the proposed intervenors are able to teach their students, without them losing access to federal funding, key religious doctrines, including (1) the importance of keeping sexual activity

3 – Declaration of Shirley Hoogstra

between a husband and wife, *see* Exodus 20:14 (New International Version) ("You shall not commit adultery."); Mark 10:7 (NIV) ("For this reason a man will leave his father and mother and be united to his wife."), Genesis 2:24 (NIV) ("That is why a man leaves his father and mother and is united to his wife, and they become one flesh."); and (2) the importance and divine nature of gender, *see* Genesis 5:1–2 (NIV ) ("When God created mankind, he made them in the likeness of God. He created them male and female and blessed them.")  If this Court grants plaintiffs the relief they seek, then that categorical exemption will be either abolished altogether or narrowed in a way that would condition student federal funding on those schools' abandoning their beliefs and practices about sexuality and gender.

8. CCCU is the leading national voice of Christian higher education. CCCU's member colleges join the organization in order to "advance the cause of Christ-centered higher education" and help its members "transform lives by faithfully relating scholarship and service to biblical truth."  This case directly threatens those goals—if successful, CCCU's member colleges will be forced to either (1) require their students to abandon all federal funding, or (2) continue to accept the funding without the ability to advance their Christian beliefs on sexuality and gender because of the risk of Title IX liability. Regardless of which option they choose, the choices of Christian students will be dramatically narrowed, and the cause of Christ-centered higher education will be hindered.

I solemnly swear and/or affirm under the penalty of perjury that the above is true to the best of my knowledge and belief.

_____           05/12/21
Shirley Hoogstra                                            Date
President
Council of Christian Colleges & Universities

4 – Declaration of Shirley Hoogstra