# EXHIBIT B

Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

* *Pro hac vice* application forthcoming
*Counsel for Proposed Defendant-Intervenor*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., | |
|     Plaintiffs, | |
|         v. | No. 6:21-CV-00474-AA |
| U.S. DEPARTMENT OF EDUCATION, et al., | |
|     Defendants, | INTERVENOR CCCU'S PROPOSED ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT |
|         v. | |
| COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, | |
|     Proposed Defendant-Intervenor. | |

Defendant-Intervenor Applicant Council for Christian Colleges & Universities ("CCCU") hereby answers the Class Action Complaint filed by Plaintiffs as follows.

1. Some of the allegations in the first sentence of Paragraph 1 are Plaintiffs' characterization of its Class Action Complaint and conclusions of law to which no response is required; CCCU denies that any of its Christian College or University members abuse or provide unsafe conditions to thousands of LGBTQ+ students, or injure them mind, body, or soul, but rather seek to minister, support, and care for them physically, emotionally, socially, and spiritually. Plaintiffs cite no evidence to support their allegations of abuse and harm, but likely have in mind a non-peer-reviewed survey commissioned by the Religious Exemption Accountability Project (REAP), the organization sponsoring their lawsuit.[1]

Given its partisan genesis, unknown design authors, and non-peer-reviewed status, there are many reasons to question the validity and results of the REAP study. But even if its findings are taken at face value, many of them undermine and refute the very claims that Plaintiffs bring in this case. Plaintiffs Counsel's study did not compare the experience of LGBTQ+ persons on religious colleges as opposed to secular schools. But when their results are compared with the results of studies carried out by professors and researchers at major academic institutions, they show that LGBTQ+ students face very similar challenges at secular universities as they do at religious ones. Indeed, in some important categories, LGBTQ+ persons at religious colleges appear to do *better* than their peers at secular universities.

These conclusions are revealed in seven national studies of public college campuses, conducted in 2016 and 2017, which were analyzed in the aggregate by researchers at Rutgers

---

[1] College Pulse, *The LGBTQ+ Student Divide: The State of Sexual and Gender Minority Students at Taxpayer-Funded Christian Colleges* (Mar. 15, 2021), https://collegepulse.com/blog/the-lgbtq-student-divide [hereinafter, "REAP Report"].

2 –Intervenor CCCU's Proposed Answer

University, in collaboration with those at Indiana University, University of Minnesota, and UCLA.[2]

The two reports cannot be absolutely compared, as the research questions and design are not identical. But there are questions that are similar enough to allow meaningful comparison. The REAP Report highlights the fact that "four in ten" sexual or gender minority students are "uncomfortable with their sexual identity" at religious college campus.[3] But the Rutgers report indicates that *five* in ten queer-spectrum students and *seven* in ten trans-spectrum students do not feel "respected" on their secular, public campus.[4] Similarly, REAP asserts that about 64% of "gender minority students" at religious colleges report isolation and loneliness, about 18% more than "straight/cis" students.[5] What the Rutgers study reveals, however, is that just over 79%% of queer-spectrum students on public campuses experiences report loneliness, which is 20% more than their straight/cis peers on public campuses, and 15% more than their sexual minority peers on religious campuses.[6]

On more serious questions of personal security, such as sexual harassment, and physical and sexual assault, sexual minority students were considerably *more* likely to suffer such affronts on secular/public campuses than on religious campuses. Sexual minority students were more than

---

[2] Maren Greathouse *et al.*, *Queer-Spectrum and Trans-Spectrum Student Experiences in American Higher Education: The Analyses of National Survey Findings*, Rutgers, Tyler Clementi Center (Aug. 2018), https://rucore.libraries.rutgers.edu/rutgers-lib/60802/ [hereinafter, "Rutgers Study"].

[3] REAP Report, *supra* note 1 at 7.

[4] Rutgers Study, *supra* note 2 at 14.

[5] REAP Report, *supra* note 1 at 9.

[6] Rutgers Study, *supra* note 2 at 23.

