EXHIBIT C

Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060
* Pro hac vice application forthcoming
Counsel for Proposed Defendant-Intervenor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

ELIZABETH HUNTER, et al.,

                Plaintiffs,

       v.

U.S. DEPARTMENT OF EDUCATION,
et al.,

                Defendants,

       v.

COUNCIL FOR CHRISTIAN COLLEGES
& UNIVERSITIES,

    Proposed Defendant-Intervenor.

No. 6:21-CV-00474-AA

INTERVENOR CCCU'S PROPOSED
MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ 3

LR 7-1(A) CERTIFICATION .......................................................................................... 6

MOTION AND INTRODUCTION.................................................................................. 6

BACKGROUND: THE IMPORTANCE OF TITLE IX'S RELIGIOUS EXEMPTION TO
STUDENTS, INCLUDING LGBTQ+ STUDENTS .................................................... 7

ARGUMENT ................................................................................................................. 10

I.   Plaintiffs Cannot Demonstrate Standing.............................................................. 10

   A.  The Department of Education does not make distinctions on the basis of gender or
       sexuality, and thus has not caused Plaintiffs' alleged injuries.......................... 11

   B.  The Department cannot require the Christian schools to modify their religious identity,
       beliefs and codes, and thus a favorable ruling cannot redress Plaintiffs' alleged injuries.12

II.  Plaintiffs Have Failed To Name Necessary Parties That Are Beyond The Court's
     Jurisdiction.......................................................................................................... 13

   A.  The religious schools named in the Complaint are necessary parties to this action. ........ 14

   B.  It would not be feasible to join many of the necessary parties because the Court lacks
       personal jurisdiction over them.......................................................................... 17

   C.  This Court should dismiss the case because the action cannot proceed without the named
       religious schools................................................................................................. 18

III. Plaintiffs Have Failed To State A Claim Upon Which Relief Can Be Granted. ................... 20

   A.  The Federal Government and its agencies are not proper targets of lawsuits brought under
       42 USC §1983 or as *Bivens* federal constitutional tort claims.......................... 20

   B.  None of Plaintiffs' constitutional claims are valid against the Department of Education.21

CONCLUSION.............................................................................................................. 25

CERTIFICATE OF SERVICE ...................................................................................... 26

CERTIFICATE OF COMPLIANCE .............................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright,*
    468 U.S. 737 (1984).................................................................................. 12

*Corporation of the Presiding Bishop v. Amos,*
    483 U.S. 327 (1986)........................................................................ 7, 21, 22

*Bivens v. Six Unknown Named Agents,*
    403 U.S. 388 (1971)................................................................................. 20

*Confederated Tribes of Chehalis Indian Rsrv. v. Lujan,*
    928 F.2d 1496 (9th Cir. 1991) ................................................................ 19

*County of Fresno v. Andrus,*
    622 F.2d 436 (9th Cir.1980) ................................................................... 16

*Cutter v. Wilkinson,*
    544 U.S. 709 (2005).............................................................................. 7, 22

*EEOC v. Peabody Western Coal Co.,*
    400 F.3d 774 (9th Cir. 2005) ............................................................ 14, 17

*Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel,*
    883 F.2d 890 (10th Cir. 1989) ………………………………………………… 19

*Espinoza v. Montana Department of Revenue,*
    140 S. Ct. 2246 (2020)........................................................................... 23

*Fed. Deposit Ins. Corp. v. Meyer,*
    510 U.S. 471 (1994)................................................................................ 21

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,*
    326 U.S. 310 (1945)................................................................................ 17

*Ipsl LLC v. College of Mount Saint Vincent,*
    383 F.Supp.3d 1128 (D. Or. 2019) .................................................. 17, 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014)................................................................................ 12

*Los Angeles v. Lyons,*
    461 U.S. 95 (1983).................................................................................. 10

*Makah Indian Tribe v. Verity,*
    910 F.2d 555 (9th Cir. 1990) ............................................................ 14, 15

*Martinez v. Clark Cty., Nev.,*
    846 F. Supp. 2d 1131 (D. Nev. 2012).................................................... 15

*Morse v. North Coast Opportunities, Inc.,*
    118 F.3d 1338 (9th Cir.1997) ................................................................ 20

*Obergefell v. Hodges*,
   576 U.S. 644 (2015) ................................................................................................ 7, 8

*Paiute-Shoshone Indians of Bishop Colony, Cal. v. City of Los Angeles*,
   637 F.3d 993 (9th Cir. 2011) ......................................................................... 14

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
   483 U.S. 522 (1987) ................................................................................. 20, 21

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ......................................................................... 17

*Shermoen v. United States*,
   982 F.2d 1312 (9th Cir. 1992) ............................................................ 14, 15, 16

*Simon v. Eastern Ky. Welfare Rights Organization*,
   426 U.S. 26 (1976) ............................................................... 10, 11, 12, 13

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ......................................................................................... 11

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.*,
    450 U.S. 707 (1981) ...................................................................................23

*Union Pac. R.R. Co. v. Runyon*,
   320 F.R.D. 245 (D. Or. 2017) ........................................................................ 15

*Ward v. Apple Inc.*,
   791 F.3d 1041 (9th Cir. 2015) ....................................................................... 14

