KRISTEN K. WAGGONER,
OR Bar No. 067077
*Lead Counsel*

RYAN J. TUCKER*
AZ Bar No. 034382
MARK A. LIPPELMANN*
AZ BAR No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
kwaggoner@ADFlegal.org
rtucker@ADFlegal.org
mlippelmann@ADFlegal.org

DAVID A. CORTMAN*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org

*Admitted pro hac vice*

*Attorneys for Proposed Intervenors*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| ELIZABETH HUNTER, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION, et al., <br><br> *Defendants*, <br><br> WESTERN BAPTIST COLLEGE d/b/a CORBAN UNIVERSITY; WILLIAM JESSUP UNIVERSITY; PHOENIX SEMINARY, <br><br> *[Proposed] Defendant-Intervenors.* | Case No. 6:21-cv-00474-AA <br><br> **INTERVENORS' PROPOSED MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

MOTION TO DISMISS ....................................................................................... 1

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

STANDARD OF REVIEW .................................................................................... 4

ARGUMENT ........................................................................................................ 4

I.      Plaintiffs fail to plead a claim under Section 1983 or the APA. ........ 4

II.     The complaint and exhibits violate basic pleading requirements. .................. 5

III.    Plaintiffs lack standing ...................................................................... 6

    A.      The complaint does not allege a cognizable injury-in-fact. ..................... 6

        1.   There is no imminent future injury. ................................. 6

        2.   The alleged injuries are not concrete. ............................. 7

        3.   Plaintiffs do not allege an injury as taxpayers. ............... 8

    B.      The alleged harms are not traceable to the Department. ........................ 9

    C.      The alleged injuries are not redressable ................................. 10

    D.      Plaintiffs' claims also are not ripe. ........................................ 12

IV.     Plaintiffs do not plausibly allege any viable claims. ....................... 13

    A.      Plaintiffs cannot satisfy the requirements of a facial challenge. .......... 13

    B.      The complaint fails to allege an Establishment Clause claim............... 15

        1.   The exemption is constitutional under *Corporation of Presiding Bishop v. Amos*. ................................................ 15

        2.   The exemption is consistent with history and tradition. ............... 17

        3.   The exemption satisfies the *Lemon* test........................... 19

    C.      The complaint fails to allege an Equal Protection claim. ..................... 21

        1.   The exemption triggers rational-basis review under *Amos*. ........... 22

        2.   The exemption satisfies any scrutiny level..................... 24

    D.      The complaint fails to allege a Substantive Due Process claim. .......... 24

    E.      Title IX forbids discrimination based on sex, not sexual orientation or gender identity.............................................. 26

V.     If granted, Plaintiffs' requested relief would violate the Religious Schools' constitutional and statutory rights. ................................................................. 28

    A.     The requested relief creates a denominational preference in violation of the Establishment Clause. ................................................. 28

    B.     The requested relief violates the church autonomy doctrine................. 29

    C.     The requested relief constitutes religious targeting, violating the Free Exercise Clause. ................................................................ 30

    D.     The requested relief violates RFRA. ...................................................... 30

    E.     The requested relief discriminates against and compels speech, both of which violate the Free Speech Clause...................................... 31

    F.     The requested relief violates the Religious Schools' right to associate with likeminded faculty and students. ................................ 32

VI.    Plaintiffs' legal theory is limitless and endangers thousands of religious exemptions across the country. ....................................................................... 32

CONCLUSION .......................................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*Able v. United States,*
  155 F.3d 628 (2d Cir. 1998) ............................................................ 23

*Agency for International Development v. Alliance for Open Society International, Inc.,*
  570 U.S. 205 (2013) ........................................................................ 31

*American Legion v. American Humanist Association,*
  139 S. Ct. 2067 (2019) .............................................................. 17, 18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .......................................................................... 4

*Arver v. United States,*
  245 U.S. 366 (1918) ........................................................................ 18

*Ball v. Massanari,*
  254 F.3d 817 (9th Cir. 2001) .......................................................... 22

*Bell Atlantic Corporation v. Twombly,*
  550 U.S. 544 (2007) .......................................................................... 4

*Bostock v. Clayton County,*
  140 S. Ct. 1731 (2020) .............................................................. 27, 28

*Boy Scouts of America v. Dale,*
  530 U.S. 640 (2000) ........................................................................ 32

*Chandler v. State Farm Mutual Automobile Insurance Company,*
  598 F.3d 1115 (9th Cir. 2010) .......................................................... 4

*City of Cleburne v. Cleburne Living Center,*
  473 U.S. 432 (1985) ........................................................................ 24

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ............................................................................ 6

*Clapper v. Amnesty International USA,*
  568 U.S. 398 (2013) ...................................................................... 6, 9

*Cook v. Gates,*
  528 F.3d 42 (1st Cir. 2008) ............................................................ 23

*Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos,*
483 U.S. 327 (1987) ..................................................................................*passim*

*Cutter v. Wilkinson,*
544 U.S. 709 (2005) ........................................................................ 15, 19

*DeMarco v. DepoTech Corporation,*
149 F. Supp. 2d 1212 (S.D. Cal. 2001) ............................................... 5

*Droz v. Commissioner of Internal Revenue Service,*
48 F.3d 1120 (9th Cir. 1995) ............................................................ 19

*DSE Group., LLC v. Richardson,*
381 F. App'x 749 (9th Cir. 2010) ..................................................... 12

*Employment Division, Department of Human Resources of Oregon v. Smith,*
494 U.S. 872 (1990) .......................................................................... 30

*Flast v. Cohen*
392 U.S. 83 (1968) .......................................................................... 8,9

*Freedom From Religion Foundation, Inc. v. Lew,*
773 F.3d 815 (7th Cir. 2014) .............................................................. 9

*Freedom From Religion Foundation, Inc. v. Obama,*
641 F.3d 803 (7th Cir. 2011) .............................................................. 7

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
528 U.S. 167 (2000) ........................................................................ 6, 7

*Gallinger v. Beccera,*
898 F.3d 1012 (9th Cir. 2018) .......................................................... 22

*Gillette v. United States,*
401 U.S. 437 (1971) ............................................................... 16, 17, 18

*Goldman v. United States,*
245 U.S. 474 (1918) .......................................................................... 18

*Gonzales v. Gorsuch,*
688 F.2d 1263 (9th Cir. 1982) .......................................................... 10

*Gregory v. Ashcroft,*
501 U.S. 452 (1991) .......................................................................... 27

*Harrison v. Kernan,*
 971 F.3d 1069 (9th Cir. 2020) ........................................................................ 22

*Hein v. Freedom From Religion Foundation, Inc.,*
 551 U.S. 587 (2007) .................................................................................... 8, 9

*Heller v. Doe by Doe,*
 509 U.S. 312 (1993) ........................................................................................ 23

*HomeAway.com, Inc. v. City of Portland,*
 No. 3:17-cv-00091-MO, 2017 WL 2213154 (D. Or. May 11, 2017) ................. 14

*Honig v. Doe,*
 484 U.S. 305 (1988) ........................................................................................ 26

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC,*
 565 U.S. 171 (2012) .................................................................................. 23, 29

*John Doe No. 1 v. Reed,*
 561 U.S. 186 (2010) ............................................................................ 13, 14, 26

*Karnoski v. Trump,*
 926 F.3d 1180 (9th Cir. 2019) ....................................................................... 23

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America,*
 344 U.S. 94 (1952) .......................................................................................... 29

*Kong v. Scully,*
 341 F.3d 1132 (9th Cir. 2003) ............................................................. 17, 19, 20

*Lamb's Chapel v. Center Moriches Union Free School District,*
 508 U.S. 384 (1993) ........................................................................................ 31

*Larson v. Valente,*
 456 U.S. 228 (1982) ........................................................................................ 28

*Lemon v. Kurtzman,*
 403 US. 602 (1971) ......................................................................................... 17

*Loretto v. Teleprompter Manhattan CATV Corporation,*
 458 U.S. 419 (1982) ........................................................................................ 26

*Little Sisters of the Poor Peter & Paul Home v. Pennsylvania,*
 140 S. Ct. 2367 (2020) .................................................................................... 19

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992) .................................................................................. 6, 7, 9

*Massachusetts v. U.S. Department of Health and Human Services,*
  No. 17-11930-NMG, 2021 WL 185243 (D. Mass. 2021) .................................. 24

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
  138 S. Ct. 1719 (2018) ....................................................................... 30

*Mayweathers v. Newland,*
  314 F.3d 1062 (9th Cir. 2002) ............................................................ 20

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010) ......................................................................... 24

*McHenry v. Renne,*
  84 F.3d 1172 (9th Cir. 1996) .............................................................. 5

*Mendia v. Garcia,*
  768 F.3d 1009 (9th Cir. 2014) ............................................................ 9

