# EXHIBIT A
## Appendix of Religious Exemptions

**42 U.S.C. § 300a-7**
**Public Health Service Act, Church Amendment**

Sterilization or abortion

(a) Omitted

(b) Prohibition of public officials and public authorities from imposition of certain requirements contrary to religious beliefs or moral convictions

The receipt of any grant, contract, loan, or loan guarantee under the Public Health Service Act [42 U.S.C.A. § 201 et seq.], the Community Mental Health Centers Act [42 U.S.C.A. § 2689 et seq.], or the Developmental Disabilities Services and Facilities Construction Act [42 U.S.C.A. § 6000 et seq.] by any individual or entity does not authorize any court or any public official or other public authority to require—

(1) such individual to perform or assist in the performance of any sterilization procedure or abortion if his performance or assistance in the performance of such procedure or abortion would be contrary to his religious beliefs or moral convictions; or

(2) such entity to—

(A) make its facilities available for the performance of any sterilization procedure or abortion if the performance of such procedure or abortion in such facilities is prohibited by the entity on the basis of religious beliefs or moral convictions, or

(B) provide any personnel for the performance or assistance in the performance of any sterilization procedure or abortion if the performance or assistance in the performance of such procedures or abortion by such personnel would be contrary to the religious beliefs or moral convictions of such personnel.

(c) Discrimination prohibition

(1) No entity which receives a grant, contract, loan, or loan guarantee under the Public Health Service Act [42 U.S.C.A. § 201 et seq.], the Community Mental Health Centers Act [42 U.S.C.A. § 2689 et seq.], or the Developmental Disabilities Services and Facilities Construction Act [42 U.S.C.A. § 6000 et seq.] after June 18, 1973, may—

  (A) discriminate in the employment, promotion, or termination of employment of any physician or other health care personnel, or

  (B) discriminate in the extension of staff or other privileges to any physician or other health care personnel,

  because he performed or assisted in the performance of a lawful sterilization procedure or abortion, because he refused to perform or assist in the performance of such a procedure or abortion on the grounds that his performance or assistance in the performance of the procedure or abortion would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting sterilization procedures or abortions.

(2) No entity which receives after July 12, 1974, a grant or contract for biomedical or behavioral research under any program administered by the Secretary of Health and Human Services may—

  (A) discriminate in the employment, promotion, or termination of employment of any physician or other health care personnel, or

  (B) discriminate in the extension of staff or other privileges to any physician or other health care personnel,

  because he performed or assisted in the performance of any lawful health service or research activity, because he refused to perform or assist in the performance of any such service or activity on the grounds that his performance or assistance in the performance of such service or activity would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting any such service or activity.

(d) Individual rights respecting certain requirements contrary to religious beliefs or moral convictions

> No individual shall be required to perform or assist in the performance of any part of a health service program or research activity funded in whole or in part under a program administered by the Secretary of Health and Human Services if his performance or assistance in the performance of such part of such program or activity would be contrary to his religious beliefs or moral convictions.

(e) Prohibition on entities receiving Federal grant, etc., from discriminating against applicants for training or study because of refusal of applicant to participate on religious or moral grounds

> No entity which receives, after September 29, 1979, any grant, contract, loan, loan guarantee, or interest subsidy under the Public Health Service Act [42 U.S.C.A. § 201 et seq.], the Community Mental Health Centers Act [42 U.S.C.A. § 2689 et seq.], or the Developmental Disabilities Assistance and Bill of Rights Act of 2000 [42 U.S.C.A. § 15001 et seq.] may deny admission or otherwise discriminate against any applicant (including applicants for internships and residencies) for training or study because of the applicant's reluctance, or willingness, to counsel, suggest, recommend, assist, or in any way participate in the performance of abortions or sterilizations contrary to or consistent with the applicant's religious beliefs or moral convictions.

**42 U.S.C. § 2996f(b)(8)**
**Legal Services Corporation Act**

Grants and contracts

(b) Limitations on uses
No funds made available by the Corporation under this subchapter, either by grant or contract, may be used—
(8) to provide legal assistance with respect to any proceeding or litigation which seeks to procure a nontherapeutic abortion or to compel any individual or institution to perform an abortion, or assist in the performance of an abortion, or provide facilities for the performance of an abortion, contrary to the religious beliefs or moral convictions of such individual or institution

**Title III of Division J. Pub. L. No. 113-235, 128 Stat. 2130**
**Consolidated and Further Continuing Appropriations Act 2015**

DIVISION J—DEPARTMENT OF STATE, FOREIGN OPERATIONS, AND
RELATED PROGRAMS APPROPRIATIONS ACT, 2015
TITLE III—BILATERAL ECONOMIC ASSISTANCE
GLOBAL HEALTH PROGRAMS

For necessary expenses to carry out the provisions of chapters 1 and 10 of part I of the Foreign Assistance Act of 1961, for global health activities, in addition to funds otherwise available for such purposes, $2,783,950,000, to remain available until September 30, 2016, and which shall be apportioned directly to the United States Agency for International Development (USAID): *Provided*, That this amount shall be made available for training, equipment, and technical assistance to build the capacity of public health institutions and organizations in developing countries, and for such activities as:

(1) child survival and maternal health programs;
(2) immunization and oral rehydration programs;
(3) other health, nutrition, water and sanitation programs which directly address the needs of mothers and children, and related education programs;
(4) assistance for children displaced or orphaned by causes other than AIDS;
(5) programs for the prevention, treatment, control of, and research on HIV/AIDS, tuberculosis, polio, malaria, and other infectious diseases including neglected tropical diseases, and for assistance to communities severely affected by HIV/AIDS, including children infected or affected by AIDS;
(6) disaster preparedness training for health crises; and
(7) family planning/reproductive health:

*Provided further*, That funds appropriated under this paragraph may be made available for a United States contribution to the GAVI Alliance: *Provided further*, That none of the funds made available in this Act nor any unobligated balances from prior appropriations Acts may be made available to any organization or program which, as determined by the President of the United States, supports or participates in the management of a program of coercive abortion or involuntary sterilization: *Provided further*, That any determination made under the previous proviso must be made not later than

6 months after the date of enactment of this Act, and must be accompanied by the evidence and criteria utilized to make the determination: *Provided further*, That none of the funds made available under this Act may be used to pay for the performance of abortion as a method of family planning or to motivate or coerce any person to practice abortions: *Provided further*, That nothing in this paragraph shall be construed to alter any existing statutory prohibitions against abortion under section 104 of the Foreign Assistance Act of 1961: *Provided further*, That none of the funds made available under this Act may be used to lobby for or against abortion: *Provided further*, That in order to reduce reliance on abortion in developing nations, funds shall be available only to voluntary family planning projects which offer, either directly or through referral to, or information about access to, a broad range of family planning methods and services, and that any such voluntary family planning project shall meet the following requirements:

(1) service providers or referral agents in the project shall not implement or be subject to quotas, or other numerical targets, of total number of births, number of family planning acceptors, or acceptors of a particular method of family planning (this provision shall not be construed to include the use of quantitative estimates or indicators for budgeting and planning purposes);

(2) the project shall not include payment of incentives, bribes, gratuities, or financial reward to:

(A) an individual in exchange for becoming a family planning acceptor; or

(B) program personnel for achieving a numerical target or quota of total number of births, number of family planning acceptors, or acceptors of a particular method of family planning;

(3) the project shall not deny any right or benefit, including the right of access to participate in any program of general welfare or the right of access to health care, as a consequence of any individual's decision not to accept family planning services;

(4) the project shall provide family planning acceptors comprehensible information on the health benefits and risks of the method chosen, including those conditions that might render the use of the method inadvisable and those adverse side effects known to be consequent to the use of the method; and

(5) the project shall ensure that experimental contraceptive drugs and devices and medical procedures are provided only in the context of a

scientific study in which participants are advised of potential risks and benefits; and, not less than 60 days after the date on which the USAID Administrator determines that there has been a violation of the requirements contained in paragraph (1), (2), (3), or (5) of this proviso, or a pattern or practice of violations of the requirements contained in paragraph (4) of this proviso, the Administrator shall submit to the Committees on Appropriations a report containing a description of such violation and the corrective action taken by the Agency:

*Provided further*, That in awarding grants for natural family planning under section 104 of the Foreign Assistance Act of 1961 no applicant shall be discriminated against because of such applicant's religious or conscientious commitment to offer only natural family planning; and, additionally, all such applicants shall comply with the requirements of the previous proviso: *Provided further*, That for purposes of this or any other Act authorizing or appropriating funds for the Department of State, foreign operations, and related programs, the term "motivate", as it relates to family planning assistance, shall not be construed to prohibit the provision, consistent with local law, of information or counseling about all pregnancy options: *Provided further*, That information provided about the use of condoms as part of projects or activities that are funded from amounts appropriated by this Act shall be medically accurate and shall include the public health benefits and failure rates of such use.

## 20 U.S.C. § 1688
## Civil Rights Restoration Act, Danforth Amendment

Neutrality with respect to abortion

Nothing in this chapter shall be construed to require or prohibit any person, or public or private entity, to provide or pay for any benefit or service, including the use of facilities, related to an abortion. Nothing in this section shall be construed to permit a penalty to be imposed on any person or individual because such person or individual is seeking or has received any benefit or service related to a legal abortion.

**42 U.S.C. § 238n**
**Public Health Service Act, Coats-Snowe Amendment**

Abortion-related discrimination in governmental activities regarding training and licensing of physicians

(a) In general

The Federal Government, and any State or local government that receives Federal financial assistance, may not subject any health care entity to discrimination on the basis that--

(1) the entity refuses to undergo training in the performance of induced abortions, to require or provide such training, to perform such abortions, or to provide referrals for such training or such abortions;

(2) the entity refuses to make arrangements for any of the activities specified in paragraph (1); or

(3) the entity attends (or attended) a post-graduate physician training program, or any other program of training in the health professions, that does not (or did not) perform induced abortions or require, provide or refer for training in the performance of induced abortions, or make arrangements for the provision of such training.

(b) Accreditation of postgraduate physician training programs

(1) In general

In determining whether to grant a legal status to a health care entity (including a license or certificate), or to provide such entity with financial assistance, services or other benefits, the Federal Government, or any State or local government that receives Federal financial assistance, shall deem accredited any postgraduate physician training program that would be accredited but for the accrediting agency's reliance upon an accreditation standards1 that requires an entity to perform an induced abortion or require, provide, or refer for training in the performance of induced abortions, or make arrangements for such training, regardless of whether such standard

provides exceptions or exemptions. The government involved shall formulate such regulations or other mechanisms, or enter into such agreements with accrediting agencies, as are necessary to comply with this subsection.

(2) Rules of construction

(A) In general

With respect to subclauses (I) and (II) of section 292d(a)(2)(B)(i) of this title (relating to a program of insured loans for training in the health professions), the requirements in such subclauses regarding accredited internship or residency programs are subject to paragraph (1) of this subsection.

(B) Exceptions

This section shall not--

(i) prevent any health care entity from voluntarily electing to be trained, to train, or to arrange for training in the performance of, to perform, or to make referrals for induced abortions; or

(ii) prevent an accrediting agency or a Federal, State or local government from establishing standards of medical competency applicable only to those individuals who have voluntarily elected to perform abortions.

(c) Definitions

For purposes of this section:

(1) The term "financial assistance", with respect to a government program, includes governmental payments provided as reimbursement for carrying out health-related activities.

(2) The term "health care entity" includes an individual physician, a postgraduate physician training program, and a participant in a program of training in the health professions.

(3) The term "postgraduate physician training program" includes a residency training program.

**Section 726 of Title VII of Division E, Pub. L. No. 113-235, 128 Stat. 2130**
**Consolidated and Further Continuing Appropriations Act 2015**

DIVISION E—FINANCIAL SERVICES AND GENERAL GOVERNMENT
APPROPRIATIONS ACT, 2015
TITLE VII—GENERAL PROVISIONS—THIS ACT (INCLUDING
RESCISSION)

SEC. 726.

(a) None of the funds appropriated by this Act may be used to enter into or
renew a contract which includes a provision providing prescription drug
coverage, except where the contract also includes a provision for
contraceptive coverage.

(b) Nothing in this section shall apply to a contract with—

(1) any of the following religious plans:

(A) Personal Care's HMO; and
(B) OSF HealthPlans, Inc.; and

(2) any existing or future plan, if the carrier for the plan objects to such
coverage on the basis of religious beliefs.

(c) In implementing this section, any plan that enters into or renews a
contract under this section may not subject any individual to discrimination
on the basis that the individual refuses to prescribe or otherwise provide for
contraceptives because such activities would be contrary to the individual's
religious beliefs or moral convictions.

(d) Nothing in this section shall be construed to require coverage of abortion
or abortion-related services.

**Section 808 of Title VIII of Division E, Pub. L. No. 113-235, 128 Stat. 2130**
**Consolidated and Further Continuing Appropriations Act 2015**

DIVISION E—FINANCIAL SERVICES AND GENERAL GOVERNMENT
APPROPRIATIONS ACT, 2015
TITLE VIII—GENERAL PROVISIONS—DISTRICT OF COLUMBIA
(INCLUDING TRANSFER OF FUNDS)

SEC. 808.

Nothing in this Act may be construed to prevent the Council or Mayor of the District of Columbia from addressing the issue of the provision of contraceptive coverage by health insurance plans, but it is the intent of Congress that any legislation enacted on such issue should include a "conscience clause" which provides exceptions for religious beliefs and moral convictions.

**42 U.S.C. § 18023(b)(4), (c)(2)(A)**
**Affordable Care Act**

Special rules

(b) Special rules relating to coverage of abortion services

    (4) No discrimination on basis of provision of abortion
    No qualified health plan offered through an Exchange may discriminate against any individual health care provider or health care facility because of its unwillingness to provide, pay for, provide coverage of, or refer for abortions

(c) Application of State and Federal laws regarding abortion

    (2) No effect on Federal laws regarding abortion

        (A) In general

            Nothing in this Act shall be construed to have any effect on Federal laws regarding--

            (i) conscience protection;

            (ii) willingness or refusal to provide abortion; and

            (iii) discrimination on the basis of the willingness or refusal to provide, pay for, cover, or refer for abortion or to provide or participate in training to provide abortion.

**Section 507 of Title V of Division G, Pub. L. No. 113-235, 128 Stat. 2130 Hyde/Weldon Amendment, Consolidated and Further Continuing Appropriations Act 2015**

DIVISION G—DEPARTMENTS OF LABOR, HEALTH AND HUMAN SERVICES, AND EDUCATION, AND RELATED AGENCIES APPROPRIATIONS ACT, 2015

TITLE V—GENERAL PROVISIONS (TRANSFER OF FUNDS)

SEC. 507.

(a) The limitations established in the preceding section shall not apply to an abortion—

(1) if the pregnancy is the result of an act of rape or incest; or

(2) in the case where a woman suffers from a physical disorder, physical injury, or physical illness, including a life-endangering physical condition caused by or arising from the pregnancy itself, that would, as certified by a physician, place the woman in danger of death unless an abortion is performed.

(b) Nothing in the preceding section shall be construed as prohibiting the expenditure by a State, locality, entity, or private person of State, local, or private funds (other than a State's or locality's contribution of Medicaid matching funds).

(c) Nothing in the preceding section shall be construed as restricting the ability of any managed care provider from offering abortion coverage or the ability of a State or locality to contract separately with such a provider for such coverage with State funds (other than a State's or locality's contribution of Medicaid matching funds).

(d)(1) None of the funds made available in this Act may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions.

(2) In this subsection, the term "health care entity" includes an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan.

## Alaska Stat. § 18.16.010(b)

Abortions

(b) Nothing in this section requires a hospital or person to participate in an abortion, nor is a hospital or person liable for refusing to participate in an abortion under this section.

**Ariz. Rev. Stat. § 36-2154 (LexisNexis)**

Right to refuse to participate in abortion; abortion medication or emergency contraception

A. A hospital is not required to admit any patient for the purpose of performing an abortion. A physician, or any other person who is a member of or associated with the staff of a hospital, or any employee of a hospital, doctor, clinic or other medical or surgical facility in which an abortion has been authorized, who states in writing an objection to the abortion on moral or religious grounds is not required to facilitate or participate in the medical or surgical procedures that will result in the abortion.

B. A pharmacy, hospital or health professional, or any employee of a pharmacy, hospital or health professional, who states in writing an objection to abortion, abortion medication, emergency contraception or any medication or device intended to inhibit or prevent implantation of a fertilized ovum on moral or religious grounds is not required to facilitate or participate in the provision of an abortion, abortion medication, emergency contraception or any medication or device intended to inhibit or prevent implantation of a fertilized ovum. The pharmacy, hospital or health professional, or an employee of the pharmacy, hospital or health professional, shall return to the patient the patient's written prescription order.

# Ariz. Rev. Stat. §§ 20-826(Z), -1057.08(B), -1402(M), -1404(V), -2329(B), (C) (LexisNexis)

20-826. Subscription contracts; definitions

Z. Notwithstanding subsection Y of this section, a religiously affiliated employer may require that the corporation provide a contract without coverage for specific items or services required under subsection Y of this section because providing or paying for coverage of the specific items or services is contrary to the religious beliefs of the religiously affiliated employer offering the plan. If a religiously affiliated employer objects to providing coverage for specific items or services required under subsection Y of this section, a written affidavit shall be filed with the corporation stating the objection. On receipt of the affidavit, the corporation shall issue to the religiously affiliated employer a contract that excludes coverage for specific items or services required under subsection Y of this section. The corporation shall retain the affidavit for the duration of the contract and any renewals of the contract. This subsection shall not exclude coverage for prescription contraceptive methods ordered by a health care provider with prescriptive authority for medical indications other than for contraceptive, abortifacient, abortion or sterilization purposes. A religiously affiliated employer offering the plan may state religious beliefs in its affidavit and may require the subscriber to first pay for the prescription and then submit a claim to the hospital service corporation, medical service corporation or hospital, medical, dental and optometric service corporation along with evidence that the prescription is not for a purpose covered by the objection. A hospital service corporation, medical service corporation or hospital, medical, dental and optometric service corporation may charge an administrative fee for handling these claims.

20-1057.08. Prescription contraceptive drugs and devices; definition

B. Notwithstanding subsection A of this section, a religiously affiliated employer may require that the health care services organization provide an evidence of coverage without coverage for specific items or services required under subsection A of this section because providing or paying for coverage of the specific items or services is contrary to the religious beliefs of the religiously affiliated employer offering the plan. If a religiously affiliated employer objects to providing coverage for specific items or services required under subsection A of this section, a written affidavit shall be filed with the health care services organization stating the

objection. On receipt of the affidavit, the health care services organization shall issue to the religiously affiliated employer an evidence of coverage that excludes coverage for specific items or services required under subsection A of this section. The health care services organization shall retain the affidavit for the duration of the coverage and any renewals of the coverage.

20-1402. Provisions of group disability policies; definitions

M. Notwithstanding subsection L of this section, a religiously affiliated employer may require that the insurer provide a group disability policy without coverage for specific items or services required under subsection L of this section because providing or paying for coverage of the specific items or services is contrary to the religious beliefs of the religiously affiliated employer offering the plan. If a religiously affiliated employer objects to providing coverage for specific items or services required under subsection L of this section, a written affidavit shall be filed with the insurer stating the objection. On receipt of the affidavit, the insurer shall issue to the religiously affiliated employer a group disability policy that excludes coverage for specific items or services required under subsection L of this section. The insurer shall retain the affidavit for the duration of the group disability policy and any renewals of the policy. This subsection shall not exclude coverage for prescription contraceptive methods ordered by a health care provider with prescriptive authority for medical indications other than for contraceptive, abortifacient, abortion or sterilization purposes. A religiously affiliated employer offering the policy may state religious beliefs in its affidavit and may require the insured to first pay for the prescription and then submit a claim to the insurer along with evidence that the prescription is not for a purpose covered by the objection. An insurer may charge an administrative fee for handling these claims.
20-1404. Blanket disability insurance; definitions

V. Notwithstanding subsection U of this section, a religiously affiliated employer may require that the insurer provide a blanket disability policy without coverage for specific items or services required under subsection U of this section because providing or paying for coverage of the specific items or services is contrary to the religious beliefs of the religiously affiliated employer offering the plan. If a religiously affiliated employer objects to providing coverage for specific items or services required under subsection U of this section, a written affidavit shall be filed with the insurer stating the objection. On receipt of the affidavit, the insurer shall issue to the religiously affiliated employer a blanket disability policy that

excludes coverage for specific items or services required under subsection U of this section. The insurer shall retain the affidavit for the duration of the blanket disability policy and any renewals of the policy. This subsection shall not exclude coverage for prescription contraceptive methods ordered by a health care provider with prescriptive authority for medical indications other than for contraceptive, abortifacient, abortion or sterilization purposes. A religiously affiliated employer offering the policy may state religious beliefs in its affidavit and may require the insured to first pay for the prescription and then submit a claim to the insurer along with evidence that the prescription is not for a purpose covered by the objection. An insurer may charge an administrative fee for handling these claims under this subsection.

20-2329. Prescription contraceptive drugs and devices; definition

B. Notwithstanding subsection A of this section, a religiously affiliated employer may require that the accountable health plan provide a health benefits plan without coverage for specific items or services required under subsection A of this section because providing or paying for coverage of the specific items or services is contrary to the religious beliefs of the religiously affiliated employer offering the plan. If a religiously affiliated employer objects to providing coverage for specific items or services required under subsection A of this section, a written affidavit shall be filed with the accountable health plan stating the objection. On receipt of the affidavit, the accountable health plan shall issue to the religiously affiliated employer a health benefits plan that excludes coverage for specific items or services required under subsection A of this section. The accountable health plan shall retain the affidavit for the duration of the health benefits plan and any renewals of the plan.

C. Subsection B of this section shall not exclude coverage for prescription contraceptive methods ordered by a health care provider with prescriptive authority for medical indications other than for contraceptive, abortifacient, abortion or sterilization purposes. A religiously affiliated employer offering the plan may state religious beliefs in its affidavit and may require the enrollee to first pay for the prescription and then submit a claim to the accountable health plan along with evidence that the prescription is not for a purpose covered by the objection. An accountable health plan may charge an administrative fee for handling claims under this subsection.

## Ark. Code Ann. § 20-13-1403(b)(1)

Emergency contraception information required

(b) This section does not require:

(1) A health care professional who is employed by a health care facility that provides emergency care to a sexual assault survivor to inform the sexual assault survivor of the availability of emergency contraception if the health care professional refuses to provide the information on the basis of religious or moral beliefs

## Ark. Code Ann. § 20-16-304(4)-(5)

Policy—Authority

(4) Nothing in this subchapter shall prohibit a physician, pharmacist, or any other authorized paramedical personnel from refusing to furnish any contraceptive procedures, supplies, or information; and

(5) No private institution or physician, nor any agent or employee of the institution or physician, nor any employee of a public institution acting under directions of a physician, shall be prohibited from refusing to provide contraceptive procedures, supplies, and information when the refusal is based upon religious or conscientious objection. No such institution, employee, agent, or physician shall be held liable for the refusal.

## Ark. Code Ann. § 20-16-601

Refusal generally—Liability

(a) No person shall be required to perform or participate in medical procedures which result in the termination of pregnancy. The refusal of any person to perform or participate in these medical procedures shall not be a basis for civil liability to any person nor a basis for any disciplinary or any other recriminatory action against him or her.

(b) No hospital, hospital director, or governing board shall be required to permit the termination of human pregnancies within its institution, and the refusal to permit the procedures shall not be grounds for civil liability to any person nor a basis for any disciplinary or other recriminatory action against it by the state or any person.

(c) The refusal of any person to submit to an abortion or to give consent for an abortion shall not be grounds for loss of any privileges or immunities to which the person would otherwise be entitled, nor shall submission to an abortion or the granting of consent for an abortion be a condition precedent to the receipt of any public benefits.

## Ark. Code Ann. §§ 23-79-1102(3), -1103(b), -1104(b)(3)

23-79-1102. Definitions
(3) "Religious employer" means an entity that:
    (A) Is organized and operated for religious purposes and has received a section 501(c)(3)1 designation from the Internal Revenue Service;
    (B) Has as one (1) of its primary purposes the inculcation of religious values; and
    (C) Employs primarily persons who share its religious tenets.

23-79-1103. Parity for contraceptives
(b) Nothing contained in this subchapter shall be construed to require any insurance company to provide coverage for an abortion, an abortifacient, or any United States Food and Drug Administration-approved emergency contraception.

23-79-1104. Extraordinary surcharges prohibited
(b) This subchapter shall not be construed to:
    (3) Require any religious employer to comply with this subchapter

## Cal. Health & Safety Code § 123420 (Deering)

Refusal to participate in abortion; effect; offense

(a) No employer or other person shall require a physician, a registered nurse, a licensed vocational nurse, or any other person employed or with staff privileges at a hospital, facility, or clinic to directly participate in the induction or performance of an abortion, if the employee or other person has filed a written statement with the employer or the hospital, facility, or clinic indicating a moral, ethical, or religious basis for refusal to participate in the abortion.

No such employee or person with staff privileges in a hospital, facility, or clinic shall be subject to any penalty or discipline by reason of his or her refusal to participate in an abortion. No such employee of a hospital, facility, or clinic that does not permit the performance of abortions, or person with staff privileges therein, shall be subject to any penalty or discipline on account of the person's participation in the performance of an abortion in other than the hospital, facility, or clinic.

No employer shall refuse to employ any person because of the person's refusal for moral, ethical, or religious reasons to participate in an abortion, unless the person would be assigned in the normal course of business of any hospital, facility, or clinic to work in those parts of the hospital, facility, or clinic where abortion patients are cared for. No provision of this article prohibits any hospital, facility, or clinic that permits the performance of abortions from inquiring whether an employee or prospective employee would advance a moral, ethical, or religious basis for refusal to participate in an abortion before hiring or assigning that person to that part of a hospital, facility, or clinic where abortion patients are cared for.

The refusal of a physician, nurse, or any other person to participate or aid in the induction or performance of an abortion pursuant to this subdivision shall not form the basis of any claim for damages.

(b) No medical school or other facility for the education or training of physicians, nurses, or other medical personnel shall refuse admission to a person or penalize the person in any way because of the person's unwillingness to participate in the performance of an abortion for moral, ethical, or religious reasons. No hospital, facility, or clinic shall refuse staff privileges to a physician because of the physician's refusal to participate in the performance of abortion for moral, ethical, or religious reasons.

(c) Nothing in this article shall require a nonprofit hospital or other facility or clinic that is organized or operated by a religious corporation or other religious organization and licensed pursuant to Chapter 1 (commencing with Section 1200) or Chapter 2 (commencing with Section 1250) of Division 2, or any administrative officer, employee, agent, or member of the governing board thereof, to perform or to permit the performance of an abortion in the facility or clinic or to provide abortion services. No such nonprofit facility or clinic organized or operated by a religious corporation or other religious organization, nor its administrative officers, employees, agents, or members of its governing board shall be liable, individually or collectively, for failure or refusal to participate in any such act. The failure or refusal of any such corporation, unincorporated association or individual person to perform or to permit the performance of such medical procedures shall not be the basis for any disciplinary or other recriminatory action against such corporations, unincorporated associations, or individuals. Any such facility or clinic that does not permit the performance of abortions on its premises shall post notice of that proscription in an area of the facility or clinic that is open to patients and prospective admittees.

(d) This section shall not apply to medical emergency situations and spontaneous abortions.

Any violation of this section is a misdemeanor.

## Cal. Health & Safety Code § 1374.55(e)-(f) (Deering); Cal. Ins. Code § 10119.6(d)-(e) (Deering)

1374.55. Coverage for treatment of infertility; applicable plans; exceptions; discrimination prohibited

(e) This section shall not be construed to require any employer that is a religious organization to offer coverage for forms of treatment of infertility in a manner inconsistent with the religious organization's religious and ethical principles.

(f)(1) This section shall not be construed to require any plan, which is a subsidiary of an entity whose owner or corporate member is a religious organization, to offer coverage for treatment of infertility in a manner inconsistent with that religious organization's religious and ethical principles.

    (2) For purposes of this subdivision, "subsidiary" of a specified corporation means a corporation more than 45 percent of the voting power of which is owned directly, or indirectly through one or more subsidiaries, by the specified corporation.

10119.6. Coverage for treatment of infertility; applicable plans; exceptions; discrimination prohibited

(d) This section shall not be construed to require any employer that is a religious organization to offer coverage for forms of treatment of infertility in a manner inconsistent with the religious organization's religious and ethical principles.

(e)(1) This section shall not be construed to require any insurer, which is a subsidiary of an entity whose owner or corporate member is a religious organization, to offer coverage for treatment of infertility in a manner inconsistent with that religious organization's religious and ethical principles.

    (2) For purposes of this subdivision, "subsidiary" of a specified corporation means a corporation more than 45 percent of the voting power of which is owned directly, or indirectly through one or more subsidiaries, by the specified corporation.

## Cal. Health & Safety Code § 1367.25(c) (Deering); Cal. Ins. Code § 10123.196(e) (Deering)

1367.25. Prescription contraceptive method; contract coverage; religious employer exemption

(c) Notwithstanding any other provision of this section, a religious employer may request a health care service plan contract without coverage for FDA-approved contraceptive methods that are contrary to the religious employer's religious tenets. If so requested, a health care service plan contract shall be provided without coverage for contraceptive methods.

   (1) For purposes of this section, a "religious employer" is an entity for which each of the following is true:

      (A) The inculcation of religious values is the purpose of the entity.

      (B) The entity primarily employs persons who share the religious tenets of the entity.

      (C) The entity serves primarily persons who share the religious tenets of the entity.

      (D) The entity is a nonprofit organization as described in Section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code1 of 1986, as amended.

   (2) Every religious employer that invokes the exemption provided under this section shall provide written notice to prospective enrollees prior to enrollment with the plan, listing the contraceptive health care services the employer refuses to cover for religious reasons.

10123.196. Disability insurance; prescription contraceptive coverage

(e) Notwithstanding any other provision of this section, a religious employer may request a disability insurance policy without coverage for contraceptive methods that are contrary to the religious employer's religious tenets. If so requested, a disability insurance policy shall be provided without coverage for contraceptive methods.

   (1) For purposes of this section, a "religious employer" is an entity for which each of the following is true:

      (A) The inculcation of religious values is the purpose of the entity.

      (B) The entity primarily employs persons who share the religious tenets of the entity.

(C) The entity serves primarily persons who share the religious tenets of the entity.

(D) The entity is a nonprofit organization pursuant to Section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986,1 as amended.

(2) Every religious employer that invokes the exemption provided under this section shall provide written notice to any prospective employee once an offer of employment has been made, and prior to that person commencing that employment, listing the contraceptive health care services the employer refuses to cover for religious reasons.

## Colo. Rev. Stat. §§ 25-6-102(9), -207

25-6-102. Policy, authority, and prohibitions against restrictions
(9) No private institution or physician, nor any agent or employee of such institution or physician, shall be prohibited from refusing to provide contraceptive procedures, supplies, and information when such refusal is based upon religious or conscientious objection, and no such institution, employee, agent, or physician shall be held liable for such refusal.

25-6-207. County employee exemption
Any county employee or city and county employee may refuse to accept the duty of offering family planning and birth control services to the extent that such duty is contrary to his personal religious beliefs, and such refusal shall not be grounds for any disciplinary action, for dismissal, for any interdepartmental transfer, for any other discrimination in his employment, for suspension from employment with the county or city and county, or for any loss in pay or other benefits.

## Colo. Rev. Stat. § 25-3-110(3)(a)

Emergency contraception—definitions

(3) Nothing in this section shall be interpreted to require:

    (a) A health care professional who is employed by a health care facility that provides emergency care to a sexual assault survivor to inform the survivor of the availability of emergency contraception if the professional refuses to provide the information on the basis of religious or moral beliefs

## Conn. Agencies Regs. § 19-13-D54

Abortions

(a) No abortion shall be performed at any stage of pregnancy except by a person licensed to practice medicine and surgery in the State of Connecticut.

(b) All induced abortions will be reported within seven days by the physician performing the procedure to the state commissioner of public health who will maintain such reports in a confidential file and use them only for statistical purposes except in cases involving licensure. Such reports will specify date of abortion, place where performed, age of woman and town and state of residence, approximate duration of pregnancy, method of abortion, and explanation of any complications. The name of the woman will not be given. These records will be destroyed within two years after date of receipt. In addition, a fetal death certificate shall be filed for each fetus born dead which is the result of gestation of not less than twenty weeks, or a live birth certificate shall be filed for each fetus born alive regardless of gestational age, as provided in sections 7-48 and 7-60 of the Connecticut General Statutes. If a live born fetus subsequently dies, a death certificate shall be filed as provided in section 7-62b of the Connecticut General Statutes.

(c) All induced abortions after the second trimester as verified by ultrasound, last menstrual period and pelvic exam, shall be done only in a licensed hospital with a department of obstetrics and gynecology and a department of anesthesiology.

(d) All outpatient clinics operated by corporations or municipalities where abortions are performed shall develop standards to control the quality of medical care provided to women having abortions. These standards shall include but not necessarily be limited to:

 (1) verification of pregnancy and determination of duration of pregnancy;
 (2) pre-operative instruction and counseling;
 (3) operative permission and informed consent;
 (4) pre-operative history and physical examination;
 (5) pre-operative laboratory procedure for blood Rh factor;
 (6) prevention of Rh sensitization;
 (7) examination of the tissue by a pathologist;
 (8) receiving and recovery room facilities;
 (9) a standard operating room;
 (10) post-operative counseling including family planning; and
 (11) a permanent record.

(e) There shall be a mechanism for continuing review to evaluate the quality of records and the quality of clinical work. This review shall include all deaths, complications, infections and such other cases as shall be determined by the chief of the department of obstetrics and gynecology of the hospital or the clinic medical director.

(f) No person shall be required to participate in any phase of an abortion that violates his or her judgment, philosophical, moral or religious beliefs.

(g) If the newborn shows signs of life following an abortion, those measures used to support life in a premature infant shall be employed.

(h) During the third trimester of pregnancy, abortions may be performed only when necessary to preserve the life or health of the expectant mother.

## Conn. Gen. Stat. §§ 38a-536(c), 38a-509(c)

38a-536. Mandatory coverage for infertility diagnosis and treatment. Limitations

(c)(1) Any insurance company, hospital service corporation, medical service corporation or health care center may issue to a religious employer a group health insurance policy that excludes coverage for methods of diagnosis and treatment of infertility that are contrary to the religious employer's bona fide religious tenets.

(2) Upon the written request of an individual who states in writing that methods of diagnosis and treatment of infertility are contrary to such individual's religious or moral beliefs, any insurance company, hospital service corporation, medical service corporation or health care center may issue to or on behalf of the individual a policy or rider thereto that excludes coverage for such methods.

38a-509. Mandatory coverage for infertility diagnosis and treatment. Limitations

(c)(1) Any insurance company, hospital service corporation, medical service corporation or health care center may issue to a religious employer an individual health insurance policy that excludes coverage for methods of diagnosis and treatment of infertility that are contrary to the religious employer's bona fide religious tenets.

(2) Upon the written request of an individual who states in writing that methods of diagnosis and treatment of infertility are contrary to such individual's religious or moral beliefs, any insurance company, hospital service corporation, medical service corporation or health care center may issue to or on behalf of the individual a policy or rider thereto that excludes coverage for such methods.

