

# BOB JONES UNIVERSITY

### EST. 1927

April 1, 2016

Ms. Catherine Lhamon, Assistant Secretary
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, DC 20202-1100

Re: Request for Religious Exemption from Certain Applications of Title IX

Dear Ms. Lhamon:

I hereby request, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights acknowledge that Bob Jones University is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations, to the extent that they are interpreted to curtail the University's freedom to act in accordance with its religious convictions. As president of Bob Jones University, I am the "highest ranking official of the institution," 34 C.F.R. § 106.12(b), and thus qualified to seek these exemptions.

Bob Jones University (BJU) was founded in 1927 as a Christ-centered institution of higher education, emphasizing theology and the arts.[1] BJU is committed, "[w]ithin the cultural and academic soil of liberal arts higher education," to "grow[ing] Christlike character that is scripturally disciplined, others-serving, God-loving, Christ-proclaiming and focused above."[2]

BJU is completely controlled by a religious organization: its Board of Trustees.[3] All board members are like-minded Christians who are required annually to read and indicate consent to the University Creed, which states as follows:

---

[1] *See* http://www.bju.edu/about/history.php.
[2] *See* http://www.bju.edu/about/mission-statement.php.
[3] Bob Jones University Policy Manual, Vol. I, Bylaws, Article III, Section 1, p.8; Bob Jones University Policy Manual, Volume I, Section 1.5.2.1, p.35.

Ms. Catherine Lhamon
Page 2
April 1, 2016

> The general nature and object of the corporation shall be to conduct an institution of learning for the general education of youth in the essentials of culture and in the arts and sciences, giving special emphasis to the Christian religion and the ethics revealed in the Holy Scriptures, combating all atheistic, agnostic, pagan, and so-called scientific adulterations of the Gospel, unqualifiedly affirming and teaching the inspiration of the Bible (both the Old and the New Testaments); the creation of man by the direct act of God; the incarnation and virgin birth of our Lord and Saviour, Jesus Christ; His identification as the Son of God; His vicarious atonement for the sins of mankind by the shedding of His blood on the cross; the resurrection of His body from the tomb; His power to save men from sin; the new birth through the regeneration by the Holy Spirit; and the gift of eternal life by the grace of God. This charter shall never be amended, modified, altered or changed as to the provisions hereinbefore set forth.[4]

Board members must also annually read and consent to the mission statement[5], as well as the general objectives of the University as set forth in the bylaws and charter[6], and the University's philosophy of education statement[7] (copies of which are enclosed).[8] Every member of the Board is required to indicate that they have read the Board Handbook and Bylaws and are in agreement with them.[9]  Board members who can no longer agree to these items disqualify themselves from membership.[10]

Additionally, BJU serves a particular constituency of independent, fundamental churches, and its mission is, in part, to develop individuals who are "engaged in service and leadership in a biblically faithful local church."

Not only does the University rely on and require all members of its governing board to affirm the University Creed, it also requires its faculty to do so as well, since the creed is foundational to all that it does, including what is taught in its classes[11].

The Board of Trustees and the University submit themselves to the Bible and to these expressions of its doctrine and seek to take positions that are in accord with those standards,

---

[4] Bob Jones University Policy Manual, Vol. I, Preamble to Charter and Bylaws of Bob Jones University, p. 7.
[5] *See* http://www.bju.edu/about/mission-statement.php.
[6] Bob Jones University Policy Manual, Vol. I, Preamble to Charter and Bylaws of Bob Jones University, p. 7.
[7] Bob Jones University Policy Manual, Vol. I, Section 1.2.3, p. 6.
[8] Bob Jones University Policy Manual, Vol. I, Section 1.4.1.3(1), p.21.
[9] Bob Jones University Policy Manual, Vol. I, Section 1.4.1.2(2), p. 21.
[10] Bob Jones University Policy Manual, Vol. I, 1.4.1.3(2), p.21.
[11]Bob Jones University Policy Manual, Vol. I, Preamble to Charter and Bylaws of Bob Jones University, p. 7; Section, 1.4.1.3, p.21; Bob Jones University Policy Manual, Vol. IV, Section 4.5.2.1.1, p. 28.

Ms. Catherine Lhamon
Page 3
April 1, 2016

including with respect to how BJU's president is chosen and who is scripturally qualified to preach the Scripture.  As articulated in its Presidential Profile (enclosed), BJU's Board of Trustees requires that its president possess certain personal traits because the president is not only chief executive of a large and complex educational institution, but also the spiritual leader of a religious community.

Although BJU does not expressly require that its president be male, a "candidate must be an ordained preacher who is an able, evangelistic, biblically qualified, inspirational and biblically sound preacher of the inerrant Word."[12]  The same section of the policy manual refers to the passages of Holy Scripture that set forth the criteria for ordained preachers (and thus, indirectly, for the president of BJU).[13]  Those passages reveal that ordained preachers must be male.[14] Because BJU's selection criteria for its president are drawn directly from the Bible, and thus are based upon BJU's religious tenets, BJU requests exemption from Title IX and its accompanying regulations to the extent that they are interpreted to reach BJU's selection of its president, and any other positions at BJU for which ordination is a qualification.

