CAROL FEDERIGHI
TX Bar No. 06872950
*Lead Counsel*

BRIAN B. BOYNTON
Acting Assistant Attorney General
CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
carol.federighi@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

| | |
|---|---|
| ELIZABETH HUNTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION; and SUZANNE GOLDBERG, in her official capacity as Acting Assistant Secretary for the Office for Civil Rights, U.S. Department of Education, *et al.*, <br><br> Defendants. | Civil Action No. 6:21-cv-00474-AA <br><br> **DEFENDANTS' OPPOSITION TO MOTIONS TO INTERVENE ECF NOS. 8 AND 26** |

## INTRODUCTION

Plaintiffs bring suit against the U.S. Department of Education (the "Department" or

"ED") and Suzanne Goldberg, Acting Assistant Secretary for Civil Rights, ED (collectively,

"Federal Defendants"), to challenge the Federal Defendants' implementation of the religious exemption included in Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a)(3), as applied to "sexual and gender minority students" attending private religious colleges and universities that receive federal funding. Compl. ¶ 3 (ECF No. 1). Three Christian universities, Western Baptist University d/b/a Corban University, William Jessup University, and Phoenix Seminary (the "Religious Schools"), and the Council for Christian Colleges & Universities ("CCCU") (collectively, "Proposed Intervenors") seek to intervene to defend the validity of Title IX's religious exemption. However, they have not established their entitlement to either mandatory or permissive intervention. The Proposed Intervenors have failed to show how their interests diverge from the Federal Defendants' interests or how the Federal Defendants and their counsel, the United States Department of Justice, which is responsible for defending federal statutes in court, would inadequately defend the religious exemption. For these reasons, the Proposed Intervenors have failed to show why they should be permitted to intervene and their Motions to Intervene should be denied.

## BACKGROUND

### I. STATUTORY AND REGULATORY BACKGROUND

Title IX was enacted as part of the Education Amendments of 1972, Pub. L. No. 92-318, §§ 901-905, 86 Stat. 373-375 (June 23, 1972). Section 901, which is patterned after Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, broadly proscribes discrimination based on sex in federally assisted education programs and activities. Section 901(a) provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving

Federal financial assistance … ." 20 U.S.C. § 1681(a). That section further provides that it "shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization." *Id.* § 1681(a)(3). This provision is generally referred to as the "Religious Exemption."

The Department of Education is the federal agency primarily responsible for providing Federal financial assistance to States, local educational agencies, and other entities for education programs and activities, and, as such, has primary responsibility for administering and enforcing Title IX. ED's Office for Civil Rights ("OCR") enforces Title IX on behalf of ED. ED's regulations implementing Title IX are set forth at 34 C.F.R. Part 106. Those regulations contain a provision implementing the religious exemption included in Title IX. *See* 34 C.F.R. § 106.12. That provision sets forth the procedures for an institution wishing to assert such an exemption and the criteria institutions must meet to be considered "controlled by a religious organization." *Id.*

## II.    THE PRESENT SUIT AND INTERVENORS' MOTIONS

Plaintiffs are a number of past and present students who are attending or have attended a variety of religiously controlled colleges and universities. Compl. ¶¶ 11-43. They bring this suit under 42 U.S.C. § 1983 as a putative class action to challenge the Federal Defendants' application of the Religious Exemption as applied to sexual and gender minority ("LGBTQ+") students, including themselves, at such schools. *Id.* ¶¶ 1, 6. They assert that ED has a "policy and practice" of denying claims of discrimination under Title IX brought by LGBTQ+ students based on the Religious Exemption, in violation of their substantive due process and equal

protection rights (*id*. ¶¶ 492-512), and that the Religious Exemption and the Department's application of it violate the Establishment Clause (*id*. ¶¶ 513-524).

Before the Federal Defendants have responded to the Complaint, both the Religious Schools and CCCU filed motions seeking to intervene as defendants. *See* ECF Nos. 8, 26. The plaintiffs have now filed an Amended Complaint (ECF No. 35), and the Federal Defendants' response to the latter is due June 21, 2021.

## LEGAL STANDARDS

Rule 24 of the Federal Rules of Civil Procedure governs the terms under which a non-party may intervene. The first part of the rule sets forth certain circumstances under which a court *must* permit intervention as of right: when the movant "is given an unconditional right to intervene by a federal statute; or … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). The second part of the rule sets forth other circumstances under which a court *may* permit intervention: when the movant "is given a conditional right to intervene by a federal statute; or . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

## ARGUMENT

The Proposed Intervenors have failed to show that either mandatory or permissive intervention is warranted here.

# I. MANDATORY INTERVENTION SHOULD BE DENIED BECAUSE THE PROPOSED INTERVENORS HAVE NOT MADE A "COMPELLING SHOWING" THAT THE FEDERAL DEFENDANTS WILL NOT ADEQUATELY REPRESENT THEIR INTERESTS.

