KRISTEN K. WAGGONER,
OR Bar No. 067077
*Lead Counsel*

RYAN J. TUCKER*
AZ Bar No. 034382
MARK A. LIPPELMANN*
AZ BAR No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
kwaggoner@ADFlegal.org
rtucker@ADFlegal.org
mlippelmann@ADFlegal.org

DAVID A. CORTMAN*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org

**Admitted pro hac vice*

*Attorneys for Proposed Intervenor-Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ELIZABETH HUNTER, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION, et al., <br><br> *Defendants*, <br><br> WESTERN BAPTIST COLLEGE d/b/a CORBAN UNIVERSITY; WILLIAM JESSUP UNIVERSITY; PHOENIX SEMINARY, <br><br> *[Proposed] Defendant-Intervenors*. | Case No. 6:21-cv-00474-AA <br><br> **REPLY MEMORANDUM IN SUPPORT OF THE RELIGIOUS SCHOOLS' MOTION TO INTERVENE** |

**INTRODUCTION**

The Federal Defendants' response—and its revealing amendment less than 24 hours later—confirms that the Religious Schools have a right to intervene. The Federal Defendants concede that the Religious Schools satisfy all the requirements for permissive intervention and all but one of the criteria for intervention of right. Defs.' Am. Resp. in Opp'n to Mots. to Intervene at 5, 10, ECF No. 37 (Defs.' Am. Resp.). The Federal Defendants' limited opposition centers on a mere suggestion—with no commitment—that they will adequately represent the Religious Schools' interests. But none of the factors for adequate representation are satisfied. In fact, the Federal Defendants' response *shows* that they have different and competing interests, will not make all the Religious Schools' arguments, will not develop the same evidence, and will consider settlement on terms that the Religious Schools may not accept.

And the Federal Defendants demonstrated their inadequacy when—facing criticism from Plaintiffs' counsel and the media—they amended their response to abandon or diminish their defense of Title IX's religious exemption by:

- Replacing a suggestion that they will "vigorously" defend the exemption with statement that they can "adequately" defend the case;
- Removing prior statements that the Federal Defendants and the Religious Schools share the same "ultimate objective";
- Replacing the Federal Defendants' prior stated objective "to defend the statutory exemption and its current application" with a limited objective "to defend the constitutionality of the statutory exemption" alone;
- Deleting many statements that the Federal Defendants will defend the Department's current regulation implementing the religious exemption;
- Deleting many statements that the Federal Defendants will defend the Department's current application of the religious exemption; and

- Deleting prior statements that the government has a duty to defend both federal statutes and regulations.

*Compare* Defs.' Original Resp. in Opp'n to Mots. to Intervene at 7-9, ECF No. 36 (Defs.' Original Resp.) *with* Defs.' Am. Resp. at 7-9. The amended response confirms that the Federal Defendants will not assert all the Religious Schools' arguments and that their interests diverge from those of religious educators. But equally important, the amendment shows that the Federal Defendants will not sustain a vigorous and consistent defense of Title IX's religious exemption in the face of political pressure. The Court should grant the Religious Schools' motion.

## ARGUMENT

The Religious Schools have established their entitlement to intervene. Plaintiffs did not file any opposition to the Religious Schools' motion. And the Federal Defendants concede that the Religious Schools satisfy all the requirements for permissive intervention and nearly all the criteria for intervention of right. Defs.' Am. Resp. at 5, 10, ECF No. 37. The Federal Defendants' limited opposition misses the mark, and the Court should grant the Religious Schools' motion.

### I. The Religious Schools are entitled to intervention of right.

The Religious Schools are entitled to intervention of right because: (1) their application was timely; (2) they have a significant protectable interest in the action; (3) the disposition of the action may, as a practical matter, impair or impede their ability to protect their interests; and (4) the existing parties may not adequately represent the applicant's interest. *See Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *see also* Religious Schools' Mot. to Intervene and Mem. in Supp. at 16-25, ECF No. 8. There is no dispute that the Religious Schools satisfy the first three requirements. *See* Defs.' Am. Resp. at 5, ECF 37. The Federal Defendants only question the fourth factor regarding adequacy of representation, *id.*, but their opposition misses the mark by misstating the relevant standard, ignoring key factors

proving their inadequacy, and overlooking well-established differences between the interests of the Religious Schools and the government.

