Herbert G. Grey, OSB #810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar #416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas P. Miller, MI Bar #P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar #1685532*
Email: jprince@schaerr-jaffe.com
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060

*Admitted *Pro Hac Vice*

*Counsel for Proposed Defendant-Intervenor
Council for Christian Colleges & Universities*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., <br><br> Plaintiffs, <br> v. <br><br> U.S. DEPARTMENT OF EDUCATION, et al., <br><br> Defendants, <br><br> v. <br><br> COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, <br><br> Proposed Defendant-Intervenor. | Case No. 6:21-cv-00474-AA <br><br> PROPOSED DEFENDANT-INTERVENOR COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES'S REPLY TO DEFENDANTS' AMENDED OPPOSITION TO MOTIONS TO INTERVENE (ECF 37) |

**INTRODUCTION**

In an extraordinary public change of legal position—in less than 24 hours after their initial filing—the federal defendants have revealed ample reason to doubt their ability to consistently and effectively represent the interests of the private religious colleges and universities whose basic rights are at stake in this case. In their initial opposition, filed late in the evening on June 8, 2021, the federal defendants repeatedly assured the world that they had the same "ultimate objective" as the proposed intervenor, Council for Christian Colleges (CCCU), and its member schools—that is, to vigorously "defend the [Title IX religious] statutory exemption and its current application[.]" Defendants' Opp. To Mots. to Intervene 7 (ECF 36) (1st Opp.) The defendants specifically rejected the idea that they would not "defend the Religious Exemption as *vigorously* as Religious Schools," and claimed it was mere speculation to suggest they would "back away from a full defense of" the exemption." *Id.* at 8-9 (emphasis added).

In less than 24 hours, however, the "speculation" that the federal defendants had just dismissed became reality, as they filed an amended brief significantly more ambiguous in its defense of the religious exemption. The reason for this new filing was evident to all: The defendants' robust assurances about defending the religious exemption were met by a wave of media criticism.[1] In apparent response, the federal defendants amended their opposition in a matter of hours, removing the language that it shared CCCU's "ultimate objective" of vigorously defending the exemption. They also excised nearly every reference to their plan to defend the challenged *application* of Title IX's religious exemption, even though this case presents primarily

---

[1] *See, e.g.*, Michelle Boorstein, *Justice Department says it can defend religious schools' exemption from anti-LGBTQ discrimination laws*, The Washington Post (June 9, 2021), https://tinyurl.com/WPREAPArticle; INSIGHT Staff, *Justice Department to Defend Anti-LGBTQ Policy at Religious Schools* (June 9, 2021), https://tinyurl.com/InsightREAPArticle.

2-Proposed Defendant-Intervenor Council for Christian Colleges & Universities' Reply To Defendants' Amended Opposition To Motions To Intervene

an as-applied challenge. Gone, too, was the assurance that the defendants would provide a "vigorous" defense of the religious exemption.

In sum, the federal defendants' actions before this Court reaffirm the powerful need for CCCU to assist and support the government in presenting a full and vigorous defense of the Title IX exemption and its member schools' rights in this case. Both the current Administration's public statements on the topic of LGBTQ+ rights in relation to religious institutions generally, and its recent position reversal raise meaningful questions as to whether it will "undoubtably" make all of CCCU's arguments or even that in the future it will continue to be "capable and willing" to do so. *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 838 (9th Cir. 1996), as amended on denial of reh'g (May 30, 1996)..

Equally compelling as to whether the CCCU should be allowed to intervene is that the defendants concede that CCCU has satisfied *every* requirement for permissive intervention. Defendants' Am. Opp. To Mots. to Intervene 5, 10 (ECF 37) ("Am. Opp.")  Indeed, plaintiffs have failed to respond to CCCU's motion, thereby also conceding that intervention is proper. *See Johnny T. v. Berryhill*, 2019 WL 2866841, at *2 (D. Or. July 2, 2019) (Aiken, J.) (collecting cases). Accordingly, the Court can simply grant permissive intervention—which is uncontested here— thereby avoiding the need to resolve the dispute between CCCU and the federal defendants over mandatory intervention.

**ARGUMENT**

**I.    CCCU should be allowed to intervene permissively.**

As noted, the federal defendants concede that CCCU meets every requirement for permissive intervention. *See* Am. Opp. 10. Despite this, they argue that the Court should deny the

motion because "participation of additional parties in the case will produce few benefits" and "could well have adverse effects." *Ibid*. They err on both points.

