*statement unsigned*

## ASSURANCE OF COMPLIANCE WITH TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 AND THE REGULATION ISSUED BY THE DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE IN IMPLEMENTATION THEREOF

[PLEASE READ EXPLANATION OF HEW FORM 639 BEFORE COMPLETING THIS DOCUMENT]

Pursuant to 45 C.F.R. §86.4, _____ **YORK COLLEGE** _____

(insert name of Applicant or Recipient)

_____ (hereinafter the "Applicant") gives this assurance in consideration of and for the purpose of obtaining Federal education grants, loans, contracts (except contracts of insurance or guaranty), property, discounts, or other Federal financial assistance to education programs or activities from the Department of Health, Education, and Welfare (hereinafter the "Department"), including payments or other assistance hereafter received pursuant to applications approved prior to the date of this assurance.

### ARTICLE I—TYPE OF INSTITUTION SUBMITTING ASSURANCE

The Applicant is (check the following boxes where applicable):

[ ] A state education agency.
[ ] A local education agency.
[ ] A publicly controlled educational institution or organization.
[XX] A privately controlled educational institution or organization.
[ ] A person, organization, group or other entity not primarily engaged in education. If this box is checked, insert primary purpose or activity of Applicant in the space provided below:


[XX] Claiming a religious exemption under 45 C.F.R. §86.12(b). (If religious exemption is claimed, attach statement by highest ranking official of Applicant identifying the specific provisions of 45 C.F.R. Part 86 which conflict with a specific religious tenet of the controlling religious organization.)

The Applicant offers one or more of the following programs or activities (check where applicable):

[ ] Pre-school
[ ] Kindergarten
[ ] Elementary or Secondary
[ ] Graduate
[ ] Other (such as special programs for the handicapped even if provided on the pre-school, elementary or secondary level). If this box is checked, give brief description below:

[XX] Undergraduate (including junior and community colleges)
[ ] Vocational or Technical
[ ] Professional

HEW—639 (7/76)

**1**

ARTICLE II—PERIOD OF ASSURANCE

This assurance shall obligate the Applicant for the period during which Federal financial assistance is extended to it by the Department.

ARTICLE III—TERMS AND CONDITIONS

The Applicant hereby agrees that it will:

1. Comply, to the extent applicable to it, with Title IX of the Education Amendments of 1972 (P.L. 92–318), as amended, 20 U.S.C. §1681, 1682, 1683, and 1685 (hereinafter, "Title IX"), and all applicable requirements imposed by or pursuant to the Department's regulation issued pursuant to Title IX, 45 C.F.R. Part 86 (hereinafter, "Part 86"), to the end that, in accordance with Title IX and Part 86, no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any education program or activity for which the Applicant receives or benefits from Federal financial assistance from the Department. (This assurance does not apply to sections 904 (proscribing denial of admission to course of study on the basis of blindness) and 906 (amending other laws) of Title IX, 20 U.S.C. 1684 and 1686.)

2. Require any person, organization, group or other entity to which it subgrants or with which it contracts, subcontracts or otherwise arranges to provide services or benefits or to assist it in the conduct of any program covered by this assurance, or with which it contracts or otherwise arranges for the use of any facility covered by this assurance, to comply fully with Title IX and Part 86 and to submit to the Department an assurance satisfactory to the Director, Office for Civil Rights (hereinafter, the "Director"), to that effect.

3. Make no transfer or other conveyance of title to any real or personal property which was purchased or improved with the aid of Federal financial assistance covered by this assurance, and which is to continue to be used for an education program or activity and where the Federal share of the fair market value of such property has not been refunded or otherwise properly accounted for to the Federal government, without securing from the transferee an assurance of compliance with Title IX and Part 86 satisfactory to the Director and submitting such assurance to the Department.

4. Submit a revised assurance within 30 days after any information contained in this assurance becomes inaccurate.

5. If the Applicant is a state education agency, submit reports in a manner prescribed by the Director under 45 C.F.R. §80.6(b) as to the compliance with Title IX and Part 86 of local education agencies or other education programs or activities within its jurisdiction.

2

ARTICLE IV—DESIGNATION OF RESPONSIBLE EMPLOYEE AND ADOPTION OF
GRIEVANCE PROCEDURES

(Check the appropriate box.)

