Herbert G. Grey, OSB #810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar #416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas P. Miller, MI Bar #P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar #1685532*
Email: jprince@schaerr-jaffe.com
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060

*Admitted *Pro Hac Vice*

*Counsel for Proposed Defendant-Intervenor*
*Council for Christian Colleges & Universities*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., <br><br> Plaintiffs, <br> v. <br><br> U.S. DEPARTMENT OF EDUCATION, et al., <br><br> Defendants, <br><br> v. <br><br> COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, <br><br> Proposed Defendant-Intervenor. | Case No. 6:21-cv-00474-AA <br><br> PROPOSED DEFENDANT-INTERVENOR COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER (ECF 44) |

## INTRODUCTION

Injunctive relief is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Yet Plaintiff's motion for a temporary restraining order is itself extraordinary in its lack of any plausible jurisdictional or legal basis: The Motion asks this Court to make legal rulings with respect to "thirty-five Title IX complaints" currently pending before "several regional offices" of the Department of Education scattered across the country. Mot. at 8, 21, ECF 44. But none of those complaints is before this Court—or any other. Moreover, each of those complaints involves a specific religious college or university that is also not before this Court. And each will require the relevant regional Department office to resolve factual issues that likewise are not (or not yet) before this Court. For these reasons, Plaintiffs' motion seeks relief far beyond this Court's authority. Far from being "limited" and "reasonable," Mot. at 9, ECF 44, Plaintiffs' motion—filed several months after the Amended Complaint—is so expansive and implausible that it should be immediately denied.

Even if the Court had authority to grant the requested relief, moreover, an injunction would still be inappropriate, as Plaintiffs' claims do not meet the standard for injunctive intervention: Plaintiffs claim, but cannot show, (1) that they are likely to prevail on their statutory and constitutional questions; (2) that there will be any sort of irreparable injury without injunctive relief; (3) that the equities tip in their favor; or (4) that the public interest will be served by an injunction. To the contrary, should Plaintiffs' injunction be granted, thirty-five colleges that are *not* before this Court will be subject to invasive investigations that they are entitled to have dismissed under the plain language of Title IX. For all these reasons, the motion should be denied.

**ARGUMENT**

**I.    THIS COURT LACKS JURISDICTION TO GRANT THE REQUESTED TRO.**

As the Court well knows, its jurisdiction extends only to the "merits of the case or controversy before it," *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015), and can only be exercised if the court has "personal jurisdiction over the parties and subject matter jurisdiction over the claim." *Zepeda v. INS,* 753 F.2d 719, 727 (9th Cir.1985). Here, not only are the proceedings that are the subject of the TRO motion not yet ripe for judicial review, but the Court lacks jurisdiction over *both* the relevant parties and the "subject matter" of the claims that Plaintiffs invoke as a basis for their proposed TRO.

Taking the latter point first: For a TRO to involve the same case or controversy before the Court, there must be a "sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology*, 810 F.3d at 636. Where there is no such nexus, such as where a motion for injunctive relief "deals with a matter lying wholly outside the issues in the suit," a Court "should not issue an injunction." *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997).

That principle is dispositive here: Plaintiffs' TRO seeks relief not actually sought in the underlying complaint in this case. Unlike their complaint, Plaintiffs' request for a TRO does not seek to invalidate the Title IX religious exemption, deny funding to the involved religious schools, or even vindicate the specific claims of the plaintiffs in this case. Rather, Plaintiffs are now asking the Court to establish a legal constraint on *another* decision-maker, the Department's Office of Civil Rights, in administrative proceedings not before this Court, involving specific legal claims also not currently before this Court. *See* Mot. at 9–10, ECF 44. Such relief is plainly beyond the powers and jurisdiction of this Court. *See Zepeda*, 753 F.2d at 727; *Pac. Radiation Oncology*, 810 F.3d at 636.

Plaintiffs' motion also founders on the rule that courts cannot determine the rights of parties not before it. *Zepeda*, 753 F.2d at 727. As Plaintiffs' Title IX complaints are considered in these other forums (the regional Department offices), the religious colleges and universities they involve currently have the right to invoke the Title IX religious exemption in their defense. So it is entirely inappropriate for Plaintiffs to ask this Court to determine rules governing administrative proceedings involving those schools—and in so doing to deny those schools an exemption that Congress provided—without their presence. Even if those colleges are not necessary parties to the underlying action in *this* case, they are unquestionably necessary when resolving a motion to enjoin the dismissal of separate investigations *against them*. *In re County of Orange,* 262 F.3d 1014, 1022 (9th Cir.2001) (Among other things, a party is necessary "when the absent party claims a legally protected interest in the action.") (citation omitted). Plaintiffs' request that this Court prevent the dismissal of proceedings against religious colleges and universities not before it, while Plaintiffs argue here for a change in the governing law, is thus entirely inappropriate.

