KRISTEN K. WAGGONER,
OR Bar No. 067077
*Lead Counsel*

RYAN J. TUCKER*
AZ Bar No. 034382
MARK A. LIPPELMANN*
AZ Bar No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
kwaggoner@ADFlegal.org
rtucker@ADFlegal.org
mlippelmann@ADFlegal.org

DAVID A. CORTMAN*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org

*Admitted pro hac vice*

*Attorneys for Proposed Intervenors*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| ELIZABETH HUNTER, et al., | |
| *Plaintiffs*, | Case No. 6:21-cv-00474-AA |
| v. | |
| U.S. DEPARTMENT OF EDUCATION, et al., | **INTERVENORS' PROPOSED MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT** |
| *Defendants*, | |
| WESTERN BAPTIST COLLEGE d/b/a CORBAN UNIVERSITY; WILLIAM JESSUP UNIVERSITY; PHOENIX SEMINARY, | Request for Oral Argument |
| *[Proposed] Defendant-Intervenors.* | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... IV

MOTION TO DISMISS .......................................................................... 1

INTRODUCTION .................................................................................. 1

BACKGROUND .................................................................................... 2

STANDARD OF REVIEW ....................................................................... 3

ARGUMENT ........................................................................................ 4

I.    Plaintiffs do not plausibly allege any viable claims. ........................... 4

    A.    The complaint fails to state an Establishment Clause claim. ............... 4

        1.    The exemption is constitutional under *Corporation of Presiding Bishop v. Amos.* ...................................................................... 5

        2.    The exemption is consistent with history and tradition. ................. 6

        3.    The exemption satisfies the *Lemon* test ..................................... 8

    B.    The complaint fails to state an Equal Protection claim. ...................... 9

        1.    The exemption triggers rational-basis review under *Amos.* ........... 10

        2.    The exemption satisfies any scrutiny level. ................................ 12

    C.    The complaint fails to state a Substantive Due Process claim ............. 12

    D.    The complaint fails to state a claim under the First Amendment or RFRA. ................................................................................... 13

    E.    The complaint fails to state a claim under the APA. ......................... 14

    F.    Title IX forbids discrimination based on sex, not sexual orientation or gender identity. .............................................................. 18

    G.    Plaintiffs cannot satisfy the requirements of a facial challenge. ......... 20

II.   The requested relief would violate the Religious Schools' constitutional and statutory rights. ............................................................................ 21

    A.    The requested relief would violate RFRA. .................................... 21

    B.    The requested relief would violate the Free Exercise Clause. ............. 22

    C.    The requested relief discriminates against and compels speech, both of which violate the Free Speech Clause. .......................................... 23

    D.    The requested relief violates the church autonomy doctrine. .............. 24

E.    The requested relief creates a denominational preference in violation of the Establishment Clause. ................................... 25

F.    The requested relief violates the Religious Schools' right to associate with likeminded faculty and students. .................................. 26

III.    Plaintiffs' legal theory is limitless and endangers thousands of religious exemptions across the country. ........................................................ 26

IV.    In addition to failing on the merits, Plaintiffs' complaint requests relief that this Court has no power to give. ............................................................ 27

A.    The alleged injuries are not redressable. ............................................. 27

B.    The alleged harms are not traceable to the Department. ................... 29

C.    Plaintiffs do not allege a cognizable injury-in-fact. ............................. 31

1.  There is no imminent future injury. ................................................. 31

2.  The alleged injuries are not concrete. ............................................. 32

3.  Plaintiffs do not allege an injury as taxpayers. ............................... 33

D.    Plaintiffs' claims also are not ripe. ....................................................... 34

CONCLUSION............................................................................................................ 35

# TABLE OF AUTHORITIES

**Cases**

*Able v. United States,*
155 F.3d 628 (2d Cir. 1998) ............................................................ 11

*Agency for International Development v. Alliance for Open Society International, Inc.,*
570 U.S. 205 (2013) ........................................................................ 24

*American Legion v. American Humanist Association,*
139 S. Ct. 2067 (2019) ...................................................................... 6

*Americans for Prosperity Foundation v. Bonta,*
141 S. Ct. 2373 (2021) .................................................................... 26

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................................... 4

*Arver v. United States,*
245 U.S. 366 (1918) .......................................................................... 7

*Ball v. Massanari,*
254 F.3d 817 (9th Cir. 2001) .......................................................... 10

*Bell Atlantic Corporation v. Twombly,*
550 U.S. 544 (2007) .......................................................................... 4

*Blum v. Yaretsky,*
457 U.S. 991 (1982) .................................................................. 13, 14

*Bostock v. Clayton County,*
140 S. Ct. 1731 (2020) ................................................................ 19, 20

*Boy Scouts of America v. Dale,*
530 U.S. 640 (2000) ........................................................................ 26

*California Wilderness Coalition v. U.S. Department of Energy,*
631 F.3d 1072 (9th Cir. 2011) ........................................................ 15

*Chandler v. State Farm Mutual Automobile Insurance Company,*
598 F.3d 1115 (9th Cir. 2010) .......................................................... 3

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ........................................................................ 23

*City of Cleburne v. Cleburne Living Center,*
      473 U.S. 432 (1985) ................................................................................. 12

*City of Los Angeles v. Lyons,*
      461 U.S. 95 (1983) .................................................................................. 31

*Clapper v. Amnesty International USA,*
      568 U.S. 398 (2013) ........................................................................ 27, 30, 31

*Cook v. Gates,*
      528 F.3d 42 (1st Cir. 2008) ...................................................................... 11

*Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v.*
      *Amos,*
      483 U.S. 327 (1987) .........................................................................*passim*

*Cutter v. Wilkinson,*
      544 U.S. 709 (2005) .............................................................................. 5, 7

*Droz v. Commissioner of Internal Revenue Service,*
      48 F.3d 1120 (9th Cir. 1995) ...................................................................... 7

*DSE Group., LLC v. Richardson,*
      381 F. App'x 749 (9th Cir. 2010) ............................................................... 28

*Employment Division, Department of Human Resources of Oregon v. Smith,*
      494 U.S. 872 (1990) ................................................................................. 23

*Federal Communications Commission v. Prometheus Radio Project,*
      141 S. Ct. 1150 (2021) ............................................................................. 15

*Flagg Bros., Inc. v. Brooks,*
      436 U.S. 149 (1978) ................................................................................. 14

*Flast v. Cohen*
      392 U.S. 83 (1968) .................................................................................. 33

*Freedom From Religion Foundation, Inc. v. Lew,*
      773 F.3d 815 (7th Cir. 2014) ..................................................................... 33

*Freedom From Religion Foundation, Inc. v. Obama,*
      641 F.3d 803 (7th Cir. 2011) ..................................................................... 32

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
      528 U.S. 167 (2000) ........................................................................... 27, 32

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021) ........................................................................... 7, 21, 22

*Gallinger v. Beccera,*
    898 F.3d 1012 (9th Cir. 2018) .......................................................................... 10

*Gillette v. United States,*
    401 U.S. 437 (1971) ......................................................................................... 5, 6, 7

*Goldman v. United States,*
    245 U.S. 474 (1918) ............................................................................................ 7

*Gonzales v. Gorsuch,*
    688 F.2d 1263 (9th Cir. 1982) ......................................................................... 27

*Granite Outlet, Inc. v. Baker,*
    No. 2:14-cv-00124, 2017 WL 590257 (E.D. Cal. Feb. 14, 2017) ...................... 28

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) .......................................................................................... 19

*Harger v. Department of Labor,*
    569 F.3d 898 (9th Cir. 2009) ........................................................................... 28

*Harrison v. Kernan,*
    971 F.3d 1069 (9th Cir. 2020) ......................................................................... 10

*Hein v. Freedom From Religion Foundation, Inc.,*
    551 U.S. 587 (2007) .......................................................................................... 33

*Heller v. Doe by Doe,*
    509 U.S. 312 (1993) .......................................................................................... 11

*Honig v. Doe,*
    484 U.S. 305 (1988) .......................................................................................... 19

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC,*
    565 U.S. 171 (2012) .............................................................................. 11, 24, 25

*John Doe No. 1 v. Reed,*
    561 U.S. 186 (2010) .......................................................................................... 20

*Karnoski v. Trump,*
    926 F.3d 1180 (9th Cir. 2019) ......................................................................... 11

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America,*
    344 U.S. 94 (1952) ............................................................................................ 24

*Kong v. Scully,*
    341 F.3d 1132 (9th Cir. 2003) ................................................................. 7, 8, 9

*Lamb's Chapel v. Center Moriches Union Free School District,*
    508 U.S. 384 (1993) ........................................................................ 23

*Larson v. Valente,*
    456 U.S. 228 (1982) ................................................................... 25, 26

*Lemon v. Kurtzman,*
    403 US. 602 (1971) ......................................................................... 6

*Loretto v. Teleprompter Manhattan CATV Corporation,*
    458 U.S. 419 (1982) ....................................................................... 19

*Little Sisters of the Poor Peter & Paul Home v. Pennsylvania,*
    140 S. Ct. 2367 (2020) ..................................................................... 7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................... 27, 29, 32

*Manhattan Community Access Corp. v. Halleck,*
    139 S. Ct. 1921 (2019) .................................................................... 13

