CAROL FEDERIGHI
TX Bar No. 06872950
*Lead Counsel*
ELLIOTT M. DAVIS
NY Reg. No. 4596755

BRIAN M. BOYNTON
Acting Assistant Attorney General
CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
carol.federighi@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| ELIZABETH HUNTER, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION; and SUZANNE GOLDBERG, in her official capacity as Acting Assistant Secretary for the Office for Civil Rights, U.S. Department of Education,<br><br>    Defendants. | Civil Action No. 6:21-cv-00474-AA<br><br><br>**DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT THEREOF** |

## **TABLE OF CONTENTS**

LR 7-1 CONFERRAL ........................................................................................................ 1

MOTION ............................................................................................................................ 1

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 5

    I.      LEGAL BACKGROUND ................................................................... 5

    II.     THE PRESENT SUIT ......................................................................... 8

ARGUMENT ..................................................................................................................... 9

    I.      THIS CASE SHOULD BE TRANSFERRED TO THE PORTLAND
           DIVISION ........................................................................................... 9

    II.     PLAINTIFFS LACK CONSTITUTIONAL STANDING ................... 11
           A.    Plaintiffs' Injuries Are Not Ripe .............................................. 12
           B.    Plaintiffs Have Not Alleged that Their Injuries Suffered at Their Schools
                Are Caused by Defendants' Actions .......................................... 15
           C.    The Relief Sought Would Not Be Likely to Redress Plaintiffs' Injuries ....... 16

    III.    PLAINTIFFS' FIRST, SECOND, THIRD, AND FIFTH CAUSES OF
           ACTION DO NOT STATE A CLAIM ............................................... 19
           A.    Plaintiffs' First and Third Causes of Action Do Not Claim ........... 19
                1.    Plaintiffs' Alleged Injuries Result from Private Action .................. 19
                2.    Plaintiffs' Equal Protection Claim Fails for Lack of Discriminatory
                    Intent ................................................................................... 25
                3.    Plaintiffs' Equal Protection Claim Fails Because the Religious
                    Exemption Passes Intermediate Scrutiny .......................... 27
                4.    Plaintiffs' Substantive Due Process Claim Should Be Dismissed
                    Because It Is Premised on Private Action and Supposed
                    Government "Inaction" ........................................................ 28
            B.    Plaintiffs' Second Cause of Action Does Not State a Claim ......... 29
            C.    Plaintiffs' Fifth Cause of Action Does Not State a Claim ............ 34

CONCLUSION.................................................................................................................. 35

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ................................................................................................ 12

*Allen v. Wright,*
    468 U.S. 737 (1984) ................................................................................................ 15

*Am. Mfgs. Mut. Ins. Co. v. Sullivan,*
    526 U.S. 40 (1999) ................................................................................ 20, 23, 24

*Ascherman v. Presbyterian Hosp. of Pac. Med. Ctr., Inc.,*
    507 F.2d 1103 (9th Cir. 1974) ......................................................................... 22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 19

*Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet,*
    512 U.S. 687 (1994) ................................................................................................ 29

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) ......................................................................... 21, 22, 23, 24

*Bob Jones University v. United States,*
    461 U.S. 574 (1983) ........................................................................................ 23, 24

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) ........................................................................................... 6

*Brittain v. Hansen,*
    451 F.3d 982 (9th Cir. 2006) ........................................................................... 28

*California v. Azar,*
    911 F.3d 558 (9th Cir. 2018) ...................................................................... 26, 28

*Cammack v. Waihee,*
    932 F.2d 765 (9th Cir. 1991) ........................................................................... 33

*Cannon v. Univ. of Chicago,*
    441 U.S. 677 (1979) ................................................................................................. 7

*Cohen v. City of Des Plaines,*
    8 F.3d 484 (7th Cir. 1993) ................................................................................ 32

*Comm. Concerning Cmty. Improvement v. City of Modesto,*
    583 F.3d 690 (9th Cir. 2009) ...................................................................... 25, 26

*Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos,*
   483 U.S. 327 (1987)....................................................................................................30, 31, 32, 33

*Cutter v. Wilkinson,*
   544 U.S. 709 (2005)...............................................................................................................30, 32

*Decker Coal Co. v. Commonwealth Edison Co.,*
   805 F.2d 834 (9th Cir. 1986)......................................................................................................10

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,*
   489 U.S. 189 (1989) ....................................................................................................................29

*D'Lil v. Best Western Encina Lodge & Suites,*
   538 F.3d 1031 (9th Cir. 2008) ....................................................................................................17

*Droz v. Commissioner,*
   48 F.3d 1120 (9th Cir. 1995)......................................................................................................33

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,*
   438 U.S. 59 (1978) ......................................................................................................................14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014).......................................................................................................26

*Ehlers-Renzi v. Connelly Sch. of the Holy Child, Inc.,*
   224 F.3d 283 (4th Cir. 2000)................................................................................................31, 32

*Fernandez v. Brock,*
   840 F.2d 622 (9th Cir. 1988)......................................................................................................17

*Flemming v. Nestor,*
   363 U.S. 603 (1960) ....................................................................................................................25

*Foothill Church v. Watanabe,*
   -- F. App'x --, 2021 WL 3039417 (9th Cir. 2021)...............................................................30, 32

*Forter v. Young,*
   No. 6:18–cv–01171–JR, 2020 WL 1917331 (D. Or. Apr. 20, 2020), *appeal docketed,*
   No. 20–35452 (9th Cir. May 22, 2020) .....................................................................................30

*Freedom Republicans, Inc. v. Fed'l Election Comm'n,*
   13 F.3d 412 (D.C. Cir. 1994) .....................................................................................................17

*Gaylor v. Mnuchin,*
   919 F.3d 420 (7th Cir. 2019)...........................................................................................30, 31, 33

*Gillette v. United States,*
   401 U.S. 437 (1971)..............................................................................................................32, 33

*Gross v. Progressive Cas. Ins. Co.*,
  No. 1:17–cv–00828, 2017 WL 6945173 (D. Or. Dec. 5, 2017), *report and
  recommendation adopted by* 2018 WL 401532 (D. Or. Jan. 12, 2018)...................................................... 10

*Hankins v. Lyght*,
  441 F.3d 96 (2d Cir. 2006) .................................................................................................................. 34

*Harrison v. Kernan*,
  971 F.3d 1069 (9th Cir. 2020) ............................................................................................................ 27

*Heineke v. Santa Clara Univ.*,
  965 F.3d 1009 (9th Cir. 2020) ............................................................................................................ 22

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
  480 U.S. 136 (1987)...................................................................................................................... 26, 30

*In re Bozic*,
  888 F.3d 1048 (9th Cir. 2018) ...................................................................................................... 10, 11

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) ............................................................................................................ 17

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ............................................................................................................ 27

*Juliana v. United States*,
  217 F. Supp. 3d 1224 (D. Or. 2016), *rev'd and remanded on other grounds*, 947 F.3d 1159
  (9th Cir. 2020).......................................................................................................................... 4, 29

*Kitchens v. Bowen*,
  825 F.2d 1337 (9th Cir. 1987) ............................................................................................................ 20

*Kreisner v. City of San Diego*,
  1 F.3d 775 (9th Cir. 1993).................................................................................................................. 31

*Larkin v. Grendel's Den, Inc.*,
  459 U.S. 116 (1982)............................................................................................................................ 34

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)............................................................................................................... 25

*Lemon v. Kurtzman*,
  403 U.S. 602 (1971)...................................................................................................................*passim*

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982).................................................................................................................... 20, 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................... *passim*

*M.S. v. Brown*,
   902 F.3d 1076 (9th Cir. 2018) ............................................................................................... 16

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S. Ct. 1921 (2019) ..................................................................................................... 22, 24

*Mayweathers v. Newland*,
   314 F.3d 1062 (9th Cir. 2002) ............................................................................................... 31

*McGowan v. Maryland*,
   366 U.S. 420 (1961) ......................................................................................................... 32, 33

*Medina v. Catholic Health Initiatives*,
   877 F.3d 1213 (10th Cir. 2017) ................................................................................. 30, 31, 32, 33

*Molina-Aviles v. Dist. of Columbia*,
   824 F. Supp. 2d 4 (D.D.C. 2011) ........................................................................................... 28

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ................................................................................................. 26

*Mt. Adams Veneer Co. v. United States*,
   896 F.2d 339 (9th Cir. 1989) ................................................................................................. 13

*Mueller v. Allen*,
   463 U.S. 388 (1983) ............................................................................................................... 32

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior*,
   538 U.S. 803 (2003) ............................................................................................................... 12

*Norsworthy v. Beard*,
   87 F. Supp. 3d 1104 (N.D. Cal. 2015) ................................................................................... 27

*Norwood v. Harrison*,
   413 U.S. 455 (1973) ......................................................................................................... 23, 24

*O'Bannon v. Town Court Nursing Ctr.*,
   447 U.S. 773 (1980) ............................................................................................................... 29

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
   523 U.S. 726 (1998) ......................................................................................................... 12, 14

*Ordonez v. United States*,
   680 F.3d 1135 (9th Cir. 2012) ............................................................................................... 18

*P.O.P.S. v. Gardner,*
  998 F.2d 764 (9th Cir. 1993) ............................................................................. 27

*Parsons v. Del Norte Cnty.,*
  728 F.2d 1234 (9th Cir. 1984) ........................................................................... 27

*Pers. Adm'r of Mass. v. Feeney,*
  442 U.S. 256 (1979) .......................................................................................... 25

