

## HIDDEN DISCRIMINATION:

---

# TITLE IX
# RELIGIOUS
# EXEMPTIONS
# PUTTING LGBT
# STUDENTS AT RISK

---

EXHIBIT A

EXHIBIT A

# TABLE OF CONTENTS

3    INTRODUCTORY LETTER

5    EXECUTIVE SUMMARY

7    LEGAL LANDSCAPE

    7    Statutory Prohibitions on Sex Discrimination in Education
    8    Emerging Case Law and Agency Guidance
    9    The Arcadia Settlement
    10    Standards for Receiving a Religious Exemption

11    FINDINGS

    11    Timing
    11    Scope of Exemptions
    12    Location of Schools and Religious Affiliation
    12    Coordinated Requests

14    POLICY RECOMMENDATIONS

16    ABOUT THE AUTHORS

17    ENDNOTES

20    APPENDIX A: Methodology

20    APPENDIX B: Options for Students Who Experience Discrimination

21    APPENDIX C: Table of Schools Requesting Exemptions and Scope of Exemptions

25    APPENDIX D: Letters from the Department of Education Granting an Exemption

## STORIES OF LGBT DISCRIMINATION

7    George Fox University

9    Pepperdine University

10    California Baptist University

13    Southwestern Christian University

14    Wheaton University

15    Grace University

EXHIBIT A

EXHIBIT A                                                                                    4

LETTER FROM HRC PRESIDENT CHAD GRIFFIN



# DEAR FRIENDS,

THE CLASSROOM IS A PLACE WHERE STUDENTS SHOULD FEEL SAFE, RESPECTED, AND CAPABLE OF FULFILLING THEIR GREATEST POTENTIAL. UNFORTUNATELY, FOR MANY LESBIAN, GAY, BISEXUAL, AND TRANSGENDER STUDENTS, SCHOOL IS A PLACE WHERE THEY FACE DAILY BULLYING, HARASSMENT, AND DISCRIMINATION. A PATCHWORK OF STATE LAWS COMPOUNDS THAT PROBLEM, LEAVING LGBT STUDENTS IN MOST STATES ACROSS THE NATION WITH NO LEGAL PROTECTIONS FROM THE DISCRIMINATION THEY FACE.

Federal law does not explicitly protect students on the basis of sexual orientation or gender identity from discrimination, and 35 states offer little or no protections for LGBT students. This has created a dangerous environment for many students, and has prompted the Obama Administration to clarify that Title IX – the federal law that prohibits sex discrimination in any education program or activity that receives federal funding – also outlaws discrimination based on gender identity and nonconformity to sex–stereotypes. As we continue to push for explicit federal non-discrimination protections for sexual orientation and gender identity, Title IX is a crucial tool to combat the discrimination and harassment that many LGBT students face on a daily basis.

Some religious educational institutions, however, are relying on a little-known provision in Title IX to seek waivers that exempt them from treating LGBT students equally. The Human Rights Campaign has investigated this practice and found 33 schools in states across the country have obtained waivers that allow them to discriminate against LGBT students in admissions, housing, athletics, financial aid, and more. The combined total enrollment of these schools is more than 73,000 students, most of whom are entirely unaware of these waivers. Moreover, these schools together receive more than 50,000 applications each fall from prospective students who may not be informed about the school's policy.

This is an alarming trend that puts thousands of students at risk, and HRC believes there is more the government can do to hold these schools accountable and ensure students, parents, employees, and the public have all the facts.

Most urgently, we are seeking greater transparency and accountability from the Department of Education and Congress so that prospective students and their families know exactly which schools are requesting a license to discriminate from the federal government. The information that we are presenting in this report should be released to the public every year by the Department of Education, and these schools should be required to inform their communities and prospective students when they request the right to discriminate.

Many Americans look to their faith as a source of guidance and inspiration. LGBT individuals are no different. At the Human Rights Campaign, we believe that religious liberty is a bedrock principle of our country. We also believe that no one should use faith as a guise for discrimination, and that all students deserve to enter a school environment knowing they will be protected. This resource is just the beginning of our advocacy on this issue, and we will continue to push for full equality for all LGBT people, at school, at work, and in the communities they call home.

Sincerely,

Chad Griffin
President
Human Rights Campaign

EXHIBIT A

EXHIBIT A

# EXECUTIVE SUMMARY

Lesbian, gay, bisexual, and transgender (LGBT) students face discrimination and harassment at an alarming rate. According to a 2010 study on LGBT students in higher education, lesbian, gay, and bisexual college students are nearly twice as likely to experience harassment when compared with their non-LGB peers, and are seven times more likely to indicate the harassment was based on their sexual orientation.[1]  In the 2011 National Transgender Discrimination Survey, one-fifth of transgender students reported that they were denied gender-appropriate housing, and five percent reported outright denial of campus housing.[2]  LGBT college students also suffer from higher rates of sexual assault and misconduct on America's campuses; transgender and gender nonconforming students report one of the highest rates of sexual assault and misconduct.[3]

Title IX of the Education Amendments of 1972 (Title IX) prohibits sex discrimination in any educational program or activity that receives federal funding. Although best known for its impact on girls' and women's athletic programs, Title IX protects students from discrimination in a broad array of areas in education including admissions, housing, recruitment, athletics, facilities, financial assistance, and counseling services.[4] Title IX also prohibits sex discrimination in employment decisions made by an educational institution including hiring, recruitment, and compensation.[5]

There is growing recognition that Title IX protects students on the basis of gender identity and sexual orientation. Recent case law, Department of Education guidance, and school district settlements support the use of Title IX by LGBT students seeking recourse from discrimination. In the absence of explicit, federal non-discrimination protections for sexual orientation and gender identity, Title IX serves as a vital tool to combat the discrimination and harassment that LGBT students face.

While the LGBT community has made great strides, this report reveals how religious colleges and universities are taking advantage of legal loopholes to enshrine their ability to discriminate on the basis of sexual orientation and gender identity. Title IX contains a little-known provision that allows educational institutions controlled by a religious organization to request an exemption from full compliance with the law if "application of the law would conflict with specific tenets of the religion."[6] Alarmingly, more than four dozen schools have requested a license to discriminate. The rate of schools seeking exemptions has increased dramatically from only one school in 2013 to more than 43 schools in 2015.

EXHIBIT A

Among this report's key findings:
- More than half of all states (26) have at least one school that has requested an exemption;
- Schools in the South have requested the most exemptions;
- Schools that are affiliated with the Southern Baptist Convention requested the greatest number of exemptions, followed by schools affiliated with Wesleyan and Catholic churches;
- Almost a third of schools receiving a gender identity related exemption referred to the federal government's groundbreaking Arcadia Settlement as a primary reason for requesting an exemption;
- 56 schools requested an exemption;
- 33 schools received an exemption from the law as it pertains to protecting students on the basis of gender identity;
- 23 schools also received an exemption from the law as it pertains to protecting students on the basis of sexual orientation; and
- Schools most commonly requested exemptions from provisions of the law relating to housing, access to facilities, and athletics.

If this trend continues, many LGBT students may find themselves enrolled at schools that are granted the legal right to discriminate against them partway through their degree program. Students should have the opportunity to make determinations about school attendance based on full information regarding a university's ability to legally discriminate against the student. For some students, that may mean choosing an alternate school during the application process, transferring to another university, or even deciding not to come out as LGBT until after graduation. Allies of LGBT people may wish to make similar decisions lest they face repercussions for supporting their LGBT friends.

The Department of Education has little discretion to deny requests by religiously affiliated colleges and universities for an exemption under Title IX. However, through administrative action the Department of Education should:
- Issue regulations requiring schools to publicize the number of exemptions that are requested and received, the scope of the exemption, and a statement explaining that students are still protected under all other provisions of Title IX.
- Report the educational institutions receiving exemptions under Title IX as well as the scope of the exemptions.

Congress requires the Department of Education's Office for Civil Rights (OCR) to submit an annual report to the President, Secretary of Education, and Congress on OCR's compliance and enforcement activities. Congress should amend 20 U.S.C. § 3413 (the Office for Civil Right's governing statute) to:
- Require OCR to annually report the number of Title IX exemptions that were requested, as well as the number of requests that the Department granted or denied.



**56 SCHOOLS REQUESTED AN EXEMPTION**

**33 SCHOOLS RECEIVED AN EXEMPTION FROM THE LAW AS IT PERTAINS TO PROTECTING STUDENTS ON THE BASIS OF GENDER IDENTITY**

**23 SCHOOLS ALSO RECEIVED AN EXEMPTION FROM THE LAW AS IT PERTAINS TO PROTECTING STUDENTS ON THE BASIS OF SEXUAL ORIENTATION**

# LEGAL LANDSCAPE

## STATUTORY PROHIBITIONS ON SEX DISCRIMINATION IN EDUCATION

Congress first addressed discrimination in education with the landmark Civil Rights Act of 1964. Title IV of the Civil Rights Act prohibits discrimination in public primary and secondary schools as well as public universities and colleges on the basis of race, color, national origin, sex, and religion. Private schools and educational programs, along with public schools, are barred from discrimination through Title VI of the Civil Rights Act if they accept federal funding; however, the protected characteristics are limited to race, color, and national origin. The primary remedy under Title IV is school desegregation, thus Title VI has been a more popular tool for students since the Supreme Court of the United States has determined that it contains an implied private right of action.[7]

In order to address continued discrimination on the basis of sex in education, Congress passed Title IX of the Education Amendments of 1972 (Title IX). The law states that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance."[8]

More specifically, Title IX:
- Prohibits discrimination in any educational program or activity that receives federal funding, including primary and secondary schools, colleges and universities, secular and parochial schools;
- Prohibits discrimination in vocational and professional programs;
- Prohibits discrimination in admissions, recruitment, housing, facilities, classes, extracurricular activities,

## STORIES OF LGBT DISCRIMINATION

### George Fox University

Jayce, a transgender male student, was denied a request to live in male housing with his friends. George Fox University is affiliated with the Quakers, one of the more liberal Protestant denominations, but it had received a Title IX religious exemption from the Department of Education before Jayce made his request. George Fox had argued that accommodating transgender students would be incompatible with their interpretation of the Bible. Jayce questioned the school's rationale: "I'm living with a bunch of young women… It's not a good recipe for promoting the kind of behavior that a Christian university expects from its students."[9] Unfortunately, he had no legal recourse.

EXHIBIT A

counseling, financial assistance, employment, health insurance and benefits, and athletics; and
- Applies to schools even if their only source of federal funding is in the form of federal student loans, scholarships, or research grants.[10]

Title IX conditions federal funding on agreement by the recipient institution that it will not discriminate on the basis of sex. Non-compliance can result in suspension or termination of a recipient's federal funding.[11] Prior to suspension or termination of funding, the Department of Education must notify the educational institution of its failure to follow the law, give the school an opportunity to remedy the alleged violation, and determine that the school − even with notice − will not comply.[12] It is very rare for the Department of Education to terminate federal funding.

In 1977, the U.S. Supreme Court ruled that individuals can sue to enforce Title IX.[13] Enforcement typically results in an injunction compelling the institution to cease its discriminatory activities. The Supreme Court held in subsequent cases that victims of discrimination can also sue for money damages resulting from an educational institution's deliberate indifference to known acts of discriminatory conduct.[14]

## EMERGING CASE LAW AND AGENCY GUIDANCE

Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of sex − among other characteristics − in employment. Because federal courts routinely rely on Title VII case law to interpret Title IX,[15] developments in Title VII case law are critical to understanding the rights of students. Increasingly, federal courts have allowed claims of employment discrimination based on an employee's sexual orientation or gender identity to proceed under Title VII's sex discrimination provisions. These determinations have been made based on the legal theory that discrimination on the basis of gender identity, sexual orientation, or sex-stereotyping is, at its core, discrimination "on the basis of sex."

Several notable cases underscore this line of reasoning. In *Price Waterhouse v. Hopkins*[16], a female employee

was denied partnership in the accounting firm and was advised to act more feminine to be considered for future promotions. The Supreme Court unanimously held that Title VII did not permit an employer to evaluate female employees based upon their conformity with the employer's stereotypical view of femininity. While this case did not raise questions involving sexual orientation, the sex stereotyping reasoning utilized by the Court has proved pivotal for later claims involving sexual orientation and gender identity discrimination.

In *Oncale v. Sundowner Offshore Services*, the Supreme Court determined that an employer could be held liable under Title VII for failing to stop sexual harassment involving employees of the same gender.[17] Subsequently, federal district and circuit courts have found that openly gay and lesbian employees can seek recourse under Title VII when they have been subjected to sexual harassment.[18]

Lower courts have also contributed to the body of law on discrimination against LGBT employees. To date, two federal circuit courts have ruled that Title VII could apply to a claim brought by a transgender woman who alleged that she was fired based on her gender identity.[19] In addition, several district courts have determined that discrimination against gay and lesbian employees was a violation of Title VII because the employers relied upon gender-based stereotypes when making employment decisions.[20]

This line of reasoning was further extended in administrative decisions issued by the U.S. Equal Employment Opportunity Commission (EEOC.)[21] In 2012, the EEOC "recognized that a complaint of discrimination based on gender identity, change of sex, and/or transgender status was cognizable under Title VII."[22] And in 2015, the EEOC concluded that "sexual orientation is inherently a 'sex-based consideration,' and an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII."[23]

Through a series of "Dear Colleague" letters and guidance documents, the Department of Education has provided clarification on how educational institutions should interpret Title IX. The Department of Education has

interpreted Title IX to prohibit:

- Gender-based harassment of both male and female students, including harassment by a person of the same sex;[24]
- Harassment "for failing to conform to stereotypical notions of masculinity or femininity;"[25]
- Discrimination against transgender and gender non-conforming students;[26] and
- Failure to respect transgender students' gender identity when operating single-sex classes.[27]

The Department of Justice also interprets Title IX to protect students on the basis of gender identity and sex-stereotyping. Relying on the precedents set in *Oncale* and *Price Waterhouse*, the Department of Justice has explained that "[t]reating a student adversely because the sex assigned to him at birth does not match his gender identity is literally discrimination 'on the basis of sex.'"[28] The agency has participated in an array of lawsuits to ensure that LGBT students' Title IX rights are enforced.

## THE ARCADIA SETTLEMENT

The Department of Education and Department of Justice have entered into numerous settlement agreements with school districts clarifying that Title IX protects students based on gender identity and sex-stereotypes. In July 2013, the agencies entered into a settlement agreement with the Arcadia Unified School District in Arcadia, California, following an investigation into allegations of discrimination against a transgender student.[29] The student filed a complaint with the Department of Education alleging that the school district prevented him from using restroom and locker room facilities consistent with his gender identity, and also alleged that the school prevented him from staying in overnight accommodations with other male students on a school-sponsored trip because he is transgender.

The school district agreed to settle the case without admitting any unlawful conduct. The agreement required the school district to implement school- and district-wide measures to prevent gender-based discrimination based on an individual's gender identity. In addition, the district was required to amend its policies and procedures to prohibit discrimination based on a student's gender identity and nonconformity with sex-stereotypes.[30]

The Arcadia Settlement was a critically important step in protecting LGBT students in the absence of explicit federal protections.

## STORIES OF LGBT DISCRIMINATION

### Pepperdine University

Hayley Videckis and Layana White played college basketball in Arizona before they were offered full scholarships to play at Pepperdine University, an NCAA Division I basketball school. Videckis and White allege that after they began dating, members of the University and the athletic staff became obsessed with uncovering whether the couple was in a relationship. The women's basketball head coach frequently spoke disapprovingly of "lesbianism." Videckis and White hid their relationship, but the environment became so hostile that they ultimately left the basketball team and the school.[31]

EXHIBIT A

## STANDARDS FOR RECEIVING A RELIGIOUS EXEMPTION

Title IX contains a little-known provision that allows educational institutions controlled by a religious organization to request an exemption from fully complying with the law if "application of the law would conflict with specific tenets of the religion."[32] However, not all schools that claim to be religious are entitled to an exemption. In order to receive an exemption under Title IX, a school must prove that it is "controlled by a religious organization." The Department of Education has said that a school is normally considered to be controlled by a religious organization if:

1. The educational institution "is a school or department of divinity, defined as an institution or a department or branch of an institution whose program is specifically for the education of students to prepare them to become ministers of religion or to enter upon some other religious vocation, or to prepare them to teach theological subjects;"
2. "Faculty, students or employees [are] members of, or otherwise espouse a personal belief in, the religion of the organization by which it claims to be controlled;" or
3. The school's "charter and catalog, or other official publication, contains explicit statement that it is controlled by a religious organization or an organ thereof or is committed to the doctrines of a particular religion, and the members of its governing body are appointed by the controlling religious organization or

an organ thereof, and it receives a significant amount of financial support from the controlling religious organization or an organ thereof."[33]

Schools that are not controlled by a religious organization – but nevertheless embed faith principles into their missions – have also sought exemptions. These schools have described themselves in a variety of ways, such as a "Christ-centered learning community"[34] and as a school with an "unqualified commitment to historic, orthodox positions on essential doctrines of Christian faith."[35] To date, the Department of Education has neither denied nor granted an exemption to these types of schools.

