

**MEMORANDUM**                                      March 26, 2021

**TO:**       Federal Agency Civil Rights Directors and General Counsels

**FROM:**     Principal Deputy Assistant Attorney General Pamela S. Karlan   *PSK*
              Civil Rights Division

**SUBJECT:**  Application of *Bostock v. Clayton County* to Title IX of the Education
              Amendments of 1972

---

    Several federal agencies have recently contacted the Civil Rights Division with questions regarding the application of the Supreme Court's reasoning in *Bostock v. Clayton County*, 140 S. Ct. 1731, 590 U.S. ___ (2020), to Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681 *et seq*.) (Title IX), particularly in light of Executive Order 13988, *Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*, 86 Fed. Reg. 7023 (Jan. 25, 2021). The Department of Justice is charged with coordination of the implementation and enforcement of Title IX by Executive agencies. Exec. Order No. 12250, § 1-2, 45 Fed. Reg. 72,995 (Nov. 4, 1980). Under the Executive Order 12250 authority delegated to the Civil Rights Division, 28 C.F.R. § 0.51(a) (1981) and 28 C.F.R. § 42.412(a) (1981), I write to share the Division's view as to whether *Bostock* applies to Title IX.

    Executive Order 13988 sets out the Administration's policy that "[a]ll persons should receive equal treatment under the law, no matter their gender identity or sexual orientation." Citing the Supreme Court's holding in *Bostock* that the prohibition on discrimination "because of . . . sex" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), covers discrimination on the basis of gender identity and sexual orientation, the Executive Order explains that *Bostock*'s reasoning applies with equal force to other laws that prohibit sex discrimination "so long as the laws do not contain sufficient indications to the contrary." The Executive Order directs agencies to review other laws that prohibit sex discrimination, including Title IX, to determine whether they prohibit discrimination on the basis of gender identity and sexual orientation. We conclude that Title IX does.

    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Because their statutory prohibitions against sex discrimination are similar, the Supreme Court and other federal courts consistently look to interpretations of Title VII to inform Title IX. *See, e.g.*, *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992); *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007); *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001). Thus, *Bostock's* discussion of the text of Title VII informs the Division's analysis of the text of Title IX.

First, like Title VII, Title IX applies to sex discrimination against individuals. The *Bostock* Court focused on this feature of Title VII in reaching its holding. *Bostock*, 140 S. Ct. at 1740–41 ("[The statute] tells us three times—including immediately after the words "discriminate against"—that our focus should be on individuals"). Similarly, Title IX focuses on individuals when it uses the term "person." *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979) (stating that, in enacting Title IX, Congress "wanted to provide *individual citizens* effective protection against those [discriminatory] practices" (emphasis added)).

Second, Title IX's "on the basis of sex" language is sufficiently similar to "because of" sex under Title VII as to be considered interchangeable. In *Bostock* itself, the Supreme Court described Title VII's language that way: "[I]n Title VII, Congress outlawed discrimination in the workplace *on the basis of* race, color, religion, sex, or national origin." *Bostock*, 140 S. Ct. at 1737 (emphasis added); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) ("[W]hen a supervisor sexually harasses a subordinate *because of* the subordinate's sex, that supervisor 'discriminate[s]' *on the basis of* sex." (emphasis added)). The *Bostock* Court concluded that Title VII's prohibition of discrimination "because of" sex includes discrimination because of sexual orientation and transgender status, finding that when an employer discriminates against employees for being gay or transgender, "the employer must intentionally discriminate against individual men and women in part because of sex." *Bostock*, 140 S. Ct. at 1740–43. The same reasoning supports the interpretation that Title IX's prohibition of discrimination "on the basis of" sex would prohibit recipients from discriminating against an individual based on that person's sexual orientation or transgender status. This interpretation of Title IX is consistent with the Supreme Court's longstanding directive that "if we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language." *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 521 (1982) (citations and internal alterations omitted).

In the months following the *Bostock* decision, two appellate courts have reached the same conclusion, citing *Bostock* to support their holdings that Title IX protects transgender students from discrimination on the basis of gender identity. *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020), *petition for cert. filed*, No. 20-1163 (Feb. 24, 2021); *Adams v. Sch. Bd. of St. Johns Cnty.*, 968 F.3d 1286, 1305 (11th Cir. 2020), *petition for reh'g en banc pending*, No. 18-13592 (Aug. 28, 2020). Other circuits reached this conclusion before *Bostock*. *See Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1049–50 (7th Cir. 2017) (transgender boy was likely to succeed on his claim that school district violated Title IX by excluding him from the boys' restroom); *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221–22 (6th Cir. 2016) (per curiam) (school district that sought to exclude transgender girl from girls' restroom was not likely to succeed on the claim because Title IX prohibits discrimination based on sex stereotyping and gender nonconformity).

After considering the text of Title IX, Supreme Court caselaw, and developing jurisprudence in this area, the Division has determined that the best reading of Title IX's prohibition on discrimination "on the basis of sex" is that it includes discrimination on the basis of gender identity and sexual orientation. Before reaching this conclusion, the Division considered whether Title IX "contain[s] sufficient indications" that would merit a contrary conclusion. The Division carefully considered, among other things, the dissenting opinions in

*Gloucester* and *Adams*, and the concerns raised in the dissents in *Bostock*.  Like the majority opinions in those cases, however, the Division ultimately found nothing persuasive in the statutory text, legislative history, or caselaw to justify a departure from *Bostock*'s textual analysis and the Supreme Court's longstanding directive to interpret Title IX's text broadly.  Whether allegations of sex discrimination, including allegations of sexual orientation or gender identity discrimination, constitute a violation of Title IX in any given case will necessarily turn on the specific facts, and therefore this statement does not prescribe any particular outcome with regard to enforcement.

      I hope this memorandum provides a starting point for your agencies to ensure the consistent and robust enforcement of Title IX, in furtherance of the commitment that every person should be treated with respect and dignity.  The Civil Rights Division is available to answer any questions your agencies have as you implement Title IX's protections against sexual orientation and gender identity discrimination.