November 17, 1988

Mr. LeGrees Daniels
Assistant Secretary for Civil Rights
United States Department of Education
400 Maryland Avenue S.W.
Washington, D. C. 20202

Re: Notification of Brigham Young University Exemption from Certain Title IX Regulations

Dear Assistant Secretary Daniels:

The purpose of this correspondence is to provide the United States Department of Education with official notification that Brigham Young University located in Provo, Utah (hereinafter referred to as "BYU") considers itself exempt from the application of 34 CFR Sections 106.31, 106.32, 106.36, 106.39 and 106.40(b)(4), to the extent described in this correspondence, which regulations are published pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681 et seq., a federal statute prohibiting sex discrimination in educational programs. BYU expressly requests the Department to formally recognize that BYU is exempt from the applications of these sections because the provisions of each section are in conflict with religious teachings and tenets of the Church of Jesus Christ of Latter-day Saints (hereinafter occasionally referred to as "the Church"), a religious organization which sponsors and controls BYU.

As noted, BYU is owned, operated and controlled by the Church of Jesus Christ of Latter-day Saints and is eligible for exemption from the regulations pursuant to 34 CFR Section 106.12. The Church's headquarters are located in Salt Lake City, Utah. The Church originally created BYU in 1875 and has since been continuously and ultimately responsible for its operation. The BYU Board of Trustees consists of persons appointed by the governing board of the LDS Church and over two-thirds of the BYU operating budget is derived directly from appropriations from the Church. While non-members of the Church are welcome to apply for admission as students and for employment, all students and employees are expected to live according to a behavioral standard that is rooted in the religious teachings of the Church.

In general terms, this standard requires one to abide by the standards of general Christian living taught by the Church; to be honest in all behavior; to respect the

EXHIBIT C                                                                                                 1

November 17, 1988
Page 2

personal and property rights of others; to obey the law of the land; to disavow the use of alcoholic beverages, tobacco, tea, coffee and illegal drugs; to observe prescribed, modest standards of dress and grooming; to abstain from sexual relations outside marriage; and to observe high standards of taste and decency. A copy of the BYU Code of Honor which identifies the code of conduct expected of the BYU institutional family is attached as Exhibit "A" and by reference incorporated into this Notice of Exemption. Members and non-members of the Church who refuse to accept and adopt these standards as their own are not eligible for admission as students or for employment at the University. Both historically and at present, over 90% of the BYU students and employees are members of the Church.

The controlling organization of BYU, the Church of Jesus Christ of Latter-day Saints, is a major international Christian religion having a fully developed theology, a well known history spanning two centuries and a world-wide membership presently numbering over six million. Its members believe the Church and its doctrine contain the fullness of the Gospel of Jesus Christ, restored by direct revelation from God to Joseph Smith, who was called as a prophet in the biblical sense in 1820. The governing board of the Church consists of a First Presidency of three, along with a Council of Twelve Apostles, all of whom are regarded by the Church membership as apostles and prophets in the biblical sense. While accepting the Bible as holy scripture, the Church also regards the Book of Mormon as another testament of Christ and as holy scripture. In addition, the Church also accepts prophetic writings as scripture and regards the teachings of current Church leaders as religious doctrine. Central to the Church's theology is the view that, through the Atonement of Christ, all mankind may be saved by obedience to the laws and ordinances taught by Christ.

Within this general framework, the Church teaches not only the doctrine of individual eternal life, but also the doctrine that marriages performed by proper authority and subject to certain conditions are eternal in duration. Thus, the family unit is viewed as having high theological significance, and Church teachings about such matters as marriage, chastity, abortion, and the roles of husbands, wives and children are fundamental religious doctrines. The Church also teaches that certain distinctions based on gender, particularly as they relate to matters of family life, are both natural and religiously significant. At the same time, the Church has a remarkable record of encouraging all of its members, male and female, to obtain as much education as possible and to participate fully in the economic, political and social life of the communities in which they live.

The mission and purpose of Brigham Young University has been officially articulated in its Mission Statement of November 4, 1981, a copy of which is attached as Exhibit "B" to this correspondence and specifically incorporated by reference. The mission of BYU is essentially spiritual and educational. The University would not exist if it were not for the opportunity to fully and freely blend the teachings and influence of the Church within both the curriculum and the extra-curricular environment on the campus.

