538 Venard Road · Clarks Summit, Pennsylvania 18411 · Telephone: 717 | 587-1172 · ANCHORED IN THE WORD





TO: The Director, Office for Civil Rights

FROM: Baptist Bible College and School of Theology of PA

RE: Identification of the specific provisions of 45 C.F.R. part 86 which conflict with the specific religious tenets of Baptist Bible College and School of Theology of PA.

86.15 Admissions

(1) Baptist Bible College - admissions policies of private undergraduate institutions are exempt.

(2) School of Theology (Grad School) - 86.15 is inconsistent with the religious tenets of this institution. We believe that, by divine appointment, there are some ministries in the church which are prohibited to women. Such prohibitions do not imply any mental or spiritual inferiority on the part of women, but are simply part of God's wise arrangements for His people. Women cannot serve as preachers or pastors, and in areas of theological instruction are to remain subordinate to men (I Timothy 2:11-15; Titus 1:5-9, Bible references). There is no instance of a woman preacher or pastor in the New Testament. For these reasons, since its beginning in 1932, Baptist Bible College and School of Theology does not admit women as students to prepare them to become ministers of religion or to enter upon some other religious vocation, or to prepare them to teach theological subjects.

With respect to the above ministries in the church which are prohibited to women, the college and School of Theology adhere to the position of the General Association of Regular Baptist Churches, by which we are approved.

86.21 Admission,

86.22 Preference in Admissions,

86.23 Recruitment: Students -- same as exemption request in 86.15

86.31 Education Programs and Activities

Baptist Bible College and School of Theology find 86.31(a) inconsistent with its religious tenets regarding the participation of women in academic programs designed to train preachers, pastors, or theological teachers.

86.34 Access to Course Offerings

Baptist Bible College and School of Theology find 86.34 inconsistent with its religious tenets regarding the participation of women in classes designed to train preachers, pastors, or theological teachers.

86.51 Employment

Baptist Bible College and School of Theology find 86.51 inconsistent with its religious tenets regarding the employment of women in areas of theological instruction.

86.55 Job Classification and Structure

Baptist Bible College and School of Theology find 86.55 inconsistent with its religious tenets regarding the classification of women in areas of theological instruction.

Date December 9, 1976

By Ernest Pickering
Dr. Ernest Pickering
President



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS

JUN 18 1985

Dr. Mark Jackson
President
Baptist Bible College and
School of Theology
538 Venard Road
Clarks Summit, Pennsylvania 18411

Dear Dr. Jackson:

The Office for Civil Rights of the Department of Education (OCR/ED) is in the process of clearing a backlog of requests for religious exemption from Title IX of the Education Amendments of 1972. Our records indicate that the Baptist Bible College and School of Theology filed such a request but there is no record that OCR adequately acknowledged this request.

We have recently reviewed the request filed by former President Pickering (copy enclosed) in which he described several policies practiced at the Baptist Bible College and School of Theology as consistent with the tenets of the religious organization that controls the institution. These policies would violate certain sections of the regulation implementing Title IX (copy enclosed) absent a religious exemption. The former president supplied information in his request letter that establishes that the institution is controlled by a religious organization and that tenets followed by this organization conflict with specific sections of the Title IX regulation. Therefore, I am granting the Baptist Bible College and School of Theology an exemption to those sections of the Title IX regulation appropriate to the request letter. The exemption is limited to the extent that compliance with the Title IX regulation conflicts with the religious tenets followed by the institution. The Baptist Bible College and School of Theology is hereby exempted from the requirements of the following sections of the Title IX regulation: 106.21, 106.22, 106.23, 106.31, 106.34, 106.51 and 106.55. The bases for our decision to grant this exemption are discussed in further detail below. The institution's letter also requests exemption from § 106.15 regarding admissions at particular types of institutions. The exemption granted by this letter to § 106.21 more accurately addresses the admissions of students and precludes the necessity for exemption to § 106.15.

