# Colorado Christian University
## 8787 West Alameda Avenue
## Lakewood, CO 80226
## 303-963-3350
## warmstrong@ccu/edu

November 4, 2014

Catherine Lhamon, Assistant Secretary
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, DC 20202-1100

   Re: Request for Religious Exemption from Certain Applications of Title IX

Dear Ms. Lhamon:

   I hereby request, under 20 U.S.C. § 1681(a) (3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights acknowledge that Colorado Christian University (CCU) is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations to the extent that they are interpreted to curtail the University's freedom to respond to transgender individuals in accordance with its religious convictions. As President of CCU, I am the "highest ranking official of the institution," 34 C.F.R. § 106.12(b), and thus qualified to seek these exemptions.

   CCU is a non-profit institution of higher education with its main campus in Lakewood, Colorado. It traces its origins to the founding of Denver Bible Institute in 1914.[1] A century later, CCU is a Christ-centered learning community committed to developing each student in mind, faith and character for a lifetime of meaningful work and service in a constantly changing world.[2] Its identity as a Christian institution is central to all it does and teaches.[3] Christ, the living Word, is the integrating center of Colorado Christian University, intentionally at the core of all that CCU is and does.[4] The University exists to produce graduates who think critically, live faithfully, and impact effectively their spheres of influence.[5] This purpose is accomplished through a highly competent and dedicated faculty, an integrated academic curriculum, and student life programs designed to strengthen faith, shape character, and nurture compassionate response in a need-filled world.[6]

---

[1] http://www.ccu.edu/about/history/
[2] http://www.ccu.edu/about/essence/
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

CCU's educational philosophy is guided by its Statement of Faith, which is embraced by all faculty and staff.[7] The Statement[8] affirms the key elements of the historical Christian faith, assuring consensus on the foundational tenets of the faith.[9] The essence of the CCU experience is its integration of faith and learning.[10] This distinctive integration of academic achievement, character development, and spiritual formation prepares CCU graduates to honor God and impact the world with their lives.[11]

CCU's Board of Trustees have adopted strategic objectives that direct the implementation of the University's consistent mission and vision and provide context for its first priority: an enduring commitment to Jesus Christ and His Kingdom.[12] These strategic objectives include:

- Honoring Christ and sharing His love on campus and around the world;
- Teaching students to trust the Bible, live holy lives and be evangelists;
- Giving students significant opportunities to serve the Lord while they are at CCU and to help them develop a lifetime habit of such service;
- Impacting culture in support of traditional family values, sanctity of life, compassion for the poor, a Biblical view of human nature, limited government, personal freedom, free markets, natural law, original intent of the Constitution and Western civilization; and
- Serving the Church.[13]

CCU states its vision as follows: "We envision graduates, who think critically and creatively, lead with high ethical and professional standards, embody the character and compassion of Jesus Christ, and who thereby are prepared to impact the world."[14] It articulates its mission as follows: "Colorado Christian University cultivates knowledge and love of God in a Christ-centered community of learners and scholars, with an enduring commitment to the integration of exemplary academics, spiritual formation, and engagement with the world."[15]

On October 22, 2010, CCU's Board of Trustees adopted a policy on homosexuality, transvestitism, and transgenderism. It reads in pertinent part as follows:

> [A]lthough some Christians may take other positions concerning transvestitism and/or transgenderism, CCU's position is clear as to both. As a matter of religious faith, conviction, and exercise, Colorado Christian University adheres to the Biblical admonitions against both transvestitism and transvestite behavior, as set forth in Deuteronomy 22:5, and

---

[7] *Id.*

[8] http://www.ccu.edu/about/webelieve/

[9] http://www.ccu.edu/about/essence/

[10] *Id.*

[11] *Id.*

[12] http://www.ccu.edu/strategicobjectives/

[13] *Id.*

[14] http://www.ccu.edu/about/mission/

[15] *Id.*

EXHIBIT 5                                                                              2

> transgenderism and transgender behavior, as set forth in Genesis 1:27.
> Therefore, Colorado Christian University prohibits all of its officers,
> trustees, employees, and students from engaging in, advocating, teaching,
> supporting, encouraging, defending, or excusing transvestitism and
> transvestite behavior and/or transgenderism and transgender behavior, in
> any form or for any purpose.

