

UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

May 13, 2016

Dr. David Wright
President
Indiana Wesleyan University
4201 South Washington Street
Marion, Indiana 46953

Dear Dr. Wright:

The purpose of this letter is to respond to your March 18, 2016, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Indiana Wesleyan University (University) of Marion, Indiana from Title IX of the Education Amendments of 1972. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance. We are processing your request and have determined that we need further information.

Section 901(a)(3) of Title IX, 20 U.S.C. § 1681(a)(3), and the Department's implementing regulation at 34 C.F.R. § 106.12 provide that Title IX and its regulations do not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would not be consistent with the controlling organization's religious tenets. Such educational institutions are allowed to claim an exemption from Title IX by identifying the provisions of the Department's Title IX regulations that conflict with a specific tenet of the controlling religious organization.

An educational institution will normally be considered to be controlled by a religious organization under Title IX if one or more of the following conditions prevail:

(1) It is a school or department of divinity, defined as an institution or a department or branch of an institution whose program is specifically for the education of students to prepare them to become ministers of religion or to enter upon some other religious vocation, or to prepare them to teach theological subjects; or

(2) It requires its faculty, students or employees to be members of, or otherwise espouse a personal belief in, the religion of the organization by which it claims to be controlled; or

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

EXHIBIT J                                                                                                    13

(3) Its charter and catalog, or other official publication, contains an explicit statement that it is controlled by a religious organization or an organ thereof or is committed to the doctrines of a particular religion, and the members of its governing body are appointed by the controlling religious organization or an organ thereof, and it receives a significant amount of financial support from the controlling religious organization or an organ thereof.

Your letter states that the University was "founded by The Wesleyan Church to provide higher education within a Christian environment for Wesleyan youth, and remains an institution of The Wesleyan Church to this day."

Although your letter states that the University was founded by and is an institution of the Wesleyan Church, it does not sufficiently state that the University is controlled by the Church. Thus, OCR requires further information to determine whether the Church's relationship with the University meets the standard for "control" as described above. If you would like OCR to make a determination regarding the University's religious exemption request, please provide additional clarification regarding whether the Wesleyan Church or another religious organization controls the University. Feel free to provide any explanation or supporting documentation that may be helpful to OCR's understanding. If you no longer wish to pursue your request for an exemption at this time, please let us know and we will treat your request as withdrawn.

Thank you for your cooperation. If you have any questions, please do not hesitate to contact me. I can be reached at (202) 453-6048.

Sincerely,

Seth M. Galanter
Principal Deputy Assistant Secretary
Office for Civil Rights
U.S. Department of Education

Letter to Catherine Lhamon
March 18, 2016
Page 3 of 4

As you are aware, the EEOC has begun declaring that the ban on sex discrimination in Title VII of the Civil Rights Act of 1964 forbids discrimination on the basis of sexual orientation.[6] It is conceivable that the Department of Education's Office for Civil Rights could interpret Title IX of the Education Amendments of 1972 the same way. To the extent this supposition is correct, it appears as though compliance with Title IX, if interpreted by ED OCR to reach sexual orientation discrimination, would also be inconsistent with IWU's theological commitments. IWU therefore also seeks exemption on this basis out of an abundance of caution.

IWU has also adopted The Wesleyan Church's *Church and Culture* statement, which contains a chapter entitled Sanctity of Life, which reads in pertinent part as follows:

> We believe that life is a gift from God and must always be regarded as sacred. Because God created human beings in His image, all people share in the divine dignity. Abortion, euthanasia, and unethical human experimentation violate the God-given dignity of human beings…
>
> The Wesleyan Church seeks to recognize and preserve the sanctity of human life from conception to natural death and is opposed to the use of induced abortion. Scripture seems to indicates [sic] that God sees each unborn as a person being formed in the womb with a purpose and a future in mind (Ps. 139). It also instructs us to be fervent in protecting those who cannot protect themselves (Prov. 31:8–9).

