

**OFFICE OF THE PRESIDENT**

January 30, 1996

*[handwritten notes in right margin: PETS 2/07 Dear Doreen PS PLEASE CONTROL TO PETS B]*

VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Honorable Norma V. Cantu'
Assistant Secretary for Civil Rights
U.S. Department of Education
330 C Street NW
Room 5000
Washington, D.C. 20202

RE: Lee College, Cleveland, Tennessee

Dear Ms. Cantu':

This letter is an official request for the exemption of Lee College, Cleveland, Tennessee from the requirements of 20 USC 1681 as allowed under Section (a) (3).

Lee College is a private, four-year liberal arts college, affiliated with the Church of God, Cleveland, Tennessee. Lee College has approximately 2,500 undergraduate students and has begun a graduate program in the field of music. Other graduate programs are being investigated and it is anticipated that other graduate programs will be implemented in the near future.

From the time it was founded in 1918, Lee College has been directly associated with the Church of God, Cleveland, Tennessee. A significant portion of its students are in training to become ministers in the Church of God and other denominations. The Church of God selects the college's Board of Directors.

The Church of God is a Protestant evangelical denomination whose basic tenets come directly from the Holy Bible, as interpreted generally by the Church of God. Included in these basic tenets are fundamental religious beliefs concerning morality and proper living. They encompass abstention from certain forms of immorality, including but not limited to pre-marital sex, adultery, homosexuality, and other practices which may fall within such definitions. Beyond teachings and doctrinal commitments propounded by the Church of God, the Church of God also encourages its members to follow certain practical commitments of spiritual disciplines, church commitment, stewardship, and moral purity.

CLEVELAND, TENN. 37311        (615) 472-2111

EXHIBIT K                                                                                  1

January 30, 1996
Page 2

Within the broad concept of "moral purity", the Church of God and Lee College adhere to certain beliefs regarding conduct which may be acceptable to some members of society, but which are not so accepted by the Church of God or Lee College. A firm definition of "immorality" may be impossible, in light of changes in society and its patterns and habits. Therefore, while a strict definition of "immorality" or "moral purity" may not be easy to obtain, certain practices such as sexual involvement either before marriage or with someone other than the marriage partner after the marriage is strictly forbidden by the Church of God, as it interprets scripture. Also included in this definition would be a prohibition against adultery or homosexual behavior.

In light of the above and because of its close ties to the Church of God and in particular, its belief in the right of an institution connected with a religious body to adhere to any and all biblical tenets as interpreted by it and the Church of God, Lee College hereby requests official exemption from the above statutory provisions, and other rights to which it is entitled under applicable law to the extent these practices would be considered discriminatory.

If you require further information or assistance, please do not hesitate to contact me.

Cordially,

*C. Paul Con*

Charles Paul Conn, President
Lee College
Cleveland, Tennessee

EXHIBIT K                                                                                           2

# LEE COLLEGE

COPY



*Office of the President*

March 5, 1996

Honorable Norma V. Cantu'
Assistant Secretary for Civil Rights
U.S. Department of Education
330 C. Street NW - Room 5000
Washington, D.C.  20202

SUBJECT: Lee College, Cleveland, Tennessee

Dear Miss Cantu':

This letter is to serve as an amended official request for exemption of Lee College, Cleveland, Tennessee, under the provisions of 20 USC 1681 (a) (3).

Lee College is a private, four-year liberal arts college, affiliated with the Church of God, Cleveland, Tennessee.  Lee College has approximately 2,500 students and also has begun a graduate program in the field of music.  Other graduate programs are being investigated and planned.

From its original organization in 1918, Lee College has been directly associated with the Church of God, Cleveland, Tennessee.  A significant portion of its students are in training as ministers in the Church of God and other denominations.  The Church of God selects the college's Board of Directors.

The Church of God is a Protestant evangelical denomination basing its basic tenets directly from the Holy Bible, as interpreted generally by the Church of God.  Included in these basic tenets are fundamental religious beliefs concerning morality and proper living.  These basic tenets encompass such things as abstention from certain forms of immorality, including but not limited to pre-marital sex, adultery, homosexuality, and other practices which may fall within such definitions.  Beyond teachings and doctrinal commitments propounded by the Church of God, the Church of God also encourages its members to follow certain practical commitments of spiritual disciplines, church commitment, stewardship, and moral purity.

Cleveland, Tennessee 37320-3450  •  (423) 478-7027   Fax (423) 478-7041

EXHIBIT K  3

Honorable Norma V. Cantu'
March 5, 1995
Page Two

The college adheres to biblical tenets as its standard of faith and practice. The tenets require the college to act in ways which may conflict with specific Section IX regulations. The faculty, employees, and students of the college are expected to conduct themselves in a manner consistent with the tenets of the Christian faith. The college requires, for instance, Christian sexual conduct on the part of its employees and student body. The college's religious tenets for instance, would not permit the college to treat pregnancy, childbirth, or termination of pregnancy of an unmarried woman as a temporary disability. The college expects its personnel to be Christian role models and an employee or student living with a member of the opposite sex out of wedlock would be considered morally delinquent. The college has religious tenets regarding human sexuality, proper living environments, respect for the institution of marriage, language, and modest attire. Scholarship funds, and career offerings related to ministerial training students may be provided differently on the basis of sex. The college also offers sex-separate organizations to students. The college deems it necessary to minister in unique ways to men as compared to women in preparing students to fulfill their roles as mothers and fathers in the context of religious beliefs in the sanctity of the home.

Therefore, this college requests an exemption from 34C.F.R. section 106.21© (Marital or parental status of applicants for admission); 106.40 (Marital or parental status of students); 106.51 (b)(6) (Granting leaves of absence for employees for pregnancy, childbirth, false pregnancy, termination of pregnancy, child care); 106.57 (Marital or parental status of employees); and 106.60(a) (Preemployment inquiries as to marital status).

Further, this institution requests an exemption to 106.31 for membership practices in student organizations which are required by religious tenets to be limited on the basis of sex. We request exemption to 106.36 regarding counseling and use of appraisal and counseling materials to the extent the college's religious tenets will require differentiating counseling between sexes. We request an exemption for 106.39 (Student health and insurance benefits and services).

For those employment positions which are restricted on the basis of sex in accordance with the college's religious tenets we request an exemption to 105.1 (Employment); 106.52 (Employment criteria); 106.53 (Recruitment of employees); 106.55 (Job classification and structure); and 106.59 (Advertising).

Honorable Norma V. Cantu'
March 5, 1996
Page Three

To the extent that counseling, scholarship funds and career funding related to ministerial training students are provided differently on the basis of sex and the requirement that certain sex-separate clubs and organizations exist, the college requests an exemption from 106.31 (Education programs and activities); 106.34 (Access to course offerings); 106.36 (Counseling and use of appraisal in counseling materials); 106.37 (Financial assistance); 106.38 (Employment assistance to students); and 106.14 regarding membership practices of certain organizations.

If you require further information or assistance, please do not hesitate to contact me.

Cordially,

*Charles Paul Conn*

Charles Paul Conn, President
Lee College
Cleveland, Tennessee

CPC:scg



UNITED STATES DEPARTMENT OF EDUCATION

WASHINGTON, D.C. 20202-____

**FILE COPY**

Dr. Charles Paul Conn
President
Lee College
P.O. Box 2430
Cleveland, Tennessee  37320-2430

Dear Dr. Conn:

The Office for Civil Rights (OCR) of the U.S. Department of Education received your request (copy enclosed), dated January 30, 1996, for religious exemption for Lee College (College) from Title IX of the Education Amendments of 1972, and its implementing regulation, at 34 C.F.R. Part 106 (1992). This letter is in response to your request.

In your request, you described several policies and practices at Lee College as consistent with the tenets of the religious organization that controls the College. These policies would violate certain sections of the regulation implementing Title IX (copy enclosed) absent a religious exemption. You supplied information in your request that establishes that the College is controlled by a religious organization and that tenets followed by this organization conflict with specific sections of the Title IX regulation. Therefore, I am granting Lee College an exemption to those sections of the Title IX regulation specified in your request letter.

The exemption is limited to the extent that compliance with the Title IX regulation conflicts with the religious tenets followed by Lee College. Lee College is hereby exempted from the requirements of the following sections of the Title IX regulation: 34 C.F.R. §§ 106.21(c), 106.31, 106.34, 106.36, 106.37, 106.38, 106.39, 106.40, 106.51, 106.52, 106.53, 106.55, 106.57, 106.59, and, 106.60. The basis for our decision to grant this exemption is discussed in detail below.

Your letter indicates that the College is controlled by the Church of God, a Protestant evangelical denomination whose basic tenets come directly from the Holy Bible, as interpreted generally by the Church of God. The Church of God fosters the College and selects the College's board of directors. In addition, a substantial number of the College's students are in training to become ministers in the Church of God. This relationship between the Church of God and the College

Page 2 - Dr. Charles Paul Conn

adequately establishes that Lee College is controlled by a religious organization as is required for consideration for exemption under 34 C.F.R. § 106.12 of the Title IX implementing regulation.

In your letter, you indicate that there are certain biblical tenets that the College uses as its standard of faith and practice which are directly related to issues such as human sexuality, cohabitation, the institution of marriage, and other subjects of a moral character or dimension. The institution practices the following tenets:

1. Of particular relevance and significance is the institution's role in encouraging those intending to marry and become parents to adhere to the College's religious tenets regarding the Christian view of the sanctity of marriage and the importance of family life. Based on these principles, the College is granted by this letter exemption the following Sections of 34 C.F.R.:

    | § 106.40 | Marital or parental status |
    | § 106.51 | Employment |

2. In keeping with the College's religious beliefs, some positions of employment within the institution may be restricted on the basis of gender. Based on these principles, the College is granted by this letter exemption from the following Sections of 34 C.F.R.:

    | § 106.52 | Employment criteria |
    | § 106.53 | Recruitment |
    | § 106.55 | Job classification and structure |
    | § 106.57 | Marital or parental status |
    | § 106.59 | Advertising |

3. The College provides an education to a significant number of students who are training for the ministry. The College may provide different scholarship assistance and academic and professional counseling to ministerial students on the basis of gender. The College may deem it necessary to minister in unique and different ways to men and women in encouraging and preparing them to fulfill their roles as committed Christian citizens. The College is therefore granted by this letter exemption from the following Sections of 34 C.F.R.:

    | § 106.21(c) | Admission; prohibitions relating to |
    | § 106.31 | Education programs and activities |
    | § 106.34 | Access to course offerings |
    | § 106.36 | Counseling and use of appraisal and counseling materials |

Page 3 - Dr. Charles Paul Conn

| | |
|---|---|
| § 106.37 | Financial assistance |
| § 106.38 | Employment assistance to students |

This letter should not be construed to grant exemption to any section of the Title IX regulation not specifically mentioned. If OCR receives a complaint on these issues against the College, we are obligated to determine initially whether the allegations fall within the exemptions granted. Also, in the unlikely event that a complaint alleges that the practices followed by the College are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the College, or if the organization denies that it controls the College, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Susan Bowers
Acting Director,
Policy, Enforcement, and
  Program Service
Office for Civil Rights

Enclosure