

# LIBERTY UNIVERSITY.
## OFFICE *of the* PRESIDENT

January 16, 2014

**Via FedEx Delivery**

Ms. Robin C. Murphy
Team Leader
Office for Civil Rights, District of Columbia Office
U.S. Department of Education
Lyndon Baines Johnson Building
Room 4E214
400 Maryland Avenue, SW
Washington, DC 20202-1475

Re: OCR Complaint No. 11-14-2014

Dear Ms. Murphy:

This letter continues our discussion that grew out of the November 8, 2013 letter Liberty University received from the District of Columbia Office of Civil Rights (OCR), within the U.S. Department of Education. In the November 8th letter, OCR informed Liberty that a complaint had been filed against the University alleging that Liberty's Student Honor Code discriminates against female students because the policy allows the University to discipline students who have abortions.

As we stated in our December 6th response letter, Liberty has no record of imposing any discipline under the abortion provision of its Honor Code. In addition, Liberty has never viewed the violation, identified in the Honor Code simply as "Abortion," to be applicable only to females, and since learning of the complaint, Liberty has elected to revise the code to clarify that it applies equally to both male and female students. Therefore, Liberty maintains that its Honor Code is nondiscriminatory, and does not treat students differently on the basis of gender.

Nevertheless, the Department has asked Liberty to formally claim a religious exemption under 34 C.F.R. § 106.12, by providing (1) the names the religious entity that oversees the University; (2) a description of the specific religious tenets that the University believes are inconsistent with Title IX; and (3) the provisions of the Title IX regulation from which the University claims an exemption.

Ms. Robin C. Murphy
January 16, 2014
Page 2

In the spirit of continuing the discussion, Liberty is pleased to submit the following information:

1. Liberty University, the largest Christian university in the world, was founded in 1971 as a ministry of the Thomas Road Baptist Church ("TRBC"). The University's Articles of Incorporation provide the TRBC Board of Directors with the power to remove any University trustee the Board finds to be "undermining the mission of the [University] as reflected in the Liberty University Doctrinal Position," with the trustee having notice and opportunity to appear before the TRBC board prior to such determination. (*See* Arts. of Inc., art. v, § 7.) The Doctrinal Position of the University may only be amended by the Board of Trustees with the consent of the Board of Directors of TRBC. This ongoing oversight ensures that TRBC's mission-oriented intentions in founding Liberty University continue to be implemented. Thus, the TRBC Board of Directors maintains this continuing oversight of the University's board of trustees and has the power to make its own interpretations on important issues related to the religious doctrine of the University.

2. Since 1971, the mission of the University has been to develop Christ-centered men and women with the values, knowledge, and skills essential for impacting tomorrow's world. Liberty University is synonymous with "Training Champions for Christ," a motto it continues to proudly proclaim. The teachings of the Christian faith are central to the University's purpose, mission, and the holistic development that it seeks to foster in its students. The University's purpose, as stated in its Articles of Incorporation, is to glorify God by "equipping men and women in higher education in fidelity to the Christian faith expressed through the Holy Scriptures, the orthodox religious and moral foundations of that education being a central and perpetual purpose and mission ..." (*See* Arts. Of Inc., art. iii.) The University's mission statement provides that "[e]ducation as the process of teaching and learning, involves the whole person, by developing the knowledge, values, and skills which enable each individual to change freely. Thus it occurs most effectively when both instructor and student are properly related to God and each other through Christ." (*See* Liberty University, Mission Stmt., (Nov. 2, 2010).)

Ms. Robin C. Murphy
January 16, 2014
Page 3

The University has sought to accomplish its purpose and mission in several ways. First, all subjects, both religious and non-religious, are taught from a biblical worldview. Second, the faculty members at the University must affirm the University's Doctrinal Position before instructing students. Third, undergraduate residential students are required to attend convocation services three times a week, and faculty and staff are required to attend services once a week. Collectively, these efforts ensure that the tenets and teachings of the Christian faith anchor each student's education and growth at Liberty.

Liberty takes pride in its Christian form of education, and its unwavering commitment to the faith-based principles that it instills in each student that attends the University. Like many of Liberty's disciplinary policies, the policy regarding student abortions reflects a bona fide and sincerely-held religious conviction, maintained in accordance with the established religious tenets upon which Liberty University was founded. The genuine religious and historic Biblical basis for opposing abortion, as derived from Holy Scripture, is clear and widely recognized in the United States, and is held out unequivocally as TRBC doctrine. That doctrine is proclaimed in numerous books, sermons and public statements by the late Rev. Dr. Jerry Falwell, Sr., the founder of both TRBC and the University.

3. As we have repeatedly stated, Liberty believes that its disciplinary policy is nondiscriminatory. However, to the extent that the Department is concerned that Liberty's policy may run counter to the prohibitions on discrimination under Title IX, the University contends that its policy regarding abortion is founded on religious tenets that must be exempt under Title IX as a permissible exercise under the First Amendment. Specifically, in this context, Liberty claims exemption from the provisions of 34 C.F.R. 106.31(b) on the basis that Liberty's policy is founded on and consistent with its religious tenets and those of TRBC.

Ms. Robin C. Murphy
January 16, 2014
Page 4

Please do not hesitate to contact us if you require further information or clarification regarding Liberty's position on this matter.

Sincerely,

Jerry L. Falwell, Jr.
Chancellor and President

cc: Mark Hine, Senior Vice President for Student Affairs
Ronald S. Godwin, Senior Vice President for Academic Affairs and Provost
David Corry, Esq., General Counsel
Kay Bhagat, Esq., Kay.Bhagat@ed.gov
Jane Ehrenfeld, Esq., Jane.Ehrenfeld@ed.gov
Martha Russo, Esq., Martha.Russo@ed.gov



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

April 22, 2014

Jerry L. Falwell, Jr.
Chancellor and President
Liberty University
1971 University Boulevard
Lynchburg, VA 24515

Dear Mr. Falwell:

The purpose of this letter is to respond to your January 16, 2014, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Liberty University (University) of Lynchburg, Virginia from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681-1688, as it relates to imposing discipline on students who have abortions. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance. The implementing regulation at 34 C.F.R. § 106.40(b) prohibits a recipient from discriminating against any student on the basis of a student's pregnancy, childbirth, false pregnancy, termination of pregnancy or recovery therefrom.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to educational institutions controlled by religious organizations to the extent that application of Title IX would be inconsistent with the institution's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University was founded "as a ministry of the Thomas Road Baptist Church ('TRBC')" and that the University's Articles of Incorporation state that the University's purpose is "to glorify God by 'equipping men and women in higher education in fidelity to the Christian faith expressed through the Holy Scriptures, the orthodox religious and moral foundation of that education being a central and perpetual purpose and mission.'" You note that faculty members must affirm the University's Doctrinal Position before instructing students, and that faculty, staff, and undergraduate residential students are required to attend convocation services. Your request states that "the policy regarding student abortions reflects a bona fide and sincerely-held religious conviction, maintained in accordance with the established religious tenets upon which Liberty University was founded. The genuine religious and historic Biblical basis for opposing abortion, as derived from Holy Scripture is . . . held out unequivocally as TRBC doctrine."

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

EXHIBIT L                                                                                                                    5

Jerry L. Falwell, Jr. – page 2

You further state that, for these reasons, the University is requesting an exemption from Title IX and its implementing regulation at 34 C.F.R. § 106.31(b) to allow the University to maintain a policy allowing for the discipline of students who have an abortion. Because 34 C.F.R. § 106.40(b) is the provision that would be most applicable to such a policy, we instead interpret your request as a request for a religious exemption from 34 C.F.R. § 106.40(b). Based on the foregoing considerations, the University is exempt from the requirements of 34 C.F.R. § 106.40(b) governing termination of pregnancy.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

*[signature]*

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT L                                    6