July 08, 2015

Catherine Lhamon, Assistant Secretary
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, DC  20202-1100

    Re:    Request for Religious Exemption from Certain Applications of Title IX

Dear Ms. Lhamon:

    I hereby request, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights acknowledge that Toccoa Falls College is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations, to the extent that they are interpreted to curtail the College's freedom to respond to individuals in accordance with its religious convictions.  As President of the College, I am the "highest ranking official of the institution," 34 C.F.R. § 106.12(b), and thus qualified to seek these exemptions.

    Toccoa Falls College was chartered in 1939 and is an affiliate college of the Christian and Missionary Alliance (C&MA).[1]  The mission of Toccoa Falls College is to "glorify God through seeking and developing Christian servant leaders who will impact their world with the love and message of Jesus Christ."[2]

    As an affiliate college of the C&MA, Toccoa Falls adheres doctrinally to the beliefs of the denomination.[3]  The College's policy on the Faith Community and Mission of the College (enclosed) which all members of the College community, including students and faculty, are required to adhere to, provides as follows with regard to sexuality and gender:

> The creation of human beings was a special creative act of God. God created human beings, male and female, in His own image and thus they are unique with respect to all other life in the created order. Adam and Eve, equally made in the image of God, belonged to the created order that God himself declared to be very good, serving as God's agents to care for, cultivate, and govern creation, living in holy and devoted fellowship with their Maker.  Gender is not a cultural construct, but a divine gift assigned by the Creator at conception.  As such, students are not to adopt

---

[1] http://www.tfc.edu/about-tfc/what-we're-about/history/
[2] http://www.tfc.edu/about-tfc/what-we're-about/
[3] http://www.tfc.edu/about-tfc/what-we're-about/history/; http://www.tfc.edu/about-tfc/what-we're-about/; *see also* Policy on the Faith Community and Mission of Toccoa Falls College (attached).

Letter to Catherine Lhamon
July 08, 2015
Page 2 of 4

a gender identity different from the one gifted them by their Creator. This gendered ordering of creation is to be accepted, honored, and reflected in sexual intimacy.[4]

As you know, the Office for Civil Rights has not issued regulations or guidance explaining how an educational institution's response to a transgender individual might violate Title IX and its accompanying regulations, though the Department of Education recently issued guidance on sexual violence prevention which incorporates discrimination based on "gender identity" as part of "sex discrimination" under the statute.[5] And as you also know, the resolution agreement[6] between the Arcadia Unified School District and ED OCR (and the Department of Justice) requires that school district to permit transgender students to use the restroom, locker room, and living accommodations of their choice, and to participate in athletic programs as a member of the sex to which they believe they belong.[7] It is thus reasonable to suppose that ED OCR believes that such responses are required by Title IX. It is also reasonable to presume that your office interprets Title IX to impose gender identity non-discrimination obligations upon covered institutions in the employment context. To the extent these suppositions are correct, it appears as though compliance with Title IX, as interpreted by ED OCR to reach transgender "discrimination," would be inconsistent with the religious tenets of Toccoa Falls College.

Additionally, recently the EEOC has begun openly declaring that the ban on "sex" discrimination in Title VII of the Civil Rights Act of 1964 also forbids discrimination on the basis of "sexual orientation."[8] It is conceivable that the Department of Education's Office for Civil Rights could interpret Title IX of the Education Amendments of 1972 the same way. To the extent these suppositions are correct, it appears as though compliance with Title IX, if interpreted by ED OCR to reach sexual orientation "discrimination," would also be inconsistent with the religious tenets of Toccoa Falls College, and the College therefore seeks exemption on this basis as well out of an abundance of caution.

Toccoa Falls College's policies also contain a summary of our beliefs regarding the sanctity of human life:

> Likewise, Toccoa Falls College subscribes to the biblical belief that all life is sacred from conception to death, and that individuals are known by God from before the foundation of the world, and that human life begins at conception and that death is under the sovereignty of God and not man. The college accordingly believes that no procedures should be performed for the primary objective of terminating a pregnancy and taking the life of an unborn child (such procedures are referred to

---

[4] *See* Policy on the Faith Community and Mission of Toccoa Falls College (attached).
[5] U.S. Department of Education, Questions and Answers on Title IX and Sexual Violence, *available at* http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf at 5 ("Title IX's sex discrimination prohibition extends to claims of discrimination based on gender identity or failure to conform to stereotypical notions of masculinity or femininity and OCR accepts such complaints for investigation.")
[6] Resolution Agreement Between the Arcadia Unified School District, the U.S. Department of Education, Office for Civil Rights, and the U.S. Department of Justice, Civil Rights Division, *available at* http://www.nclrights.org/wp-content/uploads/2013/09/Arcadia_Resolution_agreement_07.24.2013.pdf.
[7] *Id.*
[8] *See* http://www.macon.com/2015/03/30/3668458_eeoc-issues-determination-letter.html?rh=1

Letter to Catherine Lhamon
July 08, 2015
Page 3 of 4

herein as abortions) except in rarest of circumstances where other biblical, moral principles prevail, such as where it is medically impossible to save the life of both the mother and the child. Similarly, the college believes that no medical procedure should be performed that takes the life of an individual prematurely (such procedures are referred to as euthanasia). The college's beliefs further prohibit paying for or otherwise facilitating such procedures.

As dictated by these beliefs, the college as an organization shall not fund abortions in any manner, including through a health care benefit plan that covers prescription drugs that induce abortions, except in the foregoing extraordinary circumstances unless in a particular situation (i) any such drug is prescribed and used solely for a non-abortive therapeutic treatment of a covered medical condition or for an abortion in the foregoing extraordinary circumstances and (ii) coverage is approved by the plan's governing body or the college's appropriate authority. In addition, the college shall not participate through its health care benefit plan in a program that uses the plan as a means for providing drugs used to induce abortion, except in the foregoing extraordinary circumstances. Any requirement to facilitate abortions or euthanasia by participating in such a program, and any penalty for failing to participate in such a program, would directly and substantially burden and undermine the college's exercise and expression of its biblical beliefs.[9]

Toccoa Falls College accordingly requests that your office acknowledge that the College is exempt from Title IX and the following implementing regulations (to the extent they are interpreted to reach gender identity or sexual orientation discrimination, and to the extent they restrict the College's freedom to apply and enforce its beliefs and policy regarding human life):

34 C.F.R. § 106.21 (admission)
34 C.F.R. § 106.22 (preference in admission)
34 C.F.R. § 106.23 (recruitment)
34 C.F.R. § 106.31 (education programs or activities)
34 C.F.R. § 106.32 (housing)
34 C.F.R. § 106.33 (comparable facilities)
34 C.F.R. § 106.34 (access to classes and schools)
34 C.F.R. § 106.36 (counseling)
34 C.F.R. § 106.37 (financial assistance)
34 C.F.R. § 106.38 (employment assistance to students)
34 C.F.R. § 106.39 (health and insurance benefits and services)
34 C.F.R. § 106.40 (marital or parental status)
34 C.F.R. § 106.41 (athletics)
34 C.F.R. § 106.43 (standards for measuring skill or progress in physical education classes)
34 C.F.R. § 106.51-61 (relating to employment)

---

[9] *Id.*

EXHIBIT N                                                                                                   3

Letter to Catherine Lhamon
July 08, 2015
Page 4 of 4

    Thank you in advance for your consideration. I look forward to hearing from you soon. If you require anything further, please do not hesitate to contact me.

                Sincerely,

                Robert M. Myers
                President, Toccoa Falls College

EXHIBIT N      4



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

July 31, 2015

Robert M. Myers
President
Toccoa Falls College
P.O. Box 800777
107 Kincaid Drive
Toccoa Falls, GA 30598

Dear President Myers:

I write to respond to your July 8, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for Toccoa Falls College (College) of Toccoa Falls, Georgia from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the institution's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your request explains that the College is an affiliate college of the Christian and Missionary Alliance (C&MA) and, as such, "adheres doctrinally to the beliefs of the denomination." According to your letter, the College requires all members of the College community, including students and faculty, to adhere to its policy on the Faith Community and Mission of the College (Policy). The Policy, which was included with your letter, explains that the College "has adopted the statement of faith set forth in the C&MA Manual." According to the Policy, the College's representatives are "expected to (i) model these [C&MA's] biblical beliefs and standards for others, (ii) perform all of their responsibilities as a service to God and (iii) comply with the following obligations: . . . affirm their agreement with the C&MA's statement of faith and other biblical beliefs[, . . .] endeavor to conduct themselves in a manner that affirms biblical standards of conduct in accordance with theirs and the C&MA's biblical beliefs . . . [, and] be ready, willing, and able to lead or contribute to distinctly Christian activities such as worship or prayer services." The Policy further provides that the College may dismiss a representative from his or her position if the representative does not comply with these obligations.

Your exemption request states that the Policy provides that "God created human beings, male

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

EXHIBIT N                                                                                                              5

and female . . . As such, students are not to adopt a gender identity different from the one gifted them by their Creator. This gendered ordering of creation is to be accepted, honored, and reflected in sexual intimacy." Your request explains that "compliance with Title IX, as interpreted by ED OCR to reach transgender 'discrimination,' would be inconsistent with the religious tenets of Toccoa Falls College."

Your request also points to a recent EEOC determination letter in which "the EEOC has begun openly declaring that the ban on 'sex' discrimination in Title VII of the Civil Rights Act of 1964 also forbids discrimination on the basis of 'sexual orientation.'" You explain that if Title IX were "interpreted by ED OCR to reach sexual orientation 'discrimination,' [compliance] would also be inconsistent with the religious tenets of Toccoa Falls College."

Your exemption request also states that the College's policies provide for the sanctity of human life. According to your letter, the policies state that the College "subscribes to the biblical belief that all life is sacred from conception to death . . . The college accordingly believes that no procedures should be performed for the primary objective of terminating a pregnancy . . . except in rarest circumstances where other biblical, moral principles prevail, such as where it is medically impossible to save the life of both the mother and the child. The college's beliefs further prohibit paying for or otherwise facilitating such procedures."

You state that, for these reasons, the College is requesting an exemption from the following regulatory provisions "to the extent they are interpreted to reach gender identity or sexual orientation discrimination, and to the extent they restrict the College's freedom to apply and enforce its beliefs and policy regarding human life:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preferences in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling and use of appraisal and counseling materials);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-61 (governing employment).

The College is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity or sexual orientation, or restrict the College's freedom to apply and enforce its beliefs and policy regarding human life and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education