**Paul Carlos Southwick (OSB 095141)**
**Religious Exemption Accountability Project**
**Paul Southwick Law, LLC**
8532 N. Ivanhoe St. #208,
Portland, OR 97203
Email: paul@paulsouthwick.com
Phone: 503-806-9517

**Timothy R. Volpert (OSB 814074)**
**Tim Volpert PC**
211 NE Hancock St. Ste. 2B
Portland, OR 97212
Email: tim@timvolpertlaw.com
Phone: 503-703-9054

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| Elizabeth HUNTER; Veronica Bonifacio PENALES; Alex DURON; Zayn SILVA; Rachel MOULTON; Victoria Joy BACON; Avery BONESTROO; Nathan BRITTSAN; Hayden BROWN; Devin BRYANT; Consolata BRYANT; Brooke C.; Gary CAMPBELL; Tristan CAMPBELL; Natalie CARTER; Saren CRAIG; Mortimer HALLIGAN; Rachel HELD; Lauren HOEKSTRA; Chandler HORNING; Louis JAMES; Jonathan JONES; Jamie LORD; Ashtin MARKOWSKI; Cameron MARTINEZ; Joanna MAXON; Mackenzie MCCANN; Darren MCDONALD; Scott MCSWAIN; Faith MILLENDER; Jaycen MONTGOMERY; Journey MUELLER; Jake PICKER; Danielle POWELL; Megan STEFFEN; Justin TIDWELL-DAVIS; Daniel TIDWELL-DAVIS; Spencer J. VIGIL; Lucas WILSON; and Audrey WOJNAROWISCH, on behalf of themselves and all others similarly situated, | Case No. 6:21-cv-00474-AA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER** |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF EDUCATION; and Suzanne GOLDBERG, in her official capacity as Acting Assistant Secretary for the Office of Civil Rights, U.S. Department of Education.<br>Defendants. | |

# Table of Contents

I.     Introduction.................................................................................................... 7

II.    ARGUMENT.................................................................................................. 9

   A.    Plaintiffs' Easily Satisfy Constitutional Standing Requirements ................. 9

       1.    It is uncontested that Defendants fund invidious discrimination at avowedly discriminatory educational institutions Plaintiffs attend or attended. ............................................. 9

       2.    It is uncontested that Defendants facilitate and encourage invidious discrimination at avowedly discriminatory educational institutions Plaintiffs attend or attended. ..................................... 18

       3.    The specific acts of discrimination at Plaintiffs' NFBCUs are also attributable to Defendants because of the state action doctrine. ........................................................... 19

       4.    It is uncontested that TIXRE is not required by the Free Exercise Clause. ...................... 20

   B.    Venue is proper in Eugene................................................................21

   C.    This Court should apply the "serious questions" test...................................23

   D.    Plaintiffs raise serious questions and are likely to succeed on the merits of each claim.        24

       1.    Equal Protection Guarantees of Fifth Amendment ............................................. 24

       2.    This Court should apply strict scrutiny to Plaintiffs' Due Process claim regarding the burden on the fundamental right to same-sex marriage. ................................................... 25

       3.    Administrative Procedure Act (APA) Claim Likely to Succeed. ......................................... 25

       4.    Establishment Clause Claim Likely to Succeed.................................................... 28

       5.    RFRA Claim Likely to Succeed................................................................... 35

III.   CONCLUSION ............................................................................. 35

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

Page(s)

Cases

*Adidas Am., Inc. v. Cougar Sport*, Inc.,
   169 F. Supp. 3d 1079 (D. Or. 2016) ........................................................................ 19
*Ali v. Carnegie Inst. of Wash.*,
   967 F. Supp. 2d 1367 (D. Or. 2013) ................................................................ 21, 23
*Allen v. Wright*,
   468 U.S. 737 (1984) ................................................................................... 13, 14
*Ariz. Christian Sch. Tuition Org. v. Winn*,
   563 U.S. 125 (2011) ................................................................................................ 30
*Barnes-Wallace v. City of San Diego*,
   530 F.3d 776 ............................................................................................... 13, 14
*Bibiano v. Lynch*,
   834 F.3d 966 (9th Cir. 2016) ................................................................................. 22
*Bishop v. Starkville Academy*,
   442 F.Supp. 1176 (N.D. Miss. 1977) ...................................................................... 10
*Brown v. Board of Education*,
   347 U.S. 483 (1954) ............................................................................................... 12
*Brumfield v. Dodd*,
   425 F.Supp. 528 (E.D. La. 1976) ........................................................................... 11
*Burton v. Wilmington Parking Authority*,
   365 U.S. 715 ......................................................................................................... 18
*Cannon v. University of Chicago*,
   441 U.S. ................................................................................................................. 30
*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
   265 F. Supp. 3d 1196 (D. Or. 2017) ...................................................................... 20
*Cornelius v. Benevolent Protective Order of Elks*,
   382 F. Supp. 1182 (D. Conn. 1974) ......................................................................... 8
*Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*,
   483 U.S. 327, 107 S. Ct. 2862 (1987) ............................................................ 31, 32
*Cutter v. Wilkinson*,
   544 U.S. 709 (2005) ............................................................................................... 30
*Deal v. Mercer Cnty. Bd. of Educ.*,
   911 F.3d 183 (4th Cir. 2018) ................................................................................. 30
*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ................................................................................. 21
*Defenders of Wildlife v. U.S. EPA*,
   420 F.3d 946 (9th Cir. 2005) ................................................................................. 24
*Elrod v. Burns*,
   427 U.S. 347 (1976) ............................................................................................... 16
*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*,
   494 U.S. 872 (1990) ............................................................................................... 29

REPLY ISO MOTION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

*Esurance Ins. Co. v. Hamm*,
  387 F. Supp. 3d 1134 (D. Or. 2019) ........................................................... 21
Flast v. Cohen,
  392 U.S. 83 (1968) .............................................................................. 27, 28
*For The Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................... 22
*Fox TV Stations v. BarryDriller Content Sys.*,
  915 F. Supp. 2d 1138 (C.D. Cal. 2012) ....................................................... 22
*Green v. Connally*,
  330 F. Supp. 1150 (D.D.C. 1971) ............................................................... 11
*Griffin v. County School Board of Prince Edward County*,
  377 U.S. 218 (1964) ................................................................................. 10
*Guillory v. Administrators of Tulane University of La.*,
  203 F.Supp. 855 (E.D. La. 1962) ................................................................ 11
*Hall v. American Nat'l Red Cross*,
  86 F.3d 919 (9th Cir. 1996) ...................................................................... 34
*Heckler v. Mathews*,
  465 U.S. 728 (1984) ................................................................................. 12
*Hein v. Freedom From Religion Foundation*,
  127 S. Ct. 2553 (2007) .......................................................................... 27, 28
*Hibbs v. Winn*,
  542 U.S. 88 (2004) ................................................................................... 11
*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
  480 U.S. 136 (1987) ....................................................................... 29, 30, 31
*Innovation Law Lab v. Nielsen*,
  310 F. Supp. 3d 1150 (D. Or. 2018) ........................................................... 22
*Jackson v. Birmingham Bd. of Educ.*,
  544 U.S. 167 (2005) ................................................................................. 28
*Latta v. Otter*,
  771 F.3d 456 (9th Cir. 2014) ..................................................................... 23
*Lawrence v. Texas*,
  539 U.S. 558 (2003) ................................................................................. 25
Lemon v. Kurtzman,
  *403 U.S. 602 (1971)* ............................................................................... 31
*Lemon*,
  , 403 U.S. at 612-13 ................................................................................. 31
*Litman v. George Mason University*,
  5 F.Supp.2d 366 (E.D. Va. 1998) ................................................................ 29
*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
  138 S. Ct. 1719 (2018) .............................................................................. 12
*Milonas v. Williams*,
  691 F.2d 931 (10th Cir. 1982) ................................................................... 18
*Moton v. Lambert*,
  508 F.Supp. 367 (N.D. Miss. 1981) ........................................................ 11, 15

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING  ORDER  AND  ORDER  TO  SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

*NAACP v. Thompson,*
  648 F. Supp. 195 (D. Md. 1986)......................................................................... 17
*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
  508 U.S. 656 (1993) ...................................................................................... 15
*NLRB v. Hanna Boys Ctr.,*
  940 F.2d 1295 (9th Cir. 1991) .......................................................................... 31
*Norwood v. Harrison,*
  340 F.Supp. 1003 (N.D. Miss. 1972)..................................................................... 9
*Norwood,*
  413 U.S. ........................................................................................ 9, 10, 15, 19
*P.O.P.S. v. Gardner,*
  998 F.2d 764 (9th Cir. 1993) ...................................................................... 23, 24
*Payton v. New York,*
  445 U.S. 573 (1980) ...................................................................................... 25
*Pennsylvania v. West Virginia,*
  262 U.S. 553 (1923) ...................................................................................... 16
*Peterson v. Highland Music, Inc.,*
  140 F.3d 1313 (9th Cir. 1998) .......................................................................... 21
*Pitts v. Department of Revenue,*
  333 F. Supp. 662 (E.D. Wis. 1971) ..................................................................... 13
*Poindexter v. Louisiana Financial Assistance Commission,*
  258 F.Supp. 158 (E.D. La.1966)...................................................................... 11, 14
*Poindexter v. Louisiana Financial Assistance Comm'n,*
  275 F.Supp. 833 (E.D.La.1967).......................................................................... 11
*Reitman v. Mulkey,*
  387 U.S. 369 (1967) ...................................................................................... 17
*Sch. Dist. of Abington Twp.,*
  374 U.S. 203 ............................................................................................. 26
*Simon v. Eastern Ky. Welfare Rights Organization,*
  426 U.S. 26 (1976) ....................................................................................... 15
*Smith v. Tumalo Irrigation Dist.,*
  500 F. Supp. 3d 1148 (D. Or. 2020).................................................................... 22
*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016)................................................................................... 31
*Texas Monthly, Inc. v. Bullock,*
  489 U.S. 1 (1989) ........................................................................................ 29
*Tsao v. Desert Palace, Inc.,*
  698 F.3d 1128 (9th Cir. 2012) .......................................................................... 25
*Valley Forge Christian College v. Americans for the Separation of Church and State,*
  454 U.S. 464 (1982) .................................................................................. 13, 27
*Walz v. Tax Commission,*
  397 U.S. 664 (1970) ...................................................................................... 31
*Warth v. Seldin,*
  422 U.S. 490 (1975) ...................................................................................... 24

REPLY ISO MOTION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

*Williams v. California*,
  990 F. Supp. 2d 1009 (C.D. Cal. 2012) .................................................................... 31
*Winter v. Natural Res. Def.* Council,
  555 U.S. 7 (2008) ..................................................................................................... 22
*Zablocki v. Redhail*,
  434 U.S. 374 (1978) .................................................................................................. 24
Goldsboro Christian Schools, Inc. v. United States of America,
  1982 WL 1044699 (1982) ........................................................................................ 27
*Myers v. Nat'l Tenant Network, Inc.*, No. 3:14-ov-00327-AC,
  2017 U.S. Dist. LEXIS 227618, at *4 (D. Or. Nov. 25, 2017)*Myers v. Nat'l Tenant Network,
  Inc.*, No. 3:14-ov-00327-AC, 2017 U.S. Dist. LEXIS 227618, at *4 (D. Or. Nov. 25, 2017).. 20
*Goldsboro Christian Schools, Inc. v. United States of America*,
  1982 WL 1044700 (1982) .................................................................................... 12, 19
*Williams v. Invenergy*, No. 2:13-cv-01391-AC,
  2016 U.S. Dist. LEXIS 200013, at *9 (D. Or. July 27, 2016)*Williams v. Invenergy*, No. 2:13-
  cv-01391-AC, 2016 U.S. Dist. LEXIS 200013, at *9 (D. Or. July 27, 2016)......................... 21

Statutes

42 U.S.C.S. § 2000bb-4 ................................................................................................ 33

Other Authorities

*Loving the Sinner: Evangelical Colleges and their LGB Students*,
  35 Quinnipiac L. Rev. 147 (2017)............................................................................... 7
Religious Exemptions to Title IX,
  65 Kan. Law Rev. 327 ............................................................................................... 25

6

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

## MEMORANDUM OF LAW

### I.    Introduction

The Constitution prohibits the government from funding Whites Only educational institutions. Likewise, the Constitution prohibits the government from funding educational institutions that prohibit interracial dating and marriage. All such institutions perpetuate invidious discrimination in education. Invidious discrimination occurs where educational institutions treat a class of students unequally in a manner that is malicious, hostile, or damaging. The First Amendment often requires society to tolerate educational institutions that practice invidious racial discrimination, so long as those institutions are privately funded and operated. However, the Fifth and Fourteenth Amendments prohibit the government from funding educational institutions that practice invidious discrimination, whether through Whites Only policies or policies that prohibit students from dating or marrying someone of a different race.

Defendants do not contest these assertions in their briefing, nor could they, as the Supreme Court repeatedly affirms these principles. Instead, the Defendants ignore Plaintiffs' arguments regarding the Constitutional limitations on government funding for invidious discrimination in education. But such limitations cannot be ignored. They cannot be ignored because religious beliefs regarding separation of the races and the immorality of interracial marriage and dating, like religious beliefs regarding the inferiority of LGBTQ+ people and the immorality of same-sex relationships, persist in our society but must not be allowed to infect the administration of government programs.

Oppressive religious beliefs that treat minorities as inferior must be tolerated in the private sphere. However, the racist, religious beliefs of some private educational institutions, like Bob

7

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

Jones University in years past, do not give the government license to fund Whites Only schools. Likewise, the anti-LGBTQ+, religious beliefs of some private educational institutions, like Bob Jones University in the present, do not give the government license to fund Heterosexual Only schools or Cisgender Only schools. Bob Jones University once declared its campus a "Whites Only Zone," until 1975, then an "Interracial Marriage-Free Zone," until 2000. Now, Bob Jones University continues to declare its campus a "Homosexual-Free Zone" and a "Transgender-Free Zone." However, these kinds of zones have "the practical effect of declaring open season on gay and transgender people."[1] Open season is where the restrictions on the hunting of certain types of wildlife are lifted.

Here, the religious exemption to Title IX lifts the federal restrictions on targeting LGBTQ+ students for invidious discrimination, allowing Bob Jones University to literally hunt down homosexual students within the walls of its campus, like it did with Plaintiff Elizabeth Hunter. Many LGBTQ+ students in these environments feel trapped and alone, abandoned by their schools, their government, and the larger LGBTQ+ community. Some chose to end their lives. As described by one student: "I ended up at a university that maintains a policy against homosexuality and I know that there are a lot of you out there who are going right now to CCCU[2] schools. And I know for myself that I felt a lot of times forgotten by the greater LGBT community. And after two and a half years of being in that spot I decided to end my life this year."[3]

---

[1] Economist, Life beyond Europe's rainbow curtain, https://www.economist.com/europe/2020/11/21/life-beyond-europes-rainbow-curtain (referring to the LGBT-free Zones declared in Poland).
[2] Referring to proposed-Intervenor Council for Christian Colleges & Universities (CCCU).
[3] Hubertz, Elizabeth J., *Loving the Sinner: Evangelical Colleges and their LGB Students*, 35 QUINNIPIAC L. REV. 147, 200 (2017).

REPLY   ISO   MOTION   FOR   TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

Plaintiffs and other LGBTQ+ students at NFBCUs often feel desperate and alone because they are abandoned by their families, communities and colleges after coming out as LGBTQ+. They do not have parents, mentors, Title IX coordinators or other adults in their life to advocate on their behalf.

However, this litigation is their opportunity to stop the suffering that they and others like them have endured for far too long. Plaintiffs' constitutional rights, indeed their physical safety and security, depend on immediate injunctive relief from this Court.

## II.    ARGUMENT

### A.  Plaintiffs' Easily Satisfy Constitutional Standing Requirements

Plaintiffs' standing is based on three distinct, and independent, grounds: (1) Defendants' funding of invidious discrimination at avowedly discriminatory educational institutions; (2) Defendants' facilitation and encouragement of invidious discrimination through preemptive religious exemption letters, OCR's informal and formal guidance to NFBCUs, and the use of TIXRE to close Title IX complaints filed by Plaintiffs and other LGBTQ+ students at NFBCUs; and (3) the specific acts of discrimination by NFBCUs attributable to Defendants because of the state action doctrine.

### 1.  It is uncontested that Defendants fund invidious discrimination at avowedly discriminatory educational institutions Plaintiffs attend or attended.

Defendants concede that they provide federal financial assistance to avowedly discriminatory educational institutions that practice invidious discrimination. Defendants concede that Plaintiffs attend, attended, or attempted to attend some of these avowedly discriminatory

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

educational institutions that practice invidious discrimination. Given such concessions, Plaintiffs have more than sufficiently demonstrated standing.

To begin, Defendants directly injure Plaintiffs, stigmatically and procedurally, by (a) certifying NFBCUs as meriting Title VI funds, and (b) providing billions in direct and indirect federal financial assistance to avowedly discriminatory educational institutions. *The federal financial assistance itself*, apart from any specific conduct by NFBCUs,[4] unconstitutionally funds, supports, and condones invidious discrimination in violation of Plaintiffs' equal protection rights under the Fifth Amendment. *Norwood*, 413 U.S. at 467 (Constitution requires government to "steer clear…of giving significant aid to institutions that practice racial or other invidious discrimination.");[5] *see also Bob Jones University v. Johnson*, at 608, aff'd without published opinion, 529 F.2d 5143 (4th Circ. 1975) ("Each time the VA approves an application for benefits to be used at Bob Jones, it extends a benefit to whites which it cannot grant to some blacks. While this is an outcome of private discrimination, it is clear that no[t] only is the government prohibited from authoring state sponsored discrimination, it is also prohibited from acquiescence in the discriminatory practices of public or private entities which participate in the federal program."); .

---

[4] The degree of government support necessary for a conclusion that the Constitution prohibits such support is lower than the degree of government support necessary to conclude that the Constitution prohibits the underlying private discrimination. *See Cornelius v. Benevolent Protective Order of Elks*, 382 F. Supp. 1182, 1189 (D. Conn. 1974) ("it is one thing to sue on Fourteenth Amendment grounds to halt state assistance to an otherwise private entity; it is quite another to seek on those grounds to restrain the entity in its own conduct. If the latter suit is successful, the entity may have no choice but to alter its practices; if the former suit is successful, the entity can choose between continuing to practice racial discrimination at the cost of forfeiting further state assistance, or abandoning its discriminatory practices and policies so that the state might constitutionally continue its assistance.").

[5] Defendants argue that *Norwood* does not apply here because it must be limited to the context of race discrimination in Mississippi, a state subject to a federal desegregation order. Dkt. 56, p. 23-24. Not so. As noted above, *Norwood* forbids governments from financially aiding institutions that practice racial "*or other invidious discrimination*." 413 U.S. at 467 (emphasis added).

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

10

In *Norwood*, the plaintiffs were Black students and their parents. They filed a class action on behalf of Black students throughout Mississippi to enjoin the enforcement of a state program providing textbook assistance to private schools that excluded Black children. 413 U.S. at 457. The District Court below found that Black children attending public schools had standing to challenge the program of state textbook assistance to racially segregated private schools. *Norwood v. Harrison*, 340 F.Supp. 1003, 1007 (N.D. Miss. 1972). The Supreme Court, without specifically addressing standing, sided with the Black students and ordered the District Court to provide injunctive relief in the form of an order requiring schools to certify their compliance with non-discrimination requirements prior to receiving state assistance through the textbook program. *Norwood*, 413 U.S. at 471; *see also Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, 231-33 (1964) (finding standing and equal protection violation where Black school children sued the County School Board to, *inter alia*, enjoin payment of public funds to support private schools which excluded students on account of race).

In *Norwood*, the Court explained that when textbook expenses are "born by the State, the economic consequence is to give aid to the enterprise; if the school engages in discriminatory practices the State by tangible aid in the form of textbooks thereby gives support to such discrimination. Racial discrimination in state-operated schools is barred by the Constitution and '(i)t is also axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to do." 413 U.S. at 464-65 (internal citations omitted).

The Supreme Court and lower federal courts have taken a strong and consistent stance that Black students have standing to stop their government from funding Whites Only private schools,

11

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRICTING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

sectarian as well as secular, or private schools that prohibit interracial marriage. *See e.g. Norwood*, 413 U.S. at 463 ("This Court has consistently affirmed decisions enjoining state tuition grants to students attending racially discriminatory private schools."); *Bishop v. Starkville Academy*, 442 F.Supp. 1176 (N.D. Miss. 1977) (holding that Black schoolchildren "who contend that the state defendants' actions … constitute significant aid to private schools which may be racially discriminatory have 'alleged such a personal stake in the controversy' as to warrant (their) invocation of federal court jurisdiction and to justify exercise of (this) court's remedial powers on (their) behalf.'"); *Moton v. Lambert*, 508 F.Supp. 367 (N.D. Miss. 1981)[6], (finding standing for parents of Black children who challenged state assistance to private discriminatory schools); *Guillory v. Administrators of Tulane University of La.,* 203 F.Supp. 855 (E.D. La. 1962) ("The state can no more dictate discrimination in private institutions than it can segregate its own facilities…the Constitution never sanctions racial discrimination in our schools and colleges, no matter how 'private' they may claim to be… private ownership or operation of a facility impressed with a public interest does not automatically insulate it from the reach of the Fourteenth Amendment."); *Green v. Connally,* 330 F. Supp. 1150 (D.D.C. 1971): ("This is a 'rule of thumb,' delineating an *a fortiori* case of unconstitutional state action, which does not derogate from the standing of Negro school children to launch a challenge in case of 'any amount of state support to help found segregated schools or to help maintain such schools'".); *Poindexter v. Louisiana Financial Assistance Commission,* 258 F.Supp. 158, 164 (E.D. La.1966) (finding standing and denying motion to dismiss class action by Black students attacking constitutionality of Louisianna statutes), *repeated and incorporated in Poindexter v. Louisiana Financial Assistance Comm'n,* 275

---

[6] The Supreme Court recently cited *Moton* with approval in *Hibbs v. Winn*, 542 U.S. 88 (2004).

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

F.Supp. 833, 845 (E.D.La.1967) (permanent injunction) *aff'd mem.* 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780 (1968); *Brumfield v. Dodd*, 425 F.Supp. 528 (E.D. La. 1976) (granting injunction in action by Black students and their parents against school officials challenging state statutory scheme for providing books, materials and funds for student transportation to students attending racially segregated religious and secular private schools).

The reason for this strong and consistent approach is simple: government funding for educational institutions that practice invidious racial discrimination, whether based on religious beliefs or otherwise, sends a profoundly damaging message to America's Black youth that they are inferior in dignity and worth. As the NAACP argued in *Bob Jones University v. United States*, that "[a]t least since *Brown v. Board of Education*, 347 U.S. 483 (1954), this Court has understood that a 'feeling of inferiority' is generated and enhanced in impact by government sanction of racial exclusion in education at any level. This fostering of a public perception that private discrimination has the sanction or approval of the government is itself a matter of constitutionally significant dimension." Brief Amicus Curiae of the N.A.A.C.P. Legal Defense and Educational Fund, Inc., *Goldsboro Christian Schools, Inc. v. United States of America*, 1982 WL 1044700, *27 (1982); *see also Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, [citation omitted], can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.").

Here, by funding educational institutions that practice invidious sex, sexual orientation and gender identity discrimination, the government sends a profoundly damaging message to

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

America's LGBTQ+ youth that they are inferior in dignity and worth. But "[o]ur society has come to the recognition that gay persons and gay couples cannot be treated as social outcasts or as inferior in dignity and worth. For that reason the laws and the Constitution can, and in some instances must, protect them in the exercise of their civil rights. The exercise of their freedom on terms equal to others must be given great weight and respect by the courts." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1727 (2018). Here, pursuant to *Norwood*, *Bob Jones University*, *Masterpiece Cakeshop*, and the long line of cases that give students standing to challenge government funding of invidious discrimination at their schools, Plaintiffs have standing to challenge government funding of educational institutions that openly and avowedly practice invidious discrimination against LGBTQ+ students as violations of their equal protection rights under the Fifth Amendment.

Moreover, *Allen v. Wright,* 468 U.S. 737 (1984), is inapposite. Unlike the plaintiffs in *Allen*, the Plaintiffs here actually enrolled, or attempted to enroll, at the avowedly discriminatory educational institutions but were rejected and/or were discriminated against pursuant to school policies. Plaintiffs are not LGBTQ+ students from Hawaii "roaming the country" and filing lawsuits against state government support for anti-LGBTQ+ schools in Maine. *See Allen,* 468 U.S. at 756 (seeking to avoid circumstances where "a [B]lack person in Hawaii could challenge the grant of a tax exemption to a racially discriminatory school in Maine," utilizing the courts merely to "vindicate the interests of concerned bystanders."); *Valley Forge Christian College v. Americans for the Separation of Church and State*, 454 U.S. 464, 487 (1982) (denying standing to those "who 'roam the country in search of governmental wrongdoing.'").

14

REPLY    ISO    MOTION    FOR    TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

Rather, Plaintiffs have a rational and direct relationship to the consequences of federally funded invidious discrimination that they felt concretely, personally, and keenly, at their own schools. FAC, Exs. A-GG; *see also Pitts v. Department of Revenue*, 333 F. Supp. 662, 669-670 (E.D. Wis. 1971) (Black plaintiff had standing to sue State regarding constitutionality of tax exemption for private organization that denied him membership because of his race in violation of 14th Amendment); *Barnes-Wallace v. City of San Diego*, 530 F.3d 776, 785, n. 5 (2008) ("In *Allen*, the Supreme Court held that a stigmatic injury caused by racial discrimination could support standing only if the plaintiffs personally had been or were likely to be subject to the challenged discrimination. The injury of which the Barnes–Wallaces and Breens complain is the offensiveness of having to deal with the Boy Scouts in order to use park facilities that they wish to use, and would use, but for the control of the Boy Scouts over those facilities. We conclude that this injury is sufficiently immediate to these plaintiffs to permit standing under the rationale of *Allen*.") (internal citations omitted).

Indeed, Defendants' misplaced reliance on *Allen* also "ignores both the context and the severity of sexual minority experiences on evangelical college campuses."[7] At Plaintiffs' NFBCUs, there is "a school atmosphere that is described as highly negative, negative, unacceptable, or unsafe. It is a campus climate that drives sexual minority students to loneliness, isolation, depression, and despair. The dignitary injury to sexual minority students goes far beyond mere knowledge that someone, somewhere disapproves of them, but is direct and personal, experienced on a near constant basis, and serious enough to cause psychological harm." *Id*.

---

[7] Hubertz, *Love the Sinner, supra*, at 215.

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

Because unlike in *Allen*, here the stigmatic injury has also been accompanied by discriminatory treatment, both through the direct acts of Congress and the DOE, and through the private actions of the schools attended by Plaintiffs, the stigmatic injuries are sufficient to confer standing.

As for causation, in the context of government funding for invidious discrimination, the causation element of standing is relaxed. In *Norwood*, the Court stated that:

> District Court laid great stress on the absence of a showing by appellants that 'any child enrolled in private school, if deprived of free textbooks, would withdraw from private school and subsequently enroll in the public schools.' We can accept this factual assertion; we cannot and do not know on this record at least, whether state textbook assistance is the determinative factor in the enrollment of any students in any of the private schools in Mississippi. *We do not agree with the District Court in its analysis of the legal consequences of this uncertainty*, for the Constitution does not permit the State to aid discrimination even when there is no precise causal relationship between state financial aid to a private school and the continued well-being of that school. A State may not grant the type of tangible financial aid here involved if that aid has a significant tendency to facilitate, reinforce, and support private discrimination.
>
> 413 U.S. at 465-66 (internal citations omitted) (emphasis added). Here, Defendants rely on

*Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976) to argue that Plaintiffs cannot demonstrate causation or redressability. Dkt. 56, p. 17. In *Simon*, the Court held that indigent Americans could not challenge the tax-exempt status of hospitals because the decisions hospitals might make in response to withdrawal of tax-exempt status were sufficiently uncertain to break the chain of causation. *Id*. at 45. The Court held that "It is purely speculative whether the denials of service specified in the complaint fairly can be traced to petitioners' 'encouragement' or instead result from decisions made by the hospitals without regard to the tax implications. *Id*. at 43.

16

REPLY  ISO  MOTION  FOR  TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

However, *Simon* is inapposite in the federal funding analysis presently before the Court because *Simon* did not overrule *Norwood* and because *Simon* did not involve invidious discrimination against a protected class. *See Moton v. Lambert*, 508 F.Supp. 367 (N.D. Miss. 1981) ("Since *Norwood* was not overruled by the *Simon* Court, we deem it controlling. *Simon* may also be distinguished from the case *sub judice* since it did not involve the question of racial discrimination prohibited by the fourteenth amendment."); s*ee also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666, 113 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

Here, Plaintiffs' stigmatic harms will be redressed by injunctive relief from this Court. Plaintiffs ask the Court to require DoE to refrain from using TIXRE to dismiss the Title IX complaints against educational institutions *that currently receive federal financial assistance*. Regardless of the ultimate outcome of Plaintiffs' Title IX complaints, or whether some NFBCUs decide to forgo federal funding in the future to avoid compliance with Title IX, the Court can redress the stigmatic, emotional, and procedural injuries that Plaintiffs are experiencing and reporting right now by opening the door to the administrative process that DoE has closed.

Defendants also argue that Plaintiffs have not alleged a sufficiently ripe injury-in-fact. Dkt. 62, p. 17. However, Plaintiffs' alleged injuries are sufficiently ripe in the present Motion because

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

17

Plaintiffs have put forward uncontested evidence that Defendants have historically used TIXRE to dismiss Title IX complaints by LGBTQ+ students against NFBCUs, on every occasion, and that at least one OCR official currently processing Plaintiffs' complains has stated that the TIXRE issue could be decided any day now with respect to Plaintiff Mortimer. "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough." *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923); *see also Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 143 (1974) ("One does not have to await the consummation of threatened injury to obtain preventive relief."); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

### 2.  It is uncontested that Defendants facilitate and encourage invidious discrimination at avowedly discriminatory educational institutions Plaintiffs attend or attended.

Second, Defendants' additional direct actions harm Plaintiffs stigmatically and procedurally, including OCR's issuance of preemptory religious exemption letters, which discourage students from filing Title IX complaints, OCR's informal guidance to NFBCUs and its later August 2020 Rulemaking, which encourage NFBCUs to hide their discriminatory practices from students and the public, OCR's November 2020 formal rulemakings, which unlawfully expanded TIXRE, and OCR's *documented and uncontested history* of using TIXRE to close every Title IX complaint ever filed by an LGBTQ+ student at an NFBCU.

Defendants conduct described above, apart from any specific conduct by NFBCUs, supports, facilitates and condones invidious discrimination. *See Norwood, supra; see also Reitman v. Mulkey*, 387 U.S. 369, 375 (1967) (prohibited state involvement can be found "even where the

18

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

state can be charged with only encouraging, rather than commanding discrimination."); *NAACP v. Thompson*, 648 F. Supp. 195, 224-25 (D. Md. 1986) "[H]ere, government has brought into being a permit system which the Klan has used to cause certain members of the public to be excluded from public rallies on private property because of race or religion. In essence, government has looked the other way while a racially discriminatory result has been originated and accomplished by private actors who have been subject to governmental supervision.").

Plaintiffs' stigmatic and procedural injuries caused by Defendants' conduct in this second category are felt most deeply by Plaintiff Montgomery, whose Title IX complaint as a transgender student seeking safe and affirming housing, was dismissed by OCR based on a retroactive application of TIXRE, and Plaintiff Maxon and Brittson, whose Title IX lawsuit against their NFBCU was dismissed based on the court's deference to Defendants' Trump-era informal guidance on the scope and application of TIXRE.

### 3. The specific acts of discrimination at Plaintiffs' NFBCUs are also attributable to Defendants because of the state action doctrine.

Third, the acts of Plaintiffs' NFBCUs have also injured Plaintiffs and, because of the state action doctrine, also confer standing. *See Burton v. Wilmington Parking Authority*, 365 U.S. 715, 1961 (A private restaurant operator's refusal to serve African-Americans constituted state action and violated the Establishment clause, because building and parking area were leased from Government creating a "symbiotic relationship."). Here, the conduct of the NFBCUs constitute state action because, in addition to funding, Defendants profit from the existence of NFBCUs and the students, like Plaintiffs, who take out student loans that they must repay with interest. *See Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982) ("In the instant case, the state has so insinuated

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

itself with the Provo Canyon School as to be considered a joint participant in the offending actions.")

However, while the acts of Plaintiffs' NFBCUs are sufficient for finding that Plaintiffs satisfy constitutional standing requirements, they are not necessary. As described above, Defendants direct actions (funding, facilitating and encouraging invidious discrimination) are sufficient to confer standing. The Court can favorably decide Plaintiffs' Motion based on Defendants' direct actions alone.

### 4. It is uncontested that TIXRE is not required by the Free Exercise Clause.

Defendants do not argue that TIXRE is required by the Free Exercise Clause. Indeed, "[A]lthough the Constitution does not proscribe private bias, it places no value on discrimination as it does on the values inherent in the Free Exercise Clause. Invidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections." *Norwood*, 413 U.S. at 469-470.

In 1982, the NAACP filed an amicus brief at the Supreme Court in support of the IRS's denial of tax-exempt status to Bob Jones University, because it forbid students from interracial dating and marriage, and Goldsboro Christian School, because it operated a Whites Only school. The NAACP argued that "Even if discriminatory practices are the outgrowth of sincere religious faith, the schools' unquestioned First Amendment right to adhere to religiously motivated racist

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

beliefs does not entitle them to a governmental benefit denied secular or religious schools which derive their racism from sources other than religious mandate."[8]

**B.  Venue is proper in Eugene.**

Venue is proper in Eugene because each grant of a religious exemption at taxpayer-funded religious colleges and universities comprises the collective events giving rise to the claims in Plaintiff's FAC. Here, DOE has granted a religious exemption in this district to Corban University. Indeed, DOE has granted numerous religious exemptions, but just as "[v]enue may be proper even where the defendant sells only a small amount of merchandise into the forum" in a commercial suit, venue is also proper here despite the grant appearing to be modest event (considering DOE's practice of indiscriminate albeit inconsistent grants. *See Adidas Am., Inc. v. Cougar Sport*, Inc., 169 F. Supp. 3d 1079, 1095 (D. Or. 2016).

Additionally, Corban University based in this Division is also a proposed-intervenor in this case. While none of the named plaintiffs have attended this college, it is Defendants' actions in granting religious exemptions that gave rise to Plaintiffs' claims. And Corban University is known for discriminating against LGBTQ+ students—invidiously, and that should be considered. *Myers v. Nat'l Tenant Network, Inc.*, No. 3:14-ov-00327-AC, 2017 U.S. Dist. LEXIS 227618, at *4 (D. Or. Nov. 25, 2017) ("The court may consider evidence outside the complaint to decide a motion to transfer venue."); *see, e.g.*, OneCorban, http://onecorban.org/ (students describing widespread examples of harassment, discrimination, and coercively mandating conversion therapy upon students; "At 19, I was facing being thrown out of college while pursuing my dreams.").

---

[8] *Goldsboro Christian Schools, Inc. v. United States of America*, 1982 WL 1044700, *5 (1982).

REPLY   ISO   MOTION   FOR   TEMPORARY
RESTRAINING   ORDER   AND   ORDER   TO   SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

Second, venue is proper because Defendants waived the defense. "Even if a defendant initially files an objection to venue, subsequent conduct may nevertheless waive the defense." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 265 F. Supp. 3d 1196, 1202 (D. Or. 2017). Defendants did not object to venue until their Motion to Dismiss on August 9, 2021, but Defendants already engaged in substantial litigation conduct that waived that defense. For example, this case has been active since Plaintiffs filed the class action complaint on March 29, 2021. On April 9, 2021, three religious colleges (included on in this Division) moved to intervene. On April 20, 2021, DOJ appeared on behalf of Defendants. Then the Council for Christian Colleges & Universities moved to intervene. On June 7, 2021, Plaintiffs filed a First Amended Complaint with seven new Plaintiffs. On July 8, 2021, Defendants participated in  Rule 26(f) conference with Plaintiffs.

Continuing, on August 6, 2021, Defendants pleaded the opportunity to litigate here by requesting to respond to Plaintiffs' Motion for Temporary Restraining Order, delaying Plaintiffs' request for an expedited hearing and thus further demanding this Court's time and resources. Substantial litigation has transpired before Defendants objected to venue, thus waiving an improper venue defense. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998) (improper venue defense "may be waived as a result of the course of conduct pursued by a party during litigation").

Third, venue in Eugene is in the interest of justice. "To determine whether transfer is 'in the interest of justice,' courts will generally consider judicial economy, the relative injustice imposed on plaintiff and defendant, whether the statute of limitations has expired, and whether the action would be re-filed if the case were dismissed." *Ali v. Carnegie Inst. of Wash.*, 967 F. Supp.

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

2d 1367, 1391 (D. Or. 2013); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("defendant[s] must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Here, Defendants have made no showing of inconvenience. Moreover, conservation of judicial resources and Plaintiffs' presumptively valid choice of forum militate in favor of maintaining venue in Eugene.

In the alternative, if venue is not proper, this Court should transfer to Portland Division but can and should continue to preside over the case. Anything other than this would not be "an efficient use of the parties' time or the Court's resources" because this "Court presides over cases filed in both the Eugene Division" and the Portland Division. *See Esurance Ins. Co. v. Hamm*, 387 F. Supp. 3d 1134, 1137 (D. Or. 2019); *see also Williams v. Invenergy*, No. 2:13-cv-01391-AC, 2016 U.S. Dist. LEXIS 200013, at \*9 (D. Or. July 27, 2016) (The Court "will continue to preside over this case, thereby avoiding any duplication of effort."). Considering the unique circumstances of this case, it would be a waste of judicial resources and cause unnecessary delay to transfer to a different court. *Bibiano v. Lynch*, 834 F.3d 966, 974 (9th Cir. 2016).

### C.  This Court should apply the "serious questions" test.

The Ninth Circuit has held the "serious questions" test is still good law following *Winter v. Natural Res. Def.* Council, 555 U.S. 7, 22 (2008), although tensions exist across circuits and in this one. *See All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) (upholding "serious questions" test); *Fox TV Stations v. BarryDriller Content Sys.*, 915 F. Supp. 2d 1138, 1149 (C.D. Cal. 2012) (refusing to apply serious questions test). However, more recent case law and this District's approach should govern because this is a preliminary injunction, not a mandatory injunction. *See Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or.

23

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

2018) ("The Supreme Court's decision in Winter, however, did not disturb the Ninth Circuit's alternative 'serious questions' test."); *and see Maney v. Brown*, No. 6:20-cv-00570-SB, at *47 n. 8 (D. Or. Feb. 2, 2021) (applying serious questions tests in case of preliminary injunction but not mandatory injunction); *see also Beast Holdings, Ltd. Liab. Co. v. Private by Design, Ltd. Liab. Co.*, No. 3:21-cv-01119-MO, at *2 (D. Or. Aug. 2, 2021); *Smith v. Tumalo Irrigation Dist.*, 500 F. Supp. 3d 1148, 1154 (D. Or. 2020); *Guerra v. W. L.A. Coll.*, No. CV 16-6796-MWF (KSx), at *9 (C.D. Cal. Nov. 2, 2016).

**D. Plaintiffs raise serious questions and are likely to succeed on the merits of each claim.**

**1. Equal Protection Guarantees of Fifth Amendment**

Plaintiffs argue that the equal protection guarantees of the Firth Amendment assures them of freedom from invidious discrimination based on suspect classifications. However, Defendants contend that Plaintiffs' argument "is not relevant here" because Defendants contend that TIXRE "is facially neutral, there is no evidence of discriminatory intent, and [TIXRE] does not classify students on any basis." Dkt. 62, p. 21, n. 7. However, TIXRE is not facially neutral as, by its very nature, its purpose is to allow sex discrimination at federally funded educational institutions.[9] The primary, if not exclusive, intent behind TIXRE is to allow sex discrimination. The classification is a sex classification because Title IX is a statute prohibiting sex discrimination. It is immaterial that Title IX prohibits sex discrimination against all sexes, genders and sexual orientations. *See Latta v. Otter*, 771 F.3d 456, 484 (9th Cir. 2014) ("Under all these precedents, it is simply irrelevant that

---

[9] Dwyer, *The Children We Abandon, supra*, at 1393 (""In a suit directly challenging sex discrimination practices in religious schools, on the theory that the state encourages these practices, the class discriminated against is one based on gender. Since gender is a quasi-suspect class, heightened scrutiny would clearly apply.").

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

the same-sex marriage prohibitions privilege neither gender as a whole or on average. Laws that strip individuals of their rights or restrict personal choices or opportunities solely on the basis of the individuals' gender are sex discriminatory and must be subjected to intermediate scrutiny. Accordingly, I would hold that Idaho and Nevada's same-sex marriage prohibitions facially classify on the basis of gender, and that the 'equal application' of these laws to men and women as a class does not remove them from intermediate scrutiny.").

> **2.  This Court should apply strict scrutiny to Plaintiffs' Due Process claim regarding the burden on the fundamental right to same-sex marriage.**

While "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed," *P.O.P.S. v. Gardner*, 998 F.2d 764, 768 (9th Cir. 1993), that is not the case here, where the effect of TIXRE is that students who exercise the fundamental right to same-sex marriage at NFBCUs will be expelled, as were Plaintiffs Brittsan and Maxon. *See Zablocki v. Redhail*, 434 U.S. 374, 381 (1978) (strict scrutiny is required when "the classification created by the statute infringed upon a fundamental right, the right to marry.").[10]

> **3.  Administrative Procedure Act (APA) Claim Likely to Succeed.**

The alleged deprivation of a plaintiff's Congressionally created statutory right, is sufficient to confer standing. *See Warth v. Seldin*, 422 U.S. 490, 514 (1975) Through Title IX, Congress created a statutory right to be free from sex discrimination at college and to have recourse to an administrative remedy for alleged Title IX violations. All students, even students attending

---

[10] Defendants reliance on *Gardner* is misplaced because *Gardner* involved a statute of a child support schedule which had the inadvertent effect of financially detering only some parents from getting remarried in the case it would be mean paying more in child support because of an increased family net income from a new spouse. 998 F.2d at 766-68.

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

religious universities, have a right to be free from discrimination on the basis of sex. *See* https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf, at 32 ("A religious exemption is not a blanket exemption from Title IX, and a school's religious exemption extends only as far as the conflict between the Title IX regulations and the religious tenets of the controlling religious organization.").

Here, Defendants deprive Plaintiffs of their Title IX procedural rights by implementing unlawful religious exemption regulations and interpretations that threaten dismissal of their Title IX complaints. *See Defenders of Wildlife v. U.S. EPA*, 420 F.3d 946, 957 (9th Cir. 2005) (Plaintiffs alleging procedural injury "must show only that they have a procedural right that, if exercised, *could* protect their concrete interests.") (emphasis in original).

Defendant's interpretation and administration of Title IX has rendered students' filing of Title IX complaints futile. The DOE's interpretation allows religions to unilaterally determine, post facto, to what degree their discriminatory acts are exempt from Title IX. Not surprisingly, in the 50 years since Title IX was enacted, the DOE-OCR has never denied a claim to religious exemptions. *See* Kif Augustine-Adams, Religious Exemptions to Title IX, 65 KAN. LAW REV. 327, 328 ( Of 285 known religious exemptions claimed, OCR has refused to decline even one).

The interpretations embodied in the challenged regulations act to deny students of their statutory right by allowing NFBCUs to assert a religious exemption without due process, as Plaintiffs' claims are immediately dismissed when an exemption is asserted, without notice or application of even a minimal test to meet the unambiguous text of the statute. These administrative violations and denial of statutory rights are harms that are directly caused by the DOE's

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

unconstitutional interpretations of Title IX, and their administrative processes which result in the denial of students' Title IX, Equal Protection, and Establishment Clause rights.

Additionally, Defendants' repetitive reliance on unpublished longstanding practices does not carry weight. "A longstanding, widespread practice is not immune from constitutional scrutiny." *Payton v. New York*, 445 U.S. 573, 600 (1980). Even when history and tradition are considered, they are merely considerations only and not conclusive evidence of lawfulness. *See Lawrence v. Texas*, 539 U.S. 558, 572 (2003). Indeed, a "policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

DOE's claim that the regulatory rule changes merely codified longstanding practices is without merit. A close reading of the religious exemption response letters sent by DOE clearly demonstrates the regulatory regime has significantly changed. Specifically, OCR "adopted a subtle difference in letters when it was deciding not to decide the control issue." Southwick Decl. (Galanter Email)[11]. Formerly, in evaluating exemptions, DOE formerly maintained that if a religious exemption is challenged, "OCR is obligated to *contact* the controlling organization to verify those tenets." (*E.g.*, Bob Jones University, Dordt University, Colorado Christian University).

But then, without notice, began to maintain that "OCR is obligated to *identify* a controlling organization to contact to verify those tenets." (*E.g.*, Liberty University, Brigham Young University, Evangel College) Thus, DOE's claim of merely codifying longstanding practice does

---

[11] Seth Galanter served as Principal Deputy Assistant Secretary, Office for Civil Rights, U.S. Department of Education, during the Obama Administration (August 2013-January 2017).

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

not carry weight. Southwick Decl. (Galanter Email) (describing subtle changes to verbiage between Obama and Trump Administrations to obscure control test interpretations).

### 4. Establishment Clause Claim Likely to Succeed.

Plaintiffs can establish standing through the Establishment clause both through meeting the traditional requirements of standing through direct injury, and through the doctrine of Taxpayer standing. Our clients meet the requirements for both, and have standing to bring their Establishment Clause claims and their RFRA claims. *See Sch. Dist. of Abington Twp.*, 374 U.S. 203, 224, n.9 ("It goes without saying that the laws and practices involved here can be challenged only by persons having standing to complain. But the requirements for standing to challenge state action under the Establishment Clause, unlike those relating to the Free Exercise Clause, do not include proof that particular religious freedoms are infringed. The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain.") (internal citations omitted).

In 1982, the ACLU and American Jewish Committee filed an amicus brief at the Supreme Court in *Bob Jones University v. United States*.[12] They argued that "it would be unconstitutional to except sectarian schools from the constitutionally mandated general policy of denying tax-exempt status to racially discriminatory schools." *Id*. Their brief explained that "Far from violating the Establishment Clause, as petitioners contend, the uniform application of the I.R.S. rule to all racially discriminatory schools -- including sectarian schools whose discrimination is based on

---

[12] Goldsboro Christian Schools, Inc. v. United States of America, 1982 WL 1044699 (1982).

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

religious beliefs -- is the only policy consistent with the Establishment Clause… Furthermore, a special exception for religiously-based discrimination would amount to special government financial assistance to religious institutions, a classic violation of the Establishment Clause." *Id.*

### a. Taxpayer standing is established.

The taxpayer standing doctrine is exceedingly narrow. However, Plaintiffs, as taxpayers, may challenge TIXRE as spending clause legislation that violates the Establishment Clause. See Flast v. Cohen, 392 U.S. 83, 88 (1968); Valley Forge Christian College v. Americans for the Separation of Church and State, 454 U.S. 464 (1982) (Flast taxpayer standing limited to challenges directed "only [at] exercises of congressional power" under the Taxing and Spending Clause.); *Hein v. Freedom From Religion Foundation*, 127 S. Ct. 2553 (2007) (requiring specific congressional enactment).

For purposes of the Establishment clause, a plaintiff may have 'taxpayer standing' to raise challenges to actions exceeding specific constitutional limitations (such as the Establishment Clause) taken by Congress under Article I's Taxing and Spending Clause. See Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 593 (2007).("[a] plaintiff asserting an Establishment Clause claim has standing to challenge a law authorizing the use of federal funds in a way that allegedly violates the establishment clause.").

Taxpayer standing has two prongs. First, the "taxpayer must establish a logical link between that status, and the type of legislative enactment attacked." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 602 (2007). This means that "a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the Taxing and Spending Clause of Art. 1, § 8 of the Constitution." *Id.* "Secondly, the taxpayer must

29

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8." *Id.*

Here, the plaintiffs as taxpayers are challenging expenditures "funded by a specific congressional appropriation," and "which were dispersed… pursuant to a direct and unambiguous congressional mandate." *See Flast v. Cohen.* The Higher Education Act, which authorizes financial assistance to the educational institutions, and Title IX, which regulates recipients of that financial assistance, are Spending Clause statutes. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ("Title IX was enacted as an exercise of Congress' powers under the Spending Clause"); *Litman v. George Mason University*, 5 F.Supp.2d 366 (E.D. Va. 1998) ("The language of Title IX, its legislative history, and analogous case law, demonstrate that Title IX was passed pursuant to Congress' powers under the Spending Clause.").

Plaintiffs also meet the second prong, as the Establishment Clause creates a specific limitation on the exercise of Congress' taxing and spending power, which is exceeded by the religious exemption to Title IX. While pursuant to the Free Exercise Clause, Congress is permitted to create "**non-discriminatory religious-practice exemptions**" these are not "Constitutionally required" and Courts are to discern the "appropriate occasions" for their creation. See *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 890 (1990). However, these "non-discriminatory religious practice exemptions" can, but are constitutionally prohibited from, devolving into "an unlawful  fostering of religion" in violation of the

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

Establishment clause. *See Id.; Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 145 (1987).

A legislative religious accommodation is most appropriate where a law places an affirmative burden on a religious practice or belief. For example, a law restricting the wearing of hats could appropriately contain an exemption for individuals whose religion requires head coverings. However, to the extent that an exemption does more than simply alleviate that burden, but instead grants license to harm, or encroach on the rights of others, it clearly surpasses the limits of the Establishment Clause. *See Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 15 (1989); (holding that a law granting special privileges to religious organizations is unconstitutional if it "is not required by the Free Exercise Clause and…either burdens nonbeneficiaries markedly or cannot reasonably be seen as removing a significant state-imposed deterrent to the free exercise of religion." *see also Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) ("courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries").

Title IX is a neutral and generally applicable law, which Congress implemented to (1) "avoid the use of federal resources to support discriminatory practices," and (2) to "provide individual citizens effective protection against those practices." *Cannon v. University of Chicago,* 441 U.S. at 704. The legislative religious exemption alleviates no burdens, as a legislative condition on the receipt of federal funds to be used in educational programs and activities prohibiting discrimination on the basis of sex, is neutral and generally applicable, and creates no burdens for any entity that wishes to receive taxpayer dollars to operate their educational programs and activities. Each entity, freely and independently, may determine whether or not they wish to accept the conditions and in return access taxpayer funds.

31

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

Plaintiffs also satisfy non-taxpayer standing requirements for their Establishment Clause claim. "The concept of injury for standing purposes is particularly elusive in Establishment Clause cases. This is so because Establishment Clause injuries are often spiritual and value-laden, rather than tangible and economic." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 186 (4th Cir. 2018). As such, an Establishment Clause injury "may be shown in various ways." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 129 (2011). When Congress creates a religious accommodation that exceeds the scope required by the Free Exercise clause, and in its application targets and burdens a discreet minority, by endorsing and funding religiously motivated discrimination, that accommodation has devolved into "an unlawful fostering of religion" *See Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 145 (1987). Here, Plaintiffs are the victims of, or are in imminent risk of becoming victims of, Defendants' support and endorsement of invidious discrimination and have thereby suffered Constitutional injuries. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). ("[a]lthough tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.").

> **b. Plaintiffs' Establishment Clause claims are likely to succeed under Lemon v. Kurtzman.**

"The establishment clause of the first amendment *requires* government neutrality with respect to religion." *NLRB v. Hanna Boys Ctr.*, 940 F.2d 1295, 1303 (9th Cir. 1991) (emphasis added). As violated here, sponsorship and financial support are two of "the three main evils against which the Establishment Clause was intended to afford protection." *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971) (citing *Walz v. Tax Commission*, 397 U.S. 664, 668 (1970)). Specifically, a

32

REPLY ISO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

"statute or regulation will survive an Establishment Clause attack if (1) it has a secular legislative purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not foster excessive government entanglement with religion." *Williams v. California*, 990 F. Supp. 2d 1009, 1022 (C.D. Cal. 2012) (citing *Lemon*, 403 U.S. at 612-13).

TIXRE fails each prong. "At some point, accommodation may devolve into 'an unlawful fostering of religion.'" *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334-35, 107 S. Ct. 2862, 2868 (1987) (quoting *Hobbie v. Unemployment Appeals Com.*, 480 U.S. 136, 145 (1987). That is precisely the case here.

First, TIXRE has an impermissible purpose. In *Amos*, it was deemed to be a permissible legislative purpose to alleviate "significant governmental interference with the ability of religious organizations to define and carry out its mission" in the context of a Title VII, which placed hiring requirements on religious entities, even where such entities do not receive any federal funding. *Amos*, 483 U.S. at 329. The religious exemption at issue in Amos merely allowed religious employers to limit hiring to co-religionists. The exemption does not, however, permit religious employers to refuse to hire based on race or sex. In contrast, here, there is no "significant governmental interference" with NFBCUs. Unlike in *Amos*, Congress has created no law interfering with their ability to define and carry out their missions. Instead, government has placed a neutral and generally applicable condition on funding that religious organizations are under no obligation to accept. Consequently, the exemption removes no governmental interference, and simply acts to advance and endorse a specific religious tenet, not shared by all religions, the tenet of discrimination on the basis of sex, sexual orientation and gender identity, failing the first prong of the *Lemon* test.

33

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

Second, the primary effect of TIXRE is advancing religion, sponsoring and financial supporting targeted discrimination on the basis of sex. The government advances religion "through its own activities and influence," including "sponsorship, financial support, and active involvement of the sovereign in religious activity." *See Amos*, 483 at 337. In *Amos*, the financial savings the religious entity might have attained by not being required to comply with employment statutes was not sufficient to advance religion. However, as here, TIXRE's primary function is to ensure financial support for institutions who engage in a religious practice of discrimination on the basis of sex. This ensures that funds will continue to flow to these programs that are discriminating on the basis of sex, actively involving taxpayer funds in the perpetuation and promulgation of that religious practice.

Third, TIXRE creates an inextricable entanglement between government and religion. Administrative agencies are charged with implementing the statute, but the statute itself requires a determination of when a universities' "religious tenets" would prohibit them from refraining from discriminating against students on the basis of sex. The DOE has at times simply allowed religious universities to determine when its application would be consistent with their religious tenets, and at other times has required them to request exemptions when they believed compliance would not be consistent with their religious tenets.

In practice, NFBCUs define the extent of the religious exemption and, therefore, the extent of Plaintiffs' Title IX rights. This is not only entanglement, but it violates Constitutional non-delegation doctrines as articulated in Plaintiffs' Motion. Dkt. 44, pp. 28-29.

Even if TIXRE did satisfy the first two prongs of *Lemon*, the plain language of the statute inherently requires entanglement with religion by mandating that TIXRE apply "only to the extent

34

REPLY ISO MOTION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

that a particular application of Title IX would not be consistent with a specific tenet of the controlling religious organization." Doc. 62, at 22. Such requirement mandates investigation and consideration of LGBTQ+ students' complaints by examining religious entities' religious beliefs.

Thus, Plaintiffs are likely to succeed on their Establishment Clause claim because, in addition to earlier arguments, TIXRE violates all three prongs of *Lemon*.

### 5. RFRA Claim Likely to Succeed.

Defendants argue that there can be no RFRA violation without an Establishment Clause violation and government action. However, as analyzed above, TIXRE does violate the Establishment Clause, and likewise violates RFRA. *See* 42 U.S.C.S. § 2000bb-4 (RFRA leaves Establishment Clause jurisprudence unaffected). Rightly so, Defendants even acknowledged that they "do not doubt that many of the Plaintiffs 'exercise their religious beliefs through how they love' and 'how they embrace and live out their sexuality and gender identity'" and that those beliefs are "being burdened," just not by the government. Dkt. 62, p. 33. However, Defendants' support and financial sponsorship of the invidious discrimination, as analyzed above, does constitute state action under RFRA. *See Hall v. American Nat'l Red Cross*, 86 F.3d 919, 921-22 (9th Cir. 1996) (applying First Amendment "state action" doctrine to analyze federal action under RFRA). Thus, Plaintiffs are likely to succeed on the merits of their RFRA claim.

### III.    CONCLUSION

Many of the Plaintiffs will be returning to campus in the coming weeks. Defendants' actions put their health and safety in jeopardy. Based on the record and arguments presented here, Plaintiffs respectfully request that the Court grant this Motion for a Temporary Restraining Order.

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY PRELIMINARY INJUNCTION SHOULD
NOT ENTER

Date: August 17, 2021

s/ Paul Carlos Southwick
**Paul Carlos Southwick**
**(OSB 095141)**
**TRIAL ATTORNEY**
**Religious                        Exemption**
**Accountability Project**
**Paul Southwick Law, LLC**
8532 N. Ivanhoe St. #208,
Portland, OR 97203
Email: paul@paulsouthwick.com

Phone: 503-806-9517

36

REPLY    ISO    MOTION    FOR    TEMPORARY
RESTRAINING  ORDER  AND  ORDER  TO  SHOW
CAUSE  WHY  PRELIMINARY  INJUNCTION  SHOULD
NOT ENTER