February 18, 2020

Re:     Proposed 34 C.F.R. § 106.12(c)
        RIN 1840-AD45, Docket ID ED-2019-OPE-0080

Dear Assistant Secretary Marcus:

As an American taxpayer, I object to the Department's proposal that would expand the circumstances in which an educational institution that receives federal taxpayer funds can discriminate on the basis of sex. Congress struck a reasonable balance when it made only educational institutions controlled by religious organizations eligible for exemptions, and this proposal would skew the scales too far away from that balance.

## 1.  The Proposed Regulations Are Inconsistent with the Text and History of the Statutory Exemption

The Department's proposed interpretation of "controlled by a religious organization" is completely atextual. The statute clearly requires there be a "religious organization" that has "religious tenets" and that "control[s]" an "educational institution." Only then is an educational institution eligible for an exemption -- Title IX would not apply to the extent its application "would not be consistent with the religious tenets of such [religious] organization."

*Religious Organization*: Sub-provisions 106.12(c)(1), (4), (5), and (6) all negate the critical statutory element that there must be a "religious organization." The plain text of the statute requires two entities: the religious organization (which holds tenets) and the educational institution (which is controlled by the organization).

If Congress had wanted to allow exemptions for educational institutions without regard to the existence of a religious organization, it had an obvious model in Title VII of the Civil Rights Act of 1964. Title VII does not provide a religious exemption for its prohibition on sex discrimination, but it does exempt some private schools from the prohibition on religious discrimination in employment. It does so in two circumstances: (1) when the school "is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society;" and (2) when "the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion." 42 U.S.C. § 2000e-2(e). Congress could have borrowed this language in enacting Title IX.  But it did not. Instead, Congress in 1972 pared the exemption down to schools "controlled by" a "religious organization," and totally jettisoned the second set of circumstances that did not require showing a religious organization.

The Department suggests that one component of an educational institution can be the religious organization.  That has no basis in the text.  And it would make redundant the language Congress specifically chose in other statutes.  For example, in authorizing federal funds to go to private schools in the wake of the disruption of the public school system after Hurricane Katrina, Congress exempted "a non-public school that is controlled by a religious organization *or* organized and operated on the basis of religious tenets."  Department of Defense, Emergency

EXHIBIT B

Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act, 2006, PL 109-148, Title IV, Subtitle A, § 107(m)(2)(A), 119 Stat 2680 (Dec. 30, 2005) (emphasis added).  If the Department were correct that an internal component could be a controlling religious organization, there would be no reason for Congress to have added "organized and operated on the basis of religious tenets."  The Department has no authority to rewrite the Title IX exemption to include language that Congress included elsewhere, but not here.

*Tenets of the Religious Organization:* The beginning of proposed 106.12(c) says that an educational institution is eligible to assert an exemption when application of Title IX "would not be consistent with its tenets or practices." First, the statutory exemption extends only to applications inconsistent with "tenets." It grants no exemption for applications inconsistent with religious "practices." The Department has no authority to rewrite the statute.

Second, the statute's exemption addresses the religious tenets *of the religious organization* not, as the proposed regulation would have it, the tenets of the educational institution. When Congress wanted a school to be able to be exempt based on *its own* religious tenets (as opposed to those of a religious organization), it knows how to do that. Indeed, the religious exemption provision for the federal voucher program for DC exempts a participating private school "to the extent that the application of" the prohibition against sex discrimination "is inconsistent with the religious tenets or beliefs *of the school*." Department of Defense and Full-Year Continuing Appropriations Act, 2011, PL 112-10, § 3008, 125 Stat 38 (April 15, 2011) (emphasis added); Consolidated Appropriations Act, 2004, PL 108-199, § 308, 118 Stat 3 (January 23, 2004) (same). The Department has no authority to rewrite the Title IX exemption to include language that Congress included elsewhere, but not here.

Sub-provision 106.12(c)(5) strays even farther afield by tying eligibility for an exemption to the institution's "specific moral beliefs or practices," while Sub-provision 106.12(c)(6) extends to religious "beliefs or teachings." Moral beliefs are not the equivalent of religious tenets. Beliefs and teachings are not the equivalent of religious tenets. Only tenets are tenets.  The Department has no authority to rewrite the statute by adding these terms.

*Controlled by the Religious Organization*: The proposed regulation denudes the term "controlled by" of any force.  While there may be varied methods of establishing control, it cannot be enough that an educational institution has elected to subscribe to or adopt particular doctrinal statement or practices. The term "control" suggests a far more coercive, two-party relationship.

For example, Congress has defined a "tribally controlled college or university" to mean "an institution of higher education which is formally controlled, or has been formally sanctioned, or chartered, by the governing body of an Indian tribe or tribes." 25 U.S.C. § 1801(a)(4).

Similarly, under ERISA, a pension plan qualifies for the "church plan" exemption if the organization maintaining it is either "controlled by *or* associated with a church." 29 U.S.C. § 1002(33)(C)(i) (emphasis added). Courts use a multi-factor test for determining whether an organization is "associated with" a church.  But "[b]oth the IRS regulations and the courts have used the common sense definition of organizational control: the ability of church officials to

appoint the majority of the trustees or directors of an organization." *Overall v. Ascension,* 23 F. Supp. 3d 816, 829 (E.D. Mich. 2014) (citing 26 C.F.R. § 1.414(c)-5*; Lown v. Cont'l Cas. Co.,* 238 F.3d 543 (4th Cir. 2001); *Catholic Charities of Maine v. City of Portland,* 304 F.Supp.2d 77 (D. Maine 2004)). There is no ground to deviate from such a common sense definition in interpreting the same language in Title IX.

When Congress wanted to permit an exemption from non-discrimination laws for educational institutions that had relationships with religious organizations not based solely on control, it knew how to do so, but it's done so only rarely.  *See* 20 U.S.C. § 1066c(d) ("an institution which is controlled by or which is closely identified with the tenets of a particular religious organization"); Department of Defense and Full-Year Continuing Appropriations Act, 2011, PL 112-10, § 3008, 125 Stat 38 (April 15, 2011) ("school that is operated by, supervised by, controlled by, or connected to a religious organization"); Department of Defense, Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act, 2006, PL 109-148, Title IV, Subtitle A, § 107(m)(2)(A), 119 Stat 2680 (Dec. 30, 2005) ("a non-public school that is controlled by a religious organization or organized and operated on the basis of religious tenets"); District of Columbia Appropriations Act, 1990, PL 101-168, § 141(b), 103 Stat 1267 (November 21, 1989) ("any educational institution that is affiliated with a religious organization or closely associated with the tenets of a religious organization"); *see also* 42 U.S.C. § 3607(a) (Fair Housing Act exemption for dwellings operated by "any nonprofit institution or organization operated, supervised or controlled by or in conjunction with a religious organization, association, or society"); 42 U.S.C. § 2000e-2(e) (portion of Title VII definition discussed above, which exempts schools "owned, supported, controlled, or managed by a particular religion").

Indeed, Congress considered changes to the religious exemption to expand it beyond "control" in 1988, when it expanded the coverage of Title IX in the Civil Rights Restoration Act.  Proponents of an expanded religious exemption urged that the language be changed to include educational institutions "closely identified with the tenets of a religious organization." S. Rep. 100-64, at 27 (1987).  The Department, in support, noted at the time that Title VII "currently contains a religious tenets provision that establishes a broader test than the control test in Title IX" and warned Congress that "many of these [religious educational] institutions are today controlled by law boards, or are otherwise organized *so that they fall outside the exemption*, even though they retain their religious mission and their affiliation with religious entities." 134 Cong. Rec. H555 (March 2, 1988) (reprinting letter from William Bennett, Secretary of Education) (emphasis added).

Members of Congress (both supporters and opponents of changing the religious exemption) made the same point, explaining that "many institutions, which may have previously qualified, are now outside the scope of the existing religious tenets exemption" because "the governing bodies of many church-related educational and health institutions are made up of lay persons." 134 Cong. Rec. H555 (March 2, 1988) (Rep. Moorhead); *see also id*. at S2390 (March 17, 1988) (Sen. Hatch) ("the vast majority of church-related educational institutions could be denied a religious tenets exemption because they are not literally controlled by the tenets of a religious organization"); *id.* at E1049 (April 13, 1988) (Rep. Slatery) ("Religiously affiliated educational institutions governed by lay boards of directors are not covered by the title IX exemption.").

EXHIBIT B

Recognizing the critical role the "control" language served, Congress rejected the proposed changes to go beyond it and, instead, relied on the current "controlled by" language when it enacted 20 U.S.C. § 1687.  See 134 Cong. Rec. H565 (March 2, 1988) (Rep. Fish) ("The key in the religious tenet exemption is the control test. A Government inquiring into the nature of a religious tenet asserted by an institution is fraught with difficulties. Therefore, the assurance that an institution is actually controlled by the religious organization whose tenets it relies upon is essential to keep this exemption from becoming an escape hatch from title IX."); *id*. at E499 (March 3, 1988) (Rep. Bonker) ("The bill would maintain stringent criteria to insure that this religious exemption is not used as a loophole for institutions to circumvent our antidiscrimination statutes."); *id.* at S205 (Jan. 28, 1988) (Sen. Kennedy) ("the control test is, and should be, a difficult one"); *id*. (Sen Danforth) (Senate's rejection of amendment to broaden exemption demonstrates the "very narrow scope of the religious exemption").  President Reagan's veto message of the Civil Rights Restoration Act pointed to the "failure to protect, under Title IX of the Education Amendments of 1972, the religious freedom of private schools that are closely identified with the religious tenets of, but not controlled by, a religious organization" as one ground for his veto. 134 Cong. Rec. H1037 (March 22, 1988).  His veto, in turn, was overturned by supermajorities in both houses of Congress.

The Department has no authority to rewrite the statute to treat "controlled by" as if it encompassed any other types of relationships.  Congress considered this very issue and reached a very different conclusion than that embodied in the proposed regulations.

## 2. The Constitution Does Not Require Expanding the Statute Beyond Its Textual Limits, Contrary to Congress's Intent

The Department insists that it is "constitutionally obligated" to adopt its proposed reading "to avoid religious discrimination among" educational institutions. 85 Fed. Reg. 3190, 3207/1 (Jan. 17, 2020). But the cannon of constitutional avoidance does not permit an agency to re-write a statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018).

If, as a matter of law, a statutory exemption that is limited to educational institutions "controlled by a religious organization" *unconstitutionally* discriminates against religious organizations with different types of structures – as the NPRM appears to claim – then the Department's only choice is not to apply this unconstitutional exemption at all to anyone.

As the Supreme Court explained in *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698-1699 (2017), "[w]hen the 'right invoked is that to equal treatment,' the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class. … The choice between these outcomes is governed by the legislature's intent, as revealed by the statute at hand."  For the reasons set forth below, it is clear that the intent of Congress in 1972 (and again in 1988 when it repeated the exemption in 20 U.S.C. § 1687) would have been to enact Title IX without a religious exemption if a court were to hold that the limited religious exemption provision it enacted was unconstitutional.

This is reflected first in a textual analysis. Here, there is no statutory language that can be excised from the religious exemption itself if the "controlled by a religious organization" is unconstitutionally limiting. Without this language, the exemption would make no sense. This weighs in favor of excising the exemption in its entirety, if is it unconstitutional as written as the NPRM appears to claim. Even when a statutory provision is determined to be unconstitutional, "mindful that our constitutional mandate and institutional competence are limited, we restrain ourselves from 'rewrit[ing] state law to conform it to constitutional requirements' even as we strive to salvage it." *Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 329 (2006). This is particularly true when "making distinctions in a murky constitutional context, or where line-drawing is inherently complex" because in those circumstances, working to essentially craft a new test as to who should be eligible for religious exemption beyond the text of the statute "may call for a 'far more serious invasion of the legislative domain' than we ought to undertake." *Id.* at 330.

Second, as shown below, the longstanding course of conduct by Congress demonstrates that if the religious exemption as written is unconstitutional, Congress would still have wanted the remainder of Title IX to nonetheless remain in effect.

**a.** First, Title IX was modelled on Title VI of the Civil Rights Act, which did not have a religious exemption. Nor did Section 504 of the Rehabilitation Act of 1973 or the Age Discrimination Act of 1975, both enacted shortly after Title IX.

Thus, in general, Congress did not think a religious exemption was necessary in order to place non-discrimination conditions on recipients of federal assistance, even when the type of discrimination was not subject to heightened constitutional scrutiny. *Compare* 135 Cong. Rec. S2399 (March 17, 1988) (Sen. Helms) (urging both "a strong religious exemption added to the Rehabilitation Act and an updating of the sex discrimination exemption," so that private schools could discriminate against people with "communicable diseases, including AIDS and infection with the AIDS virus" on religious and moral grounds).

**b.** Second, as noted above, Congress confronted the question in 1988 about whether to expand the religious exemption to extend to institutions "closely identified with the tenets of a religious organization." It not only repeatedly rejected that amendment prior to passage of the Civil Rights Restoration Act (including 20 U.S.C. § 1687), but rejected it again by supermajorities when it overrode the President's veto, which had relied on the absence of the amendment as one of the grounds for vetoing the bill.

**c.** Third, the overwhelming majority of statutes enacted by Congress on the topic of sex discrimination by recipients of financial assistance have consistently prohibited sex discrimination without any religious exemption.

As reflected in Tables I, II, and III below, in the past 50 years, Congress has enacted at least 59 Public Laws containing **73** statutory provisions (in addition to Title IX) that prohibit sex discrimination by recipients of various federal assistance.

Only **3** other statutes expressly exempt certain educational institutions from the prohibition on sex discrimination based on religious tenets. *See* Table I (page 11).

There have been **5** statutes that could arguably be read to incorporate Title IX's religious exemption. 4 of them prohibit sex discrimination "except as otherwise permitted under title IX" or "to the extent provided in title IX." *See* Table II (page 12). In addition, this Administration (contrary to the last Administration) has interpreted language in the Patient Protection and Affordable Care Act, PL 111-148, § 1557, 124 Stat 119, 260 (March 23, 2010) (codified at 42 U.S.C. § 18116) that prohibits discrimination "on the ground prohibited under … title IX" to incorporate Title IX's religious exemption. *See* 84 Fed. Reg. 27846, 27864 (June 14, 2019) (HHS NPRM).

But **65** other statutes - the overwhelming majority of the sex discrimination statutes enacted by Congress governing recipients of different types of federal assistance - do not have any type of exemption and do not cross-reference Title IX. They simply prohibit sex discrimination by recipients without exception. *See* Table III (pages 13-21). While it may that a few of these statutes were limited to assistance provided only to government entities, the vast preponderance of these non-discrimination statutes govern assistance that a non-profit entity, including one controlled by a religious organization, could receive if otherwise eligible.

The absence of religious exemptions is particularly pronounced when looking at the statutes enacted around the same time as Title IX. The 92d Congress, which enacted Title IX, also enacted 6 other statutes that prohibited sex discrimination by recipients of federal assistance. *See* Table III (page 21). None had religious exemptions. And 2 of those statutes were enacted solely to govern educational institutions receiving certain federal funds. Those 2 statutes remain on the books today, still without exemptions. *See* 42 U.S.C. § 295m (Comprehensive Health Manpower Training Act); 42 U.S.C. § 296g (Nurse Training Act).

Between 1973 and 1988, when Congress enacted 20 U.S.C. § 1687 (which repeated the language of the Title IX religious exemption while expanding Title IX's coverage), Congress enacted 29 other statutes that prohibit sex discrimination by recipients of federal assistance without providing religious exemption. *See* Table III (pages 16-20). It enacted only 1 statute that arguably incorporated Title IX's religious exemption. *See* Table II.

There is no basis to believe that the 1972 Congress (or the 1988 Congress) would have wanted to expand the existing religious exemption if required to make the choice between the expansive view proposed by the Department and no exemption at all. "Put to the choice, Congress, we believe, would have abrogated [Title IX's] exception, preferring preservation of the general rule" of non-discrimination by recipients of federal assistance. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1700 (2017).

This is particularly true in light of the Supreme Court's holding in *Grove City College v. Bell*, 465 U.S. 555 (1984). In that case, which was the impetus for the Civil Rights Restoration Act in the first place, the Court rejected a claim by Grove City College that Title IX's application to it would violate the First Amendment rights of both the college and its students. It definitively held that Title IX's prohibition on sex discrimination is a reasonable condition on disbursing

federal funds, and "infringes no First Amendment rights of the College or its students." *Id.* at 576. Although Congress overruled the holding of *Grove City* that limited Title IX, it made no effort to amend Title IX to reduce any perceived First Amendment burdens on recipients.

This hardly leaves educational institutions without any potential federal statutory protection for religiously-motivated actions that violate Title IX. An educational institution can invoke the Religious Freedom Restoration Act if it can show that compliance with Title IX "substantially burden[s]" its "exercise of religion." 42 U.S.C. § 2000bb-1(a). If the institution makes that showing, a court would have to then determine whether prohibiting that school from discriminating is the least restrictive means of furthering the government's compelling interests in eliminating sex discrimination in education and in not subsidizing sex discrimination with federal assistance. *Id.* § 2000bb-1(b); s*ee Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984) (government has "compelling interest in eradicating discrimination against its female citizens"); *City of Richmond v. J. A. Croson Co.*, 488 U.S. 469 (1989) (federal government "has a compelling interest in assuring that public dollars, drawn from the tax contributions of all citizens, do not serve to finance" institutions that discriminate).

Congress struck a reasonable balance when it made only educational institutions controlled by religious organizations eligible for exemptions.  The Department should not try and alter that balance.  If it believes itself constitutionally obligated to do so, it should treat the exemption as a nullity and follow Congress' intent to protect all Americans from sex discrimination in education.

### 3.  The Department Did Not Obtain Approval of the NPRM from the Attorney General, in Violation of Executive Order 12250[1]

Executive Order 12250 requires any NPRM that addresses sex discrimination under Title IX to be reviewed and approved by the Attorney General prior to its publication in the Federal Register. §§ 1-202, 1-402; *see also* Memorandum from John Gore, Acting Assistant Attorney General, to Federal Agency Civil Rights Directors re: *Clearance Requirements for Title VI, Title IX, Section 504, and Related Nondiscrimination Regulations and Policy Guidance Documents* (Apr. 24, 2018).  That authority (although not the authority to approve final regulations) has been delegated to the Assistant Attorney General for Civil Rights. 28 C.F.R. § 0.51(a).

There is no indication in the NPRM that this requirement was met. Indeed, there is no mention of this Executive Order in the NPRM at all. The probable failure to comply with the letter and spirit of Executive Order 12250 may be one reason why, as we note below, there has been no thought given to how these proposed changes will interact with the Title IX regulations of 25 other federal agencies.

---

[1] Portions of Parts 3 and 4 are drawn substantially from comments filed by another person in response to a different NPRM, available at https://www.regulations.gov/document?D=ED-2018-OCR-0064-18375.

EXHIBIT B

### 4.  Any Changes to the Title IX Regulations Should be Done in Coordination with the More Than 20 Other Federal Agencies That Have Title IX Regulations

Apart from its substantive flaws, the NPRM just focuses on the Department, even though there are 25 other federal agencies with Title IX regulations[2] and most of those agencies provide financial assistance to the same private schools, colleges, and universities that the Department funds.

More than 20 of those other agencies adopted their identical final Title IX regulations in 2000 based on a common NPRM.[3] Those twenty-plus final regulations were themselves closely modeled on this Department's regulation, save for modifications necessary to be consistent with statutory changes that were not yet reflected in the Department of Education's regulations. 65 Fed. Reg. at 52,859/1-2. In promulgating those regulations, those federal agencies, led by the Department of Justice, explained that "[u]sing ED's regulations as the basis for this common rule promotes consistency and efficiency not only for agencies but for the recipient community," *id.* at 52,859/1, and thus endeavored "to minimize the extent to which these Title IX regulations differ from the Department of Education's Title IX rule," *id.* at 52,860/2.

And the number of agencies that adopted the common Title IX rule increased by one during this Administration, when the U.S. Department of Agriculture (USDA) adopted it without change. It explained that "[b]y harmonizing the provisions of [its Title IX regulations] with the common rule, USDA brings its regulations up-to-date, complies with Executive Order 13777, 'Enforcing the Regulatory Reform Agenda,' dated February 24, 2017, follows current guidance from DOJ, and makes it easier for recipients of USDA financial assistance to understand and comply with Title IX requirements."[4] This NPRM will do the precise opposite.

The Department cannot act like a lone ranger; it must work with all the other federal agencies to adopt a common set of standards on this common question of what entities are eligible for exemptions to Title IX. Even if the Department were not inclined to consider the other agencies' regulations as a matter of common sense, federal law and Executive Orders require it to do so. The Regulatory Flexibility Act requires the Department to identify and address "all relevant Federal rules which may duplicate, overlap or conflict with the proposed rule." 5 U.S.C. § 603(b)(5). Executive Order 12866 requires the Department to "avoid regulations that are

---

[2] *See* Agency for International Development, 22 C.F.R. pt. 229; Corporation for National and Community Service, 45 C.F.R. pt. 2555; Department of Agriculture, 7 C.F.R. pt. 15a; Department of Commerce, 15 C.F.R. pt. 8a; Department of Defense, 32 C.F.R. pt. 196; Department of Energy, 10 C.F.R. pt. 1042; Department of Health and Human Services, 45 C.F.R. pt. 86; Department of Homeland Security, 6 C.F.R. pt. 17; Department of Housing and Urban Development, 24 C.F.R. pt. 3; Department of Interior, 43 C.F.R. pt. 41; Department of Justice, 28 C.F.R. pt. 54; Department of Labor, 29 C.F.R. 36; Department of State, 22 C.F.R. pt. 146; Department of Transportation, 49 C.F.R. pt. 25; Department of Treasury, 31 C.F.R. pt. 28; Department of Veterans Affairs, 38 C.F.R. pt. 23; Environmental Protection Agency, 40 C.F.R. pt. 5; Federal Emergency Management Agency, 44 C.F.R. pt. 19; General Services Administration, 41 C.F.R. pt. 101-4; National Aeronautics and Space Administration, 14 C.F.R. pt. 1253; National Archives and Records Administration, 36 C.F.R. pt. 1211; National Science Foundation, 45 C.F.R. pt. 618; Nuclear Regulatory Commission, 10 C.F.R. 5; Small Business Administration, 13 C.F.R. pt. 113; Tennessee Valley Authority, 18 C.F.R. pt. 1317.

[3] *See* 65 Fed. Reg. 52,857 (2000) (final Title IX rules for 21 agencies); 64 Fed. Reg. 58,567 (1999) (NPRM).

[4] 82 Fed. Reg. 46,655 (Oct. 6, 2017).

inconsistent, incompatible, or duplicative with … those of other Federal agencies." § 1(b)(10). And Executive Order 13563 encourages "[g]reater coordination across agencies" to reduce "redundant, inconsistent, or overlapping" regulatory requirements by mandating that a federal agency proposing a rule "attempt to promote such coordination, simplification, and harmonization." § 3.

It is not a sufficient response to these substantial concerns of inconsistency by merely predicting (or even promising) that other agencies will amend their Title IX regulations someday to comport with these proposed regulations. That is what the government said in the common rule when it addressed how it would align the agencies' regulations with the Department's then-expected amended regulation regarding single-sex schools and classes. Specifically, the government stated in promulgating the common rule that "conforming changes will be made in the regulations covered by this notice" after the Department adopted a new regulation. 65 Fed. Reg. at 52,861/3. That never happened.

The new regulation was promulgated by the Department in 2006. In 2008, in response to litigation, the Department assured a district court that the Department of Justice "has initiated the process of discussing a common rule that would reflect the Department of Education's amendment of its Title IX regulations to give schools flexibility to offer single-sex classes that comply with the specified regulatory requirements."[5] And yet, twelve years after the Department of Justice made that assurance, there has been no public effort to conform other agencies' regulations with the Department's. We submit the lesson that should be learned from this is: when addressing a topic that is not necessarily limited to a particular type of recipient or stream of funding, such regulatory changes must be done by all agencies at the same time, or many agencies will permanently lag behind.

Dissimilarity in Title IX regulations leads to confusion about how different agency Title IX regulations interact. That has been true regarding single-sex schools and classes.[6] The same has been true for the Department's other significant deviation from the Title IX regulations of other agencies, regarding dress codes. In 1982, the Department removed a provision from its regulations that specifically governed codes of appearance.[7] But at least one other federal agency still has that specific provision on its books,[8] and many other agencies that never had that provision have regulations with broad language that could encompass codes of appearance. Courts and recipients have struggled to determine how these different Title IX regulations all interact.[9]

---

[5] Brief for the United States Dept. of Education, *A.N.A v. U.S. Dept. of Educ.*, No. 3:08-CV-00004-CRS-JDM, 2008 WL 11412046 at n.2 (W.D. Ky.) (filed Aug. 1, 2008).

[6] *See, e.g.*, Brief for the United States as *Amicus Curiae*, *Doe v. Vermilion Parish Sch. Bd.*, No. 10-30378, at 10 & n.3 (5th Cir.) (filed June 4, 2010); Brief for Wood County Bd. of Education, *Doe v. Wood County Bd. of Educ.*, 2012 WL 13035184 (S.D. W. Va.) (filed Aug. 27, 2012).

[7] 47 Fed. Reg. 32,526 (1982).

[8] 45 C.F.R. § 86.31(b)(5) (Department of Health and Human Services).

[9] *Peltier v. Charter Day Sch., Inc.*, No. 7:16-CV-30-H, 2017 WL 1194460, at *3-4 (E.D.N.C. Mar. 30, 2017).

The Department itself might struggle with the inconsistencies first hand because it has entered into delegation agreements with other federal agencies to handle complaints of discrimination under Title IX.[10] If a complaint was filed with such an agency, it would be referred to the Department under the delegation agreement.  If the other agency did not adopt a similar amendment to its regulations, the Department might have to investigate on behalf of another agency a private school that the Department believes is exempt from Title IX.

For all the foregoing reasons, I urge the Department to withdraw the proposed 34 C.F.R. § 106.12(c) in its entirety.

*Seth Galanter*

---

[10] 52 Fed. Reg. 43,385 (1987) (NASA).

| TABLE I: Express exemptions from prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| **Date enacted** | **Topic** | **Title of Enacting Statute** | **Statute** | **Exemption language** |
| April 15, 2011 | DC voucher program | DEPARTMENT OF DEFENSE AND FULL-YEAR CONTINUING APPROPRIATIONS ACT, 2011 | PL 112-10, § 3008, 125 Stat 38 | Notwithstanding any other provision of law, the prohibition of sex discrimination in subsection (a) shall not apply to a participating school that is operated by, supervised by, controlled by, or connected to a religious organization to the extent that the application of subsection (a) is inconsistent with the religious tenets or beliefs of the school. |
| December 30, 2005 | Elementary and Secondary Education Hurricane Relief | DEPARTMENT OF DEFENSE, EMERGENCY SUPPLEMENTAL APPROPRIATIONS TO ADDRESS HURRICANES IN THE GULF OF MEXICO, AND PANDEMIC INFLUENZA ACT, 2006 | PL 109-148, § 107, 119 Stat 2680 | the prohibition of sex discrimination in paragraph (1)(A) shall not apply to a non-public school that is controlled by a religious organization or organized and operated on the basis of religious tenets if the application of paragraph (1)(A) would not be consistent with the religious tenets of such organization. |
| January 23, 2004 | DC voucher program | CONSOLIDATED APPROPRIATIONS ACT, 2004 | PL 108-199, § 308, 118 Stat 3 | Notwithstanding any other provision of law, the prohibition of sex discrimination in subsection (a) shall not apply to a participating school that is operated by, supervised by, controlled by, or connected to a religious organization to the extent that the application of subsection (a) is inconsistent with the religious tenets or beliefs of the school. |

EXHIBIT B

| TABLE II: Cross-referenced Title IX's prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| **Date enacted** | **Codified** | **Title of Enacting Statute** | **Statute** | **Non-discrimination language** |
| July 22, 2014 | 29 USC 3248 | WORKFORCE INNOVATION AND OPPORTUNITY ACT | PL 113-128, § 188, 128 Stat 1425, 1596 | No individual shall be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in the administration of or in connection with, any such program or activity because of race, color, religion, sex (except as otherwise permitted under title IX of the Education Amendments of 1972), national origin, age, disability, or political affiliation or belief. |
| August 7, 1998 | 29 USC 2938 | WORKFORCE INVESTMENT ACT OF 1998 | PL 105-220, § 188, 112 Stat 936 | No individual shall be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in the administration of or in connection with, any such program or activity because of race, color, religion, sex (except as otherwise permitted under title IX of the Education Amendments of 1972), national origin, age, disability, or political affiliation or belief. |
| July 23, 1992 | 20 USC 1132c-3 | HIGHER EDUCATION AMENDMENTS OF 1992 | PL 102-325, § 724, 106 Stat. 448 | No loan may be made to an institution under this part if the institution discriminates on account of race, color, religion, national origin, sex (to the extent provided in title IX of the Education Amendments of 1972), or disabling condition; except that the prohibition with respect to religion shall not apply to an institution which is controlled by or which is closely identified with the tenets of a particular religious organization if the application of this section would not be consistent with the religious tenets of such organization. |
| October 17, 1986 | 20 USC 1132f-1 | HIGHER EDUCATION AMENDMENTS OF 1986 | PL 99-498, § 752, 100 Stat 1268 | (1) The Corporation may not carry out any activities with respect to any educational facilities purpose of a participating institution if the institution discriminates on account of race, color, religion (subject to paragraph (2)), national origin, sex (to the extent provided in title IX of the Education Amendments of 1972), or handicapping condition.<br>(2) The prohibition with respect to religion shall not apply to an educational institution which is controlled by or which is closely identified with the tenets of a particular religious organization if the application of this section would not be consistent with the religious tenets of such organization. |

| TABLE III: No exemptions to prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| **Date enacted** | **Codified** | **Title of Enacting Statute** | **Statute** | **Non-discrimination language** |
| March 7, 2013 | 42 USC 13925 | VIOLENCE AGAINST WOMEN REAUTHORIZATION ACT OF 2013 | PL 113-4, § 3, 127 Stat 54 | No person in the United States shall, on the basis of actual or perceived race, color, religion, national origin, sex, gender identity (as defined in paragraph 249(c)(4) of title 18, United States Code), sexual orientation, or disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity funded in whole or in part with funds made available under the Violence Against Women Act of 1994 (title IV of Public Law 103-322; 108 Stat. 1902), the Violence Against Women Act of 2000 (division B of Public Law 106-386; 114 Stat. 1491), the Violence Against Women and Department of Justice Reauthorization Act of 2005 (title IX of Public Law 109-162; 119 Stat. 3080), the Violence Against Women Reauthorization Act of 2013, and any other program or activity funded in whole or in part with funds appropriated for grants, cooperative agreements, and other assistance administered by the Office on Violence Against Women. |
| December 20, 2010 | 42 USC 10406 | CAPTA REAUTHORIZATION ACT OF 2010 | PL 111-320, § 306, 124 Stat 3459 | No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this title. |
| March 23, 2010 | 42 USC 18116 | PATIENT PROTECTION AND AFFORDABLE CARE ACT | PL 111-148, § 1557, 124 Stat 119 | Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). |
| April 21, 2009 | 22 USC 8303 | SERVE AMERICA ACT | PL 111-13, § 5103, 123 Stat 1460 | The VfP Office may not provide a stipend to an individual under paragraph (1) unless the nonprofit organization to which the individual is assigned has certified to the VfP Office that it does not discriminate with respect to any project or activity receiving Federal financial assistance, including a stipend under this title, because of race, religion, color, national origin, sex, political affiliation, or beliefs. |
| June 18, 2008 | 7 USC 2020 | FOOD, CONSERVATION, AND ENERGY ACT OF 2008 | PL 110-246, § 4117, 122 Stat 1651 | In the certification of applicant households for the supplemental nutrition assistance program, there shall be no discrimination by reason of race, sex, religious creed, national origin, or political affiliation. |

EXHIBIT B

| TABLE III: No exemptions to prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| Date enacted | Codified | Title of Enacting Statute | Statute | Non-discrimination language |
| May 22, 2008 | 7 USC 2020 | FOOD, CONSERVATION, AND ENERGY ACT OF 2008 | PL 110-234, § 4117, 122 Stat 923 | In the certification of applicant households for the supplemental nutrition assistance program, there shall be no discrimination by reason of race, sex, religious creed, national origin, or political affiliation. |
| August 21, 2002 | 40 USC 122 | REVISION OF TITLE 40, UNITED STATES CODE, "PUBLIC BUILDINGS, PROPERTY, AND WORKS" | PL 107-217, § 122, 116 Stat 1062 | With respect to a program or activity carried on or receiving federal assistance under this subtitle, an individual may not be excluded from participation, denied benefits, or otherwise discriminated against based on sex. |
| August 21, 2002 | 40 USC 14702 | REVISION OF TITLE 40, UNITED STATES CODE, "PUBLIC BUILDINGS, PROPERTY, AND WORKS" | PL 107-217, § 14702, 116 Stat 1062 | An individual in the United States shall not, because of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, a program or activity receiving federal financial assistance under this subtitle. |
| December 27, 2000 | 25 USC 4223 | OMNIBUS INDIAN ADVANCEMENT ACT | PL 106-568, § 803, 114 Stat 2868 | Program eligibility under this title may be restricted to Native Hawaiians. Subject to the preceding sentence, no person may be discriminated against on the basis of race, color, national origin, religion, sex, familial status, or disability. |
| December 27, 2000 | 25 USC 4223 | AMERICAN HOMEOWNERSHIP AND ECONOMIC OPPORTUNITY ACT OF 2000 | PL 106-569, § 803, 114 Stat 2944 | Program eligibility under this title may be restricted to Native Hawaiians. Subject to the preceding sentence, no person may be discriminated against on the basis of race, color, national origin, religion, sex, familial status, or disability. |
| October 27, 1998 | 42 USC 9918 | COMMUNITY OPPORTUNITIES, ACCOUNTABILITY, AND TRAINING AND EDUCATIONAL SERVICES ACT OF 1998 | PL 105-285, § 678F, 112 Stat 2702 | No person shall, on the basis of race, color, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this subtitle. |
| October 7, 1998 | 20 USC 1087tt | HIGHER EDUCATION AMENDMENTS OF 1998 | PL 105-244, § 478, 112 Stat 1581 | No eligible institution shall discriminate against any borrower or applicant in obtaining a loan on the basis of race, national origin, religion, sex, marital status, age, or disability status." |
| September 13, 1994 | 42 USC 13791 | VIOLENT CRIME CONTROL AND LAW ENFORCEMENT ACT OF 1994 | PL 103-322, § 30401, 108 Stat 1796 | In selecting children to participate in a program that receives assistance under this section, a community-based organization shall not discriminate on the basis of race, color, religion, sex, national origin, or disability. |
| July 5, 1994 | 49 USC 5332 | REVISION OF TITLE 49, UNITED STATES CODE ANNOTATED, "TRANSPORTATION" | PL 103-272, § 5332, 108 Stat 745 | A person may not be excluded from participating in, denied a benefit of, or discriminated against under, a project, program, or activity receiving financial assistance under this chapter because of race, color, creed, national origin, sex, or age. |
| September 21, 1993 | 42 USC 12635 | NATIONAL AND COMMUNITY SERVICE TRUST ACT OF 1993 | PL 103-82, § 115, 107 Stat 785 | An individual with responsibility for the operation of a project that receives assistance under this title shall not discriminate against a participant in, or member of the staff of, such project on the basis of race, color, national origin, sex, age, or political affiliation of such participant or member, or on the basis of disability, if the participant or member is a qualified individual with a disability. |

EXHIBIT B

| TABLE III: No exemptions to prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| Date enacted | Codified | Title of Enacting Statute | Statute | Non-discrimination language |
| September 21, 1993 | 42 USC 5057 | NATIONAL AND COMMUNITY SERVICE TRUST ACT OF 1993 | PL 103-82, § 367, 107 Stat 785 | An individual with responsibility for the operation of a program that receives assistance under this Act shall not discriminate against a participant in, or member of the staff of, such program on the basis of race, color, national origin, sex, age, or political affiliation of such participant or member, or on the basis of disability, if the participant or member is a qualified individual with a disability. |
| October 28, 1992 | 42 USC 1437w | HOUSING AND COMMUNITY DEVELOPMENT ACT OF 1992, | PL 102-550, § 121, 106 Stat 3672 | No person in the United States shall, on the grounds of race, color, national origin, religion, or sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this section. Any prohibition against discrimination on the basis of age under the Age Discrimination Act of 1975 or with respect to an otherwise qualified handicapped individual as provided in section 504 of the Rehabilitation Act of 1973 shall also apply to any such program or activity. |
| October 13, 1992 | 42 USC 295m | HEALTH PROFESSIONS EDUCATION EXTENSION AMENDMENTS OF 1992 | PL 102-408, § 794, 106 Stat 1992 | The Secretary may not make a grant, loan guarantee, or interest subsidy payment under this title to, or for the benefit of, any school of medicine, osteopathic medicine, dentistry, veterinary medicine, optometry, pharmacy, podiatric medicine, or public health or any training center for allied health personnel, or graduate program in clinical psychology, unless the application for the grant, loan guarantee, or interest subsidy payment contains assurances satisfactory to the Secretary that the school or training center will not discriminate on the basis of sex in the admission of individuals to its training programs. The Secretary may not enter into a contract under this title with any such school or training center unless the school, training center, or graduate program furnishes assurances satisfactory to the Secretary that it will not discriminate on the basis of sex in the admission of individuals to its training programs. |
| July 10, 1992 | 42 USC 300x-57 | ADAMHA REORGANIZATION ACT | PL 102-321, § 1947, 106 Stat 323 | No person shall on the ground of sex (including, in the case of a woman, on the ground that the woman is pregnant), or on the ground of religion, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under section 1911 or 1921. |
| December 12, 1991 | | NONTRADITIONAL EMPLOYMENT FOR WOMEN ACT | PL 102-235, § 11, 105 Stat 1806 | No individual shall be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in any program under this Act because of race, color, religion, sex, national origin, age, handicap, political affiliation or belief. |

EXHIBIT B

| Date enacted | Codified | Title of Enacting Statute | Statute | Non-discrimination language |
|---|---|---|---|---|
| | | TABLE III: No exemptions to prohibitions on sex discrimination by recipients | | |
| November 29, 1990, | 42 USC 290cc-33 | STEWART B. MCKINNEY HOMELESS ASSISTANCE AMENDMENTS ACT OF 1990 | PL 101-645, § 533, 104 Stat 4673 | No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under section 521. |
| November 28, 1990 | 42 USC 12832 | CRANSTON-GONZALEZ NATIONAL AFFORDABLE HOUSING ACT, | PL 101-625, § 282, 104 Stat 4079 | No person in the United States shall on the grounds of race, color, national origin, religion, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity funded in whole or in part with funds made available under this title. |
| November 16, 1990 | 42 USC 12635 | NATIONAL AND COMMUNITY SERVICE ACT OF 1990 | PL 101-610, § 175, 104 Stat 3127 | An individual with responsibility for the operation of a project that receives assistance under this title shall not discriminate against a participant or member of the staff of such project on the basis of race, color, national origin, sex, age, disability, or political affiliation of such member. |
| July 22, 1987 | 42 USC 290cc-3 | STEWART B. MCKINNEY HOMELESS ASSISTANCE ACT | PL 100-77, § 534, 101 Stat 482 | No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this part. |
| November 6, 1986 | | IMMIGRATION REFORM AND CONTROL ACT OF 1986 | PL 99-603, § 204(h), 100 Stat 3359 | No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this section. |
| October 12, 1984 | 42 USC 10504 | CONTINUING APPROPRIATIONS ACT, 1985 | PL 98-473, § 609P, 98 Stat 1837 | No person in any State shall, on the ground of race, color, religion, national origin, or sex, be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in connection with any activity for which Federal law enforcement assistance is provided under this subdivision. |
| October 12, 1984 | 42 USC 10604(e) | CONTINUING APPROPRIATIONS ACT, 1985 | PL 98-473, § 1407(e), 98 Stat 1837 | No person shall on the ground of race, color, religion, national origin, handicap, or sex be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in connection with, any undertaking funded in whole or in part with sums made available under this chapter. |
| October 9, 1984 | 42 USC 10406 | CHILD ABUSE AMENDMENTS OF 1984 | PL 98-457, § 307, 98 Stat 1749 | No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subject to discrimination under, any program or activity funded in whole or in part with funds made available under this title. |

EXHIBIT B

| TABLE III: No exemptions to prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| Date enacted | Codified | Title of Enacting Statute | Statute | Non-discrimination language |
| January 12, 1983 | 49 USC 306 | CONTINUING APPROPRIATIONS ACT, 1983 | PL 97-449, § 306, 96 Stat 2413 | A person in the United States may not be excluded from participating in, be denied the benefits of, or be subject to discrimination under, a project, program, or activity because of race, color, national origin, or sex when any part of the project, program, or activity is financed through financial assistance under section 332 of this title, section 211 or 216 of the Regional Rail Reorganization Act of 1973 (45 U.S.C. 721, 726), title V or VII of the Railroad Revitalization and Regulatory Reform Act of 1976 (45 U.S.C. 821 et seq., 851 et seq.), or section 4(i) or 5 of the Department of Transportation Act (49 U.S.C. 1653(i), 1654). |
| October 13, 1982 | 29 USC 1577 | JOB TRAINING PARTNERSHIP ACT | PL 97-300, § 167, 96 Stat 1322 | No individual shall be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in the administration of or in connection with any such program because of race, color, religion, sex, national origin, age, handicap, or political affiliation or belief. |
| August 13, 1981 | 42 USC 9821 | OMNIBUS BUDGET RECONCILIATION ACT OF 1981 | PL 97-35, § 632, 95 Stat 357 | No person in the United States shall on the ground of sex be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in connection with any program or activity receiving assistance under this subchapter. |
| August 13, 1981 | 42 USC 9849 | OMNIBUS BUDGET RECONCILIATION ACT OF 1981 | PL 97-35, § 654, 95 Stat 357 | No person in the United States shall on the ground of sex be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in connection with any program or activity receiving assistance under this subchapter. |
| August 13, 1981 | 42 USC 9906 | OMNIBUS BUDGET RECONCILIATION ACT OF 1981 | PL 97-35, § 677, 95 Stat 357 | No person shall on the ground of race, color, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this subtitle. |
| August 13, 1981 | 42 USC 300w-7 | OMNIBUS BUDGET RECONCILIATION ACT OF 1981 | PL 97-35, § 1908, 95 Stat 357 | No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this part. |
| August 13, 1981 | 42 USC 300x-7 | OMNIBUS BUDGET RECONCILIATION ACT OF 1981 | PL 97-35, § 1918, 95 Stat 357 | No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this part. |
| August 13, 1981 | 42 USC 300y-9 | OMNIBUS BUDGET RECONCILIATION ACT OF 1981 | PL 97-35, § 1930, 95 Stat 357 | No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this part. |

EXHIBIT B

| TABLE III: No exemptions to prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| Date enacted | Codified | Title of Enacting Statute | Statute | Non-discrimination language |
| August 13, 1981 | 42 USC 708 | OMNIBUS BUDGET RECONCILIATION ACT OF 1981 | PL 97-35, § 508, 95 Stat 357 | No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this title |
| August 13, 1981 | 42 USC 8625 | OMNIBUS BUDGET RECONCILIATION ACT OF 1981 | PL 97-35, § 2606, 95 Stat 357 | No person shall on the ground of race, color, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this title. |
| December 27, 1979 | 42 USC 3789d | JUSTICE SYSTEM IMPROVEMENT ACT OF 1979 | PL 96-157, § 815, 93 Stat 1167 | No person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this title. |
| November 6, 1978 | 49 USC 1615 | SURFACE TRANSPORTATION ASSISTANCE ACT OF 1978 | PL 95-599, § 19, 92 Stat 2689 | No person in the United States shall on the grounds of race, color, creed, national origin, sex, or age be excluded from participation in, or denied the benefits of, or be subject to discrimination under any project, program, or activity funded in whole or in part through financial assistance under this Act.. |
| October 27, 1978 | 15 USC 3151 | FULL EMPLOYMENT AND BALANCED GROWTH ACT OF 1978 | PL 95-523, § 401, 92 Stat 1887 | No person in the United States shall on the ground of sex, age race, color, religion, national origin or handicap be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity funded pursuant to the implementation of this Act, including membership in any structure created by this Act. |
| October 27, 1978 | 29 USC 823 | COMPREHENSIVE EMPLOYMENT AND TRAINING ACT AMENDMENTS OF 1978 | PL 95-524, § 121, 92 Stat 1909 | No person shall be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in the administration of or in connection with any such program because of race, color, religion, sex, national origin, age, handicap, or political affiliation or belief. |
| October 27, 1978 | 29 USC 834 | COMPREHENSIVE EMPLOYMENT AND TRAINING ACT AMENDMENTS OF 1978 | PL 95-524, § 132, 92 Stat 1909 | No person in the United States shall on the ground of race, color, religion, sex, national origin, age, handicap, or political affiliation or belief be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in the administration of or in connection with any program or activity funded in whole or in part with funds made available under this Act.. |
| August 20, 1978 | 43 USC 1747 | APPROPRIATIONS FOR ACTIVITIES AND PROGRAMS CARRIED OUT BY THE SECRETARY OF THE INTERIOR THROUGH THE BUREAU OF LAND MANAGEMENT | PL 95-352, § 1(f), 92 Stat 515 | No person in the United States shall, on the grounds of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or part with funds made available under this subsection. |

EXHIBIT B

| TABLE III: No exemptions to prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| Date enacted | Codified | Title of Enacting Statute | Statute | Non-discrimination language |
| February 25, 1978 | 42 USC 5919 | DEPARTMENT OF ENERGY ACT OF 1978-CIVILIAN APPLICATIONS | PL 95-238, § 19, 92 Stat 47 | No person in the United States shall on the grounds of race, color, religion, national origin, or sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity funded in whole or in part with assistance made available under this section. |
| September 29, 1977 | 7 USC 2020 | FOOD AND AGRICULTURE ACT OF 1977 | PL 95-113, § 11, 91 Stat 913 | In the certification of applicant households for the food stamp program, there shall be no discrimination by reason of race, sex, religious creed, national origin, or political beliefs. |
| August 5, 1977 | 29 USC 993g | YOUTH EMPLOYMENT AND DEMONSTRATION PROJECTS ACT OF 1977 | PL 95-93, § 808, 91 Stat 627 | No persons with responsibilities in the operations of such programs shall discriminate with respect to participation in such programs because of race, creed, color, national origin, sex, political affiliation, or beliefs. |
| October 17, 1976 | 40 USC 476 | AN ACT TO AMEND THE FEDERAL PROPERTY AND ADMINISTRATIVE SERVICES ACT OF 1949 TO PERMIT THE DONATION OF FEDERAL SURPLUS PERSONAL PROPERTY TO THE STATES AND LOCAL ORGANIZATIONS FOR PUBLIC PURPOSES, AND FOR OTHER PURPOSES. | PL 94-519, § 606, 90 Stat 2451 | No individual shall on the ground of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity carried on or receiving Federal assistance under this Act. |
| October 15, 1976 | 42 USC 3766 | CRIME CONTROL ACT OF 1976 | PL 94-503, § 122, 90 Stat 2407 | No person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any program or activity funded in whole or in part with funds made available under this title. |
| August 14, 1976 | 42 USC 6870 | ENERGY CONSERVATION AND PRODUCTION ACT | PL 94-385, § 420, 90 Stat 1125 | No person in the United States shall, on the ground of race, color, national origin, or sex, or on the ground of any other factor specified in any Federal law prohibiting discrimination, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program, project, or activity supported in whole or in part with financial assistance under this part. |
| February 5, 1976 | 45 USC 803 | RAILROAD REVITALIZATION AND REGULATORY REFORM ACT OF 1976 | PL 94-210, § 905, 90 Stat 31 | No person in the United States shall on the ground of race, color, national origin, or sex be excluded from participation in, or denied the benefits of, or be subjected to discrimination under, any project, program, or activity funded in whole or in part through financial assistance under this Act. |
| January 4, 1975 | 42 USC 2930C | HEADSTART, ECONOMIC OPPORTUNITY, AND COMMUNITY PARTNERSHIP ACT OF 1974 | PL 93-644, § 574, 88 Stat 2291 | No person in the united states shall on the ground of sex be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in connection with any program or activity receiving assistance under this title. |

EXHIBIT B

| TABLE III: No exemptions to prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| Date enacted | Codified | Title of Enacting Statute | Statute | Non-discrimination language |
| January 4, 1975 | 42 USC 2985G | HEADSTART, ECONOMIC OPPORTUNITY, AND COMMUNITY PARTNERSHIP ACT OF 1974 | PL 93-644, § 748, 88 Stat 2291 | No person in the united states shall on the ground of sex be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in connection with any program or activity receiving assistance under this title. |
| October 11, 1974 | 42 USC 5891 | ENERGY REORGANIZATION ACT OF 1974 | PL 93-438, § 401, 88 Stat 1233 | No person shall on the ground of sex be excluded from participation in, be denied a license under, be denied the benefits of, or be subjected to discrimination under any program or activity carried on or receiving federal assistance under any title of this Act. |
| September 7, 1974 | 42 USC 5672 | JUVENILE AND DELINQUENCY PREVENTION ACT OF 1974 | PL 93-415, § 262, 88 Stat 1109 | No person in the United States shall on the ground of race, creed, color, sex, or national origin be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in connection with any program or activity receiving assistance under this Act. |
| May 7, 1974 | 15 USC 775 | FEDERAL ENERGY ADMINISTRATION ACT OF 1974 | PL 93-275, § 16, 88 Stat 96 | No individual shall on the grounds of sex by excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity carried on or receiving federal assistance under this Act. |
| December 28, 1973 | | COMPREHENSIVE EMPLOYMENT AND TRAINING ACT OF 1973 | PL 93-203, § 612, 87 Stat 839 | No person in the United States shall on the ground of race, color, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity funded in whole or in part with funds made available under this Act. |
| October 1, 1973 | | DOMESTIC VOLUNTEER SERVICE ACT OF 1973 | PL 93-113, § 417, 87 Stat 394 | No person in the United States shall on the ground of sex be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in connection with any program or activity receiving assistance under this Act. |
| August 13, 1973 | 23 USC 324 | FEDERAL-AID HIGHWAY ACT OF 1973 | PL 93-87, § 162, 87 Stat 250 | No person shall on the ground of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal assistance under this title or carried on under this title. |
| August 13, 1973 | 49 USC 1608 | FEDERAL-AID HIGHWAY ACT OF 1973 | PL 93-87, § 301, 87 Stat 250 | No person shall on the ground of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal assistance under this title or carried on under this title. |

EXHIBIT B

| TABLE III: No exemptions to prohibitions on sex discrimination by recipients | | | | |
|---|---|---|---|---|
| Date enacted | Codified | Title of Enacting Statute | Statute | Non-discrimination language |
| October 18, 1972 | | FEDERAL WATER POLLUTION CONTROL ACT AMENDMENTS OF 1972 | PL 92-500 § 23, 86 Stat. 816 | No person in the United States shall on the ground of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance under this Act. the Federal Water Pollution Control Act, or the Environmental Financing Act. |
| September 19, 1972 | | ECONOMIC OPPORTUNITY AMENDMENTS OF 1972 | PL 92-424, § 23, 86 Stat. 688 | No person in the United States shall on the ground of sex be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or be denied employment in connection with, any program or activity receiving assistance under this Act. |
| June, 23 1972 | 20 USC 1681 | EDUCATION AMENDMENTS OF 1972 | PL 92-318, title IX, 86 Stat. 373 | |
| November 18, 1971 | 42 USC 298 | NURSE TRAINING ACT OF 1971 | PL 92-158, § 11, 85 Stat. 465 | The Secretary may not make a grant, loan guarantee, or interest subsidy payment under this title to, or for the benefit of, any school of nursing unless the application for the grant, loan guarantee, or interest subsidy payment contains assurances satisfactory to the Secretary that the school will not discriminate on the basis of sex in the admission of individuals to its training programs. |
| November 18, 1971 | 42 USC 295h-9 | COMPREHENSIVE HEALTH MANPOWER TRAINING ACT OF 1971 | PL 92-157, § 110, 85 Stat. 431 | The Secretary may not make a grant, loan guarantee, or interest subsidy payment under this title to, or for the benefit of, any school of medicine, osteopathy, dentistry, veterinary medicine, optometry, pharmacy, podiatry, or public health or any training center for allied health personnel unless the application for the grant, loan guarantee, or interest subsidy payment contains assurances satisfactory to the Secretary that the school or training center will not discriminate on the basis of sex in the admission of individuals to its training programs. |
| August 5, 1971 | | PUBLIC WORKS AND ECONOMIC DEVELOPMENT ACT AMENDMENTS OF 1971 | PL 92-65, § 112, 85 Stat. 166 | No person in the United States shall, on the ground of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance under the Public Works and Economic Development Act of 1965. |
| August 5, 1971 | | PUBLIC WORKS AND ECONOMIC DEVELOPMENT ACT AMENDMENTS OF 1971 | PL 92-65, § 214, 85 Stat. 166 | No person in the United States shall, on the ground of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance under the Appalachian Regional Development Act of 1965. |

EXHIBIT B