IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ELIZABETH HUNTER, et al., | Case No. 6:21-cv-00474-AA |
| Plaintiffs, | **OPINION AND ORDER** |
| vs. | |
| U.S. DEPARTMENT OF EDUCATION, et al., | |
| Defendants. | |

AIKEN, District Judge:

    Plaintiffs bring this putative class action against the United States Department of Education (the "Department") and Suzanne Goldberg, Acting Assistant Secretary for Civil Rights of the Department, challenging defendants' application of the religious exemption included in Title IX of the Education Amendments of 1972 to sexual and gender minority ("LGBTQ+") students who attend private religious colleges and universities that receive federal funding. They assert

claims for violations of the First and Fifth Amendments, the Administrative Procedure Act ("APA"), and the Religious Freedom Restoration Act ("RFRA").

Now before the Court is plaintiffs' motion for a temporary restraining order ("TRO"). Doc. 44. This matter has been fully briefed since August 17, 2021. Docs. 62, 64. Plaintiffs also recently filed a motion to amend their requested TRO. Doc. 75. Although defendants' time to respond has not yet expired, the Court has determined that both matters are suitable for resolution now and without a hearing. LR 7-1(d)(1). For the following reasons, plaintiffs' Motion to Amend is GRANTED, but their Initial and Amended Motions for TROs are DENIED.

## STANDARDS

In deciding whether to grant a motion for a temporary restraining order, courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. Fed. R. Civ. P. 65; *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

A plaintiff seeking preliminary injunctive relief generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction is in the public interest. *Id*. (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as

opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction). So long as all four parts of the *Winter* test are applied, a preliminary injunction may issue if a plaintiff demonstrates that "there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

## BACKGROUND

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). The statute includes a religious exemption, which provides that Title IX "shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization[.]" *Id.* § 1681(a)(3).

The Department is the federal agency with primary responsibility for administrative enforcement of Title IX. The Department's regulations implementing Title IX are set forth at 34 C.F.R. Part 106. These regulations contain a provision implementing the religious exemption, 34 C.F.R. § 106.12, which outlines the procedures institutions must follow to assert such an exemption.

Plaintiffs are forty LGBTQ+ people who applied to, attended, or currently attend religious colleges and universities ("religious schools") that receive federal funding. They allege that their schools have discriminated against them by, among

other things, subjecting them to discipline (including expulsion), rejecting their applications for admission, and rescinding their admissions because of their sexual orientation or gender identity. Plaintiffs seek to represent a class of "LGBTQ+ students who attend taxpayer-funded religious colleges and universities that openly discriminate against them in both policy and practice." First Amend. Compl. (doc. 35) ¶ 574.

Plaintiffs allege that defendants facilitate and encourage their schools' discrimination by failing to enforce Title IX against the schools based on defendants' application of the religious exemption. Plaintiffs assert that the religious exemption, as applied to the proposed class, violates the First, Fifth, and Fourteenth Amendments and RFRA. Plaintiffs also allege that defendants' August and November 2020 amendments to 34 C.F.R. § 106.12(b) and (c), respectively, are arbitrary and capricious, in violation of the APA.

In March 2021, 33 plaintiffs filed this action. Doc. 1. On June 7, 2021, seven new plaintiffs joined the original 33 in filing a First Amended Complaint ("FAC"). Doc. 35. Thirty-five plaintiffs filed Title IX complaints with the Department's Office for Civil Rights ("OCR") between June 23, 2021 and August 2, 2021. Corr. Decl. of Lauren Swain, 8/13/2021 (doc. 61), Exs. A–D. On August 5, 2021, plaintiffs filed a Motion for a Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Enter (doc. 44), alleging that their complaints "are in danger of being dismissed at any moment" based on the religious exemption and related administrative regulations. TRO Mot. (doc. 44) at 9. Defendants filed their

response opposing the motion on August 13, 2021. Doc. 62. Plaintiffs filed their reply on August 17, 2021. Doc. 64. On August 25, 2021, plaintiffs filed a Motion to Amend Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Enter (doc. 75), seeking to amend their requested preliminary injunctive relief and alleging that 11 plaintiffs have returned to campus or will do so soon, that hostility towards plaintiffs and other LGBTQ+ students have escalated at many plaintiffs' schools, and that defendants are "stonewalling" plaintiffs' administrative complaints. Mot. to Amend (doc. 75) at 2–12.

## DISCUSSION

### I.   *Plaintiffs' Motion to Amend (doc. 75)*

Although defendants' time to respond to plaintiffs' Motion to Amend has not expired, the Court GRANTS the motion because plaintiffs rely on the "legal and factual arguments contained in Plaintiffs' Original Motion" and, as explained below, plaintiffs have not shown that they are entitled to the additional relief sought in this motion. *Id.* at 13. Thus, granting the motion does not change the outcome of plaintiffs' request for preliminary injunctive relief.

The additional relief that plaintiffs request in their Motion to Amend presents a textbook case of a "mandatory injunction," a form of preliminary injunctive relief that is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). Unlike a "prohibitory injunction," which "prohibits a party from taking action and preserve[s] the status quo pending a determination of the action on the merits[,]" "[a] mandatory injunction orders a responsible party to take action." *Id.* at 878–79 (internal quotation marks omitted).

"The *status quo* . . . means the last, uncontested status which preceded the pending controversy." *Id.* at 879 (internal quotation marks omitted).

Plaintiffs ask the Court to order defendants to (1) investigate the schools attended by plaintiffs for compliance with the sexual orientation and gender identity requirements of Title IX and its implementing regulations, begin negotiations seeking voluntary compliance from noncompliant schools, and, if need be, initiate enforcement proceedings against schools that remain noncompliant; and (2) rescind or void previously granted Title IX religious exemption requests, many of which have been in place for decades. Mot. to Amend. (doc. 75) at 14–15. These are clearly affirmative steps, aimed at altering the existing status quo between the parties.

A plaintiff seeking a TRO or preliminary injunction must generally show that they are "likely to succeed on the merits." *Winter*, 555 U.S. at 22. But when a plaintiff requests a "mandatory injunction," the "already high standard" for success on the merits is "further heightened," and the plaintiff must "'establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed.'" *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156–57 (D. Or. 2018) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in *Garcia*)). Upon review of the record, the Court cannot find that plaintiffs have shown a likelihood of success on the merits of their Fifth Amendment, Establishment Clause, APA, or RFRA claims,[1] let alone that the law and facts clearly favor their position. The parties dispute

---

[1] Plaintiffs do not argue a likelihood of success on their third claim, for violations of their First Amendment freedoms of religion, speech, assembly, and association. TRO Mot. (doc. 44) at 22–42.

Page 6 – OPINION AND ORDER

whether plaintiffs have standing, whether their claims are ripe, and whether their non-APA claims state a claim as a matter of law.[2] Based on the arguments and evidence currently before the Court, defendants' jurisdictional arguments are not clearly meritless and, at best, plaintiffs have shown serious questions going to the merits of their claims.[3]

## II.   *Plaintiffs' Initial TRO Motion (doc. 44)*

Plaintiffs' initial motion also appears, at least in part, to seek a mandatory injunction, in that the requested injunction would require OCR to investigate administrative complaints it would otherwise dismiss under the religious exemption. TRO Mot. (doc. 44) at 10 (asserting that, under the requested injunction, "[p]laintiffs' Title IX complaints will be processed by Defendants in the normal course"). Even if the Court were to consider plaintiffs' initial TRO request as seeking nothing more than a stay OCR's administrative review of the complaints, it is not clear that such an order would preserve the status quo.

---

[2] Defendants also argue that this Court lacks divisional venue to hear this action. Resp. (doc. 62) at 5–6. They assert that this action must be transferred to the Portland Division. *Id.* The Court need not resolve this venue issue here because the Court presides over cases in both divisions and would, thus, continue to preside of this case even if it were transferred.

[3] Although under the Ninth Circuit's alternative standard for preliminary injunctive relief, serious questions going to the merits can support the issuance of an injunction if "the balance of hardships tips sharply in favor of the plaintiff" and the other two requirements for a preliminary injunction are met, *M.R. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012), in cases where plaintiffs seek a mandatory injunction, courts decline to apply this "serious questions" test because it is "inconsistent with the Ninth Circuit's guidance that a mandatory injunction not issue in doubtful cases and not be granted unless the law and facts clearly favor the moving party." *P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1126, 1135 (C.D. Cal. 2015) (internal quotation marks omitted); *see also Brown v. U.S. Forest Serv., et al.*, 465 F. Supp. 3d. 1119, 1128 n.3 (D. Or. 2020) (concluding that "serious questions" test does not apply to requests for mandatory injunctions); *Maney v. Brown*, 464 F. Supp. 3d 1191, 1204 n.6 (D. Or. 2020) (same).

"[I]njunctions that prohibit enforcement of a new law or policy," are to be construed as prohibitory and subject only to the standard preliminary injunction inquiries. *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). Here, however, the religious exemption was enacted decades ago and the parties dispute whether the 2020 Amendments to 34 C.F.R. § 106.12(b) and (c) present a change in policy, TRO Mot. (doc. 44) at 36–39, or simply "codified existing practices and clarified issues on which [the Department] had not yet formally spoken[,]" Resp. (doc. 62) at 29.

But even assuming, for the purposes of this motion, that this narrow formulation of plaintiffs' motion seeks a prohibitory injunction, plaintiffs' motion fails because they have not shown a likelihood of irreparable harm or that the balance of the equities or public interest favor the injunction.

Plaintiffs argue that they can satisfy the irreparable harm requirement because their "[c]onstitutional rights are clearly threatened and are being impaired at this moment" and because of the broad range of harms they suffer at school. Mot. for TRO (doc. 44) at 42. But defendants allegedly cause this harm by failing to enforce Title IX's protections against plaintiffs' schools because of defendants' allegedly unconstitutional application of the religious exemption. As noted above, at this stage it is far from clear that defendants' conduct violates plaintiffs' constitutional rights. And, more immediately, in this TRO motion, plaintiffs specifically seek to prevent irreparable harm caused by defendants' use of the religious exemption to dismiss plaintiffs' Title IX administrative complaints.

Despite plaintiffs' assertion that the complaints are at risk of being dismissed "any day now," there is little evidence of when OCR might reach a determination on each plaintiffs' complaint. The various complaints are being processed by several different OCR regional offices. OCR has a Case Processing Manual, which outlines the general process the OCR offices follow to investigate and resolve complaints. U.S. Dep't of Educ. Off. for Civil Rights Case Processing Manual (doc. 60-24). But the manual does not include or impose a timeline on the evaluation process used to determine whether to dismiss or investigate complaints. *Id.* at 5–13.

As of August 17, 2021, plaintiffs received acknowledgment of 23 of their complaints and 12 complaints had not been acknowledged by regional offices. Decl. of Lauren Swain, 8/17/21 (doc. 66) ¶ 4. Four regional offices have requested interviews regarding seven of the complaints. *Id.* ¶¶ 6–12. So far, OCR attorneys have interviewed plaintiffs or their representatives in connection with only three of the complaints. *Id.* ¶¶ 10–12. Although plaintiffs believe that at least some of their complaints might be resolved in a matter of weeks based on statements made by one OCR attorney, defendants have put forth evidence that the attorney did not provide a specific timeline during her meetings with plaintiffs' representatives, undermining plaintiffs' claim of imminent harm. *Compare* Corr. Swain Decl., 8/13/21 (doc. 61) ¶ 7 *with* Decl. of Camille D. Lee (doc. 83) ¶¶ 10–11.

Although it is possible OCR might dismiss some of the complaints under the religious exemption, the Court cannot, at this stage, find that OCR is likely to do so, as opposed to dismissing on any other grounds provided in the Case Processing

Manual. *See* Case Processing Manual (doc. 60-24) at 10–12 (listing circumstances under which "OCR will dismiss an allegation, or if appropriate, the complaint").

Finally, to prevail on their motion, plaintiffs must show that the balance of the equities tip in their favor and that an injunction is in the public interest. *Winter*, 555 U.S. at 22. "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Plaintiffs argue that the equities sharply favor them because "the harm they will suffer are immense and irreparable, and a preliminary injunction crafted by this Court is their only viable remedy." TRO Mot. (doc. 44) at 43. They assert that defendants' "potential harms are extremely limited." *Id*. They also argue that the injunction is in the public interest because (1) "it is always in the public interest to prevent a violation of a party's constitutional rights[,]" *id*. at 44 (quoting *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); (2) it is in the public interest to investigate serious allegations of widespread discrimination; and (3) the injunction would help to "ameliorat[e] injury to public health," specifically the well-documented "collective psychological wound on the LGBTQ+ community" caused by pervasive discrimination against LGBTQ+ people, *id*.

Defendants respond that the injunction would harm the public interest by enjoining the long-standing religious exemption based on speculative harm alleged by plaintiffs. Resp. (doc. 62) at 34. They note that governments "suffer[] irreparable injury whenever an enactment of its people or their representatives is enjoined." *Id*.

(quoting *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89, 92 (9th Cir. 2009)).

As explained above, plaintiffs have not shown that dismissal of their complaints on religious exemption grounds is imminent or that defendants have violated their constitutional rights. And, although an investigation of plaintiffs' complaints could eventually reduce the discrimination and other harms plaintiffs' and other LGBTQ+ students face at plaintiffs' schools, it is not clear from the record that plaintiffs' requested relief would result in immediate protection from the risk of physical, emotional, and psychological harm plaintiffs seek to prevent through his motion. Further, preliminary injunctive relief in this action is not plaintiffs' "only viable remedy" for harms caused by plaintiffs' schools or on their campuses. For example, plaintiffs may file private Title IX lawsuits directly against their respective schools, challenging the constitutionality of the religious exemption and its implementing regulations, and may seek appropriate preliminary injunctive relief in those actions. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979) (concluding that Title IX includes an implied private cause of action); *Greater Los Angeles Council on Deafness, Inc. v. Cmty. Television of S. Cal.*, 719 F.2d 1017, 1021 (9th Cir. 1983) (exhaustion of administrative remedies not required before filing a private action under Title IX); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 947 (D.C. Cir. 2004) ("[C]hallenges to the lawfulness of the Department's policies in fact may be aired in a suit against a university, to the extent that the defendant university

attempts to justify its actions by reference to those policies."), *abrogated on other grounds by Trudeau v. Fed. Trade Comm'n,* 456 F.3d 178 (D.C. Cir. 2006).

On this record, the Court cannot find that the balance of the equities and public interest favor plaintiffs.

## CONCLUSION

For the reasons above, plaintiffs' Motion to Amend their TRO (doc. 75) is GRANTED but plaintiffs' initial and amended request for a TRO (docs. 44, 75) are DENIED. As the Court mentioned to the parties, the August 31, 2021 hearing, which had been scheduled as oral argument on plaintiff's TRO Motion, will instead be treated as a status conference to discuss whether and how plaintiffs wish to proceed on their request for a preliminary injunction and other matters pending in this action.

IT IS SO ORDERED.

Dated this  30th  day of August 2021.


/s/Ann Aiken

Ann Aiken
United States District Judge