Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

* Admitted *pro hac vice*

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

Kristen K. Waggoner, OSB # 067077
  *Lead Counsel*
Email: kwaggoner@ADFlegal.org
David A. Cortman, GA Bar # 188810*
Email: dcortman@ADFlegal.org
Ryan J. Tucker, AZ Bar # 034382*
Email: rtucker@ADFlegal.org
Mark A. Lippelmann, AZ Bar # 036553*
Email: mlippelmann@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020

* Admitted *pro hac vice*

*Counsel for Defendants-Intervenors
Western Baptist College d/b/a Corban
University, William Jessup University
and Phoenix Seminary*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., | No. 6:21-CV-00474-AA |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF EDUCATION, et al., | DEFENDANTS-INTERVENORS' JOINT RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT |
| Defendants, | |

v.

COUNCIL FOR CHRISTIAN
COLLEGES & UNIVERSITIES,
WESTERN BAPTIST COLLEGE d/b/a
CORBAN UNIVERSITY, WILLIAM
JESSUP UNIVERSITY AND PHOENIX
SEMINARY,

        Defendants-Intervenors.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. v

INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................... 1

ARGUMENT ....................................................................... 2

I.   This Court lacks jurisdiction to grant the requested preliminary injunction. ........ 2

    A.   The Court lacks personal jurisdiction to issue an injunction affecting the rights of parties not before it in currently pending administrative actions. ................................................................................... 2

    B.   The Court lacks subject-matter jurisdiction because Plaintiffs lack standing and their claims are not ripe. ........................................................ 5

II.  Plaintiffs failed to show that they are likely to succeed on the merits, much less that the law "clearly favors" their novel position. ........................... 7

    A.   The requested relief triggers the heightened standard for mandatory injunctions, which Plaintiffs cannot meet. ...................................................... 7

    B.   Plaintiffs cannot show that the law clearly favors their position because the religious exemption is *required*. ................................................ 8

        1.   The religious exemption is required by the Free Exercise Clause. ... 8

        2.   The religious exemption is required by RFRA. ............................. 11

        3.   The religious exemption is required by the Establishment Clause. ..................................................................................... 12

    C.   Plaintiffs cannot show that the law clearly favors their position because the requested injunction would violate the separation of powers. ................................................................................ 13

    D.   Plaintiffs cannot show that the law clearly favors their position because the Complaint fails to state any viable claim. ............................... 14

        1.   Plaintiffs are unlikely to succeed on their First Amendment and RFRA claims. ................................................................. 15

        2.   Plaintiffs are unlikely to succeed on their Establishment Clause claim. ................................................................................. 16

        3.   Plaintiffs are unlikely to succeed on their Equal Protection claim. .............................................................................. 20

        4.   Plaintiffs are unlikely to succeed on their Substantive Due Process claim. .............................................................. 21

        5.   Plaintiffs are unlikely to succeed on their APA claim. ................. 22

        6.   Plaintiffs are unlikely to succeed on any claim because Title IX forbids discrimination based on sex, not sexual orientation or gender identity. .............................................................. 26

III. Plaintiffs will not be irreparably harmed by allowing religious schools to maintain rights that are critical to their viability. .................................. 28

IV. The equities tip sharply in favor of preserving the viability of religious education, and the public has no plausible interest in gutting Title IX's religious exemption. ........................................................ 29

    A.   Plaintiffs have failed to show that the balance of the equities tips sharply in favor of the injunction. ............................................ 29

    B.   Plaintiffs have failed to establish that a preliminary injunction is in the public interest. ....................................................... 31

CERTIFICATE OF COMPLIANCE ...................................................... 34

CERTIFICATE OF SERVICE ............................................................ 35

# TABLE OF AUTHORITIES

## Cases

*Abbott Lab'ys v. Gardner,*
    387 U.S. 136 (1967) .................................................................................6

*Am. Legion v. Am. Humanist Ass'n,*
    139 S. Ct. 2067 (2019) ...........................................................................17

*Arver v. United States,*
    245 U.S. 366 (1918) ...............................................................................18

*Bakersfield City Sch. Dist. v. Boyer,*
    610 F.2d 621 (9th Cir. 1979) ..................................................................6

*Ball v. Massanari,*
    254 F.3d 817 (9th Cir. 2001) ................................................................20

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) .........................................................................15, 16

*Bostock v. Clayton Cnty.,*
    140 S. Ct. 1731 (2020) ...........................................................................27

*Califano v. Sanders,*
    430 U.S. 99 (1977) ...................................................................................6

*Corp. of Presiding Bishop of Church of Jesus Christ of*
    *Latter-day Saints v. Amos,*
    483 U.S. 327 (1987) ........................................................................*passim*

*Cutter v. Wilkinson,*
    544 U.S. 709 (2005) ...............................................................................18

*D'Lil v. Best Western Encina Lodge & Suites,*
    538 F.3d 1031 (9th Cir. 2008) ................................................................6

*Droz v. Comm'r of IRS,*
    48 F.3d 1120 (9th Cir. 1995) ................................................................18

*Espinoza v. Mont. Dep't of Revenue,*
    140 S. Ct. 2246 (2020) ...........................................................................12

*Fed. Commc'ns Comm'n v. Prometheus Radio Project,*
    141 S. Ct. 1150 (2021) ...........................................................................23

*Flagg Bros., Inc. v. Brooks,*
    436 U.S. 149 (1978) ...............................................................................15

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021) ...........................................................8, 10, 11, 18

# TABLE OF AUTHORITIES (CONT'D)

## Cases (Cont'd)

*Gallinger v. Beccera,*
   898 F.3d 1012 (9th Cir. 2018) .................................................................20

*Gillette v. United States,*
   401 U.S. 437 (1971) .....................................................................17, 18

*Goldman v. United States,*
   245 U.S. 474 (1918) .........................................................................18

*Greater Los Angeles Council on Deafness, Inc. v. Cmty. Television of S. Cal.,*
   719 F.2d 1017 (9th Cir. 1983) .................................................................6

*Harrison v. Kernan,*
   971 F.3d 1069 (9th Cir. 2020) ...............................................................20

*Heckler v. Chaney,*
   470 U.S. 821 (1985) .........................................................................14

*Hunter v. U.S. Dep't of Educ.,* No. 6:21-CV-00474-AA,
   2021 WL 3861154 (D. Or. Aug. 30, 2021) .........................................7, 8, 15

In re County of Orange,
   262 F.3d 1014 (9th Cir. 2001) ..................................................................4

*INSLAW, Inc. v. Thornburgh,*
   753 F. Supp. 1 (D.D.C. 1990) ................................................................14

*Kaimowitz v. Orlando,*
   122 F.3d 41 (11th Cir. 1997) ...................................................................3

*Kling v. Cty. of Los Angeles,*
   633 F.2d 876 (9th Cir. 1980) .................................................................28

*Kong v. Scully,*
   341 F.3d 1132 (9th Cir. 2003) ...........................................................18, 19

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936) ...........................................................................4

*Larson v. Valente,*
   456 U.S. 228 (1982) .........................................................................12

*Lemon v. Kurtzman,*
   403 U.S. 602 (1971) .........................................................................17

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ...........................................................................5

*Manhattan Cmty. Access Corp. v. Halleck,*
   139 S. Ct. 1921 (2019) ......................................................................15

## TABLE OF AUTHORITIES (CONT'D)

**Cases (Cont'd)**

*Masterpiece Cakeshop, Ltd. v. Col. C.R. Comm'n*,
 138 S. Ct. 1719 (2018) ........................................................10

*Maxon v. Fuller Theological Seminary*,
 No. 20-56156 (9th Cir.)........................................................28

*Mayweathers v. Newland*,
 314 F.3d 1062 (9th Cir. 2002) ...........................................19

*Melendres v. Arpaio*,
 695 F.3d 990 (9th Cir. 2012) ..............................................31

*Nat'l Urb. League v. Ross*,
 977 F.3d 770 (9th Cir. 2020) ..............................................24

*Natal v. Christian and Missionary All.*,
 878 F.2d 1575 (1st Cir. 1989) ............................................13

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
 434 U.S. 1345 (1977) .............................................................7

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
 810 F.3d 631 (9th Cir. 2015) .........................................2, 3

*Pers. Adm'r of Mass. v. Feeney*,
 442 U.S. 256 (1979) .............................................................21

*Pirlott v. N.L.R.B.*,
 522 F.3d 423 (D.C. Cir. 2008) ...........................................13

*Riss & Co. v. I.C.C.*,
 179 F.2d 810 (D.C. Cir. 1950) ..............................................6

*Tandon v. Newsom*,
 141 S. Ct. 1294 (2021) ...........................................................9

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021) .........................................................13

*Trump v. New York*,
 141 S. Ct. 530 (2020) ...........................................................14

*Trunk v. City of San Diego*,
 629 F.3d 1099 (9th Cir. 2011) ...........................................19

*Victorino v. FCA US LLC*, No. 16-cv-1617-GPC(JLB),
 2016 WL 6441518
 (S.D. Cal. Nov. 1, 2016) ......................................................13

*Walz v. Tax Comm'n of New York*,
 397 U.S. 664 (1970) .............................................................18

## TABLE OF AUTHORITIES (CONT'D)

**Cases (Cont'd)**

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ........................................................................22

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) ........................................................................28

*Williams v. California,*
  764 F.3d 1002 (9th Cir. 2014) ..............................................18, 19

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ..............................................................................1

*Witt v. Dep't of Air Force,*
  527 F.3d 806 (9th Cir. 2008) ..................................................21, 22

*Zepeda v. INS,*
  753 F.2d 719 (9th Cir.1985) ......................................................2, 3

*Zorach v. Clauson,*
  343 U.S. 306 (1952) ........................................................................18

**Statutes and Regulations**

20 U.S.C. § 1681 ......................................................................*passim*

20 U.S.C. § 1681(a) ..........................................................................27

20 U.S.C. § 1681(a)(1)-(9) ................................................................9

20 U.S.C. § 1681(a)(3) ......................................................20, 21, 23

20 U.S.C. § 1686 ..............................................................................27

34 C.F.R § 106.12(a) ........................................................................21

34 C.F.R § 106.32(b) ........................................................................27

34 C.F.R § 106.33 ............................................................................27

34 C.F.R § 106.34 ............................................................................27

34 C.F.R § 106.40 ............................................................................27

34 C.F.R § 106.41 ............................................................................27

34 C.F.R § 106.43 ............................................................................27

34 C.F.R § 106.52 ............................................................................27

34 C.F.R § 106.59 ............................................................................27

34 C.F.R § 106.61 ............................................................................27

34 C.F.R. § 106.12 ............................................................................26

42 U.S.C. § 2000bb-1(a) ............................................................11, 15

## TABLE OF AUTHORITIES (CONT'D)

**Statutes and Regulations (Cont'd)**

42 U.S.C. § 2000bb-1(b) ................................................................................ 11

45 C.F.R. § 86.32 ........................................................................................... 27

August Rule,
 85 Fed. Reg. 30026 (May 19, 2020) ....................................................... 23, 24

November Rule,
 85 Fed. Reg. 59916 (Sept. 23, 2020) .............................................. 24, 25, 26

**Other Authorities**

Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the
 Original Understanding of the Establishment Clause,*
 81 Notre Dame L. Rev. 1793 (2006) ........................................................ 18

The American Heritage Dictionary of the English Language (1st ed. 1969)............ 26

Webster's New World Dictionary of the American Language (College ed. 1962)...... 26

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Court correctly denied Plaintiffs' motion for a temporary restraining order. Order, ECF No. 88. The arguments before the Court now have not changed. Nor has the requested relief. Thus now, as then, this Court should deny Plaintiffs the "extraordinary remedy" they seek. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). And it should do so for two reasons.

*First,* this Court lacks jurisdiction to grant the requested preliminary injunction. To begin, Plaintiffs ask the Court to decide the statutory rights of parties not before it in currently pending administrative actions. Those administrative actions were not challenged in the amended complaint. That alone dooms Plaintiffs request. Moreover, this Court cannot decide the rights of the schools currently being investigated without their input. Nor can it exercise jurisdiction because Plaintiffs lack standing to seek their requested relief because the harms they allege cannot be fairly attributed to the federal defendants, because they cannot obtain the relief they seek, and because their claims are unripe in any event while the administrative proceedings proceed.

*Second*, Plaintiffs have not, and cannot, meet *any* of the four requirements for either a mandatory or prohibitory preliminary injunction. As this Court already recognized when it denied the TRO—Plaintiffs have not demonstrated a risk of irreparable harm, Order, ECF No. 88 at 8, and are unlikely to succeed on the merits, *id.* at 6–7. Further, the balance of equities weighs against an injunction, *id.* at 11–12, and an injunction against "the long-standing religious exemption based on speculative harm" is not in the public interest. *id.* at 10.

Because this Court lacks jurisdiction to grant the preliminary injunction, and because Plaintiffs cannot demonstrate any of the four factors that open the door—but still do not entitle them—to such an injunction, their motion should be denied.

## ARGUMENT

### I.    This Court lacks jurisdiction to grant the requested preliminary injunction.

This Court should deny the injunction because it lacks the jurisdiction to grant it. That is so both because it would affect the rights of parties not before the Court in pending administrative proceedings and because Plaintiffs lack standing to obtain it.

### A. The Court lacks personal jurisdiction to issue an injunction affecting the rights of parties not before it in currently pending administrative actions.

This Court's jurisdiction extends only to the "merits of the case or controversy before it," *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015), and can only be exercised if the court has "personal jurisdiction over the parties and subject matter jurisdiction over the claim." *Zepeda v. INS,* 753 F.2d 719, 727 (9th Cir.1985). Here, the proceedings that are the subject of the preliminary-injunction motion are not yet ripe for judicial review, and the Court lacks jurisdiction over *both* the relevant parties and the "subject matter" of the claims that Plaintiffs invoke as a basis for their proposed injunction.

For a preliminary injunction to involve the same case or controversy before the Court, there must be a "sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology*, 810 F.3d at 636. Where there is no such nexus, such as where a

motion for injunctive relief "deals with a matter lying wholly outside the issues in the suit," a Court "should not issue an injunction." *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997).

That principle is dispositive here as to issues not actually sought in the amended complaint. Unlike their amended complaint, Plaintiffs' request for a preliminary injunction does not seek to invalidate the Title IX religious exemption, deny funding to the involved religious schools, or even vindicate the specific claims of the plaintiffs in this case. Rather, Plaintiffs are now asking the Court to establish a legal constraint on *other* decision-makers, namely the various regional offices of the Department's Office of Civil Rights, in administrative proceedings not before this Court, involving specific legal claims also not currently before this Court. *See* Mot. at 9–10, ECF No. 44; Mot. to Amend at 13–14, ECF No. 75. Such relief is beyond the Court's jurisdiction. *See Zepeda*, 753 F.2d at 727; *Pac. Radiation Oncology*, 810 F.3d at 636.

Plaintiffs' motion also founders on the rule that courts lack authority to determine the rights of parties not before it. *Zepeda*, 753 F.2d at 727. As Plaintiffs' Title IX complaints are considered in these other forums (the regional Department offices), the religious schools they involve have the right to invoke the Title IX religious exemption in their defense. Accordingly, it is entirely inappropriate for Plaintiffs to ask this Court to determine rules governing administrative proceedings involving *those* schools—and in so doing to deny them an exemption that they have a right to invoke—without their presence. Even if those schools are not necessary

parties to the underlying action in *this* case, they are unquestionably necessary when resolving a motion to enjoin the dismissal of separate investigations *against them. In re County of Orange,* 262 F.3d 1014, 1022 (9th Cir. 2001) (Among other things, a party is necessary "when the absent party claims a legally protected interest in the action.") (citation omitted). Plaintiffs' request that this Court prevent the dismissal of proceedings against religious schools not before it, while Plaintiffs argue here for a change in the governing law, is thus entirely inappropriate.

To be sure, if this Court were to rule against the constitutionality of Title IX's religious exemption, and if that ruling were upheld by the Ninth Circuit and the Supreme Court, then these other proceedings before the Department could be affected. But that outcome is highly speculative and, given this Court's order denying the TRO, unlikely. Order at 6, ECF No. 88 ("[T]he Court cannot find that plaintiffs have shown a likelihood of success on the merits of their Fifth Amendment, Establishment Clause, APA, or RFRA claims."). And in any event, the religious schools should not have to wait for this case's resolution before asserting their present rights in those proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). Nor can the mere possibility of such an impact justify the issuance of a preliminary injunction governing those separate, ongoing Departmental proceedings.

**B. The Court lacks subject-matter jurisdiction because Plaintiffs lack standing and their claims are not ripe.**

The preliminary injunction must also be denied because (1) Plaintiffs lack standing and (2) their claims are not ripe for federal judicial review or involvement.

As to Article III standing, and for the reasons the federal defendants explained in their motion to dismiss and their opposition to this motion, Plaintiffs are not harmed by the federal defendants faithfully applying the Title IX religious exemption. Dep't's Mot. to Dismiss at 15–16, ECF No. 56 (explaining that the alleged harms are not fairly traceable to the federal defendants because they are the result of the "independent decision making" of religious schools); *id.* at 16–19 (explaining that the Court can offer no redress because without the exemption, religious schools would remain free to deny federal funding and continue to implement their policies and because no money damages are available to them absent a waiver of sovereign immunity); Dep't's Opp'n at 18, ECF No. 62 ("Plaintiffs' complaint is not that ED directly discriminated against them through its own actions. Instead, they allege that educational institutions—who are not parties to this case—discriminated against Plaintiffs."). Rather than repeating the federal defendants' analysis of this point, the religious intervenors incorporate those arguments here and simply summarize them: Plaintiffs sued the wrong parties and could not obtain the requested relief even if they hadn't. Because both causation and redressability are necessary elements of standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–62 (1992), and because both are missing here, this Court lacks jurisdiction.

The Court lacks jurisdiction for an additional reason: Plaintiffs' claims are unripe. To begin, as the federal defendants emphasize, the Court must take the state of facts as they were at the time of the Amended Complaint. Dep't's Opp'n at 17, ECF No. 62 (citing *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008)). None of the administrative actions Plaintiffs seek to enjoin existed at the commencement of this case. But beyond that, it has long been the rule in the Ninth Circuit and elsewhere that "[j]udicial intervention in uncompleted administrative proceedings, absent a statutory mandate, is strongly disfavored." *Bakersfield City Sch. Dist. v. Boyer*, 610 F.2d 621, 626 (9th Cir. 1979); *see also Riss & Co. v. I.C.C.*, 179 F.2d 810, 811 (D.C. Cir. 1950) ("[C]ourts are not authorized to interfere by injunction or declaratory judgment with the conduct of pending administrative proceedings."). This long-settled rule also serves a prudential purpose, as it protects "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977).

Plaintiffs, of course, could have brought their complaints directly against the religious schools that they attended in the appropriate federal district courts. *Greater Los Angeles Council on Deafness, Inc. v. Cmty. Television of S. Cal.*, 719 F.2d 1017, 1021 (9th Cir. 1983) ("[E]xhaustion of administrative remedies provided by Title IX of the Education Amendments of 1972 is not required prior to filing a private court action."). They did not do so. Instead, they chose to invoke the executive power by

bringing administrative claims. By so choosing, they subjected their claims to the rules generally governing administrative proceedings. While the claims they initiated are pending before the Department, judicial resolution of those claims is unripe. That failure of ripeness is an independent reason why the Court lacks authority to grant the requested relief.

## II.    Plaintiffs failed to show that they are likely to succeed on the merits, much less that the law "clearly favors" their novel position.

In any event, in denying Plaintiffs' TRO motion, this Court already held that Plaintiffs were not entitled to injunctive relief because they failed to establish that they are likely to succeed on the merits, let alone that the law and facts *clearly favor* their position. *Hunter v. U.S. Dep't of Educ.*, No. 6:21-CV-00474-AA, 2021 WL 3861154, at *3–*4 (D. Or. Aug. 30, 2021). The Court was correct, and it is fatal to Plaintiffs' motion for preliminary injunction because both motions seek essentially the same relief and are governed by the same standards. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977).

### A. The requested relief triggers the heightened standard for mandatory injunctions, which Plaintiffs cannot meet.

This Court correctly held that Plaintiffs' TRO triggered the heightened standard for mandatory injunctions because both their original and amended requested relief would change—not preserve—the status quo. *Hunter*, 2021 WL 3861154, at *3–*4 (noting that the amended relief "presents a textbook case of a mandatory injunction" and that the original relief "also appears, at least in part, to seek a mandatory injunction[.]"). Because Plaintiffs' motion for preliminary injunction seeks the very same relief, the Court should apply the same heightened

standard, which requires Plaintiffs to "establish that the law and facts *clearly favor* [their] position, not simply that [they] are likely to succeed." *Hunter*, 2021 WL 3861154, at *3–*4 (emphasis in original). As explained below, Plaintiffs cannot carry this heightened burden.

### B. Plaintiffs cannot show that the law clearly favors their position because the religious exemption is *required*.

The first fatal problem with Plaintiffs' position is that the Title IX exemption they challenge would be *required* by federal law even if it didn't exist. Without the religious exemption, Title IX would violate the Free Exercise Clause, the Religious Freedom Restoration Act (RFRA), and the Establishment Clause. Because the religious exemption is affirmatively required, it is impossible for Plaintiffs to establish that the law "clearly favors" their novel position that the exemption is prohibited.

### 1. The religious exemption is required by the Free Exercise Clause.

Under the Free Exercise Clause, a law that burdens religion is presumptively unconstitutional and subject to strict scrutiny unless it is neutral and generally applicable. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021). The Supreme Court unanimously held that it is "plain" that the government substantially burdens an institution's religious exercise "by putting it to the choice of curtailing its mission or approving relationships inconsistent with its beliefs." *Id*. And a law is not neutral and generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id*.

at 1877. Indeed, laws "are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (emphasis in original).

If Title IX were stripped of its religious exemption and interpreted to prohibit differential treatment based on sexual orientation and gender identity, the law would substantially burden schools' religious exercise by putting them to the choice of approving relationships inconsistent with their beliefs or ceasing to exist altogether because of a loss of enrollment among low- and middle-income students who need financial assistance to pursue education. *See* Decl. of Sheldon Nord, Ph.D., ¶¶ 32, 34, ECF No. 9 ("The present legal action seeks to remove Title IX's religious exemption, which would force Corban to choose between violating its religious convictions or suffering a significant reduction in funding/enrollment. […] Corban could not sustain the loss of federal funding and enrollment that would alternatively come if Title IX no longer had a religious exemption."); Decl. of John Jackson, Ph.D., ¶¶ 31–32, ECF No. 10 (same); Decl. of Brian Arnold, Ph.D., ¶¶ 8, 31, ECF No. 11 (same). Eliminating the religious exemption would impose substantial burdens on schools' religious exercise and render Title IX presumptively unconstitutional.

And Title IX is not generally applicable, so the law would both trigger and fail strict scrutiny without the religious exemption. The government's interest in enforcing Title IX is to prevent discrimination based on sex, but the law enumerates *nine* separate exceptions to its prohibition against sex discrimination. 20 U.S.C. §

1681(a)(1)–(9). If Title IX were stripped of its religious exemption, the law would impose a substantial burden on religious schools while maintaining its eight remaining secular exceptions that undermine the government's nondiscrimination interest. And the Supreme Court made clear that a law is not narrowly tailored—and thus cannot survive strict scrutiny—when it allows for even the possibility of secular exemptions while denying a religious exemption. *Fulton*, 141 S. Ct. at 1882 ("The creation of a system of exceptions . . . undermines the [government's] contention that its non-discrimination policies can brook no departures."). So long as the government provides *any* exemption to Title IX's general prohibition against sex discrimination, it must preserve the religious exemption.

Plaintiffs' requested relief would also violate the Free Exercise Clause because of a lack of governmental neutrality. Government entities have an "obligation of religious neutrality," and the Free Exercise Clause bars even "subtle departures from neutrality" on matters of religion. *Masterpiece Cakeshop, Ltd. v. Col. C.R. Comm'n*, 138 S. Ct. 1719, 1723, 1731 (2018) (citation omitted). But throughout this litigation, the Department has repeatedly departed from religious neutrality, going out of its way to malign the policies and actions of schools with religious beliefs that the Department opposes. Dep't's Mot. to Dismiss at 2, ECF No. 56 ("The Department does not condone the alleged actions that Plaintiffs attribute to their educational institutions."); *id.* at 22 ("Defendants do not condone the conduct alleged by Plaintiffs[.]"); *id.* at 24 ([T]he federal government in no way condones the private conduct alleged in the FAC."); Dep't's Opp'n at 2, ECF No. 62 ("Defendants do not

condone the alleged actions that Plaintiffs attribute to their educational institutions."). A government actor that expressly criticizes certain religious beliefs cannot be allowed to determine qualifications for funding based on a school's compliance with those very beliefs.

For these reasons, the religious exemption is required to prevent Title IX from violating the Free Exercise Clause, and the relief that Plaintiffs request is itself unconstitutional. Religious schools' Free Exercise rights therefore foreclose Plaintiffs' novel argument that Title IX *cannot* lawfully include a religious exemption.

### 2. The religious exemption is required by RFRA.

RFRA likewise forecloses that argument. Under RFRA, "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* at § 2000bb-1(b).

As explained above, the government would substantially burden schools' religious exercise by enforcing Title IX without the religious exemption, putting schools to the choice of curtailing their mission or approving relationships that are inconsistent with their convictions. *See supra,* Section II.B.1. And the Supreme Court has clarified that a law that withholds religious exemptions while granting secular exceptions—like the eight secular exceptions in Title IX—is not the least restrictive means of advancing a compelling government interest. *Fulton*, 141 S. Ct. at 1882. So

religious schools' RFRA rights also foreclose Plaintiffs' likelihood of success on the merits and require denial of their motion for preliminary injunction.

### 3. The religious exemption is required by the Establishment Clause.

The Establishment Clause also requires the religious exemption, foreclosing Plaintiffs' requested relief in this case and forestalling entry of the requested injunction. The Establishment Clause's "clearest command" is that "one religious denomination cannot be officially preferred over another," *Larson v. Valente*, 456 U.S. 228, 244 (1982), and the Free Exercise Clause forbids the government from using a school's religious affiliation to deny it and its students access to religiously neutral and generally available federal funding. *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2256 (2020) (invalidating state law conditioning eligibility for "government aid" on a school's decision to "divorce itself from any religious control or affiliation").

Eliminating Title IX's religious exemption would cause Establishment Clause violations because the government would be allowed—if not required—to prefer religious schools with certain religious views over other schools without them. The government would allow students to use their financial aid at religious schools that lack unpopular beliefs or policies on marriage and sexuality, but students who attend schools with such beliefs would be denied funding.

And, regardless whether a religious school had such beliefs or policies, *every* religious school in the country would be under constant review by the Department to determine Title IX eligibility. Yet the Establishment Clause forbids the government—including courts—from constantly reviewing religious "policy,

administration, and governance." *Natal v. Christian and Missionary All.*, 878 F.2d 1575, 1578 (1st Cir. 1989). Because the religious exemption is also required to prevent Establishment Clause violations, Plaintiffs cannot establish that the law "clearly favors" their position.

### C. Plaintiffs cannot show that the law clearly favors their position because the requested injunction would violate the separation of powers.

Plaintiffs' motion does not seek judicial review of a final agency action, but rather asks the Court to affirmatively modify the Department's routine complaint-administration procedures and to direct the Department to initiate numerous investigations. But the judiciary generally cannot oversee and direct an executive agency's enforcement discretion and affirmative use of resources. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities."); *Victorino v. FCA US LLC*, No. 16-cv-1617-GPC(JLB), 2016 WL 6441518, at *12 (S.D. Cal. Nov. 1, 2016) ("A court cannot direct a federal agency [] how to use its resources or how to set its enforcement priorities and when to conduct a vehicle recall or to halt the sale of vehicles.").

This Court would violate separation-of-powers principles by ordering the Department to modify its complaint-administration procedures because "it is not within the province of the judiciary to force an agency to adopt a rule on a subject that is within its compass of authority before the agency itself has acted on the issue." *Pirlott v. N.L.R.B.*, 522 F.3d 423, 433 (D.C. Cir. 2008). As the Supreme Court recently put it, "[l]etting the Executive Branch's decision-making process run its course not

only brings more manageable proportions to the scope of the parties' dispute, but also ensures that we act as judges, and do not engage in policymaking properly left to elected representatives." *Trump v. New York*, 141 S. Ct. 530, 536 (2020) (cleaned up).

The Supreme Court has further held that the judiciary lacks authority to order an executive agency to undertake an investigation, noting that "an agency's decision not to take enforcement action should be presumed immune from judicial review" because such decisions have been "committed to agency discretion." *See Heckler v. Chaney*, 470 U.S. 821, 832–33 (1985). "In this regard, an agency's refusal to institute proceedings shares some of the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch[.]" *INSLAW, Inc. v. Thornburgh*, 753 F. Supp. 1, 6 (D.D.C. 1990) (citing *Heckler*, 470 U.S. at 832). As the Court put it in *Heckler*, "[t]he danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance. That decision is in the first instance for Congress[.]" *Heckler*, 470 U.S. at 834.

Because the requested injunctive relief would violate the separation of powers, Plaintiffs cannot establish that the law "clearly favors" their position.

### D. Plaintiffs cannot show that the law clearly favors their position because the Complaint fails to state any viable claim.

This Court's decision denying Plaintiffs' motion for a TRO highlights another reason that Plaintiffs cannot show that the law clearly favors their position. There the Court correctly held that "it is far from clear that defendants' conduct violates

plaintiffs' constitutional rights," and that, "[u]pon review of the record, the Court cannot find that plaintiffs have shown a likelihood of success on the merits of their Fifth Amendment, Establishment Clause, APA, or RFRA claims, let alone that the law and facts clearly favor their position." *Hunter*, 2021 WL 3861154 at *3–*4. On each of these points too, Plaintiffs have failed to establish that the law "clearly favors" their causes of action.

### 1. Plaintiffs are unlikely to succeed on their First Amendment and RFRA claims.

As this Court recognized in denying a TRO, Plaintiffs do not even argue a likelihood of success on their third cause of action for violations of First Amendment rights to freedom of religion, speech, assembly, and association. *Id.* at n.3. For that reason, the federal defendants did not address that claim in its opposition brief. *See* Dep't's Opp'n, ECF No. 62. In any event, Plaintiffs fail to state a claim under the First Amendment and the RFRA cause of action fails for the same reason.

To state a claim under the First Amendment or RFRA, Plaintiffs must allege that their injuries are caused by the *government*, not private actors. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019); *see* 42 U.S.C. § 2000bb-1(a). As the federal defendants explain more fully in their opposition, the fact that a private entity receives governmental funding or is subject to regulation does not render its conduct government action. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Nor does the government's acquiescence, approval or encouragement of private conduct. *See id.*; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978). Plaintiffs must instead show that "there is a sufficiently close nexus between the State and the challenged action

of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004 (citation omitted). No such nexus exists when, as here, the alleged injury results from intervening conduct of a private party exercising independent judgment. *See id.*

Here, Plaintiffs allege that their constitutional rights are burdened by "campus policies." First Am. Compl. ("FAC") ¶ 701. But those policies were developed and enforced by private religious schools, not the government. In an attempt to manufacture governmental action, Plaintiffs suggest that the Department itself burdens their constitutional rights by its "inaction," FAC ¶¶ 2, 6, or by granting religious exemptions, which in turn, allow private religious schools to maintain policies that allegedly injure Plaintiffs. FAC ¶¶ 2, 5, 705. But the Department's mere acquiescence or approval of private religious schools' conduct does not turn their private religious decisions into government action. *See Blum*, 457 U.S. 1004. And the intervening conduct of private religious schools exercising their independent judgment destroys any nexus between the Department's recognition of religious exemptions and Plaintiffs' alleged injuries. Plaintiffs fail to plausibly allege governmental action, so their First Amendment and RFRA claims are unlikely to succeed.

## 2. Plaintiffs are unlikely to succeed on their Establishment Clause claim.

Plaintiffs' Establishment Clause claim likewise stumbles out the gate because the Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the

Establishment Clause." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334 (1987) (citation omitted). In *Amos*, the Supreme Court upheld a nearly identical statutory exemption against a nearly identical challenge. There, an employee had challenged Title VII's religious exemption for violating the Establishment Clause. But the Supreme Court upheld the exemption as valid because it served a legitimate purpose (reducing government interference with religious organizations), allowed religious organizations to advance their mission (without forcing the government to do so), and treated religion neutrally (without discriminating among religions). *Id.* at 329, 335–39.

 *Amos* controls here. Like its Title VII counterpart, Title IX's exemption allows religious schools to define and carry out their religious missions, does not require the government to promote religion, and protects all religious educational organizations without singling out any denomination or belief for special treatment. To be sure, Plaintiffs believe the exemption favors certain religious beliefs and denominations. FAC ¶¶ 587, 648–49, 654–55. But the Supreme Court already considered and rejected that argument, and the "critical weakness" of Plaintiffs' claim is "that [the exemption], on its face, simply does not discriminate on the basis of religious affiliation or religious belief." *Gillette v. United States*, 401 U.S. 437, 450 (1971).

 The religious exemption is also consistent with history and tradition, a factor that the Supreme Court has recently considered in place of the three-part test from *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *See Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2080 (2019) (plurality opinion). Our nation boasts a long history of

accommodating religion through statutory exemptions without violating the Establishment Clause. *See Fulton,* 141 S. Ct. at 1905–12 (Alito, J., concurring); Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original Understanding of the Establishment Clause*, 81 Notre Dame L. Rev. 1793, 1808–09 (2006). And for the past century, the Supreme Court and the Ninth Circuit have repeatedly upheld religious exemptions against Establishment Clause attacks:

- *Arver v. United States*, 245 U.S. 366, 376, 389–90 (1918) (draft exemption for clergy, seminarians, and pacificists);
- *Goldman v. United States*, 245 U.S. 474, 476 (1918) (same);
- *Zorach v. Clauson,* 343 U.S. 306, 312 (1952) (exemption from compulsory education law for religious instruction off campus);
- *Walz v. Tax Comm'n of New York*, 397 U.S. 664, 680 (1970) (property tax exemption for religious non-profits);
- *Gillette,* 401 U.S. at 441, 460 (draft exemption for those with certain religious and conscientious objections);
- *Amos*, 483 U.S. at 334 (Title VII religious exemption);
- *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (RLUIPA exemption for prisoners);
- *Kong v. Scully*, 341 F.3d 1132, 1134 (9th Cir. 2003) (exemption for non-medical care of persons); and
- *Droz v. Comm'r of IRS*, 48 F.3d 1120, 1124 (9th Cir. 1995) (exemption from tax for Social Security).

And as the federal defendants explain at greater length in their opposition brief, ECF No. 62, Title IX's religious exemption satisfies the three-prong *Lemon* test. In summary, *Lemon*'s first prong is satisfied when a law serves a permissible secular purpose. *Williams v. California*, 764 F.3d 1002, 1014 (9th Cir. 2014). As *Amos* held, "it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Amos*, 483 U.S. at 335. The Title IX exemption serves a

permissible secular purpose by reducing governmental interference with religious activity. *See Kong*, 341 F.3d at 1140.

*Lemon*'s second prong is satisfied when a law's primary effect neither advances nor inhibits religion. *Williams*, 764 F.3d at 1014. To evaluate this prong, courts consider whether the challenged government action sends "primarily a message of either endorsement or disapproval of religion" to the "informed and reasonable observer." *Trunk v. City of San Diego*, 629 F.3d 1099, 1109–10 (9th Cir. 2011) (cleaned up). The Title IX exemption does not. *See Amos*, 483 U.S. at 335 (Title VII had primary effect of allowing religious organizations to advance their mission). The government can accommodate private religious exercise without endorsing any religious view. *Mayweathers v. Newland*, 314 F.3d 1062, 1069 (9th Cir. 2002). While Plaintiffs suggest that relieving religious institutions "of regulatory burdens and liability" advances religion, courts have repeatedly held otherwise. FAC § 652; *see, e.g.*, *Amos*, 483 U.S. at 337 (distinguishing law that "*allows* [religious institutions] to advance religion" like an exemption from situations when "*government itself* has advanced religion through its own activities and influence"); *Kong*, 341 F.3d at 1139–40 (noting that exemption "indoctrinates no one in religion" and "does not symbolize government approval").

*Lemon*'s third prong is also satisfied because "[i]t cannot be seriously contended that [this religious exemption] impermissibly entangles church and state," as it "effectuates a more complete separation of the two and avoids . . . intrusive inquir[ies] into religious belief[s]." *Amos*, 483 U.S. at 339. The challenged exemption applies to

all religions and all denominations, and it encompasses all religious tenets that conflict with Title IX. 20 U.S.C. § 1681(a)(3). There is no entanglement.

### 3. Plaintiffs are unlikely to succeed on their Equal Protection claim.

Plaintiffs' Equal Protection claim is similarly unlikely to succeed. The level of scrutiny for an equal protection claim depends on "the state's classification of groups." *Gallinger v. Beccera*, 898 F.3d 1012, 1016 (9th Cir. 2018) (citation omitted). Laws discriminating against a suspect class (such as "race, religion, or national origin") receive strict scrutiny. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). "Regulations which facially discriminate on the basis of gender . . . must receive intermediate scrutiny." *Harrison v. Kernan*, 971 F.3d 1069, 1078 (9th Cir. 2020). And laws that classify upon neither a suspect nor quasi-suspect class receive rational-basis review. *Ball*, 254 F.3d at 823.

Here, rational-basis review applies because Title IX's religious exemption does not mention—much less classify—*any* protected class. The exemption "is neutral on its face and motivated by a permissible purpose of limiting governmental interference with the exercise of religion." *Amos*, 483 U.S. at 339. Thus, there is "no justification for applying strict scrutiny." *Id.* Unable to identify any facial classification in the statute, Plaintiffs accuse the exemption of negatively *affecting* "sexual and gender minority students." FAC ¶ 657. But disparate impact alone does not change the level of scrutiny. As the Supreme Court has held, "[w]hen the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 272 (1979).

Title IX's religious exemption survives rational-basis review because it serves a legitimate governmental interest of accommodating religion. *See Amos*, 483 U.S. at 339.

Moreover, Title IX's exemption satisfies *any* level of review. As the federal defendants explained in their opposition, the religious exemption satisfies intermediate scrutiny because exempting religious institutions from Title IX is substantially related to an important government interest in protecting the free exercise of religion. Dep't's Opp'n at 22–23, ECF No. 62. And the exemption also satisfies strict scrutiny because it serves a compelling government interest by preventing the government from violating foundational religious liberties protected by the First Amendment and RFRA. *See, e.g.*, *Amos*, 483 U.S. at 334 ("[T]he government may (and sometimes must) accommodate religious practices."). Further, the scope of the exemption is "suitably tailored" to that interest because it only applies "if" and "to the extent" that application of Title IX would violate an institution's religious tenets. *See* 20 U.S.C. § 1681(a)(3); 34 C.F.R § 106.12(a).

### 4. Plaintiffs are unlikely to succeed on their Substantive Due Process claim.

Plaintiffs likewise have little chance of prevailing on their Substantive Due Process claim. As the Ninth Circuit has held, "[s]ubstantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases." *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008). Fundamental rights include particular rights contained in the first eight Amendments, as well as unenumerated "fundamental rights and liberties which are,

objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citations omitted).

Plaintiffs allude to several Substantive Due Process theories, asserting that Title IX's exemption burdens their fundamental right to marry (FAC ¶¶ 634–35), as well as their "rights" to obtain "gender-affirming" and "culturally competent" medical care; to be free from bias-related harassment and conversion therapy; to privacy about their LGBTQ+ status; and to be clothed and groomed consistent with that status. FAC ¶ 645. But the *exemption* does not burden any of these. Substantive due process is not implicated unless "the *government* attempts to intrude upon [Plaintiffs'] personal and private lives." *Witt*, 527 F.3d at 819 (emphasis added). And, as the Department explains at length in its opposition, the government is not stopping anyone from marrying or obtaining medical care or dressing as they wish. *See* Dep't's Opp'n at 26–33, ECF No. 62. Plaintiffs do not seek to be free from government interference but rather to compel private religious schools to conform to Plaintiffs' views. They have no right to that.

### 5. Plaintiffs are unlikely to succeed on their APA claim.

Plaintiffs further argue that two final rules the Department issued to revise Title IX's implementing regulation "should be vacated as arbitrary and capricious." FAC ¶¶ 688, 697. But Plaintiffs fail to state an APA claim because the final rules were reasonable, considered and discussed comments, and merely explained the Department's longstanding and lawful application of the religious exemption. The APA's arbitrary-and-capricious standard merely requires "that agency action be

reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). As the Supreme Court has held, "[j]udicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* Further, "[a] court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*

***The August Rule.*** The first rule, effective August 2020, merely codified the Department's "longstanding" position that an institution need not obtain a formal assurance from the Department before asserting the statutory religious exemption. 85 Fed. Reg. 30026, 30475 (May 19, 2020) ("August Rule"). The August Rule brought the regulation "further in line with the relevant statutory framework," because "[n]o part of the statute requires that recipients receive an assurance letter from OCR, and no part of the statute suggests that a recipient must be publicly on the record as a religious institution claiming a religious exemption before it may invoke a religious exemption in the context of Title IX." *Id., accord* 20 U.S.C. § 1681(a)(3).

And the August Rule is not arbitrary and capricious under the APA's deferential standard. Before issuing the August Rule, the Department issued a Notice of Proposed Rulemaking and "received more than 124,000 comments on the proposed regulations." 85 Fed. Reg. at 30055. Contrary to Plaintiffs' bald allegation, FAC ¶ 693, the August Rule gave a detailed explanation of the Department's reasons for codifying its longstanding practice, discussed the relevant statutory language, evaluated alternatives, and considered and responded to comments, including

comments concerning the rights of students who identify as LGBTQ+. *Id.* at 30475–30482. So the August Rule is far from arbitrary or capricious.

To be sure, "when an agency changes course," it should generally consider "that longstanding policies may have engendered serious reliance interests that must be taken into account." *See Nat'l Urb. League v. Ross*, 977 F.3d 770, 778 (9th Cir. 2020) (citations omitted). But here, the Department didn't change course. Rather, the Department codified its longstanding policy. 85 Fed. Reg. at 30475 ("Contrary to commenters who suggested that the [prior regulation] require[d] schools to affirmatively request an assurance letter from OCR, OCR has previously interpreted the [prior] regulation to mean that a school can invoke a religious exemption even after OCR has received a complaint regarding the educational institution."). So there could be no legitimate reliance interest in a contrary interpretation of the regulation.

***The November Rule.*** The second rule, effective November 2020, clarified how institutions can show that they are controlled by a religious organization and therefore eligible to invoke the exemption. 85 Fed. Reg. 59916, 59945 (Sept. 23, 2020) ("November Rule"). Title IX "does not directly address how educational institutions demonstrate whether they are controlled by a religious organization." *Id.* at 59918. The Department explained that "religious organizations are organized in widely different ways that reflect their respective theologies." *Id.* "Indeed, the Department has long recognized exemptions for educational institutions that are controlled by religious organizations with [both] hierarchical and non-hierarchical structures." *Id.* The Department further explained that both the Constitution and RFRA obligate it

"to broadly interpret 'controlled by a religious organization' to avoid religious discrimination among institutions of varying denominations." *Id.*

The November Rule is also far from arbitrary or capricious. Before issuing the rule, the Department issued a Notice of Proposed Rulemaking and "received more than 17,000 comments on the proposed regulations." 85 Fed. Reg. at 59919. Again, contrary to Plaintiffs' bald allegations, FAC ¶¶ 676–77, the November Rule gave a detailed explanation of the Department's reasons for clarifying how it determined control by a religious organization, discussed the relevant statutory language, evaluated alternatives, and considered and responded to various comments, including comments regarding the civil rights of students who identify as LGBTQ+. 85 Fed. Reg. at 59945–62. And because the November Rule merely codified factors that the Department had used for decades to evaluate control by a religious organization, *id.* at 59949, there can be no legitimate reliance interest in a contrary interpretation.

Moreover, the November Rule is consistent with the law, the agency' authority, and the Department's prior interpretation of "control by a religious organization." The Department reasonably "determined it is necessary to regulate given the statutory silence and genuine ambiguity in regard to the criteria for obtaining a religious exemption under Title IX." *Id.* at 59949. The November Rule's changes "are consistent with the Title IX statute in that they do not contradict, but attempt to clarify, an explicit exception provided for in the Title IX statute." *Id.* And, in enumerating the ways that schools can show they are controlled by a religious

institution, the November Rule simply codified "existing factors that the Assistant Secretary for Civil Rights uses when evaluating . . . requests for a religious exemption" based on "non-binding guidance issued to OCR personnel dating back more than 30 years[.]" *Id.*

Because both final rules were reasonably explained and are consistent with the law and the Department's longstanding practice, Plaintiffs' APA claim should be dismissed.

### 6. Plaintiffs are unlikely to succeed on any claim because Title IX forbids discrimination based on sex, not sexual orientation or gender identity.

Plaintiffs' claims are *all* likely to fail for yet another dispositive reason: Plaintiffs' entire amended complaint presupposes that Title IX's prohibition of "sex" discrimination includes sexual orientation and gender identity. FAC ¶ 56 (alleging that Title IX prohibits "sex, sexual orientation and gender identity discrimination."). But it does not. Title IX's text refers only to "sex." 20 U.S.C. § 1681. And when Congress passed Title IX in 1972, the word "sex" meant biologically male or female, based on reproductive organs.[1] The words "gender identity," "gender expression," and "sexual orientation" also do not appear anywhere in the statute or accompanying federal regulation, 34 C.F.R. § 106.12.

---

[1] *Sex*, Webster's New World Dictionary of the American Language (College ed. 1962) ("either of the two divisions of organisms distinguished as male or female"); *Sex*, The American Heritage Dictionary of the English Language (1st ed. 1969) ("[t]he property or quality by which organisms are classified according to their reproductive functions").

Nor has the Supreme Court interpreted Title IX to include these categories. *Bostock v. Clayton County* considered only whether an employer who fires an employee based on sexual orientation or gender identity does so, in part, because of sex under Title VII. 140 S. Ct. 1731, 1737, 1743 (2020). *Bostock* did not fold concepts like sexual orientation and gender identity into "sex," but rather, affirmed that they are "distinct concepts." *Id*. at 1746–47. And the Court disclaimed that its "decision will sweep beyond Title VII to other federal or state laws that prohibit sex discrimination," emphasizing that "none of these other [federal laws prohibiting sex discrimination] are before us." *Id*. at 1753.

Finally, Title VII has a different purpose than Title IX. According to *Bostock*, Title VII exists to make an employee's sex irrelevant in employment decisions. *Id*. at 1741. But a person's sex is often relevant under Title IX, which expressly authorizes many sex-separated activities and intimate facilities, and in some cases *requires* consideration of a person's sex. *See, e.g.*, 20 U.S.C. §§ 1681(a), 1686; 45 C.F.R. § 86.32; 34 C.F.R §§ 106.32(b), 106.33, 106.34, 106.40, 106.41, 106.43, 106.52, 106.59, 106.61.

Because the Supreme Court has not interpreted Title IX to contemplate sexual orientation and gender identity, Plaintiffs cannot establish that the law "clearly favors" their position on any of their claims, and their motion should be denied.

### III.    Plaintiffs will not be irreparably harmed by allowing religious schools to maintain rights that are critical to their viability.

Plaintiffs also cannot show that they will suffer irreparable harm if this Court denies their request for an injunction. The Supreme Court has "repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury *and* the inadequacy of legal remedies" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (emphasis added).

Although each of Plaintiffs' claims is designed to reach the same ultimate result, they have multiple other ways to further them. To begin, courts for decades have recognized that, because Title IX administrative remedies "do not afford individual complainants adequate relief," there is no requirement that they be exhausted. *Kling v. Cnty. of Los Angeles*, 633 F.2d 876, 879 (9th Cir. 1980). Under that reasoning, and with or without an injunction, Plaintiffs could, even now, raise anew their claims in the appropriate federal courts.

Several Plaintiffs have done so, and have litigation pending in other courts, including the Ninth Circuit, addressing the same issue—the legality of the Title IX religious exemption. *See* Mot. at 21–22, ECF No. 44 (addressing a case brought by Plaintiffs Brittsan and Maxon in a case pending in the Ninth Circuit raising the same issue); *Maxon v. Fuller Theological Seminary*, No. 20-56156 (9th Cir.).

Moreover, Plaintiffs could reassert their claims before the Department of Education if they are dismissed. They candidly acknowledge that, following dismissal, at least one plaintiff has reasserted his rights. Mot. at 21, ECF No. 44 (addressing "prior complaints filed by Plaintiffs Montgomery and T. Campbell");

Plaintiff's Exhibit A at 23, ECF No. 48-1 (new Discrimination Complaint Form of plaintiff Tristan Campbell). Plaintiffs provide no reason why any plaintiff whose Title IX complaint is dismissed by the Department of Education could not simply try again later if this Court decides this case in their favor.

In short, the multiple other more appropriate ways that Plaintiffs could obtain the relief they seek forecloses their claim of irreparable harm in this proceeding.

## IV. The equities tip sharply in favor of preserving the viability of religious education, and the public has no plausible interest in gutting Title IX's religious exemption.[2]

Lastly, as the federal defendants argued (at 34–35)—and this Court has already recognized—Plaintiffs cannot satisfy the other factors necessary to support an injunction. ECF No. 88 at 10–12.

### A. Plaintiffs have failed to show that the balance of the equities tips sharply in favor of the injunction.

Plaintiffs also fail to show that the balance of the equities tips in their favor, let alone sharply so. They claim they are not seeking to have the Court "take away the federal funding from any educational institutions." Mot. at 10, ECF No. 44. But that is the result they are seeking with the administrative complaints they have filed with the Department. Their requested injunction would undeniably further that objective. The impact would create "unsurmountable financial obstacle[s] to

---

[2] This section solely represents the argument of Defendant-Intervenor CCCU. Defendant-Intervenors Corban University, William Jessup University, and Phoenix Seminary do not join this section, but join the federal defendants' argument concerning the balance of equities and public interest. Dep't's Opp'n, ECF No. 62 at 34–35.

remaining open for many" religious schools, and it would devastate the ability of LGBTQ+ students, minorities, and others, to attend Christian schools. Decl. of S. Hoogstra ¶ 10 (attached as Exhibit A).[3]

Moreover, the behavioral policies at religious schools that Plaintiffs claim violate Title IX are grounded in those schools' deeply held religious beliefs—which itself is an important equitable consideration. The fact that those beliefs on human sexuality and gender depart, often substantially, from secular or contemporary understandings does not diminish the fact that they are sincerely held or entitled to protection. Hoogstra Dec. ¶¶ 5–7. Plaintiffs' suggestion that the affected religious schools could merely change those sincerely held religious beliefs to continue receiving federal funding is offensive, because it asks them to do what is unthinkable: Either require their students to forego permissible federal funding or deny their faith in teaching and practice. The policies of these schools regarding sexuality and gender are rooted in millennia old religious teachings and beliefs that transcend culture and custom. *Id.* ¶¶ 5–7.

This type of government coercion about what one can and cannot believe was why America was founded and why the First Amendment forbids what the Plaintiffs are seeking. The former choice—foregoing federal funding—would cut off an important option for many religious students, many of whom come from lower income and racial minority communities, as well as the LGBTQ+ community, and would harm religious schools financially. And the latter choice would strip such

---

[3] Defendant-Intervenor CCCU alone submits this declaration.

communities of their spiritual identity and character. Plaintiffs are wrong in suggesting that these schools can simply sacrifice their religious identities and practices for their students to qualify for government aid. Hoogstra Dec. ¶¶ 9–10.

Resolving this case will thus require this Court to decide whether billions of dollars of federal funding can be stripped from students at religious institutions solely because of those institutions' religious beliefs and practices. The religious schools will remain religious in the absence of federal funding. It is their students, who will have to look elsewhere for loans and support, who will suffer if the requested relief is granted. Hoogstra Dec. ¶ 23. Because enjoining the use of Title IX's religious exemption as a defense in litigation would *not* maintain the status quo, but would instead harm students at religious schools around the country, the balance of equities weighs sharply against granting the injunction.

## B. Plaintiffs have failed to establish that a preliminary injunction is in the public interest.

Finally, an injunction is not in the public interest. Plaintiffs correctly recognize (at 44) that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks and citation omitted). But Plaintiffs have failed to allege any plausible claim that their *own* constitutional rights have been violated by Congress's decision to create space for religious schools to exist as religious schools while having their students receive a public benefit. And, as explained above, Plaintiffs' attempt to destroy the Title IX religious exemption as applied to LGBTQ+ students—under any of Plaintiffs' theories—would violate the constitutional rights of

those schools and their students by allowing the federal government to pick and choose who among the religious schools gets federal funding, depending on their religious beliefs. Accordingly, it is religious schools, and the large swath of the public they serve and represent, that are at risk if an injunction is entered.

Indeed, such an injunction could actually *harm* the LGBTQ+ class that Plaintiffs are purporting to help and protect. A number of studies have show that LGBTQ+ students do measurably worse than their heterosexual/cis-gender peers at *both* religious and secular/public colleges. These studies show that LGBTQ+ students at religious schools share more common experiences with their counterparts at secular/public institutions than has been suggested. Indeed, in some important respects, LGBTQ+ students appear to do somewhat better at religious schools than they do at their secular, public counterparts. Hoogstra Dec. ¶¶ 12–17.

Those studies show that on issues ranging from isolation and loneliness, depression, anxiety, and suicidal ideation, the same gaps exist between straight and gay students on both religious and secular/public campuses. Further, the vast majority of LGBTQ+ students that attend religious schools are well aware of the institutional sexual lifestyle guidelines when they apply and enroll at those schools. Despite this, those students choose to pay a premium to attend. Thus even if some of them *disagree* with the school's policies on sexuality, they overlook their disagreement when they decide to enroll. More than a third of them report that they support the school's positions on sexuality. Hoogstra Dec. ¶ 20. Should Plaintiffs prevail, this large group of LGBTQ+ students will be denied the opportunity to attend

a place where they can integrate their personal identities into the larger Christian community and fellowship of learning. *Id.* ¶¶ 22–23. The requested preliminary injunction is accordingly not in their interest, or in the interest of the broader public.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary injunction should be denied.

Respectfully submitted.

DATED this 15th day of October, 2021.

/s/ Gene C. Schaerr
Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

/s/ Herbert G. Grey
Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org


* Admitted *pro hac vice*

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

/s/ Mark A. Lippelmann
Kristen K. Waggoner, OSB # 067077
 *Lead Counsel*
Email: kwaggoner@ADFlegal.org
David A. Cortman, GA Bar # 188810*
Email: dcortman@ADFlegal.org
Ryan J. Tucker, AZ Bar # 034382*
Email: rtucker@ADFlegal.org
Mark A. Lippelmann, AZ Bar # 036553*
Email: mlippelmann@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020


* Admitted *pro hac vice*

*Counsel for Defendants-Intervenors
Western Baptist College d/b/a Corban
University, William Jessup University
and Phoenix Seminary*

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limit requirements set forth in this Court's directive of 8, 2021 and Local Rule 7-2 because it contains 8,581 words including headings, footnotes and quotations, but excluding the caption, table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.

<u>/s/ Gene C. Schaerr</u>
Gene C. Schaerr
*Counsel for Defendant-Intervenor*
*Council for Christian Colleges*
*& Universities*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document was served on all counsel of record in this case by ECF and by email.

DATED this 15th day of October, 2021.

/s/ Gene C. Schaerr
Gene C. Schaerr
*Counsel for Defendant-Intervenor*
*Council for Christian Colleges*
*& Universities*

35 - Intervenors' Joint Response to Plaintiffs' Motion for Preliminary Injunction