Paul Carlos Southwick (OSB 095141)
Religious Exemption Accountability Project
Paul Southwick Law, LLC
8532 N. Ivanhoe St. #208,
Portland, OR 97203
Email: paul@paulsouthwick.com
Phone: 503-806-9517

Timothy R. Volpert (OSB 814074)
Tim Volpert PC
211 NE Hancock St. Ste. 2B
Portland, OR 97212
Email: tim@timvolpertlaw.com
Phone: 503-703-9054

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# EUGENE DIVISION

| | |
|---|---|
| Elizabeth HUNTER: et al., <br>  Plaintiffs, <br> v. <br> U.S. DEPARTMENT OF EDUCATION; et al. <br> Defendants. <br> v. <br> COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, WESTERN BAPTIST COLLEGE d/b/a/ CORBAN UNIVERSITY, WILLIAM JESSUP UNIVERSITY AND PHOENIX SEMINARY, <br> Defendants-Intervenors. | Case No. 6:21-cv-00474-AA <br><br> **REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT** |

## I.    INTRODUCTION

Plaintiffs who are current students have the greatest need for the Court's intervention. They are currently living under oppressive policies that harm their physical and mental health at educational institutions funded by taxpayer money. They fear, and experience, retaliation and harassment at their educational institutions. And they are largely cut off from the protection afforded by government defendants.

Feelings of existential hopelessness continue to plague LGBTQ+ students at NFBCUs, many being forced into the closet and feeling like they have no choice but to take their own lives. A current student, Jane Doe, at Regent University School of Law, afraid to disclose their identity,

explained: "I stayed closeted because I was super scared of losing my scholarships and being retaliated against for my sexuality. It led me to isolate myself. And it became a huge contributing factor as to why I fell into a deep depression and suffered from suicidal thoughts." Declaration of Jane Doe, ¶ 6. Plaintiff Hunter described a similar experience at Bob Jones University: "I was forced completely back in the closet and had to hold my head down in shame … this was the darkest month of my entire life. I felt depressed and suicidal." Dkt. 35, ¶ 75. Government defendants would normally come to the aid of these students as part of their mandate to prevent sexual orientation and gender identity discrimination at educational institutions receiving federal financial assistance. But they cannot, or will not, because of the religious exemption to Title IX.

The current system that essentially exempts Plaintiffs from Title IX protections is a classic catch-22. On the one hand, Defendants offer a token of protection in the form of the right "to always file a complaint with OCR." Southwick Decl., Ex. A, p. 32 (Questions and Answers on the Title IX Regulations on Sexual Harassment (July 2021)) ("Students may always file a complaint with OCR if they believe their school has violated their rights under Title IX, even if OCR has previously provided assurance to the school of a religious exemption under Title IX."). However, on the other hand, Defendants and courts have uniformly stripped students like Plaintiffs from Title IX protections by dismissing their complaints on the basis of the religious exemption. Dkt. 44, Southwick Decl., Ex. T; Dkt. 35, Ex. K. Plaintiffs are subject to a systemically discriminatory process—funded by taxpayer dollars—that manipulates and dehumanizes them.

2   REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
    TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
    AND MEMORANDUM IN SUPPORT

Religious Exemption Accountability Project
Paul Southwick Law, LLC

## II.     ARGUMENT

**A.     Plaintiffs have standing, satisfy jurisdictional requirements, and their claims are ripe.**

Contrary to Intervenor-Defendants contentions, dkt. 109 at 3-6, Plaintiffs claims are ripe for review and satisfy standing and jurisdictional requirements. *See* Plaintiffs' Briefing a Dkt. 64 at 9-18, 28-32; Dkt. 86 at 17-24. In *Bishop v. Starkville Acad.*, 442 F. Supp. 1176 (N.D. Miss. 1977), the court granted standing to Black students "who contend[ed} that the state defendants' actions … constitute significant aid to private schools which may be racially discriminatory" and found them to "have 'alleged such a personal stake in the controversy' as to warrant (their) invocation of federal court jurisdiction and to justify exercise of (this) court's remedial powers on (their) behalf.'" *Id.* at 1179. Likewise, Plaintiffs contend that the government defendants' actions constitute significant aid to private colleges which may practice discrimination on the basis of sexual orientation and gender identity. As in *Bishop*, this Court should find that Plaintiffs, who either currently attend or previously attended such institutions, have alleged such a personal stake in the controversy as to warrant their invocation of federal court jurisdiction and to justify exercise of this court's remedial powers on their behalf.

As the Eight Circuit has noted, "A taxpayer whose tax money is used in a discriminatory manner suffers no injury under the Equal Protection Clause *unless and until an expenditure facilitates discrimination against him or her*." *Booth v. Hvass*, 302 F.3d 849, 854 (8th Cir. 2002) (emphasis added). Here, Plaintiffs have not merely alleged that their tax money has been used in a discriminatory manner, but they have also alleged that their taxpayer money is being used to facilitate discrimination against them.

3   REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
    TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
    AND MEMORANDUM IN SUPPORT

As for ripeness, Plaintiffs' Title IX complaints have now all been assigned a case number and all, save one, are currently being evaluated by government defendants as described in a chart provided by government defendants. Southwick Decl., Ex. B. One complaint has already been dismissed but because of a parallel legal proceeding, rather than the religious exemption. *Id*. The evidence presented at the preliminary injunction hearing will show a strong likelihood of adverse government action during the pendency of this case that necessitates the Court's intervention now.

### B.  The religious schools are not necessary parties to this litigation.

Contrary to Intervenor-Defendants' contention, dkt. 109 at 2-3, the educational institutions attended by plaintiffs are not indispensable parties to this litigation. In a strikingly similar case, a federal court held that individual private schools that were practicing racial discrimination *were not* indispensable parties to a case in which the plaintiffs' challenged the state's funding of such schools. *Brumfield v. Dodd*, 425 F. Supp. 528, 530-31 (E.D. La. 1976) (citing *Norwood v. Harrison*, 413 U.S. 455, 471 (1972)). In that case, the court also cited a similar case that challenged constitutionality of a "statute authorizing state aid to non-profit private colleges and universities," stating that "[t]he fact that all recipients of aid under a challenged statute have a financial interest in the continuation of that statute does not lead inevitably to a conclusion that all aid recipients must be joined as parties." *Brumfield*, 425 F. Supp at 530 (quoting *American Civil Liberties U. of Md. v. Board of Public Wks.*, 357 F. Supp. 877 (D. Md. 1972)). Similarly, the private religious colleges and universities implicated in this case are not necessary or indispensable parties. To the extent they are interested in the outcome,

4   REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
AND MEMORANDUM IN SUPPORT

Religious Exemption Accountability Project
Paul Southwick Law, LLC

they could move for intervention, as did the three religious colleges who recently became intervenor-defendants.

Moreover, the CCCU and other intervenors will adequately represent the interests of the other religious schools potentially affected. CCCU describes itself as "the largest association of protestant Christian institutions of higher learning" and eighteen of its member colleges are named in the complaint. Dkt. 26 at 13, 15. To quote the CCCU: "Because the interests 'asserted in this lawsuit' are 'undifferentiated among members and similar to the interests and claims' of CCCU, it would be more efficient to allow CCCU to assert the standing of its members than require each individual member to intervene. Dkt. 26 at 17 (CCCU Motion to Intervene) (citing *Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1998)).

### C.     This is the proper and necessary channel to remedy the Plaintiffs' harms.

This is the proper channel to remedy the harms perpetuated by Defendants' funding and support of invidious LGBTQ+ discrimination. *See* dkt. 64 at 9-18 (discussing Plaintiffs' standing and the appropriateness of injunctive relief). Plaintiffs cannot obtain relief *against the government defendants* through private lawsuits against their educational institutions.

Moreover, filing potentially countless individual claims in federal courts is not only an incredibly inefficient (if not impossible) feat that would squander judicial resources, it would not remedy the systemic and stigmatic harm underscoring this litigation: the government's funding and support of invidious LGBTQ+ discrimination on the taxpayer dime. Indeed, hundreds of thousands of LGBTQ+ students at religious colleges universities are subject to explicitly discriminatory policies and practices. Thus, this proposed class action is the proper forum to remedy Plaintiffs' claims and the class claims.

5   REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
    TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
    AND MEMORANDUM IN SUPPORT

Religious Exemption Accountability Project
Paul Southwick Law, LLC

Intervenor-Defendants also allege a separation of powers violation. Dkt. 109 at 13-14. This Court should reject that argument. Plaintiffs do not ask the Court to intervene in discretionary decisions of an administrative agency. To the contrary, Plaintiffs request judicial determinations on the constitutionality of the religious exemption to Title IX and its implementing regulations. This Court can properly exercise its judicial power to determine the constitutional limits of federal statutes and regulations.

### A. The Free Exercise Clause does not require the federal funding of invidious private discrimination.

Intervenor-Defendants claim a constitutional right to use federal funds to discriminate against LGBTQ+ students. However, the invidious treatment of LGBTQ+ students is not required by the Free Exercise Clause. Indeed, "although the Constitution does not proscribe private bias, it places no value on discrimination as it does on the values inherent in the Free Exercise Clause. Invidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections." *Norwood*, 413 U.S. at 469-470); *see* Dkt 64 at 20-21.

In 1982, the NAACP filed an amicus brief at the Supreme Court in support of the IRS's denial of tax-exempt status to Bob Jones University, an educational institution that forbid students from interracial dating and marriage. The NAACP argued that "Even if discriminatory practices are the outgrowth of sincere religious faith, the schools' unquestioned First Amendment right to adhere to religiously motivated racist beliefs does not entitle them to a governmental benefit denied secular or religious schools which derive their racism from sources other than religious mandate." *Goldsboro Christian Schools, Inc. v. United States*, 1982 WL 1044700, *5 (1982). The NAACP's position has been repeatedly affirmed by the Supreme Court in the context of ensuring that

6   REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
    TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
    AND MEMORANDUM IN SUPPORT

Religious Exemption Accountability Project
Paul Southwick Law, LLC

government benefits are not used by religious organizations to facilitate racial, sex or sexual orientation discrimination. *See Bob Jones University v. United States*, 461 U.S. 574 (1983) (racial discrimination); *CLS v. Martinez*, 561 U.S. 661 (2010) (sexual orientation discrimination); *Grove City College v. Bell*, 465 U.S. 555 (1984) (sex discrimination).

Indeed, rather than being constitutionally mandated, the religious exemption to Title IX is constitutionally prohibited. The degree of government support for private discrimination necessary for a conclusion that the Constitution prohibits such support is lower than the degree of government support necessary to conclude that the Constitution prohibits the underlying private discrimination. *See Cornelius v. Benevolent Protective Order of Elks*, 382 F. Supp. 1182, 1189 (D. Conn. 1974) ("it is one thing to sue on Fourteenth Amendment grounds to halt state assistance to an otherwise private entity; it is quite another to seek on those grounds to restrain the entity in its own conduct. If the latter suit is successful, the entity may have no choice but to alter its practices; if the former suit is successful, the entity can choose between continuing to practice racial discrimination at the cost of forfeiting further state assistance, or abandoning its discriminatory practices and policies so that the state might constitutionally continue its assistance.").

Title IX's anti-discrimination conditions on the receipt of government funding create no substantial burden on the religious beliefs of religiously affiliated universities. The intervenors analogize to *Fulton* to assert that educational institutions face the choice of either "curtailing" their mission or "approving relationships inconsistent with its beliefs" but this analogy is misplaced. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021). In *Fulton*, the adoption agency in question could not continue its mission of providing foster homes to children, as without a contract and license from the city of Philadelphia, it simply could not provide foster services at all.

7  REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
   TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
   AND MEMORANDUM IN SUPPORT

Religious Exemption Accountability Project
Paul Southwick Law, LLC

*See Id.* at 1885, Justices Alito, Thomas, and Gorsuch concurring ("As is typical in other jurisdictions, no private charitable group may recruit, vet, or support foster parents in Philadelphia without the City's approval."). Here, in contrast, private universities are not comparably dependent on the government to be allowed provide their services. Rather, they have options, including the option to continue to offer their educational services without receiving federal funds.

> **B.     The Religious Freedom Restoration Act (RFRA) does not mandate funding invidious discrimination that targets LGBTQ+ students and burdens' their religious beliefs.**

Intervenor-Defendants contend that prohibiting the federal funding of invidious discrimination of LGBTQ+ students would violate RFRA. Dkt. 109 at 10-12. To the contrary, the federal funding of invidious LGBTQ+ discrimination substantially burdens the religious beliefs of students, coercively pressuring LGBTQ+ students to change their religious beliefs regarding sexual orientation or gender identity. While Intervenor-Defendants claim a substantial burden on schools that must choose between "curtailing their mission or approving relationships that are inconsistent with their convictions," dkt. 109 at 11, LGBTQ+ students must often curtail their religious beliefs to simply survive at these schools. Unlike religious institutions, LGBTQ+ students have sexualities and gender identities. And LGBTQ+ students' religious beliefs are inseparable from their sexualities and gender identities. Even "Defendants do not doubt that many of the Plaintiffs 'exercise their religious beliefs through how they love' and 'how they embrace and live out their sexuality and gender identity.'" Dkt 62. at 33.

Here, Plaintiffs exercise their religious beliefs through how they love; how they embrace and live out their sexuality and gender identity; how they reject homophobia and transphobia; and how they treat other LGBTQ+ people. *See* Dkt. 48, Exs. E-F (Declarations of Plaintiffs'

8   REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
    TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
    AND MEMORANDUM IN SUPPORT

Religious Beliefs). Therefore, the government substantially burdens LGBTQ+ students' religious exercise, in violation of RFRA, by funding and supporting invidious discrimination at these educational institutions. *See* Dkt. 44 at 39-40.

### C.  Defendants' funding of invidious LGBTQ+ discrimination violates the Establishment Clause.

Intervenor-Defendants contend the Establishment Clause forecloses Plaintiffs' arguments because in the absence of a Title IX Religious Exemption, "[t]he government would allow students to use their financial aid at religious schools that lack unpopular beliefs or policies on marriage and sexuality, but students who attend schools with such beliefs would be denied funding." Dkt. 109 at 12. Not so. In the absence of the Title IX Religious Exemption, the government will continue to fund religious schools but will use its enforcement mechanisms to prevent the practice of invidious sexual orientation and gender identity discrimination at all schools that receive federal financial assistance, just as it has done with respect to the practice of invidious racial discrimination that was practiced for decades at many religious educational institutions.

Such neutrality is required by the Establishment clause, otherwise, a religious accommodation will devolve into religious exceptionalism. See *Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 334-35 (1987) ("[a]t some point, accommodation may devolve into 'an unlawful fostering of religion.'") (internal citation and quotation marks omitted).


////


9    REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
     TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
     AND MEMORANDUM IN SUPPORT

                                                  Religious Exemption Accountability Project
                                                                    Paul Southwick Law, LLC

### D. The Supreme Court has not upheld religious exemptions that facilitate federally funded discrimination that harms a historically marginalized group.

Plaintiffs do not deny that courts have "upheld religious exemptions against Establishment Clause attacks," including the far narrower religious exemption to Title VII in *Amos*. *See* Dkt. 109 at 16-18. Defendant-Intervenors point to a number of cases in which religious exemptions have been upheld. However, Defendant-Intervenors have not identified cases in which courts have upheld religious exemptions that allow federally funded discrimination that harms a historically marginalized group.

For example, the religious exemptions for the military draft protect certain objectors from forced engagement in the dangers of war, but do not allow taxpayer funded harm to a marginalized group. *See Arver v. United States*, 245 U.S. 366 (1918); *Goldman v. United States*, 245 U.S. 474 (1918); *Gillette v. United States*, 401 U.S. 437 (1971). The property tax exemption protected religious exercise without harming a discrete minority. *See Walz v. Tax Comm'n of New York*, 397 U.S. 664 (1970). The RLUIPA exemption protected religious exercise without harming a discrete minority. *See Cutter v. Wilkinson*, 544 U.S. 709 (2005). The medical treatment exemption protected religious exercise without harming a discrete minority. *See Kong v. Scully*, 341 F.3d 1132 (9th Cir. 2003). The Social Security tax exemption protected religious exercise without harming a discrete minority. *See Droz v. Comm'r of IRS*, 48 F.3d 1120 (9th Cir. 1995). The church plan exemption protected religious exercise without harming a discrete minority. *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017).

////

10 REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
AND MEMORANDUM IN SUPPORT

Religious Exemption Accountability Project
Paul Southwick Law, LLC

**E.     Title IX prohibits discrimination based on sexual orientation or gender identity.**

This Court should reject Intervenor-Defendants suggestion to disregard the Supreme Court's analysis in *Bostock* and the Department's interpretation of sex discrimination under Title IX. Dkt. 109 at 27. The Department's interpretation of sex discrimination is sound:

> Consistent with the Supreme Court's ruling and analysis in *Bostock*, the Department interprets Title IX's prohibition on discrimination "on the basis of sex" to encompass discrimination on the basis of sexual orientation and gender identity. As was the case for the Court's Title VII analysis in *Bostock*, this interpretation flows from the statute's "plain terms." *See Bostock*, 140 S. Ct. at 1743, 1748-50. Addressing discrimination based on sexual orientation and gender identity thus fits squarely within OCR's responsibility to enforce Title IX's prohibition on sex discrimination.

Dkt. 44, at 19 (Notice of Interpretation).[1]

**F.     Intervenor-Defendants' remaining arguments also fail for reasons previously briefed.**

*1.     The arbitrary expansion of TIXRE is unlawful and endangers LGBTQ+ students.*

Intervenor-Defendants, largely duplicating the arguments raised by Defendants, fail to demonstrate the lawfulness of the APA regulations. Dkt 109 at 22-26. As previously argued by Plaintiffs, "A longstanding, widespread practice is not immune from constitutional scrutiny." *Payton v. New York*, 445 U.S. 573, 600 (1980). *See* Plaintiffs' Briefing at Dkt. 44 at 33-39; Dkt. 64 at 25-28.

*2.     TIXRE fails any level of scrutiny because it is not facially neutral and burdens religious beliefs and the fundamental right to marry.*

---

[1] https://www.govinfo.gov/content/pkg/FR-2021-06-22/pdf/2021-13058.pdf

11   REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
     TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
     AND MEMORANDUM IN SUPPORT

Religious Exemption Accountability Project
Paul Southwick Law, LLC

TIXRE fails any level of scrutiny for its burden on religious beliefs, facial discrimination based on sex, and the direct and substantial interreference on the fundamental right to marry. *See* Plaintiffs' Briefing at Dkt 64. at 24-25; Dkt. 44 at 30-31,

> 3. *It is in the public interest to protect LGBTQ+ students from harassment, retaliation, and discrimination.*

Intervenor-Defendants, again repeating arguments already raised by Defendants, contend it is not in the public interest to provide LGBTQ+ students with legal protections. Dkt. 109 at 31-33. However, the injunction is in the public interest because (1) "it is always in the public interest to prevent the violation of a party's constitutional rights," *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citations omitted); (2) investigating serious allegations of widespread discrimination is in the public interest, *see EEOC v. Fed. Express Corp.*, 558 F.3d 842, 852 (9th Cir. 2009); (3) ameliorating injury to public health, specifically the physical, mental and dignitary harms to Plaintiffs, is in the public interest. *See* Plaintiffs' Briefing at Dkt. 44 at 43-44; Dkt. 88 at 10 (discussing).

### III.   CONCLUSION

Plaintiffs incorporate their briefing from Dkt. 44, 64, 75 and 86 on all issues raised by Defendants and Defendants'-Intervenors. Thus, for the aforementioned reasons, Plaintiffs respectfully request that this Court protect Plaintiffs by granting Plaintiffs' Motion for Preliminary Injunction.

////

12   REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE
     TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
     AND MEMORANDUM IN SUPPORT

Religious Exemption Accountability Project
Paul Southwick Law, LLC

Dated: October 22, 2021

                                   <u>s/Paul Carlos Southwick</u>

**Paul Carlos Southwick**
**(OSB 095141)**
**TRIAL ATTORNEY**
**Religious Exemption**
**Accountability Project**
**Paul Southwick Law, LLC**
8532 N. Ivanhoe St. #208,
Portland, OR 97203
Email: paul@paulsouthwick.com
Phone: 503-806-9517

13 REPLY TO DEFENDANTS-INTERVENORS' JOINT RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

Religious Exemption Accountability Project
Paul Southwick Law, LLC