

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

March 9, 2015

Paul Southwick
Davis, Wright, Tremaine, LLP
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201

Re:    George Fox University
       OCR Reference Nos. 10142152 and 10142258

Dear Mr. Southwick:

On March 9, 2015, the Seattle office of the Office for Civil Rights (OCR Seattle) administratively closed your complaint No. 10142258 against George Fox University because your complaint allegation was raised and previously addressed by OCR in complaint No. 10142152. OCR Seattle closed complaint No. 10142152 because your complaint allegation fell within an exemption granted to the University by Title IX of the Education Amendments of 1972.[1] In complaint No. 10142258, you asserted that the University practices about which you complained are not based on the religious tenets of a controlling religious organization and thus are not appropriately exempt from Title IX. Although your complaint has been closed, because your complaint challenged the religious exemption granted to the University, OCR-Seattle forwarded it to the Assistant Secretary, who is responsible for addressing claims for religious exemption under Title IX.

OCR is responsible for enforcing Title IX, which prohibits discrimination on the basis of sex in education programs or activities receiving Federal financial assistance from the Department. The University, as a recipient of Federal financial assistance from the Department, is generally subject to Title IX. Nevertheless, the statute and the implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the organization's religious tenets.

In 1977, OCR set forth three conditions used to determine whether a recipient is considered to be "controlled by a religious organization," and thus eligible for this Title IX exemption. A

---

[1] 20 U.S.C. §§ 1681-1688.

1

recipient will normally be considered to be controlled by a religious organization if one or more of the following conditions are true:

(1) It is a school or department of divinity, defined as an institution or a department or branch of an institution whose program is specifically for the education of students to prepare them to become ministers of religion or to enter upon some other religious vocation, or to prepare them to teach theological subjects; or

(2) It requires its faculty, students or employees to be members of, or otherwise espouse a personal belief in, the religion of the organization by which it claims to be controlled; or

(3) Its charter and catalog, or other official publication, contains explicit statement that it is controlled by a religious organization or an organ thereof or is committed to the doctrines of a particular religion, and the members of its governing body are appointed by the controlling religious organization or an organ thereof, and it receives a significant amount of financial support from the controlling religious organization or an organ thereof.

The University claimed an exemption in a letter dated March 31, 2014. In support of its assertion that it is controlled by a religious organization, the University asserted that the University is owned by the Northwest Yearly Meeting of Friends (NWYM), and that the University's seven Board of Trustees members must be Friends. On the issue of religious tenets, the University explained, as relevant to your complaint, that its biblical belief is that human beings are created male and female, and that the University "cannot in good conscience support or encourage an individual to live in conflict with biblical principles." The University explained that, because of these tenets, it would be unable to accommodate a transgender student's request to use facilities or play on athletic teams consistent with that student's gender identity. On the basis of information contained in that letter, the Assistant Secretary granted an exemption in a letter dated May 23, 2014.

In your complaint, you alleged that University is not controlled by NWYM and the University's practices that you challenge in your complaint are not based on NWYM's religious tenets.

Because the allegations of your complaint fall within the exemption granted on May 23, 2014, and because your complaint also alleged that the University practices about which you complained are not based on the religious tenets of a controlling religious organization, OCR will contact the religious organization identified by the University. If the organization provides an interpretation of tenets that has a different practical impact than that described by the University, or if the organization denies that it controls the University, the University's exemption will be rescinded and OCR Seattle will proceed with the processing of your original complaint allegation under a new docket number.

ED4.000002

OCR will inform you of the outcome of this process.  If you have any questions about the process, please do not hesitate to call me at 202-453-6048.

Sincerely,

Seth M. Galanter
Principal Deputy Assistant Secretary

ED4.000003



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

March 9, 2015

Becky Ankeny
Superintendent, Northwest Yearly Meeting of Friends
200 N. Meridian
Newberg, OR 97132

Dear Superintendent Ankeny:

Your assistance would be greatly appreciated to address a matter involving George Fox
University and its students as well as the U.S. Department of Education. The Northwest Yearly
Meeting of Friends Church (NWYM) is not under investigation by the Department. Rather, I
write to ask for your help in clarifying the relationship between NWYM and the University and
in addressing the University's description of some of NWYM's religious tenets so that the
Department can meet its statutory obligations in a manner that respects the religious nature of the
University.

The Office for Civil Rights (OCR) at the Department is responsible for enforcing, among other
civil rights statutes, Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C.
§§ 1681-1688, which prohibits discrimination on the basis of sex in education programs or
activities receiving Federal financial assistance from the Department. The University, as a
recipient of Federal financial assistance from the Department, is generally subject to Title IX.

However, the statute and the implementing regulation at 34 C.F.R. § 106.12 provide that Title IX
does not apply to an educational institution controlled by a religious organization to the extent
that application of Title IX would be inconsistent with the organization's religious tenets. Such
educational institutions are allowed to claim an exemption from Title IX. The institution must
identify the religious organization that controls the educational institution and specify the tenets
of that organization and the provisions of Title IX or its regulations that conflict with those
tenets.

In a March 31, 2014 letter to OCR, the University requested an exemption from Title IX to the
extent that Title IX requires recipients to treat a student consistent with the student's gender
identity with respect to housing, restrooms, locker rooms, and athletics. On May 23, 2014, OCR
granted the University's request. A copy of both letters is enclosed. Subsequently, OCR closed
a complaint it had received that was filed on behalf of a transgender male student whose request
for an on-campus housing assignment with male roommates was denied by the University. OCR

1

ED4.000004

closed the complaint because the allegations of the complaint fell within the scope of the exemption.

Although the complaint has been closed, the complainant has also alleged that the University practices complained about are not based on the religious tenets of a controlling religious organization. When a dispute arises regarding a previously-granted religious exemption that was the basis for OCR closing a complaint, OCR seeks information directly from the religious organization identified by the educational institution as controlling it. OCR does so because the religious organization is in the best position to assist OCR in meeting its statutory obligation under Title IX—to ensure that a recipient of federal funds does not discriminate on the basis of sex unless compliance would be inconsistent with the religious tenets of the organization that controls it. OCR has informed the complainant that it is making such an inquiry.

We would greatly appreciate any information you choose to provide regarding NWYM's control of the University and the specific religious tenets discussed below.

Control

In its March 31, 2014 request letter to OCR, the University stated that its "name honors the founder of the Friends (Quaker) movement and the University is owned by the Northwest Yearly Meeting of Friends (in fact, 4/7 of the Board of Trustees must be Friends)." The complainant alleged in his complaint that the University is not, in fact, owned or controlled by NWYM.

In 1977, OCR set forth three conditions used to determine whether a recipient is considered to be "controlled by a religious organization," and thus eligible for the Title IX exemption. A recipient will normally be considered to be controlled by a religious organization if one or more of the following conditions are true:

(1)  It is a school or department of divinity, defined as an institution or a department or branch of an institution whose program is specifically for the education of students to prepare them to become ministers of religion or to enter upon some other religious vocation, or to prepare them to teach theological subjects; or

(2)  It requires its faculty, students or employees to be members of, or otherwise espouse a personal belief in, the religion of the organization by which it claims to be controlled; or

(3)  Its charter and catalog, or other official publication, contains explicit statement that it is controlled by a religious organization or an organ thereof or is committed to the doctrines of a particular religion, and the members of its governing body are appointed by the controlling religious organization or an organ thereof, and it receives a significant amount of financial support from the controlling religious organization or an organ thereof.

2

ED4.000005

Please tell us whether the University is controlled by NWYM under any of the conditions set forth above. Feel free to provide any explanation or supporting documentation that may be helpful to OCR's understanding.

Tenets

In its March 31, 2014 request letter to OCR, the University stated that it:

> believes that human beings, fashioned by God in His own image, are created male and female (Genesis 1:27). In the New Testament, Jesus confirms the heterosexual creation of human beings: God made them male and female (Matthew 19:4). Like the rest of God's creation, the sexual differences between man and woman are pronounced "very good" (Genesis 1:31). . . . [I]n keeping with our biblical beliefs surrounding the morality of such actions, we cannot in good conscience support or encourage an individual to live in conflict with biblical principles.

Based on these tenets, the University requested and received a religious exemption from Title IX to the extent that Title IX prohibits discrimination based on gender identity with respect to housing, comparable facilities, such as restrooms and locker rooms, and athletics. The complainant alleged in his complaint that NWYM's religious tenets do not prohibit the school from providing housing to a student consistent with the student's gender identity.

Please tell us whether treating a transgender student consistent with the student's gender identity for purposes of housing would violate NWYM's tenets. Feel free to provide any explanation or supporting documentation that may be helpful to OCR's understanding.

Thank you in advance for your assistance with this matter. If you have any questions, please do not hesitate to call me at (202) 453-6048.

Respectfully,

Seth M. Galanter
Principal Deputy Assistant Secretary


Enclosures (2)

cc: Dr. Robin Baker, President, George Fox University (by mail and email, without enclosures)

3

ED4.000006



Northwest
Yearly Meeting
of Friends

200 N Meridian Street, Newberg, OR 97132  Tel 503 538 9419  www.nwfriends.org

March 25, 2015

**VIA EMAIL - seth.galanter@ed.gov**
**-and-**
**VIA UPS NEXT DAY DELIVERY**

Mr. Seth Galanter
Principal Deputy Assistant Secretary
US Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, DC 20202-1100

Dear Mr. Galanter:

Your March 9 letter asks me to clarify the relationship between the Northwest Yearly Meeting of
Friends Churches (NWYM) and George Fox University (University) and to address some of the
NWYM religious tenets that are relevant to your grant of a limited exemption from Title IX of
the Education Amendments of 1972 as it applies to housing, restrooms, locker rooms and
athletics. Specifically, you are inquiring based on a complainant's allegation that the University
is not owned or controlled by the NWYM and that the University's practices as to housing
involving a transgender student are not based on the religious tenets of the NWYM. After an
overview, I will respond in detail to the three issues of ownership, control and relevant religious
tenets. Thereafter, I will address the application of the three conditions you cite in your letter
that, if met, establish control of the University by the NWYM.

**Overview**

The predecessor to the NWYM founded the college that is now the University in 1891. It
established a Board of Trustees, provided the land and donated the money to establish this
continuously running institution. The NWYM has never relinquished its "ownership" of the
University.

"You are my friends if you do what I command." JOHN 15:14 NIV    Member of Evangelical Friends International

Mr. Seth Galanter
March 25, 2015
Page 2

Neither has the NWYM ever relinquished "control" of the University. The Board of Trustees of the University must be 4/7 Friends. The NWYM approves all trustees and may remove any trustee for cause. I, as the Superintendent of the NWYM, am a voting member of the Board of Trustees and of its Executive Committee. All members of the Board of Trustees must be in harmony with the NWYM statement of faith and the NWYM's Faith and Practice. The President of the University must report annually to the NWYM at the NWYM's annual sessions. The Bylaws of the University state that no change shall be made to the Bylaws affecting the University's relationship with the NWYM without the consent of the NWYM.

Finally, the NWYM has religious tenets that are relevant to the housing of transgender students. The NWYM has longstanding convictions about sexual purity and modesty as it relates to human sexuality. Those convictions have led the University to require sex-segregated housing on and off campus for its entire history. The question of what housing options would be offered to a transgender male who also disclosed that he is anatomically female was an unprecedented housing challenge to the University. Potential nudity issues in dorm-style housing with communal bathrooms were of particular concern. The NWYM also is committed to a deliberation process that leads to consensus and often means that significant decisions take time.

The decision by the University to seek an exemption from Title IX, offer the transgender student on and off campus housing options for the 2014-15 school year and engage a committee in a nearly one-year study to develop a Position Statement Re: Students Identifying as Transgender (Statement) was appropriate. The Statement has recently been approved by the Executive Committee of the Board of Trustees, has been posted on the University website and will be the policy applicable to housing decisions about to begin for the 2015-16 school year and thereafter. Attachment 1. The Statement is consistent with the religious tenets of the NWYM and the NWYM's Faith and Practice.

In summary, the NWYM controls the University and expects it to act consistently with the religious tenets of the NWYM. The limited exemption from Title IX sought by the University and granted by you has allowed the University to thoughtfully consider and implement a position as to transgender students that is intended to be respectful, inclusive and consistent with the religious tenets of the NWYM.

**The NWYM Owns George Fox University**

Chehalem Monthly Meeting of the Society of Friends founded an academy to educate its young people, and in 1891 expanded that education to the college level by creating Pacific College, in

ED4.000008

Mr. Seth Galanter
March 25, 2015
Page 3

Newberg, Oregon. All of the college trustees at the time were Quakers. The Chehalem Monthly
Meeting eventually changed its name to Newberg Monthly Meeting, and in time turned the
trusteeship to the Quarterly Meeting, which in turn soon turned it over to the regional body
known as Oregon Yearly Meeting of Friends Churches (OYM). The articles of incorporation
(December 21, 1893) for OYM state:

> The object of this corporation is to improve the mental and moral
> condition of the members of said Church and mankind generally
> by teaching, practicing and disseminating the great religious and
> moral truths and principles of the Bible according to custom and
> usage of the Friends Church and in connection therewith and as a
> part thereof to own, operate, conduct and control a school or
> schools for the education of its members of said church and such
> other persons as may desire to attend said school or schools and for
> these purposes said corporation shall have power to buy and sell
> land, to erect suitable buildings thereon or to purchase the same.

*The Tenth Biennial Report of Superintendent of Public Instruction of the State of Oregon* 83
(1893) states:

> Pacific College was founded by the Friends' Church of Oregon....
> [O]n September 9, 1891, Pacific College was formally opened, and
> a college charter has been granted under the laws of the State of
> Oregon.... The founders recognized the great importance of
> religious training ... decidedly Christian in its tendencies. It is the
> fond hope of the management that Pacific College shall send forth
> many Christian teachers, ministers and missionaries, and that it
> shall be a strong support not only to the Friends' Church but to
> Christianity wherever its influence may reach.

The Articles of Incorporation for George Fox College (1962) state:

> All property acquired by the corporation, real or personal, and all
> increments, interests, or earnings thereof are and shall be devoted
> in perpetuity and irrevocably dedicated to charitable, educational,
> and religious purposes; and in the event of the liquidation,
> dissolution, or abandonment of this corporation, its property will

ED4.000009

Mr. Seth Galanter
March 25, 2015
Page 4

> not inure to the benefit of any private person but shall go to the
> Oregon Yearly Meeting of Friends Church, an Oregon non-profit
> corporation.

Over time, Oregon Yearly Meeting became Northwest Yearly Meeting of Friends Churches, and
Pacific College became George Fox Pacific College, and then George Fox College, and finally,
George Fox University.

In response to past government inquiries, the University's explanation that it is owned by the
NWYM apparently has been accepted. *See* Attachment 2, which are exchanges from 1994 to
2002 between branches of the armed forces and administrators at the University explaining the
school's ownership by the NWYM, the long tradition of Quaker pacifism and the proper
exemption of the University from the requirements of the Solomon Amendment and prior laws
that military recruiters have access to students.

### The NWYM Controls the University and Its Board of Trustees

The Bylaws of George Fox University make expressly clear that the University is controlled by
the NWYM. Attachment 3. The primary purpose of the Board of Trustees is to ensure that the
University has a clear sense of its Christ-centered mission and a strategic plan to maintain it.
Article II. At least four-sevenths of the members of the Board shall be members of good
standing of the Friends Church and of these, at least two-thirds shall be members of the NWYM.
Article IV, Section 1 b. The General Superintendent of the NWYM is a voting member of the
Board and any Board committee on which she sits, including the Executive Committee. Article
IV, Section 1 e. The NWYM approves all trustees and is empowered to remove any or all of
them as well. Article IV, Sections 2 a and c. All nominees must be in harmony with the
NWYM statement of faith and its Faith and Practice, which was formerly known as the
Constitution and Discipline and the key tenets of which are set forth in the Bylaws. Article VI.
The President of the University reports annually to the NWYM. Article IX, Section 1 d. The
Bylaws state that no change shall be made in the Bylaws affecting the relationship with
Northwest Yearly Meeting of Friends Church without the consent of the NWYM. Article XII,
Section 3.

In addition, as will be more fully explained below, all faculty and staff must adhere to a
statement of faith and lifestyle statement and students must agree to the lifestyle statement, all of
which derive from the NWYM's Faith and Practice.

Mr. Seth Galanter
March 25, 2015
Page 5

**The NWYM Has Relevant Religious Tenets**

NWYM does not expressly prescribe housing policy for the University, nor does it generally manage student life matters. The NWYM approves trustees to oversee such matters, informs them through the Faith and Practice of relevant religious tenets of the NWYM and has an expectation that decision making by the University on matters of significance will be consistent with those tenets and follow a process of discernment and deliberation to reach consensus.

That process was followed in this matter, and the adopted Statement is consistent with the NWYM's Faith and Practice both as to the substance and to the process. Attachment 4 is an annotated version of the Statement that not only references the relevant Biblical passages and University policies but also the relevant sections of the Faith and Practice. To allow for cross referencing, a full copy of the NWYM's Faith and Practice is Attachment 5.

As noted in the Statement, the long history of sex-segregated housing at the University derives from religious tenets as to sexual purity and modesty. Determining appropriate and safe housing for a transgender male who is anatomically female required study. After the University provided housing options to the student for the 2014-15 school year, it formed a study committee of trustees, faculty and staff, including several members who also are members of the NWYM. That committee and its subcommittee work group had a total of 15 meetings between August 2014 and January 2015. It invited community members, including the transgender student, to present their perspectives.

Before forwarding their recommendation to the Executive Committee of the Board of Trustees, of which I am a member, they conferred with 61 community members through focus groups, including 19 faculty members, 23 administrators and staff, seven staff from the Academic Affairs Office/Academic Deans, nine students and three pastors. The Executive Committee adopted the Statement by consensus with only minor style editing.

This process is consistent with the expectation of discernment, deliberation and consensus set forth in the Faith and Practice. *See* Attachment 5, pp. 1, 25 and 57. As Superintendent and as a member of the Executive Committee of the University's Board of Trustees, I am satisfied that the substance of the Statement and the process by which it was determined are consistent with the NWYM's Faith and Practice.

The limited exemption from Title IX requested by the University and granted by the Office of Civil Rights is appropriate. 20 USC section 1681(3) and 34 CFR section 106.12 provide that

Mr. Seth Galanter
March 25, 2015
Page 6

Title IX shall not apply to an educational institution that is controlled by a religious organization
if the application of the subsection would not be consistent with the religious tenets of such
organization. As the highest ranking official of the NWYM as well as a member of the
Executive Committee of the University's Board of Trustees, I support the limited exemptions as
to 34 CFR sections 106.32 (housing), 106.33 (comparable facilities such as restrooms and locker
rooms) and 106.41 (athletics). As is hopefully clear from the Statement, even though this
exemption is appropriate and in place, the University has gone to great effort to study, deliberate
and reach consensus on the Statement, which, among other things, provides transgender students
appropriate and safe housing and facilities consistent with the religious tenets of the NWYM and
its Faith and Practice.

## The Relationship Between the NWYM and the University Meets Each of the Three Conditions

In addition to the analysis of the statutory and regulatory exemptions from Title IX, you have
asked me to explain whether the University is controlled by the NWYM under any of the
conditions set forth in a 1977 Office of Civil Rights memo. As explained above, the NWYM
generally controls the University. Each of the three conditions set forth in the 1977 memo exist
at the University.

### School or Department of Divinity

The University does have a seminary, George Fox Evangelical Seminary. The NWYM has a
Friends Center at the seminary and pays its director to recruit and support Friends students in
seminary. The NWYM also has endowments and gifts that are earmarked for scholarships for
Friends seminary students. However, this condition does not seem particularly pertinent to the
issue of housing for a transgender undergraduate student.

### Requirement to Sign Statement of Faith and Lifestyle Statement

The University has historically required all job applicants and employees, both staff and faculty,
to sign a faith statement and a lifestyle statement. Those commitments are reaffirmed annually
for those faculty and staff who have annual contracts. The NWYM is an evangelical Christian
group and thus shares much with other evangelical Christians in their faith and lifestyle as well.
However, the faith statement demonstrates its clear connection to the NWYM's Faith and
Practice by including distinctive Friends tenets such as commitment to peacemaking and an
understanding of communion and baptism. Attachment 6. Undergraduate students also are

ED4.000012

Mr. Seth Galanter
March 25, 2015
Page 7

required to sign the lifestyle statement, which, again, is consistent with and derived from the
NWYM's Faith and Practice. Attachment 7. Students are not required to agree to the faith
statement.

**Charter and Catalog Statements, Commitment to Doctrine and Financial Support**

The NWYM's control of the University as provided in the University Bylaws has been fully
analyzed above. The required adherence to the statement of faith by members of the Board of
Trustees as well as faculty and staff and the commitment to a lifestyle statement by faculty, staff
and undergraduate students is discussed above. In addition, the following can be found on the
University website: http://www.georgefox.edu/about/quick_facts/index.html.

### Christian Values

As a Christian college rooted in the Friends tradition, we believe George Fox is uniquely
designed to foster authentic and meaningful relationships that lead to personal
transformation. In keeping with our mission of Christian higher education, all of our
employees – faculty, staff and administrators – are committed Christians.

### Course on Quaker Heritage

### RELI 260 - THE HISTORY AND DOCTRINE OF FRIENDS (A Meeting for Worship in which Learning is Welcomed) Paul Anderson, Fall 2014

Course Description: This course is designed to introduce the student to the history and
doctrine of the Friends movement, providing a solid basis for Christian leadership from
the perspective of those values embraced by Northwest Yearly Meeting. The scope will
include a treatment of the history of the Quaker movement from the middle 17th century
to the present, an appreciation for doctrines and testimonies Friends have upheld over the
years, and an exploration of how Quaker faith and practice might yet make a difference in
today's world and for the future. This course satisfies the Bible elective GEED
requirement for Friends students, but it is open to all students interested in following
Jesus more effectively, as informed by a rich Quaker heritage, upon which George Fox
University is founded. The ethos of the course will be "a meeting for worship in which
learning is welcomed," hoping to follow Jesus dynamically and authentically.

Mr. Seth Galanter
March 25, 2015
Page 8

### From the Catalog:

With other Christians, the university holds to the historic truths and teachings of
Christianity, as outlined in the statement of faith. From its founding, the university has
been guided by Northwest Yearly Meeting of Friends Church. It historically has
emphasized the necessity of a genuinely experiential Christian faith, personal integrity
and purity, the spiritual nature of the ordinances, the importance of peacemaking and
responsible social action, the involvement of women in ministry and leadership, the
valuing of simplicity, and the right and duty of each person to hear and follow God's call.

### Friends Center

In conjunction with George Fox University, Northwest Yearly Meeting of Friends has
established a Friends Center serving the leadership preparation needs of Friends in the
Northwest and beyond. The mission of this center is to recruit, promote, and coordinate
the leadership preparation ventures of Friends at George Fox University as a means of
furthering the central mission of the university and Northwest Yearly Meeting in
fostering Christ-centered faith and practice. The activities of the center are administered
by a director, who reports to a board of directors, consisting of Northwest Yearly
Meeting, university, and at-large members. While the work of the Friends Center will be
especially concerned with the seminary and the undergraduate programs, its contribution
should be seen as extending to other programs as well. The Friends Center, therefore, is
intended to assist George Fox University in accomplishing its Christ-centered and Quaker
mission in any ways that would be serviceable.

### Financial Support

The NWYM has an annual budget of just over $1 million. Of that amount, a little over 10% goes
to the University to support the attendance of Friends students, both undergraduates and
seminary. In addition, the individuals and churches of the NWYM support the University
directly. For example, the University's advancement office has determined that for the 2010 to
2014 fiscal years, the NWYM Friends members of the University's Board of Trustees gave
$830,780, $1,133,971 came from NWYM Friends estates and $30,577 came from NWYM
churches, for a total for those four years of $1,995,328. As has already been explained above,
the NWYM owns the University, which alone is significant financial support. In its 124-year
history, the University has never paid the NWYM for that foundation.

Mr. Seth Galanter
March 25, 2015
Page 9

**Conclusion**

The NWYM owns and controls the University. The religious tenets of the NWYM, including those as to discernment, sexual purity and modesty, warranted the actions taken by the University to seek a limited exemption from Title IX, provide appropriate and safe housing options for the 2014-15 school year, study the issue, and deliberate and reach consensus on the Statement applicable now and in the future. Please let me know if you have any further questions or concerns.

Sincerely,

Becky Ankeny
General Superintendent



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

August 19 2015

*Via Mail and Email (to bankeny@nwfriends.org)*

Becky Ankeny
Superintendent, Northwest Yearly Meeting of Friends
200 N. Meridian
Newberg, OR 97132

Dear Superintendent Ankeny:

Thank you for your letter dated, March 25, 2015, to the U.S. Department of Education's Office for Civil Rights (OCR). You wrote in response to OCR's March 9, 2015 letter asking for your help in clarifying the relationship between the Northwest Yearly Meeting of Friends Churches (NWYM) and George Fox University (the University) and in addressing the University's description of some of NWYM's religious tenets.

OCR is responsible for enforcing, among other civil rights statutes, Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681-1688, which prohibits discrimination on the basis of sex in education programs or activities receiving Federal financial assistance from the Department. The University, as a recipient of Federal financial assistance from the Department, is generally subject to Title IX.

However, the statute and the implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the organization's religious tenets. Such educational institutions are allowed to claim an exemption from Title IX. The institution must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of Title IX or its regulations that conflict with those tenets.

In a March 31, 2014 letter to OCR, the University requested an exemption from Title IX to the extent that Title IX requires recipients to treat a student consistent with the student's gender identity with respect to housing, restrooms, locker rooms, and athletics. On May 23, 2014, OCR granted the University's request. Subsequently, OCR closed a complaint it had received that was filed on behalf of a transgender male student whose request for an on-campus housing assignment with male roommates was denied by the University. OCR closed the complaint because the allegations of the complaint fell within the scope of the exemption.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ED4.000150

Becky Ankeny – page 2

Although the complaint had been closed, the complainant had also alleged that the University practices complained about were not based on the religious tenets of a controlling religious organization. According to the complainant, the University had inappropriately relied on a religious exemption because NWYM does not "control" the University and because NWYM's religious tenets did not prohibit the University from honoring the housing requests of a transgender student. Because the complainant was personally affected by the exemption and had raised a challenge to the exemption, OCR sought in its March 9, 2015 letter information directly from NWYM, the religious organization identified by the University as controlling it. OCR did so because the religious organization is in the best position to assist OCR in meeting its statutory obligation under Title IX—to ensure that a recipient of federal funds does not discriminate on the basis of sex unless compliance would be inconsistent with the religious tenets of the organization that controls it.

Although the complainant subsequently informed OCR in May 2015 that the transgender male student and University had resolved their dispute, because the propriety of OCR's exemption had been drawn into question in connection with an otherwise colorable OCR complaint, OCR has determined to address the validity of the University's exemption as applied to Title IX's housing regulation, 34 C.F.R. § 106.32.

Control

As OCR explained in its last letter, a recipient will normally be considered to be controlled by a religious organization if one or more of the following conditions is true:

(1) It is a school or department of divinity, defined as an institution or a department or branch of an institution whose program is specifically for the education of students to prepare them to become ministers of religion or to enter upon some other religious vocation, or to prepare them to teach theological subjects; or

(2) It requires its faculty, students or employees to be members of, or otherwise espouse a personal belief in, the religion of the organization by which it claims to be controlled; or

(3) Its charter and catalog, or other official publication, contains explicit statement that it is controlled by a religious organization or an organ thereof or is committed to the doctrines of a particular religion, and the members of its governing body are appointed by the controlling religious organization or an organ thereof, and it receives a significant amount of financial support from the controlling religious organization or an organ thereof.

Your response explains that "all faculty and staff must adhere to a statement of faith and lifestyle statement and students must agree to the lifestyle statement, all of which derive from the

Becky Ankeny – page 3

NWYM's Faith and Practice." Your response further explains that although the "NWYM is an evangelical Christian group and thus shares much with other evangelical Christians in their faith and lifestyle," the statement of faith that faculty are required to sign "demonstrates its clear connection to the NWYM's Faith and Practice by including distinctive Friends tenets." This response satisfies the second part of the test above.

Tenets

As OCR explained in its last letter, a recipient controlled by a religious organization is exempt from Title IX only to the extent that compliance with Title IX would not be consistent with the religious tenets of the controlling organization. For that reason, OCR asked you whether treating a transgender student consistent with the student's gender identity for purposes of housing would violate NWYM's tenets.

Your response letter confirms that "the long history of sex-segregated housing at the University derives from religious tenets as to sexual purity and modesty." Your response explains that although these "religious tenets that are relevant to the housing of transgender students" were "longstanding," the particular question of applying those religious tenets "to a transgender male who also disclosed that he is anatomically female" was "unprecedented" and "required study." NWYM's Faith and Practice requires that "decision making by the University on matters of significance" will "follow a process of discernment and deliberation to reach consensus," which "often means that significant decisions take time." Your response states that the "decision by the University to seek an exemption from Title IX … and engage a committee in a nearly one-year study to develop a Position Statement Re: Students Identifying as Transgender (Statement) was appropriate."

That position statement, ultimately adopted by the University in March 2015 (which will be applicable to housing decisions for the 2015-16 school year and thereafter), recognizes that "one's gender identity might not conform to his or her birth sex" and concludes that the University "intend[s] to maintain [its] same-sex housing, although the realities of transgender processes may require special considerations." In particular, "housing units with private restrooms and living spaces will be provided for students identifying as transgender where possible" and "[w]ith approval and consistent with housing policy, this may include living in a room in a shared house (or appropriate apartment) on campus with a student's legally-recognized gender, provided housemates/apartment mates have agreed to such an arrangement." Your letter confirms that the position statement "is consistent with the religious tenets of the NWYM and the NWYM's Faith and Practice."

Your response is sufficient to establish that the application of Title IX's regulation regarding housing (34 C.F.R. § 106.32) at the time the complaint was dismissed would have been inconsistent with the organization's religious tenets to the extent that Title IX prohibits discrimination on the basis of gender identity in housing decisions.

Becky Ankeny – page 4

Based on the information above, OCR has determined that the University's exemption was appropriately granted as applied to the case in question. If you have any questions, please do not hesitate to contact my office.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

cc: Dr. Robin Baker, President, George Fox University (by mail and email)
    Paul Southwick, Esq., Davis Wright Tremaine, LLP (by mail and email)

ED4.000153