# U.S. DEPARTMENT OF EDUCATION

# OFFICE FOR CIVIL RIGHTS



# CASE PROCESSING MANUAL (CPM)

# EFFECTIVE DATE: AUGUST 26, 2020

ELIZABETH HUNTER et al.
v.
U.S. DEPARTMENT OF EDUCATION, et al.

Case No. 6:21-cv-00474 (AA)

**GOV Ex. 1**

ED2.000001

**INTRODUCTION**

The mission of the Office for Civil Rights (OCR) is to ensure equal access to education and to promote educational excellence throughout the nation through vigorous enforcement of civil rights. The <u>Case Processing Manual</u> (CPM) provides OCR staff and stakeholders with information regarding how OCR promptly and effectively investigates and resolves complaints, compliance reviews, and directed investigations, to ensure compliance with the civil rights laws and regulations enforced by OCR.

# Table of Contents

INTRODUCTION ........................................................................................................................................2
**ARTICLE I:        EVALUATION.................................................................................5**
SECTION 101    PRIVACY ACT AND FREEDOM OF INFORMATION ACT ....................................................5
SECTION 102    DETERMINE WHETHER THE INFORMATION PROVIDED IS SUBJECT TO FURTHER PROCESSING .....5
SECTION 103    ASSIGN A CASE NUMBER AND ESTABLISH A FILE ......................................................8
SECTION 104    ACKNOWLEDGE THE COMPLAINT ..........................................................................8
SECTION 105    OBTAIN A CONSENT FORM ..................................................................................8
SECTION 106    DETERMINE WHETHER THE ALLEGATIONS ARE TIMELY .............................................9
SECTION 107    DETERMINE WHETHER A WAIVER SHOULD BE GRANTED ...........................................9
SECTION 108    DISMISSAL OF ALLEGATIONS ............................................................................10
SECTION 109    FIRST AMENDMENT PRINCIPLES .........................................................................12
SECTION 110    EXPEDITED RESOLUTION WITH OCR'S RAPID RESOLUTION PROCESS ........................12
SECTION 111    OPENING THE COMPLAINT ALLEGATION(S) FOR INVESTIGATION ...............................13
**ARTICLE II:        FACILITATED RESOLUTION BETWEEN THE PARTIES PROCESS ..........14**
SECTION 201    ROLES ............................................................................................................14
(a)            OCR's Role...........................................................................................................14
(b)            Role of the Participants ...........................................................................................14
SECTION 202    INITIATION AND TERMINATION OF THE FRBP PROCESS..............................................14
SECTION 203    CONFIDENTIALITY OF THE FRBP PROCESS ............................................................14
SECTION 204    SUCCESSFUL CONCLUSION OF THE FRBP PROCESS...................................................15
SECTION 205    BREACH OF FRBP AGREEMENTS ..........................................................................15
SECTION 206    INVESTIGATIVE DETERMINATION WHEN FRBP IS NOT ACHIEVED ...............................15
**ARTICLE III: CASE PLANNING, INVESTIGATION AND RESOLUTION...................................15**
SECTION 301    CASE PLANNING..................................................................................................15
SECTION 302    RESOLUTION AGREEMENT REACHED DURING AN INVESTIGATION ..............................16
(a)            Statement of the Case ..............................................................................................16
(b)            Timeframes and Procedures for Negotiations ..............................................................17
(c)            Resolution Letters...................................................................................................17
SECTION 303    INVESTIGATIVE DETERMINATIONS ......................................................................18
(a)            Insufficient Evidence Determination ..........................................................................18
(b)            Non-Compliance Determination.................................................................................18
(c)            Mixed Determination ..............................................................................................18
(d)            Statement of the Case ..............................................................................................19
(e)            Letter of Finding(s) ................................................................................................19
(f)            Timeframes and Procedures for Negotiations ..............................................................19
(g)            Negotiation Impasse................................................................................................19
(h)            Negotiations On-Going at the End of the 90-day Period .................................................20
SECTION 304    CONTENTS OF RESOLUTION AGREEMENTS .............................................................20
SECTION 305    LETTER OF IMPENDING ENFORCEMENT ACTION.......................................................21
SECTION 306    REFERRALS FROM THE DEPARTMENT OF JUSTICE (DOJ) AND THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC) ........................................................................22
SECTION 307    APPEALS ...........................................................................................................22
**ARTICLE IV:        COMPLIANCE REVIEWS AND DIRECTED INVESTIGATIONS......................23**
SECTION 401    COMPLIANCE REVIEWS .......................................................................................23
SECTION 402    DIRECTED INVESTIGATIONS.................................................................................23
**ARTICLE V:        MONITORING RESOLUTION AGREEMENTS ...........................................23**
SECTION 501    RESPOND TO MONITORING REPORTS AND VERIFY RECIPIENT'S IMPLEMENTATION ..........23
SECTION 502    IMPLEMENTATION PROBLEMS ..............................................................................24
SECTION 503    MODIFICATIONS OF AGREEMENTS .........................................................................24
(a)            Changed Circumstances Affecting Agreements .............................................................24
(b)            New Compliance Issues ...........................................................................................24
(c)            Approval of Modifications.........................................................................................24
SECTION 504    CONCLUSION OF MONITORING .............................................................................24
**ARTICLE VI: INITIATION OF ENFORCEMENT ACTION .........................................................24**
SECTION 601    INITIATE ADMINISTRATIVE PROCEEDINGS WHERE APPROPRIATE .............................25
SECTION 602    REFER TO DOJ WHERE APPROPRIATE ...................................................................25
SECTION 603    ENFORCEMENT FOR DENIAL OF ACCESS FOR OCR ..................................................25
SECTION 604    ENFORCEMENT FOR FAILURE TO COMPLY WITH OCR AGREEMENT ...........................25
**ARTICLE VII: APPENDICES ..............................................................................................26**
SECTION 701    SPECIAL INTAKE PROCEDURES ............................................................................26
(a)            Age Discrimination Complaints .................................................................................26
(b)            Title VI Complaints against Proprietary Schools...........................................................27
(c)            Title VI and Title IX Employment Complaints (see 29 C.F.R. §§ 1691.1 – 1691.13 and 28 C.F.R. §§ 42.601 – 42.613) ...........27
(d)            Title II ADA Complaints (Other than Employment) (see 28 C.F.R. § 35.171(a)(2)(i)) ...........28

(e)            Title II ADA Complaints (Other than Employment) (see 28 C.F.R. § 35.171(a)(2)(i)) ........................................28
SECTION 702    DATA COLLECTION AND INFORMATION GATHERING ....................................................29
(a)            Generally............................................................................................................................................29
(b)            OCR's Authority to Obtain Information...........................................................................................30
(c)            Requests for Records.........................................................................................................................30
(d)            Interviews...........................................................................................................................................31
SECTION 703    FREEDOM OF INFORMATION ACT AND PRIVACY ACT ............................................32
SECTION 704    RECIPIENTS OPERATING UNDER FEDERAL COURT ORDER........................................33
(a)            United States a Party .........................................................................................................................33

ED2.000004

# ARTICLE I:   EVALUATION

Upon receipt of information, OCR will determine whether the information provided to OCR is subject to further processing pursuant to applicable statutes and regulations and OCR's CPM. As appropriate, OCR will provide complainants[1] with assistance regarding the nature of their rights and of the OCR investigation process. Also, as appropriate, OCR will provide assistance to complainants who are individuals with disabilities,[2] individuals of limited English proficiency, and individuals whose communication skills are otherwise limited. All written information provided to OCR should include the sender's contact information.[3] Written information may be filed online, as well as by mail, electronic mail, or fax.

## SECTION 101   PRIVACY ACT AND FREEDOM OF INFORMATION ACT

To investigate a complaint, OCR may collect and analyze personal information. The Privacy Act of 1974, as amended 5 U.S.C. § 552a (Privacy Act) and the Department's Privacy Act regulations at 34 C.F.R. Part 5b, Section 444 of the General Education Provisions Act (commonly referred to as the Family Educational Rights and Privacy Act (FERPA)), 20 U.S.C. § 1232g and FERPA's implementing regulations at 34 C.F.R. Part 99, and the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and FOIA's implementing regulations at 34 C.F.R. Part 5, may apply to the personal information collected by OCR and, where applicable, govern its disclosure. OCR does not reveal the name or other personal information about an individual unless: (1) such information is necessary for the completion of an investigation or in enforcement activities against an institution that violates the laws and regulations enforced by OCR; (2) such information is required to be disclosed by law; or (3) such information is permitted to be disclosed under the Privacy Act and FERPA, as applicable. Disclosure will only be made as consistent with the Privacy Act, FERPA, and FOIA.

Subject to the restrictions imposed by the Privacy Act, OCR may release certain information about a complaint to the press or general public, including the name of the school or institution; the date a complaint was filed; the type of discrimination included in a complaint; the date a complaint was resolved, dismissed or closed; the basic reasons for OCR's decision; or other related information. Under these circumstances, any information OCR releases to the press or general public will not include the complainant's name, the name of the person on whose behalf the complaint was filed, or personal information about the complainant or the person on whose behalf the complaint was filed, except as noted in the paragraph above. See CPM Section 703.

## SECTION 102   DETERMINE WHETHER THE INFORMATION PROVIDED IS SUBJECT TO FURTHER PROCESSING

OCR will determine whether the information provided to OCR is subject to further processing pursuant to OCR's CPM, as follows:

(a) Not all information that OCR receives is sufficient to constitute a complaint subject to further processing pursuant to OCR's CPM. The following are generally not subject to further processing, but this determination will be made on an individualized basis, as appropriate:

    i.   Anonymous correspondence with OCR;

    ii.  Courtesy copies of correspondence or documentation filed with or otherwise submitted to another person or entity;

    iii.  Inquiries that solely seek advice or information from OCR; or

---

[1] This manual uses the term "complainant" throughout. The term "complainant" refers to (a) the person who files a complaint; or (b) the person or group injured by the alleged discriminations on whose behalf a complainant files a complaint.

[2] See 34 C.F.R. Part 105.

[3] Contact information should include, for example, mailing address, phone number, or an electronic mail address.

    iv.  Allegations that are communicated to OCR only orally and not in writing.

(b)  OCR must have jurisdiction over the subject matter of the allegations. An allegation over which OCR lacks subject matter jurisdiction is not subject to further processing and will be dismissed pursuant to CPM Section 108.

For OCR to establish subject matter jurisdiction, the written information must allege, or OCR must be able to infer from the facts given, an allegation of: (1) discrimination based on race, color, national origin, sex, disability, or age, (2) discrimination in violation of the Boy Scouts of America Equal Access Act of 2001, or (3) retaliation for the purpose of interfering with any right or privilege secured by the civil rights laws and regulations enforced by OCR, or as a result of making a complaint, testifying, or participating in any manner in an OCR proceeding. *See* 34 C.F.R. §§ 100.7(e), 104.61, 106.71, 108.9, 110.34; and 28 C.F.R. § 35.134.

OCR has jurisdiction pursuant to the following statutory and regulatory authorities:

- **Title VI of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000d et seq., 34 C.F.R. Part 100.

  Under Title VI, OCR has jurisdiction to investigate complaints involving individuals who allege discrimination in a recipient's education program or activity, including applicants, students, and parents, as well as certain employment complaints, based on race, color, or national origin.[4] With respect to employment, OCR has jurisdiction if: (1) the alleged discrimination could adversely affect program beneficiaries on the basis of race, color, or national origin, or (2) a primary objective of the federal financial assistance is to provide employment. See CPM subsection 701(b) for processing Title VI complaints with respect to proprietary vocational schools. For employment complaints, OCR follows procedures consistent with the employment coordinating regulations at 28 C.F.R. Part 42 and 29 C.F.R. Part 1691. See CPM subsection 701(c).

- **Title IX of the Education Amendments of 1972**, as amended, 20 U.S.C. §§ 1681 et seq., 34 C.F.R. Part 106.

  Under Title IX, OCR has jurisdiction to investigate complaints involving individuals who allege discrimination in a recipient's education program or activity, including applicants, students, and parents, as well as employment complaints, based on sex. For employment complaints, OCR follows procedures consistent with the employment coordinating regulations at 28 C.F.R. Part 42 and 29 C.F.R. Part 1691. See CPM subsection 701(c).

- **Section 504 of the Rehabilitation Act of 1973**, as amended, 29 U.S.C. § 794, 34 C.F.R. Part 104.

  Under Section 504, OCR has jurisdiction to investigate complaints involving individuals who allege discrimination in a recipient's education program or activity, including applicants, students, and parents, as well as employment complaints based on disability. For employment

---

[4] This manual uses the term "recipient" throughout. With respect to Title VI, Title IX, Section 504 and the Age Discrimination Act, a recipient is an entity that receives federal financial assistance from the Department. With respect to the Boy Scouts of America Equal Access Act, a recipient is a public elementary or secondary school or local or State educational agency that receives funds made available through the Department. With respect to Title II, the term is intended to include public entities whether or not they receive federal financial assistance. Specifically, the Department of Justice has identified the Department of Education as the designated agency to carry out Title II compliance activities regarding public elementary and secondary education systems and institutions, public institutions of higher education and vocational education (other than schools of medicine, dentistry and nursing, and other health-related schools) and public libraries.

complaints, OCR follows procedures consistent with the employment coordination regulations at 28 C.F.R. Part 37 and 29 C.F.R. Part 1640. See CPM subsection 701(e).

- **Age Discrimination Act of 1975**, 42 U.S.C. §§ 6101 et seq., 34 C.F.R. Part 110.

  Under the Age Discrimination Act, OCR has jurisdiction to investigate complaints involving individuals who allege discrimination in a recipient's program or activity, including applicants, students, and parents. For instructions regarding referral of complaints to the Federal Mediation and Conciliation Service (FMCS) before investigation, see CPM subsection 701(a). OCR does not have jurisdiction over employment under the Age Discrimination Act. See CPM subsection 701(a).

- **Title II of the Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12131 et seq., 28 C.F.R. Part 35.

  Under Title II, OCR has jurisdiction to investigate complaints involving individuals alleging discrimination in a recipient's education program or activity, including applicants, students, and parents, as well as employment complaints based on disability. For employment complaints, OCR follows procedures consistent with the employment coordination regulations at 28 C.F.R. Part 37 and 29 C.F.R. Part 1640, which address coordinating disability employment complaints with the Department of Justice (DOJ) and the Equal Employment Opportunity Commission (EEOC). See CPM subsection 701(e).

- **Boy Scouts of America Equal Access Act of 2001**, 20 U.S.C. § 7905, 34 C.F.R. Part 108. Under the Boy Scouts Act, OCR has jurisdiction to investigate complaints involving the denial of equal access or a fair opportunity to meet to, or discrimination against, any group officially affiliated with the Boy Scouts of America or officially affiliated with any other youth group listed in Title 36 of the United States Code.

(c) OCR must have personal jurisdiction over the entity alleged to have discriminated. An allegation about an entity over which OCR lacks personal jurisdiction will not be processed further but will be dismissed pursuant to Section 108.

Under Title VI, Title IX, Section 504, and the Age Discrimination Act, OCR has personal jurisdiction over institutions that receive federal financial assistance from the Department and institutions for which OCR has been delegated authority from other federal agencies. Under Title II, OCR has personal jurisdiction over public elementary and secondary education systems and institutions, public institutions of higher education and vocational education (other than schools of medicine, dentistry and nursing, and other health-related schools), and public libraries – regardless of whether these institutions receive federal financial assistance. Under the Boy Scouts Act, OCR has personal jurisdiction over public elementary schools, public secondary schools, local educational agencies and State educational agencies that receive funds made available through the Department.

Where appropriate, OCR will refer the written information to the appropriate agency. See CPM Section 701.

(d) Generally, statistical data alone are not sufficient to warrant opening an investigation but, as part of an individualized determination with regard to the complaint at issue, can serve to support the opening of an investigation when presented in conjunction with other facts and circumstances.

When OCR determines that the written information provided to the Department is not subject to further processing pursuant to CPM Section 102, OCR will notify the sender in writing of its determination.

### SECTION 103    ASSIGN A CASE NUMBER AND ESTABLISH A FILE

Once OCR determines pursuant to CPM Section 102 that written information it has received is appropriate for further processing, the information is referred to as a complaint, and OCR will assign a case number to the complaint and establish a file. The case opening date for each complaint is the date on which OCR assigns a case number. The following guidelines will be applied in determining how many case numbers should be assigned:

- When OCR receives written information at or around the same time by the same complainant that raises identical allegations against the same recipient, OCR will assign one case number to the complaints.

- When OCR receives written information alleging discrimination against multiple recipients and OCR has determined, pursuant to CPM Section 102, that the written information is appropriate for further processing, OCR will assign a separate case number to each recipient named. If, during the course of the investigation, OCR determines that other recipients are involved in the alleged acts of discrimination, OCR will assign a separate case number for each such recipient.

- Written information from more than one person against the same recipient that contains different or distinct allegations will be assigned separate case numbers.

- Written information from one or more than one person that raises the same or a similar allegation based on the same operative facts against the same recipient may be assigned one case number when OCR makes this determination prior to the docketing.

- New allegations filed by the same person against the same recipient after OCR has begun to investigate the original complaint are reviewed on a case-by-case basis to determine whether to consolidate the allegations with the existing investigation and dismiss the subsequent complaint under CPM Section 108, or to proceed with a separate investigation of the new allegations.

### SECTION 104    ACKNOWLEDGE THE COMPLAINT

OCR will promptly acknowledge, in writing, the receipt of the complaint. OCR will also inform the complainant that the complaint will be evaluated to determine whether OCR will proceed to investigate the allegations and that further communications about complaint processing will be forthcoming. A Consent Form, a Complaint Form, and *OCR Complaint Processing Procedures* are available online at: https://www2.ed.gov/about/offices/list/ocr/docs/howto.html.

### SECTION 105    OBTAIN A CONSENT FORM

When it is necessary to disclose the identity of the complainant to the recipient and witnesses in order to resolve the complaint, OCR will require written consent before proceeding. The complainant will be informed that the complaint will be dismissed if written consent is necessary in order to resolve the complaint and is not received within 20 calendar days of the date that OCR requests the Consent Form from the complainant. The signed Consent Form may be submitted to OCR by mail, fax, electronic mail or in person. If OCR does not receive a signed written Consent Form, and it is necessary in order to resolve the complaint, the complaint will be dismissed and the complainant so informed in writing.

A complainant filing on behalf of or pertaining to another person is responsible for securing any necessary written consent from that individual, including when a parent files for a student over the age of 18 or one who

becomes 18 while the complaint is under investigation or in monitoring. Where the person is a minor (under the age of 18) or a legally incompetent adult, the Consent Form must be signed by that person's parent or legal guardian. Parental or legal guardian consent may not be required for persons under the age of 18 if they are emancipated under state law or in the context of Section 504, whose IDEA rights have transferred under 20 USC § 1415(m), and are therefore considered to have obtained majority. Proof of transfer for IDEA rights, emancipation, incompetence, and/or legal guardianship must be provided if requested by OCR.

## SECTION 106    DETERMINE WHETHER THE ALLEGATIONS ARE TIMELY

OCR will take action only with respect to those allegations (except allegations of age discrimination and allegations relating to breach of Facilitated Resolution Between the Parties agreements) that have been filed within 180 calendar days of the date of the alleged discrimination, unless the complainant is granted a waiver under CPM Section 107. With respect to allegations of age discrimination, OCR will take action with respect to those complaint allegations that have been filed within 180 calendar days of the date the complainant first had knowledge of the alleged discrimination. OCR may extend this time limit for age discrimination complaints for good cause shown. See CPM subsection 701(a). With respect to the timeliness requirements for allegations relating to the breach of Facilitated Resolution Between the Parties agreements, see CPM Section 205.

The filing date of a complaint, for the purpose of determining timeliness, is the following:

- The filing date of complaints submitted online or by electronic mail or fax is the date the complaint was received by OCR. The filing date of complaints submitted by mail is the date the complaint is postmarked.
- For Title II complaints referred from DOJ, the filing date is the date the complaint was received by DOJ.

Timely allegations may include those where OCR determines that the complainant has alleged a continuing violation and/or a pattern or practice of discrimination.

## SECTION 107    DETERMINE WHETHER A WAIVER SHOULD BE GRANTED

If a complaint allegation[5] is not filed in a timely manner (see CPM Section 106), where appropriate, OCR will notify the complainant of the opportunity to request a waiver.[6] OCR may grant a waiver of the 180 calendar day filing requirement for reasons such as:

(a) The complainant could not reasonably be expected to have known the act was discriminatory within the 180 calendar day period and the complaint allegation was filed within 60 calendar days after the complainant could have become aware of the alleged discrimination (note that a lack of previous awareness of OCR or the civil rights laws and regulations enforced by OCR is not a basis for a waiver).

(b) The complainant was unable to file a complaint because of incapacitating illness or other incapacitating circumstances during the 180 calendar day period that rendered the complainant physically or mentally incapable of filing a complaint or obtaining assistance so that a complaint could be filed on their behalf, the complainant provides to OCR documentation demonstrating such

---

[5] Although the manual refers to "complaints" and "complaint allegations," OCR makes a determination as to each allegation in a complaint. For example, in a single complaint, OCR may decide that it is appropriate to investigate one or more allegations while dismissing another allegation or other allegations. The complainant will be informed of OCR's decision with respect to each allegation.

[6] OCR's complaint form notifies the complainant of the opportunity to request a waiver of OCR's timeliness requirement.

lack of capacity, and the complaint allegation was filed within 60 calendar days after the incapacitation ended.

(c) The complainant filed a complaint alleging the same or similar allegation based on the same operative facts within the 180 calendar day period with another federal, state or local civil rights enforcement agency, or federal or state court, and filed a complaint with OCR within 60 calendar days after the other agency completed its processing of the complaint or, in the case of a court, after there had been no decision on the merits or settlement of the complaint allegations. Dismissal with prejudice is considered a decision on the merits.

(d) The complainant filed, within the 180 calendar day period, an internal grievance with the recipient, or a due process hearing, alleging the same discriminatory conduct that is the subject of the OCR complaint, and the complaint is filed no later than 60 calendar days after the internal grievance is concluded.

(e) Unique circumstances generated by OCR's actions adversely affected the complainant.

## SECTION 108    DISMISSAL OF ALLEGATIONS

Allegations can be dismissed during the evaluation stage of case processing or after the allegations have been opened for investigation.

As appropriate, in the evaluation stage, OCR will assist the complainant in understanding the information that OCR requires in order to proceed to the investigation of the complainant's allegations. This will include explaining OCR's investigation process and the rights of the complainant under the statutes and regulations enforced by OCR. OCR may also specifically identify the information necessary for OCR to proceed to investigation. OCR staff will provide assistance to complainants who are individuals with disabilities,[7] individuals of limited English proficiency, or persons whose communication skills are otherwise limited.

As a threshold issue and throughout the processing of the complaint, OCR addresses First Amendment and other Constitutional considerations. See CPM Section 109.

When an allegation is dismissed during the evaluation stage, OCR will issue a letter to the complainant explaining the reason for the decision.[8] When a complaint allegation is dismissed after the complaint allegation has been opened for investigation, OCR will issue a letter to the complainant and the recipient explaining the reason for the decision. Complainants may elect to refile complaints that were dismissed pursuant to CPM Sections 108(a), (b), (c), (e), (q), (r), or (s) if they have addressed the deficiencies stated by OCR in the dismissal; such refiled complaints will not be dismissed pursuant to CPM Section 108(m).

Where OCR has approved issuance of a final determination under CPM Section 303 with regard to any allegations, OCR will not dismiss the allegations, but will proceed in accordance with CPM Section 303.

OCR will dismiss an allegation, or, if appropriate, the complaint[7] in its entirety, when:

(a) The allegation, on its face or as clarified, fails to state a violation of one of the laws or regulations OCR enforces.

---

[7] See 34 C.F.R. Part 105.
[8] In circumstances where the complaint contains an allegation of age discrimination and therefore has been referred to the Federal Mediation and Conciliation Service, OCR will also notify the recipient of the dismissal.

(b) The allegation, on its face or as clarified, lacks sufficient factual detail (e.g., who, what, where, when, how), or is so speculative, conclusory[9] or incoherent that OCR cannot infer that discrimination or retaliation may have occurred or may be occurring.

Before dismissing an allegation under CPM subsection 108(b), OCR will contact the complainant either by telephone or in writing (by letter or via electronic mail) to: (i) explain the information necessary for OCR to open an investigation of the allegation; (ii) request that the information be received within 14 calendar days of the date of the telephone contact, letter, or electronic mail; and (iii) advise the complainant that the allegation will be dismissed if the information is not received by that date. OCR will dismiss the allegation if the requested information is not received within 14 calendar days of the date of the telephonic or written request, unless the complainant has requested additional time to provide the information.

(c) Based on all of the facts/information provided by the complainant or publicly available information, OCR cannot reasonably conclude that the recipient has violated a law OCR enforces.

(d) The allegation is not timely filed with OCR pursuant to CPM Section 106 and a waiver was not requested or was requested but not granted pursuant to CPM Section 107.

(e) OCR determines that a signed Consent Form is required to proceed with an investigation, and the Consent Form has not been provided.

(f) OCR determines that it lacks jurisdiction over the subject matter of the allegation.

(g) OCR determines that it lacks personal jurisdiction over the entity alleged to have discriminated. When appropriate, OCR will refer the complaint to the appropriate agency. See CPM Section 701.

(h) OCR transfers or refers the complaint to another agency for investigation. See CPM Section 701.

(i) The same or a similar allegation based on the same operative facts has been filed either by the complainant or someone other than the complainant against the same recipient with another federal, state, or local civil rights enforcement agency[9] or through a recipient's internal grievance procedures, including due process proceedings, and

   1. OCR anticipates that all allegations will be investigated and that there will be a comparable resolution process pursuant to legal standards that are acceptable to OCR. OCR will advise the complainant that she or he may re-file with OCR within 60 calendar days of the completion of the other entity's action. Generally, OCR will not conduct its own investigation. Instead, OCR reviews the results of the other entity's determination and decides whether the other entity provided a comparable resolution process pursuant to legal standards that are acceptable to OCR;

      or

   2. OCR determines that all allegations were investigated and there was a comparable resolution process pursuant to legal standards that are acceptable to OCR.

(j) The same or a similar allegation based on the same operative facts has been filed either by the complainant or someone other than the complainant against the same recipient with a state or federal court. OCR will advise the complainant that she or he may re-file the complaint with OCR within 60 calendar days following the termination of the court proceeding if there has been no decision on the

---

[9] This provision applies where the complaint allegation (including any additional information provided by the complainant) does not provide sufficient information to raise the allegation above the level of speculation. The complaint must provide more than bare conclusions of alleged violations of the laws and regulations enforced by OCR.

merits or settlement of the complaint allegations. A dismissal with prejudice is considered a decision on the merits.

(k) OCR obtains credible information indicating that the allegations raised by the complainant are currently resolved.

(l) A class action with the same or a similar allegation with the same operative facts has been filed against the same recipient with a state or federal court. OCR will advise the complainant that she or he may re-file with OCR within 60 calendar days following the termination of the court proceeding if there has been no decision on the merits or settlement of the state or federal complaint. A dismissal with prejudice is considered a decision on the merits.

(m) The complaint filed by the complainant or someone other than the complainant against the same recipient raises the same or similar allegations based on the same operative facts that were previously dismissed or closed by OCR.

(n) OCR has recently investigated or is currently investigating the same or similar allegations based on the same operative facts involving the same recipient in a compliance review, directed investigation or OCR complaint.

(o) The complainant withdraws the allegation or complaint.

(p) The death of the complainant makes it impossible to investigate the allegations fully.

(q) OCR determines that its ability to complete its evaluation of the complaint or an investigation is substantially impaired by the complainant's refusal to provide information that is reasonably accessible to the complainant and is necessary for the investigation of the complaint. OCR will include documentation in the case file of its efforts to contact the complainant to request the necessary information and of the complainant's refusal to provide information.

(r) OCR determines that its ability to complete its evaluation of the complaint or an investigation is substantially impaired by its inability to contact the complainant in order to obtain information that is necessary for investigation of the complaint. OCR will include documentation in the case file of its unsuccessful efforts to contact the complainant to request the necessary information.

(s) OCR determines that the complaint is moot or unripe.

## SECTION 109    FIRST AMENDMENT PRINCIPLES

Although OCR does not have jurisdiction to enforce the First Amendment to the U.S. Constitution, as a threshold issue and throughout the processing of the complaint, OCR interprets its statutes and regulations consistent with the requirements of the First Amendment, and all actions taken by OCR must comport with First Amendment principles. OCR will not interpret any statute or regulation to require impinging upon rights protected under the First Amendment or to require recipients to encroach upon the exercise of such rights.

## SECTION 110    RAPID RESOLUTION PROCESS

The Rapid Resolution Process (RRP) is an expedited case processing approach that can be used to resolve cases in any of OCR's statutory areas either during the evaluation stage or after issuance of the letter of notification informing the complainant that OCR is opening an investigation. The outcomes in all RRP cases must meet OCR's standards for legal sufficiency and be consistent with applicable statutory and regulatory

authority. Any resolution agreement reached through RRP must be aligned with the allegations in the complaint deemed appropriate for resolution pursuant to RRP. See CPM Article III.

Once OCR has determined that the complaint is appropriate for RRP, OCR will promptly attempt to resolve the complaint and obtain information necessary to make a compliance determination. OCR will contact the recipient to determine if the recipient is interested in immediately resolving or has taken action to resolve the complaint allegations. Where such interest is expressed, RRP may be used to resolve complaints under the following circumstances:

(a) Where a recipient has already taken action that will resolve the complaint allegations, the complaint may be resolved without an agreement where compliance is verified and does not require monitoring by OCR. Under this circumstance, OCR will issue a dismissal letter pursuant to CPM subsection 108(k).

(b) Where a recipient has indicated that it is willing to take action in the future to resolve the complaint allegations, or the recipient has already taken action that requires monitoring, upon the recipient's request and OCR's agreement, the complaint may be resolved pursuant to CPM Section 302. Per CPM Section 302(b), the recipient will sign a resolution agreement, the implementation of which OCR will monitor. See CPM Section 304. Under this circumstance, OCR will issue a resolution letter pursuant to CPM subsection 302(c).

(c) Where OCR obtains sufficient information from the recipient to make a compliance determination pursuant to CPM Section 303, OCR will issue a letter of finding pursuant to CPM subsection 303(a) or OCR will issue a letter of finding and obtain a resolution agreement pursuant to CPM subsection 303(b), the implementation of which OCR will monitor.

For cases in RRP, OCR must ensure expeditious completion in accordance with the applicable statutes, regulations, and case processing procedures

### SECTION 111   OPENING THE COMPLAINT ALLEGATIONS FOR INVESTIGATION

When OCR opens a complaint for investigation, it will issue letters of notification to the complainant and the recipient that contain the following information:

- OCR's jurisdiction, with applicable statutory and regulatory citations;
- The allegations to be investigated;[10]
- A statement that OCR is a neutral fact-finder and citing the CPM;
- Information about OCR's Facilitated Resolution Between the Parties process, if appropriate;
- A statement that the complainant may have a right to file a private suit in federal court whether or not OCR finds a violation; and
- Contact information for the OCR staff person who will serve as the complainant's and the recipient's primary contact during the investigation and resolution of the complaint.

A copy of "*OCR Case Processing Procedures*" will be included with the letter to the recipient. A copy of the complaint will be provided to the recipient.

---

[10] Complainants sometimes raise multiple or overlapping allegations that result in OCR investigating one or more issues. Use of the term "allegations" should be read to encompass the term "issues," as appropriate.

# ARTICLE II:  FACILITATED RESOLUTION BETWEEN THE PARTIES

## SECTION 201    ROLES

The Facilitated Resolution Between the Parties (FRBP) process facilitates the resolution of complaints by providing an opportunity for the parties involved to voluntarily resolve the complaint allegations. When OCR determines, on an individualized basis with regard to the complaint at issue, that a complaint is appropriate for FRBP, it shall contact the parties to offer this resolution option.

**(a)  OCR's Role**

- To serve as an impartial, confidential facilitator between the parties;
- To inform the parties of FRBP procedures;
- To establish a constructive tone, and encourage the parties to work expeditiously and in good faith toward a mutually acceptable resolution;
- To review the allegations with the parties and assist both parties in understanding the pertinent legal standards and possible remedies;
- To facilitate a discussion between the parties regarding possible actions that the parties may consider in working toward a resolution; and
- To offer assistance, as appropriate, with regard to reducing any resolution to writing. When an agreement is reached, the parties will be informed that OCR will issue a closure letter reflecting the resolution of the complaint by agreement of the parties.

**(b)  Role of the Participants**

- Participate in the discussions in good faith;
- Consider offers or suggestions with an open mind and work constructively toward a mutually acceptable resolution; and
- Implement any agreement in good faith.

OCR does not sign, approve, endorse, or monitor any agreement reached between the parties.

## SECTION 202    INITIATION AND TERMINATION OF THE FRBP PROCESS

If OCR determines that FRBP is appropriate and the complainant and the recipient are willing to proceed with this resolution option, OCR will designate staff to facilitate an agreement between the recipient and complainant. Staff assigned to conduct FRBP of a complaint shall not be staff assigned to the investigation of that complaint.

An Agreement to Participate in FRBP must be reviewed and signed, verbally agreed to, or agreed to by electronic mail by the complainant and recipient. In circumstances where verbal agreement is obtained, the FRBP facilitator shall send a confirmatory letter or electronic mail to the parties.

If a case has been opened for investigation, OCR has the discretion to suspend its investigation for up to 30 calendar days to facilitate an agreement between the parties. If an agreement is not reached, OCR will resume its investigation.

## SECTION 203    CONFIDENTIALITY OF THE FRBP PROCESS

A Confidentiality Agreement must be reviewed and signed, verbally agreed to, or agreed to by electronic mail by the FRBP facilitator and the parties to the FRBP (the complainant or complainant's representative and the

recipient or recipient's representative). In circumstances where verbal agreement is obtained, the FRBP facilitator shall send a confirmatory letter or electronic mail to the parties.

In order to maintain the integrity of the FRBP process apart from OCR's investigation, any notes taken during FRBP by the facilitator and/or any records or other documents offered by either party to the facilitator during FRBP will be kept in a separate file and will not be shared with the staff members assigned to investigate the complaint.

### SECTION 204     SUCCESSFUL CONCLUSION OF THE FRBP PROCESS

At the conclusion of a successful FRBP, OCR will obtain a copy of either: (1) a statement signed by the complainant that the allegations have been resolved; or (2) a copy of the agreement that was signed by the parties. After a successful FRBP, OCR will send the parties closure letters that specify the allegations that have been resolved, and that other outstanding allegations, if any, will be resolved through the investigation and resolution process. See CPM Article III. A copy of the signed statement from the complainant or the agreement between the parties will be attached to the closure letter.

### SECTION 205     BREACH OF FRBP AGREEMENTS

OCR will not monitor or enforce the agreement, but will inform the parties that if a breach occurs, the complainant has the right to file a new complaint; such new complaint is not subject to dismissal pursuant to CPM section 108(m). If a new complaint is filed, OCR will not address the alleged breach of the agreement. To be considered timely, the new complaint must be filed either within 180 calendar days of the date of the original allegations of discrimination, or within 60 calendar days of the date that the complainant obtains notice that a breach occurred, whichever date is later.

### SECTION 206     INVESTIGATIVE DETERMINATION WHEN FRBP IS NOT ACHIEVED

OCR will ensure that there will be adequate time for completion of the investigation if FRBP is unsuccessful. Where FRBP is unsuccessful, an investigation will proceed in accordance with applicable law and OCR's case processing procedures.

## ARTICLE III:   CASE PLANNING, INVESTIGATION AND RESOLUTION

OCR will ensure that the actions it takes in investigations are legally sufficient, supported by evidence, and dispositive of the allegations. OCR can resolve allegations at any point during the course of the investigation, if appropriate. OCR resolution agreements will be drafted to ensure compliance with the civil rights laws and regulations enforced by OCR.

When, during the course of the investigation of a complaint, OCR identifies compliance concerns and/or violations involving issues that were not raised in the complaint, OCR will address any compliance concerns and/or identified violations in the resolution letter or letter of findings and the resolution agreement, or, depending on the nature of the compliance concerns, provide technical assistance or consider the compliance concerns for a possible compliance review or directed investigation. See CPM Sections 401 and 402.

### SECTION 301     CASE PLANNING

Case planning will begin as early as possible, will be thorough, and will be conducted throughout the processing of every case to ensure high quality decisions, prompt investigations and the efficient use of OCR resources. Planning decisions will reflect sound legal standards and will be adjusted as necessary to take into

ED2.000015

account information obtained during case processing. See CPM Section 702. The scope of OCR's investigation and resolution activities is governed by applicable statutes and regulations.

OCR regional office management and investigative staff are accountable for effective planning and will participate in critical planning decisions commensurate with the nature and complexity of the case to ensure consistent high-quality casework.

The following essential elements of case planning will be addressed in every OCR file (unless inapplicable):

- The allegations;
- OCR's jurisdiction over the subject matter and entity;
- The legal standards, regulatory authority and elements of proof;
- Ensuring that OCR's actions comport with First Amendment principles;
- The scope of the investigation;
- Investigative methods (i.e., what data and/or information are necessary to resolve the case and the means and methods OCR will employ to obtain the relevant data and/or information); and
- The resolution strategy.

The case file will contain documentation that supports the decisions made. Planning documentation should be organized so that it can be readily located in the case file. Case planning should be documented in the Case Planning Document.

These planning activities will ensure accountability for high quality and consistency with OCR standards, and will address:

- Required actions to investigate compliance;
- Dates for completion of specific actions;
- Description of evidence required; and
- All settlement activities.

## SECTION 302    RESOLUTION AGREEMENT REACHED DURING AN INVESTIGATION

Allegations under investigation may be resolved at any time when, prior to the point when OCR issues a draft letter of findings under CPM Section 303(b), the recipient expresses an interest in resolving the allegations *and* OCR determines that it is appropriate to resolve them because OCR's investigation has identified concerns that can be addressed through a resolution agreement. The provisions of the resolution agreement must be tied to the allegations, and the evidence obtained during the investigation and will be consistent with applicable regulations.

OCR will inform the recipient that this resolution process is voluntary before proceeding to resolution pursuant to this section. When OCR determines that it is appropriate to resolve the allegations pursuant to CPM Section 302, OCR will notify the complainant of the recipient's interest in resolution.

### (a)  Statement of the Case

For cases with allegations proposed for resolution under CPM Section 302, OCR will prepare a Statement of the Case. The Statement of the Case sets forth:

- A statement of OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- An explanation of the pertinent legal standards;
- The allegations investigated;

- Relevant background information; and
- A summary of the investigation and the evidence, and the identified concerns that support the need for the provisions of the agreement.

The Statement of the Case must address all of the allegations proposed for resolution under CPM Section 302.

**(b) Timeframes and Procedures for Negotiations**

From the date that the proposed resolution agreement is shared with the recipient, OCR and the recipient will have a period of up to 30 calendar days within which to reach final agreement.

During the negotiations period (which may be less than 30 calendar days, at the discretion of OCR), OCR may suspend its investigation of the case. Where a final agreement is not reached by the 30th calendar day, OCR will resume its investigation thereafter. However, negotiations may continue while the investigation resumes. This 30 calendar day period for suspension of the investigation in order to conduct negotiations cannot be restarted.

**(c) Resolution Letters**

The resolution letter will address all allegations in the case resolved pursuant to CPM Section 302. The letter must include, at a minimum:

- A statement of OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- A statement of the allegations investigated and a summary of the evidence obtained to date;
- A statement that, when fully implemented, the resolution agreement will address all of the allegations investigated and that OCR will monitor the implementation of the agreement (see CPM Section 304 and CPM Article V); and
- The following statement: "The complainant may have a right to file a private suit in federal court whether or not OCR finds a violation." For service complaints under the Age Discrimination Act, the complainants may file in federal court only after they have exhausted administrative remedies. See CPM subsection 701(a).

OCR will issue a draft resolution letter and a proposed resolution agreement to the recipient. The recipient shall have five calendar days from the date of the issuance of the draft resolution letter to inform OCR of any factual errors contained therein.

If, after due consideration of the recipient's concerns, OCR determines that the draft resolution letter contains factual errors, it will correct the errors, make any other revisions it deems appropriate, and promptly issue a revised final resolution letter. In addition, where appropriate, OCR will modify the proposed resolution agreement to reflect any corrections.

If the recipient does not inform OCR of factual errors within five calendar days from the date of the issuance of the draft resolution letter, OCR will issue a final resolution letter in due course.

Once the recipient signs the resolution agreement, OCR will monitor its implementation until the recipient has fulfilled the terms and obligations of the resolution agreement. Upon completion of the terms and obligations under the agreement, OCR will close the case. See CPM Article V.

## SECTION 303    INVESTIGATIVE DETERMINATIONS

At the conclusion of an investigation, OCR will determine, using a preponderance of the evidence standard, whether:

- There is insufficient evidence to support a conclusion of noncompliance, or
- The evidence supports a conclusion of noncompliance.

**(a) Insufficient Evidence Determination**

When OCR determines that the preponderance of the evidence does not support a conclusion that the recipient failed to comply with applicable statutes and regulations, OCR will issue a letter of findings to the parties explaining the reasons for its decision. See CPM subsection 303(e).

**(b) Non-Compliance Determination**

When OCR determines that the preponderance of the evidence supports a conclusion that the recipient failed to comply with applicable statutes and regulations, OCR will issue a draft letter of findings and a proposed resolution agreement to the recipient. See CPM subsection 303(e) and Section 304.

The recipient shall have five calendar days from the date of the issuance of the draft letter of findings to inform OCR of any factual errors contained therein.

If, after due consideration of the recipient's concerns, OCR determines that the draft letter of findings contains factual errors, it will correct the errors, make any other revisions it deems appropriate, and promptly issue a revised final letter of findings. In addition, where appropriate, OCR will modify the proposed resolution agreement to reflect any corrections.

If the recipient does not inform OCR of factual errors within five calendar days from the date of the issuance of the draft letter of findings, OCR will issue a final letter of findings in due course.

When OCR determines that it will resolve the allegations pursuant to CPM subsection 303(b) and initiates negotiation of the resolution agreement with the recipient, OCR will notify the complainant that OCR has initiated negotiation of the resolution agreement pursuant to this subsection.

**(c) Mixed Determination**

A "mixed determination" is appropriate for complaints with multiple allegations, where the allegations will be resolved in different ways (e.g., the investigation has found a violation with regard to some allegations and insufficient evidence with regard to other allegations; the investigation has found a violation with regard to some allegations and there are other allegations that are appropriate to resolve prior to the conclusion of the investigation pursuant to CPM Section 302; or OCR has found insufficient evidence with regard to some allegations and determined that other allegations are appropriate to resolve prior to the conclusion of the investigation pursuant to CPM Section 302). In a "mixed determination" case, where OCR is making a determination pursuant to subsection 303(b), OCR will negotiate a resolution agreement and issue a letter of findings. See CPM subsections 303(e) and 304. In a "mixed determination" case where OCR is not making a determination pursuant to 303(b), but is resolving allegations pursuant to Section 302, OCR will issue a resolution letter pursuant to Section 302(c).

**(d)  Statement of the Case**

OCR will prepare a Statement of the Case for investigative determinations under CPM Section 303. The Statement of the Case sets forth:

- The allegations raised in the complaint;
- A statement of OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- An explanation of the pertinent legal standards;
- Relevant background information;
- A statement of each allegation investigated and the findings of fact for each, including analysis of the evidence on which the findings are based; and
- Conclusions for each allegation that reference the relevant facts, the applicable regulations, and the appropriate legal standards.

**(e)  Letter of Findings**

For insufficient evidence determinations, OCR will issue a letter of findings that explains the reasons for OCR's decision to both the recipient and the complainant.[11] For non-compliance and mixed determinations that include a non-compliance determination, OCR will issue a letter of findings explaining the reasons for its decision to the recipient after engaging in the process set forth in Section 303(b).

Letters of findings will address all allegations opened for investigation. The letter includes, as appropriate:

- A statement of the allegations opened for investigation;
- A statement of OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- A statement of the findings of fact for each allegation investigated, supported by any necessary explanation and/or analysis of the evidence on which the findings are based;
- Conclusions for each allegation that reference the relevant facts, the applicable regulations and the appropriate legal standards; and
- A statement that: "The complainant may have a right to file a private suit in federal court whether or not OCR finds a violation." For service complaints under the Age Discrimination Act, the complainant may file in federal court only after they have exhausted administrative remedies. See CPM subsection 701(a).

**(f)  Timeframes and Procedures for Negotiations**

From the date that the proposed resolution agreement is shared with the recipient, OCR and the recipient will have a period of up to 90 calendar days within which to reach final agreement.

**(g)  Negotiation Impasse**

OCR may end the 90-calendar day negotiations period if no agreement has been reached by the 90th day. OCR may end the negotiations period at any time prior to the expiration of the 90 calendar day period when it is clear that agreement will not be reached (e.g., the recipient has refused to discuss any resolution; the recipient has indicated a refusal to agree to a key resolution term; the recipient has not responded to a proposed resolution agreement and at least 30 calendar days have passed). At such

---

[11] For recipients operating under federal court order, see CPM Section 704.

time, OCR shall issue an Impasse Letter that informs the recipient that OCR will issue a Letter of Impending Enforcement Action in 10 calendar days if a resolution agreement is not reached within that 10-day period. The letter will include a description of OCR's unsuccessful attempts to resolve the complaint. If the recipient does not enter into a resolution agreement within 10 calendar days of the date of the issuance of the Impasse Letter, OCR must follow the procedures in CPM Section 305 for the issuance of a Letter of Impending Enforcement Action regarding its non-compliance determinations.

In the case of a mixed determination, when the negotiations included allegations that were appropriate to resolve prior to the conclusion of the investigation pursuant to CPM Section 302 and allegations for which OCR made determinations of non-compliance, OCR shall issue an Impasse Letter of Impending Enforcement Action. If the recipient does not enter into a resolution agreement within 10 calendar days of the date of the issuance of the Impasse Letter, OCR must follow the procedures in CPM Section 305 for the issuance of a Letter of Impending Enforcement Action regarding its non-compliance determinations.

**(h)  Negotiations Progressing at the End of the 90 Calendar Day Period**

If OCR and the recipient negotiate for 90 calendar days and fail to reach final agreement by the 90th day, but negotiations are progressing, OCR shall inform the recipient that OCR will issue a Letter of Impending Enforcement Action in 30 calendar days if a resolution is not reached within that 30-day period. Negotiations will be considered progressing if the recipient has agreed in principle to the terms and obligations of the agreement, but needs a short period of time within which, for example, to obtain approval of the agreement (e.g., by a board of education or president of a college) and/or the appropriate signature on the agreement; or where the recipient has agreed to most of the terms and obligations of the agreement but requests a short period of additional time to negotiate other terms and obligations. If the recipient does not enter into a resolution agreement within 30 calendar days, OCR will issue a Letter of Impending Enforcement Action regarding its non-compliance determinations pursuant to CPM Section 305.

In the case of a mixed determination, when the negotiations included allegations that were appropriate to resolve prior to the conclusion of the investigation pursuant to CPM Section 302, and allegations for which OCR made determinations of non-compliance, OCR shall inform the recipient that OCR will issue a Letter of Impending Enforcement Action in 30 calendar days if a resolution is not reached within that 30-day period. If the recipient does not enter into a resolution agreement within 30 calendar days, OCR will issue a Letter of Impending Enforcement Action regarding non-compliance determinations pursuant to CPM Section 305.

## SECTION 304    CONTENTS OF RESOLUTION AGREEMENTS

The complaint will be considered resolved and the recipient deemed compliant when the recipient, after negotiating with OCR and reaching agreement on its terms and obligations, enters into and fulfills them.

Resolution Agreements:

- Must be signed by a person with authority to bind the recipient; and
- Must include, in the agreement itself or through an exchange of letters or other written communications:
  - Specific acts or steps the recipient will take to resolve compliance concerns and/or violations;
  - Dates for implementing each act or step;
  - Dates for the submission of reports and documentation;

- o  Where appropriate, language requiring submission of documents and/or other information or actions for OCR's review and approval, and timeframes for their submission;
- o  Timeframes requiring the recipient to implement what OCR has approved, and language requiring documentation verifying implementation; and
- o  The following statements of principle:
    - • The recipient understands that by signing the resolution agreement, it agrees to provide data and other information in a timely manner in accordance with the reporting requirements of the resolution agreement. Further, the recipient understands that during the monitoring of the resolution agreement, if necessary, OCR may visit the recipient, interview staff and students, and request such additional reports or data as are necessary for OCR to determine whether the recipient has fulfilled the terms and obligations of the resolution agreement;
    - • Upon the recipient's satisfaction of the terms and obligations of the resolution agreement, OCR will close the case; and
    - • The recipient understands and acknowledges that OCR may initiate proceedings to enforce the specific terms and obligations of the resolution agreement and/or the applicable statutes and regulations. Before initiating such proceedings, OCR will give the recipient written notice of the alleged breach and 60 calendar days to cure the alleged breach.

## SECTION 305    LETTER OF IMPENDING ENFORCEMENT ACTION

When, following the expiration of the 10 calendar day period referenced in CPM subsection 303(g) or the 30 calendar day period referenced in CPM subsection 303(h), the recipient does not enter into a resolution agreement to resolve the identified areas of non-compliance, OCR will prepare a Letter of Impending Enforcement Action, which will include the following:

- • A statement of the allegations opened for investigation;
- • A statement of OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- • A statement of the findings of fact for each allegation investigated supported by any necessary explanation or analysis of the evidence on which the findings are based;
- • Conclusions for each allegation that reference the relevant facts, the applicable regulations, and the appropriate legal standards;
- • Notice that the Letter of Impending Enforcement Action is not intended and should not be construed to cover any other issue regarding the recipient's compliance;
- • Notice of the time limit on OCR's resolution process and the consequence of failure to reach agreement;
- • A description of OCR's unsuccessful attempts to resolve the case;
- • When a decision is made to defer final approval of any applications by the recipient for additional federal financial assistance or, with respect to the Boy Scouts Act, additional funds made available through the Department over what the recipient is presently receiving, the letter also will provide notice of such possible deferral. A separate deferral letter will be prepared; and
- • Title II letters will include the following language: "The complainant may have a right to file a private suit pursuant to Section 203 of the Americans with Disabilities Act, whether or not OCR finds a violation of Title II."

To resolve the case after issuance of the Letter of Impending Enforcement Action, any resolution agreement that the recipient proposes must be approved by OCR.

**SECTION 306    REFERRALS FROM THE DEPARTMENT OF JUSTICE AND THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

When a Title II complaint is referred to OCR by DOJ, OCR will send a copy of the letter resolving the case to DOJ, if requested by DOJ. When a Title II/504 employment discrimination complaint has been dual-filed with the Equal Employment Opportunity Commission (EEOC) and OCR, or when a complaint has been referred to OCR by EEOC, OCR will notify EEOC once the complaint has been resolved. See 28 C.F.R. Part 37 and 29 C.F.R. Part 1640.

**SECTION 307    APPEALS**

OCR affords an opportunity to complainants to appeal determinations based on CPM Section 303(a) and dismissals based on CPM subsection 108(a), (b), (c), (d), (i), or (j). Information about the appeal process is provided to complainants in *OCR Complaint Processing Procedures*, which is enclosed with OCR's letter acknowledging receipt of the complaint. Information is also published at http://www.ed.gov/about/offices/list/ocr/complaints-how.html.

OCR will provide notice of the right to appeal in letters setting forth determinations based on CPM Section 303(a) and dismissals based on CPM subsection 108(a), (b), (c), (d), (i), or (j).

An appeal can be filed electronically, by mail, or fax. The complainant must submit a completed online appeal form or written statement of no more than 10 pages (double-spaced, if typed). If submitted by mail, send to the Office for Civil Rights, U.S. Department of Education, 400 Maryland Avenue SW, Washington, D.C. 20202. If submitted via electronic mail, send to OCR@ed.gov. If submitted via fax, send to 202-453-6012. The filing date of an appeal is the date the appeal is postmarked, submitted electronically, or submitted via fax.

In the appeal, the complainant must explain why she or he believes the factual information was incomplete or incorrect, the legal analysis was incorrect or the appropriate legal standard was not applied, and how the correction of any errors would change the outcome of the case. Failure to provide this information may result in denial of the appeal.

OCR reviews appeals to determine whether there is a clear error of fact and/or an error in the legal conclusion that changes the outcome of the determination.

All information to support the appeal must be submitted in writing at the time the complainant files the appeal. The complainant may not submit new evidence for consideration on appeal. Instead, if a complainant has new evidence, the complainant should file a new complaint. (Note that complaints must be filed within 180 calendar days of the last act of alleged discrimination or retaliation in order to be considered timely filed with OCR. A waiver of this 180-day timeframe may be requested. See CPM Section 307.)

An appeal must be submitted within 60 calendar days of the date indicated on the letter of finding or the dismissal. A waiver of this 60-day timeframe may be granted where:

(a) The complainant was unable to submit the appeal within the 60-day timeframe because of incapacitating illness or other incapacitating circumstances during the 60-day timeframe, and the appeal was submitted within 30 calendar days after the period of incapacitation ended; or

(b) Unique circumstances generated by OCR's actions have adversely affected the complainant's ability to submit a timely appeal.

A request for a waiver may be submitted with the appeal, if the appeal is submitted beyond the 60 calendar day timeline. A request for a waiver can also be filed prior to the expiration of this 60-day timeframe, by electronic mail, fax, or mail. The waiver will be considered by the office reviewing and responding to the appeal.

For appeals of determinations under Section 303(a), OCR will forward a copy of the complainant's online appeal form or written statement to the recipient. The recipient has the option to submit to OCR a response to the complainant's appeal. Any response to the complainant's appeal must be submitted to OCR within 14 calendar days of the date that OCR forwarded a copy of the complainant's appeal to the recipient.

OCR will issue a written decision on the appeal to the complainant for appeals of determinations under Section 108 and to both parties for appeals of determinations under Section 303(a).

## ARTICLE IV:  COMPLIANCE REVIEWS AND DIRECTED INVESTIGATIONS

The investigation and resolution options and procedures identified in the CPM will be utilized for compliance reviews and directed investigations, as appropriate. See CPM Articles III, V, and VI. The initiation date for the compliance review or directed investigation is the date of the letter notifying the recipient of the compliance review or directed investigation.

### SECTION 401    COMPLIANCE REVIEWS

In addition to the regulations implementing Title VI that govern OCR's investigations, the regulations require OCR to, "from time to time," initiate "periodic compliance reviews" to assess the practices of recipients to determine whether they comply with the Title VI regulations. See 34 C.F.R. § 100.7(a). This regulatory provision is incorporated by reference in the regulations implementing other statutes enforced by OCR. See Title IX (34 C.F.R. § 106.71), Section 504 (34 C.F.R. § 104.61), the Boy Scouts Act (34 C.F.R. § 108.9); the Age Discrimination Act, (34 C.F.R. § 110.30; and Title II (28 C.F.R. § 35.172).

The compliance review regulations afford OCR broad discretion to determine the substantive issues for investigation and the number and frequency of the investigations.

### SECTION 402    DIRECTED INVESTIGATIONS

In appropriate circumstances, OCR may conduct a directed investigation when information indicates a possible failure to comply with the laws and regulations enforced by OCR; the matter warrants attention; and the compliance concern is not otherwise being addressed through OCR's complaint, compliance review, or technical assistance activities. See Title VI, 34 C.F.R. § 100.7(c). This regulatory provision is incorporated by reference in the regulations implementing the other statutes enforced by OCR. See Title IX (34 C.F.R. § 106.71), Section 504 (34 C.F.R. § 104.61), the Boy Scouts Act (34 C.F.R. § 108.9); the Age Discrimination Act (34 C.F.R. § 110.30), and Title II (28 C.F.R. § 35.172).

## ARTICLE V:  MONITORING RESOLUTION AGREEMENTS

### SECTION 501    RESPONDING TO MONITORING REPORTS AND VERIFYING RECIPIENT'S IMPLEMENTATION

OCR will promptly acknowledge its receipt of interim and final monitoring reports. OCR will evaluate each report and issue an appropriate response (i.e., where OCR determines actions taken are sufficient or insufficient under the agreement). OCR must obtain sufficient information to determine whether the recipient complied with the terms and obligations of the resolution agreement. Depending on the nature of the agreement, verification of remedial actions may be accomplished by, for example, the review of reports,

documentation and other information submitted by recipients and knowledgeable persons; interviews of the recipients and knowledgeable persons; or site visits.

### SECTION 502    IMPLEMENTATION PROBLEMS

OCR will promptly provide written notice to the recipient of any deficiencies with respect to implementation of the terms and obligations of the agreement and will request appropriate action to address such deficiencies. When OCR has determined that a recipient has failed to comply with the agreement or any of the terms and obligations thereof for reasons that do not justify the modification of the agreement pursuant to CPM subsection 503(a), OCR will take prompt action to enforce the agreement pursuant to CPM Section 305 and CPM Article VI.

### SECTION 503    MODIFICATION OF AGREEMENTS

**(a)  Changed Circumstances Affecting Agreements**

OCR may agree to modify (including with respect to deadlines for submitting a report or completing a required action) or terminate a resolution agreement when it learns that circumstances have arisen that substantially change, fully resolve, or render moot some or all of the compliance concerns that were addressed by the resolution agreement. OCR may also modify the agreement in response to changes in controlling case law, statutes, and regulations.

**(b)  New Compliance Issues**

OCR may address new compliance issues identified for the first time during monitoring by providing technical assistance or considering the issues for a possible compliance review or directed investigation. See CPM Sections 401 and 402.

**(c)  Approval of Modifications**

OCR must approve modifications to the agreement (e.g., requests to change the substance of any provision in the agreement, or requests for extension of time to submit a report or to complete a required action). Approved modifications must be set forth in writing and appended to the original agreement. Requests for modification must be documented in the case file. OCR will send the complainant written notification of approved modifications to the substance of the original agreement, where appropriate.

### SECTION 504    CONCLUSION OF MONITORING

OCR will conclude the monitoring of a resolution agreement when it determines that the recipient has fully and effectively implemented the terms and obligations of the resolution agreement, including any subsequent approved modifications to the agreement. OCR will promptly send written notification to the recipient, and the complainant where appropriate, of its determination that the terms and obligations of the resolution agreement have been implemented and that OCR is closing the case.

## ARTICLE VI:   INITIATION OF ENFORCEMENT ACTION

When post-Letter of Impending Enforcement Action negotiations do not result in a resolution agreement, OCR will initiate enforcement action. OCR will either: (1) initiate administrative proceedings to suspend, terminate, or refuse to grant or continue financial assistance from, or, with respect to the Boy Scouts Act, funds made available through, the Department to the recipient; or (2) refer the case to DOJ for judicial proceedings to enforce any rights of the United States under any law of the United States.

## SECTION 601    INITIATE ADMINISTRATIVE PROCEEDINGS, WHERE APPROPRIATE

When post-Letter of Impending Enforcement Action negotiations do not result in a resolution agreement and OCR decides, within its discretion, to initiate administrative proceedings, it will request that an administrative proceeding be initiated. In collaboration with other Department personnel as appropriate, OCR will establish a team to prosecute the case. If OCR decides to defer new funds, a Notice of Opportunity for Hearing will be issued within 30 calendar days of the notice of the deferral action. See Section 305.

## SECTION 602    REFER TO DOJ, WHERE APPROPRIATE

When post-Letter of Impending Enforcement Action negotiations do not result in a resolution agreement and OCR decides, within its discretion, to refer the matter to DOJ, it will issue a letter to the recipient stating that the case will be referred to DOJ within 10 calendar days of the date of the letter.

## SECTION 603    ENFORCEMENT FOR DENIAL OF ACCESS

A recipient denies access to OCR when it:

- Refuses to permit OCR access during the recipient's normal business hours to information maintained by the recipient that is necessary to determine the compliance status of the allegations under investigation or, during monitoring, the recipient's compliance with a resolution agreement. Generally, this includes access to books, records, and accounts, including electronic storage media; retrieval systems and photocopies; and other sources of information, including witnesses and the recipient's facilities;
- Refuses to permit OCR access to its employees during the recipient's regular business hours;
- Fails to provide information by virtue of the refusal of one of its employees to do so or to provide access to information maintained exclusively by an employee in his/her official capacity; or
- Refuses to complete applicable Office of Management and Budget-approved compliance and survey forms relevant to an investigation.

Where the recipient has refused to provide OCR with access orally, either in person, over the telephone or through use of other media, OCR must attempt to ascertain the basis for the recipient's refusal and explain OCR's authority to obtain the evidence. Where attempts to persuade the recipient to provide access have failed, OCR must send a letter to the recipient that sets forth in detail the evidence (e.g., documents, data, other information, or witnesses) to which the recipient denied OCR access and specifies the efforts that OCR has made to obtain the evidence. If the recipient does not voluntarily provide OCR with access to the requested evidence within 30 calendar days of OCR's issuance of the letter to recipient, OCR will issue a Letter of Impending Enforcement Action. If the recipient continues to deny OCR access to the requested evidence, OCR will issue a letter to the recipient stating OCR's intention to take enforcement action.

## SECTION 604    ENFORCEMENT FOR FAILURE TO COMPLY WITH OCR AGREEMENT

Where the recipient has failed to comply with the terms and obligations of a resolution agreement, OCR will issue a Letter of Impending Enforcement Action pursuant to CPM Section 305. If the recipient does not come into compliance after issuance of the Letter of Impending Enforcement Action, OCR will initiate enforcement action pursuant to either CPM Section 601 or CPM Section 602.

# ARTICLE VII:   APPENDICES

## SECTION 701    SPECIAL INTAKE PROCEDURES

### (a) Age Discrimination Complaints

An age discrimination complaint is timely when it is filed within 180 calendar days of the date the complainant first had knowledge of the alleged discrimination. For good cause shown, OCR may extend this time limit.

For service complaints under the Age Discrimination Act, the complainant may file a civil action under the Age Discrimination Act in federal court but only after she or he has exhausted administrative remedies. Administrative remedies are exhausted when either of the following has occurred: (1) 180 calendar days have elapsed since the filing of a complaint with OCR and OCR has made no finding, or (2) OCR issues a finding in favor of the recipient. If OCR fails to make a finding within 180 calendar days or issues a finding in favor of the recipient, OCR will promptly notify the complainant of this fact and of her or his right to bring a civil action for injunctive relief. OCR's notice must also contain the following information: (1) that a civil action can be brought only in a United States district court for the district in which the recipient is located or transacts business; (2) that a complainant prevailing in a civil action has the right to be awarded the costs of the action, including reasonable attorney's fees, but that these costs must be demanded in the complaint filed with the court; (3) that before commencing the action, the complainant shall give 30 calendar days' notice by registered mail to the Secretary, the Secretary of Health and Human Services, the Attorney General of the United States, and the recipient; (4) that the notice shall state the alleged violation of the Age Discrimination Act, the relief requested, the court in which the action will be brought, and whether or not attorney's fees are demanded in the event the complainant prevails; and (5) that the complainant may not bring an action if the same alleged violation of the Age Discrimination Act by the same recipient is the subject of a pending action in any court of the United States.

1. Employment Complaints

    OCR does not have jurisdiction over employment complaints under the Age Discrimination Act. Employment complaints filed by persons 40 and older are referred to the appropriate EEOC office, and the OCR complaint is dismissed. Employment complaints filed by persons under 40 are not within the jurisdiction of EEOC and may be closed with notice to the complainant that there is no jurisdiction under the Age Discrimination Act. If the complaint alleges age discrimination in employment that is within EEOC's jurisdiction and also contains allegations of discrimination in services within the jurisdiction of OCR, the complaint is split into two separate cases. Each is given its own case number, the age employment complaint is referred to EEOC with the OCR age employment case being dismissed, and OCR proceeds with the complaint based on allegations of discrimination in services.

2. Service Complaints

    All complete and timely complaints (see 34 C.F.R. §§ 110.31 and 110.32) containing an allegation of age discrimination in services are promptly referred to the following address or the appropriate regional office by electronic mail or mail:

    Federal Mediation and Conciliation Service
    Attention: Alternative Dispute Resolution Department
    250 E. Street SW
    Washington, D.C. 20427

Where OCR receives a complaint containing both allegations of age discrimination in services and allegations under Title VI, Title IX, Title II, Section 504, and/or the Boy Scouts Act, and OCR determines that the non-age allegation is independent and separable from the age allegation, OCR will refer only the age portion of the complaint to FMCS. OCR will proceed to investigate the additional allegations over which OCR has jurisdiction. OCR will not wait for mediation of the age portion of the complaint to conclude before beginning investigation of the non-age portion of the complaint.

Copies of the complaint and letters to the complainant and recipient and a completed FMCS "Request for ADA Mediation Assistance" must be included.

If FMCS does not resolve the complaint within 60 calendar days from the date of filing with OCR, OCR will resume processing the age aspects of the complaint. The date that the complaint or any portion of a complaint is sent to FMCS shall be entered in CMS. The date that the complaint is referred back from FMCS shall also be entered in CMS. FMCS's processing time will, therefore, not be included in OCR's case processing time.

**(b) Title VI Complaints against Proprietary Schools**

Authority to process Title VI complaints against proprietary vocational schools (privately owned, profit-making enterprises that teach a trade or skill) has, with certain exceptions, been delegated to the U.S. Department of Veterans Affairs. Such complaints must be forwarded to:

> U.S. Department of Veterans Affairs
> Office of Resolution Management
> 810 Vermont Avenue, N.W.
> Washington, D.C. 20420

OCR must refer to the U.S. Department of Health and Human Services Title VI complaints filed against a proprietary school operated by a hospital. The complaint is then dismissed. The complainant must be notified of the referral.

The following exceptions apply.

- OCR remains responsible for enforcement of Title VI where a proprietary vocational school is operated by a college or university. See 38 C.F.R. § 18a.1(a).
- OCR remains responsible for enforcement of Title VI where a proprietary vocational school offers non-degree courses for which credit is given and which, on transfer, would be accepted toward a baccalaureate or higher degree by a degree-granting institution. See 38 C.F.R. § 18a.1(b).

**(c) Title VI and Title IX Employment Complaints (see 29 C.F.R. §§ 1691.1 – 1691.13 and 28 C.F.R. §§ 42.601 – 42.613)**

Race, color, national origin, and sex discrimination in employment complaints will be processed in accordance with the government-wide regulations. OCR will:

1. Within 10 calendar days of receipt, notify the complainant and the recipient that OCR has received the complaint, including the date, place and circumstances of the alleged unlawful employment practice.

2.  Within 30 calendar days of receipt:

  i.  Determine whether OCR has jurisdiction over the complaint under Title VI and/or Title IX.
  ii.  Determine whether EEOC may have jurisdiction over the complaint.
  iii.  Transfer to EEOC all complaints over which OCR does not have jurisdiction but over which EEOC may have jurisdiction and notify the complainant and the recipient of the transfer, the reason for the transfer, the location of the EEOC office to which the complaint was transferred and that the date the agency received the complaint will be deemed the date it was received by EEOC.
  iv.  Refer to EEOC certain complaints over which both OCR and EEOC appear to have jurisdiction ("joint complaints"), consistent with the following guidance:

    Absent special circumstances, OCR will refer a joint complaint that solely alleges employment discrimination against an individual.

    Absent special circumstances, OCR will not refer a joint complaint alleging a pattern or practice of employment discrimination.

    Absent special circumstances, OCR will not refer a joint complaint that alleges discrimination in employment and includes allegations regarding other practices of a recipient. If, because of special circumstances, the employment allegations of such a complaint are referred to EEOC, OCR will assign a new case number to the allegations that are retained.

    OCR will notify the complainant and recipient of the action taken on the joint complaint. In the case of a referral to EEOC, the notice will include the location of the EEOC office to which the complaint was referred, the civil rights provisions involved, the authority of EEOC under this regulation and that the date the agency received the complaint will be deemed the date it was received by EEOC.

    For those joint complaints retained for OCR investigation, OCR will contact EEOC to ensure that, in the event EEOC has also received the complaint, EEOC defers its investigation.

**(d) Title II ADA Complaints (Other than Employment) (see 28 C.F.R. § 35.171(a)(2)(i))**

OCR has jurisdiction to investigate Title II complaints against public elementary and secondary education systems and institutions, public institutions of higher education and vocational education (other than schools of medicine, dentistry, nursing, and other health-related schools), and public libraries. When OCR receives an ADA-only complaint over which it does not have jurisdiction, it will be referred to DOJ and then dismissed. The complainant will be notified of the referral.

**(e) Section 504 and Title II Disability Employment Complaints (see 28 C.F.R. Part 37 and 29 C.F.R. Part 1640)**

**1.  Referral or Deferral**

  i.  Disability employment complaints shall be referred to the DOJ Civil Rights Division if OCR has no jurisdiction under either Title II of the ADA or Section 504 of the Rehabilitation Act of 1973, and EEOC does not have jurisdiction under Title I (*i.e.*, the recipient has fewer than 15 employees). If EEOC has jurisdiction under Title I

(i.e., the recipient has 15 or more employees), the complaint shall be referred to EEOC.

ii.  OCR shall defer individual complaints unless the complainant elects to have OCR process the charge. OCR must notify the complainant in writing that he or she may choose whether to have OCR or EEOC process the complaint and that if the complainant would like OCR to process the complaint, OCR must receive such written request within 20 calendar days of the date of the letter. See 28 C.F.R. § 37.8(a)(1). If special circumstances make deferral inappropriate, OCR and the appropriate agency may jointly determine to reallocate investigation responsibilities. See 28 C.F.R. § 37.8(e).

2. **Retention**

i.  When OCR has jurisdiction over a disability employment complaint under Section 504, OCR shall retain the complaint if:

- EEOC does not have jurisdiction under Title I (i.e., if fewer than 15 employees);
- EEOC has jurisdiction, but the complainant elects to have OCR process the complaint;
- The complaint alleges discrimination in both employment and other practices or services covered by Section 504; or
- The complaint alleges a pattern or practice of employment discrimination. See 28 C.F.R. § 37.6(d)(1).

ii.  When OCR has jurisdiction under Title II of the ADA but not under Section 504, OCR shall retain jurisdiction over a complaint when it determines that EEOC does not have jurisdiction under Title I. See 28 C.F.R. §§ 37.6(d)(2) and (3).

## SECTION 702    DATA COLLECTION AND INFORMATION GATHERING

**(a) Generally**

OCR's data collection and information gathering activities will vary from case to case depending on applicable legal standards, investigative strategies, and the extent to which relevant data/information are in the control of the recipient or others. Some general investigative principles and practices include:

- Obtain independent written documentation to corroborate oral statements;
- Label all evidence, documents, electronic media, and written records of contact with information identifying the case being investigated and the circumstances under which the evidence was obtained (e.g., where and when an interview was conducted, and who provided a given document);
- Document efforts to obtain access to recipient data and witnesses;
- Undertake a robust outreach to the recipient community to increase access to relevant information in the conduct of an investigation (*e.g.,* by publicizing OCR's presence and availability in onsite investigations for individual interviews and focus groups as well as OCR's availability for discussion with interested individuals before and subsequent to the onsite), as appropriate; and
- Collect data resulting from any methods that OCR or recipients use to track and evaluate compliance with their legal responsibilities (*e.g.,* data from OCR's Civil Rights Data Collection, recipient public websites, climate surveys, and other self-assessment tools).

**(b) OCR's Authority to Obtain Information**

OCR has the right of access during a recipient's regular business hours to the recipient's facilities and to information maintained by the recipient that is necessary to determine compliance status on those issues under investigation. See 34 C.F.R. § 100.6(c), 34 C.F.R. § 99.31(a)(3)(iii) and 34 C.F.R. § 110.22. Generally, this includes access to such of the recipient's books, records, accounts, including electronic storage media, microfilming, retrieval systems and photocopies maintained by the recipient, and other sources of information, including witnesses, and its facilities, as may be relevant, in OCR's judgment, to ascertain compliance.

**(c) Requests for Records**

**1. Data Requests**

A data request seeks information from the recipient relevant to the investigation. It can be used to initiate information collection or to request further information, as necessary.

**2. Timeframes for Recipient's Response**

The recipient will be given an appropriate amount of time to submit the information required, which shall be determined on the basis of the nature and extent of OCR's data request. This timeframe is established in OCR's discretion, considering factors such as the feasibility of complying with the request in the determined time period.

**3. Data Provided by Recipient**

A recipient must submit information as necessary for OCR's compliance activities. However, other federal regulations and policies may restrict OCR's information requests:

    i. For example, in the context of an ongoing complaint, compliance review, or directed investigation, OCR may require recipients to record information in such form and containing such information as OCR may determine is necessary to assess compliance, without obtaining prior approval for its use by the Office of Management and Budget.[12]  See 34 C.F.R. § 100.6(b).

    ii. OCR must consider federal policies concerning paperwork burdens when requesting that a recipient do more than provide OCR access to normally maintained information.  Requests that a recipient generate, aggregate, or compile information to meet an OCR need must be reasonable and may not be unduly burdensome.. Recipients that maintain data in an electronic format must provide the data in that format to OCR in a file type that can be accessed by OCR. Recipients that do not maintain data in an electronic format are encouraged to provide the requested information in an electronic format that can be accessed by OCR.

If a recipient invites OCR to come onsite and collect the requested information, including the interview of witnesses and provides OCR with sufficient access to files, records, logs, and appropriate indexes for OCR to obtain the needed information, then the recipient shall be deemed to have provided OCR with the requisite access necessary to satisfy this provision.

---

[12] The Paperwork Reduction Act only applies to collections directed at ten or more respondents, with one important exception.  Any information requirement in a "rule of general applicability" is presumed to affect or potentially affect at least ten respondents.

ED2.000030

### 4.  Confidentiality

OCR has the right of access to a recipient's records, even if those records identify individuals by name. To protect the confidential nature of the records, OCR may, for example, permit the recipient to replace names with a code, and to retain a key to the code. However, OCR should inform the recipient that if at any time, such a procedure impedes the timely investigation of the case, OCR shall have access to the unmodified records. See 20 U.S.C. §§ 1232g(b)(1)(C)(i)(II) and (b)(3) and 34 C.F.R. §§ 99.31(a)(3)(iii) and 99.35 regarding the applicable provisions of the Family Educational Rights and Privacy Act.

## (d)  Interviews

### 1.  Introduction

Interviews are an integral part of investigations. The objective of interviews is to gain an understanding of the records and data relevant to the issues in the case; to obtain information from and assess the credibility of witnesses; and to evaluate recipient defenses. OCR may conduct individual interviews and focus groups, as appropriate, as part of its investigations. OCR will make efforts to work with recipients to conduct interviews in a manner that minimizes disruptions to the recipient's educational environment.

### 2.  Notice

Prior to initiating an interview, OCR will inform the witness of the following.

i.    The general purpose of the interview, including OCR's role, what law or laws may be pertinent to the investigation, and where appropriate, a brief explanation of what is under investigation.
ii.   The approximate maximum amount of time that the interview may take.
iii.  The potential uses of the information to be obtained from the witness and the Freedom of Information Act. A witness who wants a more thorough explanation should be given a copy of the "OCR Notice of Witness Rights." This Notice is available at: (https://www2.ed.gov/about/offices/list/ocr/docs/witness-notice-mw.pdf).
iv.   The witness's right to personal representation during the interview by a person of his or her choice.
v.    When the witness is an employee of a recipient, his or her right to refuse to have anyone else present during the interview and his or her right to refuse to reveal the content of an interview.
vi.   The regulatory provisions concerning prohibition of intimidating or retaliatory acts by a recipient.
vii.  In most cases, the recipient's counsel will be allowed to be present during upper level management interviews.

### 3.  Privacy

The privacy interests of witnesses will be considered in selecting the conditions and means employed by OCR to conduct witness interviews. An interpreter may be used when safeguards are taken to ensure the competence of the interpreter and to protect the witness's privacy.

**4.  Interviews with Minors (Persons under 18) or Legally Incompetent Individuals**

OCR shall obtain written consent from a parent or guardian prior to conducting an interview of any person under 18 years of age or otherwise adjudicated legally incompetent, for example, mentally impaired. Parental or legal guardian consent may not be required for persons under 18 if they are emancipated under state law or in the context of Section 504, whose IDEA rights have transferred under 20 U.S.C. § 1415(m),  and are therefore considered to have obtained majority. For persons under 18 who state they are emancipated or whose IDEA rights have transferred, OCR should obtain proof of emancipation or proof of transfer of IDEA rights.

Parental or legal guardian consent may not be necessary where the questions asked are of a general nature, not related to any specific events in which the minor was involved, and there are no records kept to identify the student. Where a recipient refuses to allow minor students to be interviewed without consent where the questions asked are of a general nature, not related to any specific events in which the minor was involved, and there are no records kept to identify the student, written consent must be obtained.

Where parents or guardians refuse to provide consent for an interview, and OCR determines that the child's information is critical, OCR may attempt to secure parental or guardian consent by inviting the parent or guardian to be present during the interview. Where consent is denied, OCR will not interview the child.

**5.  Records of Interviews**

A written record of interviews (i.e., in-person, telephonic, or through use of other electronic media) must be kept. Interviewers will notify interviewees when recording is used and recording will be done only with the consent of the interviewee. When interviewers record interviews, the recording becomes part of the case record along with the written record. Regardless of the technique used during the interview, a written record of the interview must be created.

The record of the interview to be placed in the case file must contain the following information.

  i.   The case identification (name and case number).
  ii.  The name and identification of the interviewee, interviewer, and any other person present (include an explanation for the presence of any other persons).
  iii. The date, time, and location of interview (including whether the interview was conducted in person or through use of media (e.g., telephone, videoconferencing).
  iv.  A record of whether the interviewee was informed of required notifications.
  v.   A written record reflecting the questions and responses obtained during the interview (this need not be a verbatim transcript but must accurately reflect the responses of the witness).

**SECTION 703    FREEDOM OF INFORMATION ACT AND PRIVACY ACT**

The information OCR collects is analyzed by authorized personnel within the agency and is used only for authorized civil rights compliance and enforcement activities. In order to resolve a complaint OCR may need to reveal certain information to persons outside the agency to verify facts or gather additional information. Such information could include the name, the age or physical condition of a complainant. The Privacy Act of 1974 (Privacy Act), 5 U.S.C. § 552a, governs the maintenance of records contained in a system of records, and the Freedom of Information Act (FOIA), 5 U.S.C. § 552, establishes a public right of access (with certain exemptions) to OCR's records.

ED2.000032

The Privacy Act regulates the collection, maintenance, use, and dissemination of certain personal information in records contained in a federal agency's system of records. OCR's investigation files have been exempted from certain provisions of the Privacy Act, including, but not limited to, provisions that provide individuals with notification of, access to, and correction or amendment of records maintained on them. See 34 C.F.R. § 5b.11(c)(2)(ii). The Department has published in the Federal Register a Privacy Act system of records notice entitled "Complaint Files and Log" (18-08-01). Third parties may not gain access to records about individuals within a system of records without the prior written consent of the subject individual except as required by FOIA or pursuant to other statutory exceptions contained in the Privacy Act. See 5 U.S.C. § 552a(b).

The FOIA gives the public a right of access to records of federal agencies. The FOIA is implemented by Department regulations. See 34 C.F.R. Part 5.

Although each FOIA request will be reviewed on a case-by-case basis, generally, OCR is not required to release documents, or portions thereof, during the case resolution and investigation process or enforcement proceedings if the release could reasonably be expected to interfere with OCR's law enforcement activities. See 5 U.S.C. § 552(b)(7)(A). Also, a federal agency is not required to release inter- or intra-agency records, or portions thereof, if they are pre-decisional, deliberative documents, or if the records would otherwise be subject to certain privileges in litigation. See 5 U.S.C. § 552(b)(5). Further, a federal agency may not release documents, or portions thereof, that constitute commercial or financial information, obtained from a submitter, that is privileged or confidential.  See 5 U.S.C. § 552(b)(4).  Finally, a federal agency may not release documents, or portions thereof, if their release would or could result in an unwarranted invasion of privacy of an individual. See 5 U.S.C. §§ 552(b)(6) and (7)(C). Disclosure will only be made as consistent with the Privacy Act and FERPA. OCR will only reveal the name or identifying information about an individual if such disclosure is consistent with the Privacy Act and FERPA.

In addition, OCR can release certain information about the complaint to the press or general public, including the name of the school or institution; the date the complaint was filed; the type of discrimination included in the complaint; the date the complaint was resolved, dismissed or closed; the basic reasons for OCR's decision; and other related information. Any information OCR releases to the press or general public will not include the complainant's name or the name of the person on whose behalf the complaint was filed, except as noted in the paragraph above.

## SECTION 704    RECIPIENTS OPERATING UNDER FEDERAL COURT ORDER

### (a)  When the United States is a Party to the Court Order

When OCR receives a complaint alleging discrimination by a recipient against which the DOJ represents the United States as a party in pending litigation, the following procedures will apply:

1. **OCR notification to DOJ**: OCR will forward the complaint to DOJ by electronic mail immediately and ask whether DOJ wants OCR to refer the complaint to DOJ. This will occur before any OCR evaluation of the complaint begins and even if it is clear on the face of the complaint that OCR would not open it for investigation.

2. **DOJ response**: DOJ will have seven calendar days after the date of OCR's electronic mail notification to determine whether: (1) DOJ wants OCR to refer the complaint to DOJ; or (2) DOJ does not want OCR to refer the complaint to DOJ. There are no additional options. For example, a complaint cannot be conditionally referred or conditionally declined, nor may DOJ request referral of only a portion of a complaint.

3. **No referral to DOJ**: When DOJ indicates that it does not want OCR to refer the complaint, or DOJ does not respond within seven calendar days of the date of OCR's electronic mail notification, OCR, in its sole authority, will immediately process the complaint.

4. **Referral to DOJ**: When DOJ indicates that it wants OCR to refer the complaint, then:

   i.   OCR will refer the entire complaint to DOJ;
   ii.  OCR will dismiss the complaint and notify the complainant that the complaint has been referred to DOJ; and
   iii. Once the complaint is referred to DOJ, DOJ will be responsible for investigating and resolving the entire complaint. OCR will forward all communications it receives from the complainant relating to the complaint to DOJ and DOJ will be responsible for addressing all such communications. OCR will not accept any type of return or re-referral of the complaint from DOJ.

**(b) When the United States is Not a Party to the Court Order**

As part of evaluation of the complaint, OCR will consult with parties about the current status of the court order.