# MEMORANDUM

UNITED STATES DEPARTMENT OF EDUCATION
WASHINGTON, D.C. 20202

OCT 11 1989

TO: OCR Senior Staff

FROM: William L. Smith
Acting Assistant Secretary
for Civil Rights

SUBJECT: Title IX Religious Exemption Procedures and Instructions for Investigating Complaints at Institutions with Religious Exemptions

Since the completion in 1985 of the project resolving 216 requests for religious exemption to Title IX of the Education Amendments of 1972, the Office for Civil Rights (OCR) has received approximately 55 religious exemption requests. Many of these requests were submitted subsequent to the March 22, 1988, passage of the Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28 (1988) (Act). This memorandum restates OCR's procedures for addressing religious exemption requests and for conducting investigations at institutions that have been granted religious exemptions to Title IX.

## Procedures

Under 34 C.F.R. § 106.12 of the Title IX regulation, institutions controlled by a religious organization are exempt from those sections of the regulation that conflict with the organization's religious tenets. Under § 106.12(b), "an educational institution which wishes to claim [an] exemption" should submit a written statement to the Assistant Secretary identifying the sections of the regulation that conflict with specific tenets. The regulation does not require that a religious institution submit a written claim of exemption, nor is an institution's exempt status dependent upon its submission of a written statement. Primarily, the written claim or "request" for exemption from an institution is a request for assurance from OCR of exemptions to certain sections of the regulation. The institution is responsible for stating its religious tenets or its practices as based on religious tenets in its request for exemption. OCR, in "granting" an exemption, primarily ensures that the institution has cited the correct sections of the regulation in its request. Otherwise, OCR clarifies which sections of the regulation are applicable to an institution's exemption request.

Since claims of religious exemption are to be submitted to the Assistant Secretary, exemption requests frequently are sent to Washington, D.C. Headquarters, in accordance with the instructions outlined in the February 19, 1985, policy guidance for resolving religious exemption requests (copy attached), forwards the requests to the appropriate regional offices. The regional offices obtain all information necessary to act on the exemption request and draft an appropriate response for the Assistant Secretary's signature.

ELIZABETH HUNTER et al.
v.
U.S. DEPARTMENT OF EDUCATION, et al.
Case No. 6:21-cv-00474 (AA)
GOV Ex. 11

ED2.000076

Page 2 - OCR Senior Staff

The regional offices should continue to use the model language outlined at Tab C of the February 19, 1985, guidance, modifying the model language as appropriate. The regional offices are assigned to draft responses, because many institutions do not submit sufficient information initially for OCR to act on the request, and more information must be obtained. Additionally, in responding to a request, each regional office may become familiar with the institutions within the region that are exempt from sections of the regulation. When an institution has submitted insufficient information, the regional offices may request more information in writing or by telephone. However, whenever feasible, information should be obtained in writing. Any information that is obtained by telephone must be carefully recorded and placed in the exemption request file. In attempts to obtain additional information, the regional offices should avoid intrusive questions regarding religious tenets or questions about programs that are not related to the exemption request; OCR does not investigate an institution because it claims a religious exemption. Any questions should be directed at clarifying the applicability of regulation sections.

Once the regional office has completed a draft response, the draft response and all materials related to the request, including institution catalogs and any telephone memoranda, should be forwarded to the Policy and Enforcement Service in headquarters for review. This review enables headquarters staff to coordinate OCR's responses to institutions that are controlled by the same religious organization, but that are located in different OCR regions.

Many institutions submit a copy of the college catalog in support of their exemption requests. Catalogs simplify OCR's analysis, since they often contain information regarding the institutions' religious traditions and programs. Information commonly found in catalogs from religious institutions that may assist OCR includes the following:

1. a "doctrinal statement" with the notation that specific members of the institution community must espouse a personal belief in the religion or doctrinal statement - this is sufficient evidence that the institution is "controlled" by a religious organization under § 106.12(a) for purposes of claiming religious exemption (see Tab B, page 4 of the February 19, 1985, guidance);

2. catalogs often explain moral beliefs and may outline disciplinary measures for violating those beliefs - this may support a request for exemption to §§ 106.21(c), 106.40, 106.57, and 106.60 regarding the marital or parental status of students and employees and applicants for admission and employment;

3. requirements that only men may take courses training future ministers (this should be supported by a statement that only men may be ministers, in accordance with religious tenets, which may be in the catalog or the request letter) - this may support a request for exemption to § 106.34 regarding access to courses; and

ED2.000077

Page 3 - OCR Senior Staff

4. requirements that only men may teach courses training future ministers and/or, in keeping with roles of men and women in the religious organization, only men may hold certain positions of authority at the institution - this may support a request for exemption to certain employment sections under Subpart E of the regulation.

OCR may not question what institution representatives claim as their religious beliefs, and should avoid any appearance of interpreting religious tenets. OCR's policy permits an institution to submit a statement of its practices, as based on its religious tenets, rather than a statement of its tenets (see the policy clarification memorandum on Title IX religious exemption requests issued August 2, 1985). For example, an institution's exemption request may state, "based on our religious tenets, only men are admitted to the institution." Such a statement enables OCR to identify the appropriate sections of the regulation to which the institution is exempt (§§ 106.21, 106.22, and 106.23 regarding admissions and recruitment in this example) and avoids the appearance of a Federal agency interpreting religious tenets, which could create potential conflicts under the First Amendment.

Many exemption requests submitted since the passage of the Act contain identical language in many portions of the letters, even though the letters are from institutions sponsored by several different religious organizations in all parts of the country. Some of the model language assumes incorrect interpretations of the Title IX regulation. The regional offices should draft responses that correct any erroneous statements made by institutions while minimizing remarks that may embarrass institution officials. For example, the model language suggests that 34 C.F.R. § 106.15(d) exempts private undergraduate and graduate programs from §§ 106.16 through 106.23. Section 106.15(d) exempts private undergraduate programs only from Subpart C of the regulation, in effect, §§ 106.21, 106.22, and 106.23 regarding admissions and recruitment. Sections 106.16 and 106.17 are not applicable to the institutions' concerns, and sections 106.18, 106.19, and 106.20 do not exist. Instead of stating in OCR's response that certain sections do not exist and others are not applicable, a statement that § 106.15(d) exempts private undergraduate institutions from §§ 106.21, 106.22, and 106.23 should clarify the correct interpretation of the regulation. Since the institutions generally are not requesting exemption to these sections (with the exception of the specific paragraph at § 106.21(c) regarding marital or parental status of applicants for admission), additional explanation that may prove embarrassing is usually not necessary.

Investigations of Institutions With Religious Exemptions

Whenever a complaint is filed against an institution that has already been granted a religious exemption by OCR, the regional offices should carefully review OCR's letter granting the exemption and the institution's letter requesting the exemption to determine whether the complaint allegations fall within the exemption granted. The letters requesting and granting the exemption

ED2.000078

Page 4 - OCR Senior Staff

will clarify the extent of the exemption. Reviewing general OCR records such as the religious exemption project report issued November 22, 1985, is not sufficient, since this report indicates only that an institution is exempt from a specific section, such as § 106.34 regarding access to courses, and does not explain the extent of the exemption. For example, if a complainant alleges that an institution with a religious exemption to § 106.34 does not provide women with access to advanced courses in chemistry, the regional office must determine whether the institution's exemption to § 106.34 addresses courses in chemistry by reviewing the letters requesting and granting exemption. If the regional office's review of the religious exemption file indicates that the exemption is only for those courses training future ministers, which are, based on religious tenets, limited to men, then the regional office must investigate the complainant's allegations regarding access to advanced chemistry courses.

Similar limitations apply to the exemptions granted to institutions for § 106.39 regarding health and insurance benefits and services and § 106.40(b)(4) requiring that pregnancy be treated as any other temporary disability under any student health insurance program (SHIP) offered by the recipient. Many institutions are exempt from §§ 106.21(c), 106.40, 106.57, and 106.60. These sections prohibit discriminatory treatment based on the marital or parental status of students and employees, and applicants for admission and employment. Generally, religious institutions maintain that these sections conflict with their religious tenets by prohibiting institutions from disciplining students or employees who are unmarried and pregnant.

OCR has received many SHIP complaints alleging that pregnancy is not being treated the same as any other temporary disability. A religious institution's exemption to §§ 106.39 and 106.40 based on religious tenets regarding unmarried pregnant students does not preclude an OCR investigation of a SHIP complaint. The institution must provide coverage for pregnancy in the same manner as it provides coverage for temporary disabilities for married students (no institution has claimed a conflict between religious tenets and the regulation regarding married pregnant students). If the institution offers a student health insurance plan that does not treat pregnancy in the same manner as other temporary disabilities for married students, then the institution is in violation of § 106.39 and § 106.40(b)(4). Insurance plans vary considerably and may include provisions for extra premiums for pregnancy coverage, limitations of four days of hospitalization for a normal pregnancy, a 30 day waiting period before pregnancy coverage becomes effective, etc. All of these provisions violate the Title IX regulation where pregnancy coverage differs from provisions regarding temporary disabilities, and religious institutions offering such plans are in violation of §§ 106.39 and 106.40 regarding married students, even though they may be exempt from §§ 106.39 and 106.40 regarding unmarried students.

ED2.000079

Page 5 - OCR Senior Staff

Religious exemption requests continue to be controversial and should be given priority by the regional offices. OCR has assured members of Congress that OCR's processing of these requests will continue to be expeditious.

If you have questions or comments regarding this memorandum, or questions involving a particular request for an exemption, you may call Jeanette Lim at FTS 732-1645 or Valerie Bonnette at 732-1684.

Attachment