Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

* Admitted *pro hac vice*

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

Kristen K. Waggoner, OSB # 067077
  *Lead Counsel*
Email: kwaggoner@ADFlegal.org
David A. Cortman, GA Bar # 188810*
Email: dcortman@ADFlegal.org
Ryan J. Tucker, AZ Bar # 034382*
Email: rtucker@ADFlegal.org
Mark A. Lippelmann, AZ Bar # 036553*
Email: mlippelmann@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020

* Admitted *pro hac vice*

*Counsel for Defendants-Intervenors
Western Baptist College d/b/a Corban
University, William Jessup University
and Phoenix Seminary*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., | No. 6:21-CV-00474-AA |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF EDUCATION, et al., | DEFENDANTS-INTERVENORS' JOINT MOTION TO DISMISS AND MEMORANDUM IN SUPPORT |
| Defendants, | |

v.

COUNCIL FOR CHRISTIAN
COLLEGES & UNIVERSITIES,
WESTERN BAPTIST COLLEGE d/b/a
CORBAN UNIVERSITY, WILLIAM
JESSUP UNIVERSITY, AND
PHOENIX SEMINARY,

           Defendants-Intervenors.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. v

MOTION .................................................................................................. 1

INTRODUCTION AND SUMMARY .......................................................... 1

ARGUMENT ............................................................................................. 3

    I.    The Court should dismiss the Amended Complaint for lack of jurisdiction because Plaintiffs lack standing................................ 3

        A.    The Department of Education does not make distinctions on the basis of gender or sexuality, and thus has not caused Plaintiffs' alleged injuries. ..................................... 5

        B.    The Department cannot require the Christian schools to modify their religious identity, beliefs, and codes, and thus a favorable ruling cannot redress Plaintiffs' alleged injuries. ................................... 6

    II.    The Court should dismiss the Amended Complaint for failure to join necessary parties. ....................................................... 7

        A.    The religious schools named in the Amended Complaint are necessary parties. ...................................................... 9

        B.    It would not be feasible to join many of the necessary parties because the Court lacks personal jurisdiction over them. .................... 12

        C.    The action cannot, in fairness, proceed without the named religious schools. ................................................................. 14

    III.    The Court should dismiss the Amended Complaint because Plaintiffs fail to state any viable claim. ..................................... 16

        A.    Plaintiffs fail to state a claim under the APA. ...................... 16

        B.    Plaintiffs fail to state a claim under the Establishment Clause. ......... 20

        C.    Plaintiffs fail to state an Equal Protection claim................................. 24

        D.    Plaintiffs fail to state a Substantive Due Process claim...................... 28

        E.    Plaintiffs fail to state a claim under the First Amendment or RFRA........................................................................... 29

        F.    Plaintiffs fail to state any claim because Title IX forbids discrimination based on sex, not sexual orientation or gender identity........................................................................ 30

    IV.    The Amended Complaint cannot state any claim for relief because the Title IX religious exemption is affirmatively required. ............................ 33

        A.    The Free Exercise Clause requires the religious exemption. .............. 33

        B.    RFRA requires the religious exemption. ............................... 35

C.      The Free Speech Clause requires the religious exemption. ................. 36

D.      Schools' association rights require the religious exemption................. 38

E.      The Establishment Clause requires the religious exemption. ............ 38

CONCLUSION..................................................................................................... 39

CERTIFICATE OF COMPLIANCE ............................................................. 41

CERTIFICATE OF SERVICE ...................................................................... 42

# TABLE OF AUTHORITIES

## Cases

*Able v. United States,*
    155 F.3d 628 (2d Cir. 1998) ..................................................................................... 26

*Agency for International Development v. Alliance for Open Society
    International, Inc.,*
    570 U.S. 205 (2013) ............................................................................................... 37

*Allen v. Wright,*
    468 U.S. 737 (1984) ................................................................................................. 5

*American Legion v. American Humanist Association,*
    139 S. Ct. 2067 (2019) ...................................................................................... 22, 23

*Americans for Prosperity Foundation v. Bonta,*
    141 S. Ct. 2373 (2021) ........................................................................................... 38

*Arver v. United States,*
    245 U.S. 366 (1918) ............................................................................................... 23

*Ball v. Massanari,*
    254 F.3d 817 (9th Cir. 2001) ................................................................................. 25

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) .......................................................................................... 29, 30

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) ...................................................................................... 32, 33

*Boy Scouts of America v. Dale,*
    530 U.S. 640 (2000) ............................................................................................... 38

*Confederated Tribes of Chehalis Indian Reservation v. Lujan,*
    928 F.2d 1496 (9th Cir. 1991) ............................................................................... 14

*Cook v. Gates,*
    528 F.3d 42 (1st Cir. 2008) ................................................................................... 26

*Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day
    Saints v. Amos,*
    483 U.S. 327 (1987) ........................................................................................ passim

*County of Fresno v. Andrus,*
    622 F.2d 436 (9th Cir.1980) ................................................................................. 11

*Cutter v. Wilkinson,*
    544 U.S. 709 (2005) ................................................................................................. 2

*Droz v. Commissioner of IRS,*
    48 F.3d 1120 (9th Cir. 1995) ................................................................................. 23

*EEOC v. Peabody Western Coal Co.,*
    400 F.3d 774 (9th Cir. 2005) ..................................................................... 8, 12

*Enterprise Management Consultants, Inc. v. United States ex rel. Hodel,*
    883 F.2d 890 (10th Cir. 1989) ........................................................................ 15

*Espinoza v. Montana Department of Revenue,*
    140 S. Ct. 2246 (2020) .............................................................................. 2, 38

*Fed. Communications Commission v. Prometheus Radio Project,*
    141 S. Ct. 1150 (2021) ..................................................................................... 17

*Flagg Brothers, Inc. v. Brooks,*
    436 U.S. 149 (1978) ......................................................................................... 29

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021) ............................................................................. passim

*Gallinger v. Beccera,*
    898 F.3d 1012 (9th Cir. 2018) ........................................................................ 24

*Gillette v. United States,*
    401 U.S. 437 (1971) ...................................................................... 21, 22, 23

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ......................................................................................... 31

*Harrison v. Kernan,*
    971 F.3d 1069 (9th Cir. 2020) ........................................................................ 25

*Heller v. Doe by Doe,*
    509 U.S. 312 (1993) ......................................................................................... 27

*Honig v. Doe,*
    484 U.S. 305 (1988) ......................................................................................... 31

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC,*
    565 U.S. 171 (2012) ......................................................................................... 26

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston,*
    515 U.S. 557 (1995) ......................................................................................... 38

*International Shoe Co. v. State of Washington,*
    326 U.S. 310 (1945) ......................................................................................... 12

*Ipsl LLC v. College of Mount Saint Vincent,*
    383 F.Supp.3d 1128 (D. Or. 2019) ................................................................ 13

*Karnoski v. Trump,*
    926 F.3d 1180 (9th Cir. 2019) ........................................................................ 26

*Kong v. Scully,*
    341 F.3d 1132 (9th Cir. 2003) ........................................................................ 23

*Lamb's Chapel v. Center Moriches Union Free School District,*
    508 U.S. 384 (1993) ................................................................. 36

*Larson v. Valente,*
    456 U.S. 228 (1982) ................................................................. 38

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971) ................................................................. 22

*Lexmark International, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ................................................................... 5

*Loretto v. Teleprompter Manhattan CATV Corporation,*
    458 U.S. 419 (1982) ................................................................. 31

*Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ..................................................................... 4

*Makah Indian Tribe v. Verity,*
    910 F.2d 555 (9th Cir.1990) ................................................ 8, 10

*Manhattan Community Access Corporation v. Halleck,*
    139 S. Ct. 1921 (2019) ............................................................ 29

*Martinez v. Clark County, Nevada,*
    846 F. Supp. 2d 1131 (D. Nev. 2012) ..................................... 10

*Maxon v. Fuller Theological Seminary,*
    2020 WL 630546 (C.D. Cal. Oct. 7, 2020) ............................... 18

*McDonald v. City of Chicago, Illinois,*
    561 U.S. 742 (2010) ................................................................. 28

*Natal v. Christian and Missionary Alliance,*
    878 F.2d 1575 (1st Cir. 1989) ................................................. 39

*New Prime Inc. v. Oliveira,*
    139 S. Ct. 532 (2019) .............................................................. 31

*Ordonez v. United States,*
    680 F.3d 1135 (9th Cir. 2012) ................................................ 15

*Our Lady of Guadalupe School v. Morrissey-Berru,*
    140 S. Ct. 2049 (2020) ............................................................ 26

*Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony v. City of
    Los Angeles,*
    637 F.3d 993 (9th Cir. 2011) ..................................................... 8

*Parsons v. Del Norte County,*
    728 F.2d 1234 (9th Cir. 1984) ................................................ 27

*Pennhurst State School & Hospital v. Halderman,*
    451 U.S. 1 (1981) .................................................................... 31

*Personnel Administrator of Massachusetts v. Feeney*,
    442 U.S. 256 (1979) .................................................................................. 25, 26

*Police Dep't of City of Chicago v. Mosley*,
    408 U.S. 92 (1972) .......................................................................................... 36

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ........................................................................................ 36

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) ........................................................................................ 30

*Richenberg v. Perry*,
    97 F.3d 256 (8th Cir. 1996) ........................................................................... 26

*Roberts v. United States Jaycees*,
    468 U.S. 609 (1984) ........................................................................................ 38

*Rosenberger v. Rector and Visitors of University of Virginia*,
    515 U.S. 819 (1995) ........................................................................................ 36

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ......................................................................... 12

*Shermoen v. United States*,
    982 F.2d 1312 (9th Cir. 1992) ........................................................... 8, 9, 10, 11

*Simon v. Eastern Kentucky Welfare Rights Organization*,
    426 U.S. 26 (1976) .................................................................................... 4, 5, 6, 7

*SmithKline Beecham Corporation v. Abbott Laboratories*,
    740 F.3d 471 (9th Cir. 2014) ......................................................................... 26

*Sperring v. LLR, Inc.*,
    995 F.3d 680 (9th Cir. 2021) ........................................................................... 9

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ............................................................................................ 4

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) .................................................................................... 34

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) ...................................................................................... 2

*Union Pacific Railroad Co. v. Runyon*,
    320 F.R.D. 245 (D. Or. 2017) ........................................................................ 10

*Walz v. Tax Commission of New York*,
    397 U.S. 664 (1970) ........................................................................................ 23

*Ward v. Apple Inc.*,
    791 F.3d 1041 (9th Cir. 2015) ......................................................................... 9

*Warth v. Seldin,*
  422 U.S. 490 (1975) ............................................................................ 4

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) .......................................................................... 28

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990) ............................................................................ 4

*Williams v. Attorney General of Alabama,*
  378 F.3d 1232 (11th Cir. 2004) ...................................................... 29

*Williams v. California,*
  764 F.3d 1002 (9th Cir. 2014) ........................................................ 24

*Witt v. Department of Air Force,*
  527 F.3d 806 (9th Cir. 2008) .................................................... 28, 29

*Wooley v. Maynard,*
  430 U.S. 705 (1977) .......................................................................... 36

*Zorach v. Clauson,*
  343 U.S. 306 (1952) .......................................................................... 23

**Statutes**

20 U.S.C. § 1681 ............................................................................ passim

20 U.S.C. § 1686 ................................................................................... 32

42 U.S.C. § 2000 ..................................................................... 29, 35, 36

42 U.S.C. §1988 .................................................................................... 15

**Other Authorities**

7 C. Wright & A. Miller,
  *Federal Practice & Procedur*e ....................................................... 8

Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original Understanding of the Establishment Clause,*
  81 Notre Dame L. Rev. 1793 (2006) ............................................. 23

**Rules**

Fed. R. Civ. P. 19(a) ......................................................................... 7, 9

**Regulations**

34 C.F.R. § 106 ....................................................................... 16, 27, 31, 33

45 C.F.R. § 86 ........................................................................................ 32

August Rule, 85 Fed. Reg. 30026 (May 19, 2020) ....................... 17, 18

November Rule, 85 Fed. Reg. 59916 (Sept. 23, 2020) ..................... 19

## MOTION

Defendant-Intervenors Corban University ("Corban"), William Jessup University ("Jessup"), Phoenix Seminary, and the Council for Christian Colleges & Universities ("CCCU") jointly move to dismiss Plaintiffs' First Amended Complaint (ECF No. 35) under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). Pursuant to Local Civil Rule 7-1(a), counsel for the Intervenors made a good faith effort through a telephone conference to resolve the dispute but were unable to do so. Plaintiffs oppose this Motion.

## INTRODUCTION AND SUMMARY

The Amended Complaint should be dismissed because Plaintiffs lack standing to bring their claims against the Department of Education, failed to include dozens of necessary parties, and stated no claims upon which relief can be granted.

As to standing, the federal defendants are right: "Plaintiffs have not alleged an injury-in-fact, fairly traceable to the challenged actions of Defendants, that is likely to be redressed by a favorable decision." Defs.' Mot. to Dismiss; Mem. of Law in Supp. Thereof 2, ECF No. 56. Plaintiffs' lack of Article III standing, of course, is a sufficient reason to dismiss this case. Another alternative reason—independent of the merits— is the lack of necessary parties, specifically, the dozens of religious colleges named in the complaint that are not before this Court, and whose rights this Court cannot decide in their absence.

But even if the Court reached the merits of Plaintiffs' claims, it would have no choice but to find them legally frivolous, as it largely did when it denied their

requested TRO. Order and Opinion 6, ECF No. 88 ("Upon review of the record, the Court cannot find that plaintiffs have shown a likelihood of success on the merits of their Fifth Amendment, Establishment Clause, APA, or RFRA claims, let alone that the law and facts clearly favor their position."). The Court's initial reaction to the issues Plaintiffs raised was correct, and the reason why can be easily summarized in a single sentence: The Constitution not only *allows* the Title IX religious exemption, it *requires* it.

Indeed, the Supreme Court has long recognized that such exemptions to anti-discrimination laws like Title IX survive constitutional scrutiny. *Corporation of the Presiding Bishop v. Amos*, 483 U.S. 327 (1987); *Cutter v. Wilkinson*, 544 U.S. 709 (2005). But the Court's cases go further than just allowing such exemptions; in many instances, religious exemptions are affirmatively *required* to avoid unconstitutional government entanglement with religious organizations, to ensure that religious organizations are not punished for their religious character, and to guarantee that religious organizations are put on equal footing with secular organizations. *See, e.g., Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246 (2020); *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877–78 (2021). The Title IX religious exemption serves each of those vital purposes. For that reason, the Constitution and RFRA would require such an exemption even if Congress had not provided it. Plaintiffs' non-APA claims fail because of the constitutional necessity of the religious exemption. And their APA claim fails because

the Department followed the APA to the letter when it announced the August and November rules that Plaintiffs challenge here.

For each of these reasons, this case should be dismissed.

## ARGUMENT

## I.    The Court should dismiss the Amended Complaint for lack of jurisdiction because Plaintiffs lack standing.

As a threshold matter, as the federal Defendants correctly argued in their Motion to Dismiss, Dep't's MTD 11-18, Plaintiffs' case should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Redressability of injury is a fundamental question of standing, and Plaintiffs are suing a party that neither discriminates against them, nor directs or encourages others to so discriminate. The defendants merely recognize a statutory exemption, found at 20 U.S.C. §1681(a)(3), that Congress itself created, and which the Constitution and RFRA require.

Plaintiffs are thus asking the Department to take actions it cannot take: either rewrite a Congressional statute, or order Christian schools to change speech and conduct that are based on the schools' fundamental, theology-based beliefs. Both actions would be ultra vires. Ironically, if the Plaintiffs prevailed, they would deny themselves and other members of the LGBTQ+ community the ability to obtain federal financing to attend many religious schools.

As the Court well knows, justiciability in federal court is measured by Article III's case or controversy standard, which contains three requirements. First and foremost, there must be alleged (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural'

or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). And third, the harm must be redressable. *Id.* at 45–46; *see also Warth v. Seldin*, 422 U.S. 490, 505 (1975). As the Supreme Court has taught, "[t]his triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998). For a case to be justiciable, Plaintiffs have the burden of properly alleging and then proving all three prongs. *Id.*

Prong one, regarding actual, concrete injury, is a question of fact that cannot be adjudicated by this Court because it lacks the proper parties before it to determine the truth of Plaintiffs' allegations of injury. (This fact is the basis of the necessary party argument made in Section II below.). But the Court need not consider the question of injury because, even if all of Plaintiffs' allegations were true, they do not meet points two and three of this triad—causation and redressability. The alleged acts of discrimination were not the Department's. Further, the Department cannot force or require Christian colleges or universities to reverse their religious beliefs and the student conduct codes based on those beliefs.

A.    **The Department of Education does not make distinctions on the basis of gender or sexuality, and thus has not caused Plaintiffs' alleged injuries.**

Plaintiffs allege that they have been harmed by certain Christian colleges and universities that uphold Christian standards of sexuality and gender on their campuses and in their student codes of conduct. They complain that the Department allows this to occur by extending an exemption to religious colleges from the non-discrimination requirements of Title IX. But they neither claim the Department itself discriminates against LGBTQ+ persons nor that the Department could force the schools to change their policies.

Plaintiffs have thus failed the requirement of redressability: The "case or controversy" limitation of Article III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not an injury that results from the independent action of some third party not before the court. *Simon*, 426 U.S. at 41–42.

As the Supreme Court held in *Allen v. Wright*, 468 U.S. 737 (1984), abrogated as to other issues by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), alleged discrimination by third parties, even if empowered by tax-exemption or other state support, cannot be the basis of standing for suit against the government agency responsible for the tax exemption or support. *See Allen,* 468 U.S. at 757–60 (parents of children could not sue IRS for tax exemptions given unlawfully to private schools they could not attend). Applying that principle in *Allen*, the Supreme Court ruled that the injury to the plaintiffs were highly indirect and insufficient to establish standing because they "result[] from the independent action

5 – Defendant-Intervenors' Joint Motion to Dismiss Plaintiffs' Amended Complaint

of some third party [private schools] not before the court." *Id.* at 757 (internal citation omitted).

So too here: Assuming the truth of Plaintiffs' allegations (which will be vigorously disputed if this case goes to trial), Plaintiffs' alleged harm has come from the schools they attend or attended, not from the Department. Plaintiffs therefore lack standing to sue the Department.

### B.     The Department cannot require the Christian schools to modify their religious identity, beliefs, and codes, and thus a favorable ruling cannot redress Plaintiffs' alleged injuries.

Plaintiffs also seek a declaration that religious colleges and universities can no longer invoke the protection of Title IX's religious school exemption. But such a declaration would not invalidate the theology-based conduct and lifestyle codes of these universities. Rather, it would merely prevent students like Plaintiffs from receiving federal funds to attend these schools.

This redressability problem is well illustrated in *Simon*, 426 U.S. at 41–42. There, the Court held that standing to challenge a tax exemption for hospitals could not be founded on the asserted connection between the grant of tax-exempt status and the hospitals' policy concerning the provision of medical services to indigents. The causal connection was disrupted by the independent discretionary decisions hospitals would make in response to the withdrawal of tax-exempt status, and those decisions were sufficiently uncertain to break the chain of causation between the plaintiffs' injury and the challenged Government action. *Id.* at 40–46.

Here, the Department is performing ministerial acts in applying statutory (and likely constitutionally required) exemptions to religious schools. As in *Simon*, it is

these private, third parties that are making their own decisions about religious speech and student codes of conduct. Further, as in *Simon*, there is no certainty or even likelihood that withdrawing Title IX exemptions (which would be beyond the Department's mandate and powers anyway), would cause the schools to change their conduct. Given their religious convictions regarding matters of sexuality and gender, it is quite unlikely that many, if any, of them would change. At most, such change is the kind of "unadorned speculation" that "will not suffice to invoke the federal judicial power." *Simon,* 426 U.S. at 44. And for that reason, too, Plaintiffs' complaint must be dismissed for lack of standing.

## II.    The Court should dismiss the Amended Complaint for failure to join necessary parties.

Rule 12(b)(7) provides yet another reason to dismiss, as (1) Plaintiffs have failed to join necessary parties under Rule 19(a)(1)(B)(i)—the religious colleges named in the Amended Complaint who benefit from the Title IX religious exemption—and (2) it would not be feasible to join them, as they are beyond the Court's jurisdiction. In brief: Plaintiffs' allegations of harm rest on direct factual allegations about the purported conduct of religious schools that they name in the Amended Complaint, yet none of those schools has been included as a defendant. That failure is fatal to Plaintiffs' claims, and the Amended Complaint must therefore be dismissed.

To be sure, the religious-school intervenors can speak for themselves. And intervenor CCCU can speak generally for its members against Plaintiffs' facial challenge to the Title IX religious exemption's application in cases involving LGBT

students. But neither the religious-school intervenors nor CCCU can respond to the numerous allegations brought by the Plaintiffs against 29 different colleges, only 21 of which are CCCU members, and of whose day-to-day operations (with respect to the Plaintiffs) neither the religious-school intervenors nor CCCU have meaningful knowledge. For this Court to fairly assess these challenges to the application of the religious exemption would require the response and involvement of *all* the individual colleges discussed in the Amended Complaint.

Dismissal on this ground is compelled by Ninth Circuit precedent, which requires that the necessary-party analysis proceed in three steps. *First*, the court determines if the party is "necessary" to a full resolution of the issues. *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). *Second*, the court asks whether, if a party is necessary, that party can feasibly be joined. *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). Third, and finally, the court asks "in equity and good conscience" whether, if a necessary party cannot feasibly be joined, the action can proceed with the existing parties. *Id.* "By its very nature," this inquiry is "heavily influenced by the facts and circumstances of individual cases," 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1604, and the rule itself is "designed to avoid the harsh results of rigid application." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). Applying that approach here—and accepting Plaintiffs' factual allegations and drawing all factual inferences in their favor, *Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011), it is apparent that the schools Plaintiffs have named are

necessary parties, that joinder would not be feasible, and that this case cannot proceed without them.

### A.    The religious schools named in the Amended Complaint are necessary parties.

As relevant here,[1] an "absent party is necessary" when it has (1) a "'legally protected' interest," Fed. R. Civ. P. 19(a), that is "more than a financial stake, and more than speculation about a future event[,]" *Ward v. Apple Inc.*, 791 F.3d 1041, 1050–51 (9th Cir. 2015), *abrogated on other grounds*, *Sperring v. LLR, Inc.*, 995 F.3d 680 (9th Cir. 2021), and that (2) it will be unable to protect without joining the action. Fed. R. Civ. P. 19(a).

1.    A party can have a legally protected interest in a case's outcome even if "the very existence of [its] interest depends on the legality of the Act" being challenged—in other words, all that a party must show is "a *claim* to an interest[.]" *Shermoen*, 982 F.2d at 1317 (emphasis in original). In *Shermoen*, for example, a group of Native Americans sought to invalidate a statute that created a reservation for each of two tribes—the Hoopa Valley Tribe and the Yurok Tribe. *Id.* at 1316. The plaintiffs' case was ultimately dismissed because neither tribe was included as a defendant, and the tribes stood to lose their reservations if the plaintiffs succeeded. *Id.* at 1317. In affirming the Rule 12(b)(7) dismissal, the Ninth Circuit held that the tribes had a

---

[1] A party is also necessary if, in its absence, the Court will be unable to afford complete relief to the existing parties. Fed. R. Civ. P. 19(a)(1)(A). But intervenors do not rely upon that provision here.

legally protected interest in the case because the complaint challenged the constitutionality of the very act creating their reservations. *Id.* at 1318.

By analogy, the same is true here. Like the tribes in *Shermoen*, the religious colleges named in the Amended Complaint[2] have a legally protected interest in the constitutionality of the Title IX religious exemption as applied to LGBT students. Congress intended to protect all religious schools from the full weight of Title IX whenever Title IX's application would conflict with their religious tenets. Should this Court agree with the Plaintiffs' claims, then these religious schools will lose their right to rely on this exemption in all such circumstances.

2.     After a court determines that a party has an interest, it must then determine "whether that interest will be *impaired or impeded* by the suit" in the party's absence. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). This Court has recognized that adequate representation can minimize the risk of harm. *Union Pac. R.R. Co. v. Runyon*, 320 F.R.D. 245, 251–52 (D. Or. 2017) (Aiken, J.). And the Ninth Circuit has instructed courts to ask the same questions as they do with Federal Rules of Civil Procedure 24's intervention-as-of-right-inquiry to determine the adequacy of an existing party's representation:

---

[2] Indeed, the loss of this right would impact the nearly 1,000 religious colleges and universities found throughout the United States. Though the intervenors are not claiming here that Rule 19 "require[s] Plaintiffs to join every other person who *conceivably* may be affected by a declaration that the challenged law is unconstitutional on the equal protection and establishment challenges presented," at least those colleges directly named in relation to plaintiffs' as-applied challenge are necessary, because of their need to respond to the factual allegations in the Amended Complaint. *Martinez v. Clark Cnty., Nev.*, 846 F. Supp. 2d 1131, 1149 (D. Nev. 2012) (emphasis added).

- whether "the interests of a present party to the suit are such that it will undoubtedly make all" of the absent party's arguments;
- whether the party is "capable of and willing to make such arguments"; and
- whether the absent party would "offer any necessary element to the proceedings" that the present parties would neglect.

*Shermoen*, 982 F.2d at 1318 (quoting *County of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir.1980).

On this point too, the facts in *Shermoen* are instructive. There, although several members of one tribe had intervened to represent their own interests in the constitutionality of the act, the Ninth Circuit held that there was "no credible claim that they could sufficiently represent the interest" of the other tribe. 982 F.2d at 1318. Even if both tribes would have defended the constitutionality of the same challenged act, that was not enough.

It is likewise very unlikely that the interests of the religious schools named in the Amended Complaint will be fully protected here. Though the intervenors can— and have—supported the general, facial constitutionality of Title IX's religious exemption, they are not positioned to respond to the factual allegations that pervade the Amended Complaint regarding the application of that exemption to each of the Plaintiffs' situations. Certainly, they will not be able to assert factual responses with respect to the schools that are not themselves intervenors or among CCCU's members. And CCCU cannot practicably do that even for its own members without extraordinary burden and cost.

In sum, only the individual schools named in the Amended Complaint have the institutional knowledge necessary to respond adequately to the factual allegations

made against them, and, in their absence, some of those claims will likely go unrebutted. For these reasons, the individual religious colleges named in the Amended Complaint are necessary parties.

### B.    It would not be feasible to join many of the necessary parties because the Court lacks personal jurisdiction over them.

The next thing a party seeking dismissal under Federal Rule of Civil Procedure 12(b)(7) must show is that it would not be feasible to merely add the missing necessary parties to the litigation. Rule 19 recognizes "three circumstances in which joinder is not feasible:" (1) "when venue is improper"; (2) when the Court lacks personal jurisdiction over the necessary parties; and (3) "when joinder would destroy subject-matter jurisdiction." *Peabody W. Coal Co.*, 400 F.3d at 779. Here, joinder is not feasible because this Court lacks personal jurisdiction over many of the necessary parties.

In that regard, it is hornbook law that courts have personal jurisdiction over defendants located outside of a forum state *only* when those defendants have sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The plaintiff bears the burden" of demonstrating personal jurisdiction over the defendant by showing (1) that the defendant "purposefully directed [her] activities" to the forum state and (2) that the claim "arises out of or relates to the defendant's forum-related activities[.]" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Under this framework, courts lack specific jurisdiction even when an injury is suffered in

the forum state if the defendant's conduct causing the injury was not itself directed at the state. *IPSL, LLC v. College of Mount Saint Vincent*, 383 F.Supp.3d 1128, 1139–40 (D. Or. 2019) (dismissing tort claims for lack of personal jurisdiction when the defendant New York college, despite phone calls, letters, and physical visits to Oregon, had not aimed the alleged harmful conduct at the forum state).

Here, the overwhelming majority of schools mentioned in the Amended Complaint are not subject to this Court's jurisdiction.[3] Web presence, e-mails, phone calls, and even the occasional recruiting visit, do not rise to the level of contacts to justify personal jurisdiction. *See College of Mount Saint Vincent*, 383 F. Supp. 3d at 1137–40. And any contacts those schools may have with Oregon are unlikely to be related to plaintiffs' claim that Title IX's religious exemption is unconstitutional. At very least, the Amended Complaint is silent about how, if at all, any of the named schools' reliance on the Title IX religious exemption harmed the plaintiffs in Oregon.

---

[3] The other schools are located in (1) South Carolina (Bob Jones University); (2) Texas (Baylor University, Covenant Christian Academy); (3) Tennessee (Union University, Lipscomb University, Lee University); (4) New York (Nyack College); (5) Idaho (Brigham Young University-Idaho); (6) California (Fuller Theological Seminary, Azusa Pacific University, La Sierra University, and Westmont College); (7) Nebraska (York College and Grace University); (8) Ohio (Cedarville University); (9) Pennsylvania (Clarks Summit University, Messiah University, and Eastern University); (10) Oklahoma (Oklahoma Christian School and Oklahoma Baptist University); (11) Georgia (Toccoa Falls College); (12) Iowa (Dordt University); (13) Indiana (Indiana Wesleyan University); (14) Utah (Brigham Young University); (15) Virginia (Liberty University; Regent University School of Law); (16) Colorado (Colorado Christian University); (17) Illinois (Moody Bible Institute); (18) Washington (Seattle Pacific University); (19) Missouri (College of the Ozarks). FAC ¶¶ 13–51.

In sum, many of the religious schools necessary to respond to the factual bases of plaintiffs' claims *cannot* be joined because this Court lacks personal jurisdiction over them.

### C.    The action cannot, in fairness, proceed without the named religious schools.

The final question is whether the case can equitably proceed without the necessary parties. And here too, the Court should dismiss under Federal Rule of Civil Procedure 12(b)(7) because (again assuming the Plaintiffs have stated valid claims) it cannot, in fairness, proceed without the named schools to respond to the Amended Complaint's factual claims.

Rule 19(b) provides four factors to consider in determining whether to dismiss an action: "(1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum." *Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496, 1499 (9th Cir. 1991). Only the first two factors are relevant here. And both point decisively toward dismissal.

As to the first factor: For the reasons explained above, the colleges named in the Amended Complaint will be substantially prejudiced if they are not allowed to respond to Plaintiffs' factual allegations and ultimately lose their right to rely on the Title IX religious exemption despite their sincere religious beliefs about sex and

gender.[4]  To be sure, the intervenors can and will protect the interests of the named colleges in resisting Plaintiffs' *facial* challenge to the Title IX exemption. But their participation cannot eliminate the prejudice to the named colleges that would result from their being denied the ability to respond to Plaintiffs' *as-applied* challenges— which necessarily depend on facts specific to each school.

Nor (as to the second factor) will it be possible to lessen the harm that Plaintiffs' requested relief will impose on the named schools by carefully crafting the relief. If this Court decides that Plaintiffs are correct, and that the Title IX religious exemption as applied with respect to LGBT students violates the Constitution, then, by the force of that holding's logic, Plaintiffs will be entitled to the full declaratory relief they are seeking.[5] In a constitutional challenge seeking injunctive relief as applied to all members of a particular group, it really is all or nothing.

Simply put, Plaintiffs have chosen not to name most of the parties necessary to proper resolution of this case. Thus, even if Plaintiffs had stated valid claims (and they have not), this Court cannot fully address Plaintiffs' as-applied claims without the input of those necessary parties. Plaintiffs' Amended Complaint therefore should be dismissed under Federal Rule of Civil Procedure 12(b)(7).

---

[4] The Rule 19(b) prejudice analysis is the same as the Rule 19(a) necessary-party analysis. *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 n.4 (10th Cir. 1989).

[5] Plaintiffs will not, however, be entitled to attorneys' fees because 42 U.S.C. § 1988 does not apply to cases against the federal government and because the government has not waived sovereign immunity. *Ordonez v. United States*, 680 F.3d 1135, 1138 (9th Cir. 2012).

### III.   The Court should dismiss the Amended Complaint because Plaintiffs fail to state any viable claim.

Even if Plaintiffs had standing and had joined all necessary parties, the Amended Complaint should still be dismissed for failure to state a viable claim. Plaintiffs assert five causes of action, pressing novel arguments that the Title IX religious exemption violates: (1) equal protection and substantive due process rights under the Fifth Amendment; (2) the Establishment Clause; (3) freedom of religion, free speech, assembly, and associational rights under the First Amendment; (4) the Administrative Procedure Act ("APA"); and (5) the Religious Freedom Restoration Act ("RFRA"). *See* First Am. Class Action Compl. ("FAC") 73-86, ECF No. 35. The Amended Complaint should be dismissed because none of these states a claim upon which relief can be granted.

### A.    Plaintiffs fail to state a claim under the APA.

Plaintiffs' APA claim focuses on two final rules issued by the Department in 2020 to codify its existing and longstanding practices in Title IX's implementing regulation, 34 C.F.R. § 106.12. Plaintiffs challenge both final rules under the APA, arguing that they "should be vacated as arbitrary and capricious." FAC ¶¶ 688, 697. But Plaintiffs fail to state an APA claim because the final rules merely explained the Department's longstanding and lawful application of the religious exemption, and the final rules were reasonable and considered voluminous comments. And importantly, Plaintiffs' APA claim is itself insufficient to support the requested relief, *id.* at 87-88, because even in the absence of the Department's recent final rules, the statutory

religious exemption, the exemption contained in the prior version of the regulation, and the Department's longstanding interpretation of the exemption would all remain.

The APA's arbitrary-and-capricious standard merely requires "that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). As the Supreme Court has held, "[j]udicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*

***The August Rule.*** The first rule, effective August 2020, merely codified the Department's "longstanding" position that an institution need not obtain a formal assurance from the Department before asserting the statutory religious exemption. 85 Fed. Reg. 30026, 30475 (May 19, 2020) ("August Rule"). The August Rule brought the regulation "further in line with the relevant statutory framework," because "[n]o part of the statute requires that recipients receive an assurance letter from OCR, and no part of the statute suggests that a recipient must be publicly on the record as a religious institution claiming a religious exemption before it may invoke a religious exemption in the context of Title IX." *Id., accord* 20 U.S.C. § 1681(a)(3). Indeed, a federal court (in a case involving two of the plaintiffs in this case) agreed, finding that requiring religious schools to provide notice or seek the Department's permission before invoking the exemption "would contradict the plain language of the Religious Organization Exemption, which automatically exempts from the prohibitions of

Section 1681 any educational institution that meets the statutory criteria for the exemption." *Maxon v. Fuller Theological Seminary*, 2020 WL 6305460, at *6 (C.D. Cal. Oct. 7, 2020).

The August Rule is not arbitrary and capricious under the APA's deferential standard. Before issuing the August Rule, the Department issued a Notice of Proposed Rulemaking and "received more than 124,000 comments on the proposed regulations." 85 Fed. Reg. at 30055. Contrary to Plaintiffs' bald allegation, FAC ¶ 693, the August Rule gave a detailed explanation of the Department's reasons for codifying its longstanding practice, discussed the relevant statutory language, evaluated alternatives, and considered and responded to comments, including comments concerning the rights of students who identify as LGBTQ+. *Id.* at 30475–30482. The August Rule is far from arbitrary or capricious.

Moreover, the August Rule did not mark a change of course, but merely codified longstanding policy. 85 Fed. Reg. at 30475 ("Contrary to commenters who suggested that the [prior regulation] require[d] schools to affirmatively request an assurance letter from OCR, OCR has previously interpreted the [prior] regulation to mean that a school can invoke a religious exemption even after OCR has received a complaint regarding the educational institution."). So there could be no legitimate reliance interest in a contrary interpretation of the regulation. Because the August Rule merely codifies "the intent of Congress, as evidenced by the plain language of Section 1681," *Maxon,* 2020 WL 6305460, at *6, Plaintiffs fail to state a viable claim against it.

*The November Rule.* The second rule, effective November 2020, also codified existing Department policies on how institutions can show they are controlled by a religious organization and therefore eligible to invoke the exemption. 85 Fed. Reg. 59916, 59945 (Sept. 23, 2020) ("November Rule"). As the Department explained, Title IX itself "does not directly address how educational institutions demonstrate whether they are controlled by a religious organization." *Id.* at 59918. Accordingly, the Department explained its longstanding recognition that "religious organizations are organized in widely different ways that reflect their respective theologies." *Id.* "Indeed, the Department has long recognized exemptions for educational institutions that are controlled by religious organizations with [both] hierarchical and non-hierarchical structures." *Id.* The Department further explained that both the Constitution and RFRA obligate it "to broadly interpret 'controlled by a religious organization' to avoid religious discrimination among institutions of varying denominations." *Id.*

The November Rule is also far from being arbitrary or capricious. In enumerating the ways that schools can show they are controlled by a religious institution, the November Rule simply codified "existing factors that the Assistant Secretary for Civil Rights uses when evaluating . . . requests for a religious exemption" based on "non-binding guidance issued to OCR personnel dating back more than 30 years[.]" *Id.* at 59949.

Moreover, before issuing the rule, the Department issued a Notice of Proposed Rulemaking and "received more than 17,000 comments on the proposed regulations."

85 Fed. Reg. at 59919. And, contrary to Plaintiffs' bald allegations, FAC ¶¶ 676–77, the November Rule gave a detailed explanation of the Department's reasons for clarifying how it determined control by a religious organization, discussed the relevant statutory language, evaluated alternatives, and considered and responded to various comments, including comments regarding the civil rights of students who identify as LGBTQ+. 85 Fed. Reg. at 59945–62. Because the November Rule merely codified factors that the Department had used for decades to evaluate control by a religious organization, *id.* at 59949, there can be no legitimate reliance interest in a contrary interpretation.

Furthermore, the November Rule is consistent with the law, the agency's authority, and the Department's prior interpretation of "control by a religious organization." The Department reasonably "determined it is necessary to regulate given the statutory silence and genuine ambiguity in regard to the criteria for obtaining a religious exemption under Title IX." *Id.* at 59949. The November Rule's changes "are consistent with the Title IX statute in that they do not contradict, but attempt to clarify, an explicit exception provided for in the Title IX statute." *Id.*

In short, because both final rules were reasonably explained and are consistent with the law and the Department's longstanding practice, Plaintiffs' APA claim must be dismissed.

### B.    Plaintiffs fail to state a claim under the Establishment Clause.

Plaintiffs have also failed to sate a claim under the Establishment Clause. Indeed, religious exemptions have repeatedly survived Establishment Clause challenges, and the exemption here should fare no differently. Title IX's religious

exemption is a denominationally neutral accommodation of religion, consistent with our nation's history and tradition, and easily passes the *Lemon* test. Plaintiffs' Establishment Clause claim should be dismissed.

## 1. The exemption is constitutional under *Corporation of Presiding Bishop v. Amos.*

Plaintiffs' Establishment Clause claim stumbles out the gate because the Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334 (1987) (citation omitted). Government can even "accommodate religion beyond free exercise requirements, without offense to the Establishment Clause." *Cutter v. Wilkinson*, 544 U.S. 709, 713 (2005). In Title IX, Congress followed this "happy tradition," *Gillette v. United States*, 401 U.S. 437, 453 (1971), exempting religious educational institutions from Title IX's requirements if they conflicted with the school's "religious tenets." 20 U.S.C. § 1681(a)(3).

The Supreme Court upheld a nearly identical statutory exemption against a nearly identical challenge. In *Amos*, an employee challenged Title VII's religious exemption for violating the Establishment Clause. 483 U.S. at 329. Like Title IX's exemption, Title VII's protected "religious . . . educational institution[s]"; the latter just did so "with respect to the employment of individuals of a particular religion . . . ." *Id.* at 329 n.1. *Amos* upheld this exemption because it served a legitimate purpose (reducing government interference with religious organizations), allowed religious

organizations to advance their mission (without forcing the government to do so), and treated religion neutrally (without discriminating among religions). *Id.* at 335–39.

The same logic applies here. Like its Title VII counterpart, Title IX's exemption allows religious schools to define and carry out their religious missions, does not require the government to promote religion, and protects all religious educational organizations without singling out any denomination or belief for special treatment. To be sure, Plaintiffs believe the exemption favors certain religious beliefs and denominations. FAC ¶¶ 587, 648-49, 654-55. But the Supreme Court already considered and rejected this argument, finding that "critical weakness" of Plaintiffs' claim is "that [the exemption], on its face, simply does not discriminate on the basis of religious affiliation or religious belief." *Gillette*, 401 U.S. at 450. The exemption is constitutional under *Amos*.

### 2.    The exemption is consistent with history and tradition.

Although *Amos* itself resolves this case, the Supreme Court recently adopted a historical test to evaluate Establishment Clause claims. Title IX's exemption satisfies this test as well.

Since 1971, courts have sporadically applied the three-part test from *Lemon v. Kurtzman*, 403 U.S. 602 (1971), to evaluate Establishment Clause claims. *See Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2080 (2019) (plurality opinion) (surveying this history). But this test has "been harshly criticized by Members of th[e] [Supreme] Court, lamented by lower court judges, and questioned by a diverse roster of scholars." *Id.* at 2081. In many recent cases, the Supreme Court has refused to apply or simply ignored *Lemon*. *Id.* at 2080 (listing cases). Now, the Supreme Court

22 – Defendant-Intervenors' Joint Motion to Dismiss Plaintiffs' Amended Complaint

has largely discarded *Lemon* and adopted an approach that "looks to history for guidance"—asking whether a particular action is consistent with "historical practices and understandings." *Id.* at 2087; *id.* at 2101-02 (Gorsuch, J., concurring) (agreeing with plurality's "historically sensitive approach").

Under this historical approach, Title IX's exemption easily satisfies Establishment Clause requirements. Our nation boasts a long history of accommodating religion through statutory exemptions without violating the Establishment Clause. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1905-12 (2021) (Alito, J., concurring); Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original Understanding of the Establishment Clause*, 81 Notre Dame L. Rev. 1793, 1808–09 (2006). And for the past century, the Supreme Court has repeatedly upheld religious exemptions against Establishment Clause attacks:

- *Arver v. United States*, 245 U.S. 366, 376, 389–90 (1918) (draft exemption for clergy, seminarians, and pacificists);
- *Goldman v. United States*, 245 U.S. 474, 476 (1918) (same);
- *Zorach v. Clauson,* 343 U.S. 306, 312 (1952) (exemption from compulsory education law for religious instruction off campus);
- *Walz v. Tax Comm'n of New York*, 397 U.S. 664, 680 (1970) (property tax exemption for religious non-profits);
- *Gillette,* 401 U.S. at 441, 460 (draft exemption for those with certain religious and conscientious objections);
- *Amos*, 483 U.S. at 334 (Title VII religious exemption); and
- *Cutter*, 544 U.S. at 720 (RLUIPA exemption for prisoners).

The Ninth Circuit has also upheld additional religious exemptions:

- *Kong v. Scully*, 341 F.3d 1132, 1134 (9th Cir. 2003) (exemption for non-medical care of persons).

- *Droz v. Comm'r of IRS*, 48 F.3d 1120, 1124 (9th Cir. 1995) (exemption from tax for Social Security).

By 2020, the tradition of religious exemptions was so well-established that, when the Supreme Court considered a challenge to the Affordable Care Act's religious exemption, one Justice noted that "the States do not argue—and there is no basis for an argument—that the new rule violates [the Establishment] Clause." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2396 n.13 (2020) (Alito, J., concurring). Because accommodating religious exercise is consistent with our nation's history and tradition, Plaintiffs' Establishment Clause claim fails.

### 3.    The exemption satisfies the *Lemon* test.

Moreover, although many courts have rightly abandoned the *Lemon* test, Title IX's religious exemption satisfies that test as well. As the federal defendants have well explained in their motion to dismiss (Dep't's Mot. to Dismiss, ECF No. 56), the exemption has a secular purpose, its primary effect neither advances nor inhibits religion, and it does not entangle government with religion. *Accord Williams v. California*, 764 F.3d 1002, 1014 (9th Cir. 2014).

### C.    Plaintiffs fail to state an Equal Protection claim.

Plaintiffs' equal-protection claim must also be dismissed. Plaintiffs base that claim on alleged harm to "sexual and gender minority students." FAC ¶ 641. But this vague classification does not constitute a protected class. Nor does the challenged exemption classify *anyone* based on this or any protected class. The exemption therefore triggers only rational-basis review, which the exemption easily survives.

### 1.    The exemption triggers rational-basis review under *Amos*.

The level of scrutiny for an equal protection claim depends on "the state's classification of groups." *Gallinger v. Beccera*, 898 F.3d 1012, 1016 (9th Cir. 2018)

(citation omitted). Laws discriminating against a suspect class ("such as race, religion, or national origin") receive "strict scrutiny." *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). "Regulations which *facially* discriminate on the basis of gender . . . must receive intermediate scrutiny." *Harrison v. Kernan*, 971 F.3d 1069, 1078 (9th Cir. 2020) (emphasis added). And laws that classify upon neither a suspect nor quasi-suspect class receive rational-basis review. *Ball*, 254 F.3d at 823.

Here, rational-basis review applies because Title IX's religious exemption does not mention—much less classify—*any* protected class. The exemption "is neutral on its face and motivated by a permissible purpose of limiting governmental interference with the exercise of religion." *Amos*, 483 U.S. at 339. Thus, there is "no justification for applying strict scrutiny." *Id.* While Plaintiffs say they are "sexual and gender minority students," their own classification is irrelevant. It is the *statute's* classification that matters. And here, the challenged exemption does not classify students at all; it applies only to religious schools.

Unable to identify any facial classification in the statute, Plaintiffs accuse the exemption of negatively *affecting* "sexual and gender minority students." But alleged disparate impact alone does change the level of scrutiny. As the Supreme Court has held, "[w]hen the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 272 (1979). Further, no court has recognized the vague and broad classification of "sexual and gender minorities." The Supreme Court has never recognized sexual orientation or transgender status as a suspect

class, and the challenged exemption does not classify students into those groups, or any other.[6]

Because Title IX's religious exemption is facially neutral, it is subject only to rational-basis review unless it was adopted with an "invidious" purpose to discriminate on another basis. *Feeney*, 442 U.S. at 274. But Plaintiffs do not allege any facts showing that Congress had an invidious purpose in adopting the exemption or that the Department had this purpose in applying it. And for good reason: The Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices." *Amos*, 483 U.S. at 334 (citation omitted). After all, "the First Amendment itself . . . gives special solicitude to the rights of religious organizations." *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 189 (2012). And Title IX affects a "core" religious function of religious schools and seminaries: "educating young people in their faith, inculcating its teachings, and training them to live their faith." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064 (2020).

Moreover, a law survives rational-basis review "if there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification."

---

[6] To be sure, the Ninth Circuit has applied intermediate scrutiny to laws with *facial* classifications based on sexual orientation and transgender status. *SmithKline Beecham Corp. v. Abbott Laboratories*, 740 F.3d 471, 481 (9th Cir. 2014) (sexual orientation), *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019) (transgender). But other circuit courts have refused to do so. *See, e.g.*, *Cook v. Gates*, 528 F.3d 42, 61-62 (1st Cir. 2008); *Able v. United States*, 155 F.3d 628, 635 (2d Cir. 1998); *Richenberg v. Perry*, 97 F.3d 256, 260 (8th Cir. 1996). And in any event, the Title IX exemption does not classify anyone on either of these bases.

*Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). And Title IX's exemption survives rational-basis review because it serves a legitimate governmental interest of accommodating religion. *See Amos*, 483 U.S. at 339 (Title VII religious exemption triggered and survived rational basis review by serving a legitimate state interest of accommodating religion).

### 2.    The exemption satisfies any scrutiny level.

In any event, Title IX's exemption satisfies *any* level of review. It satisfies intermediate scrutiny because exempting religious institutions from Title IX is substantially related to an important government interest in protecting the free exercise of religion. *See* Dep't's Mot. to Dismiss at 27–28. Strict scrutiny cannot apply due to religious schools' alleged interference with Plaintiffs' right to marry. Dep't's Mot. to Dismiss at n.8. Indeed, strict scrutiny applies "[o]nly when a *government* regulation *directly* and substantially interfer[e]s with the fundamental incidents of marriage." *Parsons v. Del Norte Cnty.*, 728 F.2d 1234, 1237 (9th Cir. 1984) (per curiam) (emphasis added). And in any event, the exemption would satisfy strict scrutiny because it serves a compelling government interest by preventing the government from violating foundational religious liberties protected by the First Amendment and RFRA. *See, e.g.*, *Amos*, 483 U.S. at 334 ("[T]he government may (and sometimes must) accommodate religious practices."). Further, the scope of the exemption is "suitably tailored" to that interest because it only applies "if" and "to the extent" that application of Title IX would violate an institution's religious tenets. *See* 20 U.S.C. § 1681(a)(3); 34 C.F.R § 106.12(a).

### D.    Plaintiffs fail to state a Substantive Due Process claim.

Plaintiffs have likewise failed to state a viable substantive due process claim. As the Ninth Circuit has noted, "[s]ubstantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases." *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008). Fundamental rights include "particular rights contained in the first eight Amendments" because they are "fundamental to our scheme of ordered liberty and system of justice." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 763-64 (2010). They also include unenumerated "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citation omitted). According to the Supreme Court, these rights include the rights to marry, to have children, to direct the education and upbringing of one's children, and to marital privacy. *Id.* at 720. (citations omitted). But courts must "exercise the utmost care whenever [they] are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed" into judicial policy preferences. *Id.* (cleaned up).

Plaintiffs allude to several Substantive Due Process theories, asserting that Title IX's exemption burdens their fundamental right to marry (FAC ¶ 634-36), as well as their alleged "rights" to obtain "gender-affirming" and "culturally competent" medical care; to be free from bias-related harassment and conversion therapy; to privacy about their LGBTQ+ status; and to be clothed and groomed consistent with that status. FAC ¶ 645. But the Title IX *exemption* does not burden any of these.

28 – Defendant-Intervenors' Joint Motion to Dismiss Plaintiffs' Amended Complaint

Substantive due process is not implicated unless "the *government* attempts to intrude upon [Plaintiffs'] personal and private lives." *Witt*, 527 F.3d at 819 (emphasis added). And here, the government is not stopping anyone from marrying or obtaining medical care or dressing as they wish. Plaintiffs do not seek to be free from government interference but rather to compel private religious schools to conform to Plaintiffs' views. They have no right to that.[7]

### E.   Plaintiffs fail to state a claim under the First Amendment or RFRA.

Plaintiffs' First Amendment and RFRA claims likewise fail as a matter of law. To state a claim under the First Amendment or RFRA, Plaintiffs must allege that their injuries are caused by the *government*, not private actors. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019); *see* 42 U.S.C. § 2000bb-1(a). The fact that a private entity receives governmental funding or is subject to regulation does not convert its conduct into government action. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Nor does the government's acquiescence, approval, or encouragement of private conduct. *See id.*; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978). Plaintiffs must instead show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004 (citation omitted). No such nexus exists when, as here, the alleged injury results from

---

[7] Moreover, apart from marriage, neither the Supreme Court nor the Ninth Circuit have recognized Plaintiffs' alleged "rights" as fundamental. *See Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1250 (11th Cir. 2004) (declining to create fundamental right for sexual privacy).

the intervening conduct of a private party exercising independent judgment. *See id.*;

*Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982).

Here, Plaintiffs allege that their constitutional rights are burdened by "campus policies." FAC ¶ 701. But those policies were developed and enforced by private religious schools, not the government. In an attempt to manufacture governmental action, Plaintiffs suggest that the Department itself burdens their constitutional rights by granting religious exemptions, which in turn, allow private religious schools to maintain policies that allegedly injure Plaintiffs. FAC ¶¶ 2, 5, 705. But the Department's mere acquiescence or approval of private religious schools' conduct does not turn their private religious decisions into government action. *See Blum*, 457 U.S. 1004. And the intervening conduct of private religious schools exercising their independent judgment (by teaching their religious doctrines and enforcing policies reflecting their individual religious beliefs) destroys any nexus between the Department's recognition of religious exemptions and Plaintiffs' alleged injuries. Plaintiffs therefore fail to plausibly allege governmental action, and their First Amendment and RFRA claims must be dismissed.

### F.    Plaintiffs fail to state any claim because Title IX forbids discrimination based on sex, not sexual orientation or gender identity.

Finally, Plaintiffs' entire complaint presupposes that Title IX's prohibition of "sex" discrimination includes sexual orientation and gender identity. FAC ¶ 56 (alleging that Title IX prohibits "sex, sexual orientation and gender identity discrimination."). Although the federal Defendants agree with Plaintiffs on that point, both are wrong.

In any question of statutory interpretation, the court begins with the "fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute"—that is, their original public meaning. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (cleaned up). Title IX's text refers only to "sex." 20 U.S.C. § 1681 *et seq*. Congress passed Title IX in 1972. In common, ordinary usage, the word "sex" in 1972 meant biologically male or female, based on reproductive organs.[8] The words "gender identity," "gender expression," and "sexual orientation" also do not appear anywhere in the statute or accompanying federal regulation, 34 C.F.R. § 106.12.

The "clear statement rule" also requires this interpretation. The Supreme Court has recognized that education is "perhaps the most important function of state and local governments," *Honig v. Doe*, 484 U.S. 305, 309 (1988) (citation omitted), and that States generally can regulate housing, including campus housing. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982). For laws displacing state regulation or imposing grant conditions, the clear statement rule limits the States' and the public's obligations to those requirements "unambiguously" set forth on the face of the statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991). In passing Title

---

[8] *Sex*, Webster's New World Dictionary of the American Language (College ed. 1962) ("either of the two divisions of organisms distinguished as male or female"); *Sex*, The American Heritage Dictionary of the English Language (1st ed. 1969) ("[t]he property or quality by which organisms are classified according to their reproductive functions").

IX, Congress unambiguously regulated differential treatment based on "sex," but it did not unambiguously include sexual orientation or transgender status. 20 U.S.C. § 1681(a).

Nor has the Supreme Court interpreted Title IX to include these categories. *Bostock v. Clayton County* considered only whether an employer who fires an employee based on sexual orientation or gender identity does so, in part, because of sex under Title VII. 140 S. Ct. 1731, 1737, 1743 (2020). *Bostock* did not fold concepts like sexual orientation and gender identity into "sex." Rather, it affirmed that they are "distinct concepts." *Id.* at 1746-47. And the Court rejected the claim that its "decision will sweep beyond Title VII to other federal or state laws that prohibit sex discrimination," emphasizing that "none of these other [federal laws prohibiting sex discrimination] are before us." *Id.* at 1753.

Title VII also has a different purpose than Title IX. According to *Bostock*, Title VII exists to make an employee's sex irrelevant to their selection, evaluation, and compensation. *Id.* at 1741. But a person's sex is often relevant under Title IX, which expressly authorizes many sex-separate activities and intimate facilities, and in some cases *requires* consideration of a person's sex. *See, e.g.*, 20 U.S.C. §§ 1681(a), 1686 ("Notwithstanding anything to the contrary contained in this chapter, nothing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes."); 45 C.F.R. § 86.32 ("[a] recipient may provide separate housing on the basis

of sex"); 34 C.F.R §§ 106.32(b), 106.33, 106.34, 106.40, 106.41, 106.43. 106.52, 106.59, 106.61.

Given these differences, this Court should follow Title IX's plain text and read it as only banning discrimination based on sex, not sexual orientation or gender identity. *Cf. Bostock*, 140 S. Ct. at 1753, 1754 (explaining that the Court was not "address[ing] bathrooms, locker rooms, or anything else of the kind," nor was it addressing how "doctrines protecting religious liberty interact with Title VII").

## IV.    The Amended Complaint cannot state any claim for relief because the Title IX religious exemption is affirmatively required.

An additional reason requiring dismissal of Plaintiffs' challenge to the Title IX exemption is that religious schools would be entitled to such an exemption even if Congress had not expressly included one in the statute. Without a religious exemption, Title IX would violate the Free Exercise Clause, the Religious Freedom Restoration Act (RFRA), the Free Speech Clause, the Establishment Clause, and schools' association rights. Because the religious exemption is affirmatively required, it is impossible for Plaintiffs to establish their novel position that the exemption is unlawful.

### A.    The Free Exercise Clause requires the religious exemption.

Under the Free Exercise Clause, a law that burdens religion is presumptively unconstitutional and subject to strict scrutiny unless it is neutral and generally applicable. *Fulton*, 141 S. Ct. at 1876. In *Fulton*, the Supreme Court unanimously held that it is "plain" that the government substantially burdens an institution's religious exercise "by putting it to the choice of curtailing its mission or approving

relationships inconsistent with its beliefs." *Id.* And a law is not neutral and generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 1877. Indeed, laws "are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (emphasis in original).

If Title IX were stripped of its religious exemption and interpreted to reach sexual orientation and gender identity, the law would substantially burden schools' religious exercise by putting them to the choice of approving relationships inconsistent with their beliefs or curtailing their mission—potentially closing their doors—due to loss of enrollment among low- and middle-income students who need financial assistance to pursue education. *See* Decl. of Sheldon Nord, Ph.D., ¶¶ 32, 34, ECF No. 9 ("The present legal action seeks to remove Title IX's religious exemption, which would force Corban to choose between violating its religious convictions or suffering a significant reduction in funding/enrollment. […] Corban could not sustain the loss of federal funding and enrollment that would alternatively come if Title IX no longer had a religious exemption."); Decl. of John Jackson, Ph.D., ¶¶ 31–32, ECF No. 10 (same); Decl. of Brian Arnold, Ph.D., ¶¶ 8, 31, ECF No. 11 (same). Eliminating the religious exemption would impose substantial burdens on schools' religious exercise and render Title IX presumptively unconstitutional.

Title IX, moreover, is not generally applicable, so the law would trigger and fail strict scrutiny without a religious exemption. The government's interest in enforcing Title IX is to prevent discrimination based on sex, but the law enumerates *nine* exceptions to its prohibition against sex discrimination. 20 U.S.C. § 1681(a)(1)– (9). If Title IX were stripped of its religious exemption, the law would impose a substantial burden on religious schools while retaining eight secular exceptions that undermine the government's nondiscrimination interest. Yet the Supreme Court has made clear that a law is not narrowly tailored—and thus cannot survive strict scrutiny—when it allows for even the possibility of secular exemptions while denying a religious exemption. *Fulton*, 141 S. Ct. at 1882 ("The creation of a system of exceptions . . . undermines the [government's] contention that its non-discrimination policies can brook no departures.").

In short, so long as the government provides *any* exemption to Title IX's general prohibition against sex discrimination, it must preserve the religious exemption. Accordingly, the religious exemption is required to prevent Title IX from violating the Free Exercise Clause, and the relief that Plaintiffs request is itself unconstitutional.

### B.    RFRA requires the religious exemption.

RFRA likewise forecloses Plaintiffs' requested relief and requires dismissal. Under RFRA, "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in

furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* at § 2000bb-1(b).

As explained above, the government would substantially burden schools' religious exercise by enforcing Title IX without the religious exemption, putting schools to the choice of curtailing their mission or approving relationships that are inconsistent with their convictions. *See supra,* Section IV.A. And the Supreme Court has clarified that a law that withholds religious exemptions while granting secular exceptions—like the eight secular exceptions in Title IX—is not the least restrictive means of advancing a compelling government interest. *Fulton*, 141 S. Ct. at 1882. So religious schools' RFRA rights also foreclose Plaintiffs' requested relief and require dismissal of the Amended Complaint.

**C.    The Free Speech Clause requires the religious exemption.**

If Title IX were stripped of its religious exemption and interpreted to reach sexual orientation or gender identity, Title IX would also infringe religious schools' free speech rights. Private religious speech is protected under the First Amendment. *See, e.g.*, *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,* 508 U.S. 384 (1993). And forbidding the government from choosing favored and disfavored messages is at the core of the First Amendment's free-speech guarantee. *See Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). Restricting speech based on its content and viewpoint is presumptively unconstitutional. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (content); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (viewpoint). So, too, is compelling private speakers to engage in unwanted expression. *See Wooley v. Maynard,* 430 U.S. 705, 715 (1977). When the

government regulates speech by mandating that persons explicitly agree with the government on a particular matter, it "plainly violate[s] the First Amendment." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013).

Here, Plaintiffs' requested relief would require the government to monitor and target religious schools' speech, including classroom teaching (*see, e.g.*, FAC ¶¶ 132–33, 136, 146, 148), university handbooks and codes of conduct (*see id.* at ¶¶ 67, 85, 108, 145, 156, 168, 179, 182, 193, 219, 234, 247, 253–54, 264, 275–76, 307, 309–10, 343–44, 355–56, 372, 384–85, 396–97, 413, 420, 432, 450–51, 469–70), and confidential counseling (*see id.* at ¶¶ 87, 235, 265, 414, 491). Enforcing Title IX without a religious exemption would necessarily chill and restrict speech based on the content and viewpoint of the speaker: religious schools with beliefs that the Department "condones"[9] would be allowed to speak on matters of gender and sexuality while retaining federal funding, but religious schools with beliefs that the Department "does not condone" could be penalized for their speech. Plaintiffs' requested relief even asks this Court to compel religious schools to communicate "respect" for certain conduct and beliefs that conflict with their religious convictions.

---

[9] The Department has repeatedly departed from religious neutrality in this case, going out of its way to state that it does not approve of certain religious beliefs and policies on gender and sexual morality. Dep't's Mot. to Dismiss 2 ("The Department does not condone the alleged actions that Plaintiffs attribute to their educational institutions."); *id.* at 22 ("Defendants do not condone the conduct alleged by Plaintiffs[.]"); *id.* at 24 ([T]he federal government in no way condones the private conduct alleged in the FAC."); Dep't's Prelim. Inj. Opp'n 2, ECF No. 62 ("Defendants do not condone the alleged actions that Plaintiffs attribute to their educational institutions."); Dep't's Reply in Supp. of Mot. to Dismiss 1, ECF No. 92 ("Defendants have explained that they do not condone the alleged actions that Plaintiffs attribute to their educational institutions.").

*See id.* at 87. Because Plaintiffs' requested relief would violate the freedom of speech, the Amended Complaint should be dismissed for this reason as well.

### D.    Schools' association rights require the religious exemption.

The First Amendment protects the right "to associate" or not associate with others for educational and religious ends. *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). Thus, the government may not invade an organization's expression by forcing "inclusion of an unwanted person in a group" if doing so affects "the group's ability to advocate public or private viewpoints." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000); *accord Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Bos.,* 515 U.S. 557 (1995). Enjoining Title IX's religious exemption would significantly impair religious schools' ability to advocate, teach, and publish their religious beliefs about marriage and human sexuality, in violation of the First Amendment. *See id.* at 648, 650, 656-57. Accordingly, Plaintiffs' requested relief is unconstitutional and the Amended Complaint should be dismissed.

### E.    The Establishment Clause requires the religious exemption.

The Establishment Clause also requires the religious exemption, foreclosing Plaintiffs' requested relief and requiring dismissal. The Establishment Clause's "clearest command" is that "one religious denomination cannot be officially preferred over another," *Larson v. Valente*, 456 U.S. 228, 244 (1982), and the Free Exercise Clause forbids the government from using a school's religious affiliation to deny it and its students access to religiously neutral and generally available federal funding. *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2256 (2020) (invalidating state

law conditioning eligibility for "government aid" on a school's decision to "divorce itself from any religious control or affiliation").

Eliminating Title IX's religious exemption would cause Establishment Clause violations because the government would be allowed—if not required—to prefer religious schools with certain religious views over other schools without them. The government would allow students to use their financial aid at religious schools that lack unpopular beliefs or policies on marriage and sexuality, but students who attend schools with such beliefs would be denied funding. And, regardless of whether a religious school had such beliefs or policies, *every* religious school in the country would be under constant review by the Department to determine Title IX eligibility. Yet the Establishment Clause forbids the government—including courts—from constantly reviewing religious "policy, administration, and governance." *Natal v. Christian and Missionary All.*, 878 F.2d 1575, 1578 (1st Cir. 1989). Because the religious exemption is also required to prevent Establishment Clause violations, Plaintiffs' requested relief is unconstitutional and the Amended Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted.

DATED this 2nd day of November, 2021.

/s/ Gene C. Schaerr
Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

/s/ Herbert G. Grey
Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org


* Admitted *pro hac vice*

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

/s/ Mark A. Lippelmann
Kristen K. Waggoner, OSB # 067077
  *Lead Counsel*
Email: kwaggoner@ADFlegal.org
David A. Cortman, GA Bar # 188810*
Email: dcortman@ADFlegal.org
Ryan J. Tucker, AZ Bar # 034382*
Email: rtucker@ADFlegal.org
Mark A. Lippelmann, AZ Bar # 036553*
Email: mlippelmann@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020


* Admitted *pro hac vice*

*Counsel for Defendants-Intervenors
Western Baptist College d/b/a Corban
University, William Jessup University
and Phoenix Seminary*

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limit requirements set forth in this Court's directive of October 8, 2021 and Local Rule 7-2 because it contains 10,412 words including headings, footnotes and quotations, but excluding the caption, table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.

/s/ Mark A. Lippelmann
Mark A. Lippelmann
*Counsel for Defendant-Intervenors*
*Corban University, William Jessup*
*University, and Phoenix Seminary*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document was served on all counsel of record in this case by ECF and by email.

DATED this 2nd day of November, 2021.

/s/ Mark A. Lippelmann
Mark A. Lippelmann
*Counsel for Defendant-Intervenors*
*Corban University, William Jessup*
*University, and Phoenix Seminary*
