Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

* Admitted *pro hac vice*

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

Kristen K. Waggoner, OSB # 067077
  *Lead Counsel*
Email: kwaggoner@ADFlegal.org
David A. Cortman, GA Bar # 188810*
Email: dcortman@ADFlegal.org
Ryan J. Tucker, AZ Bar # 034382*
Email: rtucker@ADFlegal.org
Mark A. Lippelmann, AZ Bar # 036553*
Email: mlippelmann@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020

* Admitted *pro hac vice*

*Counsel for Defendants-Intervenors
Western Baptist College d/b/a Corban
University, William Jessup University
and Phoenix Seminary*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., | No. 6:21-CV-00474-AA |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF EDUCATION, et al., | DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS |
| Defendants, | ORAL ARGUMENT REQUESTED |

v.

COUNCIL FOR CHRISTIAN
COLLEGES & UNIVERSITIES,
WESTERN BAPTIST COLLEGE d/b/a
CORBAN UNIVERSITY, WILLIAM
JESSUP UNIVERSITY AND PHOENIX
SEMINARY,

         Defendants-Intervenors.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

ARGUMENT .......................................................................................... 2

I.    Nothing in the Response Rehabilitates Plaintiffs' Lack of Standing. .............. 2

II.   The Schools Named in The Amended Complaint as Part of Specific
      Factual Allegations Are Necessary Parties. ........................................ 6

III.  Plaintiffs Fail to State Any Viable Claim. ........................................... 10

      A.  Plaintiffs fail to state a claim under the Establishment Clause. .............. 10

      B.  Plaintiffs fail to state an Equal Protection claim. ........................... 13

      C.  Plaintiffs fail to state a claim under the APA. ............................... 15

      D.  Plaintiffs fail to state a substantive due process claim. ..................... 19

      E.  Plaintiffs' RFRA and First Amendment claims should be dismissed. ....... 20

IV.   In Any Event, Title IX's Religious Exemption Is Constitutionally
      Required. ................................................................................ 21

      A.  The Free Exercise Clause and RFRA require an exemption. ................. 21

      B.  The Establishment Clause requires the exemption. ......................... 24

CONCLUSION ..................................................................................... 26

CERTIFICATE OF COMPLIANCE ........................................................... 27

CERTIFICATE OF SERVICE ................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright,*
    468 U.S. 737 (1984) ........................................................................ 3, 4, 5

*Am. Legion v. Am. Humanist Ass'n,*
    139 S. Ct. 2067 (2019) .......................................................................... 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................... 13, 20

*Blackhawk v. Pennsylvania,*
    381 F.3d 202 (3d Cir. 2004) ................................................................. 24

*Bob Jones Univ. v. Johnson,*
    396 F. Supp. 597 (D.S.C. 1974) ............................................................. 4

*Cascadia Wildlands v. Scott Timber Co.,*
    2018 WL 3614202 (D. Or. July 27, 2018) ............................................. 3

*Chevron U.S.A., Inc. v. NRDC,*
    467 U.S. 837 (1984) ............................................................................. 17

*Cooper Indus., Inc. v. Aviall Servs., Inc.,*
    543 U.S. 157, 170 (2004) ....................................................................... 4

*Cooper v. Aaron,*
    358 U.S. 1 (1958) .................................................................................... 4

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v.*
    *Amos,* 483 U.S. 327 (1987) ....................................................... 12, 13, 14

*Ctr. for Biological Diversity v. Export-Import Bank of the U.S.,*
    894 F.3d 1005 (9th Cir. 2018) ............................................................... 3

*Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.,*
    538 F.3d 1172 (9th Cir. 2008) ............................................................. 17

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.,*
    932 F.3d 843 (9th Cir. 2019), *cert. denied,* 141 S. Ct. 161 (2020) ............ 7

*Espinoza v. Mont. Dep't of Revenue,*
    140 S. Ct. 2246 (2020) ................................................................. 1, 24, 25

*Fed. Commc'ns Comm'n v. Prometheus Radio Project,*
    141 S. Ct. 1150 (2021) ......................................................................... 15

*Fulton v. Philadelphia,*
    141 S. Ct. 1868 (2021) ................................................................. *passim*

*Gallinger v. Beccera,*
    898 F.3d 1012 (9th Cir. 2018) ....................................................... 13, 14

*Grove City Coll. v. Bell*,
    465 U.S. 555 (1984) ..................................................................................... 24

*Juliana v. United States*,
    217 F. Supp. 3d 1224 (D. Or. 2016), *rev'd and remanded on other grounds*,
    947 F.3d 1159 (9th Cir. 2020) ..................................................................... 20

*Kennedy v. Bremerton Sch. Dist.*,
    4 F.4th 910 (9th Cir. 2021) .......................................................................... 11

*Larson v. Valente*,
    456 U.S. 228 (1982) .............................................................................. 18, 25

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) ..................................................................................... 11

*Lewis v. Bay Area Health Dist.*,
    2021 WL 499416 (D. Or. Feb. 10, 2021) ..................................................... 10

*Masterpiece Cakeshop, Ltd. v. Colorado C.R. Commission*,
    138 S. Ct. 1719 (2018) ................................................................................... 4

*Maxon v. Fuller Theological Seminary*,
    2020 WL 6305460 (C.D. Cal. Oct. 7, 2020) ............................................... 16

*Mays v. Deschutes Cnty.*,
    2016 WL 6824377 (D. Or. Nov. 16, 2016) .................................................... 6

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ..................................................................................... 13

*Norwood v. Harrison*,
    413 U.S. 455 (1973) ....................................................................................... 4

*Shermoen v. United States*,
    982 F.2d 1312 (9th Cir. 1992) .................................................................... 8, 9

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976) ..................................................................................... 2, 5

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) ...................................................................... 1, 22, 23

*Thomas v. Rev. Bd. Of Ind. Emp. Security Div.*,
    450 U.S. 707 (1981) ....................................................................................... 3

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014) ..................................................................................... 11

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    137 S. Ct. 2012 (2017) ................................................................................. 24

*Warth v. Seldin,*
    422 U.S. 490 (1975) ...................................................................................... 3

*Williams v. Att'y Gen. of Ala.,*
    378 F.3d 1232 (11th Cir. 2004) ................................................................ 19

*Witt v. Dep't of Air Force,*
    527 F.3d 806 (9th Cir. 2008) .................................................................... 19

## Statutes and Regulations

20 U.S.C. § 1681(a) ............................................................................... *passim*

34 C.F.R § 106.12(a) ...................................................................................... 14

42 U.S.C. § 2000bb-1(a) ....................................................................... 21, 22

42 U.S.C. § 2000bb–4 ................................................................................. 20

85 Fed. Reg. 30026 (May 19, 2020) .................................................. 15, 16

85 Fed. Reg. 59916 (Sept. 23, 2020) .......................................... 17, 18, 19

## INTRODUCTION AND SUMMARY OF ARGUMENT

Nothing in Plaintiffs' response undermines the Intervenors' showing that, for multiple independent reasons, Plaintiffs' complaint must be dismissed. Even before reaching the ultimate question of whether Plaintiffs state a claim, this should be dismissed because, as the Intervenors explained (at 3–15)—and Plaintiffs failed to persuasively rebut—Plaintiffs sued the wrong parties and failed to include dozens of necessary ones.

On the merits, moreover, as the Intervenors showed (at 16–33), each of Plaintiffs' claims is legally implausible. Indeed, never before has the Supreme Court invalidated a religious exemption on any of the bases the Plaintiffs offer. And the Court has repeatedly recognized the important role that statutory exemptions—like the Title IX exemption—play in protecting religious liberty.

Indeed, as Intervenors showed (at 33–39)—and Plaintiffs likewise have not meaningfully rebutted—something like that exemption would be constitutionally *required* even if Congress hadn't already provided it. The First Amendment's Religion Clauses forbid the government from denying religious schools access to "neutral government programs"—such as federal funding—because of their religious status or religiously motivated conduct. *See Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2254–55 (2020). And the fact that Title IX contains numerous secular exemptions means that Congress could hardly justify a refusal to grant a similar religious exemption. *See, e.g., Fulton v. Philadelphia*, 141 S. Ct. 1868, 1876–77 (2021); *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Plaintiffs offer no persuasive

rebuttal to any of these points, but instead rely upon inapposite precedents and overheated rhetoric.

## ARGUMENT

### I.    Nothing in the Response Rehabilitates Plaintiffs' Lack of Standing.

As both the Department and the Intervenors have repeatedly stressed, Plaintiffs lack standing to challenge the Title IX religious exemption by suing the Department, rather than the individual schools. Dep't's Reply to Mot. to Dismiss at 3, ECF No. 92; Intervenors' Mot. to Dismiss at 3–7, ECF No. 137. Plaintiffs' response only reinforces that conclusion.[1]

As to causation, Plaintiffs repeat (at 2) their claim that the Department, by following Title IX, is harming them. That is incorrect. As the Intervenors explained, in *Simon*, the Supreme Court found that injuries such as those alleged here are insufficient to demonstrate causation when they result from the "independent action of some third party" not "before the court." Intervenors' Mot. to Dismiss at 5, ECF No. 137 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). The Supreme Court then applied that same principle in *Allen* when it concluded that standing based on stigmatic harm cannot be based on third-party action, but instead

---

[1] Though not necessary to support this reason for dismissal, testimony at the preliminary-injunction hearing further undermines Plaintiffs' standing. Indeed, multiple witnesses testified that they lacked any direct knowledge about whether the Department has drafted policies on sexuality or gender at religious schools or encouraged or supported discrimination against LGBT students in any way. Day 1 Tr. at 103:16-22 (testimony of Veronica Bonifacio Penales); *id.* at 225:14–226:8 (testimony of Elizabeth Hunter); Day 2 Tr. at 440:5–441:11 (testimony of Alice Yao); Day 3 Tr. at 547:10–551:9 (testimony of Randolph Wills).

2 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
    TO DISMISS

requires "discriminatory *government* action." *Allen v. Wright*, 468 U.S. 737, 755 (1984) (emphasis added). As the Court explained, when, as here, the injury is indirect, it is "substantially more difficult to meet the minimum requirement of Art. III." *Id.* at 757–58 (quoting *Warth v. Seldin*, 422 U.S. 490, 505 (1975)).

Plaintiffs have not plausibly alleged that the application of Title IX's facially neutral religious exemption is somehow discriminatory. In establishing the Religious Exemption, Congress did not seek to harm LGBTQ+ students, but instead sought to avoid the serious constitutional questions that would necessarily arise from denying students at religious schools access to federal funding because of the schools' beliefs and practices. *See generally Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 717–18 (1981) (holding that the government burdens religion when it "conditions receipt of an important benefit upon conduct proscribed by a religious faith, or … denies such a benefit because of conduct mandated by religious belief").

Plaintiffs try (at 3) to sidestep the direct applicability of *Allen v. Wright* by attempting to distinguish it on its facts. But neither their single line of analysis there nor the paragraph they present in their response to the government's motion, distinguishes the *relevant* facts: *Allen* emphasizes that there is no causation (and consequently no redressability)[2] where, as here, "it is entirely speculative . . . whether

---

[2] As this Court has correctly recognized, "causation and redressability are two sides of the same coin." *Cascadia Wildlands v. Scott Timber Co.*, 2018 WL 3614202, at *11 (D. Or. July 27, 2018) (Aiken, J.) (quoting *Ctr. for Biological Diversity v. Export-Import Bank of the U.S.*, 894 F.3d 1005, 1012 n.2 (9th Cir. 2018)).

3 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
    TO DISMISS

withdrawal of a tax exemption from any particular school would lead the school to change its policies." 468 U.S. at 758.

Plaintiffs further argue that *Allen* doesn't apply here because, unlike the students there, Plaintiffs attend the schools they allege harmed them. But this argument misses the point because—as relevant here—the decision in *Allen* turned not on what school was attended, but whether the relief requested would actually prevent the harm complained of. *See, e.g.*, Pls.' Resp. to Dep't's Mot. to Dismiss at 11, ECF No. 86. Thus, the more important question here is whether it is government funding that *causes* the religious schools to adopt their current policies on sexuality and gender; and whether denying the funding would *prevent* the schools from maintaining such policies. Nothing in the Amended Complaint or the Response moves the needle away from the obvious answer to that question, which is "no."

Plaintiffs' invocation of *Norwood v. Harrison*, 413 U.S. 455 (1973), is similarly inapt. To begin, the Supreme Court did not directly analyze standing in *Norwood*, so the case is not precedential for that purpose. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (issues that "merely lurk in the record" but are not ruled upon by the Court, "are not to be considered as having been so decided as to constitute precedents").[3] And as the Department explained in its Reply (at 8–9), the

---

[3] For that reason, Plaintiffs are wrong to suggest that other cases that did not address standing "give" them standing to sue the government. *See* Pls.' Resp. to Dep't's Mot. to Dismiss at 10–11, ECF No. 86 (citing *Bob Jones Univ. v. Johnson*, 396 F. Supp. 597 (D.S.C. 1974), *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719 (2018), and *Cooper v. Aaron*, 358 U.S. 1 (1958)).

4 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
   TO DISMISS

*Norwood* plaintiffs didn't have standing, as a general matter, to challenge the government's funding decisions. Instead, they had standing because they were "parties to a school desegregation order" and sought relief "directly related to the concrete injury they suffered" because the government violated that order. *Allen*, 468 U.S. at 763. Plaintiffs here, by contrast, have nothing "resembling the school desegregation order in *Norwood*," Dep't's Reply to Mot. to Dismiss at 9, ECF No. 92, and certainly no government action violating such an order.

As to redressability, Plaintiffs all but concede (at 3–4) the very fact showing that their injuries are not redressable. They suggest that, regardless whether schools are denied funding or choose to amend their policies, the students' harms will be redressed. But that presents the Court with a false dichotomy and would be insufficient even if those were the only two choices. As the Intervenors explained (at 6–7), the Supreme Court in *Simon* held that "unadorned speculation"—such as speculation about what religious schools would do without the Title IX religious exemption—cannot demonstrate redressability. *Simon*, 426 U.S. at 41–42, 44.

Moreover, as the Department explained in its Reply (at 6), even without the Religious Exemption, it is far from clear that any schools would be denied funding because each school will be able to assert its own First Amendment and Religious Freedom Restoration Act rights "in the context of specific allegations." Plaintiffs concede (at 5) the Departments' point. Even if they are successful, they write, "prior to any action being taken against religious schools by the Department, those religious schools will have an opportunity to respond and defend themselves." *Id*. This

5 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
   TO DISMISS

concession—offered to challenge the fact that their schools are necessary parties—gives the standing game away because it demonstrates the speculation that lies at the heart of Plaintiffs' argument for redressability.

Because Plaintiffs have failed to show—absent speculation—that their alleged injuries will be redressed if they prevail, and because they cannot plausibly point to any discriminatory government action that actually caused their alleged harm, they lack standing to bring their claims.

## II.    The Schools Named in The Amended Complaint as Part of Specific Factual Allegations Are Necessary Parties.

Plaintiffs are also wrong to suggest (at 4–7) that their schools are not necessary parties. They begin with a conclusory suggestion that the "public rights" exception to joinder requirements undermines any argument that their schools are indispensable. This Court should consider that suggestion waived, however, because Plaintiffs make no attempt to explain why the Title IX religious exemption is a "public right." *Mays v. Deschutes Cnty.*, 2016 WL 6824377, at *1 n.3 (D. Or. Nov. 16, 2016) (Aiken, J.) ("Arguments made in passing and inadequately briefed are waived.").

1.    Even if they had adequately briefed that argument, moreover, it should be rejected because the public-rights exception is much narrower than Plaintiffs' two-sentence treatment of it would suggest. As the Ninth Circuit has explained, the "public rights exception may apply in a case that could adversely *affect* the absent parties' interests, but the litigation must not *destroy* the legal entitlements of the absent parties for the exception to apply." *Dine Citizens Against Ruining Our Env't*

*v. Bureau of Indian Affs.*, 932 F.3d 843, 858 (9th Cir. 2019), *cert. denied,* 141 S. Ct.
161 (2020) (cleaned up) (emphasis in original). Here, if this Court decided that
Plaintiffs have standing and its challenges on the merits were successful, it could
destroy the application of the Title IX exemption at Plaintiffs' schools, denying other
students access to billions of dollars in annual federal funding. The destruction of the
right to access federal funds at their schools is reason enough, by itself, for this Court
to decline to apply the public-rights exception here.

But the doctrine does not apply for still other reasons. Intervenors
affirmatively disavowed (at 10 n.2) any suggestion that all religious colleges in the
country should be joined. Intervenors' necessary-party argument is much narrower:
Because this case will turn on facts alleged to have happened at specific schools, those
schools—and only those schools—must be here to rebut the factual claims on which
Plaintiffs are relying in their misguided attempt to destroy the Title IX religious
exemption by suing the Department.

2.    Plaintiffs further attempt to rebut the conclusion that the religious
schools discussed in the complaint should be before the Court by suggesting (at 5)
that their allegations do not turn on factual claims against the schools at all, and
instead "rest foremost on the federal funding of avowedly invidious LGBTQ+
discrimination." But this question-begging does nothing to undermine Intervenors'
showing (at 11) that the discrimination Plaintiffs suggest is attributable to the
Department would require this Court to review testimony about the actions and
policies of Plaintiffs' schools. For there to be *any* discrimination, let alone

discrimination attributable to the Department, there must be facts to support it. And only Plaintiffs' own schools can adequately defend against those alleged facts necessary to conclude that unlawful discrimination is happening on their campuses.

Plaintiffs do not dispute Intervenors' showing (at 10) that religious schools have a legally protected interest in the Title IX religious exemption. Instead, they deny that this interest will be impaired if they are not brought into this case. As Intervenors explained (at 10–11), to decide that question, the Ninth Circuit in *Shermoen v. United States* asked, among other things, whether present parties are "capable" of making the arguments necessary to defend the interests of absent parties. 982 F.2d 1312, 1318 (9th Cir. 1992). Applying that standard, the *Shermoen* Court determined that one intervening tribe could not adequately represent the interests of another even though both wanted to defend the constitutionality of an act of Congress. The same is true here, as Intervenors explained (at 10–11), because every school has unique theological reasons for its policies on sex and gender, and none of these reasons are shared by the Department.

Plaintiffs have no real answer to *Shermoen*. Instead, to rebut its lessons, Plaintiffs repeat (at 5–6) the mistakes they made with *Allen* by distinguishing the wrong facts. Plaintiffs are correct that *Shermoen* found a conflict of interest between the United States and the tribes. 982 F.2d at 1318. But Intervenors' briefing on this point did not mention the United States, and instead focused (at 11) on how the Ninth Circuit found that even another tribe that shared an interest in the challenged act's constitutionality would be unable to adequately represent the rights of absent tribes.

8 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
   TO DISMISS

The same is true with respect to religious colleges here. Though every religious college that has a policy on sexuality or gender has an interest in defending the Title IX religious exemption, no college can adequately defend the exemption's as-applied constitutionality for *other* colleges that may have different theological reasons for those policies. And certainly the government, which cannot hold official theological positions, is not in a position to speak for any of these religious colleges as to the impact and importance of their beliefs.

Plaintiffs also suggest (at 6) that *Shermoen* doesn't apply because the act challenged in that case "specifically named" the two necessary Indian tribes. But Plaintiffs do not and cannot show that this distinction is legally relevant. Title IX did not need to name every religious college in the country for those colleges to be entitled to its protection "if [Title IX's] application … would not be consistent with the religious tenets of such organization." 20 U.S.C. § 1681(a)(3).

*Shermoen* also showed that the presence of an intervenor on the same side as would-be necessary parties is insufficient, without more, to guarantee adequacy of representation. *See* 982 F.2d at 1318 (concluding that, even though one tribe had intervened to defend the Act, it could not adequately represent the rights of absent tribes). Plaintiffs are thus wrong to suggest (at 6) that the presence of the "Department of Justice and well-resourced Intervenor-Defendants is more than adequate." Instead, as Intervenors emphasized (at 11), the arguments necessary to rebut factual claims about the schools "cannot practicably" be made "even for [CCCU's] own members without extraordinary burden and cost." Only the individual

9 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
   TO DISMISS

schools "have the institutional knowledge necessary" to respond fully to Plaintiffs' factual allegations. *Id.* For that reason, Intervenors explained (at 14–15) that Plaintiffs' schools will be prejudiced if they are not here. For each of these reasons, the religious schools mentioned in the complaint are necessary parties that this Case cannot, in fairness, proceed without.

3.    Of course, determining that they are necessary parties without which the action cannot fairly continue is not the end of the inquiry. As Intervenors explained (at 12–14), this Court should also dismiss this action because most of the schools mentioned in the Amended Complaint cannot feasibly be joined because this Court lacks personal jurisdiction over them. Plaintiffs did not respond to this point, and their failure should be viewed as a concession. *Lewis v. Bay Area Health Dist.*, 2021 WL 499416, at *3 (D. Or. Feb. 10, 2021) (Aiken, J.).

In sum, notwithstanding the arguments in Plaintiffs' Opposition, this Court should dismiss this case because Plaintiffs failed to include necessary parties.

## III.    Plaintiffs Fail to State Any Viable Claim.

Assuming the Court reaches the merits, it should also dismiss the Amended Complaint in its entirety because Plaintiffs fail to plausibly state any claim upon which relief could be granted.

### A.    Plaintiffs fail to state a claim under the Establishment Clause.

Plaintiffs' response devotes only one sentence to their Establishment Clause claim, merely citing briefs filed for other purposes. Pls.' Resp. Br. at 19, ECF No. 143. But those briefs do not respond to the Intervenors' showing on this point, and they

fail to plausibly state a claim under the Establishment Clause. The claim should be dismissed.

Plaintiffs, for example, fail to rebut the point—unique to the Intervenors—that the test announced in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), no longer applies, and that the religious exemption is plainly permitted under the Supreme Court's current "historical" analysis. Intervenors' Mot. to Dismiss at 22–24, ECF No. 137. The Supreme Court recently denounced the *Lemon* test and declined to apply it. *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2080–85 (2019). To put it bluntly, the Supreme Court "no longer applies the old test articulated in *Lemon v. Kurtzman*." *Id.* at 2092 (Kavanaugh, J., concurring). As multiple judges in the Ninth Circuit recently recognized, "*Lemon* is now effectively (and fortunately) dead," and "other courts around the country have recognized *Lemon*'s demise and wisely left it dead." *Kennedy v. Bremerton Sch. Dist.*, 4 F.4th 910, 947 n.3 (9th Cir. 2021) (R. Nelson, J., dissenting from denial of rehearing en banc) (collecting cases).

 A more deferential "historical" analysis has now taken *Lemon*'s place because "*Lemon* was a misadventure" and the Court now "relies on a more modest, historically sensitive approach, recognizing that 'the Establishment Clause must be interpreted by reference to historical practices and understandings.'" *Am. Legion*, 139 S. Ct. at 2101 (Gorsuch, J., concurring) (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)). As explained more fully in the Intervenors' Motion to Dismiss (at 23–24), our nation boasts a long history of accommodating religion through statutory exemptions without violating the Establishment Clause. And for the past century,

11 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
   TO DISMISS

the Supreme Court and the Ninth Circuit have repeatedly upheld religious exemptions against Establishment Clause attacks. Simply put, Plaintiffs' Establishment Clause claim fails because accommodating religious exercise through statutory exemptions is plainly consistent with our nation's history and tradition.[4]

Dismissal of Plaintiffs' Establishment Claim is also required under *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334 (1987). In *Amos*, the Supreme Court upheld a nearly identical statutory exemption against a nearly identical challenge, vindicating the religious exemption in Title VII. *Id.* at 329. *Amos* upheld the exemption because it served a legitimate purpose (reducing government interference with religious organizations), allowed religious organizations to advance their mission (without forcing the government to do so), and treated religion neutrally (without discriminating among religions). *Id.* at 335–39. The same reasoning requires dismissal of Plaintiffs' challenge to the exemption in Title IX, which allows religious schools to define and carry out their religious missions, does not require the government to promote any religion, and protects all religious educational institutions without singling out any denomination or belief for special treatment. Because the religious exemption triggers and survives rational basis-review under *Amos*, the Court should dismiss Plaintiffs' Establishment Clause claim for this reason as well.

---

[4] To the extent that the Court relies on the *Lemon* test, the Intervenors join in the Federal Defendants' motion to dismiss. Dep't's Mot. to Dismiss, ECF No. 56.

12 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
    TO DISMISS

**B.    Plaintiffs fail to state an Equal Protection claim.**

Plaintiffs' response also confirms that the Court should dismiss their Equal Protection claim. First, the religious exemption triggers only rational-basis review, which the exemption easily satisfies. The level of scrutiny for an equal protection claim depends on "the state's classification of groups." *Gallinger v. Beccera*, 898 F.3d 1012, 1016 (9th Cir. 2018). Rational-basis review applies—and there is "no justification for applying strict scrutiny"—where, as here, the exemption itself "is neutral on its face and motivated by a permissible purpose of limiting governmental interference with the exercise of religion." *Amos*, 483 U.S. at 339.

Plaintiffs cannot dispute that, like the exemption in *Amos*, Title IX's exemption is facially neutral and does not classify *any* person based on *any* status. *See* Intervenors' Mot. to Dismiss at 24–27, ECF No. 137. With no facial basis to challenge the exemption, and with no legislative history showing any "invidious" purpose for adopting it, Plaintiffs attempt to salvage their claim by citing one bald allegation from their First Amended Complaint: "Congress enacted the religious exemption to permit discrimination based on sex, sexual orientation and gender identity." Pls.' Resp. Br. at 18, ECF No. 143 (citing FAC ¶ 601). But, as this Court well knows, a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), and courts "do not assume unconstitutional legislative intent even when statutes produce harmful results; much less . . . when the results are harmless," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (internal citation omitted). Plaintiffs' conclusory statement,

unsupported by any factual allegations or legislative history, is "insufficient to defeat a motion to dismiss." *Gallinger*, 898 F.3d at 1016.

Moreover, Title IX's religious exemption was *not* adopted with any invidious purpose to allow discrimination. Just as Congress acted "with the legitimate purpose of alleviating significant governmental interference with the ability of religious organizations to define and carry out their religious missions" in enacting Title VII's religious exemption, *Amos*, 483 U.S. at 339, Title IX's exemption was enacted with the same legitimate purpose. The exemption triggers, and easily survives, rational-basis review.

Second, in addition to Title IX's religious exemption not triggering any heightened level of scrutiny, Plaintiffs do not rebut the Intervenors' showing that the exemption would survive *any* level of scrutiny. Intervenors' Mot. to Dismiss at 27, ECF No. 137. It satisfies intermediate scrutiny because exempting religious institutions from Title IX is substantially related to an important government interest in protecting the free exercise of religion. *See* Dep't's Mot. to Dismiss at 27–28, ECF No. 56. And the exemption satisfies strict scrutiny because it serves a compelling government interest of preventing First Amendment and RFRA violations, *Amos*, 483 U.S. at 334, and the scope of the exemption is "suitably tailored" to that interest. *See* 20 U.S.C. § 1681(a)(3); 34 C.F.R § 106.12(a) (applying the exemption only "if,"—and only "to the extent" that—application of Title IX would violate an institution's religious tenets). For these reasons, the Court should dismiss Plaintiffs' Equal Protection claim.

14 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
     TO DISMISS

**C.    Plaintiffs fail to state a claim under the APA.**

As to their APA claim: Plaintiffs merely restate deficient APA arguments without once engaging Intervenors' Motion. Both of the 2020 final rules that Plaintiffs challenge here satisfy the APA's requirements as a matter of law, and discovery would not illuminate or save Plaintiff's claim. The Court should dismiss the APA cause of action.[5]

The governing standard is also notably omitted from Plaintiffs' response: The APA's arbitrary-and-capricious standard merely requires "that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*

***The August Rule.*** Plaintiffs do not dispute that the first rule, effective August 2020, merely codified the Department's "longstanding" position that an institution need not obtain a formal assurance from the Department before asserting the statutory religious exemption. 85 Fed. Reg. 30026, 30475 (May 19, 2020) ("August Rule"). Nor could it. The August rule merely brought the regulation "in line with the relevant statutory framework," which does not require that recipients receive an

---

[5] The Intervenors here incorporate the APA analysis helpfully provided in the Amicus Curiae Brief of Montana and Thirteen Other States in Support of Defendants and Proposed Defendant-Intervenors at 12–16, ECF No. 105.

assurance letter from OCR or publicly disclose their entitlement to an exemption. *Id.*; *accord* 20 U.S.C. § 1681(a)(3); *Maxon v. Fuller Theological Seminary*, 2020 WL 6305460, at *6 (C.D. Cal. Oct. 7, 2020).

Plaintiffs' response asserts only two arguments against the August Rule. First, Plaintiffs note that the Department described the notice requirement as "confusing," but lament that—in their opinion—the Department did not sufficiently explain the nature of such confusion. Pls.' Resp. Br. at 16, ECF No. 143. But the law does not require an exhaustive explanation of every word that Plaintiffs may disagree with in the future. That is especially true when, as here, the Department received "more than 124,000 comments" on the regulation containing the August Rule, 85 Fed. Reg. at 30055, and took pains to consider and respond to comments concerning the rights of students who identify as LGBTQ+. *Id.* at 30475–30482. The Department reasonably explained that the August Rule "has the ancillary benefit of avoiding confusion for schools, since many institutions may not obtain a religious exemption before having a complaint against them filed, but now they will know that there is no such duty" imposed by the statute itself. *Id.* at 30475.

Second, Plaintiffs claim that prospective students may not know that a school is entitled to a religious exemption without a requirement of prior assurance and public disclosure. Pls.' Resp. Br. at 16, ECF No. 143. But Plaintiffs' quibble is not with the Department or the regulation; it is with Congress, which chose not to require prior assurance or public disclosure for schools to invoke the exemption. The Department merely clarified the regulation to better explain the statute and the

16 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
    TO DISMISS

Department's own longstanding policy. The August Rule was both reasonable and reasonably explained.

**_The November Rule._** Plaintiffs also challenge a second rule, effective November 2020, which merely codified longstanding Department policies on how institutions can show they are controlled by a religious organization. 85 Fed. Reg. 59916, 59945 (Sept. 23, 2020) ("November Rule"). Plaintiffs do not dispute that Title IX "does not directly address how educational institutions demonstrate whether they are controlled by a religious organization." *Id.* at 59918. That concession is important because, when "the statute is silent or ambiguous with respect to the specific issue," the question for the court is merely "whether the agency's answer is based on a permissible construction of the statute." *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1194 (9th Cir. 2008) (quoting *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43 (1984)).

The Department's construction of Title IX—that "control by a religious organization" need not require a hierarchical and wholly external ecclesiastical polity—is plainly permissible. Indeed, another court in this circuit already analyzed this very question involving two of the same plaintiffs here, and found that the Department's construction of the statute is "reasonable" and "does not contradict [the statute's] legislative history" because the statute does not define "religious organization" and the ordinary meaning of the term "organization" is sufficiently broad to include controlling authorities *within* the religious institution, *Maxon*, 2020 WL 6305460, at *7–*8.

17 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
      TO DISMISS

Contrary to Plaintiffs, the November Rule does not "insert what Congress omitted from the text of Title IX," Pls.' Resp. Br. at 15, ECF No. 143, but merely clarifies existing statutory language to reflect what "the Department has long recognized," namely, that religious schools "are controlled by religious organizations with [both] hierarchical and non-hierarchical structures." 85 Fed. Reg. at 59956. "Some educational institutions are controlled by a board of trustees that includes ecclesiastical leaders from a particular religion or religious organization who have ultimate decision-making authority for the educational institutions." *Id.* at 59918. "Other educational institutions are effectively controlled by religious organizations that have a non-hierarchical structure, such as a congregational structure." *Id.* And the Department "has long recognized that a school or department of divinity *is* an educational institution controlled by a religious organization without any requirement that the school or department of divinity be controlled by an external religious organization." *Id.* at 59960.

Indeed, the Department rightly understood that such an interpretation is *required* to prevent the government from impermissibly favoring certain schools over others based on their beliefs regarding ecclesiology and church polity. *Id.* at 59949; *see Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.")). And the November Rule is far from arbitrary and capricious because the Department received and responded to the "more than 17,000 comments," 85 Fed. Reg. at 59919, 59970, evaluated "costs and benefits," *id.* at 59918,

18 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
    TO DISMISS

and provided a detailed explanation of its reasons for clarifying the statutory language, including consideration of the rights of students who identify as LGBTQ+. *Id.* at 59945–62.

Simply put, both the August Rule and the November Rule satisfy the APA's "deferential" standard, and Plaintiffs' APA claim should be dismissed.

### D.    Plaintiffs fail to state a substantive due process claim.

Plaintiffs' response also confirms that their substantive due process claim should be dismissed. Plaintiffs complain of alleged burdens on their right to marry (FAC ¶¶ 634–36), as well as their "rights" to obtain "gender affirming" and "culturally competent" medical care; to be free from so-called "conversion therapy," to sexual privacy, and to be clothed consistent with their gender identity. FAC ¶ 645.[6] But substantive due process is not implicated unless "the *government* attempts to intrude upon [Plaintiffs'] personal and private lives," *Witt v. Dep't of Air Force*, 527 F.3d 806, 819 (9th Cir. 2008) (emphasis added), which it has not done here.

Indeed, the Amended Complaint makes clear that the *exemption* does not directly burden those purported rights; any such burden is ultimately attributable to "campus policies." FAC ¶ 701. Indeed, the government is not preventing anyone from marrying or obtaining medical care or dressing as they wish. To the extent that Plaintiffs complain about the government directly, they lament the Department's *inaction*, FAC ¶¶ 2, 6, which cannot support a substantive due process claim. *Juliana*

---

[6] Besides the right to marry, none of these purported "rights" have been recognized as fundamental. *See Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1250 (11th Cir. 2004) (declining to create fundamental right for sexual privacy).

*v. United States*, 217 F. Supp. 3d 1224, 1250–51 (D. Or. 2016) (Aiken, J.), *rev'd and remanded on other grounds*, 947 F.3d 1159 (9th Cir. 2020). Thus, Plaintiffs' substantive due process claim should be dismissed.

### E.    Plaintiffs' RFRA and First Amendment claims should be dismissed.

Plaintiffs' remaining causes of action should also be dismissed. The Court should dismiss Plaintiffs' RFRA claim out of hand because RFRA itself provides that "[g]ranting government funding, benefits, or exemptions, to the extent permissible under the Establishment Clause, shall not constitute a violation of this chapter," 42 U.S.C. § 2000bb–4, and as detailed above, the religious exemption is plainly permitted under the Establishment Clause.

And the Court should dismiss both the RFRA and First Amendment claims because the Amended Complaint fails to plausibly allege any harm based on *governmental* action. *See* Intervenors' Mot. to Dismiss at 29–30, ECF No. 137. For instance, Plaintiffs baldly assert that "the religious exemption in Title IX exerts a chilling effect on the Plaintiffs' exercise of their freedoms of religion, speech, assembly, and association." FAC ¶ 661; *see id.* ¶ 700. But conclusory allegations cannot save Plaintiffs from a motion to dismiss. *See Ashcroft*, 556 U.S. at 678.

Moreover, neither the government nor the religious exemption prohibits or chills *any* conduct by *anyone*; no such burden could occur without the independent, discretionary conduct of religious schools. Thus, Plaintiffs fail to plausibly allege that the *government* substantially burdens their religious beliefs. For that reason, the Court should dismiss Plaintiffs' RFRA and First Amendment claims.

IV.    **In Any Event, Title IX's Religious Exemption Is Constitutionally Required.**

Even if any of Plaintiffs' constitutional claims presented a close legal question—and none of them does—the Title IX exemption would still be valid because the statute would violate the First Amendment and RFRA as applied to religious colleges if the law were stripped of its religious exemption. And that is another reason—if the Court chooses to reach it—why Plaintiffs' Amended Complaint should be dismissed.

A.    **The Free Exercise Clause and RFRA require an exemption.**

Plaintiffs' response misunderstands and obscures the analysis required under the Free Exercise Clause and RFRA. The Court must first determine whether a law substantially burdens free exercise. *Fulton*, 141 S. Ct. at 1876; 42 U.S.C. § 2000bb-1(a). Once the Court finds a substantial burden, RFRA requires the Court to apply strict scrutiny, 42 U.S.C. § 2000bb-1(a), and the Free Exercise Clause also requires strict scrutiny unless the law is both neutral and generally applicable. *Fulton*, 141 S. Ct. at 1876. Plaintiffs' response only confirms that Title IX would trigger and fail strict scrutiny without the religious exemption.

Just last summer, the Supreme Court emphasized that "it is plain" that the government substantially burdens an institution's religious exercise by "putting it to the choice of curtailing its mission or approving relationships inconsistent with its beliefs." *Id.* Plaintiffs do not dispute that, if the religious exemption were stripped from Title IX, the statute would—at a minimum—put religious schools to a choice of (1) changing or violating their religious convictions about gender and sexual morality,

21 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS

or (2) maintaining their beliefs and practices but suffering curtailment of their mission due to loss of federal funding that is generally available to other institutions.

Indeed, in describing the schools' "options," Plaintiffs confirm that institutions must (in Plaintiffs' view) "choose" between "abandoning" their practices and policies or "continu[ing] to offer their educational services without receiving federal funds." Pls.' Resp. Br. at 11, ECF No. 143. Nor do Plaintiffs dispute that, without the religious exemption, Title IX would likely curtail religious schools' missions through a catastrophic loss of enrollment and might, in fact, threaten their very existence. *See* Decl. of Sheldon Nord, Ph.D., ¶¶ 32, 34, ECF No. 9; Decl. of John Jackson, Ph.D., ¶¶ 31–32, ECF No. 10; Decl. of Brian Arnold, Ph.D., ¶¶ 8, 31, ECF No. 11. This is sufficient to show that Title IX would substantially burden schools' religious exercise without the exemption.

Because Title IX would impose a substantial burden on religious exercise without the exemption, the statute would undoubtedly trigger strict scrutiny for at least two reasons. First, RFRA requires application of strict scrutiny immediately upon a finding of substantial burden. 42 U.S.C. § 2000bb-1(a).

Second, the Free Exercise Clause requires application of strict scrutiny when a law is not neutral and generally applicable, namely, when it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1876; *Tandon*, 141 S. Ct. at 1296. Here, under the analysis of *Fulton* and *Tandon,* Title IX is not neutral and generally applicable because the statute allows eight secular exemptions. 20 U.S.C. §

1681(a)(1)–(9); *Fulton,* 141 S. Ct. at 1877–78; *Tandon,* 141 S. Ct. at 1296–97. Because all of the secular exemptions to Title IX undermine the government's stated interest in prohibiting sex discrimination, they are "comparable" to the religious exemption and destroy any claim of general applicability. *See Tandon*, 141 S. Ct. at 1296 ("[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue.").

To add insult to injury, these secular exemptions are even *broader* than Title IX's religious exemption. *Compare* 20 U.S.C. § 1681(a)(4) (granting an unlimited exemption to any institution training individuals for military services or merchant marine), *with id.* § 1681(a)(3) (limiting any religious exemption to only those applications inconsistent with religious tenets). All of this "undermines [any] contention that [Title IX's] non-discrimination policies can brook no departures." *Fulton*, 141 S. Ct. at 1882.

Plaintiffs miss the mark in their attempt to distinguish *Fulton*. To be sure, the foster care agency in *Fulton* could not place *any* children without a contract and license from Philadelphia. *See Fulton*, 141 S. Ct. at 1875. But an "all or nothing" ultimatum is not required for the Court to find a substantial burden on religious exercise; it is sufficient that the government puts a religious institution to the choice of "curtailing" its mission or violating its convictions. *Id.* at 1876.

Plaintiffs also suggest that the Intervenors "stretch *Fulton* too far" because *Fulton* involved a system of individualized exemptions. Resp. Br. at 12, ECF No. 143.

23 - DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF JOINT MOTION
  TO DISMISS

But a system of individualized exemptions is merely *one way* to show that a law is not generally applicable. "Categorical exemptions" located in the statute itself "likewise trigger strict scrutiny." *Blackhawk v. Pennsylvania*, 381 F.3d 202, 211 (3d Cir. 2004).

Plaintiffs' reliance on *Grove City Coll. v. Bell*, 465 U.S. 555 (1984), is similarly misplaced. The 1984 decision in *Grove City* does not—and cannot—undermine the Supreme Court's more recent and repeated rulings that the government *cannot* force religious institutions to choose between their faith or their participation in a generally-available government benefit. *E.g. Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021–22 (2017); *Espinoza*, 140 S. Ct. at 2257; *Fulton*, 141 S. Ct. at 1876. The Supreme Court in *Grove City* did not conduct a free-exercise analysis at all, and the Court's recent decisions confirm that strict scrutiny would apply to laws that condition generally available governmental benefits on abandonment of one's religious beliefs.

In short, without the religious exemption, Title IX would trigger strict scrutiny under RFRA and the Free Exercise Clause. And without the exemption, the law would fail strict scrutiny because a law that allows numerous and broad secular exemptions is not the least restrictive means to advance a compelling governmental interest. *Fulton*, 141 S. Ct. at 1882.

**B.    The Establishment Clause requires the exemption.**

Plaintiffs further argue that any Establishment Clause violations resulting from eliminating Title IX's religious exemption are "speculative and premature." Pls.'

Resp. Br. 9, ECF No. 143. Not so. Plaintiffs *currently* ask this Court for an order requiring the Department to rifle through religious schools' policies and withhold financial assistance from schools who operate according to their religious beliefs. Pls.' Mot. to Amend TRO at 13–14, ECF No. 75. It is immaterial that "[b]elief, doctrinal, or mission statements" are exempt from Plaintiffs' requested investigation, *id.*, because those very religious beliefs are instantiated and applied in the policies that Plaintiffs wish to scrutinize and, ultimately, invalidate.

Simply put, Plaintiffs want to eliminate the religious exemption so that the Department will withhold financial assistance from religious schools with theological beliefs they oppose while continuing financial assistance to religious schools with beliefs they approve. But the Establishment Clause's "clearest command" is that "one religious denomination cannot be officially preferred over another," *Larson*, 456 U.S. at 244, and the Free Exercise Clause forbids the government from using a school's religious affiliation to deny it and its students access to religiously neutral and generally available federal funding. *Espinoza*, 140 S. Ct. at 2256. No speculation is necessary—under Plaintiffs' own legal theory, Title IX would violate the Establishment Clause without the religious exemption.

## CONCLUSION

For these reasons, and for the reasons stated in Intervenors' Motion to Dismiss and the Department's Motion to Dismiss, Plaintiffs' First Amended Complaint should be dismissed in its entirety.

Respectfully submitted.

/s/ Gene C. Schaerr
Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

/s/ Herbert G. Grey
Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org


* Admitted *pro hac vice*

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

November 30, 2021

/s/ Mark A. Lippelmann
Kristen K. Waggoner, OSB # 067077
  *Lead Counsel*
Email: kwaggoner@ADFlegal.org
David A. Cortman, GA Bar # 188810*
Email: dcortman@ADFlegal.org
Ryan J. Tucker, AZ Bar # 034382*
Email: rtucker@ADFlegal.org
Mark A. Lippelmann, AZ Bar # 036553*
Email: mlippelmann@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020


* Admitted *pro hac vice*

*Counsel for Defendants-Intervenors
Western Baptist College d/b/a Corban
University, William Jessup University
and Phoenix Seminary*

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limit requirements of Local Rule 7-2 because it contains 6,593 words including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.

November 30, 2021

/s/ Gene C. Schaerr
Gene C. Schaerr
*Counsel for Defendant-Intervenor*
*Council for Christian Colleges &*
*Universities*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2021, I served this document on all counsel of record by ECF and by email.

/s/ Gene C. Schaerr
Gene C. Schaerr
*Counsel for Defendant-Intervenor*
*Council for Christian Colleges &*
*Universities*
