**Paul Carlos Southwick (OSB 095141)**
**Religious Exemption Accountability Project**
**Paul Southwick Law, LLC**
8532 N. Ivanhoe St. #208,
Portland, OR 97203
Email: paul@paulsouthwick.com
Phone: 503-806-9517

**Timothy R. Volpert (OSB 814074)**
**Tim Volpert PC**
211 NE Hancock St. Ste. 2B
Portland, OR 97212
Email: tim@timvolpertlaw.com
Phone: 503-703-9054

**Alletta S. Brenner (OSB 142844)**
**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Email: ABrenner@perkinscoie.com
Phone: 503-727-2000

**Misha Isaak (OSB 086430)**
**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Email: misaak@perkinscoie.com
Phone: 503-727-2000

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# EUGENE DIVISION

| | |
|---|---|
| ELIZABETH HUNTER, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION and CATHERINE LHAMON, in her official capacity as Assistant Secretary for Civil Rights, U.S. Department of Education,<br><br>Defendants,<br><br>v.<br><br>COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, WESTERN BAPTIST COLLEGE d/b/a CORBAN UNIVERSITY, WILLIAM JESSUP UNIVERSITY AND PHOENIX SEMINARY,<br><br>Intervenor-Defendants | Civil Action No. 6:21-cv-00474-AA<br><br>**PLAINTIFFS' RESPONSE TO GOVERNMENT DEFENDANTS' OBJECTIONS TO PLAINTIFFS' DEPOSITION DESIGNATIONS** |

Plaintiffs respond to the Government Defendants' objections to Plaintiffs' deposition designations (*see* ECF No. 138) as described below. *See* Fed. R. Civ. P. 32.

Several of these objections assert that the line of inquiry is outside the scope of the topics in Plaintiffs' Notice of Rule 30(b)(6) Deposition of the U.S. Department of Education (the "30(b)(6) Notice"). The 30(b)(6) Notice sought testimony from the Department on three topics: (I) the status of Plaintiffs' Title IX complaints; (II) the process and timeline for religious exemption determinations; and (III) what protections, if any, Defendants will provide to Plaintiffs who experience retaliation from their educational institutions and/or harassment based on gender identity or sexual orientation.

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| a.  24:9–25:19 | Outside the Scope of the Topics in the Deposition Notice, Hearsay<br><br>FRE 802 | The Department's testimony is that in certain "substantive areas," complaints are handled according to a special process: in such "sensitive" cases (or "cases of interest"), "any determinations, any final determinations that [the Department of Education] make[s], that OCR makes in those final cases, we review at the headquarters level." Wills Dep. at 23:18–24:8.<br><br>The special handling that the Department describes is squarely within the scope of the 30(b)(6) Notice because it impacts the "process" and could affect the "timeline for religious exemption determinations," and is related to whether the Department considers "protections" to Plaintiffs from retaliation in handling determinations of their complaints. As such, inquiring as to whether "cases involving LGBTQ students have been a part of this category of cases of interest" is firmly within the scope of Topics II and III in the 30(b)(6) Notice. Wills Dep. at 25:8–10.<br><br>This line of inquiry does not implicate the rule against hearsay. Wills provided an answer to the questions ("Can you explain some of the categories of those cases of interest currently?" and "During your tenure, have cases involving LGBTQ students been part of this category of cases of interest?") |

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | based on his personal experience in his role, not purporting to be based on the statement of a declarant not subject to cross-examination. |
| b.  40:14–41:4 | Question seeks protected information<br><br>Deliberative Process Privilege<br><br>FRE 501 | The testimony in the objected-to exchange does not threaten to "disrupt[] . . . [the] free flow of ideas, opinions, advice and frank discussion within agencies concerning their policies and programs." *American Federation of Government Employees, AFL–CIO, Local 1164 v. Department of Health & Human Services*, 63 F. Supp. 2d 104, 107 (D. Mass. 1999). To the contrary, all it does is confirm that a policy or program for handling complaints "implicat[ing] a religious exemption issue" exists. Wills Dep. at 41:10–13. (A policy or program that Mr. Wills had already testified the Department was employing for complaints like Plaintiffs'. Wills Dep. at 25:8–25:19.) Plaintiffs are unaware of any authority that suggests the deliberative process privilege covers not just the substance of a deliberation taking place in accordance with a Department's policy or program, but also the simple fact that the deliberation even took place pursuant to that policy or program.<br><br>Similarly, there is nothing objectionable in the passage identified at 40:14–41:4. The only response Mr. Wills provides in that passage is in answering "Yes, I am" when asked whether he intends to follow his counsel's instruction not to answer Plaintiffs' question. Plaintiffs have identified no authority suggesting the deliberative process privilege shields not only the substance of the Department's deliberation, but also a question from opposing counsel about those deliberations and the subsequent objection to that question. Wills Dep. at 40:14–41:4. |
| c.  99:14–101:20 | Outside the Scope of the Topics in the Deposition Notice, Hearsay<br><br>FRE 802 | Whether the Department would accept a complaint based on sexual orientation or gender identity prior to release of the Supreme Court's *Bostock v. Clayton County* decision in 2020, and specifically from 2017–2020, is within the scope of the 30(b)(6) Notice because it informs the process for religious exemption determinations. Wills Dep. at 99:14–19, |

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 100:15–20, 101:6–11. In other words, it is within the scope of Topic II in the notice.<br><br>This line of inquiry also does not implicate the rule against hearsay. Mr. Wills provided responses "in [his] personal recollection" and "according to [his] personal belief;" in other words, his responses were based on his personal experience in his role, and were not purported to be based on the statement of a declarant not subject to cross-examination. Wills Dep. at 101:3–4, 101:16–17. |
| d.  101:6–19 | Outside the Scope of the Topics in the Deposition Notice, Hearsay, Improper Opinion Testimony<br><br>FRE 802, 701 | See above as this objection overlaps somewhat with the objection above (at *c*).<br><br>The Department's testimony that "with respect to a student denied admission or expelled because of a same-sex marriage" the Trump administration "would not have accepted that complaint [from the individual in the same-sex marriage] for processing" easily satisfies Fed. R. Evid. 701. As the witness testified, his testimony was "according to [his] personal belief," and his time in his role. Wills Dep. at 101:16–17; s*ee* Fed. R. Evid. 701(a) ("testimony in the form of an opinion is limited to one that is . . . . rationally based on the witness's perception"). Further, the testimony is helpful to understanding the witness's earlier testimony regarding whether the Department would accept a complaint based on sexual orientation or gender identity, *see* Wills Dep. at 100:3–13, which did not relate to treatment of individuals filing complaints on the basis of their participation in a same-sex marriage. *See* Fed. R. Evid. 701(b). Finally, Mr. Wills's testimony was "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"—it was based on his "personal belief" and his experience in his role with the Department. Fed. R. Evid. 701(c); Wills Dep. at 101:16–20. |
| e.  144:4–145:6 | Outside the Scope of the Topics in the Deposition Notice, | The question in this passage falls squarely within Topic III of the 30(b)(6) Notice, as it relates to what protections, if any, the Department will provide to |

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Hearsay, Speculation, Ambiguous/Vague<br><br>FRE 802, 403, 602, 611 | Plaintiffs who experience retaliation from their educational institutions and/or harassment based on gender identity or sexual orientation.<br><br>The response provided was simply that the witness did "not know the answer because that causes [him] to speculate on something . . . [He] can't speculate as to what OCR's determination would be under those circumstances." Wills Dep. 145:1–6. It's not clear what is objectionable about this response such that it should not be considered by the Court.<br><br>Further, the question is neither ambiguous nor vague. To the contrary, Mr. Wills responded to the question stating that he could not answer it because it would cause him to speculate—not that he did not understand the question. Wills Dep. 145:1–6. |
| f.  146:4–17 | Speculation, Ambiguous/Vague<br><br>FRE 403, 602, 611 | The question—whether the Department could dismiss a retaliation complaint by an LGBTQ student on the basis of the religious exemption, if the exemption was raised and applied—is not ambiguous or vague. Wills Dep. at 146:4–7. For his part, the witness did not appear to register any confusion about the possible scope or meaning of the question: he testified "that if a student retaliated against, they have that option [of filing a complaint] and would—I would recommend—urge them to exercise it, to file a complaint of retaliation." Wills Dep. at 146:14–17.<br><br>The remaining portion of the passage Defendants object to includes only counsel's objection that the question called for speculation (Wills Dep. at 146:8–9) and the witness's recitation of that objection, that "Yeah. I—I can't answer that. It's really calling for speculation and that I can't engage in at that point." (Wills Dep. at 146:10–12). It's not clear what in these five lines the Court should not be permitted to consider. |
| g.  149:13–150:14 | Outside the Scope of the Topics in the Deposition Notice, Hearsay | The questions about potential impacts of application of the religious exemption upon LGBTQ students (and whether the Department had ever received information about such impacts) relates to Topics II |

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | FRE 802 | and III in the 30(b)(6) Notice because the impact—to the extent it was studied—would have been relevant to the process and timeline for obtaining a final resolution on a complaint, and because it could relate to what protections, if any, the Department would provide to LGBTQ students facing retaliation for filing their complaints in the first instance.<br><br>Mr. Wills's first response ("In my personal capacity, not to my knowledge would be my response.") does not implicate the rule against hearsay. Wills Dep. at 149:22–150:1. Neither does his second response, in which he explains that, "in [his] personal capacity, [he] know[s] that information" about potential impacts on LGBTQ students "was provided through the comments" submitted during the 2020 rulemakings. Wills Dep. at 150:10–150:18. He was not asked to testify about the contents of those comments or information, and nor did he provide such testimony. |
| h.   151:6–152:6 | Outside the Scope of the Topics in the Deposition Notice, Hearsay<br><br>FRE 802 | Whether the Department's process in reviewing complaints has ever included a denial of a request for assurance from a federally funded educational institution of its claimed religious exemption is within the scope of Topic II in the 30(b)(6) Notice. Wills Dep. at 151:6–10.<br><br>This line of inquiry does not implicate the rule against hearsay because the witness explained that his testimony in response was being provided "in [his] personal capacity." Wills Dep. at 151:15. In other words, his responses were based on his personal experience in his role, and were not purported to be based on the statement of a declarant not subject to cross-examination. |
| i.   167:15–170:3 | Misstates Testimony & letter, Ambiguous<br><br>FRE 403, 611 | The objections in this passage are baseless. The questions note that a letter, which was read into evidence in part, explains that the Department "is obligated to identify a controlling organization to contact to verify those [religious] tenets" and asks whether it is accurate that the letter does not also actually identify that controlling organization. Wills |

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Dep. at 167:15–19; *see generally*, Wills Dep. at 165:13–166:4. It neither misstates Mr. Wills's relevant testimony (which involved only reading other admissible evidence into the record), nor is it ambiguous. To the contrary, despite the repeated interruptions of this baseless objection, the witness explained that he "agree[d]" that the correspondence from the Department did not "make a conclusion that there [was] a controlling organization." Wills Dep. at 169:9, 169:2–8. |
| j.   173:1–175:13 | Outside the Scope of the Topics in the Deposition Notice, Hearsay, Speculation, Improper Opinion Testimony<br><br>FRE 802, 403, 602, 611, 701 | These questions relate to Topic II in the 30(b)(6) Notice because understanding the process and timeline for a religious exemption determination is not something that can or should be done in a vacuum: necessarily understanding the process requires contextualizing them in the general or alternative processes and timelines for complaints brought alleging discrimination on the same basis (*i.e.*, discrimination based on sexual orientation or gender identity), but by slightly differently situated students.<br><br>Similarly, these questions do not call for speculation: the Department should have been able to present a witness prepared to testify as to whether it asserts jurisdiction over complaints brought by students who claim (1) they were expelled because they married a same-sex partner (Wills Dep. at 173:2–12); (2) they were denied housing consistent with their gender identity, as a transgender student (Wills Dep. at 174:7–10); or who claim (3) they were denied the student right to start an LGBTQ student group or club (Wills Dep. at 174:19–175:2). What is more, Mr. Wills was very clearly not speculating in response to at least the second of these questions. Wills Dep. at 174:7–17. While in other instances his testimony bore branding that he wanted to be careful not to speculate (Wills Dep. at 173:22), or crafted his response in such a way to indicate that he was testifying only about his "recommendation," (Wills Dep. at 175:9), his response to the second question in |

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | this passage was direct, lacking filler speech or clauses, and clearly affirmative.<br><br>This questions also satisfy Rule 701. Mr. Wills in response to each question testified that he was providing responses only "in [his] personal capacity" and based on his personal experience in his role. Wills Dep. at 173:18, 174:1, 174:16, 175:8–9; *see* Fed. R. Evid. 701(a). His testimony in this passage is also helpful to understanding his other testimony regarding the process and timeline for determining religious exemptions related to similar complaints from students at religious universities. *See* Fed. R. Evid. 701(b). And this testimony is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid 701(c). |
| k.  177:16–179:13 | Outside the Scope of the Topics in the Deposition Notice, Hearsay<br><br>FRE 802 | These questions are within the scope of Topics II and III in the 30(b)(6) Notice because the ability of the Department to address or prevent discrimination by dint of a religious exemption is related to the process and timeline for determination of a religious exemption, and also informs what protections, if any, the Department is able to provide to students who are retaliated against because of filing a complaint in the first instance.<br><br>This line of inquiry does not implicate the rule against hearsay because the witness's responses were based on his personal experience in his role, and were not purported to be based on the statement of a declarant not subject to cross-examination. |
| l.  181:3–181:12 | Outside the Scope of the Topics in the Deposition Notice, Hearsay<br><br>FRE 802 | These questions relate to the process and timeline for determining a religious exemption (Topic II in the 30(b)(6) Notice) because, as the witness would later testify, the statements in the letter reflect "a principle and a direction that the Department is taking that will certainly influence . . . [its] movement forward in investigating cases." Wills Dep. at 183:13–22. These questions sought testimony about the acceptance of these statements even though they were not present in "an internal guidance document that lays out specifics on how [the Department] analyze[s] |

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | jurisdiction in certain circumstances" or what "next steps" should be taken "in an investigation of a case that asserts a violation of law under one of these circumstances." Wills Dep. at 184:1–6. The value of the statements Plaintiffs asked about therefore informs the process and timeline for determining a religious exemption where an LGTBQ student claims discrimination on the basis of sexual orientation or gender identity.<br><br>Further, this inquiry does not implicate the rule against hearsay. The witness was asked only if he agreed with statements from the assistant secretary of the Department. Wills Dep. at 181:3–9, 181:18–182:5. His testimony in response provided only his opinion that he did in fact agree. Wills Dep. at 181:14–16, 182:11–12. |
| m.  189:10–190:1 | Outside the Scope of the Topics in the Deposition Notice, Hearsay, Speculation, Ambiguous/Vague, Improper Opinion Testimony<br><br>FRE 802, 403, 602, 611, 701 | Whether the Department will allow a school to claim a religious exemption after receiving a complaint is within the scope of Topic II in the 30(b)(6) Notice because it informs the process and timeline for determining a religious exemption. Additionally, it is within the scope of Topic III because it is related to whether the Department will provide protections to a student who is retaliated against by an institution after filing a complaint in the first instance.<br><br>This question is not vague or ambiguous, nor does it call for speculation. The witness clearly understood that Plaintiffs sought testimony about whether it was possible "that a student could attend an institution not knowing whether that institution had an assurance of a religious exemption," and provided testimony confirming that he believed it was possible. Wills Dep. at 189:19–190:1.<br><br>This line of inquiry does not implicate the rule against hearsay because the witness's responses were based on his personal experience in his role, and were not purported to be based on the statement of a declarant not subject to cross-examination. |

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Finally, Mr. Wills's testimony satisfies Rule 701. It is based on his belief and perception, is helpful to determining whether a student could attend a university without the benefit of knowing that they might not be protected from discrimination on the basis of their sexual orientation or gender identity, and it is not based on specialized knowledge. |
| n.  197:1–11 | Outside the Scope of the Topics in the Deposition Notice, Hearsay, Speculation, Improper Opinion Testimony<br><br>FRE 802, 403, 602, 611, 701 | Whether the Department's complaint process allows students to assert their Title IX rights is within the scope of Topics II and III in the 30(b)(6) Notice. The response informs the context of the process for determining a religious exemption, and the availability of relief for retaliation by an educational institution after filing a complaint in the first instance.<br><br>Mr. Will's testimony is proper opinion testimony. It is clearly based on his personal belief and experience. *See* Fed. R. Evid. 701(a). It is helpful to understanding the broader context of his testimony about the availability of relief. *See* Fed. R. Evid. 701(b). And it is not based on specialized knowledge. *See* Fed. R. Evid. 701(c).<br><br>This line of inquiry does not implicate the rule against hearsay because the witness's responses were based on his personal experience in his role, and were not purported to be based on the statement of a declarant not subject to cross-examination. |
| o.  223:13–224:17 | Outside the Scope of the Deposition Notice, Hearsay, Improper Opinion Testimony<br><br>FRE 802, 701 | This question falls squarely within the scope of Topic II in the 30(b)(6) Notice. *See supra* objection *j* (Wills Dep. at 173:1–175:13). The purpose of the question is to understand the process for religious exemption determinations in the fuller context of how complaints by an LGBTQ student that their educational institution discriminated against them on the basis of their sexual orientation or gender identity are handled. The response makes it fully apparent that, where a university has claimed a religious exemption, the process and timeline for resolving that complaint is different than the process and timeline where no religious exemption was claimed. |

| DEFENDANTS' OBJECTIONS | ASSERTED BASIS OF OBJECTIONS | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Wills Dep. at 224:11–17 (" . . . the [Bob Jones University] policy . . . and the implementation of the policy would violate [the Department's] interpretation of the prohibition on sex discrimination[.]"). |
| | | This line of inquiry does not implicate the rule against hearsay because the witness's responses were based on his personal experience in his role, and were not purported to be based on the statement of a declarant not subject to cross-examination. |
| | | This response also satisfies Rule 701. It is patently "based on [his] personal . . . knowledge[.]" Wills Dep. at 224:11–12; Fed. R. Evid. 701(a). It aids in determining one of the central facts in this case—that patently discriminatory policies are condoned by the Department where a religious exemption is claimed, even though no ambiguity exists that the policy is violative of the prohibition on sex discrimination. *See* Fed. R. Evid. 701(b). And it is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). |
| p. 238:20–240:3 | Outside the Scope of the Deposition Notice, Hearsay<br><br>FRE 802 | What steps are taken prior to withdrawing federal financial assistance from an educational institution relates to the process and timeline for religious exemption determinations: that would be the final step in a determination that the claimed exemption did not excuse an identified violation. So too related is the question about whether the Government has ever actually taken that last and final step in the enforcement process. In other words, this line of inquiry is within the scope of Topic II in the 30(b)(6) Notice.<br><br>This line of inquiry does not implicate the rule against hearsay because the witness's responses were based on his personal experience in his role, and were not purported to be based on the statement of a declarant not subject to cross-examination. |

Respectfully submitted,

- 11 -

DATED:  December 15, 2021

                      s/ Paul Carlos Southwick

**Paul Carlos Southwick**
**(OSB 095141)**
**TRIAL ATTORNEY**
**Religious Exemption**
**Accountability Project**
**Paul Southwick Law, LLC**
8532 N. Ivanhoe St. #208,
Portland, OR 97203
Email: paul@paulsouthwick.com
Phone: 503-806-9517