CAROL FEDERIGHI
TX Bar No. 06872950
*Lead Counsel*
HILARIE E. SNYDER
D.C. Bar No. 464837

BRIAN M. BOYNTON
Acting Assistant Attorney General
CARLOTTA P. WELLS
Assistant Director
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
carol.federighi@usdoj.gov
*Attorneys for Government Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

| | |
|---|---|
| ELIZABETH HUNTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION, *et al.*, <br><br> Defendants. <br><br> COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, WESTERN BAPTIST COLLEGE d/b/a/ CORBAN UNIVERSITY, WILLIAM JESSUP UNIVERSITY AND PHOENIX SEMINARY, <br><br> Intervenor-Defendants. | Civil Action No. 6:21–cv–00474–AA <br><br><br><br><br><br> **GOVERNMENT DEFENDANTS' POST-HEARING RESPONSE BRIEF** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

    I.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS ........................................................................................................... 2

        A.    PLAINTIFFS LACK STANDING ........................................................... 2

        B.    PLAINTIFFS' CLAIMS LACK MERIT .................................................... 7

            1.    Plaintiffs Are Unlikely To Succeed on Their Fifth Amendment or Establishment Clause Claims. ................................................... 7

            2.    Plaintiffs Are Unlikely To Succeed on Their APA Claims .......................... 8

    II.    PLAINTIFFS HAVE NOT DEMONSTRATED IMMINENT, IRREPARABLE HARM ............................................................................................................ 9

CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Wright*,
　468 U.S. 737 (1984) .................................................................................................. 3

*American Trucking Associations, Inc. v. City of Los Angeles*,
　559 F.3d 1046 (9th Cir. 2009) ................................................................................. 1

*Bishop v. Starkville Academy*,
　442 F. Supp. 1176 (N.D. Miss. 1977) ..................................................................... 3

*Bond v. Brown*,
　No. 6:20–cv–1656, 2021 WL 1237114 (D. Or. Apr. 2, 2021) ................................. 11

*Brown v. Board of Education*,
　347 U.S. 483 (1954) ................................................................................................ 3

*Brumfield v. Dodd*,
　425 F. Supp. 528 (E.D. La. 1976) ........................................................................... 2

*Cannon v. University of Chicago*,
　441 U.S. 677 (1979) ................................................................................................ 9

*Cooper Industries, Inc. v. Aviall Services, Inc.*,
　543 U.S. 157 (2004) ................................................................................................ 2

*Edge v. City of Everett*,
　929 F.3d 657 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 1297 (2020) ....................... 1

*Fox Television Stations, Inc. v. BarryDriller Content System, PLC*,
　915 F. Supp. 2d 1138 (C.D. Cal. 2012) ................................................................... 1

*Franklin v. Gwinnett County Public Schools*,
　503 U.S. 60 (1992) ................................................................................................ 10

*Garcia v. Google, Inc.*,
　786 F.3d 733 (9th Cir. 2015) ................................................................................... 1

*Gonzalez v. United States Immigration and Customs Enforcement*,
　975 F.3d 788 (9th Cir. 2020) ................................................................................... 2

*Greater Los Angeles Council on Deafness, Inc. v. Community Television of Southern Caifornia*,
　719 F.2d 1017 (9th Cir. 1983) ................................................................................. 9

*Green v. Connally*,
　330 F. Supp. 1150 (D.D.C. 1971), *jdgmt. affirmed*, *Coit v. Green*, 404 U.S. 997 (1971) .......... 3

*Griffin v. County School Board of Prince Edward County*,
 377 U.S. 218 (1964) ................................................................................................ 2, 3

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ...................................................................................................... 4

*Maxon v. Fuller Theological Seminary*,
 No. 20-56156, 2021 WL 5882035 (9th Cir. Dec. 13, 2021) .............................. 5, 6, 8

*Moton v. Lambert*,
 508 F. Supp. 367 (N.D. Miss. 1981) ............................................................................ 3

*National Wrestling Coaches Association v. Department of Education*,
 366 F.3d 930 (D.C. Cir. 2004), *abrogated on other grounds by*
 *Trudeau v. Federal Trade Commission*, 456 F.3d 178 (D.C. Cir. 2006) ...................... 9

*Norland v. Moynihan*,
 No. 6:12–cv–1641, 2012 WL 12882722 (D. Or. Nov. 2, 2012) ................................. 10

*Norwood v. Harrison*,
 413 U.S. 455 (1973) ...................................................................................................... 2

*Poindexter v. Louisiana Financial Assistance Commission*,
 258 F. Supp. 158 (E.D. La. 1966) ................................................................................ 3

*San Diego Gun Rights Commission v. Reno*,
 98 F.3d 1121 (9th Cir. 1996) ........................................................................................ 6

*Winter v. Natural Resources Defense Council*,
 555 U.S. 7 (2008) .......................................................................................................... 1

**OTHER AUTHORITIES**

11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2948.1 (3d ed.) ................. 10

Black's Law Dictionary (11th ed. 2019) ........................................................................................ 8

Direct Grant Programs,
 85 Fed. Reg. 59,916 (Sept. 23, 2020) ...................................................................... 5, 6

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving
 Federal Financial Assistance,
 85 Fed. Reg. 30,026 (May 19, 2020) ........................................................................ 5, 6

# INTRODUCTION

Nothing in Plaintiffs' Closing Memorandum in Support of Their Motion for Preliminary Injunction ("Pls.' Post-Hearing Br.") (ECF No. 151) establishes that the evidence presented at the hearing should change this Court's prior conclusion that Plaintiffs have not carried their burden on a single factor necessary to receive preliminary relief. Plaintiffs' preliminary injunction motion, therefore, should be denied.

# ARGUMENT

A plaintiff seeking preliminary injunctive relief must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction is in the public interest.[1] *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The "[l]ikelihood of success on the merits is the most important factor." *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019) (citation omitted), *cert. denied*, 140 S. Ct. 1297 (2020).

Plaintiffs' Post-Hearing Brief gives short shrift to "the most important factor," *i.e.*, the merits of their claims. They do not point to any new evidence presented at the hearing sufficient

---

[1] Plaintiffs also argue (and this Court agreed in its TRO Order (ECF No. 88, at 3)) that "[t]he Ninth Circuit recognizes that a preliminary injunction may also issue where plaintiffs raise serious questions going to the merits and where the balance of hardships tips sharply in the plaintiffs' favor." Pls.' Post-Hearing Br. at 15 (citation omitted). However, although certain Ninth Circuit panels and district courts continue to restate this pre-*Winter* "serious question" test, that test is no longer good law in light of *Winter*, *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (Ninth Circuit panel opinion immediately following *Winter*), and the *en banc* decision in *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). *See, e.g.*, *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1141 n.6 (C.D. Cal. 2012) ("The Court will not apply the [serious-question test], as it views that standard as being in conflict with both the Supreme Court's ruling in *Winter* and the Ninth Circuit's own subsequent adoption of the *Winter* standard."). In all events, as explained in Government Defendants' prior briefing, Plaintiffs' causes of action would not pass the serious-question test and, the balance of equities does not tip—let alone sharply tip—in Plaintiffs' favor.

to support the conclusion that they have standing and are likely to prevail on the merits of their claims. Plaintiffs' Post-Hearing Brief also does not address the balance of the equities or the public interest. Rather, their brief and, indeed, their evidence at the hearing focus on whether they are likely to suffer irreparable harm. Even so, the evidence presented at the hearing does not satisfy their burden as to that factor.

I. **PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

A. **PLAINTIFFS LACK STANDING**

Plaintiffs' alleged injuries are not sufficiently ripe until the Department of Education (the "Department" or "ED") Office for Civil Rights ("OCR") has taken a position on whether Title IX's religious exemption applies to any of the allegations presented in Plaintiffs' administrative complaints. Gov't Defs.' Post-Hearing Br. at 13-15, ECF No. 150. Moreover, even should their injuries become sufficiently ripe, Plaintiffs have also failed to establish that their injuries are fairly traceable to Government Defendants' actions and redressable by a court order directed at those Defendants, which are additional reasons to conclude that they lack standing. *See* Gov't Defs.' Post-Hearing Br. at 14-15; *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) ("[W]e assess [plaintiff's] standing for prospective injunctive relief as of the time when he commenced suit.").

Plaintiffs cite school desegregation cases for the proposition that students "have standing to challenge statutes and regulations that fund or otherwise endorse discrimination at educational institutions they attend, attended, or attempted to attend." Pls.' Post-Hearing Br. at 23-25. But those cases do not support such a broad proposition and are inapposite here. *Norwood v. Harrison*, 413 U.S. 455 (1973), *Griffin v. County School Board of Prince Edward County*, 377 U.S. 218 (1964), and *Brumfield v. Dodd*, 425 F. Supp. 528 (E.D. La. 1976), do not expressly address the

basis for standing. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quotation marks omitted)). *Green v. Connally*, 330 F. Supp. 1150 (D.D.C. 1971), *jdgmt. affirmed*, *Coit v. Green*, 404 U.S. 997 (1971), does not address standing either, aside from the conclusory statement cited by Plaintiffs, nor did the Supreme Court create standing precedent when it summarily affirmed the judgment.

Moreover, it appears that standing in all the cases cited by Plaintiffs arose from their status as students affected by a school desegregation order. *See* Defs.' Reply in Further Supp. of Their Mot. to Dismiss ("Gov't Defs.' Dismiss Reply"), at 8-9 (ECF No. 92) (citing *Allen v. Wright*, 468 U.S. 737, 763 (1984)); *Griffin*, 377 U.S. at 220-21 (discussing how case originated as part of *Brown v. Board of Education*, 347 U.S. 483 (1954)). For example, *Bishop v. Starkville Academy*, 442 F. Supp. 1176 (N.D. Miss. 1977), and *Moton v. Lambert*, 508 F. Supp. 367 (N.D. Miss. 1981), which rely heavily on *Norwood*, mention the same Mississippi state school desegregation order applicable in *Norwood*, as does *Green v. Connally*. In similar fashion, *Poindexter v. Louisiana Financial Assistance Commission*, 258 F. Supp. 158 (E.D. La. 1966), references an Alabama school desegregation order, and *Brumfield* discusses numerous Louisiana school desegregation orders. Through these school desegregation orders, the plaintiffs "acquired a right" "in having the State refrain from taking specific actions." *Allen*, 468 U.S. at 763.

Plaintiffs' situation here is not analogous because they do not allege that Government Defendants are attempting to avoid an existing court order. And Government Defendants' actions do not amount to invidious discrimination—the religious exemption is facially neutral, there is no evidence of discriminatory intent on the part of Government Defendants or Congress, and the

religious exemption does not classify students on any basis. Although Plaintiffs allege that federally funded educational institutions discriminated against them, a direct, personal injury caused *by the federal government* and redressable by a court order is still required for standing and is absent here. OCR has not dismissed any of Plaintiffs' administrative complaints based on the religious exemption but, even if it had, Plaintiffs have not shown a sufficient connection between the government's application of the religious exemption and the alleged discrimination by Plaintiffs' educational institutions, which are independent third parties. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that to establish standing, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" (cleaned up)). Nor have they established that any relief this Court could grant against Government Defendants would likely redress Plaintiffs' injuries, as it is entirely speculative that the educational institutions involved would choose to alter their policies rather than decline federal funding if application of the religious exemption to claims like Plaintiffs' were enjoined.

Plaintiffs also argue that they have standing because they are suffering stigmatic and dignitary injuries due to Government Defendants' conduct, simply "through the Department's funding, the statutory religious exemption, and the Department's administrative regulations." Pls.' Post-Hearing Br. at 25-26. But Government Defendants' implementation of a facially neutral, fifty-year-old statutory exemption does not, as a matter of law, cause stigmatic or dignitary harms. Gov't Defs.' Dismiss Reply at 5-7. The religious exemption is facially neutral as to sexual orientation and gender identity, and Plaintiffs have not alleged that it is being administered by ED specifically to harm LGBTQI+ persons.

Plaintiffs also lack standing to raise their Administrative Procedure Act ("APA") claims against the 2020 regulatory changes because they have not established that those changes contributed to any harm they may have experienced. *See* Gov't Defs.' Mot. to Dismiss; Mem. of Law in Support Thereof, at 16 (ECF No. 56) ("Gov't Defs.' Dismiss Mem."). Plaintiffs challenge two 2020 regulatory changes: (1) the clarification that institutions are not required to submit a written statement to the Assistant Secretary for Civil Rights prior to invoking the religious exemption, *see* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026, 30,031, 30,475–82 (May 19, 2020) (the "May 2020 Rulemaking"); and (2) the addition of a subsection addressing how educational institutions may demonstrate that they are "controlled by a religious organization" within the meaning of the religious exemption, *see* Direct Grant Programs, 85 Fed. Reg. 59,916, 59,918 (Sept. 23, 2020) (the "September 2020 Rulemaking").

In arguing that they have standing to challenge these changes, Plaintiffs assert that the changes broaden the scope of the religious exemption and thereby harm students. Yet the evidence presented at the hearing establishes that these regulatory changes merely codified OCR's existing practices and did not expand the scope of its application of the religious exemption in any significant way, *see* Day 2 Tr. at 482:18-483:8 (Wills); *id*. at 393:4-394:14, 396:10-399:3 (Yao); *see also Maxon v. Fuller Theological Seminary*, No. 20-56156, 2021 WL 5882035, at *1-*3 (9th Cir. Dec. 13, 2021) (ECF No. 155-1). Without addressing this evidentiary record, Plaintiffs summarize the amicus brief filed by the States of Oregon *et al.* (ECF No. 132) as support for their position. Pls.' Post-Hearing Br. at 29-30. But the amicus brief replicates Plaintiffs' errors.

Plaintiffs first rely on amici's assertion that the September 2020 regulatory change addressing the "controlled by a religious organization" criterion "effectively broadened the

definition . . . beyond the statute's plain text," Oregon Amicus Br. at 16; *see also* Pls.' Post-Hearing Br. at 30, and thereby increases the number of schools eligible to claim an exemption. Neither amici nor Plaintiffs provide any evidence that the actual number has increased, nor do they grapple with the evidence that the rule was not intended to change OCR's decades-long practice or interpretation of the scope of the religious exemption and, in fact, did not change that practice. *See* Gov't Defs.' Post-Hearing Br. at 22 (citing 85 Fed. Reg. at 30475; 85 Fed. Reg. at 59,918, 59,949); *Maxon*, 2021 WL 5882035, at *1 ("For over 30 years, DOE has maintained that the statute does not contain 'an independent requirement that the controlling religious organization be a separate legal entity than the educational institution.'").

Second, Plaintiffs rely on amici's claim that the May 2020 rulemaking, which clarified that schools may claim the religious exemption at any time and again was not intended to alter OCR's longstanding practices, *see Maxon*, 2021 WL 5882035, at *3 (ED "has never required educational institutions to request the religious exemption in writing."), "will likely cause more students to unknowingly enroll in schools that believe themselves exempt from Title IX, even though the schools have not invoked the exemption publicly." Oregon Amicus Br. at 18; *see also* Pls.' Post-Hearing Br. at 31. Again, no evidence has been submitted to support this proposition. In fact, the evidence presented at the hearing shows that, even prior to the effective date of the regulatory action challenged in this case, students might enroll in schools not knowing that those schools considered themselves exempt from certain Title IX protections for LGBTQI+ students. *See, e.g.,* Day 1 Tr. 54:5-55:19 (Duron); Pls.' Ex. 2, Union Exemption Letter dated March 24, 2015, at 10-11. In sum, as Plaintiffs have not established that their injuries are attributable to the regulatory changes, nor that enjoining those changes would afford them any relief, they lack standing to challenge these changes. *See San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir.

1996) (finding no causation or redressability where challenged law was not the only factor raising price of firearms).

### B. PLAINTIFFS' CLAIMS LACK MERIT

#### 1. Plaintiffs Are Unlikely To Succeed on Their Fifth Amendment or Establishment Clause Claims.[2]

With regard to their Fifth Amendment and Establishment Clause claims, Plaintiffs argue that "society has now come to a place where our laws can no longer treat sexual and gender minority Americans as social outcasts or as inferior in dignity and worth." Pls.' Post-Hearing Br. at 27. Government Defendants agree with this general principle: eliminating discrimination that targets LGBTQI+ students is a critical part of the Department's mission and ED is committed to enforcing Title IX and other federal civil rights laws to the fullest extent permissible under existing laws. *See* Gov't Defs.' Dismiss Mem. at 2. But to the extent Plaintiffs seek to change a statutory exemption enacted by Congress, this litigation against the Department is not the proper vehicle for such an effort.

Plaintiffs argue that "testimony from the Hearing shows that the religious exemption to Title IX endorses invidious discrimination against Plaintiffs." Pls.' Post-Hearing Br. at 29. But the religious exemption is facially neutral, and Plaintiffs have not plausibly alleged that Congress had a discriminatory intent or purpose in enacting this provision of Title IX. *See* Gov't Defs.' Dismiss Mem. at 25-27. And to the extent Plaintiffs rely on discrimination by their educational institutions for their claims, Government Defendants do not condone the alleged actions that Plaintiffs attribute

---

[2] Plaintiffs present no additional argument to support their Religious Freedom Restoration Act claim. Pls.' Post-Hearing Br. at 32.

to their educational institutions. But actions taken by private religious colleges and universities cannot form the basis for a valid claim against the federal government.

### 2. Plaintiffs Are Unlikely To Succeed on Their APA Claims.

Plaintiffs are unlikely to succeed on their APA claims against the 2020 regulatory changes in view of the recent decision in *Maxon v. Fuller Theological Seminary*, in which the Ninth Circuit rejected arguments very similar to those raised by Plaintiffs here. With regard to the regulatory criteria defining what it means to be controlled by a religious organization (promulgated in the September 2020 rulemaking), the appellate court upheld ED's interpretation that the religious organization need not be an external organization, finding that "the ordinary meaning of 'organization' is broad enough to encompass an entity that is wholly contained within another entity." 2021 WL5882035, at *1 (citing *Organization*, Black's Law Dictionary (11th ed. 2019)). The court further held that "[t]o the extent that the statutory language could be construed in multiple ways, we defer to [ED's] longstanding interpretation and conclude that Title IX's religious exemption encompasses educational institutions, including divinity schools like Fuller, that are controlled by their own religiously affiliated boards of trustees." 2021 WL5882035, at *1. And, as to the May 2020 rulemaking, the court determined that educational institutions were not required to claim the religious exemption by submitting a written request before the filing of an administrative complaint, finding that "[t]he language of Title IX does not condition an institution's ability to claim the religious exemption on filing written notice or on any other process—the exemption is mandatory and automatic." *Id.* at *2. Accordingly, in line with this decision, this Court should uphold the regulations here as consistent with the statutory language and not arbitrary and capricious.

Finally, to avoid the stringent test for a mandatory injunction as to this aspect of the case, Plaintiffs seek to characterize their request for an injunction against enforcement of the 2020 regulatory changes as "prohibitory" because the regulatory changes represent "new law or policy." Pls.' Post-Hearing Br. at 21. But, again, Plaintiffs ignore the uncontroverted evidence that the regulatory changes did not alter OCR's pre-existing practices. Thus, a prohibitory injunction solely directed at the 2020 regulatory changes would not change how OCR processes Plaintiffs' administrative claims or any related requests for religious exemptions and would afford Plaintiffs no practical relief. On the other hand, if an injunction went beyond simply suspending application of the regulatory changes, such an injunction would be a mandatory injunction subject to heightened requirements for its issuance, which are not met here. *See* Gov't Defs.' Post-Hearing Br. at 12.

## II. PLAINTIFFS HAVE NOT DEMONSTRATED IMMINENT, IRREPARABLE HARM

Plaintiffs argue that absent a preliminary injunction they will suffer irreparable harm because OCR is likely to dismiss at least one of their administrative complaints based on the religious exemption before a decision on the merits. Pls.' Post-Hearing Br. at 18-19. As this Court previously noted, however, Plaintiffs have the option of enforcing Title IX themselves through a private lawsuit against their schools even if OCR dismisses their administrative claims. TRO Order, at 11-12 (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979), *Greater L.A. Council on Deafness, Inc. v. Cmty. Television of S. Cal.*, 719 F.2d 1017, 1021 (9th Cir. 1983); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 947 (D.C. Cir. 2004), *abrogated on other grounds by Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006)); *see also* Day 2 Tr. at 461:3-13 (Wills) (noting that letter dismissing administrative complaint advises complainant "that they may have a right to file a private right of action in court."). If successful in such lawsuits, Plaintiffs

could potentially obtain monetary damages from their schools, *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 74-76 (1992), and injunctive relief against any continuing discrimination. TRO Order, at 11-12. Thus, Plaintiffs have an alternative remedy through private Title IX suits against their schools, which precludes preliminary injunctive relief here. *Id.*; *See also* 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2948.1 (3d ed.) ("[A] preliminary injunction usually will be denied if it appears that the applicant has an adequate alternate remedy in the form of . . . other relief."); *Norland v. Moynihan*, No. 6:12–cv–1641, 2012 WL 12882722, at *1 (D. Or. Nov. 2, 2012) (Aiken, J.) (no irreparable harm where, inter alia, "plaintiff is able to address the legality of the forcible entry and detainer action in the state courts").

Nonetheless, Plaintiffs claim that an action directly against the schools is inadequate because they would not be able to obtain relief against ED in the form of changes to its administrative processes or its funding. Pls.' Post-Hearing Br. at 21. But if Plaintiffs successfully sue their educational institutions and obtain relief in the form of damages for past discrimination and, when applicable, an injunction prohibiting their continued discrimination, they will have remedied their injuries and no longer will have any purported need to change ED's administrative processes or its funding.

Plaintiffs attempt to avoid this fact by reframing their requested relief as rectifying not the discrimination they suffered by their schools, but instead, the stigma and dignitary harms that would purportedly be caused if ED were to apply the religious exemption to their complaints. Pls.' Post-Hearing Br. at 20-21. But Plaintiffs' proposed relief goes far beyond simply pausing ED's consideration of their administrative complaints so as to avoid any application of the religious exemption. And, in any event, ED's potential actions here in applying this facially neutral, fifty-year-old statutory exemption would not cause stigmatic or dignitary harm. *See supra* at 4; Gov.

Defs.' Dismiss Reply at 5-7. Thus, Plaintiffs have not met their burden of identifying an irreparable injury.

Moreover, Plaintiffs' delays militate against granting preliminary injunctive relief. *See Bond v. Brown*, No. 6:20–cv–1656, 2021 WL 1237114, at *2 (D. Or. Apr. 2, 2021) (Aiken, J.). Plaintiffs filed this case and their administrative complaints often many months or years after the alleged discrimination and after many of the Plaintiffs had left their respective institutions. Additionally, they filed their motion for preliminary injunction about two months after filing the bulk of their administrative complaints. Finally, even though Plaintiffs then believed that administrative dismissal was imminent, Pls.' Post-Hearing Br. at 17, they requested a hearing date in November, two months after the Court denied their request for a TRO. These self-created delays belie the notion that Plaintiffs imminently need this Court's help to remedy an irreparable harm.

For the reasons above and in Government Defendants' previously filed briefs in opposition to the motion for preliminary injunction, ECF Nos. 62 and 150, Plaintiffs have not shown that they are likely to suffer irreparable harm in the absence of preliminary relief.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Government Defendants' prior briefs at ECF Nos. 56, 62, 92, and 150, Plaintiffs' motion for a preliminary injunction should be denied.

DATED: January 10, 2022                              Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

/s/ *Carol Federighi*
CAROL FEDERIGHI, TX Bar No. 06872950
*Lead Counsel*
HILARIE E. SNYDER, DC Bar No. 464837
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
carol.federighi@usdoj.gov

*Attorneys for Government Defendants*