Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

* Admitted *pro hac vice*
*Counsel for Defendant-Intervenor*
*Council for Christian Colleges &*
*Universities*

Kristen K. Waggoner, OSB # 067077
  *Lead Counsel*
Email: kwaggoner@ADFlegal.org

David A. Cortman, GA Bar # 188810*
Email: dcortman@ADFlegal.org
Ryan J. Tucker, AZ Bar # 034382*
Email: rtucker@ADFlegal.org
Mark A. Lippelmann, AZ Bar # 036553*
Email: mlippelmann@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
* Admitted *pro hac vice*
*Counsel for Defendants-Intervenors*
*Western Baptist College d/b/a Corban*
*University, William Jessup University*
*and Phoenix Seminary*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., <br>          Plaintiffs, <br>          v. <br> U.S. DEPARTMENT OF EDUCATION, et al., <br>          Defendants, <br>          v. <br> COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, WESTERN BAPTIST COLLEGE d/b/a CORBAN UNIVERSITY, WILLIAM JESSUP UNIVERSITY, AND PHOENIX SEMINARY, <br>          Defendants-Intervenors. | No. 6:21-CV-00474-AA <br><br> DEFENDANTS-INTERVENORS' POST-HEARING RESPONSE BRIEF |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION AND SUMMARY ..........................................................................1

ARGUMENT ........................................................................................................2

I.     This Court's prior holding that Plaintiffs seek a mandatory injunction
       was correct and is the law of the case in any event...........................................2

II.    Both the balance of the equities and the public interest favor the
       continued vitality of religious higher education, with the benefits it
       provides to religiously committed LGBTQ+ students. .....................................4

III.   Plaintiffs' speculation that "one or more" of their administrative
       complaints is "likely" to be dismissed "prior to a decision on the merits"
       fails to show immediate, irreparable harm.......................................................8

IV.    Plaintiffs still fail to show that the law and facts clearly favor their
       position. ...................................................................................................12

       A.     Plaintiffs' repeated attempts to manufacture standing are as
              meritless now as they have been throughout this case. .......................13

       B.     The Ninth Circuit's recent decision in *Maxon* confirms that the
              law and the facts do not clearly support Plaintiffs' APA claim............16

       C.     Plaintiffs raise no serious challenge to Intervenors' prior
              showing that the religious exemption is required by the First
              Amendment and RFRA. .................................................................19

CONCLUSION.....................................................................................................21

CERTIFICATE OF SERVICE ...................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright,*
  468 U.S. 737 (1984) .................................................................................. 16

*Boardman v. Pacific Seafood Grp.,*
  822 F.3d 1011 (9th Cir. 2016) ............................................................... 9, 10

*Cooper Indus., Inc. v. Aviall Servs., Inc.,*
  543 U.S. 157 (2004) .................................................................................. 14

*Doe v. Duncanville Indep. Sch. Dist.,*
  994 F.2d 160 (5th Cir. 1993) .................................................................... 11

*Dr. A v. Hochul,*
  142 S. Ct. 552 (2021) ................................................................................ 20

*Emp. Div. v. Smith,*
  494 U.S. 872 (1990) .................................................................................. 20

*Fulton v. City of Philadelphia,*
  141 S.Ct. 1868 (2021) ............................................................................... 20

*Index Newspapers, LLC v. City of Portland,*
  480 F.Supp.3d 1120 (D. Or. 2020) ........................................................ 9, 11

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) .................................................................................. 15

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
  571 F.3d 873 (9th Cir. 2009) ...................................................................... 2

*Maxon v. Fuller Theological Seminary,*
  No. 2:19-cv-09969-CBM-MRW, 2020 WL 6305460 (C.D. Cal. Oct. 7, 2020) .......... 17

*Maxon v. Fuller Theological Seminary,*
  No. 20-56156, 2021 WL 5882035 (9th Cir. 2021) ........................... 3, 17, 18

*Mays v. Deschutes Cnty.,*
  No. 6:15-CV-00898-AA, 2016 WL 6824377 (D. Or. Nov. 16, 2016) ........................ 5

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012) ...................................................................... 8

*Michael B. v. Comm'r of Soc. Sec.,*
  No. 3:17-CV-01403-AA, 2018 WL 3769873 (D. Or. Aug. 8, 2018) ........................ 2

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,*
  366 F.3d 930 (D.C. Cir. 2004) ............................................................... 9, 10

*Norwood v. Harrison,*
  413 U.S. 455 (1973) .................................................................................. 14

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
    523 U.S. 726 (1998) ................................................................ 14

*Simon v. E. Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976) ................................................................. 16

*Smith v. Marsh,*
    194 F.3d 1045 (9th Cir. 1999) ................................................. 5

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ................................................................ 9

**Constitutional Provisions**

U.S. Const. amend. I ................................................................... 20

**Statutes and Regulations**

20 U.S.C. § 1681(a)(3) ......................................................... 18, 19

42 U.S.C. § 2000bb-1(a) ............................................................ 20

## INTRODUCTION AND SUMMARY

Nothing in Plaintiffs' Closing Memorandum, ECF No. 151, remedies the repeated failures that have plagued their request for a preliminary injunction—and this case—from the beginning. Those failures infect even threshold issues, as no evidence presented at the hearing remedies Plaintiffs' lack of standing to sue the Department or ripens their premature claims.

In addition to Plaintiffs' failure to bring proper and timely claims, three days of testimony did nothing to resolve the purely legal problems with the merits of their claims or to move the needle on the other *Winter* factors. Indeed, Plaintiffs' Memorandum ignores two of the four factors—the balance of the equities and the public interest. And Plaintiffs don't even try to show how any evidence at the hearing remedied the flaws this Court already identified, namely, that even if the Court granted the requested injunction, there is no evidence that it would immediately "reduce the discrimination and other harms plaintiffs and other LGBTQ+ students" allege. Order Den. Pls.' TRO at 8, 11-12, ECF No. 88 ("Order"). Because Plaintiffs cannot satisfy the required elements for a (mandatory) preliminary injunction even if this Court accepted everything Plaintiffs said at the hearing, this Court should deny the preliminary injunction for the same reasons it denied the temporary restraining order.

## ARGUMENT

**I.    This Court's prior holding that Plaintiffs seek a mandatory injunction was correct and is the law of the case in any event.**

Plaintiffs begin by arguing—contrary to this Court's prior holding—that some of the relief they are seeking is better understood as a prohibitory injunction. Pls.' Closing Mem. at 15-16, ECF No. 151. This argument is misguided for several reasons.

1.    Plaintiffs offer nothing to rebut this Court's conclusion that both their initial and amended requests involve mandatory forms of relief that trigger a further heightened standard that Plaintiffs cannot meet. Order at 5, 7, ECF No. 88. Those conclusions are the law of the case, and they should not be disturbed now. *See Michael B. v. Comm'r of Soc. Sec.,* No. 3:17-CV-01403-AA, 2018 WL 3769873, at *5 (D. Or. Aug. 8, 2018) (explaining that the "law of the case doctrine generally prohibits a court from considering an issue[] that has already been decided by that same court or a higher court in the same case").

The Court's original finding, moreover, was correct. Plaintiffs concede that prohibitory injunctions are designed to do nothing but preserve the status quo, and they recognize that the status quo is the "last, uncontested status which preceded the pending controversy." Pls.' Closing Mem. at 15, 16, ECF No. 151 (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). Plaintiffs' other arguments are wrong.

They are wrong, for example, to suggest that maintaining the status quo would allow this Court to "prohibit enforcement of the August 2020 and November 2020 Final Rules." *Id.* at 16. Not so. Because Plaintiffs waited to file their case until months

*after* the August and November Final Rules went into effect, any injunction against their enforcement would necessarily alter the status quo.

Moreover, when Plaintiffs finally did file this case, they neglected to challenge those rules. It wasn't until June—three months after this case began and nearly seven months after the November Rule had gone into effect—that Plaintiffs challenged those rules for the first time. *Compare* Complaint ¶¶ 492-524, ECF No. 1 (raising a Fourteenth Amendment and Establishment Clause claims) *with* First Am. Compl. ¶¶ 672-88, ECF No. 35 (raising, for the first time, challenges to the August and November Final Rules).

Finally, as a Ninth Circuit panel recently held, the challenged provision in the August Rule flows from the "plain language of the statute" and both rules merely codify "DOE's longstanding interpretation[s]." *Maxon v. Fuller Theological Seminary*, No. 20-56156, 2021 WL 5882035, at *1-*3 (9th Cir. 2021) (unpublished) (concluding that the Department "has never required educational institutions to request the religious exemption in writing," and that the Department has "long understood" that Title IX's religious exemption "encompasses educational institutions . . . that are controlled by their own religiously affiliated board of trustees"). To force the Department to abandon and change these longstanding procedures would thus alter the status quo.

2.    For the same reasons, it would change the status quo to force the Department to "refrain from issuing further assurances of religious exemption," to not evaluate Plaintiffs' Title IX complaints, or to "refrain from dismissing Plaintiffs'

complaints" because of the religious exemption. Pls.' Closing Mem. at 16, ECF No. 151. As this Court correctly recognized, "the religious exemption was enacted decades ago," Order at 8, ECF No. 88, and, after *Maxon*, it cannot reasonably be argued that forcing the Department to abandon and change its decades-old policies would simply maintain the status quo.

In sum, Plaintiffs are seeking a disfavored mandatory injunction that requires them to satisfy not only the "already high standard" of success on the merits, but also the "further heightened" requirement that the "law and facts clearly favor" them. Order at 6, ECF No. 88.[1] They have utterly failed to meet either standard.

## II.    Both the balance of the equities and the public interest favor the continued vitality of religious higher education, with the benefits it provides to religiously committed LGBTQ+ students.

Beyond being wrong on the type of injunction they are seeking, Plaintiffs fail to show that the balance of the equities and the public interest sharply favor their requested injunction. To the contrary, the evidence presented thus far shows that religious colleges and universities provide important benefits to the public by offering favorable educational environments to religiously committed LGBTQ+ and other minority students.

1.    Plaintiffs do not attempt to analyze how the evidence introduced at the hearing influences the *Winter* factors regarding public interest or balance of the equities. Instead, without any such analysis, they simply ask this Court to find, "in

---

[1] And, because the Ninth Circuit has instructed courts not to issue mandatory injunctions in doubtful cases, the "serious questions" sliding scale does not apply. Order at 7 n.3, ECF No. 88 (collecting cases).

light of the evidence presented at the [h]earing," that they have now met their burden of establishing those factors. Pls.' Closing Mem. at 17, ECF No. 151. But this Court has already found that Plaintiffs' prior attempts to carry their burden on these prongs were insufficient, Order at 12, ECF No. 88, and Plaintiffs have offered no evidence that would permit a different conclusion.

Moreover, Plaintiffs' invitation for this Court to pore over the record to find what "evidence presented at the hearing" was relevant to these two *Winter* factors is improper. Pls.' Closing Mem. at 17, ECF No. 151. Plaintiffs alone had the burden of showing why any such evidence was relevant, and they did not try. *Mays v. Deschutes Cnty.*, No. 6:15-CV-00898-AA, 2016 WL 6824377, at *1 n.3 (D. Or. Nov. 16, 2016) (Aiken, J.) ("Arguments made in passing and inadequately briefed are waived.").[2] That too is sufficient reason to deny their requested relief.

2.    Having ignored these prongs altogether, Plaintiffs necessarily fail to rebut Intervenors' showing that religiously committed LGBTQ+ students like Plaintiffs often do better at religious colleges and universities than elsewhere. Pls.' Closing Mem. at 12-17, ECF No. 151. To be sure, Plaintiffs cite Dr. Mark Regnerus' testimony that there is a mental health crisis among LGBTQ+ youth, but that point was never in dispute. *Id.* at 14. Indeed, Dr. Regnerus testified about studies from

---

[2] If Plaintiffs realize their failure to properly brief these two factors and attempt to remedy that failure in their brief filed concurrently with this brief, it will be too late, as the other parties will have no opportunity to respond. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]n argument raised for the first time in a reply brief . . . is not an argument we may consider here.").

Plaintiffs' own expert showing that LGBTQ+ students can struggle anywhere. Day 3 Tr. of Prlim. Inj. Hr'g at 578:11-14.

Plaintiffs further claim that there are no studies directly comparing the struggles faced by sexual and gender minority students at religious and at secular colleges, but this obscures the fact that it is still possible to compare very *similar* studies observing these differing social contexts. Pls.' Closing Mem at 14, ECF No. 151. As Intervenors explained, Dr. Regnerus testified that one can compare studies looking at the mental health of LGBTQ+ students at secular colleges with Plaintiffs' REAP study, which looked at LGBTQ+ students at religious colleges. *See* Defs.-Intervenors' Joint Post-Hr'g Br. at 13-14, ECF 152. And those comparisons strongly indicate that LGBTQ+ students *often* fare better at religious schools than they do at secular schools. *See id*. at 13 (citing Day 3 Tr. at 584:3-8 (Mark Regnerus, Ph.D.)).

This conclusion is supported by Plaintiffs' own expert, Dr. Wolff, whose testimony on this point Plaintiffs also ignore. Dr. Wolff agreed that LGBTQ+ students at religious colleges "who find non-affirming theological positions and environments congruent with their religious beliefs" do "*not* report more depressive symptoms and social anxiety than those in other schools." Day 2 Tr. of Prelim. Inj. Hr'g at 335:17-25 (emphasis added). Indeed, he acknowledged that students at more conservative Christian colleges, including those that did not have gay/straight alliances, "reported significantly *fewer* symptoms of depression and social anxiety than students" at more "progressive" colleges that did have GSAs and more "flexible" behavioral standards. *Id*. at 335-338 (emphasis added). As Intervenors explained, that testimony was

consistent with his other scholarship, which shows that "religion may offer a *substantial amount of comfort and source of community*" to those who "find incongruence with their sexual orientation and their faith." Joint Post-Hr'g Br. at 15, ECF 152 (citing Intervenor CCCU's Ex. 6 at 208, ECF No. 121-6 (emphasis added)).

On the other hand, Intervenors' unrebutted showing that Plaintiffs' requested relief could harm both LGBTQ+ students and their cisgender, heterosexual classmates who are seeking to be "not just better educated but more mature Christians"—a "challenge that's central" to religious higher education—confirms that the public interest strongly favors the status quo of the Title IX religious exemption. Joint Post-Hr'g Br. at 16, ECF No. 152 (quoting Day 3 Tr. at 606:8-13 (Mark Regnerus, Ph.D.)).[3]

3.      Plaintiffs also have no answer to Intervenors' showing that granting the requested relief is not in the public interest because it would force the Department to violate the First Amendment by placing itself (and the Court) into the "center of a theological thicket." Day 1 Tr. of Prelim. Inj. Hr'g at 42:3-14 (Gene Schaerr). Testimony from both the Plaintiffs and their experts only confirmed what was apparent from the start: "[T]hat this dispute ultimately stems from nothing more than a fundamentally *theological* disagreement between Plaintiffs and the schools they chose to attend." Joint Post-Hr'g Br. at 28, ECF No. 152 (collecting testimony). As Intervenors explained, it is always in the public interest to prevent such

---

[3] This discussion also highlights that it is not the government Defendants who are at the center of this fundamentally *theological* debate, but instead religious schools and their students.

constitutional violations. *Id*. at 17-18; *see Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

4.    Plaintiffs also ignore that destroying the religious exemption would also destroy religious higher education. As it stands, students are free to take their federal student aid to the institution that best meets their educational goals and values, including those goals and values inspired by their religious beliefs. By eliminating the religious exemption, students would either lose this choice or religious schools would have to curtail their religious missions. Joint Post-Hr'g Brief at 19-20, ECF No. 152. That choice alone would impose a substantial burden and irreparable injury on religious colleges and their students, who would be forced to forgo the benefits they now receive at religious colleges. And, as Intervenors explained, further harms would flow after that choice was exercised, as those schools that have religious beliefs and policies that Plaintiffs approve would be able to continue receiving a public benefit, while those with beliefs that Plaintiffs oppose would not. *Id*. at 20-21. Plaintiffs have offered nothing to rebut those conclusions.

For all these reasons, this Court should again find that the balance of the equities and the public interest weigh sharply against the requested injunction.

## III.    Plaintiffs' speculation that "one or more" of their administrative complaints is "likely" to be dismissed "prior to a decision on the merits" fails to show immediate, irreparable harm.

Plaintiffs also fail to cure their prior failure to prove irreparable harm. As the Intervenors have already shown, "irreparable injury and the inadequacy of legal remedies" have *always* served as the "basis for injunctive relief in the federal courts."

Joint Post-Hr'g Br. at 4, ECF No. 152 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Plaintiffs' closing memorandum fails to establish either.

Instead, Plaintiffs candidly admit that the "imminent dismissals" that they promised "did not come to pass." Pls.' Closing Mem. at 17, ECF No. 151. But rather than admit defeat, Plaintiffs redefine "imminent" from the speculative "any day now" to the equally speculative "prior to a decision on the merits." *Id.* at 18. To support their eleventh-hour attempt to move the goalposts, they cite (at 18-19) only two cases, *Boardman v. Pacific Seafood Grp.,* 822 F.3d 1011 (9th Cir. 2016) and *Index Newspapers, LLC v. City of Portland*, 480 F.Supp. 3d 1120 (D. Or. 2020). For several reasons, neither case helps them.

1.      To begin, both cases are distinguishable because they are silent on a key issue here: whether Plaintiffs have an adequate remedy at law. Here, the Intervenors, the Department, and this Court all agree that Plaintiffs have an adequate alternative remedy. That is because they can, at any time, "file private Title IX lawsuits directly against their respective schools, challenging the constitutionality of the religious exemption and its implementing regulations." Order at 11, ECF No. 88 (citing, among others, *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 947 (D.C. Cir. 2004)); *see also* Joint Post-Hr'g Br. at 5, ECF No. 152 (same); Gov. Defs.' Post-Hr'g Br. at 26, ECF No. 150 (same). As the Intervenors have already explained, the availability of that adequate alternative remedy is reason enough for this Court to find that the Plaintiffs will not be irreparably harmed. Joint Post-Hr'g Br. at 4, ECF No. 152; *Weinberger*, 456 U.S. at 312.

Plaintiffs try to avoid this Court's prior dispositive holding by suggesting that they will be unable to obtain "a remedy for the harms caused by Defendants" in Title IX actions against their schools. Pls.' Closing Mem. at 21, ECF No. 151. That argument misses the point for two reasons. *First,* it ignores the D.C. Circuit's conclusion, cited favorably by this Court, that "the Department's policies" can be challenged in cases against the Plaintiffs' own schools "to the extent that the defendant university attempts to justify its actions by reference to those policies." Order at 11-12, ECF No. 88 (quoting *Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 947). *Second*, it ignores that, because the federal government has invoked sovereign immunity, the only remedy Plaintiffs could possibly get against the Department is the very same injunction that Plaintiffs could seek in individual cases against their schools. *See* Dep't's Mot. to Dismiss at 18, ECF No. 56 (collecting cases showing that the government must expressly waive immunity for damages from it to be available).

2.    Plaintiffs' cases are also inapposite. The Ninth Circuit in *Boardman* emphasized that "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." 822 F.3d at 1022 (emphasis in original). In finding irreparable injury there, the Ninth Circuit did not engage in any rigorous factual analysis. Instead, it pointed to allegations that the defendants were limiting competition and cited evidence from the plaintiffs that "support[ed] their argument with market concentration statistics and expert declarations." *Id.* at 1023. Having done that, the irreparable harm calculus followed immediately: "A lessening of competition constitutes an irreparable injury under our case law." *Id.*

As for immediacy, *Boardman* turned on the fact that the defendants had voluntarily "terminated the proposed acquisition" as the suit began but could have returned to it at any time with nothing more than 60-day notice. *Id. Index Newspapers* emphasized the same point. There, *after* finding that the plaintiffs faced irreparable injury, the district court held that the voluntary-cessation principle in *Boardman* applied when the defendants had no obligation to inform anyone before voluntarily resuming their illegal conduct. 480 F. Supp. 3d at 1150-51. In other words, these cases stand for the unremarkable proposition that, *after* imposing irreparable harm, parties cannot evade a finding that the harm will be *immediate* by voluntarily ceasing the harmful activity in the face of litigation. *Accord Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 166 (5th Cir. 1993).

Here, nothing in Plaintiffs' closing memorandum changes the points raised in the Intervenors' Joint Post-Hearing Brief. As Intervenors explained, the fact that Plaintiffs waited months after suing to file administrative complaints and even longer to seek injunctive relief "implies a lack of urgency and irreparable harm." Joint Post-Hr'g Br. at 7, ECF 152 (quoting Dep'ts Opp'n to Mot. for TRO & Prelim. Inj. at 12, ECF No. 62). And Plaintiffs are wrong to suggest that the "full record" provides this Court with the information it needs to reverse course by finding that the Department will likely dismiss their complaints. Pls.' Closing Mem. at 19, ECF 151. The new evidence Plaintiffs cite is information that was already before the Court,[4] namely that

---

[4] Plaintiffs also effectively concede that the complaints brought by Plaintiffs Joanna Maxon and Nathan Brittsan should be dismissed by the Department because of their pending case against Fuller Theological Seminary. *See* Pls.' Closing Mem. at 20, ECF

some Plaintiffs are current students and, therefore, their complaints are "likely . . . timely." *Id.* But lack of timeliness is only one of *nineteen* reasons why the Department can "dismiss an allegation, or, if appropriate, the complaint." Dep't's Ex. 1 at 10-12, ECF No. 124-1. Thus now, as before, it is "possible [that] OCR might dismiss some of the complaints under the religious exemption," but it is also possible that it might "dismiss[ them] on any other grounds provided in the Case Processing Manual." Order at 9-10, ECF No. 88. Plaintiffs accordingly failed to carry their burden of showing that irreparable harm is both immediate and likely without an injunction.

## IV.    Plaintiffs still fail to show that the law and facts clearly favor their position.

Finally, Plaintiffs still fail to make the required showing "that the law and facts clearly favor their position." Order at 6, ECF No. 88. As explained in Section I above, it is not enough for Plaintiffs to merely raise "serious questions" on the merits or even to show a general likelihood of success; they must show that the law and the facts clearly favor them. Their failure to do so is fatal to their motion and, indeed, their entire case.

Plaintiffs' post-hearing brief merely incorporates and restates arguments that this Court has already rejected. *See* Pls' Closing Mem. at 27-32, ECF No. 151. Rather than restate the many deficiencies in each of Plaintiffs' claims, Intervenors incorporate their prior briefing on the merits and address three issues that further undermine Plaintiffs' motion. *See* Intervenors' Joint Resp. to Mot. for Prelim. Inj.,

---

No. 151 (recognizing complaints "submitted by three Plaintiffs involved in civil litigation against their educational institutions").

ECF No. 109 at 7-28; Intervenors' Joint Mot. to Dismiss, ECF No. 137 at 16-39; Joint Post-Hr'g Br., ECF No. 152 at 22-34.

### A.    Plaintiffs' repeated attempts to manufacture standing are as meritless now as they have been throughout this case.

First, Plaintiffs' arguments that they have standing to raise their claims are as implausible now as they have been throughout this case. *See* Pls.' Closing Mem. at 23-26, ECF No. 151.

1.    To begin, as the Department explains in its Post-Hearing Brief, Plaintiffs claims are unripe because each of the administrative complaints—save one—remains pending. Gov. Defs.' Post-Hr'g Br. at 13-14, ECF No. 150. Plaintiffs fail to cite a single case to support their radical view that the "stigmatic and psychological injuries" they allege are somehow related to the pending administrative complaints. Pls.' Closing Mem. at 25, ECF No. 151

Indeed, given Plaintiffs' insistence that they do not "ask the Court to invalidate the religious exemption on its face," or to "take away the federal funding from any educational institutions" or to "require a specific outcome for their Title IX complaints," Pls.' Prelim. Inj. Mot. at 10, ECF No. 44, it is difficult to find any such connection between the administrative complaints and their alleged stigmatic harm.[5] And it is hornbook law that claims challenging the outcomes of the administrative process are unripe until the "effects [are] felt in a concrete way" at the conclusion of

---

[5] The additional relief Plaintiffs sought in their Motion to Amend does not change this calculus because the mandatory relief they now seek—an order instructing the Department to begin a compliance review and forcing it to rescind previously granted exemptions—would directly interfere with pending administrative action. Pls.' Mot. to Amend at 13-14, ECF 75.

the process. Joint Post-Hr'g Br. at 24, ECF No. 152 (citing *Ohio Forestry Ass'n*, *Inc.* *v. Sierra Club*, 523 U.S. 726, 732-33 (1998)). Plaintiffs' claims therefore remain unripe.

2.    Plaintiffs also have no response to the evidence introduced at the hearing that confirms what has long been self-evident: They have sued a party who has not harmed them. As both the Intervenors and the Department have explained, the Department is not involved with drafting or implementing of any of the policies that Plaintiffs find so offensive. Joint Post-Hr'g Br. at 24-25, ECF No. 152; Gov. Defs.' Post-Hr'g Br. at 13-14, ECF No. 150.

Undeterred, Plaintiffs once again rely on *Norwood v. Harrison*, 413 U.S. 455, 464-65 (1973), for the "axiom" that a state may not "induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to do." Pls.' Closing Mem. at 23, ECF No. 151. But Intervenors have already explained that Plaintiffs' continued reliance on *Norwood* is misplaced because it wasn't a standing case and cannot be read to speak on issues that "merely lurk in the record." Joint Post-Hr'g Br. at 25 n.10, ECF No. 152 (citing *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004)); *see also* Reply to Mot. to Dismiss at 4 & n.3, ECF No. 147.

Beyond that, the axiom they cite—which is more a point about the merits than about standing—does not apply here because Plaintiffs have no evidence that the Department has ever induced, encouraged, or promoted discrimination against them or any other LGBTQ+ students. To borrow from the Department, because the "religious exemption is facially neutral, and Plaintiffs have neither alleged nor shown

any indicia of discriminatory intent on the part of Congress in enacting the statute or on the part of [the Department] in enforcing it," the harms they allege cannot be fairly traced to the Department. Gov. Defs.' Post-Hr'g Br. at 14, ECF No. 150. That failure alone defeats Plaintiffs' standing.

If that weren't enough, Plaintiffs' closing memorandum entirely ignores the question of redressability, another necessary element of standing. That failure to try to establish one of the required elements is likewise fatal to their claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-62 (1992).

Indeed, three days of testimony did nothing to alter this Court's prior conclusion that it is unclear whether "plaintiffs' requested relief would result in immediate protection from the risk of [the] physical, emotional, and psychological harm[s] plaintiffs seek to prevent." Order at 11, ECF No. 88. While Plaintiffs respond to this in the section where they attempt to invent irreparable injury, they can only argue that granting the injunction would "at least in part, immediately halt the government's *endorsement* of the discrimination [they] experience from their educational institutions." Pls.' Closing Mem. at 20-21, ECF No. 151 (emphasis added). But this conclusion merely points to the real cause of Plaintiffs' complaints: the constitutionally protected religious practices of their schools. The Department, which throughout the litigation has repeatedly emphasized that it does not condone those religious practices, has done nothing to endorse them. *See, e.g.*, Gov. Defs.' Post-Hr'g Br. at 1, ECF No. 150.

As Intervenors explained and again in their Reply to their Motion to Dismiss, the "independent action of some third party" not "before the court" breaks the causal chain. Joint Post-Hr'g Br. at 25, ECF No. 152; Intervenors' Reply to Mot. to Dismiss at 4, ECF No. 147 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)). Plaintiffs' suggestion that *Allen v. Wright* "supports, rather than undermines [their] standing" is equally misguided. Pls.' Closing Mem. at 24, ECF No. 151. Plaintiffs again ignore *Allen*'s key holding on causation and redressability, namely, that both are absent where, as here, "it is entirely speculative . . . whether withdrawal of a tax exemption from any particular school would lead the school to change its policies." *Allen v. Wright*, 468 U.S. 737, 758 (1984). Intervenors have addressed that point before, and Plaintiffs have never attempted to show how their case against the Department survives it. Intervenors' Reply to Mot. to Dismiss at 3-4, ECF No. 147. For each of these reasons, the Court should reject Plaintiffs' latest attempt to impute discriminatory intent to the Department.

In sum, nothing in the Plaintiffs' Closing Memorandum is sufficient to ripen their claims or to confer standing. Here again, the preliminary injunction should be denied for that reason alone.

### B.  The Ninth Circuit's recent decision in *Maxon* confirms that the law and the facts do not clearly support Plaintiffs' APA claim.

As to the merits of Plaintiffs' APA claim: Just one week after Plaintiffs filed their post-hearing brief, the Ninth Circuit issued a decision rejecting the very same arguments that Plaintiffs make here to attack the Department's 2020 rule changes—i.e., that the Title IX religious exemption requires prior assurance from the

Department and control by a separate and distinct controlling organization. *Maxon*, 2021 WL 5882035 *1-*3. This Court should do the same and dismiss Plaintiffs' APA claim. The Ninth Circuit's decision also confirms that the law and facts do not clearly favor Plaintiffs' APA theory in a manner that could support injunctive relief.

*Maxon* involved two of the Plaintiffs here, Joanna Maxon and Nathan Brittsan. Both were expelled from Fuller Theological Seminary for violating the school's faith-based policies against same-sex marriage and extramarital sexual activity. *Maxon v. Fuller Theological Seminary*, No. 2:19-cv-09969-CBM-MRW, 2020 WL 6305460, at *1 (C.D. Cal. Oct. 7, 2020). The plaintiffs sued the seminary, alleging that it had violated Title IX by treating them differently on the basis of sexual orientation and gender. *Id.* *4-*5. The plaintiffs argued that, notwithstanding the 2020 rule changes, the seminary was not entitled to invoke the Title IX religious exemption because it had not first obtained a written assurance of exemption from the Department and because it is controlled by an internal board of directors, not an external entity. *Id.* *6-*9. The United States District Court for the Central District of California dismissed the plaintiffs' complaint, rejecting the plaintiffs' arguments there that the Title IX religious exemption requires prior written assurance from the Department and control by a distinct, external organization. *Id.*

The Ninth Circuit affirmed, making two points relevant here. *First*, the Ninth Circuit held that Title IX does not require a school to provide written notice or obtain an assurance of exemption from the Department before invoking the religious exemption. *Maxon*, 2021 WL 5882035 at *2-*3. *Second*, while the religious exemption

applies only to educational institutions that are "controlled by a religious organization," 20 U.S.C. § 1681(a)(3), the Ninth Circuit held that the controlling organization need not be a distinct, external organization, but could include a school's own religiously affiliated board of trustees. *Maxon*, 2021 WL 5882035 at *1. On each of these points, the Ninth Circuit noted that the Department's current regulations—which reflect the 2020 amendments that Plaintiffs challenge here—are consistent with Title IX's statutory text and with the Department's longstanding practice. *Id.* *1-*3.

*Maxon* shows that the law and facts do not clearly support Plaintiffs' twice-failed theory. While *Maxon* did not involve an APA claim, the Ninth Circuit's holding shows that the 2020 rule changes—clarifying that a school may invoke the religious exemption without prior assurance from the Department or control by an external organization—are far from arbitrary and capricious. And, as explained at length in the Intervenors' prior briefing, the 2020 final rules are consistent with the text and purpose of Title IX, contained extensive explanations responding to thousands of comments, and merely codified the Department's decades-long policies. *See* Intervenors' Joint Resp. to Mot. for Prelim. Inj. at 22-26, ECF No. 109; Intervenors' Joint Mot. to Dismiss at 16-20, ECF No. 137; Intervenors' Post-Hr'g Br. at 29-31, ECF No. 152; *see also* Amicus Br. of Mont. and Thirteen Other States in Supp. of Defs. and Intervenors at 12-16, ECF No. 94-1. The Court should thus deny Plaintiffs' request for a preliminary injunction with respect to the Department's 2020 rule changes.

**C.    Plaintiffs raise no serious challenge to Intervenors' prior showing that the religious exemption is required by the First Amendment and RFRA.**

A final reason to deny the preliminary injunction is that to grant it would be to ignore a key pathway to resolving both Plaintiffs' motion and this case: by analyzing the rights of the religious schools that the Title IX religious exemption was created to protect. 20 U.S.C. § 1681(a)(3). Plaintiffs ask the Court to ignore those rights, going so far as to argue that the religious nature of the exemption should not affect the Court's analysis. Pls.' Closing Mem. at 28, ECF No. 151. The Court should deny Plaintiffs' motion—and dismiss this case—because religious schools' rights foreclose any possibility that Plaintiffs could succeed on the merits.

Ironically, Plaintiffs' post-hearing brief illustrates why the requested relief would violate schools' rights under the Free Exercise Clause and RFRA. To begin, Plaintiffs argue that religious schools would be entirely unaffected if the Court were to abolish the religious exemption because they could silently maintain their interior religious beliefs so long as they do not to *exercise* those beliefs in their speech, conduct, or policies. *Id*. at 28-29. But the First Amendment and RFRA protect the free "exercise" of religion, not merely the right to private psychological belief. U.S. Const. amend. I; 42 U.S.C. § 2000bb-1(a). As Justice Gorsuch recently explained, the "Free Exercise Clause protects not only the right to hold unpopular religious beliefs inwardly and secretly. It protects the right to live out those beliefs publicly in 'the performance of (or abstention from) physical acts.'" *Dr. A v. Hochul*, 142 S. Ct. 552,

555 (2021) (Gorsuch, J., dissenting) (citing *Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990)).

Just last term, moreover, in *Fulton v. City of Philadelphia*, the Supreme Court unanimously upheld a religious institution's right to exercise its religion through religion-based conduct and policies, even while receiving government funding), and it was no defense that the government would have allowed the institution to maintain its beliefs in private. 141 S.Ct. 1868, 1876-78 (2021). Thus, Plaintiffs' argument essentially concedes that, without the religious exemption, Title IX would substantially burden schools' free exercise of religion by putting them to the choice of either violating their convictions (through conduct and policies approving relationships inconsistent with their beliefs) or curtailing their mission (through catastrophic loss of enrollment among working class students who need financial assistance to attend). *See id.*

Having established a substantial burden on Intervenors and their member schools, Plaintiffs' post-hearing brief also concedes that Title IX is not neutral and generally applicable, noting that schools losing the religious exemption might "still benefit from the other [*eight*] exemptions to Title IX." Pls.' Closing Mem. at 29, ECF No. 151. The existence of eight secular exemptions—some even broader than the religious exemption—shows that Title IX is not neutral and generally applicable, and thus "undermines the [Plaintiffs'] contention that [Title IX's] non-discrimination policies can brook no departures." *Fulton*, 141 S. Ct. at 1882.

Accordingly, the religious exemption is required to avoid Title IX from triggering and failing the same strict scrutiny under the Free Exercise Clause that its absence would require under RFRA. And, as explained in the Intervenors' Joint Motion to Dismiss, the religious exemption is also required to prevent Title IX from violating the Establishment Clause, the Free Speech Clause, and religious schools' right to free association. *See* ECF No. 137 at 33-39.

Because the religious exemption is affirmatively required, it is impossible for Plaintiffs to show that the law and facts clearly favor their position. For that reason, the Court should deny Plaintiffs' motion for preliminary injunction.

## CONCLUSION

For any number of the myriad reasons provided here, by the Joint Post-Hearing Brief, or by the Department's Post-Hearing Brief and Response, this Court should do what it has already done and once again deny Plaintiffs' request for interim injunctive relief.

Respectfully submitted.

January 10, 2022

/s/ Gene C. Schaerr
Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

/s/ Herbert G. Grey
Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

* Admitted *pro hac vice*

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

/s/ Mark A. Lippelmann
Kristen K. Waggoner, OSB # 067077
  *Lead Counsel*
Email: kwaggoner@ADFlegal.org
David A. Cortman, GA Bar # 188810*
Email: dcortman@ADFlegal.org
Ryan J. Tucker, AZ Bar # 034382*
Email: rtucker@ADFlegal.org
Mark A. Lippelmann, AZ Bar # 036553*
Email: mlippelmann@ADFlegal.org
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020

* Admitted *pro hac vice*

*Counsel for Defendants-Intervenors
Western Baptist College d/b/a Corban
University, William Jessup University
and Phoenix Seminary*

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing document was served on all counsel

of record in this case by ECF.

Monday, January 10, 2022

<div style="margin-left:45%">

/s/ Gene C. Schaerr
Gene C. Schaerr
*Counsel for Defendant-Intervenor*
*Council for Christian Colleges &*
*Universities*

</div>