IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| Elizabeth HUNTER; et al., on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. DEPARTMENT OF EDUCATION and Suzanne GOLDBERG, in her official capacity as Acting Assistant Secretary for Civil Rights, U.S. Department of Education,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 6:21-cv-00474-AA<br><br>**DECLARATION OF GARY CAMPBELL** |

I, Gary Campbell, declare:

1. I am over 18 years of age and have personal knowledge of the matters stated in this declaration and would testify truthfully to them if called upon to do so.

2. I am a resident of Apollo Beach, Florida, located in Hillsborough County.

3. Beginning in August 2001, I became a student at Baptist Bible College in Clarks Summit, Pennsylvania. I did not graduate and stopped attending the school in 2003.

4. The school's name was changed to Clarks Summit University in 2018. It will be referred to Clarks Summit University for the remainder of this declaration.

5. I am a federal income taxpayer in the United States. I am currently repaying student loans that I took out to enroll in Clarks Summit University.

6. I enrolled in Clarks Summit University after I was persuaded to by a youth pastor when I was 18 years old. It was his alma-matter. As an impressionable 18-year-old, I heeded my youth pastor's advice about which school to attend.

7. Clarks Summit University has a sexual purity policy listed in their student handbook.

8. Part of this policy states: "students are not to engage in and maintain same-sex romantic or sexual relationships." Other rules in the purity policy involve students never being in the same bed and restrictions on overnight travel with other students regardless of gender.

9. The purity policy also states: "Clarks Summit University will not support persistent or conspicuous examples of cross-dressing or other actions deliberately discordant with birth gender, and will deal with such actions with biblical counselling and judicial processes of the institution."

10. The student handbook, while currently available online, was not made available to me as perspective student. It was only given to me, with this purity policy, after I was enrolled as a student and attending school.

11. I am a gay man.

12. When I was accepted into Clarks Summit University, my parents and the pastoral staff agreed that I would seek therapy and accountability while attending the school to address my "homosexual desires". I also confided in staff members at the school in order to "seek help" and overcome my "homosexual sin".

13. Additionally, there were instances where I felt like I was being monitored and watched by the school. My resident director (also known as a "dorm dad") would keep close watch on how I interacted with the men in my dorm.

14. On one occasion, when I was wrestling with another man in my dorm, I was told that as "someone who struggles with homosexual desires" that I should not have done that.

15. In a particularly disturbing occasion, I was influenced into kissing and engaging in some sexual activity with another member of my dorm under circumstances that were manipulative and misleading. A male member of the "dorm counsel", a group of students tasked with monitoring other students, encouraged me to kiss him and engage in some physical touching. This was done specifically to set me up as a gay man and to cause me to get in trouble with the school. I would not have consented to any of this activity if I knew that it was meant to trigger disciplinary action against me. The incident was reported to the resident director, who confronted me about my homosexual behavior.

16. While, at the time, I convinced myself this was justifiable behavior on the part of the other student, I now realize that I was violated due to my lack of informed consent. The behavior was manipulative and immoral at best, and possibly bordered on sexual assault at worst, as I would not have been a willing participant in an activity specifically and solely geared towards getting me punished.

17. After this incident, I spoke to other gay students who had the same thing happen to them as well. This indicates this was systemic behavior at the school, meant to pressure gay students into acting out against school policies for the sole purpose of punishment.

18. After another occasion of engaging in sexual behavior with another student who was "struggling" with his homosexuality, I confessed to the school. The result was that I was suspended for 7 days and was removed from a number of extracurricular positions including removal from the Chamber Singers, removal from my dorm chaplain position, and removal from the Honors Corp. I was forced to return home for this time at my own expense. After this suspension, I was not allowed to attend school full time.

19. In my Junior year, I was eligible to live off campus and desired to do so in order to cut my expenses at the school. I was told that I could not live off campus because I violated the code of conduct through engaging in sexual acts with another man. I was told I must continue to live on campus.

20. It was shortly after this that I decided to no longer pursue my degree at the school. The office of enrollment tried to convince me to stay, but ultimately would not allow me to be a full-time student based on the Dean of Men's decision that I could not attend full time due to my "struggle" with homosexuality. As a result, I returned home to continue my education at a community college.

21. It was at this point that I decided to embrace who I was. I began dating a man. While life was going well for me over the next ten years, I was also battling Religious Trauma Syndrome and was self-medicating with alcohol as a coping mechanism. I required multiple hospitalizations for detox and attended rehab twice.

22. After I reached two years of sobriety in 2019, I attempted to re-enroll in the school to finish my degree. I was, at first, told by Clarks Summit University that I had only 6 credits left to graduate and could complete them there. I was also assured that the school had loosened its policies towards homosexual students and that this should not be an issue if I enrolled there.

23. I was called by the Dean of Men and congratulated on returning to school.

24. Two weeks before classes started, I got another call from the Dean of Men. I was told that someone reported that I was in a homosexual relationship and I would not be allowed to enroll in online classes as planned. I wrote the school to appeal this decision and it was denied.

25. I felt devastated by this decision. I worked incredibly hard after years of alcoholism to rebuild my life. This decision also brought back the trauma of what happened to me at the school back when I first attended in the early 2000's. I replied that the school was being discriminatory and disrespectful and that I would go to the ACLU.

26. I was told by the Dean of Men, "you know the code of conduct here. It's not a secret. You signed up for that when you became a student. Last time and this time. You know our position and perhaps even deceived me when you applied and spoke to me. The ACLU will tell you that a private school has a right to enforce a code of conduct. That is not discrimination."

27. Ultimately the ACLU could not help me.

28. The story started receiving press attention, and as a result, the president of Lackawanna College allowed me to attend that school free of charge to finish my degree.

29. My school's policies made me feel very small, watched, unworthy, subpar, subhuman, broken and damaged. I was told on numerous occasions that I might not ever be able to work in a church based on my homosexual desires, yet the school continued to take my money every semester.

30. I have suffered damages as a result of my school's policies and their behavior based on those policies. I suffer from depression and anxiety, for which I am medicated. I

    struggle with not feeling good enough and am hypersensitive to criticism.  I feel unsafe around other Christians.

31. I not only was misled and possibly sexually assaulted as a result of the school's actions, but also had to attend "biblical counselling" at school. I was also forced to attend group therapy for those struggling with their homosexuality at a location that was hours away, weekly, at my own expense.  Both of these types of counselling were really damaging conversion therapy.

32. I am also afraid of putting on a resume that I went to this school because I fear judgment by future employers.  I spoke to other alumni that feel similarly.

33. I am participating in this lawsuit to make sure that what I went through does not happen to anyone else.  I want to make the world safter for LGBTQ+ students who attend religious schools.  I also feel like it is my civic duty to make the world a safer place.

34. Experiencing hate and discrimination should not be a part of attending college.

35. I am a taxpayer and do not feel that my taxes should be spend in furthering the discrimination against me by Clarks Summit University.

36. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed this _____ day of February, 2021.

By: _____  2/25/2021
Gary Campbell