

Office of the President
Brigham Young University–Idaho • 200 Kimball Building • Rexburg, ID • 83460-1650

February 12, 2016

Ms. Catherine E. Lhamon
Assistant Secretary for Civil Rights
United States Department of Education
400 Maryland Avenue, SW
Washington, DC 20202-1100

Dear Ms. Lhamon:

RE:   BRIGHAM YOUNG UNIVERSITY–IDAHO'S TITLE IX RELIGIOUS EXEMPTIONS

We are writing in response to the letter we received January 26, 2016, to affirm Brigham Young University–Idaho's religious protections under Title IX of the Education Amendments of 1972 and the United States Constitution.[1]

Title IX "is designed to eliminate (with certain exceptions) discrimination on the basis of sex in any education program or activity receiving Federal financial assistance."[2] One exception is that private institutions of undergraduate higher education are exempt from Title IX with respect to admissions and recruitment.[3] Another important exception is that Title IX "shall not apply to an educational institution which is controlled by a religious organization if the application . . . would not be consistent with the religious tenets of such organization."[4]

BYU–Idaho shares and supports the goal of the Office for Civil Rights to eliminate sex discrimination. As a religious institution of higher education, BYU–Idaho also has a responsibility to teach the doctrine of its sponsoring institution, The Church of Jesus Christ of Latter-day Saints (the Church). The formally stated mission of BYU–Idaho is to "develop disciples of Jesus Christ who are leaders in their homes, the Church, and their communities."[5] The university does this by, among other things, "[b]uilding testimonies of the restored gospel of Jesus Christ," "encouraging living its principles," and "[p]roviding a quality education for students of diverse interests and abilities."[6] BYU–Idaho strives to create an environment in

---

[1] Letter from Emily Hazen, Equal Opportunity Specialist at OCR, to Clark G. Gilbert, President of BYU–Idaho (Jan. 26, 2016).
[2] 34 C.F.R. § 106.1 (2016).
[3] 20 U.S.C. § 1681(a)(1) (2016); 34 C.F.R. § 106.15(d).
[4] 20 U.S.C. § 1681(a)(3).
[5] BYU–Idaho Mission Statement, *available at* http://byui.edu/about/our-mission.
[6] *Id.*

Clark G. Gilbert   President   |   Phone: (208) 496-1111   |   Fax: (208) 496-1103   |   gilbertc@byui.edu

February 12, 2016
Page 2 of 4

which the restored gospel of Jesus Christ guides every aspect of the educational experience. In these ways, the mission of BYU–Idaho is inextricably both spiritual and educational.[7] Religious higher education institutions like BYU–Idaho contribute to the "diversity of institutions and educational missions [that] is one of the key strengths of American higher education."[8]

BYU–Idaho was originally established in 1888, and for much of its existence was known as Ricks College. In 2001 Ricks College became a four-year undergraduate institution (as it had been many decades earlier) and was renamed Brigham Young University–Idaho. BYU–Idaho is sponsored and controlled by the Church. The Church has always been ultimately responsible for BYU–Idaho's operation throughout its history. The governing board of the Church appoints the BYU–Idaho Board of Trustees, and the majority of the BYU–Idaho operating budget is derived directly from appropriations from the Church.

The Church is a major international Christian religion, with a fully developed theology, a well-known history spanning nearly two centuries, and a worldwide membership presently numbering over fifteen million. Its members believe that the Church and its doctrine contain the fullness of the gospel of Jesus Christ, restored by direct revelation from God to Joseph Smith, who was called in 1820 as a prophet in the Biblical sense. The Church's governing board comprises the First Presidency and the Quorum of the Twelve Apostles, all of whom are sustained by Church members as prophets, seers, and revelators. Members of the Church regard the Bible and the Book of Mormon (another testament of Jesus Christ) as holy scripture. The Church also accepts additional prophetic writings and the statements of current Church leaders as authoritative religious teaching. Central to the Church's theology is the view that every human being is a son or daughter of God who may be saved through the Atonement of Jesus Christ by obedience to the laws and ordinances of His gospel.

BYU–Idaho affirms the dignity of all human beings. Consistent with the teachings of the Church, BYU–Idaho recognizes the inherent agency, or free will, of each person. All students who apply to and enroll at BYU-Idaho make a commitment to live the University Standards, including an Honor Code, that are based on doctrines and practices of the Church and reflect the "moral

---

[7] As we have maintained for over forty years in our correspondence with the Department of Education and its predecessor, the Department of Health, Education, and Welfare, BYU–Idaho considers itself exempt from certain regulations and their related processes promulgated under Title IX by virtue of protections in the U.S. Constitution and federal statutes. *See Hall v. Lee Coll., Inc.*, 932 F. Supp. 1027, 1033 (E.D. Tenn. 1996) ("It may very well be that to claim the exemption found in the statute, an educational institution need do nothing more than just raise the exemption."). However, in an effort to continue to cooperate with your office, I am sending this letter in my capacity as president of BYU–Idaho to you in your capacity as assistant secretary for Civil Rights at the Department of Education, as 34 C.F.R. § 106.12(b) anticipates.

[8] 20 U.S.C. § 1011a(a)(2)(A).

February 12, 2016
Page 3 of 4

virtues encompassed in the gospel of Jesus Christ."[9] This commitment is acknowledged at the time of application and must be reaffirmed each year in order to continue enrollment. Students specifically agree to—among other things—live a chaste and virtuous life, respect others, and observe certain dress and grooming standards. BYU–Idaho has adopted dress and grooming standards that are different for men and women. The purpose of this distinction between genders is based on religious tenets about our divine nature as children of God, the eternal nature of our gender identity, and the purpose of our life on earth.

Members of the Church believe that "God created man in his own image, in the image of God created he him; male and female created he them."[10] Modern-day scripture reiterates the truth that God created all human beings in his own image and likeness, male and female.[11] In 1995, the Church's First Presidency and Quorum of the Twelve Apostles issued "The Family: A Proclamation to the World," which states: "ALL HUMAN BEINGS—male and female—are created in the image of God. Each is a beloved spirit son or daughter of heavenly parents, and, as such, each has a divine nature and destiny. Gender is an essential characteristic of individual premortal, mortal, and eternal identity and purpose."[12] Therefore, as a religious tenet, gender is not simply socially determined but is an essential characteristic of each person's eternal identity.

The Church has a history of encouraging all of its members, male and female, to obtain as much education as possible and to participate fully in the economic, political, and social life of their communities.[13] BYU–Idaho strives to contribute to that effort by providing a broad undergraduate education and facilitating internship, employment, and service opportunities. However, in keeping with the Church's teaching on gender, BYU–Idaho requires all students and employees to conduct their lives in harmony with the Church's teachings and the University Standards.

The complaint against BYU–Idaho alleges discrimination on the basis of sex with respect to a transgender student.[14] Although the letter we received does not specify which Title IX

---

[9] BYU–Idaho University Standards 58 (2015-2016) (stating that "[s]tudents must be in good honor code standing to be admitted to, continue enrollment at, and graduate from BYU-Idaho"), *available at* http://www.byui.edu/Documents/catalog/2015-2016/University%20Standards.pdf.
[10] Genesis 1:27; *see also* Matthew 19:4.
[11] Moses 2:27; Doctrine and Covenants 20:18.
[12] We sent a copy of The Family: A Proclamation to the World to your office in 1998. Letter from David A. Bednar, President of Ricks College, to Norma Cantú, Assistant Secretary for Civil Rights (Mar. 12, 1998).
[13] This also reflects a religious tenet of the Church. *See* Doctrine and Covenants 88:77-80; 109:7.
[14] The Department of Education's position that Title IX's definition of "sex" includes gender identity is not anywhere defined in statute or regulation. *Johnston v. Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*, 97 F. Supp. 3d 657, 674 (W.D. Pa. 2015) (stating that "Title IX does not prohibit discrimination on the basis of transgender itself because transgender is not a protected characteristic under

February 12, 2016
Page 4 of 4

regulations may apply, it appears that all of the allegations relate to regulations regarding education programs or activities and housing. The Office for Civil Rights has already determined that BYU–Idaho is exempt from the application of 34 C.F.R. § 106.31 and § 106.32 to the extent they conflict with the Church's religious tenets.[15] The Department of Education's recent guidance construing sex to mean, among other things, gender identity, does not affect BYU–Idaho's already existing exemptions.

We appreciate your commitment to resolving complaints as promptly as possible. In a similar situation, the regional office closed a complaint for lack of jurisdiction.[16] Based on the existing exemptions, and as required by the statutory text of Title IX, that same approach is appropriate here. If I or any members of BYU–Idaho's administration can be of any assistance to you, or if you require additional information, please contact me.

Sincerely,

Dr. Clark G. Gilbert
President

---

the statute" and noting there is "no federal court case that has squarely decided this issue in the Title IX context").

[15] "Ricks College is hereby exempted from the requirements of the following sections of the Title IX regulation: . . . § 106.31, § 106.32." Letter from Harry M. Singleton, Assistant Secretary for Civil Rights, to Dr. Bruce C. Hafen, President of Ricks College (June 24, 1985).

[16] Letter from LeGree S. Daniels, Assistant Secretary for Civil Rights, to Dr. Joe J. Christensen, President of Ricks College (June 22, 1988) (recounting that the regional office had received a complaint and subsequently closed it for lack of jurisdiction).



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

March 15, 2016

Dr. Clark G. Gilbert
President
Brigham Young University-Idaho
200 Kimball Building
Rexburg, ID 83460

Dear Dr. Gilbert:

I write to respond to your February 12, 2016, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you seek to confirm the scope of existing religious exemptions for Brigham Young University-Idaho (BYU-Idaho or the University) of Rexburg, Idaho, from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your letter references religious exemptions OCR granted to Ricks College in letters dated June 24, 1985 and June 22, 1988. You explain that "[i]n 2001 Ricks College became a four-year undergraduate institution (as it had been many decades earlier) and was renamed Brigham Young University-Idaho." Your letter states that BYU-Idaho is "sponsored and controlled by" the Church of Jesus Christ of Latter-day Saints, as it was when the school was Ricks College. According to your letter, the "Church has always been ultimately responsible for BYU-Idaho's operation throughout its history. The governing board of the Church appoints the BYU-Idaho Board of Trustees, and the majority of the BYU-Idaho operating budget is derived directly from appropriations from the Church." Your letter asserts that the exemptions granted to Ricks College (now applicable to BYU-Idaho) encompass Title IX's coverage of discrimination on the basis of gender identity. Because that basis was not specifically addressed in the previous request letters, OCR will instead treat your letter as a new request for a religious exemption for

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

Dr. Clark G. Gilbert – page 2

BYU-Idaho from Title IX to the extent that it prohibits discrimination on the basis of gender identity.

Your letter references the University's treatment of transgender individuals and its basis in the teachings of the Church of Jesus Christ of Latter-day Saints. Specifically, you cite to a Church publication entitled "The Family: a Proclamation to the World," which your letter explains says "ALL HUMAN BEINGS—male and female—are created in the image of God. Each is a beloved spirit son or daughter of heavenly parents, and, as such, each has a divine nature and destiny. Gender is an essential characteristic of individual premortal, mortal, and eternal identity and purpose." Thus, you explain, "as a religious tenet, gender is not simply socially determined but is an essential characteristic of each person's eternal identity. . . . [I]n keeping with the Church's teaching on gender, BYU-Idaho requires all students and employees to conduct their lives in harmony with the Church's teachings and the University Standards."

The University notes that OCR granted Ricks College exemptions from a number of provisions of the Title IX regulation, including 34 C.F.R. § 106.31 and 34 C.F.R. § 106.32. You state that the "Department of Education's recent guidance construing sex to mean, among other things, gender identity, does not affect BYU-Idaho's already existing exemptions." We interpret this as a request for an exemption from all provisions from which Ricks College was exempt (and BYU-Idaho is now exempt) to the extent that they prohibit discrimination on the basis of gender identity, including the following:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.36 (governing counseling and use of appraisal and counseling materials);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students); and
- 34 C.F.R. § 106.57 (governing different rules based on marital or parental status of employees).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the

Dr. Clark G. Gilbert – page 3

institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education