

# UNION COLLEGE

LINCOLN, NEBRASKA 68506 ■ (402) 488-2331

*Kresy A.H.*

July 18, 1976

Office of the Secretary
Department of Health, Education and Welfare
Education Division
Office of Education
Washington, D.C. 20202

Dear Sirs:

Herewith I am enclosing a statement which articulates the policy of Union College relative to Title IX and discrimination in general. Our position is as follows:

"Union College is a co-educational institution of higher learning, established by the Seventh-day Adventist Church as an instrument essential to the fulfillment of its teaching ministry.

"Union College is committed to equal educational and employment opportunities for men and women and does not discriminate on the basis of sex among its students or employees or among applicants for admission or employment. The College is in substantial compliance with the requirements issued by the United States Department of Health, Education and Welfare under Title IX of the Educational Amendments Act of 1972.

"Union College believes the interpretation and implementation of Title IX regulations are subject to constitutional guarantees against unreasonable entanglement with or infringement on the religious teachings and practices of the Seventh-day Adventist Church.

"Union College is responsible for applying to both men and women employees and students biblical principles of morality and deportment as interpreted by the Seventh-day Adventist Church. It also is obligated to apply Church standards with respect to appearance, including those differentiating between men and women.

"Union College claims exemption from those provisions of Title IX, such as Regulations 86.21, 86.40, 86.57(B), and 86.31, in-so-far as they conflict with Church teachings and practices on morality, deportment, and appearance."

SEP 14 1976

AUG 16 1976

*" The College that Cares ..."*

Department of Health, Education and Welfare
July 18, 1976
Page 2


I believe that this statement of policy is required to be submitted to your
office by July 19, 1976.

Sincerely,

Myrl Manley
President

MM:sv

July 22, 1976

Director of the Office for Civil Rights
U. S. Department of Health, Education & Welfare
Washington, D. C. 20201

Dear Sir:

Pursuant to Section 86.12 (b) of "Title IX of the Education Amendments
of 1972 Prohibiting Sex Discrimination in Education," this letter is to
advise you that Union University of Jackson, Tennessee, is an
educational institution which is owned by the Tennessee Baptist Convention,
that we do not receive federal financial grants, but our students do
participate in federally financed student aid programs, and that the
following portions of the above mentioned regulations are not consistent
with the religious tenets of such organization:

1.  Sexual immorality, whether on the part of a man or woman,
    is contrary to the tenets of Southern Baptists.  In so far as
    these regulations require Union University to treat the
    pregnancy, childbirth, false pregnancy or termination of
    pregnancy of an unmarried woman as a mere temporary disability,
    such regulations conflict with the tenets of Southern Baptists.
    Such regulations pertaining to unmarried women, whether
    students or prospective students, or employees, or prospective
    employees are inconsistent with the policies of the University
    and Southern Baptists, and this institution requests exemption
    on this basis.  These inconsistent regulations include Sec.
    86.21(c); 86.39; 86.40; 86.51 (b) (6); 86.57 (a)(1), (b), (c);
    86.60(a).

2.  Southern Baptists do not ordinarily practice the ordination of
    women to serve as pastors of local churches.  The college
    requests that it be exempt from the regulations of equal number

Director of the Office for Civil Rights
July 22, 1976
Page 2

       of male and female students selecting church-related
       vocations and receiving equal scholarship assistance
       for these church-related vocations. Sections 86.37(a)(b);
       86.51; 86.53; and 86.55(a) of such regulations are
       inconsistent with this Southern Baptist tenet.

Union University has tried to comply with other parts of the Title IX
regulations and will have on record the results of our study, evidence
of our modifications of policies and practices, and the proper grievance
procedures for complainants.

Respectfully submitted,


Robert E. Craig
President

eg



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS

SEP 3 1985

Dr. Robert E. Craig
President
Union University
Jackson, Tennessee  38305

Dear President Craig:

The Office for Civil Rights of the Department of Education (OCR/ED) has
reviewed your response to our letter of March 25, 1985, requesting clari-
fication of your request for a religious exemption from Title IX of the
Education Amendments of 1972.

In your letters you describe several policies practiced at Union University
as consistent with the tenets of the religious organization that controls
the institution.  These policies would violate certain sections of the
regulation implementing Title IX absent a religious exemption.  You have
supplied information that establishes that the institution is controlled
by a religious organization and that tenets followed by this organization
conflict with specific sections of the Title IX regulation.  Therefore, I
am granting Union University an exemption to those sections of the Title IX
regulation appropriate to your request letters.  The exemption is limited
to the extent that compliance with the Title IX regulation conflicts with
the religious tenets followed by the institution.  Union University is
hereby exempted from the requirements of the following sections of the
Title IX regulation:  34 C.F.R. §§ 106.21(c); 106.37(a) and (b); 106.39;
106.40; 106.51(b)(6); 106.57(a)(1), (b), and (c); and 106.60(a).  The
basis for our decision to grant this exemption is discussed in further
detail below.

Your letters indicate that Union University is owned and operated by the
Tennessee Baptist Convention, which is affiliated with the Southern Baptist
Convention.  The Tennessee Baptist Convention elects all 48 of the trustees
who set policies and employ personnel.  Additionally, the Tennessee Baptist
Convention "furnishes a great percentage of [the university's] financial
support."  This relationship between the Tennessee Baptist Convention and
Union University adequately establishes that Union University is controlled
by a religious organization as is required for consideration for exemption
under § 106.12 of the Title IX regulation.

Page 2 - Dr. Robert E. Craig

In your letters you indicate that the University considers sexual immorality as contrary to the tenets of Southern Baptists and "insist[s] upon high levels of moral conduct. Sexual activities outside of marriage are deemed contrary to Baptist interpretation of Biblical standards." Based on these principles, Union University has requested and is granted by this letter, exemption to:  34 C.F.R. § 106.21(c) (marital or parental status of applicants for admission); § 106.39 (health and insurance benefits and services to students); § 106.40 (marital or parental status of students); § 106.51(b)(6) (leaves of absence for pregnancy and related conditions and child care); § 106.57(a)(1), (b) and (c) (marital and parental status of employees, including pregnancy); and § 106.60(a) (pre-employment inquiries as to marital status).

Your letter indicates that since Union University does not ordinarily practice the ordination of women, it does not permit an equal number of male and female students to select church-related vocations or receive equal scholarship assistance for these church-related vocations. Based on this principle, Union University has requested and is granted by this letter, exemption to 34 C.F.R. § 106.37(a) and (b) (financial assistance for students).

You also requested exemption to § 106.51 (employment, general), § 106.53 (recruitment for employment) and § 106.55 (job classification and structure) based on your tenets and practices regarding morality and the award of financial assistance to students selecting church-related vocations.  Sections 106.51(b)(6), 106.57(a)(1), (b) and (c) and 106.37(a) and (b), to which Union University is granted exemption by this letter, more appropriately address the practices you have described in your letters than do §§ 106.53, 106.55 or all of § 106.51.  Therefore, based upon the information in your letters, an exemption to §§ 106.53, 106.55 and all of § 106.51 is not necessary.

This letter should not be construed to grant exemption from any section of the Title IX regulation not specifically mentioned.  In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption herein granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets.  If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

Page 3 - Dr. Robert E. Craig

I hope this letter responds fully to your request.  I regret the inordinate
delay in responding to your original request.  If you have any questions,
please do not hesitate to contact the Atlanta Regional Office for Civil Rights.
The address is:

> William H. Thomas
> Regional Civil Rights Director
> Office for Civil Rights, Region IV
> Department of Education
> 101 Marietta Street, N.W., 27th Floor
> Atlanta, Georgia  30323

> Sincerely,
>
> Harry M. Singleton
> Assistant Secretary
> for Civil Rights

cc:  William H. Thomas, Regional Civil Rights Director, Region IV



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS

OCT 2 5 1985

Dr. Benjamin R. Wygal
President
Union College
3800 South 48th Street
Lincoln, Nebraska  68506

Dear President Wygal:

The Office for Civil Rights of the Department of Education (OCR/ED) recently
requested additional information regarding Union College's request for
religious exemption from Title IX of the Education Amendments of 1972.

In your response, you describe certain policies practiced at the College
as being consistent with the tenets of the religious organization that
controls the institution.  These policies would violate certain sections
of the regulation implementing Title IX (copy enclosed) absent a religious
exemption.  The College has provided information that establishes that the
institution is controlled by a religious organization and that tenets
followed by this organization conflict with specific sections of the
Title IX regulation.  Therefore, I am granting Union College an exemption
to those sections of the Title IX regulation specified in your September 30,
1985, letter.  The exemption is limited to the extent that compliance
with the Title IX regulation conflicts with the religious tenets followed
by the institution.  Union College is hereby exempted from the requirements
of the following sections of the Title IX regulation:  34 C.F.R. §§ 106.21,
106.40 and 106.57.  The basis for our decision to grant this exemption is
discussed in further detail below.

Your letter indicates that Union College is owned and operated by the
Seventh-day Adventist Church.  Members "of its constituency and Board of
Trustees are Seventh-day Adventists, as are its faculty and staff."
This relationship between Union College and the Seventh-day Adventist
Church adequately establishes that Union College is controlled by a
religious organization as is required for consideration for exemption
under § 106.12 of the Title IX regulation.

Your request letter states that "pregnancy outside of marriage is con-
sidered immoral conduct inappropriate for a student in a Seventh-day
Adventist educational institution."  The Church "'must register its
decisive, emphatic disapproval of the sin of fornication, adultery, all
acts of moral indiscretions and other . . . sin[.]'"  You state that the
College must hold to this religious standard in its relationship with
its students and employees.  Based on this principle, Union College
has requested and is granted by this letter exemption to:  34 C.F.R.
§ 106.21, to the extent that this section addresses marital and parental
status of applicants for admission, § 106.40 (marital or parental status
of students), and § 106.57 (marital or parental status of employees and
applicants for employment).

Page 2 - Dr. Benjamin R. Wygal

This letter should not be construed to grant exemption from any section of the Title IX regulation not specifically mentioned.  In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption herein granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets.  If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to the College's request.  I regret the inordinate delay in responding to the original request.  If you have any questions, please do not hesitate to contact the Kansas City Regional Office for Civil Rights.  The address is:

> Jesse L. High
> Regional Civil Rights Director
> Office for Civil Rights
> Department of Education, Region VII
> 324 East 11th Street, 24th Floor
> Kansas City, Missouri  64106

> Sincerely,

> Harry M. Singleton
> Assistant Secretary
>   for Civil Rights

Enclosure

cc:  Jesse L. High, Regional Civil Rights Director, Region VII



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

March 24, 2015

Samuel W. Oliver, Ph.D.
President
Union University
1050 Union University Drive
Jackson, Tennessee 38305-3697

Dear President Oliver:

The purpose of this letter is to respond to your January 19, 2015, letter to the U.S. Department of Education, Office for Civil Rights (OCR), in which you requested a religious exemption from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, for Union University (University) of Jackson, Tennessee. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

The implementing regulation at 34 C.F.R. § 106.12 provides that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law and/or regulation that conflict with those tenets.

Your request explained that the University "is controlled by a religious organization. That organization is the Tennessee Baptist Convention." Your letter states that "the trustees of Union University are elected by and responsible to the Tennessee Baptist Convention." Your letter also references the University's Bylaws (2.1.1. Control and Management) which state "[t]he Charter vests the control of the affairs of Union University in its Board of Trustees, which consists of not fewer than eighteen nor more than thirty-six in number, elected by the Tennessee Baptist Convention."

Your letter requests a religious exemption "from provisions of Title IX to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, gender identity (including but not limited to transgendered status), pregnancy, and abortion." In support of this request, you cite to The Baptist Faith and Message 2000, the most recent statement of faith affirmed by the Tennessee Baptist Convention. According to your letter, that statement of faith explains that the tenets of the Convention are that marriage is between one man and one woman and serves as the means for procreation, that God made man in male and female form, and that the "gift of gender is thus part of the goodness of God's creation." You further cite the Convention's belief that one should "speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death."

You explain that it would not be consistent with the Convention's religious tenets for the University to comply with Title IX to the extent that it prohibits the College from "engaging in recruiting and admissions under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

Samuel W. Oliver – page 2

present practices regarding marriage, sex outside marriage, pregnancy and abortion; . . . from subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics[; or from] making all employment decisions. . . in a manner which takes into consideration these employee characteristics."

You state that, for these reasons, The University is requesting an exemption from the following regulatory provisions "to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, gender identity, pregnancy and abortion in a manner that is inconsistent with the religious tenets of the Convention:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions);
- 34 C.F.R. § 106.31(b)(7) (governing the limitation of rights, privileges, advantages, or opportunities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.51 (governing employment);
- 34 C.F.R. § 106.52 (governing employment criteria);
- 34 C.F.R. § 106.53 (governing recruitment of employees);
- 34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions);
- 34 C.F.R. § 106.60 (governing pre-employment inquiries).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of marriage status, sex outside of marriage, sexual orientation, gender identity, pregnancy, or abortion and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

I hope this letter responds fully to your request. If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

July 22, 1976

Director of the Office for Civil Rights
U. S. Department of Health, Education & Welfare
Washington, D. C. 20201

Dear Sir:

Pursuant to Section 86.12 (b) of "Title IX of the Education Amendments
of 1972 Prohibiting Sex Discrimination in Education," this letter is to
advise you that Union University of Jackson, Tennessee, is an
educational institution which is owned by the Tennessee Baptist Convention,
that we do not receive federal financial grants, but our students do
participate in federally financed student aid programs, and that the
following portions of the above mentioned regulations are not consistent
with the religious tenets of such organization:

1.  Sexual immorality, whether on the part of a man or woman,
    is contrary to the tenets of Southern Baptists. In so far as
    these regulations require Union University to treat the
    pregnancy, childbirth, false pregnancy or termination of
    pregnancy of an unmarried woman as a mere temporary disability,
    such regulations conflict with the tenets of Southern Baptists.
    Such regulations pertaining to unmarried women, whether
    students or prospective students, or employees, or prospective
    employees are inconsistent with the policies of the University
    and Southern Baptists, and this institution requests exemption
    on this basis. These inconsistent regulations include Sec.
    86.21(c); 86.39; 86.40; 86.51 (b) (6); 86.57 (a)(1), (b), (c);
    86.60(a).

2.  Southern Baptists do not ordinarily practice the ordination of
    women to serve as pastors of local churches. The college
    requests that it be exempt from the regulations of equal number

Director of the Office for Civil Rights
July 22, 1976
Page 2

of male and female students selecting church-related
vocations and receiving equal scholarship assistance
for these church-related vocations. Sections 86.37(a)(b);
86.51; 86.53; and 86.55(a) of such regulations are
inconsistent with this Southern Baptist tenet.

Union University has tried to comply with other parts of the Title IX
regulations and will have on record the results of our study, evidence
of our modifications of policies and practices, and the proper grievance
procedures for complainants.

Respectfully submitted,


Robert E. Craig
President

eg



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS

SEP 3 1985

Dr. Robert E. Craig
President
Union University
Jackson, Tennessee  38305

Dear President Craig:

The Office for Civil Rights of the Department of Education (OCR/ED) has
reviewed your response to our letter of March 25, 1985, requesting clari-
fication of your request for a religious exemption from Title IX of the
Education Amendments of 1972.

In your letters you describe several policies practiced at Union University
as consistent with the tenets of the religious organization that controls
the institution.  These policies would violate certain sections of the
regulation implementing Title IX absent a religious exemption.  You have
supplied information that establishes that the institution is controlled
by a religious organization and that tenets followed by this organization
conflict with specific sections of the Title IX regulation.  Therefore, I
am granting Union University an exemption to those sections of the Title IX
regulation appropriate to your request letters.  The exemption is limited
to the extent that compliance with the Title IX regulation conflicts with
the religious tenets followed by the institution.  Union University is
hereby exempted from the requirements of the following sections of the
Title IX regulation:  34 C.F.R. §§ 106.21(c); 106.37(a) and (b); 106.39;
106.40; 106.51(b)(6); 106.57(a)(1), (b), and (c); and 106.60(a).  The
basis for our decision to grant this exemption is discussed in further
detail below.

Your letters indicate that Union University is owned and operated by the
Tennessee Baptist Convention, which is affiliated with the Southern Baptist
Convention.  The Tennessee Baptist Convention elects all 48 of the trustees
who set policies and employ personnel.  Additionally, the Tennessee Baptist
Convention "furnishes a great percentage of [the university's] financial
support."  This relationship between the Tennessee Baptist Convention and
Union University adequately establishes that Union University is controlled
by a religious organization as is required for consideration for exemption
under § 106.12 of the Title IX regulation.

Page 2 - Dr. Robert E. Craig

In your letters you indicate that the University considers sexual immorality as contrary to the tenets of Southern Baptists and "insist[s] upon high levels of moral conduct. Sexual activities outside of marriage are deemed contrary to Baptist interpretation of Biblical standards." Based on these principles, Union University has requested and is granted by this letter, exemption to: 34 C.F.R. § 106.21(c) (marital or parental status of applicants for admission); § 106.39 (health and insurance benefits and services to students); § 106.40 (marital or parental status of students); § 106.51(b)(6) (leaves of absence for pregnancy and related conditions and child care); § 106.57(a)(1), (b) and (c) (marital and parental status of employees, including pregnancy); and § 106.60(a) (pre-employment inquiries as to marital status).

Your letter indicates that since Union University does not ordinarily practice the ordination of women, it does not permit an equal number of male and female students to select church-related vocations or receive equal scholarship assistance for these church-related vocations. Based on this principle, Union University has requested and is granted by this letter, exemption to 34 C.F.R. § 106.37(a) and (b) (financial assistance for students).

You also requested exemption to § 106.51 (employment, general), § 106.53 (recruitment for employment) and § 106.55 (job classification and structure) based on your tenets and practices regarding morality and the award of financial assistance to students selecting church-related vocations. Sections 106.51(b)(6), 106.57(a)(1), (b) and (c) and 106.37(a) and (b), to which Union University is granted exemption by this letter, more appropriately address the practices you have described in your letters than do §§ 106.53, 106.55 or all of § 106.51. Therefore, based upon the information in your letters, an exemption to §§ 106.53, 106.55 and all of § 106.51 is not necessary.

This letter should not be construed to grant exemption from any section of the Title IX regulation not specifically mentioned. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption herein granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets of the controlling organization, OCR is obligated to contact the controlling organization to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the institution, this exemption will be rescinded.

Page 3 - Dr. Robert E. Craig


I hope this letter responds fully to your request.  I regret the inordinate
delay in responding to your original request.  If you have any questions,
please do not hesitate to contact the Atlanta Regional Office for Civil Rights.
The address is:

> William H. Thomas
> Regional Civil Rights Director
> Office for Civil Rights, Region IV
> Department of Education
> 101 Marietta Street, N.W., 27th Floor
> Atlanta, Georgia  30323

> Sincerely,
>
> Harry M. Singleton
> Assistant Secretary
>   for Civil Rights

cc:  William H. Thomas, Regional Civil Rights Director, Region IV



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS

**OCT 2 5** 1985

Dr. Benjamin R. Wygal
President
Union College
3800 South 48th Street
Lincoln, Nebraska  68506

Dear President Wygal:

The Office for Civil Rights of the Department of Education (OCR/ED) recently
requested additional information regarding Union College's request for
religious exemption from Title IX of the Education Amendments of 1972.

In your response, you describe certain policies practiced at the College
as being consistent with the tenets of the religious organization that
controls the institution.  These policies would violate certain sections
of the regulation implementing Title IX (copy enclosed) absent a religious
exemption.  The College has provided information that establishes that the
institution is controlled by a religious organization and that tenets
followed by this organization conflict with specific sections of the
Title IX regulation.  Therefore, I am granting Union College an exemption
to those sections of the Title IX regulation specified in your September 30,
1985, letter.  The exemption is limited to the extent that compliance
with the Title IX regulation conflicts with the religious tenets followed
by the institution.  Union College is hereby exempted from the requirements
of the following sections of the Title IX regulation:  34 C.F.R. §§ 106.21,
106.40 and 106.57.  The basis for our decision to grant this exemption is
discussed in further detail below.

Your letter indicates that Union College is owned and operated by the
Seventh-day Adventist Church.  Members "of its constituency and Board of
Trustees are Seventh-day Adventists, as are its faculty and staff."
This relationship between Union College and the Seventh-day Adventist
Church adequately establishes that Union College is controlled by a
religious organization as is required for consideration for exemption
under § 106.12 of the Title IX regulation.

Your request letter states that "pregnancy outside of marriage is con-
sidered immoral conduct inappropriate for a student in a Seventh-day
Adventist educational institution."  The Church "'must register its
decisive, emphatic disapproval of the sin of fornication, adultery, all
acts of moral indiscretions and other . . . sin[.]'"  You state that the
College must hold to this religious standard in its relationship with
its students and employees.  Based on this principle, Union College
has requested and is granted by this letter exemption to:  34 C.F.R.
§ 106.21, to the extent that this section addresses marital and parental
status of applicants for admission, § 106.40 (marital or parental status
of students), and § 106.57 (marital or parental status of employees and
applicants for employment).

Page 2 - Dr. Benjamin R. Wygal


This letter should not be construed to grant exemption from any section of
the Title IX regulation not specifically mentioned.  In the event that OCR
receives a complaint against your institution, we are obligated to determine
initially whether the allegations fall within the exemption herein granted.
Also, in the unlikely event that a complainant alleges that the practices
followed by the institution are not based on the religious tenets of the
controlling organization, OCR is obligated to contact the controlling
organization to verify those tenets.  If the organization provides an
interpretation of tenets that has a different practical impact than that
described by the institution, or if the organization denies that it controls
the institution, this exemption will be rescinded.

I hope this letter responds fully to the College's request.  I regret the
inordinate delay in responding to the original request.  If you have any
questions, please do not hesitate to contact the Kansas City Regional
Office for Civil Rights.  The address is:

                    Jesse L. High
                    Regional Civil Rights Director
                    Office for Civil Rights
                    Department of Education, Region VII
                    324 East 11th Street, 24th Floor
                    Kansas City, Missouri  64106

                    Sincerely,

                    Harry M. Singleton
                    Assistant Secretary
                      for Civil Rights

Enclosure

cc:  Jesse L. High, Regional Civil Rights Director, Region VII



**UNION**
UNIVERSITY

January 19, 2015

Ms. Catherine E. Lhaman
Assistant Secretary for Civil Rights
United States Department of Education
400 Maryland Ave. S.W.
Washington, DC 20202-1100

Re: Claim of Title IX Religious Tenet Exemption

Dear Ms. Lhaman,

I am President of Union University. As such, I am the highest ranking official of this institution. I submit the following statement in order to claim on behalf of the University the religious tenet exemption from Title IX of the Education Amendments of 1972 which is provided for in 20 U.S.C. 1681, and which is the subject of 34 C.F.R. 106.12.

Union University is a Southern Baptist institution of higher education.  It is a Tennessee nonprofit corporation whose principal office address is 1050 Union University Drive, Jackson, Tennessee 38305.

Union University is controlled by a religious organization.  That organization is the Tennessee Baptist Convention.   This Convention is a Southern Baptist general body whose constituency is the cooperating Southern Baptist churches of Tennessee.   It is an "association of churches" in the terminology of the Internal Revenue Code.   By Covenant Agreement with the Convention, the University "affirm(s) that the trustees of Union University are elected by and responsible to the Tennessee Baptist Convention." The University's Bylaws (2.1.1. Control and Management) declare: "The Charter vests the control of the affairs of Union University in its Board of Trustees, which consists of not fewer than eighteen nor more than thirty-six in number, elected by the Tennessee Baptist Convention." I enclose the University's Bylaws.

The Convention's authority over the University constitutes control by the Convention which is more than sufficient to cause the institution to be exempt from Title VII of the Civil Rights Act of 1964's general prohibition against religious discrimination in employment under 42 U.S.C. 2000e-2, §703(e)(2), as an educational institution "which is in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association or society."   (See, for example, the decision of the United States Circuit Court of Appeals, Eleventh Circuit, regarding our sister Southern Baptist university in *Killinger v. Samford University*, 113 F. 3d 196 (1997).

Ms. Catherine E. Lhaman
January 19, 2015
Page 2

This request for exemption is from provisions of Title IX to the extent application of those provisions would not be consistent with the Convention's religious tenets regarding marriage, sex outside of marriage, sexual orientation, gender identity (including but not limited to transgendered status), pregnancy, and abortion.

I identify those provisions to be:

Admissions:
34 C.F.R. § 106.21 including but not limited to (b)(iii) (governing differential treatment on the basis of sex in admissions); and (c) (governing admissions prohibition on the basis of marital or parental status).

Recruitment:
34 C.F.R. § 106.23 (governing nondiscriminatory recruitment).

Education Programs or Activities:
34 C.F.R. § 106.31(b)(4) (governing different rules of behavior or sanctions), and (b)(7) (otherwise limiting any person in the enjoyment of any right, etc);
34 C.F.R. § 106.32 (governing housing);
34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students); and
34 C.F.R. § 106.41 (governing athletics);

Employment:
34 C.F.R. § 106.51 (governing employment);
34 C.F.R. § 106.52 (employment criteria);
34 C.F.R. § 106.53 (recruitment);
34 C.F.R. § 106.57 (governing the consideration of marital or parental status in employment decisions); and
34 C.F.R. § 106.60 (governing pre-employment inquiries).

Union University's purpose is stated as follows:

> Union University provides Christ-centered education that promotes excellence and character development in service to Church and society.

The University's mission statement includes the following:

> A cohering core value of our guiding vision is a call to faith, a call to be Christ centered in all that we are and in all that we do. We will seek to build a Christian liberal arts based community where men and women can be introduced to an understanding and appreciation of God, His creation and grace, and to humanity's place of privilege and responsibility in this world. We will

Ms. Catherine E. Lhaman
January 19, 2015
Page 3

seek to establish all aspects of life and learning on the Word of God, leading to a firm commitment to Christ and His Kingdom. To be a Christ-centered institution calls for us to establish the priority of worship and service in the Christian life while seeking to develop a generation of students who can be agents of reconciliation to a factious church in a hurting and broken world. This commitment calls for all faculty and staff to integrate Christian faith in all learning and doing, based on the supposition that all truth is God's truth and that there is no contradiction between God's truth made known to us in Holy Scripture and that which is revealed to us through creation and natural revelation.

The University's statement of faith declares first:

The Scriptures. The Scriptures of the Old and New Testament were given by inspiration of God, and are the only sufficient, certain and authoritative rule of all saving knowledge, faith, and obedience.

Southern Baptist religious tenets have been described most extensively and most recently in *The Baptist Faith and Message* 2000, a statement of faith affirmed by messengers constituting the Tennessee Baptist Convention. That statement is attached.

In regard to marriage, sex outside of marriage, sexual orientation, gender identity, pregnancy and abortion, the following statements are illustrative:

Marriage is the uniting of one man and one woman in covenant commitment for a lifetime. It is God's unique gift to reveal the union between Christ and His church and to provide for the man and the woman in marriage the framework for intimate companionship, the channel of sexual expression according to biblical standards, and the means for procreation of the human race. . . . Children, from the moment of conception, are a blessing and heritage from the Lord.   XVIII The Family, *The Baptist Faith and Message* 2000.

Man is the special creation of God, made in His image.   He created them male and female as the crowning work of His creation.   The gift of gender is thus part of the goodness of God's creation. III Man, *The Baptist Faith and Message* 2000. (The Southern Baptist Convention elaborated on this tenet most recently in 2014 by the adoption of a resolution "On Transgender Identity." It is attached.)

Christians should oppose racism, every form of greed, selfishness, and vice, and all forms of sexual immorality, including adultery, homosexuality, and pornography. . . . We should speak on behalf of the unborn and contend for the sanctity of all human life from conception to natural death."   XV The Christian and the Social Order, *The Baptist Faith and Message* 2000.

Ms. Catherine E. Lhaman
January 19, 2015
Page 4

The University's policies are rooted in these religious tenets.   Application of a regulation would not be consistent with these tenets if the regulation prohibited the institution from following its policies, that is, if the regulation prohibited the University:

> From engaging in recruiting and admissions under a policy which called for the consideration of an applicant for admission's sexual orientation, gender identity (including but not limited to transgendered status), marital status, past and present practices regarding marriage, sex outside marriage, pregnancy, and abortion (these considerations collectively referred to hereafter as "student and employee characteristics"), and prohibited the institution from treating that person differently as a result of that consideration;

> From subjecting students to rules of behavior, sanctions, or other treatment because of these student characteristics.   Examples would be the institution's rules regarding eligibility for employment of the student by the institution; the assignment of housing, restrooms and locker rooms, and restrictions to athletic activities by birth sex; rules prohibiting homosexual conduct including but not limited to a prohibition of a student's engaging in sex with a person of his or her birth sex; prohibition of sex outside of marriage between a man and a woman; sanctions as the result of pregnancy and abortion; and

> From making all employment decisions, including but not limited to selection criteria and pre-employment inquiries, recruitment, the decision to employ, retention decisions, and decisions regarding sanctions, in a manner which takes into consideration these employee characteristics.

Thus, this claim for exemption includes exemption from these specified regulations to the extent the regulation would require the institution to treat marriage, sex outside of marriage, homosexuality, gender identity, pregnancy and abortion in a manner that is inconsistent with the religious tenets of the Convention.

I trust this letter is sufficient, but if you have any questions, please let me know. Thank you for your attention to this matter.

Sincerely,

Samuel W. "Dub" Oliver, Ph.D.
President

Enclosures:    Union University *Board Guidelines and Policies* containing Bylaws
*The Baptist Faith and Message* 2000
The 2014 Southern Baptist Convention Resolution "On Transgender Identity"