**Paul Carlos Southwick (OSB 095141)**
**TRIAL ATTORNEY**
**Religious Exemption Accountability Project**
**Paul Southwick Law, LLC**
8532 N. Ivanhoe St. #208
Portland, OR 97203
Email: paul@paulsouthwick.com
Phone: 503-806-9517

**Timothy R. Volpert (OSB 814074)**
**Tim Volpert PC**
2111 NE Hancock St. Ste. 2B
Portland, OR 97212
Email: tim@timvolpertlaw.com
Phone: 503-703-9054

**Alletta S. Brenner (OSB 142844)**
**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Email: ABrenner@perkinscoie.com
Phone: 503-727-2000

**Misha Isaak (OSB 086430)**
**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Email: misaak@perkinscoie.com
Phone: 503-727-2000

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

Elizabeth HUNTER; et al.,

Plaintiffs,

v.

DEPARTMENT OF EDUCATION; and Catherine LHAMON, in her official capacity as Assistant Secretary for the Office of Civil Rights, U.S. Department of Education,

Defendants,

COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, WESTERN BAPTIST COLLEGE d/b/a CORBAN UNIVERSITY, WILLIAM JESSUP UNIVERSITY AND PHOENIX SEMINARY,

Intervenor-Defendants.

Case No. 6:21-cv-00474-AA

**PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEWLY DISCOVERED FACTS**

## I.   SUMMARY OF NEW FACTS

Over the past six months, Defendants have moved nearly half of Plaintiffs' Title IX complaints out of the evaluation stage. Defendants are now actively investigating seven (7) of Plaintiffs' Title IX complaints. However, Defendants are also *actively dismissing* Plaintiffs' Title IX complaints on the basis of the religious exemption to Title IX. So far, Defendants have dismissed four (4) of the Plaintiffs' Title IX complaints on the basis of the religious exemption. Plaintiffs urgently need this Court's intervention to prevent further Title IX complaint dismissals, dignitary harms and disruptions to their education.

## II.  ANALYSIS

Since the November 2021 Preliminary Injunction Hearing ("PIH"), Defendants have opened seven federal civil rights investigations in response to Plaintiffs' administrative Title IX complaints. In those seven cases, Defendants found Plaintiffs' complaints to be timely, within Defendants' subject matter jurisdiction, and to otherwise have stated valid claims of discrimination in violation of Title IX. Those seven investigations remain ongoing and involve the following Plaintiffs and educational institutions: Kalie Hargrove, Lincoln Christian University; Gary Campbell, Clarks Summit University; Journey Mueller, Colorado Christian University; Jonathan Jones, Azusa Pacific University; Cameron Martinez, La Sierra University; Lucas Wilson, Liberty University; Jamie Lord, Regent University, School of Law. Declaration of Paul Carlos Southwick ("Southwick Decl."), Exs. A-G.[1]

---

[1] In four of the seven open investigations, OCR is investigating the Plaintiffs' allegations of personal discrimination against the Plaintiffs themselves as individuals, as well as allegations of discrimination against the LGBTQ+ students on that campus as a group. In two of the seven open investigations, Defendants concluded that the Plaintiffs' individual allegations did not meet their standard of timeliness, and would not be investigated, but that the allegations about discrimination

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS

Religious Exemption Accountability Project
Paul Southwick Law, LLC

However, Defendants have also recently dismissed, based exclusively on the religious exemption, four Title IX complaints filed by Plaintiffs.[2] Those four complaints contained timely allegations and otherwise stated valid claims of sex discrimination. However, Defendants determined that the assurances of religious exemption Defendants had previously granted to the educational institutions at issue required Defendants to dismiss Plaintiffs' otherwise valid claims of illegal sex discrimination. *See e.g.* Southwick Decl. Ex. K, p. 5 (describing the religious exemption Defendants granted to BYU-Idaho and dismissing Plaintiff Chandler Horning's Title IX complaint on that basis). The four Title IX complaints dismissed on this basis involve the following Plaintiffs and educational institutions: Elizabeth Hunter, Bob Jones University; Chandler Horning, BYU-Idaho; Rachel Moulton, BYU-Idaho; and Alice Murphy, BYU-Provo. Southwick Decl., Exs. I, K, L, M.[3]

There should be eleven ongoing investigations into Plaintiffs' complaints. However, because of the overly broad and unconstitutional religious exemption to Title IX, there are only seven. Moreover, when Defendants dismiss Title IX complaints on the basis of the religious exemption,

---

toward LGBTQ+ students as a group were timely, and would be investigated. In one of the seven open investigations, Defendants are only investigating the allegations of individual discrimination because allegations of discrimination against LGBTQ+ students as a group were not made in that Title IX complaint.

[2] Defendants also dismissed four other complaints for reasons other than the religious exemption. Defendants dismissed three complaints because of other legal action pending relating to the same set of allegations and dismissed one complaint due to similar allegations already being investigated by OCR at the same university. *See* Southwick Decl., Ex. H.

[3] For additional background, please note that on October 21, 2021, OCR initiated an investigation into BYU-Provo based on a Title IX complaint filed on March 9, 2020 by a student with no connection to this case. In response, BYU-Provo submitted a request for assurance of religious exemption to OCR on November 19, 2021, and received that assurance from OCR on January 3, 2022. Based on the assurance given, OCR dismissed that student's complaint against BYU on February 8, 2022. Southwick Decl., Ex. J. Based on that same assurance of religious exemption, OCR dismissed Plaintiff Alice Murphy's Title IX complaint on May 24, 2022. Southwick Decl., Ex. I, p. 7.

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS

Religious Exemption Accountability Project
Paul Southwick Law, LLC

as it did for these four Plaintiffs, those dismissals are not appealable. Southwick Decl., Ex. I, p. 11; *see also* Dkt. 124-1, Ex. 1 (OCR's Case Processing Manual, section 108(f)). Consequently, the four Plaintiffs whose Title IX complaints were dismissed on this basis have now been completely shut out of a remedy and enforcement process that remains open and available to the non-LGBTQ+ students on their campuses and to LGBTQ+ students attending other taxpayer-funded educational institutions.

Additionally, two of Defendants' seven active federal civil rights investigations into Plaintiffs' Title IX complaints are in danger of soon being dismissed on the basis of the religious exemption, as two of the educational institutions being investigated requested assurances of religious exemption from Defendants in response to the investigations. Southwick Decl. Ex. A, pp. 15-42; Ex. B, pp. 7-15 (Kalie Hargrove's complaint against Lincoln Christian University and Gary Campbell's complaint against Clarks Summit University). Defendants then granted those assurances. Southwick Ex. A, p. 43-45; Ex. B., pp. 16-18. Based on those now granted assurances, the number of Plaintiffs whose Title IX investigations have been dismissed on the basis of the religious exemption will grow from four to six.

The remaining five active investigations are also in danger of being dismissed on the basis of the religious exemption because Defendants offered those educational institutions the opportunity to claim the religious exemption in response to their investigation. Defendants have not provided updated information on whether those educational institutions have also recently requested religious exemptions.[4]

---

[4]  U.S. Department of Education website last updated May 10, 2022, www2.ed.gov/about/offices/list/ocr/correspondence/other.html

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS
Religious Exemption Accountability Project
Paul Southwick Law, LLC

These new facts severely undermine Defendants' prior arguments regarding standing and ripeness. Defendants repeatedly argued that Plaintiffs' claims and preliminary requests for relief were unripe because Defendants, at that time of their arguments, had not opened any of Plaintiffs' then-pending Title IX complaints for investigation or relied on the religious exemption to Title IX to take adverse action against Plaintiffs' administrative Title IX complaints.  *See e.g.* Dkt. 56, p. 13 (e.g. ""[U]ntil ED makes a determination with regard to these complaints, there is no basis for the Court to evaluate whether a real case or controversy exists between Plaintiffs and ED. ED may or may not conclude that the Religious Exemption applies to any of the allegations presented in Plaintiffs' complaints."); Dkt. 56, p. 14, n. 3 ("Indeed, it may be that a majority, if not all, of Plaintiffs' complaints are dismissed on timeliness grounds or because the individual in question has left the school in question."); Dkt. 62, p. 17 ("Plaintiffs' challenges to ED's actions are therefore not ripe…Plaintiffs' recently submitted administrative complaints remain pending and Plaintiffs have still not obtained administrative determinations from ED as to any of the underlying conduct alleged in the FAC."); Dkt. 150, p. 11 ("…the evidence shows that OCR has not made any decisions on the applicability of the religious exemption to Plaintiffs' Title IX administrative claims (and may not need to do so). As a result, Plaintiffs' challenges to OCR's application of that exemption are unripe."); Dkt. 150, p. 12 ("[A]nd there is no certainty that any of the schools at issue have obtained, or will seek at any future stage of the process to obtain, an applicable religious exemption assurance[.]").

As demonstrated by the facts described above that have developed subsequent to the PIH, Defendants' ripeness arguments are no longer valid. Defendants have now determined that at least eleven Plaintiffs made timely allegations of sex discrimination in violation of Title IX. Defendants have opened seven of those complaints for investigation. However, Defendants have dismissed

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS
Religious Exemption Accountability Project
Paul Southwick Law, LLC

four complaints on the basis of the religious exemption and at least two additional active investigations are in danger of likely dismissal because the educational institutions at issue have sought and obtained the applicable religious exemption assurance. Consequently, Plaintiffs' claims and requests for preliminary relief are now abundantly ripe.

Even prior to these recent factual developments, Plaintiffs consistently argued that their claims and requests for preliminary relief were ripe because the prior conduct of Defendants demonstrated a real threat that they would take adverse action against Plaintiffs' Title IX complaints on the basis of the religious exemption. *See e.g.* Dkt. 44, p. 21 ("In the five known cases in which LGBTQ+ students at fundamentalist educational institutions previously submitted Title IX complaints to DOE, DOE dismissed them every single time, including the prior complaints filed by Plaintiffs Montgomery and T. Campbell."); Dkt. 64, p. 18 ("Plaintiffs have put forward uncontested evidence that Defendants have historically used TIXRE to dismiss Title IX complaints by LGBTQ+ students against NFBCUs, on every occasion…").

Plaintiffs' fears have proven to be well-grounded.

To the extent the Court might have previously agreed with Defendants that Plaintiffs' claims and requests for preliminary relief were unripe, whether at the time of issuing its August 2021 Order denying Plaintiffs' request for a TRO or after having considered the briefing and testimony at the November 2021 PIH, recent events occurring subsequent to the PIH more than sufficiently render Plaintiffs' claims ripe for adjudication.

Moreover, subsequent to the PIH, some taxpayer-funded educational institutions that are the subjects of Plaintiffs' Title IX complaints have doubled-down on their harmful discriminatory practices. For example, at Liberty University, the educational institution of two of the Plaintiffs in this case, the university recently amended its student conduct rules to go far beyond prohibiting

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS

Religious Exemption Accountability Project
Paul Southwick Law, LLC

same-sex marriage or sexual activity. Liberty University will now punish LGBTQ+ students for "statements and behaviors that are associated with LGBT states of mind." *LGBT states of mind* are now punishable offenses that could subject students to expulsion, derail their academic and career goals, cause the loss of thousands of dollars in tuition, damage their mental and psychological health, and undermine their sense of dignity as people whose identities and relationships are supposed to be treated as equally valid by the law and government agencies.[5]

Liberty University is not the only taxpayer-funded institution doubling-down on discrimination. As another example, at Lee University, the educational institution of two of the Plaintiffs in this case, it was recently revealed that next year's student conduct rules will state:

> "No member of the Lee University Community may publicly identify or behave as a gender that does not correspond to his or her biological sex. This includes any of the following actions when taken for the purpose of identifying as a gender that does not correspond to the person's biological sex:
>
> o    Using or requesting others to use a different name or nickname;
> o    Using or requesting others to use pronouns that do not correspond to the person's biological sex;
> o    Dressing or outwardly presenting as a gender that does not correspond to the person's biological sex;
> o    Requesting a change to the sex/gender stated on any university or government-issued document or record;
> ***
> No member of the Lee University Community may promote or advocate, in person, in writing, or online, for sexual acts, behaviors, or lifestyles that are contrary to Scripture, this Statement of Belief, or any other University policy; nor may any member organize or participate in a campus club with missions or goals that contradict the same."[6]

---

[5] *See* www.liberty.edu/students/wp-content/uploads/sites/89/2021/09/LW-11.29.2021-OCL-COMPLETE.pdf    and    www.lgbtqnation.com/2022/06/liberty-university-already-hostile-lgbtq-students-quiet-change-rules-make-worse/

[6] *See* www.insidehighered.com/quicktakes/2022/05/24/lee-university-limit-students'-gender-expression

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS
Religious Exemption Accountability Project
Paul Southwick Law, LLC

Consequently, a student who, for example, exercises their legal right to change their government identity documents, or who merely asks an on-campus therapist to use accurate pronouns for them, will be subject to discipline by Lee University.

Assistance from this Court was necessary in November 2021 at the PIH and it is necessary now more than ever. If this Court does not intervene, Defendants will continue to fund educational institutions that are dangerous for LGBTQ+ students. Defendants will continue to license, facilitate and actively aid the severe harms and discrimination, and will continue to allow more LGBTQ+ students to be punished for simple behaviors and requests that are necessary for their mental and physical health.

It does not have to be this way. As *Norwood, Bob Jones University* and the other cases Plaintiffs rely on so clearly instruct, the equal protection guarantees of the Due Process Clause and the equal protection limitations on the Spending Clause, prohibit government entities from funding, facilitating or actively aiding, religious educational institutions that exclude or inflict indignities and suffering on racial minority students, notwithstanding the Free Exercise Clause of the First Amendment and an educational institution's sincerely held religious beliefs in the separation of the races. These are not hypothetical situations. Hundreds of taxpayer-funded religious schools and colleges continued to exclude Black students or prohibit interracial marriage and dating, on the basis of sincerely held religious beliefs, for decades after *Brown v. Board of Education*. None of them do so now because federal courts made it illegal to use state or federal government money or benefits to operate such schools.

So too here, if LGBTQ+ people are truly to be considered equals in this country, the Constitution must prohibit the federal government from funding, facilitating or aiding educational institutions where known, severe, and ongoing harm is inflicted against LGBTQ+ youth. LGBTQ_

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS
Religious Exemption Accountability Project
Paul Southwick Law, LLC

youth are a politically and economically powerless population, with well-documented increased risks of suicide, depression, and anxiety that are exacerbated by hostile environments where they must hide, be constantly vigilant so as not to display behaviors, statements or even "states of mind" that might out them to their peers or administration, and where they remain under threat of immediate expulsion and loss of housing.

Because these young LGBTQ+ people who are being harmed are politically and economically powerless, it is no surprise that Congress and federal agencies, through the religious exemption to Title IX and Defendants' broad application of that exemption, might permit taxpayer-funded educational institutions to inflict such grave harms on such a vulnerable population. However, the Constitution does not permit taxpayer funds to be used in such a manner, even when those grave harms are inflicted by good people on the basis of their sincerely held religious beliefs.

Intervenor-Defendants recently filed a Notice of Supplemental Authorities regarding recent U.S. Supreme Court rulings in *Carson v. Makin* and *Kennedy v. Bremerton School District*.[7] Regarding *Carson*, Intervenor-Defendants argue that the Supreme Court now requires the federal government to fund sectarian schools that discriminate against LGBTQ+ students like the ones attended by plaintiffs. Not so. The Supreme Court ruled that governments cannot exclude sectarian schools from government funding programs merely because they are sectarian. However, Justice Roberts specifically noted that the Court was *not* saying that governments must fund sectarian schools with anti-LGBTQ+ policies, noting that "Both dissents articulate a number of other reasons not to extend the tuition assistance program to BCS and Temple Academy, based on the schools' particular policies and practices [including anti-LGBTQ+ policies and practices]" but that

---

[7] Plaintiffs will more fully respond to Intervenor-Defendants arguments in a separate filing.

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS
Religious Exemption Accountability Project
Paul Southwick Law, LLC

the State of Maine did not "attempt to defend its law on such grounds." Dkt. 172-1, p. 16, at *. Consequently, such issues are left for another day. Indeed, in anticipation of *Carson*, the State of Maine amended its state anti-discrimination law to prohibit state funding to any school, whether religious, sectarian or otherwise, that discriminates against LGBTQ+ students.[8] In responding to the *Carson* ruling, the Attorney General of Maine, who joined the *amicus* brief in this case in support of Plaintiffs, stated that "While the Court's decision [in *Carson*] paves the way for religious schools to apply to receive public funds, it is not clear whether any religious schools will do so.   Educational facilities that accept public funds must comply with anti-discrimination provisions of the Maine Human Rights Act, and this would require some religious schools to eliminate their current discriminatory practices."[9]

## II.  CONCLUSION

Given Defendants' recent dismissals of Plaintiffs' Title IX complaints based on Title IX's religious exemption, as described above, and given that many of the schools now subject to ongoing civil rights investigations, have received, or will likely receive, assurance of religious exemption from Defendants, we expect that Defendants will ultimately dismiss most, if not all, of Plaintiffs' remaining Title IX complaints unless this Court intervenes soon.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Injunction. Plaintiffs specifically request that this Court enjoin Defendants

---

[8] See https://legislature.maine.gov/legis/bills/getPDF.asp?paper=SP0544&item=1&snum=130#_blank

[9]   See   www.einnews.com/pr_news/577857221/statement-of-maine-attorney-general-aaron-frey-on-supreme-court-decision-in-carson-v-makin

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS
Religious Exemption Accountability Project
Paul Southwick Law, LLC

from dismissing, based on the religious exemption to Title IX, any more of Plaintiffs' remaining

Title IX complaints and active investigations while this case proceeds before this Court.

Dated: July 20, 2022

s/ Paul Carlos Southwick

**Paul Carlos Southwick
(OSB 095141)
TRIAL ATTORNEY
Religious Exemption
Accountability Project
Paul Southwick Law, LLC**
8532 N. Ivanhoe St. #208,
Portland, OR 97203
Email: paul@paulsouthwick.com
Phone: 503-806-9517

PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS
Religious Exemption Accountability Project
Paul Southwick Law, LLC