Case 6:21-cv-00474-AA   Document 174-2   Filed 07/20/22   Page 1 of 18

Page 1 of 4 – U.S. Department of Education, Office for Civil Rights Discrimination Complaint Form, Consent Form, and Complaint Processing Procedures

# DISCRIMINATION COMPLAINT FORM
## to the
## United States Department of Education
## Office for Civil Rights

1. Name of person filing this complaint:

   | | |
   |---|---|
   | **Last Name, First, Middle** | Swain, Lauren |
   | **Address:** | 8532 N. Ivanhoe St., #208 |
   | **City, State, Zip Code:** | Portland, OR 97203 |
   | **Home/Work Telephone:** | |
   | **Email Address:** | lauren@paulsouthwick.com |

2. Name of person discriminated against (if **other** than person filing). If the person discriminated against is age 18 or older, we will need that person's signature on this complaint form and the consent/release form before we can proceed with this complaint. If the person is a minor, and you do not have the legal authority to file a complaint on the student's behalf, the signature of the child's parent or legal guardian is required.

   | | |
   |---|---|
   | **Last Name, First, Middle** | Campbell, Gary |
   | **Address:** |  |
   | **City, State, Zip Code:** | |
   | **Home/Work Telephone:** | |
   | **Email Address:** | |

3. OCR investigates discrimination complaints against institutions and agencies which receive funds from the U.S. Department of Education and against public educational entities and libraries that are subject to the provisions of Title II of the Americans with Disabilities Act. Please identify the institution or agency that engaged in the alleged discrimination. If we cannot accept your complaint, we will attempt to refer it to the appropriate agency and will notify you of that fact.

   | | |
   |---|---|
   | **Name of Institution:** | Clarks Summit University |
   | **Address**: | 538 Vernard Rd. |
   | **City, State, Zip Code:** | Clarks Summit, PA, 18411 |
   | **Department/School:** | |

4. The regulations OCR enforces prohibit discrimination on the basis of race, color, national origin, sex, disability, age or retaliation. Please indicate the basis of your complaint:

☐ Discrimination **based on sex (specify)**

   Discrimination on the basis of sexual orientation.

Page 2 of 4 – U.S. Department of Education, Office for Civil Rights Discrimination Complaint Form, Consent Form, and Complaint Processing Procedures

5.  Please describe each alleged discriminatory act. For each action, please include the date(s) the discriminatory act occurred, the name(s) of each person(s) involved and, why you believe the discrimination was because of race, disability, age, sex, etc. Also please provide the names of any person(s) who was present and witnessed the act(s) of discrimination.

    Clarks Summit publishes anti-LGBT policies in its student handbook. Gary was reported to Clarks Summit officials for homosexual behavior by a dorm monitor who encouraged Gary to engage in sexual behavior with him. Gary was disciplined for homosexual behavior by Clarks Summit officials on other occasions, including being denied full-time attendance or the option of living off campus. Gary left Clarks Summit but attempted to re-enroll to complete the six credits he needed for graduation. Clarks Summit refused to re-enroll Gary or allow him to graduate. Please see attached declaration.

6.  What is the most **recent date** you were discriminated against?

    Date:  Current, Ongoing

7.  If this date is **more than 180 days ago,** you may request a waiver of the filing requirement.

     **X**   I am requesting a waiver of the 180-day time frame for filing this complaint.

    Please explain why you waited until now to file your complaint.

    1) the Covid-19 pandemic;
    2) The Trump administration's policies and statements about religious exemptions to Title IX;
    3) The Trump administration's policies and statements about Title IX not prohibiting discrimination on the basis of sexual orientation or gender identity.
    4) Although the initial act of discrimination took place more than 180 days ago, Gary's complaint should not be considered time-barred because Clarks Summit continues to discriminate against Gary and to promulgate policies and practices that discriminate against LGBTQ+ students.

8.  Have you attempted to resolve these allegations with the institution through an internal grievance procedure, appeal or due process hearing?

     Yes 

    If you answered **yes**, please describe the allegations in your grievance or hearing, identify the date you filed it, and tell us the status. If possible, please provide us with a copy of your grievance or appeal or due process request and, if completed, the decision in the matter.

EXHIBIT B                                                                                                                              2

Page 3 of 4 – U.S. Department of Education, Office for Civil Rights Discrimination Complaint Form, Consent Form, and Complaint Processing Procedures

<u>See attached declaration.</u>

9. If the allegations contained in this complaint have been filed with any other Federal, state or local civil rights agency, or any Federal or state court, please give details and dates. We will determine whether it is appropriate to investigate your complaint based upon the specific allegations of your complaint and the actions taken by the other agency or court.

   **Agency or Court:** <u>U.S. District Court - District of Oregon - Eugene Division</u>
   **Date Filed:** <u>03/29/21</u>
   **Case Number or Reference:** <u>6:21-cv-00474-AA</u>
   **Results of Investigations/Findings by Agency or Court:** <u>Pending</u>

10. If we cannot reach you at your home or work, we would like to have the name and telephone number of another person (relative or friend) who knows where and when we can reach you. This information **is not required,** but it will be helpful to us.

    <u>Not applicable</u>

11. What would you like the institution to do as a result of your complaint — what remedy are you seeking?

    <u>Gary would like Clarks Summit's policies amended to state that (1) same-sex dating relationships and displays of affection will be treated by Clarks Summit in the same manner as opposite-sex dating relationships and displays of affection; (2) students will not be punished for coming out as LGBTQ+ or for expressing their sexual or gender identity (through pronouns, clothing, hair, makeup, etc.); (3) Clarks Summit will not encourage or facilitate conversion therapy or any other sexual or gender orientation change efforts; (4) students who report sexual or physical assault will be granted safe harbor from discipline relating to sexual activity or other code of conduct violations; and (5) Clarks Summit's non-discrimination policy includes sexual orientation and gender identity as applied to all aspects of Clarks Summit, including housing and other programs.</u>

12. We cannot accept your complaint if it has not been signed. Please sign and date your complaint below.

07/24/21
(Date)

(Signature)

Jul 26, 2021
_____
(Date)

(Signature of person in Item 2)

EXHIBIT B                                                                                                   3



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

THE WANAMAKER BUILDING, SUITE 515
100 PENN SQUARE EAST
PHILADELPHIA, PA 19107-3323

**REGION III**
DELAWARE
KENTUCKY
MARYLAND
PENNSYLVANIA
WEST VIRGINIA

**January 18, 2022**

**IN RESPONSE, PLEASE REFER TO: 03212192**

*Via email only*: Lauren@paulsouthwick.com

Ms. Lauren Swain
Paul Southwick Law, LLC
Religious Exemption Accountability Project
8532 North Ivanhoe Street, #208
Portland, OR 97203

Dear Ms. Swain:

This is to notify you that the U.S. Department of Education, Office for Civil Rights (OCR) has completed its evaluation of the complaint you filed against Clarks Summit University (the University) on behalf of your client, Gary Campbell, who will be referred to as the Student. You allege that the University discriminates on the bases of sex and sexual orientation. Specifically you allege:

1. The University maintains a policy in its Student Handbook prohibiting students from engaging in same-sex romantic or sexual relationships, as well as from "cross-dressing or other actions deliberately discordant with birth gender."
2. The University discriminated against the Student on the basis of sexual orientation by expelling him from the University and refusing to allow him to reenroll or to graduate.

OCR enforces Title IX of the Education Amendments of 1972[1] (Title IX), and its implementing regulation at 34 C.F.R. Part 106, which prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance. As a recipient of Federal financial assistance from the Department, the University is subject to Title IX.

OCR will proceed with an investigation of allegation 1 because it raises a possible violation of Title IX and its implementing regulation that is ongoing based on existing policies. Please note that opening allegation 1 for investigation in no way implies that OCR has made a determination on the merits of the complaint. During the investigation, OCR is a neutral fact-finder, collecting and analyzing relevant evidence from the Complainant, the University, and other sources, as

---

[1] Amendments to the Title IX regulation went into effect on August 14, 2020, and can be viewed here. You can find that regulation here. For more information about Title IX, including the new Title IX regulation and related resources, visit OCR's website at https://www2.ed.gov/policy/rights/guid/ocr/sexoverview.html.

appropriate. OCR will ensure that its investigation is legally sufficient and fully responds to the allegations in accordance with the provisions of the Case Processing Manual (CPM), available at http://www.ed.gov/ocr/docs/ocrcpm.pdf.

Please also note the section on resolution of a complaint prior to the conclusion of an investigation. If the recipient expresses an interest in resolving the complaint and OCR determines that resolution of the complaint prior to the completion of the investigation is appropriate, OCR may attempt to negotiate an agreement with the recipient pursuant to Section 302 of the CPM.

OCR has also determined that we will dismiss allegation 2 of your complaint because it is untimely. As explained in Section 106 of OCR's CPM, OCR generally will take action only with respect to allegations that are filed within 180 days of the last act of alleged discrimination. You filed this complaint on July 28, 2021, more than 180 days after the University's last acts of alleged discrimination in 2003 and 2019.

You requested that OCR grant a waiver of the timeliness requirement for allegation 2 on several bases. You explained that the previous presidential administration's policies and statements about religious exemptions to Title IX, as well as its policies and statements about sexual orientation or gender identity prevented the Student from filing sooner, and as a result you are requesting waiver under Section 107(e) of OCR's CPM. You also requested a waiver due to the COVID-19 pandemic, as many state courts had tolled their deadlines for this reason. OCR cannot grant a waiver on the bases you have requested. OCR has been receiving, investigating, and resolving complaints throughout the COVID-19 pandemic and has not tolled its filing deadline because of the pandemic. In addition, your assumptions about how your complaint may have been resolved under a specific presidential administration do not merit a waiver of OCR's 180-day deadline.

You also requested a timeliness waiver because you believe the University is continuing to discriminate against the Student by to promulgating policies and practices that discriminate against LGBTQ+ students. The CPM states that timely allegations may include those where the complainant alleges a continuing discriminatory policy or practice. The University's alleged actions against the Student were discrete acts that triggered OCR's filing deadlines; the alleged actions were sufficiently clear and final to trigger your awareness of and duty to assert the Student's rights within the required timeline. *See Nat'l Passenger R.R. Corp. v. Morgan*, 536 U.S. 101 (2002). Your allegation that the University's anti-LGBTQ+ policies in its handbook continue to discriminate against the Student does not transform the discrete acts against the Student into an ongoing pattern or practice of discrimination that would waive the 180-day filing deadline for allegation 2. OCR is accordingly dismissing allegation 2 as untimely under Section 108(d) of the CPM.

This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public. The complainant may have the right to file a private suit in federal court whether or not OCR finds a violation.

You have a right to appeal OCR's determination regarding allegation 2 within 60 calendar days of the date indicated on this letter. An appeal can be filed electronically, by mail, or fax. You  must either submit a completed appeal form online at https://ocrcas.ed.gov/content/ocr-electronic-appeals-form, or mail a written statement of no more than ten (10) pages (double-spaced, if typed): if submitted by mail, please send to the Office for Civil Rights, U.S. Department of Education, 400 Maryland Avenue SW, Washington, D.C. 20202. If submitted via e-mail, send to OCR@ed.gov; if submitted via fax, please send to 202-453-6012. The filing date on an appeal is the date the appeal is postmarked, submitted electronically, or submitted via fax. In the appeal, you must explain why you believe the factual information was incomplete or incorrect, the legal analysis was incorrect or the appropriate legal standard was not applied, and how correction of any error(s) would result in the case being opened for investigation; failure to do so may result in dismissal of the appeal.

Federal regulations prohibit intimidation, threatening, coercion, harassment, or other retaliation against those filing complaints with OCR and those participating in the complaint resolution process. Complainants and participants who feel that such actions have occurred may file a separate complaint with OCR.

Under the Freedom of Information Act, it may be necessary to release this document and related records upon request. If OCR receives such a request, it will seek to protect, to the extent provided by law, personal information that, if released, could reasonably be expected to constitute an unwarranted invasion of privacy.

If you have any questions, please contact Josh Galiotto, Investigator, at 215-656-8587 or Joshua.galiotto@ed.gov or Gina DePietro, Team Attorney, at 215-656-8595 or Gina.DePietro@ed.gov.

Sincerely,

Christina M. Haviland
Supervisory Attorney



Ms. Catherine Lhamon, Assistant Secretary for Civil Rights
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, D.C. 20202-1100

Re: Clarks Summit University's Request for Title IX Religious Exemption

Dear Ms. Lhamon,

As the "highest ranking official" (34 C.F.R. § 106.12(b)) of Clarks Summit University (CSU), I hereby request, under 20 U.S.C. § 1681(a)(3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights acknowledge that the University is exempt from certain aspects of Title IX of the Education Amendments of 1972, as Title IX is apparently interpreted by the Department of Education (DOE).[1] This exemption extends to CSU to the extent that the Act and its applicable regulations are interpreted to curtail CSU's freedom to act in accordance with its religious convictions. The legal theories underlying the allegations in the complaint that you have forwarded to us imply that Title IX contains standards that conflict with certain Christian teachings and standards of the University in relation to sexuality and gender, as specified in more detail below.

**I. Clarks Summit University is controlled by a religious organization in the form of its religiously defined and spiritually committed board of trustees.**

Title IX implementing regulations recognize that an educational institution is exempt from its restrictions insofar as "it is controlled by a religious organization" (34 CFR Sec. 106.12(3)) that has religious beliefs contrary to those restrictions. The identity of the controlling organization can either be an external church organization, or it can be the board of trustees itself, if the board has a sufficiently specific religious identity and set of beliefs.

For over 30 years, DOE has maintained that Title IX does not contain "an independent requirement that the controlling religious organization be a separate legal entity than the educational institution." Direct Grant Programs, 85 Fed. Reg. 59,916, 59,956 (Sept. 23, 2020). The agency formalized this interpretation in a rule promulgated in 2020, which said that if an "educational institution is a school or department of divinity," that is "sufficient to establish that [it] is controlled by a religious organization." 34 C.F.R. § 106.12(c). The validity of this long-

---

[1] We also wish to thank your lead Investigator on our case, Josh Galiotto, for agreeing to a 30-day extension beyond the initial February 4 deadline for the response to the pending Title IX complaint, once this letter is filed.

1

standing interpretation of Title IX has been recently recognized by the U.S. Court of Appeals for the Ninth Circuit.[2]

We believe the CSU board of trustees qualifies as a controlling religious body for purposes of Title IX and implementing regulations. The University was founded in 1932 as Baptist Bible Seminary and later changed its name to Baptist Bible College. Now, as Clarks Summit University, its original foundation as a school based on the Bible and biblical principles still remains the same, overseen by a religiously defined and spiritually committed board of trustees.

CSU has from its beginning taught that the Bible is authoritative for all matters of faith and life. Its mission statement proclaims:

> *"Founded in 1932 in Johnson City, New York, Clarks Summit University is an educational institution that embraces its Baptist heritage. With a commitment to biblical authority, Clarks Summit University serves undergraduate, graduate, and seminary students by preparing them for lives of significant service for the cause of Jesus Christ in a variety of ministries and careers.*
>
> *"As a learning community dedicated to biblical higher education, Clarks Summit University strengthens the church of God and influences society by cultivating an environment that promotes academic excellence and Christlikeness. Students are challenged to pursue biblical truth and wisdom, to embrace a Christian worldview, and to develop professional competence and relational skills."*

The identity and beliefs of the board of trustees are critical to the religious mission of CSU. Accordingly, the Board Policy Manual, at Art. 3, Sec 2, specifies that "only individuals who are members in good standing of churches whose teaching is, in word and spirit, in harmony with the University's Articles of Faith and Standard of Conduct, who subscribe to the Bylaws of the institution, and who manifest a sustained interest in the work of the institution shall be eligible for membership on the Board of Trustees."

The board members are expected to sign their support for the Articles of Faith on a yearly basis. These Articles include the following belief commitments:

> *"We believe that humanity was created in the image of God and retains that image after the fall. All humans, from the time of their conception, including those who are physically or mentally challenged, have value as image-bearers. Therefore, we affirm the dignity of human life. All forms of abuse, slander, dehumanization, or oppression toward fellow humans is an affront to God's likeness, which has been stamped upon all individuals.*

---

[2] *Maxon v. Fuller Theological Seminary,* DC No. 2:19-cv09969-CBM-MRW (9th Cir. Dec. 13, 2022) (unpublished).

> *"We believe God created two and only two distinct, unchangeable sexes, male and female, as evidenced by biological gender. Based on that creation model, God designed marriage to be a one-flesh union of only one male and only one female. Marriage is the only divinely sanctioned relationship for sexual intimacy."*

For all these reasons, the CSU board is itself a "religious organization," and it controls CSU. The board also ensures that the beliefs outlined above are implemented in the governing policies and practices of the University, as detailed below.

## II. CSU is entitled to an exemption from Title IX to the extent it covers discrimination on the basis of sexual orientation and, specifically, prohibitions on same-sex romantic and/or sexual relationships.

CSU's commitment to basic, orthodox, evangelical biblical beliefs, including those regarding sexuality and same-sex relationships, is communicated and demonstrated in many ways. Each undergraduate student completes a 30-credit hour major in Biblical Studies in addition to their career major, so all students study to know the Bible. Students are involved in local Baptist and other Bible-centered churches. All students must agree to the doctrinal and lifestyle expectations of CSU.

This mission pervades CSU's entire community. The Board Policy Manual requires not only board members, but all faculty, staff and administrative officers to annually sign their agreement with the Confession of Faith:

> *"Our mission demands that our employees are good examples to our students, to those in the community, and to those visiting our campus. Therefore, all employees are asked to annually review the Confession of Faith and Standards of Conduct and sign that they agree with them."*

The University's vision and goals affirm the mission. The vision statement summarizes, *"Clarks Summit University's Christ-centered, career-ready graduates will strengthen the church and influence society around the world."*

The University's goal statement further implements this same mission:

*"Clarks Summit University provides a biblically based learning environment that guides students to:*
- *intellectual discipline characterized by integration of truth and wisdom,*
- *spiritual maturity marked by Christlikeness,*
- *professional and relational skills demonstrated by competent service to strengthen the church and influence society."*

The Confession of Faith as detailed in CSU's doctrinal statement, in turn, opens with the assertation of the foundational belief of the Bible as the true authority from which all other beliefs flow.

> *"We believe in the verbal and plenary inspiration of the text of the original manuscripts of the 66 books of the Old and New Testaments, which alone constitute the inerrant Word of God. We believe the Bible supports using a grammatical, historical method of interpretation in light of the progress of revelation. Thus, we believe that the Bible is the clear, sufficient, and supreme authority for all belief, life, and ministry."*

Christian teaching regarding sexuality is grounded in the creation account found in the Bible, specifically, in Genesis chapters 1-3. Here, God creates two distinct yet complementary sexes, male and female, declares them both as essential to the image of God, and asserts the definition of marriage as being between one man and one woman. (Gen. 1:26-28; 2:21-25). "Thus, shall a man leave his father and his mother, and shall cleave unto his wife, and they shall be one flesh." (Gen. 2:24).

In several other places in the Hebrew Scriptures, marriage is affirmed as being a heterosexual arrangement, and same-sex behavior is repeatedly forbidden, not just for Israel, but for all peoples. (Gen. 19:1-11; Lev. 18:22; 20:13, 20-23). The New Testament likewise repeats the Edenic definition of marriage as being between a man and a woman (Mark 10:6-8; Matt. 19:5), and likewise prohibits same-sex sexual relations. (Rom. 1:24-27; 1 Cor. 6:9-11; 1 Tim. 1:10).

CSU's Confession of Faith specifically affirms these standard orthodox Christian biblical teachings on humanity and sexuality:

> *"We believe God created two and only two distinct, unchangeable sexes, male and female, as evidenced by biological gender. Based on that creation model, God designed marriage to be a one-flesh union of only one male and only one female. Marriage is the only divinely sanctioned relationship for sexual intimacy."*

This statement is among the beliefs which all faculty, staff, administration, and trustees must sign annually.

CSU students also are informed of these religious beliefs and standards of the University and are expected to abide by them. Students sign a Community Commitment each year that reads as follows:

> *"Therefore, as a member of the CSU community, I promise to submit to the CSU Community Commitment and affirm that I will love God, love my neighbor, live in community, and learn discernment in all that I do for the glory of God. By signing, I also confirm that I have read the Student Handbook and commit to following the standards and guidelines outlined within."*

One portion of the Student Handbook asserts:

EXHIBIT B                                                                                                    10

> *"Clarks Summit University recognizes the significant and strategic role that sexual purity plays in the spiritual maturity of our students. Scripture refers to the issue of purity from sexual immorality as a matter of doing the will of God and pleasing God (1 Thessalonians 4:1-8)."*

Following that section, the Community Commitment, through the Student Handbook, requires:

- *Students, regardless of their relationship status, must strive for moral and sexual purity in body and mind (I John 3:3).*
- *Students are prohibited from engaging in sexual activity outside of the boundaries of biblical marriage (heterosexual monogamous marriage).*
- *Students are not to engage in and maintain same-sex romantic or sexual relationships.*
- *Clarks Summit University will not support persistent or conspicuous examples of cross-dressing or other actions that are deliberately discordant with birth gender and will deal with such matters within the biblical counseling and judicial processes of the institution.*
- *Students are prohibited from accessing pornographic or obscene material or creating links to such sites.*

In short, Clarks Summit University follows the authority of the biblical principles of sexual morality and addressed above. The University is also committed to the biblical values of love for all people and that God's grace and mercy extends to all, allowing for repentance and grace to be exercised.

### III.   CSU is also entitled to an exemption with respect to its policies on gender identity and cross-dressing.[3]

Many of the biblical passages and policies referenced above also bear on the question of gender and gender identity. Specifically, in Genesis where it says that "God created man in his own image, in the image of God created he him; male and female created he them" (Gen. 1:27), CSU believes that God revealed the basis of gender identity as given by creation, and not by human choice.

Indeed, in the biblical account, not only were the different genders forbidden from sexual activity with the same gender, but they were also forbidden to represent themselves as the opposite gender: "The woman shall not wear that which pertains unto a man," the book of Deuteronomy instructs, "neither shall a man put on a woman's

---

[3] The current Title IX case that has been brought against CSU only contains factual allegations in relation to sexual activity and does not allege or discuss claims about gender identity or representation. Thus, we do not believe that the current claimant has standing to raise issues regarding gender identity issues. CSU, however, is using this opportunity to seek an exemption in relation to both sexual activity and gender identity from regulations that are contrary to its religious mission, beliefs, and identity.

5

EXHIBIT B                                                                                                              11

garment." (Deut. 22:5). The New Testament likewise speaks negatively of men acting in effeminate roles (1 Cor. 6:9), and likewise explicitly forbids women taking on the role of men in sexual and gender relationships. (Rom. 1:26).

In light of these passages, the CSU's Community Commitment, through the Student Handbook, says that:

> *"Clarks Summit University will not support persistent or conspicuous examples of cross-dressing or other actions that are deliberately discordant with birth gender and will deal with such matters within the biblical counseling and judicial processes of the institution."*

In short, it is clear that OCR's apparent position on cross-dressing and other sexual identity-related issues is not consistent with the religious tenets of Clarks Summit University.

For all these reasons, I request that your office acknowledge that the University is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations to the extent that they might be interpreted to curtail CSU's freedom to respond with theologically and biblically founded convictions on issues of sexuality and gender.

### IV.  CSU is entitled to an exemption from several specific regulations to the extent they cover sexual orientation and gender identity.

In light of the above discussion, Clarks Summit University requests that your office acknowledge that the University is exempt from Title IX and the following implementing regulations to the extent that they are interpreted to reach gender identity or sexual orientation discrimination in a manner that restricts CSU's freedom to apply and enforce its policies on human sexuality and its Community Commitment:

- 34 C.F.R.§ 106.21 (Admission)
- 34 C.F.R.§ 106.22 (Preference in Admission)
- 34 C.F.R.§ 106.23 (Recruitment)
- 34 C.F.R.§ 106.31 (Education Program)
- 34 C.F.R.§ 106.32 (Housing)
- 34 C.F.R.§ 106.33 (Comparable Facilities)
- 34 C.F.R.§ 106.34 (Access to Classes and Schools)
- 34 C.F.R. § 106.35 (Access to Institutions of Vocational Education)
- 34 C.F.R.§ 106.36 (Counseling)
- 34 C.F.R.§ 106.37 (Financial Assistance)
- 34 C.F.R.§ 106.38 (Employment Assistance to Students)
- 34 C.F.R.§ 106.39 (Health and Insurance Benefits and Services)
- 34 C.F.R.§ 106.40 (Marital or Parental Status)
- 34 C.F.R.§ 106.41 (Athletics)
- 34 C.F.R. § 106.42 (Textbooks and Curricular Material)

- 34 C.F.R.§ 106.43 (Standards for Measuring Skill or Progress in Physical Education Classes)
- 34 C.F.R.§ 106.51-61 (Relating to Employment)

Thank you for your consideration of this request. If you require any additional information, please do not hesitate to contact me.

Sincerely,

James R. Lytle, D.Min.
President

cc. Josh Galiotto, OCR Investigator



James R. Lytle

**CLARKS SUMMIT UNIVERSITY**

538 Venard Road
Clarks Summit, PA 18411

ClarksSummitU.edu

Ms. Catherine Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Dept. of Education Building
400 Maryland Avenue, SW
Washington, D.C. 20202-1100

**FedEx First Overnight**
FRI - 04 FEB 8:00A
TRK# 8164 2092 2036
0200
E1 WASA
20202 DC-US
IAD

86720 03Feb2022 AVPA 56DG2/027C/1B23

Form ID No. 0200 — Recipient's Copy

**1**
Date: 2/3/2022
Sender's Name: Dr James R. Lytle
Phone: 570 585-9201
Company: Clarks Summit University
Address: 538 Venard Rd
City: Clarks Summit    State: PA    ZIP: 18411

**2 Your Internal Billing Reference**

**3 To**
Recipient's Name: Ms. Catherine Lhamon
Phone: 800 421-3481
Company: US Department of Education Office for Civil Rights
Address: Lyndon Baines Johnson Dept of Education Building
Address: 400 Maryland Ave SW
City: Washington DC    State: DC    ZIP: 20202-1100

**4 Express Package Service**
☒ FedEx First Overnight

**5 Packaging**
☒ FedEx Envelope

**6 Special Handling and Delivery Signature Options**
☒ Direct Signature

TO: PCP-OCR
LOC1:
LOC2:
LOC3:

2/4/2022
2/4/2022 1:53 PM

8164 2092 2036

EXHIBIT B

15



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

April 5, 2022

James Lytle
President
Clarks Summit University
538 Venard Road
Clarks Summit, PA 18411

Dear President Lytle:

I write in response to your February 3, 2022, letter to the U.S. Department of Education's Office for Civil Rights (OCR), in which you requested assurance of a religious exemption from Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, for Clarks Summit University ("the University") in Clarks Summit, Pennsylvania.

Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance. Title IX and its implementing regulations at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that the application of Title IX would be inconsistent with the controlling organization's religious tenets. Section 106.12(b) of the Department's Title IX regulations describe the process by which an educational institution may request assurance of a religious exemption. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets. Section 106.12(c) of the Department's Title IX regulations describes the evidence that is sufficient to establish that an educational institution is controlled by a religious organization.

Your letter states that the University was founded in 1932 as Baptist Bible Seminary. It later changed its name to Baptist Bible College, and then to Clarks Summit University. The University states that its original foundation as a school based on the Bible and biblical principles remains the same today.

The University's mission statement notes that Clarks Summit University is an educational institution that "embraces its Baptist heritage," and that the University has a "commitment to biblical authority." The mission statement also provides that the University "serves undergraduate, graduate, and seminary students by preparing them for lives of significant service for the cause of

nd careers." Your letter explains that the University is controlled by a "religiously defined and spiritually committed board of trustees." In support of this assertion, the University notes that the Board of Trustees Policy Manual states that "only individuals who are members in good standing of churches whose teaching is, in word and spirit, in harmony with the University's Articles of Faith and Standard of Conduct" shall be eligible for membership on the Board of Trustees. Further, the University notes that members of the Board of Trustees, in addition to faculty, staff, and administrators, are expected to sign their support for the University's Articles of Faith on a yearly basis. Those Articles of Faith state, in part:

> We believe God created two and only two distinct, unchangeable sexes, male and female, as evidenced by biological gender. Based on that creation model, God designed marriage to be a one-flesh union of only one male and only one female. Marriage is the only divinely sanctioned relationship for sexual intimacy.

Your letter asserts that the University's religious beliefs conflict with Title IX to the extent it covers discrimination on the basis of sexual orientation. The University states that "Christian teaching regarding sexuality is grounded in the creation account found in the Bible," in which "God creates two distinct yet complementary sexes, male and female." The University views marriage as being between one man and one woman, and the University believes that the Bible forbids "same-sex behavior." The University also asserts that its religious beliefs conflict with Title IX based on the University's policies on gender identity and cross-dressing because the University interprets the Bible as forbidding "the different genders" from "represent[ing] themselves as the opposite gender."

For the above reasons, Clarks Summit University requests assurance of its exemption from the following regulatory provisions to the extent that they conflict with its religious beliefs pertaining to sexual orientation and gender identity:

- 34 C.F.R. § 106.21 (admission)
- 34 C.F.R. § 106.22 (preference in admission)
- 34 C.F.R. § 106.23 (recruitment)
- 34 C.F.R. § 106.31 (education programs or activities)
- 34 C.F.R. § 106.32 (housing)
- 34 C.F.R. § 106.33 (comparable facilities)
- 34 C.F.R. § 106.34 (access to classes and schools)
- 34 C.F.R. § 106.35 (access to institutions of vocational education)
- 34 C.F.R. § 106.36 (counseling)
- 34 C.F.R. § 106.37 (financial assistance)
- 34 C.F.R. § 106.38 (employment assistance to students)
- 34 C.F.R. § 106.39 (health and insurance benefits and services)
- 34 C.F.R. § 106.40 (marital or parental status)
- 34 C.F.R. § 106.41 (athletics)
- 34 C.F.R. § 106.42 (textbooks and curricular material)

Clarks Summit University is exempt from these provisions to the extent they conflict with its religious beliefs pertaining to sexual orientation and gender identity.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulations other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here recognized.

I hope this letter fully responds to your request. If you have any further questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights