# Colorado Christian University
## 8787 West Alameda Avenue
## Lakewood, CO 80226
## 303-963-3350
## warmstrong@ccu/edu

November 4, 2014

Catherine Lhamon, Assistant Secretary
U.S. Department of Education, Office for Civil Rights
Lyndon Baines Johnson Department of Education Building
400 Maryland Avenue, SW
Washington, DC 20202-1100

Re:    Request for Religious Exemption from Certain Applications of Title IX

Dear Ms. Lhamon:

I hereby request, under 20 U.S.C. § 1681(a) (3) and 34 C.F.R. § 106.12, that the Department of Education's Office for Civil Rights acknowledge that Colorado Christian University (CCU) is exempt from Title IX of the Education Amendments of 1972 and its accompanying regulations to the extent that they are interpreted to curtail the University's freedom to respond to transgender individuals in accordance with its religious convictions. As President of CCU, I am the "highest ranking official of the institution," 34 C.F.R. § 106.12(b), and thus qualified to seek these exemptions.

CCU is a non-profit institution of higher education with its main campus in Lakewood, Colorado. It traces its origins to the founding of Denver Bible Institute in 1914.[1]  A century later, CCU is a Christ-centered learning community committed to developing each student in mind, faith and character for a lifetime of meaningful work and service in a constantly changing world.[2]  Its identity as a Christian institution is central to all it does and teaches.[3]  Christ, the living Word, is the integrating center of Colorado Christian University, intentionally at the core of all that CCU is and does.[4]  The University exists to produce graduates who think critically, live faithfully, and impact effectively their spheres of influence.[5]  This purpose is accomplished through a highly competent and dedicated faculty, an integrated academic curriculum, and student life programs designed to strengthen faith, shape character, and nurture compassionate response in a need-filled world.[6]

---

[1] http://www.ccu.edu/about/history/
[2] http://www.ccu.edu/about/essence/
[3] Id.
[4] Id.
[5] Id.
[6] Id.

EXHIBIT C                                                                                    1

Letter to Catherine Lhamon
October 13, 2014
Page 2 of 5

CCU's educational philosophy is guided by its Statement of Faith, which is embraced by all faculty and staff.[7] The Statement[8] affirms the key elements of the historical Christian faith, assuring consensus on the foundational tenets of the faith.[9] The essence of the CCU experience is its integration of faith and learning.[10] This distinctive integration of academic achievement, character development, and spiritual formation prepares CCU graduates to honor God and impact the world with their lives.[11]

CCU's Board of Trustees have adopted strategic objectives that direct the implementation of the University's consistent mission and vision and provide context for its first priority: an enduring commitment to Jesus Christ and His Kingdom.[12] These strategic objectives include:

- Honoring Christ and sharing His love on campus and around the world;
- Teaching students to trust the Bible, live holy lives and be evangelists;
- Giving students significant opportunities to serve the Lord while they are at CCU and to help them develop a lifetime habit of such service;
- Impacting culture in support of traditional family values, sanctity of life, compassion for the poor, a Biblical view of human nature, limited government, personal freedom, free markets, natural law, original intent of the Constitution and Western civilization; and
- Serving the Church.[13]

CCU states its vision as follows: "We envision graduates, who think critically and creatively, lead with high ethical and professional standards, embody the character and compassion of Jesus Christ, and who thereby are prepared to impact the world."[14] It articulates its mission as follows: "Colorado Christian University cultivates knowledge and love of God in a Christ-centered community of learners and scholars, with an enduring commitment to the integration of exemplary academics, spiritual formation, and engagement with the world."[15]

On October 22, 2010, CCU's Board of Trustees adopted a policy on homosexuality, transvestitism, and transgenderism. It reads in pertinent part as follows:

> [A]lthough some Christians may take other positions concerning transvestitism and/or transgenderism, CCU's position is clear as to both. As a matter of religious faith, conviction, and exercise, Colorado Christian University adheres to the Biblical admonitions against both transvestitism and transvestite behavior, as set forth in Deuteronomy 22:5, and

---

[7] *Id.*
[8] http://www.ccu.edu/about/webelieve/
[9] http://www.ccu.edu/about/essence/
[10] *Id.*
[11] *Id.*
[12] http://www.ccu.edu/strategicobjectives/
[13] *Id.*
[14] http://www.ccu.edu/about/mission/
[15] *Id.*

EXHIBIT C                                                                                                 2

Letter to Catherine Lhamon
October 13, 2014
Page 3 of 5

transgenderism and transgender behavior, as set forth in Genesis 1:27. Therefore, Colorado Christian University prohibits all of its officers, trustees, employees, and students from engaging in, advocating, teaching, supporting, encouraging, defending, or excusing transvestitism and transvestite behavior and/or transgenderism and transgender behavior, in any form or for any purpose.

CCU's Student Handbook contains the following section, entitled "Gender Identification":

Based on the mission of CCU, its standards, and uniqueness as a living and learning environment that honors Jesus Christ, the university recognizes that some students may struggle with their gender identity and wish to explore living as a particular gender other than the one that they were biologically created as. When a student is cooperative and willing to explore these feelings in an appropriate setting and not act out the feelings, the university will allow them to continue being a part of the CCU community if they are pursuing counseling and a mentoring relationship that will help them discuss appropriately who God made them to be. In this process, however, the university will uphold a view that we are "fearfully and wonderfully made" in the uniqueness and image of God and therefore strategically and purposefully made as the biological gender we were born as. Because of this belief the university will not allow a student of a particular gender to dress and act differently than the biological one that God created them to be. When a student decides to identify as a gender other than their biological one, it is in their, and the university's, best interest for them to leave the university community. It is also in the best interest of the university and the student for them to separate themselves from the CCU community if she or he pursues a medical course of action to physically change their biological gender to that of another sex.[16]

In the employment context, both applicants and existing employees are required to affirm their commitment to CCU's Statement of Faith and Employee Lifestyle Expectations.[17] Those expectations include the following: "Members of the CCU community are expected to refrain from engaging in, advocating, teaching, supporting, encouraging, defending, or excusing homosexuality, transvestitism, transvestite behavior, transgenderism and transgender behavior."[18]

As you know, the Office for Civil Rights has not issued regulations or guidance explaining how an educational institution's response to a transgender individual might violate Title IX and its accompanying regulations. As you also know, however, the resolution

---

[16] http://www.ccu.edu/uploadedFiles/Pages/Campus_Life/handbook.pdf (p. 144).

[17] http://jobs.ccu.edu/

[18] http://jobs.ccu.edu/employee-lifestyle-expectations

EXHIBIT C                                                                                          3

Letter to Catherine Lhamon
October 13, 2014
Page 4 of 5

agreement[19] between the Arcadia Unified School District and ED OCR (and the Department of Justice) requires the school district to permit transgender students to use the restroom, locker room, and living accommodations of their choice, and to participate in athletic programs as a member of their chosen sex.[20] It is thus reasonable to suppose that ED OCR believes that such responses are required by Title IX. It also reasonable to presume that your office interprets Title IX to impose gender identity non-discrimination obligations upon covered institutions in the employment context. To the extent these suppositions are correct, it appears as though compliance with Title IX, as interpreted by ED OCR to reach transgender "discrimination," would be inconsistent with the religious tenets of CCU.

CCU accordingly requests that your office acknowledge that the University is exempt from Title IX and the following implementing regulations (to the extent they are interpreted to reach gender identity discrimination):

34 C.F.R. § 106.21 (admission)
34 C.F.R. § 106.22 (preference in admission)
34 C.F.R. § 106.23 (recruitment)
34 C.F.R. § 106.31 (education programs or activities)
34 C.F.R. § 106.32 (housing)
34 C.F.R. § 106.33 (comparable facilities)
34 C.F.R. § 106.34 (access to classes and schools)
34 C.F.R. § 106.36 (counseling)
34 C.F.R. § 106.37 (financial assistance)
34 C.F.R. § 106.38 (employment assistance to students)
34 C.F.R. § 106.39 (health and insurance benefits and services)
34 C.F.R. § 106.40 (marital or parental status)
34 C.F.R. § 106.41 (athletics)
34 C.F.R. § 106.43 (standards for measuring skill or progress in physical education classes)
34 C.F.R. § 106.51-61 (relating to employment)

Thank you in advance for your consideration. I look forward to hearing from you soon. If you require anything further, please do not hesitate to contact me.

Very truly yours,

William L. Armstrong
President

---

[19] Resolution Agreement Between the Arcadia Unified School District, the U.S. Department of Education, Office for Civil Rights, and the U.S. Department of Justice, Civil Rights Division, *available at* http://www.nclrights.org/wp-content/uploads/2013/09/Arcadia_Resolution_agreement_07.24.2013.pdf.
[20] *Id.* 7

EXHIBIT C                                                                                          4



UNITED STATES DEPARTMANT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

December 5, 2014

William L. Armstrong
President
Colorado Christian University
8787 West Alameda Avenue
Lakewood, CO 80226

Dear President Armstrong:

The purpose of this letter is to respond to your November 4, 2014, letter to the U.S. Department
of Education, Office for Civil Rights (OCR), in which you requested a religious exemption for
Colorado Christian University of Lakewood, Colorado from Title IX of the Education
Amendments of 1972. Title IX prohibits discrimination on the basis of sex in any education
program or activity operated by a recipient of Federal financial assistance. We are processing
your request and have determined that we need further information.

Subsection (a)(3) of Title IX, 20 U.S.C. § 1681(a)(3), and the Department's implementing
regulation at 34 C.F.R. § 106.12 provide that Title IX and its regulations do not apply to an
educational institution controlled by a religious organization to the extent that application of
Title IX would not be consistent with the controlling organization's religious tenets. Such
educational institutions are allowed to claim an exemption from Title IX by identifying the
provisions of the Department's Title IX regulations that conflict with a specific tenet of the
controlling religious organization.

Your letter included sufficient information regarding the provisions of the Department's Title IX
regulations from which the University requests exemption. But your letter did not identify the
religious organization that controls the University. Your letter describes the University as "a
Christ-centered learning community" and states that it identifies as a "Christian institution," but
does not name a specific religious organization. An educational institution will normally be
considered to be controlled by a religious organization under Title IX if one or more of the
following conditions prevail:

(1)    It is a school or department of divinity, defined as an institution or a department
       or branch of an institution whose program is specifically for the education of
       students to prepare them to become ministers of religion or to enter upon some
       other religious vocation, or to prepare them to teach theological subjects; or

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*

EXHIBIT C                                                                                      5

Page 2: Letter to William L. Armstrong

(2)   It requires its faculty, students or employees to be members of, or otherwise espouse a personal belief in, the religion of the organization by which it claims to be controlled; or

(3)   Its charter and catalog, or other official publication, contains an explicit statement that it is controlled by a religious organization or an organ thereof or is committed to the doctrines of a particular religion, and the members of its governing body are appointed by the controlling religious organization or an organ thereof, and it receives a significant amount of financial support from the controlling religious organization or an organ thereof.

If you would like OCR to make a determination regarding the University's religious exemption request, please let us know the specific religious organization that controls the University. Feel free to provide any explanation or supporting documentation that may be helpful to OCR's understanding. If you no longer desire a religious exemption determination, please simply let us know your wish to withdraw the request at this time so that we may close the request file.

Thank you for your cooperation. If you have any questions, please do not hesitate to contact me. I can be reached at (202) 453-6048.

Sincerely,

Seth Galanter
Principal Deputy Assistant Secretary
Office for Civil Rights
U.S. Department of Education

EXHIBIT C                                                                                          6

# Colorado Christian University

**8787 West Alameda Avenue**
**Lakewood, Colorado 80226**
**303-963-3350**
**warmstrong@ccu.edu**

January 6, 2015

**Via Federal Express**
Seth Galanter
Principal Deputy Assistant Secretary
Office for Civil Rights
U.S. Department of Education
400 Maryland Ave. S.W.
Washington, D.C. 20202-1100

Re:  **Colorado Christian University Application for Religious Exemption under Title IX**

Dear Mr. Galanter:

I have just received a phone message from you pointing out that my letter of December 22nd neglected to include the referenced attachments:

- Statement of Faith
- Lifestyle Expectations
- Strategic Objectives

I apologize for this oversight

An additional copy of my December letter and the attachments are attached hereto.

Thank you for drawing this matter to my attention.

Sincerely,

William L. Armstrong
President

EXHIBIT C                                                                                           7

# Colorado Christian University

**8787 West Alameda Avenue**
**Lakewood, Colorado 80226**
**303-963-3350**
**warmstrong@ccu.edu**

December 22, 2014

Seth Galanter
Principal Deputy Assistant Secretary
Office for Civil Rights
U.S. Department of Education
400 Maryland Ave. S.W.
Washington, D.C. 20202-1100

Re: **Colorado Christian University Application for Religious Exemption under Title IX**

Dear Mr. Galanter:

This is in response to your letter dated December 5, 2014, requesting further information from Colorado Christian University regarding our request for a religious exemption from Title IX of the Education Amendments of 1972.

Colorado Christian University ("CCU") requires all of its faculty and employees to espouse a personal belief in the evangelical Christian faith. Every applicant for any position at CCU must sign an Application Acknowledgement agreeing to abide by CCU's Statement of Faith and Statement of Lifestyle Expectations, and to adhere to traditional biblical values and CCU's Strategic Objectives. If an individual is offered a job at CCU, he or she must execute the Statement of Faith and the Statement of Lifestyle Expectations before the hiring process is complete. Each of these documents is attached for your reference.

Please do not hesitate to contact me if you have further questions about this matter.

Sincerely,

William L. Armstrong
President

EXHIBIT C                                                                                          8



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

June 28, 2016

William L. Armstrong
President
Colorado Christian University
8787 West Alameda Avenue
Lakewood, CO 80226

Dear President Armstrong:

I write to respond to your November 4, 2014, letter to the U.S. Department of Education's Office for Civil Rights (OCR), in which you requested a religious exemption for Colorado Christian University (University or CCU) of Lakewood, Colorado from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. In response to a request from OCR on December 5, 2014, you submitted further information on December 22, 2014 about the University's eligibility for an exemption from Title IX. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

Title IX and its implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your December letter explains that the University "requires all of its faculty and employees to espouse a personal belief in the evangelical Christian faith. Every applicant for any position at CCU must sign an Application Acknowledgement agreeing to abide by CCU's Statement of Faith and Statement of Lifestyle Expectations, and to adhere to traditional biblical values. . . . If an individual is offered a job at CCU, he or she must execute the Statement of Faith and the Statement of Lifestyle Expectations before the hiring process is complete."

As stated in your November letter, you request an exemption to the extent that Title IX or its implementing regulations "are interpreted to reach gender identity discrimination." In support of this request, you explain that the University's Employee Lifestyle Expectations include the following: "Members of the CCU community are expected to refrain from engaging in,

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

EXHIBIT C                                                                                                          9

William L. Armstrong – page 2

advocating, teaching, supporting, encouraging, defending, or excusing homosexuality, transvestitism, transvestite behavior, transgenderism and transgender behavior." Your letter also describes an October 2010 policy, adopted by the University's Board of Trustees, which states that "although some Christians may take other positions concerning transvestitism and/or transgenderism, CCU's position is clear as to both. As a matter of religious faith, conviction, and exercise, Colorado Christian University adheres to the Biblical admonitions against both transvestitism and transvestite behavior, as set forth in Deuteronomy 22:5, and transgenderism and transgender behavior, as set forth in Genesis 1:27."

You state that, for these reasons, the University is requesting an exemption from the following regulatory provisions "to the extent they are interpreted to reach gender identity discrimination:"

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-106.61 (governing employment).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity and compliance would conflict with the controlling organization's religious tenets.

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets identified in your request, OCR is obligated to identify a controlling organization to contact to verify those tenets. If the organization provides an interpretation of tenets that has a different practical impact than that described by the institution, or if the organization denies that it controls the

EXHIBIT C                                                                                                          10

William L. Armstrong – page 3

institution, this exemption will be rescinded.

I hope this letter responds fully to your request.  If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights
U.S. Department of Education

EXHIBIT C                                                                                                11

Page 1 of 4 – U.S. Department of Education, Office for Civil Rights Discrimination
Complaint Form, Consent Form, and Complaint Processing Procedures

## DISCRIMINATION COMPLAINT FORM
## to the
## United States Department of Education
## Office for Civil Rights

1.      Name of person filing this complaint:

| | |
|---|---|
| **Last Name, First, Middle** | Swain, Lauren |
| **Address:** | 8532 N. Ivanhoe St., #208 |
| **City, State, Zip Code:** | Portland, OR 97203 |
| **Home/Work Telephone:** | ██████████ |
| **Email Address:** | lauren@paulsouthwick.com |

2.      Name of person discriminated against (if **other** than person filing). If the person
discriminated against is age 18 or older, we will need that person's signature on this
complaint form and the consent/release form before we can proceed with this
complaint. If the person is a minor, and you do not have the legal authority to file a
complaint on the student's behalf, the signature of the child's parent or legal
guardian is required.

| | |
|---|---|
| **Last Name, First, Middle** | Mueller, Journey |
| **Address:** | |
| **City, State, Zip Code:** |  |
| **Home/Work Telephone:** | |
| **Email Address:** | |

3.      OCR investigates discrimination complaints against institutions and agencies which
receive funds from the U.S. Department of Education and against public educational
entities and libraries that are subject to the provisions of Title II of the Americans
with Disabilities Act. Please identify the institution or agency that engaged in the
alleged discrimination. If we cannot accept your complaint, we will attempt to refer
it to the appropriate agency and will notify you of that fact.

| | |
|---|---|
| **Name of Institution:** | Colorado Christian University (CCU) |
| **Address:** | 8787 W. Alameda Ave. |
| **City, State, Zip Code:** | Lakewood, CO 80226 |
| **Department/School:** | |

4.      The regulations OCR enforces prohibit discrimination on the basis of race, color,
national origin, sex, disability, age or retaliation. Please indicate the basis of your
complaint:

☐      Discrimination **based on sex (specify)**

          Discrimination on the basis of sexual orientation

EXHIBIT C                                                                                                12

Page 2 of 4 – U.S. Department of Education, Office for Civil Rights Discrimination
Complaint Form, Consent Form, and Complaint Processing Procedures

5.      Please describe each alleged discriminatory act. For each action, please include the
        date(s) the discriminatory act occurred, the name(s) of each person(s) involved and,
        why you believe the discrimination was because of race, disability, age, sex, etc. Also
        please provide the names of any person(s) who was present and witnessed the
        act(s) of discrimination.

        CCU publishes anti-LGBTQ+ policies in its student handbook and encourages
        students to report violations of its policies by other students. Journey's
        roommates locked her in her dorm room and forced her to confess her
        sexual orientation, then reported her to school officials. In response, CCU
        officials placed Journey on academic probation, removed her from her
        housing, and required her to attend conversion therapy and mentorship
        meetings. CCU blocked access to LBGTQ+ -affirming resources on their wi-fi
        service. As a result of this mistreatment, Journey's mental health suffered to
        the point where she felt compelled to leave CCU before completing her
        degree. Please see attached declaration.

6.      What is the most **recent date** you were discriminated against?

        Date:  Current, Ongoing

7.      If this date is **more than 180 days ago,** you may request a waiver of the filing
        requirement.

         **X**   I am requesting a waiver of the 180-day time frame for filing this
        complaint.

        Please explain why you waited until now to file your complaint.

        1) the Covid-19 pandemic;
        2) The Trump administration's policies and statements about religious exemptions
        to Title IX;
        3) The Trump administration's policies and statements about Title IX not
        prohibiting discrimination on the basis of sexual orientation or gender identity.
        4) Although the initial act of discrimination took place more than 180 days ago,
        Journey's complaint should not be considered time-barred because CCU continues
        to discriminate against Journey and to promulgate policies and practices that
        discriminate against LGBTQ+ students.

8.      Have you attempted to resolve these allegations with the institution through an
        internal grievance procedure, appeal or due process hearing?

         **No**

EXHIBIT C                                                                                 13

Page 3 of 4 – U.S. Department of Education, Office for Civil Rights Discrimination
Complaint Form, Consent Form, and Complaint Processing Procedures

9.      If the allegations contained in this complaint have been filed with any other Federal,
        state or local civil rights agency, or any Federal or state court, please give details and
        dates. We will determine whether it is appropriate to investigate your complaint
        based upon the specific allegations of your complaint and the actions taken by the
        other agency or court.

        **Agency or Court:** U.S. District Court - District of Oregon - Eugene Division
        **Date Filed:** 03/29/21
        **Case Number or Reference:** 6:21-cv-00474-AA
        **Results of Investigations/Findings by Agency or Court:** Pending

10.     If we cannot reach you at your home or work, we would like to have the name and
        telephone number of another person (relative or friend) who knows where and
        when we can reach you. This information **is not required,** but it will be helpful to
        us.

        *Not applicable*

11.     What would you like the institution to do as a result of your complaint — what
        remedy are you seeking?

        Journey would like CCU's policies amended to state that (1) same-sex dating
        relationships and displays of affection will be treated by CCU in the same manner
        as opposite-sex dating relationships and displays of affection; (2) students will not
        be punished for coming out as LGBTQ+ or for expressing their sexual or gender
        identity (through pronouns, clothing, hair, makeup, etc.); (3) CCU will not
        encourage or facilitate conversion therapy or any other sexual or gender
        orientation change efforts; (4) students who report sexual or physical assault will
        be granted safe harbor from discipline relating to sexual activity or other code of
        conduct violations; and (5) CCU's non-discrimination policy includes sexual
        orientation and gender identity as applied to all aspects of CCU, including housing
        and other programs.

12.     We cannot accept your complaint if it has not been signed. Please sign and date
        your complaint below.

        07/29/2021
        _____                    _____
        (Date)                         (Signature)

        Aug 2, 2021
        _____                    _____
        (Date)                         (Signature of person in Item 2)

EXHIBIT C                                                                14



**UNITED STATES DEPARTMENT OF EDUCATION**
**OFFICE FOR CIVIL RIGHTS**

1244 SPEER BLVD., SUITE 310
DENVER, CO 80204-3582

REGION VIII

ARIZONA
COLORADO
NEW MEXICO
UTAH
WYOMING

April 8, 2022

Ms. Lauren Swain
Paul Southwick Law, LLC
8532 N. Ivanhoe Street, #208
Portland, OR 97203

*By email only to:* lauren@paulsouthwick.com

Re:  Colorado Christian University
     OCR Case No. 08-21-2214

Dear Ms. Swain:

On August 3, 2021, the United States Department of Education's Office for Civil Rights (OCR) received your complaint against Colorado Christian University. You filed the complaint on behalf of a former student at the University, Journey Mueller (the Student), and on behalf of current LGBTQ+ students at the University. You allege that the University discriminates on the basis of sexual orientation. Specifically, you allege that:

1. The University discriminates against LGBTQ+ students because its policies and practices, including in its current Student Handbook, prohibit students from engaging in behavior that exhibits a same-sex romantic relationship and subject students who engage in same-sex romantic relationships to discipline (Allegation 1); and

2. After the University learned that the Student is a lesbian, it discriminated against her on the basis of sexual orientation during the 2017-18 school year by, among other things, placing the Student on academic probation, removing her from her housing, requiring her to attend conversion therapy and mentorship meetings, and blocking access to LBGTQ+ affirming resources on the University's wi-fi (Allegation 2).

OCR enforces Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq.*, and its implementing regulation at 34 C.F.R. Part 106, which prohibit discrimination on the basis of sex in any education program or activity operated by a recipient of federal financial assistance from the Department. As a recipient of financial assistance from the Department, the University is subject to Title IX.

OCR is opening Allegation 1 for investigation because OCR has determined that it has jurisdiction, that the allegation was timely filed, and that it is appropriate for investigation under the laws and regulations enforced by OCR. If you disagree with the way OCR stated Allegation 1, please contact the OCR staff person identified below within 10 days of the date of this letter.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

EXHIBIT C                                    www.ed.gov                                    15

Page 2 – Letter of Notification – Complainant - OCR Case No. 08-21-2214

Please note that opening this allegation for investigation in no way implies that OCR has made a determination with regard to its merits. During the investigation, OCR is a neutral fact-finder, collecting and analyzing relevant evidence from you, the University, and other sources, as appropriate. OCR will ensure that its investigation is legally sufficient and fully responds to the allegation in accordance with the provisions of Article III of OCR's *Case Processing Manual* (CPM), available at https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf. In accordance with the CPM, OCR will provide a copy of the complaint to the University.

After carefully reviewing the information you provided, OCR has determined that it will not investigate Allegation 2. According to the information provided in the Student's Declaration, which was attached to your complaint, the Student attended the University between August 2017 and April 2018, and the acts of alleged discrimination against the Student occurred during that timeframe. As explained in Section 106 of the CPM, OCR generally will take action only with respect to allegations that are filed within 180 days of the alleged discrimination unless OCR grants a waiver under Section 107 of the CPM. You filed this complaint on August 3, 2021, more than 180 days after the University allegedly discriminated against the Student between August 2017 and April 2018.

You requested a waiver of the 180-day filing requirement for Allegation 2 on the following bases:

1) the COVID-19 pandemic;
2) the Trump administration's policies and statements about religious exemptions to Title IX;
3) the Trump administration's policies and statements about Title IX not prohibiting discrimination on the basis of sexual orientation or gender identity; and
4) although the initial act of discrimination took place more than 180 days ago, [the Student's] complaint should not be considered time-barred because the University continues to discriminate against [the Student] and to promulgate policies and practices that discriminate against LGBTQ+ students.

OCR has reviewed your request and declines to waive OCR's 180-day deadline. OCR is accordingly dismissing Allegation 2 as untimely under Section 108(d) of the CPM.

You have a right to appeal OCR's dismissal of Allegation 2 within 60 calendar days of the date indicated on this letter. An appeal can be filed electronically, by mail, or by fax. You must either submit (1) a completed appeal form online at https://ocrcas.ed.gov/content/ocr-electronic-appeals-form or (2) a written statement of no more than 10 pages (double-spaced, if typed) by e-mail to OCR@ed.gov, by fax to 202-453-6012, or by mail to the Office for Civil Rights, U.S. Department of Education, 400 Maryland Avenue SW, Washington, D.C. 20202. The filing date on an appeal is the date the appeal is postmarked, submitted electronically, or submitted by fax. In the appeal, you must explain why you believe the factual information described here was incomplete or incorrect, the legal analysis was incorrect, or the appropriate legal standard was not applied, and how correction of any error(s) would result in the case being opened for investigation; failure to do so may result in dismissal of the appeal.

EXHIBIT C                                                                                                    16

Page 3 – Letter of Notification – Complainant - OCR Case No. 08-21-2214

OCR would like to make you aware that individuals who file complaints with OCR may have the right to file a private suit in federal court whether or not OCR finds a violation.

This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

Please be advised that the University must not harass, coerce, intimidate, discriminate, or otherwise retaliate against an individual because that individual asserts a right or privilege under a law enforced by OCR or files a complaint, testifies, assists, or participates in a proceeding under a law enforced by OCR. If this happens, the individual may file a separate retaliation complaint with OCR.

Under the Freedom of Information Act (FOIA), it may be necessary to release this document and related correspondence and records upon request. If OCR receives such a request, we will seek to protect, to the extent provided by law, personally identifiable information that could reasonably be expected to constitute an unwarranted invasion of personal privacy if released.

If you have any questions or concerns, please contact Jennifer Weiser Bezoza, the OCR attorney assigned to this complaint, at (303) 844-3676, or by email at jennifer.bezoza@ed.gov.

Sincerely,


Thomas M. Rock
Supervisory Attorney

EXHIBIT C                                                                                              17