

May 3, 2022

Catherine E. Lhamon
Assistant Secretary for Civil Rights
United States Department of Education
Office for Civil Rights
400 Maryland Avenue, SW
Washington, D.C. 20202-1100

Jennifer Weiser Bezoza
United States Department of Education
Office for Civil Rights – Region VIII
1244 Speer Blvd., Suite 310
Denver, CO 80204

*Via USPS Certified Mail.*

*Also via email to:* jennifer.bezoza@ed.gov

**Re:    Colorado Christian University**
**OCR Case No. 08-21-2214**
**Assertion of Religious Exemption to Title IX**

Dear Ms. Lhamon,

My name is Donald W. Sweeting, and I have the honor of serving as the President of Colorado Christian University ("CCU"). I am reaching out regarding the above-referenced OCR case ("Case"). Specifically, pursuant to 34 C.F.R. Part 106.12, this letter serves as a written notice that CCU is formally asserting a religious exemption to the anti-discrimination provisions of Title IX of the Civil Rights Act of 1964 ("Title IX") with regard to discrimination on the basis of sexual orientation. Consequently, CCU respectfully requests that this Case be dismissed by OCR accordingly.

According to OCR's April 8, 2022, letter to me regarding this Case (attached as Exhibit A), OCR received a complaint alleging that CCU—by way of its policies, procedures, Student Handbook, etc.—discriminates against students based on sexual orientation by restricting same-sex romantic relationships and/or disciplining students who engage in same-sex romantic relationships. 20 U.S.C. § 1681(a) states that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

EXHIBIT I                                                                                          1

# COLORADO CHRISTIAN UNIVERSITY

*Grace and Truth*

discrimination under any education program or activity receiving Federal financial assistance…" As you know, since June 16, 2021, the U.S. Department of Education ("DE") has revised its statutory interpretation to state that Title IX's prohibition against sex-based discrimination extends so far as to bar discrimination on the basis of sexual orientation and/or gender identity.

Without admitting the validity of the DE's revised interpretation, CCU asserts that it is exempt from Title IX's prohibition against discrimination on the basis of sexual orientation because CCU qualifies for the religious exemption to Title IX. Specifically, CCU is exempt from Title IX's prohibition against sex-based discrimination under 20 U.S.C. § 1681(a)(3), which provides that "this section shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization." CCU is controlled by a religious institution, and the religious tenets of said organization unequivocally prohibit same-sex romantic relationships of any kind. Accordingly, CCU is permitted by Title IX to discriminate on the basis of sex, and therefore sexual orientation, in accordance with its religious tenets.

*CCU is Controlled by a Religious Organization*

CCU is a nonprofit evangelical Christian university that is controlled by a religious organization. Significantly, OCR has previously acknowledged that CCU is an institution controlled by a religious organization. As detailed in your June 28, 2016, letter to CCU's former president (attached as Exhibit B), OCR has previously confirmed that CCU qualifies for a religious exemption to Title IX with regard to gender identity. CCU respectfully requests that you confirm your previous recognition of CCU's exemption with regard to same-sex romantic relationships.

Further, 34 C.F.R. § 106.12(c) provides multiple criteria that are each independently sufficient to establish that an educational institution is controlled by a religious organization. In CCU's case, the three most relevant criteria of 34 C.F.R. § 106.12(c) are as follows:

> (2) That the educational institution requires its faculty, students, or employees to be members of, or otherwise engage in religious practices of, or espouse a personal belief in, the religion of the organization by which it claims to be controlled.

> (4) That the educational institution has a doctrinal statement or a statement of religious practices, along with a statement that members of the institution community must engage in the religious practices of, or espouse a personal belief in, the religion, its practices, or the doctrinal statement or statement of religious practices.

> (5) That the educational institution has a published institutional mission that is

EXHIBIT I                                                                                     2

# COLORADO CHRISTIAN UNIVERSITY
*Grace and Truth*

approved by the governing body of an educational institution and that includes, refers to, or is predicated upon religious tenets, beliefs, or teachings.

(6) Other evidence sufficient to establish that an educational institution is controlled by a religious organization, pursuant to 20 U.S.C. 1681(a)(3).

Under each of these criteria, CCU should be classified as an institution controlled by a religious organization. With regard to Criteria #2 and #4, CCU requires all of its faculty and employees to espouse a personal belief in the evangelical Christian faith. Further, every applicant for any employment position at CCU must sign an Application Acknowledgement agreeing to abide by CCU's Statement of Faith (attached as Exhibit C) and Statement of Lifestyle Expectations in addition to agreeing to adhere to traditional biblical values. The prospective employee must sign both of these documents before the hiring process is complete. Finally, if student enrolls at CCU, he or she must sign the Statement of Faith before the enrollment process is complete. Traditional undergraduate students must go one step further by signing CCU's Lifestyle Covenant (attached as Exhibit D).

Regarding Criterion #5, pursuant to a variety of cases including, without limitation, *United States v. Sealy, Inc.,* 388 U.S. 350, 352 (1967); *Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.,* 795 F.3d 1124, 1128 (9th Cir. 2015); *Maxon v. Fuller Theological Seminary,* No. 20-56156 (9th Cir. Dec. 13, 2021), the Board of Trustees/Directors of an entity is generally considered by the courts to be the organization that controls said entity. Accordingly, in CCU's case, its governing organization is its Board of Trustees ("Board"). The Board has published a mission for CCU that openly references and relies on religious tenets. Specifically, CCU's mission, as determined and published by its Board, is encapsulated in CCU's mission statement (Exhibit E), Statement of Convictions (Exhibit F), and Strategic Priorities (Exhibit G), all of which make clear and repeated references to the Christian tenets that motivate and guide CCU's actions and policies.

Finally, with regard to Criterion #6, as detailed by CCU's Board of Trustees Standing Policies Manual (select pages attached as Exhibit H), all members of CCU's Board—including any non-Trustee members of Board committees—must sign the Statement of Faith as a condition of their appointment. As a result of this requirement, CCU's Board exclusively admits qualified individuals of a particular religious belief for the furtherance CCU's above-described religious mission. Thus, the institution that wholly controls CCU (see above) is deeply religious.

Ultimately, because CCU satisfies most of the independent criteria for a religiously controlled institution, I respectfully request that OCR reaffirm its prior acknowledgment that CCU is governed by a religious institution for purposes of Title IX.

EXHIBIT I                                                                                           3



*CCU's Religious Tenets Prohibit Same-Sex Romantic Relationships*

Furthermore, the religious tenets of CCU explicitly and unequivocally bar any form of same-sex romantic relationship. Attached as Exhibit I are relevant pages from CCU's 2021-2021 College of Undergraduate Studies Student Handbook ("Handbook") that address the topic of same-sex romantic relationships. As noted in the Handbook, CCU believes "the unambiguous rejection in scripture of same-sex sexual activity remains in force for believers today…[because] God created human beings to show forth God's image as male and female in relationship (Gen 1:26-28), and the biblical ideal is the expression of sexuality within a heterosexual, lifelong, monogamous union (Mk 10:4- 12)." Additional passages of the Bible that compel CCU to restrict same-sex romantic relationships include, without limitation, 1 Timothy 1:10, Leviticus 18:22, 1 Corinthians 6:9-10, Leviticus 20:13, and Romans 1:26-27.

All of these passages prohibit the practice of same-sex romantic relationships. Just as CCU sincerely believes it is directed by the Bible to prohibit its students and employees from practicing many of the other sins named in the above-referenced passages—such as adultery, theft, and idolatry—CCU sincerely believes that it is directed by the Bible to prohibit the practice of same-sex romantic relationships among its students and employees as well. Ultimately, based on biblical precedent, CCU sincerely believes that prohibiting the practice of same-sex romantic relationships among its students and employees is crucial for CCU to achieve its core objectives to "honor Christ and share the love of Christ on campus and around the world…[and to] teach students to trust the Bible [and] live holy lives…" (see CCU's Strategic Priorities, attached as Exhibit G).

In light of CCU's sincere, biblically based religious convictions, if OCR were to compel CCU under 20 U.S.C. § 1681(a) to permit same-sex romantic relationships among its students and employees, OCR would force CCU to either violate sincerely held tenets of its Christian faith or would subject CCU to severe penalties for its inevitable refusal to violate its sincerely held beliefs. Consequently, in the words of Title IX, "the application of this subsection would not be consistent with the religious tenets of such organization [CCU]" and therefore "this section shall not apply to [such] educational institution."

*Assertion of Exemption*

In light of the foregoing, CCU hereby formally and respectfully asserts that it is exempt from 20 U.S.C. § 1681(a) as a religiously controlled institution pursuant to 20 U.S.C. § 1681(a)(3) and 34 C.F.R. Part 106.12(b). Specifically, insofar as they are interpreted to reach discrimination on the basis of same-sex romantic relationships, CCU requests it be exempted from the following

EXHIBIT I                                                                              4

# COLORADO CHRISTIAN UNIVERSITY
*Grace and Truth*

regulatory provisions and therefore requests that this Case be dismissed:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-106.61 (governing employment).

In light of its herein asserted exemption to Title IX, CCU respectfully requests the dismissal of this Case. Thank you in advance for your time and consideration of this request. If CCU can provide any additional information to substantiate its eligibility for Title IX's religious exemption, please contact CCU's General Counsel, Thomas N. Scheffel, at tscheffel@ccu.edu or 303-759-5937.


Sincerely,


*/s/ Donald W. Sweeting*
Donald W. Sweeting, Ph.D.
*President*
Colorado Christian University
8787 W. Alameda Ave.
Lakewood, CO 80226
Office:  303-963-3350
Fax:  303-963-3351
dsweeting@ccu.edu


EXHIBIT I                                                                                                    5



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

1244 SPEER BLVD, SUITE 310
DENVER, CO 80204-3582

REGION VIII
ARIZONA
COLORADO
NEW MEXICO
UTAH
WYOMING

April 8, 2022

Dr. Donald W. Sweeting, Ph.D.
President
Colorado Christian University
8787 W. Alameda Ave.
Lakewood, Colorado 80226

By email only to: *dsweeting*@ccu.edu

*Re:*    Colorado Christian University
        OCR Case No. 08-21-2214

Dear President Sweeting:

On August 3, 2021, the United States Department of Education's Office for Civil Rights (OCR) received the above-captioned complaint alleging that Colorado Christian University discriminates against students on the basis of sexual orientation. Specifically, the complaint alleges that the University discriminates against LGBTQ+ students because its policies and practices, including in its current Student Handbook, prohibit students from engaging in behavior that exhibits a same-sex romantic relationship and subject students who engage in same-sex romantic relationships to discipline.

OCR enforces Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 - 1688, and its implementing regulation at 34 C.F.R. Part 106, which prohibit discrimination on the basis of sex in any education program or activity operated by a recipient of federal financial assistance. As a recipient of financial assistance from the Department, the University is subject to Title IX. Title IX and its implementing regulation contain several exemptions and exceptions from its coverage. *See* 20 U.S.C. §§ 1681(a)(1)-(9); 34 C.F.R. §§ 106.11-106.15; *see also* OCR's webpage on exemptions from Title IX. If the University intends to claim an exemption from the application of Title IX and its implementing regulation to this complaint, please contact the OCR staff member identified below. The University may do this before responding to the attached data request.

OCR is opening the allegation above for investigation because OCR has jurisdiction, the allegation was timely filed, and it is appropriate for investigation under the laws and regulations enforced by OCR. Please note that opening this allegation for investigation in no way implies that OCR has made a determination with regard to its merits. During the investigation, OCR is a neutral fact-finder, collecting and analyzing relevant evidence from the University, the complainant, and other sources, as appropriate. OCR will ensure that its investigation is legally sufficient and fully responds to the allegation in accordance with the provisions of Article III of OCR's *Case Processing Manual* (CPM), available at https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf.

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

**EXHIBIT A - 0001**

EXHIBIT I                                                                                                    6

Page 2 of 2 – Letter of Notification – Recipient - OCR Case No. 08-21-2214

We intend to conduct a prompt investigation of this complaint. The regulation implementing Title VI, at 34 C.F.R. §§ 100.6(b) and (c), requires that a recipient of federal financial assistance make available to OCR information that may be pertinent to reach a compliance determination. This requirement is incorporated by reference in the Title IX regulations at 34 C.F.R. § 106.81. Pursuant to 34 C.F.R. § 100.6(c) and 34 C.F.R. § 99.31(a)(3)(iii), of the regulation implementing the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, OCR may review personally identifiable records without regard to considerations of privacy or confidentiality.

To reach an efficient and timely resolution of this matter, we are providing you an opportunity to present the University's response to these allegations and to submit supporting documentation. We have also determined that the information itemized in the attached "Data Request" is necessary to investigate the allegation. We request that this information reach our office as soon as possible but no later than **15 days from the date of this letter**. If any of the required items are available to the public on the Internet, you may provide the website address. You also may send documents to us by email to **jennifer.bezoza@ed.gov** or by other electronic means.

Please notify us of the name, address, and telephone number of the person who will serve as the University's contact person during the resolution of this complaint. We would like to talk with this person as soon as possible regarding this matter. We will continue to address letters to your attention with a courtesy copy to the University's designated contact.

Please be advised that the University must not harass, coerce, intimidate, discriminate, or otherwise retaliate against an individual because that individual asserts a right or privilege under a law enforced by OCR or files a complaint, testifies, assists, or participates in a proceeding under a law enforced by OCR. If this happens, the individual may file a retaliation complaint with OCR.

Under the Freedom of Information Act (FOIA), it may be necessary to release this document and related correspondence and records upon request. If OCR receives such a request, we will seek to protect, to the extent provided by law, personally identifiable information that could reasonably be expected to constitute an unwarranted invasion of personal privacy if released.

We are committed to prompt and effective service. If you have any questions, please contact Jennifer Weiser Bezoza, the attorney assigned to this complaint, at 303-844-3676, or by email at jennifer.bezoza@ed.gov.

Sincerely,

Thomas M. Rock
Supervisory General Attorney

Enclosure:     Data Request

**EXHIBIT A - 0002**

EXHIBIT I                                                                                          7



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

June 28, 2016

William L. Armstrong
President
Colorado Christian University
8787 West Alameda Avenue
Lakewood, CO 80226

Dear President Armstrong:

I write to respond to your November 4, 2014, letter to the U.S. Department of Education's Office for Civil Rights (OCR), in which you requested a religious exemption for Colorado Christian University (University or CCU) of Lakewood, Colorado from Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. In response to a request from OCR on December 5, 2014, you submitted further information on December 22, 2014 about the University's eligibility for an exemption from Title IX. TitJe IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance.

Tjtle IX and its implementing regulation at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that application of Title IX would be inconsistent with the controlling organization's religious tenets. Therefore, such educational institutions are allowed to request an exemption from Title IX by identifying the provisions of Title IX that conflict with a specific tenet of the religious organization. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets.

Your December letter explains that the University 'requires all of its faculty and employees to espouse a personal belief in the evangelical Christian faith. Every applicant for any position at CCU must sign an Application Acknowledgement agreeing to abide by CCU's Statement of Faith and Statement of Lifestyle Expectations, and to adhere to traditional biblical values ....... **If** an individual is offered a job at CCU, be or she must execute the Statement of Faith and the Statement of Lifestyle Expectations before the hiring process is complete."

As stated in your November letter you request an exemption to the extent that Title IX or its implementing regulations "are interpreted to reach gender identity discrimination." In support of this request, you explain that the University s Employee Lifestyle Expectations include the following: "Members of the CCU community are expected to refrain from engaging in,

400 MARYLAND AVE. S.W., WASHTNGTON'. DC 20202-1100
www.ed.gov

*The Department of Educalion's mission is to promote student acbievemenr and preparation for global competitiveness by fostering educational exceilence and ensuring equal access.*

**EXHIBIT B - 0003**

EXHIBIT I                                                                                8

William L. Armstrong- page 2

advocating, teaching, supporting, encouraging, defending or excusing homosexuality, transvestitism, transvestite behavior transgenderism and transgender behavior." Your letter also describes an October 2010 policy adopted by the University's Board of Trustees, which states that although some Christians may take other positions concerning transvestitism and/or transgenderism, CCU's position is clear *as* to both. As a matter of religious faith, conviction and exercise Colorado Christian University adheres to the Biblical admonitions against both transvestitism and transvestite bebaV1or, as set forth in Deuteronomy 22:5 and transgenderism and transgender behavior, as set forth in Genesis 1:27."

You state that, for these reasons the University is requesting an exemption from the following regulatory provisions "to the extent they are interpreted to reach gender identity discrimination:

- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. *§* 106.31 (governing education programs or activities);
- 34 C.F.R. *§* 106.32 (governing housing)·
- 34 C.F.R. *§* 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. *§* 106.34 (governing access to classes and schools);
- 34 C.F.R. *§* 106.36 (governing counseling);
- 34 C.F.R. *§* 106.37 (governing :financial assistance);
- 34 C.F.R. *§* 106.38 (governing employment assistatlce to students);
- 34 C.F.R. *§* 106.39 (governing health insurance benefits and services)'
- 34 C.F.R. § I06.40 (governing different rules based on marital or parental status of students)'
- 34 C.F.R. § 106.41 (governing athletics)'
- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-106.61 (governing employment).

The University is exempt from these provisions to the extent that they prohibit discrimination on the basis of gender identity and·compliance would conflict with the controlling organization's religious tenets.

Please note that this Jetter should not be construed to grant exemption from the requirements of THie IX and the regulation other than as stated above. In the event that OCR receives a complaint against your institution we are obligated to determine initially whether the allegations fall within the exemption here granted. Also, in the unlikely event that a complainant alleges that the practices followed by the institution are not based on the religious tenets identified in your request, OCR is obligated to identify a controlling organization to contact to verify those tenets. Tfthe organization provides an interpretation of tenets that has a different practical impact than that described by the institution or if the organization denies that it controls the

**EXHIBIT B - 0003**

EXHIBIT I                                                                                          9

William L. Armstrong - page 3

institution, this exemption will be rescinded.

I hope this letter responds fully to your request.  If you have any questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lharnon
Assistant Secretary for Civil Rights
U.S. Department of Education

**EXHIBIT B - 0003**

EXHIBIT I                                                                    10



# CCU Statement of Faith

Colorado Christian University unites with the broad, historic evangelical faith rather than affiliating with any specific denomination. In this commitment, the University embraces the following declarations of the National Association of Evangelicals:

## Colorado Christian University shall:

- We Believe the Bible to be the inspired, the only infallible, authoritative Word of God.

- We Believe that there is one God, eternally existent in three persons: Father, Son and Holy Spirit.

- We Believe in the deity of our Lord Jesus Christ, in His virgin birth, in His sinless life, in His miracles, in His vicarious and atoning death through His shed blood, in His bodily resurrection, in His ascension to the right hand of the Father, and in His personal return in power and glory.

- We Believe that for the salvation of lost and sinful people, regeneration by the Holy Spirit is absolutely essential.

- We Believe in the present ministry of the Holy Spirit by whose indwelling the Christian is enabled to live a godly life.

- We Believe in the resurrection of both the saved and the lost; they that are saved unto the resurrection of life and they that are lost unto the resurrection of damnation.

- We Believe in the spiritual unity of believers in our Lord Jesus Christ.

These declarations do not comprise all that individual Christians may consider important elements of faith; rather, they establish the essential framework within which members of the University both unite in shared beliefs and explore differences.

**EXHIBIT C - 0001**

EXHIBIT I



# CCU LIFESTYLE COVENANT

The CCU community seeks to encourage individuals to understand and use their unique, God-given gifts and abilities. Our hope is to see growth in the areas of spiritual and emotional maturity, interpersonal relationships, social awareness, and intellectual abilities, producing students centered in Jesus Christ. We intend for students to be intellectually prepared to pursue a career where they can individually serve others, live out their faith, and affect change in the world around them.

The Lifestyle Covenant expresses a commitment to educate men and women in the process of integrating their faith and education. This agreement also expresses our commitment to providing an atmosphere for study, personal exploration, involvement in interpersonal relationships, spiritual life, and growth that is conducive to students achieving goals, while enjoying living and learning in community.

## Living a Biblical Lifestyle

Central to our foundation is the hope that each student will strive to deepen their relationship with the Lord while deepening their understanding of a particular academic discipline. It is our expectation that each student commit to growing spiritually in the following ways:

- **Chapel Attendance** – Chapel sets the tone for the spiritual atmosphere on campus through the promotion and enrichment of community by teaching the Bible and lifting up the Lord in corporate worship. Since chapel is essential to the total learning process at CCU, it is required. Students are required to obtain 180 chapel credits (or an average of 45 a year for transfer students) in order to graduate.

- **Church Attendance** – The University encourages and expects every student to become involved in a local church or fellowship on a weekly basis while attending CCU.

- **Ministry** – The University is deeply committed to the role that service plays in the Christian life. Just as Christ came to serve, not to be served, CCU feels that service is one of the pillars of our faith. To this end all students are required to complete 180 hours of community service before graduation. Transfer

attend CCU. Ministry hours must be documented with the Office of Service Learning.

## Our Responsibilities for Relationships

Living in daily fellowship with others in the Christian community is a privilege and an expression of God's grace. In recognition of this privilege, we place great value on the quality of relationships in our community. We believe the greatest expression of fellowship and the highest principle for relationships is love.

"We should love one another. This is how we know what love is: Jesus Christ laid down His life for us. And we ought to lay down our lives for our brothers ... let us not love with words or tongue, but with actions and in truth. Since God so loved us, we ought to love one another.
Whoever loves God must also love his brothers." 1
John 3:11-16, 18, 4:11, 21

**We exemplify this love in the following ways:**

- **Through serving one another** – "We who are strong ought to bear the weaknesses of those without strength and not just please ourselves. Let each of us please his neighbor for his good, to build him up." Romans 15:1-2

- **Through supporting one another** – "Clothe yourself with compassion, kindness, humility, gentleness, and patience. Bear with each other and forgive whatever grievances you may have against one another." Colossians 3:12

- **Through healing broken relationships** – "... and He (Christ) has given us the ministry of reconciliation ... and He has committed to us the message of reconciliation." II Corinthians 5:18-19

- **Through mutual accountability** – "Moreover if your brother sins against you, go and tell him his fault between you and him alone. If he hears you, you have gained your brother." Mathew 18:15

CCU realizes that struggles occur in relationships and believes that it is through continual effort and accountability will foster an atmosphere of loving one another enough to forgive, heal, and grow exists.

students must complete 45 hours for every year they

## Responsibilities for Behavior

One of the distinctions of Christian higher education is the pursuit of a community that follows the example of Jesus Christ and the teachings of the Bible. Such a community requires enforceable standards that reflect our institutional mission and provide a framework for student behavior. The Bible teaches the lordship of Jesus Christ over all; the care of our whole being as temples of the Holy Spirit; the careful stewardship of the mind, time, abilities, funds, and opportunities; loving God with all of our being and loving your neighbor as yourself; personal righteousness; the practice of justice; evangelistic outreach through word and life; and the responsible exercise of our freedom.

Students are expected to be aware of and follow the guidelines in the Student Handbook, to act in consideration of others, and to exercise personal restraint when dealing with issues not specifically addressed in the Bible. To this end we have highlighted some of the student expectations found in the Handbook.

- **A commitment to honoring God with the use of our minds and bodies.** CCU students are expected to abstain from the use of illicit or non-medical drugs, narcotics, and other controlled substances. CCU expects that its' students will not be involved in situations where such activities are present. The use of alcohol or tobacco on campus is strictly prohibited, any underage drinking off campus, or public intoxication either on or off campus by any student, is prohibited. Of age students engaged in alcohol consumption off campus are expected to discourage underage drinking in those settings and become role models to underclassmen. It is our hope that students would seek the Lord's leading and be in prayer about how the use of these substances might reflect on their testimony.

- **A commitment to the purity of sexual relationships. Grounded in Christ-centered traditions and principles,** CCU's community values define sexual intercourse and other forms of intensely interpersonal sexual activity as well as cohabitation, as the unique expression of the covenanted love within  a heterosexual marriage. Sexual activity outside of marriage is inappropriate for CCU students whether living on or off campus.

- **A commitment to a life that is sensitive to our Christian witness.** It is important that we commit ourselves to expressing Christian values in responsible decisions and actions. CCU asks its students to use good judgment in their entertainment and recreation choices especially in the areas of music, movies, videos, magazines, and access to the Internet. Pornography is strictly prohibited and is not to be used, possessed, distributed, or accessed over the Internet.

- **A commitment to the confrontation of community members when they stray from the values, morals, and commitments** that are set forth by the University and its members in the Student Handbook, as well as a commitment to involve the University when students, after being confronted, continue with inappropriate behavior. This mutual accountability commitment challenges all students to hold each other's behavior accountable within a Christian Community framework that fosters the academic and spiritual growth of its members.

- **A commitment to Academic Integrity.** As a community seeking to live by the truth of Jesus Christ, CCU values personal integrity and academic honesty as vital components of a Christian educational experience. We believe that trust among community members is essential for both scholarship and the effective operations of the university. As members of this community, all students, faculty, staff, and administrators are responsible for ensuring that their behavior is consistent with the highest standards of integrity. As outlined in the academic catalogue and student handbook, academic dishonesty includes, but is not limited to, the following categories: cheating, fabrication, plagiarism, multiple submissions without faculty permission, obtaining unfair advantage, aiding and abetting, and unauthorized access to academic or administrative records or systems.

With this understanding of our benefits and responsibilities as members of the Colorado Christian University community, we covenant together as a body of believer- scholars to pursue the challenge of living out this covenant.

**Colossians 3:12-17 provides an appropriate summary of the goals for our community:**

"Therefore, as God's chosen people, holy and dearly loved, clothe yourselves with compassion, kindness, humility, gentleness, and patience. Bear with each other and forgive whatever grievances you may have against each other. Forgive as the Lord forgave you. And over all of these virtues, put on love, which binds them all together in perfect unity. Let the peace of Christ rule in your hearts, since as members of one body you were called to peace. And be thankful. Let the word of Christ dwell in you richly as you teach and admonish one another with all wisdom ... with gratitude in your hearts to God. And whatever you do, whether in word or deed, do it all in the name of the Lord Jesus, giving thanks to God the Father."

*All students in the College of Undergraduates Studies (CUS) will be required to sign before attending classes.*



EXHIBIT I                                                    EXHIBIT D - 0002

# Colorado Christian University's Mission

Christ-centered higher education transforming students to impact the world with grace and truth.

Colorado Christian University cultivates knowledge and love of God in a Christ-centered community of learners and scholars, with an enduring commitment to the integration of exemplary academics, spiritual formation, and engagement with the world. We envision graduates who think critically and creatively, lead with high ethical and professional standards, embody the character and compassion of Jesus Christ, treasure the gospel, and who thereby are prepared to impact the world in their callings.

## Christ-centered community

Our community of interdependent students, faculty, and staff seeks to honor and obey Jesus Christ, who is present in Spirit and speaks in Scripture, in order to advance God's purposes in the lives of every member.

## Exemplary academics

Our undergraduate and graduate curriculum integrates faith and learning in a scholarly environment that fosters critical and creative thinking, academic excellence, and professional competence.

## Spiritual formation

Our academic and student development programs cultivate a deep and enduring faith that affirms the authority of Scripture and embraces Christ as the authentic center of life.

**EXHIBIT E - 0001**

EXHIBIT I                                                                                              14

# Engagement with the world

Our students experience and engage the world in ways that prepare leaders to serve and transform their professions, churches, and communities.

Source: https://www.ccu.edu/about/mission/

**EXHIBIT E - 0001**

EXHIBIT I                                                                                    15

## Statement of Convictions

CCU is a Christian institution of higher education. Our University rests on a belief system where truth matters and where there is a unifying center (Christ) which holds all things and disciplines together. This has been our conviction since our founding in 1914, and it continues to be our conviction today. But truth is to be held and lived out in love. Hence our motto, "grace and truth." (John 1:14-16; Ephesians 4:15)

1. Holy Scripture: We have always believed in the truthfulness of the Bible. We understand the use of the word "infallibility" in our Statement of Faith to mean inerrancy (as articulated in The Chicago Statement of Biblical Inerrancy), that the 66 books of the Bible, in their original manuscripts, are without error in all that they affirm. Scripture is our supreme authority under Christ. (2 Timothy 3:16; 2 Peter 1:21; Psalm 12:6; John 17:17)

2. The Gospel: As evangelicals, we believe in Jesus Christ as Lord and Savior. The term "evangelical" comes from the Greek word euangelion, meaning "the good news" or the "gospel." Thus, the evangelical faith focuses on the "good news" of salvation brought to sinners through Jesus Christ. We have a biblical mandate to share this good news everywhere. We also understand the language of being "saved" in our Statement of Faith to mean that we are saved (i.e., justified) by grace alone, through faith alone, in Christ alone, and that true faith will show itself in good works. (Romans 3:21-28; Romans 5:1; Galatians 2:16; Ephesians 2:8-10)

3. Race and Ethnicity: Believing in a biblical view of human nature, we affirm that all people are made in the image of God and are consequently worthy of respect. Scripture also states that Christ has "ransomed people for God from every tribe and language and people and nation, and …made them a kingdom and priests to our God." Therefore, we look at the value of all persons through the lens of biblical truth as image bearers who can have a new identity in Christ. (Genesis 1:26,27; Ephesians 1-2; Revelation 5:9,10)

4. Sex and Gender: In affirming "traditional family values" in our Strategic Priorities, we mean what Bible-believing Christians have always meant, and what we have believed as an institution since our founding in 1914, that God created human beings in His image as male and female, that He ordained that marriage is to be between a man (male) and a woman (female) for life, and that sexual intimacy is exclusively for marriage. (Genesis 1:26-27; Genesis 2:24; Matthew 19:4-6; Ephesians 5:22-33; Revelation 19:7-9)

**EXHIBIT F - 0001**

EXHIBIT I                                                                    16

5. The Church and its Ministries: When we claim to be "servants of the church," we mean what we have always believed since our founding that all our employees — administration, faculty, staff, and also Trustees — should be committed Bible-believing Christians and true disciples of Jesus (see No. 2). While we recognize the vital role of pastors and teachers, we also believe in the priesthood of all believers, where God calls every believer to active ministry as a member of His body, the church, so we hold that every Christian at CCU (i.e., all employees, from office staff to facilities, to faculty, to the president) should see their jobs as ministries to our students, and that all should live lives of obedience to Christ and His Word. (Matthew 16:18; 28:18-20; Ephesians 4:11-13; 1 Peter 2:9)

6. Christ-centered Higher Education and Truth: In its central convictions, CCU stands in the great tradition of Christian higher education in which education must begin with the "fear of the Lord," must be rooted in the Scriptures and Jesus Christ ("in whom are hidden all the treasures of wisdom and knowledge"), and must affirm the truthfulness of truth and the reality of God's created order. (Proverbs 1:7; 9:10; Colossians 2:3)

**EXHIBIT F - 0001**

EXHIBIT I                                                                                    17

# COLORADO CHRISTIAN UNIVERSITY
*Grace and Truth*

## MISSION

Christ-centered higher education transforming students to impact the world with grace and truth.

## STRATEGIC PRIORITIES

*Our Strategic Priorities were adopted by the CCU Board of Trustees to serve as a guiding compass for the University. They direct the implementation of CCU's Mission and provide context for our first priority — an enduring commitment to Jesus Christ and His kingdom. The Strategic Priorities provide a point of convergence for every member of the CCU community and for every aspect of life at CCU, from how we teach and learn in the classroom to how we live with and serve others.*

- Honor Christ and share the love of Christ on campus and around the world

- Teach students to trust the Bible, live holy lives, and be evangelists

- Be a magnet for outstanding students and prepare them for positions of signifcant leadership in the church, business, government, and professions by offering an excellent education in strategic disciplines

- Teach students how to learn

- Teach students how to think for themselves

- Teach students how to speak and write clearly and effectively

- Give students signifcant opportunities to serve our Lord while they are at CCU and to help them develop a lifetime habit of such service

- Impact our culture in support of traditional family values, sanctity of life, compassion for the poor, Biblical view of human nature, limited government, personal freedom, free markets, natural law, original intent of the Constitution, and Western civilization

- Be seekers of truth

- Debunk "spent ideas" and those who traffc in them

- Ask God to multiply our time and ability to the glory of His great name

- Be a servant of the Church

- Become a great university

**EXHIBIT G - 0001**

EXHIBIT I

| Colorado Christian University |
| Board of Trustees |
| Standing Policies Manual |

*Version Date: February 21, 2020*

**Introduction**

This Standing Policies Manual contains all of the standing policies adopted by the Board of Trustees of Colorado Christian University as of the Version Date noted above.

A.  *Purposes for this Manual.* The purposes for this manual include:

- Efficiency of having all Board policies in one place

- Ability to quickly orient  Board members to current policies

- Elimination of redundant or conflicting  policies

- Ease of review of existing policy

- Necessity of clear, pro-active policies to guide the President and Administration

B.  *Consistency.* Each policy must be consistent with the Articles of Incorporation and Board Bylaws. The President is held accountable by the Board for developing policies and procedures consistent with this manual.

C.  *Change in Policies.* Changes to this manual are permissible at every Board meeting. Except for time-limited or procedural actions (approval of minutes, election of officers, etc.), which are recorded in regular Board minutes, all "standing policies" approved by the Board will be included in this manual. Recommendations for revisions may come from any committee, trustee, or the President. In advance of each Board meeting, the President shall send a copy of the current policies to the Board, showing any changes recommended for consideration at the next meeting. Those proposed changes will show words to be deleted by ~~use of the strike-through~~ and words to be added <u>using underlines.</u> Changes are approved by the majority vote of the Board and are effective thereafter upon the review and approval of General Counsel.

**EXHIBIT H - 0001**

EXHIBIT I                                                                    19

*D.  Specificity.* Each new policy will be drafted to fit within the most logical policy section listed below. Each set of policies should be drafted from the broadest policy statement to the next broadest, etc. The policy should allow sufficient latitude to permit efficient implementation by the administration. Over time, the Board can *either* reduce *or* increase the specificity of its policies.

*E.  Oversight Responsibility.* Trustees exert the final authority of University business, but their role is to offer guidance and support, not to manage operations. Oversight is provided via committees of the Board. The following table lists the chapters in this Standing Policies Manual, the Board committee responsible for the chapter content, and the individuals given authority to implement the relevant policies:

| CHAPTER | OVERSIGHT COMMITTEE | AUTHORITY |
|---|---|---|
| 1. Board-President/Administration Relationship | Executive | Chair/President |
| 2. Executive Limitations | Executive | Board Chair |
| 3. Academic Affairs | Academic Affairs | President |
| 4. Business Affairs | Business Affairs | President |
| 5. Student Affairs | Student Affairs | President |
| 6. Admissions and Enrollment | Admissions and Enrollement | President |
| 7. External Affairs | External Affairs | President |
| 8. Centennial Institute | Centennial Institute | President |
| 9. Campus Development | Campus Development | President |
| 10. Trustee Affairs | Trustee Affairs | Committee Chair |
| 11. Miscellaneous | Executive | President |

*F.  Maintenance of Policies.* The Corporate Secretary will oversee the recording and publication of these standing policies. The President (or designee) will maintain the policies in electronic format and provide updated copies to the Board following each meeting. Only electronic copies will be distributed, except when a trustee specifically requests a paper copy. This Manual may refer to other policies (e.g., the CCU Faculty Manual) that are maintained by the Administration and/or kept in the Board Reference Book.

*G. Incorporated Documents.*

The Strategic Statements referred to by this document are incorporated herein by reference as the document titled "Strategic Statements," adopted by the Board of Trustees on August 25, 2000.

The operation of the Board, its committee structure and its duties and obligations, are **EXHIBIT H - 0002**

EXHIBIT I                                                                                    20

incorporated herein by reference as the document titled "Amended and Restated Bylaws of Colorado Christian University," adopted by the Board on October 13, 2006.

**EXHIBIT H - 0003**

EXHIBIT I                                                                 21

*H.  Composition of the Committees of the Board*

Per Article XII of the University's Bylaws, the Chair of the Board of Trustees shall appoint committee chairs, vice chairs, and committee members, and determine the composition of all Board committees with the exception of the Executive Committee.

Although non-Trustees may serve on a committee, the majority of committee members shall be members of the Board of Trustees, and the committee Chair and Vice-Chair must be a member of the University's Board of Trustees. As with Trustees, non-Trustees participating on a committee must also sign a Statement of Faith and be in full support of the Strategic Priorities of the University.

The Chair and Vice-Chair of the Board of Trustees shall serve as ex-officio members of each standing committee.

The Chair of each standing committee will also serve as a member of the Executive Committee.

Committees should not exceed ten (10) persons.

Trustees may participate in any standing committee meeting, but unless they are a recognized member of the committee, will not be allowed to vote.


*I.  Committee Meeting Frequency and Requirements*

Committees will meet at least three times each year.

Although committees are not required to keep minutes, they will provide an update to the full Board of Trustees at each of the three regular annual meetings of the board.


*J.  Responsibilities of the Committee Chair*

The Committee Chair shall:

- Organize the agenda of the Committee meetings;

- Provide a summarized report to the Board of Trustees;

- Forward any motions to be voted upon by the Board of Trustees.


**EXHIBIT H - 0003**

EXHIBIT I                                                                                    22

# Chapter 3.  Academic Affairs

**3.1    Purpose**

3.1.1    The Academic Affairs Committee shall provide oversight, perspective, and support in all matters pertaining to the University's educational offerings by monitoring general and specialized accreditation for the University and its programs, and the quality and effectiveness of teaching, learning, and academic standards and requirements.

3.1.2    Primary University leadership reporting to the Committee will be the Vice-Presidents of Academic Affairs for CUS and for CAGS.

**3.2    Principles**

3.2.1    The Board delegates the responsibility to the administration to establish, in cooperation with the faculty, policies related to faculty appointments as well as all matters related to teaching and scholarship.

3.2.2    The Board of Trustees retains final approval authority for the initiation of new major academic programs and degrees, as well as the termination of existing ones. All changes in academic programs should include meaningful faculty participation and should be reported to the Board prior to implementation, and all new appointments of full-time faculty members communicated to the Academic Affairs committee.

3.2.3    Because the quality of the faculty vitally impacts the University's ability to fulfill its academic mission, the hiring of faculty will be one of the most careful and deliberative processes undertaken by the University. CCU will hire, develop, and maintain a competent and qualified faculty who adhere wholeheartedly to CCU's Lifestyle Expectations, Statement of Faith, and support and promote the Strategic Priorities; maintain the highest spiritual, ethical, and professional standards; promote critical thinking in the classroom; and consistently strive to integrate all academic disciplines with a Christian worldview as reflected in CCU's Statement of Faith and Strategic Priorities.

3.2.4    The administration will maintain a Faculty Handbook, developed in collaboration with the faculty, which (1) implements academic policies adopted by the Board of Trustees and (2) addresses matters of faculty interest such as conditions of academic appointment, committees, contracts, evaluation, and promotion.

3.2.5    Notification to full-time faculty members of the University's intention NOT to renew a faculty member's contract for the next academic year should occur not later than March 15th of the year of the current contract, except in the circumstance of financial exigency.

3.2.6    CCU will follow defined and stated criteria to evaluate faculty members' academic performance at regular intervals, and to promote faculty in academic rank in a just and equitable manner in accordance with a process and procedure published in the Faculty Handbook.

3.2.7    Faculty members are responsible for maintaining and enforcing the highest standards of academic integrity, acting upon every instance of cheating or plagiarism in accordance with procedures set forth in the Faculty Handbook.

3.2.8    CCU is an "At Will" employer and does not offer faculty tenure. Rather, CCU seeks to reward successful faculty members with employment security by offering instructional agreements for multiple years of service. **EXHIBIT H - 0005**

EXHIBIT I                                                                                          23



# UNITED STATES DEPARTMENT OF EDUCATION
## OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

July 20, 2022

Donald W. Sweeting, Ph.D., President
Colorado Christian University
8787 W. Alameda Ave.
Lakewood, CO 80226

Dear President Sweeting:

I write in response to your May 3, 2022, letter to the U.S. Department of Education's Office for Civil Rights (OCR), in which you requested assurance of a religious exemption from Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, for Colorado Christian University ("CCU") in Lakewood, Colorado.

Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance. Title IX and its implementing regulations at 34 C.F.R. § 106.12 provide that Title IX does not apply to an educational institution controlled by a religious organization to the extent that the application of Title IX would be inconsistent with the controlling organization's religious tenets. Section 106.12(b) of the Department's Title IX regulations describe the process by which an educational institution may request assurance of a religious exemption. The request must identify the religious organization that controls the educational institution and specify the tenets of that organization and the provisions of the law or regulation that conflict with those tenets. Section 106.12(c) of the Department's Title IX regulations describes the evidence that is sufficient to establish that an educational institution is controlled by a religious organization.

Your letter accurately recognizes that OCR has previously confirmed that CCU qualifies for a religious exemption to Title IX with regard to gender identity" and requests confirmation now of that exemption "with regard to same-sex romantic relationships." In support of that request, your letter states that "CCU is a nonprofit evangelical Christian university that is controlled by a religious organization" and explains that CCU's governing organization is its Board of Trustees, which "has published a mission for CCU that openly references and relies on religious tenets." Specifically, "CCU's mission, as determined and published by its Board, is encapsulated in CCU's mission statement, Statement of Convictions, and Strategic Priorities, all of which make clear and repeated references to the Christian tenets that motivate and guide CCU's actions and policies." (Internal citations omitted.). According to your letter, "all members of CCU's Board—including

EXHIBIT I                                                                        24

any non-Trustee members of Board committees—must sign the Statement of Faith as a condition of their appointment."

Your letter explains that CCU "requires all of its faculty and employees to espouse a personal belief in the evangelical Christian faith. Further, every applicant for any employment position at CCU must sign an Application Acknowledgement agreeing to abide by CCU's Statement of Faith…and Statement of Lifestyle Expectations in addition to agreeing to adhere to traditional biblical values." The letter also states that "prospective employees must sign both of these documents before the hiring process is complete," students who enroll at CCU "must sign the Statement of Faith before the enrollment process is complete," and that "traditional undergraduate students must go one step further by signing CCU's Lifestyle Covenant."

Your letter states that "the religious tenets of CCU explicitly and unequivocally bar any form of same-sex romantic relationship" and that, as noted in CCU's College of Undergraduate Studies Student Handbook, "CCU believes 'the unambiguous rejection in scripture of same-sex sexual activity remains in force for believers today…[because] God created human beings to show forth God's image as male and female in relationship (Gen 1:26-28), and the biblical ideal is the expression of sexuality within a heterosexual, lifelong, monogamous union (Mk 10:4-12).'" The letter further explains that "CCU sincerely believes that it is directed by the Bible to prohibit the practice of same-sex romantic relationships among its students and employees" and that "CCU sincerely believes that prohibiting the practice of same-sex romantic relationships among its students and employees is crucial for CCU to achieve its core objectives to 'honor Christ and share the love of Christ on campus and around the world…[and to] teach students to trust the Bible [and] live holy lives…'" According to your letter, to "permit same-sex romantic relationships among its students and employees" would "not be consistent with the religious tenets of [CCU]."

For the above reasons, CCU requests assurance of its exemption from the following regulatory provisions "insofar as they are interpreted to reach discrimination on the basis of same-sex romantic relationships":
- 34 C.F.R. § 106.21 (governing admission);
- 34 C.F.R. § 106.22 (governing preference in admission);
- 34 C.F.R. § 106.23 (governing recruitment of students);
- 34 C.F.R. § 106.31 (governing education programs or activities);
- 34 C.F.R. § 106.32 (governing housing);
- 34 C.F.R. § 106.33 (governing comparable facilities such as restrooms and locker rooms);
- 34 C.F.R. § 106.34 (governing access to classes and schools);
- 34 C.F.R. § 106.36 (governing counseling);
- 34 C.F.R. § 106.37 (governing financial assistance);
- 34 C.F.R. § 106.38 (governing employment assistance to students);
- 34 C.F.R. § 106.39 (governing health and insurance benefits and services);
- 34 C.F.R. § 106.40 (governing different rules based on marital or parental status of students);
- 34 C.F.R. § 106.41 (governing athletics);

EXHIBIT I                                                                                                          25

- 34 C.F.R. § 106.43 (governing standards for measuring skill or progress in physical education classes); and
- 34 C.F.R. §§ 106.51-61 (governing employment).

CCU is exempt from these provisions to the extent that application of these provisions would conflict with the religious tenets of its controlling religious organization "insofar as they are interpreted to reach discrimination on the basis of same-sex romantic relationships."

Please note that this letter should not be construed to grant exemption from the requirements of Title IX and the regulations other than as stated above. In the event that OCR receives a complaint against your institution, we are obligated to determine initially whether the allegations fall within the exemption here recognized.

I hope this letter fully responds to your request. If you have any further questions, please do not hesitate to contact me.

Sincerely,

Catherine E. Lhamon
Assistant Secretary for Civil Rights

EXHIBIT I                                                                                                    26