Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

* Admitted *pro hac vice*

Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., | No. 6:21-CV-00474-AA |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF EDUCATION, et al., | DEFENDANTS-INTERVENOR COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF OF NEW FACTS |
| Defendants, | |
| v. | |
| COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, WESTERN BAPTIST COLLEGE d/b/a CORBAN UNIVERSITY, WILLIAM JESSUP UNIVERSITY AND PHOENIX SEMINARY, | |
| Defendants-Intervenors. | |

The record already before the Court contains enough information to deny Plaintiffs' motion for a preliminary injunction and dismiss the First Amended Complaint. Because the Court has not yet rejected Plaintiffs' latest attempt to supplement the record further, however, intervenor Council for Christian Colleges and Universities (CCCU) responds here to some of the substantive claims made in Plaintiffs' latest brief—the filing of which CCCU has contested (ECF No. 182)—about the alleged treatment and experience of LGBTQ+ students at Christian schools. If this Court allows Plaintiffs to supplement the record, it should also accept the following additional evidence supplementing CCCU's showing that, for a substantial number of LGBTQ+ students, there is value in "attend[ing] a school where they can integrate their personal religious beliefs and identities into the larger Christian learning community, and benefit[ing] from the comfort and support [those students] receive there." Defs.-Intervenors' Joint Post-Hearing Br. 16–17, ECF No. 152. Indeed, in the year since the hearing, new research has further confirmed CCCU's showing about the benefits of religious education for some LGBTQ+ students.

1.  Recent studies conducted by consulting and testifying experts retained by CCCU speak to the very questions of counseling services for LGBTQ+ students on Christian college and university campuses.  But, unlike the studies cited by Plaintiffs, these new studies are actually based on data regarding religious schools. In her attached declaration, psychologist and counselor Dr. Janet Dean uses this data to refute the invalid assumptions underlying Plaintiffs' supplemental brief.  Dean Decl. ¶¶ 3-5.

2 - DEFENDANTS-INTERVENOR CCCU'S RESPONSE TO PLAINTIFFS'
    SUPPLEMENTAL BRIEF OF NEW FACTS

2.   One such assumption is the idea that the Trevor Project, a report that does not actually break out or report statistics specifically from religious schools, has anything relevant to say about the effects of what Plaintiffs call "non-affirming" counseling at religious schools.  As Dr. Dean explains, the Trevor Project instead "appears to have drawn mostly from public/state universities." Dean Decl. ¶ 4. Thus, Plaintiffs' attempt to draw negative conclusions about the experience of LGBTQ+ students in relation to counseling services at Christian schools lacks factual support from the Trevor Project or from anywhere else in the record.

3.   Moreover, despite purporting to rely on the Trevor Project, Plaintiffs ignore its key findings. ECF No. 178 at 3–4. For example, the Trevor Project shows that, for LGBTQ+ students, the most helpful service a school can offer is counseling, not LGBTQ+-specific student services. The Project found that, if LGBTQ+ students had access to counseling, then they "had 84% lower odds of attempting suicide in the past year." Trevor Study 4, ECF No. 179–1. By contrast, if an LGBTQ+ youth had access only to LGBTQ+ student services, their likelihood of attempting suicide in the past year was only 44% lower than the baseline—a far lower reduction than the reduction associated with counseling. *Id.*at 5 Thus, while specific LGBTQ+ Student Services appeared to be of some value to the students who were surveyed, it was nowhere near as important as counseling services generally.

4.   And, as Dr. Dean notes, depending on what LGBTQ+ student services are actually offered, they could be value discordant for the conventionally religious LGBTQ+ students that are more likely to be found at Christian schools. Dean Rep. ¶

8. Plaintiffs wholly ignore—as they have throughout this case—the importance of value alignment for some LGBTQ+ youth at religious colleges.

5. Yet another assumption in Plaintiffs' supplemental brief is that religious schools that are not "affirming" cannot provide adequate mental-health options for LGBTQ+ students. Plaintiffs suggest, for example, that Christian colleges fail to provide equal access to mental-health care for LGBTQ+ students.

But Dr. Dean has conducted a study on Christian campuses that directly refutes that baseless suggestion.  In her study, she determined that more than 90% of LGBTQ+ students surveyed on these campuses are aware of counseling services available to them.  Further, more than 90% of the counselors at those centers report that, although the counselors obviously approach their counseling in a way that is consistent with the religious views of their institution, they also provide counseling "that is reflective of the concerns, values, and goals *of the student*." Dean Decl. ¶ 6 (emphasis added). Plaintiffs' supplemental brief ignores this kind of data, opting instead to provide evidence grounded not in data, but on the anecdotes of a carefully selected handful of news articles. ECF No. 178 at 5–6.[1]

---

[1] One of those articles addresses Brigham Young University's religious decision to remove information about off-campus LGBTQ+ resources from new student bags. This is the only included article that even arguably bears on the question of the availability of counseling services for LGBTQ+ students. Yet Plaintiffs fail to explain (or even to suggest) that the failure to include a pamphlet about off-campus resources means that there are no on-campus resources for LGBTQ+ youth at BYU. Nor does that article suggest that BYU is preventing students from accessing those off-campus resources. At worst, Plaintiffs' complaint is that BYU is not itself providing LGBTQ+ students certain information that they would have BYU provide, a not-too-subtle suggestion that the government should be in the business of compelling speech.

In short, considering the actual findings of the Trevor Project together with Dr. Dean's finding that 90% of LGBTQ+ students at religious colleges had access to counseling, it is not surprising that suicidality is likely to be lower for the overwhelming majority of LGBTQ+ students at religious colleges than at other institutions.

6. Finally, Dr. Dean discusses a 2021 study that directly compared the mental-health issues of LGBTQ+ students at Christian colleges with a "nationally normed sample by the Center for Collegiate Mental Health." Dean Rep. ¶ 9. In that study, on Christian college campuses, LGBTQ+ students had "lower rates of distress compared with the national sample." *Id.* Indeed, in her study, she found that only 9% of LGBTQ+ students at religious colleges reported "marked" distress, compared with 25% in the national study—more than 2.5 times as high as those attending religious colleges. This data too refutes the claims in Plaintiffs' supplemental brief (and the testimony Plaintiffs presented in the preliminary-injunction hearing) about the impact of attending religious colleges. And though the data was available for Plaintiffs to review, they ignored it like they have ignored other research that does not advance their litigating position.

For all these reasons, the Court should discount and disregard the purported factual claims and conclusions made by the Plaintiffs regarding the experience of LGBTQ+ students at Christian schools, especially those that have a strong religious commitment themselves.

Respectfully submitted,

/s/ Gene C. Schaerr
Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

* Admitted *pro hac vice*

/s/ Herbert G. Grey
Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

*Counsel for Defendant-Intervenor
Council for Christian Colleges &
Universities*

December 9, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022, I served this document on all counsel of record by ECF and by email.

/s/ Gene C. Schaerr
Gene C. Schaerr
*Counsel for Defendant-Intervenor*
*Council for Christian Colleges &*
*Universities*

7 - DEFENDANTS-INTERVENOR CCCU'S RESPONSE TO PLAINTIFFS'
    SUPPLEMENTAL BRIEF OF NEW FACTS