Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

\* Admitted *pro hac vice*

Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

*Counsel for Defendant-Intervenor Council for Christian Colleges & Universities*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
Eugene Division

| | |
|---|---|
| ELIZABETH HUNTER, et al., | No. 6:21-CV-00474-AA |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF EDUCATION, et al., | DEFENDANT-INTERVENOR COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES'S NOTICE OF SUPPLEMENTAL AUTHORITY |
| Defendants, | |
| v. | |
| COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, WESTERN BAPTIST COLLEGE d/b/a CORBAN UNIVERSITY, WILLIAM JESSUP UNIVERSITY AND PHOENIX SEMINARY, | |
| Defendants-Intervenors. | |

Defendant-Intervenor the Council for Christian Colleges & Universities ("CCCU") respectfully informs the Court of an important and relevant legal development, namely, the recent enactment of the "Respect for Marriage Act" (the "Act"), included as Exhibit A, which both protects the status of same-sex marriage in the United States *and* protects religious individuals and institutions who hold traditional Biblical beliefs about marriage. Although the Act does not directly control this litigation, it is highly relevant to the pending motions: *First*, in the Act, Congress—supported by all of its Democratic members—has now joined the Supreme Court in specifically acknowledging that traditional Biblical views of marriage and sexuality are "decent and honorable," and not, as Plaintiffs here contend, the moral equivalent of racism. *Second*, the Act reaffirms the validity of existing religious freedom protections under both the Constitution and the Religious Freedom Restoration Act vis-à-vis same-sex marriage, protections on which CCCU has repeatedly relied in its briefing here. And *third*, the Act specifically provides that the beliefs and practices of religious institutions regarding marriage and sexuality cannot be used to deny federal benefits, including tax-exempt status, student loans, grants, and scholarships. For all these reasons, Plaintiffs' attempt to deny federal education benefits to schools protected by the Title IX exemption based on their beliefs on marriage and sexuality is flatly contrary to the Act.

**A. The Act reiterates that Biblical and traditional views of sexuality and marriage are "decent and honorable" and worthy of respect and protection.**

As to the first point: The Act reaffirms and underscores CCCU's prior showing that Plaintiffs are wrong to characterize religious schools' Biblical beliefs and practices on sexuality and gender as equivalent to invidious discrimination based on race.[1] Plaintiffs have made this claim repeatedly, and it serves as a foundational theory and theme of their entire case. *See, e.g.,* Day 1 Tr. 16:16–17:5 (Plaintiffs' opening statement); Pls.' Reply to Mot. for TRO at 7, ECF No. 64; Pls.' Opp'n to Dep't's Mot. to Dismiss at 8, ECF No. 86.

But the Act makes clear that Plaintiffs' view on this point is not only offensive and wrong, but it would itself violate the First Amendment as understood by the Supreme Court and both political branches. In the Act, Congress expressly found that "[d]iverse beliefs about the role of gender in marriage are held by reasonable and sincere people based on decent and honorable religious or philosophical premises. Therefore, Congress affirms that such people and their diverse beliefs are due proper respect." The Act § 2(2) (emphasis added.) Congress and, through his signature, the President, thus echoed the Supreme Court's view that "[m]any who deem same-sex marriage to be wrong reach that conclusion based on decent and honorable religious

---

[1] The Court should consider the Act in deciding the pending motions because, contrary to Plaintiffs' earlier efforts to supplement the factual record, the Act's passage has led to relevant changes in controlling *legal* authority directly relevant to the issues those motions present. *See* Defs.-Intervenors' Obj. to Pls.' Suppl. Br. at 2 n.2, ECF No. 182 (explaining the distinction between supplementing facts and law).

3 - DEFENDANT-INTERVENOR CCCU'S NOTICE OF SUPPLEMENTAL
    AUTHORITY

or philosophical premises." *Obergefell v. Hodges,* 576 U.S. 644, 672 (2015). And, with this finding, the Act garnered widespread bipartisan support—including the support of every voting Democrat in both the House and the Senate.

The inescapable conclusion from the Supreme Court's observation and the parallel finding in the Act is that the First Amendment should be understood, as the Court put it, to "ensure[] that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered." *Id.* at 679–80. That admonition is fundamentally at odds with the narrative of the Plaintiffs here that religious colleges and universities that adhere to the traditional Biblical understanding of marriage and sexuality can and should be treated like racists.

### B. Through the Act, Congress and the President have recognized and reaffirmed federal laws protecting traditional beliefs and practices on marriage and sexuality.

The Act also implicitly rejects Plaintiffs' position that the Title IX exemption is unconstitutional to the extent it protects traditional beliefs and practices related to marriage and sexuality. That exemption had previously been widely criticized on that ground in the press, in the courts, and before governmental agencies—by (among others) Plaintiffs and their allied advocacy organizations. And the Act gave Congress an ideal opportunity to agree with those criticisms.

But Congress did not. Instead, it not only reaffirmed the applicability of constitutional religious-freedom rights to disagreements about marriage and

sexuality, but it also reaffirmed the importance and continued vitality of the Religious Freedom Restoration Act as applied to religious schools: Section 6 of the Act expressly mentions the rights of "religious educational institutions" and explains that "[n]othing in this Act, . . . shall be construed to diminish or abrogate a religious liberty or conscience protection otherwise available to an individual or organization under the Constitution of the United States or Federal law." The Act § 6(a), (b).

Congress used this language with full knowledge of the way both the Constitution and RFRA have been understood to protect the religious beliefs and practices of religious institutions, even when they conflict with prevailing views on marriage and sexuality. *See, e.g., Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1874, 1882 (2021) (Free Exercise Clause protects Catholic foster institution from having to certify same-sex couples for foster care); *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) (Religion Clauses protect religious schools from employment discrimination suits by teachers and others who play a significant role in advancing the schools' missions); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 181 (2012) (same); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 735–36 (2014) (RFRA protects against application of the Affordable Care Act's contraceptive mandate to institutions objecting on religious grounds). It is also clear that this provision of the Act envisions express religious exemptions like the Title IX religious exemption at issue here, as the Act's very next section explicitly speaks of just these types of federal benefits. The Act § 7.

5 - DEFENDANT-INTERVENOR CCCU'S NOTICE OF SUPPLEMENTAL
   AUTHORITY

Plaintiffs' plea for this Court to abrogate the Title IX religious exemption for colleges and universities that adhere to the traditional Biblical understanding of marriage and sexuality is flatly inconsistent with Congress' decision in Section 6 of the Act to *preserve* all existing federal protections for those very institutions.

### C. The Act honors and protects the benefits that federal law has long afforded to religious institutions.

Finally, the Act leaves no doubt about the continued vitality of federal constitutional and statutory protections for religious institutions seeking direct or indirect government benefits. Along with protecting those in same-sex marriages from discrimination by state actors (which religious schools are not), the Act guarantees that principles of non-discrimination protecting same-sex marriage rights cannot deprive any entity or person, including religious ones, from any benefit, status, or right for which they are otherwise eligible. Section 7 of the Act provides:

> Nothing in this Act, or any amendment made by this Act, shall be construed to deny or alter any benefit, status, or right of an otherwise eligible entity or person which does not arise from a marriage, including *tax-exempt status, tax treatment, educational funding, or a grant*, contract, agreement, guarantee, *loan, scholarship*, license, certification, accreditation, claim, or defense.

The Act § 7 (emphasis added). This section thus rejects Plaintiffs' core contention that any entity receiving federal funding must abandon its religious convictions regarding gender, sexuality, and marriage if those convictions run counter to the prevailing culture.

* * * * *

In short, all three branches of the federal government have now recognized

that, while governments must respect same-sex marriage, private individuals and institutions must be allowed to believe, express, and live according to their own convictions regarding marriage and sexuality without losing government benefits or being subjected to official discrimination or any other governmental disability.

For these reasons, and those articulated in prior briefing, the Court should deny Plaintiffs' motion for a preliminary injunction and grant the pending motions to dismiss.

Respectfully submitted,

/s/ Gene C. Schaerr
Gene C. Schaerr, DC Bar # 416368*
Email: gschaerr@schaerr-jaffe.com
Nicholas Miller, MI Bar# P70694*
Email: nmiller@schaerr-jaffe.com
Joshua J. Prince, DC Bar # 1685532*
Email: jprince@schaerr-jaffe.com
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060

* Admitted *pro hac vice*

/s/ Herbert G. Grey
Herbert G. Grey, OSB # 810250
4800 SW Griffith Drive, Suite 320
Beaverton, Oregon 97005-8716
Telephone: (503) 641-4908
Email: herb@greylaw.org

*Counsel for Defendant-Intervenor Council for Christian Colleges & Universities*

December 23, 2022

7 - DEFENDANT-INTERVENOR CCCU'S NOTICE OF SUPPLEMENTAL AUTHORITY

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, I served this document on all counsel of record by ECF and by email.

/s/ Gene C. Schaerr
Gene C. Schaerr
*Counsel for Defendant-Intervenor*
*Council for Christian Colleges &*
*Universities*
