**Paul Carlos Southwick (OSB 095141)**
**TRIAL ATTORNEY**
**Joseph Baxter (OSB 215137)**
**Paul Southwick Law, LLC**
8532 N. Ivanhoe St. #208
Portland, OR 97203
Email: paul@paulsouthwick.com
Email: joe@paulsouthwick.com
Phone: 503-806-9517

**Timothy R. Volpert (OSB 814074)**
**Tim Volpert PC**
2111 NE Hancock St. Ste. 2B
Portland, OR 97212
Email: tim@timvolpertlaw.com
Phone: 503-703-9054

**Misha Isaak (OSB 086430)**
**Alletta S. Brenner (OSB 142844)**
**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Email: ABrenner@perkinscoie.com
Email: misaak@perkinscoie.com
Phone: 503-727-2000

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# EUGENE DIVISION

| | |
|---|---|
| Elizabeth HUNTER; et al.,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>DEPARTMENT OF EDUCATION; and Catherine LHAMON, in her official capacity as Assistant Secretary for the Office of Civil Rights, U.S. Department of Education,<br><br>　　　　　Defendants,<br><br>COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, WESTERN BAPTIST COLLEGE d/b/a CORBAN UNIVERSITY, WILLIAM JESSUP UNIVERSITY AND PHOENIX SEMINARY,<br><br>　　　　　Intervenor-Defendants. | Case No. 6:21-cv-00474-AA<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT-INTERVENOR CCCU'S NOTICE OF SUPPLEMENTAL AUTHORITY** |

On December 23, 2022, Intervenor-Defendant Council for Christian Colleges & Universities ("CCCU") filed a Notice of Supplemental Authority ("Notice") regarding the passage of the Respect for Marriage Act ("RFMA"). Dkt. 186. CCCU's Notice is inaccurate and misleading. For example, Defendant-Intervenors' statement that the RFMA "specifically provides that the beliefs and practices of religious institutions regarding marriage and sexuality cannot be used to deny federal benefits, including tax-exempt status, student loans, grants, and scholarships" is simply false, as such language was included in a proposed *amendment* to RFMA that was *rejected* by a vote of 48 (in favor) to 49 (against), and cannot be found anywhere in the RFMA that was actually passed by Congress.[1] *See* Declaration of Paul Southwick, **Exhibit A** (Amendment No. 6482 to H.R. 8404 (Respect for Marriage Act), Title II—Religious Beliefs and Moral Convictions (proposed by Senator Mike Lee)).

As even Defendant-Intervenors acknowledge, the RFMA "does not directly control this litigation." Notice at 3. Indeed, rather than controlling this litigation or aiding Intervenor-Defendants in their arguments, the RFMA simply has no bearing on the Constitutional and Administrative Procedure Act questions before this Court.

***First***, this case is not about the religious beliefs of CCCU or its member institutions. Plaintiffs do not ask the Court to make any finding regarding either the sincerity or the morality of religious beliefs regarding marriage, or to require religious educational institutions to change their religious beliefs. *See e.g.* FAC, ¶ 607 ("Educational institutions will not need to change their religious beliefs to comply with Title IX, they will need to change their policies and practices that conflict with Title IX's requirements."). Indeed, because religious beliefs are so

---

[1] https://www.congress.gov/amendment/117th-congress/senate-amendment/6482

deeply personal and meaningful, the law considers them sacrosanct. Consequently, this Court should treat Intervenor-Defendants and their religious beliefs with due respect.

***Second***, this case is about discriminatory practices. While the RFMA addresses religious *beliefs* about marriage, it does not address *practices*, discriminatory or otherwise, that are based on religious beliefs. The RFMA is simply silent on the reasonableness or decency of discriminatory religious practices. Rather, the RFMA states that "Diverse *beliefs* about the role of gender in marriage are held by reasonable and sincere people based on decent and honorable religious or philosophical premises. Therefore, Congress affirms that such people and their diverse *beliefs* are due proper respect." Dkt. 186-1, p. 2 (emphasis added). The RFMA does not state that "Discriminatory practices that harm LGBTQ+ youth are decent and honorable, so long as based on reasonable and sincere religious beliefs." Indeed, discriminatory conduct towards a same-sex couple remains discrimination and the RFMA does not change whether such conduct is legally permissible.[2] Moreover, the RFMA does not address practices, or even beliefs, outside of the same-sex marriage context, saying nothing about LGBTQ+ identities (which entail far more than marriage), the rights of transgender and non-binary people (other than marriage), or the right to be free from conversion therapy or other practices that severely damage mental health.

---

[2] The sole exception to this is that the RFMA affirmatively provides that certain religious organizations are not required to participate in "the solemnization or celebration" of a marriage. *See* Section 6(a) (*e.g.* by providing facilities for wedding ceremonies). Consequently, Intervenor-Defendants could argue, in the proper case, that they qualify for this affirmative protection but that is the limit of the RFMA's affirmative protections. Moreover, the issue of whether taxpayer-funded religious educational institutions should be required to participate in the solemnization or celebration of marriage ceremonies is not at issue in this case.

3   PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT CCCU'S NOTICE OF SUPPLEMENTAL AUTHORITY

The distinction between religious beliefs and practices is important because beliefs, in and of themselves, do not harm other people, while practices based on religious beliefs can cause harm or even kill. Only last month, on November 23, 2022, a queer, non-binary student committed suicide in the counselling office of one of Intervenor-Defendant CCCU's own member institutions.[3] The student sent an email at the time of their suicide that called out religious colleges with anti-LGBTQ+ policies and practices for failing to protect their students and for depriving LGBTQ+ students of proper counselling services. The student asked religious colleges to support their LGBTQ+ students by, among other things, allowing them to have safe spaces on campus and proper mental health services and counselling. *See* **Exhibit B** to the Southwick Declaration. The student's note said that "It didn't have to come to suicide to lose a student, but it did. Don't let it happen again."

The RFMA says nothing about discriminatory practices that are based on religious beliefs. It cannot be used by Government-Defendants or Defendant-Intervenors as a shield to protect them from scrutiny of Title IX's religious exemption.

***Third***, the U.S. Supreme Court has already heard and rejected Intervenor-Defendants' arguments in the context of racial discrimination. While religious beliefs against interracial marriage were not, and could not, be condemned by the Court, government support for harmful and discriminatory practices based on those religious beliefs was treated differently. In 1983, the U.S. Supreme Court decided that the IRS could rescind Bob Jones University's tax-exempt status because of the university's interracial marriage and dating ban, notwithstanding that the

---

[3] The student attended Redeemer University, a religious college in Ontario, Canada that is a member institution of Intervenor-Defendant CCCU.

university's policies were based on sincerely held religious beliefs. The National Association of Evangelicals ("NEA"), which represented, and continues to represent, thousands of religious schools, colleges, ministries and churches, submitted an *amicus* brief supporting Bob Jones University. The NEA's brief, much like Intervenor-Defendants' Notice here, argued that while Evangelicals differed about their interpretation of Scripture on the subject of interracial marriage, "the University's beliefs with respect to interracial dating and marriage are a matter of sincere religious conviction" and rescinding the university's tax-exempt status would pose an "ominous threat to religious freedom[.]" *See* Southwick Decl., **Exhibit C** (NEA Brief), p. 2, 5. The NEA argued that "The ominous threat to religious freedom posed by the decision of the court below compels us to submit this brief. No case has gone to such extremes in applying the public policy against racial discrimination. Until this case that public policy had been applied only in situations of invidious discrimination, that is, when at least some element of personal bias or prejudice was present." *Id*. p. 2.

In its attempt to prevent the Supreme Court from denying tax-exempt status to Bob Jones University because of the university's prohibition on interracial marriage and dating, the NEA focused heavily on Bob Jones University's religious beliefs. "Bob Jones University *believes* that the Bible forbids interracial marriage. In order to enforce *this religious view*, the University barred admission of black students prior to September, 1971. After that date married black students were admitted, and since May, 1975, a completely open admissions policy has been in effect. The earlier policy excluding all or most blacks was followed as the easiest and most reliable way to protect its *religious conviction* against interracial dating and marriage." *Id*. at p. 2 (emphasis added).

The NEA further argued that "The court below…erroneously applie[d] a public policy intended to rid this nation of invidious racial discrimination to a University which admits blacks, but follows a policy with respect to interracial dating and marriage based not on personal bias or prejudice, but sincere religious belief…Under that rule, it is apparently irrelevant whether racial discrimination proceeds from the worst of motives or the best of intentions; whether from rank prejudice or from a devout desire to obey the perceived will of God." *Id*. at p. 4.

Similarly, the CCCU argues here that "Plaintiffs are wrong to characterize religious schools' Biblical *beliefs* and *practices* on sexuality and gender as equivalent to invidious discrimination based on race." Notice, p. 3. However, CCCU conflates due respect for religious beliefs with the level of respect owed to practices, based on religious beliefs, that violate civil rights protections. The Court flatly rejected that conflation in *Bob Jones University* and this Court should reject it now. This Court can properly show due respect for Intervenor-Defendants and their religious beliefs (*e.g.* by allowing them to access federal funding even while maintaining a religious belief statement that marriage is between one man and one woman) while also determining that the Constitution prohibits the federal government from immunizing religious educational institutions from liability for the harm to LGBTQ+ students caused by discriminatory practices (*e.g.* expulsions, denial of housing, conversion therapy) and policies (*e.g.* prohibiting students from entering into same-sex marriages or identifying as trans) that are based on the institution's religious beliefs.

The NEA, much like the CCCU now, argued that "Surely in a free society whose basic charter nourishes religious pluralism the public policy against invidious racial discrimination leaves room for the University's exercise of a belief that interracial dating and marriage

contravenes Scripture." Southwick Decl., **Exhibit C** (NEA Brief) at p. 4. But our Supreme Court said "no," it does not. And this Court should also say "no," religious pluralism does not require the federal government to financially support and immunize religious educational institutions whose practices perpetuate invidious discrimination based on sexual orientation, gender identity or gender expression.

The NEA, much like the CCCU now, tried strenuously to convince the Court that discrimination was only invidious when it is based on bare animus, as opposed to religious belief. "The Court below has equated the University's sincere religious belief that Scripture forbids miscegenation with invidious racial discrimination. That is evident from the many cases relied upon by the court below which involve situations where blacks were excluded from admission to educational institutions or were otherwise the victims of racial prejudice. In support of its indiscriminate concept of racial discrimination, the Court of Appeals relies upon such Equal Protection cases as *Loving v. Virginia*, 388 U.S. 1 (1967) (law prohibiting interracial marriage unconstitutional) and *McLaughlin v. Florida*, 379 U.S. 184 (1964) (interracial cohabitation law invalid). Such racially motivated laws from a bygone white supremacy era were obviously prompted by blatant racial prejudice. We fail to see their relevance where a University's disciplinary rule is based upon sincerely held religious beliefs." Southwick Decl., **Exhibit C** (NEA Brief), p. 5.

However, the NEA and Bob Jones University lost their case at the Supreme Court by a vote of 8-1. The Supreme Court effectively told them that, even though their beliefs were sincere and religious,[4] their policies and practices regarding interracial dating, based on their sincere

---

[4] Indeed, Bob Jones University's policies and practices prohibiting interracial dating were not

7   PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT CCCU'S NOTICE OF SUPPLEMENTAL AUTHORITY

religious beliefs, were discriminatory and did not merit affirmative taxpayer support from a government committed to eradicating racial discrimination in education. *Bob Jones University v. U.S.*, 461 U.S. 574 (1983) (recognizing "an absolute prohibition against governmental regulation of religious beliefs" while also recognizing that conduct grounded in religious belief can be regulated in furtherance of a compelling governmental interest, such as eradicating racial discrimination in education).

*Fourth*, the RFMA has "no impact" on whether or not the religious exemption to Title IX is constitutional or whether Government Defendants complied with the Administrative Procedures Act when enacting the 2020 Final Rules challenged by Plaintiffs in this case. The text of the RFMA is clear that it has "NO IMPACT ON STATUS AND BENEFITS NOT ARISING FROM A MARRIAGE – Nothing in this Act, or any amendment made by this Act, shall be construed to deny *or alter* any benefit, status, or right of an otherwise eligible entity or person which does not arise from a marriage, including tax-exempt status…[or] educational funding[.]" Dkt. 186-1, pp. 3-4 (emphasis added). Consequently, Plaintiffs cannot rely on the RFMA to support their constitutional and procedural arguments regarding the religious exemption to Title IX but neither can the Intervenor-Defendants or Government Defendants. The RFMA simply has "no impact" on this issue. Consequently, courts, the U.S. Department of Education, and other federal agencies remain free to alter the requirements for taxpayer funding of religious educational institutions based on what the Constitution, federal statutes (other than the RFMA), or federal regulations require.

---

only sincere and religious but were widely accepted by American society at the time. In 1983, at the time of the Supreme Court ruling, only 43% of Americans thought interracial marriage was morally acceptable. *See* Southwick Decl., **Exhibit D**.

8    PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANT CCCU'S NOTICE OF SUPPLEMENTAL AUTHORITY

This "no impact" language is important, as affirmative protections for discriminatory religious educational institutions, like CCCU's member institutions, were rejected by Congress. Indeed, Senator Mike Lee (R-Utah) proposed an amendment that would have provided affirmative protections to religious educational institutions. Senator Lee wrote that the religious liberty "protections" in the RFMA "are inadequate to address many of the gravest risks posed by this bill, particularly those threatening the tax-exempt status of religious non-profits."[5] Senator Lee's amendment would have affirmatively prevented the federal government from taking action against the tax-exempt status, taxpayer funding, or accreditation of religious universities that discriminate against people in same-sex marriages.

Indeed, the Lee Amendment would have prohibited the federal government from taking action against a religious educational institution that "speaks, or acts, in accordance with a sincerely held religious belief, or moral conviction, that marriage is or should be recognized as a union of –(1) one man and one woman[.]" The Lee Amendment would have specifically prohibited the federal government from taking action which would "withhold, reduce the amount or funding for, exclude, terminate, or otherwise make unavailable or deny, any Federal grant, contract, subcontract, cooperative agreement, guarantee, loan, scholarship, license, certification, [or] accreditation[.]" Southwick Decl., **Exhibit A**.

Lee's amendment would have, as Intervenor-Defendants put it "specifically provide[d] that the beliefs and practices of religious institutions regarding marriage and sexuality cannot be used to deny federal benefits, including tax-exempt status, student loans, grants, and scholarships."

---

[5] https://www.lee.senate.gov/2022/11/respect-for-marriage-act-why-religious-liberty-deserves-protection-and-my-amendment-will-provide-it

Notice, p. 2. However, Lee's Amendment failed by a 48 (in favor) to 49 (opposed) vote.[6] Consequently, this Court should reject Intervenor-Defendants attempt to make the RFMA stand for something it certainly does not.

For the foregoing reasons, Plaintiffs respectfully request that the Court reject the arguments advanced by Intervenor-Defendants in their Notice and grant Plaintiffs' Motion for Preliminary Injunction.

Dated: December 30, 2022

s/ Paul Carlos Southwick

**Paul Carlos Southwick**
**(OSB 095141)**
**TRIAL ATTORNEY**
**Religious Exemption**
**Accountability Project**
**Paul Southwick Law, LLC**
8532 N. Ivanhoe St. #208,
Portland, OR 97203
Email: paul@paulsouthwick.com
Phone: 503-806-9517

---

[6] https://www.congress.gov/amendment/117th-congress/senate-amendment/6482