IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**ELIZABETH HUNTER, et al,**

        Plaintiffs,

    v.

**UNITED STATES DEPARTMENT OF EDUCATION, et al,**

        Defendants,

    and

**COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES, et al,**

        Defendant-Intervenors

Case No. 6:21-cv-00474-AA

**OPINION AND ORDER**

_____

AIKEN, District Judge:

        Plaintiffs are students who have attended religious colleges and universities nationwide. Plaintiffs bring this putative class action against the United States Department of Education ("the Department") and Suzanne Goldberg[1] in her official

---

[1]     Catherine Lhamon, in her official capacity as Assistant Secretary for the Office for Civil Rights, is substituted automatically for Suzanne Goldberg pursuant to Federal Rule of Civil Procedure 25(d).

capacity as Acting Assistant Secretary for the Office of Civil Rights ("OCR") for the Department (collectively "Defendants"). Plaintiffs challenge Defendants' application of the religious exemption included in Title IX of the Education Amendments of 1972 ("Title IX") to sexual and gender minority students who attend private religious colleges and universities that receive federal funding. Before the Court is Defendants' Motion to Dismiss ("MTD"); Plaintiffs' Motion to Amend its First Amended Class Action Complaint ("Mot. to Amend"); and Plaintiffs' Motion for Preliminary Injunction ("MPI"). For the reasons explained, Defendant's MTD, ECF No. 56, is GRANTED. Plaintiffs' Mot. to Amend, ECF No. 148, is DENIED. Plaintiffs' MPI, ECF No. 44, is DENIED. William Jessup University, Phoenix Seminary, Western Baptist College/Corbin University, and the Council for Christian Colleges & Universities ("Defendant-Intervenors") also filed a Joint Motion to Dismiss, ECF No. 137, which is GRANTED in part and otherwise MOOT.

## BACKGROUND

### I.    Statutory Background

Title IX prohibits educational programs or activities receiving federal funds from excluding, denying benefits to, or subjecting to discrimination any person on the basis of sex. 20 U.S.C. § 1681(a). The purpose of Title IX was to "end[] federal subsidies of such discrimination . . . [and] to make certain, in the areas of Federal funding, that taxpayer's dollars were not used to initiate or perpetuate . . . bias and prejudice . . . ." S. Rep. No. 100-64, at 7, 9 (internal citation and quotation marks omitted). It was likewise intended to protect against sex discrimination. *See Cannon*

*v. Univ. of Chi.*, 441 U.S. 677, 704 (1979) (observing that Congress "wanted to provide individual citizens effective protection" against discriminatory practices). One narrow exception to Title IX is when an educational institution "is controlled by a religious organization" with "religious tenets" inconsistent with the application of Title IX. 20 U.S.C. § 1681(a)(3). Congress intended the religious exemption to be narrow lest it "open a giant loophole and lead to widespread sex discrimination in education." *See* S. Rep. No. 100-64, at 23.

Regulations implementing Title IX contain a provision setting forth the procedures for an institution wishing to invoke the religious exemption. *See* 34 C.F.R. § 106.12. In 2020, Defendants amended this regulation in two ways. First, Defendant Department of Education clarified that institutions are no longer required to submit a written statement to the Assistant Secretary for Civil Rights prior to invoking the religious exemption. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026, 30,031, 30,475–82 (May 19, 2020). The revised regulation now provides that "[a]n educational institution that seeks assurance of the exemption set forth in paragraph (a) of this section *may* do so" by submitting a written request to the Assistant Secretary. 34 C.F.R. § 106.12(b) (emphasis added). And, the regulation specifies, "the institution may . . . raise its exemption by submitting in writing to the Assistant Secretary a statement" after the Department of Education "notifies [the] institution that it is under investigation for noncompliance." *Id*.

Second, the Department of Education added a subsection addressing how educational institutions may demonstrate that they are "controlled by a religious organization" within the meaning of the religious exemption. *See* Direct Grant Programs, 85 Fed. Reg. 59,916, 59,918 (Sept. 23, 2020). The revised regulation now sets forth a list of six criteria, any one of which "shall be sufficient to establish that an educational institution is controlled by a religious organization." 34 C.F.R. § 106.12(c).

Individuals who allege injuries from discriminatory practices at an educational institution receiving federal funds may proceed via two routes to obtain relief. They can sue the educational institution directly in court. *See Cannon v. Univ. of Chic.*, 441 U.S. 677, 717 (1979). Or they can file an administrative complaint with the Office of Civil Rights. *See* 34 C.F.R. § 106.81 (incorporating the procedures applicable to Title VI of the Civil Rights Act of 1964, 34 C.F.R. §§ 100.6–100.11); *id.* § 100.7(b).

Upon receiving a complaint, OCR evaluates it to determine whether the information provided is subject to further processing pursuant to the applicable statutes and regulations and OCR's Case Processing Manual ("CPM"); *see* ECF 50-23, including but not limited to an assessment of the timeliness of the complaint and subject matter jurisdiction over the allegations in the complaint. *See* CPM Article I. If OCR determines that the complaint does not meet these initial considerations, OCR will dismiss the complaint. *Id.* § 108. If not dismissed, the complaint is opened for investigation. *Id.* § 111. If sufficient evidence of discrimination is found, and the institution and the complainant are not able to reach resolution, OCR will either: (1)

initiate administrative proceedings to suspend, terminate, or refuse to grant or continue financial assistance from the Department to the recipient; or (2) refer the case to the United States Department of Justice for judicial proceedings to enforce any rights of the United States under any law of the United States. See 20 U.S.C. § 1682; 34 C.F.R. § 100.8(a); CPM §§ 601-602. Complainants may at any point in this process bring suit in federal court against the institution, CPM § 111, and have administrative appeal rights in some situations, *id.* § 307.

## II.    Lawsuit

### A.    *Parties*

Plaintiffs are forty LGBTQ+ people who applied to, attended, or currently attend religious colleges and universities ("religious schools") that receive federal funding. They allege that their schools have discriminated against them by, among other things, subjecting them to discipline (including expulsion), rejecting their applications for admission, and rescinding their admissions because of their sexual orientation or gender identity. Plaintiffs seek to represent a class of "LGBTQ+ students who attend taxpayer-funded religious colleges and universities that openly discriminate against them in both policy and practice." First Amended Complaint ("FAC") ¶ 574.

The Department is the federal agency primarily responsible for providing Federal financial assistance to States, local educational agencies, public and private postsecondary institutions, and other educational entities, and, as such, has primary

responsibility for administrative enforcement of Title IX.  OCR enforces Title IX against recipients of Department funding.

Defendant-Intervenors are three Christian universities and an association of Protestant Christian institutions of higher learning.

**B.    *Procedural History***

In March 2021, 33 Plaintiffs filed this action.  ECF No. 1.  On June 7, 2021, seven new Plaintiffs joined the original 33 in filing their FAC.  ECF No. 35.  Plaintiffs allege that Defendants facilitate and encourage the religious schools' discrimination by failing to enforce Title IX against the schools based on Defendants' application of the religious exemption.  The FAC contains five causes of action—a Fifth Amendment claim alleging violations of substantive due process and equal protection; two claims under the First Amendment alleging violations of the Establishment Clause and deprivations of freedom of religion, speech, assembly, and association; a claim under the Administrative Procedure Act ("APA") challenging 2020 amendments at 34 C.F.R. §§ 106.12(b) and (c); and a claim under the Religious Freedom Restoration Act.  FAC at 73-86.

Between June and August of 2021, thirty-five of the Plaintiffs filed Title IX administrative complaints with OCR.  Swain Decl. Ex. A-D, ECF No. 61.  Then, on August 5, 2021, Plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction, ECF No. 44.  Defendants moved to dismiss the FAC.  ECF No. 56.  Plaintiffs moved to amend their TRO/MPI.  ECF No. 75.

The Court issued its ruling with respect to Plaintiffs' request for a TRO only, reserving a ruling on Plaintiffs' MPI until a hearing could be held. The Court denied Plaintiff's request for a TRO, holding that it "cannot find that plaintiffs have shown a likelihood of success on the merits of their" claims. Order on TRO at 6, ECF No. 88.

On November 4, 5, and 6, the Court held an evidentiary hearing on Plaintiffs' MPI. *See* ECF Nos 140-142. The parties submitted briefing summarizing the arguments and evidence at the hearing. ECF Nos. 150-152; 159-161.

On December 2, 2021, Plaintiffs moved to amend the FAC under Federal Rule of Civil Procedure 15. Plaintiffs' proposed Second Amended Class Action Complaint ("proposed SAC") contains changes which (1) add factual allegations that Plaintiffs filed administrative complaints with the Department of Education Office of Civil Rights; (2) adjust the prayer for relief "for greater consistency with the relief requested in" the MPI; and (3) include eight new plaintiffs. Mot. to Amend at 3-4.

Plaintiffs' FAC does not add new causes of action and the proposed factual allegations describing the filing of Plaintiffs' administrative claims with the Office for Civil Rights are matters fully considered by the parties in the motions to dismiss and in evidence heard at and briefing related to the hearing on Plaintiff's MPI. On July 20, 2022, Plaintiffs filed supplemental briefing of newly discovered facts, including that Defendants are investigating seven of the Plaintiffs' Title IX complaints and have dismissed four other Plaintiffs' Title IX complaints on the basis of the religious exemption challenged here.

## LEGAL STANDARDS

### I.    Motion to Amend Standard

Rule 15(a)(2) instructs that "[t]he court should freely give[ ] leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit has made clear Rule 15(a) permits liberal application.  *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).  Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and (5) whether the plaintiff has previously amended his complaint.  *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014).  The factors do not weigh equally; rather, prejudice receives the greatest weight.  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) *(citing Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

Defendants bear the burden of establishing prejudice, and absent its presence or a "strong showing" under the other factors, there is a presumption in favor of permitting amendment.  *Eminence Cap., LLC*, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)).  When considering prejudice, the court may weigh against the movant the amended pleading's great alteration of the litigation's nature that requires the opposing party to defend against "different legal theories and ... different facts."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (internal quotation omitted).  Alone, such alteration is not fatal.  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

By contrast, futility "alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).  Futility arises when the amendment is legally insufficient, *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017), or where the amended complaint would be subject to dismissal, such as when it violates the statute of limitations.  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008).

## II.    Motion to Dismiss Standard

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  To withstand a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "[A] formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  A court must determine whether the facts in a complaint "plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In other words, the pleadings must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).  In ruling on a Rule 12(b)(6) motion, the court accepts factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party.  *Bohan v. Honeywell Int'l, Inc.*, 366 F.3d 606, 608 (8th Cir. 2004).  Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend.   Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v.*

*Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III.    Motion for Preliminary Injunction Standard

A plaintiff seeking preliminary injunctive relief must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.  In determining whether to award preliminary injunctive relief, a "[l]ikelihood of success on the merits is the most important factor." *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019) (citation omitted).  "[I]f a movant fails to meet this threshold inquiry, [a court] need not consider the other factors." *Id.*

Further, when a plaintiff requests a "mandatory injunction," the "already high standard" to obtaining injunctive relief is "further, heightened," and the plaintiff must "establish that the law and facts clearly favor her position, not simply that she is likely to succeed." *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156–57 (D. Or. 2018) (quoting *Garcia*, 786 F.3d at 740.)  A mandatory injunction "goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored. *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994).

(citation omitted). "At the preliminary injunction stage, a plaintiff must make a 'clear showing' of his injury in fact." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Winter*, 555 U.S. at 22). An "injury in fact" exists where there is an invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).

## DISCUSSION

### I.    Motion to Amend

Plaintiff seeks leave to amend their complaint. Defendants oppose on the bases of prejudice and futility. The proposed SAC adds allegations for nearly every Plaintiff that each "filed a Title IX complaint." In the FAC, Plaintiffs' allegations include that one Plaintiff had done so and it was dismissed based on the school's request for a religious exemption. FAC ¶¶ 404-407. The proposed SAC also amends allegations where an individual Plaintiff has graduated from or otherwise no longer attends their religious university. The additional relief Plaintiffs seek is a declaration that the 2020 rules violate the APA and RFRA, and to enjoin Defendants from "using" the 2020 rules to dismiss Plaintiffs' Title IX administrative complaints.

The Court construes Plaintiffs' Supplemental Brief[s] of Newly Discovered Facts ("supplemental briefs"), ECF Nos. 173 and 175, as motions noticing "supplemental pleadings" setting out events "that happened after the date of the pleading to be supplemented." *See* Fed. R. Civ. P. 15(d) (permitting court to do so on just terms). The Court, however, only considers the factual allegations that would be

subject to judicial notice, which, here, is Defendants' granting the schools' religious exemption requests, as that action would be public record.  S*ee* Federal Rule of Evidence 201*; Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  The Court declines to consider any facts outside that narrow scope.

Defendants ask the Court to deny Plaintiffs' Mot. to Amend, asserting that the proposed amendments are futile because they do not cure the deficiencies in the FAC, as neither the factual allegations nor claims for relief are materially different from what has been presented to the Court through the preliminary injunction hearing and prior briefing.  Defendants further contend they would be prejudiced because consideration of their motion to dismiss would be delayed.  All Defendants incorporate arguments from their motions to dismiss.  *See* ECF Nos. 158 at 6-7; 157 at 2, 7 (motions opposing amendment, incorporating motions to dismiss).

The Court notes that Plaintiffs have already amended their complaint once but concludes that Plaintiffs have not shown bad faith or undue delay in moving to amend again.  The Court further concludes that Defendants would not be prejudiced by such an amendment, even giving those circumstances the greatest weight.  Therefore, the Court will evaluate the futility of amendment with respect to each claim below in its analysis of Defendants' MTD.  *See* Rule 15(a); *Desertrain,* 754 F.3d at 1154 (setting out factors the court considers).

## II.    Motion to Dismiss

Defendants move under Rule 12(b)(6) to dismiss Plaintiffs' FAC, contending that: Plaintiffs lack constitutional standing and that Plaintiffs' first, second, third, and fifth causes of action do not state a claim for relief.

## A.    *Standing*

As a threshold matter, Defendants assert that the FAC must be dismissed, because it is insufficient on its face to establish that Plaintiffs have constitutional standing for their first and fourth causes of action alleging violation of Plaintiffs' equal protection rights and the APA, respectively, and generally because Plaintiffs' injuries are not caused by Defendants. MTD at 15-34. Defendants further contend that Plaintiffs' claims are not ripe for adjudication. MTD at 12.

Defendants contend that the proposed SAC would be subject to dismissal for lack of subject-matter jurisdiction because it does not—and cannot—cure the jurisdictional defects apparent in the FAC.

To have Article III standing to sue in federal court, a plaintiff must allege an (1) injury-in-fact; (2) fairly traceable to the challenged actions of the defendant; that is (3) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). At the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016.). The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138-39 (9th Cir. 2000) (*en banc*).

### 1.    Standing – Claim I: Equal Protection

The Court finds that Plaintiffs satisfy the requirements for standing for their equal protection claim.    In their FAC, Plaintiffs allege that Defendants cause a "stigmatic" injury based on (1) Defendants' use of the religious exemption to close Plaintiffs' Title IX complaints and (2) Defendants' funding of invidious discrimination toward Plaintiffs by religious schools.    FAC ¶¶ 602-620.    Plaintiffs argue that a stigmatic injury is sufficient to support standing for an equal protection claim.    Opp. to MTD at 9.

### a.    Injury-in-Fact

The FAC is replete with allegations of religious schools' unequal treatment of Plaintiffs based on Plaintiffs' sexual orientation and gender identity.    Defendants do not dispute that Plaintiffs have been stigmatically injured.

The Supreme Court has held that discrimination itself—by perpetuating "archaic and stereotypic notions" or by stigmatizing members of the disfavored groups as "innately inferior"—can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group. *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984).    A stigmatic injury confers standing only to "those persons who are personally denied equal treatment" by the challenged discriminatory conduct. *Allen v. Wright*, 468 U.S. 737, 754 (1984) (quoting *Heckler*, 465 U.S. at 739–40).

To prove that they have been in fact injured, the FAC alleges that every Plaintiff either attempted to enroll, is currently enrolled, or was previously enrolled

at a religious school, and that each Plaintiff was actually rejected for enrollment or actually treated unequally because of their sex, sexual orientation, and/or gender identity and therefore personally denied equal treatment on that basis.  FAC ¶ 609. The FAC further alleges that at least one student filed an administrative Title IX complaint which was dismissed based on Defendants' implementation of the religious exemption for that Plaintiff's school.  FAC ¶¶ 395-408.

The Court finds that Plaintiffs' FAC adequately alleges a stigmatic injury for purposes of their Equal Protection claim.  Further, that the proposed SAC and supplemental briefs further clarify Plaintiffs' injuries with respect to the filing and adjudication of Plaintiffs' Title IX complaints by alleging that Defendants dismissed Plaintiffs' complaints of unequal treatment by implementing the religious exemption, thereby perpetuating the unequal treatment based on Plaintiffs' membership in a disfavored group.  The Court finds that the proposed SAC amendments are not "legally insufficient", *Missouri ex rel. Koster,* 847 F.3d at 656, or "subject to dismissal" for failure to allege an injury-in-fact. *Platt Elec. Supply, Inc.,* 522 F.3d at 1060.  Thus, amendment is not futile on that basis.

### b.    Injury Tracible to Challenged Action of Defendants

Defendants maintain that Plaintiffs allege injuries caused by their religious schools—not by Defendants.  MTD at 15.  Plaintiffs contend that it is Defendants' implementation of the religious exemption which permits religious schools to treat Plaintiffs unequally, thereby causing injury.  FAC ¶¶ 589-593; 602-620.  In Plaintiffs' view, Defendants' implementation of the religious exemption is what, in turn, permits

the allegedly invidious discrimination, and is therefore sufficient to allege an injury "fairly traceable" to the challenged action of Defendants. The proposed SAC and supplemental briefs further support the links in the chain of causation between the religious schools' unequal treatment, Defendants' grant of religious exemption, and dismissal of Plaintiffs' Title IX complaints.

While it is insufficient for standing purposes that the complained of injury is "th[e] result [of] the *independent* action of some third party not before the court . . . that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997) (internal citations omitted).

The Court finds that Plaintiffs have satisfactorily alleged that the religious schools' unequal treatment of Plaintiffs is, at least in part, the result of Defendants actions that have a determinative effect: Defendants' determination—that the religious schools may obtain a religious exemption from complying with Title IX's prohibition of discrimination—can be causally linked to the schools' act of treating Plaintiffs unequally. In the instances where individual Plaintiffs had their complaints dismissed because their schools obtained a religious exemption, it is most especially so.

Accordingly, Plaintiffs have satisfactorily alleged an injury that, at least in part, is traceable to Defendants' implementation of the challenged law. Plaintiffs' proposed SAC has no effect on the sufficiency of the FAC on this issue, but their supplemental briefs draw a clearer connection between Plaintiffs' injury (the unequal

treatment) and Defendants' act of dismissing Plaintiffs' administrative complaints based on religious exemption. Amendment is not futile on this basis.

### c. Redressability

Defendants argue that Plaintiffs have failed to demonstrate that their injuries are redressable given that many Plaintiffs have either left the educational institutions at issue—through graduation or otherwise—or are no longer seeking attendance there. MTD at 16. Defendants argue that, even if the Court were to grant Plaintiffs the relief they seek and declare Defendants' current application of the religious exemption to be invalid and unenforceable, that relief would not remedy Plaintiffs' past injuries. *Id.* at 16-17. Further, the institutions would be free to forego federal funding so that Title IX would not apply to them. *Id.* at 17. As such, Defendants insist that such speculation is insufficient to establish a "likelihood" of redressability, where the court cannot predict how third parties would respond to a favorable decision for Plaintiffs.

Plaintiffs' respond that their stigmatic harms will be redressed by a finding of unconstitutionality and by injunctive relief, where Plaintiffs ask the Court to prohibit Defendants from using the religious exemption to dismiss any further Title IX complaints against educational institutions that *currently* receive federal financial assistance and to rescind all prior religious exemptions applied to sexual and gender minority students. FAC at 87. Plaintiffs contend that, regardless of whether some religious schools decide to forgo federal funding in the future to avoid compliance with Title IX, the Court can redress the stigmatic, emotional, and procedural injuries that

Plaintiffs are experiencing now at educational institutions that currently receive Title IX funding and religious exemption.  Opp. to MTD at 16.

The Supreme Court has recognized that "[w]hen the 'right invoked is that of equal treatment,' the appropriate remedy is a mandate of *equal* treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class."  *Heckler*, 465 U.S. at 740 (quoting *Iowa-Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239, 247 (1931)) (emphasis in original).

In this case, Plaintiffs ask the Court, *inter alia*, to enjoin Defendants from funding religious schools which discriminate; refrain from issuing further religious exemptions; and rescind prior religious exemptions.  In other words, Plaintiffs seek a mandate of equal treatment with respect to participation in educational institutions.

Accepting the factual allegations in the FAC as true, as it must as this stage of the proceedings, the Court finds that, for purposes of this order, the remedies Plaintiffs seek would redress the harms alleged.  Plaintiffs have sufficiently alleged that Defendants caused Plaintiffs' injuries by implementing a system that permits religiously affiliated schools to use religious exemptions to deny federally-funded educational services to current and prospective students.

Thus, an order requiring the rescinding of all prior religious exemptions to Title IX as applied to sexual and gender minority students; mandating that Defendants treat Title IX complaints from sexual and gender minority students at all taxpayer-funded religious colleges in the same manner as complaints at nonreligious

colleges; and requiring Defendants to ensure that all federally-funded educational institutions respect the sexual orientation and gender identity of Plaintiffs would make Plaintiffs whole. Accordingly, no speculative inferences are necessary here to conclude that the relief requested will result in the Plaintiffs receiving the dignity and equal treatment they seek. Plaintiffs' FAC satisfies standing requirements with respect to their claim for Equal Protection. Amendment by the proposed SAC and supplemental briefs would not be futile.

### 2.    Standing – Claim Four: APA

With respect to Plaintiffs Fourth Cause of Action under the APA, the Court finds that Plaintiffs have not satisfied the jurisdictional requirement of Article III standing.

### a.    Injury-in-Fact

It is not clear whether Plaintiffs assert a "stigmatic" injury—as they do for their equal protection claim—for their fourth cause of action under the APA, and Plaintiffs have not presented any developed argument on that point. From the cases Plaintiffs cite, it is not clear that a stigmatic injury is cognizable as an injury-in-fact in any context other than equal protection. Plaintiffs contend that they have pleaded a "procedural injury," Opp. to MTD at 16, but the Court finds no such allegation in the FAC, proposed SAC, or supplemental briefs. The Court declines to address arguments which Plaintiffs, by this time, have not pleaded.

### b.    Traceable to Challenged Action of Defendants

The Court finds that Plaintiffs have failed to satisfy the causation requirement for standing for their claim under the APA.  Plaintiffs contend that 34 C.F.R. § 106.12(b) and (c), issued in May and November of 2020, respectively, (the 2020 rules) are arbitrary and capricious under 5 U.S.C. §§ 706(2)(A)-(C), which requires a reviewing court to hold unlawful and set aside arbitrary and capricious agency actions.  Plaintiffs argue that the amendments, discussed in Section I above, "empowered institutions to conceal their discriminatory practices from students[,]" and "expanded [the religious exemption] to endanger ore students. . . solidif[ying] Defendants' stamp of approval of invidious LGBTQ+ discrimination and further entangl[ing] the federal government's complicity with religious institutions['] discriminatory policies."  Opp. to MTD at 29.

Defendants maintain that Plaintiffs have not plausibly alleged that the regulatory changes they challenge have led or contributed to the discriminatory harm they have experienced.  MTD at 16.

The Court has reviewed Plaintiffs' evidence in the form of expert witnesses, hours of hearing testimony, hundreds of exhibits, multitudes of declarations, and legal briefing and concludes that Plaintiffs have not plausibly alleged that the regulatory changes have led or contributed to the harm they have experienced.

That is, Plaintiffs do not allege how any of the schools they attend are more likely to qualify for a religious exemption now, under the 2020 rules they challenge, than they would have been previously.  On the contrary, Plaintiffs' allegations support the opposite conclusion: that, before the amendments, Defendants "never

rejected an educational institution's assertion that it is controlled by a religious organization." FAC ¶ 584; *see also* ECF Nos. 50–1 at 3–5; 50–2 at 5–7; 50–4 at 5–6; 50–5 at 3–5; 50–6 at 4–5; 50–7 at 9–11; 50–10 at 6–8; 50–11 at 5–6; 50–13 at 5–7 (each reflecting that Defendants assured religious schools of religious exemptions before the amended regulation Plaintiffs challenge was promulgated).

Plaintiffs' allegations undermine their argument that the amended regulations have made it easier to qualify or changed the institutions' eligibility for an exemption. Plaintiffs have therefore have not met their burden to allege causation with regard to their APA claim. Because the proposed SAC does not cure this defect amendment would be futile.

### c.    Redressability

Plaintiffs have not set forth allegations sufficient to show how a decision invalidating the 2020 rules would alter either the behavior of the religious schools or the outcomes of discrimination complaints or religious exemption requests filed with Defendants under Title IX. Plaintiffs must allege that it is "likely," as opposed to merely "speculative," *Defs. of Wildlife*, 504 U.S. at 561, that a judgment invalidating the 2020 rules would redress their injuries and they have not done so here. The proposed SAC and supplemental briefs do not cure those defects, thus amendment would be futile.

### B.    *Merits*

Defendants contend that Plaintiffs fail to state a claim for violations of their rights to equal protection; substantive due process; the Establishment Clause;

freedom of speech; freedom of assembly and association, and freedom of religion; or RFRA.  The Court agrees.

In the course of litigation, the Court reviewed approximately 400 exhibits and thousands of pages of declarations from individual Plaintiffs detailing the treatment they experienced at their religious schools based on their sexual orientation and gender identity; from academic exclusion and denial of student housing, to coerced conversion therapy, to prohibition from forming LGBTQ+ support groups on campus. In addition to the voluminous briefing, the Court expended hundreds of hours to thoroughly review those materials, and more to evaluate the supplemental filings which included news articles and publications in social science journals.  However, the Court finds that Plaintiffs have not alleged the elements necessary to state a legal claim on the merits of their action.

## 1.    Plaintiffs' First Cause of Action: Fifth Amendment Claims for Equal Protection and Substantive Due Process

### a.    *Equal Protection*

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Although the words "equal protection" do not appear in the Fifth Amendment's text, the Fifth Amendment's Due Process Clause includes an equal protection component and "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment."  *Buckley v. Valeo*, 424 U.S. 1, 93 (1976) (*abrogated on other grounds*).

Plaintiffs allege that the religious exemption to Title IX "targets Americans for disfavored treatment based on their sex, including targeting based on sexual orientation and gender identity." FAC ¶ 623. Further, that Defendants' policy and practice of denying Title IX claims based on the religious exemption "targets Americans for disfavored treatment based on their sex," and that "the federal government cannot claim a legitimate governmental interest in furthering discrimination." FAC ¶¶ 623-624. Additionally, Plaintiffs contend that "the freedom to marry someone of the same sex is a fundamental constitutional right" and the religious exemption impermissibly burdens the fundamental marriage rights of same-sex couples seeking to attend taxpayer funded religious educational institutions that prohibit their marriages." FAC ¶¶ 634-635.

### i.    Facial Equal Protection Challenge to Religious Exemption

As a reminder, the religious exemption provides that Title IX "shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization." 20 U.S.C. § 1681(a)(3). Plaintiffs contend that the statute is not facially neutral and that its primary intent is to allow sex discrimination. Opp. to MTD at 30. Plaintiffs also contend that, even if the statute is facially neutral, Plaintiffs need only show that discrimination was a motivating factor—rather than a primary purpose—in its enactment. Opp. to MTD at 30.

A facially neutral statute can violate equal protection principles if it both has (1) a disparate impact and (2) the legislative body was motivated to enact the statute

at least in part by a discriminatory intent. *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). To assist with the inquiry, the Supreme Court has provided a non-exhaustive list of factors to consider when determining whether the challenged decision—here, the enactment of the religious exemption—has as a motivating factor an invidious purpose: (1) the "historical background" of the decision; (2) the "specific sequence of events" leading up to the challenged decision; (3) "significant "[d]epartures" from the normal procedural "[s]ubstantive departures" from "the factors usually considered important by the decisionmaker"; (4) whether the effect of the action bears more heavily on one group than another; and (5) the legislative history of the statute. *Id*. at 266, 268. (internal citations omitted).

Here, Plaintiffs have provided voluminous allegations going toward the element of disparate impact—the first hurdle to mounting an equal protection claim. However, Plaintiffs have submitted no allegations of discriminatory motivation on the part of those enacting the religious exemption. To the contrary, Plaintiffs argue that when Congress enacted Title IX, protections for—or discrimination against sexual and gender minorities—were "of no concern." ECF No. 151 at 27. Plaintiffs provide no evidence and supply no allegations involving the above-listed factors for the Court to consider and evaluate whether Congress was motivated in part by a discriminatory purpose when it enacted the religious exemption. The Court cannot conclude that Plaintiffs' assertion that "Congress enacted the religious exemption to permit discrimination based on sex, sexual orientation, and gender identity," FAC ¶ 601, is sufficient. "[B]ald allegation[s] of impermissible motive . . . standing alone, is

conclusory and is therefore not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

Further, equal protection claims based on sexual orientation or gender identity call for the application of intermediate scrutiny. *See SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 481 (9th Cir. 2014) (sexual orientation), *reh'g en banc denied*, 759 F.3d 990 (9th Cir. 2014); *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015) (gender identity). A statute passes intermediate scrutiny if it "serve[s] important government objectives" and "the discriminatory means employed are substantially related to the achievement of those objectives." *Harrison v. Kernan*, 971 F.3d 1069, 1076 (9th Cir. 2020) (internal quotation marks omitted).

Plaintiffs have not alleged how the religious exemption fails intermediate scrutiny. Defendants point out that the Ninth Circuit has recognized "that free exercise of religion and conscience is undoubtedly, fundamentally important." MTD at 28 (citing *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018)). Exempting religiously controlled educational institutions from Title IX—and only to the extent that a particular application of Title IX would not be consistent with a specific tenet of the controlling religious organization, see 20 U.S.C. § 1681(a)(3)—is substantially related to the government's objective of accommodating religious exercise.

### ii.    As-Applied Equal Protection Challenge to Religious Exemption

Plaintiffs appear to allege in their FAC what the Court construes as an "as applied" challenge to the religious exemption, but neither party developed legal arguments for that claim. Additionally, the FAC, the proposed SAC, and the

supplemental briefs do not explain how the religious exemption is unconstitutional as applied to Plaintiffs specifically.

Accordingly, for both the facial and as-applied equal protection challenges, Plaintiffs have failed to state a claim in their FAC, and because the proposed SAC and supplemental briefs would not cure the defect, amendment would be futile. [2]

### b.    Substantive Due Process

Substantive due process protects individuals from arbitrary deprivation of their liberty by government. *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013). As a threshold matter for evaluating a substantive due process claim, the Court must determine whether Plaintiffs are alleging that they have been harmed by an "executive" or a "legislative" act. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("While due process protection in the substantive sense limits what the government may do in both its legislative and its executive capacities, criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." (citations omitted)).

For "executive acts," that the substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 1717, 140 L. Ed. 2d 1043 (1998).

---

[2]    The parties also proffer arguments concerning the state action doctrine with regard to Plaintiffs' equal protection claim. Because the Court determined on other grounds that Plaintiffs failed to state an equal protection claim, the Court need not reach the parties' arguments concerning state action.

For legislative or quasi-legislative acts, a court should apply the more traditional levels of scrutiny (such as rational basis review, heightened or intermediate review, or strict scrutiny) based on the specific right asserted. *See Reyes v. N. Texas Tollway Auth., (NTTA)*, 861 F.3d 558, 562 (5th Cir. 2017).

Executive action generally involves "a specific act of a governmental officer that is at issue." *Lewis*, 523 U.S. at 846. In other words, "[e]xecutive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch." *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994). Therefore, the substantive protections of the due process clause are intended to prevent government officials from abusing their power or employing it as an instrument of oppression. *Lewis*, 523 U.S. at 846

"Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples." *Id.; see also Reyes*, 861 F.3d at 562 (summarizing that "government action that applies broadly gets rational basis; government action that is individualized to one or a few plaintiffs gets shocks the conscience").

Here, for their substantive due process claim, Plaintiffs invoke only a vague reference to "due process" violations, and do not set forth the elements of a substantive due process claim or facts supporting such claim.

For example, in their FAC, Plaintiffs use the term "substantive due process" only once at the beginning of an enumerated list of "substantive due process and equal

protection rights" in which Plaintiffs include the right to "bodily integrity" and the right to "marry", but also the alleged right to "culturally competent sexual and reproductive health services"; the right "to be clothed and groomed consistent with one's sexual orientation, gender expression and gender identity"; and the right "to medically necessary gender-affirming medical and psychological care." FAC ¶ 644. Plaintiffs fail (1) to allege the basis for their substantive due process claim; (2) to identify the fundamental right violated under principles of substantive due process; (3) to identify any level of scrutiny or review under which the Court should review a claim of substantive due process violation; and/or (4) to attribute the violation to the specific "conscience -shocking" conduct of the executive.

Plaintiffs vague, conclusory, and solitary reference to "substantive due process" is insufficient to avoid a Rule 12(b)(6) dismissal. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The Supreme Court has admonished the lower courts that substantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires us to exercise the utmost care. *Flores*, 507 U.S. at 302 (simplified). The Court cannot "begin with a careful description" when it is left to guess. The Court fully reviewed the totality of all of Plaintiffs' subsequent briefing, which shed no light on the details of Plaintiffs' substantive due process claim. The proposed SAC and supplemental briefs do not cure the defect and so amendment is futile.

**2.    Plaintiffs' Second Cause of Action: Establishment Clause Claim**

The First Amendment provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." The Establishment Clause prohibits the Government from compelling an individual to participate in religion or its exercise, or otherwise from taking action that has the purpose or effect of promoting religion or a particular religious faith. *See Lee v. Weisman*, 505 U.S. 577, 587 (1992). While this clause forbids the government from advancing religion, the Supreme Court has interpreted it to allow, and sometimes require, the accommodation of religious practices: "'This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.'" *Mayweathers v. Newland*, 314 F.3d 1062, 1068 (9th Cir. 2002 (quoting *Hobbie v. Unemp't Appeals Comm'n of Fla.*, 480 U.S. 136, 144–45 (1987)). Thus, "[t]he touchstone for [the Court's] analysis is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" *McCreary County, Ky. v. ACLU*, 545 U.S. 844, 860 (2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)).

"Establishment Clause violations are determined according to the three-pronged test articulated in *Lemon v. Kurtzman*[, 403 U.S. 602 (1971)]." *Williams v. California*, 764 F.3d 1002, 1013–14 (9th Cir. 2014). "A statute or regulation will survive an Establishment Clause attack if (1) it has a secular legislative purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not foster excessive government entanglement with religion." *Id.* at 1014.

In *Amos*, the Supreme Court upheld the religious exemption to Title VII's prohibition against religious discrimination in employment, determining that the exemption satisfied three-part *Lemon* test and did not violate establishment clause. There, the court determined that the actions of a nonprofit facility owned and operated by religious associations in discharging employees for not qualifying as members of church were shielded from liability under exemption.

Here, Plaintiffs do not identify legal authority that would distinguish this case from the facts and law at issue in *Amos*, nor do Plaintiffs dispute that the three-prong test announced in *Lemon* applies.  *See* Opp. to MTD at 25-29.  Plaintiffs respond however that the religious exemption fails each prong of *Lemon*, alleging that the religious exemption violates the Establishment Clause because it "benefits religious educational institutions over non-religious educational institutions."  FAC ¶ 650. Further, that the religious exemption does not serve a secular legislative purpose; that it benefits some religions over other religions; that it does not operate in an even-handed manner when some religious institutions affirm LGBTQ+ identities and others do not; and that it constitutes excessive government entanglement with religion because Defendants must analyze the religious beliefs of the school to determine whether the school qualifies for the religious exemption.  FAC ¶¶ 646-657. For those assertions, Plaintiffs do not allege any further details.

Defendants contend that Plaintiffs have not stated an Establishment Clause claim and that the religious exemption passes constitutional muster under the governing three-prong test set forth in *Lemon v. Kurtzman*.  Further, that courts—

including the Supreme Court—have regularly rejected Establishment Clause challenges to religious exemptions, and the religious exemption in this case passes muster as well.  MTD at 4, 29.

### a.    Secular Purpose

First, under the three-prong analysis in *Lemmon v. Kurtzman*, "[a] practice will stumble on the [secular] purpose prong only if it is motivated wholly by an impermissible purpose." *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir. 1993). "A reviewing court must be reluctant to attribute unconstitutional motives to government actors in the face of a plausible secular purpose." *Id.* (internal quotation marks omitted).  "The secular purpose requirement does not 'mean that the law's purpose must be unrelated to religion—that would amount to a requirement that the government show a callous indifference to religious groups, and the Establishment Clause has never been so interpreted.'"  *Mayweathers*, 314 F.3d at 1068 (quoting *Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 335 (1987)).

Like the Supreme Court did in *Amos*, the Ninth Circuit has upheld a religious exemption, determining that it constituted a secular purpose by protecting the exercise of religion in institutions from unwarranted and substantial infringement. *See Mayweathers*, 314 F.3d 1062 (holding that the Religious Land Use and Institutionalized Persons Act of 2000 "intends a secular legislative purpose"); *see also Gaylor v. Mnuchin*, 919 F.3d 420, 432 (7th Cir. 2019) ("Seeking to avoid government entanglement is a secular legislative purpose under *Lemon*"); *Medina v. Catholic Health Initiatives*, 877 F.3d 1213, 1231 (10th Cir. 2017) ("[W]e find that this

purpose—avoiding entanglement with religion—is a secular one."); *Pieszak v. Glendale Adventist Med.Ctr.*, 112 F. Supp. 2d 970, 996–97 (C.D. Cal. 2000) ("broad[]" religious exemption to California's Fair Employment and Housing Act constituted "a permissible legislative purpose").

Lastly, the Ninth Circuit has stated that "Congress derives its ability to protect the free exercise of religion from its plenary authority found in Article I of the Constitution; it can carve out a religious exemption from otherwise neutral, generally applicable laws based on its power to enact the underlying statute in the first place." *See Guam v. Guerrero*, 290 F.3d 1210, 1220–21 (9th Cir. 2002) (citing *Amos*, 483 U.S. 327 (1987) and *Gillette v. United States*, 401 U.S. 437 (1971) (but upholding religious exemptions)).

Here, Plaintiffs do not plausibly demonstrate that the religious exemption was motivated by any impermissible purpose—let alone that Congress was "wholly" motivated by such an impermissible purpose. *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th. 1993). Rather, Plaintiffs conclude, without analysis or factual support, that "Defendants' sponsorship of invidious discrimination conveys a clear message: religion-based invidious discrimination against LGBTQ+ students is endorsed by the federal government." Yet, in the next paragraph, Plaintiffs contend that in enacting the religious exemption, "government has placed a neutral and generally applicable condition on funding that religious organizations are under no obligation to accept." *Id*. at 27. Plaintiffs' arguments are confusing and contradictory. Though Plaintiffs have much to say about Defendants, Plaintiffs have failed to demonstrate any

impermissible purpose *Congress* had in enacting the religious exemption, especially in light the Supreme Court's decision in *Amos* and other cases upholding religious exemptions.

### b.    Primary Effect

Second, the Supreme Court has stated that "[a] law is not unconstitutional simply because it allows churches to advance religion, which is their very purpose." *Amos*, 483 U.S. at 337.  "For a law to have forbidden 'effects' under *Lemon*, it must be fair to say that the government itself has advanced religion through its own activities and influence." *Id.*   The court has never indicated that rules that give special consideration to religious groups are *per se* invalid." *Id.* at 338; *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, __ U.S. __ 140 S. Ct. 2367 (2020) (upholding agency's authority to promulgate religious exemption to contraceptive mandate under Patient Protection and Affordable Care Act).  Further, a law does not violate the Establishment Clause "merely" because it "happens to coincide or harmonize with the tenets of some or all religions."   *McGowan v. Maryland*, 366 U.S. 420, 442 (1961).

Here, Plaintiffs respond that the primary effect of the religious exemption is "advancing religion, sponsoring and financial [sic] supporting targeted discrimination on the basis of sex."  Opp. to MTD at 27.  Plaintiffs argue that the religious exemption's "primary function is to ensure financial support for institutions who engage in a religious practice of discrimination." *Id.*  Plaintiffs provide no developed

analysis or facts to shed light on those assertions or explain how *Defendants* have advanced religion through their own activities and influence.

### c.    Excessive Entanglement

Upholding the religious exemption to Title VII's application, the Supreme Court recognized that "it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Amos*, 483 U.S. at 336.   "A relationship results in an excessive entanglement with religion if it requires sustained and detailed interaction between church and State for enforcement of statutory or administrative standards." *Williams*, 764 F.3d at 1015–16 (internal quotation marks omitted).  The Supreme Court stated: "It cannot be seriously contended that" Title VII's religious exemption "impermissibly entangles church and state."   *Amos*, 483 U.S. at 339. Rather, the exemption "effectuates a more complete separation of the two."  *Id.*; *see Gaylor*, 919 F.3d at 434 (though "some level of church-state interaction is unavoidable," "[t]he alternative" to the religious exemption would be "more entangling").

Here, Plaintiffs allege that the religious exemption creates an inextricable and excessive entanglement between government and religion because administrative agencies are charged with implementing the statute, and that statute requires a determination of when Title IX in inconsistent with a school's religious tenants.  *Id.* at 28.  However, the religious exemption here is materially indistinguishable from that in *Amos*.  There, the Supreme Court upheld the exemption under *Lemon*, and

explained that in exempting religious organizations from complying with Title VII, that exemption prevented interference with the religious organizations' ability to define and carry out their religious missions. *Amos*, 483 U.S. at 328.

In this case, religious exemption also prevents the sort of entanglement *Amos*—in applying *Lemon*—sought to avoid. In the absence of the religious exemption, Defendants must scrutinize religious schools' compliance with the anti-discrimination policies of Title IX, even if such compliance would conflict with the schools' religious tenets. Plaintiffs' allegations do not plausibly demonstrate how the relief they seek in enforcing Title IX in religious schools is not the very excessive entanglement Plaintiffs argue is impermissible. The proposed SAC and supplemental briefs are legally insufficient to cure those defects and so amendment is futile.

### 3.    Plaintiffs' Third Cause of Action: First Amendment Claims

Plaintiffs allege that the "religious exemption to Title IX exerts a chilling effect on the Plaintiffs' exercise of their freedoms of religion, speech, assembly, and association," and the exemption "prevents Plaintiffs from expressing their beliefs and/or engaging in practices based on their religious beliefs about sexuality, gender identity and marriage." FAC ¶¶ 661-662.

The First Amendment provides in relevant part that "Congress shall make no law ... abridging the freedom of speech." Generally, "laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based. *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 778 (9th

Cir. 2011).  By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral.  A content-neutral regulation will be sustained if "it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968).

Here, Plaintiffs allege that "Defendants lack a compelling governmental interest in funding private educational institutions that restrict First Amendment rights that Defendants could not restrict at public educational institutions," and that the "religious exemption to Title IX is not narrowly tailored to address a compelling governmental interest."  FAC ¶   Plaintiffs allege that Title IX's religious exemption could have been "limited to an exemption for co-religionists, as are the religious exemptions for Title VII and the Fair Housing Act."

Plaintiffs' allegations are difficult to string together.  For all claims under their third cause of action, Plaintiffs stray from an allegation that Title IX's religious exemption—a legislative enactment—violates the First Amendment, to alleging that Defendants lack a compelling interest in *funding* the religious schools.  FAC ¶ 668-670.

For their challenge to the text of the religious exemption, Plaintiffs fail to allege the basic elements of a cause of action or supply a modicum of facts specifically supporting their claim.  For example, Plaintiffs set forth no details concerning

whether the religious exemption is (1) content neutral; (2) furthers a substantial governmental interest unrelated to the suppression of free speech; or (3) whether any incidental restriction on First Amendment freedoms is necessary to further that interest. *See e.g. O'Brien*, 391 U.S. at 377 (discussing framework do determine whether law violates First Amendment). On its face, the religious exemption does not aim at the suppression of speech, as it does not distinguish between prohibited and permitted activity—such as association or assembly—on the basis of viewpoint, nor does it license government authorities (like Defendants) to administer the statute on the basis of such constitutionally impermissible criteria.

As such, Plaintiffs' bare and conclusory allegation that the religious exemption itself "exerts a chilling effect," without more, is insufficient to demonstrate a plausible claim for relief that the religious exemption in Title IX violates free speech, especially where the statute contains no reference to speech or viewpoint.

Next, Plaintiffs' allegation that Defendants lack a compelling governmental interest in "funding private educational institutions that restrict First Amendment rights . . ." asserts that it is the "*institutions* that restrict" Plaintiffs' rights. FAC ¶ 669 (emphasis added). In so alleging, Plaintiffs fail to supply any facts connecting Defendants' provision of "funding" to educational institutions with a free speech violation. As such, Plaintiff has not pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 570. Neither the proposed SAC nor supplemental briefs correct this defect. Accordingly, Plaintiffs have failed to state a claim under

the First Amendment and the proposed SAC and supplemental briefs do not cure that defect, thus amendment would be futile.

### 4.    Plaintiffs' Fifth Cause of Action: RFRA Claim

RFRA provides in part that "[g]ranting government funding, benefits, or exemptions, to the extent permissible under the Establishment Clause, shall not constitute a violation of this chapter."  42 U.S.C. § 2000bb–4.  Further, to state a claim under the First Amendment or RFRA, Plaintiffs must allege that their injuries are caused by the government, not private actors.  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019); *see* 42 U.S.C. § 2000bb-1(a).  The fact that a private entity receives governmental funding or is subject to regulation does not convert its conduct into government action.  *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).  Nor does the government's acquiescence, approval, or encouragement of private conduct.  *See id.; Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978).

Without alleging factual specifics, Plaintiffs allege that "many" of them "maintain sincerely held religious beliefs, including their understanding of sexuality, gender and intimate relationships," and that the religious exemption violates RFRA because it substantially burdens those religious beliefs.  *See* FAC ¶¶ 700–706.  Plaintiffs also allege that "campus policies" violate their constitutional rights.  FAC ¶ 701.

The text of RFRA is clear that government granting exemptions does not constitute a violation, unless impermissible under Establishment Clause principles.  42 U.S.C. § 2000bb–4.  But, as discussed above, Plaintiffs cannot plausibly allege that

the religious exemption is impermissible under the Establishment Clause. Plaintiffs also fail to allege facts to demonstrate that it is Defendants—the government actor—that has burdened Plaintiffs religious beliefs. Accordingly, Plaintiffs have failed to state a claim under this cause of action, and the proposed SAC and supplemental briefs are legally insufficient to cure those defects and thus amendment would be futile.

## III.   Intervenors Claims

To the extent that Defendant-Intervenors Motion to Dismiss challenges Plaintiffs FAC on the same basis as Defendants, it is GRANTED. Otherwise, it is MOOT, as this case has been dismissed on other grounds, stated above.

## IV.   Preliminary Injunction

For the reasons explained above, Plaintiff cannot succeed on the merits of their claims. Accordingly, Plaintiffs MPI is DENIED. *See Winter*, 555 U.S. at 20 (A plaintiff seeking preliminary injunctive relief must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction is in the public interest.); *see also City of Everett*, 929 F.3d at 663 (in determining whether to award preliminary injunctive relief, a "[l]ikelihood of success on the merits is the most important factor.").

## CONCLUSION

For the reasons explained, the Court is compelled to DISMISS this case and DENY the motion for preliminary injunction. Defendant's MTD, ECF No. 56, is

GRANTED.  Plaintiffs' Mot. to Amend, ECF No. 148, is DENIED.  Plaintiffs' MPI,

ECF No. 44, is DENIED. Defendant-Intervenors Joint Motion to Dismiss, ECF No.

137, is GRANTED in part and DENIED in part.


IT IS SO ORDERED THIS __12th__ DAY OF JANUARY 2023



　_/s/Ann Aiken___
Ann Aiken
United States District Court Judge