3 –Intervenor CCCU's Proposed Answer

three times as likely to be physically assaulted (3% versus 1%) or sexually assaulted (16.6% versus 5%) on secular versus religious campuses.[7]

Once the larger picture is seen, it becomes apparent that our society has a whole has not learned to adequately support and care for our LGBTQ+ friends, students, and sons and daughters. The Rutgers study reveals that the self-rated emotional health for incoming freshman at public universities already shows huge disparities: LGBTQ+ persons were half as likely as straight/cis students to rate themselves as above average in mental health (23% to 48%), and more than three times as likely to rate themselves as below average (42.8% to 13.4%). The situation became even bleaker for certain subsets of LGBTQ+ persons, such as queer and transgender, where only 14% viewed themselves as above average, and 57% as below average in emotional health.[8]

At every level of education, including primary and secondary schools, as well as colleges and universities, whether they be public/secular or religious schools, we all have a lot to learn in better serving and supporting our LGBTQ+ community. But it is problematic and discriminatory, in light of these statistics, to single out and accuse religious colleges of being the primary contributor to the challenges faced by this community. The reality is that the religious campuses, on a number of very important criteria, are providing safer, more welcoming, and more supportive environments than their secular/public counterparts. To single them out for special criticism and punishment is itself discriminatory, the very kind of religious discrimination that both Title IX and our Constitution were designed to protect against.

---

[7] REAP Report, *supra* note 1, at 13; Rutgers Study, *supra* note 2, at 25.

[8] *Id*.

2. CCCU denies that any of its members leave LGBTQ+ students unprotected from the harms outlined, nor that they take actions causing shame, fear, anxiety, or loneliness. Rather, they seek to minister to all such persons and alleviate the conditions described.

3. Insofar as the allegations in the first sentence of Paragraph 3 are Plaintiffs' characterization of its Class Action Complaint and conclusions of law, then no response is required; to the extent they may be deemed to be factual allegations, they are denied.

4. Insofar as the allegations in the first sentence of Paragraph 4 are Plaintiffs' characterization of its Class Action Complaint and conclusions of law, then no response is required; to the extent they may be deemed to be factual allegations, they are denied.

5. Insofar as the allegations in the first sentence of Paragraph 5 are Plaintiffs' characterization of its Class Action Complaint and conclusions of law, then no response is required; to the extent they may be deemed to be factual allegations, they are denied.

6. Insofar as the allegations in the first sentence of Paragraph 6 are Plaintiffs' characterization of its Class Action Complaint and conclusions of law, no response is required; to the extent they may be deemed to be factual allegations, they are denied.

## JURISDICTION AND VENUE

7. The allegations in Paragraph 7 are conclusions of law to which no response is required; to the extent they may be deemed to be factual allegations, they are denied.

8. The allegations in Paragraph 8 are conclusions of law to which no response is required; to the extent they may be deemed to be factual allegations, they are denied.

9. The allegations in Paragraph 9 are conclusions of law to which no response is required; to the extent they may be deemed to be factual allegations, they are denied.

10. The allegations in Paragraph 10 are conclusions of law to which no response is required; to the extent they may be deemed to be factual allegations, they are denied.

## PARTIES

11. – 45. The CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraphs 11 to 45 regarding the residency, student status, tax and borrowing status, and validity of the declarations of the Plaintiffs. It denies that it or any of its members has participated in unlawful or injurious discrimination against any of the Plaintiffs, but rather has sought to protect and advance their physical, mental, social, and spiritual well-being.

46. The CCCU admits the description of the U.S. Department of Education as generally accurate.

47. The CCCU admits the description of the U.S. Department of Education's Office of Civil Rights as generally accurate, but the remainder of the allegations in the paragraph address legal rather than factual matters and characterize Title IX of the Education Amendments of 1972, and its implementing regulations, which speak for themselves and are the best evidence of their content; to the extent the allegations are inconsistent with the statute and the regulations, they are denied.

48. CCCU acknowledges, upon information and belief, that Suzanne Goldberg is the Acting Assistant Secretary, Office of Civil Rights, at the Department of Education, as alleged in paragraph 48.

## FACTUAL ALLEGATIONS

### PLAINTIFFS AND THEIR COLLEGES OR UNIVERSITIES

49. – 471. CCCU lacks sufficient knowledge or information to form a belief as to the truth of most of the allegations in Paragraphs 49 to 471, as these are claims about the personal

backgrounds, experiences, and perspectives of the thirty plaintiffs in this case. Many of the allegations have to do with personal stories about which Intervenors have no knowledge. Insofar as the allegations are about homophobia, discrimination, harassment, and mistreatment by CCCU member colleges and universities, CCCU denies these allegations. It affirms, rather, that its member schools seek to minister and support LGBTQ+ persons as persons made in the image and likeness of God, respecting their human dignity. It asserts that all students that apply to these schools, including Plaintiffs, are informed of these teachings as well as the lifestyle standards that flow from them and that are expressed in students code of conduct. As a matter of policy and practice, students that attend these schools sign statements acknowledging the receipt of these codes of conduct and their willingness to abide by them.

## CLASS ACTION ALLEGATIONS

472. The allegations in Paragraph 472 are conclusions of law to which no response is required; to the extent they may be deemed to be factual allegations, they are denied.

473. The allegations in Paragraph 473 are conclusions of law to which no response is required; to the extent they may be deemed to be factual allegations, they are denied.

474. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in the first part of Paragraph 474, but denies that its members unlawfully discriminate against LGBTQ+ students.

475. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in the first sentence of Paragraph 475, it denies that its members unlawfully discriminate against LGBTQ+ students or allow harassment and bullying of them. It acknowledges that there are higher levels of anxiety, eating disorders, alcohol abuse and sexual

and physical violence among the LGBTQ+ communities than in the heterosexual and cisgender communities, but denies that these realities have to do with the actions of its member schools.

476. CCCU denies that many LGBTQ+ students are expelled, disciplined, or punished, and denies that its member schools use conversion therapy.

477. CCCU acknowledges that its member schools are religiously exempt from the Title IX guidelines regarding sexuality and gender, insofar as these guidelines are contrary to their Christian beliefs regarding gender and sexuality.

478. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 478, and on that basis they are denied.

## The Title IX Religious Exemption

479. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 479, and on that basis they are denied; it further denies that its member institutions unlawfully discriminate against LGBTQ+ students.

480. The allegations in Paragraph 480 are conclusions of law to which no response is required.

481. The allegations in Paragraph 481 are conclusions of law to which no response is required.

482. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 482, and on that basis they are denied.

483. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 483, and on that basis they are denied.

484. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 484, and on that basis they are denied.

485. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 485, and on that basis they are denied.

486. The allegations in Paragraph 486 are conclusions of law to which no response is required.

487. The allegations in Paragraph 487 are conclusions of law to which no response is required.

488. The allegations in Paragraph 488 are conclusions of law to which no response is required.

489. The allegations in Paragraph 489 are conclusions of law to which no response is required.

490. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 490, and on that basis they are denied.

491. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 491, and on that basis they are denied.

## CAUSE OF ACTION

### First Cause of Action

**(42 U.S.C. Sect. 1983 – Substantive Due Process/Equal Protection)**

492. Intervenor CCCU re-alleges and incorporates the preceding paragraphs.

493. The allegations in Paragraph 493 are conclusions of law to which no response is required.

494. The allegations in Paragraph 494 are conclusions of law to which no response is required.

495. The allegations in Paragraph 495 are conclusions of law to which no response is required.

496. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 496, and on that basis they are denied.

497. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 497, and on that basis they are denied.

498. CCCU acknowledges that LGBTQ+ youth suffer from significant mental and physical health disparities, but denies that this primarily or even significantly relates to bullying and harassment at school.

499. The allegations in Paragraph 499 are conclusions of law to which no response is required.

500. The allegations in Paragraph 500 are conclusions of law to which no response is required, except CCCU denies that any of its members have policies or practices that harm an unpopular group.

501. CCCU denies that either the Department of Education or the CCCU members schools either desire to, or indeed act to, harm sexual and gender minority students, but rather that they seek the physical, emotional, social and spiritual well-being of such students.

502. The allegations in Paragraph 502 are conclusions of law to which no response is required.

503. The allegations in Paragraph 503 are conclusions of law to which no response is required.

504. The allegations in Paragraph 504 are conclusions of law to which no response is required.

505. The allegations in Paragraph 505 are conclusions of law to which no response is required.

506. The allegations in Paragraph 506 are conclusions of law to which no response is required.

507. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 507, and on that basis they are denied. It does assert that all students that apply to member colleges are informed of the Christian standards of gender and sexuality upheld by these schools before they enroll, and the students do agree to abide by these standards when they enroll.

508. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 508, and on that basis they are denied. It does assert that all students that apply to member colleges are informed of the Christian standards of gender and sexuality upheld by these schools before they enroll, and the students do agree to abide by them when they enroll.

509. The allegations in Paragraph 509 are conclusions of law to which no response is required, except that CCCU denies that its member schools demean or stigmatize sexual and gender minorities.

510. The allegations in Paragraph 510 are conclusions of law to which no response is required, except CCCU denies that its members schools cause harms to sexual and gender minority students.

511. The allegations in Paragraph 511 are conclusions of law to which no response is required.

512. The allegations in Paragraph 512 are conclusions of law to which no response is required.

## Second Cause of Action

### (42 U.S.C. Sect. 1983 – Establishment Clause)

513. Intervenors reallege and incorporate the preceding paragraphs.

514. The allegations in Paragraph 514 are conclusions of law to which no response is required.

515. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 515, and on that basis they are denied.

516. The allegations in Paragraph 516 are conclusions of law to which no response is required.

517. The allegations in Paragraph 517 are conclusions of law to which no response is required.

518. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 518, and on that basis they are denied.

519. CCCU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 519, and on that basis they are denied.

520. CCCU denies the allegations found in Paragraph 520.

521. CCCU denies the allegations found in Paragraph 521.

522. CCCU denies the allegations found in Paragraph 522.

523. CCCU denies the allegations found in Paragraph 523.

524. The allegations in Paragraph 524 are conclusions of law to which no response is required, insofar as a response is required, CCCU denies the allegations.

**REQUEST FOR RELIEF**

CCCU denies that Plaintiffs are entitled to the relief set forth in Plaintiffs' Class Action Complaint or to any relief whatsoever based on any claim that a named defendant acted or failed to act according to the law regarding Title IX protections, constitutional standards, or any other legal standard in relation to LGBTQ+ students, or any related procedural claim. CCCU denies each and every allegation not previously admitted or otherwise qualified as it relates to actions purportedly impacting LGBTQ+ persons.

**WHEREFORE,** CCCU requests that this Court:

1. Deny Plaintiffs the relief that they seek and further;
2. The Court deny the Plaintiffs' request for class certification;
3. Issue a Declaratory Judgment against Plaintiffs on all claims for relief for which Plaintiffs seeks declaratory relief;
4. Deny all requests for injunctions sought by Plaintiffs;
5. Award CCCU its costs and attorney fees to the extent provide for by law; and
6. Grant CCCU any other such relief as the Court deems just and proper.

**<u>Affirmative and Other Defenses</u>**

CCCU alleges the following affirmative defenses to Plaintiffs' Class Action Complaint.

**First Affirmative Defense
(Lack of Jurisdiction)**

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that this Court lacks jurisdiction over some or all of Plaintiffs' claims.

## Second Affirmative Defense
## (Lack of Standing)

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that Plaintiffs lack standing to pursue some or all of its claims.

## Third Affirmative Defense
## (Sovereign Immunity)

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that some or all of Plaintiffs' claims are barred by the doctrine of sovereign immunity.

## Fourth Affirmative Defense
## (No Private Right of Action)

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that some or all of Plaintiffs' claims are barred because no private right of action exists that would allow such claims to be brought.

## Fifth Affirmative Defense
## (Lack of Justiciability - Ripeness)

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that some or all of Plaintiffs' claims are not justiciable because they are not ripe for judicial review.

## Sixth Affirmative Defense
## (Failure to Exhaust Administrative Remedies)

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that

the Court should dismiss some or all of Plaintiffs' claims for failure to exhaust administrative remedies.

## Seventh Affirmative Defense
### (Failure to Exhaust Non-Administrative Remedies)

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that the Court should dismiss some or all of Plaintiffs' claims for failure toexhaust non-administrative remedies.

## Eighth Affirmative Defense
### (Failure to Join Indispensable Parties)

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that the Court should dismiss some or all of Plaintiffs' claims for failure to join an indispensable party.

## Ninth Affirmative Defense
### (Failure to State a Claim for Relief)

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that the Court should dismiss some or all of Plaintiffs' Claims for failure to state a claim upon which relief can be granted.

## Tenth Affirmative Defense
### (Estoppel)

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that some or all of Plaintiffs' claims are barred by the doctrine of estoppel.

**Eleventh Affirmative Defense(Waiver)**

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that some or all of Plaintiffs' claims are barred by Plaintiffs' waiver.

**Twelfth Affirmative Defense**
**(Statute of Limitations)**

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that some or all of Plaintiffs' claims are barred by the applicable statute of limitations.

**Thirteenth Affirmative Defense**
**(Laches)**

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, that by virtue of Plaintiffs' unreasonable delay in commencing this action, which delay has caused prejudice to its constituent Colleges and Universities, certain of the purported claims for relief asserted in the First Amended Complaint are barred by the doctrine of laches.

**Fourteenth Affirmative Defense**
**(Improper Forum)**

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU is informed and believes, and on that basis alleges, Plaintiffs have brought their lawsuit in the improper forum.

**Fifteenth Affirmative Defense**
**(Incorporation of All Applicable Defenses)**

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, CCCU asserts all applicable defenses pled by all other defendants to this Action, and hereby incorporates the same herein by reference

**Sixteenth Affirmative Defense**
**(Reservation of Right to Assert Additional Defenses)**

As a separate and distinct affirmative defense to the Class Action Complaint and to each claim for relief contained therein, Plaintiffs have failed to particularize its claims, or that CCCU's lack of knowledge of the circumstances surrounding Plaintiffs' claims prevents it from asserting all applicable defenses at this time. Upon further particularization of the claims by Plaintiffs or upon discovery of further information concerning their claims, CCCU reserves the right to assert additional defenses.

DATED this 12th day of May, 2021.

Respectfully submitted,

_____
Herbert G. Grey
OSB #810250
4800 SW Griffith Drive, Suite 320
Beaverton, OR 97005-8716
Telephone: (503)641-4908
Email: herb@greylaw.org

Gene C. Schaerr (DC Bar # 416368)*
Nicholas P. Miller (MI Bar# P70694)*
Joshua J. Prince (DC Bar # 1685532)*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060
Email: gschaerr@schaerr-jaffe.com
* Pro hac vice application forthcoming

*Counsel for Defendant-Intervenor*
*Council for Christian Colleges & Universities*

17 –Intervenor CCCU's Proposed Answer

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Answer in Intervention in support was served on the following via the indicated method(s) of service:

_____    **MAILING** certified full, true and correct copies thereof in a sealed, first class postage-prepaid envelope, addressed to the attorney(s) shown above at their last known office address(es), and deposited with the U.S. Postal Service at Portland/Beaverton, Oregon, on the date set forth below.

_____    **ELECTRONIC FILING** utilizing the Court's electronic filing system

_____    **EMAILING** certified full, true and correct copies thereof to the attorney(s) shown above at their last known email address(es) on the date set forth below.

_____    **HAND DELIVERING** certified full, true and correct copies thereof to the attorney(s) shown above at their last known office address(es), on the date set forth below.

_____    **OVERNIGHT COURIER** mailing of certified full, true and correct copies thereof in a sealed, prepaid envelope, addressed to the attorney(s) shown above at their last known office address(es), on the date set forth below.

DATED this 12th day of May, 2021

_____
Herbert G. Grey
OSB #810250

*Counsel for Defendant-Intervenor Council for Christian Colleges & Universities*