*Warth v. Seldin*,
   422 U.S. 490 (1975) ....................................................................................... 11

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ....................................................................................... 10

*Zelman v. Simmons-Harris*,
   536 U.S. 639 (2002) ....................................................................................... 23

**Constitutional Provisions**

U.S. Const. amend. XIV, Sec. 1 ........................................................................ 21

**Statutes**

20 U.S.C. § 1011a. ............................................................................................... 9

20 USC § 1681(a) ......................................................................................... 10, 22

42 U.S.C. § 1983 ...............................................................................................20

42 U.S.C. § 1988 ............................................................................................... 19

42 U.S.C. § 2000e-1 .......................................................................................... 22

**Other Authorities**

154 Cong. Rec. H7658-03 (2008)............................................................................... 9

7 C. Wright & A. Miller,
*Federal Practice & Procedur*e ............................................................................... 14

College Pulse,
*Religious Exemption Accountability Project* (March 2021),
https://f.hubspotusercontent00.net/hubfs/5666503/LGBTQStudentDivide_March2021Report_
REAP_CollegePulse.pdf.................................................................................... 8, 9

Concordia University Irvine,
*Concordia Serves,* https://www.cui.edu/aboutcui/community/serving/concordia-serves .......... 9

Ellen B. Stolzenberg, et al.,
Higher Education Research Institute at UCLA, *Undergraduate Teaching Faculty: The HERI
Survey*, 2016-2017 (2019), https://heri.ucla.edu/monographs/HERI-FAC2017-
monograph.pdf............................................................................................... 9

Maren Greathouse *et al.*,
*Queer-spectrum and trans-spectrum student experiences in American higher education: the
analyses of national survey findings*, Rutgers, Tyler Clementi Center 23–25 (Aug. 2018),
https://rucore.libraries.rutgers.edu/rutgers-lib/60802/ ............................................... 8

Tanya Loudenback,
*The 25 safest college campuses in America*, Business Insider (Jan. 12, 2016),
http://www.businessinsider.com/safest-college-campuses-in-america-2016-1 ....................... 9

**Rules**

Fed. R. Civ. P. 12(b) .................................................................................... *passim*

Fed. R. Civ. P. 19(a) ................................................................................. 13, 14, 15

## LR 7-1(A) CERTIFICATION

The proposed intervenor certifies that, as required by LR 7-1(A), it has conferred with counsel for the parties, who [PROVIDE RESULTS OF CONFERENCE, AFTER INTERVENTION GRANTED].

## MOTION AND INTRODUCTION

Defendant-Intervenor Council for Christian Colleges and Universities ("CCCU") hereby moves to dismiss Plaintiffs' Complaint Brought under Federal Rules of Civil Procedure 12(b)(1), (6), and (7), the Motion asks this Court to dismiss Plaintiffs' Complaint on three independent grounds: (1) for lack of standing and redressability, (2) for failure to name all necessary parties, and (3) for failure to state a claim upon which relief can be granted.

CCCU makes this motion because Plaintiffs' case seeks relief that would not resolve or redress their alleged injuries, against a party that cannot provide them relief, in the absence of the actual real parties in interest and based on claims that are without adequate legal and jurisdictional grounds. Even if successful, Plaintiffs' suit would *harm* and limit the freedom and choices of the very LGBTQ+ community the Plaintiffs wish to protect. Further, it would threaten the religious identities and freedoms of religious colleges and universities nationwide, including CCCU's members, by undermining not only their statutory Title IX rights, but also their First and Fifth Amendment rights, without allowing those institutions to be heard directly here.

But even if the Court reached the merits of Plaintiffs' claims, it would have no choice but to find them legally frivolous. Plaintiffs' equal-protection claim must be dismissed because they have not alleged and cannot allege facts sufficient to show that the *Department*, in recognizing the Title IX religious exemption, is engaged in any type of discrimination based on sexual orientation or gender identity. And their Establishment Clause challenge to the Title IX exemption is squarely foreclosed by the Supreme Court's 9-0 decision in *Corporation of the Presiding Bishop v. Amos*,

483 U.S. 327 (1986)*, and its 9-0 decision in *Cutter v. Wilkinson*, 544 U.S. 709 (2005), where the Court rejected the same kinds of challenge to other, similar religious exemptions and accommodations.

In short, rather than a serious effort to invalidate the Title IX exemption, moreover, Plaintiffs' claims appear to be driven by the Plaintiffs' desire to tell their stories—a desire that is certainly appropriate in an appropriate forum. But the Plaintiffs' stories—important as they are— cannot overcome the reality that here, there can be no well-grounded belief that the Department has acted unlawfully or that the Title IX exemption is unconstitutional, in general or as applied to LGBT students. That exemption is fully within Congress's power. And it serves the important goal of promoting a diversity of viewpoints and approaches in educating the Nation's precious young people.

For all the above reasons, addressed more fully below, CCCU asks this Court to dismiss Plaintiffs' Complaint.

## BACKGROUND: THE IMPORTANCE OF TITLE IX'S RELIGIOUS EXEMPTION TO STUDENTS, INCLUDING LGBTQ+ STUDENTS

Before considering the legal reasons for dismissing Plaintiffs' claims, it is important for the Court to understand the stakes in this lawsuit. Many religious colleges and universities throughout America—including the vast majority of CCCU's members—rely heavily on Title IX's religious exemption to provide the kind of faith-filled educational experience that is critical to most of their students, not to mention their families. That is because the implementation and enforcement of Title IX, under the authority of the federal Department of Education, often reflects secular standards and mores that are in tension with the sex-related standards and mores embraced by many religious colleges. As the Supreme Court emphasized in *Obergefell v. Hodges,* even where those standards and mores run counter to prevailing culture, these "decent and honorable"

religious beliefs "long ha[ve] been held—and continue[] to be held—in good faith by reasonable and sincere people[,]" especially people of faith.  576 U.S. 644, 657, 672 (2015).  The Title IX exemption is thus critical to the ability of educational communities organized by such "reasonable and sincere people" to convey their faith to the next generation of believers.

Despite the tension with prevailing culture, moreover, many students at religious colleges not only identify as LGBTQ+, but also find meaning and joy in attending an institution with teachings and standards that reflect traditional Judeo-Christian sexual ethics.  In that regard, Plaintiffs' claim that religious colleges systematically cause them and their peers various kinds of harm is refuted by the very study on which they appear to rely—a non-peer reviewed survey commissioned by the Religious Exemption Accountability Project (REAP), the organization sponsoring their lawsuit.  There are, of course, many reasons to question the findings of a non-peer reviewed report designed by unknown persons that was commissioned to deal with issues raised in a lawsuit by the plaintiffs' own lawyers.  But even if the study's findings are taken at face value, that very study, when compared with the results of peer-reviewed studies by professional researchers at major academic institutions, show that, in many important categories, LGBTQ+ persons at religious colleges do better, and are treated better, than at secular universities. [1]

---

[1] These conclusions are supported by a meta-analysis of seven national studies spear-headed by Rutgers University and supported by Indiana University, University of Minnesota, and UCLA. A full comparison of these two studies is not practicable in this context, but a longer discussion is included in our proposed answer at ¶ 1.  When compared with the REAP study, the Rutgers study shows that that sexual and gender minority students do measurably worse than their heterosexual/cis-gender peers at *both* religious and secular/public colleges.  Further, the REAP report itself shows that, in some important respects, such as acceptance on campus, rates of loneliness, and rate of physical and sexual abuse, LGBTQ+ students do measurably and substantially better at religious colleges than they do at their secular, public counterparts.  *Compare* Maren Greathouse *et al.*, *Queer-spectrum and trans-spectrum student experiences in American higher education: the analyses of national survey findings*, Rutgers, Tyler Clementi Center 23–25 (Aug. 2018), https://rucore.libraries.rutgers.edu/rutgers-lib/60802/, *with* College Pulse, *Religious Exemption Accountability Project* 7–9 (March 2021),

As Congress has repeatedly recognized, moreover, religious colleges and universities play an important role in U.S. higher education. See, *e.g.,* 154 Cong. Rec. H7658-03 (2008); 20 U.S.C. §1011a(a)(2).  Beyond academic excellence competitive with secular schools, religious colleges and universities offer students advantages—including advantage for LGBTQ+ students—that are not as readily available in secular institutions. These include not only the opportunity to study academic disciplines from the standpoint of faith, but also the opportunity to naturally integrate community service into higher education[2]; enjoy greater physical safety[3]; and experience a broader diversity of philosophical and political perspectives among professors and students.[4]

In short, as a matter of national education policy, it makes no sense to strip the many religious colleges with "reasonable and sincere" Judeo-Christian views of human sexuality of their Title IX exemption, thereby threatening those colleges' continued existence.   But even if this were defensible as a policy matter, this lawsuit does not provide an appropriate, judicially cognizable means of accomplishing that result.

---

https://f.hubspotusercontent00.net/hubfs/5666503/LGBTQStudentDivide_March2021Report_REAP_CollegePulse.pdf.

[2]    *See, e.g.,* Concordia University Irvine, *Concordia Serves,* https://www.cui.edu/aboutcui/community/serving/concordia-serves ("Last year, over 1,000 members of our CUI family stepped into the community on one day, called to give to others from the abundance they have been given.").

[3] Tanya Loudenback, *The 25 safest college campuses in America*, Business Insider (Jan. 12, 2016), http://www.businessinsider.com/safest-college-campuses-in-america-2016-1 (18 of the top 25 safest colleges in America are religious).

[4] Ellen B. Stolzenberg, et al., *Undergraduate Teaching Faculty: The HERI Survey* 2016-2017, Higher Education Research Institute at UCLA 38 (2019), https://heri.ucla.edu/monographs/HERI-FAC2017-monograph.pdf.

## ARGUMENT

### I.  Plaintiffs Cannot Demonstrate Standing.

At the threshold, Plaintiffs' case does not meet the basic requirements of justiciability, and it should be dismissed under FRCP 12(b)(1) for lack of subject matter jurisdiction.  Redressability of injury is a fundamental question of standing, and Plaintiffs are suing a party that neither discriminates against them, nor provides the basis for others to so discriminate.  Defendant Department of Education simply recognizes a statutory exemption, found at 20 U.S.C. §1681(a)(3), that Congress itself created, and which Intervenors believe the Constitution requires. Plaintiffs are thus asking the Department to take actions it is unable to do: either rewrite a Congressional statute, or order Christian schools to change their codes of conduct based on their fundamental beliefs.  Both of these actions are ultra vires—beyond the power, authority, and jurisdiction of the Department. Ironically, moreover, if the plaintiffs prevailed, they would simply deny themselves and other members of the LGBTQ+ community the ability to obtain federal financing to attend many religious schools.  This would have the result of limiting, not expanding, Plaintiffs' choices and freedoms.

Justiciability in federal court is measured by Article III's case or controversy standard, and it contains three requirements. First and foremost, there must be alleged (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)).  Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976). And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. *Id.* at

45–46; *see also Warth v. Seldin*, 422 U.S. 490, 505 (1975).  As the Supreme Court has taught, "[t]his triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103–04 (1998).  For a case to be justiciable, Plaintiffs have the burden of proof to satisfy all three prongs. *Ibid.*

Prong one, regarding actual, concrete injury, is a question of fact that cannot be adjudicated by this Court because it lacks the proper parties before it to determine the truth of Plaintiffs' allegations of injury.  But the Court need not consider the question of injury because, even if all of Plaintiffs' allegations are true, they simply do not meet points two and three of this triad, causation and redressability.  The alleged acts of discrimination simply were not those of the Department.  Further, the Department cannot force or require Christian colleges or universities to reverse their religious beliefs and student conduct codes related to these issues.

**A. The Department of Education does not make distinctions on the basis of gender or sexuality, and thus has not caused Plaintiffs' alleged injuries.**

Plaintiffs allege that they have been caused a variety of harms by certain Christian colleges and universities that uphold Christian standards of sexuality and gender on their campuses and in their student codes of conduct.  They complain that the Department allows this to occur by extending an exemption to religious colleges from the non-discrimination requirements of Title IX.  But they do not claim the Department itself discriminates against LGBTQ+ persons, and neither do they allege that the Department could force the schools to change their policies.

Plaintiffs have thus failed the requirement of redressability:  The "case or controversy" limitation of Art. III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not an injury that results from the independent action

of some third party not before the court.  *Simon*, 426 U.S. at 41–42.  As the Supreme Court held in *Allen v. Wright*, 468 U.S. 737 (1984), abrogated as to other issues by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), alleged discrimination by third parties, even if empowered by tax-exemption or other state support, cannot be the basis of standing for suit against the government agency responsible for the tax exemption or support.  *See id.* at 757–60 (parents of children could not sue IRS for tax exemptions given unlawfully to private schools they could not attend).  In *Allen*, the Court ruled that the injury to the plaintiffs were highly indirect and insufficient to establish standing because they "result[] from the independent action of some third party [private schools] not before the court." *Id.* at 757. The same is true here.

**B. The Department cannot require the Christian schools to modify their religious identity, beliefs and codes, and thus a favorable ruling cannot redress Plaintiffs' alleged injuries.**

Plaintiffs also seek a declaration that religious colleges and universities can no longer benefit from the religious school exemption of Title IX.  But such a declaration would not invalidate the conduct and lifestyle codes of these universities.  Rather, it would merely prevent students like Plaintiffs from receiving federal funds to attend these schools.

This redressability problem is well illustrated in *Simon*, 426 U.S. at 41–42.  There the Court held that standing to challenge a tax exemption for hospitals could not be founded on the asserted connection between the grant of tax-exempt status and the hospitals' policy concerning the provision of medical services to indigents. The causal connection depended on the decisions hospitals would make in response to withdrawal of tax-exempt status, and those decisions were sufficiently uncertain to break the chain of causation between the plaintiffs' injury and the challenged Government action. *Id.* at 40–46.

So too here: The Department is simply performing ministerial acts in applying statutory

(and likely constitutionally required) exemptions to religious schools.  It is those private, third parties that are making their own decisions about student codes of conduct.  Further, as in *Simon*, there is no certainty that withdrawing Title IX exemptions (which would be beyond the Department's mandate and powers anyway), would cause the schools to change their codes. Indeed, given their religious convictions regarding these matters of sexuality and gender, it is quite unlikely that most of them would change.  At the most, such change is the kind of "unadorned speculation" that "will not suffice to invoke the federal judicial power."  *Simon,* 426 U.S. at 44. And for that reason, too, Plaintiffs' Complaint must be dismissed for lack of standing.

## II. Plaintiffs Have Failed To Name Necessary Parties That Are Beyond The Court's Jurisdiction.

Rule FRCP 12(b)(7) provides yet another reason to dismiss, as (1) Plaintiffs have failed to join necessary parties under Rule 19(a)(1)(B)(i)—the named religious colleges who benefit from the Title IX religious exemption—and (2) it would not be feasible to join them. Plaintiffs' allegations of harm rest on direct factual allegations about the purported conduct of religious schools they name in the Complaint, yet none of those schools has been included as a defendant. That failure is fatal to Plaintiffs' claims, and the Complaint must therefore be dismissed.

CCCU can of course speak for its members against Plaintiffs' facial challenge to the Title IX religious exemption.  But CCCU is simply not able to respond to the numerous allegations brought by the multiplicity of Plaintiffs against 25 different colleges, only 18 of which are CCCU members, and of whose day-to-day operations CCCU has no meaningful knowledge.  For this Court to fairly assess these challenges to the application of the religious exemption would require the response and involvement of the individual colleges discussed in the Complaint.

Courts in the Ninth Circuit conduct the necessary-party analysis in three steps. *First*, they determine if the party is "necessary[.]" *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir.

1992). *Second*, they ask whether, if a party is necessary, that party can feasibly be joined. *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). Third, and finally, they ask "in equity and good conscience" whether, if a necessary party cannot feasibly be joined, the action can proceed with the existing parties. *Ibid.* "By its very nature[,]" this inquiry is "heavily influenced by the facts and circumstances of individual cases," 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1604, and the rule itself is designed to avoid the harsh results of rigid application. *See Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990). Applying that approach here— and accepting Plaintiffs' factual allegations and drawing all factual inferences in their favor, *Paiute-Shoshone Indians of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011), it is apparent that colleges Plaintiffs have named are necessary parties and that  joinder would not be feasible.

### A.  The religious schools named in the Complaint are necessary parties to this action.

As relevant here,[5] an "absent party is necessary" when it has (1) a "'legally protected' interest," FRCP 19(a), that is "more than a financial stake, and more than speculation about a future event[,]" *Ward v. Apple Inc.*, 791 F.3d 1041, 1050–51 (9th Cir. 2015), and that (2) it will be unable to protect without joining the action. FRCP 19(a). A party can have a legally protected interest in a case's outcome even if "the very existence of [its] interest depends on the legality of the Act" being challenged—in other words, all that a party must show is "a *claim* to an interest[.]" *Shermoen*, 982 F.2d at 1317 (emphasis in original).

In *Shermoen*, for example, a group of Native Americans sought to invalidate a statute that created a reservation for each of two tribes—the Hoopa Valley Tribe and the Yurok Tribe. *Id.* at

---

[5] A party is also necessary if, in its absence, the Court will be unable to afford complete relief to the existing parties. FRCP 19(a)(1)(A). But CCCU does not rely upon that provision here.

1316. The plaintiffs' case was ultimately dismissed because neither tribe was included as a

defendant, and the tribes stood to lose their reservations if the plaintiffs succeeded. *Id.* at 1317. In

affirming the Rule 12(b)(7) dismissal, the Ninth Circuit held that the tribes had a legally protected

interest in the case because the Complaint challenged the constitutionality of the very act creating

their reservations. *Id.* at 1318.

By analogy, the same is true here. Here, like the tribes in *Shermoen*, the religious colleges

named in the Complaint[6] have a legally protected interest in the constitutionality of the Title IX

religious exemption as applied to LGBT students. Congress intended to protect all religious

schools from the full weight of Title IX whenever Title IX's application would conflict with their

religious tenets. Should this Court agree with the plaintiffs' claims, then these religious schools

will lose their right to rely on this exemption. These schools, recipients of a statutory right no less

than the tribes in *Shermoen* were, will lose that right if the plaintiffs are successful.

After a court determines that a party has an interest, it must then determine "whether that

interest will be *impaired or impeded* by the suit" in the party's absence. *Makah Indian Tribe v.

Verity*, 910 F.2d 555, 558 (9th Cir. 1990). This Court has recognized that adequate representation

can minimize the risk of harm. *Union Pac. R.R. Co. v. Runyon*, 320 F.R.D. 245, 251–52 (D. Or.

2017) (Aiken, J.). And the Ninth Circuit has instructed courts to ask the same questions as they do

with FRCP 24's intervention-as-of-right-inquiry to determine the adequacy of an existing party's

representation:

---

[6] Indeed, the loss of this right would impact the nearly 1,000 religious colleges and universities found throughout the United States. Though CCCU is not claiming here that Rule 19 "require[s] Plaintiffs to join every other person who *conceivably* may be affected by a declaration that the challenged law is unconstitutional on the equal protection and establishment challenges presented," at least those colleges directly named in relation to plaintiffs' as-applied challenge are necessary, because of their need to respond to the factual allegations in the Complaint. *Martinez v. Clark Cty., Nev.*, 846 F. Supp. 2d 1131, 1149 (D. Nev. 2012) (emphasis added).

- whether "the interests of a present party to the suit are such that it will undoubtedly make all" of the absent party's arguments;
- whether the party is "capable of and willing to make such arguments"; and
- whether the absent party would "offer any necessary element to the proceedings" that the present parties would neglect.

*Shermoen*, 982 F.2d at 1318 (quoting *County of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir.1980).

On this point too, the facts in *Shermoen* are instructive. There, although several members of one tribe had intervened to represent their own interests in the constitutionality of the act, the Ninth Circuit held that there was "no credible claim that they could sufficiently represent the interest" of the other tribe. 982 F.2d at 1318. Even if both tribes would have defended the constitutionality of the same challenged act, that was not enough.

It is likewise very unlikely that the interests of the religious schools named in the Complaint will be fully protected here. Though CCCU can—and will—support the general, facial constitutionality of Title IX's religious exemptions, it is not positioned to respond to the factual allegations that pervade the Complaint regarding the application of that exemption to each of the Plaintiffs' situations. Certainly, CCCU will not be able to assert factual responses with respect to the schools that are not among its members, and really cannot practicably do so, absent extraordinary burden and cost, even for its own members.

In sum, only the named individual schools have the institutional knowledge necessary to respond to the factual allegations made against them, and, in their absence, those claims will likely go unrebutted. For these reasons, even assuming the Plaintiffs have stated legitimate claims (*but see infra* Section III), the individual religious colleges named in the Complaint are necessary parties, and those claims must be dismissed.

**B.  It would not be feasible to join many of the necessary parties because the Court lacks personal jurisdiction over them.**

The next thing a party seeking dismissal under Fed. R. Civ. P. 12(b)(7) must show is that it would not be feasible to merely add the missing necessary parties to the litigation. Rule 19 recognizes "three circumstances in which joinder is not feasible:" (1) "when venue is improper"; (2) when the Court lacks personal jurisdiction over the necessary parties; and (3) when joinder would destroy subject matter jurisdiction. *Peabody Western Coal Co.*, 400 F.3d at 779. Here, joinder is not feasible because this Court lacks personal jurisdiction over many of the necessary parties.

In that regard, it is hornbook law that courts have personal jurisdiction over defendants located outside of a forum state *only* when those defendants have sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). "The plaintiff bears the burden" of demonstrating personal jurisdiction over the defendant by showing (1) that the defendant "purposefully direct[ed] his activities" to the forum state and (2) that the claim "arises out of or relates to the defendant's forum-related activities[.]" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Under this framework, courts lack specific jurisdiction even when an injury is suffered in the forum state if the defendant's conduct was not itself directed at the state. *Ipsl LLC v. College of Mount Saint Vincent*, 383 F.Supp.3d 1128, 1139–40 (D. Or. 2019) (dismissing tort claims for lack of personal jurisdiction when the defendant New York college, despite phone calls, letters, and physical visits to Oregon, had not aimed the alleged harmful conduct at the forum state).

Here, only two colleges mentioned by name in the Complaint are in Oregon—George Fox University and Corban University. Compl., Dkt. 1 at ¶¶ 9–10. Those colleges are, of course, subject

17-Proposed Motion to Dismiss and Memorandum in Support

to this Court's general jurisdiction. But none of the other named schools, which are scattered in 18 states around the country, is subject to that jurisdiction.[7] Any web presence, e-mails, phone calls, and even the occasional recruiting visit, if any, simply do not rise to the level of contacts to justify personal jurisdiction. *See College of Mount Saint Vincent*, 383 F.Supp.3d at 140. And any contacts those schools may have with Oregon are unlikely to be related to plaintiffs' claim that Title IX's religious exemption is unconstitutional. At very least, the Complaint is silent about how, if at all, any of the named schools' reliance on the Title IX religious exemption harmed the plaintiffs in Oregon.

In sum, many of the religious schools necessary to respond to the factual bases of plaintiffs' claims *cannot* be joined because this Court lacks personal jurisdiction over them.

### C. This Court should dismiss the case because the action cannot proceed without the named religious schools.

The final question is whether the case can equitably proceed without the necessary parties. And here too, the Court should dismiss under Rule 12(b)(7) because (again assuming the Plaintiffs have stated valid claims) it cannot proceed without the named schools to respond to the Complaint's factual claims.

---

[7] The other schools are located in (1) South Carolina (Bob Jones University); (2) Texas (Baylor University); (3) Tennessee (Union University and Lipscomb University); (4) New York (Nyack College); (5) Idaho (Brigham Young University-Idaho); (6) California (Fuller Theological Seminary, Azusa Pacific University, La Sierra University, and Westmont College); (7) Nebraska (York College and Grace University); (8) Ohio (Cedarville University); (9) Pennsylvania (Clarks Summit University, Messiah University, and Eastern University); (10) Oklahoma (Oklahoma Christian School and Oklahoma Baptist University); (11) Georgia (Toccoa Falls College); (12) Iowa (Dordt University); (13) Indiana (Indiana Wesleyan University); (14) Utah (Brigham Young University-Provo); (15) Virginia (Liberty University); (16) Colorado (Colorado Christian University); (17) Illinois (Moody Bible Institute); and (18) Washington (Seattle Pacific University). Compl., Dkt. 1 at ¶¶ 11–43.

Rule 19(b) provides four factors to consider in determining whether to dismiss an action: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496, 1499 (9th Cir. 1991). Only the first two factors are relevant here.  And both point decisively toward dismissal.

As to the first factor: For the reasons described above, the named colleges will be substantially prejudiced if they are not allowed to respond to plaintiffs' factual allegations and ultimately lose their right to rely on the Title IX religious exemption despite their sincere religious beliefs about sex and gender.[8]  To be sure, CCCU as intervenor can protect the interests of the named colleges in resisting Plaintiffs' *facial* challenge to the Title IX exemption. But CCCU's participation cannot eliminate the prejudice to the named colleges that would result from their being denied the ability to respond to Plaintiffs' *as-applied* challenges—which necessarily depend on facts specific to each school.

Nor (as regards the second factor) will it be possible to lessen the harm that Plaintiffs' requested relief will impose on the named schools by carefully crafting the opinion. If this Court decides that Plaintiffs are correct, and that the Title IX religious exemption as applied with respect to LGBT students violates the Constitution, then, by the force of that holding's logic, Plaintiffs will be entitled to the full declaratory relief they are seeking.[9] In a constitutional challenge seeking injunctive relief as applied to a particular group, it really is all or nothing.

---

[8] In the Ninth Circuit, the Rule 19(b) prejudice analysis is the same as the Rule 19(a) necessary-party analysis. *Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 894 n.4 (10th Cir. 1989).

[9] Plaintiffs will not, however, be entitled to attorneys' fees because 42 U.S.C. §1988 does not apply to cases against the federal government.

Simply put, the plaintiffs have chosen not to name the vast majority of parties necessary to this case. And assuming Plaintiffs have stated valid claims (*see infra* Section III), this Court cannot fully address Plaintiffs' as-applied claims without the input of those necessary parties. Plaintiffs' Complaint therefore should be dismissed under Rule 12(b)(7).

## III. Plaintiffs Have Failed To State A Claim Upon Which Relief Can Be Granted.

Even if Plaintiffs did have standing, and were suing the correct parties, their case would still need to be dismissed as it fails the threshold requirement of Rule 12(b)(6)—stating a claim upon which relief can be granted. Plaintiffs assert a series of constitutional claims, including those under the First, Fifth, and Fourteenth Amendments. But constitutional provisions are not self-executing and must be invoked against government agencies via appropriate statutory provision. Plaintiffs invoke 42 U.S.C. § 1983 for this purpose, *see* Compl., Dkt. 1, at ¶¶ 492, 513, but it is black letter law that § 1983 applies only to *state* governments and their sub-divisions. It simply does not apply to the federal government. Further, even if they could find a statutory cause of action, the substantive constitutional provisions they cite simply have not been violated by the only defendant here, namely, the Department.

### A. The Federal Government and its agencies are not proper targets of lawsuits brought under 42 U.S.C. § 1983 or as *Bivens* federal constitutional tort claims.

It is long established that § 1983—the only basis for Plaintiffs' claims against the Department—is inapplicable to persons acting under color of *federal* law. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 398 n.1 (1971) (Harlan, J., concurring). As the Supreme Court has put it, "Section 1983 claims … do not apply to federal government actors. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 543 n.21 (1987); *accord Morse v. North Coast Opportunities, Inc.,* 118 F.3d 1338, 1343 (9th Cir.1997) ("[B]y its very terms, § 1983 precludes liability in federal government actors.").

Moreover, Plaintiffs' claims would fail even if they had filed them under *Bivens,* which governs civil rights claims against federal defendants. The Department of Education is a federal agency, and the Supreme Court has held that federal agencies are not appropriate defendants for *Bivens* actions. *Fed. Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 486 (1994).

**B. None of Plaintiffs' constitutional claims are valid against the Department of Education.**

But even if Plaintiffs had adequately pled a statutory basis for relief against the Department, Plaintiffs' constitutional claims are frivolous and therefore cannot be the basis for relief.  Plaintiffs invoke the First, Fifth, and Fourteenth Amendments to the US Constitution.  But none of these provisions implicate the actions of the Department here.  The due process and equal protection provisions of the Fourteenth Amendment, by their terms, only apply to state governments.  The Amendment clearly states: "No *state* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any *state* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, Sec. 1 (emphasis added). The specificity of this language has been recognized as limiting these 14th Amendment provisions to state governments and actors, and excluding federal actors. As the Supreme Court has said, like §1983 claims, Fourteenth Amendment claims do not apply to federal government actors. *See San Francisco Arts & Athletics, Inc.,* 483 U.S. at 543 n.21  ("The Fourteenth Amendment applies to actions by a State.").

Further, no alleged action of the Department actually violates either the First or the Fifth Amendments.  It was long ago recognized in *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327 (1986)*,* that the mere fact of statutory religious exemption does not violate the Establishment Clause of the First Amendment.  *Amos* involved the hiring of a janitor by a church-connected gym,

and it was found that the 702 exemption to the Title VII Civil Rights Act, which allows religious organizations to making hiring decisions based on its religious beliefs, even as to non-ministerial positions, was entirely constitutional, and did not violate the Establishment Clause. *Id.* at 336-339. The Court reiterated the same point nearly 20 years later in *Cutter v. Wilkinson*, when it held that the Religious Land Use and Institutionalized Persons Act was constitutional despite the fact that it clearly favored religious rights over other rights. 544 U.S. 709, 724–26 (2005).

And, as discussed above in the standing section, nothing in the Complaint alleges that the Department itself makes distinctions between students based on gender and sexuality.  Rather, it merely oversees and implements the Congressionally created religious-college exemption.  The exemption states that the section on sex discrimination simply "shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization." 20 USC §1681(a)(3).  This is very similar in meaning to Title VII's exemption, which says that the anti-discrimination provisions there "shall not apply to … a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with … its activities."  42 U.S.C. §2000e-1.

The 702 exemption has been held to allow religious employers to making hiring and employment decisions using religious criteria in relation to all its employees, from janitors, to secretaries, to teachers, and accountants.  *Amos*, 483 U.S. at 336–39.  There is no meaningfully constitutional difference between the 702 exemption and the Title IX religious college exemption, and thus Plaintiff fails to state a legitimate constitutional claim.

The fact that federal aid, in the form of loans and grants, goes to the students that attend these schools does not change the analysis.  Plaintiffs allege that many of students remain in debt

because of the federal financial aid they used to attend these institutions.  Compl., Dkt. 1, at ¶ 45.  But indirect federal aid such as this to religious institutions simply does not raise Establishment Clause concerns.  As the Supreme Court has repeatedly held, "[W]here a government aid program is neutral with respect to religion, and provides assistance directly to a broad class of citizens who, in turn, direct government aid to religious schools wholly as a result of their own genuine and independent private choice, the program is not readily subject to challenge under the Establishment Clause."  *Zelman v. Simmons-Harris*, 536 U.S. 639, 652 (2002).

In the *Zelman* case, the Court was dealing with vouchers for church-run or religiously affiliated primary and secondary schools, which are assumed to be highly religious, or pervasively sectarian.  But the indirect nature of the aid means that the religious decisions made by the schools could not be attributed to the federal government.  Similarly, in this case, where the aid at issue is directed to the students themselves, who have free and independent choices as to where to spend it, the religious decisions and standards of the schools cannot be attributed to the government, either under the First or the Fifth Amendment.  *See Zelman*, 536 U.S. at 661–63.

Further, in the more recent case of *Espinoza v. Montana Dep't of Revenue*, the Supreme Court has ruled that, when it comes to subsidizing private education, "once a State decides to do so, it cannot disqualify some private schools solely because they are religious."  140 S. Ct. 2246, 2255, 2261 (2020) (The Free Exercise Clause "protects religious observers against unequal treatment" and against "laws that impose special disabilities on the basis of religious status."); *see also Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981) (holding that the Free Exercise Clause forbids the government from "condition[ing] receipt of an important benefit upon conduct proscribed by a religious faith, or … den[ying] such a benefit because of conduct mandated by religious belief").  The relief Plaintiffs seek would effectively operate as a ban on

indirect federal assistance to religious schools that adhere to traditional Judeo-Christian sexual ethics—which would violate the Free Exercise Clause as interpreted in *Espinoza* and *Thomas*.

In short, striking down the Title IX religious exemption may not be an absolute ban on students using federal funds at *all* religious schools, but it would be a practical ban as to all religious colleges and universities that uphold traditional biblical teaching on issues of sexuality and gender. Such a ban is not required by the Establishment Clause, as we see in *Zelman*, and indeed, as *Espinoza* shows, is forbidden under the Free Exercise Clause.

For all these reasons, Plaintiffs claims under the First and Fourteenth Amendments must be dismissed.

## CONCLUSION

The Complaint is fatally flawed. Plaintiffs lack standing to challenge the Title IX religious exemption and, in their attempts to do so, they have failed to include parties necessary to the resolution of their claims. But even if this Court finds they have cleared the hurdle of standing, and that the case can continue without the religious schools named in the Complaint, the Court must nevertheless dismiss the case, as Plaintiffs' legal claims are frivolous.

DATED this 12th day of May, 2021.

Respectfully submitted,

_____
Herbert G. Grey
OSB #810250
4800 SW Griffith Drive, Suite 320
Beaverton, OR 97005-8716
Telephone: (503)641-4908
Email: herb@greylaw.org

Gene C. Schaerr (DC Bar # 416368)*
Nicholas P. Miller (MI Bar# P70694)*
Joshua J. Prince (DC Bar # 1685532)*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060
Email: gschaerr@schaerr-jaffe.com
* *Pro hac vice* application forthcoming

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing motion to dismiss and memorandum in support

was served on the following via the indicated method(s) of service:

| | |
|---|---|
| Paul Carlos Southwick | Carol Federighi, |
| Paul Southwick Law, LLC | United States Department of Justice |
| 8532 N. Ivanhoe St. #208, | Civil Division, Federal Programs Branch |
| Portland, OR 97203 | P.O. Box 883 |
| Email: paul@paulsouthwick.com | Washington, DC 20044 |
| Phone: 503-806-9517 | Email: carol.federighi@usdoj.gov |
| | Phone: (202) 514-1903 |

_____ **MAILING** certified full, true and correct copies thereof in a sealed, first class postage-prepaid envelope, addressed to the attorney(s) shown above at their last known office address(es), and deposited with the U.S. Postal Service at Portland/Beaverton, Oregon, on the date set forth below.

_____ **ELECTRONIC FILING** utilizing the Court's electronic filing system

_____ **EMAILING** certified full, true and correct copies thereof to the attorney(s) shown above at their last known email address(es) on the date set forth below.

_____ **HAND DELIVERING** certified full, true and correct copies thereof to the attorney(s) shown above at their last known office address(es), on the date set forth below.

_____ **OVERNIGHT COURIER** mailing of certified full, true and correct copies thereof in a sealed, prepaid envelope, addressed to the attorney(s) shown above at their last known office address(es), on the date set forth below.

DATED this 12th day of May, 2021.

_____
Herbert G. Grey
OSB #810250

*Counsel for Defendant-Intervenor Council*
*for Christian Colleges & Universities*

26-Proposed Motion to Dismiss and Memorandum in Support

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 6154 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.