*Mitchell v. Helms,*
  530 U.S. 793 (2000) ......................................................................... 21

*Montgomery v. Buege,*
  No. CIV. 08-385 WBS KJM, 2009 WL 1034518 (E.D. Cal. Apr. 16, 2009) ....... 5

*Navajo Nation v. U.S. Forest Service,*
  535 F.3d 1058 (9th Cir. 2008) ............................................................ 31

*New Prime Inc. v. Oliveira,*
  139 S. Ct. 532 (2019) ....................................................................... 26

*Newdow v. Roberts,*
  603 F.3d 1002 (D.C. Cir. 2010) .......................................................... 10

*Our Lady of Guadalupe School v. Morrissey-Berru,*
  140 S. Ct. 2049 (2020) ............................................................ 23, 29, 30

*Packnett v. Block,*
  972 F.2d 1341 (9th Cir. 1992) ............................................................ 5

*Pennhurst State School & Hospital v. Halderman,*
  451 U.S. 1  (1981) ........................................................................... 27

*Personnel Administrator of Massachusetts v. Feeney,*
  442 U.S. 256 (1979) .................................................................... 22, 23

*Police Department of Chicago v. Mosley,*
  408 U.S. 92 (1972) .......................................................................... 31

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ........................................................................... 31

*Richenberg v. Perry,*
    97 F.3d 256 (8th Cir. 1996) ............................................................... 23

*Rosenberger v. Rector and Visitors of University of Virginia,*
    515 U.S. 819 (1995) ........................................................................... 31

*Roberts v. United States Jaycees,*
    468 U.S. 609 (1984) ........................................................................... 32

*Scott v. Pasadena Unified School District,*
    306 F.3d 646 (9th Cir. 2002) ............................................................... 8

*Settles v. United States Parole Commission,*
    429 F.3d 1098 (D.C. Cir. 2005) ........................................................... 4

*Smith v. Hogan,*
    794 F.3d 249 (2d Cir. 2015) ............................................................... 5

*SmithKline Beecham Corp. v. Abbott Laboratories,*
    740 F.3d 471 (9th Cir. 2014) ............................................................. 23

*Southwest Environmental Center v. Sessions,*
    355 F. Supp. 3d 1121 (D.N.M. 2018) ................................................. 7

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ................................................................... 6, 7

*Thomas v. Anchorage Equal Rights Commission,*
    220 F.3d 1134 (9th Cir. 2000) ..................................................... 12, 13

*Thomasson v. Perry,*
    80 F.3d 915 (4th Cir. 1996) ............................................................... 23

*Town of Greece v. Galloway,*
    572 U.S. 565 (2014) ........................................................................... 16

*Trunk v. City of San Diego,*
    629 F.3d 1099 (9th Cir. 2011) ........................................................... 20

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ............................................................. 5

*United States v. Salerno,*
    481 U.S. 739, 745 (1987) ................................................................... 15

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
454 U.S. 464 (1982) ............................................................................ 7, 8

*Victorino v. FCA US LLC*,
No. 16-cv-1617-GPC(JLB), 2016 WL 6441518 (S.D. Cal. Nov. 1, 2016) ......... 12

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ............................................................................ 24, 25

*Washinton Environmental Council v. Bellon*,
732 F.3d 1131 (9th Cir. 2013) .............................................................. 10

*Walz v. Tax Commission of New York*,
397 U.S. 664 (1970) ............................................................................ 18

*Williams v. Attorney General of Alaska*,
378 F.3d 1232 (11th Cir. 2004) ............................................................ 25

*Williams v. California*,
764 F.3d 1002 (9th Cir. 2014) .............................................................. 19, 20

*Witt v. Department of the Air Force*,
527 F.3d 806 (9th Cir. 2008) ................................................................ 24, 25

*Wooley v. Maynard*,
430 U.S. 705 (1977) ............................................................................ 31

*Zorach v. Clauson*,
343 U.S. 306 (1952) ............................................................................ 18

## Constitutional Provisions / Statutes

United States Constitution art II ............................................................ 32

United States Constitution art VI ........................................................... 32

5 U.S.C. § 702 ...................................................................................... 4

18 U.S.C. § 3597 ................................................................................... 32

20 U.S.C. § 1681 ............................................................................*passim*

20 U.S.C. § 1686 ................................................................................... 27

42 U.S.C. § 238 .................................................................................... 32

42 U.S.C. § 2000.................................................................................... 30, 31

42 U.S.C. § 18113 ...................................................................................... 32

34 C.F.R § 106.12 ............................................................................ 2, 24, 26

34 C.F.R § 106.32 ...................................................................................... 27

34 C.F.R § 106.33 ...................................................................................... 27

34 C.F.R § 106.34 ...................................................................................... 27

34 C.F.R § 106.40 ...................................................................................... 27

34 C.F.R § 106.41 ...................................................................................... 27

34 C.F.R § 106.43 ...................................................................................... 27

34 C.F.R § 106.52 ...................................................................................... 27

34 C.F.R § 106.59 ...................................................................................... 27

34 C.F.R § 106.61 ...................................................................................... 27

45 C.F.R. § 86.32 ...................................................................................... 27

Federal Rules of Civil Procedure 8 ........................................................... 5

Federal Rules of Civil Procedure 10 ......................................................... 5

Federal Rules of Civil Procedure 12 ......................................................... 4

Consolidated and Further Continuing Appropriations Act, 2015,
    Pub. L. No. 113-235, 128 Stat. 2130................................................. 32

## Other Authorities

Lucien J. Dhooge, *Public Accommodation Statutes, Sexual Orientation and*
    *Religious Liberty: Free Access or Free Exercise?*, 27 U. Fla. J.L. & Pub. Pol'y 1,
    (2016) ................................................................................................. 32

*Glossary of Terms*, Human Rights Campaign,
    https://www.hrc.org/resources/glossary-of-terms............................. 11

Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original*
    *Understanding of the Establishment Clause*, 81 Notre Dame L. Rev. 1793
    (2006) ................................................................................................. 18

Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409 (1990) ...................................................... 18

James Ryan, Note, *Smith and the Religious Freedom Restoration Act: An Iconoclastic Assessment*, 78 Va. L. Rev. 1407 (1992) ....................................... 32

Sex, The American Heritage Dictionary of the English Language (1st ed. 1969) .... 26

Sex, Webster's New World Dictionary of the American Language (College ed. 1962) ...................................................................................................................... 26

## MOTION TO DISMISS

Proposed Defendant-Intervenors Corban University ("Corban"), William Jessup University ("Jessup"), and Phoenix Seminary (together, "Religious Schools") move to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 8, 12(b)(1) and 12(b)(6). Because the Religious Schools' motion to intervene remains pending (*see* ECF No. 8), they also submit this motion to dismiss pursuant to Federal Rule of Civil Procedure 24(c). Pursuant to Local Civil Rule 7-1(a), counsel for the Religious Schools made a good faith effort through a telephone conference to resolve the dispute but were unable to do so.

## INTRODUCTION

This Court should dismiss the complaint because the Supreme Court already considered and answered the question presented: religious exemptions in non-discrimination laws are constitutional, and the alternative—excluding religious schools and students from governmental benefits based on their beliefs—is unconstitutional. Yet Plaintiffs seek to eviscerate Title IX's religious exemption and demand that this Court forbid all students from using their federal financial assistance at religious institutions that depart from Plaintiffs' orthodoxy. Fortunately, the law prevents this outcome.

It is hard to overstate the magnitude of Plaintiffs' requests. They ask this Court to declare Title IX's religious exemption unconstitutional, and they request a nationwide injunction that would not only *prevent* the Department of Education from enforcing the exemption but would *force* the Department to police religious institutions' beliefs and ensure that they adequately reflect Plaintiffs' views. Compl. at 66, ECF No. 1. If granted, the requested relief would revoke a religious accommodation enshrined in Title IX for half a century, preventing students from obtaining a faith-based education and threatening the existence of religious schools.

But the unprecedented scope of the complaint's requested relief is just one of many problems. Indeed, this Court should dismiss the complaint for at least five reasons. *First*, the Court lacks jurisdiction because Plaintiffs fail to plead a claim under either 42 U.S.C. § 1983 or the Administrative Procedure Act (APA). *Second*, the complaint violates basic pleading requirements. *Third*, each of the 33 Plaintiffs lack standing. *Fourth*, Plaintiffs fail to state a claim upon which relief can be granted. *Fifth*, the requested relief would violate the Religious Schools' constitutional and statutory rights.

## BACKGROUND

Title IX prohibits differential treatment "on the basis of sex" in any education program or activity that receives federal funds. 20 U.S.C. § 1681(a). But this prohibition does not apply across the board; in fact, Congress enumerated nine separate exemptions from this requirement. One is for "educational institution[s]" that are "controlled by a religious organization if the application of [the law] would not be consistent with the religious tenets of such organization." *Id.* at § 1681(a)(3); *see also* 34 C.F.R. § 106.12(a). The rest are secular exemptions, given for a variety of reasons. 20 U.S.C. § 1681(a)(1)-(9).

The Department of Education is responsible for administering and enforcing Title IX and its implementing regulations, 34 C.F.R. § 106. Under the implementing regulations, an educational institution may assert the statutory religious exemption without making a formal request for recognition by the Department. 34 C.F.R. § 106.12(b). Even so, the institution may obtain a formal assurance by submitting a written statement from the institution's highest-ranking official to the Department's Assistant Secretary of the Office for Civil Rights, identifying the Title IX provisions that conflict with specific tenets of the religious organization. *Id.*

The religious exemption creates a harmonious framework: society benefits from federal investment in education, students can finance their schooling, and

religious institutions can operate consistently with their religious beliefs. This framework has worked well for nearly 50 years. Plaintiffs now ask this Court to obliterate it. They object to certain religious beliefs relating to creation and human sexuality held by institutions covered by the exemption. These institutions engaged in chapel and classroom instruction, published policies governing access to showers and dorm rooms, established lifestyle expectations, and offered counseling services in accord with those beliefs. Plaintiffs disagree with these beliefs and practices, and allege they were injured by them. Compl. ¶¶ 49-471. As a result, according to Plaintiffs, the exemption must go.

The Religious Schools sought to intervene because they are in this lawsuit's crosshairs. *See* Proposed Intervenors' Mot. to Intervene and Mem. in Supp. at 2-4, ECF 8. They receive federal funding and have religious tenets that would conflict with Title IX if that statute's definition of "sex" is interpreted to include sexual orientation and gender identity. *Id.* at 8-12. They believe that God immutably creates each person as male or female and that human flourishing comes by living consistently with one's biological sex. *Id.* at 10. They also believe that marriage is a sacred covenant between one man and one woman, and the only sanctioned context for sexual activity. *Id.* The Religious Schools express these beliefs—in their chapel services, in their classrooms, and in their written communications—and they have policies governing conduct in their communities. *Id.* at 10-12. While no student is compelled to attend these schools, those who attend voluntarily agree to abide by the schools' religious beliefs and policies. *See id.* at 11.[1]

---

[1] A more detailed exposition of factual and procedural background is provided in the Religious Schools' Mot. to Intervene and Mem. in Supp. at 8-15, ECF 8.

## STANDARD OF REVIEW

When a court lacks subject-matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(b)(1). A challenge to standing is appropriately raised under Rule 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing subject-matter jurisdiction, including standing to sue. *Id.*

Likewise, the court must also dismiss when the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must set forth "more than labels and conclusions," and must plead facts supporting a *plausible*, not merely *possible*, claim for relief. *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I.    Plaintiffs fail to plead a claim under Section 1983 or the APA.

Plaintiffs plead 42 U.S.C. § 1983 as the basis for their causes of action against the U.S. Department of Education and the named federal official. Compl. at 61, 64. But § 1983 only authorizes suits against *state* governments and officials, not against the *federal* government and officials. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005) ("Section 1983 does not apply to federal officials acting under color of federal law."). So the complaint fails to plead a § 1983 claim.

Plaintiffs also point to the Administrative Procedure Act (APA), 5 U.S.C. § 702, as a basis for this Court's jurisdiction. *See* Compl. ¶ 7. The APA allows a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to seek judicial review. 5 U.S.C. § 702. But Plaintiffs do not plead § 702 as the basis for their claims for relief—they instead plead § 1983. Compl. at 61,

64. Because Plaintiffs fail to plead a claim under § 1983 or the APA, their complaint should be dismissed.

## II.    The complaint and exhibits violate basic pleading requirements.

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But Plaintiffs' complaint spans 524 paragraphs over 67 pages and attaches 38 exhibits (together, 314 pages). And the complaint contains irrelevant information "designed to provide quotations for newspaper stories," not plead legal claims. *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996). Because this violates Rule 8, the complaint should be dismissed. *Packnett v. Block*, 972 F.2d 1341 (9th Cir. 1992) (upholding dismissal of a 55-page complaint naming 18 defendants and attaching more than 100 pages of exhibits).

At a minimum, the Court should ignore Plaintiffs' 33 declarations at this stage. "If such [declarations] could be deemed part of a complaint, then Rule 8(a)'s requirement of a short and plain statement of a claim for which relief could be granted would be eviscerated." *Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015). Additionally, Rule 10 provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). But the documents that qualify for incorporation are usually contracts and preexisting writings on which a party's action is based. *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001) (citation omitted). Documents created for litigation do not typically qualify as instruments that form the basis of a complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Montgomery v. Buege*, No. CIV. 08-385 WBS KJM, 2009 WL 1034518, at *3 (E.D. Cal. Apr. 16, 2009). Because Plaintiffs' declarations were created for litigation, the Court should disregard them at this stage.

### III.    Plaintiffs lack standing.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement" and is a prerequisite to the Court's exercise of jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The standing inquiry is "especially rigorous" when a lawsuit seeks to invalidate executive or congressional action as unconstitutional. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Here, Plaintiffs allege scattershot injuries but not a single one alleges enough for standing.

### A.    The complaint does not allege a cognizable injury-in-fact.

To establish injury in fact, plaintiffs must show they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs cannot meet these requirements.

### 1.    There is no imminent future injury.

When plaintiffs seek only prospective relief, past injuries are insufficient to establish standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 111 (1983). Instead, such plaintiffs must allege that future injuries are "*certainly impending.*" *Clapper*, 568 U.S. at 409 (emphasis in original). It is not enough to allege "*possible* future injury." *Id.* Most Plaintiffs fail to clear even that minimal and insufficient hurdle. And the rest do not allege any imminent injury.

Most plaintiffs (20 of 33) do not allege that they currently attend—or will imminently attend—*any* educational institution, much less one that qualifies for Title IX's religious exemption.[2] This is fatal for these 20 plaintiffs. And the remaining 13 plaintiffs who currently attend religious schools do not allege facts establishing that the activities they object to *in the past* will *certainly* occur in the future, let alone that such activities will occur *imminently*.[3] Thus, none of the 33 plaintiffs establish the certain and imminent injury needed for standing. *See Friends of the Earth*, 528 U.S. at 184 (holding that speculation or subjective apprehension of future harm cannot support standing).

### 2.    The alleged injuries are not concrete.

To be cognizable, an injury must invade a legally protectable interest. *See Lujan*, 504 U.S. at 560. To be concrete, an injury must be real, not illusory or imagined; it must "actually exist." *Spokeo*, 136 S. Ct. at 1548. "Hurt feelings" do not support Article III standing. *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011); *Sw. Env't Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1132 (D.N.M. 2018) ("[F]eelings of shame or inferiority do not constitute concrete harms."). And the "psychological consequence [ ] produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing . . . ." *Valley Forge*

---

[2] *See* Compl. ¶¶ 49-67 (Elizabeth Hunter), ¶¶ 135-152 (Victoria Joy Bacon), ¶¶ 252-63 (Chandler Horning), ¶¶ 285-96 (Ashtin Markowski), ¶¶ 328-42 (Darren McDonald), ¶¶ 343-58 (Scott McSwain), ¶¶ 419-38 (Megan Steffan), ¶¶ 439-49 (Spencer Vigil), ¶¶ 450-56 (Lucas Wilson), ¶¶ 85-102 (Alex Duron), ¶¶ 196-207 (Gary Campbell), ¶¶ 311-19 (Joanna Maxon), ¶¶ 409-18 (Danielle Powell), ¶¶ 208-21 (Tristan Campbell), ¶¶ 320-27 (Mackenzie McCann), ¶¶ 370-85 (Journey Mueller), ¶¶ 153-63 (Nathan Brittsan), ¶¶ 118-34 (Rachel Moulton); ¶¶ 386-99 (Jaycen Montgomery); ¶¶ 103-04, 117 (Zayn Silva).

[3] *See* Compl. ¶¶ 68-84 (Veronica Bonifacio Penales), ¶¶ 164-79 (Hayden Brown), ¶¶ 180-95 ("Brooke C"), ¶¶ 222-33 ("Natalie Carter"), ¶¶ 234-41 (Rachel Held), ¶¶ 242-51 (Lauren Hoekstra), ¶¶ 264-73 ("Louis James"), ¶¶ 274-84 (Jonathan Jones), ¶¶ 297-310 (Cameron Martinez), ¶¶ 359-69 (Faith Millender), ¶¶ 400-08 (Jake Picker), ¶¶ 457-71 (Audrey Wojnarowisch), ¶¶ 144-52 (Avery Bonestroo).

Intervenors' Proposed Motion to Dismiss and Memorandum in Support | 7

*Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 485–86 (1982).

Here, nearly every plaintiff describes their alleged "injuries" using the words "feel" or "felt," terms that appear 89 times in the complaint. *E.g.*, Compl. ¶ 231 ("Natalie feels like she is not being loved for who she is, but only for half of who she is."). The alleged "injuries" include merely hearing professors or students share their religious beliefs about sexuality or gender (*id.* at ¶¶ 163, 241, 247, 309-10); dismay that their school has not changed its definition of marriage (*id.* at ¶ 173); frustration that their school hosts speakers who they consider "non-affirming" (*id.* at ¶ 148); and disappointment that their school did not support LGBTQ+ clubs on campus (*id.* at ¶¶ 83, 141, 175, 280-81, 306, 362, 402). These are not concrete injuries to legally protectable interests. *See Valley Forge*, 454 U.S. at 485–86.

And to the extent that Plaintiffs allege "injuries" beyond disagreement and negative feelings, those allegations do not establish standing because they relate to past events attributable to nonparties that are uncertain to imminently recur and that this Court cannot redress. The "mere existence" of a religious exemption—which may or may not ever be applied in a way that affects Plaintiffs—cannot establish any injury. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (holding that mere existence of a statute does not confer standing without detailed allegations that application caused a direct injury); *see* Compl. ¶¶ 3-4.

### 3.    Plaintiffs do not allege an injury as taxpayers.

Plaintiffs appear to base their injury on their status as taxpayers. *See* Compl. ¶ 44 (alleging this status). But taxpayers' interests rarely create cognizable injuries for Article III standing. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007). Although an exception exists for unique Establishment Clause cases, it doesn't apply here. In *Flast v. Cohen*, the Supreme Court created a narrow exception to the general rule that taxpayer status fails to confer standing. But that exception

applies only when the challenged statute is a direct exercise of Congress's taxing and spending powers, and the statute exceeds specific constitutional limitations on those powers. 392 U.S. 83, 102–03 (1968). And the Supreme Court has clarified that the exception applies to *specific* congressional appropriations, not *general* expenditures by the executive branch. *Hein*, 551 U.S. at 595; *see also Freedom From Religion Found., Inc. v. Lew*, 773 F.3d 815, 820 (7th Cir. 2014). Here, Plaintiffs do not allege that the exempt religious schools receive federal funds from any specific appropriation from Congress's taxing and spending power. The *Flast* exception therefore does not apply.

### B.    The alleged harms are not traceable to the Department.

The second requirement for Article III standing is a "causal connection" between the injury and the challenged conduct so that the injury is "fairly traceable" to the defendant. *Lujan*, 504 U.S. at 560. The Supreme Court has been especially reluctant "to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 414. When plaintiffs' alleged injuries arise from the government regulating or failing to regulate third parties, more specific facts are needed for standing. *See Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014). This is because third parties may engage in their conduct regardless of the government's conduct. *See id.* To plausibly plead that an injury does not result from third parties, the plaintiff must show that the government's conduct is "a substantial factor" motivating the third-parties' actions. *Id.*

Here, the majority of plaintiffs (21 of 33) did not plead that their schools are exempt from Title IX, that the Department granted an assurance of exemption to their school, or that the Department was substantially involved in their alleged injury.[4] This is fatal for those 21 plaintiffs. The remaining 12 plaintiffs also trace no

---

[4] These plaintiffs include Victoria Joy Bacon, Chandler Horning, Ashtin Markowski, Darren McDonald, Megan Steffen, Spencer Vigil, Lucas Wilson, 'Natalie Carter',

injuries to the Department. Those plaintiffs allege injuries ranging from school discipline (Compl. ¶¶60-61, 170, 289-90), to student misconduct (*id*. at ¶¶ 74, 176, 338, 375, 426), to feelings of depression and anxiety (*id*. at ¶¶ 251, 342, 358, 449). But these alleged injuries are traceable to third-party classmates, faculty, and school administrators, not to the Department.

Plaintiffs have not alleged a causal connection between their alleged injuries and any Department action, much less shown that the Department's conduct was a "substantial factor" motivating third party conduct. Plaintiffs' causal chain is no more than "a series of links strung together by conclusory, generalized statements of 'contribution.'" *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013). Plaintiffs thus lack standing for this reason as well.

### C.    The alleged injuries are not redressable.

Finally, this Court is unable to redress Plaintiffs' alleged injuries. "It is a prerequisite of justiciability that judicial relief will prevent or redress the claimed injury, or that there is a significant likelihood of such redress." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982) (citations omitted). Plaintiffs ask the Court to (1) declare Title IX's religious exemption unconstitutional as applied to "sexual and gender minority students," (2) require the Department to revoke prior exemptions, (3) enjoin the Department from granting or enforcing future exemptions, and (4) require the Department to monitor religious schools to ensure adequate "respect" for Plaintiffs' views. But this requested relief creates three problems.

First, the requested relief is vague and unworkable, and the redressability prong is not satisfied if the requested relief is practically impossible to grant. *See Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010). For one thing, Plaintiffs do

---

Lauren Hoekstra, 'Louis James', Jonathan Jones, Cameron Martinez, Faith Millender, Avery Bonestroo, Zayn Silva, Nathan Brittsan, Gary Campbell, Joanna Maxon, Danielle Powell, Rachel Held, and Mackenzie McCann.

not define "sexual and gender minority students." Perhaps they mean those who identify as homosexual, bisexual, transgender, and "queer," a term that itself "is often used as a catch-all to include many people, including those who do not identify as exclusively straight and/or folks who have non-binary or gender-expansive identities."[5] But Plaintiffs never explain how these groups could be identified by the Court, the Department, the schools, or anyone else. The impossibility of identifying such students is demonstrated by the inclusion of "catch-all" terms and the undefined-yet-expansive "+" symbol in Plaintiffs' own descriptive acronym.

Even more problematic, the exemption does not and has never "applied to" students. Rather, *schools* claim the exemption, then apply their own policies to their students. Plaintiffs seek to invert this process—asking this Court to require the Department to apply the exemption to individual *students* and then determine whether school policies can apply to individual students based on their identity. This would create absurd and discriminatory results:

- A school that believes in the sanctity of human life could require its student body to refrain from abortion, except for students who identify as sexual minorities.

- A school's requirement that all students abstain from premarital sex would be permissible when applied to heterosexual students, but not to homosexual or transgender students.

- A seminary that believes only men should fill the position of lead pastor could restrict its pastoral program to men, unless a woman claimed a sexual or gender minority status.

- A Christian college with separate dorms for men and women could prohibit men from moving into the women's dorm, unless those students identified as sexual or gender minorities.

---

[5] *Glossary of Terms*, Human Rights Campaign, https://www.hrc.org/resources/glossary-of-terms (last visited May 13, 2021).

Nor do Plaintiffs explain how the Department could "ensure that all federally-funded educational institutions respect the sexual orientation, gender identity, and gender expression of their students." Compl. at 66. Will the Department monitor statements of faith? Chapel services? Seminary curricula? Policy handbooks? Confidential counseling sessions? Will it require schools to ask students to declare their sexual and gender identity upon enrollment to determine when school policies legally apply and when they do not? In sum, the requested relief is incoherent and practically impossible.

Moreover, because Plaintiffs' alleged injuries stem from third parties, not the Department, enjoining the Department cannot redress them. *See DSE Grp., LLC v. Richardson*, 381 F. App'x 749, 750 (9th Cir. 2010) (dismissing complaint for plaintiff's failure to allege that the governmental defendant caused—and could cure—the alleged injury). In addition, Article III courts cannot direct the Department's affirmative use of resources and enforcement discretion. *See, e.g.*, *Victorino v. FCA US LLC*, No. 16-cv-1617-GPC(JLB), 2016 WL 6441518, *12 (S.D. Cal. Nov. 1, 2016) ("A court cannot direct a federal agency [] how to use its resources or how to set its enforcement priorities and when to conduct a vehicle recall or to halt the sale of vehicles."). Plaintiffs demand that the Court not just declare the Title IX exemption unconstitutional as applied to the individual plaintiffs but also to require the Department to affirmatively monitor religious schools for compliance. Compelling the Department to expend its resources in this way is beyond a court's Article III jurisdiction.

### D.    Plaintiffs' claims also are not ripe.

Ripeness is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citation omitted). The ripeness inquiry contains both a constitutional and a prudential component. *Id.*

at 1141. In evaluating prudential ripeness, the Ninth Circuit considers two factors: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. *Id.* A constitutional challenge is unfit for judicial decision when the record is undeveloped and consists of conclusory affidavits. *Id.* And plaintiffs do not face undue hardship when courts simply defer judicial review until there is an actual or imminent threat that the challenged law will be enforced against one of the named plaintiffs.

Here, the constitutionality of the Title IX exemption is unfit for decision because there is no factual record beyond Plaintiffs' conclusory declarations. And while Plaintiffs allege many *past* events, they fail to allege any imminent and non-speculative injury that could warrant the prospective relief they seek. Will the anticipated injury occur in chapel, in the classroom, or some other context? Will it relate to a school's statement of faith, housing policy, or some other policy? Will it be wounded feelings and disappointment, or something concrete? This Court should not analyze this prospective constitutional challenge without sufficient information about the alleged imminent injury. Because Plaintiffs do not allege an imminent future injury, they will suffer no hardship from this Court waiting until a ripe case arises. Thus, the Court should decline to exercise jurisdiction.

## IV. Plaintiffs do not plausibly allege any viable claims.

Plaintiffs allege that the Department violates the Equal Protection, Substantive Due Process, and Establishment Clauses by granting Title IX exemptions to religious schools with certain religious beliefs. But the complaint should be dismissed because none of those counts state a claim upon which relief can be granted.

### A. Plaintiffs cannot satisfy the requirements of a facial challenge.

"It is important at the outset to define the scope of the challenge before [the Court]." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). Plaintiffs characterize this

case as an as-applied challenge but seek relief far beyond their own circumstances, so they must satisfy the standards for a facial challenge. *See id.* (citing *United States v. Stevens*, 559 U.S. 460, 472–473 (2010)); *HomeAway.com, Inc. v. City of Portland*, No. 3:17-cv-00091-MO, 2017 WL 2213154, at *1–2 (D. Or. May 11, 2017). Plaintiffs do not meet that standard.

In *Reed*, the Supreme Court considered a challenge to Washington's Public Records Act (PRA), which allows citizens to obtain copies of government documents, including referendum petitions. 561 U.S. at 190-91. When citizens invoked the PRA to seek a referendum petition, the petition's signors filed a complaint to prevent disclosure of their identity, alleging that the PRA "violates the First Amendment *as applied to referendum petitions*." *Id.* at 194 (emphasis added). The Supreme Court held that "[t]he label is not what matters" when determining whether a challenge is facial or as-applied. *Id.* "The important point is that plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs. They must therefore satisfy our standards for a facial challenge to the extent of that reach." *Id.* (citing *Stevens*, 559 U.S. at 472–473); *HomeAway*, 2017 WL 2213154, at *1–2 (requiring the plaintiff to satisfy the standard for facial challenges when the complaint sought relief "as applied to [plaintiff] and similar entities" but reached situations and parties outside the complaint).

The same is true here. The complaint uses the label "as applied," but Plaintiffs seek declaratory and injunctive relief covering every past, present, and future application of Title IX's religious exemption for an impossibly broad group: "sexual and gender minority students." Compl. at 66. This relief would reach beyond the Title

IX exemptions granted to those religious schools attended by the 33 named plaintiffs.[6] So Plaintiffs must satisfy the standard for facial challenges.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances* exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added). But Title IX's religious exemption is constitutionally required in some circumstances, including religious schools' use of ministerial employees to communicate their religious doctrines and beliefs about gender and sexual morality. *See* discussion *infra* Sections V.D. & V.E. Because Plaintiffs cannot support a facial challenge, the complaint should be dismissed.

### B.    The complaint fails to allege an Establishment Clause claim.

Religious exemptions have repeatedly survived Establishment Clause challenges, and the exemption here should fare no different. Indeed, Title IX's religious exemption is a denominationally neutral accommodation of religion, consistent with our nation's history and tradition, and easily passes the *Lemon* test. Plaintiffs' Establishment Clause claim should be dismissed.

### 1.    The exemption is constitutional under *Corporation of Presiding Bishop v. Amos.*

Plaintiffs' Establishment Clause claim stumbles out the gate because the Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334 (1987) (citation omitted). Government can even "accommodate religion beyond free exercise requirements, without offense to the Establishment Clause." *Cutter v. Wilkinson*, 544 U.S. 709, 713 (2005). Congress

---

[6] The requested relief could also reach beyond the circumstances of a putative class. The Religious Schools intend to oppose any motion for class certification if granted intervention.

followed this "happy tradition" in Title IX, *Gillette v. United States*, 401 U.S. 437, 453 (1971), exempting religious educational institutions from Title IX's requirements if they conflicted with the school's "religious tenets." 20 U.S.C. § 1681(a)(3).

The Supreme Court upheld a nearly identical statutory exemption against a nearly identical challenge. In *Amos*, an employee challenged Title VII's religious exemption for violating the Establishment Clause. 483 U.S. at 329. Like Title IX's exemption, Title VII's protected "religious . . . educational institution[s]"; the latter just did so "with respect to the employment of individuals of a particular religion . . . ." *Id* at. 329 n.1. *Amos* upheld this exemption because it served a legitimate purpose (reducing government interference with religious organizations), allowed religious organizations to advance their mission (without forcing the government to do so), and treated religion neutrally (without discriminating among religions). *Id*. at 335–39.

The same logic applies here. Like its Title VII counterpart, Title IX's exemption allows religious schools to define and carry out their religious missions, does not require the government to promote religion, and protects all religious educational organizations without singling out any denomination or belief for special treatment.

To be sure, Plaintiffs believe the exemption favors certain religious beliefs and denominations. Compl. ¶¶ 485, 515–16, 518–19, 521–22. But they allege no facts to support this contention. "The critical weakness of [Plaintiffs'] [E]stablishment [Clause] claim arises from the fact that [the exemption], on its face, simply does not discriminate on the basis of religious affiliation or religious belief." *Gillette*, 401 U.S. at 450. At most, Plaintiffs contend *private entities* with Christian beliefs happen to invoke the exemption more often than others. But this conclusory allegation is irrelevant. The government can *allow* private religious decisions without embracing those decisions or violating the Establishment Clause. *See Town of Greece v. Galloway*, 572 U.S. 565, 585 (2014) (upholding "policy of non-discrimination" that allowed congregations in town to pray at town board meetings even though "nearly

all of the congregations in town turned out to be Christian"); *Amos*, 483 U.S. at 333 n.13, 337 (exemption that allowed churches to advance religion did not involve government doing so "through its own activities and influence").[7] That dooms Plaintiffs' legal theory.

In any event, Plaintiffs' legal theory does not even play out in practice. Many diverse religious entities have in fact invoked the religious exemption. As Plaintiffs admit, the Department "has never rejected an educational assertion that it is controlled by a religious organization." Compl. ¶ 482. And the very entities named in this lawsuit represent many different religious views and span many different faith traditions—from Baptist (*e.g.*, Baylor, Cedarville, Clark's Summit, Oklahoma Baptist) to Wesleyan (*e.g.*, Indiana Wesleyan) to Quaker (*e.g.*, George Fox) to Seventh Day Adventist (*e.g.*, La Sierra). This diversity is positive and shows that the Department has enforced a neutral exemption in a neutral way, without preferring any religion or denomination. The exemption is constitutional under *Amos*.

## 2.    The exemption is consistent with history and tradition.

Although *Amos* itself resolves this case, the Supreme Court recently adopted a historical test to evaluate Establishment Clause claims. Title IX's exemption satisfies this test as well.

Since 1971, courts have sporadically applied the three-part test from *Lemon v. Kurtzman*, 403 US. 602 (1971), to evaluate Establishment Clause claims. *See Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2080 (2019) (plurality opinion) (surveying this history). But this test has "been harshly criticized by Members of th[e]

---

[7] In fact, the government can even offer exemptions to particular religious beliefs without violating the Establishment Clause. *See Gillette v. United States*, 401 U.S. 437, 448–60 (1971) (rejecting Establishment Clause challenge to exemption for those opposed "to participation in war in any form" and not just to unjust wars); *Kong v. Scully*, 341 F.3d 1132, 1139 (9th Cir. 2003) (rejecting Establishment Clause challenge to exemption for those who objected to medical care).

[Supreme] Court, lamented by lower court judges, and questioned by a diverse roster of scholars." *Id.* at 2081. In many recent cases, the Supreme Court has refused to apply or simply ignored *Lemon*. *Id.* at 2080 (listing cases). Now, the Supreme Court has adopted an approach that "looks to history for guidance"—asking whether a particular action is consistent with "historical practices and understandings." *Id.* at 2087; *id.* at 2101-02 (Gorsuch, J., concurring) (agreeing with plurality's "historically sensitive approach"). Under this approach, Title IX's exemption easily satisfies Establishment Clause requirements.

Our nation boasts a long history of accommodating religion through statutory exemptions without violating the Establishment Clause. *See* Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409, 1511–12 (1990) (surveying pre- and post-founding history to conclude that "exemptions on account of religious scruple should have been familiar to the framers and ratifiers[]. There is no substantial evidence that such exemptions were considered constitutionally questionable."); Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original Understanding of the Establishment Clause*, 81 Notre Dame L. Rev. 1793, 1808–09 (2006) (reaching same conclusion).

And for the past 100 years, the Supreme Court has repeatedly upheld statutory religious exemptions against Establishment Clause attacks:

- *Arver v. United States*, 245 U.S. 366, 376, 389–90 (1918) (draft exemption for clergy, seminarians, and pacificists);
- *Goldman v. United States*, 245 U.S. 474, 476 (1918) (same);
- *Zorach v. Clauson,* 343 U.S. 306, 312 (1952) (exemption from compulsory education law for religious instruction off campus);
- *Walz v. Tax Comm'n of New York*, 397 U.S. 664, 680 (1970) (property tax exemption for religious non-profits);
- *Gillette,* 401 U.S. at 441, 460 (draft exemption for those with certain religious objections);
- *Amos*, 483 U.S. at 334 (Title VII religious exemption); and

- *Cutter*, 544 U.S. at 720 (RLUIPA exemption for prisoners).

The Ninth Circuit has also upheld religious exemptions:

- *Kong v. Scully*, 341 F.3d 1132, 1134 (9th Cir. 2003) (exemption for non-medical care of persons).

- *Droz v. Comm'r of IRS*, 48 F.3d 1120, 1124 (9th Cir. 1995) (exemption from tax for Social Security).

By 2020, the tradition of religious exemptions was so well-established that when the Supreme Court considered a challenge to a religious exemption to the Affordable Care Act's mandate, one Justice noted that "the States do not argue—and there is no basis for an argument—that the new rule violates [the Establishment] Clause." *Little Sisters of the Poor Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2396 n.13 (2020) (Alito, J., concurring). Because accommodating religious exercise is consistent with our nation's history and tradition, Plaintiffs' Establishment Clause claim must fail.

### 3.    The exemption satisfies the *Lemon* test.

Although many courts have rightly abandoned the *Lemon* test, Title IX's religious exemption satisfies this test as well. The exemption has a secular purpose, its primary effect neither advances nor inhibits religion, and it does not entangle government with religion. *Williams v. California*, 764 F.3d 1002, 1014 (9th Cir. 2014).

### a.    The exemption avoids interference with religion and thus serves a permissible secular purpose.

*Lemon's* first prong is satisfied when a law serves a permissible secular purpose. *Id.* "[I]t is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Amos*, 483 U.S. at 335. If guessing which "activities a secular court will consider religious" represented a "significant burden on a religious organization" in the Title VII context, *id.* at 335, guessing which teachings and practices will violate Title IX represents an even larger one. The Title

IX exemption serves a permissible secular purpose by reducing governmental interference with religious activity. Under *Lemon*, that "is a lawful secular purpose." *Kong*, 341 F.3d at 1140.

> **b.    The exemption accommodates religious views without endorsing them.**

*Lemon*'s second prong is satisfied when a law's primary effect neither advances nor inhibits religion. *Williams*, 764 F.3d at 1014. To evaluate this prong, courts consider whether the challenged government action sends "primarily a message of either endorsement or disapproval of religion" to the "informed and reasonable observer." *Trunk v. City of San Diego*, 629 F.3d 1099, 1109-10 (9th Cir. 2011). The Title IX exemption does not. *See Amos*, 483 U.S. at 335 (Title VII had primary effect of allowing religious organizations to advance their mission). The government can accommodate private religious exercise without endorsing any religious view. *Mayweathers v. Newland*, 314 F.3d 1062, 1069 (9th Cir. 2002) (upholding a law that "merely accommodates and protects the free exercise of religion, which the Constitution allows").

While Plaintiffs suggest that relieving religious institutions "of regulatory burdens and liability" is impermissible (Compl. ¶ 519), courts have repeatedly held otherwise. *See, e.g.*, *Amos*, 483 U.S. at 337 (distinguishing law that "*allows* [religious institutions] to advance religion" like an exemption from situations when "*government itself* has advanced religion through its own activities and influence"); *Kong*, 341 F.3d at 1139-40 (noting that exemption "indoctrinates no one in religion" and "does not symbolize government approval"). As these cases show, reasonable observers understand that the government neither advances nor inhibits religion by simply accommodating it.

### c.    The exemption avoids entanglement concerns.

"It cannot be seriously contended that [this exemption] impermissibly entangles church and state," as it "effectuates a more complete separation of the two and avoids . . . intrusive inquir[ies] into religious belief[s]." *Amos*, 483 U.S. at 339. The challenged exemption applies to all religions and all denominations, and it encompasses all religious tenets that conflict with Title IX. 20 U.S.C. § 1681(a)(3). Plaintiffs admit as much, noting that the Department has administered the exemption in a deferential manner, "never reject[ing] an educational institution's assertion that it is controlled by a religious organization." Compl. ¶ 482. There is no entanglement.

Unlike this religious neutrality, Plaintiffs insist that the Department scrutinize exemption requests to identify permissible and impermissible religious beliefs about "sexual and gender minority students." *Id.* at 66 ¶¶ B–C. But that would violate the well-established principle that "courts should refrain from trolling through a person's or institution's religious beliefs." *Mitchell v. Helms*, 530 U.S. 793, 828 (2000). As explained in Section V.A. below, it is Plaintiffs' requested relief—not the exemption—that would create the entanglement the Establishment Clause prohibits.

### C.    The complaint fails to allege an Equal Protection claim.

Plaintiffs say Title IX's religious exemption also violates the Equal Protection Clause because it allegedly harms "sexual and gender minority students." Compl. ¶ 510. But this vague classification does not constitute a protected class. Nor does the religious exemption classify anyone based on this or any protected class. The challenged exemption therefore triggers only rational-basis review, which it easily survives.

### 1.    The exemption triggers rational-basis review under *Amos*.

The level of scrutiny for an equal protection claim depends on "the state's classification of groups." *Gallinger v. Beccera*, 898 F.3d 1012, 1016 (9th Cir. 2018) (citation omitted). Laws discriminating against a suspect class (such as "race, religion, or national origin") receive "strict scrutiny." *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). "Regulations which facially discriminate on the basis of gender . . . must receive intermediate scrutiny." *Harrison v. Kernan*, 971 F.3d 1069, 1078 (9th Cir. 2020). And laws that classify upon neither a suspect nor quasi-suspect class receive rational-basis review. *Ball*, 254 F.3d at 823.

Here, rational-basis review applies because Title IX's religious exemption does not mention—much less classify—*any* protected class. The exemption "is neutral on its face and motivated by a permissible purpose of limiting governmental interference with the exercise of religion." *Amos*, 483 U.S. at 339. There is therefore "no justification for applying strict scrutiny." *Id*. While Plaintiffs say they are "sexual and gender minority students," their classification is irrelevant. It is the law's classification that matters. And here, the challenged exemption does not classify students at all; it applies only to religious schools.

Unable to identify any facial classification in the statute, Plaintiffs accuse the exemption of negatively *affecting* "sexual and gender minority students." But disparate impact alone does change the level of scrutiny. "When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 272 (1979). If Plaintiffs' theory were correct, then every religious exemption in every anti-discrimination law would trigger strict scrutiny. That is not the case, as *Amos* shows. 483 U.S. at 339. Further, no court has recognized the vague and broad classification of "sexual and gender minorities." And the Supreme Court has never

recognized sexual orientation or transgender status as suspect classes, nor is any such class in the challenged exemption.[8]

Because Title IX's religious exemption is facially neutral, it deserves rational-basis review unless it was adopted with an "invidious" purpose to discriminate on another basis. *Feeney*, 442 U.S. at 274. But Plaintiffs do not allege any facts showing that Congress had an invidious purpose in adopting the exemption or that the Department had this purpose in applying it. For good reason. The Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices." *Amos*, 483 U.S. at 334. After all, "the First Amendment itself . . . gives special solicitude to the rights of religious organizations." *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 189 (2012). If anything, this "special solicitude" applies with even greater force here than in *Amos*. While Title VII mainly regulates businesses, Title IX regulates educational institutions. Title IX therefore affects a "core" religious function of religious schools and seminaries: "educating young people in their faith, inculcating its teachings, and training them to live their faith." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064 (2020).

A law survives rational-basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). Title IX's exemption survives rational-basis review because it serves a legitimate governmental interest of accommodating religion. *See*

---

[8] The Ninth Circuit has applied intermediate scrutiny to classifications based on sexual orientation and transgender status. *SmithKline Beecham Corp. v. Abbott Laboratories*, 740 F.3d 471, 481 (9th Cir. 2014) (sexual orientation), *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019) (transgender). But many circuit courts have refused to do so. *See, e.g.*, *Cook v. Gates*, 528 F.3d 42, 61-62 (1st Cir. 2008); *Able v. United States*, 155 F.3d 628, 635 (2d Cir. 1998); *Thomasson v. Perry*, 80 F.3d 915, 928 (4th Cir. 1996); *Richenberg v. Perry*, 97 F.3d 256, 260 (8th Cir. 1996).

*Amos*, 483 U.S. at 339 (Title VII religious exemption triggered and survived rational basis review by serving a legitimate state interest of accommodating religion).

### 2.    The exemption satisfies any scrutiny level.

Rational basis applies, but Title IX's exemption satisfies *any* level of review, including strict scrutiny, which requires that the challenged law be "suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Here, the exemption serves a compelling government interest by preventing the government from violating foundational religious liberties protected by the First Amendment and RFRA. *See, e.g.*, *Amos*, 483 U.S. at 334 (declaring "the government may (and sometimes must) accommodate religious practices"); *Massachusetts v. U.S. Dep't of Health and Hum. Servs.*, No. 17-11930-NMG, 2021 WL 185243, at *10 (D. Mass. 2021) ("The Supreme Court has indicated . . . that the accommodation of sincerely held religious and moral beliefs is an important government interest."). Indeed, revoking Title IX's exemption would lead to manifold constitutional and statutory violations, as described in Section V below. And the scope of the exemption is "suitably tailored" to that interest because it applies "if" and "to the extent" that application of Title IX would violate an institution's religious tenets. *See* 20 U.S.C. § 1681(a)(3); 34 C.F.R § 106.12(a).

### D.    The complaint fails to allege a Substantive Due Process claim.

"Substantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases." *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008). Fundamental rights include "particular rights contained in the first eight Amendments" because they are "fundamental to our scheme of ordered liberty and system of justice." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 763-4 (2010). They also include unenumerated "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*,

521 U.S. 702, 720–21 (1997) (citation omitted). According to the Supreme Court, these rights include "rights to marry; to have children; to direct the education and upbringing of one's children; to marital privacy; to use contraception; . . . and to abortion." *Id.* at 720. (citations omitted). But "[w]e must . . . exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed" into judicial policy preferences. *Id.* (cleaned up).

Plaintiffs allude to several Substantive Due Process theories, asserting that Title IX's exemption burdens their fundamental right to marry (Compl. ¶ 505-06), as well as their "rights" to obtain "gender-affirming" and "culturally competent" medical care; to be free from bias-related violence, harassment, and conversion therapy; to privacy about their LGBTQ+ status; and to be clothed and groomed consistent with that status. Compl. ¶ 512. But the *exemption* does not burden any of these. Substantive due process is not implicated unless "the *government* attempts to intrude upon [Plaintiffs'] personal and private lives." *Witt*, 527 F.3d at 819 (emphasis added). And here, the government is not stopping anyone from marrying or obtaining medical care or dressing as they wish. Plaintiffs do not seek to be free from government interference but to force the government to compel private religious schools to conform to Plaintiffs' views. They simply have no right to that.

And apart from marriage, the Supreme Court has never recognized Plaintiffs' alleged "rights" as fundamental. *See Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1250 (11th Cir. 2004) (declining to create fundamental right for sexual privacy). At most, the Ninth Circuit has applied intermediate scrutiny to a law burdening someone's "private, consensual, homosexual conduct." *Witt*, 527 F.3d at 814. (But the exemption here burdens no one, and, as discussed, Plaintiffs' complaints are based on the actions of private parties.) In any event, the Ninth Circuit reserved this type of scrutiny for as-applied claims, not facial ones. *Id*. And here, Plaintiffs seek facial

relief that extends "beyond the particular circumstances of these plaintiffs." *Reed*, 561 U.S. at 194. Because the exemption burdens no fundamental right, it deserves rational-basis review and satisfies this standard for the reasons above. *See supra* § IV.C.

### E. Title IX forbids discrimination based on sex, not sexual orientation or gender identity.

Plaintiffs presuppose that Title IX's prohibition against discrimination on the basis of "sex" includes sexual orientation and gender identity. Compl. ¶ 47 (alleging that Title IX prohibits "sex, sexual orientation and gender identity discrimination."). It does not.

In any question of statutory interpretation, the court begins with the "fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute"—that is, their original public meaning. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (cleaned up). Title IX's text refers only to "sex." 20 U.S.C. § 1681 *et seq*. Congress passed Title IX in 1972. In common, ordinary usage, the word "sex" in 1972 meant biologically male or female, based on reproductive organs.[9] The words "gender identity," "gender expression," and "sexual orientation" also do not appear anywhere in the statute or accompanying federal regulation, 34 C.F.R. § 106.12.

The "clear statement rule" also requires this interpretation. The Supreme Court has recognized that education is "perhaps the most important function of state and local governments," *Honig v. Doe*, 484 U.S. 305, 309 (1988) (citation omitted), and that States generally can regulate housing, including campus housing. *See Loretto v.*

---

[9] Sex, Webster's New World Dictionary of the American Language (College ed. 1962) ("either of the two divisions of organisms distinguished as male or female"); Sex, The American Heritage Dictionary of the English Language (1st ed. 1969) ("[t]he property or quality by which organisms are classified according to their reproductive functions").

*Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982). For laws displacing state regulation or imposing grant conditions, the clear statement rule limits the States and the public's obligations to those requirements "unambiguously" set forth on the face of the statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991) (citation omitted). In passing Title IX, Congress unambiguously regulated differential treatment based on "sex," but it did not unambiguously include sexual orientation or transgender status. 20 U.S.C. § 1681(a).

Nor has the Supreme Court rewritten Title IX to include these categories. *Bostock v. Clayton County* considered only whether an employer who fires an employee based on sexual orientation or gender identity does so, in part, because of sex under Title VII. 140 S. Ct. 1731, 1737, 1743 (2020). *Bostock* did not fold concepts like sexual orientation and gender identity into "sex." Rather, it affirmed that they are "distinct concepts." *Id*. at 1746-47. And the Court rejected the claim that its "decision will sweep beyond Title VII to other federal or state laws that prohibit sex discrimination," emphasizing that "none of these other [federal laws prohibiting sex discrimination] are before us." *Id*. at 1753.

Title VII also has a different purpose than Title IX. According to *Bostock*, Title VII exists to make an employee's sex irrelevant to their selection, evaluation, and compensation. *Id*. at 1741. But a person's sex is often relevant under Title IX, which expressly authorizes many sex-separate activities and intimate facilities, and in some cases *requires* consideration of a person's sex. *See, e.g.*, 20 U.S.C. §§ 1681(a), 1686 ("Notwithstanding anything to the contrary contained in this chapter, nothing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes."); 45 C.F.R. § 86.32 ("[a] recipient may provide separate housing on the basis

Intervenors' Proposed Motion to Dismiss and Memorandum in Support | 27

of sex"); 34 C.F.R §§ 106.32(b), 106.33, 106.34, 106.40, 106.41, 106.43. 106.52, 106.59, 106.61.

Given these differences, this Court should follow Title IX's plain text and read it as only banning discrimination based on sex. *Cf. Bostock*, 140 S. Ct. at 1753, 1754 (explaining that the Court was not "address[ing] bathrooms, locker rooms, or anything else of the kind," nor was it addressing how "doctrines protecting religious liberty interact with Title VII").

## V.    If granted, Plaintiffs' requested relief would violate the Religious Schools' constitutional and statutory rights.

Plaintiffs' requested relief would violate the Religious Schools' constitutional and statutory rights.[10]

### A.    The requested relief creates a denominational preference in violation of the Establishment Clause.

Ironically, Plaintiffs ask this Court to do what Congress assiduously avoided: creating a denominational preference that violates the Establishment Clause's "clearest command." *Larson v. Valente*, 456 U.S. 228, 244 (1982). They seek to revoke the exemption only "as applied to sexual and gender minority students." Compl. at 66. But if the Court revokes the exemption in this fashion, government officials would have a license—if not a duty—to scrutinize the religious beliefs and practices of each institution to ensure that religious schools with biblical beliefs on gender and sexual morality lose funding while schools with different religious beliefs retain funding.

If a rule that applied only to religious groups who got more than 50% of their funding from nonmembers created a denominational preference, *Larson*, 456 U.S. at 246–51, then determining funding based on the doctrines a religious group holds would do the same. Strict scrutiny would apply to such a system, *id*. at 246, and

---

[10] The Religious Schools reserve the right to raise additional affirmative defenses, including but not limited to waiver, release, laches, estoppel, statute of limitations, and assumption of risk.

Defendants cannot demonstrate a compelling government interest in discriminating among religious beliefs.

**B.    The requested relief violates the church autonomy doctrine.**

The "First Amendment protects the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Our Lady of Guadelupe*, 140 S. Ct. at 2055 (cleaned up). It protects the autonomy of religious institutions—including religious educational institutions "in matters of faith and doctrine" and "internal management decisions that are essential to the institution's central mission." *Id.* at 2060. Indeed, the First Amendment prohibits "any attempt by the government to dictate *or even to influence* such matters." *Id.* (emphasis added). This includes a religious organization's right to choose its ministers and leaders, *Hosanna-Tabor*, 565 U.S. at 188–89, and "the ecclesiastical government of all individual members." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 114 (1952).

Imposing financial penalties on a religious entity simply for holding and exercising its beliefs would violate the First Amendment. *Hosanna-Tabor*, 565 U.S. at 194. Such penalties "would depend on a determination that" the religious institution "was wrong to have" exercised its beliefs, precisely the sort of determination that the First Amendment forbids. *Id.* Revoking an exemption—and thus stripping a religious institution of funding and subjecting it to potential liability, Compl. ¶ 519, would have the same effect and violate the same principles.

Plaintiffs disagree with the beliefs and practices of many religious schools. *See, e.g.*, Compl. ¶ 173 (faulting York for not changing its "definition of marriage to be more inclusive"); *id.* ¶ 238 (faulting Messiah for believing "that the Bible teaches that marriage is between one man and one woman"). And they seek to punish these schools for articulating and following specific beliefs about gender and sexual morality. *See* Compl. ¶¶ 76–79, 136, 159, 173, 184, 210, 225, 238, 266, 298–301, 335, 346–47, 375–

76, 387–88, 404, 411, 423, 441–42, 460. Yet these are protected expressions of "faith and doctrine"; the First Amendment guarantees that religious schools may formulate and follow their religious teachings without state interference or influence. *Our Lady*, 140 S. Ct. at 2055, 2060. Punishing religious schools for their beliefs and practices is precisely what the Religion Clauses prohibit.

### C.    The requested relief constitutes religious targeting, violating the Free Exercise Clause.

The government cannot "punish the expression of religious doctrines it believes to be false," *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990), nor can it "act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com'n*, 138 S. Ct. 1719, 1731 (2018). Plaintiffs' clear aim is to use the government to single out and punish religious institutions—especially *Christian* institutions (Compl. ¶ 485)—for expressing their religious beliefs through conduct policies (*see, e.g.,id.* ¶¶ 58, 76, 99, 136,147, 159, 170, 173, 184, 210, 225, 238, 244-45, 255, 266-67, 298, 300, 334-35, 346-47, 363, 375-76, 387-88, 404, 411, 423, 441-42, 460-61); teaching (*see id.* at ¶¶123-24, 127, 148); counseling (*see id.* at ¶¶ 78, 226, 256, 405, 446); employment standards (*see id.* at ¶ 465); and housing policies (*see id.* at ¶¶ 378, 392).

Any injunction requiring the Department to target schools' religious beliefs about marriage and human sexuality would violate the free exercise rights of the Religious Schools. Such religious targeting cannot satisfy strict scrutiny and is therefore unconstitutional.

### D.    The requested relief violates RFRA.

Plaintiffs' requested injunction would also violate the Religious Schools' rights under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1 *et seq*. RFRA prohibits the government from substantially burdening the exercise of religion absent a compelling government interest executed in the least restrictive means. *Id.*

Plaintiffs' sweeping request to punish religious schools for their student conduct policies, teaching, employment standards, and other faith-based policies presents religious schools with an impossible choice: lose essential federal funding or violate your beliefs. Forcing religious institutions to sacrifice their beliefs or their governmental benefit is a substantial burden that the government cannot justify. *See, e.g.*, *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008).

### E.    The requested relief discriminates against and compels speech, both of which violate the Free Speech Clause.

Plaintiffs' requested injunction would infringe the Religious Schools' free speech rights. Forbidding the government from choosing favored and disfavored messages is at the core of the First Amendment's free-speech guarantee. *See Police v. Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). Private religious speech is protected under the First Amendment. *See, e.g.*, *Lamb's Chapel v. Center Moriches Union Free School Dist.,* 508 U.S. 384 (1993).

Restricting speech based on its content and viewpoint is presumptively unconstitutional. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (content); *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1995) (viewpoint). So, too, is compelling private speakers to engage in unwanted expression. *See Wooley v. Maynard,* 430 U.S. 705, 715 (1977). When the government regulates speech by mandating that persons explicitly agree with the government on a particular matter, it "plainly violate[s] the First Amendment." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013).

Here, Plaintiffs' lawsuit targets the content and viewpoint of religious schools, including classroom teaching (*see, e.g.*, Compl. ¶¶ 123-24, 127, 138), university handbooks and codes of conduct (*see id.* at ¶¶ 58, 76, 99, 136,147, 159, 170, 173, 184, 210, 225, 238, 244-45, 255, 266-67, 298, 300, 334-35, 346-47, 363, 375-76, 387-88, 404, 411, 423, 441-42, 460-61), and interpersonal communication and counselling (*see id.*

at ¶¶ 78, 147, 226, 256, 405, 443, 446). And their requested relief includes forcing religious schools to communicate "respect" for the sexual proclivities and conduct of their students. *See id.* at 66. This requested relief violates the Religious Schools' right to free speech and therefore should be denied.

###    F.    The requested relief violates the Religious Schools' right to associate with likeminded faculty and students.

The First Amendment protects the right "to associate" or not associate with others for many "educational [and] religious" ends. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984). Thus, the government may not invade an organization's expression by forcing "inclusion of an unwanted person in a group" if doing so affects "the group's ability to advocate public or private viewpoints." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). Enjoining Title IX's religious exemption would significantly impair the Religious Schools' ability to advocate, teach, and publish their religious beliefs about marriage and human sexuality, in violation of the First Amendment. *See id.* at 648, 650, 656-57. Thus, Plaintiffs' complaint should be dismissed for this reason as well.

## VI.    Plaintiffs' legal theory is limitless and endangers thousands of religious exemptions across the country.

More than 2,000 federal and state statutes protect specific conscientious objections with religious exemptions. *See* James Ryan, Note, *Smith and the Religious Freedom Restoration Act: An Iconoclastic Assessment*, 78 VA. L. REV. 1407, 1445–50 (1992); Lucien J. Dhooge, *Public Accommodation Statutes, Sexual Orientation and Religious Liberty: Free Access or Free Exercise?*, 27 U. Fla. J.L. & Pub. Pol'y 1, 8–33 (2016). Among others, they protect those who refuse to participate in executions, 18 U.S.C. § 3597(b); abortions, 42 U.S.C. § 238n; Pub. L. No. 113-235, 128 Stat. 2130, 2515 § 507(d)(1) (2014); or assisted suicide, 42 U.S.C. § 18113(a). And the Constitution itself contains religious exemptions. U.S. CONST. art. VI, ¶ 3; *id.* art. II, § 1, ¶ 8.

If Plaintiffs succeed here, the impact will reverberate across all religious exemptions. The Religious Schools include an appendix to this motion that lists hundreds of state and federal conscience-protection laws that would be invalidated under Plaintiffs' legal theory. Appendix of Religious Exemptions, attached as **Exhibit A**. Plaintiffs have no limiting principle. Their requested relief would open a pandora's box of constitutional conflict—to the detriment of hundreds of religious colleges and universities and the thousands of students they serve.

## CONCLUSION

For the foregoing reasons, the Religious Schools respectfully request that Plaintiffs' complaint be dismissed with prejudice.

Respectfully submitted this 13th day of May, 2021.

<table>
<tr>
<td>

DAVID A. CORTMAN*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org




*Admitted pro hac vice

</td>
<td>

*s/ Mark Lippelmann*
KRISTEN K. WAGGONER,
OR Bar No. 067077
*Lead Counsel*

RYAN J. TUCKER*
AZ Bar No. 034382
MARK A. LIPPELMANN*
AZ BAR NO. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
kwaggoner@ADFlegal.org
rtucker@ADFlegal.org
mlippelmann@ADFlegal.org

</td>
</tr>
</table>

*Attorneys for Proposed Intervenor-Defendants*

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), or 54-3(e) because it contains 10,035 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*s/ Mark A. Lippelmann*

MARK A. LIPPELMANN*
AZ BAR NO. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90TH STREET
SCOTTSDALE, AZ 85260
TELEPHONE: (480) 444-0020
mlippelmann@ADFlegal.org

*Attorneys for Proposed Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2021, the foregoing was served via CM/ECF on counsel for all parties.

*s/ Mark A. Lippelmann*

MARK A. LIPPELMANN*
AZ BAR NO. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90TH STREET
SCOTTSDALE, AZ 85260
TELEPHONE: (480) 444-0020
mlippelmann@ADFlegal.org

*Attorneys for Proposed Intervenor-Defendants*