## Conn. Gen. Stat. §§ 38a-503e(b), (e), (f), 38a-530e(b), (e), (f)

38a-503e. Mandatory coverage for prescription contraceptives

(b)(1) Notwithstanding any other provision of this section, any insurance company, hospital service corporation, medical service corporation, or health care center may issue to a religious employer an individual health insurance policy that excludes coverage for prescription contraceptive methods that are contrary to the religious employer's bona fide religious tenets.

(2) Notwithstanding any other provision of this section, upon the written request of an individual who states in writing that prescription contraceptive methods are contrary to such individual's religious or moral beliefs, any insurance company, hospital service corporation, medical service corporation or health care center may issue to the individual an individual health insurance policy that excludes coverage for prescription contraceptive methods.

(e) Notwithstanding any other provision of this section, any insurance company, hospital service corporation, medical service corporation or health care center that is owned, operated or substantially controlled by a religious organization that has religious or moral tenets that conflict with the requirements of this section may provide for the coverage of prescription contraceptive methods as required under this section through another such entity offering a limited benefit plan. The cost, terms and availability of such coverage shall not differ from the cost, terms and availability of other prescription coverage offered to the insured.

(f) As used in this section, "religious employer" means an employer that is a "qualified church-controlled organization" as defined in 26 USC 3121 or a church-affiliated organization.

38a-530e. Mandatory coverage for prescription contraceptives

(b)(1) Notwithstanding any other provision of this section, any insurance company, hospital service corporation, medical service corporation or health care center may issue to a religious employer a group health insurance policy that excludes coverage for prescription contraceptive methods that are contrary to the religious employer's bona fide religious tenets.

(2) Notwithstanding any other provision of this section, upon the written request of an individual who states in writing that prescription contraceptive

methods are contrary to such individual's religious or moral beliefs, any insurance company, hospital service corporation, medical service corporation or health care center may issue to or on behalf of the individual a policy or rider thereto that excludes coverage for prescription contraceptive methods.

(e) Notwithstanding any other provision of this section, any insurance company, hospital service corporation, medical service corporation or health care center that is owned, operated or substantially controlled by a religious organization that has religious or moral tenets that conflict with the requirements of this section may provide for the coverage of prescription contraceptive methods as required under this section through another such entity offering a limited benefit plan. The cost, terms and availability of such coverage shall not differ from the cost, terms and availability of other prescription coverage offered to the insured.

(f) As used in this section, "religious employer" means an employer that is a "qualified church-controlled organization" as defined in 26 USC 3121 or a church-affiliated organization.

## Del. Code Ann. tit. 24, § 1791(a)-(b)

Refusal to perform or submit to medical procedures

(a)  No person shall be required to perform or participate in medical procedures which result in the termination of pregnancy; and the refusal of any person to perform or participate in these medical procedures shall not be a basis for civil liability to any person, nor a basis for any disciplinary or other recriminatory action against the person.

(b)  No hospital, hospital director or governing board shall be required to permit the termination of human pregnancies within its institution, and the refusal to permit such procedures shall not be grounds for civil liability to any person, nor a basis for any disciplinary or other recriminatory action against it by the State or any person.

## Del. Code Ann. tit. 18, § 3559(d)

Reversible contraceptives

(d)  A religious employer may request and an entity subject to this section shall grant an exclusion from coverage under the policy, plan or contract for the coverage required under subsection (b) of this section if the required coverage conflicts with the religious organization's bona fide religious beliefs and practices. A religious employer that obtains an exclusion under this subsection shall provide its employees reasonable and timely notice of the exclusion.

## Fla. Stat. § 381.0051(5) (LexisNexis)

Family Planning

(5) Refusal for religious or medical reasons.—The provisions of this section shall not be interpreted so as to prevent a physician or other person from refusing to furnish any contraceptive or family planning service, supplies, or information for medical or religious reasons; and the physician or other person shall not be held liable for such refusal.

## Fla. Stat. § 390.0111(8) (LexisNexis)

Termination of pregnancies

(8) Refusal to participate in termination procedure.--Nothing in this section shall require any hospital or any person to participate in the termination of a pregnancy, nor shall any hospital or any person be liable for such refusal. No person who is a member of, or associated with, the staff of a hospital, nor any employee of a hospital or physician in which or by whom the termination of a pregnancy has been authorized or performed, who shall state an objection to such procedure on moral or religious grounds shall be required to participate in the procedure which will result in the termination of pregnancy. The refusal of any such person or employee to participate shall not form the basis for any disciplinary or other recriminatory action against such person.

## Fla. Stat. § 409.973(1)(h) (LexisNexis)

Benefits

(1) Minimum benefits.—Managed care plans shall cover, at a minimum, the following services:

    (h) Family planning services and supplies. Pursuant to 42 C.F.R. s. 438.102, plans may elect to not provide these services due to an objection on moral or religious grounds, and must notify the agency of that election when submitting a reply to an invitation to negotiate.

## Ga. Code Ann. § 16-12-142 (LexisNexis)

Medical facilities and physicians not required to perform abortions; Provisions for pharmacists to object to filling prescriptions intended to terminate pregnancies; limitations

(a) Nothing in this article shall require a hospital or other medical facility or physician to admit any patient under the provisions of this article for the purpose of performing an abortion. In addition, any person who states in writing an objection to any abortion or all abortions on moral or religious grounds shall not be required to participate in procedures which will result in such abortion; and the refusal of the person to participate therein shall not form the basis of any claim for damages on account of such refusal or for any disciplinary or recriminatory action against the person. The written objection shall remain in effect until the person revokes it or terminates his association with the facility with which it is filed.

(b) Any pharmacist who states in writing an objection to any abortion or all abortions on moral or religious grounds shall not be required to fill a prescription for a drug which purpose is to terminate a pregnancy; and the refusal of the person to fill such prescription shall not form the basis of any claim for damages on account of such refusal or for any disciplinary or recriminatory action against the person; provided, however, that the pharmacist shall make all reasonable efforts to locate another pharmacist who is willing to fill such prescription or shall immediately return the prescription to the prescription holder. The written objection shall remain in effect until the person revokes it or terminates his or her association with the facility with which it is filed. Nothing in this subsection shall be construed to authorize a pharmacist to refuse to fill a prescription for birth control medication, including any process, device, or method to prevent pregnancy and including any drug or device approved by the federal Food and Drug Administration for such purpose.

## Ga. Code Ann. § 49-7-6 (LexisNexis)

Employees may refuse to offer services if contrary to religious beliefs

Any employee of the agencies engaged in the administration of this chapter may refuse to accept the duty of offering family-planning services to the extent that such duty is contrary to such employee's personal religious beliefs; and such refusal shall not be grounds for any disciplinary action, for dismissal, for any interdepartmental transfer, for any other discrimination in his employment, for suspension from employment, or for any loss in pay or other benefits. The directors or supervisors of such agencies shall be authorized, however, to reassign the duties of any such employees in order to carry out this chapter effectively.

## Ga. Code Ann. § 31-20-6

Exemptions

(a) Nothing in this chapter shall require a hospital to admit any patient for the purpose of performing a sterilization procedure, nor shall any hospital be required to appoint a committee such as contemplated under paragraph (3) of subsection (c) of Code Section 31-20-3.

(b) A physician, or any other person who is a member of or associated with the staff of a hospital, or any employee of a hospital in which a sterilization procedure has been authorized who shall object to such sterilization procedure on moral or religious grounds shall not be required to participate in the medical procedures or the committee procedures leading to such sterilization procedure; the refusal of any such person to participate therein shall not form the basis of any claim for damages resulting from such refusal or for any disciplinary or recriminatory action against such person.

## Haw. Rev. Stat. Ann. § 453-16(e) (LexisNexis)

Intentional termination of pregnancy; penalties; refusal to perform

(e) Nothing in this section shall require any hospital or any person to participate in an abortion nor shall any hospital or any person be liable for a refusal.

**Haw. Rev. Stat. Ann. § 431:10A-116.7 (LexisNexis)**

Contraceptive services; religious employers exemption

(a) A "religious employer" is an entity for which each of the following is true:
   (1) The inculcation of religious values is the purpose of the entity;
   (2) The entity primarily employs persons who share the religious tenets of the entity;
   (3) The entity is not staffed by public employees; and
   (4) The entity is a nonprofit organization as defined under section 501(c)(3) of the Internal Revenue Code of 1986, as amended.
   For the purpose of this definition, any educational, health care, or other nonprofit institution or organization owned or controlled by the religious employer is included in this exemption.

(b) Notwithstanding any other provision of this chapter, any religious employer may request an accident and health or sickness insurance plan without coverage for contraceptive services and supplies that are contrary to the religious employer's religious tenets. If so requested, the accident and health or sickness insurer, mutual benefit society, or health maintenance organization shall provide a plan without coverage for contraceptive services and supplies. This subsection shall not be construed to deny an enrollee coverage of, and timely access to, contraceptive services and supplies.

(c) Each religious employer that invokes the exemption provided under this section shall:
   (1) Provide written notice to enrollees upon enrollment with the plan, listing the contraceptive health care services the employer refuses to cover for religious reasons;
   (2) Provide written information describing how an enrollee may directly access contraceptive services and supplies in an expeditious manner; and
   (3) Ensure that enrollees who are refused contraceptive services and supplies coverage under this section have prompt access to the information developed under paragraph (2). Such notice shall appear, in not less than twelve-point type, in the policy, application, and sales brochure for such policy.

(d) Nothing in this section shall be construed to exclude coverage for prescription contraceptive supplies ordered by a health care provider with prescriptive authority

for reasons other than contraceptive purposes, such as decreasing the risk of ovarian cancer or eliminating symptoms of menopause, or for prescription contraception that is necessary to preserve the life or health of an enrollee.

(e) Accident and health or sickness insurers, mutual benefit societies, and health maintenance organizations shall allow enrollees in a health plan exempted under this section to directly purchase coverage of contraceptive supplies and outpatient contraceptive services. The enrollee's cost of purchasing such coverage shall not exceed the enrollee's pro rata share of the price the group purchaser would have paid for such coverage had the group plan not invoked a religious exemption.

(f) This section shall not be construed as to require an accident and health or sickness insurer, mutual benefit society, health maintenance organization, health care facility, or health care provider to provide any health care services without appropriate payment of premium or fee.

(g) For purposes of this section:
    "Contraceptive services" means physician-delivered, physician-supervised, physician assistant-delivered, advanced practice registered nurse-delivered, nurse-delivered, or pharmacist-delivered medical services intended to promote the effective use of contraceptive supplies or devices to prevent unwanted pregnancy.
    "Contraceptive supplies" means all United States Food and Drug Administration-approved contraceptive drugs or devices used to prevent unwanted pregnancy.

# Idaho Code § 18-611

Freedom of conscience for health care professionals

(1) As used in this section:
    (a) "Abortifacient" means any drug that causes an abortion as defined in section 18-604, Idaho Code, emergency contraception or any drug the primary purpose of which is to cause the destruction of an embryo or fetus.
    (b) "Conscience" means the religious, moral or ethical principles sincerely held by any person.
    (c) "Embryo" means the developing human life from fertilization until the end of the eighth week of gestation.
    (d) "Fetus" means the developing human life from the start of the ninth week of gestation until birth.
    (e) "Health care professional" means any person licensed, certified or registered by the state of Idaho to deliver health care.
    (f) "Health care service" means an abortion, dispensation of an abortifacient drug, human embryonic stem cell research, treatment regimens utilizing human embryonic stem cells, human embryo cloning or end of life treatment and care.
    (g) "Provide" means to counsel, advise, perform, dispense, assist in or refer for any health care service.
    (h) "Religious, moral or ethical principles," "sincerely held," "reasonably accommodate" and "undue hardship" shall be construed consistently with title VII of the federal civil rights act of 1964, as amended.

(2) No health care professional shall be required to provide any health care service that violates his or her conscience.

(3) Employers of health care professionals shall reasonably accommodate the conscience rights of their employees as provided in this section, upon advanced written notification by the employee. Such notice shall suffice without specification of the reason therefor. It shall be unlawful for any employer to discriminate against any health care professional based upon his or her declining to provide a health care service that violates his or her conscience, unless the employer can demonstrate that such accommodation poses an undue hardship.

(4) No health care professional or employer of the health care professional shall be civilly, criminally or administratively liable for the health care professional

declining to provide health care services that violate his or her conscience, except for life-threatening situations as provided for in subsection (6) of this section.

(5) The provisions of this section do not allow a health care professional or employer of the health care professional to refuse to provide health care services because of a patient's race, color, religion, sex, age, disability or national origin.

(6) If a health care professional invokes a conscience right in a life-threatening situation where no other health care professional capable of treating the emergency is available, such health care professional shall provide treatment and care until an alternate health care professional capable of treating the emergency is found.

(7) In cases where a living will or physician's orders for scope of treatment (POST) is operative, as defined by the medical consent and natural death act, and a physician has a conscience objection to the treatment desired by the patient, the physician shall comply with the provisions of section 39-4513(2), Idaho Code, before withdrawing care and treatment to the patient.

(8) Nothing in this section shall affect the rights of conscience provided for in section 18-612, Idaho Code, to the extent that those rights are broader in scope than those provided for in this section.

## Idaho Code § 18-612

Refusal to perform abortions--Physicians and hospitals not liable

Nothing in this act shall be deemed to require any hospital to furnish facilities or admit any patient for any abortion if, upon determination by its governing board, it elects not to do so. Neither shall any physician be required to perform or assist in any abortion, nor shall any nurse, technician or other employee of any physician or hospital be required by law or otherwise to assist or participate in the performance or provision of any abortion if he or she, for personal, moral or religious reasons, objects thereto. Any such person in the employ or under the control of a hospital shall be deemed to have sufficiently objected to participation in such procedures only if he or she has advised such hospital in writing that he or she generally or specifically objects to assisting or otherwise participating in such procedures. Such notice will suffice without specification of the reason therefor. No refusal to accept a patient for abortion or to perform, assist or participate in any such abortion as herein provided shall form the basis of any claim for damages or recriminatory action against the declining person, agency or institution.

## Idaho Code § 39-3915

Refusal to participate in sterilization

No hospital shall be required to furnish facilities or admit any patient for sterilization procedures if, upon determination by its governing board, it elects not to do so. No physician, nurse, technician or other employee of any hospital, physician or governmental agency shall be required to assist or participate in any sterilization procedure if he or she, for religious or moral reasons, objects thereto. Any such objection shall be made in writing and shall state the reason for such objection. No refusal to accept a patient for sterilization procedures shall form the basis for any claim for damages or for recriminatory action against the declining person or hospital.

**215 Ill. Comp. Stat. Ann. § 5/356m(b)(2)**

Infertility coverage

(b) The coverage required under subsection (a) is subject to the following conditions:

(2) The procedures required to be covered under this Section are not required to be contained in any policy or plan issued to or by a religious institution or organization or to or by an entity sponsored by a religious institution or organization that finds the procedures required to be covered under this Section to violate its religious and moral teachings and beliefs.

**720 Ill. Comp. Stat. § 510/13 (LexisNexis);**
**745 Ill. Comp. Stat. § 30/1 (LexisNexis)**

510/13. Conscientious objections to abortion; liability; notification of denial of request for abortion

§ 13. No physician, hospital, ambulatory surgical center, nor employee thereof, shall be required against his or its conscience declared in writing to perform, permit or participate in any abortion, and the failure or refusal to do so shall not be the basis for any civil, criminal, administrative or disciplinary action, proceeding, penalty or punishment. If any request for an abortion is denied, the patient shall be promptly notified.

30/1. Refusal to recommend, perform or assist in abortion; hospital refusing abortion on premises; discrimination against persons, refusing to recommend, perform or assist in abortion; license revocation prohibited

§ 1.

(a) No physician, nurse or other person who refuses to recommend, perform or assist in the performance of an abortion, whether such abortion be a crime or not, shall be liable to any person for damages allegedly arising from such refusal.

(b) No hospital that refuses to permit the performance of an abortion upon its premises, whether such abortion be a crime or not, shall be liable to any person for damages allegedly arising from such refusal.

(c) Any person, association, partnership or corporation that discriminates against another person in any way, including, but not limited to, hiring, promotion, advancement, transfer, licensing, granting of hospital privileges, or staff appointments, because of that person's refusal to recommend, perform or assist in the performance of an abortion, whether such abortion be a crime or not, shall be answerable in civil damages equal to 3 times the amount of proved damages, but in no case less than $2,000.

(d) The license of any hospital, doctor, nurse or any other medical personnel shall not be revoked or suspended because of a refusal to permit, recommend, perform or assist in the performance of an abortion.

## Ind. Code Ann. §§ 16-34-1-3 to -7 (LexisNexis)

16-34-1-3 Private or denominational hospitals; mandatory abortion services

Sec. 3. No private or denominational hospital shall be required to permit its facilities to be utilized for the performance of abortions.

16-34-1-4 Physician or employee; mandatory participation in abortion

Sec. 4. No:
   (1) physician; or
   (2) employee or member of the staff of a hospital or other facility in which an abortion may be performed;
   shall be required to perform an abortion or to assist or participate in the medical procedures resulting in or intended to result in an abortion, if that individual objects to such procedures on ethical, moral, or religious grounds.

16-34-1-5 Participation as condition of training, promotion, or privileges; prohibition

Sec. 5. No person shall be required, as a condition of training, employment, pay, promotion, or privileges, to agree to perform or participate in the performing of abortions.

16-34-1-6 Discrimination based upon moral beliefs; prohibition

Sec. 6. No hospital or other person shall discriminate against or discipline a person because of the person's moral beliefs concerning abortion.

16-34-1-7 Civil actions

Sec. 7. A civil action for damages or reinstatement of employment, or both, may be brought for any violation of sections 4 through 6 of this chapter.

# Iowa Code §§ 146.1-.2

146.1. Liability of persons relating to performance of abortions

An individual who may lawfully perform, assist, or participate in medical procedures which will result in an abortion shall not be required against that individual's religious beliefs or moral convictions to perform, assist, or participate in such procedures. A person shall not discriminate against any individual in any way, including but not limited to employment, promotion, advancement, transfer, licensing, education, training or the granting of hospital privileges or staff appointments, because of the individual's participation in or refusal to participate in recommending, performing, or assisting in an abortion procedure. For the purposes of this chapter, "abortion" means the termination of a human pregnancy with the intent other than to produce a live birth or to remove a dead fetus. Abortion does not include medical care which has as its primary purpose the treatment of a serious physical condition requiring emergency medical treatment necessary to save the life of a mother.

146.2. Liability of hospitals refusing to perform abortions

A hospital, which is not controlled, maintained and supported by a public authority, shall not be required to permit the performance of an abortion. The refusal to permit such procedures shall not be grounds for civil liability to any person nor a basis for any disciplinary or other recriminatory action against the hospital.

## Kan. Stat. Ann. §§ 65-443, -6737

65-443. Termination of human pregnancy; performance, referral for, or participation in medical procedures not required; prescription or administration of any device or drug not required

No person shall be required to perform, refer for, or participate in medical procedures or in the prescription or administration of any device or drug which result in the termination of a pregnancy or an effect of which the person reasonably believes may result in the termination of a pregnancy, and the refusal of any person to perform, refer for, or participate in those medical procedures, prescription or administration shall not be a basis for civil liability to any person. No medical care facility, medical care facility administrator or governing board of any medical care facility shall terminate the employment of, prevent or impair the practice or occupation of or impose any other sanction on any person because of such person's exercise of rights protected by this section.

65-6737. Same; discrimination prohibited

No state agency shall discriminate against any individual or institutional health care entity on the basis that such health care entity does not provide, pay for or refer for abortions.

## Kan. Stat. Ann. §§ 65-444, -6737

65-444. Same; medical care facility refusal to permit; establishment of criteria and procedures

No medical care facility, medical care facility administrator or governing board of any medical care facility shall be required to permit the performance, referral for, or participation in medical procedures or in the prescription or administration of any device or drug which result in the termination of human pregnancies of an effect of which the medical care facility, administrator or board reasonably believes may result in the termination of human pregnancies within its facility and the refusal to permit such procedures, prescription or administration shall not be grounds for civil liability to any person. A medical care facility may establish criteria and procedures under which pregnancies may be terminated within its institution, in addition to those which may be prescribed by licensing, regulating or accrediting agencies.

65-6737. Same; discrimination prohibited

No state agency shall discriminate against any individual or institutional health care entity on the basis that such health care entity does not provide, pay for or refer for abortions.

## Kan. Stat. Ann. §§ 65-446, -447

65-446. Medical procedures resulting in sterilization of persons; performance, referral for, or participation in procedures not required

No person shall be required to perform, refer for or participate in medical procedures which result in sterilization of a person, and the refusal of any person to perform, refer for or participate in those medical procedures shall not be a basis for civil liability to any person. No medical care facility, medical care facility administrator or governing board of any medical care facility shall terminate the employment of, prevent or impair the practice or occupation of or impose any other sanction on any person because of such person's exercise of rights protected by this section.

65-447. Same; medical care facility refusal to permit; establishment of criteria and procedures authorized

No medical care facility, medical care facility administrator, or governing board of any medical care facility shall be required to permit the performance, referral for or participation in medical procedures resulting in sterilization within its facility and the refusal to permit such procedures shall not be grounds for civil liability to any person. A medical care facility may establish criteria and procedures under which sterilizations may be performed within its institution, in addition to those which may be prescribed by licensing, regulating or accrediting agencies.

## Ky. Rev. Stat. Ann. § 311.800(3)-(5) (LexisNexis)

Abortions in publicly owned hospital or health care facility prohibited; exception; injunction to enforce compliance; abortions in private hospital or health care facility; unlawful discriminatory practices

(3) No private hospital or private health care facility shall be required to, or held liable for refusal to, perform or permit the performance of abortion contrary to its stated ethical policy.

(4) No physician, nurse staff member or employee of a public or private hospital or employee of a public or private health care facility, who shall state in writing to such hospital or health care facility his objection to performing, participating in, or cooperating in, abortion on moral, religious or professional grounds, be required to, or held liable for refusal to, perform, participate in, or cooperate in such abortion.

(5) It shall be an unlawful discriminatory practice for the following:

(a) Any person to impose penalties or take disciplinary action against, or to deny or limit public funds, licenses, certifications, degrees, or other approvals or documents of qualification, to any hospital or other health care facility due to the refusal of such hospital or health care facility to perform or permit to be performed, participate in, or cooperate in, abortion by reason of objection thereto on moral, religious or professional grounds, or because of any statement or other manifestation of attitude by such hospital or health care facility with respect to abortion; or,

(b) Any person to impose penalties or take disciplinary action against, or to deny or limit public funds, licenses, certifications, degrees, or other approvals or documents of qualification to any physician, nurse or staff member or employee of any hospital or health care facility, due to the willingness or refusal of such physician, nurse or staff member or employee to perform or participate in abortion by reason of objection thereto on moral, religious or professional grounds, or because of any statement or other manifestation of attitude by such physician, nurse or staff member or employee with respect to abortion; or,

(c) Any public or private agency, institution or person, including a medical, nursing or other school, to deny admission to, impose any burdens in terms of

conditions of employment upon, or otherwise discriminate against any applicant for admission thereto or any physician, nurse, staff member, student or employee thereof, on account of the willingness or refusal of such applicant, physician, nurse, staff member, student or employee to perform or participate in abortion or sterilization by reason of objection thereto on moral, religious or professional grounds, or because of any statement or other manifestation of attitude by such person with respect to abortion or sterilization if that health care facility is not operated exclusively for the purposes of performing abortions or sterilizations.

**Ky. Rev. Stat. Ann. § 311.800(5)(c) (LexisNexis)**

Abortions in publicly owned hospital or health care facility prohibited; exception; injunction to enforce compliance; abortions in private hospital or health care facility; unlawful discriminatory practices

(5) It shall be an unlawful discriminatory practice for the following:

(c) Any public or private agency, institution or person, including a medical, nursing or other school, to deny admission to, impose any burdens in terms of conditions of employment upon, or otherwise discriminate against any applicant for admission thereto or any physician, nurse, staff member, student or employee thereof, on account of the willingness or refusal of such applicant, physician, nurse, staff member, student or employee to perform or participate in abortion or sterilization by reason of objection thereto on moral, religious or professional grounds, or because of any statement or other manifestation of attitude by such person with respect to abortion or sterilization if that health care facility is not operated exclusively for the purposes of performing abortions or sterilizations.

## La. Stat. Ann. § 40:1299.31 (LexisNexis)

Discrimination against certain persons; prohibition

A. No physician, nurse, student or other person or corporation shall be held civilly or criminally liable, discriminated against, dismissed, demoted, or in any way prejudiced or damaged because of his refusal for any reason to recommend, counsel, perform, assist with or accommodate an abortion.

B. No worker or employee in any social service agency, whether public or private, shall be held civilly or criminally liable, discriminated against, dismissed, demoted, in any way prejudiced or damaged, or pressured in any way for refusal to take part in, recommend or counsel an abortion for any woman.

**La. Stat. Ann. §§ 40:1299.32, .33(C) (LexisNexis)**

40:1299.32. Discrimination against hospitals, clinics, etc.; prohibition

No hospital, clinic or other facility or institution of any kind shall be held civilly or criminally liable, discriminated against, or in any way prejudiced or damaged because of any refusal to permit or accommodate the performance of any abortion in said facility or under its auspices.

40:1299.33. Governmental assistance; discrimination for refusal to participate in an abortion; prohibition

C. No hospital, clinic, or other medical or health facility, whether public or private, shall ever be denied governmental assistance or be otherwise discriminated against or otherwise be pressured in any way for refusing to permit its facilities, staff or employees to be used in any way for the purpose of performing any abortion.

**La. Stat. Ann. §§ 40:1299.35.9, 40:1300.301**

40:1299.35.9. Conscience in health care protection; definitions

A. (1) Any person has the right not to participate in, and no person shall be required to participate in any health care service that violates his conscience to the extent that patient access to health care is not compromised. No person shall be held civilly or criminally liable, discriminated against, dismissed, demoted, or in any way prejudiced or damaged for declining to participate in any health care service that violates his conscience.

(2) This Section shall not prevent an inquiry by an employer or patient regarding whether a person declines to participate in any health care service that violates its conscience. When a patient requests health care services, a person shall identify, in writing, as soon as practicable, his declination to provide a service in accordance with the provisions of this Section. All persons who have a sincerely held religious belief or moral conviction and who seek employment at a health care facility shall notify the prospective employer of the existence of any sincerely held religious belief or moral conviction. Any health care facility that employs a person with a sincerely held religious belief or moral conviction shall ensure that the health care facility has sufficient staff to provide patient care in the event an employee declines to participate in any health care service that violates his conscience.

(3) The provisions of this Section shall not be construed to relieve any health care provider from providing emergency care as required by state or federal law.

(4) A person shall notify his employer in writing as soon as practicable of any health care service that violates his conscience. A person shall notify any patient before such person provides any consultation or service to the patient of the existence of a health care service that he will decline to provide because the health care service violates his conscience.

B. For purposes of this Section:

(1) "Conscience" means sincerely held religious belief or moral conviction.

(2) "Health care service" is limited to abortion, dispensation of abortifacient drugs, human embryonic stem cell research, human embryo cloning, euthanasia, or physician-assisted suicide.

C. A suit alleging a violation of this Section shall be brought in a district court in accordance with R.S. 23:303.

40:1300.301. Authority to accept and use intergovernmental transfers from local governing bodies

A. The Department of Health and Hospitals may accept intergovernmental transfers from local governing bodies, including but not limited to a parish, for the purpose of enhancing the delivery of health care services to the uninsured and Medicaid patients. Any such transfer shall be in accordance with federal law and subject to approval by the Centers for Medicare and Medicaid Services.

B. It is the intent of the legislation that any transfer authorized herein shall be primarily utilized for the enhancement of health care within the jurisdiction of the transferring entity. However, any such transfer shall be under the administrative control of the Department of Health and Hospitals.

C. The department may establish a methodology utilizing a pool, or pools, to facilitate distribution of any transfers received in addition to any federal financial participation earned through the use of such transfers, as authorized herein. The methodology shall be created with the intent to maximize, to the fullest extent possible, the return to the providers located within the jurisdiction of the local governing body from which such transfer is derived. The department may create criteria for qualification to participate in any pool methodology and establish criteria and priorities for reimbursement within the respective pool. Any such criteria may include health care providers which reside outside the jurisdiction of the transferring body.

D. The department may submit waivers or state plan amendments to the Centers for Medicare and Medicaid Services in order to secure federal financial participation in relation to any such payments or reimbursement. Payments shall be made only in accordance with an approved waiver or state plan amendment.

E. The department and the transferring local governing body may enter into an agreement, in accordance with state and federal law, concerning the use of transferred funds in a way that is consistent with the legislative intent set forth herein.

**Me. Rev. Stat. tit. 22, §§ 1591-1592 (LexisNexis)**

§ 1591. Immunity and employment protection

No physician, nurse or other person who refuses to perform or assist in the performance of an abortion, and no hospital or health care facility that refuses to permit the performance of an abortion upon its premises, shall be liable to any person, firm, association or corporation for damages allegedly arising from the refusal, nor shall such refusal constitute a basis for any civil liability to any physician, nurse or other person, hospital or health care facility nor a basis for any disciplinary or other recriminatory action against them or any of them by the State or any person.

No physician, nurse or other person, who refuses to perform or assist in the performance of an abortion, shall, because of that refusal, be dismissed, suspended, demoted or otherwise prejudiced or damaged by a hospital, health care facility, firm, association, professional association, corporation or educational institution with which he or she is affiliated or requests to be affiliated or by which he or she is employed, nor shall such refusal constitute grounds for loss of any privileges or immunities to which such physician, nurse or other person would otherwise be entitled nor shall submission to an abortion or the granting of consent therefor be a condition precedent to the receipt of any public benefits.

§ 1592. Discrimination for refusal

No person, hospital, health care facility, firm, association, corporation or educational institution, directly or indirectly, by himself or another, shall discriminate against any physician, nurse or other person by refusing or withholding employment from or denying admittance, when such physician, nurse or other person refuses to perform, or assist in the performance of an abortion, nor shall such refusal constitute grounds for loss of any privileges or immunities to which such physician, nurse or other person would otherwise be entitled.

**Me. Rev. Stat. tit. 22, § 1903(4) (LexisNexis)**

Authority and policy

4. Objections. No private institution or physician or no agent or employee of such institution or physician shall be prohibited from refusing to provide family planning services when such refusal is based upon religious or conscientious objection.

## Me. Rev. Stat. tit. 24, § 2332-J(2) (LexisNexis);
## Me. Rev. Stat. tit. 24-A, §§ 2756(2), 2847-G(2), 4247(2) (LexisNexis)

§ 2332-J. Coverage for contraceptives

2. Exclusion for religious employer. A religious employer may request and a nonprofit hospital or medical service organization or nonprofit health care service organization shall grant an exclusion under the policy or contract for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains an exclusion under this subsection shall provide prospective insureds and those individuals insured under its policy written notice of the exclusion. This section may not be construed as authorizing a nonprofit hospital or medical service organization or nonprofit health care service organization to exclude coverage for prescription drugs prescribed for reasons other than contraceptive purposes or for prescription contraception that is necessary to preserve the life or health of a covered person. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 United States Code, Section 3121 (w) (3) (A) and that qualifies as a tax-exempt organization under 26 United States Code, Section 501(c) (3).

§ 2756. Coverage for contraceptives

2. Exclusion for religious employer. A religious employer may request and an insurer shall grant an exclusion under the policy or contract for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains an exclusion under this subsection shall provide prospective insureds and those individuals insured under its policy written notice of the exclusion. This section may not be construed as authorizing an insurer to exclude coverage for prescription drugs prescribed for reasons other than contraceptive purposes or for prescription contraception that is necessary to preserve the life or health of a covered person. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 United States

Code, Section 3121 (w) (3) (A) and that qualifies as a tax-exempt organization under 26 United States Code, Section 501(c) (3).

§ 2847-G. Coverage for contraceptives

2. Exclusion for religious employer. A religious employer may request and an insurer shall grant an exclusion under the policy or contract for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains an exclusion under this subsection shall provide prospective insureds and those individuals insured under its policy written notice of the exclusion. This section may not be construed as authorizing an insurer to exclude coverage for prescription drugs prescribed for reasons other than contraceptive purposes or for prescription contraception that is necessary to preserve the life or health of a covered person. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 United States Code, Section 3121 (w) (3) (A) and that qualifies as a tax-exempt organization under 26 United States Code, Section 501(c) (3).

§ 4247. Coverage for contraceptives

2. Exclusion for religious employer. A religious employer may request and a health maintenance organization shall grant an exclusion under the policy or contract for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains an exclusion under this subsection shall provide prospective insureds and those individuals insured under its policy written notice of the exclusion. This section may not be construed as authorizing a health maintenance organization to exclude coverage for prescription drugs prescribed for reasons other than contraceptive purposes or for prescription contraception that is necessary to preserve the life or health of a covered person. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 United States Code, Section 3121 (w) (3) (A) and that

qualifies as a tax-exempt organization under 26 United States Code, Section 501(c)(3).

**Me. Rev. Stat. tit. 34-B, § 7016 (LexisNexis)**

Liability

1. Participation in sterilization. Nothing in this chapter requires any hospital or any person to participate in performing any sterilization procedure, nor may any hospital or any person be civilly or criminally liable for refusing to participate in performing any sterilization procedure.

2. Immunity. A physician, psychiatrist or psychologist acting nonnegligently and in good faith in his professional capacity under this chapter is immune from any civil liability that might otherwise result from his actions. In a proceeding regarding immunity from liability, there shall be a rebuttable presumption of good faith.

## Md. Code Ann., Health-Gen. § 20-214(a)-(b) (LexisNexis)

Refusal of person or hospital to perform or participate in procedures

Refusal of person

(a)(1) A person may not be required to perform or participate in, or refer to any source for, any medical procedure that results in artificial insemination, sterilization, or termination of pregnancy.

(2) The refusal of a person to perform or participate in, or refer to a source for, these medical procedures may not be a basis for:

(i) Civil liability to another person; or

(ii) Disciplinary or other recriminatory action against the person.

Refusal of hospital

(b)(1) A licensed hospital, hospital director, or hospital governing board may not be required:

(i) To permit, within the hospital, the performance of any medical procedure that results in artificial insemination, sterilization, or termination of pregnancy; or

(ii) To refer to any source for these medical procedures.

(2) The refusal to permit or to refer to a source for these procedures may not be grounds for:

(i) Civil liability to another person; or

(ii) Disciplinary or other recriminatory action against the person by this State or any person.

## Md. Code Ann., Ins. § 15-810(i) (LexisNexis)

In vitro fertilization procedures
Exclusion of coverage at request of religious organization

(i) Notwithstanding any other provision of this section, if the coverage required under this section conflicts with the bona fide religious beliefs and practices of a religious organization, on request of the religious organization, an entity subject to this section shall exclude the coverage otherwise required under this section in a policy or contract with the religious organization.

## Md. Code Ann., Ins. § 15-826(c) (LexisNexis)

Prescription contraceptive drugs or devices

(c)(1) A religious organization may request and an entity subject to this section shall grant the request for an exclusion from coverage under the policy, plan, or contract for the coverage required under subsection (b) of this section if the required coverage conflicts with the religious organization's bona fide religious beliefs and practices.

(2) A religious organization that obtains an exclusion under paragraph (1) of this subsection shall provide its employees reasonable and timely notice of the exclusion.

## Mass. Ann. Laws ch. 112, § 12I (LexisNexis)

Abortion or sterilization procedures; refusal of hospital or health facility staff members or employees to participate

A physician or any other person who is a member of or associated with the medical staff of a hospital or other health facility or any employee of a hospital or other health facility in which an abortion or any sterilization procedure is scheduled and who shall state in writing an objection to such abortion or sterilization procedure on moral or religious grounds, shall not be required to participate in the medical procedures which result in such abortion or sterilization, and the refusal of any such person to participate therein shall not form the basis for any claim of damages on account of such refusal or for any disciplinary or recriminatory action against such person. The refusal of any person who has made application to a medical, premedical, nursing, social work, or psychology program in the commonwealth to agree to counsel, suggest, recommend, assist, or in any way participate in the performance of an abortion or sterilization contrary to his religious beliefs or moral convictions shall not form the basis for any discriminatory action against such person. Conscientious objection to abortion shall not be grounds for dismissal, suspension, demotion, failure to promote, discrimination in hiring, withholding of pay or refusal to grant financial assistance under any state aided project, or used in any way to the detriment of the individual in any hospital, clinic, medical, premedical, nursing, social work, or psychology school or state aided program or institution which is supported in whole or in part by the commonwealth.

## Mass. Ann. Laws ch. 272, § 21B (LexisNexis)

Privately controlled hospital or health facility; abortion or sterilization procedures; contraceptive devices and family planning services

No privately controlled hospital or other health facility shall be required to admit any patient for the purpose of performing an abortion, performing any sterilization procedure, or receiving contraceptive devices or information.

No privately controlled hospital or other privately controlled health facility shall be required to permit any patient to have an abortion, or any sterilization procedure performed in said hospital or other health facility, or to furnish contraceptive devices or information to such patient, nor shall such a hospital or other health facility be required to furnish any family planning services within or through said hospital or other health facility or to make referrals to any other hospital or health facility for such services when said services or referrals are contrary to the religious or moral principles of said hospital or said health facility as expressed in its charter, by-laws or code of ethics, or vote of its governing body.

Any such hospital or other health facility exercising the rights granted in this section shall not on account of the exercise thereof, be disciplined or discriminated against in any manner or suffer any adverse determination by any person, firm, corporation, or other entity, including but in no way limited to any political subdivision, board, commission, department, authority, or agency of the commonwealth.

**Mass. Ann. Laws ch. 175, § 47W(c) (LexisNexis);**
**Mass. Ann. Laws ch. 176A, § 8W(c) (LexisNexis);**
**Mass. Ann. Laws ch. 176B, § 4W(c) (LexisNexis);**
**Mass. Ann. Laws ch. 176G, § 4O(c) (LexisNexis)**

§ 47W. Outpatient services; hormone replacement therapy for peri and post menopausal women; contraceptive services; approved prescription contraceptive drugs or devises; exception

(c) This section shall not apply to an individual policy of accident and sickness insurance delivered, issued or renewed pursuant to section 108 or any group blanket policy of accident and sickness insurance delivered, issued or renewed pursuant to section 110 if that policy is purchased by an employer that is a church or qualified church-controlled organization, as those terms are defined in 26 U.S.C. section 3121(w)(3)(A) and (B).

§ 8W. Outpatient services; hormone replacement therapy for peri and post menopausal women; contraceptive services; approved prescription contraceptive drugs and devices; exception

(c) This section shall not apply to a contract between a subscriber and the corporation delivered, issued or renewed pursuant to this chapter if the contract is purchased by a subscriber that is a church or qualified church-controlled organization, as those terms are defined in 26 U.S.C. section 3121(w)(3)(A) and (B).

§ 4W. Outpatient services; hormone replacement therapy for peri and post menopausal women; contraceptive services; approved prescription contraceptive drugs or devises; exception

(c) This section shall not apply to a subscription certificate under an individual or group medical service agreement delivered, issued or renewed under this chapter if that subscription certificate is purchased by an employer that is a church or qualified church-controlled organization, as those terms are defined in 26 U.S.C. section 3121(w)(3)(A) and (B).

§ 4O. Outpatient services; hormone replacement therapy for peri and post menopausal women; contraceptive services; approved prescription contraceptive drugs or devices; exception

(c) The requirements of this section shall not apply to a health maintenance contract delivered, issued or renewed pursuant to this chapter if that contract is purchased by an employer that is a church or qualified church-controlled organization, as those terms are defined in 26 U.S.C. section 3121(w)(3)(A) and (B).

## Mich. Comp. Laws Serv. §§ 333.20181-.20184

333.20181. Abortions; refusal to admit patient for performance; immunity

Sec. 20181. A hospital, clinic, institution, teaching institution, or other health facility is not required to admit a patient for the purpose of performing an abortion. A hospital, clinic, institution, teaching institution, or other health facility or a physician, member, or associate of the staff, or other person connected therewith, may refuse to perform, participate in, or allow to be performed on its premises an abortion. The refusal shall be with immunity from any civil or criminal liability or penalty.

333.20182. Abortions; refusal to participate on professional, ethical, moral or religious grounds; liability for damages

Sec. 20182. A physician, or other individual who is a member of or associated with a hospital, clinic, institution, teaching institution, or other health facility, or a nurse, medical student, student nurse, or other employee of a hospital, clinic, institution, teaching institution, or other health facility in which an abortion is performed, who states an objection to abortion on professional, ethical, moral, or religious grounds, is not required to participate in the medical procedures which will result in abortion. The refusal by the individual to participate does not create a liability for damages on account of the refusal or for any disciplinary or discriminatory action by the patient, hospital, clinic, institution, teaching institution, or other health facility against the individual.

333.20183. Abortions; refusal to give advice concerning or participate in; liability for damages

Sec. 20183. (1) A physician who informs a patient that he or she refuses to give advice concerning, or participate in, an abortion is not liable to the hospital, clinic, institution, teaching institution, health facility, or patient for the refusal.

(2) A civil action for negligence or malpractice or a disciplinary or discriminatory action may not be maintained against a person refusing to give advice as to, or participating in, an abortion based on the refusal.

333.20184. Discrimination against individual that participated in or expressed a willingness to participate in a termination of pregnancy

Sec. 20184. A hospital, clinic, institution, teaching institution, or other health facility which refuses to allow abortions to be performed on its premises shall not deny staff privileges or employment to an individual for the sole reason that the individual previously participated in, or expressed a willingness to participate in, a termination of pregnancy. A hospital, clinic, institution, teaching institution, or other health facility shall not discriminate against its staff members or other employees for the sole reason that the staff members or employees have participated in, or have expressed a willingness to participate in, a termination of pregnancy.

## Minn. Stat. §§ 145.414, .42

145.414. Abortion not mandatory

(a) No person and no hospital or institution shall be coerced, held liable or discriminated against in any manner because of a refusal to perform, accommodate, assist or submit to an abortion for any reason.

(b) It is the policy of the state of Minnesota that no health plan company as defined under section 62Q.01, subdivision 4, or health care cooperative as defined under section 62R.04, subdivision 2, shall be required to provide or provide coverage for an abortion. No provision of this chapter; of chapter 62A, 62C, 62D, 62H, 62L, 62M, 62N, 62R, 62V, 64B, or of any other chapter; of Minnesota Rules; or of Laws 1995, chapter 234, shall be construed as requiring a health plan company as defined under section 62Q.01, subdivision 4, or a health care cooperative as defined under section 62R.04, subdivision 2, to provide or provide coverage for an abortion.

(c) This section supersedes any provision of Laws 1995, chapter 234, or any act enacted prior to enactment of Laws 1995, chapter 234, that in any way limits or is inconsistent with this section. No provision of any act enacted subsequent to Laws 1995, chapter 234 shall be construed as in any way limiting or being inconsistent with this section, unless the act amends this section or expressly provides that it is intended to limit or be inconsistent with this section.

145.42. Abortions; nonliability for refusal to perform

Subdivision 1. Damages. No physician, nurse, or other person who refuses to perform or assist in the performance of an abortion, and no hospital that refuses to permit the performance of an abortion upon its premises, shall be liable to any person for damages allegedly arising from the refusal.

Subd. 2. Related actions. No physician, nurse, or other person who refuses to perform or assist in the performance of an abortion shall, because of that refusal, be dismissed, suspended, demoted, or otherwise prejudiced or damaged by a hospital with which the person is affiliated or by which the person is employed.

## Minn. Stat. § 145.925(6)

Family planning grants

Subd. 6. Public services; individual and employee rights. The request of any person for family planning services or the refusal to accept any service shall in no way affect the right of the person to receive public assistance, public health services, or any other public service. Nothing in this section shall abridge the right of the individual to make decisions concerning family planning, nor shall any individual be required to state a reason for refusing any offer of family planning services. Any employee of the agencies engaged in the administration of the provisions of this section may refuse to accept the duty of offering family planning services to the extent that the duty is contrary to personal beliefs. A refusal shall not be grounds for dismissal, suspension, demotion, or any other discrimination in employment. The directors or supervisors of the agencies shall reassign the duties of employees in order to carry out the provisions of this section.

All information gathered by any agency, entity, or individual conducting programs in family planning is private data on individuals within the meaning of section 13.02, subdivision 12.

**Mo. Rev. Stat. §§ 188.105-.120, 197.032**

188.105. Discrimination by employer prohibited because of failure of employee to participate in abortion—exceptions

1. It shall be unlawful:

   (1) For an employer:

      (a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's refusal to participate in abortion;

      (b) To limit, segregate, or classify his, her, or its employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individual's refusal to participate in abortion;

      (c) To discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden under sections 188.100 to 188.120 or because he or she has filed a complaint, testified, or assisted in any legal proceeding under sections 188.100 to 188.120;

   (2) For any person, whether an employer or employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under sections 188.100 to 188.120, or to attempt to do so.

2. Notwithstanding any other provision of sections 188.100 to 188.120, the acts proscribed in subsection 1 of this section shall not be unlawful if there can be demonstrated an inability to reasonably accommodate an individual's refusal to participate in abortion without undue hardship on the conduct of that particular business or enterprise, or in those certain instances where participation in abortion is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.

3. Nothing contained in sections 188.100 to 188.120 shall be interpreted to require any employer to grant preferential treatment to any individual because of such individual's refusal to participate in abortion.

188.110. Discrimination by colleges, universities and hospitals prohibited--no requirement to pay fees, when

1. No public or private college, university or hospital shall discriminate against any person for refusal to participate in abortion.

2. No applicant, student, teacher, or employee of any school shall be required to pay any fees that would in whole or in part fund an abortion for any other applicant, student, teacher, or employee of that school, if the individual required to pay the fee gives written notice to the proper school authorities that it would be in violation of his or her conscience or beliefs to pay for or fund abortions. The school may require the individual to pay that part of the fees not funding abortions, if the school makes reasonable precautions and gives reasonable assurance that the fees that are paid are segregated from any fund for the payment of abortions.

188.120. Cause of action for violation of discrimination laws, treble damages, attorney's fees

Any individual injured by any person, association, corporation, or entity by reason of any action prohibited by sections 188.100 to 188.120, as now or hereafter amended, may commence a civil cause of action against the person, association, corporation, or entity who caused the injury, and shall recover treble damages, including pain and suffering, sustained by such individual, the costs of the suit and reasonable attorney's fees.

197.032. Hospitals and medical personnel may refuse abortions--no denial of public benefits for such refusal--civil action, when

1. No physician or surgeon, registered nurse, practical nurse, midwife or hospital, public or private, shall be required to treat or admit for treatment any woman for the purpose of abortion if such treatment or admission for treatment is contrary to the established policy of, or the moral, ethical or religious beliefs of, such physician, surgeon, registered nurse, midwife, practical nurse or hospital. No cause of action shall accrue against any such physician, surgeon, registered nurse, midwife,

practical nurse or hospital on account of such refusal to treat or admit for treatment any woman for abortion purposes.

2. No person or institution shall be denied or discriminated against in the reception of any public benefit, assistance or privilege whatsoever or in any employment, public or private, on the grounds that they refuse to undergo an abortion, to advise, consent to, assist in or perform an abortion.

3. Any person who shall deny or discriminate against another for refusal to perform or participate in an abortion shall be liable to the party injured in an action at law, suit in equity or other redress.

## Mo. Rev. Stat. §§ 191.724, 376.805

191.724. Discrimination based on religious beliefs or moral convictions prohibited, health plan coverage of abortion--no mandatory employee coverage of certain procedures--attorney general to enforce--sterilization defined

1. The rights guaranteed under this section are in addition to the rights guaranteed under section 376.805, relating to health plan coverage of abortion, and section 376.1199, relating to health plan coverage of certain obstetrical and gynecological benefits and pharmaceutical coverage.

2. No employee, self-employed person, or any other person shall be compelled to obtain coverage for, or be discriminated against or penalized for declining or refusing coverage for, abortion, contraception, or sterilization in a health plan if such items or procedures are contrary to the religious beliefs or moral convictions of such employee or person.

3. No employer, health plan provider, health plan sponsor, health care provider, or any other person or entity shall be compelled to provide coverage for, or be discriminated against or penalized for declining or refusing coverage for, abortion, contraception, or sterilization in a health plan if such items or procedures are contrary to the religious beliefs or moral convictions of such employer, health plan provider, health plan sponsor, health care provider, person, or entity.

4. No governmental entity, public official, or entity acting in a governmental capacity shall discriminate against or penalize an employee, self-employed person, employer, health plan provider, health plan sponsor, health care provider, or any other person or entity because of such employee's, self-employed person's, employer's, health plan provider's, health plan sponsor's, health care provider's, or other person's or entity's unwillingness, based on religious beliefs or moral convictions, to obtain or provide coverage for, pay for, participate in, or refer for, abortion, contraception, or sterilization in a health plan.

5. Whenever the attorney general has a reasonable cause to believe that any person or entity or group of persons or entities is being, has been, or is threatened to be denied any of the rights granted by this section or other law that protects the religious beliefs or moral convictions of such persons or entities, and such denial raises an issue of general public importance, the attorney general may bring a civil

action in any appropriate state or federal court. Such complaint shall set forth the facts and request such appropriate relief, including but not limited to an application for a permanent or temporary injunction, restraining order, mandamus, an order under the federal Administrative Procedure Act, Religious Freedom Restoration Act, or other federal law, an order under section 1.302 relating to free exercise of religion, or other order against the governmental entity, public official, or entity acting in a governmental capacity responsible for such denial or threatened denial of rights, as the attorney general deems necessary to ensure the full enjoyment of the rights granted by law. Nothing contained herein shall preclude a private cause of action against a governmental entity, public official, or entity acting in a governmental capacity by any person or entity or group of persons or entities aggrieved by a violation of this section or other law that protects the religious beliefs or moral convictions of such persons or entities, or be considered a limitation on any other remedy permitted by law. A court may order any appropriate relief, including recovery of damages, payment of reasonable attorney's fees, costs, and expenses.

6. For purposes of this section, "sterilization" shall mean any elective medical procedure for which the sole purpose is to make an individual incapable of reproduction.

376.805. Elective abortion to be by optional rider and requires additional premium-- elective abortion defined--health insurance exchanges

1. No health insurance contracts, plans, or policies delivered or issued for delivery in the state shall provide coverage for elective abortions except by an optional rider for which there must be paid an additional premium. For purposes of this section, an "elective abortion" means an abortion for any reason other than a spontaneous abortion or to prevent the death of the female upon whom the abortion is performed.

2. Subsection 1 of this section shall be applicable to all contracts, plans or policies of:
      (1) All health insurers subject to this chapter; and
      (2) All nonprofit hospital, medical, surgical, dental, and health service corporations subject to chapter 354; and
      (3) All health maintenance organizations.

3. No health insurance exchange established within this state or any health insurance exchange administered by the federal government or its agencies within this state shall offer health insurance contracts, plans, or policies that provide coverage for elective abortions, nor shall any health insurance exchange operating within this state offer coverage for elective abortions through the purchase of an optional rider.

4. This section shall be applicable only to contracts, plans or policies written, issued, renewed or revised after September 28, 1983. For the purposes of this subsection, if new premiums are charged for a contract, plan or policy, it shall be determined to be a new contract, plan or policy.

## Mont. Code Ann. § 50-20-111

Right to refuse participation in abortion

(1) No private hospital or health care facility shall be required contrary to the religious or moral tenets or the stated religious beliefs or moral convictions of its staff or governing board to admit any person for the purpose of abortion or to permit the use of its facilities for such purpose. Such refusal shall not give rise to liability of such hospital or health care facility or any personnel or agent or governing board thereof to any person for damages allegedly arising from such refusal or be the basis for any discriminatory, disciplinary, or other recriminatory action against such hospital or health care facility or any personnel, agent, or governing board thereof.

(2) All persons shall have the right to refuse to advise concerning, perform, assist, or participate in abortion because of religious beliefs or moral convictions. If requested by any hospital or health care facility or person desiring an abortion, such refusal shall be in writing signed by the person refusing, but may refer generally to the grounds of "religious beliefs and moral convictions". The refusal of any person to advise concerning, perform, assist, or participate in abortion shall not be a consideration in respect of staff privileges of any hospital or health care facility or a basis for any discriminatory, disciplinary, or other recriminatory action against such person, nor shall such person be liable to any person for damages allegedly arising from refusal.

(3) It shall be unlawful to interfere or attempt to interfere with the right of refusal authorized by this section. The person injured thereby shall be entitled to injunctive relief, when appropriate, and shall further be entitled to monetary damages for injuries suffered.

(4) Such refusal by any hospital or health care facility or person shall not be grounds for loss of any privileges or immunities to which the granting of consent may otherwise be a condition precedent or for the loss of any public benefits.

(5) As used in this section, the term "person" includes one or more individuals, partnerships, associations, and corporations.

## Mont. Code Ann. §§ 50-5-502 to -505

50-5-502. Refusal by hospital or health care facility to participate in sterilization

(1) No private hospital or health care facility shall be required, contrary to the religious or moral tenets or the stated religious beliefs or moral convictions of such hospital or facility as stated by its governing body or board, to admit any person for the purpose of sterilization or to permit the use of its facilities for such purpose.

(2) Such refusal shall not give rise to liability of such hospital or health care facility or any personnel or agent or governing board thereof to any person for damages allegedly arising from such refusal or be the basis for any discriminatory, disciplinary, or other recriminatory action against such hospital or health care facility or any personnel, agent, or governing board thereof.

50-5-503. Refusal by individual to participate in sterilization

(1) All persons shall have the right to refuse to advise concerning, perform, assist, or participate in sterilization because of religious beliefs or moral convictions.

(2) If requested by any hospital or health care facility or person desiring sterilization, such refusal shall be in writing signed by the person refusing but may refer generally to the grounds of "religious beliefs and moral convictions".

(3) The refusal of any person to advise concerning, perform, assist, or participate in sterilization shall not be a consideration in respect of staff privileges of any hospital or health care facility or a basis for any discriminatory, disciplinary, or other recriminatory action against such person, nor shall such person be liable to any person for damages allegedly arising from refusal.

50-5-504. Unlawful to interfere with right of refusal

(1) It shall be unlawful to interfere or attempt to interfere with the right of refusal authorized by this part, whether by duress, coercion, or any other means.

(2) The person injured thereby shall be entitled to injunctive relief, when appropriate, and shall further be entitled to monetary damages for injuries suffered.
50-5-505. Refusal not grounds for loss of privileges, immunities, or public benefits

Such refusal by any hospital or health care facility or person shall not be grounds for loss of any privileges or immunities to which the granting of consent may otherwise be a condition precedent or for the loss of any public benefits.

## Neb. Rev. Stat. Ann. §§ 28-337 to -341 (LexisNexis)

28-337. Hospital, clinic, institution; not required to admit patient for abortion

No hospital, clinic, institution, or other facility in this state shall be required to admit any patient for the purpose of performing an abortion nor required to allow the performance of an abortion therein, but the hospital, clinic, institution, or other facility shall inform the patient of its policy not to participate in abortion procedures. No cause of action shall arise against any hospital, clinic, institution, or other facility for refusing to perform or allow an abortion.

28-338. No person required to perform an abortion; no liability for refusal

No person shall be required to perform or participate in any abortion, and the refusal of any person to participate in an abortion shall not be a basis for civil liability to any person. No hospital, governing board, or any other person, firm, association, or group shall terminate the employment or alter the position of, prevent or impair the practice or occupation of, or impose any other sanction or otherwise discriminate against any person who refuses to participate in an abortion.

28-340. Discrimination against person refusing to participate in an abortion; damages

Any person whose employment or position has been in any way altered, impaired, or terminated in violation of sections 28-325 to 28-345 may sue in the district court for all consequential damages, lost wages, reasonable attorney's fees incurred, and the cost of litigation.

28-341. Discrimination against person refusing to participate in an abortion; injunctive relief

Any person whose employment or position has in any way been altered, impaired, or terminated because of his refusal to participate in an abortion shall have the right to injunctive relief, including temporary relief, pending trial upon showing of an emergency, in the district court, in accordance with the statutes, rules, and practices applicable in other similar cases.

## Nev. Rev. Stat. Ann. §§ 632.475, 449.191 (LexisNexis)

632.475. Unlawful to require participation in abortion; penalty

1. An employer shall not require a registered nurse, a licensed practical nurse, a nursing assistant or any other person employed to furnish direct personal health service to a patient to participate directly in the induction or performance of an abortion if the employee has filed a written statement with the employer indicating a moral, ethical or religious basis for refusal to participate in the abortion.

2. If the statement provided for in subsection 1 is filed with the employer, the employer shall not penalize or discipline the employee for declining to participate directly in the induction or performance of an abortion.

3. The provisions of subsections 1 and 2 do not apply to medical emergency situations.

4. Any person violating the provisions of this section is guilty of a misdemeanor.

449.191. Medical facility not required to allow abortions

1. A hospital or other medical facility licensed under the provisions of this chapter which is not operated by the State or a local government or an agency of either is not required to permit the use of its facilities for the induction or performance of an abortion, except in a medical emergency.

2. Such refusal does not give rise to a cause of action in favor of any person.

**Nev. Rev. Stat. Ann. §§ 689A.0415(5), 689A.0417(5), 689B.0376(5), 689B.0377(5), 695B.1916(5), 695B.1918(5), 695C.1694(5), 695C.1695(5) (LexisNexis)**

689A.0415. Coverage for drug or device for contraception and for hormone replacement therapy in certain circumstances; prohibited actions by insurer; exceptions

5. An insurer which offers or issues a policy of health insurance and which is affiliated with a religious organization is not required to provide the coverage required by paragraph (a) of subsection 1 if the insurer objects on religious grounds. Such an insurer shall, before the issuance of a policy of health insurance and before the renewal of such a policy, provide to the prospective insured, written notice of the coverage that the insurer refuses to provide pursuant to this subsection. 689A.0417. Coverage for health care services related to contraceptives and hormone replacement therapy in certain circumstances; prohibited actions by insurer; exceptions

5. An insurer which offers or issues such a policy of health insurance and which is affiliated with a religious organization is not required to provide the coverage for health care service related to contraceptives required by this section if the insurer objects on religious grounds. Such an insurer shall, before the issuance of a policy of health insurance and before the renewal of such a policy, provide to the prospective insured written notice of the coverage that the insurer refuses to provide pursuant to this subsection.

689B.0376. Policy covering prescription drugs or devices to provide coverage for drug or device for contraception and of hormone replacement therapy in certain circumstances; prohibited actions by insurer; exceptions

5. An insurer which offers or issues a policy of group health insurance and which is affiliated with a religious organization is not required to provide the coverage required by paragraph (a) of subsection 1 if the insurer objects on religious grounds. Such an insurer shall, before the issuance of a policy of group health insurance and before the renewal of such a policy, provide to the group policyholder or prospective insured, as applicable, written notice of the coverage that the insurer refuses to provide pursuant to this subsection. The insurer shall provide notice to each insured, at the time the insured receives his or her certificate of coverage or

evidence of coverage, that the insurer refused to provide coverage pursuant to this subsection.

689B.0377. Policy covering outpatient care to provide coverage for health care services related to contraceptives and hormone replacement therapy; prohibited actions by insurer; exceptions

5. An insurer which offers or issues a policy of group health insurance and which is affiliated with a religious organization is not required to provide the coverage for health care service related to contraceptives required by this section if the insurer objects on religious grounds. Such an insurer shall, before the issuance of a policy of group health insurance and before the renewal of such a policy, provide to the group policyholder or prospective insured, as applicable, written notice of the coverage that the insurer refuses to provide pursuant to this subsection. The insurer shall provide notice to each insured, at the time the insured receives his or her certificate of coverage or evidence of coverage, that the insurer refused to provide coverage pursuant to this subsection.

695B.1916. Required provision concerning coverage of drug or device for contraception and of hormone replacement therapy in certain circumstances; prohibited actions by insurer; exceptions

5. An insurer which offers or issues a contract for hospital or medical service and which is affiliated with a religious organization is not required to provide the coverage required by paragraph (a) of subsection 1 if the insurer objects on religious grounds. Such an insurer shall, before the issuance of a contract for hospital or medical service and before the renewal of such a contract, provide to the group policyholder or prospective insured, as applicable, written notice of the coverage that the insurer refuses to provide pursuant to this subsection. The insurer shall provide notice to each insured, at the time the insured receives his or her certificate of coverage or evidence of coverage, that the insurer refused to provide coverage pursuant to this subsection.

695B.1918. Required provision concerning coverage of health care services related to contraceptives and hormone replacement therapy in certain circumstances; prohibited actions by insurer; exceptions

5. An insurer which offers or issues a contract for hospital or medical service and which is affiliated with a religious organization is not required to provide the coverage for health care service related to contraceptives required by this section if the insurer objects on religious grounds. Such an insurer shall, before the issuance of a contract for hospital or medical service and before the renewal of such a contract, provide to the group policyholder or prospective insured, as applicable, written notice of the coverage that the insurer refuses to provide pursuant to this subsection. The insurer shall provide notice to each insured, at the time the insured receives his or her certificate of coverage or evidence of coverage, that the insurer refused to provide coverage pursuant to this subsection.

695C.1694. Required provision concerning coverage of drug or device for contraception and of hormone replacement therapy in certain circumstances; prohibited actions by health maintenance organization; exceptions

5. A health maintenance organization which offers or issues a health care plan and which is affiliated with a religious organization is not required to provide the coverage required by paragraph (a) of subsection 1 if the health maintenance organization objects on religious grounds. The health maintenance organization shall, before the issuance of a health care plan and before renewal of enrollment in such a plan, provide to the group policyholder or prospective enrollee, as applicable, written notice of the coverage that the health maintenance organization refuses to provide pursuant to this subsection. The health maintenance organization shall provide notice to each enrollee, at the time the enrollee receives his or her evidence of coverage, that the health maintenance organization refused to provide coverage pursuant to this subsection.

695C.1695. Required provision concerning coverage of health care services related to contraceptives and hormone replacement therapy in certain circumstances; prohibited actions by health maintenance organization; exceptions

5. A health maintenance organization which offers or issues a health care plan and which is affiliated with a religious organization is not required to provide the coverage for health care service related to contraceptives required by this section if the health maintenance organization objects on religious grounds. The health maintenance organization shall, before the issuance of a health care plan and before renewal of enrollment in such a plan, provide to the group policyholder or prospective enrollee, as applicable, written notice of the coverage that the health maintenance organization refuses to provide pursuant to this subsection. The

health maintenance organization shall provide notice to each enrollee, at the time the enrollee receives his or her evidence of coverage, that the health maintenance organization refused to provide coverage pursuant to this subsection.

## N.J. Rev. Stat. §§ 2A:65A-1, to -4

2A:65A-1. Requirement of person to perform; prohibition

No person shall be required to perform or assist in the performance of an abortion or sterilization.

2A:65A-2. Requirement of hospital or other health care facility to provide services or procedures; prohibition

No hospital or other health care facility shall be required to provide abortion or sterilization services or procedures.

2A:65A-3. Refusal to perform or provide services or procedures; nonliability

The refusal to perform, assist in the performance of, or provide abortion services or sterilization procedures shall not constitute grounds for civil or criminal liability, disciplinary action or discriminatory treatment.

## N.J. Rev. Stat. §§ 17B:27-46.1x(b), 17:48A-7w(b), 17:48-6x(b), 17:48E-35.22(b), 26:2J-4.23(b)

17B:27-46.1x. Coverage for expenses incurred in diagnosis and treatment of infertility

b. A religious employer may request, and an insurer shall grant, an exclusion under the policy for the coverage required by this section for in vitro fertilization, embryo transfer, artificial insemination, zygote intra fallopian transfer and intracytoplasmic sperm injection, if the required coverage is contrary to the religious employer's bona fide religious tenets. The insurer that issues a policy containing such an exclusion shall provide written notice thereof to each prospective insured or insured, which shall appear in not less than ten point type, in the policy, application and sales brochure. For the purposes of this subsection, "religious employer" means an employer that is a church, convention or association of churches or any group or entity that is operated, supervised or controlled by or in connection with a church or a convention or association of churches as defined in 26 U.S.C. s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C. s.501(c)(3).

17:48A-7w. Coverage for expenses incurred in diagnosis and treatment of infertility

b. A religious employer may request, and a medical service corporation shall grant, an exclusion under the contract for the coverage required by this section for in vitro fertilization, embryo transfer, artificial insemination, zygote intra fallopian transfer and intracytoplasmic sperm injection, if the required coverage is contrary to the religious employer's bona fide religious tenets. The medical service corporation that issues a contract containing such an exclusion shall provide written notice thereof to each prospective subscriber or subscriber, which shall appear in not less than ten point type, in the contract, application and sales brochure. For the purposes of this subsection, "religious employer" means an employer that is a church, convention or association of churches or any group or entity that is operated, supervised or controlled by or in connection with a church or a convention or association of churches as defined in 26 U.S.C. s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C. s.501(c)(3).

17:48-6x. Coverage for expenses incurred in diagnosis and treatment of infertility

b. A religious employer may request, and a hospital service corporation shall grant, an exclusion under the contract for the coverage required by this section for in vitro fertilization, embryo transfer, artificial insemination, zygote intra fallopian transfer and intracytoplasmic sperm injection, if the required coverage is contrary to the religious employer's bona fide religious tenets. The hospital service corporation that issues a contract containing such an exclusion shall provide written notice thereof to each prospective subscriber or subscriber, which shall appear in not less than 10 point type, in the contract, application and sales brochure. For the purposes of this subsection, "religious employer" means an employer that is a church, convention or association of churches or any group or entity that is operated, supervised or controlled by or in connection with a church or a convention or association of churches as defined in 26 U.S.C. s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C. s.501(c)(3).

17:48E-35.22. Coverage for expenses incurred in diagnosis and treatment of infertility

b. A religious employer may request, and a health service corporation shall grant, an exclusion under the contract for the coverage required by this section for in vitro fertilization, embryo transfer, artificial insemination, zygote intra fallopian transfer and intracytoplasmic sperm injection, if the required coverage is contrary to the religious employer's bona fide religious tenets. The health service corporation that issues a contract containing such an exclusion shall provide written notice thereof to each prospective subscriber or subscriber, which shall appear in not less than ten point type, in the contract, application and sales brochure. For the purposes of this subsection, "religious employer" means an employer that is a church, convention or association of churches or any group or entity that is operated, supervised or controlled by or in connection with a church or a convention or association of churches as defined in 26 U.S.C. s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C. s.501(c)(3).

26:2J-4.23. Coverage for expenses incurred in diagnosis and treatment of infertility

b. A religious employer may request, and a health maintenance organization shall grant, an exclusion under the contract for the health care services required by this section for in vitro fertilization, embryo transfer, artificial insemination, zygote intra fallopian transfer and intracytoplasmic sperm injection, if the required health care services are contrary to the religious employer's bona fide religious tenets.

The health maintenance organization that issues a contract containing such an exclusion shall provide written notice thereof to each prospective enrollee or enrollee, which shall appear in not less than ten point type, in the contract, application and sales brochure. For the purposes of this subsection, "religious employer" means an employer that is a church, convention or association of churches or any group or entity that is operated, supervised or controlled by or in connection with a church or a convention or association of churches as defined in 26 U.S.C. s.3121(w)(3)(A) , and that qualifies as a tax-exempt organization under 26 U.S.C. s.501(c)(3).

**N.J. Rev. Stat. §§ 17:48-6ee, 17:48A-7bb, 17:48E-35.29, 17B:27-46.1ee, 17B:26-2.1y, 26:2J-4.30, 17B:27A-19.15, 17:48F-13.2, 17B:27A-7.12**
[N.B. only relevant excerpts are pasted below]

17:48-6ee. Prescription female contraceptives; required coverage

A religious employer may request, and a hospital service corporation shall grant, an exclusion under the contract for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains such an exclusion shall provide written notice thereof to prospective subscribers and subscribers. The provisions of this section shall not be construed as authorizing a hospital service corporation to exclude coverage for prescription drugs that are prescribed for reasons other than contraceptive purposes or for prescription female contraceptives that are necessary to preserve the life or health of a subscriber. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 U.S.C.s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C.s.501(c)(3).

17:48A-7bb. Prescription female contraceptives; required coverage

A religious employer may request, and a medical service corporation shall grant, an exclusion under the contract for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains such an exclusion shall provide written notice thereof to prospective subscribers and subscribers. The provisions of this section shall not be construed as authorizing a medical service corporation to exclude coverage for prescription drugs that are prescribed for reasons other than contraceptive purposes or for prescription female contraceptives that are necessary to preserve the life or health of a subscriber. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 U.S.C.s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C.s.501(c)(3).

17:48E-35.29. Prescription female contraceptives; required coverage

A religious employer may request, and a health service corporation shall grant, an exclusion under the contract for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains such an exclusion shall provide written notice thereof to prospective subscribers and subscribers. The provisions of this section shall not be construed as authorizing a health service corporation to exclude coverage for prescription drugs that are prescribed for reasons other than contraceptive purposes or for prescription female contraceptives that are necessary to preserve the life or health of a subscriber. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 U.S.C.s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C.s.501(c)(3).

17B:27-46.1ee. Prescription female contraceptives; required coverage

A religious employer may request, and an insurer shall grant, an exclusion under the policy for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains such an exclusion shall provide written notice thereof to prospective insureds and insureds. The provisions of this section shall not be construed as authorizing an insurer to exclude coverage for prescription drugs that are prescribed for reasons other than contraceptive purposes or for prescription female contraceptives that are necessary to preserve the life or health of an insured. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 U.S.C. s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C. s.501(c)(3).

17B:26-2.1y. Prescription female contraceptives; required coverage

A religious employer may request, and an insurer shall grant, an exclusion under the policy for the coverage required by this section if the required coverage

conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains such an exclusion shall provide written notice thereof to prospective insureds and insureds. The provisions of this section shall not be construed as authorizing an insurer to exclude coverage for prescription drugs that are prescribed for reasons other than contraceptive purposes or for prescription female contraceptives that are necessary to preserve the life or health of an insured. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 U.S.C. s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C. s.501(c)(3).

26:2J-4.30. Prescription female contraceptives; required coverage

A religious employer may request, and a health maintenance organization shall grant, an exclusion under the contract for the health care services required by this section if the required health care services conflict with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains such an exclusion shall provide written notice thereof to prospective enrollees and enrollees. The provisions of this section shall not be construed as authorizing a health maintenance organization to exclude health care services for prescription drugs that are prescribed for reasons other than contraceptive purposes or for prescription female contraceptives that are necessary to preserve the life or health of an enrollee. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 U.S.C.s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C.s.501(c)(3).

17B:27A-19.15. Prescription female contraceptives; required coverage

A religious employer may request, and a carrier shall grant, an exclusion under the health benefits plan for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains such an exclusion shall provide written notice thereof to prospective covered persons and covered persons. The provisions

of this section shall not be construed as authorizing a carrier to exclude coverage for prescription drugs that are prescribed for reasons other than contraceptive purposes or for prescription female contraceptives that are necessary to preserve the life or health of a covered person. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 U.S.C.s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C.s.501(c)(3).

17:48F-13.2. Prescription female contraceptives; required coverage

A religious employer may request, and a prepaid prescription service organization shall grant, an exclusion under the contract for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains such an exclusion shall provide written notice thereof to prospective enrollees and enrollees. The provisions of this section shall not be construed as authorizing a prepaid prescription service organization to exclude coverage for prescription drugs that are prescribed for reasons other than contraceptive purposes or for prescription female contraceptives that are necessary to preserve the life or health of an enrollee. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 U.S.C.s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C.s.501(c)(3).

17B:27A-7.12. Prescription female contraceptives; required coverage

A religious employer may request, and a carrier shall grant, an exclusion under the health benefits plan for the coverage required by this section if the required coverage conflicts with the religious employer's bona fide religious beliefs and practices. A religious employer that obtains such an exclusion shall provide written notice thereof to prospective covered persons and covered persons. The provisions of this section shall not be construed as authorizing a carrier to exclude coverage for prescription drugs that are prescribed for reasons other than contraceptive purposes or for prescription female contraceptives that are necessary to preserve

the life or health of a covered person. For the purposes of this section, "religious employer" means an employer that is a church, convention or association of churches or an elementary or secondary school that is controlled, operated or principally supported by a church or by a convention or association of churches as defined in 26 U.S.C.s.3121(w)(3)(A), and that qualifies as a tax-exempt organization under 26 U.S.C.s.501(c)(3).

## N.M. Stat. Ann. § 30-5-2 (LexisNexis)

Persons and institutions exempt

This article does not require a hospital to admit any patient for the purposes of performing an abortion, nor is any hospital required to create a special hospital board. A person who is a member of, or associated with, the staff of a hospital, or any employee of a hospital, in which a justified medical termination has been authorized and who objects to the justified medical termination on moral or religious grounds shall not be required to participate in medical procedures which will result in the termination of pregnancy, and the refusal of any such person to participate shall not form the basis of any disciplinary or other recriminatory action against such person.

## N.M. Stat. Ann. §§ 59A-22-42(D), 59A-46-44(C) (LexisNexis)

§ 59A-22-42. Coverage for prescription contraceptive drugs or devices

D. A religious entity purchasing individual or group health insurance coverage may elect to exclude prescription contraceptive drugs or devices from the health coverage purchased.

§ 59A-46-44. Coverage for prescription contraceptive drugs or devices

C. A religious entity purchasing individual or group health maintenance organization coverage may elect to exclude prescription contraceptive drugs or devices from the health coverage purchased.

**N.M. Stat. Ann. § 24-8-6(A) (LexisNexis)**

Health facility licensure; affirmative statement of compliance required as condition of licensure; prohibition against certain policies of health facilities, state and local governmental units

A. No health facility shall include in its bylaws or other governing policy statement a statement that:

    (1) interferes with the physician-patient relationship in connection with the provision of any family planning service; or

    (2) establishes or authorizes any standard or requirement in violation of Section 5 of the Family Planning Act, provided that nothing in the Family Planning Act shall be construed to require any hospital or clinic that objects on moral or religious grounds to admit any person for the purpose of being sterilized.

## N.Y. Civ. Rights Law § 79-i (Consol.)

Discrimination against person who refuses to perform certain act prohibited

1. When the performing of an abortion on a human being or assisting thereat is contrary to the conscience or religious beliefs of any person, he may refuse to perform or assist in such abortion by filing a prior written refusal setting forth the reasons therefor with the appropriate and responsible hospital, person, firm, corporation or association, and no such hospital, person, firm, corporation or association shall discriminate against the person so refusing to act.

A violation of the provisions of this section shall constitute a misdemeanor.

2. No civil action for negligence or malpractice shall be maintained against a person so refusing to act based on such refusal.

**N.Y. Comp. Codes R. & Regs. tit. 10, § 405.9(b)(10)**

Admission/discharge

(b) Admission

(10) No hospital shall be required to admit any patient for the purpose of performing an induced termination of pregnancy, nor shall any hospital be liable for its failure or refusal to participate in any such act, provided that the hospital shall inform the patient of its decision not to participate in such an act or acts. The hospital in such event shall inform the patient of appropriate resources for services or information.

**N.Y. Comp. Codes R. & Regs. tit. 18, § 463.6(d)**

Conditions for providing services

(d) A staff member of a local social services department whose cultural values, conscience or religious conviction prevents him from participating in the provision of family-planning services shall so report to the social services official or his designee who in turn shall assign another appropriate staff member to this function in his place.

## N.Y. Ins. Law §§ 3221(*l*)(16)(A), 4303(cc)(1) (Consol.)

§ 3221. Group or blanket accident and health insurance policies; standard provisions

(A) Notwithstanding any other provision of this subsection, a religious employer may request a contract without coverage for federal food and drug administration approved contraceptive methods that are contrary to the religious employer's religious tenets. If so requested, such contract shall be provided without coverage for contraceptive methods. This paragraph shall not be construed to deny an enrollee coverage of, and timely access to, contraceptive methods.

§ 4303. Benefits

(1) Notwithstanding any other provision of this subsection, a religious employer may request a contract without coverage for federal food and drug administration approved contraceptive methods that are contrary to the religious employer's religious tenets. If so requested, such contract shall be provided without coverage for contraceptive methods. This paragraph shall not be construed to deny an enrollee coverage of, and timely access to, contraceptive methods.

## N.C. Gen. Stat. § 14-45.1(e)-(f)

When abortion not unlawful

(e) No physician, nurse, or any other health care provider who shall state an objection to abortion on moral, ethical, or religious grounds shall be required to perform or participate in medical procedures which result in an abortion. The refusal of a physician, nurse, or health care provider to perform or participate in these medical procedures shall not be a basis for damages for the refusal, or for any disciplinary or any other recriminatory action against the physician, nurse, or health care provider. For purposes of this section, the phrase "health care provider" shall have the same meaning as defined under G.S. 90-410(1).

(f) Nothing in this section shall require a hospital, other health care institution, or other health care provider to perform an abortion or to provide abortion services.

## N.C. Gen. Stat. § 58-3-178(e)

Coverage for prescription contraceptive drugs or devices and for outpatient contraceptive services; exemption for religious employers

(e) A religious employer may request an insurer providing a health benefit plan to provide to the religious employer a health benefit plan that excludes coverage for prescription contraceptive drugs or devices that are contrary to the employer's religious tenets. Upon request, the insurer shall provide the requested health benefit plan. An insurer providing a health benefit plan requested by a religious employer pursuant to this section shall provide written notice to each person covered under the health benefit plan that prescription contraceptive drugs or devices are excluded from coverage pursuant to this section at the request of the employer. The notice shall appear, in not less than 10-point type, in the health benefit plan, application, and sales brochure for the health benefit plan. Nothing in this subsection authorizes a health benefit plan to exclude coverage for prescription drugs ordered by a health care provider with prescriptive authority for reasons other than contraceptive purposes, or for prescription contraception that is necessary to preserve the life or health of a person covered under the plan. As used in this subsection, the term "religious employer" means an entity for which all of the following are true:

(1) The entity is organized and operated for religious purposes and is tax exempt under section 501(c)(3) of the U.S. Internal Revenue Code.

(2) The inculcation of religious values is one of the primary purposes of the entity.

(3) The entity employs primarily persons who share the religious tenets of the entity.

## N.D. Cent. Code § 23-16-14

Participation in abortion—Not mandatory

No hospital, physician, nurse, hospital employee, nor any other person is under any duty, by law or contract, nor may such hospital or person in any circumstances be required to participate in the performance of an abortion, if such hospital or person objects to such abortion. No such person or institution may be discriminated against because the person or institution so objects. For purposes of this section, "abortion" means the act of using or prescribing any instrument, medicine, drug, or any other substance, device, or means with the intent to terminate the clinically diagnosable intrauterine pregnancy of a woman, including the elimination of one or more unborn children in a multifetal pregnancy, with knowledge that the termination by those means will with reasonable likelihood cause the death of the unborn child. Such use, prescription, or means is not an abortion if done with the intent to save the life or preserve the health of the unborn child; remove a dead unborn child caused by spontaneous abortion; or treat a woman for an ectopic pregnancy.

## Ohio Rev. Code Ann. § 4731.91 (LexisNexis)

Abortion; liability

(A) No private hospital, private hospital director, or governing board of a private hospital is required to permit an abortion.

(B) No public hospital, public hospital director, or governing board of a public hospital is required to permit an abortion.

(C) Refusal to permit an abortion is not grounds for civil liability nor a basis for disciplinary or other recriminatory action.

(D) No person is required to perform or participate in medical procedures which result in abortion, and refusal to perform or participate in the medical procedures is not grounds for civil liability nor a basis for disciplinary or other recriminatory action.

(E) Whoever violates division (D) of this section is liable in civil damages.

## Okla. Stat. tit. 63, §§ 1-728c, to -728f

§ 1-728c. Prohibits employer discrimination--Applicable circumstances

An employer shall not discriminate against an employee or prospective employee by refusing to reasonably accommodate the religious observance or practice of the employee or prospective employee, unless the employer can demonstrate that the accommodation would pose an undue hardship on the program, enterprise, or business of the employer, in the following circumstances:

1. An abortion as defined in Section 1-730 of Title 63 of the Oklahoma Statutes. The provisions of this section shall not apply if the pregnant woman suffers from a physical disorder, physical injury, or physical illness which, as certified by a physician, causes the woman to be in imminent danger of death unless an abortion is immediately performed or induced and there are no other competent personnel available to attend to the woman. As used in this act, the term "abortion" shall not include the prescription of contraceptives;

2. An experiment or medical procedure that destroys an in vitro human embryo or uses cells or tissue derived from the destruction of an in vitro human embryo;

3. An experiment or medical procedure on an in vitro human embryo that is not related to the beneficial treatment of the in vitro human embryo;

4. An experiment or medical procedure on a developing child in an artificial womb, at any stage of development, that is not related to the beneficial treatment of the developing child;

5. A procedure, including a transplant procedure, that uses fetal tissue or organs that come from a source other than a stillbirth or miscarriage; or

6. An act that intentionally causes or assists in causing the death of an individual by assisted suicide, euthanasia, or mercy killing.

§ 1-728d. No requirement to admit patients--Employee refusal to participate and immunity

A. No health care facility is required to admit any patient or to allow the use of the health care facility for the purpose of performing any of the acts specified in Section 3 of this act.

B. A physician, physician's assistant, registered nurse, practical nurse, pharmacist, or any employee thereof, or any other person who is an employee of, member of, or associated with the staff of a health care facility in which the performance of an activity specified in Section 3 of this act has been authorized, who in writing, refuses or states an intention to refuse to participate in the activity on moral or religious grounds shall not be required to participate in the activity and shall not be disciplined by the respective licensing board or authorized regulatory department for refusing or stating an intention to refuse to participate in the practice with respect to the activity.

C. A physician, physician's assistant, registered nurse, practical nurse, pharmacist, or any employee thereof, or any other person who is an employee of, member of, or associated with the staff of a health care facility is immune from liability for any damage caused by the refusal of the person to participate in an activity specified in Section 3 of this act on moral or religious grounds.

§ 1-728e. Discrimination--Circumstances—Prohibitions

A. No health care facility, school, or employer shall discriminate against any person with regard to admission, hiring or firing, tenure, term, condition, or privilege of employment, student status, or staff status on the ground that the person refuses or states an intention to refuse, whether or not in writing, to participate in an activity specified in Section 3 of this act, if the refusal is based on religious or moral precepts.

B. No person shall be required to:

1. Participate in an activity specified in Section 3 of this act1 if the individual's participation in the activity is contrary to the person's religious beliefs or moral convictions;

2. Make facilities available for an individual to participate in an activity specified in Section 3 of this act if the person prohibits the activity from taking place in the facilities on the basis of religious beliefs or moral convictions; or

3. Provide any personnel to participate in an activity specified in Section 3 of this act if the activity is contrary to the religious beliefs or moral convictions of the personnel.

§ 1-728f. Ability to sue—Damages

A. For the purposes of this section, "damages" do not include noneconomic damages, as defined in Section 1-1708.1C of Title 63 of the Oklahoma Statutes.

B. A person who is adversely affected by conduct that is in violation of the Freedom of Conscience Act may bring a civil action for equitable relief, including reinstatement or damages, or both reinstatement and damages. An action under this subsection may be commenced against the state and any office, department, independent agency, authority, institution, association, or other body in state government created or authorized to be created by the state constitution or any law. In an action under this subsection, the court shall award reasonable attorney fees to a person who obtains equitable relief, damages, or both. An action under this subsection shall be commenced within one (1) year after the cause of action accrues or be barred.

## Okla. Stat. tit. 63, § 1-741

Abortions--Refusal to perform or participate—Exemptions

A. No private hospital, hospital director or governing board of a private hospital in Oklahoma, is required to permit abortions to be performed or induced in such hospital. Refusal to permit an abortion, in accordance with a standard policy, is not grounds for civil liability nor a basis for disciplinary or other recriminatory action.

B. No person may be required to perform, induce or participate in medical procedures which result in an abortion which are in preparation for an abortion or which involve aftercare of an abortion patient, except when the aftercare involves emergency medical procedures which are necessary to protect the life of the patient, and refusal to perform or participate in such medical procedures is not grounds for civil liability nor a basis for disciplinary or other recriminatory action.

C. The rights and immunities granted by this section shall not include medical procedures in which a woman is in the process of the spontaneous, inevitable abortion of an unborn child, the death of the child is imminent, and the procedures are necessary to prevent the death of the mother.

## Okla. Stat. tit. 63, § 1-568

Licensure, accreditation, certification not contingent upon acceptance of abortion as treatment option

A. Nothing in the Genetic Counseling Licensure Act may be construed to require any genetic counselor or other person to mention, discuss, suggest, propose, recommend, or refer for, abortion, or to agree or indicate a willingness to do so, nor shall licensing of any genetic counselor be contingent upon acceptance of abortion as a treatment option for any genetic or other prenatal disease, anomaly, or disability.

B. If the State Board of Health determines that accreditation of genetic counseling training programs by the American Board of Genetic Counseling or of medical genetics training programs by the American Board of Medical Genetics is dependent on criteria, or applied in a manner, incompatible with the provisions of subsection A of this section, it shall establish or recognize and apply criteria for accreditation of alternative genetic counseling training programs or medical genetics training programs compatible with the provisions of subsection A of this section and any genetic counseling training programs or medical genetics training programs accredited thereunder shall be deemed accredited for the purposes of paragraph 3 of subsection A of Section 4 of this act.1

C. If the State Board of Health determines that the examination required for certification as a genetic counselor by the American Board of Genetic Counseling or the American Board of Medical Genetics or as a medical geneticist by the American Board of Medical Genetics is incompatible with the provisions of subsection A of this section, it shall establish or recognize an alternative examination compatible with the provisions of that subsection and an individual who passes such an examination shall be deemed to meet the relevant requirements of paragraph 4 of subsection A of Section 4 of this act.

D. The State Board of Health shall by rule waive such other provisions of the Genetic Counseling Licensure Act and provide for appropriate substitute requirements as it determines necessary to ensure compliance with subsection A of this section.

E. There shall be no cause of action against any person for failure to mention, discuss, suggest, propose, recommend, or refer for, abortion, unless the abortion is necessary to prevent the death of the mother.

F. This section shall not be severable from the Genetic Counseling Licensure Act.

**Or. Rev. Stat. § 435.475**

Admission of patient for termination; right of hospital to refuse

(1) Except as provided in subsection (3) of this section, no hospital is required to admit any patient for the purpose of terminating a pregnancy. No hospital is liable for its failure or refusal to participate in such termination if the hospital has adopted a policy not to admit patients for the purposes of terminating pregnancies. However, the hospital must notify the person seeking admission to the hospital of its policy.

(2) All hospitals that have not adopted a policy not to admit patients seeking termination of a pregnancy shall admit patients seeking such termination in the same manner and subject to the same conditions as imposed on any other patient seeking admission to the hospital.

(3) No hospital operated by this state or by a political subdivision in this state is authorized to adopt a policy of excluding or denying admission to any person seeking termination of a pregnancy.

**Or. Rev. Stat. § 435.485**

Participation in termination; right of physicians and hospital staff to refuse

(1) No physician is required to give advice with respect to or participate in any termination of a pregnancy if the refusal to do so is based on an election not to give such advice or to participate in such terminations and the physician so advises the patient.

(2) No hospital employee or member of the hospital medical staff is required to participate in any termination of a pregnancy if the employee or staff member notifies the hospital of the election not to participate in such terminations.

## Or. Rev. Stat. § 435.225

Right of employee to refuse to offer services

Any employee of the Oregon Health Authority may refuse to accept the duty of offering family planning and birth control services to the extent that such duty is contrary to the personal or religious beliefs of the employee. However, such employee shall notify the immediate supervisor in writing of such refusal in order that arrangements may be made for eligible persons to obtain such information and services from another employee. Such refusal shall not be grounds for any disciplinary action, for dismissal, for any interdepartmental transfer, for any other discrimination in employment, or for suspension from employment, or for any loss in pay or other benefits.

**43 Pa. Stat. § 955.2; 16 Pa. Code §§ 51.1-51.61**

§ 955.2. Abortion and sterilization; immunity from requirement to perform; unlawful discriminatory practices

(a) No hospital or other health care facility shall be required to, or held liable for refusal to, perform or permit the performance of abortion or sterilization contrary to its stated ethical policy. No physician, nurse, staff member or employee of a hospital or other health care facility, who shall state in writing to such hospital or health care facility an objection to performing, participating in, or cooperating in, abortion or sterilization on moral, religious or professional grounds, shall be required to, or held liable for refusal to, perform, participate in, or cooperate in such abortion or sterilization.

(b) It shall be an unlawful discriminatory practice:

(1) For any person to impose penalties or take disciplinary action against, or to deny or limit public funds, licenses, certifications, degrees, or other approvals or documents of qualification to, any hospital or other health care facility, refusal of such hospital or health care facility to perform or permit to be performed, participate in, or cooperate in, abortion or sterilization by reason of objection thereto on moral, religious or professional grounds, or because of any statement or other manifestation of attitude by such hospital or health care facility with respect to abortion or sterilization.

(2) For any person to impose penalties or take disciplinary action against, or to deny or limit public funds, licenses, certifications, degrees, or other approvals or documents of qualification to any physician, nurse or staff member or employee of any hospital or health care facility, due to the willingness or refusal of such physician, nurse or staff member or employee to perform or participate in abortion or sterilization by reason of objection thereto on moral, religious or professional grounds, or because of any statement or other manifestation of attitude by such physician, nurse or staff member or employee with respect to abortion or sterilization.

(3) For any public or private agency, institution or person, including a medical, nursing or other school, to deny admission to, impose any burdens in terms of conditions of employment upon, or otherwise discriminate against any applicant

for admission thereto or any physician, nurse, staff member, student or employee thereof, on account of the willingness or refusal of such applicant, physician, nurse, staff member, student or employee to perform or participate in, abortion or sterilization by reason of objection thereto on moral, religious or professional grounds, or because of any statement or other manifestation of attitude by such person with respect to abortion or sterilization: Provided, however, That this subsection shall not apply to any health care facility operated exclusively for the performance of abortion or sterilization or directly related procedures or to a separate clinic of a health care facility for the performance of abortion or sterilization or directly related procedures.

§ 51.1. Purpose and policy.

(a) The purpose of this chapter is to assist persons and institutions subject to the provisions of section 5.2 of the act (43 P. S. § 955.2) to comply with the act of October 10, 1973 (P. L. 278, No. 78) (43 P. S. §§ 955.2 and 961) prohibiting discrimination with respect to abortion and sterilization. This chapter will show what courses of conduct are considered by the Commission to be in violation of the act. Persons and institutions subject to the provisions of the act should govern themselves accordingly.

(b) It is the policy of the Commission, under the provisions of the 1973 amendment to the act, to prevent and eliminate discrimination based upon refusal or willingness to participate in abortion or sterilization procedures, consistent with the obligation of hospitals and other health care facilities to provide competent medical care.

§ 51.31. Adoption and substance of stated ethical policy.

(a) Section 5.2(a) of the act (43 P. S. § 955.2(a)) permits a hospital or other health care facility to make a determination, in the form of a stated ethical policy, with regard to whether such institution will permit or refuse to permit the performance of abortion or sterilization procedures upon its premises. Pursuant to "Abortion and Sterilization in Public Hospitals," Opinion No. 75-16 of the Attorney General, appearing at 5 Pa.B. 1383, no public hospital or other public health care facility may make such a determination, in the form of a stated ethical policy or otherwise, which would prohibit upon its premises the performance of sterilization procedures or the performance of abortion procedures prior to the last trimester of pregnancy.

(b) No nonpublic hospital or other nonpublic health care facility shall be required to or held liable for refusal to perform or permit the performance of abortion or sterilization contrary to its stated ethical policy. Such policy shall consist of a written statement which reflects an official resolution or declaration of a board of directors or other governing body of a nonpublic hospital or other nonpublic health care facility charged with the responsibility for over-all administration and policy determination for such institution. Such policy shall be adopted by a board of directors or other governing body of such institution in the same manner as and following the procedures used for the consideration and adoption of all other policy decisions concerning the rendering of health care service by such institution.

(c) The stated ethical policy of a hospital or other health care facility shall expressly set forth the policy of that institution with regard to the performance of abortion or sterilization procedures in such hospital or facility. The policy may, in addition, be based upon specified and well-defined moral, religious, or professional grounds. The adoption of a stated ethical policy by a nonpublic hospital or other nonpublic health care facility, the effect of which would be to refuse to permit the performance of abortion or sterilization procedures upon its premises, must have occurred subsequent to January 22, 1973, the date when the United States Supreme Court rendered its decisions in the cases concerning the right to abortion: Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201 (1973).

(d) If a nonpublic hospital or other nonpublic health care facility desires to retain, as its official policy, a stated ethical policy which existed prior to such date and which refuses to permit the performance of abortion or sterilization procedures upon its premises, such policy must be reaffirmed or restated subsequent to such date.

(e) The stated ethical policy of a hospital or other health care facility shall be made known to all persons employed by or participating in medical or other services provided by such institution, and such policy shall be freely available and conspicuously posted for public inspection.

(f) In the absence of a stated ethical policy as set forth in this section, it will be presumed that a nonpublic hospital or other nonpublic health care facility possesses no stated ethical policy regarding the performance of abortion or sterilization procedures in such institution.

§ 51.32. Objection to performance of abortion or sterilization by nonpublic hospitals or other nonpublic health care facilities on moral, religious or professional grounds. Under the provisions of section 5.2(b)(1) of the act (43 P. S. § 955.2(b)(1)), and of Opinion No. 75-16 of the Attorney General, appearing at 5 Pa.B. 1383, any nonpublic hospital or other nonpublic health care facility which objects to the performance of abortion or sterilization procedures on moral, religious, or professional grounds and which, as a result, refuses to perform or permit the performance of abortion or sterilization procedures in such institution shall not be subject to the imposition of penalties; disciplinary action; or denial or limitation of public funds, licenses, certifications, degrees, or other approvals or documents of qualification under the provisions of the act. The objections of a nonpublic institution to the performance of abortion or sterilization procedures in its facilities on such grounds shall be clearly set forth in writing and may be contained within the stated ethical policy of such institution, in its articles of incorporation, by-laws, deed of trust, or official resolution of the board of directors or other governing body of a nonpublic hospital or other nonpublic health care facility, and such objections shall comply with the requirements as set forth in § 51.31 (relating to adoption and substance of stated ethical policy). When such objections are so stated, they shall be reprinted and made known to all persons employed by or participating in medical or other services provided by such institution and shall be made freely available and conspicuously posted for public inspection.

§ 51.33. Statement or other manifestation of attitude with respect to abortion or sterilization.

(a) Any hospital or other health care facility which makes a statement, sets forth a position, or otherwise demonstrates a manifestation of attitude with respect to abortion or sterilization, as set forth in section 955.2(b)(1) of the act (43 P. S. § 955.2(b)(1)) shall not be subject to the imposition of penalties or disciplinary action or the denial or limitation of public funds, licenses, certifications, degrees, or other approvals or documents of qualification as a result of such statement, position or other manifestation of attitude. Such statement or other manifestation of attitude with respect to abortion or sterilization may express a willingness or an objection to the performance of abortion or sterilization procedures, except that no public hospital or other public health care facility may make such a statement or other manifestation of attitude objecting to or prohibiting upon its premises the

performance of sterilization procedures or the performance of abortion procedures prior to the last trimester of pregnancy.

(b) A manifestation of attitude by a hospital or a health care facility shall include, but shall not be limited to, any official or unofficial policy of such institution with respect to abortion or sterilization, any course of conduct in which such institution or its administration have engaged subsequent to January 22, 1973, or the adoption or initiation of any procedure which contemplates or implements, as a general policy, the performance or refusal to perform abortion or sterilization procedures in such institution.

§ 51.41. Written objection to performance, participation in or cooperation in abortion or sterilization procedures.

(a) Pursuant to section 5.2(a) of the act (43 P. S. § 955.2(a)), any physician, nurse, staff member, or employee of a hospital or other health care facility who objects to performing, participating in, or cooperating in abortion or sterilization procedures on moral, religious or professional grounds and who, for such reasons, does not wish to participate or cooperate in the performance of such procedures shall clearly set forth such objection in writing and shall submit the objection to the board of directors, governing body, or administrator in charge of such institution. Unless such a written objection is submitted, under section 5.2(a) of the act (43 P. S. § 955.2(a)), a staff member will be presumed to have no objection to participation or cooperation in the performance of abortion or sterilization procedures on moral, religious, or professional grounds, and shall not be subject to the protections set forth in that section. If such a written objection is duly submitted to the proper authority, no such staff member shall be required to or held liable for refusal to perform, participate in, or cooperate in abortion or sterilization procedures.

(b) Individuals performing or participating in abortion or sterilization procedures are those physicians, nurses, staff members, or employees of a hospital or other health care facility who are directly involved in such a procedure and are in attendance at the time when and in the room where the procedure takes place and without whose services the procedure itself could not be performed.

(c) Individuals cooperating in abortion or sterilization procedures are those physicians, nurses, staff members, or employees of a hospital or other health care facility, whether or not directly involved in such procedures or in attendance at the

time when and in the room where the procedure takes place, whose duties are of a type peculiar to abortion or sterilization procedures and without whose services the procedure itself could not be performed. Examples of "cooperation" include assistance rendered by a nurse, staff member, or employee or a hospital of health care facility to a doctor in performing the abortion procedure; rendering of the services of an anesthetist or anesthesiologist in connection with the abortion procedure; disposal of or assistance in the disposal of aborted fetuses; cleaning the instruments used in the abortion or sterilization procedure. Examples of duties and conduct which would not constitute "cooperation" include: functioning in ancillary services, such as food preparation, to serve the patient, ordinary services of housekeeping and dietary personnel; cleaning of the room used in the abortion procedure following the abortion; record keeping by clerical personnel; installation of or repairs to electrical, plumbing, or heating facilities in surgical areas; performance by a laboratory technician of blood tests upon a patient prior to abortion upon that patient; involvement of a nurse, staff member, or employee in the caring for a patient in any preparatory procedure leading to abortion or in the postabortion period of the patient.

(d) Pursuant to the procedures set forth in this section, any physician, nurse, staff member, or employee of a hospital or other health care facility may submit a written limited objection to performing, participating in, or cooperating in particular types of abortion procedures or abortion procedures performed after a certain number of weeks of gestation, and such person may thereby obtain the protections afforded by section 5.2(a) of the act (43 P. S. § 955.2(a)), to the extent set forth in such limited objection.

§ 51.42. Willingness or refusal to perform or participate in abortion or sterilization procedures.

(a) Pursuant to section 5.2(b)(2) of the act (43 P. S. § 955.2(b)(2)), no physician, nurse or staff member of a hospital or other health care facility who expresses a willingness to participate in the performance of abortion or sterilization procedures; who expresses a refusal to participate in the performance of such procedures based upon objection thereto on moral, religious or professional grounds; or who makes a statement or otherwise manifests any attitude with respect to abortion or sterilization shall be subject to any penalties; disciplinary action; denial; or limitation of public funds, licenses, certifications, degrees or other approvals or documents of qualification by reason of such willingness or refusal or

statement or manifestation of attitude, except where such willingness, refusal, objection, statement or manifestation of attitude constitutes an overt act which disrupts hospital procedures, operations, or services or which endangers the health or safety of any patient.

(b) Individuals performing or participating in abortion or sterilization procedures are those physicians, nurses, staff members or employees of a hospital or other health care facility who are directly involved in such a procedure and are in attendance at the time when and in the room where the procedure takes place and without whose services the procedure itself could not be performed.

(c) For the purposes of sections 5.2(b)(2) and (3) of the act (43 P. S. § 955.2(b)(2) and (3)), a statement or other manifestation of attitude includes, but is not limited to, any written or oral statement and any course of conduct in which such person has engaged subsequent to January 22, 1973 which clearly and openly reflects or expresses the attitude of such person with respect to abortion or sterilization including, as an expression of attitude, the fact that such person has undergone an abortion or sterilization procedure.

§ 51.43. Other protections afforded individuals in employment and education.

(a) Section 5.2(b)(3) of the act (43 P. S. § 955.2(b)(3)) provides certain protections in the areas of employment and education and is applicable to the employment practices of hospitals and health care facilities as well as such practices of any "public or private agency, institution or person, including a medical, nursing or other school." Under this section, it is unlawful to deny admission to, impose any burdens in terms or conditions of employment upon, or otherwise discriminate against any applicant for admission or any student or employee who expresses a willingness to participate in the performance of abortion or sterilization procedures, who expresses a refusal to participate in the performance of such procedures based upon objection thereto on moral, religious, or professional grounds, or who makes a statement or otherwise manifests any attitude with respect to abortion or sterilization, except where such willingness, refusal, objection, statement or manifestation of attitude constitutes an overt act which disrupts hospital procedures, operations or service or which endangers the health or safety of any patient.

(b) Nothing in this section shall be taken to permit a student or employee either to refuse to participate in an emergency surgical procedure which involves an inevitable abortion or to refuse to complete his participation in any surgical procedure once he has voluntarily undertaken it without knowing it would involve a procedure to which he is opposed on moral, religious or professional grounds.

§ 51.44. Reasonable accommodation to rights of employees.

(a) It is the goal of the Commission to encourage all employers and their employees to anticipate any interference in the regular course of business activities which might be caused by the exercise of the rights of an employee under §§ 51.41--51.43 (relating to rights and obligations of individuals) and that such advance planning shall enable the parties to develop a satisfactory course of action to be followed in all such instances.

(b) Employers who are covered by section 5.2 of the act (43 P. S. § 955.2), relating to discrimination with respect to abortion and sterilization, have a duty to make reasonable accommodations to the needs of their employees, as specified in this section, where such persons express either a willingness or refusal to perform or participate in abortion or sterilization procedures based upon the lawfully stated grounds of objection thereto which willingness or refusal requires the employee to refrain from performing his normally assigned duties or where an employee manifests an attitude with respect to abortion or sterilization. In all cases where it is reasonably foreseeable that a manifestation of attitude or a willingness or objection with respect to abortion or sterilization will result in an interference with the performance of duties required of an employee in the normal course of his employment, such employer may require advance notice thereof by the employee. This notice is necessary so that the claim and the needs of such person may be evaluated by the employer prior to the anticipated interference and enable the employer to make reasonable accommodations to such manifestation of attitude or willingness or objection, with respect to sterilization.

(c) The reasonable accommodations made by the employer to the needs and desires of such employees are such accommodations which may be made without undue hardship to the conduct of the employer's business. Such undue hardship, for example, may exist where the employee's needed work cannot be performed by another employee of substantially similar qualifications in the situation where and at the time when the person refuses to perform or participate in the performance of

abortion or sterilization procedures or where the employee refuses to perform his normally assigned duties incident to employment.

(d) Because of the particularly sensitive nature of the problems raised in this area and the needs and personal requirements of each person with respect to performance or participation in abortion or sterilization procedures or the manifestation of attitude with respect thereto, the employer shall have the burden of proving that an undue hardship renders the required accommodations to such needs and requirements of the employee unreasonable.

(e) The Commission will review each case on an individual basis, in an effort to seek an equitable application of the provisions of this chapter to the variety of situations which may arise due to the moral, religious, or professional practices and requirements of the citizens of the Commonwealth.

§ 51.51. Supplementary interpretation regarding bona fide occupational qualification standards.

(a) A public hospital or public health care facility and all other medical facilities which elect to provide abortion or sterilization services have the duty to employ and assign sufficient numbers of medical and other staff persons and provide the necessary equipment and facilities to offer the services on a medically-safe and professional basis. It is imperative that the institutions obtain the services of responsible physicians and other necessary personnel whose personal views on abortion do not prohibit them from providing or participating in abortions or sterilizations.

(b) When an institution is unable to provide sufficient numbers of physicians, nurses, staff members and other employees to provide abortion or sterilization services due to the objection of staff members, the institution shall request from the Commission a supplementary interpretation regarding bona fide occupational qualification standards for the position in question, to be operative during the period of time when the institution is attempting to employ sufficient numbers of staff people to provide the medical services.

## 18 Pa. Cons. Stat. § 3213(d), (f)(1)

Prohibited acts

(d) Participation in abortion.--Except for a facility devoted exclusively to the performance of abortions, no medical personnel or medical facility, nor any employee, agent or student thereof, shall be required against his or its conscience to aid, abet or facilitate performance of an abortion or dispensing of an abortifacient and failure or refusal to do so shall not be a basis for any civil, criminal, administrative or disciplinary action, penalty or proceeding, nor may it be the basis for refusing to hire or admit anyone. Nothing herein shall be construed to limit the provisions of the act of October 27, 1955 (P.L. 744, No. 222), known as the "Pennsylvania Human Relations Act."3 Any person who knowingly violates the provisions of this subsection shall be civilly liable to the person thereby injured and, in addition, shall be liable to that person for punitive damages in the amount of $5,000.

(f) Notice.--

(1) Except for a facility devoted exclusively to the performance of abortions, every facility performing abortions shall prominently post a notice, not less than eight and one-half inches by eleven inches in size, entitled "Right of Conscience," for the exclusive purpose of informing medical personnel, employees, agents and students of such facilities of their rights under subsection (d) and under section 5.2 of the Pennsylvania Human Relations Act. The facility shall post the notice required by this subsection in a location or locations where notices to employees, medical personnel and students are normally posted or, if notices are not normally posted, in a location or locations where the notice required by this subsection is likely to be seen by medical personnel, employees or students of the facility. The department shall prescribe a model notice which may be used by any facility, and any facility which utilizes the model notice or substantially similar language shall be deemed in compliance with this subsection.

## R.I. Gen. Laws § 23-17-11

Abortion and sterilization--Protection for nonparticipation—Procedure

A physician or any other person who is a member of or associated with the medical staff of a health care facility or any employee of a health care facility in which an abortion or any sterilization procedure is scheduled, and who shall state in writing an objection to the abortion or sterilization procedure on moral or religious grounds, shall not be required to participate in the medical procedures which result in the abortion or sterilization, and the refusal of the person to participate in the medical procedures shall not form the basis for any claim of damages on account of the refusal or for any disciplinary or recriminatory action against the person.

## R.I. Gen. Laws §§ 27-18-57, 27-19-48, 27-20-43, 27-41-59

§ 27-18-57. F.D.A. approved prescription contraceptive drugs and devices

(a) Every individual or group health insurance contract, plan, or policy that provides prescription coverage and is delivered, issued for delivery, or renewed in this state shall provide coverage for F.D.A. approved contraceptive drugs and devices requiring a prescription. Provided, that nothing in this subsection shall be deemed to mandate or require coverage for the prescription drug RU 486.

(b) Notwithstanding any other provision of this section, any insurance company may issue to a religious employer an individual or group health insurance contract, plan, or policy that excludes coverage for prescription contraceptive methods which are contrary to the religious employer's bona fide religious tenets.

(c) As used in this section, "religious employer" means an employer that is a "church or a qualified church-controlled organization" as defined in 26 U.S.C. § 3121.

(d) This section does not apply to insurance coverage providing benefits for: (1) hospital confinement indemnity; (2) disability income; (3) accident only; (4) long term care; (5) Medicare supplement; (6) limited benefit health; (7) specified diseased indemnity; (8) sickness of bodily injury or death by accident or both; and (9) other limited benefit policies.

(e) Every religious employer that invokes the exemption provided under this section shall provide written notice to prospective enrollees prior to enrollment with the plan, listing the contraceptive health care services the employer refuses to cover for religious reasons.

§ 27-19-48. F.D.A. approved prescription contraceptive drugs and devices

(a) Every individual or group health insurance contract, plan, or policy that provides prescription coverage and is delivered, issued for delivery, or renewed in this state shall provide coverage for F.D.A. approved contraceptive drugs and devices requiring a prescription. Provided, that nothing in this subsection shall be deemed to mandate or require coverage for the prescription drug RU 486.

(b) Notwithstanding any other provision of this section, any hospital service corporation may issue to a religious employer an individual or group health insurance contract, plan, or policy that excludes coverage for prescription contraceptive methods which are contrary to the religious employer's bona fide religious tenets.

(c) As used in this section, "religious employer" means an employer that is a "church or a qualified church-controlled organization" as defined in 26 U.S.C. § 3121.

(d) Every religious employer that invokes the exemption provided under this section shall provide written notice to prospective enrollees prior to enrollment with the plan, listing the contraceptive health care services the employer refuses to cover for religious reasons.

§ 27-20-43. F.D.A. approved prescription contraceptive drugs and devices

(a) Every individual or group health insurance contract, plan, or policy that provides prescription coverage and is delivered, issued for delivery, or renewed in this state shall provide coverage for F.D.A. approved contraceptive drugs and devices requiring a prescription. Provided, that nothing in this subsection shall be deemed to mandate or require coverage for the prescription drug RU 486.

(b) Notwithstanding any other provision of this section, any medical service corporation may issue to a religious employer an individual or group health insurance contract, plan, or policy that excludes coverage for prescription contraceptive methods which are contrary to the religious employer's bona fide religious tenets.

(c) As used in this section, "religious employer" means an employer that is a "church or a qualified church-controlled organization" as defined in 26 U.S.C. § 3121.

(d) Every religious employer that invokes the exemption provided under this section shall provide written notice to prospective enrollees prior to enrollment with the plan, listing the contraceptive health care services the employer refuses to cover for religious reasons.

§ 27-41-59. F.D.A. approved prescription contraceptive drugs and devices

(a) Every individual or group health insurance contract, plan, or policy that provides prescription coverage and is delivered, issued for delivery, or renewed in this state shall provide coverage for F.D.A. approved contraceptive drugs and devices requiring a prescription; provided, that nothing in this subsection shall be deemed to mandate or require coverage for the prescription drug RU 486.

(b) Notwithstanding any other provision of this section, any health maintenance corporation may issue to a religious employer an individual or group health insurance contract, plan, or policy that excludes coverage for prescription contraceptive methods which are contrary to the religious employer's bona fide religious tenets.

(c) As used in this section, "religious employer" means an employer that is a "church or a qualified church-controlled organization" as defined in 26 U.S.C. § 3121.

(d) Every religious employer that invokes the exemption provided under this section shall provide written notice to prospective enrollees prior to enrollment with the plan, listing the contraceptive health care services the employer refuses to cover for religious reasons.

## S.C. Code Ann. § 44-41-40

Certain hospitals or clinics may refuse to perform abortions.

No private or nongovernmental hospital or clinic shall be required to admit any patient for the purpose of terminating a pregnancy, nor shall such institutions be required to permit their facilities to be utilized for the performance of abortions. No cause of action shall arise against any such hospital or clinic for refusal to perform or to allow the performance of an abortion if the institution has adopted a policy not to admit patients for the purpose of terminating pregnancies; provided, that no hospital or clinic shall refuse an emergency admittance.

## S.C. Code Ann. § 44-41-50

Medical employees shall not be required to aid in abortions; providing necessary aftercare following abortion.

(a) No physician, nurse, technician or other employee of a hospital, clinic or physician shall be required to recommend, perform or assist in the performance of an abortion if he advises the hospital, clinic or employing physician in writing that he objects to performing, assisting or otherwise participating in such procedures. Such notice will suffice without specification of the reason therefor.

(b) No physician, nurse, technician or other person who refuses to perform or assist in the performance of an abortion shall be liable to any person for damages allegedly arising from such refusal.

(c) No physician, nurse, technician or other person who refuses to perform or assist in the performance of an abortion shall because of that refusal be dismissed, suspended, demoted, or otherwise disciplined or discriminated against by the hospital or clinic with which he is affiliated or by which he is employed. A civil action for damages or reinstatement of employment, or both, may be prosecuted by any person whose employment or affiliation with a hospital or clinic has been altered or terminated in violation of this chapter.

(d) Any physician who performs an abortion shall also provide, for proper compensation, necessary aftercare for his patient unless released by the patient in writing. The extent of aftercare required shall be that care customarily provided by physicians in such cases in accordance with accepted medical practice.

## S.D. Codified Laws § 36-11-70

Refusal to dispense medication

No pharmacist may be required to dispense medication if there is reason to believe that the medication would be used to:
    (1) Cause an abortion; or
    (2) Destroy an unborn child as defined in subdivision 22-1-2(50A); or
    (3) Cause the death of any person by means of an assisted suicide, euthanasia, or mercy killing.

No such refusal to dispense medication pursuant to this section may be the basis for any claim for damages against the pharmacist or the pharmacy of the pharmacist or the basis for any disciplinary, recriminatory, or discriminatory action against the pharmacist.

## S.D. Codified Laws §§ 34-23A-11 to -13

34-23A-11. Counselor or social worker not liable for arranging abortion--Retaliation from employer prohibited

No counselor, social worker, or anyone else who may be in such a position where the abortion question may appear as a part of their workday routine, shall be liable to any person for damages allegedly arising from advising or helping to arrange for or for refusal to arrange or encourage abortion, and there shall be no retaliation from any agency or institution with which such person may be affiliated or by which he may be employed.

34-23A-12. No liability for refusal to perform abortion
No physician, nurse, or other person who refuses to perform or assist in the performance of an abortion shall be liable to any person for damages arising from that refusal.

34-23A-13. Medical facility not to discriminate for performance or refusal to perform abortion

No physician, nurse, or other person who performs or refuses to perform or assist in the performance of an abortion shall, because of that performance or refusal, be dismissed, suspended, demoted, or otherwise prejudiced or damaged by a hospital or other medical facility with which he is affiliated or by which he is employed.

## S.D. Codified Laws § 34-23A-14

Hospital not required to perform abortions--No liability for refusal of abortion as policy

No hospital licensed pursuant to the provisions of chapter 34-12 is required to admit any patient for the purpose of terminating a pregnancy pursuant to the provisions of this chapter. No hospital is liable for its failure or refusal to participate in such termination if the hospital has adopted a policy not to admit patients for the purpose of terminating pregnancies as provided in this chapter.

**Tenn. Code Ann. §§ 39-15-204 to -205**

§ 39-15-204. Performing abortions; right to refuse

No physician shall be required to perform an abortion and no person shall be required to participate in the performance of an abortion. No hospital shall be required to permit abortions to be performed therein.

§ 39-15-205. Hospitals; refusing patients

No section of this part shall be construed to force a hospital to accept a patient for an abortion.

## Tenn. Code Ann. § 68-34-104(5)

Contraceptives; dissemination of information

(5) No private institution or physician, nor any agent or employee of such institution or physician, shall be prohibited from refusing to provide contraceptive procedures, supplies, and information when such refusal is based upon religious or conscientious objection, and no such institution, employee, agent, or physician shall be held liable for such refusal; and

## Tex. Ins. Code § 1366.006

Certain Issuers of Health Benefit Plans Not Required to Offer Coverage

An insurer, health maintenance organization, or self-insuring employer that is owned by or that is part of an entity, group, or order that is directly affiliated with a bona fide religious denomination that includes as an integral part of its beliefs and practices that in vitro fertilization is contrary to moral principles that the religious denomination considers to be an essential part of its beliefs is not required to offer coverage for in vitro fertilization under Section 1366.003.

## Tex. Ins. Code § 1369.108

Exemption for Entities Associated with Religious Organization

(a) This subchapter does not require a health benefit plan that is issued by an entity associated with a religious organization or any physician or health care provider providing medical or health care services under the plan to offer, recommend, offer advice concerning, pay for, provide, assist in, perform, arrange, or participate in providing or performing a medical or health care service that violates the religious convictions of the organization, unless the prescription contraceptive coverage is necessary to preserve the life or health of the enrollee.

(b) An issuer of a health benefit plan that excludes or limits coverage for medical or health care services under this section shall state the exclusion or limitation in:
    (1) the plan's coverage document;
    (2) the plan's statement of benefits;
    (3) plan brochures; and
    (4) other informational materials for the plan.

# Tex. Occ. Code §§ 103.001-.004

§ 103.001. Right to Object

A physician, nurse, staff member, or employee of a hospital or other health care facility who objects to directly or indirectly performing or participating in an abortion procedure may not be required to directly or indirectly perform or participate in the procedure.

§ 103.002. Discrimination Prohibited

(a) A hospital or health care facility may not discriminate against a physician, nurse, staff member, or employee, or an applicant for one of those positions, who refuses to perform or participate in an abortion procedure.

(b) A hospital or health care facility may not discriminate against a physician, nurse, staff member, or employee because of the person's willingness to participate in an abortion procedure at another facility.

(c) An educational institution may not discriminate against an applicant for admission or employment as a student, intern, or resident because of the applicant's attitude concerning abortion.

§ 103.003. Remedies

A person whose rights under this chapter are violated may sue a hospital, health care facility, or educational institution in district court in the county where the hospital, facility, or institution is located for:
    (1) an injunction against any further violation;
    (2) appropriate affirmative relief, including admission or reinstatement of employment with back pay plus 10 percent interest; and
    (3) any other relief necessary to ensure compliance with this chapter.

§ 103.004. Duty of Certain Private Entities to Make Facilities Available

A private hospital or private health care facility is not required to make its facilities available for the performance of an abortion unless a physician determines that the life of the mother is immediately endangered.

## Utah Code Ann. § 76-7-306 (LexisNexis)

Refusal to participate, admit, or treat for abortion based on religious or moral grounds--Cause of action

(1) As used in this section:
    (a) "Health care facility" is as defined in Section 26-21-2.
    (b) "Health care provider" means an individual who is an employee of, has practice privileges at, or is otherwise associated with a health care facility.

(2) A health care provider may, on religious or moral grounds, refuse to perform or participate in any way, in:
    (a) an abortion; or
    (b) a procedure that is intended to, or likely to, result in the termination of a pregnancy.

(3) Except as otherwise required by law, a health care facility may refuse, on religious or moral grounds, to:
    (a) admit a patient for an abortion procedure or another procedure that is intended to, or likely to, result in the termination of a pregnancy; or
    (b) perform for a patient an abortion procedure or another procedure that is intended to, or likely to, result in the termination of a pregnancy.

(4) A health care provider's refusal under Subsection (2) and a health care facility's refusal under Subsection (3) may not be the basis for civil liability or other recriminatory action.

(5) A health care facility, employer, or other person may not take an adverse action against a health care provider for exercising the health care provider's right of refusal described in Subsection (2), or for bringing or threatening to bring an action described in Subsection (6), including:
    (a) dismissal;
    (b) demotion;
    (c) suspension;
    (d) discipline;
    (e) discrimination;
    (f) harassment;
    (g) retaliation;

(h) adverse change in status;

(i) termination of, adverse alteration of, or refusal to renew an association or agreement; or

(j) refusal to provide a benefit, privilege, raise, promotion, tenure, or increased status that the health care provider would have otherwise received.

(6) A person who is adversely impacted by conduct prohibited in Subsection (5) may bring a civil action for equitable relief, including reinstatement, and for damages. A person who brings an action under this section must commence the action within three years after the day on which the cause of action arises.

## Va. Code Ann. § 54.1-2957.21

Conscience clause

Nothing in this chapter shall be construed to require any genetic counselor to participate in counseling that conflicts with their deeply-held moral or religious beliefs, nor shall licensing of any genetic counselor be contingent upon participation in such counseling. Refusal to participate in counseling that conflicts with the counselor's deeply-held moral or religious beliefs shall not form the basis for any claim of damages or for any disciplinary or recriminatory action against the genetic counselor, provided the genetic counselor informs the patient that he will not participate in such counseling and offers to direct the patient to the online directory of licensed genetic counselors maintained by the Board.

## Va. Code Ann. § 18.2-75

Conscience clause

Nothing in §§ 18.2-72, 18.2-73 or § 18.2-74 shall require a hospital or other medical facility or physician to admit any patient under the provisions hereof for the purpose of performing an abortion. In addition, any person who shall state in writing an objection to any abortion or all abortions on personal, ethical, moral or religious grounds shall not be required to participate in procedures which will result in such abortion, and the refusal of such person, hospital or other medical facility to participate therein shall not form the basis of any claim for damages on account of such refusal or for any disciplinary or recriminatory action against such person, nor shall any such person be denied employment because of such objection or refusal. The written objection shall remain in effect until such person shall revoke it in writing or terminate his association with the facility with which it is filed.

## Va. Code Ann. § 32.1-134

Family planning information in hospitals providing maternity care

Every hospital providing maternity care shall, prior to releasing each maternity patient, make available to such patient family planning information and a list of family planning clinics located in the Commonwealth, unless medically contraindicated; provided, however, that any such hospital operated under the auspices of a religious institution objecting to distributing lists of family planning clinics on religious grounds shall not be required to distribute them. Such information and lists may include, but need not be limited to, such information and lists as shall be furnished by the Department.

## Wash. Rev. Code Ann. § 9.02.150

Refusing to perform

No person or private medical facility may be required by law or contract in any circumstances to participate in the performance of an abortion if such person or private medical facility objects to so doing. No person may be discriminated against in employment or professional privileges because of the person's participation or refusal to participate in the termination of a pregnancy.

## W. Va. Code Ann. §§ 33-16E-7 (LexisNexis)

Religious employer exemption

(a) Notwithstanding any other provision of this article, a religious employer may exclude or restrict from any health-care insurance plan contract benefits for any prescription contraceptive drugs and devices that are contrary to the religious employer's religious tenets.

(b) Nothing in this article shall be construed to exclude coverage for prescription contraceptive supplies ordered by a health-care provider with prescriptive authority for reasons other than contraceptive purposes, such as decreasing the risk of ovarian cancer or eliminating symptoms of menopause, or for prescription contraception that is necessary to preserve the life or health of an enrollee.

(c) The health insurer for every religious employer that invokes the exemption provided under this section shall provide written notice to prospective enrollees prior to enrollment with the plan, listing the contraceptive health-care services the employer refuses to cover for religious reasons. The health insurer shall make available for purchase at the prevailing group rate a rider that provides prescription contraceptive drugs and devices.

## W. Va. Code Ann. § 16-11-1 (LexisNexis)

Male or female sterilization procedures

It shall be lawful for any physician duly licensed by the State, when so requested by any person other than a minor, or mentally incompetent person, or any other person suffering from any similar disability which would affect their ability to enter into a valid contractual agreement, to perform upon such person, a male or female sterilization procedure: Provided, That a request in writing is made by such person and that at the time of such request a full and reasonable medical explanation is given by the physician to such person as to the meaning and consequences of such operation: Provided, however, That the female sterilization procedure shall only take place in a hospital or facility duly licensed by the state board of health and authorized by said board to perform similar operations, or a hospital or facility administered or owned by the State and duly authorized by said board to perform such operations.

Nothing in this section shall require any hospital or other medical facility to admit any patient for the purpose of undergoing a sterilization operation. No hospital shall be subject to any legal or other penalty or restrictions or shall incur any civil liability because of any refusal to perform, accommodate or assist in any sterilization procedure for any reason. No person shall be required to perform or participate in medical procedures which result in the sterilization of an individual, and the refusal of any person to perform or participate in such medical procedure shall not be a basis for any legal sanction to any person. No hospital administrator or governing board of any hospital shall terminate the employment of, prevent or impair the practice or occupation of, or impose any other penalties or restrictions upon any person who refuses to perform or participate in a sterilization procedure.

## Wis. Stat. §§ 253.09, 441.06(6), 448.03(5)(a)

253.09. Abortion refused; no liability; no discrimination

(1) No hospital shall be required to admit any patient or to allow the use of the hospital facilities for the purpose of performing a sterilization procedure or removing a human embryo or fetus. A physician or any other person who is a member of or associated with the staff of a hospital, or any employee of a hospital in which such a procedure has been authorized, who shall state in writing his or her objection to the performance of or providing assistance to such a procedure on moral or religious grounds shall not be required to participate in such medical procedure, and the refusal of any such person to participate therein shall not form the basis of any claim for damages on account of such refusal or for any disciplinary or recriminatory action against such person.

(2) No hospital or employee of any hospital shall be liable for any civil damages resulting from a refusal to perform sterilization procedures or remove a human embryo or fetus from a person, if such refusal is based on religious or moral precepts.

(3) No hospital, school or employer may discriminate against any person with regard to admission, hiring or firing, tenure, term, condition or privilege of employment, student status or staff status on the ground that the person refuses to recommend, aid or perform procedures for sterilization or the removal of a human embryo or fetus, if the refusal is based on religious or moral precepts.

(4) The receipt of any grant, contract, loan or loan guarantee under any state or federal law does not authorize any court or any public official or other public authority to require:

(a) Such individual to perform or assist in the performance of any sterilization procedure or removal of a human embryo or fetus if the individual's performance or assistance in the performance of such a procedure would be contrary to the individual's religious beliefs or moral convictions; or

(b) Such entity to:

1. Make its facilities available for the performance of any sterilization procedure or removal of a human embryo or fetus if the performance of such a procedure in such facilities is prohibited by the entity on the basis of religious beliefs or moral convictions; or

2. Provide any personnel for the performance or assistance in the performance of any sterilization procedure or assistance if the performance or assistance in the performance of such procedure or the removal of a human embryo or fetus by such personnel would be contrary to the religious beliefs or moral convictions of such personnel.

441.06. Licensure; civil liability exemptions

(6) No person licensed as a registered nurse under this section is liable for any civil damages resulting from his or her refusal to perform sterilization procedures or to remove or aid in the removal of a human embryo or fetus from a person, if the refusal is based on religious or moral precepts.

448.03. License or certificate required to practice; use of titles; civil immunity; practice of Christian Science

(5) Civil liability; certain medical procedures and reports.

(a) No person licensed or certified under this subchapter shall be liable for any civil damages resulting from such person's refusal to perform sterilization procedures or to remove or aid in the removal of a human embryo or fetus from a person if such refusal is based on religious or moral precepts.

**Wis. Stat. § 253.07(3)(b)**

Women's health block grant

(3) Individual rights, medical privilege.

(b) Any employee of the agencies engaged in the administration of the provisions of this section may refuse to accept the duty of offering family planning services to the extent that the duty is contrary to his or her personal beliefs. A refusal may not be grounds for dismissal, suspension, demotion, or any other discrimination in employment. The directors or supervisors of the agencies shall reassign the duties of employees in order to carry out the provisions of this section.

## Wyo. Stat. Ann. § 35-6-105

Private institutions not required to perform abortions; no liability for refusal to perform abortion

No private hospital, clinic, institution or other private facility in this state is required to admit any patient for the purpose of performing an abortion nor to allow the performance of an abortion therein. The private hospital, clinic, institution or any other private facility shall inform any prospective patient seeking an abortion of its policy not to participate in abortion procedures. No cause of action shall arise against any private hospital, clinic, institution or any other private facility for refusing to perform or allow an abortion.

## Wyo. Stat. Ann. §§ 35-6-106, -114

§ 35-6-106. Persons not required to perform abortion; no civil liability for refusal; sanctions or discrimination for refusal forbidden

No person shall, in any way, be required to perform or participate in any abortion or in any act or thing which accomplishes or performs or assists in accomplishing or performing a human miscarriage, euthanasia or any other death of a human fetus or human embryo. The refusal of any person to do so is not a basis for civil liability to any person. No hospital, governing board or any other person, firm, association or group shall terminate the employment of, alter the position of, prevent or impair the practice or occupation of, or impose any other sanction or otherwise discriminate against any person who refuses to perform or participate in any abortion or in any act or thing which accomplishes, performs or assists in accomplishing or performing a human miscarriage, euthanasia or any other death of a human fetus or embryo.

§ 35-6-114. Right to damages for discriminatory employment practices for refusal to perform abortion

Any person or persons injured by any action prohibited in W.S. 35-6-106 may by civil action obtain injunctive relief or damages.

## Wyo. Stat. Ann. §§ 42-5-101(d), -102(a)(ii)

§ 42-5-101. Provision of information and services; refusal to accept

(d) Any person may refuse to accept the duty of offering family planning and birth control services to the extent the duty is contrary to his personal or religious beliefs. The refusal shall not be grounds for:
    (i) Any disciplinary action;
    (ii) Dismissal;
    (iii) Any departmental transfer;
    (iv) Any other discrimination in employment;
    (v) Suspension from employment; or
    (vi) Any loss in pay or other benefits.

§ 42-5-102. Statutory interpretation

(a) Nothing in W.S. 42-5-101 shall be interpreted to:
    (ii) In any way abridge the right to accept or refuse family planning and birth control services;

## 9 Guam Code Ann. § 31.22

Refusal to Participate in Abortion.

(a) No employer or other person shall require a physician, a registered nurse, a licensed vocational nurse, or any person employed or with staff privileges at a hospital, facility or clinic to directly participate in the induction or performance of an abortion, if such employee or other person has filed a written statement with the employer or the hospital, facility or clinic indicating a moral, ethical or religious basis for refusal to participate in the abortion.

No such employee or other person with staff privileges in a hospital, facility, or clinic shall be subject to any penalty or discipline by reason of his refusal to participate in an abortion. No such employee of a hospital, facility or clinic which does not permit the performance of abortions, or person with staff privileges therein, shall be subject to any penalty or discipline on account of such person's participation in the performance of an abortion in other than such hospital, facility or clinic.

No employer shall refuse to employ any person because of such person's refusal for moral, ethical or religious reasons to participate in an abortion, unless such person would be assigned in the normal course of business of any hospital, facility or clinic to work in those parts of the hospital, facility or clinic where abortion patients are cared for. No provision of this Chapter prohibits any hospital, facility or clinic which permits the performance of abortions from inquiring whether the employee or prospective employee would advance a moral, ethical or religious basis for refusal to participate in an abortion before hiring or assigning such a person to that part of a hospital, facility or clinic where abortion patients are cared for.

The refusal of a physician, nurse, or any other person to participate or aid in the induction or performance of an abortion pursuant to this subsection shall not form the basis of any claim for damages.

(b) No hospital, facility, or clinic shall refuse staff privileges to a physician because of such physician's refusal to participate in the performance of an abortion for moral, ethical, or religious reasons.

(c) Nothing in this Chapter shall require a non-profit hospital or other facility or clinic which is operated by a religious corporation or other religious organization or any administrative officer, employee, agent, or member of the governing board thereof, to perform or permit the performance of an abortion in such facility or clinic or to provide abortion services. No such non-profit facility or clinic organized or operated by a religious corporation or other religious organization, nor its administrative officers, employees, agents, or members of its governing board shall be liable, individually or collectively, for failure or refusal to participate in any such act.

The failure or refusal of any such corporation, unincorporated association or individual person to perform or to permit the performance of such medical procedures shall not be the basis for any disciplinary or other recriminatory action against such corporations, unincorporated associations, or individuals. Any such facility or clinic which does not permit the performance of abortions on its premises shall post notice of such proscription in an area of such facility or clinic which is open to patients and prospective admittees.

(d) This section shall not apply to medical emergency situations and spontaneous abortions.

Any violation of this section is a misdemeanor.

## 14 V.I. Code R. § 154 (LexisNexis)

Right to refuse participation in abortion

Except in case of emergency, no physician, nurse or any other hospital personnel shall be required to perform, assist or in any other way associate himself with the performance of an abortion, and no such physician, nurse or other hospital personnel may be held civilly or criminally liable for his refusal to participate in the performance of an abortion.

## 18 U.S.C. § 3597(b), Federal Death Penalty Act of 1994

Use of State facilities

(b) Excuse of an employee on moral or religious grounds.—
No employee of any State department of corrections, the United States
Department of Justice, the Federal Bureau of Prisons, or the United States
Marshals Service, and no employee providing services to that department,
bureau, or service under contract shall be required, as a condition of that
employment or contractual obligation, to be in attendance at or to participate in
any prosecution or execution under this section if such participation is contrary
to the moral or religious convictions of the employee. In this subsection,
"participation in executions" includes personal preparation of the condemned
individual and the apparatus used for execution and supervision of the activities
of other personnel in carrying out such activities.

## Ala. Code § 15-18-82.1(i) (LexisNexis)

Method of execution; election of execution by electrocution; constitutionality

(i) Nothing contained in this section is intended to require any physician, nurse, pharmacist, or employee of the Department of Corrections or any other person to assist in any aspect of an execution which is contrary to the person's moral or ethical beliefs.

## Cal. Penal Code § 3605(c) (Deering)

Witnesses to execution; selection; invitation; attendance

(c) No physician or any other person invited pursuant to this section, whether or not employed by the Department of Corrections, shall be compelled to attend the execution, and any physician's attendance shall be voluntary. A physician's or any other person's refusal to attend the execution shall not be used in any disciplinary action or negative job performance citation.

**Fla. Stat. § 922.105(9) (LexisNexis)**

Execution of death sentence; prohibition against reduction of death sentence as a result of determination that a method of execution is unconstitutional

(9) Nothing contained in this chapter is intended to require any physician, nurse, pharmacist, or employee of the Department of Corrections or any other person to assist in any aspect of an execution which is contrary to the person's moral or ethical beliefs.

## Ga. Code Ann. § 17-10-38(d) (LexisNexis)

Lethal injection; place of execution; physician not required to participate

(d) No state agency, department, or official may, through regulation or otherwise, require or compel a physician to participate in the execution of a death sentence. "To participate in the execution of a death sentence" means any of the following actions: selecting injection sites; starting an intravenous line or lines as a port for a lethal injection device; prescribing, preparing, administering, or supervising injection drugs or their doses or types; inspecting, testing, or maintaining lethal injection devices; or consulting with or supervising lethal injection personnel.

## La. Stat. Ann. §§ 15:569(c), 570(c) (LexisNexis)

§ 569. Place for execution of death sentence; manner of execution

C. No licensed health care professional shall be compelled to administer a lethal injection.

§ 570. Execution; officials and witnesses; minors excluded; time of execution; notice to victim's relatives

C. Any person requested to be present at an execution pursuant to the provisions of this Section, whether or not the person is employed by the Department of Public Safety and Corrections, shall not be required to attend an execution. Refusal to attend an execution shall not be used in any disciplinary action or negative job performance citation against any person who refuses to attend or does not attend an execution.

## 50 U.S.C. § 3806(j), formerly 50 U.S.C. App. § 456(j), Military Selective Service Act

Deferments and exemptions from training and service

(j) Persons conscientiously opposed to war

Nothing contained in this chapter shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term "religious training and belief" does not include essentially political, sociological, or philosophical views, or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this chapter, be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 3803(b) of this title such civilian work contributing to the maintenance of the national health, safety, or interest as the Director may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 3811 of this title, to have knowingly failed or neglected to perform a duty required of him under this chapter. The Director shall be responsible for finding civilian work for persons exempted from training and service under this subsection and for the placement of such persons in appropriate civilian work contributing to the maintenance of the national health, safety, or interest.

*See also* **Department of Defense Instruction 1300.06 (May 5, 2007)**; **Air Force Instruction 36-3204 (July 15, 1994), Procedures for Applying as a Conscientious Objector**; **Army Regulation 600-43 (Aug. 21, 2006), Conscientious Objection**; **Commandant Instruction 1900.8 (Nov. 30, 1990), Conscientious Objectors and the Requirement to Bear Arms**; **Marine Corps Order 1306.16F (June 11, 2013), Conscientious Objectors**; **Milpersman 1900-020 (Aug. 22, 2002), Convenience of the Government Separation Based on Conscientious Objection (Enlisted and Officers)**

**Section 533 of the National Defense Authorization Act for Fiscal Year 2013,
Pub. L. No. 112-239, 126 Stat. 1632,
as amended by
Section 532 of the National Defense Authorization Act for Fiscal Year 2014,
Pub. L. No. 113-66, 127 Stat. 672**

SEC. 533. PROTECTION OF RIGHTS OF CONSCIENCE OF MEMBERS OF THE ARMED FORCES AND CHAPLAINS OF SUCH MEMBERS.

(a) PROTECTION OF RIGHTS OF CONSCIENCE.—

(1) ACCOMMODATION.—The Armed Forces shall accommodate the beliefs of a member of the armed forces reflecting the conscience, moral principles, or religious beliefs of the member and, in so far as practicable, may not use such beliefs as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment.

(2) DISCIPLINARY OR ADMINISTRATIVE ACTION.—Nothing in paragraph (1) precludes disciplinary or administrative action for conduct that is proscribed by chapter 47 of title 10, United States Code (the Uniform Code of Military Justice), including actions and speech that threaten good order and discipline.

(b) PROTECTION OF CHAPLAIN DECISIONS RELATING TO CONSCIENCE, MORAL PRINCIPLES, OR RELIGIOUS BELIEFS.—No member of the Armed Forces may—

(1) require a chaplain to perform any rite, ritual, or ceremony that is contrary to the conscience, moral principles, or religious beliefs of the chaplain; or

(2) discriminate or take any adverse personnel action against a chaplain, including denial of promotion, schooling, training, or assignment, on the basis of the refusal by the chaplain to comply with a requirement prohibited by paragraph (1).

(c) REGULATIONS.—The Secretary of Defense shall issue regulations implementing the protections afforded by this section.

Amendment:

SEC. 532. ENHANCEMENT OF PROTECTION OF RIGHTS OF
CONSCIENCE OF MEMBERS OF THE ARMED FORCES AND CHAPLAINS
OF SUCH MEMBERS.

(a) IN GENERAL.—Subsection (a)(1) of section 533 of the National Defense
Authorization Act for Fiscal Year 2013 (Public Law 112–239; 126 Stat. 1727; 10
U.S.C. prec. 1030 note) is amended—

   (1) by striking "The Armed Forces shall accommodate the beliefs" and
   inserting "Unless it could have an adverse impact on military readiness, unit
   cohesion, and good order and discipline, the Armed Forces shall accommodate
   individual expressions of belief";

   (2) by inserting "sincerely held" before "conscience"; and

   (3) by striking "use such beliefs" and inserting "use such expression of belief".

<< 10 USCA T. 10 subt. A pt. II ch. 53 prec. § 1030 NOTE >>

(b) REGULATIONS.—Not later than 90 days after the date of the enactment of
this Act, the Secretary of Defense shall prescribe the implementing regulations
required by subsection (c) of such section. In prescribing such regulations, the
Secretary shall consult with the official military faith-group representatives who
endorse military chaplains.

## 10 U.S.C. § 774, General Military Law, Religious Apparel

Religious apparel: wearing while in uniform

(a) General rule.--Except as provided under subsection (b), a member of the armed forces may wear an item of religious apparel while wearing the uniform of the member's armed force.

(b) Exceptions.--The Secretary concerned may prohibit the wearing of an item of religious apparel--

> (1) in circumstances with respect to which the Secretary determines that the wearing of the item would interfere with the performance of the member's military duties; or
>
> (2) if the Secretary determines, under regulations under subsection (c), that the item of apparel is not neat and conservative.

(c) Regulations.--The Secretary concerned shall prescribe regulations concerning the wearing of religious apparel by members of the armed forces under the Secretary's jurisdiction while the members are wearing the uniform. Such regulations shall be consistent with subsections (a) and (b).

(d) Religious apparel defined.--In this section, the term "religious apparel" means apparel the wearing of which is part of the observance of the religious faith practiced by the member.

**Department of Defense Directive No. 6000.14 (Sept. 26, 2011)**

ENCLOSURE 2—DOD PATIENT BILL OF RIGHTS AND
RESPONSIBILITIES
PATIENT RIGHTS

(b) Respectful Treatment—Patients have the right to considerate and respectful care, with recognition of personal dignity, psychosocial, spiritual, and cultural values and belief systems.

ENCLOSURE 3—PROCEDURES AND MHS COMPLIANCE GUIDELINES
GUIDELINES

(d) Participation in Treatment Decisions—Each MTF/DTF shall ensure that MHS beneficiaries have the right and opportunity to participate fully in all decisions related to their healthcare, subject to readiness requirements for active duty Service members.

(1) To the extent practical, MTF/DTF and TRICARE Prime network healthcare professionals shall:

(g) Discuss the use of advance directives—both living wills and durable medical powers of attorney—with patients and their designated representatives and abide by all decisions made by their patients or their designated representatives. A provider who disagrees with a patient's wishes as a matter of conscience shall arrange for transfer of care to another qualified provider willing to proceed according to the patient's wishes within the limits of the law and medical ethics. Signed advance directives shall become a part of the patient's medical record.

(e) Respect and Nondiscrimination—Each MTF/DTF shall provide the right to considerate, respectful care from all members of the MHS at all times and under all circumstances in an environment of mutual respect and free from discrimination. Subject to eligibility and other requirements of law and DoD regulations, including Chapter 55 of Reference (e) and Reference (f), the MHS does not discriminate in the delivery of healthcare services or in information and enrollment practices based on race, ethnicity, national origin, religion, sex, age, mental or physical disability, genetic information, sexual orientation, or source of payment.

### 42 U.S.C. § 18113(a), Affordable Care Act, Prohibition Against Discrimination on Assisted Suicide

Prohibition against discrimination on assisted suicide

(a) In general

The Federal Government, and any State or local government or health care provider that receives Federal financial assistance under this Act (or under an amendment made by this Act) or any health plan created under this Act (or under an amendment made by this Act), may not subject an individual or institutional health care entity to discrimination on the basis that the entity does not provide any health care item or service furnished for the purpose of causing, or for the purpose of assisting in causing, the death of any individual, such as by assisted suicide, euthanasia, or mercy killing.

**Cal. Health & Safety Code §§ 443.14(b), (e), 443.15 (Deering)**

443.14. Persons present during self-administration of aid-in-dying drug; civil or criminal liability; participating health care provider shall not be subject to discipline or liability; voluntary participation

(b) A health care provider or professional organization or association shall not subject an individual to censure, discipline, suspension, loss of license, loss of privileges, loss of membership, or other penalty for participating in good faith compliance with this part or for refusing to participate in accordance with subdivision (e).

(e) (1) Participation in activities authorized pursuant to this part shall be voluntary. Notwithstanding Sections 442 to 442.7, inclusive, a person or entity that elects, for reasons of conscience, morality, or ethics, not to engage in activities authorized pursuant to this part is not required to take any action in support of an individual′s decision under this part.

(2) Notwithstanding any other law, a health care provider is not subject to civil, criminal, administrative, disciplinary, employment, credentialing, professional discipline, contractual liability, or medical staff action, sanction, or penalty or other liability for refusing to participate in activities authorized under this part, including, but not limited to, refusing to inform a patient regarding his or her rights under this part, and not referring an individual to a physician who participates in activities authorized under this part.

(3) If a health care provider is unable or unwilling to carry out a qualified individual′s request under this part and the qualified individual transfers care to a new health care provider, the individual may request a copy of his or her medical records pursuant to law.

443.15. Health care providers may prohibit employees from participating in aid-in-dying activities; notification; actions following violation; reports of unprofessional conduct

(a) Subject to subdivision (b), notwithstanding any other law, a health care provider may prohibit its employees, independent contractors, or other persons or entities, including other health care providers, from participating in activities under this

part while on premises owned or under the management or direct control of that prohibiting health care provider or while acting within the course and scope of any employment by, or contract with, the prohibiting health care provider.

(b) A health care provider that elects to prohibit its employees, independent contractors, or other persons or entities, including health care providers, from participating in activities under this part, as described in subdivision (a), shall first give notice of the policy prohibiting participation under this part to the individual or entity. A health care provider that fails to provide notice to an individual or entity in compliance with this subdivision shall not be entitled to enforce such a policy against that individual or entity.

(c) Subject to compliance with subdivision (b), the prohibiting health care provider may take action, including, but not limited to, the following, as applicable, against any individual or entity that violates this policy:

(1) Loss of privileges, loss of membership, or other action authorized by the bylaws or rules and regulations of the medical staff.

(2) Suspension, loss of employment, or other action authorized by the policies and practices of the prohibiting health care provider.

(3) Termination of any lease or other contract between the prohibiting health care provider and the individual or entity that violates the policy.

(4) Imposition of any other nonmonetary remedy provided for in any lease or contract between the prohibiting health care provider and the individual or entity in violation of the policy.

(d) Nothing in this section shall be construed to prevent, or to allow a prohibiting health care provider to prohibit, any other health care provider, employee, independent contractor, or other person or entity from any of the following:

(1) Participating, or entering into an agreement to participate, in activities under this part, while on premises that are not owned or under the management or direct control of the prohibiting provider or while acting outside the course and scope of the participant's duties as an employee of, or an independent contractor for, the prohibiting health care provider.

(2) Participating, or entering into an agreement to participate, in activities under this part as an attending physician or consulting physician while on premises that are not owned or under the management or direct control of the prohibiting provider.

(e) In taking actions pursuant to subdivision (c), a health care provider shall comply with all procedures required by law, its own policies or procedures, and any contract with the individual or entity in violation of the policy, as applicable.

(f) For purposes of this section:

(1) "Notice" means a separate statement in writing advising of the prohibiting health care provider policy with respect to participating in activities under this part.

(2) "Participating, or entering into an agreement to participate, in activities under this part" means doing or entering into an agreement to do any one or more of the following:

(A) Performing the duties of an attending physician as specified in Section 443.5.

(B) Performing the duties of a consulting physician as specified in Section 443.6.

(C) Performing the duties of a mental health specialist, in the circumstance that a referral to one is made.

(D) Delivering the prescription for, dispensing, or delivering the dispensed aid-in-dying drug pursuant to paragraph (2) of subdivision (b) of, and subdivision (c) of, Section 443.5.

(E) Being present when the qualified individual takes the aid-in-dying drug prescribed pursuant to this part.

(3) "Participating, or entering into an agreement to participate, in activities under this part" does not include doing, or entering into an agreement to do, any of the following:

(A) Diagnosing whether a patient has a terminal disease, informing the patient of the medical prognosis, or determining whether a patient has the capacity to make decisions.

(B) Providing information to a patient about this part.

(C) Providing a patient, upon the patient's request, with a referral to another health care provider for the purposes of participating in the activities authorized by this part.

(g) Any action taken by a prohibiting provider pursuant to this section shall not be reportable under Sections 800 to 809.9, inclusive, of the Business and Professions Code. The fact that a health care provider participates in activities under this part shall not be the sole basis for a complaint or report by another health care provider of unprofessional or dishonorable conduct under Sections 800 to 809.9, inclusive, of the Business and Professions Code.

(h) Nothing in this part shall prevent a health care provider from providing an individual with health care services that do not constitute participation in this part.

**La. Stat. Ann. §§ 40:1299.35.9, 40:1300.301**

40:1299.35.9. Conscience in health care protection; definitions

A. (1) Any person has the right not to participate in, and no person shall be required to participate in any health care service that violates his conscience to the extent that patient access to health care is not compromised. No person shall be held civilly or criminally liable, discriminated against, dismissed, demoted, or in any way prejudiced or damaged for declining to participate in any health care service that violates his conscience.

(2) This Section shall not prevent an inquiry by an employer or patient regarding whether a person declines to participate in any health care service that violates its conscience. When a patient requests health care services, a person shall identify, in writing, as soon as practicable, his declination to provide a service in accordance with the provisions of this Section. All persons who have a sincerely held religious belief or moral conviction and who seek employment at a health care facility shall notify the prospective employer of the existence of any sincerely held religious belief or moral conviction. Any health care facility that employs a person with a sincerely held religious belief or moral conviction shall ensure that the health care facility has sufficient staff to provide patient care in the event an employee declines to participate in any health care service that violates his conscience.

(3) The provisions of this Section shall not be construed to relieve any health care provider from providing emergency care as required by state or federal law.

(4) A person shall notify his employer in writing as soon as practicable of any health care service that violates his conscience. A person shall notify any patient before such person provides any consultation or service to the patient of the existence of a health care service that he will decline to provide because the health care service violates his conscience.

B. For purposes of this Section:

(1) "Conscience" means sincerely held religious belief or moral conviction.

(2) "Health care service" is limited to abortion, dispensation of abortifacient drugs, human embryonic stem cell research, human embryo cloning, euthanasia, or physician-assisted suicide.

C. A suit alleging a violation of this Section shall be brought in a district court in accordance with R.S. 23:303.

40:1300.301. Authority to accept and use intergovernmental transfers from local governing bodies

A. The Department of Health and Hospitals may accept intergovernmental transfers from local governing bodies, including but not limited to a parish, for the purpose of enhancing the delivery of health care services to the uninsured and Medicaid patients. Any such transfer shall be in accordance with federal law and subject to approval by the Centers for Medicare and Medicaid Services.

B. It is the intent of the legislation that any transfer authorized herein shall be primarily utilized for the enhancement of health care within the jurisdiction of the transferring entity. However, any such transfer shall be under the administrative control of the Department of Health and Hospitals.

C. The department may establish a methodology utilizing a pool, or pools, to facilitate distribution of any transfers received in addition to any federal financial participation earned through the use of such transfers, as authorized herein. The methodology shall be created with the intent to maximize, to the fullest extent possible, the return to the providers located within the jurisdiction of the local governing body from which such transfer is derived. The department may create criteria for qualification to participate in any pool methodology and establish criteria and priorities for reimbursement within the respective pool. Any such criteria may include health care providers which reside outside the jurisdiction of the transferring body.

D. The department may submit waivers or state plan amendments to the Centers for Medicare and Medicaid Services in order to secure federal financial participation in relation to any such payments or reimbursement. Payments shall be made only in accordance with an approved waiver or state plan amendment.

E. The department and the transferring local governing body may enter into an agreement, in accordance with state and federal law, concerning the use of transferred funds in a way that is consistent with the legislative intent set forth herein.

## Or. Rev. Stat. § 127.885

Immunities in general

Except as provided in ORS 127.890:

(1) No person shall be subject to civil or criminal liability or professional disciplinary action for participating in good faith compliance with ORS 127.800 to 127.897. This includes being present when a qualified patient takes the prescribed medication to end his or her life in a humane and dignified manner.

(2) No professional organization or association, or health care provider, may subject a person to censure, discipline, suspension, loss of license, loss of privileges, loss of membership or other penalty for participating or refusing to participate in good faith compliance with ORS 127.800 to 127.897.

(3) No request by a patient for or provision by an attending physician of medication in good faith compliance with the provisions of ORS 127.800 to 127.897 shall constitute neglect for any purpose of law or provide the sole basis for the appointment of a guardian or conservator.

(4) No health care provider shall be under any duty, whether by contract, by statute or by any other legal requirement to participate in the provision to a qualified patient of medication to end his or her life in a humane and dignified manner. If a health care provider is unable or unwilling to carry out a patient's request under ORS 127.800 to 127.897, and the patient transfers his or her care to a new health care provider, the prior health care provider shall transfer, upon request, a copy of the patient's relevant medical records to the new health care provider.

(5)(a) Notwithstanding any other provision of law, a health care provider may prohibit another health care provider from participating in ORS 127.800 to 127.897 on the premises of the prohibiting provider if the prohibiting provider has notified the health care provider of the prohibiting provider's policy regarding participating in ORS 127.800 to 127.897. Nothing in this paragraph prevents a health care provider from providing health care services to a patient that do not constitute participation in ORS 127.800 to 127.897.

(b) Notwithstanding the provisions of subsections (1) to (4) of this section, a health care provider may subject another health care provider to the sanctions stated in this paragraph if the sanctioning health care provider has notified the sanctioned provider prior to participation in ORS 127.800 to 127.897 that it prohibits participation in ORS 127.800 to 127.897:

(A) Loss of privileges, loss of membership or other sanction provided pursuant to the medical staff bylaws, policies and procedures of the sanctioning health care provider if the sanctioned provider is a member of the sanctioning provider's medical staff and participates in ORS 127.800 to 127.897 while on the health care facility premises, as defined in ORS 442.015, of the sanctioning health care provider, but not including the private medical office of a physician or other provider;

(B) Termination of lease or other property contract or other nonmonetary remedies provided by lease contract, not including loss or restriction of medical staff privileges or exclusion from a provider panel, if the sanctioned provider participates in ORS 127.800 to 127.897 while on the premises of the sanctioning health care provider or on property that is owned by or under the direct control of the sanctioning health care provider; or

(C) Termination of contract or other nonmonetary remedies provided by contract if the sanctioned provider participates in ORS 127.800 to 127.897 while acting in the course and scope of the sanctioned provider's capacity as an employee or independent contractor of the sanctioning health care provider. Nothing in this subparagraph shall be construed to prevent:

(i) A health care provider from participating in ORS 127.800 to 127.897 while acting outside the course and scope of the provider's capacity as an employee or independent contractor; or

(ii) A patient from contracting with his or her attending physician and consulting physician to act outside the course and scope of the provider's capacity as an employee or independent contractor of the sanctioning health care provider.

(c) A health care provider that imposes sanctions pursuant to paragraph (b) of this subsection must follow all due process and other procedures the sanctioning health care provider may have that are related to the imposition of sanctions on another health care provider.

(d) For purposes of this subsection:

(A) "Notify" means a separate statement in writing to the health care provider specifically informing the health care provider prior to the provider's participation in ORS 127.800 to 127.897 of the sanctioning health care provider's policy about participation in activities covered by ORS 127.800 to 127.897.

(B) "Participate in ORS 127.800 to 127.897" means to perform the duties of an attending physician pursuant to ORS 127.815, the consulting physician function pursuant to ORS 127.820 or the counseling function pursuant to ORS 127.825. "Participate in ORS 127.800 to 127.897" does not include:

(i) Making an initial determination that a patient has a terminal disease and informing the patient of the medical prognosis;

(ii) Providing information about the Oregon Death with Dignity Act to a patient upon the request of the patient;

(iii) Providing a patient, upon the request of the patient, with a referral to another physician; or

(iv) A patient contracting with his or her attending physician and consulting physician to act outside of the course and scope of the provider's capacity as an employee or independent contractor of the sanctioning health care provider.

(6) Suspension or termination of staff membership or privileges under subsection (5) of this section is not reportable under ORS 441.820. Action taken pursuant to ORS 127.810, 127.815, 127.820 or 127.825 shall not be the sole basis for a report of unprofessional or dishonorable conduct under ORS 677.415 (3), (4), (5) or (6).

(7) No provision of ORS 127.800 to 127.897 shall be construed to allow a lower standard of care for patients in the community where the patient is treated or a similar community.

## Or. Rev. Stat. § 127.625

No duty of provider to participate in withdrawal or withholding of certain health care; duty of provider who is unwilling to participate

(1) No health care provider shall be under any duty, whether by contract, by statute or by any other legal requirement to participate in the withdrawal or withholding of life-sustaining procedures or of artificially administered nutrition or hydration.

(2) If a health care provider is unable or unwilling to carry out a health care instruction or the decisions of the health care representative, the following provisions apply:

    (a) The health care provider shall promptly notify the health care representative, if there is a health care representative;

    (b) If the authority or decision of the health care representative is in dispute, the health care representative or provider may seek the guidance of the court in the manner provided in ORS 127.550;

    (c) If the representative's authority or decision is not in dispute, the representative shall make a reasonable effort to transfer the principal to the care of another physician or health care provider; and

    (d) If there is no health care representative for an incapable patient, and the health care decisions are not in dispute, the health care provider shall, without abandoning the patient, either discharge the patient or make a reasonable effort to locate a different health care provider and authorize the transfer of the patient to that provider.

## S.D. Codified Laws § 36-11-70

Refusal to dispense medication

No pharmacist may be required to dispense medication if there is reason to believe that the medication would be used to:

    (1) Cause an abortion; or

    (2) Destroy an unborn child as defined in subdivision 22-1-2(50A); or

    (3) Cause the death of any person by means of an assisted suicide, euthanasia, or mercy killing.

No such refusal to dispense medication pursuant to this section may be the basis for any claim for damages against the pharmacist or the pharmacy of the pharmacist or the basis for any disciplinary, recriminatory, or discriminatory action against the pharmacist.

## Vt. Stat. Ann. tit. 18, §§ 5285-5286

§ 5285. Limitations on actions

(a) A physician, nurse, pharmacist, or other person shall not be under any duty, by law or contract, to participate in the provision of a lethal dose of medication to a patient.

(b) A health care facility or health care provider shall not subject a physician, nurse, pharmacist, or other person to discipline, suspension, loss of license, loss of privileges, or other penalty for actions taken in good faith reliance on the provisions of this chapter or refusals to act under this chapter.

(c) Except as otherwise provided in this section and sections 5283, 5289, and 5290 of this title, nothing in this chapter shall be construed to limit liability for civil damages resulting from negligent conduct or intentional misconduct by any person.

§ 5286. Health care facility exception

A health care facility may prohibit a physician from writing a prescription for a dose of medication intended to be lethal for a patient who is a resident in its facility and intends to use the medication on the facility's premises, provided the facility has notified the physician in writing of its policy with regard to the prescriptions. Notwithstanding subsection 5285(b) of this title, any physician who violates a policy established by a health care facility under this section may be subject to sanctions otherwise allowable under law or contract.

## Wash. Rev. Code Ann. § 70.245.190(1)(b), (2)

Immunities—Basis for prohibiting health care provider from participation—
Notification—Permissible sanctions

(1) Except as provided in RCW 70.245.200 and subsection (2) of this section:

   (b) A professional organization or association, or health care provider, may not
   subject a person to censure, discipline, suspension, loss of license, loss of
   privileges, loss of membership, or other penalty for participating or refusing to
   participate in good faith compliance with this chapter;

(2)(a) A health care provider may prohibit another health care provider from
   participating under chapter 1, Laws of 2009 on the premises of the prohibiting
   provider if the prohibiting provider has given notice to all health care providers
   with privileges to practice on the premises and to the general public of the
   prohibiting provider's policy regarding participating under chapter 1, Laws of
   2009. This subsection does not prevent a health care provider from providing
   health care services to a patient that do not constitute participation under
   chapter 1, Laws of 2009.

   (b) A health care provider may subject another health care provider to the
   sanctions stated in this subsection if the sanctioning health care provider has
   notified the sanctioned provider before participation in chapter 1, Laws of 2009
   that it prohibits participation in chapter 1, Laws of 2009:

      (i) Loss of privileges, loss of membership, or other sanctions provided under
      the medical staff bylaws, policies, and procedures of the sanctioning health
      care provider if the sanctioned provider is a member of the sanctioning
      provider's medical staff and participates in chapter 1, Laws of 2009 while on
      the health care facility premises of the sanctioning health care provider, but
      not including the private medical office of a physician or other provider;

      (ii) Termination of a lease or other property contract or other nonmonetary
      remedies provided by a lease contract, not including loss or restriction of
      medical staff privileges or exclusion from a provider panel, if the sanctioned
      provider participates in chapter 1, Laws of 2009 while on the premises of the

sanctioning health care provider or on property that is owned by or under the direct control of the sanctioning health care provider; or

(iii) Termination of a contract or other nonmonetary remedies provided by contract if the sanctioned provider participates in chapter 1, Laws of 2009 while acting in the course and scope of the sanctioned provider's capacity as an employee or independent contractor of the sanctioning health care provider. Nothing in this subsection (2)(b)(iii) prevents:

(A) A health care provider from participating in chapter 1, Laws of 2009 while acting outside the course and scope of the provider's capacity as an employee or independent contractor; or

(B) A patient from contracting with his or her attending physician and consulting physician to act outside the course and scope of the provider's capacity as an employee or independent contractor of the sanctioning health care provider.

(c) A health care provider that imposes sanctions under (b) of this subsection shall follow all due process and other procedures the sanctioning health care provider may have that are related to the imposition of sanctions on another health care provider.

(d) For the purposes of this subsection:

(i) "Notify" means a separate statement in writing to the health care provider specifically informing the health care provider before the provider's participation in chapter 1, Laws of 2009 of the sanctioning health care provider's policy about participation in activities covered by this chapter.

(ii) "Participate in chapter 1, Laws of 2009" means to perform the duties of an attending physician under RCW 70.245.040, the consulting physician function under RCW 70.245.050, or the counseling function under RCW 70.245.060. "Participate in chapter 1, Laws of 2009" does not include:

(A) Making an initial determination that a patient has a terminal disease and informing the patient of the medical prognosis;

(B) Providing information about the Washington death with dignity act to a patient upon the request of the patient;

(C) Providing a patient, upon the request of the patient, with a referral to another physician; or

(D) A patient contracting with his or her attending physician and consulting physician to act outside of the course and scope of the provider's capacity as an employee or independent contractor of the sanctioning health care provider.

## 42 U.S.C. § 1395w-22(j)(3)(B), Medicare + Choice Program

Benefits and beneficiary protections
(j) Rules regarding provider participation
   (3) Prohibiting interference with provider advice to enrollees
      (B) Conscience protection
         Subparagraph (A) shall not be construed as requiring a Medicare+Choice plan to provide, reimburse for, or provide coverage of a counseling or referral service if the Medicare+Choice organization offering the plan--
            (i) objects to the provision of such service on moral or religious grounds; and
            (ii) in the manner and through the written instrumentalities such Medicare+Choice organization deems appropriate, makes available information on its policies regarding such service to prospective enrollees before or during enrollment and to enrollees within 90 days after the date that the organization or plan adopts a change in policy regarding such a counseling or referral service.

## 42 U.S.C. § 1396u-2(b)(3)(B), Medical Assistance Programs

Provisions relating to managed care
(b) Beneficiary protections
  (3) Protection of enrollee-provider communications
    (B) Construction
      Subparagraph (A) shall not be construed as requiring a medicaid managed care organization to provide, reimburse for, or provide coverage of, a counseling or referral service if the organization--
        (i) objects to the provision of such service on moral or religious grounds; and
        (ii) in the manner and through the written instrumentalities such organization deems appropriate, makes available information on its policies regarding such service to prospective enrollees before or during enrollment and to enrollees within 90 days after the date that the organization adopts a change in policy regarding such a counseling or referral service.
          Nothing in this subparagraph shall be construed to affect disclosure requirements under State law or under the Employee Retirement Income Security Act of 1974 [29 U.S.C.A. § 1001 et seq.].

## 42 C.F.R. § 438.102(a)(2), Medical Assistance Programs

Provider-enrollee communications

(a) General rules

(2) Subject to the information requirements of paragraph (b) of this section, an MCO, PIHP, or PAHP that would otherwise be required to provide, reimburse for, or provide coverage of, a counseling or referral service because of the requirement in paragraph (a)(1) of this section is not required to do so if the MCO, PIHP, or PAHP objects to the service on moral or religious grounds.

### 22 U.S.C. § 7631(d), United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003

Assistance to combat HIV/AIDS

(d) Eligibility for assistance

An organization, including a faith-based organization, that is otherwise eligible to receive assistance under section 104A of the Foreign Assistance Act of 1961, under this chapter, or under any amendment made by this chapter or by the Tom Lantos and Henry J. Hyde United States Global Leadership Against HIV/AIDS, Tuberculosis, and Malaria Reauthorization Act of 2008, for HIV/AIDS prevention, treatment, or care--

(1) shall not be required, as a condition of receiving such assistance --
(A) to endorse or utilize a multisectoral or comprehensive approach to combating HIV/AIDS; or
(B) to endorse, utilize, make a referral to, become integrated with, or otherwise participate in any program or activity to which the organization has a religious or moral objection; and

(2) shall not be discriminated against in the solicitation or issuance of grants, contracts, or cooperative agreements under such provisions of law for refusing to meet any requirement described in paragraph (1).

## 48 C.F.R. § 1609.7001(c)(7), Federal Employees Health Benefits Acquisition Regulation

Minimum standards for health benefits carriers

(c) The following types of activities are examples of poor business practices which adversely affect the health benefits carrier's responsibility under its contract. A pattern of poor conduct or evidence of misconduct in these areas is cause for OPM to withdraw approval of the carrier:

(7) Entering into contracts or employment agreements with providers, provider groups, or health care workers that include provisions or financial incentives that directly or indirectly create an inducement to limit or restrict communication about medically necessary services to any individual covered under the FEHB Program. Financial incentives are defined as bonuses, withholds, commissions, profit sharing or other similar adjustments to basic compensation (e.g., service fee, capitation, salary) which have the effect of limiting or reducing communication about appropriate medically necessary services. Providers, health care workers, or health plan sponsoring organizations are not required to discuss treatment options that they would not ordinarily discuss in their customary course of practice because such options are inconsistent with their professional judgment or ethical, moral or religious beliefs.

## Ala. Code § 16-30-3

Exceptions to chapter.

The provisions of this chapter shall not apply if:

    (1) In the absence of an epidemic or immediate threat thereof, the parent or guardian of the child shall object thereto in writing on grounds that such immunization or testing conflicts with his religious tenets and practices; or

    (2) Certification by a competent medical authority providing individual exemption from the required immunization or testing is presented the admissions officer of the school.

## 4 Alaska Admin. Code § 06.055(b)(3)

Immunizations required

(b) This section does not apply if the child

    (3) has an affidavit signed by his parent or guardian affirming that immunization conflicts with the tenets and practices of the church or religious denomination of which the applicant is a member.

## Alaska Stat. § 13.52.060(e)

Obligations of health care providers, institutions, and facilities
(e) A health care provider may decline to comply with an individual instruction or a health care decision for reasons of conscience, except for a do not resuscitate order. A health care institution or health care facility may decline to comply with an individual instruction or health care decision if the instruction or decision is contrary to a policy of the institution or facility that is expressly based on reasons of conscience and if the policy was timely communicated to the patient or to a person then authorized to make health care decisions for the patient.

## Ariz. Rev. Stat. § 36-3205(C)(1) (LexisNexis)

C. A health care provider is not subject to criminal or civil liability or professional discipline for any of the following:

1. Failing to comply with a decision or a direction that violates the provider's conscience if the provider promptly makes known the provider's unwillingness and promptly transfers the responsibility for the patient's care to another provider who is willing to act in accordance with the agent's direction.

**Ark. Code Ann. § 6-18-702(d)(4)(A)-(C)(i)**

Immunization.

(d)(4)(A) This section shall not apply if the parents or legal guardian of that child object thereto on the grounds that immunization conflicts with the religious or philosophical beliefs of the parent or guardian.

(B) The parents or legal guardian of the child shall complete an annual application process developed in the rules and regulations of the Department of Health for medical, religious, and philosophical exemptions.

(C) The rules and regulations developed by the Department of Health for medical, religious, and philosophical exemptions shall include, but not be limited to:

(i) A notarized statement requesting a religious, philosophical, or medical exemption from the Department of Health by the parents or legal guardian of the child regarding the objection;

## Ark. Code Ann. § 6-60-504(b)(2)(A)-(B)(i)

Physical disabilities—Religious objections

(b)(2)(A) The individual shall complete an annual application process developed in the rules and regulations of the department for medical, religious, and philosophical exemptions.

(B) The rules and regulations developed by the department for medical, religious, and philosophical exemptions shall include, but not be limited to:

(i) A notarized statement requesting a religious, philosophical, or medical exemption from the department by the individual regarding the objection;

**Ark. Code Ann. § 20-78-206(a)(2)(B)(i)-(iii)(a)**

Division of Child Care and Early Childhood Education – Rules and regulations
(a)(2)(B)(i) The provisions of subdivision (a)(2)(A) of this section pertaining to immunizations shall not apply if the parents or legal guardian of that child object thereto on the grounds that immunization conflicts with the religious or philosophical beliefs of the parent or guardian.

(ii) The parents or legal guardian of the child shall complete an annual application process developed in the rules and regulations of the Department of Health for medical, religious, and philosophical exemptions.

(iii) The rules and regulations developed by the Department of Health for medical, religious, and philosophical exemptions shall include, but not be limited to:

(a) A notarized statement requesting a religious, philosophical, or medical exemption from the Department of Health by the parents or legal guardian of the child regarding the objection;

## 17 Cal. Code of Regulations § 6051(b)

A pupil with a permanent medical exemption or a personal beliefs exemption to immunization shall be admitted unconditionally. A pupil with an exemption which is not based on pre-existing immunity to disease may be subject to exclusion pursuant to Section 6060.

(b) A personal beliefs exemption shall be granted upon the filing with the governing authority documentation in accordance with the requirements of Health and Safety Code Section 120365 on form CDPH 8262. The fact of the personal beliefs exemption shall be recorded in accordance with Section 6070. The fact of a personal beliefs exemption for the pertussis booster immunization requirement in Section 120335(d), Health and Safety Code, shall be recorded on the Tdap (Pertussis Booster) Requirement sticker, PM 286 S (01/11).

## Cal. Prob. Code §§ 4734, 4736 (Deering)

4734. Declining to comply with health care instruction or decision due to reasons of conscience

(a) A health care provider may decline to comply with an individual health care instruction or health care decision for reasons of conscience.

(b) A health care institution may decline to comply with an individual health care instruction or health care decision if the instruction or decision is contrary to a policy of the institution that is expressly based on reasons of conscience and if the policy was timely communicated to the patient or to a person then authorized to make health care decisions for the patient.

4736. Duties upon declining to comply with health care instruction or decision
A health care provider or health care institution that declines to comply with an individual health care instruction or health care decision shall do all of the following:

    (a) Promptly so inform the patient, if possible, and any person then authorized to make health care decisions for the patient.

    (b) Unless the patient or person then authorized to make health care decisions for the patient refuses assistance, immediately make all reasonable efforts to assist in the transfer of the patient to another health care provider or institution that is willing to comply with the instruction or decision.

    (c) Provide continuing care to the patient until a transfer can be accomplished or until it appears that a transfer cannot be accomplished. In all cases, appropriate pain relief and other palliative care shall be continued.

## Cal. Bus. & Prof. Code § 733(b)(3) (Deering)

Obstruction in obtaining prescription drug or device; duty to dispense prescribed or ordered drugs and devices

(b) Notwithstanding any other law, a licentiate shall dispense drugs and devices, as described in subdivision (a) of Section 4024, pursuant to a lawful order or prescription unless one of the following circumstances exists:

(3) The licentiate refuses on ethical, moral, or religious grounds to dispense a drug or device pursuant to an order or prescription. A licentiate may decline to dispense a prescription drug or device on this basis only if the licentiate has previously notified his or her employer, in writing, of the drug or class of drugs to which he or she objects, and the licentiate's employer can, without creating undue hardship, provide a reasonable accommodation of the licentiate's objection. The licentiate's employer shall establish protocols that ensure that the patient has timely access to the prescribed drug or device despite the licentiate's refusal to dispense the prescription or order. For purposes of this section, "reasonable accommodation" and "undue hardship" shall have the same meaning as applied to those terms pursuant to subdivision (l) of Section 12940 of the Government Code.

## Colo. Rev. Stat. § 25-4-903(2)(b)

(2) It is the responsibility of the parent or legal guardian to have his or her child immunized unless the child is exempted pursuant to this section. A student shall be exempted from receiving the required immunizations in the following manner:

    (b) By submitting to the student's school a statement of exemption signed by one parent or guardian or the emancipated student or student eighteen years of age or older that the parent, guardian, or student is an adherent to a religious belief whose teachings are opposed to immunizations or that the parent or guardian or the emancipated student or student eighteen years of age or older has a personal belief that is opposed to immunizations.

**Conn. Gen. Stat. § 10-204a(a)(3)**

Required immunizations

Each local or regional board of education, or similar body governing a nonpublic school or schools, shall require each child to be protected by adequate immunization against diphtheria, pertussis, tetanus, poliomyelitis, measles, mumps, rubella, hemophilus influenzae type B and any other vaccine required by the schedule for active immunization adopted pursuant to section 19a-7f before being permitted to enroll in any program operated by a public or nonpublic school under its jurisdiction. Before being permitted to enter seventh grade, a child shall receive a second immunization against measles. Any such child who

    (3) presents a statement from the parents or guardian of such child that such immunization would be contrary to the religious beliefs of such child

**Conn. Gen. Stat. § 19a-79(a)(1)**

Regulations.  Exemptions.

The Commissioner of Public Health shall adopt regulations, in accordance with the provisions of chapter 54, to carry out the purposes of sections 19a-77 to 19a-80, inclusive, and 19a-82 to 19a-87, inclusive, and to assure that child day care centers and group day care homes shall meet the health, educational and social needs of children utilizing such child day care centers and group day care homes. Such regulations shall

(1) specify that before being permitted to attend any child day care center or group day care home, each child shall be protected as age-appropriate by adequate immunization against diphtheria, pertussis, tetanus, poliomyelitis, measles, mumps, rubella, hemophilus influenzae type B and any other vaccine required by the schedule of active immunization adopted pursuant to section 19a-7f, including appropriate exemptions for children for whom such immunization is medically contraindicated and for children whose parents object to such immunization on religious grounds,

## Regs. Conn. State Agencies § 10-204a-2a(m)

Adequate immunization

(m) Religious exemption. Any individual whose parents or guardian presents a statement that such immunization is contrary to the religious beliefs of such child is exempted from immunization requirements.

**Regs. Conn. State Agencies § 19a-79-6a(e)(3)(E)**

Health and safety

(e) Immunization requirements

(3) For each enrolled child, the operator shall obtain from the child's parent(s) and keep on file at the child day care center or group day care home one or more of the following types of documentation for each of the diseases listed in subdivision (1) of this subsection:

(E) a written statement that immunization is contrary to the religious beliefs and practices of the child or the parent(s) of such child. Such statement shall be signed by the child's parent(s)

## Conn. Gen. Stat. § 10A-155(a)(2)

Requirement for immunization against measles and rubella for college students. Each institution of higher education shall require each full-time or matriculating student born after December 31, 1956, to provide proof of adequate immunization against measles, rubella and on and after August 1, 2010, to provide proof of adequate immunization against mumps and varicella as recommended by the national Advisory Committee for Immunization Practices before permitting such student to enroll in such institution. Any such student who

(2) provides a statement that such immunization would be contrary to his religious beliefs, … shall be exempt from the appropriate provisions of this section.

## Conn. Gen. Stat. § 10a-155b(a)(2)

Meningitis vaccination for residents of on-campus housing.  Meningitis information and records.

(a) For the 2002-2003 school year, and each school year thereafter, each public or private college or university in this state shall require that each student who resides in on-campus housing be vaccinated against meningitis as a condition of such residence. The provisions of this subsection shall not apply to any such student who

(2) presents a statement that such vaccination would be contrary to the religious beliefs of such student.

## Del. Code Ann. tit. 14 § 131(a)(6)

Public school enrollees' immunization program; exemptions

(a) The Department shall from time to time, with advice from the Division of Public Health, adopt and promulgate rules and regulations to establish an immunization program to protect pupils enrolled in public schools from certain diseases. Such rules and regulations shall include at least the following:

(6) Provision for exemption from the immunization program for an enrollee whose parents or legal guardian, because of individual religious beliefs, reject the concept of immunization. Such a request for exemption shall be supported by the affidavit herein set forth

## Del. Admin. Code tit. 14 § 804

5.0 Exemption from Immunization
5.1 Exemption from this requirement may be granted in accordance with 14 Del.C.
§131 which permits approved medical and notarized religious exemptions.

## D.C. Code § 38-506(1)

No certification of immunization shall be required for the admission to a school of a student:
For whom the responsible person objects in good faith and in writing, to the chief official of the school, that immunization would violate his or her religious beliefs

**45 D.C. Reg. 7353, 7416 (October 9, 1998)**

Conscientious Objection to Medical Procedures

(1) Department heads shall not discipline or in any way penalize an employee for refusing to participate in certain aspects of direct patient care that are in conflict with their religious, or ethical beliefs. If a patient's safety is in jeopardy, the employee must provide for patient safety and avoid abandonment. Withdrawing from care/treatment of the patient is only acceptable when an alternative source of care has been made available.

(2) Procedures which are applicable are as follows:

(a) Pre-employment: If an applicant or new employee indicates during an interview that he/she has a religious or ethical belief that conflicts with a particular procedure, the department head must consult with Human Resources concerning whether a reasonable accommodation is warranted;

(b) Staff requests: If treatment modalities occur in an area or unit that may be sensitive to cultural or religious beliefs, the manager shall discuss such treatments with the staff and ascertain if staffing issues exist;

(c) An employee must notify his/her immediate supervisor in writing of any procedures which conflict with his/her religious or ethical beliefs. This request shall be received prior to any assignment. The suggested format is:

I hereby notify PBC that I am unwilling to take part in _____ procedure since it is contrary to my conscience or religious beliefs. This is my official notification. (Signature and date.)

(d) The department manager shall send a copy of the request to Human Resources, which shall determine whether a reasonable accommodation is warranted;

(e) The department manager shall be ultimately responsible to assess and ensure appropriate staffing so that patient care needs are met;

(f) The department manager shall notify Human Resources of staffing issues related to departmental changes; and

(g) Staff shall be afforded every opportunity to bid on available positions for which they are credentialed/qualified.

## Fla. Stat. § 1003.22(5)(a)

School-entry health examinations; immunization against communicable diseases; exemptions; duties of Department of Health

(5) The provisions of this section shall not apply if:

    (a) The parent of the child objects in writing that the administration of immunizing agents conflicts with his or her religious tenets or practices

## Fla. Stat. § 765.1105 (LexisNexis)

Transfer of a patient

(1) A health care provider or facility that refuses to comply with a patient's advance directive, or the treatment decision of his or her surrogate or proxy, shall make reasonable efforts to transfer the patient to another health care provider or facility that will comply with the directive or treatment decision. This chapter does not require a health care provider or facility to commit any act which is contrary to the provider's or facility's moral or ethical beliefs, if the patient:

(a) Is not in an emergency condition; and

(b) Has received written information upon admission informing the patient of the policies of the health care provider or facility regarding such moral or ethical beliefs.

(2) A health care provider or facility that is unwilling to carry out the wishes of the patient or the treatment decision of his or her surrogate or proxy because of moral or ethical beliefs must within 7 days either:

(a) Transfer the patient to another health care provider or facility. The health care provider or facility shall pay the costs for transporting the patient to another health care provider or facility; or

(b) If the patient has not been transferred, carry out the wishes of the patient or the patient's surrogate or proxy, unless s. 765.105 applies.

## Ga. Code Ann. § 20-2-771(e)

Immunization of students

(e) This Code section shall not apply to a child whose parent or legal guardian objects to immunization of the child on the grounds that the immunization conflicts with the religious beliefs of the parent or guardian; however, the immunization may be required in cases when such disease is in epidemic stages. For a child to be exempt from immunization on religious grounds, the parent or guardian must first furnish the responsible official of the school or facility an affidavit in which the parent or guardian swears or affirms that the immunization required conflicts with the religious beliefs of the parent or guardian.

## Ga. Code Ann. § 31-12-3 (2007) 31-12-3(b)

Power to require immunization and other preventive measures
(b) In the absence of an epidemic or immediate threat thereof, this Code section shall not apply to any person who objects in writing thereto on grounds that such immunization conflicts with his religious beliefs.

## Ga. Comp. R. & Regs. 480-5-.03(n)

Code of Professional Conduct
(n) Refusal to Fill Prescription. It shall not be considered unprofessional conduct for any pharmacist to refuse to fill any prescription based on his/her professional judgment or ethical or moral beliefs.

## Haw. Rev. Stat. Ann. § 302A-1156

Exemptions.  A child may be exempted from the required immunizations:
(1) If a licensed physician certifies that the physical condition of the child is such that immunizations would endanger the child's life or health; or
(2) If any parent, custodian, guardian, or any other person in loco parentis to a child objects to immunization in writing on the grounds that the immunization conflicts with that person's bonafide religious tenets and practices. Upon showing the appropriate school official satisfactory evidence of the exemption, no certificate or other evidence of immunization shall be required for entry into school.

## Haw. Rev. Stat. Ann. § 325-34

Exemptions

Section 325-32 shall be construed not to require the vaccination or immunization of any person for three months after a duly licensed physician, physician assistant, or an authorized representative of the department of health has signed two copies of a certificate stating the name and address of the person and that because of a stated cause the health of the person would be endangered by the vaccination or immunization, and has forwarded the original copy of the certificate to the person or, if the person is a minor or under guardianship, to the person's parent or guardian, and has forwarded the duplicate copy of the certificate to the department for its files.

No person shall be subjected to vaccination, revaccination or immunization, who shall in writing object thereto on the grounds that the requirements are not in accordance with the religious tenets of an established church of which the person is a member or adherent, or, if the person is a minor or under guardianship, whose parent or guardian shall in writing object thereto on such grounds, but no objection shall be recognized when, in the opinion of the director of health, there is danger of an epidemic from any communicable disease.

## Haw. Admin. Rules § 11-157-5(b)

Exemptions

(b) A religious exemption shall be granted to a student whose parent, custodian, guardian, or other person in loco parentis certifies that the person's religious beliefs prohibit the practice of immunization. Requests for religious exemptions based on objections to specific immunizing agents will not be granted. Students who have reached the age of majority shall apply on their own behalf. The certification shall be retained in the student's health record. Reports of such exemptions shall be submitted to the department by each school.

## Haw. Rev. Stat. Ann. § 327E-7(e) (LexisNexis)

Obligations of health-care provider
(e) A health-care provider may decline to comply with an individual instruction or health-care decision for reasons of conscience. A health-care institution may decline to comply with an individual instruction or health-care decision if the instruction or decision is contrary to a policy of the institution which is expressly based on reasons of conscience and if the policy was timely communicated to the patient or to a person then authorized to make health-care decisions for the patient.

## Idaho Code § 39-4802(2)

Exemptions
(2) Any minor child whose parent or guardian has submitted a signed statement to school officials stating their objections on religious or other grounds shall be exempt from the provisions of this chapter.

## Idaho Code § 39-4804(1)(a), (2)(c), (3)(c)

Notification to parent or guardian

(1) Before an immunization is administered to any child in this state, the parent or guardian of the child shall be notified that:

    (a) Immunizations are not mandatory and may be refused on religious or other grounds

(2)  At the time information is initially collected regarding any child for entry into the registry created pursuant to this chapter, the parent or guardian shall be notified that:

    (c)  Immunizations are not mandatory and may be refused on religious or other grounds.

(3)  The decision of a parent or guardian to:

    (c) Refuse the immunization on religious or other grounds; shall not be used in any manner against the interests of the parent or guardian in any administrative, civil or criminal action.

## 105 Ill. Comp. Stat. Ann. § 5/27-8.1(8)

Health examinations and immunizations

(8) Children of parents or legal guardians who object to health, dental, or eye examinations or any part thereof, to immunizations, or to vision and hearing screening tests on religious grounds shall not be required to undergo the examinations, tests, or immunizations to which they so object if such parents or legal guardians present to the appropriate local school authority a signed Certificate of Religious Exemption detailing the grounds for objection and the specific immunizations, tests, or examinations to which they object. The grounds for objection must set forth the specific religious belief that conflicts with the examination, test, immunization, or other medical intervention. The signed certificate shall also reflect the parent′s or legal guardian′s understanding of the school′s exclusion policies in the case of a vaccine-preventable disease outbreak or exposure. The certificate must also be signed by the authorized examining health care provider responsible for the performance of the child′s health examination confirming that the provider provided education to the parent or legal guardian on the benefits of immunization and the health risks to the student and to the community of the communicable diseases for which immunization is required in this State. However, the health care provider′s signature on the certificate reflects only that education was provided and does not allow a health care provider grounds to determine a religious exemption. Those receiving immunizations required under this Code shall be provided with the relevant vaccine information statements that are required to be disseminated by the federal National Childhood Vaccine Injury Act of 1986, which may contain information on circumstances when a vaccine should not be administered, prior to administering a vaccine. A healthcare provider may consider including without limitation the nationally accepted recommendations from federal agencies such as the Advisory Committee on Immunization Practices, the information outlined in the relevant vaccine information statement, and vaccine package inserts, along with the healthcare provider′s clinical judgment, to determine whether any child may be more susceptible to experiencing an adverse vaccine reaction than the general population, and if so, the healthcare provider may exempt the child from an immunization or adopt an individualized immunization schedule. The Certificate of Religious Exemption shall be created by the Department of Public Health and shall be made available and used by parents and legal guardians by the beginning of the 2015-2016 school year. Parents or legal guardians must submit the Certificate of Religious Exemption to their local school authority prior to entering kindergarten,

sixth grade, and ninth grade for each child for which they are requesting an exemption. The religious objection stated need not be directed by the tenets of an established religious organization. However, general philosophical or moral reluctance to allow physical examinations, eye examinations, immunizations, vision and hearing screenings, or dental examinations does not provide a sufficient basis for an exception to statutory requirements. The local school authority is responsible for determining if the content of the Certificate of Religious Exemption constitutes a valid religious objection. The local school authority shall inform the parent or legal guardian of exclusion procedures, in accordance with the Department's rules under Part 690 of Title 77 of the Illinois Administrative Code, at the time the objection is presented.If the physical  condition of the child is such that any one or more of the immunizing agents should not be administered, the examining physician, advanced practice nurse, or physician assistant responsible for the performance of the health examination shall  endorse that fact upon the health examination form. Exempting a child from the health, dental, or eye examination does not exempt the child from participation in the program of physical education training provided in Sections 27-5 through 27-7 of this Code.

## 745 Ill. Comp. Stat. Ann. §§ 70/1-70/14 (LexisNexis)

70/2. Findings and policy

§ 2. Findings and policy. The General Assembly finds and declares that people and organizations hold different beliefs about whether certain health care services are morally acceptable. It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care whether acting individually, corporately, or in association with other persons; and to prohibit all forms of discrimination, disqualification, coercion, disability or imposition of liability upon such persons or entities by reason of their refusing to act contrary to their conscience or conscientious convictions in refusing to obtain, receive, accept, deliver, pay for, or arrange for the payment of health care services and medical care.

70/4. Liability

§ 4. Liability. No physician or health care personnel shall be civilly or criminally liable to any person, estate, public or private entity or public official by reason of his or her refusal to perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care service which is contrary to the conscience of such physician or health care personnel.

70/5. Discrimination

§ 5. Discrimination. It shall be unlawful for any person, public or private institution, or public official to discriminate against any person in any manner, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or any other privileges, because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care services contrary to his or her conscience.

70/6. Duty of physicians and other health care personnel

§ 6. Duty of physicians and other health care personnel. Nothing in this Act shall relieve a physician from any duty, which may exist under any laws concerning current standards, of normal medical practices and procedures, to inform his or her patient of the patient's condition, prognosis and risks, provided, however, that such physician shall be under no duty to perform, assist, counsel, suggest, recommend, refer or participate in any way in any form of medical practice or health care service that is contrary to his or her conscience.

Nothing in this Act shall be construed so as to relieve a physician or other health care personnel from obligations under the law of providing emergency medical care.

70/7. Discrimination by employers or institutions

§ 7. Discrimination by employers or institutions. It shall be unlawful for any public or private employer, entity, agency, institution, official or person, including but not limited to, a medical, nursing or other medical training institution, to deny admission because of, to place any reference in its application form concerning, to orally question about, to impose any burdens in terms or conditions of employment on, or to otherwise discriminate against, any applicant, in terms of employment, admission to or participation in any programs for which the applicant is eligible, or to discriminate in relation thereto, in any other manner, on account of the applicant's refusal to receive, obtain, accept, perform, counsel, suggest, recommend, refer, assist or participate in any way in any forms of health care services contrary to his or her conscience.

70/8. Denial of aid or benefits

§ 8. Denial of aid or benefits. It shall be unlawful for any public official, guardian, agency, institution or entity to deny any form of aid, assistance or benefits, or to condition the reception in any way of any form of aid, assistance or benefits, or in any other manner to coerce, disqualify or discriminate against any person, otherwise entitled to such aid, assistance or benefits, because that person refuses to obtain, receive, accept, perform, assist, counsel, suggest, recommend, refer or participate in any way in any form of health care services contrary to his or her conscience.

70/9. Liability

§ 9. Liability. No person, association, or corporation, which owns, operates, supervises, or manages a health care facility shall be civilly or criminally liable to any person, estate, or public or private entity by reason of refusal of the health care facility to permit or provide any particular form of health care service which violates the facility's conscience as documented in its ethical guidelines, mission statement, constitution, bylaws, articles of incorporation, regulations, or other governing documents.

Nothing in this act shall be construed so as to relieve a physician or other health care personnel from obligations under the law of providing emergency medical care.

70/10. Discrimination against facility

§ 10. Discrimination against facility. It shall be unlawful for any person, public or private institution or public official to discriminate against any person, association

or corporation attempting to establish a new health care facility or operating an existing health care facility, in any manner, including but not limited to, denial, deprivation or disqualification in licensing, granting of authorizations, aids, assistance, benefits, medical staff or any other privileges, and granting authorization to expand, improve, or create any health care facility, by reason of the refusal of such person, association or corporation planning, proposing or operating a health care facility, to permit or perform any particular form of health care service which violates the health care facility's conscience as documented in its existing or proposed ethical guidelines, mission statement, constitution, bylaws, articles of incorporation, regulations, or other governing documents.

70/11. Denial of aid or benefit to a facility

§ 11. Denial of aid or benefit to a facility. It shall be unlawful for any public official, agency, institution or entity to deny any form of aid, assistance, grants or benefits; or in any other manner to coerce, disqualify or discriminate against any person, association or corporation attempting to establish a new health care facility or operating an existing health care facility which otherwise would be entitled to the aid, assistance, grant or benefit because the existing or proposed health care facility refuses to perform, assist, counsel, suggest, recommend, refer or participate in any way in any form of health care services contrary to the health care facility's conscience as documented in its existing or proposed ethical guidelines, mission statement, constitution, bylaws, articles of incorporation, regulations, or other governing documents.

70/11.2. Liability of health care payer

§ 11.2. Liability of health care payer. No health care payer and no person, association, or corporation that owns, operates, supervises, or manages a health care payer shall be civilly or criminally liable to any person, estate, or public or private entity by reason of refusal of the health care payer to pay for or arrange for the payment of any particular form of health care services that violate the health care payer's conscience as documented in its ethical guidelines, mission statement, constitution, bylaws, articles of incorporation, regulations, or other governing documents.

70/11.3. Discrimination against health care payer in licensing

§ 11.3. Discrimination against health care payer in licensing. It shall be unlawful for any person, public or private institution, or public official to discriminate against any person, association, or corporation (i) attempting to establish a new health care payer or (ii) operating an existing health care payer, in any manner, including but not limited to, denial, deprivation, or disqualification in licensing; granting of authorizations, aids, assistance, benefits, or any other privileges; and granting

authorization to expand, improve, or create any health care payer, because the person, association, or corporation planning, proposing, or operating a health care payer refuses to pay for or arrange for the payment of any particular form of health care services that violates the health care payer's conscience as documented in the existing or proposed ethical guidelines, mission statement, constitution, bylaws, articles of incorporation, regulations or other governing documents.

70/11.4. Denial of aid or benefits to health care payer for refusal to participate in certain health care

§ 11.4. Denial of aid or benefits to health care payer for refusal to participate in certain health care. It shall be unlawful for any public official, agency, institution, or entity to deny any form of aid, assistance, grants, or benefits; or in any other manner to coerce, disqualify, or discriminate against any person, association, or corporation attempting to establish a new health care payer or operating an existing health care payer that otherwise would be entitled to the aid, assistance, grant, or benefit because the existing or proposed health care payer refuses to pay for, arrange for the payment of, or participate in any way in any form of health care services contrary to the health care payer's conscience as documented in its existing or proposed ethical guidelines, mission statement, constitution, bylaws, articles of incorporation, regulations, or other governing documents.

70/12. Actions; damages

§ 12. Actions; damages. Any person, association, corporation, entity or health care facility injured by any public or private person, association, agency, entity or corporation by reason of any action prohibited by this Act may commence a suit therefor, and shall recover threefold the actual damages, including pain and suffering, sustained by such person, association, corporation, entity or health care facility, the costs of the suit and reasonable attorney's fees; but in no case shall recovery be less than $2,500 for each violation in addition to costs of the suit and reasonable attorney's fees. These damage remedies shall be cumulative, and not exclusive of other remedies afforded under any other state or federal law.

## Ind. Code Ann. § 20-34-3-2

Religious objections

Sec. 2. (a) Except as otherwise provided, a student may not be required to undergo any testing, examination, immunization, or treatment required under this chapter or IC 20-34-4 when the child's parent objects on religious grounds. A religious objection does not exempt a child from any testing, examination, immunization, or treatment required under this chapter or IC 20-34-4 unless the objection is:

    (1) made in writing;

    (2) signed by the child's parent; and

    (3) delivered to the child's teacher or to the individual who might order a test, an exam, an immunization, or a treatment absent the objection.

(b) A teacher may not be compelled to undergo any testing, examination, or treatment under this chapter or IC 20-34-4 if the teacher objects on religious grounds. A religious objection does not exempt an objecting individual from any testing, examination, or treatment required under this chapter or IC 20-34-4 unless the objection is:

    (1) made in writing;

    (2) signed by the objecting individual; and

    (3) delivered to the principal of the school in which the objecting individual teaches.

## Ind. Code Ann. § 12-17.2-3.5-11.1(b)(1)

Immunizations

(b) A provider meets the requirement of subsection (a) if:

    (1) a child′s parent:

        (A) objects to immunizations for religious reasons; and

        (B) provides documentation of the parent′s objection

**Ind. Code Ann. § 12-17.2-6-11(b)**

Immunization of children
(b) A child enrolled in a child care ministry may not be required to undergo an immunization required under this section if the parents object for religious reasons. The objection must be:
    (1) made in writing;
    (2) signed by the child's parent or guardian; and
    (3) delivered to the child care ministry.

# Ind. Code Ann. § 21-40-5-6

Religious objections

Sec. 6. (a) Except as otherwise provided, a student may not be required to undergo testing, examination, immunization, or treatment required under this chapter when the student objects on religious grounds.

(b) A religious objection does not exempt a student from testing, examination, immunization, or treatment required under this chapter unless the request for an exemption is:

(1) made in writing;

(2) signed by the student; and

(3) delivered to the individual who might order a test, an examination, an immunization, or a treatment absent the religious objection.

## Iowa Code § 139A.8(4)(a)(2)

Immunization of children

4.a. Immunization is not required for a person's enrollment in any elementary or secondary school or licensed child care center if either of the following applies:

    (2) The applicant, or if the applicant is a minor, the applicant's parent or legal guardian, submits an affidavit signed by the applicant, or if the applicant is a minor, the applicant's parent or legal guardian, stating that the immunization conflicts with the tenets and practices of a recognized religious denomination of which the applicant is an adherent or member.

## Iowa Code 641-7.3(139A)(2)

Persons excluded

Exclusions to these rules are permitted on an individual basis for medical and religious reasons. Applicants approved for medical or religious exemptions shall submit to the admitting official a valid Iowa department of public health certificate of immunization exemption.

   (2) A religious exemption may be granted to an applicant if immunization conflicts with a genuine and sincere religious belief.

      a. To be valid, a certificate of immunization exemption for religious reasons shall contain, at a minimum, the applicant's last name, first name, and date of birth and shall bear the signature of the applicant or, if the applicant is a minor, of the applicant's parent or guardian and shall attest that immunization conflicts with a genuine and sincere religious belief and that the belief is in fact religious and not based merely on philosophical, scientific, moral, personal, or medical opposition to immunizations.

      b. The certificate of immunization exemption for religious reasons is valid only when notarized.

## Kan. Stat. Ann. § 65-508(e)

Equipment, supplies, accommodations; immunizations.

(e) The immunization requirement of subsection (d) shall not apply if one of the following is obtained:

(1) Certification from a licensed physician stating that the physical condition of the child is such that immunization would endanger the child's life or health; or

(2) a written statement signed by a parent or guardian that the parent or guardian is an adherent of a religious denomination whose teachings are opposed to immunizations.

## Kan. Stat. Ann. § 72-5209(b)

Health tests and inoculations; certification of completion required, alternatives; duties of school boards.

(b) As an alternative to the certification required under subsection (a), a pupil shall present:

(1) An annual written statement signed by a licensed physician stating the physical condition of the child to be such that the tests or inoculations would seriously endanger the life or health of the child, or

(2) a written statement signed by one parent or guardian that the child is an adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations.

## Kan. Stat. Ann. § 65-1637
[N.B. below is pasted only the relevant part of 65-1637]

Pharmacist required to be in charge of pharmacy; compounding, filling and refilling of prescriptions; refusal to fill; brand exchange

Nothing contained in this section shall be construed as preventing a pharmacist from refusing to fill or refill any prescription if in the pharmacist's professional judgment and discretion such pharmacist is of the opinion that it should not be filled or refilled.

## Ky. Rev. Stat. Ann. § 214.034(2)

Immunization of children -- Testing and treatment of children for tuberculosis -- Requirement for reception and retention of current immunization certificate by schools and child-care facilities.

(2) A local health department may, with the approval of the Department of Public Health, require all first-time enrollees in a public or private school within the health department's jurisdiction to be tested for tuberculosis prior to entering school. Following the first year of school, upon an epidemiological determination made by the state or local health officer in accordance with administrative regulations promulgated by the Cabinet for Health and Family Services, all parents, guardians, and other persons having care, custody, or control of any child shall have the child tested for tuberculosis, and shall have any child found to be infected with tuberculosis examined and treated according to administrative regulations of the Cabinet for Health and Family Services. Nothing in this section shall be construed to require the testing for tuberculosis of any child whose parent or guardian is opposed to such testing, and who objects by a written sworn statement to the testing for tuberculosis of the child on religious grounds. However, in a suspected case of tuberculosis, a local health department may require testing of this child.

## Ky. Rev. Stat. Ann. § 214.036

Exceptions to testing or immunization requirement
Nothing contained in KRS 158.035, 214.010, 214.020, 214.032 to 214.036, and
214.990 shall be construed to require the testing for tuberculosis or the
immunization of any child at a time when, in the written opinion of his attending
physician, such testing or immunization would be injurious to the child's health.
Nor shall KRS 158.035, 214.010, 214.020, 214.032 to 214.036, and 214.990 be
construed to require the immunization of any child whose parents are opposed to
medical immunization against disease, and who object by a written sworn statement
to the immunization of such child on religious grounds. Provided, however, that in
the event of an epidemic in a given area, the Cabinet for Health and Family
Services may, in an emergency regulation, require the immunization of all persons
within the area of the epidemic, against the disease responsible for such epidemic.

## LSA-R.S. § 170.1(C)(1)-(2)

Immunizations of persons registering for courses at postsecondary education institutions requirements; exceptions; electronic transmission of immunization compliance reports

C.  The provisions of Subsection A of this Section shall not apply to the following persons:

(1)  Any person who is eighteen years of age or older and who signs a waiver provided by the postsecondary education institution stating that the person has received and reviewed the information provided pursuant to Subsection B of this Section and has chosen not to be vaccinated against meningococcal disease for religious or other personal reasons.

(2)  Any person who is a minor and whose parent, tutor, or legal guardian signs a waiver stating that the person has received and reviewed the information provided pursuant to Subsection B of this Section and has chosen for the student not to be vaccinated against meningococcal disease for religious or other personal reasons.

## LSA-R.S. § 170.4(B)(1)

Immunizations of certain persons against meningococcal disease; exceptions

B. The provisions of Subsection A of this Section shall not apply to the following persons:

    (1) Any person whose parent, tutor, or legal guardian signs a waiver stating that the person shall not be immunized against meningococcal disease for religious or other personal reasons.

## LSA-R.S. § 40:31.16(D)

Parental consent; parental responsibility for immunization; exemptions

D.  Nothing in this Part shall be construed to require immunization or tracking of any child otherwise exempt from immunization requirements for medical or religious reasons.

## LSA-R.S. § 46:231.4(C)

Immunization compliance; exceptions

C. No person shall be required to comply with the provisions of this Section if that person or his parent or guardian submits a written statement from a physician stating that the immunization procedure is contraindicated for medical reasons or if the person or his parent or guardian objects to the procedure on religious grounds.

## Me. Rev. Stat. tit. 20-A § 6355

Enrollment in school

A superintendent may not permit any child to be enrolled in or to attend school without a certificate of immunization for each disease or other acceptable evidence of required immunization or immunity against the disease, except as follows.

    1. WRITTEN ASSURANCE. The parent provides a written assurance the child will be immunized within 90 days by private effort or provides, where applicable, a written consent to the child's immunization by a health officer, physician, nurse or other authorized person in public or private employ.

    2. MEDICAL EXEMPTION. The parent or the child provides a physician's written statement that immunization against one or more of the diseases may be medically inadvisable.

    3. PHILOSOPHICAL OR RELIGIOUS EXEMPTION. The parent states in writing a sincere religious belief that is contrary to the immunization requirement of this subchapter or an opposition to the immunization for philosophical reasons.

## Me. Rev. Stat. tit. 20-A § 6359(3)

Immunization of students

3. ENROLLMENT OF SCHOOL. No chief administrative officer may permit any student to be enrolled in or to attend school without a certificate of immunization for each disease or other acceptable evidence of required immunization or immunity against the disease, except as follows.

    A. The parent or the student provides a physician's written statement or a written statement from a school health provider that immunization against one or more of the diseases may be medically inadvisable.

    B. The student or the parent, if the student is a minor, states in writing a sincere religious belief, which is contrary to the immunization requirement of this subchapter or an opposition to the immunization for philosophical reasons.

**Me. Rev. Stat. tit. 18-A, § 5-807(E) (LexisNexis)**

Obligations of health-care provider

(e) A health-care provider may decline to comply with an individual instruction or health-care decision if the instruction or decision appears not to be in compliance with this Act or for reasons of conscience. A health-care institution may decline to comply with an individual instruction or health-care decision if the instruction or decision appears not to be in compliance with this Act or if the instruction or decision is contrary to a policy of the institution that is expressly based on reasons of conscience and if the policy was timely communicated to the patient or to a person then authorized to make health-care decisions for the patient.

**Me. Rev. Stat. tit. 32, § 13795 (LexisNexis)**
[N.B. only the relevant sections are pasted below]

2. Refusal to fill prescription, dispense drug or sell targeted methamphetamine precursor; law enforcement reporting. A pharmacist or person acting at the direction of a pharmacist may exercise discretion and refuse to fill any prescription, dispense any drug or sell any targeted methamphetamine precursor if unsatisfied as to the legitimacy or appropriateness of any prescription presented, the validity of any photographic identification or the identity of any patient presenting a prescription or any person acting on behalf of the patient, or the intention of the customer to use the drug or targeted methamphetamine precursor according to the instructions for use. A pharmacist or person acting at the direction of a pharmacist may make a report to a law enforcement agency when that person has reasonable cause to suspect that a prescription is not legitimate or appropriate, that a person has presented photographic identification that is not valid or that a customer has the intention to use a drug or targeted methamphetamine precursor in a manner inconsistent with the instructions for use.

3. Immunity; presumption of good faith. A pharmacist or person acting at the direction of a pharmacist who in good faith and pursuant to subsection 2 refuses to fill any prescription, dispense any drug or sell any targeted methamphetamine precursor or who makes a report to a law enforcement agency is immune from any civil liability that might otherwise result from that action, including, but not limited to, any civil liability that might otherwise arise under state or local laws or rules regarding confidentiality of information. In a proceeding regarding immunity from liability, there is a rebuttable presumption of good faith.

## Md. Code Ann., Educ. § 7-403(b)

Immunizations

(b) Exception.

    (1) Unless the Secretary of Health and Mental Hygiene declares an emergency or an epidemic of disease, a child whose parent or guardian objects to immunization on the ground that it conflicts with the parent′s or guardian′s bona fide religious beliefs and practices may not be required to present a physician′s certification of immunization in order to be admitted to school.

    (2) The Secretary of Health and Mental Hygiene shall adopt rules and regulations for religious exemptions under this subsection.

## Md. Code Ann., Health-Gen. § 18-403(a)

Religious exemption

In general. -- Unless the Secretary declares an emergency or disease epidemic, the Department may not require the immunization of an individual if:

(1) The individual objects to immunization because it conflicts with the individual's bona fide religious beliefs and practices; or

(2) The individual is a minor and the individual's parent or guardian objects to immunization because it conflicts with the parent or guardian's bona fide religious beliefs and practices.

## Md. Code Ann., Health-Gen. § 18-404(e)

Immunization against influenza virus and pneumococcal disease
(e) Circumstances under which vaccine not required. -- A resident or employee is not required to receive a vaccine under this section if:

    (1) The vaccine is medically contraindicated for the resident or employee;

    (2) The vaccine is against the resident's or employee's religious beliefs; or

    (3) After being fully informed by the related institution of the health risks associated with not receiving a vaccine, the resident or employee refuses the vaccine.

## Mass. Ann. Laws GL ch. 76 § 15

Vaccination and Immunization; Exceptions by Reason of Physical Condition or Religious Belief.

No child shall, except as hereinafter provided, be admitted to school except upon presentation of a physician′s certificate that the child has been successfully immunized against diphtheria, pertussis, tetanus, measles and poliomyelitis and such other communicable diseases as may be specified from time to time by the department of public health.

A child shall be admitted to school upon certification by a physician that he has personally examined such child and that in his opinion the physical condition of the child is such that his health would be endangered by such vaccination or by any of such immunizations. Such certification shall be submitted at the beginning of each school year to the physician in charge of the school health program. If the physician in charge of the school health program does not agree with the opinion of the child′s physician, the matter shall be referred to the department of public health, whose decision will be final.

In the absence of an emergency or epidemic of disease declared by the department of public health, no child whose parent or guardian states in writing that vaccination or immunization conflicts with his sincere religious beliefs shall be required to present said physician′s certificate in order to be admitted to school.

## Mass. Ann. Laws GL ch. 76 § 15C

Immunization of College Health Science Students

No full-time student under thirty years of age or any full-time or part-time undergraduate or graduate students in a health science who is in contact with patients shall, except as hereinafter provided, be registered at an institution of higher education except upon presentation of a medical certificate that such student has been immunized against measles, mumps, rubella, tetanus and diphtheria; provided, however, that a student may be registered at such institution upon certification made, in writing, by a physician who has personally examined such student and in whose opinion the physical condition of such student is such that his health would be endangered by any such immunization; and provided, further, that students who have attended an elementary or secondary school in the commonwealth may submit a copy of their school immunization record, indicating receipt of the above required immunizations, in lieu of such certificate; and provided, further, that unimmunized students may be registered on the condition that the required immunizations be obtained within ten days of registration.

In the absence of an emergency or epidemic of disease declared by the department of public health, no student who states in writing that such immunization would conflict with his religious beliefs shall be required to present such medical certificate in order to be admitted to such institution.

## 105 Code Mass. Regs. § 220.700(C)(1)-(2)

Meningococcal Vaccine Requirement for Students at Secondary and Postsecondary Schools which Provide or License Housing

(C) A student may register and begin classes without a certificate of immunization against meningococcal disease in the following situations:

(1) the student provides written certification from a physician who has personally examined the student that the student's health would be endangered by the immunization;

(2) the student states in writing, in the absence of an emergency or disease epidemic, that immunization would violate his/her religious beliefs

## Minn. Stat. § 121A.15(3)(d)

Health standards; immunizations; school children
Subd. 3. Exemptions from immunizations.

    (d) If a notarized statement signed by the minor child's parent or guardian or by the emancipated person is submitted to the administrator or other person having general control and supervision of the school or child care facility stating that the person has not been immunized as prescribed in subdivision 1 because of the conscientiously held beliefs of the parent or guardian of the minor child or of the emancipated person, the immunizations specified in the statement shall not be required. This statement must also be forwarded to the commissioner of the Department of Health.

## Minn. Stat. § 135A.14(3)(b)

STATEMENT OF IMMUNIZATION OF POSTSECONDARY STUDENTS.
Subd. 3. Exemptions from immunization.

(b) If the student submits a notarized statement that the student has not been immunized as required in subdivision 2 because of the student's conscientiously held beliefs, the immunizations described in subdivision 2 are not required. The institution shall forward this statement to the commissioner of health.

## Miss. Code Ann. § 41-41-215(5)

Duties of health care providers and institutions

(5) A health-care provider may decline to comply with an individual instruction or health-care decision for reasons of conscience. A health-care institution may decline to comply with an individual instruction or health-care decision if the instruction or decision is contrary to a policy of the institution which is expressly based on reasons of conscience and if the policy was timely communicated to the patient or to a person then authorized to make health-care decisions for the patient.

## Miss. Code Ann. §§ 41-107-1 to -13

§ 41-107-5. Rights of Conscience of Health Care Providers

(1) Rights of Conscience. A health care provider has the right not to participate, and no health care provider shall be required to participate in a health care service that violates his or her conscience. However, this subsection does not allow a health care provider to refuse to participate in a health care service regarding a patient because of the patient's race, color, national origin, ethnicity, sex, religion, creed or sexual orientation.

(2) Immunity from Liability. No health care provider shall be civilly, criminally, or administratively liable for declining to participate in a health care service that violates his or her conscience. However, this subsection does not exempt a health care provider from liability for refusing to participate in a health care service regarding a patient because of the patient's race, color, national origin, ethnicity, sex, religion, creed or sexual orientation.

(3) Discrimination. It shall be unlawful for any person, health care provider, health care institution, public or private institution, public official, or any board which certifies competency in medical specialties to discriminate against any health care provider in any manner based on his or her declining to participate in a health care service that violates his or her conscience. For purposes of this chapter, discrimination includes, but is not limited to: termination, transfer, refusal of staff privileges, refusal of board certification, adverse administrative action, demotion, loss of career specialty, reassignment to a different shift, reduction of wages or benefits, refusal to award any grant, contract, or other program, refusal to provide residency training opportunities, or any other penalty, disciplinary or retaliatory action.

§ 41-107-7. Rights of Conscience of Health Care Institutions

(1) Rights of Conscience. A health care institution has the right not to participate, and no health care institution shall be required to participate in a health care service that violates its conscience. However, this subsection does not allow a health care institution to refuse to participate in a health care service regarding a patient because of the patient's race, color, national origin, ethnicity, sex, religion, creed or sexual orientation.

(2) Immunity from Liability. A health care institution that declines to provide or participate in a health care service that violates its conscience shall not be civilly, criminally or administratively liable if the institution provides a consent form to be signed by a patient before admission to the institution stating that it reserves the right to decline to provide or participate in a health care service that violates its

conscience. However, this subsection does not exempt a health care institution from liability for refusing to participate in a health care service regarding a patient because of the patient's race, color, national origin, ethnicity, sex, religion, creed or sexual orientation.

(3) Discrimination. It shall be unlawful for any person, public or private institution, or public official to discriminate against any health care institution, or any person, association, corporation, or other entity attempting to establish a new health care institution or operating an existing health care institution, in any manner, including, but not limited to, any denial, deprivation or disqualification with respect to licensure, any aid assistance, benefit or privilege, including staff privileges, or any authorization, including authorization to create, expand, improve, acquire, or affiliate or merge with any health care institution, because such health care institution, or person, association, or corporation planning, proposing, or operating a health care institution, declines to participate in a health care service which violates the health care institution's conscience.

(4) Denial of Aid or Benefit. It shall be unlawful for any public official, agency, institution, or entity to deny any form of aid, assistance, grants or benefits, or in any other manner to coerce, disqualify or discriminate against any person, association, corporation or other entity attempting to establish a new health care institution or operating an existing health care institution because the existing or proposed health care institution declines to participate in a health care service contrary to the health care institution's conscience.

§ 41-107-9. Rights of Conscience of Health Care Payers

(1) Rights of Conscience. A health care payer has the right to decline to pay, and no health care payer shall be required to pay for or arrange for the payment of a health care service that violates its conscience. However, this subsection does not allow a health care payer to decline to pay or arrange for the payment of a health care service regarding a patient because of the patient's race, color, national origin, ethnicity, sex, religion, creed or sexual orientation.

(2) Immunity from Liability. No health care payer and no person, association, corporation or other entity that owns, operates, supervises or manages a health care payer shall be civilly or criminally liable by reason of the health care payer's declining to pay for or arrange for the payment of a health care service that violates its conscience. However, this subsection does not exempt from liability a health care payer, or the owner, operator, supervisor or manager of a health care payer, for declining to pay or arranging for the payment of a health care service regarding a patient because of the patient's race, color, national origin, ethnicity, sex, religion, creed or sexual orientation.

(3) Discrimination. It shall be unlawful for any person, public or private institution, or public official to discriminate against any health care payer, or any person, association, corporation, or other entity (a) attempting to establish a new health care payer, or (b) operating an existing health care payer, in any manner, including, but not limited to, any denial, deprivation, or disqualification with respect to licensure, aid, assistance, benefit, privilege or authorization, including, but not limited to, any authorization to create, expand, improve, acquire, affiliate or merge with any health care payer, because a health care payer, or a person, association, corporation or other entity planning, proposing or operating a health care payer declines to pay for or arrange for the payment of any health care service that violates its conscience.

(4) Denial of Aid or Benefits. It shall be unlawful for any public official, agency, institution or entity to deny any form of aid, assistance, grants, or benefits or in any other manner coerce, disqualify or discriminate against any health care payer, or any person, association, corporation or other entity attempting to establish a new health care payer or operating an existing health care payer because the existing or proposed health care payer declines to pay for, or arrange for the payment of, any health care service that is contrary to its conscience.

§ 41-107-11. Civil Remedies

(1) A civil action for damages or injunctive relief, or both, may be brought for the violation of any provision of this chapter. It shall not be a defense to any claim arising out of the violation of this chapter that such violation was necessary to prevent additional burden or expense on any other health care provider, health care institution, individual or patient.

(2) Damage Remedies. Any individual, association, corporation, entity or health care institution injured by any public or private individual, association, agency, entity or corporation by reason of any conduct prohibited by this chapter may commence a civil action. Upon finding a violation of this chapter, the aggrieved party shall be entitled to recover threefold the actual damages, including pain and suffering, sustained by such individual, association, corporation, entity or health care institution, the costs of the action, and reasonable attorney's fees; but in no case shall recovery be less than Five Thousand Dollars ($5,000.00) for each violation in addition to costs of the action and reasonable attorney's fees. These damage remedies shall be cumulative, and not exclusive of other remedies afforded under any other state or federal law.

(3) Injunctive Remedies. The court in such civil action may award injunctive relief, including, but not limited to, ordering reinstatement of a health care provider to his or her prior job position.

## Mo. Rev. Stat. § 167.181(3)

Immunization of pupils against certain diseases compulsory -- exceptions -- records -- to be at public expense, when -- fluoride treatments administered, when -- rulemaking authority, procedure

3. This section shall not apply to any child if one parent or guardian objects in writing to his school administrator against the immunization of the child, because of religious beliefs or medical contraindications. In cases where any such objection is for reasons of medical contraindications, a statement from a duly licensed physician must also be provided to the school administrator.

## Mo. Rev. Stat. § 338.255

Pharmacies not required to carry specific drug or device
Notwithstanding any other provision of law, no pharmacy licensed in this state
shall be required to carry or maintain in inventory any specific prescription or
nonprescription drug or device.

**Mont. Code Ann. § 20-5-405(1)**

Medical or religious exemption

(1) When a parent, guardian, or adult who has the responsibility for the care and custody of a minor seeking to attend school or the person seeking to attend school, if an adult, signs and files with the governing authority, prior to the commencement of attendance each school year, a notarized affidavit on a form prescribed by the department stating that immunization is contrary to the religious tenets and practices of the signer, immunization of the person seeking to attend the school may not be required prior to attendance at the school. The statement must be maintained as part of the person's immunization records. A person who falsely claims a religious exemption is subject to the penalty for false swearing provided in 45-7-202.

## Mont. Admin. R. § 37.114.716

Religious Exemption

(1) A prospective pupil seeking to attend school is exempt from all or part of the immunization requirements if the parent or guardian of that prospective pupil, an adult responsible for that prospective pupil, or the prospective pupil himself if an adult or an emancipated minor, objects thereto in a signed, written statement indicating that the proposed immunization interferes with the free exercise of the religious beliefs of the person signing the statement.

(2) In any school other than a secondary school, a claim of exemption from immunization requirements on religious grounds must be notarized annually and maintained on a form HES 113.  Affidavit of Exemption on Religious Grounds, provided by the department. The form must be provided to the school prior to each school year by the parent or guardian or adult responsible for the pupil.  If the pupil is 18 years of age or older or emancipated, in which case the pupil may claim the exemption.

(3) In a postsecondary setting, a religious exemption must be maintained on orm HES 113 and signed, notarized and submitted each year of attendance, beginning with the date of initial attendance at the school. The form must be completed and resubmitted each year thereafter.

(4) The original copy of the claim of religious exemption must be kept by the school as part of the pupil's school record.

## Mont. Admin. R. § 37.95.140(13)

Immunization

(13) A child under five years of age seeking to attend a day care facility is not required to be immunized against Haemophilus influenza type B if the parent or guardian of the child objects thereto in a signed, written statement indicating that the proposed immunization interferes with the free exercise of the religious beliefs of the person signing the statement.

## Neb. Rev. Stat. Ann. § 79-221

Immunization; when not required

Immunization shall not be required for a student's enrollment in any school in this state if he or she submits to the admitting official either of the following:

(1) A statement signed by a physician, a physician assistant, or an advanced practice registered nurse practicing under and in accordance with his or her respective certification act stating that, in the health care provider's opinion, the immunizations required would be injurious to the health and well-being of the student or any member of the student's family or household; or

(2) An affidavit signed by the student or, if he or she is a minor, by a legally authorized representative of the student, stating that the immunization conflicts with the tenets and practice of a recognized religious denomination of which the student is an adherent or member or that immunization conflicts with the personal and sincerely followed religious beliefs of the student.

## Nev. Rev. Stat. Ann. § 392.435(1)

Immunization of pupils: Certificate prerequisite to enrollment; conditional
enrollment, effect of military transfer of parent of child; consequences for failure to
immunize; report to Health Division; inclusion of certificate in pupil's record.
(1) Unless excused because of religious belief or medical condition and except as
otherwise provided in subsection 5, a child may not be enrolled in a public school
within this State unless the child's parents or guardian submit to the board of
trustees of the school district in which the child resides or the governing body of
the charter school in which the child has been accepted for enrollment a certificate
stating that the child has been immunized and has received proper boosters for that
immunization or is complying with the schedules established by regulation
pursuant to NRS 439.550 for the following diseases…

## Nev. Rev. Stat. Ann. § 392.437

Immunization of pupils: Exemption if prohibited by religious belief
A public school shall not refuse to enroll a child as a pupil because the child has not been immunized pursuant to NRS 392.435 if the parents or guardian of the child has submitted to the board of trustees of the school district or the governing body of a charter school in which the child has been accepted for enrollment a written statement indicating that their religious belief prohibits immunization of such child or ward.

## Nev. Rev. Stat. Ann. § 394.192(1)

Immunization of pupils: Certificate prerequisite to enrollment; conditional enrollment; effect of failure to immunize; report to Health Division; inclusion of certificate in pupil's record.

(1) Unless excused because of religious belief or  medical condition, a child may not be enrolled in a private school within this State unless the child's parents or guardian submit to the governing body of the private school a certificate stating that the child has been immunized and has received proper boosters for that immunization or is complying with the schedules established by regulation pursuant to NRS 439.550 for the following diseases…

**Nev. Rev. Stat. Ann. § 394.193**

Immunization of pupils: Exemption if prohibited by religious belief
A private school shall not refuse to enroll a child as a pupil because such child has not been immunized pursuant to NRS 394.192 if the parents or guardian of such child have submitted to the governing body a written statement indicating that their religious belief prohibits immunization of such child or ward.

## Nev. Rev. Stat. Ann. § 432A.230(1)

Certificate of immunization prerequisite to admission to child care facility; conditional admission; report to Health Division. Except as otherwise provided in NRS 432A.235 for accommodation facilities:

(1) Except as otherwise provided in subsection 3 and unless excused because of religious belief or medical condition, a child may not be admitted to any child care facility within this State, including a facility licensed by a county or city, unless his parents or guardian submit to the operator of the facility a certificate stating that the child has been immunized and has received proper boosters for that immunization or is complying with the schedules established by regulation pursuant to NRS 439.550 for the following diseases:

## Nev. Rev. Stat. Ann. § 432.235(1)

Written documentation of immunization prerequisite to admission to accommodation facility; conditional admission; report to Health Division; maintenance of proof of immunization by business which operates more than one accommodation facility.

(1) Except as otherwise provided in subsection 2 and unless excused because of religious belief or medical condition, a child may not be admitted to any accommodation facility within this State, including an accommodation facility licensed by a county or city, unless his parents or guardian submit to the operator of the accommodation facility written documentation stating that the child has been immunized and has received proper boosters for that immunization or is complying with the schedules established by regulation pursuant to NRS 439.550 for the diseases set forth in subsection 1 of NRS 432A.230....

## Nev. Rev. Stat. Ann. § 432A.240

Exemption from immunization when contrary to religious belief.

If the religious belief of a child's parents or guardian prohibits the immunization of the child as required by NRS 432A.230 or 432A.235, a written statement of this fact signed by the parents or guardian and presented to the operator of the facility exempts the child from the provisions of that section for purposes of admission.

# Nev. Admin. Code § 441A.755(1)-(5)

University students: Proof of immunity to certain communicable diseases required; exceptions; exclusion from university. (NRS 441A.120)

1. Except as otherwise provided in subsection 10 or unless excused because of religious belief or medical condition, a person shall not attend a university until he or she submits to the university proof of immunity to tetanus, diphtheria, measles, mumps, rubella and any other disease specified by the State Board of Health. The Division shall establish the immunization schedule required for admission of the student.

2. Except as otherwise provided in subsection 10 or unless excused because of religious belief or medical condition, a person who:

    (a) Is less than 23 years of age; and

    (b) Is enrolled as a freshman;

    shall not reside in on-campus housing after September 1, 2008, until he or she submits to the university proof of immunity to Neisseria meningitidis.

3. A student may enroll in the university conditionally if the student, or if the student is a minor, the parent or legal guardian of the student, submits a record of immunization stating that the student is in the process of obtaining the required immunizations, and that record shows that the student has made satisfactory progress toward obtaining those immunizations.

4. The university shall retain the proof of immunity on a computerized record or on a form provided by the Division.

5. The university shall not refuse to enroll a student because he or she has not been immunized if the student, or if the student is a minor, the parent or legal guardian of the student, has submitted to the university a written statement indicating that his or her religious belief prohibits immunizations. The university shall keep the statement on file.

## N.H. Rev. Stat. Ann. § 141-C:20-c

Exemptions

A child shall be exempt from immunization if:

I. A physician licensed under RSA 329, or a physician exempted under RSA 329:21, III, certifies that immunization against a particular disease may be detrimental to the child's health. The exemption shall exist only for the length of time, in the opinion of the physician, such immunization would be detrimental to the child. An exemption from immunization for one disease shall not affect other required immunizations.

II. A parent or legal guardian objects to immunization because of religious beliefs. The parent or legal guardian shall sign a notarized form stating that the child has not been immunized because of religious beliefs.

## N.J. Rev. Stat. § 18A:61D-3

Conflict with religious beliefs
A student who submits to the institution of higher education a written statement
that immunization conflicts with his religious beliefs shall not be required to submit
a list of immunizations to the institution as a condition of admission or continued
enrollment.

## N.J. Rev. Stat. § 18A:61D-10

Exemption from vaccination
A student shall not be required to receive a vaccination pursuant to section 2 or 3 of this act [C. 18A:61D-9 and 18A:40-21.1] based upon one of the following:

a. a written statement submitted to the secondary school or institution of higher education, as applicable, by a licensed physician indicating that the vaccine is medically contraindicated for a specific period of time and the reasons for the medical contraindication, based upon valid medical reasons as determined by regulation of the Commissioner of Health and Senior Services, which shall exempt the student from the vaccination for the stated period of time; or

b. a written statement submitted to the secondary school or institution of higher education, as applicable, by the student, or the student's parent or guardian if the student is a minor, explaining how the administration of the vaccine conflicts with the bona fide religious tenets or practices of the student, or the parent or guardian, as appropriate; except that a general philosophical or moral objection to the vaccination shall not be sufficient for an exemption on religious grounds.

# N.J. Rev. Stat. § 26:1A-9.1

Exemption for pupils from mandatory immunization; interference with religious rights; suspension.

Provisions in the State Sanitary Code in implementation of this act shall provide for exemption for pupils from mandatory immunization if the parent or guardian of the pupil objects thereto in a written statement signed by the parent or guardian upon the ground that the proposed immunization interferes with the free exercise of the pupil's religious rights. This exemption may be suspended by the State Commissioner of Health during the existence of an emergency as determined by the State Commissioner of Health.

**N.M. Stat. Ann. § 24-5-3**

Exemption from immunization

A. Any minor child through his parent or guardian may file with the health authority charged with the duty of enforcing the immunization laws:

(1) a certificate of a duly licensed physician stating that the physical condition of the child is such that immunization would seriously endanger the life or health of the child; or

(2) affidavits or written affirmation from an officer of a recognized religious denomination that such child′s parents or guardians are bona fide members of a denomination whose religious teaching requires reliance upon prayer or spiritual means alone for healing; or

(3) affidavits or written affirmation from his parent or legal guardian that his religious beliefs, held either individually or jointly with others, do not permit the administration of vaccine or other immunizing agent.

B. Upon filing and approval of such certificate, affidavits or affirmation, the child is exempt from the legal requirement of immunization for a period not to exceed nine months on the basis of any one certificate, affidavits or affirmation.

## N.M. Stat. Ann. § 24-7A-7(E) (LexisNexis)

Obligations of health-care practitioner
E. A health-care practitioner may decline to comply with an individual instruction or health-care decision for reasons of conscience. A health-care institution may decline to comply with an individual instruction or health-care decision if the instruction or decision is contrary to a policy of the health-care institution that is expressly based on reasons of conscience and if the policy was timely communicated to the patient or to a person then authorized to make health-care decisions for the patient.

## N.Y. CLS Pub. Health § 2164(9)

Definitions; immunization against poliomyelitis, mumps, measles, diphtheria, rubella, varicella, Haemophilus influenzae type b(Hib), pertussis, tetanus, pneumococcal disease, and hepatitis B.

9. This section shall not apply to children whose parent, parents, or guardian hold genuine and sincere religious beliefs which are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school.

## N.Y. CLS Pub. Health § 2165(9)

Immunization of certain post-secondary students.

9. This section shall not apply to a person who holds genuine and sincere religious beliefs which are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such person being admitted or received into or attending an institution.

## N.C. Gen. Stat. § 130A-157

Religious exemption

If the bona fide religious beliefs of an adult or the parent, guardian or person in loco parentis of a child are contrary to the immunization requirements contained in this Chapter, the adult or the child shall be exempt from the requirements. Upon submission of a written statement of the bona fide religious beliefs and opposition to the immunization requirements, the person may attend the college, university, school or facility without presenting a certificate of immunization.

## 21 N.C. Admin. Code 46.1801

EXERCISE OF PROFESSIONAL JUDGMENT IN FILLING PRESCRIPTIONS
(a) A pharmacist or device and medical equipment dispenser shall have a right to refuse to fill or refill a prescription order if doing so would be contrary to his or her professional judgment.
(b) A pharmacist or device and medical equipment dispenser shall not fill or refill a prescription order if, in the exercise of professional judgment, there is or reasonably may be a question regarding the order's accuracy, validity, authenticity, or safety for the patient.
(c) A prescription order is valid only if it is a lawful order for a drug, device, or medical equipment issued by a health care provider for a legitimate medical purpose, in the context of a patient-prescriber relationship, and in the course of legitimate professional practice as recognized by the occupational licensing board governing the health care provider.

## N.D. Cent. Code § 23-07-17.1(3)

Inoculation required before admission to school
3. Any minor child, through the child's parent or guardian, may submit to the institution authorities either a certificate from a licensed physician stating that the physical condition of the child is such that immunization would endanger the life or health of the child or a certificate signed by the child's parent or guardian whose religious, philosophical, or moral beliefs are opposed to such immunization. The minor child is then exempt from the provisions of this section.

## Ohio Rev. Code Ann. § 3313.671(B)(4)

Proof of required immunizations - exceptions.
(B)(4) A pupil who presents a written statement of the pupil's parent or guardian in which the parent or guardian declines to have the pupil immunized for reasons of conscience, including religious convictions, is not required to be immunized.

## Okla. Stat. tit. 10, § 413

Exemptions.
Any minor child, through his or her parent or guardian, may submit to the health authority charged with the enforcement of the immunization laws, a certificate of a licensed physician stating that the physical condition of the child is such that immunization would endanger the life or health of the child; or upon receipt of a written statement by the parent or guardian objecting to such immunizations because of religious or other reasons, then such child shall be exempt from the provisions of this act.

## Okla. Stat. tit. 70, § 3244(C)

Student Vaccinations Against Hepatitis B, Measles, Mumps, and  Rubella -
Documentation – Exemptions
C. A written statement from a licensed physician indicating that a vaccine is
medically contraindicated shall exempt a student from the vaccination. A student
shall be exempt from the vaccination if the student submits a written, signed
statement declaring that the administration of the vaccine conflicts with the
student′s moral or religious tenets or, if the student is a minor, the student′s parent
or guardian provides a written statement that the administration of the vaccine
conflicts with the parent′s or guardian′s moral or religious tenets.

## Or. Rev. Stat. § 433.267(1)(c)(A)

Immunization of school children; rules; exceptions; effect of failure to comply.
(1) As a condition of attendance in any school or childrens facility in this state, every child through grade 12 shall submit to the administrator, unless the school or facility the child attends already has on file a record that indicates that the child has received immunizations against the restrictable diseases prescribed by rules of the Oregon Health Authority as provided in ORS 433.273 (Rules), one of the following:

    (c) A document, on a form prescribed by the authority by rule and signed by the parent of the child, stating that the parent is declining one or more immunizations on behalf of the child. A document submitted under this paragraph:

        (A) May include the reason for declining the immunization, including whether the parent is declining the immunization because of a religious or philosophical belief

## Or. Rev. Stat. § 433.284

Adoption of more stringent immunization requirements.
Private schools, children's facilities and post-secondary educational institutions may adopt additional or more stringent requirements as long as medical and religious exemptions are included and the requirements are in compliance with the United States Public Health Service Advisory Committee on Immunization Practices recommendations.

## 28 Pa. Code § 23.84

Exemption from immunization.

(a) Medical exemption. Children need not be immunized if a physician or the physician's designee provides a written statement that immunization may be detrimental to the health of the child. When the physician determines that immunization is no longer detrimental to the health of the child, the child shall be immunized according to this subchapter.

(b) Religious exemption. Children need not be immunized if the parent, guardian or emancipated child objects in writing to the immunization on religious grounds or on the basis of a strong moral or ethical conviction similar to a religious belief.

## 28 Pa. Code § 27.77(a)(1)

Immunization requirements for children in child care group settings.

(a) Caregiver responsibilities.

(1) Except as exempted in subsection (d), effective March 27, 2002, the caregiver at a child care group setting may not accept or retain a child 2 months of age or older at the setting, for more than 60 days, unless the caregiver has received a written objection to a child being vaccinated on religious grounds from a parent or guardian...

## R.I. Gen. Laws § 16-38-2(a)

Immunization

Every person upon entering any public or private school including any college or university in this state as a pupil shall furnish to the administrative head of the school evidence that the person has been immunized against any diseases that may from time to time be prescribed by regulation of the director of health and tested for tuberculosis, or a certificate from a licensed physician stating that the person is not a fit subject for immunization for medical reasons, or a certificate signed by the pupil, if over eighteen (18) years of age, or by the parent or guardian stating that immunization and/or testing for communicable diseases is contrary to that person's religious beliefs. It shall be the responsibility of the administrative head of the school to secure compliance with these regulations.

## S.C. Code Ann. § 44-29-180(D)

School pupils and day care center children to be vaccinated or immunized; department to monitor immunization records of children in day care; exemptions and exclusions.

(D) A South Carolina Certificate of Special Exemption signed by the school principal, authorized representative, or day care director may be issued to transfer students while awaiting arrival of medical records from their former area of residence or to other students who have been unable to secure immunizations or documentation of immunizations already received. A South Carolina Certificate of Special Exemption may be issued only once and is valid for only thirty calendar days from date of enrollment. At the expiration of this special exemption, the student must present a valid South Carolina Certificate of Immunization, a valid South Carolina Certificate of Medical Exemption, or a valid South Carolina Certificate of Religious Exemption.

## S.D. Codified Laws § 13-28-7.1

Tests and immunizations for communicable diseases required for admission to school or early childhood program -- Exceptions – Rules

Any pupil entering school or an early childhood program in this state, shall, prior to admission, be required to present to the appropriate school authorities certification from a licensed physician that the child has received or is in the process of receiving adequate immunization against poliomyelitis, diphtheria, pertussis, rubeola, rubella, mumps, tetanus, and varicella, according to recommendations provided by the Department of Health. The Department of Health may modify or delete any of the required immunizations. As an alternative to the requirement for a physician's certification, the pupil may present:

(1) Certification from a licensed physician stating the physical condition of the child would be such that an immunization would endanger the child's life or health; or

(2) A written statement signed by one parent or guardian that the child is an adherent to a religious doctrine whose teachings are opposed to such immunization; or

(3) A written statement signed by one parent or guardian requesting that the local health department give the immunization because the parents or guardians lack the means to pay for such immunization.

The Department of Health may promulgate reasonable rules, in accordance with chapter 1-26, to require compliance and documentation of adequate immunization, to define appropriate certification, and to specify standard procedure.

## S.D. Codified Laws § 13-53-47

Immunizations required for students entering public or private postsecondary educational institutions--Alternatives.

Any student entering a public or private postsecondary education institution in this state for the first time after July 1, 2008, shall, within forty-five days after the start of classes, present to the appropriate institution certification from a licensed physician that the student has received or is in the process of receiving the required two doses of immunization against measles, rubella, and mumps. As an alternative to the requirement for a physician's certification, the student may present:

(1) Certification from a licensed physician stating the physical condition of the student would be such that immunization would endanger the student's life or health;

(2) Certification from a licensed physician stating the student has experienced the natural disease against which the immunization protects;

(3) Confirmation from a laboratory of the presence of adequate immunity; or

(4) A written statement signed by the student that the student is an adherent to a religious doctrine whose teachings are opposed to such immunizations. If the student is under the age of eighteen, the written statement shall be signed by one parent or guardian.

## Tenn. Code Ann. § 37-10-402

Conflict with religious tenets and practices of parent
In the absence of an epidemic or immediate threat thereof, this section does not not apply to any child whose parent or guardian files with proper authorities a signed written statement that such immunization and other preventative measures conflict with the religious tenets and practices of the parent or guardian affirmed under penalties of perjury.

**Tenn. Code Ann. § 49-6-5001(b)(2)**

General provisions. –
(b)(2) In the absence of an epidemic or immediate threat of an epidemic, this section shall not apply to any child whose parent or guardian files with school authorities a signed, written statement that the immunization and other preventive measures conflict with the parent's or guardian's religious tenets and practices, affirmed under the penalties of perjury.

**Tenn. Rules and Reg. § 1200-14-1-.29(18)(c)**

Immunization against certain diseases prior to school attendance in Tennessee.
(18) An individual may be exempted from the requirements of this section only
under the following circumstances:

(c) Where a parent or guardian, or in the case of an adult student, the student,
provides to the school a written statement, affirmed under penalties of perjury,
that vaccination conflicts with the religious tenets and practices of the parent or
guardian, or in the case of an adult student, the student.

## Tenn. Rules and Reg. § 1540-01-09-.04(2)(b)

Proof of immunization against meningococcal disease

(2) A student may be exempted from this requirement only under the following circumstances:

    (b) Where a parent or guardian or, in the case of an adult student, the student provides to the school a written statement, affirmed under penalties of perjury, that vaccination conflicts with the religious tenets and practices of the parent or guardian or, in the case of an adult student, the student.

## Tex. Educ. Code § 38.001(c)(1)(B)

Immunizations; Requirements; Exceptions.

(c) Immunization is not required for a person′s admission to any elementary or secondary school if the person applying for admission:

    (1) submits to the admitting official:

        (B) an affidavit signed by the applicant or, if a minor, by the applicant′s parent or guardian stating that the applicant declines immunization for reasons of conscience, including a religious belief

## Tex. Educ. Code § 51.933(d)(1)(B)

Immunization Requirements; Exceptions

(d)  No form of immunization is required for a person′s admission to an institution of higher education if the person applying for admission:

    (1)  submits to the admitting official:

        (B)  an affidavit signed by the applicant or, if a minor, by the applicant′s parent or guardian stating that the applicant declines immunization for reasons of conscience, including a religious belief

## Tex. Health & Safety Code § 161.004(d)(1)

Statewide Immunization of Children
(d) A child is exempt from an immunization required by this section if:
    (1) a parent, managing conservator, or guardian states that the immunization is being declined for reasons of conscience, including a religious belief

## Tex. Human Resources Code § 42.043(d)(2)

Rules for Immunizations

(d) No immunization may be required for admission to a facility regulated under this chapter if a person applying for a child's admission submits one of the following affidavits:

    (2) an affidavit signed by the child's parent or guardian stating that the applicant declines immunization for reasons of conscience, including a religious belief.

## Tex. Admin. Code § 97.62(2)

Exclusions from Compliance
Exclusions from compliance are allowable on an individual basis for medical contraindications, reasons of conscience, including a religious belief, and active duty with the armed forces of the United States. Children and students in these categories must submit evidence for exclusion from compliance as specified in the Health and Safety Code, §161.004(d), Health and Safety Code, §161.0041, Education Code, Chapter 38, Education Code, Chapter 51, and the Human Resources Code, Chapter 42.

(2) To claim an exclusion for reasons of conscience, including a religious belief, a signed affidavit must be presented by the child's parent or legal guardian, stating that the child's parent or legal guardian declines vaccinations for reasons of conscience, including because of the person's religious beliefs. The affidavit will be valid for a two-year period. The child, who has not received the required immunizations for reasons of conscience, including religious beliefs, may be excluded from school in times of emergency or epidemic declared by the commissioner of public health.

## Tex. Ins. Code § 1271.007

Religious Convictions
(a) This chapter, Chapters 843, 1272, and 1367, Subchapter A, Chapter 1452, and Subchapter B, Chapter 1507,1 do not require a health maintenance organization, physician, or provider to recommend, offer advice concerning, pay for, provide, assist in, perform, arrange, or participate in providing or performing any health care service that violates the religious convictions of the health maintenance organization, physician, or provider.
(b) A health maintenance organization that limits or denies health care services under this section shall state the limitations in the evidence of coverage as required by Section 1271.052.

**Utah Code Ann. § 53A-11-302(3)(c)**

Immunizations required -- Exceptions -- Grounds for exemption from required immunizations

(3) A student is exempt from receiving the required immunizations if there is presented to the appropriate official of the school one or more of the following:

(c) a statement that the person is a bona fide member of a specified, recognized religious organization whose teachings are contrary to immunizations…

## Vt. Stat. Ann. tit. 18, § 1122(a)(3)

Exemptions

(a) A person may remain in school or in the child care facility without a required immunization:

    (3) If the person, or in the case of a minor the person's parent or guardian states in writing that the person, parent, or guardian has religious beliefs or philosophical convictions opposed to immunization.

## Va. Code Ann. § 22.1-271.2(C)

Immunization requirements

C. No certificate of immunization shall be required for the admission to school of any student if

(i) the student or his parent submits an affidavit to the admitting official stating that the administration of immunizing agents conflicts with the student's religious tenets or practices; or

(ii) the school has written certification from a licensed physician, licensed nurse practitioner, or local health department that one or more of the required immunizations may be detrimental to the student's health, indicating the specific nature and probable duration of the medical condition or circumstance that contraindicates immunization....

## Va. Code Ann. § 22.1-271.4

Health requirements for home-instructed, exempted, and excused children.
In addition to compliance with the requirements of subsection B, D, or I of § 22.1-254 or § 22.1-254.1, any parent, guardian or other person having control or charge of a child being home instructed, exempted or excused from school attendance shall comply with the immunization requirements provided in § 32.1-46 in the same manner and to the same extent as if the child has been enrolled in and is attending school.

Upon request by the division superintendent, the parent shall submit to such division superintendent documentary proof of immunization in compliance with § 32.1-46.

No proof of immunization shall be required of any child upon submission of (i) an affidavit to the division superintendent stating that the administration of immunizing agents conflicts with the parent's or guardian's religious tenets or practices or (ii) a written certification from a licensed physician, licensed nurse practitioner, or local health department that one or more of the required immunizations may be detrimental to the child's health, indicating the specific nature of the medical condition or circumstance that contraindicates immunization.

## Va. Code Ann. § 32.1-46(D)(1)

Immunization of patients against certain diseases.

D. The provisions of this section shall not apply if:

   1. The parent or guardian of the child objects thereto on the grounds that the administration of immunizing agents conflicts with his religious tenets or practices, unless an emergency or epidemic of disease has been declared by the Board

## Va. Code Ann. § 23-7.5(A), (D)(i)

Health histories required; immunizations

A. No full-time student shall be enrolled for the first time in any four-year, public institution of higher education in this Commonwealth unless he has furnished, before the beginning of the second semester or quarter of enrollment, a health history consistent with guidelines adopted by each institution's board of visitors, pursuant to the requirements of this section. Any student who fails to furnish the history will not be eligible for registration for the second semester or quarter. Any student who objects on religious grounds shall be exempt from the health history requirement set forth in this section.

D. Any student shall be exempt from the immunization requirements set forth in this section who

> (i) objects on the grounds that administration of immunizing agents conflicts with his religious tenets or practices, unless an emergency or epidemic of disease has been declared by the Board of Health

## 12 Va. Admin. Code § 5-110-80(A)(1)

Exemptions from immunization requirements.

A. Religious and medical exemptions. No certificate of immunization shall be required of any student for admission to school if:

1. The student or his parent or guardian submits a Certificate of Religious Exemption (Form CRE 1), to the admitting official of the school to which the student is seeking admission. Form CRE 1 is an affidavit stating that the administration of immunizing agents conflicts with the student's religious tenets or practices....

## Wash. Rev. Code Ann. § 28A.210.090(1)

Immunization program -- Exemptions from on presentation of alternative certifications

(1) Any child shall be exempt in whole or in part from the immunization measures required by RCW 28A.210.060 through 28A.210.170 upon the presentation of any one or more of the certifications required by this section, on a form prescribed by the department of health:

   (a) A written certification signed by a health care practitioner that a particular vaccine required by rule of the state board of health is, in his or her judgment, not advisable for the child: PROVIDED, That when it is determined that this particular vaccine is no longer contraindicated, the child will be required to have the vaccine;

   (b) A written certification signed by any parent or legal guardian of the child or any adult in loco parentis to the child that the religious beliefs of the signator are contrary to the required immunization measures; or

   (c) A written certification signed by any parent or legal guardian of the child or any adult in loco parentis to the child that the signator has either a philosophical or personal objection to the immunization of the child.

**Wash. Rev. Code Ann. §§ 48.43.065(2), 70.47.160(2) (LexisNexis)**

48.43.065. Right of individuals to receive services--Right of providers, carriers, and facilities to refuse to participate in or pay for services for reason of conscience or religion—Requirements

(2)(a) No individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of or payment for a specific service if they object to so doing for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objection.

    (b) The provisions of this section are not intended to result in an enrollee being denied timely access to any service included in the basic health plan services. Each health carrier shall:

        (i) Provide written notice to enrollees, upon enrollment with the plan, listing services that the carrier refuses to cover for reason of conscience or religion;

        (ii) Provide written information describing how an enrollee may directly access services in an expeditious manner; and

        (iii) Ensure that enrollees refused services under this section have prompt access to the information developed pursuant to (b)(ii) of this subsection.

70.47.160. Right of individuals to receive services--Right of providers, carriers, and facilities to refuse to participate in or pay for services for reason of conscience or religion—Requirements

(2)(a) No individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of or payment for a specific service if they object to so doing for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objection.

    (b) The provisions of this section are not intended to result in an enrollee being denied timely access to any service included in the basic health plan. Each health carrier shall:

        (i) Provide written notice to enrollees, upon enrollment with the plan, listing services that the carrier refuses to cover for reason of conscience or religion;

        (ii) Provide written information describing how an enrollee may directly access services in an expeditious manner; and

        (iii) Ensure that enrollees refused services under this section have prompt access to the information developed pursuant to (b)(ii) of this subsection.

## W. Va. Code Ann. § 16-30-12 (LexisNexis)

Conscience objections

(a) Health care facilities. --Nothing in this article shall be construed to require a health care facility to change published policy of the health care facility that is expressly based on sincerely held religious beliefs or sincerely held moral convictions central to the facility's operating principles.

(b) Health care providers. --Nothing in this article shall be construed to require an individual health care provider to honor a health care decision made pursuant to this article if:

(1) The decision is contrary to the individual provider's sincerely held religious beliefs or sincerely held moral convictions; and

(2) The individual health care provider promptly informs the person who made the decision and the health care facility of his or her refusal to honor the decision. In such event, the medical power of attorney representative or surrogate decision maker shall have responsibility for arranging the transfer of the person to another health care provider. The individual health care provider shall cooperate in facilitating such transfer, and a transfer under these circumstances shall not constitute abandonment.

**W. Va. Code Ann. § 16-2B-4 (LexisNexis)**

Exemption of employees from offering services when such duty is contrary to religious beliefs

Any employee of the State of West Virginia or any of its agencies or political subdivisions, including, but not limited to, local health or welfare agencies, may refuse to accept the duty of offering family planning services to the extent that such duty is contrary to his personal religious beliefs and such refusal shall not be grounds for any disciplinary action, for dismissal, for any interdepartmental transfer, or any other discrimination in his employment, or for suspension from employment, or for any loss in pay or any other benefits.

## Wis. Stat. § 252.04(3)

Immunization program.
(3)The immunization requirement is waived if the student, if an adult, or the student′s parent, guardian, or legal custodian submits a written statement to the school, child care center, or nursery school objecting to the immunization for reasons of health, religion, or personal conviction.   At the time any school, child care center, or nursery school notifies a student, parent, guardian, or legal custodian of the immunization requirements, it shall inform the person in writing of the person′s right to a waiver under this subsection.

## Wyo. Stat. Ann. § 21-4-309(a)

Mandatory immunizations for children attending schools; exceptions

(a) Any person attending, full or part time, any public or private school, kindergarten through twelfth grade, shall within thirty (30) days after the date of school entry, provide to the appropriate school official written documentary proof of immunization. For purposes of this section, documentary proof of immunization is written certification by a private licensed physician or his representative or by any public health authority, that the person is fully immunized. Documentation shall include month, day and year of each required immunization received against vaccine preventable disease as designated by the state health authority. No school administrator shall permit a student to attend school for more than thirty (30) calendar days without documentary proof of immunization. If immunization requires a series of immunizations over a period of more than thirty (30) calendar days, the child shall be permitted to attend school while receiving continuing immunization if the school administrator receives written notification by a private licensed physician or his representative or by a public health official, specifying a written schedule for necessary immunization completion within the medically accepted time period. Waivers shall be authorized by the state or county health officer upon submission of written evidence of religious objection or medical contraindication to the administration of any vaccine. In the presence of an outbreak of vaccine preventable disease as determined by the state or county health authority, school children for whom a waiver has been issued and who are not immunized against the occurring vaccine preventable disease shall be excluded from school attendance for a period of time determined by the state or county health authority, but not suspended from school as provided in W.S. 21-4-305. Children excluded from school attendance under this section shall not be counted in the aggregate number of pupils absent as defined in W.S. 21-13-101(a)(i).