BJU does not have any written policies expressing the qualifications of speakers for its conferences or other events; the president selects speakers at his discretion.  Regarding those who will preach the Bible at conferences or other events, the president customarily begins with ordained preachers with whom he is familiar, possessing knowledge of their ministries, their orthodoxy, and their degree of agreement with BJU's understanding of Christian doctrine. Speakers who will not preach the Bible need not be ordained.  Both men and women have spoken at campus events and conferences.  However, it is the University's sincerely held belief that only males may be ordained to the preaching and pastoral ministry.

Because its conference speaker selection criteria are based upon its religious tenets, BJU requests a religious exemption to the extent that Title IX or its accompanying regulations are interpreted to include selection of conference speakers or reach BJU's selection of Bible preachers in any other context.

Specifically, BJU requests, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights acknowledge that BJU is exempt from Title IX of the Education Amendments of 1972 and the following implementing regulations, to the extent that they are interpreted to curtail the University's freedom to fill positions requiring ordination and select Bible preachers in accordance with its theological commitments:

---

[12] Bob Jones University Policy Manual, Vol. I, Section 1.4.1.6, p. 24.
[13] *Id.*
[14] 1 Timothy 3; Titus 1.

Ms. Catherine Lhamon
Page 4
April 1, 2016

> 34 C.F.R. § 106.21 (admission)
> 34 C.F.R. § 106.22 (preference in admission)
> 34 C.F.R. § 106.23 (recruitment)
> 34 C.F.R. § 106.31 (education programs or activities)
> 34 C.F.R. § 106.32 (housing)
> 34 C.F.R. § 106.33 (comparable facilities)
> 34 C.F.R. § 106.34 (access to classes and schools)
> 34 C.F.R. § 106.36 (counseling)
> 34 C.F.R. § 106.37 (financial assistance)
> 34 C.F.R. § 106.38 (employment assistance to students)
> 34 C.F.R. § 106.39 (health and insurance benefits and services)
> 34 C.F.R. § 106.40 (marital or parental status)
> 34 C.F.R. § 106.41 (athletics)
> 34 C.F.R. § 106.43 (standards for measuring skill or progress in physical education classes)
> 34 C.F.R. § 106.51-61 (relating to employment)

Thank you in advance for your consideration. I look forward to hearing from you soon. If you require anything further, please do not hesitate to contact me.

Respectfully,

Steve Pettit
President

SP:mam



# UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE FOR CIVIL RIGHTS

June 17, 2016

Steve Pettit
President
Bob Jones University
1700 Wade Hampton Blvd.
Greenville, SC 29614

Dear President Pettit:

I write to respond to your April 1, 2016, letter to the U.S. Department of Education's Office for Civil Rights (OCR), in which you requested a religious exemption for Bob Jones University (University) of Greenville, South Carolina, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

Title IX and its implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explains that members of the University's Board of Trustees, which "completely control[s]" the University, are "like-minded Christians who are required annually to read and indicate consent to the University Creed." According to your letter, the Creed states that the "general nature and object of" the University is to "conduct an institution of learning. . . , giving special emphasis to the Christian religion and the ethics revealed in the Holy Scriptures." Your letter goes on to state that "Board members must also annually read and consent to the mission statement, as well as the general objectives of the University as set forth in the bylaws and charter, and the University's philosophy of education statement." You explain that faculty are also required "to affirm the University Creed . . . since the creed is foundational to all that [the University] does, including what is taught in its classes."

You request an exemption to the extent that Title IX or its implementing regulations "are interpreted to reach [the University's] selection of its president, and any other positions at [the University] for which ordination is a qualification." In support of this request, you explain that the University's Presidential Profile requires that the University president be an ordained preacher. You explain that the Presidential Profile is based on biblical requirements that

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Steve Pettit – page 2

ordained preachers be male.

Your letter also requests a religious exemption from certain provisions of Title IX "to the extent that Title IX or its accompanying regulations are interpreted to include selection of conference speakers or reach [the University]'s selection of Bible preachers in any other context." You explain that the University "president selects speakers at his discretion" for University conferences or other events and that both "men and women have spoken at campus events and conferences" because "[s]peakers who will not preach the Bible need not be ordained." However, because "it is the University's sincerely held belief that only males may be ordained to the preaching and pastoral ministry," only men are selected as speakers who will "preach the Bible at conferences or other events." Specifically, "the president customarily begins with ordained preachers with whom he is familiar, possessing knowledge of their ministries, their orthodoxy, and their degree of agreement with [the University's] understanding of Christian doctrine."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent they "are interpreted to curtail the University's freedom to fill positions requiring ordination and select Bible preachers in accordance with theological commitments:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-106.61 (governing employment).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of sex in the University's decisions to fill positions requiring ordination and select Bible preachers for University conferences and events, and compliance would conflict with the controlling organization's religious tenets.

Steve Pettit – page 3

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above.  In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted.  Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets identified in your request, OCR is obligated to identify a controlling organization to contact to verify those tenets.  If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request.  If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



# BOB JONES UNIVERSITY

### EST. 1927

September 22, 2016

Ms. Catherine Lhamon, Assistant Secretary
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, DC 20202-1100

Re: Supplemental Request for Religious Exemption from Certain Applications of Title IX

Dear Ms. Lhamon:

This letter supplements Bob Jones University's April 1, 2016, Request for Religious Exemption from Certain Applications of Title IX. The purpose of this supplemental request is to supplement, expand, and clarify the scope of that exemption request. Nothing herein should be construed as rescinding or withdrawing the specific provisions of that request.

I hereby request, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights acknowledge that Bob Jones University is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations, to the extent that they are interpreted to curtail the University's freedom to act in accordance with its religious convictions. As president of Bob Jones University, I am the "highest ranking official of the institution," 34 C.F.R. § 106.12(b), and thus qualified to seek these exemptions.

As stated in the April 1 request, and unchanged since that time, BJU is completely controlled by a religious organization: its Board of Trustees.[1] All board members are like-minded Christians who are required annually to read and indicate consent to the University Creed, which states as follows:

---

[1] Bob Jones University Policy Manual, Vol. I, Bylaws, Article III, Section 1, p.8; Bob Jones University Policy Manual, Volume I, Section 1.5.2.1, p.35.

Ms. Catherine Lhamon
Page 2
September 22, 2016

> The general nature and object of the corporation shall be to conduct an institution of learning for the general education of youth in the essentials of culture and in the arts and sciences, giving special emphasis to the Christian religion and the ethics revealed in the Holy Scriptures, combating all atheistic, agnostic, pagan, and so-called scientific adulterations of the Gospel, unqualifiedly affirming and teaching the inspiration of the Bible (both the Old and the New Testaments); the creation of man by the direct act of God; the incarnation and virgin birth of our Lord and Saviour, Jesus Christ; His identification as the Son of God; His vicarious atonement for the sins of mankind by the shedding of His blood on the cross; the resurrection of His body from the tomb; His power to save men from sin; the new birth through the regeneration by the Holy Spirit; and the gift of eternal life by the grace of God. This charter shall never be amended, modified, altered or changed as to the provisions hereinbefore set forth.[2]

At each annual board meeting, all members are required[3] to read and indicate consent to the general objectives of the University as set forth in the bylaws and charter,[4] the University's philosophy of education statement,[5] and the Creed (copies of which are enclosed). Every member of the Board is required to indicate that they have read the Board Handbook and Bylaws and are in agreement with them.[6] Board members who can no longer agree to these items disqualify themselves from membership.[7]

Additionally, BJU serves a particular constituency of independent, fundamental churches, and its mission is, in part, to develop individuals who are "engaged in service and leadership in a biblically faithful local church."

Not only does the University rely on and require all members of its governing board to affirm the University Creed, it also requires its faculty to do so as well, since the creed is foundational to all that it does, including what is taught in its classes.[8] The Board of Trustees and the University submit themselves to the Bible and to these expressions of its doctrine and seek to take positions that are in accord with those standards.

---

[2] Bob Jones University Policy Manual, Vol. I, Preamble to Charter and Bylaws of Bob Jones University, p. 7.
[3] Bob Jones University Policy Manual, Vol. I, Section 1.4.1.3(1), p.21.
[4] Bob Jones University Policy Manual, Vol. I, Preamble to Charter and Bylaws of Bob Jones University, p. 7.
[5] Bob Jones University Policy Manual, Vol. I, Section 1.2.3, p. 6.
[6] Bob Jones University Policy Manual, Vol. I, Section 1.4.1.2(2), p. 21.
[7] Bob Jones University Policy Manual, Vol. I, 1.4.1.3(2), p.21.
[8] Bob Jones University Policy Manual, Vol. I, Preamble to Charter and Bylaws of Bob Jones University, p. 7; Section, 1.4.1.3, p.21; Bob Jones University Policy Manual, Vol. IV, Section 4.5.2.1.1, p. 28.

Ms. Catherine Lhamon
Page 3
September 22, 2016

The Bob Jones University policy manual cites the passages of Holy Scripture that set forth the criteria for ordained preachers and pastoral leadership.[9] Those passages reveal that ordained preachers and pastoral leaders must be male.[10] Therefore, it is the University's sincerely held religious belief that only males may be ordained to the preaching and pastoral leadership ministry.

Because the University believes that only males may be ordained to these ministries:

1) it admits only males to any program whose stated purpose is to prepare for a preaching or pastoral leadership ministry (such as, but not limited to, the Master of Ministry and Doctor of Ministry);

2) it admits only males to any course whose stated purpose is to prepare for a preaching or pastoral leadership ministry (such as, but not limited to, homiletics, church administration, and pastoral leadership);

3) only males may participate in those programs and courses, or any derivative or ancillary activities; and

4) it employs only males to instruct and train those in programs or courses the purpose of which is to prepare for a preaching or pastoral leadership ministry.

Because only males are admitted to preaching and pastoral leadership ministry programs and courses:

1) scholarships, if any, specifically designed to assist those in such preaching and pastoral leadership programs and courses are available only to males;

2) the University recruits only males to those programs and/or courses; and

3) the University does not provide employment or job placement services, career counseling, or networking services for females in any preaching or pastoral leadership ministries, nor does it directly or indirectly assist any person or organization to do so.

Based upon the University's sincerely held belief that only males may be ordained to the preaching and pastoral ministry, BJU requests, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights acknowledge that BJU is exempt from Title IX of the Education Amendments of 1972 and the following implementing

---

[9] Bob Jones University Policy Manual, Vol. I, Section 1.4.1.6, p. 24.
[10] 1 Timothy 3; Titus 1.

Ms. Catherine Lhamon
Page 4
September 22, 2016

regulations, to the extent that they are interpreted to curtail the University's freedom to apply and enforce its belief that only males may be ordained to the pastoral leadership or preaching ministry and to offer programs, courses, and ancillary services as set forth above to only males in accordance with its theological commitments:

> 34 C.F.R. § 106.21 (admission)
> 34 C.F.R. § 106.22 (preference in admission)
> 34 C.F.R. § 106.23 (recruitment)
> 34 C.F.R. § 106.31 (education programs or activities)
> 34 C.F.R. § 106.32 (housing)
> 34 C.F.R. § 106.33 (comparable facilities)
> 34 C.F.R. § 106.34 (access to classes and schools)
> 34 C.F.R. § 106.36 (counseling)
> 34 C.F.R. § 106.37 (financial assistance)
> 34 C.F.R. § 106.38 (employment assistance to students)
> 34 C.F.R. § 106.39 (health and insurance benefits and services)
> 34 C.F.R. § 106.40 (marital or parental status)
> 34 C.F.R. § 106.41 (athletics)
> 34 C.F.R. § 106.43 (standards for measuring skill or progress in physical education classes)
> 34 C.F.R. § 106.51-61 (relating to employment)

Thank you in advance for your consideration. I look forward to hearing from you soon. If you require anything further, please do not hesitate to contact me.

Respectfully,

Steve Pettit
President
Bob Jones University

Enclosures



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

November 17, 2016

Steve Pettit
President
Bob Jones University
1700 Wade Hampton Blvd.
Greenville, SC 29614

Dear President Pettit:

I write to respond to your September 22, 2016, letter to the U.S. Department of Education's Office for Civil Rights (OCR), in which you requested a religious exemption for Bob Jones University (University) of Greenville, South Carolina, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

Title IX and its implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your September 22 letter notes that it supplements your April 1, 2016, request for a religious exemption, which OCR granted by letter dated June 17, 2016. Your request explains that members of the University's Board of Trustees, which "completely control[s]" the University, are "like-minded Christians who are required annually to read and indicate consent to the University Creed." According to your letter, the Creed states that the "general nature and object of" the University is to "conduct an institution of learning . . . , giving special emphasis to the Christian religion and the ethics revealed in the Holy Scriptures." Your letter goes on to state that Board members must also annually "read and indicate consent to the general objectives of the University as set forth in the bylaws and charter [and] the University's philosophy of education statement." You explain that faculty is also required "to affirm the University Creed . . . , since the creed is foundational to all that [the University] does, including what is taught in its classes."

You request an exemption to the extent that Title IX or its implementing regulations "are interpreted to curtail the University's freedom to apply and enforce its belief that only males may be ordained to the pastoral leadership or preaching ministry and to offer programs, courses, and

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ancillary services as set forth [in the September 22 letter] to only males in accordance with its theological commitments." In support of this request, you explain that the University's "policy manual cites the passages of Holy Scripture that set forth the criteria for ordained pastoral leaders," including that "only males may be ordained to the preaching and pastoral leadership ministry."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent they "are interpreted to curtail the University's freedom to apply and enforce its belief that only males may be ordained to the pastoral leadership or preaching ministry and to offer programs, courses, and ancillary services ... to only males in accordance with its theological commitments:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-106.61 (governing employment).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of sex in education programs and activities for individuals ordained to the pastoral leadership or preaching ministry, and that prepare individuals for the pastoral leadership or preaching ministry, including programs, courses, and ancillary services, and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets identified in your request, OCR is obligated to identify a controlling organization to contact to verify those

Steve Pettit – page 3

tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



# BOB JONES UNIVERSITY
### EST. 1927

April 5, 2017

Sandra Battle, Acting Assistant Secretary
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, DC  20202-1100

      Re: Religious Exemption from Certain Applications of Title IX

Dear Ms. Battle:

      I hereby request, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights (OCR) acknowledge that Bob Jones University is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations, to the extent that they are interpreted to curtail the University's freedom to act in accordance with its religious convictions.  As President of Bob Jones University, I am the "highest ranking official of the institution," 34 C.F.R. § 106.12(b), and thus qualified to seek these exemptions.

      Bob Jones University ("BJU" or "the University") was founded in 1927 as a Christ-centered institution of higher education, emphasizing theology and the arts.[1]  BJU is committed, "[w]ithin the cultural and academic soil of liberal arts higher education," to "grow[ing] Christlike character that is scripturally disciplined, others-serving, God-loving, Christ-proclaiming and focused above."[2]

      BJU is completely controlled by a religious organization: its Board of Trustees.[3]  All board members are like-minded Christians who are required annually to read and indicate consent to the University Creed, which states as follows:

---

[1] *See* http://www.bju.edu/about/history.php.

[2] *See* http://www.bju.edu/about/mission-statement.php.

[3] Bob Jones University Policy Manual, Vol. I, Bylaws, Article III, Section 1, p. 8; Bob Jones University Policy Manual, Volume I, Section 1.5.2.1, p. 35.

The general nature and object of the corporation shall be to conduct an institution of learning for the general education of youth in the essentials of culture and in the arts and sciences, giving special emphasis to the Christian religion and the ethics revealed in the Holy Scriptures, combating all atheistic, agnostic, pagan, and so-called scientific adulterations of the Gospel, unqualifiedly affirming and teaching the inspiration of the Bible (both the Old and the New Testaments); the creation of man by the direct act of God; the incarnation and virgin birth of our Lord and Saviour, Jesus Christ; His identification as the Son of God; His vicarious atonement for the sins of mankind by the shedding of His blood on the cross; the resurrection of His body from the tomb; His power to save men from sin; the new birth through the regeneration by the Holy Spirit; and the gift of eternal life by the grace of God. This charter shall never be amended, modified, altered or changed as to the provisions hereinbefore set forth.[4]

At each annual board meeting, all members are required[5] to read and indicate consent to the general objectives of the University as set forth in the bylaws and charter,[6] the University's philosophy of education statement,[7] and the Creed (copies of which are enclosed). Every member of the Board is required to indicate that they have read the Board Handbook and Bylaws and are in agreement with them.[8] Board members who can no longer agree to these items disqualify themselves from membership.[9]

Additionally, BJU serves a particular constituency of independent, fundamental churches, and its mission is, in part, to develop individuals who are "engaged in service and leadership in a biblically faithful local church."[10]

Not only does the University rely on and require all members of its governing board to affirm the University Creed, it also requires its faculty to do so as well, since the Creed is foundational to all that the University does, including what is taught in its classes.[11] The Board of Trustees and the University submit themselves to the Bible and to these expressions of its doctrine and seek to take positions that are in accord with those standards.

---

[4] Policy Manual, Vol. I, Preamble to Charter and Bylaws of Bob Jones University, p. 7.

[5] Policy Manual, Vol. I, Section 1.4.1.3(1), p. 21.

[6] Policy Manual, Vol. I, Preamble to Charter and Bylaws of Bob Jones University, p. 7.

[7] Policy Manual, Vol. I, Section 1.2.3, p. 6.

[8] Policy Manual, Vol. I, Section 1.4.1.2(1), p. 21.

[9] Bob Jones University Policy Manual, Vol. I, 1.4.1.3(2), p. 21.

[10] *See* http://www.bju.edu/about/creed-mission.php.

[11] Policy Manual, Vol. I, Preamble to Charter and Bylaws of Bob Jones University, p. 7; Section, 1.4.1.3, p. 21; Policy Manual, Vol. IV, Section 4.5.2.1.1, p. 28.

Therefore, consistent with a biblical interpretation of the value of life, BJU has developed a position statement on the sanctity of life, which states in relevant part:

> We believe that followers of Jesus Christ who are governed by the authority of the Bible are ethically obligated to preserve, promote, and defend the sanctity of human life.

> We believe that when dealing with areas of uncertainty and ethical dilemmas we should take the safest possible course and promote life. Jesus teaches this principle of carefulness in the Sermon on the Mount when He instructs His followers not only to avoid killing, but to cease from any activity or passion that increases one's proclivity toward murder (Matt. 5:21-22).

> We believe that the Bible consistently depicts fetal life as both personal and human. And we believe that our thinking about issues related to contraception, the harvesting of embryonic stem cells, and aborticides should be governed accordingly.

> Therefore, we oppose the practice of abortion on the grounds that it involves the intentional, purposeful, and direct ending of a human life that began at conception. We oppose the causation of the death of an unborn human child even if there is a conflict between the survival of the mother and the survival of the unborn child.

> In very rare cases when it is medically determined that continuing a pregnancy would jeopardize the physical life of the mother, we would support treatment to preserve the life of the mother short of abortion.

> We oppose suicide on the grounds that God owns human life. (The Bible nowhere depicts suicide as a commendable personal choice [1 Sam. 31:4; 2 Sam. 17:23; 1 Kings 16:18-20; Matt. 27:5; Acts 1:18].)

> We oppose all forms of euthanasia, since God reserves the right to determine life's end (1 Cor. 6:19-20; Job 14:5).

> We recognize that scientific advances have raised significant ethical questions concerning the indefinite prolongation of life through medical support systems. These questions have to be handled individually by the family of those suffering. But in general, we believe that although Christians should sustain life wherever possible, we are not obligated to prolong the process of dying.

We reserve the right to make institutional decisions consistent with these positions for employment, hiring, retention, student admissions, discipline and all other matters.[12]

For that reason, I request, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that OCR acknowledge that BJU is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations, to the extent that they are interpreted to curtail BJU's freedom to apply and enforce its position on the sanctity of human life in accordance with its theologically-grounded convictions.

Additionally, consistent with historic understanding of the Holy Scriptures and our doctrinal standards, BJU affirms the following regarding sexual conduct:

The Scriptures teach that God created man and woman in His image (Gen. 1:27-28), brought them together in the life-long covenant relationship of marriage and blessed this union (Gen. 1:28). Furthermore, the Scriptures make plain that this first marriage was intended to be an authoritative pattern for all future human marriages as evidenced by the teachings from Moses (Gen. 2:18-24), the Wisdom books (Prov. 12:4; 18:22; 31:10; Eccles. 9:9), the Prophets (Mal. 2:13-16), the Apostles (1 Cor. 7:1-16; Eph. 5:21-33; Col. 3:14-19; Heb. 13:4; 1 Pet. 3:1-7), and Jesus Himself (Matt. 19:4-6; Mark 10:1-9).

Marriage is a covenantal life-long relationship between a woman and a man who were physically created and assigned these genders by God (Gen. 1:27; Ps. 139:13-16; Matt. 19:4; Mark 10:6). We believe God intended heterosexual marriage for the propagation of the human race and the loving expression of healthy relational and sexual intimacy, and to picture the covenant relationship He has with all believers (Eph. 5:22-33).

Human sexuality is part of God's divine design for human beings (Gen. 1:28). However, the Bible restricts all forms of consensual sexual activity to within the boundaries of the marriage relationship (1 Cor. 7:1-5; Heb. 13:4). The Bible clearly prohibits not only non-consensual sexual misconduct (Deut. 22:25-27) but also any consensual sexual activity outside the boundaries of heterosexual marriage (1 Thess. 4:1-8). Furthermore the Bible specifically names as sinful and prohibits any form of sexual activity between persons of the same sex (Rom. 1:26-27; 1 Cor. 6:9-10; 1 Tim. 1:10), polygamy (Matt. 19:4-6; 1 Cor. 7:11), incest (Lev. 18:6-18; 1 Cor. 5:1), bestiality (Exod. 22:19; Lev. 18:23; 20:15-16; Deut. 27:21; Gal. 5:19; Eph. 5:3; Col. 3:5), adultery (Exod. 20:14; Mark 10:19; Luke 18:20; James 2:11), and

---

[12] *See* http://www.bju.edu/about/positions.php.

fornication of any sort including pornography (1 Cor. 6:9-10; 1 Thess. 4:3-8; Lev. 18:20).[13]

BJU, in service to the Church, understands that some with Christian faith may struggle with same-sex attraction. But, BJU, consistent with Scriptural teaching, affirms that sexual activities with members of the same sex cannot be condoned as acceptable expressions of one's sexuality. As you are aware, the EEOC has begun declaring that the ban on sex discrimination in Title VII of the Civil Rights Act of 1964 also forbids discrimination on the basis of sexual orientation.[14]

It is conceivable that OCR could interpret Title IX of the Education Amendments of 1972 the same way. To the extent these suppositions are correct, it appears as though compliance with Title IX, if interpreted by ED OCR to reach sexual orientation discrimination, would also be inconsistent with the theological commitment of BJU. BJU, therefore, also claims exemption on this basis out of an abundance of caution.

Finally, consistent with these theological standards, the University has developed a position statement addressing gender identity (enclosed). That statement provides in pertinent part as follows:

> God created man and woman in His image as two distinct but equal genders which He intends to use for His glory (Gen. 1:26-27). Furthermore, individual gender is assigned by God and determined at conception (Ps. 139:13-16). Therefore we believe that to intentionally alter or change one's physical gender or to live as a gender other than the one assigned at conception is to reject God's right as Creator to assign gender to His creatures and is a personal rejection of His plan to glorify Himself through the original gender He assigned that individual (1 Cor. 10:31).

> Because the positions set forth in this statement are grounded in the biblical, moral and ethical commands clearly taught and demanded by Scripture, BJU expects all employees and students enrolled at BJU to agree with and abide by this statement on marriage, human sexuality, and gender identity.

As you know, OCR has issued a "Dear Colleague" letter jointly with the Department of Justice, which states that Title IX's prohibition on sex discrimination "encompasses discrimination based on a student's gender identity, including discrimination based on a student's transgender

---

[13] *See* http://www.bju.edu/about/positions.php.
[14] *See* http://www.eeoc.gov/decisions/0120133080.pdf.

status."[15]  That is, a school "must not treat a transgender student differently from the way it treats other students of the same gender identity."[16]

OCR's letter indicated that a school must use pronouns and names that reflect a transgender student's gender identity, and permit the student full access, based upon gender identity, to sex-segregated activities and facilities, including locker rooms, restrooms, showers, housing (including overnight accommodations), and athletic teams.[17]  And as you also know, OCR previously issued guidance on sexual violence prevention which incorporates discrimination based on "gender identity" as part of "sex discrimination" under the statute.[18]

Moreover, the resolution agreement[19] between the Arcadia Unified School District and OCR (and the Department of Justice) requires that school district to permit transgender students to use the restroom, locker room, and living accommodations of their choice, and to participate in athletic programs as a member of the sex to which they believe they belong.[20]  It is thus reasonable to suppose that OCR believes that Title IX requires such responses.

It is also reasonable to presume that your office interprets Title IX to impose gender identity non-discrimination obligations upon covered institutions in the employment context.  To the extent these suppositions are correct, it appears as though compliance with Title IX, as interpreted by OCR to reach transgender discrimination, would be inconsistent with the religious tenets of the University.

For that reason, I request, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that OCR acknowledge that BJU is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations, to the extent that they are interpreted to curtail BJU's freedom to respond to transgender individuals in accordance with its theologically-grounded convictions.

All of us are sinners. We live in a world broken by sin and are called to live out our biblical beliefs among those who may disagree with us. We desire to do so in ways that honor God and point them to Him (1 Pet. 1:11-12). We believe every person must be treated with respect and

---

[15] U.S. Department of Justice and U.S. Department of Education, Dear Colleague Letter on Transgender Students, *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201605-title-ix-transgender.pdf.
[16] *Id.* at p. 2.
[17] *Id.*
[18] U.S. Department of Education, Questions and Answers on Title IX and Sexual Violence, *available at* http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf at 5 ("Title IX's sex discrimination prohibition extends to claims of discrimination based on gender identity or failure to conform to stereotypical notions of masculinity or femininity and OCR accepts such complaints for investigation.")
[19] Resolution Agreement Between the Arcadia Unified School District, the U.S. Department of Education, Office for Civil Rights, and the U.S. Department of Justice, Civil Rights Division, *available at* http://www.justice.gov/sites/default/files/crt/legacy/2013/07/26/arcadiaagree.pdf.
[20] *Id.*

compassion and are committed to living out our commitments to these biblical standards with grace and humility. We also believe that we are called to speak God's truth in love (Eph. 4:15) as we call all men to recognize that all human sinfulness is an offense to God (Rom. 3:10-11; Rom. 6:23a), that God has displayed immense grace and mercy toward all sinners (Eph. 2:1-10), and that He offers a full and free forgiveness through Jesus Christ to all who repent and forsake their sin and turn in faith to Him (Acts 3:19-21; Rom. 6:23; 10:9-10; 1 Cor. 6:9-11; 1 John 1:8-9).[21]

BJU accordingly requests that your office acknowledge that the BJU is exempt from Title IX and the following implementing regulations (to the extent they restrict BJU's freedom to apply and enforce its position on the sanctity of human life, and to the extent they are interpreted to reach sexual orientation or gender identity):

34 C.F.R. § 106.21 (admission)
34 C.F.R. § 106.22 (preference in admission)
34 C.F.R. § 106.23 (recruitment)
34 C.F.R. § 106.31 (education programs or activities)
34 C.F.R. § 106.32 (housing)
34 C.F.R. § 106.33 (comparable facilities)
34 C.F.R. § 106.34 (access to classes and schools)
34 C.F.R. § 106.36 (counseling)
34 C.F.R. § 106.37 (financial assistance)
34 C.F.R. § 106.38 (employment assistance to students)
34 C.F.R. § 106.39 (health and insurance benefits and services)
34 C.F.R. § 106.40 (marital or parental status)
34 C.F.R. § 106.41 (athletics)
34 C.F.R. § 106.43 (standards for measuring skill or progress in physical education classes)
34 C.F.R. § 106.51-61 (relating to employment)

Thank you in advance for your consideration. I look forward to hearing from you soon. If you require anything further, please do not hesitate to contact me.

Yours sincerely,

Steve Pettit
President, Bob Jones University

_____

[21] *See* http://www.bju.edu/about/positions.php.

**Charter and Bylaws of Bob Jones University**

**Preamble**

The basic principles of all bylaws or rules and regulations of Bob Jones University shall be the fundamental truths embodied in the University Creed as perpetuated in the charter of the institution as follows:

> The general nature and object of the corporation shall be to conduct an institution of learning for the general education of youth in the essentials of culture and in the arts and sciences, giving special emphasis to the Christian religion and the ethics revealed in the Holy Scriptures, combating all atheistic, agnostic, pagan, and so-called scientific adulterations of the Gospel, unqualifiedly affirming and teaching the inspiration of the Bible (both the Old and the New Testaments); the creation of man by the direct act of God; the incarnation and virgin birth of our Lord and Saviour, Jesus Christ; His identification as the Son of God; His vicarious atonement for the sins of mankind by the shedding of His blood on the cross; the resurrection of His body from the tomb; His power to save men from sin; the new birth through the regeneration by the Holy Spirit; and the gift of eternal life by the grace of God. This charter shall never be amended, modified, altered or changed as to the provisions hereinbefore set forth.

All resolutions, motions and actions of the Board of Trustees of the University and the Executive Committee shall be construed and interpreted in the light of this creed. All resolutions, motions or actions by the Board of Trustees, the Executive Committee, the faculty, or any officer or agent of the University which are contrary to the fundamental principles set forth in the creed are hereby declared to be null and void. It shall be the duty of the Executive Committee hereinafter provided for to keep a strict supervision over the affairs of the University and at all times to protect, uphold and defend the creed and all other bylaws and rules and regulations of the University lawfully adopted.

### 1.2.3 Christian Philosophy of Education

Christian education at BJU is a spiritual ministry that has as its purpose to further the process of spiritual development in the image of God. BJU endeavors to teach students to know God and to imitate Him in His character and in His works. This commitment embraces all that is done in and out of the classroom. Knowledge of the written Word of God, the Bible, remains at the center. The academic studies radiate from this center as studies of God's works. Biblical truth is not confined to the required Bible courses but is diffused throughout the curriculum.

Yet to know God implies more than just knowledge about God. The knowledge of God that is unique to Christian education is a personal knowledge that begins with repentance of sin and faith in Jesus Christ as Savior and develops through obedience to and communion with God. To know God is to be born into the family of God and to live in fellowship with Him. With this knowledge as the starting point, student attention is directed outward to the full range of natural facts and human experience and to formulations of that experience in history and philosophy, literature and art—all as reflective of the work of God intersecting with the work of man. The student develops a worldview coherent with the work of God in his life.

The work of God in a student's life is a process of his imitating God in his character and service. Accordingly, BJU faculty and Administration urge students onward in this process and provide an environment structured toward this purpose. As in secular education, the environment of Christian education is artificially selective, including elements favorable to its purpose and suppressing those unfavorable to it. BJU does not apologize for the prescriptiveness of the educational experience here. Its character goals require it.

BJU also provides students with ministry opportunities so it becomes natural to them to live out their beliefs in service to God and to others. Students are requested to have weekend ministries of various sorts both in the immediate area and in surrounding states as well. The University keeps before all its students their responsibility to share the Gospel and minister to others.

**Bob Jones University Creed**

I believe in the inspiration of the Bible (both the Old and the New Testaments); the creation of man by the direct act of God; the incarnation and virgin birth of our Lord and Saviour, Jesus Christ; His identification as the Son of God; His vicarious atonement for the sins of mankind by the shedding of His blood on the cross; the resurrection of His body from the tomb; His power to save men from sin; the new birth through the regeneration by the Holy Spirit; and the gift of eternal life by the grace of God.

**Statement about Gender Identity**

God created man and woman in His image as two distinct but equal genders which He intends to use for His glory (Gen. 1:26-27). Furthermore, individual gender is assigned by God and determined at conception (Ps. 139:13-16). Therefore we believe that to intentionally alter or change one's physical gender or to live as a gender other than the one assigned at conception is to reject God's right as Creator to assign gender to His creatures and is a personal rejection of His plan to glorify Himself through the original gender He assigned that individual (1 Cor. 10:31).



BOB JONES UNIVERSITY

1700 Wade Hampton Blvd. Greenville, SC 29614

Sandra Battle, Acting Assistant Secretary
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, DC 20202-1100



7012 2210 0001 5274 0697

neopost
04/05/2017
US POSTAGE $004.96⁰

ZIP 29614
041L172202981

FIRST-CLASS MAIL



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

December 21, 2017

Steve Pettit
President
Bob Jones University
1700 Wade Hampton Blvd.
Greenville, SC 29614

Dear President Pettit:

I write in response to your April 5, 2017, letter to the U.S. Department of Education's Office for
Civil Rights (OCR), in which you requested a religious exemption for Bob Jones University
(University) of Greenville, South Carolina, from Title IX of the Educational Amendments of
1972 (Title IX), 20 U.S.C. § 1681.

Title IX prohibits discrimination on the basis of sex in any education program or activity
operated by a recipient of Federal financial assistance. Title IX and its implementing regulation
at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution that is
controlled by a religious organization to the extent that the application of Title IX would be
inconsistent with the controlling organization's religious tenets. Therefore, such educational
institutions may request an exemption from Title IX by identifying the provisions of Title IX that
conflict with a specific tenet of the religious organization. The request must identify the religious
organization that controls the educational institution and specify the tenets of that organization
and the provisions of the law or regulation that conflict with those tenets.

Your request letter states that the University is "completely controlled" by its Board of Trustees,
the members of which are "like-minded Christians who are required annually to read and
indicate consent to the University Creed." According to your letter, the Creed states that the
"general nature and object of" the University is to "conduct an institution of learning . . . , giving
special emphasis to the Christian religion and the ethics revealed in the Holy Scriptures." Your
letter goes on to state that Board members must also annually "read and indicate consent to the
general objectives of the University as set forth in the bylaws and charter [and] the University's
philosophy of education statement." You explain that faculty members are also required "to
affirm the University Creed . . . , since the creed is foundational to all that the University does,
including what is taught in its classes."

Your letter requests exemption from certain provisions of Title IX and its implementing
regulations to the extent they restrict the University's freedom to apply and enforce its position
on the sanctity of human life, and to the extent they are interpreted to reach sexual orientation or
gender identity. In support of this request, your letter cites the University's position statement on
the sanctity of life, which explains that "followers of Jesus Christ who are governed by the

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

Steve Pettit — page 2

authority of the Bible are ethically obligated to preserve, promote, and defend the sanctity of human life, and that the University therefore opposes "the practice of abortion on the grounds that it involves the intentional, purposeful, and direct ending of a human life that began at conception," "suicide on the grounds that God owns human life," and "all forms of euthanasia, since God reserves the right to determine life's end." Your letter further states that "God created man and woman in His image," that "[m]arriage is a covenantal life-long relationship between a woman and a man who were physically created and assigned these genders by God" and that the Bible prohibits "any consensual sexual activity outside the boundaries of heterosexual marriage." Finally, your letter cites the University's position on gender identity, which provides that "individual gender is assigned by God and determined at conception" and "that to intentionally alter or change one's physical gender or to live as a gender other than the one assigned at conception is to reject God's right as Creator to assign gender to His creatures."

Your letter states that, for the above reasons, the University is requesting an exemption from the following regulatory provisions to the extent they restrict the University's freedom to apply and enforce its position on the sanctity of human life, and to the extent they are interpreted to reach sexual orientation or gender identity:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing marital or parental status);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-61 (governing employment).

The University is exempt from these provisions to the extent that compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here recognized.

Steve Pettit — page 3

I hope this letter fully responds to your request. If you have any further questions, please do not hesitate to contact me.

Sincerely,

Candice Jackson
Acting Assistant Secretary for Civil Rights