A party seeking to intervene as of right under Rule 24(a)(2) must meet four requirements: (1) the application must be timely; (2) the applicant must have a significant protectable interest in the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); *see also Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). For the purposes of the present motion only, the Federal Defendants do not dispute that the Proposed Intervenors satisfy the first three requirements.[1] However, the Proposed Intervenors have not established the fourth requirement, that the existing parties, specifically, the Federal Defendants, will not adequately represent their interests. "Each of these four requirements must be satisfied to support a right to intervene," *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), and "[f]ailure to satisfy any one of the

---

[1] The Federal Defendants note that the Religious Schools lack Article III standing since none of the plaintiffs have attended or currently attend those schools. Compl. ¶¶ 11-43. This lack of standing may be relevant to whether they have a "significant protectable interest." *See SurvJustice Inc. v. DeVos*, No. 18-cv-00535-JSC, 2019 WL 1427447, at *1 (N.D. Cal. Mar. 29, 2019). However, "[w]hether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use v. Montana Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011) (internal citations and quotation marks omitted); *see also Prete*, 438 F.3d at 955 n.8 ("This court also has not definitively ruled on the issue" of "whether an intervenor-applicant must independently establish Article III standing to intervene as of right."). *But see In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*, 704 F.3d 972, 976 (D.C, Cir. 2013) ("This court has held that a movant seeking to intervene as of right must additionally demonstrate Article III standing."). In view of the practical nature of the "significant protectable interest" inquiry, the Federal Defendants do not at present rest on the Religious Schools' lack of standing to support denial of their motion to intervene as of right.

requirements is fatal to the application." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Accordingly, the Proposed Intervenors' motions for intervention as of right must be denied.

The Ninth Circuit "considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. In practice, however, "[t]he 'most important factor' to determine whether a proposed intervenor is adequately represented by a present party to the action is 'how the [intervenor's] interest compares with the interests of existing parties.'" *Perry*, 587 F.3d at 950-51 (quoting *Arakaki*, 324 F.3d at 1086). So "[w]here the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Id.* (quoting *Arakaki*, 324 F.3d at 1086) (citing *League of United Latin Am. Citizens v. Wilson ("LULAC")*, 131 F.3d 1297, 1305 (9th Cir. 1997)). In addition, "[t]here is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents, which must be rebutted with a compelling showing." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (internal quotation marks omitted). And "[t]his presumption of adequacy is 'nowhere more applicable than in a case where the Department of Justice deploys its formidable resources to defend the constitutionality of a congressional enactment.'" *Freedom from Religion Found.*,

*Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006)).

Here, the Proposed Intervenors must make a "compelling showing" of inadequacy because the Federal Defendants' representation of the interests advanced by the Proposed Intervenors is presumed to be adequate, as a matter of law, for two reasons: (1) because the Federal Defendants and the Proposed Intervenors "share the same 'ultimate objective,'" *Perry*, 587 F.3d at 951 (quoting *Arakaki*, 324 F.3d at 1086)—namely, to uphold the Religious Exemption as it is currently applied—and (2) because the Federal Defendants are a federal agency and federal official represented by the Department of Justice, and the Complaint challenges the Federal Defendants' application of a federal statute, *Citizens for Balanced Use*, 647 F.3d at 898; *Freedom from Religion Found.*, 644 F.3d at 841. Specifically, the Federal Defendants' ultimate objective is to defend the statutory exemption and its current application by ED, which is the objective sought by the Proposed Intervenors here. *Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 275 (D. Ariz. 2020) (holding that "'it is apparent that the ultimate objective' of the Proposed Intervenors and the State is identical—'defending the constitutionality' of state laws"); *see also Prete*, 438 F.3d at 957-59 (holding that a public interest organization seeking intervention to defend a state constitutional ballot initiative failed to defeat the presumption of adequate representation when the ultimate objective of both the organization and the defendant party was to uphold the measure's validity).

The Proposed Intervenors have not made the necessary "compelling showing" that the Federal Defendants will fail to adequately represent their interests in pursuing the shared

objective of upholding the Religious Exemption as applied.[2] In an attempt to establish that their interests will not be adequately protected, the Proposed Intervenors cite a variety of statements and actions taken by the current Administration regarding protecting LGBTQ+ individuals from discrimination in a variety of contexts and then leap to concluding that "the current defendants will not defend the Religious Exemption as vigorously as Religious Schools," Religious Schools' Mot. to Intervene & Mem. in Support 24, ECF No. 8, or may even be "openly hostile" to defending the Religious Exemption as applied to LGBTQ+ students, Proposed Def.-Intervenor CCCU's Mot. to Intervene & Mem. in Support 23, ECF No. 26. *See also id.* at 8, 23-24; ECF No. 9, at 20-24. But none of the statements cited by the Proposed Intervenors expressly discusses the Religious Exemption in Title IX or suggests that the Federal Defendants will not defend the constitutionality of that statutory exemption. To be sure, the Department of Education is conducting a comprehensive review of its regulations implementing Title IX pursuant to Executive Order 14,021, which sets forth the current administration's policy on guaranteeing an educational environment free from discrimination on the basis of sex. *See* Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity, 86 Fed. Reg. 13,803 (Mar. 8, 2021). But neither the Administration's stated policy positions nor the Department's review of existing regulations abrogate the government's duty to defend federal statutes and regulations in court as a legal matter. At present, the Proposed Intervenors can only speculate that the Federal

---

[2] To be sure, the Federal Defendants have not yet filed any pleading or motion setting forth their legal position in this case. This fact alone does not justify intervention at this stage, however; rather, at most it argues for denial of the Proposed Intervenors' motions without prejudice to renewal at a later date if it transpires that the Federal Defendants are not fully defending the application of the Religious Exemption as challenged here.

Defendants will back away from a full defense of the Religious Exemption and its challenged application and such speculation is too attenuated to constitute a "compelling showing" overcoming the presumption that the Department of Justice, which is responsible for defending federal statutes in court, will adequately defend against the legal challenges the Religious Exemption and its application.

The Proposed Intervenors also argue that they are asserting a "personal interest in the religious exemption that is not shared with the public," ECF No. 26, at 22; *see also* ECF No. 8, at 24 (referencing the "individual parochial interest" of the Religious Schools), and that the Federal Defendants "are unlikely to fully understand the importance of the religious exemption to religious colleges" because they are "ill-equipped to understand the religious implications of narrowing Title IX's religious exemption." ECF No. 26, at 23. But, at this stage of the litigation, it is premature to conclude that the Federal Defendants would neglect to raise, or be "ill-equipped" to develop, effective arguments in support of the Religious Exemption, including those regarding the legislative intent behind the exemption and the intersection between the Religious Exemption and the Free Exercise and Establishment Clauses of the First Amendment. In any event, the Proposed Intervenors must do more than show that the Federal Defendants would choose to emphasize different legal arguments as a matter of legal strategy to justify intervention. *See LULAC*, 131 F.3d at 1306 ("When a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status."). And, to the extent that the Proposed Intervenors wish to explain "the practical ways in which the loss of Title IX's religious

exemption would harm its members' education operations and impact their students," they can do that through participation as amici.

In short, the Proposed Intervenors have not made a "compelling showing" as to why the Department of Justice, acting on behalf of the Department of Education defendants, cannot adequately represent their interests in this case in defending the Religious Exemption and its challenged application. Consequently, the Proposed Intervenors have failed to demonstrate that they are entitled to intervention as a matter of right.

## II. PERMISSIVE INTERVENTION SHOULD BE DENIED AS A MATTER OF DISCRETION FOR THE SAME REASONS MANDATORY INTERVENTION SHOULD BE DENIED.

Pursuant to Federal Rule of Civil Procedure 24(b), "a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999) (quoting *LULAC*, 131 F.3d at 1308). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d at 412. In exercising its discretion, the court may also consider other factors, including the proposed intervenors' "standing to raise relevant legal issues" and the intervention-of-right factors of "the nature and extent of the intervenors' interest" and "whether the intervenors' interests are adequately represented by other parties." *Spangler v. Pasadena City Bd. of Ed*., 552 F.2d 1326, 1329 (9th Cir. 1977)). Rule 24(b)(3) also requires that the court "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

For the purposes of this motion only, the Federal Defendants do not contest that requirements for permissive intervention are met. However, the Court should deny permissive intervention as a matter of discretion. As discussed in the preceding section, the Proposed Intervenors' interests and the Federal Defendants' interests coincide and the Federal Defendants will represent those interests adequately. Moreover, the Religious Schools lack standing. Accordingly, there is no evidence that "parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler*, 552 F.2d at 1329. Thus, participation of additional parties in the case will produce few benefits. On the other hand, it could well have adverse effects. The presence of additional parties will complicate resolution, for example, by multiplying the number of motions that need to be resolved, increasing the amount of discovery requests, if the case proceeds to discovery, and/or making settlement more complicated. For these reasons, permissive intervention should be denied. *See Perry*, 587 F.3d at 955 ("The district court's denial of intervention based on the identity of interests of the Campaign and the Proponents and the Proponents' ability to represent those interests adequately is supported by our case law on intervention in other contexts."); *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir.1993) (denying permissive intervention where the government party to the case made the same arguments as the intervenors, and the government party would adequately represent the intervenors' privacy interests).

## CONCLUSION

For the foregoing reasons, the Court should deny the Motions to Intervene.

Dated: June 8, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

/s/ *Carol Federighi*
CAROL FEDERIGHI, TX Bar No. 06872950
*Lead Counsel*
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
carol.federighi@usdoj.gov

*Attorneys for Defendants*