### A. The burden to show inadequate representation is minimal, and no presumption of adequacy arises here.

"In evaluating whether Rule 24(a)(2)s requirements are met, we normally follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.'" *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). "We do so because a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (quotations omitted). "[T]he burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties 'may be' inadequate." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). So the Court should liberally construe the adequate representation requirement in favor of intervention and consider whether the Religious Schools make a minimal showing that the Federal Defendants *may* not adequately represent their interests. The Religious Schools easily meet this burden, as explained in Section I.B. below.

The Federal Defendants point out that, under unique circumstances, a rebuttable presumption of adequate representation may arise when the prospective intervenor and an existing party share the same ultimate objective, or where the government is acting on behalf of a constituency it represents. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). But this presumption does not arise "where the intervenors have 'more narrow, parochial interests' than the existing party, or where 'the applicant asserts a personal interest that does not belong to the general public.'" *E.g.*, *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, No. 1:19-cv-00451-CL, 2019 WL 5788303, at *3 (D. Or. Nov. 6, 2019) (quoting *Forest*

*Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8, 1499 (9th Cir. 1995) (*abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173); *see also Berg*, 268 F.3d at 823–24; *Cascadia Wildlands v. Kitzhaber*, No. 3:12-cv-00961-AA, 2012 WL 13055400, at *2 (D. Or. Aug. 29, 2012) (Aiken, J.) (holding that the government may not adequately represent a proposed intervenor—although they shared the same ultimate objective—when the government had a broader set of interests). And the presumption doesn't apply when the government is charged with serving "two distinct interests, which are related, but not identical." *Trbovich*, 404 U.S. at 538.

Here, no presumption of adequate representation arises for four reasons. *First*, the Religious Schools' interests in preserving a religious exemption to teach and practice Christian doctrines on gender and sexual morality are personal and parochial interests of private religious educators that do not belong to the government or the general public. *See Pennsylvania v. President United States of Am.*, 888 F.3d 52, 61 (3d Cir. 2018) (finding that the government's general interest in enforcing a law did not adequately represent a religious order's narrower interest in preserving a religious exemption). *Second*, the Federal Defendants do not adequately represent the Religious Schools' interests because the government is charged with two distinct interests that are related but not identical, namely, enforcing Title IX's nondiscrimination provisions and enforcing religious exemptions. *See id.* (finding inadequate representation because the government had two distinct interests of "accommodating the free exercise rights of religious objectors while protecting the broader public interest in access to contraceptive methods and services.").

*Third*, the Religious Schools' objective involves defending *both* the statutory religious exemption *and* the current implementing regulation, while the Federal Defendants' objective is limited to defending the "statutory exemption" alone. *Compare* Defs.' Original Resp. at 7-8, ECF 36, *with* Defs.' Am. Resp. at 7-8, ECF 37

(removing defense of the regulation and the religious exemption's current application from the Federal Defendants' objective and deleting prior statements that the government must defend the regulation). *Fourth*, the Religious Schools' objective is to show that the religious exemption is not only permitted but *required* to safeguard the constitutional rights of religious educators, which is more particular than the Federal Defendants' general objective "to defend the constitutionality of the statutory exemption." Defs.' Am. Resp. at 7, ECF 37.

Because no presumption of adequate representation arises here, the Religious Schools need only make a minimal showing that the Federal Defendants *may* not adequately represent their interests. And regardless, the Religious Schools would rebut any presumption by their showing below that the *Arakaki* factors for adequate representation are lacking. *See Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 952 (9th Cir. 2009) ("We assess the [intervenor's] rebuttal argument in terms of the three *Arakaki* factors").

### B. The Federal Defendants *may* not adequately represent the Religious Schools' interests.

"The most important factor in determining the adequacy of representation is how the [intervenors'] interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086. To compare such interests, courts consider three *Arakaki* factors: "(1) whether the interest of a present party is such that it will *undoubtedly* make *all* of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer *any* necessary elements to the proceeding that other parties would neglect." *Id.* (emphasis added). Each factor shows that the Federal Defendants may not adequately represent the Religious Schools.

### 1. The Federal Defendants will not *undoubtedly* make *all* the Religious Schools' arguments.

"Adequate representation requires, among other things, that the representative will undoubtedly make all of a proposed intervenor's arguments . . . ." *Exec. Risk Specialty Ins. Co. v. Rutter Hobbs & Davidoff, Inc.*, 564 F. App'x 887, 890 (9th Cir. 2014) (Watford, J., dissenting) (quotations omitted). The Federal Defendants cited this factor in their response memoranda but conspicuously refused to say that they would press and preserve all the Religious Schools' arguments. Indeed, their Amended Response confirms that the Federal Defendants will *not* make several important arguments.

***Title IX Applicability.*** The Religious Schools will argue that the Court should dismiss the First Amended Complaint without reaching the constitutionality of the religious exemption because Title IX's prohibition of "sex" discrimination does not extend to sexual orientation or gender identity. *See* Religious Schools' Proposed Mot. to Dismiss at 37-39, ECF No. 32. It cannot be said that the Federal Defendants will *undoubtedly* make this argument. Just last week, Defendant Goldberg issued a Notice of Interpretation to clarify that "the Department interprets Title IX's prohibition on discrimination 'on the basis of sex' to encompass discrimination on the basis of sexual orientation and gender identity." Suzanne B. Goldberg, *Federal Register Notice of Interpretation: Enforcement of Title IX of the Education Amendments of 1972 with Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of* Bostock v. Clayton County (June 16, 2021), attached as **Exhibit A**, at 4. This act removed any doubt that President Biden's executive orders direct the government's position in this case. *See* Exec. Order No. 13,988, 86 Fed. Reg. 7023, § 1 (Jan. 20, 2021) ("Title IX . . . prohibit[s] discrimination on the basis of gender identity or sexual orientation . . . ."); Exec. Order 14,021, 86 Fed. Reg. 13,803, § 1 (Mar. 8, 2021) ("an educational environment free from discrimination on the basis

of sex . . . including discrimination on the basis of sexual orientation or gender identity . . . is codified, in part, in Title IX . . . .").

And the Federal Defendants are represented by the United States Department of Justice, which declared *its* official position that Title IX's prohibition of "sex" discrimination extends to sexual orientation and gender identity. *See* Pamela S. Karlan, Principal Deputy Assistant General, *Application of* Bostock v. Clayton County *to Title IX of the Education Amendments of 1972* (Mar. 26, 2021), available at https://www.justice.gov/crt/page/file/1383026/download (last visited June 21, 2021). And the Department of Justice is now filing statements of interest in other cases arguing that Title IX extends to sexual orientation and gender identity. Statement of Interest of the United States, *B.P.J. v. West Virginia State Bd. of Educ.*, No. 2:21-cv-00316 (S.D. W.Va. June 17, 2021), attached as **Exhibit B**, at 8. Thus, the Court should find that the Federal Defendants will not undoubtedly make this threshold argument.

***Defending the Current Regulation.*** Plaintiffs challenge the validity and constitutionality of 34 C.F.R. § 106.12, the Department's current regulation implementing Title IX's religious exemption. *See* Am. Compl. ¶¶ 674-97, ECF No. 35. The Religious Schools will defend the regulation and will argue that the current application of the religious exemption is required to avoid infringing the Religious Schools' constitutional rights. *See* Religious Schools' Proposed Mot. to Dismiss at 35, 37, ECF No. 32. It cannot be said that the Federal Defendants will *undoubtedly* make this argument.

Less than 24 hours after suggesting that they would "vigorously" defend the statutory exemption and its current application in the Department's implementing regulation, the Federal Defendants amended their response, limiting their objective to "adequately" defending the "statutory exemption" alone, and deleting all prior references to defending the current regulation and application of the religious

exemption. *Compare* Defs.' Original Resp. at 7-9, ECF 36, *with* Defs.' Am. Resp. at 7-9, ECF 37. So the Court should find that the Federal Defendants will not *undoubtedly* defend the current regulation or the Department's current application of the religious exemption.

***Asserting Religious Schools' Rights.*** Besides arguing that the law permits Title IX's religious exemption, the Religious Schools will argue that the statutory exemption and its current application are *required* to safeguard their constitutional rights. *See* Religious Schools' Proposed Mot. to Dismiss at 39-44, ECF 32. Meanwhile, the Federal Defendants limit their objective to defending "the constitutionality of the statutory exemption," and their response memoranda never mention the rights of private religious educators. *See* Defs.' Am. Resp. at 7, ECF 37. The Court should find that the Federal Defendants will not *unquestionably* argue that the statutory exemption and the current regulation are required to safeguard religious educators' constitutional rights.

Because the Federal Defendants will not unquestionably make all of the Religious Schools' arguments, the Religious Schools are not adequately represented by any existing party.

**2.    The Federal Defendants are not capable and willing to make all the Religious Schools' arguments, and the Religious Schools offer necessary elements that existing parties would neglect.**

A proposed intervenor may not be adequately represented if the existing party is not capable and willing to make all the intervenors' arguments, or if the proposed intervenor would offer any necessary element that existing parties may neglect. *Arakaki*, 324 F.3d at 1086. As explained above, the Federal Defendants are not willing to make all the Religious Schools' arguments. But they are also not capable of making such arguments and would neglect necessary elements that the Religious Schools could provide. For one thing, the Federal Defendants and the Department of

Justice have made clear that they will not make and preserve the Religious Schools' argument that Title IX's prohibition against "sex" discrimination does not extend to sexual orientation and gender identity.

And as governmental actors, the Federal Defendants are not situated to make the Religious Schools' arguments that the religious exemption and the current regulation are required to protect the constitutional rights of religious educators. The Court should dismiss this case, but if litigation proceeds to discovery, the Religious Schools will be able to offer different evidence than the Federal Defendants. The Religious Schools could produce testimony and evidence showing, among other things, that the requested relief would infringe on their free exercise of religion in chapel services and religious classrooms, would infringe their free speech on campus and in policy handbooks, and would violate their professors' academic freedom to discuss and teach biological, psychological, and anthropological principles that were uncontroversial just a few years ago. The Federal Defendants are simply not able to present the same evidence that the Religious Schools could offer in defending their constitutional rights.

Because all three *Arakaki* factors are lacking, the Court should find that the Federal Defendants may not adequately represent the Religious Schools' interests.

## II. Alternatively, the Court should grant permissive intervention.

Under Rule 24(b)(B), the Court may grant permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." There is no dispute that the Religious Schools satisfy all the requirements for permissive intervention. Defs.' Am. Resp. at 10, ECF 37. The Court should grant permissive intervention because Religious Schools' motion is timely, this litigation uniquely impacts the Religious Schools, and intervention will cause no undue delay or prejudice to the original parties.

Still, the Federal Defendants assert three arguments against permissive intervention. *First*, the Federal Defendants argue that the Religious Schools have not rebutted a presumption of adequate representation. Defs.' Am. Resp. at 10, ECF 37. But inadequate representation is not a requirement for permissive intervention. *See* FED. R. CIV. P. 24(b). And as explained in Section I above, no presumption of adequacy applies here, and the Religious Schools show that the Federal Defendants may not adequately represent their interests. *Second*, the Federal Defendants suggest—but do not argue or show—that the Religious Schools lack standing. Defs.' Am. Resp. at 10, ECF 37. But as explained in Section III below, standing is not generally required for intervenor-*defendants*, and in any event, the Religious Schools have standing. *Third*, the Federal Defendants argue that intervention might complicate their defense because the Religious Schools may seek different settlement terms than the government or may file different motions or discovery requests. *Id.* But this just shows why intervention *should be* granted. That the Federal Defendants contemplate settling on terms that the Religious Schools would reject just shows that the government's interests are not identical with those of private educators. Because the Religious Schools' involvement would aid the Court, they should be permitted to intervene.

### III. Standing is generally not required for intervenor-defendants, but the Religious Schools nevertheless have standing.

The Federal Defendants suggest that the Religious Schools require Article III standing to intervene. Defs.' Am. Resp. at 5, n. 1, ECF 37. Not so. Intervenor-*defendants* need not establish Article III standing to participate in a case already pending before a trial court. *See McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 233 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) (holding that the Court need not even consider intervenor-defendants' standing if a case or controversy exists between the original parties). "The Supreme

Court has held that a party must have Article III standing both to initiate an action and to seek review on appeal . . . [b]ut an intervenor who performs neither of those functions and no other function that *invokes* the power of the federal courts need not meet Article III standing requirements." *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014) (emphasis in original). In support of their argument, the Federal Defendants cite *SurvJustice Inc. v. DeVos*, but that non-binding case involved a proposed intervenor-*plaintiff* who sought to invoke the court's jurisdiction even beyond the original plaintiff. No. 18-cv-00535-JSC, 2019 WL 1427447, at *4-5 (N.D. Cal. Mar. 29, 2019). Because the Religious Schools seek to intervene as defendants who will not invoke the Court's jurisdiction, they need not establish standing.

Even so, the Religious Schools *do* have standing because of their personal stake in this litigation. If Plaintiffs prevail in striking down Title IX's religious exemption and the current implementing regulation, the Religious Schools would be forced to either stop speaking and practicing their religious beliefs on gender and sexual morality (infringing their constitutional rights) or suffer a catastrophic reduction in enrollment of students who require financial aid (threatening their very existence). Either outcome presents an existential threat to the Religious Schools: either they cease to be *themselves*, or they cease to *be* altogether. The Federal Defendants suggest that the Religious Schools lack standing simply because none of the named Plaintiffs personally attended the Religious Schools. Defs.' Am. Resp. at 5, n. 1, ECF 37. But Plaintiffs' personal attendance doesn't matter. Plaintiffs seek to represent a class of "more than 100,000" students who *may* attend the Religious Schools. Am. Compl. ¶ 574, ECF 35. And regardless of class certification or personal attendance, Plaintiffs' requested relief would affect the Religious Schools, who rely on Title IX's religious exemption to pursue their educational mission.

## CONCLUSION

For the reasons stated above, the Court should grant Religious Schools' motion and allow them to intervene either as of right or permissively.

Respectfully submitted this 22nd day of June, 2021.

DAVID A. CORTMAN*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org

*Admitted pro hac vice

/s/ Mark A. Lippelmann
KRISTEN K. WAGGONER,
OR Bar No. 067077
*Lead Counsel*

RYAN J. TUCKER*
AZ Bar No. 034382
MARK A. LIPPELMANN*
AZ BAR No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
kwaggoner@ADFlegal.org
rtucker@ADFlegal.org
mlippelmann@ADFlegal.org

## **CERTIFICATE OF COMPLIANCE**

This memorandum complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), or 54-3(e) because it contains 3,360 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

/s/ *Mark A. Lippelmann*
MARK A. LIPPELMANN*
AZ BAR NO. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90TH STREET
SCOTTSDALE, AZ 85260
TELEPHONE: (480) 444-0020
mlippelmann@ADFlegal.org

*Attorneys for Proposed Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2021, the foregoing was served via CM/ECF on counsel for all parties.

/s/ *Mark A. Lippelmann*
MARK A. LIPPELMANN*
AZ BAR NO. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90TH STREET
SCOTTSDALE, AZ 85260
TELEPHONE: (480) 444-0020
mlippelmann@ADFlegal.org

*Attorneys for Proposed Intervenor-Defendants*