Contrary to the federal defendants' first assertion, CCCU's participation will provide significant, substantive benefits to the Court. For well over 100 years, the Supreme Court has recognized that governmental bodies (including federal courts) are inherently ill-suited to understand ecclesiastical questions. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2059–61 (2020) (summarizing the history of the religious-autonomy doctrine). As the motion urges (at 22), religious doctrines, like the doctrines animating the decisions of the religious schools mentioned in the complaint, are sometimes incomprehensible to those with different beliefs. *Thomas v. Rev. Bd. of Indiana Emp't Sec. Div.*, 450 U.S. 707, 714 (1981).

Executive officers such as the federal defendants are not unique among civil servants in their ability to understand the importance of religious doctrines, including the right to set "religious conduct standards within its community and discipline violators." *Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*, 819 F.2d 875, 883 (9th Cir. 1987). To the contrary, the same difficulty that courts have in understanding religious beliefs limits the other branches.

For this reason, the federal defendants' attempts to escape CCCU's showing that they are ill-equipped to defend the religious exemption fail. Yes, the federal defendants argue (at 8) that they can defend *Congress's* intent, but CCCU never challenged that point. And in any event, Congresses' intent would only apply to the defense against a facial challenge to the statute, whereas plaintiffs' case is a mixture of facial and as-applied challenges. As an organization of religious communities, CCCU can provide the insight necessary to fully explain the importance of the Title IX religious exemption, both in general and as applied to its members, in ways that the government simply cannot.

CCCU is also better equipped to respond to the factual assertions included in Plaintiffs' claims. As mentioned in its motion, eighteen of CCCU's member schools were mentioned by name in the Complaint. *See* Compl. ¶¶ 9–43 (ECF 1). The amended complaint mentions three additional CCCU member schools. *See* Am. Compl. ¶¶ 46–47, 50 (ECF 35). The federal defendants are silent about how, if at all, they expect to defend an as-applied challenge against claims that these schools discriminated against their students. Here again, CCCU's presence will help provide the context necessary to respond to these allegations, including the fact that the allegedly discriminatory actions represent the applications of the member colleges' sincerely held religious beliefs.

The federal defendants' argument (at 10) that allowing CCCU to intervene may have adverse effects fares no better. To begin, it relies on nothing but rank speculation that CCCU's presence could "complicate resolution" of this case. But what the federal defendants decry (at 10) as the "adverse effects" of CCCU's participation are nothing more than the benefits of our adversarial system. It is no vice that a complicated case, which could strip millions of students at religious colleges of all federal funding—and severely impact the religious colleges themselves— might have a "complicate[d] resolution." *Ibid.* The resolution will be complicated with or without CCCU's presence, and CCCU can help the Court sort through the complications.

Moreover, the federal governments' own authorities undermine their argument that CCCU's motion should be denied because its presence could "mak[e] settlement more complicated." *Id.* They argue, for example, that intervention is inappropriate when the government will make the same arguments. *Id.* (citing *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir.1993)). Yet because the sweeping relief the plaintiffs seek would cripple religious higher education, any attempt to settle this case short of outright dismissal would be woefully inadequate. And preventing the Plaintiffs and the federal defendants from employing a

cynical "sue and settle" strategy as a means of abolishing the Title IX religious exemption is one of the most important reasons to allow CCCU's participation.

In sum, because CCCU's presence would provide the Court needed context that secular bodies are frequently unable to understand, because it will also help the Court thwart the Plaintiffs' apparent (and improper) "sue-and-settle" strategy as a way of abolishing the Title IX exemption, and because the only harm the federal defendants allege is the existence of adversity, this Court should grant CCCU's motion to intervene permissibly under Rule 24(b).

**II.    Alternatively, CCCU is entitled to intervene.**

Alternatively—if the Court needs to reach the question—CCCU is also entitled to intervene because (1) it is undisputed that it satisfies the first three requirements for mandatory intervention, *see* Am. Op. 2, and (2) CCCU has readily demonstrated—assisted by the federal defendants themselves—that they cannot be trusted to adequately defend the interests of CCCU's members.

The federal defendants flatly ignore the Ninth Circuit's repeated instruction that Rule 24(a) should be interpreted to favor intervention. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). They similarly ignore the many cases saying that the burden of showing inadequacy is "minimal," and the applicant need only show that "representation of its interests by existing parties 'may be' inadequate." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972)); *Nw. Forest Res. Council*, 82 F.3d at 838.

Instead, federal defendants rest their entire argument on the presumption that the Department of Justice will adequately defend the constitutionality of the religious exemption. *Freedom from Religion Found.*, *Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011). CCCU, they argue, must make a "compelling showing" that they will fail to advance its interests to rebut that

general presumption. Am. Opp. 6. But as the *Geithner* case acknowledges, the presumption of adequacy only applies "'[w]here the party and the proposed intervenor share the same 'ultimate objective[.]'" *Geithner*, 644 F.3d at 841 (quoting *Perry,* 587 F.3d at 951). In their Amended Opposition, the federal defendants no longer even directly claim that is true. *See, supra* 7-8.

*Geithner* involved a solely facial challenge to the statute involving the parsonage exemption for ministers, and the government had shown itself willing to defend the statute vigorously. In this case, however, there are both facial and as-applied challenges to the Title IX religious exemption. In its most recent filing, the federal defendants have moved decisively away from language that committed itself to defending the statute as applied; it has even temporized its claims about whether it will continue to defend the statute as a facial matter, at least as it applies to issues of LGBTQ+ rights. *See supra,* 7.

To undermine CCCU's showing on these points, the federal defendants ask this Court to ignore "a variety of statements and actions taken by the current Administration regarding protecting LGBTQ+ individuals from discrimination" because none of those statements was directly addressing Title IX's religious exemption. Am. Opp. 8. But it is not plausible that Title IX's religious exemption is the exception to an Administration-wide attempt to read protections on the basis of sexual orientation and gender identity into every relevant provision of federal law.[2] Nor is it plausible that the current Administration, which promises to roll back religious

---

[2] CCCU, frankly, was selective in its motion. The Administration's comments on this topic are legion. *See also, e.g., Federal Register Notice of Interpretation: Enforcement of Title IX of the Education Amendments of 1972 with Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of* Bostock v. Clayton County 11 (June 16, 2021) (This document does acknowledge the existence of the Title IX religious college exemption, but relegates it to a brief mention in footnote 2, which is suggestive of the lack of weight the Administration may give it in its larger program.), https://tinyurl.com/TitleIXInterpretation; The White House, Executive Order on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation (Jan. 20, 2021), https://tinyurl.com/Jan20EO.

7-Proposed Defendant-Intervenor Council for Christian Colleges & Universities' Reply To Defendants' Amended Opposition To Motions To Intervene

exemptions that conflict with what it considers LGBT rights, will turn a blind eye to Title IX's exemption or provide the full-throated defense of religious higher education necessary to defend the exemption in all of its applications. Indeed, what the federal defendants initially called a "leap," 1st Opp. 8, instead follows directly from the available evidence—including the federal defendants' own change of position in response to criticism from the LGBTQ community.[3]

Nor is the motion as premature as the federal defendants claim. Whatever the result of the Department of Education's ongoing "comprehensive review of its regulations implementing Title IX," Am. Opp. 7, there can be no doubt that it will advance this position, as one of the federal defendants has already said that the goal of the review is to implement such protections within the Title IX framework, as directed by the President. Suzanne B. Goldberg, *Title IX and our nation's promise to students of all ages* (Mar. 8, 2021) ("[W]e welcome our responsibility to help carry out the President's Executive Order on Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity."). Indeed, the Department has recently issued interpretive guidance concluding that Title IX's protections extend to sexual orientation and gender identity.[4] This obviously makes Title IX's religious exemption even more crucial to CCCU and its members.

The changes made in the Amended Opposition further undermine the presumption that would otherwise favor the government. The initial opposition promised that the federal government had the same ultimate objectives as CCCU multiple times. 1st Opp. 7 ("[T]he Federal Defendants and the Proposed Intervenors 'share the same 'ultimate objective,'" and "the Federal Defendants' ultimate objective is to defend the statutory exemption and its current application by

---

[3] The federal defendants apparently no longer consider this a leap, as that language was removed in the amended opposition.

[4] *See Supra*, note 2.

8-Proposed Defendant-Intervenor Council for Christian Colleges & Universities' Reply To Defendants' Amended Opposition To Motions To Intervene

ED, which is the objective sought by the Proposed Intervenors here.") That language was immediately and widely criticized.[5] As discussed above, rather than stay the course, the federal defendants amended their opposition the following day, no longer claiming that it shared CCCU's ultimate objectives.[6] They also removed nearly every reference to the defendants' stated plan to defend the challenged *application* of Title IX's religious exemption, instead stating that they will defend the exemption generally, even though this case presents primarily an as-applied challenge.

In sum, nothing said or done by the Administration before this case creates an assurance that it will "undoubtably" make all of CCCU's arguments or even that it will continue to be "capable and willing" to do so. *Nw. Forest Res. Council*, 82 F.3d at 838. Its most recent actions in filing an amended opposition only confirm what CCCU alleged in its motion. There is no benefit, and much potential harm to CCCU and its member schools, to waiting for further actions from the Department before deciding to allow CCCU to intervene. Because there is a substantial reason to

---

[5] Michelle Boorstein, *Justice Department says it can defend religious schools' exemption from anti-LGBTQ discrimination laws*, The Washington Post (June 9, 2021), https://tinyurl.com/WPREAPArticle; INSIGHT Staff, *Justice Department to Defend Anti-LGBTQ Policy at Religious Schools* (June 9, 2021), https://tinyurl.com/InsightREAPArticle.

[6] The federal defendants' malleability in the face of criticism was not lost on the public either. Jo Yurcaba, *Biden DOJ updates court filing after LGBTQ backlash in religious discrimination lawsuit*, NBC News (June 10, 2021), https://tinyurl.com/BidenAmOpArticle ("[A]fter the backlash from LGBTQ advocates, the administration amended its filing Wednesday. It removed the word 'vigorously' to describe its defense of the schools and the religious exemption, and removed four uses of the phrase 'ultimate objective.'"); Jessica Schneider, *Biden DOJ updates court filing after LGBTQ advocates blast its stance in religious schools case*, CNN (June 10, 2021), https://tinyurl.com/CNNAmOpArticle (explaining how, "after a backlash from critics and a statement from plaintiffs in the case saying they felt 'betrayed,'" the federal defendants amended their filing).

believe that the federal defendants will *not* fully defend the Title IX religious exemption, CCCU should be allowed to intervene immediately.

## CONCLUSION

The Court can easily grant CCCU's motion to intervene based solely on the federal defendants' recognition that CCCU satisfies each factor for permissive intervention. Alternatively, intervention is required because the current Administration has shown, at a minimum, that there is a substantial risk it will not adequately defend the interests of CCCU and the hundreds of colleges it represents. The motion to intervene should be granted.

Respectfully submitted this 23rd day of June, 2021.

/s/ Herbert Grey
Herbert G. Grey
OSB #810250
4800 SW Griffith Drive, Suite 320
Beaverton, OR 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

/s/Gene Schaerr
Gene C. Schaerr, DC Bar #416368*
Nicholas P. Miller, MI Bar #P70694*
Joshua J. Prince, DC Bar #1685532*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Email: gschaerr@schaerr-jaffe.com

*Admitted *Pro Hac Vice*

*Counsel for Proposed Defendant-Intervenor*
*Council for Christian Colleges & Universities*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Corporate Disclosure Statement on the following via the indicated method(s) of service:

Paul Carlos Southwick
Paul Southwick Law, LLC
8532 N. Ivanhoe St. #208,
Portland, OR 97203
Email: paul@paulsouthwick.com
Phone: 503-806-9517

Carol Federighi,
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Email: carol.federighi@usdoj.gov
Phone: (202) 514-1903

_____    **MAILING** certified full, true, and correct copies thereof in a sealed, first class postage-prepaid envelope, addressed to the attorney(s) shown above at their last known office address(es), and deposited with the U.S. Postal Service at Portland/Beaverton, Oregon, on the date set forth below.

__x____    **ELECTRONIC FILING** utilizing the Court's electronic filing system.

__x____    **EMAILING** certified full, true, and correct copies thereof to the attorney(s) shown above at their last known email address(es) on the date set forth below.

_____    **HAND DELIVERING** certified full, true, and correct copies thereof to the attorney(s) shown above at their last known office address(es), on the date set forth below.

_____    **OVERNIGHT COURIER** mailing of certified full, true, and correct copies thereof in a sealed, prepaid envelope, addressed to the attorney(s) shown above at their last known office address(es), on the date set forth below.

DATED this 23rd day of June 2021.

> */s/ Gene Schaerr*
> Gene C. Schaerr,
> DC Bar #416368*
>
> *Counsel for Proposed Defendant-Intervenor Council for Christian Colleges & Universities*