[X]  Pursuant to 45 C.F.R. §86.8, the Applicant has adopted grievance procedures and designated the
following employee to coordinate its efforts to comply with Part 86 and has notified all of its students and
employees of these grievance procedures and the following name, address, and telephone number of the
designated employee:

                            Dr. Mabrey L. Miller
                            _____
                                  (name of employee)

                            York College, York, NE    68467
                            _____
                                  (office address)

                            402-362-4441
                            _____
                                  (telephone number)

[  ]  The Applicant is not presently receiving Federal financial assistance subject to Part 86 and,
consequently, has not designated a responsible employee or adopted grievance procedures pursuant to
45 C.F.R. §86.8 but will do so immediately upon award of such assistance and will immediately notify
the Director, its students and employees of the name, office address, and telephone number of the
employee so designated.

ARTICLE V—SELF-EVALUATION

(Check the appropriate box.)

[  ]  The Applicant has completed a self-evaluation as required by 45 C.F.R. §86.3(c) and has not
found it necessary to modify any of its policies and practices or to take any remedial steps to come into
compliance with Part 86.

[X]  The Applicant has completed a self-evaluation as required by 45 C.F.R. §86.3(c) and has ceased
to carry out any policies and practices which do not or may not meet the requirements of Part 86 and
is taking any necessary remedial steps to eliminate the effects of any discrimination which resulted or
may have resulted from adherence to such policies and practices.

[  ]  The Applicant has not completed the self-evaluation required by 45 C.F.R. §86.3(c) but expects
to have it completed by _____ .
                          (insert date)

[  ]  The Applicant is not required to conduct a self-evaluation under 45 C.F.R. §86.3(c) since it did
not receive any Federal financial assistance to which Part 86 applies prior to July 21, 1976.

Date:  September 29, 1976

                            York College
                            _____
                               (Insert name of Applicant)
                            By
                               _Dale K. Larsen_____

                            (This document must be signed by an official
                            legally authorized to contractually bind
                            the Applicant.)
                                    _President_____
                               (Insert title of authorized official.)

GPO 906-517

3

EXHIBIT P                                                                    3

REQUEST FOR EXEMPTIONS FROM

TITLE IX


YORK COLLEGE

YORK, NEBRASKA


September 29, 1976



EXHIBIT P

4

RELIGIOUS COMMITMENT

York College is controlled and operated by members of churches of Christ. These churches believe the Bible to be the only inspired revelation from God, and that it is God's complete and perfect revelation to human beings. The College claims an exemption from the requirements of Title IX of the Education Amendments of 1972 on a limited number of points on which it understands the requirements of Title IX and the teaching and requirements of the Bible to be in conflict. These points relate to (1) the role of women and men in the church; (2) differences in the nature and appearance of men and women; (3) modesty; (4) sexual morality; and (5) marriage, divorce, and remarriage.

In the first college catalog printed, 1956-57, by the current sponsoring religious group, the philosophy of the College was explained by giving the following quotation from the late Dr. William L. Phelps of Columbia University:

> Everyone who has a thorough knowledge of the Bible may be called educated, and no other learning or culture, no matter how exclusive or elegant, among Europeans or Americans, can take its place. Western civilization is founded upon the Bible. Our ideas, our wisdom, our philosophy, our literature, our art and ideals come more from the Bible than from all other books put together...I thoroughly believe in a university education for both men and women; but I believe a knowledge of the Bible without a college education is more valuable than a college course without the Bible.

The intent of equal opportunity for education for both men and women was present from the beginning of the College. The College continues to be committed to equal educational and employment opportunities for men and women.

EXHIBIT P

5

York College has made a diligent effort to request an exemption from the Title IX regulations in each of those areas in which it appears there is a conflict. However, York College reserves the right to reexamine the effects of Title IX on the institution and to request other exemptions should there prove to be any conflict.

SPECIFIC EXEMPTIONS REQUESTED
Access to Course Offerings

## Department of Christian Education

In the Division of Bible and Related Subjects there are two courses designed for men. They are Christian Education 102 (Song Directing) and Christian Education 123 (Homiletics). These courses are designed for the men who will be preachers and leaders in the public worship of the church. It is one of our religious tenets that women should not serve in leadership roles in public worship (I Corinthians 14:34, I Timothy 2:11-12). Therefore, it is not planned that women should enroll in Christian Education 102 (Song Directing) or Christian Education 123 (Homiletics). An exemption is requested in these courses.

## Department of Physical Education

In the Department of Physical Education, the majority of the courses are taught on a coeducational basis. Swimming courses and PE 201 (Conditioning Exercises) are separated by sex because we believe in high standards of modesty in apparel (I Timothy 2:9). An exemption is requested in this area.

## Leadership in Religious Activities

It is one of our religious tenets that women should not serve in leadership roles in religious worship where men are present (I Corinthians 14:34, I Timothy 2:11,12).  Therefore, women are not invited to take leadership roles during periods of worship.  An exemption is requested in the area of worship activities such as worship in assembly and campus devotionals.

## Campus Organizations

It is one of our tenets that women should not serve as preachers (I Corinthians 14:34, I Timothy 2:11,12).  Therefore, we request the exemptive right to form clubs such as a preacher's club or women's training class which would be directed toward teaching the Biblical function of people of that sex.

## Athletics

Differences in athletic attire for men and women are based upon a dress code in keeping with our philosophy of modesty (I Corinthians 11:14, I Timothy 2:9).

York College has an intramural program designed to meet the needs of both women and men, which we feel is open to people of each sex in a very balanced way.  The intercollegiate area may be more of a problem.  An attempt to meet the interests of students with a limited budget is complicated by an inability to control the dress code of visiting teams.  The College requests an exemption in this area in order that the Board of the College and its administrative officers may be free to review the results of the intercollegiate program and a possible need for curtailment because of a violation of our fundamental belief in the teaching of the Bible as it relates to modesty.

## Rules and Policies

Student regulations at York College involve a dress code in keeping with our philosophy of modesty.  An exemption is requested in this area.  The differences in rules concerning appearance are based on Biblical principles of modesty (I Corinthians 11:14, I Timothy 2:9).

## Employment

### Bible Teachers

York College requests an exemption in the hiring of faculty members to teach in the Department of Bible.  It is one of our religious tenets that women should not publicly teach Bible classes which include adult males (I Timothy 2:11,12).

### Employment Applications

York College requests an exemption in the request for information concerning marriage status in job applications.  It is one of our religious tenets that Christian persons should not divorce their mates except for the cause of adultery (Matthew 19:6-9).

### Employment Assistance

York College staff members do not recommend females for preaching positions because it is one of our tenets that women should not serve as preachers (I Corinthians 14:34, I Timothy 2:11,12).

## Scholarships

Money is willed and donated with the specific statement that it be used for scholarships for ministerial students.  An exemption is requested in the administration of scholarship funds for preacher students.  It is one of our tenets that women should not serve as preachers (I Corinthians 14:34, I Timothy 2:11,12).

EXHIBIT P



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS

AUG  1 1985

Dr. Gary R. Bartholomew
President
York College
York, Nebraska  68467

Dear Dr. Bartholomew:

The Office for Civil Rights of the Department of Education (OCR/ED) is in
the process of clearing a backlog of requests for religious exemption from
the regulation implementing Title IX of the Education Amendments of 1972,
34 C.F.R. Part 106 (formerly 45 C.F.R. Part 86).  Our records indicate that
York College (College) filed such a request, but there is no record that
OCR adequately acknowledged this request.

We have recently reviewed the request filed by former President Larsen
(copy enclosed) in which he described several policies practiced at the
College as consistent with the tenets of the religious organization that
controls the institution.  These policies would violate certain sections
of the regulation implementing Title IX (copy enclosed) absent a religious
exemption.  Former President Larsen supplied information in his request
letter that establishes that the institution is controlled by a religious
organization and that tenets followed by this organization conflict with
specific sections of the Title IX regulation.  Therefore, I am granting
York College an exemption to those sections of the Title IX regulation
appropriate to the College's request.  The exemption is limited to the
extent that compliance with the Title IX regulation conflicts with the
religious tenets followed by the institution.  The College is hereby
exempted from the requirements of the following sections of the Title IX
regulation:  34 C.F.R. §§ 106.31(a), 106.34, 106.37(a), 106.38, 106.41,
106.51, 106.53, 106.55(a) and 106.60(a).  The basis for our decision to
grant this exemption is discussed in further detail below.

The letter from the College indicates that it is controlled by members
of churches of Christ.  The churches of Christ and the College practice
certain tenets relating to:  (1) the role of men and women in the church;
(2) differences in the nature and appearance of men and women; (3) modesty;
(4) sexual morality; and (5) marriage, divorce and remarriage.  This
relationship between the churches of Christ and the College adequately
establishes that the College is controlled by a religious organization as
is required for consideration for exemption under § 106.12 of the Title IX
regulation.

EXHIBIT P                                                                9

Page 2 - Dr. Gary R. Bartholomew

The College's statement lists several practices applied to students and
faculty related to moral behavior, modesty, and spiritual leadership.
These practices sometimes result in a differentiation of roles of each
sex.  Thus:

1.  The College limits certain courses and activities on the basis of
    sex.  Specifically, the institution excludes women from Christian
    Education 102 (Song Directing) and Christian Education 123
    (Homiletics); separates men and women in swimming courses; limits
    leadership roles during periods of worship to men; and requests
    the right to offer clubs such as preacher's club or women's training
    class for males and females respectively.  The above practices are
    based on Biblical tenets that women should not serve as preachers
    or in leadership roles in public worship where men are present,
    and because the churches of Christ believe in high standards of
    modesty in apparel.  Based on these principles and practices, the
    College has requested and is granted by this letter, exemption to
    § 106.31(a), education programs and activities, and § 106.34, access
    to course offerings.

2.  The College administers scholarship funds for ministerial students
    which are intended for males only based on the tenet that women
    should not serve as preachers.  Based on this principle, the
    College has requested and is granted by this letter, exemption to
    § 106.37(a), financial assistance.

3.  The College does not recommend females for preaching positions
    because it is one of its tenets that women should not serve as
    preachers.  Based on this principle, the College has requested
    and is granted by this letter, exemption to § 106.38, employment
    assistance to students.

4.  The College maintains specific requirements regarding apparel for
    intercollegiate athletics teams based upon its philosophy and
    Biblical beliefs regarding modesty.  Based on this principle, the
    College has requested and is granted by this letter, exemption to
    § 106.41, athletics, as it relates to the above-stated principle
    regarding athletic attire.

5.  The College does not hire women to teach in the Department of the
    Bible.  This is based on the religious tenet that women should not
    publicly teach Bible classes which include adult males.  Based on
    this principle, the College has requested and is granted by this
    letter, exemption to §§ 106.51, 106.53 and 106.55(a), employment,
    recruitment for employment and job classification and structure.

6.  The College follows the religious tenet that Christian persons
    should not divorce their mates except for the cause of adultery,
    and wishes to request the marital status of applicants for
    employment.  Based on this principle, the College has requested
    and is granted by this letter, exemption to § 106.60(a), pre-
    employment inquiries of marital status.

EXHIBIT P                                                                10

Page 3 - Dr. Gary R. Bartholomew

The College also requested exemption for dress codes in keeping with the philosophy of modesty.  Section 106.31(b)(5) regarding appearance codes was rescinded from the Title IX regulation in 1982.  Thus, an exemption for appearance codes is unnecessary.

This letter should not be construed to grant exemption from any section of the Title IX regulation not specifically mentioned.  In the event that OCR receives a complaint against the institution, we are obligated to determine initially whether the allegations fall within the exemption herein granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets.  If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to the College's request.  I regret the inordinate delay in responding to the original request.  If you have any questions, please do not hesitate to contact the Kansas City Regional Office for Civil Rights.  The address is:

> Jesse L. High
> Regional Civil Rights Director
> Office for Civil Rights, Region VII
> Department of Education
> 324 East 11th Street, 24th Floor
> Kansas City, Missouri  64106

> Sincerely,
>
> Harry M. Singleton
> Assistant Secretary
>   for Civil Rights

Enclosures

cc:  Jesse L. High, Regional Civil Rights Director, Region VII

EXHIBIT P                                                              11