To be sure, if this Court were to rule against the constitutionality of Title IX's religious exemption, and that ruling were upheld by the Ninth Circuit and the Supreme Court, then these other proceedings before the Department could be affected. But that outcome is highly speculative and years down the road. And in any event the religious colleges should not have to wait for a resolution of this case before asserting their rights in those proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). Nor can the mere possibility of such an impact justify the issuance of a TRO governing those separate, ongoing Departmental proceedings.

Finally and equally important, the Departmental administrative proceedings at issue in Plaintiffs' TRO motion are not ripe for federal judicial review or involvement. It has long been the rule in the Ninth Circuit and elsewhere that "[j]udicial intervention in uncompleted administrative proceedings, absent a statutory mandate, is strongly disfavored." *Bakersfield City Sch. Dist. v. Boyer*, 610 F.2d 621, 626 (9th Cir. 1979); *see also Riss & Co. v. I.C.C.*, 179 F.2d 810, 811 (D.C. Cir. 1950) ("[C]ourts are not authorized to interfere by injunction or declaratory judgment with the conduct of pending administrative proceedings."). This long-settled rule also serves a prudential purpose, as it protects "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977).

Plaintiffs, of course, could have brought their complaints against the religious colleges that they attended in the appropriate federal district courts. *Greater Los Angeles Council on Deafness, Inc. v. Cmty. Television of S. Cal.*, 719 F.2d 1017, 1021 (9th Cir. 1983) ("[E]xhaustion of administrative remedies provided by Title IX of the Education Amendments of 1972 is not required prior to filing a private court action."). They did not do so. Instead, they chose to invoke the executive power by bringing administrative claims. By so choosing, they subjected their claims to the rules generally governing administrative proceedings. While the claims they initiated are pending before the Department, judicial resolution of those claims is unripe. Though those claims should be dismissed for both constitutional and statutory reasons, there is no guarantee that they will be. And until they are, Plaintiffs' request—already improper for the reasons explained above—is also premature. That ripeness defect is yet another reason why the Court lacks authority to grant the requested relief.

## II. PLAINTIFFS HAVE NOT ESTABLISHED THE ELEMENTS NECESSARY FOR THE EXTRAORDINARY INJUNCTIVE RELIEF SOUGHT HERE.

Jurisdiction aside, Plaintiffs have failed to meet the substantive requirements for an injunction. Any injunction—including a TRO—is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). And the same factors governing a preliminary injunction govern a request for a TRO. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To carry their burden for either, Plaintiffs must establish (1) that they are likely to succeed on the merits or raise serious questions going to the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips—either generally or sharply—in their favor, and (4) that an injunction is in the public interest. *BOKF, NA v. Estes*, 923 F.3d 558, 561–62 (9th Cir. 2019). Even taking account of the "sliding scale" approach employed in the Ninth Circuit as part of this four-element test, *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011), Plaintiffs cannot satisfy any of these elements sufficiently to justify a TRO.

### A. Plaintiffs have established no likelihood of success and raise no serious legal questions.

On the merits, Plaintiffs allege that the Title IX religious exemption violates the First, Fifth, and Fourteenth Amendments, the Administrative Procedure Act, and the Religious Freedom Restoration Act. But binding decisions and first principles foreclose each of these arguments.

Plaintiffs' Equal Protection, Due Process, and First Amendment claims are unlikely to succeed because in enacting the Title IX religious exemption, the federal government has done nothing beyond granting an exemption from a federal statute to private actors. The fact that religious institutions receiving federal funding have religious beliefs that Plaintiffs disagree with cannot be attributable to the government, particularly where the government has not done anything

to coerce or encourage those uses. *See generally Hall v. Am. Nat'l Red Cross*, 86 F.3d 919, 922 (9th Cir. 1996).

Plaintiffs' First Amendment establishment clause claim is also meritless for another reason. As the Supreme Court held in 2002, "where a government aid program is neutral with respect to religion, and provides assistance directly to a broad class of citizens who, in turn, direct government aid to religious schools wholly as a result of their own genuine and independent private choice, the program is not readily subject to challenge under the Establishment Clause." *Zelman v. Simmons-Harris*, 536 U.S. 639, 652 (2002). And, more recently, in *Espinoza v. Montana Department of Revenue*, the Supreme Court held that, when it comes to subsidizing private education, "once a State decides to do so, it cannot disqualify some private schools solely because they are religious." 140 S. Ct. 2246, 2261 (2020); *see also id.* at 2254 (The Free Exercise Clause "protects religious observers against unequal treatment" and against "laws that impose special disabilities on the basis of religious status.") (cleaned up).

Plaintiffs are asking this Court to do precisely what *Espinoza* forbids: invalidate the Title IX religious exemption simply because it allows students to use federal aid at schools with religious beliefs and practices on sexuality and gender. The First Amendment does not allow such a result.[1]

---

[1] Indeed, as explained in Proposed Intervenors' Motion to Dismiss (at 21-25), something like the Title IX exemption is *required* by both clauses of the First Amendment. The Establishment Clause's "clearest command" is that "one religious denomination cannot be officially preferred over another," *Larson v. Valente*, 456 U.S. 228, 244 (1982), and the Free Exercise Clause forbids the government from using a school's religious affiliation to deny it access to federal funding. *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2256 (2020) (invalidating state law conditioning eligibility for "government aid" on a school's decision to "divorce itself from any religious control or affiliation.") (cleaned up); *see also Larson*, 456 U.S. at 245 ("This constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause."). Plaintiffs' challenge, if successful, would

Plaintiffs' APA claim fares no better. Among other things, they attack the Department's November 2020 interpretation of Title IX. But the November 2020 final rule was nothing more than a plain application of the unambiguous statutory text: The exemption applies whenever Title IX's application would not be consistent with the "religious tenets" of a school "controlled by a religious organization." 20 U.S.C. § 1681(a)(3). The November 2020 interpretation makes clear what is also clear from the statute itself, namely, that religious colleges or universities claiming the exemption are always controlled by at least one religious organization: their own "governing body"—usually a board of trustees. 34 C.F.R. § 106.12(c)(5). By asking this Court to read into Title IX a requirement that such schools be controlled by a separate and distinct religious organization, Plaintiffs are inviting the Court not only to invalidate the November 2020 regulation, but also to read into the statutory text a requirement that simply is not there.

---

require the government to review the policies governing religious practices at religious colleges. That inquiry itself would violate the Establishment Clause because it would throw the government "into a maelstrom of Church policy, administration, and governance." *Natal v. Christian and Missionary All.*, 878 F.2d 1575, 1578 (1st Cir. 1989). But more specifically, it would violate *Larson* because it would allow those religious colleges that lack LGBTQ+-related policies to continue receiving federal funding while denying such funding to other religious schools based solely on their religious beliefs.

    The Free Exercise Clause requires the Title IX religious exemption for yet another reason. Title IX's prohibition of discrimination because of sex includes many exceptions. Those exceptions are listed in 20 U.S.C. § 1681(a)(2)-(9) and 20 U.S.C. § 1686. Where, as here, a statute allows some exemptions against a generally applicable rule, it must also provide them for religious institutions. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) ("[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise.") (emphasis added); *Fulton v. Philadelphia*, 141 S. Ct. 1868, 1877–78 (2021). Congress included exemptions for the military, fraternities and sororities, youth groups, beauty pageants, father-daughter or mother-son activities, boys or girls conferences, and living facilities. *See* 20 U.S.C. § 1681(a)(2)-(9); 20 U.S.C. § 1686. Because of this long list of exemptions, even if Congress had failed to include the Title IX religious exemption, the Constitution would require it, even as applied to LGBTQ+ students.

Plaintiffs' attempt to enjoin the Department's removal of a notice requirement suffers from the same flaw, as it "would contradict the plain language of the Religious Organization Exemption, which automatically exempts from the prohibitions of Section 1681 any educational institution that meets the statutory criteria for the exemption." *Maxon v. Fuller Theological Seminary*, No. 2:19-CV-09969-CBM-MRW, 2020 WL 6305460, at *6 (C.D. Cal. Oct. 7, 2020). And even if there were some statutory ambiguity, the November 2020 interpretation should be given *Chevron* deference because, at the very least, it is a reasonable, permissible interpretation. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984). Because the interpretation of the statute would raise serious constitutional questions, as addressed above, principles of constitutional avoidance further weigh in favor of *Chevron* deference. *Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 816 (9th Cir. 2016) (explaining that the canon of constitutional avoidance is "highly relevant at *Chevron* step one").

As to the Religious Freedom Restoration Act, Plaintiffs' claim borders on frivolous. They claim they are substantially burdened by the Department, but it is the religious colleges and universities, not the Department, that set and enforce the policies they oppose. And those colleges and universities are private, not government actors. As the Ninth Circuit has noted, "Congress did not intend [RFRA] to create a broader class of government actors than previously existed under the Free Exercise Clause of the First Amendment." *Hall v. Am. Nat'l Red Cross*, 86 F.3d 919, 921 (9th Cir. 1996). Because the government has not "coerced or encouraged" the substance of religious colleges' student codes of conduct and lifestyle standards, those codes and standards cannot be imputed to the government. *Hall*, 86 F.3d at 922.

For these reasons, Plaintiffs are unlikely to succeed on the merits of any of their claims.

### B. Plaintiffs have established no likelihood of irreparable harm absent a TRO.

Plaintiffs also cannot show that they will suffer irreparable harm if this Court denies their request for an injunction. The Supreme Court has "repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury *and* the inadequacy of legal remedies" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (emphasis added).

Plaintiffs have multiple other ways to further their claims, even if the Department eventually dismisses their complaints. To begin, courts for decades have recognized that, because Title IX administrative remedies "do not afford individual complainants adequate relief," there is no requirement that they be exhausted. *Kling v. Cnty. of Los Angeles*, 633 F.2d 876, 879 (9th Cir. 1980). Under that reasoning, and with or without an injunction, Plaintiffs could, even now, raise anew their claims in the appropriate federal courts. Several Plaintiffs have done so, and have litigation pending in other courts, including the Ninth Circuit, addressing the same issue—the legality of the Title IX religious exemption. *See* Mot. at 21–22, ECF 44 (addressing a case brought by Plaintiffs Brittsan and Maxon in a case pending in the Ninth Circuit raising the same issue); *Maxon v. Fuller Theological Seminary*, No. 20-56156 (9th Cir.).

Moreover, Plaintiffs could reassert their claims before the Department of Education if they are dismissed. They candidly acknowledge that, following dismissal, at least one plaintiff has reasserted his rights. Mot. at 21, ECF 44 (addressing "prior complaints filed by Plaintiffs Montgomery and T. Campbell"); Plaintiff's Exhibit A at 23, ECF 48-1 (new Discrimination Complaint Form of plaintiff Tristan Campbell). Plaintiffs provide no reason why any plaintiff whose Title IX complaint is dismissed by the Department of Education could not simply try again later if this Court decides this case in their favor.

In short, the multiple other ways that Plaintiffs could seek the relief they seek foreclose their claim of irreparable harm.

### C. Plaintiffs have failed to show that the balance of the equities tips sharply in favor of the injunction.

Plaintiffs also fail to show that the balance of the equities tips in their favor, let alone sharply so. They claim they are not seeking to have the Court "take away the federal funding from any educational institutions." Mot. at 10, ECF 44. But this sleight of hand is misleading at best: Even if Plaintiffs are not attempting to "take away the federal funding" from any institutions *with this TRO request*, that is the result they are seeking with the administrative complaints they have filed with the Department. And their requested injunction would undeniably further that objective.

Moreover, the behavioral policies at religious colleges and universities that Plaintiffs claim violate Title IX are grounded in those schools' deeply held religious beliefs—which itself is an important equitable consideration. The fact that those beliefs on human sexuality and gender depart, often substantially, from secular or contemporary understandings does not diminish the fact that they are sincerely held or entitled to protection. Plaintiffs' suggestion that the affected religious schools could merely change those sincerely held religious beliefs to continue receiving federal funding is offensive because it asks them to do what is unthinkable: Either require their students to forego permissible federal funding or deny their faith in teaching and practice. This type of government coercion about what one can and cannot believe was why America was founded in the first place and why the First Amendment forbids what the Plaintiffs are seeking. The former choice—foregoing federal funding—would cut off an important option for many religious students, many of whom come from lower income and racial minority communities, as well as the LGBTQ+ community, and would harm religious colleges and universities financially. And the latter choice would strip such communities of their spiritual identity and character.

Plaintiffs are wrong in suggesting that these schools can simply sacrifice their religious identities and practices in order for their students to qualify for government aid.

The resolution of this case will thus require this Court to decide whether billions of dollars of federal funding can be stripped from students at religious institutions solely because of those institutions' religious beliefs and practices. The religious schools will remain religious in the absence of federal funding. It is their students, who will have to look elsewhere for loans and support, who will suffer if the requested relief is granted. Because enjoining the use of Title IX's religious exemption as a defense in litigation would *not* maintain the status quo, but would instead harm students at religious colleges around the country, the balance of equities weighs sharply against granting the injunction.

### D. Plaintiffs have failed to establish that a TRO is in the public interest.

Finally, an injunction is not in the public interest. Plaintiffs correctly recognize (at 44) that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir.2012) (internal quotation marks and citation omitted). But Plaintiffs have failed to allege any plausible claim that their *own* constitutional rights have been violated by Congress's decision to create space for religious colleges to exist as religious colleges while having their students receive a public benefit. And, as explained above, Plaintiffs' attempt to destroy the Title IX religious exemption as applied to LGBTQ+ students—under any of Plaintiffs' theories—would itself violate the Constitution. It would do so by allowing the federal government to pick and choose who among the religious colleges gets federal funding, depending on their religious beliefs, it is religious colleges, and the large swath of the public they serve and represent, that are at risk if an injunction is entered.

12 - Proposed Defendant-Intervenor Council for Christian Colleges & Universities's Opposition to Plaintiffs' Motion For Temporary Restraining Order (ECF 44)

## CONCLUSION

By asking the Court to enjoin the dismissal of administrative proceedings involving issues and parties not before it, Plaintiffs' motion stretches the limits of this Court's equitable powers in a way that flatly ignores the limits of Article III. But even if this Court had authority to issue the injunctive relief Plaintiffs seek, Plaintiffs have failed to satisfy any of the substantive requirements for such an injunction. Because Plaintiffs ask the Court to do what it cannot do, the motion should be denied.

Respectfully submitted this 9th day of August, 2021.

*/s/ Herbert G. Grey*
Herbert G. Grey
OSB #810250
4800 SW Griffith Drive, Suite 320
Beaverton, OR 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar #416368*
Nicholas P. Miller, MI Bar #P70694*
Joshua J. Prince, DC Bar #1685532*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Email: gschaerr@schaerr-jaffe.com

*Admitted *Pro Hac Vice*

*Counsel for Proposed Defendant-Intervenor
Council for Christian Colleges & Universities*

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing document on the following via the indicated method(s) of service:

| | |
|---|---|
| Paul Carlos Southwick<br>Paul Southwick Law, LLC<br>8532 N. Ivanhoe St. #208,<br>Portland, OR 97203<br>Email: paul@paulsouthwick.com<br>Phone: 503-806-9517 | Carol Federighi,<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>P.O. Box 883<br>Washington, DC 20044<br>Email: carol.federighi@usdoj.gov<br>Phone: (202) 514-1903 |

_____     **MAILING** certified full, true, and correct copies thereof in a sealed, first class postage-prepaid envelope, addressed to the attorney(s) shown above at their last known office address(es), and deposited with the U.S. Postal Service at Portland/Beaverton, Oregon, on the date set forth below.

\_\_x\_\_\_\_     **ELECTRONIC FILING** utilizing the Court's electronic filing system.

\_\_x\_\_\_\_     **EMAILING** certified full, true, and correct copies thereof to the attorney(s) shown above at their last known email address(es) on the date set forth below.

_____     **HAND DELIVERING** certified full, true, and correct copies thereof to the attorney(s) shown above at their last known office address(es), on the date set forth below.

_____     **OVERNIGHT COURIER** mailing of certified full, true, and correct copies thereof in a sealed, prepaid envelope, addressed to the attorney(s) shown above at their last known office address(es), on the date set forth below.

DATED this 9th day of August, 2021.

*/s/ Herbert G. Grey*
Herbert G. Grey
OSB #810250

*Counsel for Proposed Defendant-Intervenor Council for Christian Colleges & Universities*

**CERTIFICATE OF COMPLIANCE**

This document complies with the applicable word-count limitation under LR 7-2(b) because it contains 3,744 words including headings, footnotes, and quotations, but excluding the caption, signature block, and any certificates of counsel.

DATED this 9th day of August, 2021.

*/s/ Herbert G. Grey*
Herbert G. Grey
OSB #810250

*Counsel for Proposed Defendant-Intervenor Council for Christian Colleges & Universities*