*Massachusetts v. U.S. Department of Health and Human Services,*
    No. 17-11930-NMG, 2021 WL 185243 (D. Mass. 2021) ................................. 12

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
    138 S. Ct. 1719 (2018) .................................................................... 23

*Mayweathers v. Newland,*
    314 F.3d 1062 (9th Cir. 2002) .............................................................. 8

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010) ....................................................................... 12

*Mendia v. Garcia,*
    768 F.3d 1009 (9th Cir. 2014) ............................................................. 30

*Mitchell v. Helms,*
    530 U.S. 793 (2000) ........................................................................ 9

*National Urban League v. Ross,*
    977 F.3d 770 (9th Cir. 2020) .............................................................. 16

*Navajo Nation v. U.S. Forest Service,*
    535 F.3d 1058 (9th Cir. 2008) ............................................................. 22

*New Prime Inc. v. Oliveira,*
    139 S. Ct. 532 (2019) ........................................................................ 18

*Newdow v. Roberts,*
    603 F.3d 1002 (D.C. Cir. 2010) ...................................................... 29

*Our Lady of Guadalupe School v. Morrissey-Berru,*
    140 S. Ct. 2049 (2020) ........................................................ 11, 24, 25

*Pennhurst State School & Hospital v. Halderman,*
    451 U.S. 1 (1981) ............................................................................. 19

*Personnel Administrator of Massachusetts v. Feeney,*
    442 U.S. 256 (1979) .................................................................. 10, 11

*Police Department of Chicago v. Mosley,*
    408 U.S. 92 (1972) ........................................................................... 23

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ........................................................................ 23

*Rendell-Baker v. Kohn,*
    457 U.S. 830 (1982) ........................................................................ 14

*Richenberg v. Perry,*
    97 F.3d 256 (8th Cir. 1996) ............................................................ 11

*Rosenberger v. Rector and Visitors of University of Virginia,*
    515 U.S. 819 (1995) ........................................................................ 23

*Scott v. Pasadena Unified School District,*
    306 F.3d 646 (9th Cir. 2002) .......................................................... 33

*Smith v. Hogan,*
    794 F.3d 249 (2d Cir. 2015) ............................................................. 4

*SmithKline Beecham Corp. v. Abbott Laboratories,*
    740 F.3d 471 (9th Cir. 2014) .......................................................... 11

*Southwest Environmental Center v. Sessions,*
    355 F. Supp. 3d 1121 (D.N.M. 2018) ............................................ 32

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) .............................................................. 31, 32

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) .................................................................... 22

*Thomas v. Anchorage Equal Rights Commission,*
    220 F.3d 1134 (9th Cir. 2000) ........................................................... 34

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ...................................................................... 28

*Trunk v. City of San Diego,*
    629 F.3d 1099 (9th Cir. 2011) ............................................................. 8

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ............................................................... 4

*United States v. Stevens,*
    559 U.S. 460 (2010) ......................................................................... 21

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,*
    454 U.S. 464 (1982) .................................................................... 32, 33

*Victorino v. FCA US LLC,*
    No. 16-cv-1617-GPC(JLB), 2016 WL 6441518 (S.D. Cal. Nov. 1, 2016) ......... 28

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) .................................................................... 12, 13

*Washington Environmental Council v. Bellon,*
    732 F.3d 1131 (9th Cir. 2013) ........................................................... 31

*Walz v. Tax Commission of New York,*
    397 U.S. 664 (1970) .......................................................................... 7

*Williams v. Attorney General of Alaska,*
    378 F.3d 1232 (11th Cir. 2004) .......................................................... 13

*Williams v. California,*
    764 F.3d 1002 (9th Cir. 2014) ............................................................. 8

*Witt v. Department of the Air Force,*
    527 F.3d 806 (9th Cir. 2008) ........................................................ 12, 13

*Wooley v. Maynard,*
    430 U.S. 705 (1977) ......................................................................... 23

*Zorach v. Clauson,*
    343 U.S. 306 (1952) .......................................................................... 7

## Constitutional Provisions / Statutes

United States Constitution art II.................................................................................. 26

United States Constitution art VI ................................................................................. 26

5 U.S.C. § 702 .............................................................................................................. 28

5 U.S.C. § 706 .............................................................................................................. 15

18 U.S.C. § 3597 .......................................................................................................... 26

20 U.S.C. § 1681 ..................................................................................................... *passim*

20 U.S.C. § 1682 .......................................................................................................... 17

20 U.S.C. § 1686 .......................................................................................................... 19

42 U.S.C. § 238 ............................................................................................................ 26

42 U S.C. § 2000 ..................................................................................................... 13, 21

42 U.S.C. § 18113 ........................................................................................................ 26

34 C.F.R § 106.12 ................................................................................................... *passim*

34 C.F.R § 106.32 ........................................................................................................ 20

34 C.F.R § 106.33 ........................................................................................................ 20

34 C.F.R § 106.34 ........................................................................................................ 20

34 C.F.R § 106.40 ........................................................................................................ 20

34 C.F.R § 106.41 ........................................................................................................ 20

34 C.F.R § 106.43 ........................................................................................................ 20

34 C.F.R § 106.52 ........................................................................................................ 20

34 C.F.R § 106.59 ........................................................................................................ 20

34 C.F.R § 106.61 ........................................................................................................ 20

45 C.F.R. § 86.32 ......................................................................................................... 20

August Rule, 85 Fed. Reg. 30026 (May 19, 2020)................................................... 15, 16

November Rule, 85 Fed. Reg. 59916 (Sept. 23, 2020) .................................... 16, 17, 18

Federal Rules of Civil Procedure 12 .............................................................................. 3

Consolidated and Further Continuing Appropriations Act, 2015,
    Pub. L. No. 113-235, 128 Stat. 2130. ............................................................... 26

## Other Authorities

Lucien J. Dhooge, *Public Accommodation Statutes, Sexual Orientation and
    Religious Liberty: Free Access or Free Exercise?*, 27 U. Fla. J.L. & Pub. Pol'y 1,
    (2016) ............................................................................................................. 26

*Glossary of Terms*, Human Rights Campaign,
    https://www.hrc.org/resources/glossary-of-terms .............................................. 29

Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original
    Understanding of the Establishment Clause*, 81 Notre Dame L. Rev. 1793
    (2006) ................................................................................................................ 7

James Ryan, Note, *Smith and the Religious Freedom Restoration Act: An
    Iconoclastic Assessment*, 78 Va. L. Rev. 1407 (1992) ....................................... 26

Sex, The American Heritage Dictionary of the English Language (1st ed. 1969) .... 18

Sex, Webster's New World Dictionary of the American Language (College ed. 1962)
    ........................................................................................................................ 18

## MOTION TO DISMISS

Proposed Defendant-Intervenors Corban University ("Corban"), William Jessup University ("Jessup"), and Phoenix Seminary (together, "Religious Schools") move to dismiss Plaintiffs' First Amended Complaint (ECF 35) under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Because the Religious Schools' motion to intervene remains pending (*see* ECF No. 8), they also submit this motion under Federal Rule of Civil Procedure 24(c). Pursuant to Local Civil Rule 7-1(a), counsel for the Religious Schools made a good faith effort through a telephone conference to resolve the dispute but were unable to do so.

## INTRODUCTION

This Court should dismiss the amended complaint because the Supreme Court already considered and answered the question presented: religious exemptions in non-discrimination laws are constitutional, and the alternative—excluding religious schools and students from generally-available governmental benefits based on their beliefs—is unconstitutional. This is especially true when, as here, the alleged injuries result from independent conduct of private actors, not the government. Yet Plaintiffs seek to eviscerate Title IX's religious exemption and forbid students from using their student loans at religious schools whose beliefs depart from Plaintiffs' orthodoxy. Fortunately, the law prevents this outcome.

It is hard to overstate the magnitude of Plaintiffs' requests. They ask this Court to declare Title IX's religious exemption unconstitutional, and they request a nationwide injunction that would not only *prevent* the Department of Education from enforcing the exemption but would *force* the Department to forever police religious institutions' beliefs and ensure that they reflect Plaintiffs' views. First Am. Compl. (FAC) at 87-88, ECF No. 35. If granted, the requested relief would revoke a religious accommodation enshrined in Title IX for half a century, preventing students from obtaining a faith-based education and threatening the existence of many schools.

But the unprecedented scope of the complaint's requested relief is just one of many problems. This Court should dismiss the complaint for three reasons. *First*, Plaintiffs fail to state a claim upon which relief can be granted. *Second*, the requested relief would violate the Religious Schools' constitutional and statutory rights. *Third*, each of the Plaintiffs lack standing.

## BACKGROUND

Title IX prohibits differential treatment "on the basis of sex" in any education program or activity that receives federal funds. 20 U.S.C. § 1681(a). But this prohibition is not generally applicable; in fact, Congress enumerated *nine* separate exceptions from this requirement. One is for "educational institution[s]" that are "controlled by a religious organization if the application of [the law] would not be consistent with the religious tenets of such organization." *Id.* at § 1681(a)(3); *see also* 34 C.F.R. § 106.12(a). The rest are secular exemptions, given for a variety of reasons. 20 U.S.C. § 1681(a)(1)-(9).

The Department is responsible for enforcing Title IX and its implementing regulations. 34 C.F.R. § 106. Under those regulations, an educational institution may assert the statutory religious exemption without making a formal request for recognition by the Department. 34 C.F.R. § 106.12(b). Even so, the institution may obtain a formal assurance by submitting a written statement from the institution's highest-ranking official to the Department's Assistant Secretary of the Office for Civil Rights, identifying the Title IX provisions that conflict with specific tenets of the religious organization. *Id.*

The religious exemption creates a harmonious framework: society benefits from federal investment in education, students can finance their education at the school of their choice, and religious institutions can operate consistently with their religious beliefs. This framework has worked well for nearly 50 years. Plaintiffs now ask this Court to obliterate it. They object to certain religious beliefs about gender

and sexual morality held by schools covered by the exemption. These schools engage in chapel and classroom instruction, publish policies governing access to showers and dorm rooms, establish lifestyle expectations, and offer counseling services in accord with those beliefs. Plaintiffs disagree with these beliefs and practices, and allege they were injured by them. So, according to Plaintiffs, the exemption must go.

The Religious Schools sought to intervene because they are in this lawsuit's crosshairs. *See* Proposed Intervenors' Mot. to Intervene and Mem. in Supp. at 2-4, ECF 8. They are subject to Title IX and have religious tenets that would conflict with Title IX's requirements if the statute's definition of "sex" is interpreted to include sexual orientation and gender identity. *Id.* at 8-12. They believe that God immutably creates each person as male or female and that human flourishing comes by living consistently with one's biological sex. *Id.* at 10. They also believe that marriage is a sacred covenant between one man and one woman, and the only sanctioned context for sexual activity. *Id.* The Religious Schools express these beliefs daily—in their chapel services, in their classrooms, and in their written communications—and they have policies governing conduct in their communities. *Id.* at 10-12. While no student is compelled to attend these schools, those who voluntarily attend agree to abide by the schools' religious beliefs and policies. *See id.* at 11.[1]

## STANDARD OF REVIEW

When a court lacks subject-matter jurisdiction, it must dismiss the action. FED. R. CIV. P. 12(b)(1). A challenge to standing is appropriately raised under Rule 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing subject-matter jurisdiction, including standing to sue. *Id.* Likewise, the court must also dismiss when the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a

---

[1] A more detailed exposition of factual and procedural background is provided in the Religious Schools' Mot. to Intervene and Mem. in Supp. at 8-15, ECF 8.

motion to dismiss, the complaint must include a short and plain statement of the claim[2] and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must set forth "more than labels and conclusions," and must plead facts supporting a *plausible*, not merely *possible*, claim for relief. *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I. Plaintiffs do not plausibly allege any viable claims.

Plaintiffs allege five causes of action, including claims that Title IX's religious exemption violates: (1) the Establishment Clause; (2) equal protection and substantive due process rights under the Fifth Amendment; (3) freedom of religion, free speech, assembly, and associational rights under the First Amendment; (4) the Administrative Procedure Act; and (5) the Religious Freedom Restoration Act. *See* FAC at 73-86. Because none of these state a claim upon which relief can be granted, the amended complaint should be dismissed.

### A. The complaint fails to state an Establishment Clause claim.

Religious exemptions have repeatedly survived Establishment Clause challenges, and the exemption here should fare no different. Title IX's religious exemption is a denominationally neutral accommodation of religion, consistent with our nation's history and tradition, and easily passes the *Lemon* test. Plaintiffs' Establishment Clause claim should be dismissed.

---

[2] The Court should ignore Plaintiffs' declarations at this stage. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (declarations created for litigation are ineligible to be incorporated into a complaint under Rule 10(c)); *accord Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015) ("If such [declarations] could be deemed part of a complaint, then Rule 8(a)'s requirement of a short and plain statement of a claim for which relief could be granted would be eviscerated.").

### 1. The exemption is constitutional under *Corporation of Presiding Bishop v. Amos.*

Plaintiffs' Establishment Clause claim stumbles out the gate because the Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334 (1987) (citation omitted). Government can even "accommodate religion beyond free exercise requirements, without offense to the Establishment Clause." *Cutter v. Wilkinson*, 544 U.S. 709, 713 (2005). In Title IX, Congress followed this "happy tradition," *Gillette v. United States*, 401 U.S. 437, 453 (1971), exempting religious educational institutions from Title IX's requirements if they conflicted with the school's "religious tenets." 20 U.S.C. § 1681(a)(3).

The Supreme Court upheld a nearly identical statutory exemption against a nearly identical challenge. In *Amos*, an employee challenged Title VII's religious exemption for violating the Establishment Clause. 483 U.S. at 329. Like Title IX's exemption, Title VII's protected "religious . . . educational institution[s]"; the latter just did so "with respect to the employment of individuals of a particular religion . . . ." *Id* at. 329 n.1. *Amos* upheld this exemption because it served a legitimate purpose (reducing government interference with religious organizations), allowed religious organizations to advance their mission (without forcing the government to do so), and treated religion neutrally (without discriminating among religions). *Id*. at 335–39.

The same logic applies here. Like its Title VII counterpart, Title IX's exemption allows religious schools to define and carry out their religious missions, does not require the government to promote religion, and protects all religious educational organizations without singling out any denomination or belief for special treatment. To be sure, Plaintiffs believe the exemption favors certain religious beliefs and denominations. FAC ¶¶ 587, 648-49, 654-55. But the "critical weakness" of Plaintiffs'

claim is "that [the exemption], on its face, simply does not discriminate on the basis of religious affiliation or religious belief." *Gillette*, 401 U.S. at 450. And in practice, many diverse religious entities have invoked the religious exemption. As Plaintiffs admit, the Department "has never rejected an educational institution's assertion that it is controlled by a religious organization." FAC ¶ 584. And the very entities named in this lawsuit represent many different religious views and span many different faith traditions—from Baptist (*e.g.*, Baylor, Cedarville, Clark's Summit, Oklahoma Baptist) to Wesleyan (*e.g.*, Indiana Wesleyan) to Quaker (*e.g.*, George Fox) to Seventh Day Adventist (*e.g.*, La Sierra). This diversity is positive and shows that the Department has enforced a neutral exemption in a neutral way, without preferring any religion or denomination. The exemption is constitutional under *Amos*.

> **2.      The exemption is consistent with history and tradition.**

Although *Amos* itself resolves this case, the Supreme Court recently adopted a historical test to evaluate Establishment Clause claims. Title IX's exemption satisfies this test as well.

Since 1971, courts have sporadically applied the three-part test from *Lemon v. Kurtzman*, 403 U.S. 602 (1971), to evaluate Establishment Clause claims. *See Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2080 (2019) (plurality opinion) (surveying this history). But this test has "been harshly criticized by Members of th[e] [Supreme] Court, lamented by lower court judges, and questioned by a diverse roster of scholars." *Id.* at 2081. In many recent cases, the Supreme Court has refused to apply or simply ignored *Lemon*. *Id.* at 2080 (listing cases). Now, the Supreme Court has largely discarded *Lemon* and adopted an approach that "looks to history for guidance"—asking whether a particular action is consistent with "historical practices and understandings." *Id.* at 2087; *id.* at 2101-02 (Gorsuch, J., concurring) (agreeing with plurality's "historically sensitive approach"). Under this approach, Title IX's exemption easily satisfies Establishment Clause requirements.

Our nation boasts a long history of accommodating religion through statutory exemptions without violating the Establishment Clause. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1905-12 (2021) (Alito, J., concurring); Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original Understanding of the Establishment Clause*, 81 Notre Dame L. Rev. 1793, 1808–09 (2006). And for the past century, the Supreme Court has repeatedly upheld religious exemptions against Establishment Clause attacks:

- *Arver v. United States*, 245 U.S. 366, 376, 389–90 (1918) (draft exemption for clergy, seminarians, and pacificists);
- *Goldman v. United States*, 245 U.S. 474, 476 (1918) (same);
- *Zorach v. Clauson,* 343 U.S. 306, 312 (1952) (exemption from compulsory education law for religious instruction off campus);
- *Walz v. Tax Comm'n of New York*, 397 U.S. 664, 680 (1970) (property tax exemption for religious non-profits);
- *Gillette,* 401 U.S. at 441, 460 (draft exemption for those with certain religious and conscientious objections);
- *Amos*, 483 U.S. at 334 (Title VII religious exemption); and
- *Cutter*, 544 U.S. at 720 (RLUIPA exemption for prisoners).

The Ninth Circuit has also upheld religious exemptions:

- *Kong v. Scully*, 341 F.3d 1132, 1134 (9th Cir. 2003) (exemption for non-medical care of persons).
- *Droz v. Comm'r of IRS*, 48 F.3d 1120, 1124 (9th Cir. 1995) (exemption from tax for Social Security).

By 2020, the tradition of religious exemptions was so well-established that when the Supreme Court considered a challenge to the Affordable Care Act's religious exemption, one Justice noted that "the States do not argue—and there is no basis for an argument—that the new rule violates [the Establishment] Clause." *Little Sisters of the Poor Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2396 n.13 (2020) (Alito, J., concurring). Because accommodating religious exercise is consistent with our nation's history and tradition, Plaintiffs' Establishment Clause claim fails.

### 3.    The exemption satisfies the *Lemon* test.

Although many courts have rightly abandoned the *Lemon* test, Title IX's religious exemption satisfies this test as well. The exemption has a secular purpose, its primary effect neither advances nor inhibits religion, and it does not entangle government with religion. *Williams v. California*, 764 F.3d 1002, 1014 (9th Cir. 2014).

*Lemon's* first prong is satisfied when a law serves a permissible secular purpose. *Id.* "[I]t is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Amos*, 483 U.S. at 335. If guessing which "activities a secular court will consider religious" represented a "significant burden on a religious organization" in the Title VII context, *id.* at 335, guessing which teachings and practices will violate Title IX represents an even larger one. The Title IX exemption serves a permissible secular purpose by reducing governmental interference with religious activity. Under *Lemon*, that "is a lawful secular purpose." *Kong*, 341 F.3d at 1140.

*Lemon's* second prong is satisfied when a law's primary effect neither advances nor inhibits religion. *Williams*, 764 F.3d at 1014. To evaluate this prong, courts consider whether the challenged government action sends "primarily a message of either endorsement or disapproval of religion" to the "informed and reasonable observer." *Trunk v. City of San Diego*, 629 F.3d 1099, 1109-10 (9th Cir. 2011). The Title IX exemption does not. *See Amos*, 483 U.S. at 335 (Title VII had primary effect of allowing religious organizations to advance their mission). The government can accommodate private religious exercise without endorsing any religious view. *Mayweathers v. Newland*, 314 F.3d 1062, 1069 (9th Cir. 2002) (upholding a law that "merely accommodates and protects the free exercise of religion, which the Constitution allows"). While Plaintiffs suggest that relieving religious institutions "of regulatory burdens and liability" is impermissible (FAC ¶ 652), courts have

repeatedly held otherwise. *See, e.g.*, *Amos*, 483 U.S. at 337 (distinguishing law that "*allows* [religious institutions] to advance religion" like an exemption from situations when "*government itself* has advanced religion through its own activities and influence"); *Kong*, 341 F.3d at 1139-40 (noting that exemption "indoctrinates no one in religion" and "does not symbolize government approval"). As these cases show, reasonable observers understand that the government neither advances nor inhibits religion by simply accommodating it.

*Lemon*'s third prong is also satisfied because "[i]t cannot be seriously contended that [this religious exemption] impermissibly entangles church and state," as it "effectuates a more complete separation of the two and avoids . . . intrusive inquir[ies] into religious belief[s]." *Amos*, 483 U.S. at 339. The challenged exemption applies to all religions and all denominations, and it encompasses all religious tenets that conflict with Title IX. 20 U.S.C. § 1681(a)(3). Plaintiffs admit as much, noting that the Department has administered the exemption in a deferential manner, "never reject[ing] an educational institution's assertion that it is controlled by a religious organization." FAC ¶ 584. There is no entanglement.

In contrast, Plaintiffs insist that the Department scrutinize exemption requests to identify permissible and impermissible religious beliefs about "sexual and gender minority students." *Id.* at 87 ¶¶ B–C. But that would violate the well-established principle that "courts should refrain from trolling through a person's or institution's religious beliefs." *Mitchell v. Helms*, 530 U.S. 793, 828 (2000). So as explained in Section II below, it is Plaintiffs' requested relief—not the exemption—that would create excessive entanglement.

### B.    The complaint fails to state an Equal Protection claim.

Plaintiffs base their equal protection claim on alleged harm to "sexual and gender minority students." FAC ¶ 641. But this vague classification does not constitute a protected class, and the challenged exemption does not classify *anyone*

based on this or any protected class. The exemption therefore triggers only rational-basis review, which it easily survives.

### 1.    The exemption triggers rational-basis review under *Amos*.

The level of scrutiny for an equal protection claim depends on "the state's classification of groups." *Gallinger v. Beccera*, 898 F.3d 1012, 1016 (9th Cir. 2018) (citation omitted). Laws discriminating against a suspect class (such as "race, religion, or national origin") receive "strict scrutiny." *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). "Regulations which facially discriminate on the basis of gender . . . must receive intermediate scrutiny." *Harrison v. Kernan*, 971 F.3d 1069, 1078 (9th Cir. 2020). And laws that classify upon neither a suspect nor quasi-suspect class receive rational-basis review. *Ball*, 254 F.3d at 823.

Here, rational-basis review applies because Title IX's religious exemption does not mention—much less classify—*any* protected class. The exemption "is neutral on its face and motivated by a permissible purpose of limiting governmental interference with the exercise of religion." *Amos*, 483 U.S. at 339. Thus, there is "no justification for applying strict scrutiny." *Id.* While Plaintiffs say they are "sexual and gender minority students," their own classification is irrelevant. It is the law's classification that matters. And here, the challenged exemption does not classify students at all; it applies only to religious schools.

Unable to identify any facial classification in the statute, Plaintiffs accuse the exemption of negatively *affecting* "sexual and gender minority students." But disparate impact alone does change the level of scrutiny. "When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 272 (1979). Further, no court has recognized the vague and broad classification of "sexual and gender minorities." The Supreme Court has never recognized sexual

orientation or transgender status as suspect classes,[3] and the challenged exemption does not classify students in those groups (or any other group).

Because Title IX's religious exemption is facially neutral, it deserves rational-basis review unless it was adopted with an "invidious" purpose to discriminate on another basis. *Feeney*, 442 U.S. at 274. But Plaintiffs do not allege any facts showing that Congress had an invidious purpose in adopting the exemption or that the Department had this purpose in applying it. For good reason. The Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices." *Amos*, 483 U.S. at 334. After all, "the First Amendment itself . . . gives special solicitude to the rights of religious organizations." *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 189 (2012). Title IX therefore affects a "core" religious function of religious schools and seminaries: "educating young people in their faith, inculcating its teachings, and training them to live their faith." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064 (2020).

A law survives rational-basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). Title IX's exemption survives rational-basis review because it serves a legitimate governmental interest of accommodating religion. *See Amos*, 483 U.S. at 339 (Title VII religious exemption triggered and survived rational basis review by serving a legitimate state interest of accommodating religion).

---

[3] The Ninth Circuit has applied intermediate scrutiny to classifications based on sexual orientation and transgender status. *SmithKline Beecham Corp. v. Abbott Laboratories*, 740 F.3d 471, 481 (9th Cir. 2014) (sexual orientation), *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019) (transgender). But other circuit courts have refused to do so. *See, e.g.*, *Cook v. Gates*, 528 F.3d 42, 61-62 (1st Cir. 2008); *Able v. United States*, 155 F.3d 628, 635 (2d Cir. 1998); *Richenberg v. Perry*, 97 F.3d 256, 260 (8th Cir. 1996).

### 2.    The exemption satisfies any scrutiny level.

Rational basis applies, but Title IX's exemption satisfies *any* level of review, including strict scrutiny, which requires that the challenged law be "suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Here, the exemption serves a compelling government interest by preventing the government from violating foundational religious liberties protected by the First Amendment and RFRA. *See, e.g.*, *Amos*, 483 U.S. at 334 ("[T]he government may (and sometimes must) accommodate religious practices."); *Massachusetts v. U.S. Dep't of Health and Hum. Servs.*, No. 17-11930-NMG, 2021 WL 185243, at *10 (D. Mass. 2021) ("The Supreme Court has indicated . . . that the accommodation of sincerely held religious and moral beliefs is an important government interest."). Indeed, as described below, revoking Title IX's exemption would lead to manifold constitutional and statutory violations. And the scope of the exemption is "suitably tailored" to that interest because it only applies "if" and "to the extent" that application of Title IX would violate an institution's religious tenets. *See* 20 U.S.C. § 1681(a)(3); 34 C.F.R § 106.12(a).

### C.    The complaint fails to state a Substantive Due Process claim.

"Substantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases." *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008). Fundamental rights include "particular rights contained in the first eight Amendments" because they are "fundamental to our scheme of ordered liberty and system of justice." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 763-4 (2010). They also include unenumerated "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citation omitted). According to the Supreme Court, these rights include "rights to marry; to have children; to direct the education and

upbringing of one's children; to marital privacy; to use contraception; . . . and to abortion." *Id.* at 720. (citations omitted). But courts must "exercise the utmost care whenever [they] are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed" into judicial policy preferences. *Id.* (cleaned up).

Plaintiffs allude to several Substantive Due Process theories, asserting that Title IX's exemption burdens their fundamental right to marry (FAC ¶ 634-35), as well as their "rights" to obtain "gender-affirming" and "culturally competent" medical care; to be free from bias-related harassment and conversion therapy; to privacy about their LGBTQ+ status; and to be clothed and groomed consistent with that status. FAC ¶ 645. But the *exemption* does not burden any of these. Substantive due process is not implicated unless "the *government* attempts to intrude upon [Plaintiffs'] personal and private lives." *Witt*, 527 F.3d at 819 (emphasis added). And here, the government is not stopping anyone from marrying or obtaining medical care or dressing as they wish. Plaintiffs do not seek to be free from government interference but rather to compel private religious schools to conform to Plaintiffs' views. They have no right to that.[4]

### D. The complaint fails to state a claim under the First Amendment or RFRA.

To state a claim under the First Amendment or RFRA, Plaintiffs must allege that their injuries are caused by the *government*, not private actors. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019); *see* 42 U.S.C. § 2000bb-1(a). The fact that a private entity receives governmental funding or is subject to regulation does not render its conduct government action. *See Blum v. Yaretsky*, 457 U.S. 991,

---

[4] Moreover, apart from marriage, neither the Supreme Court nor the Ninth Circuit have recognized Plaintiffs' alleged "rights" as fundamental. *See Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1250 (11th Cir. 2004) (declining to create fundamental right for sexual privacy).

1004 (1982). Nor does the government's acquiescence, approval or encouragement of private conduct. *See id.*; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978). Plaintiffs must instead show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004. No such nexus exists when, as here, the alleged injury results from the intervening conduct of a private party exercising independent judgment. *See id.*; *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982).

Here, Plaintiffs allege that their constitutional rights are burdened by "campus policies." FAC ¶ 701. But those policies were developed and enforced by private religious schools, not the government. In an attempt to manufacture governmental action, Plaintiffs suggest that the Department itself burdens their constitutional rights by granting religious exemptions, which in turn, allow private religious schools to maintain policies that allegedly injure Plaintiffs. FAC ¶¶ 2, 5, 705. But the Department's mere acquiescence or approval of private religious schools' conduct does not turn their private religious decisions into government action. *See Blum*, 457 U.S. 1004. And the intervening conduct of private religious schools exercising their independent judgment (by teaching their religious doctrines and enforcing policies reflecting their individual religious beliefs) destroys any nexus between the Department's recognition of religious exemptions and Plaintiffs' alleged injuries. Plaintiffs therefore fail to plausibly allege governmental action, and their First Amendment and RFRA claims must be dismissed.

### E.    The complaint fails to state a claim under the APA.

Plaintiffs challenge two final rules that the Department issued to revise Title IX's implementing regulation, 34 C.F.R. § 106.12. Plaintiffs argue that both rules "should be vacated as arbitrary and capricious." FAC ¶¶ 688, 697. But Plaintiffs fail to state an APA claim because the final rules were reasonable, considered and

discussed comments, and merely explained the Department's longstanding and lawful application of the religious exemption.

Under the APA, courts set aside agency actions found to be "[1] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [2] contrary to constitutional right, power, privilege, or immunity; [3] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C). The APA's arbitrary-and-capricious standard merely requires "that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.* Finally, when reviewing agency action under the APA, courts must take "due account of the harmless error rule," which excuses agency mistakes that "clearly had no bearing on the procedure used or the substance of decision reached." *California Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1090 (9th Cir. 2011) (citations omitted).

***The August Rule.*** The first rule, effective August 2020, codified the Department's "longstanding" position that an institution need not obtain a formal assurance from the Department before asserting the statutory religious exemption. 85 Fed. Reg. 30026, 30475 (May 19, 2020) ("August Rule"). The August Rule is consistent with law and falls squarely within the Department's authority. In fact, the August Rule brought the regulation "further in line with the relevant statutory framework," because "[n]o part of the statute requires that recipients receive an assurance letter from OCR, and no part of the statute suggests that a recipient must be publicly on the record as a religious institution claiming a religious exemption before it may invoke a religious exemption in the context of Title IX." *Id.* Indeed, the

statutory language of Title IX grants the religious exemption without reference to whether an institution obtains an assurance from the Department. 20 U.S.C. § 1681(a)(3).

And the August Rule is not arbitrary and capricious under the APA's deferential standard. Before issuing the August Rule, the Department issued a Notice of Proposed Rulemaking and "received more than 124,000 comments on the proposed regulations." 85 Fed. Reg. at 30055. Contrary to Plaintiffs' bald allegation, FAC ¶ 693, the August Rule gave a detailed explanation of the Department's reasons for codifying its longstanding practice, discussed the relevant statutory language, evaluated alternatives, and considered and responded to comments, including comments concerning the rights of students who identify as LGBTQ. *Id.* at 30475-30482. So the August Rule is far from arbitrary or capricious.

To be sure, "when an agency changes course," it should generally consider "that longstanding policies may have engendered serious reliance interests that must be taken into account." *See Nat'l Urb. League v. Ross*, 977 F.3d 770, 778 (9th Cir. 2020) (citations omitted). But here, the Department didn't change course. Rather, the Department codified its longstanding policy. 85 Fed. Reg. at 30475 ("Contrary to commenters who suggested that the [prior regulation] require[d] schools to affirmatively request an assurance letter from OCR, OCR has previously interpreted the [prior] regulation to mean that a school can invoke a religious exemption even after OCR has received a complaint regarding the educational institution."). So there could be no legitimate reliance interest in a contrary interpretation of the regulation.

***The November Rule.*** The second rule, effective November 2020, clarified how institutions can show that they are controlled by a religious organization and therefore eligible to invoke the exemption. 85 Fed. Reg. 59916, 59945 (Sept. 23, 2020) ("November Rule"). Title IX "does not directly address how educational institutions demonstrate whether they are controlled by a religious organization." *Id.* at 59918.

The Department explained that "religious organizations are organized in widely different ways that reflect their respective theologies." *Id.* "Indeed, the Department has long recognized exemptions for educational institutions that are controlled by religious organizations with [both] hierarchical and non-hierarchical structures." *Id.* The Department explained that both the Constitution and RFRA obligate it "to broadly interpret 'controlled by a religious organization' to avoid religious discrimination among institutions of varying denominations." *Id.*

The November Rule is also far from arbitrary or capricious. Before issuing the rule, the Department issued a Notice of Proposed Rulemaking and "received more than 17,000 comments on the proposed regulations." 85 Fed. Reg. at 59919. Again, contrary to Plaintiffs' bald allegations, FAC ¶ 676-77, the November Rule gave a detailed explanation of the Department's reasons for clarifying how it determined control by a religious organization, discussed the relevant statutory language, evaluated alternatives, and considered and responded to various comments, including comments regarding the civil rights of students who identify as LGBTQ. *Id.* at 59945-62. And because the November Rule merely codified factors that the Department had used for decades to evaluate control by a religious organization, *id.* at 59949, there can be no legitimate reliance interest in a contrary interpretation. Because the November Rule was reasonable and reasonably explained, it is not arbitrary or capricious.

And the November Rule is consistent with the law, the agency' authority, and the Department's prior interpretation of "control by a religious organization." The Department has authority to regulate with regard to sex discrimination, 20 U.S.C. § 1682, and it reasonably "determined it is necessary to regulate given the statutory silence and genuine ambiguity in regard to the criteria for obtaining a religious exemption under Title IX." *Id.* at 59949. The November Rule's changes "are consistent with the Title IX statute in that they do not contradict, but attempt to clarify, an

explicit exception provided for in the Title IX statute." *Id.* And in enumerating the ways that schools can show they are controlled by a religious institution, the November Rule simply codified "existing factors that the Assistant Secretary for Civil Rights uses when evaluating . . . requests for a religious exemption" based on "non-binding guidance issued to OCR personnel dating back more than 30 years . . . ." *Id.*

Because both final rules were reasonably explained and are consistent with the law and the Department's longstanding practice, Plaintiffs' APA claim should be dismissed.

### F.    Title IX forbids discrimination based on sex, not sexual orientation or gender identity.

Plaintiffs' entire complaint presupposes that Title IX's prohibition of "sex" discrimination includes sexual orientation and gender identity. FAC ¶ 56 (alleging that Title IX prohibits "sex, sexual orientation and gender identity discrimination."). It does not.

In any question of statutory interpretation, the court begins with the "fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute"—that is, their original public meaning. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (cleaned up). Title IX's text refers only to "sex." 20 U.S.C. § 1681 *et seq*. Congress passed Title IX in 1972. In common, ordinary usage, the word "sex" in 1972 meant biologically male or female, based on reproductive organs.[5] The words "gender identity," "gender expression," and "sexual orientation" also do not appear anywhere in the statute or accompanying federal regulation, 34 C.F.R. § 106.12.

---

[5] Sex, Webster's New World Dictionary of the American Language (College ed. 1962) ("either of the two divisions of organisms distinguished as male or female"); Sex, The American Heritage Dictionary of the English Language (1st ed. 1969) ("[t]he property or quality by which organisms are classified according to their reproductive functions").

The "clear statement rule" also requires this interpretation. The Supreme Court has recognized that education is "perhaps the most important function of state and local governments," *Honig v. Doe*, 484 U.S. 305, 309 (1988) (citation omitted), and that States generally can regulate housing, including campus housing. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982). For laws displacing state regulation or imposing grant conditions, the clear statement rule limits the States and the public's obligations to those requirements "unambiguously" set forth on the face of the statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991) (citation omitted). In passing Title IX, Congress unambiguously regulated differential treatment based on "sex," but it did not unambiguously include sexual orientation or transgender status. 20 U.S.C. § 1681(a).

Nor has the Supreme Court interpreted Title IX to include these categories. *Bostock v. Clayton County* considered only whether an employer who fires an employee based on sexual orientation or gender identity does so, in part, because of sex under Title VII. 140 S. Ct. 1731, 1737, 1743 (2020). *Bostock* did not fold concepts like sexual orientation and gender identity into "sex." Rather, it affirmed that they are "distinct concepts." *Id*. at 1746-47. And the Court rejected the claim that its "decision will sweep beyond Title VII to other federal or state laws that prohibit sex discrimination," emphasizing that "none of these other [federal laws prohibiting sex discrimination] are before us." *Id*. at 1753.

Title VII also has a different purpose than Title IX. According to *Bostock*, Title VII exists to make an employee's sex irrelevant to their selection, evaluation, and compensation. *Id*. at 1741. But a person's sex is often relevant under Title IX, which expressly authorizes many sex-separate activities and intimate facilities, and in some cases *requires* consideration of a person's sex. *See, e.g.*, 20 U.S.C. §§ 1681(a), 1686 ("Notwithstanding anything to the contrary contained in this chapter, nothing

contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes."); 45 C.F.R. § 86.32 ("[a] recipient may provide separate housing on the basis of sex"); 34 C.F.R §§ 106.32(b), 106.33, 106.34, 106.40, 106.41, 106.43. 106.52, 106.59, 106.61. Given these differences, this Court should follow Title IX's plain text and read it as only banning discrimination based on sex. *Cf. Bostock*, 140 S. Ct. at 1753, 1754 (explaining that the Court was not "address[ing] bathrooms, locker rooms, or anything else of the kind," nor was it addressing how "doctrines protecting religious liberty interact with Title VII").

### G.    Plaintiffs cannot satisfy the requirements of a facial challenge.

"It is important at the outset to define the scope of the challenge before us." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). When distinguishing between as-applied and facial challenges, the "label is not what matters." *Id.* "The important point is that plaintiffs' claim[s] and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs. They must therefore satisfy our standards for a facial challenge to the extent of that reach." *Id.*

Plaintiffs use the label "as applied" but seek relief beyond their particular circumstances.[6] Plaintiffs seek to strike *every* application of the religious exemption to "sexual and gender minority students," not just the particular applications pled by Plaintiffs. ECF 35 at 87. Plaintiffs seek to end the exemption for *every* religious school, not just the schools that they chose to attend. *Id.* And Plaintiffs seek only prospective relief but ask the Court to invalidate *every* past application of the exemption to "sexual or gender minority students"—even applications before

---

[6] Am. Compl. at 87, ECF No. 35. The requested relief would also reach beyond the circumstances of any putative class. The Religious Schools intend to oppose any motion for class certification if granted intervention.

Plaintiffs were born or attended any religious school. *Id.* So Plaintiffs must satisfy the standard for facial challenges.

In the First Amendment context, plaintiffs cannot successfully mount a facial challenge to a law unless "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, n.6 (2008)). But Title IX's religious exemption is constitutionally *required*, as shown in Section II below. Because Plaintiffs cannot support a facial challenge, their complaint should be dismissed.

## II.    The requested relief would violate the Religious Schools' constitutional and statutory rights.

Plaintiffs' requested relief would violate the Religious Schools' constitutional and statutory rights.[7]

### A.    The requested relief would violate RFRA.

Without the religious exemption, Title IX would violate the Religious Schools' rights under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1 *et seq*. RFRA prohibits the government from substantially burdening the exercise of religion absent a compelling government interest pursued in the least restrictive means. *Id.*

It is "plain" that the government imposes a substantial burden on the religious exercise of an institution "by putting it to the choice of curtailing its mission or approving relationships inconsistent with its beliefs." *See Fulton*, 141 S. Ct. at 1876. Yet Plaintiffs' requested relief would do just that. Punishing religious schools for their student conduct policies, teaching, employment standards, and other faith-based policies puts them to an impossible choice: violate your beliefs or lose essential federal

---

[7] The Religious Schools reserve the right to raise additional affirmative defenses, including but not limited to waiver, release, laches, estoppel, statute of limitations, and assumption of risk.

funding for students. Forcing religious schools to sacrifice their beliefs or an essential government benefit is a substantial burden that the government cannot justify. *See id.*; *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008).

### B.   The requested relief would violate the Free Exercise Clause.

Title IX's religious exemption allows the government to pursue its interest in reducing sex discrimination without burdening religious exercise. But eliminating the exemption, as Plaintiffs demand, would violate the Free Exercise Clause.

First, a law that burdens religion is presumptively unconstitutional and subject to strict scrutiny unless it is neutral and generally applicable. *Fulton*, 141 S. Ct. at 1876. A law is not neutral and generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* In other words, laws "are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (emphasis in original) (citations omitted). "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.*

Here, the government's asserted interest in enforcing Title IX is to prevent sex discrimination. 20 U.S.C. § 1681. But Congress enumerated *nine* separate exceptions to Title IX's prohibition against sex discrimination. *Id.* at § 1681(a)(1)-(9). Plaintiffs only seek to eliminate the religious exemption, FAC at 87-88, leaving eight secular exceptions that undermine the government's same nondiscrimination interest. So Plaintiffs' requested relief would render Title IX unconstitutional under the Free Exercise Clause. Simply put, if the government provides *any* exemption to Title IX's general prohibition against sex discrimination, it must preserve the religious exemption.

Second, "targeting religious beliefs as such is never permissible" under the Free Exercise Clause. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). The government cannot "punish the expression of religious doctrines it believes to be false," *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990), nor can it "act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com'n*, 138 S. Ct. 1719, 1731 (2018). Yet Plaintiffs' requested relief would require the government to single out and punish religious institutions—especially *Christian* institutions (FAC ¶ 587)—for expressing biblical religious beliefs on gender and sexual morality. Any injunction requiring the Department to target certain religious beliefs about marriage and human sexuality would violate the free exercise rights of the Religious Schools. Such religious targeting cannot satisfy strict scrutiny and is therefore unconstitutional.

## C.  The requested relief discriminates against and compels speech, both of which violate the Free Speech Clause.

Plaintiffs' requested injunction would infringe the Religious Schools' free speech rights. Private religious speech is protected under the First Amendment. *See, e.g.*, *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993). Forbidding the government from choosing favored and disfavored messages is at the core of the First Amendment's free-speech guarantee. *See Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). Restricting speech based on its content and viewpoint is presumptively unconstitutional. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (content); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (viewpoint). So, too, is compelling private speakers to engage in unwanted expression. *See Wooley v. Maynard,* 430 U.S. 705, 715 (1977). When the government regulates speech by mandating that persons explicitly agree with the government on

a particular matter, it "plainly violate[s] the First Amendment." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013).

Here, Plaintiffs' requested injunction would require the government to target the content and viewpoint of religious schools' speech, including classroom teaching (*see, e.g.*, FAC ¶¶ 132–33, 136, 146, 148), university handbooks and codes of conduct (*see id.* at ¶¶ 67, 85, 108, 145, 156, 168, 179, 182, 193, 219, 234, 247, 253–54, 264, 275–76, 307, 309–10, 343–44, 355–56, 372, 384–85, 396–97, 413, 420, 432, 450–51, 469–70), and confidential counselling (*see id.* at ¶¶ 87, 235, 265, 414, 491). Their requested relief even asks this Court to force religious schools to communicate "respect" for certain conduct and beliefs that conflict with the schools' religious convictions. *See id.* at 87. Because the requested relief violates the freedom of speech, should be denied for this reason as well.

### D.    The requested relief violates the church autonomy doctrine.

The "First Amendment protects the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Our Lady of Guadelupe*, 140 S. Ct. at 2055 (cleaned up). It protects the autonomy of religious institutions—including religious educational institutions "in matters of faith and doctrine" and "internal management decisions that are essential to the institution's central mission." *Id.* at 2060-61. Indeed, the First Amendment prohibits "any attempt by the government to dictate *or even to influence* such matters." *Id.* (emphasis added). This includes a religious organization's right to choose its ministers and leaders, *Hosanna-Tabor*, 565 U.S. at 188–89, and "the ecclesiastical government of all the individual members." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 114 (1952).

Imposing penalties on a religious entity simply for holding and exercising its beliefs would violate the First Amendment. *Hosanna-Tabor*, 565 U.S. at 194. Such penalties "would depend on a determination that" the religious institution "was

wrong to have" exercised its beliefs, precisely the sort of determination that the First Amendment forbids. *Id.* Revoking an exemption—and thus imposing "regulatory burdens and liability" (FAC ¶ 652)—would have the same effect and violate the same principles.

Plaintiffs disagree with the beliefs and practices of many religious schools. *See, e.g.*, FAC ¶ 182 (faulting York for not changing its "definition of marriage to be more inclusive"); *id.* ¶ 247 (faulting Messiah for believing "that the Bible teaches that marriage is between one man and one woman"). And they seek to punish these schools for articulating and following specific beliefs about gender and sexual morality. *See* FAC ¶¶ 85–86, 145, 168, 182, 193, 219, 234, 247, 275, 307–310, 344, 355–56, 384–85, 396–97, 413, 420, 432, 450–51, 469. Yet these are protected expressions of "faith and doctrine"; the First Amendment guarantees that religious schools may formulate and follow their religious teachings without state interference or influence. *Our Lady*, 140 S. Ct. at 2055, 2060. Punishing religious schools for their beliefs and practices is precisely what the Religion Clauses prohibit.

### E.    The requested relief creates a denominational preference in violation of the Establishment Clause.

Ironically, Plaintiffs ask this Court to do what Congress assiduously avoided: creating a denominational preference that violates the Establishment Clause's "clearest command." *Larson v. Valente*, 456 U.S. 228, 244 (1982). They seek to revoke the exemption only "as applied to sexual and gender minority students." FAC at 87. But if the Court revokes the exemption in this fashion, government officials would have a license—if not a duty—to scrutinize the religious beliefs and practices of each institution to ensure that religious schools with biblical beliefs on gender and sexual morality lose funding while schools with different religious beliefs retain funding.

If a rule that applied only to religious groups who got more than 50% of their funding from nonmembers created a denominational preference, *Larson*, 456 U.S. at

246–51, then determining funding based directly on the doctrines a religious group holds would do the same. Strict scrutiny would apply to such a system, *id*. at 246, and Defendants cannot demonstrate a compelling government interest in discriminating among religious beliefs.

### F. The requested relief violates the Religious Schools' right to associate with likeminded faculty and students.

The First Amendment protects the right "to associate" or not associate with others for educational and religious ends. *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). Thus, the government may not invade an organization's expression by forcing "inclusion of an unwanted person in a group" if doing so affects "the group's ability to advocate public or private viewpoints." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). Enjoining Title IX's religious exemption would significantly impair the Religious Schools' ability to advocate, teach, and publish their religious beliefs about marriage and human sexuality, in violation of the First Amendment. *See id*. at 648, 650, 656-57. Thus, Plaintiffs' complaint should be dismissed.

## III. Plaintiffs' legal theory is limitless and endangers thousands of religious exemptions across the country.

More than 2,000 federal and state statutes protect specific conscientious objections with religious exemptions. *See* James Ryan, Note, *Smith and the Religious Freedom Restoration Act: An Iconoclastic Assessment*, 78 VA. L. REV. 1407, 1445–50 (1992); Lucien J. Dhooge, *Public Accommodation Statutes, Sexual Orientation and Religious Liberty: Free Access or Free Exercise?*, 27 U. Fla. J.L. & Pub. Pol'y 1, 8–33 (2016). Among others, they protect those who refuse to participate in executions, 18 U.S.C. § 3597(b); abortions, 42 U.S.C. § 238n; Pub. L. No. 113-235, 128 Stat. 2130, 2515 § 507(d)(1) (2014); or assisted suicide, 42 U.S.C. § 18113(a). And the Constitution itself contains religious exemptions. U.S. CONST. art. VI, ¶ 3; *id.* art. II, § 1, ¶ 8.

If Plaintiffs were to succeed here, the impact would reverberate across all religious exemptions. The Religious Schools include an appendix to this motion that lists hundreds of state and federal conscience-protection laws that could arguably be invalidated under Plaintiffs' legal theory. Appendix of Religious Exemptions, attached as **Exhibit A**. Plaintiffs have no limiting principle. Their requested relief would open a pandora's box of constitutional conflict—to the detriment of hundreds of religious colleges and universities and the students they serve.

## IV. In addition to failing on the merits, Plaintiffs' complaint requests relief that this Court has no power to give.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement" and is a prerequisite to the Court's exercise of jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The standing inquiry is "especially rigorous" when a lawsuit seeks to invalidate executive or congressional action as unconstitutional. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Here, Plaintiffs allege scattershot injuries but not a single one alleges enough for standing.

### A. The alleged injuries are not redressable.

This Court is unable to redress Plaintiffs' alleged injuries. "It is a prerequisite of justiciability that judicial relief will prevent or redress the claimed injury, or that there is a significant likelihood of such redress." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982) (citations omitted). Plaintiffs ask the Court to (1) declare Title IX's religious exemption unconstitutional as applied to "sexual and gender minority

students," (2) require the Department to revoke prior exemptions, (3) enjoin the Department from granting or enforcing future exemptions, (4) require the Department to monitor religious schools to ensure adequate "respect" for Plaintiffs' views, and (5) "create a Task Force to determine appropriate compensation for LGBTQ+ survivors of government-sponsored psychological and physical abuse." The requested relief further highlights Plaintiffs' lack of standing.

*First*, the requested declaratory and injunctive relief is prospective, so it cannot redress any of the Plaintiffs' alleged past injuries. *E.g.*, *Granite Outlet, Inc. v. Baker*, No. 2:14-cv-00124, 2017 WL 590257, at *4 (E.D. Cal. Feb. 14, 2017) ("[A] past injury typically cannot be redressed by prospective relief like an injunction or declaratory judgment."). *Second*, as explained in Sections I.D and IV.B., to the extent that Plaintiffs allege ongoing or future injuries, such injuries arise from the independent conduct of third parties (not the Department), so enjoining the Department is not likely to redress them. *See DSE Grp., LLC v. Richardson*, 381 F. App'x 749, 750-51 (9th Cir. 2010) (dismissing complaint for plaintiff's failure to allege that the governmental defendant caused—and could cure—the alleged injury).

*Third*, the requested "Task Force" to "determine appropriate compensation" is nothing more than a claim for damages and is thus barred by sovereign immunity. *See* 5 U.S.C. § 702 (waiving immunity only for actions "seeking relief *other than money damages*") (emphasis added); *Harger v. Dep't of Labor*, 569 F.3d 898, 904 (9th Cir. 2009) (no waiver of sovereign immunity for money damages under 5 U.S.C. § 702). *Fourth*, the judiciary cannot oversee and direct an executive agency's enforcement discretion and affirmative use of resources. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities."); *Victorino v. FCA US LLC*, No. 16-cv-1617-GPC(JLB), 2016 WL 6441518, *12 (S.D. Cal. Nov. 1, 2016) ("A court cannot direct a federal agency [] how to use its resources

or how to set its enforcement priorities and when to conduct a vehicle recall or to halt the sale of vehicles.").

Finally, the requested relief is vague and unworkable, and the redressability prong cannot be satisfied by relief that is practically impossible to grant. *See Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010). To start, Plaintiffs do not define "sexual and gender minority students."[8] Perhaps they mean those who identify as homosexual, bisexual, transgender, and "queer," a term "used as a catch-all to include many people, including those who do not identify as exclusively straight and/or folks who have non-binary or gender-expansive identities."[9] But Plaintiffs never explain how these groups could be identified, and the impossibility of identifying such students is demonstrated by the inclusion of "catch-all" terms and the undefined-yet-expansive "+" symbol in Plaintiffs' own descriptive acronym. FAC ¶ 1.

Nor do Plaintiffs explain how the Department could "ensure that all federally-funded educational institutions respect the sexual orientation, gender identity, and gender expression of their students." FAC at 87. Will the Department monitor chapel services? Statements of faith? Seminary curricula? Policy handbooks? Confidential counseling sessions? Must students declare their sexual and gender identity upon enrollment to determine when school policies legally apply and when they do not? In sum, the requested relief is incoherent and practically impossible.

**B.    The alleged harms are not traceable to the Department.**

Article III standing requires a "causal connection" between the injury and the challenged conduct so that the injury is "fairly traceable" to the defendant. *Lujan*,

---

[8] Notably, the exemption does not and has never "applied to" students. Rather, *schools* claim the exemption, then apply their own policies to their students. Plaintiffs seek to invert this process, asking the Court to require the Department to apply the exemption based on the identity of individual students.

[9] *Glossary of Terms*, Human Rights Campaign, https://www.hrc.org/resources/glossary-of-terms (last visited August 5, 2021).

504 U.S. at 560. The Supreme Court has been especially reluctant "to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 414. When plaintiffs' alleged injuries arise from the government regulating or failing to regulate third parties, more specific facts are needed for standing. *See Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014). This is because third parties may engage in their conduct regardless of the government's conduct. *See id.* To plausibly plead that an injury does not result from third parties, the plaintiff must show that the government's conduct is "a substantial factor" motivating the third-parties' actions. *Id.*

Here, the majority of plaintiffs (27 of 40) did not plead that their schools are exempt from Title IX, that the Department granted an assurance of exemption to their school, or that the Department was substantially involved in their alleged injury.[10] This is fatal for those 27 plaintiffs. The remaining 13 plaintiffs also trace no injuries directly to the Department. Those plaintiffs allege injuries ranging from school discipline (FAC ¶¶ 69-70, 179, 298-99), to student misconduct (*id.* at ¶¶ 83, 185, 347, 435), to feelings of depression and anxiety (*id.* at ¶¶ 260, 351, 367, 458). But these alleged injuries are traceable to the independent conduct of third-party classmates, faculty, and school administrators, not to the Department.

Plaintiffs have not alleged a causal connection between their alleged injuries and any Department action, much less shown that the Department's conduct was a "substantial factor" motivating third party conduct. Plaintiffs' causal chain is no more

---

[10] These plaintiffs include Victoria Joy Bacon, Chandler Horning, Ashtin Markowski, Darren McDonald, Megan Steffen, Spencer Vigil, Lucas Wilson, 'Natalie Carter', Lauren Hoekstra, 'Louis James', Jonathan Jones, Cameron Martinez, Faith Millender, Avery Bonestroo, Zayn Silva, Nathan Brittsan, Gary Campbell, Joanna Maxon, Danielle Powell, Rachel Held, Mackenzie McCann, Saren Craig, Jamie Lord, Daniel Christopher Tidwell-Davis, Devin Bryant, Consolata Bryant, and Mortimer Halligan.

than "a series of links strung together by conclusory, generalized statements of 'contribution.'" *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013). Plaintiffs thus lack standing for this reason as well.

### C. Plaintiffs do not allege a cognizable injury-in-fact.

To establish injury in fact, plaintiffs must show they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs fail to do so.

### 1. There is no imminent future injury.

When plaintiffs seek only prospective relief, past injuries are insufficient to establish standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 111 (1983). Instead, such plaintiffs must allege that future injuries are "*certainly impending*." *Clapper*, 568 U.S. at 409 (emphasis in original). It is not enough to allege "*possible* future injury." *Id.* (emphasis in original). Most of the plaintiffs only allege past injuries, and the rest do not allege any imminent and certainly impending future injury.

Most plaintiffs (25 of 40) do not allege that they currently attend—or will imminently attend—*any* educational institution, much less one that qualifies for Title IX's religious exemption.[11] This is fatal for these 25 plaintiffs. And the remaining 15 plaintiffs who currently attend religious schools do not allege facts establishing that the activities they object to *in the past* will *certainly* occur in the future, let alone that

---

[11] *See* FAC ¶¶ 58-76 (Elizabeth Hunter), ¶¶ 94-111 (Alex Duron), ¶¶ 112-26 (Zayn Silva), ¶¶ 127-43 (Rachel Moulton), ¶¶ 144-52 (Victoria Joy Bacon), ¶¶ 162-72 (Nathan Brittsan), ¶¶ 205-16 (Gary Campbell), ¶¶ 217-30 (Tristan Campbell), ¶¶ 261-72 (Chandler Horning), ¶¶ 294-305 (Ashtin Markowski), ¶¶ 320-28 (Joanna Maxon), ¶¶ 329-36 (Mackenzie McCann), ¶¶ 337-51 (Darren McDonald), ¶¶ 352-67 (Scott McSwain), ¶¶ 379-94 (Journey Mueller), ¶¶ 395-408 (Jaycen Montgomery), ¶¶ 418-27 (Danielle Powell), ¶¶ 428-47 (Megan Steffan), ¶¶ 448-58 (Spencer Vigil), ¶¶ 459-65 (Lucas Wilson), ¶¶ 481-96 (Saren Craig), ¶¶ 523-36 (Daniel Christopher Tidwell-Davis), ¶¶ 537-48 (Justin Tidwell-Davis), ¶¶ 549-60 (Devin and Consolata Bryant).

such activities will occur *imminently*.[12] Thus, none of the 40 plaintiffs establish the certain and imminent injury needed for standing. *See Friends of the Earth*, 528 U.S. at 184 (holding that speculation or subjective apprehension of future harm cannot support standing).

### 2. The alleged injuries are not concrete.

To be cognizable, an injury must invade a legally protectable interest. *See Lujan*, 504 U.S. at 560. To be concrete, it must be real, not illusory or imagined; it must "actually exist." *Spokeo*, 136 S. Ct. at 1548. "Hurt feelings" do not support Article III standing. *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011); *Sw. Env't Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1132 (D.N.M. 2018) ("[F]eelings of shame or inferiority do not constitute concrete harms."). Neither does the "psychological consequence [ ] produced by observation of conduct with which one disagrees." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 485 (1982).

Here, nearly every plaintiff describes their alleged injuries using the words "feel" or "felt," terms that appear over 90 times in the complaint. *E.g.*, FAC ¶ 240 ("Natalie feels like she is not being loved for who she is, but only for half of who she is."). The alleged "injuries" include merely hearing professors or students share their religious beliefs about sexuality or gender (*id.* at ¶¶ 172, 250, 256, 318-19); dismay that their school has not changed its definition of marriage (*id.* at ¶ 182); frustration that their school hosts speakers who they consider "non-affirming" (*id.* at ¶ 157); and disappointment that their school did not support LGBTQ+ clubs on campus (*id.* at ¶¶

---

[12] *See* FAC ¶¶ 77-93 (Veronica Bonifacio Penales), ¶¶ 153-61 (Avery Bonestroo) ¶¶ 173-88 (Hayden Brown), ¶¶ 189-204 ("Brooke C."), ¶¶ 231-42 ("Natalie Carter"), ¶¶ 243-50 (Rachel Held), ¶¶ 251-60 (Lauren Hoekstra), ¶¶ 273-82 ("Louis James"), ¶¶ 283-93 (Jonathan Jones), ¶¶ 306-19 (Cameron Martinez), ¶¶ 368-78 (Faith Millender), ¶¶ 409-17 (Jake Picker), ¶¶ 466-80 (Audrey Wojnarowisch), ¶¶ 497-522 (Jamie Lord), ¶¶ 561-71 (Mortimer Halligan).

92, 150, 184, 289, 315, 566). These are not concrete injuries to legally protectable interests. *See Valley Forge*, 454 U.S. at 485–86.

And to the extent that Plaintiffs allege "injuries" beyond disagreement and negative feelings, such as expulsion or some other disciplinary action, those allegations fail too because they relate to past events attributable to independent acts of private parties that are uncertain to imminently recur and that this Court cannot redress. The "mere existence" of a religious exemption cannot establish any injury. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (holding that mere existence of a statute does not confer standing without detailed allegations that application caused a direct injury).

### 3.  Plaintiffs do not allege an injury as taxpayers.

Plaintiffs also appear to base their injury on their taxpayer status. *See* FAC ¶ 53. But taxpayers' interests generally do not create cognizable injuries for Article III standing. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007). Although an exception exists for unique Establishment Clause cases, it doesn't apply here. In *Flast v. Cohen*, the Supreme Court created a narrow exception to the general rule that taxpayer status fails to confer standing. But that exception applies only when the challenged statute is a direct exercise of Congress's taxing and spending powers, and the statute exceeds specific constitutional limitations on those powers. 392 U.S. 83, 102–03 (1968). And the exception only applies to *specific* congressional appropriations, not *general* expenditures by the executive branch. *Hein*, 551 U.S. at 595; *Freedom From Religion Found., Inc. v. Lew*, 773 F.3d 815, 820 (7th Cir. 2014).

Here, the laws that Plaintiffs challenge do not involve *any* appropriation or expenditure, let alone one grounded in Congress's taxing and spending power. Quite the opposite: their lawsuit challenges only Title IX's religious exemption, which does not itself involve any appropriation of funds whatsoever. The religious exemption appears in a statute and a regulation that prohibit sex-based discrimination in

education programs and activities that may receive federal funds *through other programs that Plaintiffs do not challenge here*; the laws that Plaintiffs challenge do not include their own appropriation. So while the amended complaint contends that the Department's "expenditures" to religious schools "are a direct exercise of Congress's taxing and spending powers," FAC ¶ 580, Plaintiffs fail to identify or challenge any such expenditure under the Establishment Clause. This dooms any claim of taxpayer standing.

> **D.    Plaintiffs' claims also are not ripe.**

Ripeness is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citation omitted). The ripeness inquiry contains both a constitutional and a prudential component. *Id.* at 1141. In evaluating prudential ripeness, the Ninth Circuit considers two factors: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. *Id.* A constitutional challenge is unfit for judicial decision when the record is undeveloped and consists of conclusory affidavits. *Id.* And plaintiffs do not face undue hardship when courts simply defer judicial review until there is an actual or imminent threat that the challenged law will be enforced against one of the named plaintiffs. *Id.*

Here, the constitutionality of the religious exemption is unfit for decision. While Plaintiffs allege many *past* events, they fail to allege any imminent and non-speculative injury that could warrant the prospective relief they seek. Will the anticipated injury occur in chapel, in the classroom, or some other context? Will it relate to a school's statement of faith, housing policy, or some other policy? Will it be wounded feelings and disappointment, or something concrete? This Court should not analyze this prospective constitutional challenge based on speculative answers to these important questions. Because Plaintiffs do not allege an imminent future

injury, they will suffer no hardship from this Court waiting until a ripe case arises. Thus, the Court should decline to exercise jurisdiction.

## CONCLUSION

For the foregoing reasons, the Religious Schools respectfully request that Plaintiffs' complaint be dismissed with prejudice.

Respectfully submitted this 9th day of August, 2021.

<table>
<tr>
<td>

DAVID A. CORTMAN*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org




*Admitted pro hac vice

</td>
<td>

*s/ Mark Lippelmann*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
KRISTEN K. WAGGONER,
OR Bar No. 067077
*Lead Counsel*

RYAN J. TUCKER*
AZ Bar No. 034382
MARK A. LIPPELMANN*
AZ BAR No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
kwaggoner@ADFlegal.org
rtucker@ADFlegal.org
mlippelmann@ADFlegal.org

</td>
</tr>
</table>

*Attorneys for Proposed Intervenor-Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This memorandum complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), or 54-3(e) because it contains 10,876 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*s/ Mark A. Lippelmann*
MARK A. LIPPELMANN*
AZ BAR NO. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90TH STREET
SCOTTSDALE, AZ 85260
TELEPHONE: (480) 444-0020
mlippelmann@ADFlegal.org

*Attorneys for Proposed Intervenor-Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2021, the foregoing was served via CM/ECF on counsel for all parties.

s/ Mark A. Lippelmann

MARK A. LIPPELMANN*
AZ BAR NO. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90TH STREET
SCOTTSDALE, AZ 85260
TELEPHONE: (480) 444-0020
mlippelmann@ADFlegal.org

*Attorneys for Proposed Intervenor-Defendants*