*Piedmont Label Co. v. Sun Garden Packing Co.,*
  598 F.2d 491 (9th Cir. 1979) ............................................................................... 9

*Pieszak v. Glendale Adventist Med. Ctr.,*
  112 F. Supp. 2d 970 (C.D. Cal. 2000) .................................................. 30, 31, 34

*Portman v. Cty. of Santa Clara,*
  995 F.2d 898 (9th Cir. 1993) ............................................................................. 12

*Ramos v. Wolf,*
  975 F.3d 872 (9th Cir. 2020) ............................................................................. 24

*Rawson v. Recovery Innovations, Inc.,*
  975 F.3d 742 (9th Cir. 2020) ............................................................................. 20

*Rendell-Baker v. Kohn,*
  457 U.S. 830 (1982) .......................................................................................... 22

*Renne v. Geary,*
  501 U.S. 312 (1991) .......................................................................................... 11

*Roberts v. AT&T Mobility LLC,*
  877 F.3d 833 (9th Cir. 2017) ........................................................................ 20, 21

*Russi v. Wissenback,*
  No. 6:18–cv–01028–AA, 2019 WL 1965830 (D. Or. Apr. 28, 2019) ............. 26

*Safe Air for Everyone v. Meyer,*
  373 F.3d 1035 (9th Cir. 2004) ........................................................................... 11

*SeaRiver Maritime Fin. Holdings, Inc. v. Mineta,*
  309 F.3d 662 (9th Cir. 2002) ............................................................................. 24

*Sever v. Alaska Pulp Corp.,*
  978 F.2d 1529 (9th Cir. 1992) ........................................................................... 22

*Simon v. E. Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976) ................................................................................................ 17

*Single Moms, Inc. v. Montana Power Co.*,
    331 F.3d 743 (9th Cir. 2003) ............................................................................... 20

*Sinochem v. Malaysia*,
    549 U.S. 422 (2007) .............................................................................................. 9

*SmithKline Beecham Corp. v. Abbott Labs.*,
    740 F.3d 471 (9th Cir. 2014), *reh'g en banc denied*, 759 F.3d 990 (9th Cir. 2014) ........................... 27

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) .......................................................................... 22, 35

*Texas v. United States*,
    523 U.S. 296 (1998) ............................................................................................. 13

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ............................................................................. 11

*Trump v. New York*,
    141 S. Ct. 530 (2020) .......................................................................................... 14

*Village of Bensenville v. Federal Aviation Administration*,
    457 F.3d 52 (D.C. Cir. 2006) ............................................................................... 35

*Walz v. Tax Comm'n*,
    397 U.S. 664 (1970) ...................................................................................... 30, 32

*Wash. Envtl. Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ............................................................................. 15

*Weinberger v. Wiesenfeld*,
    420 U.S. 636 (1975) ............................................................................................. 25

*WildEarth v. U.S. Dep't of Justice*,
    No. CV–13–392, 2014 WL 12539913 (D. Ariz. Aug. 12, 2014) ...................... 9

*Williams v. California*,
    764 F.3d 1002 (9th Cir. 2014) ...................................................................... 30, 33

## **Statutes**

5 U.S.C. § 704 ............................................................................................... 3, 18

20 U.S.C. § 1681(a) ................................................................................... *passim*

20 U.S.C. § 1681(a)(3)............................................................................................*passim*

20 U.S.C. § 1682................................................................................................................8

28 U.S.C. § 1406(a) ..........................................................................................1, 9, 10, 11

42 U.S.C. § 1983............................................................................................................20, 35

42 U.S.C. § 2000bb–1(a) .................................................................................................34

42 U.S.C. § 2000bb–4...................................................................................................4, 34

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(1)...............................................................................................1, 11

Fed. R. Civ. P. 12(b)(3)..................................................................................................1, 9

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 3

Civ. Local R. 3.2........................................................................................................1, 9, 10

Civ. Local R. 7-1(c) ...........................................................................................................1

**<u>Regulations</u>**

28 C.F.R. § 0.51..................................................................................................................5

28 C.F.R. pt. 54..................................................................................................................5

34 C.F.R. §§ 100.6-100.11 .................................................................................................7

34 C.F.R. § 100.7(b).......................................................................................................7, 14

34 C.F.R. § 100.8(a) ..........................................................................................................8

34 C.F.R. pt. 106................................................................................................................5

34 C.F.R. § 106.12...............................................................................................................5

34 C.F.R. § 106.12(b)..........................................................................................................6

34 C.F.R. § 106.12(c)..........................................................................................................6

34 C.F.R. § 106.81...............................................................................................................7

Exec. Order No. 12,250,
    45 Fed. Reg. 72,995 (Nov. 2, 1980)...............................................................................5

Direct Grant Programs, State-Administered Formula Grant Programs, Non Discrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, Developing Hispanic-Serving Institutions Program, Strengthening Institutions Program, Strengthening Historically Black Colleges and Universities Program, and Strengthening Historically Black Graduate Institutions Program,

85 Fed. Reg. 59,916 (Sept. 23, 2020) ................................................................6, 13

Enforcement of Title IX of the Education Amendments of 1972 with Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of *Bostock v. Clayton County*,

86 Fed. Reg. 32,637 (June 22, 2021) ................................................................ 7

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,

85 Fed. Reg. 30,026 (May 19, 2020) ............................................................5, 13

## Other Authorities

2 William B. Rubenstein, Newberg on Class Actions § 6:36 (5th ed.) .................................. 10

www.ed.gov/ocr/docs/smith-memo-19891011.pdf ......................................................... 5

https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf .................................13, 14

## LR 7-1 CONFERRAL

In compliance with Civil Local Rule 7-1(a), counsel for the parties discussed the present motion via telephone conference on August 6, 2021, in a good-faith effort to resolve the issues in dispute, but were unable to resolve those issues.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1406(a), and Civil Local Rule 3-2, Defendants move to transfer this action to the Portland Division because this Court lacks divisional venue. In the alternative, Defendants move: (i) to dismiss this action pursuant to Rule 12(b)(3), 28 U.S.C. § 1406(a), and Civil Local Rule 3-2 for lack of divisional venue; (ii) to dismiss this action pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction; and (iii) to dismiss Plaintiffs' First, Second, Third, and Fifth Causes of Action pursuant to Rule 12(b)(6) for failure to state a claim. The reasons for this motion are set forth below.

## INTRODUCTION

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex in education programs and activities receiving federal financial assistance, subject to certain exceptions. 20 U.S.C. § 1681(a). Through Title IX enforcement, regulation, and guidance, the U.S. Department of Education (the "Department" or "ED") strives to ensure that schools receiving federal funding will not, consistent with Title IX's statutory text, tolerate discrimination on the basis of sex—a prohibition that encompasses sexual harassment, including sexual assault and sexual violence.

Plaintiffs are current and former students who identify as LGBTQI+.[1] They allege that they experienced discrimination at their educational institutions on the basis of their sexual orientation or

---

[1] This brief will use the acronym "LGBTQI+" to include lesbian, gay, bisexual, transgender, queer, questioning, asexual, intersex, nonbinary, and other sexual orientation or gender identity communities, while recognizing that other terminology may be used or preferred by certain groups or individuals.

gender identity, but that the Department denied or would deny their Title IX complaints because Plaintiffs' educational institutions may be deemed exempt from Title IX pursuant to its religious exemption, which provides that Title IX "shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization." 20 U.S.C. § 1681(a)(3) ("Religious Exemption"). Plaintiffs contend that the application of the Religious Exemption to LGBTQI+ students is unlawful.

The Department does not condone the alleged actions that Plaintiffs attribute to their educational institutions. Eliminating discrimination that targets LGBTQI+ students is a critical part of the Department's mission, and ED is committed to enforcing Title IX and other federal civil rights laws to the fullest extent permissible under the existing laws. To the extent Plaintiffs seek to change a statutory exemption enacted by Congress, this litigation against the Department is not the proper vehicle for such an effort. For the reasons discussed below, the present action should be transferred to the Portland Division or, if retained, should be dismissed for lack of venue, lack of standing, and failure to state a claim.

As a threshold matter, the Court should transfer this action to the Portland Division. Divisional venue is not proper within the Eugene Division because, to the extent the events or omissions giving rise to the claims occurred in Oregon, they occurred entirely within the Portland Division. If the Court declines to transfer this action, it should dismiss it for lack of divisional venue.

In the alternative, the Court should dismiss this case for lack of jurisdiction. Plaintiffs have not alleged an injury-in-fact, fairly traceable to the challenged actions of Defendants, that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992). *First,* Plaintiffs' claims of injury are unripe. The First Amended Complaint ("FAC," Doc. 35) alleges that only one plaintiff has actually filed an administrative complaint with ED and received a decision and,

because that was likely many years ago, this plaintiff would not benefit by any relief granted by this Court.  None of the other plaintiffs have, according to the FAC, obtained administrative determinations from ED.  Plaintiffs purport to raise as-applied challenges to the Religious Exemption. As such, their claims require further factual development to flesh out the specific circumstances involved in each claim and how the Religious Exemption may apply, which will crystalize the issues for the Court.  Until ED ascertains the pertinent facts and circumstances and makes a determination about the allegations in the FAC, there is no way to know whether a real case or controversy exists. Consideration of the issues before these events occur would therefore be premature.

*Second*, Plaintiffs' alleged injuries are traceable to the independent actions of the schools in question—not to Defendants.  And, *finally*, Plaintiffs have not alleged how their past injuries could be redressed by the remedies they seek in this lawsuit:  a declaration that the Religious Exemption is unconstitutional as applied to LGBTQI+ students and an injunction against its application in that context.  Even prospectively, the educational institutions could resolve their alleged Title IX violations by opting to forgo federal funding, an outcome that would also not remedy Plaintiffs' alleged injuries.

Plaintiffs have also not established causation or redressability with regard to the regulatory changes they seek to challenge under the Administrative Procedure Act, which do not apply to them, as students, but affect processes and standards that apply only to schools, as institutions.  Moreover, the Court also lacks jurisdiction over Plaintiffs' APA claim under 5 U.S.C. § 704 because private suits against the schools provide an adequate alternative remedy.

Plaintiffs' non-APA claims should be dismissed pursuant to Rule 12(b)(6).  *First*, Plaintiffs' First and Third Causes of Action, asserting First and Fifth Amendment challenges, do not state a claim against ED because they are based on actions taken by private actors, not by the federal

government.  The government is not liable for private action just because the private actor has received government funding.

*Second*, even assuming *arguendo* that Plaintiffs have alleged action attributable to the government for the purposes of their First Cause of Action, Plaintiffs have not stated an equal-protection claim. The Religious Exemption is facially neutral and Plaintiffs do not plausibly plead that Congress enacted it with the deliberate intent to discriminate against LGBTQI+ students.  And even if the Religious Exemption could constitute a sex-based classification, it passes intermediate scrutiny.

*Third*, Plaintiffs do not challenge government action but rather statutorily mandated *in*action. *See* FAC ¶¶ 2, 6.  As this Court has recognized, plaintiffs generally cannot level a substantive-due-process claim based on government inaction. *Juliana v. United States*, 217 F. Supp. 3d 1224, 1250–51 (D. Or. 2016) (Aiken, J.), *rev'd and remanded on other grounds*, 947 F.3d 1159 (9th Cir. 2020).

*Fourth*, Plaintiffs have not stated an Establishment Clause claim (their Second Cause of Action).  The Religious Exemption passes constitutional muster under the governing three-prong test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971).  Courts—including the Supreme Court—have regularly rejected Establishment Clause challenges to religious exemptions, and the Religious Exemption passes muster as well.

*Finally,* Plaintiffs do not state a claim under the Religious Freedom Restoration Act ("RFRA"). RFRA provides in part that "[g]ranting government funding, benefits, or exemptions, to the extent permissible under the Establishment Clause, shall not constitute a violation of this chapter."  42 U.S.C. § 2000bb–4.  Since the Religious Exemption is permissible under the Establishment Clause, it cannot be challenged under RFRA.

For these reasons, this action should be transferred to the Portland Division, or dismissed.

## BACKGROUND

## I.    LEGAL BACKGROUND

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance …." 20 U.S.C. § 1681(a).  The statute further provides that it "shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization."  *Id.* § 1681(a)(3).

ED is the federal agency primarily responsible for providing Federal financial assistance to States, local educational agencies, public and private postsecondary institutions, and other educational entities, and, as such, has primary responsibility for administrative enforcement of Title IX.[2]  ED's Office for Civil Rights ("OCR") enforces Title IX against recipients of ED funding.  ED's regulations implementing Title IX are set forth at 34 C.F.R. Part 106.  Those regulations contain a provision implementing the Religious Exemption.  *See* 34 C.F.R. § 106.12.  That provision sets forth the procedures for an institution wishing to assert such an exemption.  *Id.*

In 2020, ED made two sets of changes to the regulation at 34 C.F.R. § 106.12.  First, it clarified that institutions are not required to submit a written statement to the Assistant Secretary for Civil Rights prior to invoking the Religious Exemption.  *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026, 30,031, 30,475-82 (May 19, 2020).  The revised regulation now clarifies that "[a]n educational institution that seeks assurance of the exemption set forth in paragraph (a) of this section *may* do so" by submitting a

---

[2] The Department of Justice is additionally charged with coordinating federal agencies' implementation and enforcement of Title IX.  28 C.F.R. pt. 54; Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (Nov. 2, 1980); 28 C.F.R. § 0.51.

written request to the Assistant Secretary.  34 C.F.R. § 106.12(b) (emphasis added).  But the regulation further specifies that "[a]n institution is not required to seek assurance from the Assistant Secretary in order to assert such an exemption."  *Id.*  ED explained that the changes codified "longstanding OCR practice," which was aligned with the statute.  85 Fed. Reg. at 30,475; *see* www.ed.gov/ocr/docs/ smith-memo-19891011.pdf.

Second, later that year, the Department again revised the regulation, this time to add a new subsection addressing how educational institutions may demonstrate that they are controlled by a religious organization to qualify for the Religious Exemption.  *See* Direct Grant Programs, State-Administered Formula Grant Programs, Non Discrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, Developing Hispanic-Serving Institutions Program, Strengthening Institutions Program, Strengthening Historically Black Colleges and Universities Program, and Strengthening Historically Black Graduate Institutions Program, 85 Fed. Reg. 59,916, 59,918 (Sept. 23, 2020).  The new provision sets forth a list of six criteria, any one of which "shall be sufficient to establish that an educational institution is controlled by a religious organization."  34 C.F.R. § 106.12(c).  ED explained that these criteria "codify existing factors that the Assistant Secretary for Civil Rights uses when evaluating a request for a religious exemption assurance" and which had been included "in non-binding guidance dating back more than 30 years," in addition to "addressing concerns that there may be other means of establishing the requisite control."  85 Fed. Reg. at 59,918.  ED stated that the criteria were being formally promulgated now "to provide recipients and other stakeholders with clarity regarding what it means to be 'controlled by a religious organization.'"  *Id.*

On June 22, 2021, following the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), ED issued a clarification of "the Department's enforcement authority over

discrimination based on sexual orientation and discrimination based on gender identity under Title IX." Enforcement of Title IX of the Education Amendments of 1972 with Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of *Bostock v. Clayton County*, 86 Fed. Reg. 32,637 (June 22, 2021). After analyzing the similarities between Title VII, the law at issue in *Bostock*, and Title IX and considering additional case law, ED found "no persuasive or well-founded basis for declining to apply *Bostock*'s reasoning—discrimination 'because of ... sex' under Title VII encompasses discrimination based on sexual orientation and gender identity—to Title IX's parallel prohibition on sex discrimination in federally funded education programs and activities." *Id.* at 32,638-39 (alteration in original). Accordingly, ED confirmed that "Title IX prohibits discrimination based on sexual orientation and gender identity." *Id.* at 32,638. It further stated that "OCR will fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity in education programs and activities that receive Federal financial assistance from the Department." *Id.* at 32,629. ED added in a footnote that "[e]ducational institutions that are controlled by a religious organization are exempt from Title IX to the extent that compliance would not be consistent with the organization's religious tenets." *Id.* & n.2 (citing 20 U.S.C. § 1681(a)(3)).

Individuals believing themselves to have been injured by discriminatory practices at an educational institution receiving federal funds from ED may proceed via two routes to obtain judicial or administrative relief. First, they can sue the educational institution directly in court. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979). Second, they can file an administrative complaint against the school with OCR within 180 days of the alleged discrimination. *See* 34 C.F.R. § 106.81 (incorporating the procedures applicable to Title VI of the Civil Rights Act of 1964, 34 C.F.R. §§ 100.6-100.11); *id.* § 100.7(b).

Upon receiving a complaint, OCR evaluates it to determine whether the information provided is subject to further processing pursuant to the applicable statutes and regulations and OCR's Case Processing Manual ("CPM"; *see* Doc. 50-23), including but not limited to an assessment of the timeliness of the complaint and subject matter jurisdiction over the allegations in the complaint. *See* CPM Article I. If OCR determines that the complaint does not meet these initial considerations, OCR will dismiss the complaint. *Id.* § 108. If not dismissed, the complaint is opened for investigation. *Id.* § 111. If sufficient evidence of discrimination is found, and the institution and the complainant are not able to reach resolution, OCR will either: (1) initiate administrative proceedings to suspend, terminate, or refuse to grant or continue financial assistance from the Department to the recipient; or (2) refer the case to the United States Department of Justice for judicial proceedings to enforce any rights of the United States under any law of the United States. *See* 20 U.S.C. § 1682; 34 C.F.R. § 100.8(a); CPM §§ 601-602. Complainants may at any point in this process bring suit in federal court against the institution, CPM § 111, and have administrative appeal rights in some situations, *id.* § 307.

## II.    THE PRESENT SUIT

Plaintiffs are current and former students who identify as LGBTQI+ and who attend, attended, or sought to attend certain allegedly "religious" educational institutions. FAC ¶¶ 1, 13-51. As alleged in the both the original complaint and the FAC, at the time both complaints were filed, only one plaintiff has actually filed an administrative complaint with ED and received a decision. *Id.* ¶ 407. Before the other students' administrative complaints had been filed with OCR (which only occurred fairly recently, *see* Pls.' TRO Mot. at 10, Doc. No. 44), they filed the present suit as a putative class action to challenge Defendants' application of the Religious Exemption as applied to LGBTQI+ students at such schools. FAC ¶¶ 1-6. They assert that ED has a "policy and practice" of denying claims of discrimination under Title IX brought by LGBTQI+ students based on the Religious

Exemption, in violation of their substantive-due-process and equal-protection rights (*id.* ¶¶ 621-645). They also assert that the Religious Exemption and the Department's implementation of it violate the Establishment (*id.* ¶¶ 646-657) and Free Exercise, Speech, Assembly, and Association Clauses of the First Amendment (*id.* ¶¶ 658-671), and the Religious Freedom Restoration Act (*id.* ¶¶ 698-708). Finally, they contend that the two 2020 regulatory changes violate the Administrative Procedure Act ("APA"). *Id.* ¶¶ 672-697. They seek certification of a class, declaratory and injunctive relief, creation of a Task Force to determine appropriate compensation, and appointment of a neutral monitor to oversee compliance. *Id.* at 87-88.

## ARGUMENT

### I.     THIS CASE SHOULD BE TRANSFERRED TO THE PORTLAND DIVISION

As a threshold matter, the Court should transfer this action to the Portland Division pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1406(a), and Civil Local Rule 3–2 as divisional venue is not proper within the Eugene Division. In the alternative, if the Court declines to transfer this action, it should dismiss this case for improper venue. *See* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a); Civ. L.R. 3–2. Plaintiffs "ha[ve] the burden of showing that venue was properly laid." *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). And because "venue is a threshold non-merits issue," "[t]he Court may … bypass the question of subject matter jurisdiction and dispose of the action by a dismissal for lack of venue or by transfer." *WildEarth v. U.S. Dep't of Justice*, No. CV–13–392, 2014 WL 12539913, at *1 (D. Ariz. Aug. 12, 2014) (citing *Sinochem v. Malaysia*, 549 U.S. 422, 432 (2007)).

The Civil Local Rules establish within this District four divisions to, among other things, "identify divisional venue" and "distribute the judicial work." Civ. LR 3–2(a). And just like in a case where a plaintiff filed suit in the wrong district, "[t]he district court of a district in which is filed a case

laying venue in the wrong division … *shall* dismiss, or if it be in the interest of justice, transfer such case to any … division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added). Indeed, "courts in this District have held that LR 3–2 is a *mandatory* requirement under which a case *must* be transferred if it was brought in the wrong division." *Gross v. Progressive Cas. Ins. Co.*, No. 1:17–cv–00828, 2017 WL 6945173, at *7 (D. Or. Dec. 5, 2017) (emphases added, internal quotation marks omitted), *report and recommendation adopted by* 2018 WL 401532 (D. Or. Jan. 12, 2018) (Aiken, J.); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841 (9th Cir. 1986) ("We review venue determinations de novo as a question of law.").

As relevant here, "'divisional venue' means the division of the Court in which a substantial part of the events or omissions giving rise to the claim occurred." Civ. LR 3–2(b). "[I]n a class action," "[t]he analysis of where a substantial part of the events took place … looks to the events concerning the named plaintiffs' claims, not all of the class members' claims." 2 William B. Rubenstein, *Newberg on Class Actions* § 6:36 (5th ed.) (quoted approvingly in *In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018)). "Whether before or after class certification," the Ninth Circuit explains, "the claims of unnamed class members can never make permissible an otherwise impermissible venue." *In re Bozic*, 888 F.3d at 1053.

Plaintiffs assert that "[d]ivisional venue is appropriate" in the Eugene Division because, they allege, "two universities in this division … openly discriminate against sexual and gender minority students." FAC ¶ 12. But none of the *named* Plaintiffs purport to live in, or to attend or to have formerly attended a college or university within, the counties comprising the Eugene Division. To the contrary, the only Oregon connections alleged among the named Plaintiffs are to the cities of Portland (in Multnomah County) and Newberg (in Yamhill County). *See* FAC ¶¶ 34, 37, 44, 46. Both Multnomah and Yamhill Counties fall within the Portland Division. *See* Civ. LR 3–2(1). Because

(i) "in a class action, the 'events' in question are only those involving the named plaintiffs," *In re Bozic*, 888 F.3d at 1053, and (ii) the only Oregon connections among the named Plaintiffs here are within the Portland Division, 28 U.S.C. § 1406(a) provides that the Court "shall …transfer such case to any … division in which it could have been brought"—here, the Portland Division.

## II.    PLAINTIFFS LACK CONSTITUTIONAL STANDING

Plaintiffs bear the burden of establishing subject-matter jurisdiction, *see Defs. of Wildlife*, 504 U.S. at 561, and courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record," *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotation marks and citations omitted).  Because the allegations in the FAC "are insufficient on their face" to establish that Plaintiffs have constitutional standing, this action should be dismissed for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Specifically, the FAC does not allege that plaintiffs have suffered (1) a concrete and particularized injury-in-fact, either actual or imminent, that is (2) "fairly traceable to the challenged action of the defendant," and (3) likely to be redressed by a favorable decision. *Defs. of Wildlife*, 504 U.S. at 560-61.  As an initial matter, the FAC does not allege an injury that is sufficiently ripe.  *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138-39 (9th Cir. 2000) (en banc) ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong.").  The FAC alleges that only one plaintiff has actually filed a complaint with ED and received a decision.  None of the other plaintiffs allege that they have obtained determinations with regard to any of their allegations of discrimination.  In the absence of such agency determinations, adjudication by this Court is premature.

Plaintiffs' allegations fail the second two prongs of the standing inquiry as well. The FAC highlights that Plaintiffs' alleged injuries are traceable to the independent actions of the schools in question—not to Defendants' actions. And the FAC alleges mostly past injuries without an explanation of how those injuries could be remedied by the relief Plaintiffs seek, a declaration that the Religious Exemption is unconstitutional as applied to LGBTQI+ students and an injunction against its application in that context. Even prospectively, if the Court enjoined application of the Religious Exemption in these contexts, educational institutions would remain free to decline federal funding, which would mean that Title IX would not apply to them and Plaintiffs would face much the same situation at their schools as they do now. Accordingly, that a favorable court decision would redress Plaintiffs' injuries is purely speculative.

### A.    Plaintiffs' Injuries Are Not Ripe

The ripeness inquiry contains both a constitutional and a prudential component. *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003). "The constitutional component focuses on whether there is sufficient injury, and thus is closely tied to the standing requirement." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 902-03 (9th Cir. 1993). "[T]he prudential component, on the other hand, focuses on whether there is an adequate record upon which to base effective review." *Id.* at 903. In the administrative context, the "ripeness requirement is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

The lack of formalized agency decisions here precludes review at this time. As alleged in the FAC, only one plaintiff has obtained a determination from OCR on an administrative complaint, and, because that student left the university in question in March 2016, any relief granted by this Court would have no effect on that student. *See* FAC ¶¶ 395, 405-407 (stating ED closed a complaint filed by Jaycen Montgomery); The FAC does not allege that there have been any other determinations by ED as to any of the other conduct Plaintiffs allege, or even any indication as to what ED's current position might be with respect to each instance discussed in the FAC. To be sure, within the last few weeks, Plaintiffs filed numerous administrative complaints with ED. *See* Pls.' TRO Mot. at 21. But, until ED makes a determination with regard to these complaints, there is no basis for the Court to evaluate whether a real case or controversy exists between Plaintiffs and ED. ED may or may not conclude that the Religious Exemption applies to any of the allegations presented in Plaintiffs' complaints. For example, ED has explained that OCR may investigate complaints against religious schools and nothing prevents it from making a finding against such a school "if its religious tenets do not address the conduct at issue." 85 Fed. Reg. at 30,477; *see also* https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf, at 32 ("A religious exemption is not a blanket exemption from Title IX, and a school's religious exemption extends only as far as the conflict between the Title IX regulations and the religious tenets of the controlling religious organization."). A claim is not ripe for judicial resolution "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and quotation marks omitted). That is precisely the situation here. *See Mt. Adams Veneer Co. v. United States*, 896 F.2d 339, 343-44 (9th Cir. 1989) (finding "challenge to the agency's possible decision to prohibit

amendments to previously approved buy-out applications" was not ripe where the agency had not yet addressed the question).[3]

Plaintiffs' claims also do not satisfy the prudential aspect of ripeness. The prudential aspect of ripeness is considered in a two-prong test that weighs the "fitness of the issues for judicial decision," including "whether the courts would benefit from further factual development," and the "hardship to the parties of withholding court consideration." *Ohio Forestry Ass'n, Inc*, 523 U.S. at 733. Plaintiffs purport to raise as-applied challenges to the Religious Exemption. As such, their claims require "further factual development" at the administrative level to flesh out the specific circumstances involved in each claim and how the Religious Exemption may apply. Judicial consideration of Plaintiffs' challenge before the administrative process has run its course could "interfere with the system that Congress specified for the agency to reach" Title IX decisions. *Id.* at 736. And, there does not appear to be "hardship" in the legal context to Plaintiffs from withholding court consideration while the administrative process runs its course. In fact, some of the plaintiffs may obtain relief through the administrative process they just recently initiated. Plaintiffs' claims are thus not ripe for adjudication for prudential reasons as well. *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 82 (1978) (noting that further factual development would "significantly advance our ability to deal with the legal issues presented"); *see also Trump v. New York*, 141 S. Ct. 530, 536 (2020) ("Letting the Executive Branch's decisionmaking process run its course not only brings 'more

---

[3] Indeed, it may be that a majority, if not all, of Plaintiffs' complaints are dismissed on timeliness grounds or because the individual in question has left the school in question. *See* CPM § 108 (listing grounds for dismissal); 34 C.F.R. § 100.7(b) (requiring complaints be filed within 180 days of the discrimination); https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf, at 15 (discussing when a complaint filed by an individual not currently attending the school must be accepted by the school). But, if that is the result of the administrative process, Plaintiffs will not have been injured by ED's application of the Religious Exemption, and they would lack standing for this reason as well. Requiring ripeness therefore serves the purpose of ensuring that ED has actually applied the Religious Exemption to the claims before this Court.

manageable proportions' to the scope of the parties' dispute, … but also 'ensures that we act as judges, and do not engage in policymaking properly left to elected representatives' …").

### B.    Plaintiffs Have Not Alleged that Their Injuries Suffered at Their Schools Are Caused by Defendants' Actions

The "fairly traceable" and "redressability" components for standing overlap and are "two facets of a single causation requirement." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984).  However, "[t]he two are distinct insofar as causality examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested judicial relief." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013) (citing *id.*).  Where, as here, "causation and redressability … hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well," "it becomes the burden of the plaintiff to [allege] facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Defs. of Wildlife*, 504 U.S. at 562.  Plaintiffs have not made this showing here.

First, Plaintiffs have not sufficiently alleged that their claimed injuries are "fairly trace[able] to the challenged action of" Defendants. *Defs. of Wildlife*, 504 U.S. at 560 (alteration in original).  Plaintiffs' complaint is not that ED directly discriminated against them through *its* own actions.  Instead, they allege that their educational institutions—who are not parties to this case—caused their injuries and that ED then refused (or would refuse, if presented with a complaint) to redress those injuries because of its interpretation of the Religious Exemption.  But the FAC does not plausibly allege any causal connection between the actions of religiously controlled institutions and ED's interpretation and application of Title IX.  Rather, the FAC implies that the decisions made by these institutions were the result of independent decision making without regard to whether they had been granted (or would be granted) a religious exemption.  The FAC contains numerous allegations regarding the policies and

actions of the schools at issue, which were the direct and indirect causes of Plaintiffs' injuries, certainly not ED's application of a statutory exemption.

Causation is also lacking with regard to Plaintiffs' APA challenges to the 2020 regulatory changes. Plaintiffs have not specifically alleged that the regulatory changes have led or contributed to the alleged discriminatory harm they have experienced. The regulatory changes merely clarified the manner in which institutions can claim a religious exemption and the eligibility requirements for the exemption. *See supra* pp. 5-6. The changes do not directly or indirectly apply to Plaintiffs, and Plaintiffs do not explain how any of the institutions they attend are more likely to qualify for a religious exemption under the revised regulations than they would have been previously. Indeed, Plaintiffs even allege that, under that status quo, ED has "never rejected an educational institution's assertion that it is controlled by a religious organization," FAC ¶ 584, undermining any argument that the amended regulation has made it easier to qualify or changed the institutions eligible for an exemption. Plaintiffs have therefore have not met their burden to allege causation with regard to these claims.

## C.    The Relief Sought Would Not Be Likely to Redress Plaintiffs' Injuries

To establish redressability, Plaintiffs must allege (and ultimately prove) that it is "likely," as opposed to merely "speculative," *Defs. of Wildlife*, 504 U.S. at 561, that a judgment invalidating the Religious Exemption as applied would redress their injuries. In other words, they have to show that the relief they seek would be substantially likely to redress their claimed injuries and within the district court's remedial power to issue. *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018). However, based on the FAC, Plaintiffs cannot meet this standard. The majority of the Plaintiffs have either left the educational institutions at issue—through graduation or otherwise—or are no longer seeking

attendance there.[4]  Even if this Court were to grant Plaintiffs the relief they seek and declare ED's current application of the Religious Exemption to be invalid and unenforceable, that relief would not remedy Plaintiffs' past injuries.[5]

In any event, the institutions would remain free to decline federal funding, which would mean that Title IX would not apply to them.  Plaintiffs can only speculate that the institutions would alter their policies if the Religious Exemption is enjoined in certain circumstances, but such speculation is insufficient to establish a "likelihood" of redressability.  Where the court cannot predict, nor have plaintiffs established, how third parties would respond to a favorable decision for the plaintiffs, plaintiffs have not sufficiently demonstrated that the requested relief would redress their injuries.  *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43, 45-46 (1976) (the complaint "suggests no substantial likelihood that victory in this suit would result in respondents' receiving the hospital treatment they desire" because "it is just as plausible that the hospitals to which respondents may apply for service would elect to forgo favorable tax treatment to avoid the undetermined financial drain of an increase in the level of uncompensated services"); *Fernandez v. Brock*, 840 F.2d 622, 627 (9th Cir. 1988) (finding no redressability where it was "speculative at best whether a court order compelling the Secretary [of Treasury and other federal officials and agencies] to promulgate regulations" under ERISA would enlarge farmworkers' pension benefits); *see also Freedom Republicans, Inc. v. Fed. Election Comm'n*, 13 F.3d

---

[4] For example, Darren McDonald graduated from Westmont College in 2002, and from Fuller Theological Seminary in December 2006, ECF No. 35-22, ¶¶ 9, 10, Scott McSwain graduated in 2010, ECF No. 35-23, ¶ 3, and Lucas Wilson graduated May 2012, ECF No. 35-31, ¶ 3.

[5] To be sure, the majority of the Plaintiffs have recently, and belatedly, filed administrative complaints with OCR.  *See* Pls.' TRO Mot. at 21.  However, standing is judged as of the time the complaint is filed.  *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008).  Even if the operative complaint for these purposes is the FAC, *see In re Zappos.com, Inc.*, 888 F.3d 1020, 1028 n.10 (9th Cir. 2018), as of the time the FAC was filed, no such administrative complaints had yet been filed. *See* Pls.' TRO Mot. at 11.

412, 419 (D.C. Cir. 1994) (finding "inadequate likelihood, as opposed to speculation, that the Party would choose to change its time-tested delegate-selection mechanism rather than forego the convention funding"). This fatal flaw is present here because neither Plaintiffs nor the Court can predict what effect, if any, a judgment for Plaintiffs in this case would have on prospective decisions by educational institutions regarding LGBTQI+ students.

Plaintiffs also seek monetary damages (through appointment of a "Task Force to determine appropriate compensation, FAC at 87 (¶ D)). However, the Department cannot be liable for damages caused by the allegedly discriminatory conduct of schools in this case. Plaintiffs identify no applicable waiver of sovereign immunity that would afford them damages from the federal government. *See Ordonez v. United States*, 680 F.3d 1135, 1138 (9th Cir. 2012) ("[T]o hold the government liable for money damages, '[a] waiver of sovereign immunity must extend unambiguously to such monetary claims.'"). A request for unavailable relief does not give standing to plaintiffs who otherwise do not have standing.

Finally, with regard to their APA claim, Plaintiffs have not set forth allegations sufficient to show how a decision invalidating the regulatory changes would alter either the behavior of the educational institutions or the outcomes of discrimination complaints or Religious Exemption requests filed with ED under Title IX. Indeed, any injuries that Plaintiffs allege as a result of the regulatory changes, based on conduct by their schools, are more appropriately remedied through a suit by Plaintiffs against their institutions, not the Department. The APA provides for judicial review only of "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court.*" 5 U.S.C. § 704 (emphasis added). Accordingly, Plaintiffs' APA claim should be dismissed for this reason as well. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945-48 (D.C. Cir. 2004) ("[T]he availability of a private cause of action directly against universities that

discriminate in violation of Title IX" constituted an adequate remedy that barred the plaintiffs' APA

claim against the Department.).  In sum, Plaintiffs have not alleged sufficient facts establishing that a

favorable court decision against Defendants would redress their injuries, and, for this reason as well

as for the reasons stated above, Plaintiffs lack constitutional standing to pursue their claims.

### III.    PLAINTIFFS' FIRST, SECOND, THIRD, AND FIFTH CAUSES OF ACTION DO NOT STATE A CLAIM

Plaintiffs' First, Second, Third, and Fifth Causes of Action all fail to state a claim.  "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully." *Id.*  "A pleading that offers labels and conclusions or a formulaic recitation of the

elements of a cause of action will not do." *Id.*  Likewise, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "Where a complaint

pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief." *Id.*

### A.    Plaintiffs' First and Third Causes of Action Do Not State a Claim

#### 1.    Plaintiffs' Alleged Injuries Result from Private Action

Plaintiffs' First and Third Causes of Action assert First and Fifth Amendment challenges based

on actions taken, not by the federal government, but by private religious colleges and universities.  For

example, Plaintiffs assert a First Amendment challenge in part on the grounds that some "taxpayer

funded educational institutions" prohibit them from "form[ing] LGBTQ+ support or advocacy

groups," FAC ¶ 663, and assert a Fifth Amendment challenge in part on the grounds that "[m]any

LGBTQ+ students delay their engagements and/or marriages out of fear of retaliation from their colleges and universities," *id.* ¶ 637.  Plaintiffs' legal theory is that "when the government provides public funds to private actors … the Constitution restrains the government from allowing such private actors to use those funds to harm disadvantaged people." *Id.* ¶ 5.  In other words, Plaintiffs contend that because certain religious colleges and universities receive federal funding, their private actions can be attributable to the government and subject to constitutional scrutiny.

Though private actors asserting a religious exemption from Title IX may behave in certain ways, the federal government is not responsible for such conduct.  The Constitution "protects individual rights only from *government* action, not from *private* action." *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746 (9th Cir. 2003).  This government-action "requirement 'preserves an area of individual freedom by limiting the reach of federal law and federal judicial power,' and 'avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'"  *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 837 (9th Cir. 2017) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)).[6]  "By requiring courts to respect the limits of their own power as directed against private interests, the state action doctrine ensures that the prerogative of regulating private business remains with the States and the representative branches, not the courts." *Id.* at 837–38 (internal citations, alterations, and quotation marks omitted).  And the government-action requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfgs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

---

[6]  The government-action test may arise in multiple contexts, but the legal analysis—whether in the federal-action context, the state-action context, or the 42 U.S.C. § 1983 color-of-law context—is the same.  *See Kitchens v. Bowen*, 825 F.2d 1337, 1340 (9th Cir. 1987) ("'[T]he standards utilized to find federal action for purposes of the Fifth Amendment are identical to those employed to detect state action subject to the strictures of the Fourteenth Amendment.'"); *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) ("[T]he color of law and state action inquiries are the same.").

"'Whether this is good or bad policy, it is a fundamental fact of our political order.'" *Roberts*, 877 F.3d at 838 (quoting *Lugar*, 457 U.S. at 937).

To be sure, private action may be attributable to the government under very limited circumstances—but those limited circumstances do not apply here. In *Blum v. Yaretsky*, 457 U.S. 991 (1982), the Supreme Court explained that "constitutional standards" may be "invoked only when it can be said that the State is *responsible* for the *specific conduct* of which the plaintiff complains." *Id.* at 1004 (second emphasis added). Even in situations where the government "approv[es] of or acquiesce[s] in the initiatives of a private party," such approval or acquiescence "is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Id.* at 1004–05. Rather, a government "normally can be held responsible for a private decision *only* when it has exercised coercive power or has provided such significant encouragement … that the choice must in law be deemed to be that of the State." *Id.* at 1004 (emphasis added). Applying those standards, the *Blum* court rejected Medicaid patients' due process claims against New York State officials that were premised on decisions made by private nursing homes. *See id.* at 993, 995–96, 1003.

Plaintiffs here do not allege that the federal government itself is harming them with "conversion therapy, expulsion, denial of housing and healthcare," and the like. *See* FAC ¶ 2. Instead, they allege that certain "*religious institutions* require sexual and gender minority students to hide their identity out of fear, or to behave contrary to their fundamental sexual or gender identity." *Id.* ¶ 4 (emphasis added). Though Plaintiffs assert that the federal government is "complicit[] in the abuses and unsafe conditions thousands of LGBTQ+ students endure at hundreds of taxpayer-funded[] religious colleges and universities," *id.* ¶ 1, the government conduct alleged is limited to: (i) the fact that "the government provides public funds" to religious colleges and universities, *id.* ¶ 5; and (ii) "[t]he Department's [supposed] inaction" in the face of the complained-of private conduct at issue,

*id.* ¶ 2. But the Ninth Circuit "start[s] with the presumption that private conduct does not constitute governmental action," *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999), and that presumption "may be overcome" only "in limited circumstances," *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020). Defendants do not condone the conduct alleged by Plaintiffs, but neither allegations of federal funding nor statutorily mandated "inaction," without more, suffices to transform private conduct into governmental conduct. *See Blum*, 457 U.S. at 1004.

In *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), the Supreme Court posed and answered the question whether the mere receipt of federal funds by a private actor renders its actions susceptible to constitutional review. *Rendell-Baker* concerned a private school that derived "virtually all of [its] income … from government funding." *Id.* at 840; *see id.* at 832 ("In recent years, public funds have accounted for at least 90%, and in one year 99%, of respondent school's operating budget."). But despite that significant infusion of government funds, the Supreme Court nevertheless "conclude[d] that the school's receipt of public funds does not make the [school's] discharge decisions acts of the State." *Id.* at 840. And based on this holding, the Ninth Circuit held that "[r]eceipt of government funds is insufficient to convert a private university into a state actor, even where 'virtually all of the school's income is derived from government funding.'" *Heineke*, 965 F.3d at 1013 (quoting *Rendell-Baker*, 457 U.S. at 840). As the Supreme Court held in *Blum*, the fact "[t]hat programs undertaken by the [government] result in substantial funding of the activities of a private entity" does not "demonstrat[e] that the [government] is responsible for decisions made by the entity." 457 U.S. at 1011. So, too, here. *See also Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1931–32 (2019) (mere fact that "the government funds or subsidizes a private entity" "does not convert the private entity into a state actor"); *accord, e.g., Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1538 (9th Cir. 1992); *Ascherman v. Presbyterian Hosp. of Pac. Med. Ctr., Inc.*, 507 F.2d 1103, 1105 (9th Cir. 1974).

Nor does the federal government's alleged "inaction," *e.g.*, FAC ¶¶ 2 & 6, suffice to transform the consequent private actions of religious colleges and universities into federal actions subject to constitutional scrutiny.  The Supreme Court has explained that "legislative decision[s] not to intervene in" certain "dispute[s]"—like the Religious Exemption here—do not transform private action into government action.  *Am. Mfgs. Mut. Ins. Co.*, 526 U.S. at 53–54; *accord Blum*, 457 U.S. at 1004–05.  *American Manufacturers* concerned a Pennsylvania workers' compensation law that allowed employers or insurers to withhold payment for a disputed medical treatment pending an independent review of the reasonableness and necessity of the treatment.  *See* 526 U.S. at 43.  The respondents argued that the decisions of private insurers to withhold payment pursuant to the law "may be fairly attributable to the State because the State has 'authorized' and 'encouraged' it."  *Id.* at 53.  Though the Supreme Court acknowledged that "the State's decision to provide insurers the option of deferring payment … can in some sense be seen as encouraging them to do just that," the Court concluded that "this kind of subtle encouragement" does not "so significantly encourage[] the private activity as to make the State responsible for it."  *Id.*  "Such permission of a private choice *cannot* support a finding of state action."  *Id.* at 54 (emphasis added).  "[O]ur cases will not tolerate the imposition of [constitutional] restraints on private action by the simple device of characterizing the State's inaction as 'authorization' or 'encouragement.'"  *Id.* (internal quotation marks omitted).  Here, too, Defendants' statutorily mandated "inaction"—by virtue of the Religious Exemption—does not "so significantly encourage[] the private activity as to make the [government] responsible for it."  *Id.* at 53.

Plaintiffs suggest that *Norwood v. Harrison*, 413 U.S. 455 (1973), and *Bob Jones University v. United States*, 461 U.S. 574 (1983), compel a different result.  *See* FAC ¶¶ 639–40.  Any such suggestion is incorrect.  *Norwood* held that a State that was under a federal desegregation order, and that therefore had an affirmative constitutional duty to dismantle its segregated system of education, could not

provide aid to all-white private schools founded in order to avoid public-school desegregation.  413 U.S. at 457–60, 467–68.  "[T]he constitutional infirmity of the Mississippi textbook program," the Court explained, "is that it significantly aids the organization and continuation of a separate system of private schools which … may discriminate if they so desire." *Id.* at 467.  Mississippi's "constitutional obligation require[d] it to steer clear, not only of operating the old dual system of racially segregated schools, but also of giving significant aid to institutions that" further such segregation. *Id.*

*Bob Jones University*, in which the Supreme Court held that the government properly denied tax benefits to religious schools with racially discriminatory policies, is even further afield. *Bob Jones University* did not involve the attribution of private action to the government.  Instead, the Court simply held that pursuant to the Internal Revenue Code, "an institution seeking tax-exempt status must serve a public purpose and not be contrary to established public policy."  461 U.S. at 586.  And because "racial discrimination in education is contrary to public policy," "[r]acially discriminatory educational institutions cannot be viewed as conferring a public benefit" under the Internal Revenue Code. *Id.* at 595–96.  In other words, the Court simply held that the schools were not entitled to tax-exempt status under the statutory scheme.

To be clear, the federal government in no way condones the private conduct alleged in the FAC.  But the question Plaintiffs present here is whether that private conduct is attributable to the federal government.  The Supreme Court and the Ninth Circuit have made clear that the answer is "no."  Again, the government-action requirement "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfgs. Mut. Ins. Co.*, 526 U.S. at 50 (quoting *Blum*, 457 U.S. at 1002).  If this Court were to hold otherwise, "a large swath of private entities in America would suddenly be turned into [government] actors and be subject to a variety of constitutional constraints on their activities." *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1932.  Though private actors

asserting a religious exemption from Title IX may choose to behave in certain ways, the federal government is not responsible for such conduct. Accordingly, Plaintiffs' First and Third Causes of Action must be dismissed.

### 2. Plaintiffs' Equal Protection Claim Fails for Lack of Discriminatory Intent

Plaintiffs' Fifth Amendment equal-protection claim should be dismissed for an additional reason. "[P]roof of … discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Ramos v. Wolf*, 975 F.3d 872, 896 (9th Cir. 2020) (internal quotation marks omitted). "Statutes are presumed constitutional," *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 669 (9th Cir. 2002), and "only the clearest proof could suffice to establish the unconstitutionality of a statute" based on an alleged improper legislative motive, *Flemming v. Nestor*, 363 U.S. 603, 617 (1960) (Harlan, J.).[7]

"Where," as here, "the challenged governmental policy is 'facially neutral,'"—that is, the Religious Exemption is silent as to LGBTQI+ students—"proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). "[B]ut it is the rare case where impact alone will be sufficient to invalidate a challenged government action." *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009). Rather, to show discriminatory intent, Plaintiffs need to plausibly allege that Congress "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

---

[7] "[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process. This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) (citations and internal quotation marks omitted).

In the context of a facially neutral policy, "[i]f there is no evidence of intentional discrimination, then the court assumes that the challenged actions were not based on discrimination and must inquire only whether the actions were rationally related to a legitimate governmental interest." *Comm. Concerning Cmty. Improvement*, 583 F.3d at 703.

Plaintiffs do not plausibly plead that Congress enacted the Religious Exemption with the deliberate intent to discriminate against LGBTQI+ students. Though Plaintiffs generically allege that "Congress enacted the religious exemption to permit discrimination based on sex, sexual orientation and gender identity," FAC ¶ 601, such a "bald allegation of impermissible motive … standing alone, is conclusory and is therefore not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009); *see Russi v. Wissenback*, No. 6:18–cv–01028–AA, 2019 WL 1965830 (D. Or. Apr. 28, 2019) (Aiken, J.) (identifying "bare assertions that are not entitled to the assumption of truth and are not supported by sufficient factual allegations in the Amended Complaint"); *accord, e.g.*, *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

Moreover, "[w]hen considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Eclectic Props. E., LLC*, 751 F.3d at 996. Here, there are two obvious alternative explanations. *First*, "free exercise of religion and conscience is undoubtedly, fundamentally important," *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018), and the government is permitted to "accommodate religious practices," *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144–45 (1987). *Moreover*, by enacting the Religious Exemption, Congress had sought to avoid excessive entanglement with religion. Indeed, Title IX, including the Religious Exemption, was enacted in 1972—almost immediately after the Supreme Court issued its 1971 decision in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), which invalidated state statutes providing direct aid to religious schools as contrary to the Religion Clauses. *See id.* at 606–07. The Court in *Lemon* expressly cautioned against

excessive government entanglement with religion, and held that "[t]he objective is to prevent, as far as possible, the intrusion of" state involvement "into the precincts of" religious institutions, and vice versa.  *Id.* at 614–15.  As Congress "legislat[es] against the backdrop of recent Supreme Court law," *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1034 (9th Cir. 2016), it is unsurprising that, in the wake of *Lemon*, Congress would be especially careful to ensure that the government, through Title IX, would not unduly "intru[de] … into the precincts of" religious educational institutions.  *Cf. Lemon*, 403 U.S. at 614.

### 3. Plaintiffs' Equal Protection Claim Fails Because the Religious Exemption Passes Intermediate Scrutiny

Even assuming *arguendo* that Plaintiffs had plausibly pleaded a discriminatory intent or purpose, their equal-protection claim should still be dismissed.  Equal-protection claims based on sexual orientation or gender identity call for the application of intermediate scrutiny.  *See SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 481 (9th Cir. 2014) (sexual orientation), *reh'g en banc denied*, 759 F.3d 990 (9th Cir. 2014); *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015) (gender identity).  A statute passes intermediate scrutiny if it "serve[s] important government objectives" and "the discriminatory means employed are substantially related to the achievement of those objectives." *Harrison v. Kernan,* 971 F.3d 1069, 1076 (9th Cir. 2020) (internal quotation marks omitted).[8]

---

[8] Plaintiffs have argued that the religious exemption would be subject to strict scrutiny because it interferes with the fundamental right to marry.  *See* Pls. Mot., Doc. 44 at 31–32.  But the Ninth Circuit has held that strict scrutiny applies "[o]nly when a government regulation *directly* and substantially interferes with the fundamental incidents of marriage."  *Parsons v. Del Norte Cnty.*, 728 F.2d 1234, 1237 (9th Cir. 1984) (per curiam) (emphasis added).  "A regulation does not become subject to strict scrutiny as involving a suspect class merely because in some way it touches upon the incidents of marriage." *Id.*; *see also P.O.P.S. v. Gardner*, 998 F.2d 764, 768 (9th Cir. 1993) (declining to apply strict scrutiny to child support schedule even though its operation may pressure individuals to divorce or deter entering into marriage; "The Schedule does not directly and substantially interfere with marriage.").

The Religious Exemption passes intermediate scrutiny. The Ninth Circuit has recognized "that free exercise of religion and conscience is undoubtedly, fundamentally important." *California*, 911 F.3d at 582. And exempting religiously controlled educational institutions from Title IX—and only to the extent that a particular application of Title IX would not be consistent with a specific tenet of the controlling religious organization, *see* 20 U.S.C. § 1681(a)(3)—is substantially related to the government's objective of accommodating religious exercise.

Simply put, Plaintiffs do not plausibly allege that Congress enacted the Religious Exemption with the deliberate intent or purpose of discriminating against students on the basis of their sexual orientation or gender identity. And even if Plaintiffs had plausibly pleaded such discriminatory intent or purpose, the religious exemption passes intermediate scrutiny. Accordingly, for this additional reason, their equal-protection claim should be dismissed as a matter of law.

### 4. Plaintiffs' Substantive Due Process Claim Should Be Dismissed Because It Is Premised on Private Action and Supposed Government "Inaction"

Plaintiffs' substantive-due-process claim should also be dismissed for an additional reason. "Substantive due process protects individuals from the arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).[9] "[T]o establish a substantive due process claim a plaintiff must show a government deprivation of life, liberty, or property," coupled with "conscience shocking behavior by the government." *Id.* (internal quotation marks omitted).

As a threshold matter, Plaintiffs do not allege a *government* deprivation of life, liberty, or property. As explained above, Plaintiffs only allege harms inflicted on them by private religious colleges and universities. *E.g.*, FAC ¶¶ 1, 3–5. "But nothing in the language of the Due Process Clause

---

[9] "The same analysis that applies to a substantive due process claim under the Fourteenth Amendment applies to a substantive due process claim under the Fifth Amendment." *Molina-Aviles v. Dist. of Columbia*, 824 F. Supp. 2d 4, 9 n.8 (D.D.C. 2011).

itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. Nor does it matter that these private actors may benefit from federal funds because "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980).

And even assuming *arguendo* that Plaintiffs had alleged some sort of direct government involvement, "the Due Process Clause" generally "does not impose on the government an affirmative obligation to act, even when 'such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.'" *Juliana v. United States*, 217 F. Supp. 3d 1224, 1250–51 (D. Or. 2016) (Aiken, J.) (quoting *DeShaney*, 489 U.S. at 196), *rev'd and remanded on other grounds*, 947 F.3d 1159 (9th Cir. 2020).[10] Here, Plaintiffs do not challenge any government action. Instead, they allege that "[t]he Department's *inaction* leaves students unprotected" from a number of harms, and that "the Constitution forbids such *inaction*." FAC ¶¶ 2, 6 (emphases added). As this Court has recognized, however, one generally cannot level a substantive-due-process claim based on government inaction.

For these additional reasons, Plaintiffs' substantive-due-process claim should be dismissed.

## B.    Plaintiffs' Second Cause of Action Does Not State a Claim

"[I]n commanding neutrality the Religion Clauses do not require the government to be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 705 (1994). Rather, the

---

[10]  This principle is subject to two limited exceptions, *see Juliana*, 217 F. Supp. 3d at 1250–51, neither of which applies here.

Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Hobbie*, 480 U.S. at 144–45. And "there is room for play in the joints between the Free Exercise and Establishment Clauses, allowing the government to accommodate religion beyond free exercise requirements, without offense to the Establishment Clause." *Cutter v. Wilkinson*, 544 U.S. 709, 713 (2005). Courts— including the Supreme Court—have regularly rejected Establishment Clause challenges to religious exemptions. *See, e.g.*, *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987) (Title VII's religious exemption); *Walz v. Tax Comm'n*, 397 U.S. 664 (1970) (religious exemption to state property taxes); *Gaylor v. Mnuchin*, 919 F.3d 420, 432 (7th Cir. 2019) (federal tax exemption for church-provided parsonages); *Medina v. Catholic Health Initiatives*, 877 F.3d 1213, 1230–34 (10th Cir. 2017) (ERISA's church-plan exemption); *Pieszak v. Glendale Adventist Med. Ctr.*, 112 F. Supp. 2d 970, 996–97 (C.D. Cal. 2000) (religious exemption to California's Fair Employment and Housing Act). The Religious Exemption likewise passes constitutional muster.

"Establishment Clause violations are determined according to the three-pronged test articulated in *Lemon v. Kurtzman*." *Williams v. California*, 764 F.3d 1002, 1013–14 (9th Cir. 2014); *see also Foothill Church v. Watanabe*, -- F. App'x --, 2021 WL 3039417, at *1 (9th Cir. 2021) (rejecting Establishment Clause challenge based on "the three-prong test in *Lemon*"); *Forter v. Young*, No. 6:18– cv–01171–JR, 2020 WL 1917331, at *8 (D. Or. Apr. 20, 2020) ("[T]he Ninth Circuit continues to rely predominantly on the *Lemon* test to evaluate claimed violations of the Establishment Clause."), *appeal docketed*, No. 20–35452 (9th Cir. May 22, 2020). "A statute or regulation will survive an Establishment Clause attack if (1) it has a secular legislative purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not foster excessive government entanglement with religion." *Williams*, 764 F.3d at 1014. The Religious Exemption passes each prong of the *Lemon* test.

*First*, "[a] practice will stumble on the [secular] purpose prong only if it is motivated *wholly* by an impermissible purpose." *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir. 1993) (emphasis added, internal quotation marks omitted). "A reviewing court must be reluctant to attribute unconstitutional motives to government actors in the face of a plausible secular purpose." *Id.* (internal quotation marks omitted). The Religious Exemption readily clears the secular-purpose prong's "fairly low hurdle." *Ehlers-Renzi v. Connelly Sch. of the Holy Child, Inc.*, 224 F.3d 283, 288 (4th Cir. 2000) (internal quotation marks omitted).

The Supreme Court has recognized that "it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Amos*, 483 U.S. at 336; *accord, e.g., Pieszak*, 112 F. Supp. 2d at 996–97. As applied here, by "protect[ing] the exercise of religion in institutions from unwarranted and substantial infringement," the Religious Exemption constitutes "a secular legislative purpose." *Mayweathers v. Newland*, 314 F.3d 1062, 1068 (9th Cir. 2002) (holding that the Religious Land Use and Institutionalized Persons Act of 2000 "intends a secular legislative purpose"); *see also, e.g., Gaylor*, 919 F.3d at 432 ("Seeking to avoid government entanglement is a secular legislative purpose under *Lemon*"); *Medina*, 877 F.3d at 1231 ("[W]e find that this purpose—avoiding entanglement with religion—is a secular one."); *Pieszak*, 112 F. Supp. 2d at 996–97 ("broad[]" religious exemption to California's Fair Employment and Housing Act constituted "a permissible legislative purpose").

*Second*, the primary effect of the Religious Exemption neither advances nor inhibits religion. "A law is not unconstitutional simply because it *allows* churches to advance religion, which is their very purpose." *Amos*, 483 U.S. at 337 (emphasis in original). "For a law to have forbidden 'effects' under *Lemon*, it must be fair to say that the *government itself* has advanced religion through its own activities and influence." *Id.* (emphasis in original). Just like the religious-education tax deduction upheld in

*Mueller v. Allen*, 463 U.S. 388 (1983), and the property-tax exemption for religious organizations upheld in *Walz v. Tax Commission of the City of New York*, 397 U.S. 664 (1970), the Religious Exemption does not constitute an advancement of religion *by the government*. As the Fourth Circuit explained in upholding a religious exemption to a county zoning ordinance, "[a]ny advancement of religion that follows would be the result of the religious schools' own acts in light of the exemption, as opposed to [the government's] elimination of an otherwise applicable requirement." *Ehlers-Renzi*, 224 F.3d at 291; *see also, e.g.*, *Cohen v. City of Des Plaines*, 8 F.3d 484, 492 (7th Cir. 1993) (holding that zoning exemption did not constitute impermissible advancement of religion; "The religious component of child care and education activities in Des Plaines will come from church members or leaders, not from government officials.").

To be sure, secular institutions do not benefit from the Religious Exemption. But in upholding Title VII's religious exemption, which similarly confers benefits only to religious organizations, the Supreme Court explained that it "has never indicated that statutes that give special consideration to religious groups are per se invalid." *Amos*, 483 U.S. at 338. In other words, "[r]eligious accommodations … need not 'come packaged with benefits to secular entities.'" *Cutter*, 544 U.S. at 724 (quoting *Amos*, 483 U.S. at 338). Indeed, if the converse were true, "all manner of religious accommodations would fall." *Id.*; *Medina*, 877 F.3d at 1232 ("Accepting Medina's argument that accommodation equals favoritism would wreak havoc to [religious-exemption] schemes.").

Nor does it matter that the Religious Exemption may benefit some religious entities and not others. A law does not violate the Establishment Clause "merely" because it "happens to coincide or harmonize with the tenets of some or all religions." *McGowan v. Maryland*, 366 U.S. 420, 442 (1961); *accord Foothill Church*, 2021 WL 3039417, at *1. Here, the Religious Exemption has a secular purpose and does not "single out any religious organization or religious creed for special treatment." *Gillette v.*

*United States*, 401 U.S. 437, 451 (1971). And the Supreme Court and Ninth Circuit have upheld against Establishment Clause challenges several provisions that have the effect of benefiting certain religious adherents over others. *See, e.g.*, *Gillette*, 401 U.S. at 450–54 (exempting from the draft persons who, by reason of religious training and belief, were conscientiously opposed to participation in war); *McGowan*, 366 U.S. at 444–45 (upholding Sunday-closing laws even though Sunday is "a day of particular significance for the dominant Christian sects"); *Droz v. Commissioner*, 48 F.3d 1120, 1121, 1124 (9th Cir. 1995) (upholding Social Security tax exemption that only exempts "members of religious sects that have tenets or teachings opposed to participation in the Social Security system and that provide reasonable support to their dependent members"); *Cammack v. Waihee*, 932 F.2d 765, 780 (9th Cir. 1991) ("Because the primary effect of the Good Friday holiday is secular, we cannot conclude that the holiday is unconstitutional merely because the holiday may make it easier to worship on that day for those employees who may wish to do so.").

*Finally*, the Religious Exemption does not entangle the government with religion—let alone excessively so. "A relationship results in an excessive entanglement with religion if it requires sustained and detailed interaction between church and State for enforcement of statutory or administrative standards." *Williams*, 764 F.3d at 1015–16 (internal quotation marks omitted). The Religious Exemption requires nothing of the sort. To the contrary, religious exemptions like Title IX's *disentangle* government from religion. As in *Amos*, "[i]t cannot be seriously contended that" Title IX's religious exemption "impermissibly entangles church and state." 483 U.S. at 339. Rather, the exemption "effectuates a more complete separation of the two." *Id.*; *see Gaylor*, 919 F.3d at 434 (though "some level of church-state interaction is unavoidable," "[t]he alternative" to the religious exemption would be "more entangling"); *Medina*, 877 F.3d at 1234 ("[F]ar from entangling the government in the affairs of religious institutions, [ERISA's] church-plan exemption avoids the entanglement that would

likely occur in its absence."); *Pieszak*, 112 F. Supp. 2d at 997 ("The [Fair Employment and Housing Act] exemption clearly creates a strong separation between church and state."); *cf., e.g.*, *Hankins v. Lyght*, 441 F.3d 96, 108 (2d Cir. 2006) ("[T]here is no question that the [Religious Freedom Restoration Act] decreases rather than fosters government entanglement with religion …."). [11]

In sum, the Religious Exemption passes the *Lemon* test and thus does not violate the Establishment Clause.

### C.    Plaintiffs' Fifth Cause of Action Does Not State a Claim

Plaintiffs' Religious Freedom Restoration Act ("RFRA") claim also should be dismissed. Plaintiffs' RFRA claim is premised on the notion that the Religious Exemption has the effect of substantially burdening some of those plaintiffs' religious beliefs. *See* FAC ¶¶ 700–706. But RFRA provides in part that "[g]ranting government funding, benefits, or exemptions, to the extent permissible under the Establishment Clause, shall not constitute a violation of this chapter." 42 U.S.C. § 2000bb–4. As explained above, the Religious Exemption is permissible under the Establishment Clause. Accordingly, it cannot be challenged under RFRA.

Even if the Religious Exemption were subject to RFRA (and it is not), Plaintiffs' RFRA claim should still be dismissed for an even more fundamental reason: RFRA provides that, generally speaking, "*[g]overnment* shall not substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb–1(a) (emphasis added). As the Ninth Circuit has explained, to be subject to RFRA liability, "the party charged with the deprivation must be a person who may fairly be said to be a governmental

---

[11] *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116 (1982), *see* Doc. 44 at 28–29, is off-point. *Larkin* concerned a statute that "vest[ed] in the governing bodies of churches and schools the power effectively to veto applications for liquor licenses within a five hundred foot radius of the church or school." 459 U.S. at 117. The Court held that "delegating a governmental power to religious institutions" violated the Establishment Clause. *Id.* at 124. Here, the Religious Exemption does not delegate governmental powers to religiously controlled institutions—it simply exempts them from Title IX to the extent that its application would not be consistent with the religious tenets of such organizations.

actor." *Sutton*, 192 F.3d at 835 (internal quotation and alteration marks omitted); *see also id.* ("'[T]he required degree of [government] action under RFRA is analyzed under the same standard as § 1983.'"). And, as explained above, the government is not burdening the religious exercise of any of the Plaintiffs. Rather, Plaintiffs allege that "[m]any" of them (though the FAC does not specify which Plaintiffs) "maintain sincerely held religious beliefs … which preclude them from complying with *campus policies* that stigmatize or punish LGBTQ+ identities and relationships." FAC ¶ 701 (emphasis added). To the extent that this conclusory allegation clears the plausibility standard, at most Plaintiffs allege that some of their religious beliefs are being burdened by private entities—not the government.

Plaintiffs' RFRA claim is much like the one in *Village of Bensenville v. Federal Aviation Administration*, 457 F.3d 52 (D.C. Cir. 2006). In that case, plaintiffs asserted a RFRA claim against the FAA, premised on the agency's approval and funding of Chicago's plans to expand O'Hare International Airport. Those plans required the relocation of two cemeteries, which, the plaintiffs argued, would substantially burden their exercise of religion. *See id.* at 57–59. The D.C. Circuit concluded that "any burden on the exercise of religion caused by the City's airport expansion plan is not fairly attributable to the FAA." *Id.* at 57. "[E]ven in instances in which the federal government plays some role, constitutional standards do not attach to conduct by third parties in which the federal government merely acquiesces." *Id.* "So too, a federal agency's determination that a City's expansion plan is eligible for federal funding does not render the City's implementation of the plan tantamount to federal action that is the source of the burden on the free exercise of religion." *Id.* "Because the relocation of St. Johannes Cemetery cannot be fairly attributed to the actions of the FAA, the petitioners' RFRA claim fails." *Id.* at 68; *see generally id.* at 64–68. The same analysis applies here.

## CONCLUSION

This case should be transferred to the Portland Division or, in the alternative, dismissed.

Dated:  August 9, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

*/s/ Carol Federighi*
CAROL FEDERIGHI, TX Bar No. 06872950
*Lead Counsel*
ELLIOTT M. DAVIS, NY Reg. No. 4596755
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
carol.federighi@usdoj.gov

*Attorneys for Defendants*