Religious schools are not exempted from the entirety of Title IX. Rather, a school must identify which portions of Title IX and its accompanying regulations are inconsistent with the tenets of its religion that provide the basis for the exemption.[36] Thus, if a school requests an exemption from Title IX with regards to housing for "homosexual" students, the school is still bound by Title IX for discrimination in housing for transgender students or admissions for lesbian, gay and bisexual students. In letters from the Department of Education to the schools that received exemptions, the Assistant Secretary for Civil Rights cautions the schools that if a student alleges that the exemptions requested are not in fact based upon the religious tenets of the controlling organization, OCR will follow up with the religious organization to confirm the veracity of the claim.

## STORIES OF LGBT DISCRIMINATION

### California Baptist University

Domaine Javier, a transgender nursing student, was expelled after publicly revealing her gender identity.[37] California Baptist University alleged that Javier committed fraud on her school application by listing her gender as "female." Javier sued the school for violating California's Unruh Civil Rights Act, which prohibits "business establishments" from discriminating on the basis of sex, including gender identity and gender expression.[38] The court ruled that for-profit enterprises at California Baptist, such as the library and restaurant on campus, could not discriminate against Javier, but the school's educational activities were not a business establishment, and therefore her expulsion was not prohibited.[39]

EXHIBIT A

# FINDINGS

## TIMING

The announcement of the Arcadia Settlement appears to have marked the beginning of a new and dangerous trend: religious colleges and universities requesting Title IX exemptions to discriminate on the basis of gender identity. Prior to the Arcadia Settlement in July 2013, there were no requests to discriminate on the basis of gender identity. After the settlement, 10 of the schools that received exemptions for gender identity cited the Arcadia Settlement. When the Supreme Court declined to review marriage equality cases from three circuit courts in October 2014,[40] the trend expanded to include requests to discriminate on the basis of sexual orientation. Only one educational institution, Spring Arbor University, requested permission to discriminate on the basis of sexual orientation before October 2014.

### Frequency Chart by Quarter



*Department of Education data is incomplete.*
*Note that for purposes of showing accurate volume over time, this data includes the two schools that requested exemptions that were not based on sexual orientation or gender identity.*



**10 OF THE SCHOOLS THAT RECEIVED EXEMPTIONS FOR GENDER IDENTITY CITED THE ARCADIA SETTLEMENT**

Of the two universities that requested exemptions during the Obama Administration prior to 2014, only one requested an exemption for sexual orientation or gender identity. The other, Maranatha Baptist College, requested an exemption for discrimination based on parental or marital status because the school does not admit divorced individuals, men or women married to a divorced person, or individuals who have or are expecting a child outside of heterosexual marriage.[41]

## SCOPE OF EXEMPTIONS

Regulations implementing Title IX identify 25 different areas in which discrimination is prohibited, divided into three broad categories: discrimination in recruitment and admissions, discrimination in education programs or activities, and discrimination in employment.[42] Schools requesting an exemption must specify exactly which areas of the regulation they wish to be exempt from. The most common areas from which exemptions were requested were housing, facilities, and athletics.

More than four dozen schools have already requested a Title IX religious exemption. The rate of schools seeking exemptions during the Obama Administration has increased dramatically. There were no requests at all from 2009 through 2011. In 2012 and 2013, only one school requested an exemption each year. In 2014 there were 13 requests, and in 2015 there were at least 43.

## Frequency Chart by Area of Discrimination



## Religious Affiliation



*Note: Five schools did not identify a religious affiliation*

Schools have sought exemptions to be able to discriminate on the basis of sexual orientation and gender identity. While every school that received an exemption for sexual orientation also sought an exemption for gender identity, some schools only sought gender identity exemptions. To date, 23 have received an exemption from the law as it pertains to protecting students on the basis of sexual orientation, while 33 schools have received an exemption from the law as it pertains to protecting students on the basis of gender identity. Of those schools, 16 also received exemptions related to marital status. All but one of the schools that received exemptions based on sexual orientation and marital status made their request after the Supreme Court refused to hear marriage equality cases on appeal from three circuit courts.

## LOCATION OF SCHOOLS AND RELIGIOUS AFFILIATION

The Southern region of the United States holds the greatest number of schools seeking exemptions, followed by the West Coast. California and Texas are home to the greatest number of these schools with 6 apiece. Oklahoma follows closely behind with 5. In total, 26 states – more than half of the United States – had at least one school seeking an exemption.

The religious affiliations of schools requesting a religious exemption from Title IX cover an array of denominations, but all are Christian educational institutions. Press coverage of schools seeking exemptions initially came about as

a result of the highly publicized case involving George Fox University (see sidebar). Yet George Fox University is an outlier as the only Quaker institution to request an exemption. Schools affiliated with the Southern Baptist Convention have far outnumbered any other denomination with regards to requests for exemptions.

## COORDINATED REQUESTS

Close examination of the request letters shows that schools affiliated with the Southern Baptist Convention (SBC) appear to have coordinated requests for an exemption. The SBC is the largest Protestant denomination in the United States.[43] The requests used common language and rationale, and several argue that "denominational loyalty" required them to seek an exemption from Title IX. For example, many schools referenced the Southern Baptist Convention's policy on gender identity:

> The separation of one's gender identity from the physical reality of biological birth sex poses the harmful effect of engendering an understanding of sexuality and personhood that is fluid." Moreover, "gender identity is determined by biological sex and not by one's self-perception—a perception which is often influenced by fallen human nature in ways contrary to God's design.[44]

Other schools referenced the SBC's most recent statement of faith, the Baptist Faith and Message: "Man is the special creation of God, made in His own image. He created them male and female as the crowning work of His creation. The gift of gender is thus part of the goodness of God's creation."[45]

Among the schools that are not affiliated with SBC, at least four schools cc'd Alliance Defending Freedom (ADF) on their exemption letters: Belmont Abbey College, Biola University, George Fox University, and Simpson University. ADF is a legal advocacy organization that has long sought to slow progress for LGBT Americans. While the exact relationship between ADF and the schools is unclear, their presence on the letters suggests at least some degree of collaboration.

Recently, ADF has sent letters to public school districts across the country including in Arizona, Illinois, Missouri, New York, and Ohio, urging them to prevent transgender students from using facilities consistent with their gender identity. The group included a suggested model policy for schools to implement that defines "sex" as "the biological condition of being male or female as determined at birth based on physical differences, or, when necessary, at the chromosomal level."[46] The model policy explicitly does not allow students to use facilities based on their gender identity. All of the letters requesting religious exemptions under Title IX that include ADF only request exemptions on the basis of gender identity.

Further suggestive of coordination, 17 schools – including those that cc'd ADF – used identical language in their requesting letters:

> As you know, the Office for Civil Rights has not issued regulations or guidance explaining how an educational institution's response to a transgender individual might violate Title IX and its accompanying regulations, though the Department of Education recently issued guidance on sexual violence prevention which incorporates discrimination based on "gender identity" as part of "sex discrimination" under the statute. And as you also know, the resolution agreement between the Arcadia United School District and ED OCR (and the Department of Justice) requires that school district to permit transgender students to use the restroom, locker room, and living accommodations of their choice, and to participate in athletic programs as a member of the sex to which they believe they belong. It is thus reasonable to suppose that ED OCR believes that such responses are required by Title IX. It is also reasonable to presume that your office interprets Title IX to impose gender identity non-discrimination obligations upon covered institutions in the employment context. To the extent these suppositions are correct, it appears as though compliance with Title IX, as interpreted by ED OCR to reach transgender "discrimination," would be inconsistent with the religious tenets of [X College/University].

## STORIES OF LGBT DISCRIMINATION

### Southwestern Christian University

Christian Minard was one semester shy of graduation when she was expelled after school officials learned that she had married her same-sex partner. Southwestern Christian required students to sign a "lifestyle covenant" prohibiting, among other things, "Lesbian, Gay, Bi-sexual and Transgender (LGBT) behavior or acts."[47] The school argued that students are expelled for violating a variety of infractions that are prohibited in the lifestyle covenant including cursing, drinking, and smoking. But according to Minard, "Students violate parts of [the lifestyle] covenant all the time, but they don't get expelled. I didn't even get a hearing."[48]

EXHIBIT A

# POLICY RECOMMENDATIONS

Religiously controlled educational institutions should not be exempt from full transparency.  Costs related to education are one of the biggest expenses incurred by Americans; therefore, as consumers prospective students should have the right to complete and accurate information about whether a school has received a license to discriminate before making such an important decision.  Laws and regulations already require educational institutions to publicly report a multitude of consumer information to help students decide which school is right for them, such as:

- Pertinent institutional information;[49]
- Financial assistance available to students enrolled in the institution;[50]
- Athletic participation rates;[51]
- Crime statistics;[52] and
- An annual security report.[53]

Currently, the Department of Education does not voluntarily release the names of schools that have been granted Title IX religious exemptions nor are educational institutions required to notify students about exemptions they have received.  This data is only available through FOIA requests. The process to obtain these records is complex, placing this critical information out of reach of the majority of students.

**Recommendation: Notice by Schools**
The Department of Education should require schools to publish comprehensive information about the scope of the exemption they received and the ways in which Title IX still protects students.  HRC calls on the Department of Education to amend its regulations to require educational institutions to post:

- When an exemption has been requested;
- When an exemption has been received;
- The characteristics or behaviors to which the exemption applies;
- The scope of the exemption; and
- A statement explaining that students are still protected under all other provisions of Title IX.

## STORIES OF LGBT DISCRIMINATION

### Wheaton College

Wheaton College ranks among America's most unfriendly colleges for LGBT students.[54] So it was a big deal when Justin Massey was allowed to form an LGBT support group, Refuge. The school's decision to officially sanction Massey's student-led group in 2013 sent shockwaves across religiously affiliated campuses. Refuge served as a lifeline for LGBT and questioning students who felt isolated and alone. However, after Massey came out as gay, the school removed him from the group's leadership. He further claimed that the school removed him from student government activities.[55]

HIDDEN DISCRIMINATION: TITLE IX RELIGIOUS EXEMPTIONS PUTTING LGBT STUDENTS AT RISK    16

**Recommendation: Notice by the Department of Education**

The Department of Education provides a wealth of information for students exploring options for college including tuition, estimated fees, accreditation, degree programs, campus security, and varsity athletic teams. HRC calls on the Department of Education to:

- Regularly report which educational institutions have been granted Title IX religious exemptions and the scope of the exemptions;
- Add Title IX religious exemptions as a searchable feature on College Navigator; and
- Provide the following information on individual school landing pages as a part of College Navigator:
  - When an exemption has been received;
  - The characteristics or behaviors to which the exemption applies;
  - The scope of the exemption; and
  - A statement explaining that students are still protected under all other provisions of Title IX.

**Recommendation: Congressional Action**

Congress requires the Department of Education's Office for Civil Rights (OCR) to submit an annual report to the President, Secretary of Education, and Congress on OCR's compliance and enforcement activities. The law also requires OCR to identify significant civil rights or compliance problems that require "corrective action and as to which, in the judgment of the Assistant Secretary, adequate progress is not being made."[56] HRC calls on Congress to amend 20 U.S.C. § 3413 (the Office for Civil Right's governing statute) to:

- Require OCR to annually report the number of Title IX exemptions that were requested, as well as the number of requests that the Department granted and denied.

## STORIES OF LGBT DISCRIMINATION

### Grace University

Danielle Powell was not allowed to enroll for her final college semester after her same-sex relationship was revealed. Grace University told Powell that she could re-enroll if she went through a restoration program involving mandatory church attendance, meetings with counselors and mentors, and regular communication with a school dean. However, the school expelled her when it became clear that she continued dating women. The school even demanded that she return more than $6,000 in federal aid money. Powell said that she did not think that "a lot of people are aware of the fact that you legally can be kicked out of a school… for being gay."[57]

EXHIBIT A

# ABOUT THE AUTHORS



**Sarah Warbelow** is the Legal Director for the Human Rights Campaign. She leads HRC's team of lawyers and fellows focused on federal, state, and municipal policy. She also coordinates HRC's advocacy efforts as amicus curiae ("friend of the court") in litigation affecting the lesbian, gay, bisexual, and transgender community.

Warbelow joined the Human Rights Campaign in January 2008 as senior counsel for special projects and Justice for All fellow. She then served as HRC's State Legislative Director, from September 2009 to April 2014, working with state and local legislators and lesbian, gay, bisexual, and transgender advocacy organizations in pursuing their LGBT-related legislative priorities.

Before joining HRC, Warbelow served as the program manager for the American Association of University Women Foundation Legal Advocacy Fund, specializing in education and employment discrimination law. Warbelow is also an affiliated professor at George Washington University and George Mason Law School, teaching courses on civil rights law and public policy. She received her bachelors' degrees in social relations and women's studies from Michigan State University and her master's of public policy and law degree from the University of Michigan.



**Remington Gregg** serves as legislative counsel at the Human Rights Campaign, principally focusing on federal legal and policy issues related to the military and veterans, education, immigration, foreign affairs, domestic violence, racial justice, hate crimes, and profiling.

Prior to joining HRC in 2013, Gregg was Associate Counsel and Advisor for Open Government in the White House Office of Science and Technology Policy, advising on a range of legal and policy issues related to science, technology, and national security, and reducing legal and regulatory burdens to create a more open and accountable government.  He has also worked on civil rights litigation and policy with the American Civil Liberties Union and NAACP Legal Defense Fund.  Gregg graduated from Binghamton University (State University of New York) and New York Law School.

# ENDNOTES

[1] Sue Rankin, et. al, *2010 State of Higher Education for LGBT People*, Campus Pride.

[2] Jaime M. Grant, Et Al., National Center for Transgender Equality and National Gay and Lesbian Task Force, *Injustice At Every Turn: A Report of The National Transgender Discrimination Survey*, 39 (2011), http://www.thetaskforce.org/static_html/downloads/reports/reports/ntds_full.pdf.

[3] David Cantor et. al.; Report on the AAU Campus Climate Survey on Sexual Assault and Sexual Misconduct; Westat, iv (September 2015), available at https://www.aau.edu/uploadedFiles/AAU_Publications/AAU_Reports/Sexual_Assault_Campus_Survey/Report%20on%20the%20AAU%20Campus%20Climate%20Survey%20on%20Sexual%20Assault%20and%20Sexual%20Misconduct.pdf.

[4] *See generally* 34 CFR Part 106, Subpart D.

[5] *See generally* 34 CFR Part 106, Subpart E.

[6] 20 USC § 1681(a)(3); *and see* 34 CFR § 106.12(b).

[7] Cannon v. University of Chicago, 441 U.S. 677 (1979). *See* Cannon v. Univ. of Chicago, 441 U.S. 677 (1979) (holding that a woman who alleged discriminatory denial of admission to a medical school had a private right of action for injunctive relief against the school).

[8] 20 U.S.C. § 1681(a).

[9] Joshua Hunt and Ricard Pérez-Peña, *Housing Dispute Puts Quaker University at Front of Fight Over Transgender Issues,* The New York Times (July 24, 2014), http://www.nytimes.com/2014/07/25/us/transgender-student-fights-for-housing-rights-at-george-fox-university.html.

[10] *See* Civil Rights Restoration Act of 1987, Pub. L. No. 259-100, 102 Stat. 28, (overturning Grove City v. Bell, 465 U.S. 555 (1984), in which the Supreme Court held that only the precise activity receiving federal aid was subject to Title IX enforcement and not the entire school).

[11] 20 U.S.C. § 1682.

[12] *See generally id.* at § 1682 and 34 C.F.R. § 106.

[13] Supra note 7.

[14] *See* Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60 (1992)(holding that a claim for damages can be brought against a school district under Title IX), Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998) (holding that a claim for damages can be brought against a school district under Title IX for failing to stop teacher-on-student harassment where the school district had actual notice and acted with deliberate indifference to the misconduct), Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999) (holding that a claim for damages can be brought against a school under Title IX for student-to-student harassment where the funding recipient acted with deliberate indifference to known acts of harassment).

[15] *See* Jennings v. Univ. of N. Carolina, 482 F.3d 686 (4th Cir. 2007). ("We look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX.") *and* Preston v. U.S., 376 U.S. 364 (1964)(holding that the Title IX discrimination claim should be interpreted by principles governing Title VII).

[16] 490 U.S. 228 (1989).

EXHIBIT A

[17] 523 U.S. 75 (1998).

[18] *See, e.g.,* Rene v. MGM Grand Hotel, Inc., 305 F.3d 1061 (9th Cir. 2002) (holding that an openly gay employee subjected to severe physical harassment of a sexual nature in the workplace may have a valid sex discrimination claim under Title VII.) *See also* Nguyen v. Buchart-Horn, Inc. 2003 U.S. Dist. LEXIS 12398 (E.D. La. July 15, 2003)(holding that the plaintiff was not barred from a sex discrimination claim under Title VII because of his sexual orientation.)

[19] Smith v. City of Salem, 378 F.3d 566 (6th Cir. 2004) *and* Glenn v. Brumby, 663 F.3d 1312 (11th Cir. 2011).

[20] *See, e.g.,* Heller v. Columbia Edgewater Country Club, 195 F. Supp. 2d 1212, 1224 (D. Or. 2002) *and* Terveer v. Billington, 2014 WL 1280301 (D.D.C. Mar. 31, 2014).

[21] As an administrative body, the EEOC is not part of the judiciary. EEOC decisions are not binding on the federal courts, but they are generally given deference.

[22] Macy v. Holder, EEOC Appeal No. 0120120821, 2012 WL 1435995 (April 20, 2012).

[23] Baldwin v. Foxx, EEOC Appeal No. 0120133080 (July 15 2015).

[24] *Dear Colleague Letter: Harassment and Bullying,* U.S. Department Of Education, 8 (October 26, 2010), http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf.

[25] Ibid.

[26] *Questions and Answers on Title IX and Sexual Violence,* U.S. Department Of Education, 5 (April 29, 2014), http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf (noting that the Office for Civil Rights "accepts such claims for investigation").

[27] *Questions and Answers on Title IX and Single-Sex Elementary and Secondary Classes and Extracurricular Activities,* U.S. Department Of Education, (December 25, 2014), http://www2.ed.gov/about/offices/list/ocr/docs/faqs-title-ix-single-sex-201412.pdf.

[28] Brief for the United States as Amici Curiae Supporting Appellant, G.G. v. Gloucester County School Board, No. 15-2056, 13-14 (4th Cir. Oct. 28, 2015) (internal citations omitted).

[29] Resolution Agreement Between the Arcadia Unified School District, the U.S. Department of Education, Office for Civil Rights, and the U.S. Department of Justice, Civil Rights Division, No. 09-12-1020 (August 24, 2013), *available at* http://www.justice.gov/sites/default/files/crt/legacy/2013/07/26/arcadiaagree.pdf.  *See also* Resolution Agreement of the Downey Unified School District, No. 09-12-1095, (Oct. 8, 2014), *available at* http://www2.ed.gov/documents/press-releases/downey-school-district-agreement.pdf.

[30] *See, e.g.,* Department of Justice Case Summaries, *available at* http://www.justice.gov/crt/case-summaries (last visited Nov. 18, 2015) for other agreements.

[31] *Two Former Basketball Players Sue Pepperdine,* The Los Angeles Times (December 17, 2014), http://documents.latimes.com/two-former-basketball-players-sue-pepperdine/.

[32] 20 USC § 1681(a)(3); and see 34 CFR § 106.12(b).

[33] *Religious Exemption,* Department of Education, Office for Civil Rights, http://www2.ed.gov/about/offices/list/ocr/frontpage/pro-students/rel-exempt-pr.html (last visited Dec. 12, 2015).

[34] Letter from William Jessup University to the Office for Civil Rights, Department of Education (April 28, 2015) (on file with authors).

[35] Letter from Lancaster Bible College to the Office for Civil Rights, Department of Education (June 1, 2015) (on file with authors).

[36] *Religious Exemption,* Department of Education, Office for Civil Rights, http://www2.ed.gov/about/offices/list/ocr/frontpage/pro-students/rel-exempt-pr.html (last visited Dec. 12, 2015).

[37] Lorelei Laird, *Transgender Student and Baptist College Both Claim Victory in Lawsuit Over Expulsion,* ABA Journal, (Jul 14, 2014, 9:12 PM), http://www.abajournal.com/mobile/article/transgender_student_baptist_college.

[38] Cal. Civ. Code §§ 43-53.7, *available at* http://www.leginfo.ca.gov/cgi-bin/displaycode?section=civ&group=00001-

01000&file=43-53.7.

[39] Cabading v. Cal. Baptist Univ., RIC1302 (Riverside Super. Ct., filed Feb. 25, 2013).

[40] Bogan v. Baskin, 135 S. Ct. 316, *denying cert. to* 766 F.3d 648 (7th Cir. 2014) (Indiana); Walker v. Wolf, 135 S. Ct. 316, *denying cert. sub nom. to* Baskin v. Bogan, 766 F.3d 648 (7th Cir. 2014) (Wisconsin); Schaefer v. Bostic, 135 S. Ct. 308, *denying cert. to* 760 F.3d 352 (4th Cir. 2014) (Virginia); McQuigg v. Bostic, 135 S. Ct. 314, *denying cert. sub nom. to* Bostic v. Schaefer, 760 F.3d 352 (4th Cir. 2014) (Virginia); Rainey v. Bostic, 135 S. Ct. 286, *denying cert. sub nom. to Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014) (Virginia); Smith v. Bishop, 135 S. Ct. 271, *denying cert. to* 760 F.3d 1070 (10th Cir. 2014) (Oklahoma); Herbert v. Kitchen, 135 S. Ct. 265, *denying cert. to* 755 F.3d 1193 (10th Cir. 2014) (Utah).

[41] Letter from the Office for Civil Rights, Department of Education to Maranatha Baptist Bible College (June 19, 2013).

[42] *See* 34 C.F.R. § 106.

[43] Thom S. Rainer, *The 15 Largest Protestant Denominations in the United States*, The Christian Post, (March 27, 2013), http://www.christianpost.com/news/the-15-largest-protestant-denominations-in-the-united-states-92731/.

[44] *On Transgender Identity*, Southern Baptist Convention,  http://www.sbc.net/resolutions/2250/on-transgender-identity (last visited Dec. 17, 2015).

[45] *The 2000 Baptist Faith and Message*, Southern Baptist Convention, http://www.sbc.net/bfm2000/bfm2000.asp (last visited Dec. 9, 2015).

[46] *Students Physical Privacy Policy,* Alliance Defending Freedom, http://www.adfmedia.org/files/StudentPhysicalPrivacyPolicy.pdf (last visited Dec. 12, 2015)

[47] *SCU Lifestyle Covenant,* Southwestern Christian University, http://swcu.edu/Websites/swcu/images/forms/SCU_Lifestyle_Covenant.pdf (last visited Dec 16, 2015).

[48] Greg Horton, *Student Who Married Same-sex Partner Expelled from Southwestern Christian University*, The Washington Post (July 11, 2014).

[49] 34 CFR § 668.43.

[50] 34 CFR § 668.41(d)(1).

[51] 34 CFR § 668.41(g).

[52] 34 CFR § 668.46 (c).

[53] 34 CFR § 668.46 (b).

[54] *LGBTQ Unfriendly,* The Princeton Review, http://www.princetonreview.com/college-rankings?rankings=lgbtq-unfriendly (last visited Dec. 16, 2015).

[55] Samantha Watkins, *Christian College Allows LGBT Group But Won't Let Gay Student Lead It*, The College Fix, (May 12, 2015), http://www.thecollegefix.com/post/22439/.

[56] 20 U.S.C. § 3413.

[57] Allie Grasgreen, *Expelled for Sexuality, and Sent a Bill, Inside Higher Ed*, (June 13, 2013), https://www.insidehighered.com/news/2013/06/13/student-expelled-being-gay-and-charged-6000-back-tuition-protests-online-petition

EXHIBIT A

## APPENDIX A: METHODOLOGY

The Human Rights Campaign (HRC) sought access to records regarding Title IX exemptions through the federal Freedom of Information Act (FOIA). Under FOIA, the public can obtain copies of federal agency records – such as letters and emails – that are sent or received by the agency. In September 2014, HRC requested all communications between the Department of Education and schools requesting a Title IX religious exemption, including the original requests as well as information on whether the agency granted or denied the requests. HRC has since submitted six additional FOIA requests; four of those requests have been fulfilled to date. Materials sent to HRC in accordance with the FOIA requests have been incomplete. For example, HRC received several letters granting an exemption without being sent the original requests even though the original request fell within the scope of HRC's FOIA request. Additional schools may have requested or received exemptions from the Department of Education that were not disclosed by the agency.

The majority of the data is derived from the request letters from the schools to the Department of Education and the granting letters from the Department of Education to the schools. In addition, HRC relied upon data provided by the Department of Education regarding pending requests that did not include request letters. The records obtained by HRC span from January 2009 through December 2015. A FOIA request for documents dating back to the passage of Title IX is still pending. Letters sent from the Department of Education to individual schools granting Title IX exemptions can be viewed in Appendix D.

For the purposes of tabulation, HRC did not include two exemptions granted to schools that specifically did not include sexual orientation and/or gender identity in their requests.

HRC will continue to submit FOIA requests to the Department of Education on a regular basis. This report will be updated upon receipt of new information at least twice per calendar year.

## APPENDIX B: OPTIONS FOR STUDENTS WHO HAVE EXPERIENCED DISCRIMINATION

If you believe that you or your child are the victim of discrimination based on actual or perceived sexual orientation or gender identity, you have alternatives for recourse.

1. **Department of Education Office for Civil Rights**
   The Department of Education is responsible for enforcing several civil rights laws, including Title IX. If you believe that you or your child are the victim of discrimination at school based on gender identity, gender nonconformity, sexual orientation, or sex-stereotypes, you can file a complaint online at the Office for Civil Rights' website at http://www.ed.gov/about/offices/list/ocr/complaintintro.html.  You do not need a lawyer to file a complaint with the agency. Alternatively, you can file a complaint in federal court. Additional guidance can be found at  http://www2.ed.gov/about/offices/list/ocr/docs/howto.html.

2. **State Anti-Discrimination Laws**
   Fourteen states and the District of Columbia explicitly address discrimination against students based on sexual orientation and gender identity: California, Colorado, Connecticut, Illinois, Iowa, Maine, Massachusetts, Minnesota, Nevada, New Jersey, New York, Oregon, Vermont, and Washington. Wisconsin explicitly prohibits discrimination in education only on the basis of sexual orientation.   If you believe that you or your child are the victim of discrimination based on sexual orientation or gender identity in one of the above states, you may file a complaint with the state's human rights agency. Please note that the name of the responsible agency varies from state to state as do timelines for filing a complaint.

## APPENDIX C: TABLE OF SCHOOLS REQUESTING EXEMPTIONS AND SCOPE OF EXEMPTIONS

| University | State | Date Requested | Date Granted | Affiliation |
|---|---|---|---|---|
| American Indian College | Arizona | 10/07/15 | | Pentacostal |
| Anderson University | South Carolina | 01/07/15 | 02/11/15 | Southern Baptist |
| Asbury University | Kentucky | 01/07/15 | | Wesleyan |
| Baptist College of Florida | Florida | 12/04/14 | 12/22/14 | Southern Baptist |
| Belmont Abbey College | North Carolina | 01/16/15 | 02/11/15 | Catholic |
| Bethel College | Indiana | 05/01/15 | 07/29/15 | Missionary Church |
| Biola University | California | 11/14/14 | | |
| Blue Mountain College | Mississippi | 08/12/15 | 10/26/15 | Southern Baptist |
| Carson-Newman University | Tennessee | 05/01/15 | | Southern Baptist |
| Charleston Southern University | South Carolina | 12/08/14 | 02/11/15 | Southern Baptist |
| Colorado Christian University | Colorado | 11/04/14 | | |
| Covenant College | Georgia | 05/28/15 | 07/29/15 | Presbyterian |
| Criswell College | Texas | 10/13/15 | | Southern Baptist |
| Dordt College | Iowa | 10/1/15 | | Christian Reformed Church |
| East Texas Baptist University | Texas | 02/27/15 | 05/04/15 | Southern Baptist |
| Franciscan University of Steubenville | Ohio | 08/27/14 | 10/22/14 | Catholic |
| Freed-Hardeman University | Tennessee | 07/15/15 | | Churches of Christ |
| Fresno Pacific University | California | 06/02/15 | 10/13/15 | Mennonite Brethren |
| George Fox University | Oregon | 03/31/14 | 05/23/14 | Quaker |
| Hannibal-LaGrange University | Missouri | 08/27/15 | 10/30/15 | Southern Baptist |
| Hardin-Simmons University | Texas | 10/05/15 | | Baptist |
| Howard Payne University | Texas | 03/25/15 | 04/24/15 | Southern Baptist |
| John Paul the Great Catholic University | California | 08/25/15 | | Catholic |
| Judson College | Alabama | 02/17/15 | 04/29/15 | Southern Baptist |
| LABI College | California | 09/15/15 | | Assemblies of God |
| Lancaster Bible College | Pennsylvania | 06/01/15 | | |
| Liberty University | Virginia | 01/16/14 | 04/22/14 | Baptist |
| Louisiana College | Louisiana | 07/17/15 | 07/31/15 | Southern Baptist |
| Maranatha Baptist Bible College | Wisconsin | 02/29/12 | 06/19/13 | Baptist |

EXHIBIT A

| University | State | Date Requested | Date Granted | Affiliation |
|---|---|---|---|---|
| Mississippi College | Mississippi | 09/11/15 | 10/13/15 | Southern Baptist |
| Missouri Baptist University | Missouri | 06/18/15 | | Baptist |
| Multnomah University | Oregon | 02/11/15 | | Protestant |
| North Greenville University | South Carolina | 02/09/15 | 05/04/15 | Southern Baptist |
| Northpoint Bible College | Massachusetts | 10/06/15 | | Pentecostal |
| Northwest Nazarene University | Idaho | 07/29/14 | 08/18/14 | Wesleyan |
| Ohio Christian University | Ohio | 05/14/15 | | Wesleyan |
| Oklahoma Baptist University | Oklahoma | 11/24/15 | 12/16/14 | Southern Baptist |
| Oklahoma Christian University | Oklahoma | 09/25/14 | 10/22/14 | Churches of Christ |
| Oklahoma Wesleyan University | Oklahoma | 11/14/14 | 12/22/14 | Wesleyan |
| Ozark Christian College | Missouri | 11/16/15 | | |
| Simpson University | California | 10/07/13 | 05/23/14 | Christian and Missionary Alliance |
| Southeastern University | Florida | 10/26/15 | | Assemblies of God |
| Southern Nazarene University | Oklahoma | 11/12/15 | | Wesleyan |
| Southern Wesleyan University | South Carolina | 01/20/15 | 03/24/15 | Wesleyan |
| Southwest Baptist University | Missouri | 07/08/15 | 07/29/15 | Southern Baptist |
| Spring Arbor University | Michigan | 06/02/14 | 06/27/14 | Methodist |
| St. Gregory University | Oklahoma | 03/03/15 | 03/24/15 | Catholic |
| Tabor College | Kansas | 12/03/14 | 01/08/15 | Mennonite Brethren |
| Toccoa Falls College | Georgia | 07/08/15 | 07/31/15 | Christian and Missionary Alliance |
| Trinity Bible College | North Dakota | 10/18/15 | | Assemblies of God |
| Union University | Tennessee | 01/19/15 | 03/24/15 | Baptist |
| University of Dallas | Texas | 07/23/15 | | Catholic |
| University of Mary Hardin-Baylor | Texas | 01/29/15 | 03/24/15 | Southern Baptist |
| University of Mobile | Alabama | 03/18/15 | 05/04/15 | Southern Baptist |
| University of the Cumberlands | Kentucky | 01/19/15 | 03/24/15 | Southern Baptist |
| William Carey University | Mississippi | 03/06/15 | | Southern Baptist |
| William Jessup University | California | 04/28/15 | | |
| Williams Baptist College | Arkansas | 11/17/14 | 12/22/14 | Southern Baptist |

## SEXUAL ORIENTATION: GRANTED EXEMPTIONS OF INTEREST

| University | State | Date Requested | Date Granted | Affiliation | Admissions | Housing | Facilities | Athletics | Rules of Behavior/Sanctions | Employment | Recruitment of Students | Counseling | Financial Assistance | Health Insurance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Anderson University | South Carolina | 01/07/15 | 02/11/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Baptist College of Florida | Florida | 12/04/14 | 12/22/14 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Bethel College | Indiana | 05/01/15 | 07/29/15 | Missionary Church | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| Blue Mountain College | Mississippi | 08/12/15 | 10/26/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| Charleston Southern University | South Carolina | 12/08/14 | 02/11/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Covenant College | Georgia | 05/28/15 | 07/29/15 | Presbyterian | ✓ | | | | | ✓ | ✓ | ✓ | ✓ | ✓ |
| East Texas Baptist University | Texas | 02/27/15 | 05/04/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Hannibal-LaGrange University | Missouri | 08/27/15 | 10/30/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| Howard Payne University | Texas | 03/25/15 | 04/24/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Judson College | Alabama | 02/17/15 | 04/29/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Louisiana College | Louisiana | 07/17/15 | 07/31/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Mississippi College | Mississippi | 09/11/15 | 10/13/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| North Greenville University | South Carolina | 02/09/15 | 05/04/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Oklahoma Baptist University | Oklahoma | 11/24/15 | 12/16/14 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Oklahoma Christian University | Oklahoma | 09/25/14 | 10/22/14 | Churches of Christ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Southwest Baptist University | Missouri | 07/08/15 | 07/29/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| Spring Arbor University | Michigan | 06/02/14 | 06/27/14 | Methodist | | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| Toccoa Falls College | Georgia | 07/08/15 | 07/31/15 | Christian and Missionary Alliance | ✓ | | | | | ✓ | ✓ | | | |
| Union University | Tennessee | 01/19/15 | 03/24/15 | Baptist | ✓ | | | | | ✓ | ✓ | | | |
| University of Mary Hardin-Baylor | Texas | 01/29/15 | 03/24/15 | Southern Baptist | ✓ | | | | | ✓ | ✓ | | | |
| University of Mobile | Alabama | 03/18/15 | 05/04/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| University of the Cumberlands | Kentucky | 01/19/15 | 03/24/15 | Southern Baptist | ✓ | | | | | ✓ | ✓ | | | |
| Williams Baptist College | Arkansas | 11/17/14 | 12/22/14 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |

EXHIBIT A

## GENDER IDENTITY: GRANTED EXEMPTIONS OF INTEREST

| University | State | Date Requested | Date Granted | Affiliation | Admissions | Housing | Facilities | Athletics | Rules of Behavior/Sanctions | Employment | Recruitment of Students | Counseling | Financial Assistance | Health Insurance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Anderson University | South Carolina | 01/07/15 | 02/11/15 | Southern Baptist | | | | ✓ | ✓ | ✓ | ✓ | | | |
| Baptist College of Florida | Florida | 12/04/14 | 12/22/14 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Belmont Abbey College | North Carolina | 01/16/15 | 02/11/15 | Catholic | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Bethel College | Indiana | 05/01/15 | 07/29/15 | Missionary Church | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Blue Mountain College | Mississippi | 08/12/15 | 10/26/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Charleston Southern University | South Carolina | 12/08/14 | 02/11/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Covenant College | Georgia | 05/28/15 | 07/29/15 | Presbyterian | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| East Texas Baptist University | Texas | 02/27/15 | 05/04/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | | | | | | |
| Franciscan University of Steubenville | Ohio | 08/27/14 | 10/22/14 | Catholic | | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ |
| Fresno Pacific University | California | 06/02/15 | 10/13/15 | Mennonite Brethren | ✓ | ✓ | ✓ | ✓ | | | | | | |
| George Fox University | Oregon | 03/31/14 | 05/23/14 | Quaker | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Hannibal-LaGrange University | Missouri | 08/27/15 | 10/30/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Howard Payne University | Texas | 03/25/15 | 04/24/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Judson College | Alabama | 02/17/15 | 04/29/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| Louisiana College | Louisiana | 07/17/15 | 07/31/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Mississippi College | Mississippi | 09/11/15 | 10/13/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| North Greenville University | South Carolina | 02/09/15 | 05/04/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Northwest Nazarene University | Idaho | 07/29/14 | 08/18/14 | Wesleyan | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Oklahoma Baptist University | Oklahoma | 11/24/15 | 12/16/1 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| Oklahoma Christian University | Oklahoma | 09/25/14 | 10/22/14 | Churches of Christ | | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ |
| Oklahoma Wesleyan University | Oklahoma | 11/14/14 | 12/22/14 | Wesleyan | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Simpson University | California | 10/07/13 | 05/23/14 | Christian and Missionary Alliance | ✓ | ✓ | ✓ | ✓ | | | | | | |
| Southern Wesleyan University | South Carolina | 01/20/15 | 03/24/15 | Wesleyan | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Southwest Baptist University | Missouri | 07/08/15 | 07/29/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | | | | | | |
| Spring Arbor University | Michigan | 06/02/14 | 06/27/14 | Methodist | | ✓ | ✓ | ✓ | | | | | | |
| St. Gregory University | Oklahoma | 03/03/15 | 03/24/15 | Catholic | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| Tabor College | Kansas | 12/03/14 | 01/08/15 | Mennonite Brethren | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| Toccoa Falls College | Georgia | 07/08/15 | 07/31/15 | Christian and Missionary Alliance | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Union University | Tennessee | 01/19/15 | 03/24/15 | Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| University of Mary Hardin-Baylor | Texas | 01/29/15 | 03/24/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | |
| University of Mobile | Alabama | 03/18/15 | 05/04/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| University of the Cumberlands | Kentucky | 01/19/15 | 03/24/15 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| Williams Baptist College | Arkansas | 11/17/14 | 12/22/14 | Southern Baptist | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |

APPENDIX D: LETTERS FROM THE DEPARTMENT OF EDUCATION GRANTING AN EXEMPTION



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

February 11, 2015

Evans P. Whitaker, Ph.D.
President
Anderson University
316 Boulevard
Anderson, South Carolina 29621

Dear President Whitaker:

The purpose of this letter is to respond to your January 7, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Anderson University (University) of Anderson, South Carolina. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University is controlled by the South Carolina Baptist Convention (Convention), which is a "Southern Baptist general body whose constituency is the cooperating Southern Baptist churches of South Carolina." Your letter enclosed a copy of the University's Articles of Incorporation and Bylaws. The Articles of Incorporation state that the University's board of directors "shall be appointed by South Carolina Baptist Convention in session."

Your letter requests a religious exemption from provisions of Title IX "to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, gender identity, pregnancy, and abortion." In support of this request, you cite to The Baptist Faith and Message 2000, a statement of faith adopted by the Convention. According to your letter, that statement of faith explains that the tenets of the Convention are that marriage is between one man and one woman and serves as the means for procreation, that God created people in male and female form, and that the "gift of gender is thus part of the goodness of God's creation." You further cite the Convention's belief that one should "speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death."

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the University from "engaging in recruiting and admissions under a policy which called for the consideration of an applicant for admission's sexual orientation, transgendered status, marital status, past and present practices regarding marriage, sex outside marriage, pregnancy and abortion; ... from subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics; [or] from making all employment decisions... in a

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

EXHIBIT A

Evans P. Whitaker – page 2

manner which takes into consideration these employee characteristics."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent that they prohibit discrimination based on marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy or abortion:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

December 22, 2014

Thomas A. Kinchen
President
The Baptist College of Florida
5400 College Drive
Graceville, FL 32440-1898

Dear President Kinchen:

The purpose of this letter is to respond to your December 4, 2014, letter to the U.S. Department
of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from
Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for The Baptist
College of Florida (College) of Graceville, Florida. Title IX prohibits discrimination on the
basis of sex in any education program or activity operated by a recipient of Federal financial
assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an
educational institution controlled by a religious organization to the extent that application of
Title IX would be inconsistent with the controlling organization's religious tenets. Therefore,
such educational institutions are allowed to request an exemption from Title IX by identifying
the provisions of Title IX that conflict with a specific tenet of the religious organization. The
request must identify the religious organization that controls the educational institution and
specify the tenets of that organization and the provisions of the law and/or regulation that
conflict with those tenets.

Your request explained that the College "is subject to the direction and control of a religious
organization. That organization is the Florida Baptist Convention." Your letter enclosed a copy
of the College's Charter and Bylaws. Article II of the College's Charter states that the College's
purpose is to be a "religious, educational, benevolent, and charitable body, medium, institution,
trustee and agency, serving and doing the will of the Florida Baptist Convention in the matter of
its operating, conducting, and managing The Baptist College of Florida, Inc., for and on its
behalf, and in holding in trust the assets and properties of The Baptist College of Florida, Inc.,
for its use, maintenance and operation in accordance with the instruction, direction and
authorization of the Florida Baptist Convention." Your request further explained that
"[p]ursuant to the College's Charter and Bylaws, the Florida Baptist Convention controls the

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.

EXHIBIT A

Thomas A. Kinchen -- page 2

[College] in part by exercising its right to select the entire elected membership of the board of
directors of the College, the governing body of the College."

Your letter requests a religious exemption from provisions of Title IX "to the extent application
of those provisions would not be consistent with the Convention's religious tenets regarding
marriage, sex outside of marriage, sexual orientation, gender identity, pregnancy and abortion."
In support of this request, you cite to The Baptist Faith and Message 2000, the most recent
statement of faith adopted by the Convention.  According to your letter, that statement of faith
explains that the tenets of the Convention are that marriage is between one man and one woman
and serves as the means for procreation, that God made man in male and female form, and that
the "gift of gender is thus part of the goodness of God's creation."  You further cite the
Convention's belief that one should "speak on behalf of the unborn and contend for the sanctity
of all human life from conception to natural death."

You explain that it would not be consistent with the Convention's religious tenets for the College
to comply with Title IX to the extent that it prohibits the College from "engaging in recruiting
and admissions under a policy which called for the consideration of an applicant for admission's
sexual orientation, transgendered status, marital status, past and present practices regarding
marriage, sex outside marriage, pregnancy and abortion; ... from subjecting students to rules of
behavior, sanctions, or other treatment because of these student characteristics; [or] from making
employment decisions... in a manner which takes into consideration these employee
characteristics."

You state that, for these reasons, the College is requesting an exemption from the following
regulatory provisions to the extent that they prohibit discrimination based on marital status, sex
outside of marriage, sexual orientation, gender identity, pregnancy or abortion:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);

Thomas A. Kinchen – page 3

- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

February 11, 2015

William K. Thierfelder
President
Belmont Abbey College
100 Belmont-Mt. Holly Road
Belmont, NC 28012

Dear President Thierfelder:

The purpose of this letter is to respond to your January 16, 2015, letter to the U.S. Department of
Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of
the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Belmont Abbey College (College)
of Belmont, North Carolina. Title IX prohibits discrimination on the basis of sex in any education
program or activity operated by a recipient of Federal financial assistance.

The Department's implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to
an educational institution controlled by a religious organization to the extent that application of Title IX
would be inconsistent with the controlling organization's religious tenets. Therefore, such educational
institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX
that conflict with a specific tenet of the religious organization. The request must identify the religious
organization that controls the educational institution and specify the tenets of that organization and the
provisions of the law and/or regulation that conflict with those tenets.

Your request explains that the College is owned by and affiliated with the Southern Benedictine Society
of North Carolina, Inc., the members of which are Benedictine Monks. Your letter further explains that
"[t]he Monks founded the college on the basis of, and as an expression of, their Catholic faith" and that
"the Monks and the College also believe that the Church was founded by Jesus Christ and given authority
by him to interpret the Word of God and to teach with binding authority on questions of faith and
morals."

Your letter requests a religious exemption from provisions of Title IX to the extent that it prohibits
discrimination based on gender identity. In support of this request, you cite Biblical passages that reflect
the College's and Monks' belief "that human beings, fashioned by God in His own image and likeness,
are thus created male and female (Genesis 1:27)" and that "heterosexual creation of human beings
expresses God's creative intention (Matthew 19:4)." Your letter further explains that, because of these
religious tenets, the College does not "support or affirm the resolution of tension between one's biological
sex and the experience of gender by the adoption of psychological identity discordant with one's birth
sex, nor attempts to change one's birth sex by surgical intervention, nor conduct or dress consistent with
an identity other than one's biological birth sex."

Your exemption request points to a recent OCR resolution agreement in which a school district agreed to
allow a transgender male student to use the restroom, locker room, and living facilities consistent with the
student's gender identity, and to play on boys' athletic teams. You explain that the College would not be
able to make similar accommodations consistent with its Catholic beliefs. Instead, your letter explains that
the College will "make institutional decisions… regarding housing, student admission and retention,

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.

William K. Thierfelder – page 2

appropriate conduct, employment, hiring and retention, and other matters" consistent with the tenets of the Southern Benedictine Society of North Carolina.

We interpret these statements as a request for exemption from the following provisions in the Department's Title IX regulations to the extent that they prohibit discrimination based on gender identity:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

July 29, 2015

Dr. Gregg Chenoweth
President
Bethel College
1001 Bethel Circle
Mishawaka, IN 46545

Dear Dr. Chenoweth:

I write to respond to your May 1, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Bethel College (College) of Mishawaka, Indiana, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explained that the College "is a private, Christian evangelical College" that was "established in 1947, as a Christian liberal arts college by the Missionary Church." According to your letter, the College's Articles of Incorporation require "that the controlling majority of the Trustees governing the College must be members in good stating of the Missionary Church" and the Bylaws of the College require "that the President of the Missionary Church shall be an ex-officio member of the Board. In addition, the President of Bethel College is an ex officio member of the denominational Board of Trustees." Your letter explains that most of the tenets of the Missionary Church are codified in the Missionary Church Constitution (Constitution). The College uses the Constitution "as a reference for behavioral and doctrinal standards expected of the College, its students, faculty, and other employees…and follows Biblical principles in its policies and practices applicable to Christian education, and to its students and employees." You

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Dr. Gregg Chenoweth – page 2

further state that students "are required to attend chapel regularly" and that "The Covenant of Lifestyle requires students and employees to follow the Code of Conduct established by the College," which "incorporated the Christian standards of behavior directed by Biblical principles and the tenets of the Missionary Church."

Your letter requests a religious exemption from the provisions of Title IX to the extent those provisions "would require the College to allow males and females to reside in the same housing, to visit within the housing of the opposite sex without restrictions, to allow an unmarried male and female to live together, or to allow a person with gender identity issues to be treated as a member of the sex which they have assigned to themselves…" or "would require that the College not discriminate in discipline, admissions, hiring, and employment decisions, in matters such as employment leaves for pregnancy, childbirth, and elective termination of pregnancy, or on the basis of pre-marital sex, unmarried pregnancy, extra-marital sex, or homosexual activity." In support of this request, you cite to the Constitution and Biblical principles that state "that God created two sexes, male and female; that marriage is between one man and one woman; and that extramarital sex, premarital sex, and the practice of homosexuality are sinful behaviors, and therefore prohibited." You letter further explains that it is the position of the College, "based upon its religious beliefs taken from Biblical principles and the Doctrine of the Missionary Church, that a person cannot change his or her birth sex." Finally, you state that the "College's Christian religious beliefs, which are based upon the Bible and the tenets of the Missionary Church, also prohibit elective abortion, pre-marital sex, extra-marital sex, and homosexual behavior for students and employees."

You state that, for these reasons, the College is requesting an exemption from the following regulatory provisions "so that the College may discriminate on religious grounds in regard to its students and employees, in keeping with its religious beliefs and the tenets of the Missionary Church:"

- 34 C.F.R. § 106.21(b)(iii) (governing admission);
- 34 C.F.R. § 106.21(c) (governing admission);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51(a) (governing employment);
- 34 C.F.R. § 106.51(b)(6) (governing employment); and
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions).

Dr. Gregg Chenoweth – page 3

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

(b)(6)

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

WASHINGTON, DC 20202

December 22, 2014

Barry H. Corey
President
Biola University
13800 Biola Avenue
La Mirada, CA 90639

Dear President Corey:

The purpose of this letter is to respond to your November 14, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Biola University of La Mirada, California from Title IX of the Education Amendments of 1972. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance. We are processing your request and have determined that we need further information.

Subsection (a)(3) of Title IX, 20 U.S.C. § 1681(a)(3), and the Department's implementing regulation at 34 C.F.R. § 106.12 provide that Title IX and its regulations do not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would not be consistent with the controlling organization's religious tenets. Such educational institutions are allowed to claim an exemption from Title IX by identifying the provisions of the Department's Title IX regulations that conflict with a specific tenet of the controlling religious organization.

Your letter included sufficient information regarding the provisions of the Department's Title IX regulations from which the University requests exemption. But your letter did not identify the religious organization that controls the University. Your letter describes the University as "a Christian evangelical institution," but does not name a specific religious organization. An educational institution will normally be considered to be controlled by a religious organization under Title IX if one or more of the following conditions prevail:

(1)   It is a school or department of divinity, defined as an institution or a department or branch of an institution whose program is specifically for the education of

www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

Letter to President Corey – page 2

students to prepare them to become ministers of religion or to enter upon some other religious vocation, or to prepare them to teach theological subjects; or

(2)  It requires its faculty, students or employees to be members of, or otherwise espouse a personal belief in, the religion of the organization by which it claims to be controlled; or

(3)  Its charter and catalog, or other official publication, contains an explicit statement that it is controlled by a religious organization or an organ thereof or is committed to the doctrines of a particular religion, and the members of its governing body are appointed by the controlling religious organization or an organ thereof, and it receives a significant amount of financial support from the controlling religious organization or an organ thereof.

If you would like OCR to make a determination regarding the University's religious exemption request, please let us know the specific religious organization that controls the University. Feel free to provide any explanation or supporting documentation that may be helpful to OCR's understanding. If you no longer desire a religious exemption determination, please simply let us know your wish to withdraw the request at this time so that we may close the request file.

Thank you for your cooperation. If you have any questions, please do not hesitate to contact me. I can be reached at (202) 453-6048.

Sincerely,

Seth Galanter
Principal Deputy Assistant Secretary
Office for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

October 26, 2015

Dr. Barbara C. McMillin
President
Blue Mountain College
P.O. Box 160
Blue Mountain, MS 38610

Dear Dr. McMillin:

I write to respond to your August 12, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Blue Mountain College (College) of Blue Mountain, Mississippi from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explains that the College, "a Southern Baptist institution of higher education," "is controlled by a religious organization. That organization is the Mississippi Baptist Convention . . . whose constituency is the cooperating Southern Baptist churches of Mississippi." Your letter states that "[p]ursuant to the College's Charter, the Mississippi Baptist Convention controls the College by electing the College's board of trustees."

Your letter requests a religious exemption from the provisions of Title IX "to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, and gender identity." In support of this request, you cite to the Word of God, which your letter states is the Convention's religious authority. According to your letter, the Word of God teaches that marriage is between one man and one woman and serves as the means for procreation. You letter further states that the Convention has declared that "God's design was the creation of two distinct and

400 MARYLAND AVE., S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.*

EXHIBIT A

Dr. Barbara C. McMillin – page 2

complementary sexes, male and female."

You explain that it would not be consistent with the Convention's religious tenets for the College to comply with Title IX to the extent that it prohibits the College from "engaging in recruiting, admissions, and financial assistance under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, and sex outside marriage[; . . . from] subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions. . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, the College is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, and gender identity in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preferences in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, or gender identity and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations

Dr. Barbara C. McMillin – page 3

fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

February 11, 2015

Jairy C. Hunter, Jr.
President
Charleston Southern University
9200 University Boulevard
P.O. Box 118087
Charleston, SC 29423-8087

Dear President Hunter:

The purpose of this letter is to respond to your December 8, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Charleston Southern University (University) of Charleston, South Carolina. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University "is governed and controlled by its Board of Trustees, which consists of twenty-five members who are elected by the South Carolina Baptist Convention." Your letter enclosed a copy of the University's Bylaws. Article II of those Bylaws state that one of the objectives of the institution is to "[o]perate a Baptist, liberal arts university."

Your letter requests a religious exemption from certain provisions of Title IX to the extent that application of those provisions would not be consistent with the South Carolina Baptist Convention's religious tenets. In support of this request, your letter cites several religious tenets that conflict with the application of the Title IX regulations listed below. Specifically, your letter explains that the University, consistent with the Southern Baptist Convention's[1] statement on transgender individuals, "affirms that a person cannot change his/her birth gender and so must be treated as such; rather than a self-identified gender, which would be inconsistent with the University's religious beliefs." Additionally, your letter states that the University views "all forms of sexual intimacy that occur outside the covenant of heterosexual marriage, even when consensual" as inconsistent with the tenets of the Southern Baptist Convention and that the "University's religious beliefs prohibit pre-marital sex and elective abortion." You state that, for these reasons, application of certain provisions in Title IX "would be inconsistent with the religious beliefs and practices of the South Carolina Baptist Convention and Charleston Southern University."

---

[1] Your letter explains that the University is affiliated with the Southern Baptist Convention via its controlling organization, the South Carolina Baptist Convention.

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Jairy C. Hunter, Jr. – page 2

Your letter requests a religious exemption from the following provisions of Title IX to the extent that compliance would conflict with the South Carolina Baptist Convention's religious tenets:

- 34 C.F.R. § 106.21(b)(iii)  and (c) (governing admission);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51(a) and (b)(6) (governing employment); and
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions).

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

July 29, 2015

Dr. J. Derek Halvorson
President
Covenant College
14049 Scenic Highway
Lookout Mountain, GA 30750

Dear Dr. Halvorson:

I write to respond to your May 28, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Covenant College (College) of Lookout Mountain, Georgia, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explained that the College "was founded in 1955 as a Christ-centered institution of higher education, emphasizing liberal arts. It is an agency of the Presbyterian Church in America (PCA) and is governed by a Board of Trustees elected by the General Assembly of the Presbyterian Church of America." Your request explains that "[t]he Presbyterian Church in America and Covenant College—as one of its agencies—understand the Bible to be the infallible written Word of God…[and] both the Denomination and the College affirm that the Westminster Confession of Faith and the Westminster Larger and Shorter Catechisms provide the most adequate and comprehensive expression of the system of doctrine taught in the Bible."

Your letter requests a religious exemption from the provisions of Title IX and its accompanying regulations "to the extent that they are interpreted to curtail the College's freedom to respond to transgender individuals in accordance with its theologically-grounded convictions." In support of this request you cite to the College's Statement on Sexual Identity and Conduct (Statement), which you assert is consistent with the Westminster Confession of Faith and the Westminster Larger and Shorter Catechisms. The Statement provides that "[t]he creation of human beings

400 MARYLAND AVE, S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.

Dr. J. Derek Halvorson – page 2

was a special creative act of God. God created human beings, male and female…As such, students are not to adopt a gender identity different from one gifted them by their Creator. This gendered ordering of creation is to be accepted, honored, and reflected in sexual intimacy."

Your request also notes that "the EEOC has begun openly declaring that the ban on 'sex' discrimination in Title VII of the Civil Rights Act of 1964 also forbids discrimination on the basis of 'sexual orientation.' It is conceivable that the Department of Education's Office for Civil Rights could interpret Title IX of the Education Amendments of 1972 the same way." Your letter states "[t]o the extent these suppositions are correct, it appears as though compliance with Title IX, if interpreted by ED OCR to reach sexual orientation 'discrimination,' would also be inconsistent with the theological commitment of Covenant College. The College, therefore, also seeks exemption on this basis." In support of this request, you cite the following language from the Presbyterian Church of America's Fifth General Assembly in 1977: "The act of homosexuality is a sin according to God's Word;…In light of the Biblical view of its sinfulness, a practicing homosexual continuing in this sin would not be a fit candidate for ordination or membership in the Presbyterian Church in America."

Finally you request an exemption from Title IX to the extent that it restricts the College's freedom to apply and enforce its Statement on Human Life. In support of this request, you cite to the Presbyterian Church of America's Position Paper on Abortion which states, "the intentional killing of an unborn child is a violation of God's command and authority" and the College's Statement of Community Beliefs which, according to your letter, states that the College "strongly oppose[s] abortion since it devalues and destroys human life."

You state that, for these reasons, the College is requesting an exemption from Title IX and the following implementing regulations "to the extent they are interpreted to reach gender identity or sexual orientation discrimination, and to the extent they restrict the College's freedom to apply and enforce its Statement on Human Life:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preferences in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling and use of appraisal and counseling materials);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);

Dr. J. Derek Halvorson – page 3

- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-61 (governing employment).

The College is exempt from these provisions to the extent that they prohibit discrimination based on gender identity, sexual orientation, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

(b)(6)

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

May 4, 2015

Lawrence Ressler, Ph.D.
Interim President
East Texas Baptist University
1 Tiger Drive
Marshall, TX 75670

Dear Dr. Ressler:

I write to respond to your February 27, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for East Texas Baptist University (University) of Marshall, Texas, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explained that the University "is controlled by a religious organization. That organization is the Baptist General Convention of Texas." Your letter states that "[p]ursuant to the University's Certificate of Formation and Bylaws, the Baptist General Convention of Texas controls the University in part by exercising its right to select a majority of the membership of the board of directors of the University, the governing body of the University." Your letter sets forth the University's mission, which states in part that the University "is an institution affiliated with the Baptist General Convention of Texas since 1912."

Your letter requests a religious exemption from the provisions of Title IX "to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, gender identity, pregnancy, and abortion." In support of this request, you cite *On Sexual Ethics*, a resolution adopted by the Convention in 2009. According to your letter, that resolution states that "the Bible teaches that the ideal for sexual behavior is the marital union between husband and wife and that all other sexual relations – whether premarital, extramarital, or homosexual – are contrary to God's purposes and thus sinful." You further cite the Convention's religious belief that "gender is based on biological attributes and is seen as a gift from God and immutable." Your letter states that the "Convention has declared on six occasions its religious beliefs opposing abortion." Finally, you cite to the Baptist Faith and Message, which, according to your letter, states that "[m]arriage is the uniting of one man and one woman."

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the University from "engaging in recruiting and admissions under a policy which called for the consideration of an applicant for admission's sexual

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Dr. Lawrence Ressler – page 2

orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, sex outside marriage, pregnancy, and abortion[; . . .] from subjecting students to rules of behavior, sanctions, or other treatment because of these student behaviors[; or from] making all employment decisions . . . in a manner which takes into consideration these employee behaviors."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, gender identity, pregnancy, and abortion in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

Page 3 - Dr. Riley

Based on the above principle, ETBU has requested and is granted by this letter, exemption to:

| | |
|---|---|
| 34 C.F.R. § 106.21(c) | Admission; prohibitions relating to marital or parental status |
| 34 C.F.R. § 106.31 | Education programs and activities |
| 34 C.F.R. § 106.34 | Access to course offerings |
| 34 C.F.R. § 106.36 | Counseling and use of appraisal and counseling materials |
| 34 C.F.R. § 106.37 | Financial assistance |
| 34 C.F.R. § 106.38 | Employment assistance to students |
| 34 C.F.R. § 106.40 | Marital or parental status |

This letter should not be construed to grant exemption to any section of the Title IX regulation not specifically mentioned. If OCR receives a complaint on these issues against ETBU, we will be obligated to determine initially whether the allegations fall within the exemptions granted. Also, in the unlikely event that a complaint alleges that the practices followed by ETBU are not based on the religious tenets of the controlling organization, OCR may be obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by ETBU, or if the organization denies that it controls ETBU, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Jeanette J. Lim
Acting Assistant Secretary
for Civil Rights

Enclosures



OCT 2 2 2014

Fr. Sean O. Sheridan
President
Franciscan University of Steubenville
1235 University Blvd.
Steubenville, OH 43952

Dear Fr. Sheridan:

The purpose of this letter is to respond to your August 27, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Franciscan University of Steubenville (University) of Steubenville, Ohio from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

Title IX and its implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to educational institutions controlled by a religious organization to the extent application of Title IX would be inconsistent with the organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explains that the University is a "Catholic co-educational institution of higher education" that is "owned and controlled by a religious organization of the Catholic faith," specifically the "Franciscan Friars of the Most Sacred Heart of Jesus."

Your exemption request points to a recent OCR resolution agreement in which a school district agreed to allow a transgender male student to use the restroom, locker room, and living facilities consistent with the student's gender identity, and to play on boys' athletic teams. You explain that the requirements of that resolution agreement are "opposed to Franciscan University's Catholic mission and identity and to the tenets of the Catholic Church." Specifically, you cite to Catholic theology that asserts that "human beings are created male or female" and that the "tenets of the Catholic Church are violated by manipulating one's God-given sex or gender and/or by attempting to identify as the sex or gender opposite to one's God-given sex/gender."

You state that, for these reasons, the University seeks an exemption from Title IX to the extent that it is interpreted as it was in the OCR resolution agreement described above. We interpret

Fr. Sean O. Sheridan – page 2

this statement as a request for exemption from provisions 34 C.F.R. §§ 106.32 (governing housing), 106.33 (governing comparable facilities such as restrooms and locker rooms), and 106.41 (governing athletics). The University is exempt from these provisions to the extent that they require a recipient to treat students consistent with their gender identity, but doing so would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and its implementing regulations other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

October 13, 2015

Dr. Richard Kriegbaum
President
Fresno Pacific University
1717 S. Chestnut Ave.
Fresno, CA 93702

Dear Dr. Kriegbaum:

I write to respond to your June 2, 2015, letter to the U.S. Department of Education, Office for
Civil Rights (OCR), in which you requested a religious exemption from Title IX of the
Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Fresno Pacific University
(University) of Fresno, California. Title IX prohibits discrimination on the basis of sex in any
education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an
educational institution controlled by a religious organization to the extent that application of
Title IX would be inconsistent with the controlling organization's religious tenets. Therefore,
such educational institutions are allowed to request an exemption from Title IX by identifying
the provisions of Title IX that conflict with a specific tenet of the religious organization. The
request must identify the religious organization that controls the educational institution and
specify the tenets of that organization and the provisions of the law and/or regulation that
conflict with those tenets.

Your request stated that throughout its history, the University "has always maintained its
sponsorship by the Conferences of Mennonite Brethren Churches, and now specifically the
Pacific District Conference of Mennonite Brethren Churches." Your request also stated that the
University "has always existed for the purpose of providing education consistent with the beliefs
of the Mennonite Brethren denomination." Your letter explains that the University's Articles of
Incorporation and Bylaws "provide that . . . persons who are elected and serve as delegates to the
Convention of the Pacific District Conference of Mennonite Brethren Churches . . . shall have
the authority to elect sixty percent (60%) of the voting members of the Board of Trustees of
Fresno Pacific University." Your letter further notes that the University's Bylaws "state that the
Confession of Faith of the Pacific District Conference of Mennonite Brethren Churches shall be
the Confession of Faith of Fresno Pacific University and that no amendment to the Articles of

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.

Dr. Richard Kriegbaum – page 2

Incorporation or Bylaws of Fresno Pacific University may be made which would conflict with the Confession of Faith of the Pacific District Conference of Mennonite Brethren Churches."

Your letter requests a religious exemption from the provisions of Title IX "to the extent that they are interpreted to address gender identity discrimination and to the extent that they restrict the University's freedom to enforce its Values and Behavioral Standards statement and otherwise conduct Fresno Pacific University in accordance with the Confession of Faith." In support of this request you cite to the Confession of Faith of the United States Conference of Mennonite Brethren Churches, which states that "God created them [humans] male and female in the image of God. ... Disciples maintain sexual purity and marital faithfulness and reject immoral premarital and extramarital relationships and all homosexual practices. ... Marriage is a covenant relationship intended to unite a man and a woman for life. At creation, God designed marriage for companionship, sexual union and the birth and nurture of children. Sexual intimacy rightfully takes place only within marriage." Your letter also cites to the University's Values and Behavioral Standards statement, by which all students are required to abide, and which provides that "[p]hysical intimacy is reserved for individuals within a marriage covenant. Cohabitation with a boyfriend/girlfriend, or members of the opposite sex, outside of the marriage relationship is prohibited. Certain sexual behaviors are prohibited. These include but are not limited to: fornication, adultery, and same-sex romantic relations." Your letter explains that the University "maintains gender-specific housing and allows members of one gender to be present in residence halls of the other only during specified hours and then only with the door remaining open."

You state that, for these reasons, the University is requesting an exemption from "Title IX and the following regulations (in their current or future forms) to the extent that they are interpreted to address gender identity discrimination and to the extent that they restrict the University's freedom to enforce its Values and Behavioral Standards statement and otherwise conduct Fresno Pacific University in accordance with the Confession of Faith:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preferences in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(governing education programs or activities)
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.35 (governing access to institutions of vocational education);
- 34 C.F.R. § 106.36 (governing counseling and use of appraisal and counseling materials);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students)
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services)

Dr. Richard Kriegbaum – page 3

- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-61 (governing employment).

The University is exempt from these provisions to the extent that they are interpreted to address gender identity discrimination and to the extent that they conflict with the University's Values and Behavioral Standards statement or the Confession of Faith.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
Office for Civil Rights
U.S. Department of Education



## UNITED STATES DEPARTMANT OF EDUCATION

### OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

May 23, 2014

Dr. Robin Baker
President
George Fox University
414 N. Meridian St.
Newberg, Oregon   97132

Dear Dr. Baker:

The purpose of this letter is to respond to your March 31, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for George Fox University (University) of Newberg, Oregon from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to educational institutions controlled by religious organizations to the extent that application of Title IX would be inconsistent with the institution's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University, which is owned by the Northwest Yearly Meeting of Friends (part of the Quaker movement), is "a Christ-centered community" that is "committed to providing a Christian education." You note that four of the University's seven Board of Trustees members must be Friends. You state that the University's biblical belief is that human beings are created male and female, and that the University "cannot in good conscience support or encourage an individual to live in conflict with biblical principles."

Your exemption request points to a recent OCR resolution agreement in which a school district agreed to allow a transgender male student to use the restroom, locker room, and living facilities consistent with the student's gender identity, and to play on boys' athletic teams. You explain that the University "would not be able to make similar accommodations consistent with [your] religious beliefs." You further state that, for these reasons, the University is requesting an exemption from Title IX and its

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Dr. Robin Baker, George Fox University
May 23, 2014
Page 2 of 2

implementing regulation to the extent that they prohibit discrimination based on gender
identity. We interpret this statement as a request for exemption from provisions
34 C.F.R. §§ 106.32 (governing housing), 106.33 (governing comparable facilities such
as restrooms and locker rooms), and 106.41 (governing athletics). The University is
exempt from these provisions to the extent that they require a recipient to treat students
consistent with their gender identity, but doing so would conflict with the controlling
organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the
requirements of Title IX and the regulation other than as stated above. In the event that
OCR receives a complaint against your institution, we are obligated to determine initially
whether the allegations fall within the exemption here granted. Also, in the unlikely event
that a complainant alleges that the practices followed by the institution are not based on
the religious tenets of the controlling organization, OCR is obligated to contact the
controlling organization to verify those tenets. If the organization provides an
interpretation of tenets that has a different practical impact than that described by the
institution, or if the organization denies that it controls the institution, this exemption will
be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not
hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
Office for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

October 30, 2015

Dr. Anthony W. Allen
President
Hannibal-LaGrange University
2800 Palmyra Road
Hannibal, MO 63401

Dear Dr. Allen:

I write to respond to your August 27, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Hannibal-LaGrange University (University) of Hannibal, Missouri from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explained that the University, "a Southern Baptist institution of higher education," "is controlled by a religious organization. That organization is the Missouri Baptist Convention . . . whose constituency is the cooperating Southern Baptist churches of Missouri." Your letter states that "[p]ursuant to the University's Charter, the Missouri Baptist Convention controls the University in part by exercising its right to elect the entire membership of the board of directors of the University, the governing body of the University."

Your letter requests a religious exemption from the provisions of Title IX "to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, and gender identity." In support of this request, you cite to The Baptist Faith and Message 2000, the most recent statement of faith adopted by the Convention. According to your letter, that statement of faith explains that the tenets of the Convention are that marriage is between one man and one woman and serves as

400 MARYLAND AVE., S.W., WASHINGTON, DC 20202-1100
www.ed.gov

Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.

Dr. Anthony W. Allen – page 2

the means for procreation, that God made people in male and female form, and that the "gift of gender is thus part of the goodness of God's creation."

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the University from "engaging in recruiting, admissions, and financial assistance under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, and sex outside marriage[; . . . from] subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions. . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, and gender identity in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preferences in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, or gender identity and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a

Dr. Anthony W. Allen – page 3

complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

April 24, 2015

William N. Ellis
President and CEO
Howard Payne University
1000 Fisk Street
Brownwood, Texas 76801-2715

Dear President Ellis:

I write to respond to your March 25, 2015, letter to the U.S. Department of Education, Office
for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the
Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Howard Payne University
(University) of Brownwood, Texas. Title IX prohibits discrimination on the basis of sex in any
education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an
educational institution controlled by a religious organization to the extent that application of
Title IX would be inconsistent with the controlling organization's religious tenets. Therefore,
such educational institutions are allowed to request an exemption from Title IX by identifying
the provisions of Title IX that conflict with a specific tenet of the religious organization. The
request must identify the religious organization that controls the educational institution and
specify the tenets of that organization and the provisions of the law and/or regulation that
conflict with those tenets.

Your request explained that the University "is controlled by Baptists," in particular, the Baptist
General Convention of Texas. Your letter states that "Every member of the board of trustees
must be a member of a Baptist church. The majority of the members of the board of trustees are
elected by the Convention."

Your letter requests a religious exemption "from provisions of Title IX to the extent application
of those provisions would not be consistent with the religious tenets of the Baptist General
Convention of Texas . . . regarding marriage, sex outside of marriage, sexual orientation, gender
identity (including but not limited to transgender status), pregnancy, and abortion."

In support of this request, you state that "Messengers to the Convention's annual meetings have
reaffirmed the view of Scripture on the sacredness and dignity of all human life, both born and

400 MARYLAND AVE. S.W. WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.

William N. Ellis – page 2

unborn, and supported legislation prohibiting abortion except to save the life of the mother or in cases of incest or rape." You also cite to a Resolution on Transgender Issues that the Executive Board of the Convention adopted in February 2015 that, according to your letter, states that "gender is based on biological attributes and is seen as a gift from God and immutable" and that the Convention affirms "that in creation God made male and female as biological gender assignment." Finally, you cite to the Baptist Faith and Message, adopted by the Convention in 1988. According to your letter, that statement of faith states that "Marriage is the uniting of one man and one woman" and that it provides "the channel for sexual expression according to biblical standards, and the means for procreation of the human race."

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the College from "engaging in recruiting and admissions under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, sex outside marriage, pregnancy and abortion; . . . [f]rom subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions. . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, gender identity, pregnancy and abortion in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions);

William N. Ellis – page 3

- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marriage status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

April 29, 2015

David E. Potts
President
Judson College
302 Bibb Street
Marion, AL 36756

Dear President Potts:

I write to respond to your February 17, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Judson College (College) of Marion, Alabama, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explained that the College, "a Southern Baptist institution of higher education," "is controlled by a religious organization. That organization is the Alabama Baptist State Convention." Your letter enclosed a copy of the College's charter, which states that the College is "a distinctly Christian Liberal Arts College for Women. As an entity of the Alabama Baptist State Convention, Judson affirms its denominational loyalty, and accepts its responsibility to its Baptist constituency and to the total community and state." (Article III, Section 1(a)). The charter further explains that "[t]o be nominated for the office of trustee, a member must be in good standing of a cooperating Alabama Baptist church." (Article V, Section A). You also enclosed a copy of the College's bylaws, which state that the "management of the College shall be vested in a Board of Trustees consisting of not more than 32 rotating members plus such other honorary life members as shall be elected by the Alabama Baptist State Convention." (Article I, Section 1).

Your letter requests a religious exemption from the provisions of Title IX "to the extent application of those provisions would not be consistent with the Convention's religious tenets

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

David E. Potts– page 2

regarding marriage, sex outside of marriage, sexual orientation, gender identity, pregnancy, and abortion." In support of this request, you cite to The Baptist Faith and Message 2000, the most recent statement of faith adopted by the Convention. According to your letter, that statement of faith explains that the tenets of the Convention are that marriage is between one man and one woman and serves as the means for procreation, that God made man in male and female form, and that the "gift of gender is thus part of the goodness of God's creation." You further cite the Convention's belief that one should "speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death."

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the College from "engaging in recruiting and admissions under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, sex outside marriage, pregnancy, and abortion[; . . .] from subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions. . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, the College is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, gender identity, pregnancy, and abortion in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

David E. Potts– page 3

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

July 31, 2015

Dr. Rick Brewer
President
Louisiana College
1140 College Drive
Box 583
Pineville, LA 71359

Dear President Brewer:

I write to respond to your July 17, 2015, letter to the U.S. Department of Education, Office for
Civil Rights (OCR), in which you requested a religious exemption for Louisiana College
(College) of Pineville, Louisiana, from Title IX of the Education Amendments of 1972 (Title
IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education
program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an
educational institution controlled by a religious organization to the extent that application of
Title IX would be inconsistent with the controlling organization's religious tenets. Therefore,
such educational institutions are allowed to request an exemption from Title IX by identifying
the provisions of Title IX that conflict with a specific tenet of the religious organization. The
request must identify the religious organization that controls the educational institution and
specify the tenets of that organization and the provisions of the law or regulation that conflict
with those tenets.

Your request explained that the College is "affiliated with the Louisiana Baptist Convention."
According to your letter, the College's Articles of Incorporation provide that "[t]he college is
governed and controlled by its Board of Trustees, which consists of thirty-three members, who
are elected by the Louisiana Baptist Convention . . . These elected members of the Board are
members in good standing of a Baptist church in Louisiana cooperating with the Louisiana
Baptist Convention." Your letter also states that "[t]he college follows biblical principles in its
policies and practices applicable to Christian education, and to its students and employees."

Your letter requests an exemption from the provisions of Title IX to the extent they prohibit
discrimination based on marital status, sex outside of marriage, sexual orientation, gender
identity, pregnancy, or abortion so that the College "may make decisions consistent with its
religious beliefs and principles in regard to its students and employees." In support of this

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

Dr. Rick Brewer – page 2

request, you state that the College follows the "teachings of the Bible and the beliefs of the Baptist Church" and refer to The Baptist Faith and Message as the College's statement of faith. According to your request, these teachings and beliefs provide "that God created two sexes, male and female; that marriage is between one man and one woman for a lifetime; and that extramarital sex, premarital sex, and the practice of homosexuality are sinful behaviors, and therefore prohibited." Your letter explains that "employees are expected to conduct themselves in a manner consistent with Louisiana College's Christian values. As such, employment of someone who identifies as being of the opposite sex from their birth gender and who expresses that identification . . . is against the college's religious beliefs." Your letter further explains that "[t]he college's religious beliefs prohibit pre-marital sex and elective abortion." Finally, your letter states that "if students and/or employees exhibit behavior, which is not in keeping with the College's mission and vision, then the College may impose sanctions up to, and including, expulsion from the college or termination of employment."

You state that, for these reasons, the College is requesting an exemption from the following regulatory provisions so that "the College may make decisions consistent with its religious beliefs and principles in regard to its students and employees:"

- 34 C.F.R. § 106.21(b)(1)(iii) (governing admission);
- 34 C.F.R. § 106.21(c) (governing admission);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51(a) (governing employment);
- 34 C.F.R. § 106.51(b)(6) (governing employment); and
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions).

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical

Dr. Rick Brewer – page 3

impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

(b)(6)

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

October 13, 2015

Dr. Lee Royce
President
Mississippi College
Box 4001
101 Nelson Hall
Clinton, MS 39058

Dear Dr. Royce:

I write to respond to your September 11, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Mississippi College (College) of Clinton, Mississippi from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explained that the College, "a Southern Baptist institution of higher education," "is controlled by a religious organization. That organization is the Mississippi Baptist Convention . . . whose constituency is the cooperating Southern Baptist churches of Mississippi." Your letter states that "[p]ursuant to the College's Charter, the Mississippi Baptist Convention controls the College by electing the College's board of trustees."

Your letter requests a religious exemption from the provisions of Title IX "to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, gender identity, pregnancy and abortion." In support of this request, you cite to the Convention's religious authority, the Bible. According to your letter, that Bible teaches that marriage is between one man and one woman and serves as the means for procreation and that "[c]hildren, from the moment of conception, are a blessing and heritage from the Lord." Your letter further states that the Convention has declared that "[t]he union of one man and one woman is the only form of marriage prescribed in

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Dr. Lee Royce – page 2

the Bible . . . [t]he Bible affirms that all human life, both born and preborn, is a person bearing the image of God"; and "God's design was the creation of two distinct and complementary sexes, male and female."

You explain that it would not be consistent with the Convention's religious tenets for the College to comply with Title IX to the extent that it prohibits the College from "engaging in recruiting, admissions, and financial assistance under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, pregnancy, abortion, and sex outside marriage[; . . . from] subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions. . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, the College is requesting an exemption from the following regulatory provisions "to the extent that the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, pregnancy, abortion, and gender identity in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preferences in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, pregnancy, abortion, and gender identity and compliance would conflict with the controlling organization's religious tenets.

Dr. Lee Royce – page 3

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

May 4, 2015

Randall J. Pannell
Acting CEO and Vice President of Academic Affairs
North Greenville University
P.O. Box 1892
Tigerville, SC  29688

Dear Mr. Pannell:

I write to respond to your February 9, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for North Greenville University (University) of Tigerville, South Carolina, from Title IX of the Education Amendments of 1972 (Title IX). 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explained that the University is "governed and controlled by its Board of Trustees, which consists of twenty-five members who are elected by the South Carolina Baptist Convention." Your letter enclosed a copy of the University's Amended and Restated Articles of Incorporation, which also states that the University's trustees "shall be appointed by the South Carolina Baptist Convention." (Section 9). You also attach the University's 2014-2015 Catalogue, which states that the University is "[a]ffiliated with and committed to the South Carolina Baptist Convention" and that an "education at North Greenville University is regarded as preparation for effective Christian service and witness. The Bible, as the inspired and infallible Word of God, is the solid foundation of the curriculum and the basis of the philosophy of education and of life."

Your letter requests a religious exemption from certain provisions of Title IX where compliance "would be inconsistent with the deeply held religious beliefs and practices of the South Carolina Baptist Convention and North Greenville University." In support of this request, you cite to the Southern Baptist Convention's statement of faith, The Baptist Faith and Message 2000, passages from the University's Student and Employee Handbooks, and the Bible. According to your letter, the statement of faith explains that the tenets of the Convention provide that "Christians should oppose … all forms of sexual immorality, including adultery, homosexuality, and pornography" and "speak on behalf of the unborn and contend for the sanctity of all human life from conception until natural death." You also cite the Southern Baptist Convention's statement on transgender identity, which according to your letter "affirm[s] God's good design that gender identity is determined by biological sex and not by one's self-perception." In further support of the request for exemption related to human sexuality, you state that "the teachings of the Bible and the beliefs of the Baptist Church, both of which are followed by the University, are that God

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Randall J. Pannell– page 2

created two sexes, male and female; that marriage is between one man and one woman; and that extramarital sex, premarital sex, and the practice of homosexuality are sinful behaviors, and are therefore prohibited."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent that they would require the University to act in a manner that is inconsistent with the Convention's religious tenets:

- 34 C.F.R. § 106.21(b)(iii) (governing different treatment on the basis of sex in admission);
- 34 C.F.R. § 106.21(c) (governing the consideration of marital or parental status in admission);
- 34 C.F.R. § 106.31(b)(4) (governing the use of different rules of behavior or sanctions based on sex);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing the use of different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51(a) (governing employment);
- 34 C.F.R. § 106.51(b)(6) (governing leaves of absence from employment for pregnancy, childbirth, false pregnancy, and termination of pregnancy); and
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions).

The University is exempt from these provisions to the extent that compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

August 18, 2014

Dr. David Alexander
President
Northwest Nazarene University
623 S. University Boulevard
Nampa, Idaho 83686

Dear Dr. Alexander:

The purpose of this letter is to respond to your July 29, 2014, letter to the U.S. Department of
Education, Office for Civil Rights (OCR), in which you requested a religious exemption for
Northwest Nazarene University (University) of Nampa, Idaho from Title IX of the Education
Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the
basis of sex in any education program or activity operated by a recipient of Federal financial
assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to
an educational institution controlled by a religious organization to the extent that application
of Title IX would be inconsistent with the controlling organization's religious tenets.
Therefore, such educational institutions are allowed to request an exemption from Title IX by
identifying the provisions of Title IX that conflict with a specific tenet of the religious
organization. The request must identify the religious organization that controls the
educational institution and specify the tenets of that organization and the provisions of the
law and/or regulation that conflict with those tenets.

Your request explained that the University "is grounded in the Wesleyan-Holiness tradition, and
is an educational expression of the Northwest region of the Church of the Nazarene." The letter
explains that the school is "assigned by the Church of the Nazarene to serve seven districts of the
denomination" and that its "Board of Trustees is elected from the members of the seven
districts." Your letter states that the University's Amended and Restated Articles of
Incorporation require all members of the University's Board of Trustees to be members of the
Church of Nazarene and that half of the Board members must be clergy. Your letter further
explains that the University's "faculty and staff are required to profess faith and are prohibited
from professing views not in harmony with the Articles of Faith of the Church of the Nazarene."
In addition, students are expected to maintain a lifestyle that is consistent with the directives and
guidelines established by the General Assemblies of the Church and published in the Church of
Nazarene Manual.

You state that the University and the Church of Nazarene's belief, based on biblical
interpretation, is that human beings are created male and female, and that the University

400 MARYLAND AVE, S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

Dr. David Alexander -- page 2

"reject[s] all attempts at construing sexuality or sexual identity by medically altering the human body . . . or . . . practicing behaviors characteristic of the opposite sex as morally objectionable and sinful." You refer to the Church of Nazarene's Manual as evidence of the Church's belief that homosexuality is a sin. Additionally, because the Manual states that the Church is opposed to abortion, the University also opposes the "intentional termination of a pregnancy absent a very few compelling circumstances."

Your exemption request points to a recent OCR resolution agreement in which a school district agreed to allow a transgender male student to use the restroom, locker room, and living facilities consistent with the student's gender identity, and to play on boys' athletic teams. You explain that the University "would not be able to make similar accommodations consistent with [its] religious beliefs and convictions." You further state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent that they prohibit discrimination based on gender identity: 34 C.F.R. §§ 106.31(b)(4) (governing different rules of behavior or sanctions); 106.32 (governing housing), 106.33 (governing comparable facilities such as restrooms and locker rooms), and 106.41 (governing athletics). The University is exempt from these provisions to the extent that they require a recipient to treat students consistent with their gender identity, but doing so would conflict with the controlling organization's religious tenets.

Your request also seeks a "religious exemption from any regulation prohibiting discrimination against a student on account of termination of pregnancy." We interpret that as a request for exemption from 34 C.F.R. § 106.40(b). The University is exempt from this provision to the extent that compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

December 16, 2014

David Wesley Whitlock
President
Oklahoma Baptist University
500 West University
OBU Box 61241
Shawnee, OK 74804

Dear President Whitlock:

The purpose of this letter is to respond to your November 24, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Oklahoma Baptist University (University) of Shawnee, Oklahoma from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University "is a Southern Baptist institution of higher education" and stated that it is controlled by the Baptist General Convention of the State of Oklahoma. Your letter enclosed a copy of the University's charter, which states that the University's purpose is "to encourage, support, provide, and maintain Christian education and to engage in Christian undertakings which are in keeping with the purpose of the Baptist General Convention of the State of Oklahoma." You also enclosed a copy of the University's bylaws, which state that the "Board of Trustees of the University shall consist of thirty Trustees who shall be elected by the Baptist General Convention of the State of Oklahoma." (Article II, Section 1.) The bylaws further state that the "President of the University must be an active member of a church affiliated with The Baptist General Convention of the State of Oklahoma." (Article V, Section 2.)

Your letter requests a religious exemption from the provisions of Title IX that "would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, gender identity, pregnancy, and abortion." In support of this request, you cite to The Baptist Faith and Message 2000, the most recent statement of faith adopted by the Convention. According to your letter, that statement of faith explains that the tenets of the Convention are that marriage is between one man and one woman and serves as the means for procreation, that God made man in male and female form, and that the "gift of gender is thus part of the goodness of God's creation." You further cite the Convention's belief that one should "speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death."

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

David Wesley Whitlock – page 2

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent that they prohibit discrimination based on marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



OCT 2 2 2014

John deSteiguer
President
Oklahoma Christian University
2501 E. Memorial Road
Edmond, OK 73013

The purpose of this letter is to respond to your September 5, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Oklahoma Christian University (the University) of Edmond, Oklahoma from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

Title IX and its implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to educational institutions controlled by religious organizations to the extent that application of Title IX would be inconsistent with the organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explains that the University is controlled by the Churches of Christ and that its "mission is to transform lives for Christian faith, scholarship and service." You state that each full-time faculty member must be a member in good standing of the Churches of Christ, and that inactive or token membership in the church is grounds for dismissal. Additionally, your letter references a requirement in the University's Articles of Incorporation that each member of the University's Board of Trustees must be "an active, faithful member, in good standing, of a local congregation of the Church of Christ."

Among the religious tenets followed by the University and its controlling organization (the Churches of Christ) is that "gender identity is given by God and is revealed in one's birth sex." You also state that the University, in compliance with the religious tenets of its controlling organization, adheres to the belief that "all sexual relations outside of a heterosexual marriage covenant are sin." Your letter cites to several Biblical passages in support of these tenets.

Based on these tenets, your letter seeks an exemption from Title IX and the following provisions of its implementing regulation to the extent that they prohibit discrimination on the basis of gender identity or sexual orientation:

EXHIBIT A

President John deSteiguer – page 2

- 34 C.F.R. § 106.21 (governing admissions);
- 34 C.F.R. § 106.23 (governing recruitment);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health insurance benefits and services);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.53 (governing recruitment and hiring of employees);
- 34 C.F.R. § 106.55 (governing job classification and structure);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment actions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination based on gender identity or sexual orientation or require a recipient to treat students consistent with their gender identity, but doing so would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and its implementing regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

December 22, 2014

Everett Piper
President
Oklahoma Wesleyan University
2201 Silver Lake Road
Bartlesville, OK 74006

Dear President Piper:

The purpose of this letter is to respond to your November 14, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Oklahoma Wesleyan University (University) of Bartlesville, Oklahoma from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University "was founded by The Wesleyan Church to provide higher education within a Christian environment for Wesleyan youth, and is owned and operated by The Wesleyan Church to this day."

Your letter requests a religious exemption from the provisions of Title IX that would "curtail the University's freedom to respond to transgender individuals in accordance with its religious convictions and those of The Wesleyan Church." In support of this request, you cite to The Wesleyan Church statement entitled "A Wesleyan View of Gender Identity and Expression." According to your letter, the statement sets forth The Wesleyan Church's tenets related to gender identity, specifically that "[g]ender differentiation is sacred." Your exemption request points to a recent OCR resolution agreement in which a school district agreed to allow a transgender male student to use the restroom, locker room, and living facilities consistent with the student's gender identity, and to play on boys' athletic teams. You explain that, to the extent that this agreement indicates that Title IX prohibits discrimination on the basis of gender identity, compliance "would be inconsistent with the religious tenets of [the University] and The Wesleyan Church."

Your letter also requests an exemption from the Title IX provisions related to abortion. In support of this request, you cite to The Wesleyan Church's statement on "Sanctity of Life." You explain that the University has adopted a "Statement on Human Life" that prohibits "all members of the [University] community from promoting or participating in any act of, or related to, aborting a child whether such a child is pre-birth or post-birth."

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

Everett Piper – page 2

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent that they prohibit discrimination based on gender identity or abortion:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing sex discrimination in education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. § 106.51-61 (governing employment).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

May 23, 2014

Robin Keith Dummer, Ed.D.
Interim President
Simpson University
2211 University View Drive
Redding, California  96003

Dear Dr. Dummer:

The purpose of this letter is to respond to your letter to the U.S. Department of
Education, Office for Civil Rights (OCR), in which you requested a religious
exemption for Simpson University (University) of Redding, California from Title IX
of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681.  Title IX
prohibits discrimination on the basis of sex in any education program or activity
operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not
apply to educational institutions controlled by religious organizations to the extent
application of Title IX would be inconsistent with the institution's religious tenets.
Therefore, such educational institutions are allowed to request an exemption from
Title IX by identifying the provisions of Title IX that conflict with a specific tenet of
the religious organization.  The request must identify the religious organization that
controls the educational institution and specify the tenets of that organization and the
provisions of the law and/or regulation that conflict.

Your request explained that the University, which is owned by and affiliated with the
Christian and Missionary Alliance denomination, is a Christ-centered learning
community and that its identity as a Christian institution is central to all its programs.
You state that the University's biblical beliefs allow only for heterosexual, biologically
determined male and female identities and that the University rejects any attempt by an
individual to change his or her gender identity as immoral and sinful.

You supplied information explaining that any individual who violates campus standards
regarding gender identity would be subject to discipline, including expulsion.  Your
exemption request points to a recent OCR resolution agreement in which a school district
agreed to allow a transgender male student to use the restroom, locker room, and living
facilities consistent with the student's gender identity, and to play on boys' athletic
teams.  You explain that the University "would not be able to make similar

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

Dr. Robin Keith Dummer, Simpson University
May 23, 2014
Page 2 of 2

accommodations consistent with [your] religious beliefs." You further state that, for
these reasons, the University is requesting an exemption from Title IX and its
implementing regulation to the extent that they prohibit discrimination based on gender
identity. We interpret these statements as a request for exemption from provisions
34 C.F.R. §§ 106.31(b)(4) (governing different rules of behavior or sanctions), 106.32
(governing housing), 106.33 (governing comparable facilities such as restrooms and
locker rooms), and 106.41 (governing athletics). The University is exempt from these
provisions to the extent that they require a recipient to treat students consistent with their
gender identity, but doing so would conflict with the controlling organization's religious
tenets.

Please note that this letter should not be construed to grant exemption from the
requirements of Title IX and the regulation other than as stated above. In the event that
OCR receives a complaint against your institution, we are obligated to determine initially
whether the allegations fall within the exemption here granted. Also, in the unlikely event
that a complainant alleges that the practices followed by the institution are not based on
the religious tenets of the controlling organization, OCR is obligated to contact the
controlling organization to verify those tenets. If the organization provides an
interpretation of tenets that has a different practical impact than that described by the
institution, or if the organization denies that it controls the institution, this exemption will
be rescinded.

I hope this letter responds fully to your request. I regret the delay in responding to your
original request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
Office for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

March 24, 2015

Todd S. Voss
President
Southern Wesleyan University
907 Wesleyan Drive
P.O. Box 1020
Central, South Carolina 29630

Dear President Voss:

The purpose of this letter is to respond to your January 20, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Southern Wesleyan University (University) of Central, South Carolina. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University "was founded by The Wesleyan Church to provide higher education within a Christian environment for Wesleyan youth, and is owned and operated by The Wesleyan Church to this day." Your letter references the University's website that states that the University "is a sponsored higher education institution of The Wesleyan Church."[1] Your letter also references the website of The Wesleyan Church where the University is listed as one of five Wesleyan institutions in the United States and Canada.[2]

Your letter requests a religious exemption from provisions of Title IX that would "curtail the University's freedom to respond to transgender individuals in accordance with its religious convictions and those of The Wesleyan Church." In support of this request, you cite to The Wesleyan Church's statement entitled "A Wesleyan View of Gender Identity and Expression." According to your letter, the statement sets forth The Wesleyan Church's tenets related to gender identity, specifically that "[g]ender differentiation is sacred." Your exemption request points to a recent OCR resolution agreement in which a school district agreed to allow a transgender male student to use the restroom, locker room, and living facilities consistent with the student's gender identity, and to play on boys' athletic teams. You explain that, to the extent that this agreement indicates that Title IX prohibits discrimination on the basis of gender identity, compliance "would be inconsistent with the religious tenets of [the University] and The Wesleyan Church."

---

[1] Southern Wesleyan University, http://www.swu.edu/about-swu/
[2] The Wesleyan Church, Wesleyan Colleges and Universities, http://www.wesleyan.org/college

400 MARYLAND AVE, S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Todd S. Voss – page 2

Your letter also requests an exemption from the Title IX provisions related to abortion. In support of this request, you cite to The Wesleyan Church's statement on "Sanctity of Life." You explain that the University has adopted a "Statement on Human Life" that "prohibit[s] all members of the [University] community from promoting or participating in any act of, or related to, aborting a child whether such a child is pre-birth or post-birth."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent that they prohibit discrimination based on gender identity or abortion:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing sex discrimination in education programs and activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. § 106.51-61 (governing employment).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

July 29, 2015

C. Pat Taylor
President
Southwest Baptist University
1600 University Ave.
Bolivar, MO 65613

Dear President Taylor:

I write to respond to your July 8, 2015, letter to the U.S. Department of Education, Office for
Civil Rights (OCR), in which you requested a religious exemption for Southwest Baptist
University (University) of Bolivar, Missouri from Title IX of the Education Amendments of
1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any
education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an
educational institution controlled by a religious organization to the extent that application of
Title IX would be inconsistent with the controlling organization's religious tenets. Therefore,
such educational institutions are allowed to request an exemption from Title IX by identifying
the provisions of Title IX that conflict with a specific tenet of the religious organization. The
request must identify the religious organization that controls the educational institution and
specify the tenets of that organization and the provisions of the law or regulation that conflict
with those tenets.

Your request explained that the University, "a Southern Baptist institution of higher education,"
"is controlled by the Missouri Baptist Convention . . . whose constituency is the cooperating
Baptist churches of Missouri." Your letter states that "[p]ursuant to the University's Charter, the
Missouri Baptist Convention controls the University in part by exercising its right to elect the
entire membership of the board of directors of the University, the governing body of the
University."

Your letter requests a religious exemption from the provisions of Title IX "to the extent
application of those provisions would not be consistent with the Convention's religious tenets
regarding marriage, sex outside of marriage, sexual orientation, and gender identity." In support
of this request, you cite to The Baptist Faith and Message 2000, the most recent statement of
faith adopted by the Convention. According to your letter, that statement of faith explains that
the tenets of the Convention are that marriage is between one man and one woman and serves as
the means for procreation, that God made people in male and female form, and that the "gift of
gender is thus part of the goodness of God's creation."

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.

C. Pat Taylor – page 2

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the University from "engaging in recruiting, admissions, and financial assistance under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, and sex outside marriage[; . . . from] subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions. . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, and gender identity in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preferences in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, or gender identity and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges

C. Pat Taylor ~ page 3

that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

(b)(6)

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

JUN 2 7 2016

Dr. Brent Ellis
President
Spring Arbor University
106 E. Main St.
Spring Arbor, MI  49283

Dear Dr. Ellis:

The purpose of this letter is to respond to your correspondence to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Spring Arbor University (University) of Spring Arbor, Michigan from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to educational institutions controlled by a religious organization to the extent application of Title IX would be not be consistent with the religious tenets of such organization. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict.

Your request explained that the University is "an evangelical Christian university affiliated with the Free Methodist Church" that "emphasizes Christian principles of religion in its community and campus life." Your letter states that students are required to attend chapel regularly and must pass Christian Perspective courses in order to graduate. According to the University's Articles of Incorporation, the majority of members of the University's Board of Trustees must be members of the Free Methodist Church. Your letter explains that "the University is under the control of the Free Methodist denomination through the Church members who serve as Trustees and have the majority voice on the Board, and through the President of the University, who must be a member of the Free Methodist Church."

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Dr. Brent Ellis, President
Spring Arbor University
June 24, 2014
Page **2** of **3**

You state that the University's Code of Conduct is based on Biblical principles and the tenets of the Free Methodist Church, and that all students and employees are required to follow the Code of Conduct or risk sanctions, including dismissal from the University or termination of employment. Among the religious tenets followed by the University and its controlling organization (the Free Methodist Church) are "that God created two sexes, male and female" and that a person cannot change his or her sex assigned at birth. You also assert that the University, in compliance with the religious tenets of its controlling organization, "adhere[s] to the requirement of heterosexuality" and does not condone premarital cohabitation or extramarital sexual relationships.

Your letter states that, because of these tenets, a transgender student would not be permitted to live in University housing, play on athletic teams, share restrooms, or use locker rooms with individuals of the transgender student's gender identity. Your letter further states that transgender individuals would not be eligible for employment with the University. Your letter also provides that transgender individuals "would not be permitted to engage in dating or sexual activity with a person of their birth sex, because this behavior is considered to be homosexual in nature, based upon the University's religious beliefs." On this basis, your letter requests an exemption from Title IX and the following provisions of its implementing regulation to the extent that these provisions prohibit discrimination on the basis of gender identity or sexual orientation:

- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.41 (governing athletics); and
- 34 C.F.R. § 106.51 (governing employment).

The University is exempt from the provisions listed above to the extent that they prohibit discrimination based on gender identity or sexual orientation or require a recipient to treat students consistent with their gender identity, and compliance would conflict with the controlling organization's religious tenets.

Additionally, your letter states the tenets of the Free Methodist Church "also prohibit elective abortion, pre-marital sex, extra-marital sex, and homosexual behavior, for students and employees." On this basis, you request an exemption from Title IX and the following provisions of its implementing regulation to the extent that they would require the University to "retain pregnant unmarried employees or employees who elect to terminate their pregnancy, to admit pregnant unmarried students, to retain unmarried students who elect to terminate their pregnancy, to allow unmarried students of the opposite sex to live together, to retain pregnant, unmarried students and to allow them to live in University housing, and to allow homosexual students to live together":

- 34 C.F.R. § 106.21(b)(iii) (governing differential treatment on the basis of sex);
- 34 C.F.R. § 106.21(c) (governing admissions prohibitions on the basis of marital or parental status);

Dr. Brent Ellis, President
Spring Arbor University
June 24, 2014
Page **3** of **3**

- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.51(a) (governing employment);
- 34 C.F.R. § 106.51(b)(6) (governing the granting of pregnancy-related leave); and
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions).

The University is exempt from the provisions listed immediately above, to the extent that they require the University to treat pregnancy, abortion, sexual orientation, and pre-marital or extra-marital sexual relationships in a manner that is inconsistent with the religious tenets of its controlling organization.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and its implementing regulations other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
Office for Civil Rights
U.S. Department of Education

cc: Diane Y. Bower, Esq., Marcoux Allen



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

March 24, 2015

D. Gregory Main
President
St. Gregory's University
1900 West MacArthur Street
Shawnee, Oklahoma 74804

Dear President Main:

The purpose of this letter is to respond to your March 3, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for St. Gregory's University (University) of Shawnee, Oklahoma. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University is "owned by the St. Gregory's Abbey, a community of Catholic Benedictine monks."

Your letter requests exemption from provisions of Title IX "to the extent they are interpreted to reach gender identity discrimination." In support of this request, you cite to the Catechism of the Catholic Church, which, according to your letter, states that "'Being man' or 'being woman' is a reality which is good and willed by God." Your exemption request points to a recent OCR resolution agreement in which a school district agreed to allow a transgender male student to use the restroom, locker room, and living facilities consistent with the student's gender identity, and to play on boys' athletic teams. You explain that, to the extent that this agreement indicates that Title IX prohibits discrimination on the basis of gender identity, compliance "would be inconsistent with the religious tenets of St. Gregory's."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent that they prohibit discrimination on the basis of gender identity:

- 34 C.F.R. § 106.21 (governing admissions);
- 34 C.F.R. § 106.22 (governing preference in admissions);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing sex discrimination in education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

D. Gregory Main – page 2

- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. § 106.51-106.61 (governing employment).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

January 8, 2015

Dr. Jules Glanzer
President
Tabor College
400 South Jefferson
Hillsboro, KS 67063

Dear Dr. Glanzer:

The purpose of this letter is to respond to your December 3, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Tabor College (College) of Hillsboro, Kansas. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request stated that the College was founded "by members of the Mennonite Brethren and Krimmer Mennonite Brethren faiths" and that it "has always existed for the purpose of providing education consistent with the beliefs of the Mennonite Brethren denomination." Your letter explains that the College's Bylaws state that "the corporate owners of the college are 'the church congregations which are members of the Central District Conference, the Southern District Conference, the Latin American District Conference and the North Carolina District Conference of Mennonite Brethren Churches,'" and require that "a majority of the Board of Directors be elected by these four district conferences." Your letter further notes that the Bylaws of the College require that any "doctrinal statement or other rules and/or regulations issued by the Corporation or the College shall be in complete harmony with" the Confession of Faith of the United States Conference of the Mennonite Brethren Churches (Confession of Faith).

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.

Dr. Jules Glanzer – page 2

Your exemption request points to a recent OCR resolution agreement in which a school district agreed to allow a transgender male student to use the restroom, locker room, and living facilities consistent with the student's gender identity, and to play on boys' athletic teams. You explain that "[b]ecause of its deeply held faith-based convictions regarding the distinctiveness of males and females, Tabor College would not be able to provide the kind of accommodation required" in that resolution agreement. You state that, for these reasons, the University seeks an exemption from Title IX to the extent that Title IX prohibits discrimination based on gender identity. Specifically, you cite to the Confession of Faith, which states that "God created them [humans] male and female in the image of God." Your letter states that the College cannot "support or encourage an individual to live in conflict with biblical principles in any area, including gender and gender identity." We interpret these statements as a request for exemption from provisions 34 C.F.R. §§ 106.32 (governing housing), 106.33 (governing comparable facilities such as restrooms and locker rooms), and 106.41 (governing athletics). The College is exempt from these provisions to the extent that they require a recipient to treat students consistent with their gender identity, but doing so would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

July 31, 2015

Robert M. Myers
President
Toccoa Falls College
P.O. Box 800777
107 Kincaid Drive
Toccoa Falls, GA 30598

Dear President Myers:

I write to respond to your July 8, 2015, letter to the U.S. Department of Education, Office for
Civil Rights (OCR), in which you requested a religious exemption for Toccoa Falls College
(College) of Toccoa Falls, Georgia from Title IX of the Education Amendments of 1972 (Title
IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education
program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an
educational institution controlled by a religious organization to the extent that application of
Title IX would be inconsistent with the institution's religious tenets. Therefore, such educational
institutions are allowed to request an exemption from Title IX by identifying the provisions of
Title IX that conflict with a specific tenet of the religious organization. The request must
identify the religious organization that controls the educational institution and specify the tenets
of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explains that the College is an affiliate college of the Christian and Missionary
Alliance (C&MA) and, as such, "adheres doctrinally to the beliefs of the denomination."
According to your letter, the College requires all members of the College community, including
students and faculty, to adhere to its policy on the Faith Community and Mission of the College
(Policy). The Policy, which was included with your letter, explains that the College "has
adopted the statement of faith set forth in the C&MA Manual." According to the Policy, the
College's representatives are "expected to (i) model these [C&MA's] biblical beliefs and
standards for others, (ii) perform all of their responsibilities as a service to God and (iii) comply
with the following obligations: . . . affirm their agreement with the C&MA's statement of faith
and other biblical beliefs[, . . .] endeavor to conduct themselves in a manner that affirms biblical
standards of conduct in accordance with theirs and the C&MA's biblical beliefs . . . [, and] be
ready, willing, and able to lead or contribute to distinctly Christian activities such as worship or
prayer services." The Policy further provides that the College may dismiss a representative from
his or her position if the representative does not comply with these obligations.

Your exemption request states that the Policy provides that "God created human beings, male

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

Robert M. Myers – page 2

and female . . . As such, students are not to adopt a gender identity different from the one gifted them by their Creator. This gendered ordering of creation is to be accepted, honored, and reflected in sexual intimacy." Your request explains that "compliance with Title IX, as interpreted by ED OCR to reach transgender 'discrimination,' would be inconsistent with the religious tenets of Toccoa Falls College."

Your request also points to a recent EEOC determination letter in which "the EEOC has begun openly declaring that the ban on 'sex' discrimination in Title VII of the Civil Rights Act of 1964 also forbids discrimination on the basis of 'sexual orientation.'" You explain that if Title IX were "interpreted by ED OCR to reach sexual orientation 'discrimination,' [compliance] would also be inconsistent with the religious tenets of Toccoa Falls College."

Your exemption request also states that the College's policies provide for the sanctity of human life. According to your letter, the policies state that the College "subscribes to the biblical belief that all life is sacred from conception to death . . . The college accordingly believes that no procedures should be performed for the primary objective of terminating a pregnancy . . . except in rarest circumstances where other biblical, moral principles prevail, such as where it is medically impossible to save the life of both the mother and the child. The college's beliefs further prohibit paying for or otherwise facilitating such procedures."

You state that, for these reasons, the College is requesting an exemption from the following regulatory provisions "to the extent they are interpreted to reach gender identity or sexual orientation discrimination, and to the extent they restrict the College's freedom to apply and enforce its beliefs and policy regarding human life:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preferences in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling and use of appraisal and counseling materials);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-61 (governing employment).

EXHIBIT A

Robert M. Myers – page 3

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity or sexual orientation, or restrict the College's freedom to apply and enforce its beliefs and policy regarding human life and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution. or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

(b)(6)

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

March 24, 2015

Samuel W. Oliver, Ph.D.
President
Union University
1050 Union University Drive
Jackson, Tennessee 38305-3697

Dear President Oliver:

The purpose of this letter is to respond to your January 19, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Union University (University) of Jackson, Tennessee. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University "is controlled by a religious organization. That organization is the Tennessee Baptist Convention." Your letter states that "the trustees of Union University are elected by and responsible to the Tennessee Baptist Convention." Your letter also references the University's Bylaws (2.1.1. Control and Management) which state "[t]he Charter vests the control of the affairs of Union University in its Board of Trustees, which consists of not fewer than eighteen nor more than thirty-six in number, elected by the Tennessee Baptist Convention."

Your letter requests a religious exemption "from provisions of Title IX to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, gender identity (including but not limited to transgendered status), pregnancy, and abortion." In support of this request, you cite to The Baptist Faith and Message 2000, the most recent statement of faith affirmed by the Tennessee Baptist Convention. According to your letter, that statement of faith explains that the tenets of the Convention are that marriage is between one man and one woman and serves as the means for procreation, that God made man in male and female form, and that the "gift of gender is thus part of the goodness of God's creation." You further cite the Convention's belief that one should "speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death."

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the College from "engaging in recruiting and admissions under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

Samuel W. Oliver -- page 2

present practices regarding marriage, sex outside marriage, pregnancy and abortion; . . . from subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions. . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, The University is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, gender identity, pregnancy and abortion in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions);
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marriage status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

March 24, 2015

Dr. Randy O'Rear
President and CEO
University of Mary Hardin-Baylor
900 College Street
Belton, Texas 76513

Dear Dr. O'Rear:

The purpose of this letter is to respond to your January 29, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for the University of Mary Hardin-Baylor (University) of Belton, Texas. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University is "controlled by a religious organization, the Baptist General Convention of Texas." Your request stated that pursuant to the University's Restated Certificate of Formation, "the Baptist General Convention of Texas controls the University in part by exercising its right to select a majority of the board of directors of the University, the governing body of the University."

Your letter requests exemption from provisions of Title IX "to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, gender identity (including but not limited to transgender status), pregnancy, and abortion." In support of this request, you cite *On Sexual Ethics*, a resolution adopted by the Convention in 2009. According to your letter, that resolution states that "the Bible teaches that the idea for sexual behavior is the marital union between husband and wife and that all other sexual relations – whether premarital, extramarital, or homosexual – are contrary to God's purposes and thus sinful." You further cite the Convention's religious belief that "gender is based on biological attributes and is seen as a gift from God and immutable." Finally, you cite to the Baptist Faith and Message, which, according to your letter, states that "[m]arriage is the uniting of one man and one woman."

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the University from "engaging in recruiting and admissions under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, sex outside marriage, pregnancy, and abortion; [... f]rom subjecting

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Dr. Randy O'Rear - page 2

students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions . . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions to the extent that they "would require the institution to treat marriage, sex outside of marriage, homosexuality, gender identity (including but not limited to transgender status), pregnancy and abortion in a manner that is inconsistent with the religious tenets" of the Baptist General Convention of Texas:

- 34 C.F.R. § 106.21 (governing admissions);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31 (b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

May 4, 2015

Mark Foley, Ph.D.
President
University of Mobile
5735 College Parkway
Mobile, AL 36613

Dear Dr. Foley:

I write to respond to your March 18, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for the University of Mobile (University) of Mobile, Alabama, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explained that the University, "a Southern Baptist institution of higher education," "is controlled by a religious organization. That organization is the Alabama Baptist State Convention." Your letter states that "pursuant to the University's Charter and Bylaws, the Alabama Baptist State Convention controls the University in part by exercising its right to select the entire membership of the board of directors of the University, the governing body of the University."

Your letter requests a religious exemption from the provisions of Title IX "to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, gender identity, pregnancy, and abortion." In support of this request, you cite to The Baptist Faith and Message 2000, the most recent statement of faith adopted by the Convention. According to your letter, that statement of faith explains that the tenets of the Convention are that marriage is between one man and one woman and serves as the means for procreation, that God made people in male and female form, and that the "gift of gender is thus part of the goodness of God's creation." You further cite the

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

EXHIBIT A

Dr. Mark Foley – page 2

Convention's belief that one should "speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death."

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the University from "engaging in recruiting and admissions under a policy called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, sex outside marriage, pregnancy, and abortion[; . . .] from subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions. . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, gender identity, pregnancy, and abortion in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If

Dr. Mark Foley – page 3

the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request.  If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

March 24, 2015

Dr. Larry L. Cockrum
Chief Executive Officer and President-Elect
University of the Cumberlands, Inc.
6191 College Station Drive
Williamsburg, KY 40769

Dear Dr. Cockrum:

The purpose of this letter is to respond to your January 19, 2015, letter to the U.S. Department of
Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of
the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for University of the Cumberlands, Inc.
(University) of Williamsburg, Kentucky. Title IX prohibits discrimination on the basis of sex in any
education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an
educational institution controlled by a religious organization to the extent that application of Title IX
would be inconsistent with the controlling organization's religious tenets. Therefore, such educational
institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX
that conflict with a specific tenet of the religious organization. The request must identify the religious
organization that controls the educational institution and specify the tenets of that organization and the
provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University is "controlled by a religious organization. That organization is
the Kentucky Baptist Convention." Your letter explains that "pursuant to the University's Charter and
Bylaws, the Kentucky Baptist Convention controls the University in part by exercising its right to select
the entire elected membership of the board of directors of the University, the governing body of the
University."

Your letter requests a religious exemption from the provisions of Title IX "to the extent application of
those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex
outside of marriage, sexual orientation, gender identity, pregnancy, and abortion." In support of your
request, you cite The Baptist Faith and Message 2000, the most recent statement of faith adopted by the
Convention. According to your letter, that statement of faith explains that the tenets of the Convention
are that marriage is between one man and one woman and serves as the means for procreation, that God
made man in male and female form, and that the "gift of gender is thus part of the goodness of God's
creation." You further cite the Convention's belief that one should "speak on behalf of the unborn and
contend for the sanctity of all human life from conception to natural death."

You explain that it would not be consistent with the Convention's religious tenets for the University to
comply with Title IX to the extent that it prohibits the University from "engaging in recruiting and
admissions under a policy which called for the consideration of an applicant for admission's sexual
orientation, transgendered status, marital status, past and present practices regarding marriage, sex outside
marriage, pregnancy and abortion; [... from] subjecting students to rules of behavior, sanctions, or other
treatment because of these student characteristics[; or from] making all employment decisions...in a

400 MARYLAND AVE, S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

EXHIBIT A

Dr. Larry L. Cockrum – page 2

manner which takes into consideration these employee characteristics."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, gender identity, pregnancy and abortion in a manner that is inconsistent with the religious tenets" of the Kentucky Baptist Convention:

- 34 C.F.R. § 106.21 (governing admissions);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marriage status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

December 22, 2014

Dr. Thomas O. Jones
President
Williams Baptist College
P.O. Box 3733
Walnut Ridge, AR 72476

Dear Dr. Jones:

The purpose of this letter is to respond to your November 17, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Williams Baptist College (College) of Walnut Ridge, Arkansas. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the College "is owned and operated by a religious organization. That organization is the Arkansas Baptist State Convention." Your letter enclosed a copy of the College's Constitution and Bylaws. Article II of the Constitution designates the Arkansas Baptist State Convention as the College's sole member and Article IV provides that the Arkansas Baptist State Convention will select the entire elected membership of the Board of Trustees, the governing body of the College.

Your letter requests a religious exemption from provisions of Title IX "to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

Dr. Thomas O. Jones – page 2

marriage, sex outside of marriage, sexual orientation, gender identity, pregnancy and abortion." In support of this request, you cite The Baptist Faith and Message 2000, the most recent statement of faith adopted by the Convention. According to your letter, that statement of faith explains that the tenets of the Convention are that marriage is between one man and one woman and serves as the means for procreation, that God made man in male and female form, and that the "gift of gender is thus part of the goodness of God's creation." You further cite the Convention's belief that one should "speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death."

You explain that it would not be consistent with the Convention's religious tenets for the College to comply with Title IX to the extent that it prohibits the College from "engaging in recruiting and admissions under a policy which called for the consideration of an applicant for admission's sexual orientation, transgendered status, marital status, past and present practices regarding marriage, sex outside marriage, pregnancy and abortion; ... from subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics; [or] from making employment decisions... in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, the College is requesting an exemption from the following regulatory provisions to the extent that they prohibit discrimination based on marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

Dr. Thomas O. Jones -- page 3

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of marital status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education



**1640 RHODE ISLAND AVE., N.W.**
**WASHINGTON, D.C. 20036**
**800-777-4723**
**WWW.HRC.ORG**

EXHIBIT A