Below described are the Title IX regulatory provisions for which BYU has identified a recognized exemption together with an explanation of the religious tenets upon which the exemption is based. For purposes of making these requests, BYU is proceeding on the basis (1) that these requests for religious exemption do not limit

EXHIBIT C                                                                 2

November 17, 1988
Page 3

BYU's rights subsequently to claim additional religious exemptions as these come to light and subsequently to claim a broader free exercise right before a judicial body; (2) that "religious tenets" in Title IX's religious exemption includes practical and specific religious teachings by duly constituted authority; (3) that BYU's good faith claims about the existence and meaning of religious doctrine are entitled to a presumption of validity; and (4) that governmental agencies should not assume the role of determining the nature and meaning of religious doctrines. (See generally United States Department of Education Memorandum dated February 19, 1985 regarding "Policy Guidance for Resolving Religious Exemption Requests," to Regional Civil Rights Directors by Harry M. Singleton, Assistant Secretary for Civil Rights, Department of Education, and United States v. Ballard, 322 U.S. 78 (1944)).

1. Section 106.31 - BYU claims exemption from this section to the extent that it interferes with the operation of extra-curricular student activities in organizations sponsored by the Church. Specifically, there exist on campus numerous student congregations (called "Wards" according to Church nomenclature) organized and maintained through the ecclesiastical channels of the sponsoring Church. Whether these organizations choose to have activities or sub-organizations exclusively for men or for women is clearly a matter of Church organization and should therefore be exempt.

2. Section 106.32 - BYU claims exemption from this regulation to the extent it interferes with the University's policy of requiring sex-segregated housing by off-campus landlords as a condition of being given approval to house BYU students. The regulation allows sex-segregated housing when provided by the recipient, but it appears to prohibit such segregation in off-campus housing. The teachings of the sponsoring Church regarding sexual morality and marriage are inconsistent with housing arrangements in which single students share the same facilities. For this same reason, the University claims the right under its religious exemption to separate students in BYU-approved housing on the basis of sex and to regulate this separation by designating separate buildings or wings of buildings (and not merely separate apartments), as exclusive to one sex, both on and off campus.

3. Section 106.36 - BYU claims exemption from this regulation to the extent it may inhibit its teachers or counselors from discussing and advising students concerning the ways in which marriage may be compared to career choices or with respect to other questions arising concerning the planning by students of their educational or career plans. The sponsoring Church teaches that marriage and childbearing are significant religious obligations and that mothers naturally have greater involvement, especially in the rearing of younger children. These teachings indicate the need to allow room for some differences between counseling for men and counseling for women.

4. 34 CFR Section 106.39 and Section 106.40(b)(4) - The Office for Civil Rights (OCR), U.S. Department of Education has interpreted these regulations to require the University to offer, if offered at all, student health insurance policies which treat pregnancy the same as any other temporary disability in order to be in compliance with the regulations. By requiring the University to treat pregnancy as any other temporary disability with respect to single students would compel BYU's direct and/or indirect approval and support of premarital sex and abortion. The Church teaches as fundamental doctrine that righteous individuals must abstain from sexual relations

EXHIBIT C                                                                3

November 17, 1988
Page 4

outside of marriage and, except in rare cases, must not participate in nor obtain an abortion.

With respect to pregnancy related conditions of married women, the application of the regulation as to BYU is not abortion neutral, but rather has the practical impact on application to encourage abortion and to financially discriminate against those institutions, such as BYU, which promote the religious belief that in most cases full-term delivery is the only morally acceptable resolution of pregnancy. For example, insurance premiums paid by other colleges and universities not sharing the LDS beliefs on abortion will probably not increase substantially upon the extension of disability coverage to pregnancy because students at these universities may elect to terminate the pregnancy through an abortion (costing several hundred dollars) while students at BYU will be required, according to LDS religious tenets, to deliver the baby full term costing several thousand dollars. As a result, the impact of the law is not abortion neutral because the Act provides a practical incentive to perform abortion and a concomitant financial penalty for those institutions promoting religious tenets which prohibit abortion. BYU is unwilling to accept abortion as a cheap, simple and facile mechanism to keep insurance costs within reasonable financial limits.

In addition, as the regulations now stand, married students who become pregnant in violation of the doctrine of chastity through extra-marital means would be afforded maternity benefits. This would also be in violation of the fundamental Church doctrine of chastity in marriage.

Brigham Young University is a church-related college with a serious religious commitment at the heart of its educational mission. With the enactment of the Civil Rights Restoration Act of 1988, the University began a careful and deliberative process to assess the possible adverse impact of the Act on the University. Because it is possible that there may be varying interpretations of Title IX and its regulations yet to be resolved, the University determined to protect its vital interests against the possibility of any future adverse determinations as to the meaning of these regulations with this Notice of Exemption. The University, however, fully supports the goal of equal opportunity and non-discrimination on the basis of gender while at the same time preserving its Constitutional Rights of free exercise of religion. Your prompt attention in evaluating this Notice would be greatly appreciated. If I can be of any assistance to you in completing this task or if you require additional information, please do not hesitate to contact me.

Sincerely,

Jeffrey R. Holland

EXHIBIT C                                                                                 4

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS

JAN 6 1989

Dr. Jeffrey R. Holland
President
Brigham Young University
D-346 ASB
Provo, Utah 84602

Dear Dr. Holland:

The Office for Civil Rights (OCR) of the Department of Education has completed its review of your letter, dated November 17, 1988, requesting a religious exemption from certain sections of the regulation implementing Title IX of the Education Amendments of 1972 (Title IX).

In your request letter, you provided information that establishes that Brigham Young University (BYU) is controlled by a religious organization and that tenets followed by this organization conflict with specific sections of the Title IX regulation (copy enclosed). You described in your request letter certain policies practiced at BYU as being consistent with the tenets of the religious organization that controls the institution. These policies would violate certain sections of the regulation implementing Title IX absent a religious exemption. Therefore, I am granting BYU an exemption to those sections of the Title IX regulation appropriate to your request letter. The exemption is limited to the extent that compliance with the Title IX regulation conflicts with the religious tenets followed by BYU. Brigham Young University is hereby exempted from the requirements of the following sections of the Title IX regulation: 34 C.F.R. §§ 106.31, 106.32, 106.36, 106.39, and 106.40. The basis for this decision to grant this exemption is discussed in further detail below.

Your request letter indicates that BYU is controlled by the Church of Jesus Christ of Latter-day Saints (Church) and that BYU practices the tenets of the Church and is owned and operated by the Church. This relationship between the Church and the University adequately establishes that the University is controlled by a religious organization as is required for consideration for exemption under § 106.12 of the Title IX regulation.

In your request letter, you indicate that there exist on BYU campus "numerous student congregations (called 'Wards', according to Church nomenclature) organized and maintained through the ecclesiastical channels of the sponsoring Church." Your letter states that whether these organizations choose to have activities or suborganizations exclusively for men or for women is a matter of Church organization. Based on these principles, BYU has requested and is granted by this letter, exemption from 34 C.F.R. § 106.31, regarding education programs and activities, to the extent that § 106.31 conflicts with the operation of extracurricular student activities and policies of student religious organizations at BYU.

400 MARYLAND AVE., S.W. WASHINGTON, D.C. 20202

EXHIBIT C                                                                                    5

Page 2 - Dr. Jeffrey R. Holland

Your letter also indicates that "[t]he teachings of the sponsoring Church regarding sexual morality and marriage are inconsistent with housing arrangements in which single students share the same facilities." BYU claims exemption from 34 C.F.R. § 106.32 "to the extent that it interferes with the University's policy of requiring sex-segregated housing by off-campus landlords as a condition of being given approval to house BYU students." Based on these principles, BYU has requested and is granted by this letter, exemption from 34 C.F.R. § 106.32, which addresses housing.

Your letter states that "[t]he sponsoring Church teaches that marriage and childbearing are significant religious obligations and that mothers naturally have greater involvement, especially in the rearing of younger children. These teachings indicate the need to allow room for some differences between counseling for men and counseling for women." Based on these principles, BYU has requested and is granted by this letter, exemption from 34 C.F.R. § 106.36, which pertains to counseling of students and applicants for admission.

Your request letter states: "By requiring the University to treat pregnancy as any other temporary disability with respect to single students would compel BYU's direct and/or indirect approval and support of premarital sex and abortion. The Church teaches as fundamental doctrine that righteous individuals must abstain from sexual relations outside of marriage and, except in rare cases, must not participate in nor obtain an abortion." Further, your letter adds that provision of maternity benefits to married students who become pregnant through extramarital means would violate the fundamental Church doctrine of chastity in marriage. Based on these principles, BYU has requested and is granted by this letter, exemption to 34 C.F.R. §§ 106.39 and 106.40, regarding the provision of health and insurance benefits and services to single students and married students who become pregnant outside of marriage.

Your letter also states that, with respect to pregnancy-related conditions of married women, BYU promotes the religious belief that in most cases, full-term delivery, not abortion, is the only morally acceptable resolution of pregnancy. As you know, the Civil Rights Restoration Act of 1987 (Act) amends Title IX. One of the provisions of the Act states that under Title IX, provision of or payment for benefits or services related to abortion is neither required nor prohibited. Although OCR has not yet amended its regulations to conform to the Act, OCR interprets its regulations in accordance with the requirements of the Act. Therefore, under the Title IX regulation as interpreted by OCR, BYU is not required to provide or pay for benefits or services related to an abortion. As so interpreted, the Title IX regulation does not conflict with the religious tenets of BYU. Thus, the exemptions to §§ 106.39 and 106.40 are granted, subject to the limitations discussed in the preceding paragraph.

*Mark Richard*

EXHIBIT C                                                                 6

3 - Dr. Jeffrey R. Holland

This letter should not be construed to grant exemption from any section of the Title IX regulation not specifically mentioned. In the event that OCR receives a complaint against BYU, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by BYU are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by BYU, or if the organization denies that it controls BYU, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact the Denver Regional Office for Civil Rights. The address is:

    Dr. Gilbert D. Roman
    Regional Civil Rights Director
    Office for Civil Rights, Region VIII
    Department of Education
    Federal Office Building
    1961 Stout Street, 3rd Floor - 08-7010
    Denver, Colorado 80294-3608.

    Sincerely,

    LeGree S. Daniels
    Assistant Secretary
    for Civil Rights

Enclosure

cc: Dr. Gilbert D. Roman, Regional Civil Rights Director, Region VIII



OFFICE OF THE GENERAL COUNSEL

EUGENE H. BRAMHALL
 ·ant to the President
 il Counsel

H. HAL VISICK
*Associate General Counsel*

MICHAEL R. ORME
*Associate General Counsel*

DAVID B. THOMAS
*Assistant General Counsel*

BRIGHAM YOUNG UNIVERSITY

A-357 ASB
PO BOX 21333
PROVO, UTAH 84602-1333
(801) 378-3089
FAX NO. (801) 378-7521

August 25, 1997

Ms. Norma Cantu
Assistant Secretary for Civil Rights
United States Department of Education
400 Maryland Avenue SW
Washington, D.C. 20202

RE: Request for Religious Exemption from
 Title IX Regulation: 34 CFR § 106.60

Dear Secretary Cantu

The purpose of this letter is to provide the United States Department of Education with official notification that Brigham Young University, located in Provo, Utah (hereinafter referred to as "BYU" or "the University") considers itself exempt from the application of 34 CFR § 106.60, to the extent described in this correspondence, which regulations are also published pursuant to Title IX of the Education Amendments of 1972, 20 USC §1681 et. seq., a federal statute prohibiting sex discrimination in educational programs. BYU expressly requests the Department to recognize formally that BYU is exempt from the application of this Section because its provisions are in conflict with religious teachings, tenets, and practices of The Church of Jesus Christ of Latter-day Saints (hereinafter sometimes referred to as "the Church" or "the LDS Church"), a religious organization which sponsors and controls BYU.

In 1989, your office granted other BYU requests for exemption from other sections of 34 CFR. Specifically, the University was ". . . exempted from the requirements of the following sections of the Title IX regulation: 34 CFR §§ 106.31, 106.32, 106.36, 106.39, and 106.40". The basis for this exemption was ". . . that BYU is controlled by The Church of Jesus Christ of Latter-day Saints (Church) and that

EXHIBIT C                                                                                                                    8

BYU practices the tenets of the Church and is owned and operated by the Church. This relationship between the Church and the University adequately establishes that the University is controlled by a religious organization as is required for consideration for exemption under § 106.2 of the Title IX regulation." (OCR letter, January 6, 1989 to President Jeffrey R. Holland)

In our application letter of November 17, 1988, we noted, in part, that Brigham Young, President of the LDS Church, founded BYU in 1875 and since that time the Church has been continuously and ultimately responsible for the University's operation. The University's Board of Trustees consists of persons appointed by the presiding officers of the LDS Church, and all of the Trustees are General Officers of the Church, as is the University's President. The majority of the University's operating budget is derived from appropriations from the Church. Finally, the Board of Trustees not only sets hiring policy for the University but General Officers of the Church are directly involved in the hiring process for every full-time permanent faculty at the University.

The Church of Jesus Christ of Latter-day Saints is a major international Christian religion, having a fully developed theology, a well-known history spanning nearly two centuries, and a worldwide membership presently numbering approximately ten million. Its members believe that the Church and its doctrine contain the fullness of the Gospel of Jesus Christ, restored by direct revelation from God to Joseph Smith, who was called as a prophet in the Biblical sense in 1820. The governing Board of the Church consists of a First Presidency of three, along with a Quorum of Twelve Apostles, all of whom are regarded by the Church Membership as Apostles and Prophets.[1] While accepting the King James Version of the Bible as holy scripture, the Church also regards the Book of Mormon as another testament of Christ and as holy scripture. In addition, the Church also accepts prophetic writings as scripture and regards the teachings of current Church leaders as religious doctrine.

Within this general framework, and with specific reference to this request for an exemption, the Church teaches that the family unit is of basic theological

---

[1] The First Presidency, as well as members of the Quorum of the Twelve Apostles, among others, make up the University's Board of Trustees.

EXHIBIT C                                                                                                    9

Secretary Cantu
Page 3
August 25, 1997

significance and that the often independent roles of husbands and wives are fundamental elements of Church doctrine. Thus, the Church teaches that certain distinctions based on gender, particularly as they relate to matters of family life, are both natural and religiously significant. At the same time, the Church has a remarkable record of encouraging all of its members, male and female, to obtain as much education as possible and to participate fully in the communities in which they live.

Attached hereto as Exhibit "A" is a copy of an official pronouncement of the First Presidency and Quorum of the Twelve Apostles of The Church of Jesus Christ of Latter-day Saints dated September 23, 1995. This "Proclamation on the Family" makes the position of the Church with respect to the matters addressed in it abundantly clear and reaffirms certain family values and principles as Church doctrine, which is binding on the Church, its controlled organizations, like BYU, and the Church membership. Please note the significant emphasis on the importance of family and the differing roles of men and women in the family.

It is for this reason that the University may from time to time make a pre-employment inquiry as to the marital and family status of an applicant for a teaching position at the University. The Church teaches and we believe that such information about marital and family status is relevant, combined with other factors, in assessing the extent of an applicant's religious conviction and commitment to Church doctrine and practice as we attempt to identify those most qualified to teach at BYU. Naturally, questions about religious conviction will be wide-ranging and will include areas of inquiry about the support of Church leaders, morality, family life, and basic Church doctrine. The result of this broad inquiry will be that the University will have a better view as to whether the applicant has the necessary religious conviction and devotion to teach at BYU. We emphasize that answers to questions about family are not, by themselves, dispositive in the employment decision. Rather, they are considered, together with the answers to other religiously oriented questions, in measuring the religious strength and commitment of the applicant to Church doctrine and practice.

While this application deals with an exemption for faculty who teach, it is also true that the General Officer interview is required for all new permanent faculty, even

EXHIBIT C                                                                                                10

those without fixed teaching assignments. Accordingly, we request that an exemption be granted from § 106.60 of the Title IX regulation which extends to all new faculty hires at the University. Of course, at the heart of this analysis is the holding in <u>Corporation of the Presiding Bishop vs. Amos</u>, 483 U.S. 327 (1987), which held that the religious exemptions of Title VII to the Civil Rights Act do not violate the establishment clause of the first amendment. Simply stated, <u>Amos</u> allows an institution like BYU, one which is owned or controlled by a Church, to exercise a religious hiring preference. That principle, in turn, permits the University to employ Church members who meet certain minimum standards of faithfulness and wholehearted commitment to Church teachings.[2]

The University is a distinctive, religiously based institution with a serious commitment to the values, doctrines and mission of its sponsoring Church at the heart of its educational mission. Your prompt attention in evaluating this Notice will be greatly appreciated. If I, or any members of the University administration, can be of any assistance to you in completing your review, or if you require additional information, please contact me.

Sincerely,

Merrill J. Bateman
President

kk
Enc.
cc:    Ginger Yee, OCR

---

[2] <u>Lawson v. Kirkham</u>, 499 F.Supp. 960, 965 (D. Utah 1980) establishes that the right of religiously affiliated institutions to prefer their own in hiring matters necessarily involves the right "to employ those who best promote [their] religious mission. . . ."

EXHIBIT C                                                                                             11


**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF THE SECRETARY

Dr. Merrill J. Bateman
President
Brigham Young University
A-357 ASB
P.O. Box 21333
Provo, Utah 84602-1333

OCT 14 1997

Dear Dr. Bateman:

The Office for Civil Rights (OCR) of the Department of Education has completed its review of your letter, dated August 25, 1997, requesting a religious exemption for Brigham Young University (the University), to the extent described in your letter, from 34 C.F.R. § 106.60, a provision of the Department's regulations implementing Title IX of the Education Amendments of 1972. Based on the information provided in your letter, which specifically referenced preemployment inquiries about marital status, but not about the sex of the applicant, we construed your request to extend to 34 C.F.R. § 106.60(a), but not § 106.60(b). For this reason, only § 106.60(a) is addressed in this response.

In your letter you provided information that establishes that the University is controlled by a religious organization and that tenets followed by this organization conflict with the requirements of § 106.60(a). You described in your request letter certain policies practiced at the University as being consistent with the tenets of the religious organization that controls the University. These policies would violate § 106.60(a) absent a religious exemption. Therefore, I am granting Brigham Young University an exemption to that provision of the Title IX regulation as specified in your request letter. The exemption is limited to the extent that compliance with the Title IX regulation conflicts with the religious tenets followed by the University. Brigham Young University is hereby exempted, to the extent requested in your letter, from the requirements of § 106.60(a) of the Title IX regulation. The basis for this decision to grant this exemption is discussed in further detail below.

Your letter indicated that Brigham Young University is controlled by the Church of Jesus Christ of Latter-day Saints (the Church) and that the University practices the tenets of the Church and is owned and operated by the Church. This relationship between the Church and the University adequately establishes that the University is controlled by a religious organization as is required for consideration for exemption under § 106.12 of the Title IX regulation.

In your letter you indicated that all members of the University's Board of Trustees are selected by the presiding officers of the Church, that the Trustees are all General Officers of the Church, and that, as such, the Board of Trustees establishes the hiring policies for every full-time faculty position at the University. In addition, your letter indicated that General Officers of the Church are directly involved in the hiring process for every full-time faculty position at the University. Your letter further indicated that, in this regard,

Page 2 - Dr. Merrill J. Bateman

one of the criteria that the University evaluates in hiring individuals for teaching and other permanent faculty positions at the University is the degree of the candidate's "religious conviction and commitment to Church doctrine and practice." Your letter also indicated that Church doctrine establishes certain values with respect to family life and morality and that, in order to evaluate a faculty candidate's commitment to Church doctrine and practice, including Church doctrine and practice relative to family life and morality, the University conducts a wide-ranging inquiry, which may include a preemployment inquiry as to the candidate's marital status. The practice of making a preemployment inquiry as to marital status would violate § 106.60(a) absent a religious exemption. Based on these principles, Brigham Young University has requested, and is granted by this letter, exemption, in connection with the employment of all new permanent faculty, from 34 C.F.R. § 106.60(a), which addresses preemployment inquiries as to marital status, to the extent that § 106.60(a) conflicts with the religious tenets followed by the University.

This letter should not be construed to grant exemption from any provision of the Title IX regulation not specifically mentioned. In the event that OCR receives a complaint against the University, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the University are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the University, or if the organization denies that it controls the University, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact OCR's Denver office. The address and phone number are:

> Ms. Lillian Gutierrez, Enforcement Director
> U.S. Department of Education, Office for Civil Rights
> Federal Building, Suite 310, 08-7010
> 1244 Speer Boulevard
> Denver, CO 80204-3582
> (303) 844-5695.

Sincerely,

Norma V. Cantú
Assistant Secretary
  for Civil Rights

cc: Ms. Lillian Gutierrez, Enforcement Director, Denver Office

EXHIBIT C                                                                                                                    13



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

March 15, 2016

Dr. Clark G. Gilbert
President
Brigham Young University-Idaho
200 Kimball Building
Rexburg, ID 83460

Dear Dr. Gilbert:

I write to respond to your February 12, 2016, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you seek to confirm the scope of existing religious exemptions for Brigham Young University-Idaho (BYU-Idaho or the University) of Rexburg, Idaho, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your letter references religious exemptions OCR granted to Ricks College in letters dated June 24, 1985 and June 22, 1988. You explain that "[i]n 2001 Ricks College became a four-year undergraduate institution (as it had been many decades earlier) and was renamed Brigham Young University-Idaho." Your letter states that BYU-Idaho is "sponsored and controlled by" the Church of Jesus Christ of Latter-day Saints, as it was when the school was Ricks College. According to your letter, the "Church has always been ultimately responsible for BYU-Idaho's operation throughout its history. The governing board of the Church appoints the BYU-Idaho Board of Trustees, and the majority of the BYU-Idaho operating budget is derived directly from appropriations from the Church." Your letter asserts that the exemptions granted to Ricks College (now applicable to BYU-Idaho) encompass Title IX's coverage of discrimination on the basis of gender identity. Because that basis was not specifically addressed in the previous request letters, OCR will instead treat your letter as a new request for a religious exemption for

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

EXHIBIT C            14

Dr. Clark G. Gilbert – page 2

BYU-Idaho from Title IX to the extent that it prohibits discrimination on the basis of gender identity.

Your letter references the University's treatment of transgender individuals and its basis in the teachings of the Church of Jesus Christ of Latter-day Saints. Specifically, you cite to a Church publication entitled "The Family: a Proclamation to the World," which your letter explains says "ALL HUMAN BEINGS—male and female—are created in the image of God. Each is a beloved spirit son or daughter of heavenly parents, and, as such, each has a divine nature and destiny. Gender is an essential characteristic of individual premortal, mortal, and eternal identity and purpose." Thus, you explain, "as a religious tenet, gender is not simply socially determined but is an essential characteristic of each person's eternal identity. . . . [I]n keeping with the Church's teaching on gender, BYU-Idaho requires all students and employees to conduct their lives in harmony with the Church's teachings and the University Standards."

The University notes that OCR granted Ricks College exemptions from a number of provisions of the Title IX regulation, including 34 C.F.R. § 106.31 and 34 C.F.R. § 106.32. You state that the "Department of Education's recent guidance construing sex to mean, among other things, gender identity, does not affect BYU-Idaho's already existing exemptions." We interpret this as a request for an exemption from all provisions from which Ricks College was exempt (and BYU-Idaho is now exempt) to the extent that they prohibit discrimination on the basis of gender identity, including the following:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.36 (governing counseling and use of appraisal and counseling materials);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students); and
- 34 C.F.R. § 106.57 (governing different rules based on marital or parental status of employees).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the

EXHIBIT C

15

Dr. Clark G. Gilbert – page 3

institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT C                    16



**Office of the President**

Brigham Young University–Idaho • 200 Kimball Building • Rexburg, ID • 83460-1650

February 12, 2016

Ms. Catherine E. Lhamon
Assistant Secretary for Civil Rights
United States Department of Education
400 Maryland Avenue, SW
Washington, DC 20202-1100

Dear Ms. Lhamon:

RE:   BRIGHAM YOUNG UNIVERSITY–IDAHO'S TITLE IX RELIGIOUS EXEMPTIONS

We are writing in response to the letter we received January 26, 2016, to affirm Brigham Young University–Idaho's religious protections under Title IX of the Education Amendments of 1972 and the United States Constitution.[1]

Title IX "is designed to eliminate (with certain exceptions) discrimination on the basis of sex in any education program or activity receiving Federal financial assistance."[2] One exception is that private institutions of undergraduate higher education are exempt from Title IX with respect to admissions and recruitment.[3] Another important exception is that Title IX "shall not apply to an educational institution which is controlled by a religious organization if the application . . . would not be consistent with the religious tenets of such organization."[4]

BYU–Idaho shares and supports the goal of the Office for Civil Rights to eliminate sex discrimination. As a religious institution of higher education, BYU–Idaho also has a responsibility to teach the doctrine of its sponsoring institution, The Church of Jesus Christ of Latter-day Saints (the Church). The formally stated mission of BYU–Idaho is to "develop disciples of Jesus Christ who are leaders in their homes, the Church, and their communities."[5] The university does this by, among other things, "[b]uilding testimonies of the restored gospel of Jesus Christ," "encouraging living its principles," and "[p]roviding a quality education for students of diverse interests and abilities."[6] BYU–Idaho strives to create an environment in

---

[1] Letter from Emily Hazen, Equal Opportunity Specialist at OCR, to Clark G. Gilbert, President of BYU–Idaho (Jan. 26, 2016).
[2] 34 C.F.R. § 106.1 (2016).
[3] 20 U.S.C. § 1681(a)(1) (2016); 34 C.F.R. § 106.15(d).
[4] 20 U.S.C. § 1681(a)(3).
[5] BYU–Idaho Mission Statement, *available at* http://byui.edu/about/our-mission.
[6] *Id.*

February 12, 2016
Page 2 of 4

which the restored gospel of Jesus Christ guides every aspect of the educational experience. In these ways, the mission of BYU–Idaho is inextricably both spiritual and educational.[7] Religious higher education institutions like BYU–Idaho contribute to the "diversity of institutions and educational missions [that] is one of the key strengths of American higher education."[8]

BYU–Idaho was originally established in 1888, and for much of its existence was known as Ricks College. In 2001 Ricks College became a four-year undergraduate institution (as it had been many decades earlier) and was renamed Brigham Young University–Idaho. BYU–Idaho is sponsored and controlled by the Church. The Church has always been ultimately responsible for BYU–Idaho's operation throughout its history. The governing board of the Church appoints the BYU–Idaho Board of Trustees, and the majority of the BYU–Idaho operating budget is derived directly from appropriations from the Church.

The Church is a major international Christian religion, with a fully developed theology, a well-known history spanning nearly two centuries, and a worldwide membership presently numbering over fifteen million. Its members believe that the Church and its doctrine contain the fullness of the gospel of Jesus Christ, restored by direct revelation from God to Joseph Smith, who was called in 1820 as a prophet in the Biblical sense. The Church's governing board comprises the First Presidency and the Quorum of the Twelve Apostles, all of whom are sustained by Church members as prophets, seers, and revelators. Members of the Church regard the Bible and the Book of Mormon (another testament of Jesus Christ) as holy scripture. The Church also accepts additional prophetic writings and the statements of current Church leaders as authoritative religious teaching. Central to the Church's theology is the view that every human being is a son or daughter of God who may be saved through the Atonement of Jesus Christ by obedience to the laws and ordinances of His gospel.

BYU–Idaho affirms the dignity of all human beings. Consistent with the teachings of the Church, BYU–Idaho recognizes the inherent agency, or free will, of each person. All students who apply to and enroll at BYU-Idaho make a commitment to live the University Standards, including an Honor Code, that are based on doctrines and practices of the Church and reflect the "moral

---

[7] As we have maintained for over forty years in our correspondence with the Department of Education and its predecessor, the Department of Health, Education, and Welfare, BYU–Idaho considers itself exempt from certain regulations and their related processes promulgated under Title IX by virtue of protections in the U.S. Constitution and federal statutes. *See Hall v. Lee Coll., Inc.*, 932 F. Supp. 1027, 1033 (E.D. Tenn. 1996) ("It may very well be that to claim the exemption found in the statute, an educational institution need do nothing more than just raise the exemption."). However, in an effort to continue to cooperate with your office, I am sending this letter in my capacity as president of BYU–Idaho to you in your capacity as assistant secretary for Civil Rights at the Department of Education, as 34 C.F.R. § 106.12(b) anticipates.

[8] 20 U.S.C. § 1011a(a)(2)(A).

February 12, 2016
Page 3 of 4

virtues encompassed in the gospel of Jesus Christ."[9] This commitment is acknowledged at the time of application and must be reaffirmed each year in order to continue enrollment. Students specifically agree to—among other things—live a chaste and virtuous life, respect others, and observe certain dress and grooming standards. BYU–Idaho has adopted dress and grooming standards that are different for men and women. The purpose of this distinction between genders is based on religious tenets about our divine nature as children of God, the eternal nature of our gender identity, and the purpose of our life on earth.

Members of the Church believe that "God created man in his own image, in the image of God created he him; male and female created he them."[10] Modern-day scripture reiterates the truth that God created all human beings in his own image and likeness, male and female.[11] In 1995, the Church's First Presidency and Quorum of the Twelve Apostles issued "The Family: A Proclamation to the World," which states: "ALL HUMAN BEINGS—male and female—are created in the image of God. Each is a beloved spirit son or daughter of heavenly parents, and, as such, each has a divine nature and destiny. Gender is an essential characteristic of individual premortal, mortal, and eternal identity and purpose."[12] Therefore, as a religious tenet, gender is not simply socially determined but is an essential characteristic of each person's eternal identity.

The Church has a history of encouraging all of its members, male and female, to obtain as much education as possible and to participate fully in the economic, political, and social life of their communities.[13] BYU–Idaho strives to contribute to that effort by providing a broad undergraduate education and facilitating internship, employment, and service opportunities. However, in keeping with the Church's teaching on gender, BYU–Idaho requires all students and employees to conduct their lives in harmony with the Church's teachings and the University Standards.

The complaint against BYU–Idaho alleges discrimination on the basis of sex with respect to a transgender student.[14] Although the letter we received does not specify which Title IX

---

[9] BYU–Idaho University Standards 58 (2015-2016) (stating that "[s]tudents must be in good honor code standing to be admitted to, continue enrollment at, and graduate from BYU-Idaho"), *available at* http://www.byui.edu/Documents/catalog/2015-2016/University%20Standards.pdf.
[10] Genesis 1:27; *see also* Matthew 19:4.
[11] Moses 2:27; Doctrine and Covenants 20:18.
[12] We sent a copy of The Family: A Proclamation to the World to your office in 1998. Letter from David A. Bednar, President of Ricks College, to Norma Cantú, Assistant Secretary for Civil Rights (Mar. 12, 1998).
[13] This also reflects a religious tenet of the Church. *See* Doctrine and Covenants 88:77-80; 109:7.
[14] The Department of Education's position that Title IX's definition of "sex" includes gender identity is not anywhere defined in statute or regulation. *Johnston v. Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*, 97 F. Supp. 3d 657, 674 (W.D. Pa. 2015) (stating that "Title IX does not prohibit discrimination on the basis of transgender itself because transgender is not a protected characteristic under

February 12, 2016
Page 4 of 4

regulations may apply, it appears that all of the allegations relate to regulations regarding education programs or activities and housing. The Office for Civil Rights has already determined that BYU–Idaho is exempt from the application of 34 C.F.R. § 106.31 and § 106.32 to the extent they conflict with the Church's religious tenets.[15] The Department of Education's recent guidance construing sex to mean, among other things, gender identity, does not affect BYU–Idaho's already existing exemptions.

We appreciate your commitment to resolving complaints as promptly as possible. In a similar situation, the regional office closed a complaint for lack of jurisdiction.[16] Based on the existing exemptions, and as required by the statutory text of Title IX, that same approach is appropriate here. If I or any members of BYU–Idaho's administration can be of any assistance to you, or if you require additional information, please contact me.

Sincerely,

Dr. Clark G. Gilbert
President

---

the statute" and noting there is "no federal court case that has squarely decided this issue in the Title IX context").

[15] "Ricks College is hereby exempted from the requirements of the following sections of the Title IX regulation: . . . § 106.31, § 106.32." Letter from Harry M. Singleton, Assistant Secretary for Civil Rights, to Dr. Bruce C. Hafen, President of Ricks College (June 24, 1985).

[16] Letter from LeGree S. Daniels, Assistant Secretary for Civil Rights, to Dr. Joe J. Christensen, President of Ricks College (June 22, 1988) (recounting that the regional office had received a complaint and subsequently closed it for lack of jurisdiction).