The institution's letter indicates that the Baptist Bible College and School of Theology is controlled by the General Association of Regular Baptist Churches. The General Association of Regular Baptist Churches and the Baptist Bible College and School of Theology practice the tenets of prohibiting women from serving as preachers or pastors. The letter states

400 MARYLAND AVE. S.W. WASHINGTON, D.C. 20202

that the Baptist Bible College and School of Theology is approved by the General Association of Regular Baptist Churches. This relationship between the General Association of Regular Baptist Churches and the Baptist Bible College adequately establishes that the Baptist Bible College and School of Theology is controlled by a religious organization as is required for consideration for exemption under § 106.12 of the Title IX regulation.

In the request letter it states that based on religious tenets women are not permitted to enroll in classes that prepare students to become ministers of religion or to enter upon some other religious vocation. Also, women are not employed as theological instructors. Thus, the institution practices the following:

1. Only men are admitted to the School of Theology.

   Based on the above, the Baptist Bible College and School of Theology has requested and is granted by this letter, exemption to § 106.21: Admission; § 106.22: Preference in admission; § 106.23: Recruitment.

2. Only men are admitted to academic programs and courses designed to train preachers, pastors, or theological teachers.

   Based on the above, the Baptist Bible College and School of Theology has requested and is granted by this letter, exemption to § 106.31: Education programs and activities and § 106.34: Access to course offerings.

3. Employment and classification of men, exclusively, in areas of theological instruction.

   Based on the above, the Baptist Bible College and School of Theology has requested and is granted by this letter, exemption to § 106.51: Employment and § 106.55: Job Classification and Structure.

This letter should not be construed to grant exemption from any section of the Title IX regulation not specifically mentioned. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. I regret the inordinate delay in responding to the original request. If you have any questions, please do not hesitate to contact the Philadelphia Regional Office for Civil Rights. The address is:

Dewey E. Dodds
Regional Civil Rights Director
Office for Civil Rights, Region III
Department of Education
Gateway Building, 6th Floor
3535 Market Street
Philadelphia, Pennsylvania 19104

Sincerely,

Harry M. Singleton
Assistant Secretary
for Civil Rights

Enclosures

538 VENARD ROAD • CLARKS SUMMIT, PENNSYLVANIA 18411 • TELEPHONE (717) 587-1172 DR. MILO THOMPSON, PRESIDENT

Baptist Bible College & Seminary

PES 11/3 - AS sig cy: AS DASR(LEWIS)

October 17, 1988

Assistant Secretary for Civil Rights
United States Department of Education
400 Maryland Avenue, S.W.
Washington, D.C. 20202

RE: Baptist Bible College of Pennsylvania
Clarks Summit, Pennsylvania
Title IX Exemption

Dear Sir:

Baptist Bible College of Pennsylvania hereby claims an exemption from the requirements of Title IX of the Education Amendments of 1972 ("Title IX") as herein specified, pursuant to Sections 901 (a)(3) and 908 of Title IX and 34 C.F.R. Section 106.12(b). The College bel.eves that it may in the past have received, and may currently be receiving, indirect federal aid within our understanding of the Supreme Court decision in Grove City College v. Bell, 465 U.S. 555 (1984).

Baptist Bible College of Pennsylvania is a regionally accredited Bible College, offering courses of instruction in theology, religion, Old and New Testament and also the humanities, arts and sciences. The College is a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania and is approved by the General Association of Regular Baptist Churches,, Schaumburg, Illinois, as a Christian institution of higher education. It is exempt from federal income taxation as a not-for-profit religious educational institution under Section 501(c)(3) of the Internal Revenue Code. Its property, business and affairs are controlled by a Board of Trustees all of whom must be members of local, autonomous Baptist churches which adhere to and practice the historic religious doctrines and tenets of the Christian faith. Each Trustee and each member of the College's faculty, staff of employees and its student body are required to espouse a personal belief in the religious tenets of the Christian faith. The catalogs and other official publications of the college contain explicit statements that the college is committed to the doctrines of the Christian religion and maintains its religious tradition, standards and beliefs in accordance with Baptist distinctives.

The College adheres to biblical tenets for matters of faith and practice, following its religious tradition and Baptist distinctives. It specifically utilizes a religious preference in employment practices to assure that faculty and staff adhere to a common religious understanding of the religious beliefs, values and purposes that guide the educational mission of the College. Accordingly, the personnel of the College accept religious standards in matters of moral behavior, dispute and grievance resolution and disciplinary matters, as well as the performance of any religious role or office in which gender distinctions may be required. The Holy Bible sets forth the standards for Christian morality and practice in far too many places and forms to be identified comprehensively in this letter; however, see for example, Romans 1:18-32; Galatians 5:16-24 and Ephesians 4:17-5:6.

The College seeks to maintain its religious freedom to make certain gender distinctions in matters of moral behavior, marriage and residential living environments and standards. It specifically holds religious standards for personnel and students in matters conducive to the fostering of proper moral behavior and the discouragement of inappropriate behavior as understood by the religious tradition and tenets accepted by the College. Such standards include matters relating to the expression of human sexuality, living environments, respect for the institution of marriage, language and attire.

The College adjudicates matters of moral behavior, including the misuse of human sexuality, in accordance with Scriptural teaching about moral behavior. See, for example, Matthew 18:15-20 and I Corinthians 5:1-13.

The College has previously communicated with the Department of Education concerning a religious exemption from certain of the provisions of Title IX. However, in light of the passage of the Civil Rights Restoration Act of 1987 and the college's current understanding of the provisions of Title IX and the regulations thereunder that are applicable to the college, this additional exemption notice is being submitted at this time in order to clarify the scope of the exemption claimed by the College.

The College hereby claims exemption from the application of the following provisions of the Title IX regulations, to the extent that they conflict with the College's religious tenets and

traditions as described above: 34 C.F.R. Sections 106.21(c), 106.40, 106.57 and 106.60 (treatment based on marital and parental status), Section 106.34 (access to course offerings in ministerial or pre-ministerial programs limited by religious tenets to students of one gender) and Section 106.51 (employment opportunities for religious offices or positions limited by religious tenets to one gender, such as, chaplains), together with any application of Sections 106.38 (employment assistance to students), 106.53 (recruitment), 106.55 (job classification and structure) or 106.59 (advertising) that relates to employment opportunities that are limited to one gender by the religious beliefs of the College.

There are a number of issues central to the religious beliefs and practices of the College that may not have been discussed in this letter because of our understanding that no specific exemption is required. For example, the College believes that Title IX, as amended by the Civil Rights Restoration Act of 1987, shall not be construed to require the College to provide or pay for any benefit or service, including the use of facilities, related to an abortion. Additionally, pursuant to 34 C.F.R. Section 106.15(d), the provisions of Sections 106.16 through 106.23, inclusive, do not apply to the college because it is a private institution of undergraduate higher education. Finally, the college understands that Sections 106.32 and 106.33 permit the college to provide separate, although substantially comparable, housing, bathroom, locker room and similar facilities for men and women.

The College generally opposes gender-based discrimination and affirms its intention to comply with the provisions of Title IX and the regulations thereunder except to the extent that such compliance would cause the College to violate its religious tenets and traditions. The College specifically claims its right to exercise a religious preference in its employment decisions, pursuant to Section 702 of Title VII of the Civil Rights Act of 1964 and the decision of the Supreme Court in Corporation of the Presiding Bishop v. Amos, 107 S. Ct. 2862 (1987). In seeking to provide equal employment opportunities for men and women, the College shall not under any circumstances waive or be deemed to have waived its primary requirement of hiring only persons whose religious beliefs and practice are consistent with the Christian tenets, principles and traditions accepted by the College and the General Association of Regular Baptist Churches.

In the event of future amendments to Title IX or the regulations thereunder, or changes in the application thereof or the facts surrounding the operation of the College and the burden of such statute and regulations on the college's ability to pursue its religious mission, the College reserves its right to claim an amendment to its exemption or an additional exemption in order to fully protect the religious tenets, practices and traditions of the College.

Thank you for your assistance and for your prompt consideration of this letter. If you have any questions or require any further information, please contact the undersigned at the College.

Very truly yours,

Milo E. Thompson, Jr.
President

MET:bw




U.S. DEPARTMENT OF EDUCATION
3535 MARKET STREET, ROOM 6300
PHILADELPHIA, PENNSYLVANIA 19104-3326

REGION III

OFFICE FOR CIVIL RIGHTS

NOV 10 1988

Dr. Milo E. Thompson, Jr.
President
Baptist Bible College and Seminary
538 Venard Road
Clarks Summit, Pennsylvania 18411

Dear Dr. Thompson:

The Office for Civil Rights (OCR), U.S. Department of Education (the Department) has received your October 17, 1988, request for religious exemptions from Title IX of the Education Amendments of 1972 (Title IX) and various provisions of the Department's Title IX implementing regulation at 34 C.F.R. Part 106. We have reviewed your request and have determined that we need further information to make a decision to grant an exemption.

Although your request letter included general statements of religious tenets, and information regarding the Title IX regulation at 34 C.F.R. Sections 106.21(c), 106.40, 106.57, and 106.60 regarding marital and parental status, it did not state the specific tenets or how they conflict with these sections of the regulation. If you wish the office to make a determination regarding a religious exemption in these areas, please provide the information requested and return it to this office.

Thank you for your cooperation. If you have any questions, please do not hesitate to contact Mr. Robert E. Harvey, Director, Postsecondary Education Division at (215) 596-6804.

Sincerely,

Robert A. Smallwood
Regional Civil Rights Director
Region III



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

NOV 2 1992

Dr. Milo Thompson
President
Baptist Bible College and Seminary
536 Venard Road
Clark Summit, Pennsylvania 18411

Dear Dr. Thompson:

The Office for Civil Rights (OCR) in the U.S. Department of Education has completed its review of your October 17, 1988, request for religious exemption from Title IX of the Education Amendments of 1972 (Title IX) as amended, 20 U.S.C. Sections 1681 et seq., and its implementing regulation 34 C.F.R. Part 106 (copy enclosed). Your letter of January 26, 1989, provided OCR with the additional information necessary to clarify your request. I apologize for the delay in responding to your request.

In your letters, you supplied information that establishes that Baptist Bible College and Seminary (College) is controlled by a religious organization and that the tenets followed by this organization conflict with specific sections of the Title IX regulation. You described in your request several policies and practices at the College as being consistent with the tenets of the religious organization that controls the College. These policies would violate specific sections of the regulation implementing Title IX absent a religious exemption. Therefore, I am granting the College an exemption from several of the sections of the Title IX regulation specified in your letters. The College is hereby granted an exemption from the requirements of the following sections of the Title IX regulation: 34 C.F.R. Sections 106.38, 106.40, 106.53, 106.57, 106.59, and 106.60. The exemption is limited to the extent that compliance with the Title IX regulation conflicts with the religious tenets followed by the College. The basis of our decision to grant this exemption is discussed in further detail below.

Your letter of October 17, 1988, indicates that the College is controlled by its Board of Trustees. All trustees must be members of local, autonomous Baptist churches which adhere to and practice the historic religious doctrines and tenets of the Christian faith. In addition, the College is approved by the General Association of Regular Baptist Churches. The trustees, faculty, employees, and students of the College are required to espouse a personal belief in the religious tenets of the Christian faith. This relationship between the General Association of Regular Baptist Churches and the Board of Trustees and the College adequately establishes that the College is controlled by a religious organization as is required for consideration for exemption under 34 C.F.R. Section 106.12 of the Title IX regulation.

400 MARYLAND AVE., S.W. WASHINGTON, D.C. 20202-1100

Your letter and accompanying materials indicate that the College maintains its religious tradition, standards, and beliefs in accordance with Biblical tenets, following its religious tradition and Baptist distinctives. The College, its students and employees must adhere to Biblical tenets for matters of faith and practice. Thus, conduct of staff and students such as cohabitation without marriage, pre-marital sexual relations, promiscuity outside of marriage, and divorce and marriage without biblical grounds would violate religious tenets regarding moral behavior, marriage and residential living environments and standards. In addition, based on the College's religious tenets and traditions, it provides access to ministerial and pre-ministerial course offerings and opportunities for certain religious offices and positions only to members of one gender.

Based upon the information submitted, the College is granted by this letter, exemption from 34 C.F.R. Sections 106.38 (employment assistance for students); 106.40 (marital and parental status of students); 106.53 (recruitment); 106.57 (marital and parental status of employees); 106.59 (advertising); and 106.60 (pre-employment inquiries).

By letter dated June 18, 1985 (copy enclosed), the Department granted the College's request for religious exemption from 34 C.F.R. Sections 106.21, 106.22, 106.23, 106.31, and 106.34, as they relate to the College's policy of admitting only men to its seminary and its classes that prepare students to become ministers of religion, teachers of theology or to enter upon some other religious vocation; and 34 C.F.R. Sections 106.51 and 106.55, as they relate to the College's policy of employing and classifying men, exclusively, in areas of theological instruction. Thus, no additional exemption is required for the College relative to these sections of the Title IX regulation on the basis of these policies and practices.

This letter should not be construed to grant exemption from any section of the Title IX regulation not specifically mentioned. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption herein granted. Also, in the unlikely event that a complainant alleges that the practices followed by the College are not based on the religious tenets of the controlling organizations, OCR is obligated to contact the controlling organization to verify those facts. If the organization provides an interpretation of the tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds to your request. If you have any questions, please do not hesitate to contact the Philadelphia Regional Office at this address:

Dr. Robert A. Smallwood
Regional Civil Rights Director
U.S. Department of Education
Office for Civil Rights, Region III
3535 Market Street, Room 6300, 03-2010
Philadelphia, Pennsylvania 19104-3326
(215) 596-6772.

Sincerely,

Michael L. Williams
Assistant Secretary
for Civil Rights

Enclosures

cc: Robert A. Smallwood, Regional Civil Rights Director, Region III

535 VENARD ROAD • CLARKS SUMMIT, PENNSYLVANIA 18411 • TELEPHONE (717) 587-1172 DR. MILO THOMPSON, PRESIDENT

Baptist Bible College & Seminary

RECEIVED
1989 JAN 30 PM 12: 55
OFFICE FOR CIVIL RIGHTS
ED/REGION III

January 2[illegible], 1989

Mr. Robert A. Smallwood
Regional Civil Rights Director
Region III
U.S. Department of Education
3535 Market Street
Room 6300
Philadelphia, Pennsylvania 19104-3326

RE: Baptist Bible College of Pennsylvania
Title IX Exemption

Dear Mr. Smallwood:

I received your letter of November 10, 1988, responding to this College's letter dated October 17, 1988, claiming a religious exemption from Title IX of the Education Amendments of 1972 and the Department's Title IX implementing regulation at 34 C.F.P. Part 106. This letter is written in response to your letter dated November 10, 1988, and will provide you with the information that you requested in it.

As pointed out in the College's letter dated October 17, 1988, claiming a religious exemption, the College adheres to biblical tenets for matters of faith and practice and does this in all matters of faith and practice. Its religious tenets relevant to marital and parental status are, therefore, biblically derived.

In order to live within commonly received Christian meanings of human relationships and provide a moral and biblical ethos for the College community, moral standards are maintained consistent with the precepts of the Bible and the religious custom and practice that interprets its moral standards. The College maintains that it must be able to deal, on religious grounds, with those members of the College community who, for whatever reasons, are unrepentable and unrepentant in matters of moral conduct and whose actions are detrimental to themselves, their families and others. Where such willful conduct expressly violates biblical norms [e.g., cohabitation without marriage (see, e.g., Exodus 20:14; I Corinthians 5:1-11, Hebrews 13:4); pre-marital sexual relations (see, e.g., Genesis 2:24, Deuteronomy 22:20-24, I Corinthians 6:13-20, Galatians 5:16-21, I Thessalonians 4:3-8, Hebrews 13:4); homosexual behavior (see, e.g., Genesis 18-19, Leviticus 18:22, 20:13, Romans 1:24-27, I Corinthians 6:9-11),

promiscuous conduct outside of wedlock (see, e.g., Leviticus 18:6-24, Proverbs 5:1-23, I Corinthians 5:1-11, 6:13-20, Galatians 5:16-21, Hebrews 13:4); or marriage or divorce without biblical grounds (see, e.g., Genesis 2:24, Leviticus 18, Malachi 2:13-16, Matthew 19:3-12, Luke 16:18)], and offending persons cannot be reconciled to biblical standards, the College reserves its right to exercise its discretion for the remedy appropriate to the circumstances consistent with its religious beliefs and practices, as described above.

I trust that this letter provides you with the information which you requested. If you have any questions or desire additional information, please feel free to contact me at the College.

Very truly yours,

Milo Thompson, Jr.
President

MT:bw