CCU's Student Handbook contains the following section, entitled "Gender Identification":

> Based on the mission of CCU, its standards, and uniqueness as a living
> and learning environment that honors Jesus Christ, the university
> recognizes that some students may struggle with their gender identity and
> wish to explore living as a particular gender other than the one that they
> were biologically created as. When a student is cooperative and willing to
> explore these feelings in an appropriate setting and not act out the feelings,
> the university will allow them to continue being a part of the CCU
> community if they are pursuing counseling and a mentoring relationship
> that will help them discuss appropriately who God made them to be. In
> this process, however, the university will uphold a view that we are
> "fearfully and wonderfully made" in the uniqueness and image of God and
> therefore strategically and purposefully made as the biological gender we
> were born as. Because of this belief the university will not allow a student
> of a particular gender to dress and act differently than the biological one
> that God created them to be. When a student decides to identify as a
> gender other than their biological one, it is in their, and the university's,
> best interest for them to leave the university community. It is also in the
> best interest of the university and the student for them to separate
> themselves from the CCU community if she or he pursues a medical
> course of action to physically change their biological gender to that of
> another sex.[16]

In the employment context, both applicants and existing employees are required to affirm their commitment to CCU's Statement of Faith and Employee Lifestyle Expectations.[17] Those expectations include the following: "Members of the CCU community are expected to refrain from engaging in, advocating, teaching, supporting, encouraging, defending, or excusing homosexuality, transvestitism, transvestite behavior, transgenderism and transgender behavior."[18]

As you know, the Office for Civil Rights has not issued regulations or guidance explaining how an educational institution's response to a transgender individual might violate Title IX and its accompanying regulations. As you also know, however, the resolution

---

[16] http://www.ccu.edu/uploadedFiles/Pages/Campus_Life/handbook.pdf (p. 144).
[17] http://jobs.ccu.edu/
[18] http://jobs.ccu.edu/employee-lifestyle-expectations

EXHIBIT 5                                                                    3

Letter to Catherine Lhamon
October 13, 2014
Page 4 of 5

agreement[19] between the Arcadia Unified School District and ED OCR (and the Department of Justice) requires the school district to permit transgender students to use the restroom, locker room, and living accommodations of their choice, and to participate in athletic programs as a member of their chosen sex.[20] It is thus reasonable to suppose that ED OCR believes that such responses are required by Title IX. It also reasonable to presume that your office interprets Title IX to impose gender identity non-discrimination obligations upon covered institutions in the employment context. To the extent these suppositions are correct, it appears as though compliance with Title IX, as interpreted by ED OCR to reach transgender "discrimination," would be inconsistent with the religious tenets of CCU.

CCU accordingly requests that your office acknowledge that the University is exempt from Title IX and the following implementing regulations (to the extent they are interpreted to reach gender identity discrimination):

34 C.F.R. § 106.21 (admission)
34 C.F.R. § 106.22 (preference in admission)
34 C.F.R. § 106.23 (recruitment)
34 C.F.R. § 106.31 (education programs or activities)
34 C.F.R. § 106.32 (housing)
34 C.F.R. § 106.33 (comparable facilities)
34 C.F.R. § 106.34 (access to classes and schools)
34 C.F.R. § 106.36 (counseling)
34 C.F.R. § 106.37 (financial assistance)
34 C.F.R. § 106.38 (employment assistance to students)
34 C.F.R. § 106.39 (health and insurance benefits and services)
34 C.F.R. § 106.40 (marital or parental status)
34 C.F.R. § 106.41 (athletics)
34 C.F.R. § 106.43 (standards for measuring skill or progress in physical education classes)
34 C.F.R. § 106.51-61 (relating to employment)

Thank you in advance for your consideration. I look forward to hearing from you soon. If you require anything further, please do not hesitate to contact me.

Very truly yours,

William L. Armstrong
President

---

[19] Resolution Agreement Between the Arcadia Unified School District, the U.S. Department of Education, Office for Civil Rights, and the U.S. Department of Justice, Civil Rights Division, *available at* http://www.nclrights.org/wp-content/uploads/2013/09/Arcadia_Resolution_agreement_07.24.2013.pdf.
[20] *Id.* 7

EXHIBIT 5                                                                 4



UNITED STATES DEPARTMANT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

December 5, 2014

William L. Armstrong
President
Colorado Christian University
8787 West Alameda Avenue
Lakewood, CO 80226

Dear President Armstrong:

The purpose of this letter is to respond to your November 4, 2014, letter to the U.S. Department
of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for
Colorado Christian University of Lakewood, Colorado from Title IX of the Education
Amendments of 1972. Title IX prohibits discrimination on the basis of sex in any education
program or activity operated by a recipient of Federal financial assistance. We are processing
your request and have determined that we need further information.

Subsection (a)(3) of Title IX, 20 U.S.C. § 1681(a)(3), and the Department's implementing
regulation at 34 C.F.R. § 106.12 provide that Title IX and its regulations do not apply to an
educational institution controlled by a religious organization to the extent that application of
Title IX would not be consistent with the controlling organization's religious tenets. Such
educational institutions are allowed to claim an exemption from Title IX by identifying the
provisions of the Department's Title IX regulations that conflict with a specific tenet of the
controlling religious organization.

Your letter included sufficient information regarding the provisions of the Department's Title IX
regulations from which the University requests exemption. But your letter did not identify the
religious organization that controls the University. Your letter describes the University as "a
Christ-centered learning community" and states that it identifies as a "Christian institution," but
does not name a specific religious organization. An educational institution will normally be
considered to be controlled by a religious organization under Title IX if one or more of the
following conditions prevail:

(1)   It is a school or department of divinity, defined as an institution or a department
      or branch of an institution whose program is specifically for the education of
      students to prepare them to become ministers of religion or to enter upon some
      other religious vocation, or to prepare them to teach theological subjects; or

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

EXHIBIT 5                                                                                        5

Page 2: Letter to William L. Armstrong

(2) It requires its faculty, students or employees to be members of, or otherwise
    espouse a personal belief in, the religion of the organization by which it claims
    to be controlled; or

(3) Its charter and catalog, or other official publication, contains an explicit
    statement that it is controlled by a religious organization or an organ thereof or
    is committed to the doctrines of a particular religion, and the members of its
    governing body are appointed by the controlling religious organization or an
    organ thereof, and it receives a significant amount of financial support from the
    controlling religious organization or an organ thereof.

If you would like OCR to make a determination regarding the University's religious exemption
request, please let us know the specific religious organization that controls the University. Feel
free to provide any explanation or supporting documentation that may be helpful to OCR's
understanding. If you no longer desire a religious exemption determination, please simply let us
know your wish to withdraw the request at this time so that we may close the request file.

Thank you for your cooperation. If you have any questions, please do not hesitate to contact me.
I can be reached at (202) 453-6048.

Sincerely,

Seth Galanter
Principal Deputy Assistant Secretary
Office for Civil Rights
U.S. Department of Education

EXHIBIT 5                                                                                                          6

# Colorado Christian University

**8787 West Alameda Avenue**
**Lakewood, Colorado 80226**
**303-963-3350**
**warmstrong@ccu.edu**

January 6, 2015

**Via Federal Express**
Seth Galanter
Principal Deputy Assistant Secretary
Office for Civil Rights
U.S. Department of Education
400 Maryland Ave. S.W.
Washington, D.C. 20202-1100

Re:  **Colorado Christian University Application for Religious Exemption under Title IX**

Dear Mr. Galanter:

I have just received a phone message from you pointing out that my letter of December 22nd neglected to include the referenced attachments:

- Statement of Faith
- Lifestyle Expectations
- Strategic Objectives

I apologize for this oversight

An additional copy of my December letter and the attachments are attached hereto.

Thank you for drawing this matter to my attention.

Sincerely,

William L. Armstrong
President

EXHIBIT 5                                                                                              7

# Colorado Christian University

**8787 West Alameda Avenue**
**Lakewood, Colorado 80226**
**303-963-3350**
**warmstrong@ccu.edu**

December 22, 2014

Seth Galanter
Principal Deputy Assistant Secretary
Office for Civil Rights
U.S. Department of Education
400 Maryland Ave. S.W.
Washington, D.C. 20202-1100

Re:  **Colorado Christian University Application for Religious Exemption under Title IX**

Dear Mr. Galanter:

This is in response to your letter dated December 5, 2014, requesting further information from Colorado Christian University regarding our request for a religious exemption from Title IX of the Education Amendments of 1972.

Colorado Christian University ("CCU") requires all of its faculty and employees to espouse a personal belief in the evangelical Christian faith. Every applicant for any position at CCU must sign an Application Acknowledgement agreeing to abide by CCU's Statement of Faith and Statement of Lifestyle Expectations, and to adhere to traditional biblical values and CCU's Strategic Objectives. If an individual is offered a job at CCU, he or she must execute the Statement of Faith and the Statement of Lifestyle Expectations before the hiring process is complete. Each of these documents is attached for your reference.

Please do not hesitate to contact me if you have further questions about this matter.

Sincerely,

William L. Armstrong
President

EXHIBIT 5                                                                                                          8



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

June 28, 2016

William L. Armstrong
President
Colorado Christian University
8787 West Alameda Avenue
Lakewood, CO 80226

Dear President Armstrong:

I write to respond to your November 4, 2014, letter to the U.S. Department of Education's Office for Civil Rights (OCR), in which you requested a religious exemption for Colorado Christian University (University or CCU) of Lakewood, Colorado from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. In response to a request from OCR on December 5, 2014, you submitted further information on December 22, 2014 about the University's eligibility for an exemption from Title IX. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

Title IX and its implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your December letter explains that the University "requires all of its faculty and employees to espouse a personal belief in the evangelical Christian faith. Every applicant for any position at CCU must sign an Application Acknowledgement agreeing to abide by CCU's Statement of Faith and Statement of Lifestyle Expectations, and to adhere to traditional biblical values. . . . If an individual is offered a job at CCU, he or she must execute the Statement of Faith and the Statement of Lifestyle Expectations before the hiring process is complete."

As stated in your November letter, you request an exemption to the extent that Title IX or its implementing regulations "are interpreted to reach gender identity discrimination." In support of this request, you explain that the University's Employee Lifestyle Expectations include the following: "Members of the CCU community are expected to refrain from engaging in,

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

EXHIBIT 5                                                                                                                                    9

William L. Armstrong – page 2

advocating, teaching, supporting, encouraging, defending, or excusing homosexuality, transvestitism, transvestite behavior, transgenderism and transgender behavior." Your letter also describes an October 2010 policy, adopted by the University's Board of Trustees, which states that "although some Christians may take other positions concerning transvestitism and/or transgenderism, CCU's position is clear as to both. As a matter of religious faith, conviction, and exercise, Colorado Christian University adheres to the Biblical admonitions against both transvestitism and transvestite behavior, as set forth in Deuteronomy 22:5, and transgenderism and transgender behavior, as set forth in Genesis 1:27."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions "to the extent they are interpreted to reach gender identity discrimination:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-106.61 (governing employment).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets identified in your request, OCR is obligated to identify a controlling organization to contact to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the

EXHIBIT 5                                                                                   10

William L. Armstrong – page 3

institution, this exemption will be rescinded.

I hope this letter responds fully to your request.  If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT 5                                                                                                11