IWU accordingly requests that your office acknowledge that the University is exempt from Title IX and the following implementing regulations (to the extent they are interpreted to reach gender identity and/or sexual orientation discrimination, and to the extent they restrict the University's freedom to apply and enforce the Wesleyan Church's statement on the sanctity of life):

> 34 C.F.R. § 106.21 (admission)
> 34 C.F.R. § 106.22 (preference in admission)
> 34 C.F.R. § 106.23 (recruitment)
> 34 C.F.R. § 106.31 (education programs or activities)
> 34 C.F.R. § 106.32 (housing)
> 34 C.F.R. § 106.33 (comparable facilities)
> 34 C.F.R. § 106.34 (access to classes and schools)
> 34 C.F.R. § 106.36 (counseling)
> 34 C.F.R. § 106.37 (financial assistance)
> 34 C.F.R. § 106.38 (employment assistance to students)
> 34 C.F.R. § 106.39 (health and insurance benefits and services)
> 34 C.F.R. § 106.40 (marital or parental status)
> 34 C.F.R. § 106.41 (athletics)

---

[6] *See* http://www.eeoc.gov/decisions/0120133080.pdf (last visited Mar. 4, 2016)

34 C.F.R. § 106.43 (standards for measuring skill or progress in physical education classes)

34 C.F.R. § 106.51-61 (relating to employment)

Thank you in advance for your consideration. I look forward to hearing from you soon. If you require anything further, please do not hesitate to contact me.

Sincerely,

Dr. David Wright
President, Indiana Wesleyan University



OFFICE OF THE PRESIDENT

March 18, 2016

Catherine Lhamon, Assistant Secretary
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, DC  20202-1100

Re: Request for Religious Exemption from Certain Applications of Title IX

Dear Ms. Lhamon:

I hereby request, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights acknowledge that Indiana Wesleyan University (IWU) is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations, to the extent that they are interpreted to curtail the University's freedom to act in accordance with its religious convictions. As President of IWU, I am the "highest ranking official of the institution," 34 C.F.R. § 106.12(b), and thus qualified to seek these exemptions.

IWU was founded by The Wesleyan Church to provide higher education within a Christian environment for Wesleyan youth, and remains an institution of The Wesleyan Church to this day.[1] The Wesleyan Church has issued a statement entitled, "A Wesleyan View of Gender Identity and Expression," a copy of which is attached for your convenience. Among other things, the statement declares that "all humans have the same responsibility for stewarding physical attributes and abilities" and that "[g]ender assignment is a divine prerogative."

The statement invokes *The Discipline of The Wesleyan Church*, observing that the "article of religion" on "Marriage and the Family" asserts the binary nature of human sexual identity and expression. The statement sets forth the Church's specific religious convictions about gender identity expression:

1. Gender differentiation is sacred.
2. The Church is an advocate for social holiness for all persons.
3. Gender identity reflects God's sovereignty.
4. Gender non-conformity that disrupts marriage and adult family relationships violates the law of love and the sanctity of the family.
5. Reconciliation with God is the foundation for reconciliation with oneself and with others.
6. Those who are navigating gender identity issues deserve the Church's compassion and ministry.

---

[1] Indiana Wesleyan University, http://www.indwes.edu/About/IWU-Profile/; The Wesleyan Church, Wesleyan Colleges and Universities, http://www.wesleyan.org/144/wesleyan-colleges-and-universities.

DR. DAVID WRIGHT

Indiana Wesleyan University · 4201 South Washington Street · Marion, IN · 46953 · 765.677.2100 · indwes.edu

Letter to Catherine Lhamon
March 18, 2016
Page 2 of 4

> 7. When necessary, church discipline of gender non-conforming individuals must be administered in holy love.

As you know, the Office for Civil Rights has not issued regulations or guidance explaining how an educational institution's response to a transgender individual might violate Title IX and its accompanying regulations. As you also know, however, the resolution agreement[2] between the Arcadia Unified School District and ED OCR (and the Department of Justice) requires the school district to permit transgender students to use the restroom, locker room, and overnight accommodations of their choice, and to participate in athletic programs as a member of their chosen sex.[3] It is thus reasonable to suppose that ED OCR believes that such responses are required by Title IX. It also reasonable to presume that your office interprets Title IX to impose gender identity non-discrimination obligations upon covered institutions in the employment context. To the extent these suppositions are correct, it appears as though compliance with Title IX, as interpreted by ED OCR to reach transgender "discrimination," would be inconsistent with the religious tenets of IWU and The Wesleyan Church.

The Wesleyan Church has also issued a statement entitled, "A Wesleyan View of Homosexuality," a copy of which is attached for your convenience.[4] Among other things, the statement declares that "[i]t is the historic and sustained conviction of The Wesleyan Church that homosexual activity is contrary to the known will of God as revealed to us in the Bible." The statement sets forth a detailed Scriptural basis for the Church's view, invoking both the Old and New Testaments of Holy Scripture. The statement quotes *The Discipline of The Wesleyan Church*, declaring that "[s]exual relationships outside of marriage and sexual relationships between persons of the same sex are immoral and sinful. The depth of the sinfulness of homosexual practice is recognized, and yet we believe the grace of God sufficient to overcome both the practice of such activity and the perversion leading to its practice." (*Discipline* 410:5).

Significantly, the statement, which is consistent with IWU's practices, sets forth not just the Church's views on homosexual behavior but also mandates a loving and compassion response to members of the gay community:

> [W]e call on Wesleyans to respond to the homosexual community with **both** boundless compassion **and** a call to biblical standards of sexual morality. We do not, cannot, and will not endorse homosexual activity as a lifestyle; just as we cannot, do not, and will not endorse all other kinds of behaviors that displease God. But we also do not, cannot, and will not endorse condemning, hate-filled, self-righteous attitudes toward those in the gay community.[5]

---

[2] Resolution Agreement Between the Arcadia Unified School District, the U.S. Department of Education, Office for Civil Rights, and the U.S. Department of Justice, Civil Rights Division, *available at* http://www.nclrights.org/wp-content/uploads/2013/09/Arcadia_Resolution_agreement_07.24.2013.pdf.
[3] *Id.*
[4] The statement is also available on the web at https://www.wesleyan.org/235/a-wesleyan-view-of-homosexuality (last visited Mar. 4, 2016)
[5] *Id.*

Page 2 - Dr. James P. Hill, Jr.

The request letter indicates that students and employees at Marion College must adhere to tenets of The Wesleyan Church relative to a prohibition of pregnancy that occurs out of wedlock. Based on this principle, Marion College has requested and is granted by this letter exemption to § 106.21(c) (marital or parental status of applicants for admission), § 106.40 (marital or parental status of students), and § 106.57 (marital or parental status of employees and applicants for employment).

Marion College also requested exemption from § 106.31(b)(5) concerning rules of appearance. Section 105.31(b)(5) was formally revoked and deleted from the Title IX regulation. Therefore, an exemption for appearance codes is not necessary.

Marion College also requested the opportunity to apply for exemptions from certain sections if the understanding of the requirements was incorrect. The interpretation that Title IX permits separation of housing and restroom facilities by sex (§§ 106.32 (b) and 106.33, respectively) is correct. However, § 106.61, regarding sex as a bona-fide occupational qualification, does not apply to hiring only women as resident directors for women's dormitories. If you wish to limit the employment of resident directors in women's dormitories to women only, you will need to apply for a religious exemption from the employment sections of the Title IX regulation which you deem applicable. You should briefly describe the religious tenet(s) or practices on which this institution policy is based. Your request should be forwarded to the regional office.

This letter should not be construed to grant exemption from any section of the Title IX regulation not specifically mentioned. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption herein granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

EXHIBIT J                                                                    7

Page 3 - Dr. James P. Hill, Jr.

I hope this letter responds fully to your request. I regret the inordinate delay in responding to your original request. If you have any questions, please do not hesitate to contact the Chicago Regional Office for Civil Rights. The address is:

>Linda A. McGovern
>Acting Regional Civil Rights Director
>Department of Education
>Office for Civil Rights, Region V
>300 South Wacker Drive, 8th Floor
>Chicago, Illinois  60606

>Sincerely,

>Harry M. Singleton
>Assistant Secretary
>  for Civil Rights

Enclosures

cc:  Linda A. McGovern, Acting Regional Civil Rights Director, Region V

| | |
|---|---|
| Recess: | The Board recessed from 10:05 to 10:20. |
| Changing the Name of Marion College to Indiana Wesleyan University: | Where as: 1) A new name will more accurately reflect our denominational and theological heritage; 2) This institution of higher learning is offering more graduate programs; 3) A name change will increase recognition and visibility; 4) Changing the name will help avoid confusion between Marion College and Marian College in Indianapolis; 5) The Executive Committee of Marion College, on January 30, 1988, supported the change of name of Marion College to Indiana Wesleyan University. Be it therefore recommended that the name of Marion College be changed to Indiana Wesleyan University. |
| Adopt New Name: | A motion was made and supported to formally adopt the new name change as of July 1, 1988, to Indiana Wesleyan University. |

Carried

| | |
|---|---|
| One Year Grace Period: | A motion was made and supported to give one year of grace which may be an advantage to the institution or its constituents concerning the name change usage. |

Carried

| | |
|---|---|
| Adjournment: | The meeting adjourned at 11:00 a.m. with prayer by Dr. Lee Haines. |

Respectfully submitted,


Burdette Shattuck, Secretary

EXHIBIT J                                                                 5

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS

SEP 13 1985

Dr. James P. Hill, Jr.
President
Marion College
4201 South Washington Street
Marion, Indiana 46952

Dear President Hill:

The Office for Civil Rights of the Department of Education (OCR/ED) is in the process of resolving a number of pending requests for religious exemption from Title IX of the Education Amendments of 1972. Our records indicate that Marion College filed such a request, but there is no record that OCR adequately acknowledged this request.

We have recently reviewed the request filed by former President Goodman (copy enclosed) in which he described several policies practiced at Marion College as consistent with the tenets of the religious organization that controls the institution. These policies would violate certain sections of the regulation implementing Title IX (copy enclosed) absent a religious exemption. The former President supplied information in his request letter that establishes that the institution is controlled by a religious organization and that tenets followed by this organization conflict with specific sections of the Title IX regulation. Therefore, I am granting Marion College an exemption to those sections of the Title IX regulation specified in the request letter. The exemption is limited to the extent that compliance with the Title IX regulation conflicts with the religious tenets followed by the institution. Marion College is hereby exempted from the requirements of the following sections of the Title IX regulation: 34 C.F.R. § 106.21(c), § 106.40, and § 106.57. The basis for our decision to grant this exemption is discussed in further detail below.

The request letter indicates that Marion College is controlled by The Wesleyan Church. The Wesleyan Church and Marion College practice tenets that "require a standard of moral purity opposing sexual promiscuity and all factors and practices which promote it . . . . Further the general rules of the Church require (1) the preservation of the sanctity of the home . . . and (2) the high regard of marriage vows . . . . The Discipline of The Wesleyan Church also requires appropriate discipline for violators . . . ." This relationship between The Wesleyan Church and Marion College adequately establishes that Marion College is controlled by a religious organization as is required for consideration for exemption under § 106.12 of the Title IX regulation.



February 16, 1993

Ms. Eleanor Baker
U. S. Department of Education
Office of Civil Rights
400 Maryland Avenue, S.W.
Washington, D.C. 20202

Dear Ms. Baker:

Thank you for your assistance today with reference to Title IX religious exemptions for Indiana Wesleyan University (Marion College).

Enclosed are copies of items relating to our change in name from Marion College to Indiana Wesleyan University which became effective July 1, 1988.

Again, thank you for your help in sending copy of the letter which granted the exemptions.

Sincerely,

*Mary Ellen Martin*

(Miss) Mary Ellen Martin
Secretary to President Barnes

Enclosures 3

EXHIBIT J                                                   3

Recess:            The Board recessed at 10:05 to 10:20.

Changing of        A motion was made and supported to change the
College Name:      name of Marion College to Indiana Wesleyan University and submit the same for a vote at a special called full board meeting on Saturday, March 5, 1988.

                             Carried

Executive          The Board recessed for executive session.
Session:

Respectfully submitted,

Exhibit e Shattuck, Secretary                                    4

OFFICE OF THE PRESIDENT



**MARION COLLEGE**
4201 SO. WASHINGTON STREET, MARION, INDIANA 46952. TELEPHONE (317) 674-6901



June 28, 1976

Mr. Peter E. Holmes
Director of the Office for Civil Rights
Department of Health, Education, and Welfare
Office of the Secretary
Washington, D. C. 20201

Dear Mr. Holmes:

    Marion College has reviewed its current policies and practices in regard to full compliance with the provisions of Title IX. Action has been taken to fully comply with the requirements of Title IX including steps to modify any practice or action required to bring the institution into full compliance in all parts of the act not covered by exemption.

    Pursuant to the provision of section 86:12 of Title IX I request exemption of Marion College from the provisions of sections 86:21 (c); 86:40 (a) and (b); and 86:57 to the extent that they may deal with pregnancy out of wedlock. The sections of the act are inconsistent with the special directions and the general rules of The Wesleyan Church by which Marion College is controlled.

    The special directions of The Wesleyan Church for its members published in the 1972 Discipline of The Wesleyan Church require a standard of moral purity opposing sexual promiscuity and all factors and practices which promote it (see the Discipline p. 51 paragraph 187 (5). Further the general rules of the church require (1) the preservation of the sanctity of the home (see the Discipline p. 36 paragraph 131 (11) and (2) the high regard of marriage vows (see the Discipline p. 36 paragraph 131 (14). The Discipline also requires appropriate discipline for violators (see Discipline p. 37 paragraph 132).

    While it is the expectation of Marion College to apply college rules and regulations equally to men and women there may be occasions in the instance of pregnancy out of wedlock where the evidence against the father may be insufficient to meet due process requirements whereas such would not be the case with the woman. To deal with neither party because we could not deal with both would be tantamount to sanction of a moral situation which violates a tenet of our church.

Mr. Holmes -2- June 28, 1976

Further, I request exemption of Marion College from the provisions of section 86:31 to the extent that appropriate differences may be required between the sexes in regulations concerning dress. The specific tenet of the church with which the requirements of Title IX may be insistent is found in the church's general rules on dress (see Discipline paragraph 131 (8). The application of this tenet does require some differences in the dress code in specific circumstances for example the acceptable style of swim suits for men would be different than the acceptable style of swim suits for women.

It is our understanding that Title IX permits separation of housing by sex (86:32 (b), separation of restroom facilities (86:33), and special requirements for employment such as a women to be resident director in a women's dormitory (86:61). If our understanding of these sections should be in error or at anytime these sections should be interpreted as prohibiting administration based on sex Marion College would desire the opportunity to request specific exemption in these areas, also.

The provision of Title IX for the request of specific exemptions based on religious tenets is appreciated, as is your favorable consideration of these requests.

Sincerely,

*Woodrow Goodman*

Woodrow Goodman
President

OFFICE OF THE PRESIDENT
INDIANA WESLEYAN UNIVERSITY

June 2, 2016

Seth M. Galanter, Principal Deputy Assistant Secretary
U.S. Department of Education, Office for Civil Rights
400 Maryland Avenue S.W.
Washington, DC 20202-1100

**Re: Request for Additional Information**

Dear Mr. Galanter:

Indiana Wesleyan University (IWU or University) is in receipt of your letter from May 13, 2016, whereby the U.S. Department of Education, Office for Civil Rights (OCR) has requested additional information to support the University's Title IX religious exemption request. Specifically, the OCR is requesting clarification on whether The Wesleyan Church controls the University.

There are three key documents that illuminate the authority and control The Wesleyan Church exerts over the University: (1) *The Discipline of The Wesleyan Church*, (2) the *General Board Standards of The Wesleyan Church for Educational Institutions*, and (3) the "Articles of Incorporation of Indiana Wesleyan University". Each of these documents will be highlighted below.

**The Discipline of The Wesleyan Church**

In *The Discipline of The Wesleyan Church*, the general duties of the Church's Education and Clergy Development Division are given. One of the primary duties cited is to:

> Give leadership to and oversee the educational institutions of Wesleyan Higher Education (2365:2)[1] ensuring that biblical Wesleyan theology and values are reflected in every discipline and that the vision and purpose of the educational

---

[1] *The Discipline of The Wesleyan Church*: http://www.wesleyan.org/d/XgmYw/2012WesleyanDiscipline.pdf (last accessed 5/31/16).

DR. DAVID WRIGHT
Indiana Wesleyan University · 4201 South Washington Street · Marion, IN · 46953 · 765.677.2100 · indwes.edu

EXHIBIT J                                                                                                              15

Page 2: Response to Mr. Galanter

institutions and approved seminaries is aligned with and complementary to the vision and purpose of The Wesleyan Church (2341).[2]

*The Discipline* goes on to state that, "Ultimate authority over the educational institutions of The Wesleyan Church rests with the General Conference (1590:13)." In practice this authority is delegated by the General Conference to the General Board, who has the power to (1) establish, merge, or dissolve an educational institution; (2) provide for and deal with all matters pertaining to charters and bylaws; (3) appoint Board of Trustees for the institution; and, (4) to revise The Wesleyan Church's *Standards of the General Board for Educational Institutions* (2362:1-4).[3]

**Standards of the General Board for Educational Institutions**

In order to effectuate its control over Wesleyan educational institutions and their ongoing service to the public (GB-1102), the Church abides by the *Standards of the General Board for Educational Institutions*, a copy of which is enclosed for your convenience. According to the *Standards*, "The structuring of the control of Wesleyan educational institutions shall be such as to perpetuate these institutions as a responsible arm of the total ministry of The Wesleyan Church." (GB-1104). These *Standards* "set forth the detailed regulations by which the GB [General Board] carries out the delegated responsibility of controlling and operating the educational institutions of The Wesleyan Church." (GB-1176).

In describing the governance of Wesleyan higher education, the *Standards* reveal:

> The Church does not believe that education should be isolated from the mainstream of church life. Therefore it attempts to integrate even the governance of its institutions of higher learning with the governance of the Church itself. The General Conference systematizes the financial contributions of its congregations in support of the education institutions, defines certain broad patterns of governance, and then delegates all further power to the GB. The GB in turn determines the *GB Standards for Educational Institutions* and serves as or elects the board of control of each institution. Each board of control is so constituted and its powers so defined as to provide for the integration of the school and the denomination (GB-1124).

**Articles of Incorporation**

Control of Indiana Wesleyan University is not just memorialized in denominational documents, but also in the institution's "Articles of Incorporation", also included for your reference. Article III declares, "This corporation shall be under the control, supervision,

---

[2] *Id.*
[3] *Id.*

Page 3: Response to Mr. Galanter

and patronage of The Wesleyan Church as successor of The Wesleyan Methodist Church of America. The General Conference of said Church shall make regulations from time to time for the general control and to provide for the management of the University."

While stewardship of the University is delegated to the Board of Trustees, the "Articles of Incorporation" are very clear that ultimate authority resides with the General Board of The Wesleyan Church:

> In the event that the Board of Trustees fail for any reason to govern, to manage, or to control the University in agreement with the bylaws and the *Standards for Educational Institutions of The Wesleyan Church*, the General Board of Administration of The Wesleyan Church may assume full responsibilities to govern, to manage, and to control the University including the right to the title of the existing property and assets of the University; providing that the then existing mortgages, liens, or other obligations shall be equally binding upon the General Board of Administration of The Wesleyan Church acting in the capacity of and as successors to the Board of Trustees of the University (Article III, paragraph four).

These three documents speak to the continued interwoven relationship between IWU and The Wesleyan Church. While there is operational autonomy granted through the Board of Trustees, ultimate dominion over the University belongs to The Wesleyan Church.

I trust you will find these documents helpful in making your determination; however, should you have further questions, please do not hesitate to contact me.

Thank you again for your assistance.

Sincerely,

David Wright, PhD
President, Indiana Wesleyan University



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

January 18, 2017

David Wright, Ph.D
President
Indiana Wesleyan University
4201 South Washington Street
Marion, Indiana 46953

Dear President Wright:

I write to respond to your March 18, 2016, letter to the U.S. Department of Education's Office for Civil Rights (OCR), in which you requested a religious exemption for Indiana Wesleyan University (University) of Marion, Indiana, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. In response to a request from OCR on May 13, 2016, you submitted further information on June 2, 2016, about the University's eligibility for exemption from Title IX.

Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance. Title IX and its implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request states that the University is "an institution of The Wesleyan Church." Your June 2016 letter explains that the University's Articles of Incorporation make clear that the University "shall be under the control, supervision, and patronage of The Wesleyan Church as a successor of The Wesleyan Methodist Church of America. The General Conference of said Church shall make regulations from time to time for the general control and to provide for the management of the University." You further state that, according to the University's Articles of Incorporation, "ultimate authority resides with the General Board of The Wesleyan Church." Specifically, "[i]n the event that the Board of Trustees fail for any reason to govern, to manage, or to control the University in agreement with the bylaws and the *Standards for Educational Institutions of The Wesleyan Church*, the General Board of Administration of The Wesleyan Church may assume full responsibilities to govern, to manage, and to control the University."

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

EXHIBIT J                                                                                                       18

Dr. David Wright – page 2

Your March 2016 letter requests a religious exemption from certain provisions of Title IX "to the extent that they are interpreted to curtail the University's freedom to act in accordance with its religious convictions." In support of this request, you cite to the a statement issued by The Wesleyan Church entitled, "A Wesleyan View of Gender Identity and Expression," which declares that "all humans have the same responsibility for stewarding physical attributes and abilities" and that "[g]ender assignment is a divine prerogative." According to your letter, the statement also asserts that "[g]ender non-conformity that disrupts marriage and adult family relationships violates the law of love and the sanctity of the family." Your letter also cites to the Wesleyan Church's statement entitled, "A Wesleyan View of Homosexuality," which declares that "homosexual activity is contrary to the known will of God" and, in quoting *The Discipline of the Wesleyan Church*, declares that "[s]exual relationships outside of marriage and sexual relationships between persons of the same sex are immoral and sinful." Your letter also asserts that the University adopted The Wesleyan Church's *Church and Culture* statement, which "seeks to recognize and preserve the sanctity of human life from conception to natural death and is opposed to the use of induced abortion."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions "to the extent they are interpreted to reach gender identity and/or sexual orientation discrimination, and to the extent they restrict the University's freedom to apply and enforce the Wesleyan Church's statement on the sanctity of life:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing education programs or activities)
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing marital or parental status);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-61 (governing employment).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of sexual orientation or gender identity or restrict the University's freedom to apply and enforce the Wesleyan Church's statement on the sanctity of life and compliance would conflict with the controlling organization's religious tenets.

Dr. David Wright – page 3

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights